UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

LOUISETTE GEISS, KATHERINE KENDALL,    :
ZOE BROCK, SARAH ANN THOMAS (a/k/a    :
SARAH ANN MASSE), MELISSA SAGEMILLER,  :
and NANNETTE KLATT, individually and on    :    No. 17 Civ. 09554-AKH
behalf of all others similarly situated,    :
    :
    Plaintiffs,    :
    :
    - against -    :
    :
THE WEINSTEIN COMPANY HOLDINGS, LLC,  :
MIRAMAX, LLC, MIRAMAX FILM CORP.,    :
MIRAMAX FILM NY LLC, HARVEY    :
WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF,  :
TIM SARNOFF, MARC LASRY, TARAK BEN  :
AMMAR, LANCE MAEROV, RICHARD    :
KOENIGSBERG, PAUL TUDOR JONES, JEFF  :
SACKMAN, JAMES DOLAN, MIRAMAX DOES  :
1-10, and JOHN DOES 1-50, inclusive,    :
    :
    Defendants.    :

-------------------------------------------------------------------x

### DEFENDANT THE WEINSTEIN COMPANY HOLDINGS, LLC'S
### MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
### TO DISMISS THE COMPLAINT AND STRIKE THE CLASS ALLEGATIONS

Dated: New York, New York
    February 20, 2018

SEYFARTH SHAW LLP
620 Eighth Avenue
New York, New York 10018
(212) 218-5500

Attorneys for Defendant
*The Weinstein Company Holdings, LLC*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. iv

PRELIMINARY STATEMENT ........................................................................... 1

STATEMENT OF FACTS .................................................................................... 4

ARGUMENT ....................................................................................................... 8

I.     LEGAL STANDARDS FOR A MOTION TO DISMISS AND MOTION TO
       STRIKE CLASS ALLEGATIONS ........................................................... 8

II.    PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE RICO VIOLATION AGAINST
       TWC .......................................................................................................... 10

       A.     Plaintiffs' Claims Are Barred By The RICO Statute Of Limitations ................. 11

       B.     Plaintiffs Also Have Not Pleaded The Requisite Predicate Acts ........................ 12

              1.     Plaintiffs Fail To Plead A Viable Claim That TWC Engaged In
                     Witness Tampering ................................................................... 13

              2.     Plaintiffs Also Fail To Plead Any Viable Facts That TWC Engaged
                     In Sex Trafficking .................................................................... 15

              3.     Plaintiffs Fail To Plead Any Viable Facts With Particularity That
                     TWC Engaged In Mail Or Wire Fraud .................................... 17

       C.     Plaintiffs Fail To Plead Viable Facts Of A Pattern Of Continued
              Racketeering Activity ............................................................................ 20

       D.     Plaintiffs Have Failed To Adequately Allege Viable Facts Of A RICO
              Injury ....................................................................................................... 21

III.   PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE CLAIM AGAINST TWC OF A
       CONSPIRACY TO VIOLATE RICO ......................................................... 25

IV.    GEISS AND THOMAS FAIL TO PLEAD PLAUSIBLE INDIVIDUAL STATE
       LAW CLAIMS AGAINST TWC ................................................................ 26

       A.     The Near Decade-Old State Law Claims Against TWC Should Be
              Dismissed As Time-Barred ..................................................................... 26

              1.     By Plaintiffs' Own Pleading, The Individual State Law Claims Of
                     Geiss And Thomas Against TWC Are Time-Barred ................ 27

2.      Plaintiffs Have Failed To Plead Viable Facts That Tolling Should Apply To The Individual State Law Claims ............................................29

a.     New York Law Regarding Tolling Exceptions ...........................30

b.     Connecticut Law Regarding Tolling Exceptions.........................31

c.     Geiss And Thomas Fail To Establish Any Basis That Their Time-Barred Claims Should Be Tolled .......................................31

B.    The Individual Claims Of Civil Battery, Assault, And Negligent And Intentional Infliction Of Emotional Distress Against TWC Should Be Dismissed Because Plaintiffs Geiss And Thomas Have Failed To Plead A Plausible Theory Of Vicarious Liability .............................................................33

1.      Plaintiffs Geiss And Thomas Have Failed To Plead Facts Demonstrating That Liability May Be Extended To TWC Based On A Theory Of Respondeat Superior ....................................................33

2.      Plaintiffs Geiss And Thomas Have Not Pleaded Facts Demonstrating That Liability May Be Extended To TWC Based On A Theory Of Ratification .................................................................36

C.    The Individual Claims Of Negligent Retention And Supervision Against TWC Should Be Dismissed Because The Alleged Conduct Did Not Occur On TWC's Premises Or With TWC Chattels ......................................................37

D.    The Individual Claims Of Negligent Infliction Of Emotional Distress Against TWC Should Be Dismissed Because Plaintiffs' Fail To Plead Any Viable Facts That TWC Owed Them a Duty .......................................................38

E.    The Ratification Claim Against TWC Also Should Be Dismissed Because Ratification Is Not a Stand Alone Cause Of Action .............................................39

V.    THE COURT ALSO SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS AS THEY ARE LEGALLY DEFICIENT ...........................................40

A.    Plaintiffs' Class Claims Under Rules 23(b)(2) And 23(c)(4) Should Be Stricken Because No Plaintiff Has A Legally Cognizable Interest In The Outcome ...................................................................41

B.    Plaintiffs' Class Claims Under Rules 23(b)(2) And 23(c)(4) Should Be Stricken Because The Complaint Demonstrates That Plaintiffs Cannot Certify Either Class.............................................................41

C.    The Court Should Strike Plaintiffs' Rule 23(b)(2) Class Allegations Because Plaintiffs All Lack Standing To Seek An Injunction ............................43

CONCLUSION.................................................................................................................47

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agency Holding Corp v. Malley-Duff & Assocs. Inc.*,
    483 U.S. 143 (1987) ........................................................................... 11

*Allen v. Wright*,
    468 U.S. 737 (1984) ........................................................................... 43

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ........................................................................... 24

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...................................................................... *passim*

*Barticheck v. Fidelity Union Bank/First Nat'l State*,
    832 F.2d 36 (3d Cir. 1987). ............................................................... 20

*Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*,
    420 U.S. 128 (1975) ........................................................................... 41

*Bell Atlantic v. Twombly*,
    550 U.S. 544 (2007) ...................................................................... *passim*

*Botticello v. Stefanovicz*,
    177 Conn. 22 (1979) .......................................................................... 37

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*,
    509 F. Supp. 2d 334 (S.D.N.Y. 2007) ................................................ 36

*Buell Indus., Inc. v. Greater N.Y. Mut. Ins. Co.*,
    791 A.2d 489 (2002). ................................................................... 31, 32

*Carver v. City of New York*,
    621 F.3d 221 (2d Cir. 2010) .............................................................. 21

*Charron v. Pinnacle Grp. N.Y. LLC*,
    269 F.R.D. 221 (S.D.N.Y. 2010) ....................................................... 42

*Chase Manhattan Mortg. Corp. v. Machado*,
    850 A.2d 260 (Conn. Ct. App. 2004). ........................................... 31, 32

*Chen-Oster v. Goldman, Sachs & Co.*,
    877 F. Supp. 2d 113 (S.D.N.Y. 2012) ........................................... 44, 45

iv

*Chiaramonte v. Animal Med. Ctr.*,
    677 F. App'x 689 (2d Cir. 2017) ........................................................................34

*Clark v. Buffalo Wire Works Co.*,
    3 F. Supp. 2d 366 (W.D.N.Y. 1998) ...........................................................36, 39

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
    187 F.3d 229 (2d Cir. 1999) ......................................................................10, 20

*Colony at Holbrook, Inc. v. Strata G.C., Inc.*,
    928 F. Supp. 1224 (E.D.N.Y. 1996)...................................................................19

*Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*,
    235 F. Supp. 3d 1132 (E.D. Cal. 2017) ......................................................17, 19

*Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*,
    No. 16 CV 4769, 2017 WL 5591625 (E.D.N.Y. Nov. 17, 2017) ........................25

*Cooper v. U.S. Postal Serv.*,
    577 F.3d 479 (2d Cir. 2009) .............................................................................43

*Cty. of Los Angeles v. Davis*,
    440 U.S. 625 (1979) ..........................................................................................41

*Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*,
    No. 15 Civ. 10015, 2017 WL 3328239 (S.D.N.Y. Aug. 3, 2017) ......................25

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) .............................................................................12

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998) .............................................................................43

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987)............................................................................19

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
    726 F. Supp. 2d 225 (E.D.N.Y. 2010)...............................................................11

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)............................................................34, 36

*Ehrens v. Lutheran Church*,
    385 F.3d 232 (2d Cir. 2004) .............................................................................38

*Flexborrow LLC v. TD Auto Fin. LLC*,
    255 F. Supp. 3d 406 (E.D.N.Y. 2017)...............................................................11

*FW/PBS, Inc. v. Dallas*,
    493 U.S. 215 (1990) ...................................................................................................45

*Galvani v. Nassau Cnty. Police Indemnification Review Bd.*,
    242 A.D.2d 64 (2d Dep't 1998) ...................................................................................34

*GICC Capital Corp. v. Tech. Fin. Group, Inc.*,
    67 F.3d 463 (2d Cir. 1995) ...................................................................................20, 21

*Gitman v. Pearson Educ., Inc.*,
    No. 14 Civ. 8626, 2015 WL 5122564 (S.D.N.Y. Aug. 31, 2015) ...........................9

*Glob. Fin. Corp. v. Triarc Corp.*,
    93 N.Y.2d 525 (1999) ...................................................................................................27

*Golden v. Zwickler*,
    394 U. S. 103 (1969) ...................................................................................................43

*Gordon v. Hain Celestial Group, Inc.*,
    16 Civ. 652, 2017 WL 213815 (S.D.N.Y. Jan. 18, 2017) ...................................45

*Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*,
    120 F.3d 893 (8th Cir. 1982) ......................................................................................42

*Green v. Emmanuel African Methodist Episcopal Church*,
    718 N.Y.S.2d 324 (1st Dep't 2000) ...........................................................................28

*Gross v. Waywell*,
    628 F. Supp. 2d 475 (S.D.N.Y. 2009) .......................................................................11

*Haybeck v. Prodigy Servs. Co.*,
    944 F. Supp. 326 (S.D.N.Y. 1996) .............................................................................34

*Hollander v. Flash Dancers Topless Club*,
    340 F. Supp. 2d 453 (S.D.N.Y. 2004) .......................................................................21

*Holm v. C.M.P. Sheet Metal, Inc.*,
    455 N.Y.S.2d 429 (4th Dep't 1982) ...........................................................................37

*Holmes v. Sec. Investor Prot. Corp.*,
    503 U.S. 258 (1992) ...................................................................................................24

*Judith M. v. Sisters of Charity Hosp.*,
    93 N.Y.2d 932 (2d Dep't 1999) ...........................................................................34, 36

*K.I. v. New York City Bd. of Educ.*,
    256 A.D.2d 189 (1st Dep't 1998) ...............................................................................33

*Katzman v. Victoria's Secret Catalogue*,
　　167 F.R.D. 649 (S.D.N.Y. 1996) ............................................................. 10, 25

*Kerik v. Tacopina*,
　　64 F. Supp. 3d 542 (S.D.N.Y. 2014) ............................................................. 23

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
　　313 U.S. 487 (1941) ...................................................................................... 27

*Landesbank Baden-Württemberg v. RBS Holdings USA, Inc.*,
　　14 F. Supp. 3d 488 (S.D.N.Y. 2014) ............................................................. 8

*LLM Bar Exam, LLC v. Barbri, Inc.*,
　　16 Civ. 3770, 2017 WL 4280952 (S.D.N.Y. Sept. 25, 2017) ........................ 10

*Makowski v. United Bd. of Carpenters & Joiners of Am.*,
　　No. 08 Civ. 6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010) ................. 22, 23

*Mayfield v. Asta Funding, Inc.*,
　　95 F. Supp. 3d 685 (S.D.N.Y. 2015) ............................................................. 42

*McCarthy v. Volkswagen of Am., Inc.*,
　　55 N.Y.2d 543 (1980) .................................................................................... 30

*Miller v. Carpinello*,
　　No. 06 CV 12940 (LAP), 2007 WL 4207282 (S.D.N.Y. Nov. 20, 2007) ........ 14, 15

*Moore v. PaineWebber, Inc.*,
　　189 F.3d 165 (2d Cir. 1999) .......................................................................... 17

*Morgan v. Cnty. of Nassau*,
　　720 F. Supp. 2d 229 (E.D.N.Y. 2010) ........................................................... 39

*Mortise v. United States*,
　　102 F.3d 693 (2d Cir. 1996) .......................................................................... 38

*Nicosia v. Amazon.com, Inc.*,
　　834 F. 3d 220 (2d Cir. 2016) ..................................................................... 43, 45

*O'Shea v. Littleton*,
　　414 U.S. 488 (1974) ...................................................................................... 43

*Overall v. Estate of LHP Klotz*,
　　52 F. 3d 398 (2d Cir. 1995) ................................................................ 29, 30, 31, 32

*Pilgrim v. Universal Health Card, LLC*,
　　660 F.3d 943 (6th Cir. 2011) ......................................................................... 40

*Red Ball Interior Demolition Corp. v. Palmadessa*,
    874 F. Supp. 576 (S.D.N.Y. 1995)..............................................................................25

*Retherford v. AT&T Commc'ns*,
    844 P.2d 949 (Utah 1992)..........................................................................................28

*RLI Ins. Co. v. Athan Contracting Corp.*,
    667 F. Supp. 2d 229 (E.D.N.Y. 2009).......................................................................36

*Rotella v. Wood*,
    528 U.S. 549 (2000) ...................................................................................................12

*Rothschild v. Title Guarantee & Trust Co.*,
    204 N.Y. 458 (1912)...................................................................................................39

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985) ............................................................................................ 13, 21

*Selkirk v. New York*,
    249 A.D.2d 818 (3d Dep't 1998) .......................................................... 30, 31, 32

*Smith Barney, Harris Upham & Co., Inc. v. Luckie*,
    85 N.Y.2d 193 (1995)................................................................................................30

*Sony Music Entmt. Inc. v. Robison*,
    No. 01 Civ. 6415, 2002 WL 272406 (S.D.N.Y. Feb. 26, 2002) ...........................19

*Sperber v. Boesky*,
    849 F.2d 60 (2d Cir.)................................................................................................24

*Stuart v. Snyder*,
    8 A.3d 1126 (Conn. Ct. App. 2010) ................................................................. 31, 32

*Tardibuono–Quigley v. HSBC Mortg. Corp. (USA)*,
    No. 15 Civ. 6940, 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017).........................10

*Todd v. United States*,
    No. C-11-0470, 2012 WL 2952084 (W.D. Wash. June 26, 2012) ........................16

*Tomka v. Seiler Corp.*,
    66 F.3d 1295 (2d Cir. 1995) ............................................................................. 34, 36

*In Re Trilegiant Corp., Inc.*,
    11 F. Supp. 3d 82 (D. Conn. 2014) .................................................................. 12, 25

*Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995)..........................................................................12

*Tsipouras v. W & M Props., Inc.,*
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) ................................................................ 21

*Twersky v. Yeshiva Univ.,*
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ................................................ 29, 32, 33

*United States v. Binday,*
    804 F.3d 558 (2d Cir. 2015) ............................................................................ 15

*United States v. Desposito,*
    704 F.3d 221 (2d Cir. 2013) ............................................................................ 15

*United States v. Walls,*
    784 F.3d 543 (9th Cir. 2015) ........................................................................... 16

*Vincent v. Money Store,*
    915 F. Supp. 2d. 553 (S.D.N.Y. 2003) ........................................................... 27

*Wahlstrom v. Metro-N. Commuter R.R. Co.,*
    89 F. Supp. 2d 506 (S.D.N.Y. 2000) .............................................................. 39

*Wait v. Beck N. Am. Inc.,*
    241 F. Supp. 2d 172 (N.D.N.Y. 2003) ...................................................... 34, 36

*Williams v. Dow Chem. Co.,*
    255 F. Supp. 2d 219 (S.D.N.Y. 2003) ............................................................ 21

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.,*
    530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) .................... 23

*Yong Wen Mo v. Gee Ming Chan,*
    17 A.D.3d 356 (2d Dep't 2005) ...................................................................... 28

*Zumpano v. Quinn,*
    6 N.Y.3d 666 (2006) .................................................................................. 30, 32

**Statutes**

18 U.S.C. § 1512 ................................................................................... 13, 14, 15

18 U.S.C. § 1515(a)(1) ...................................................................................... 15

18 U.S.C. § 1590 ................................................................................... 13, 15, 16

18 U.S.C. § 1591 ..................................................................................... 5, 13, 16

18 U.S.C. § 1961(1) ..................................................................................... 12, 13

18 U.S.C. § 1961(5) ..................................................................................... 12, 20

18 U.S.C. § 1962(c) .................................................................................*passim*

18 U.S.C. § 1962(d) ............................................................................. 2, 25, 26

18 U.S.C. § 1964(c) ................................................................................. 21, 24

22 U.S.C. § 7101(a) .......................................................................................16

22 U.S.C. § 7101(b)(1) ..................................................................................16

22 U.S.C. § 7102 ............................................................................................16

29 U.S.C. § 1332(d)(2) ..................................................................................27

Ct. Gen. Stat. § 52-577 .................................................................................28

Ct. Gen. Stat. § 52-584 .................................................................................28

Utah Code Ann. § 78-12-25(3) .....................................................................28

Utah Code Ann. § 78B-2-307(3) ...................................................................28

**Other Authorities**

About The Weinstein Company, available at http://weinsteinco.com/about-us...........................4

CPLR § 202 ....................................................................................................27

CPLR § 214(5) ...............................................................................................28

CPLR § 215(3) ...............................................................................................28

Fed. R. Civ. P. 9(b) .................................................................................. 17, 19

Fed. R. Civ. P. 11 .............................................................................................3

Fed. R. Civ. P. 12(b)(6) ...................................................................................1

Fed. R. Civ. P. 12(f) ................................................................................. 1, 8, 9

Fed. R. Civ. P. 23(a) ......................................................................................42

Fed. R. Civ. P. 23(b)(2) ..................................................................... 40, 45, 46

Fed. R. Civ. P. 23(c)(1)(A) ..............................................................................9

Fed. R. Civ. P. 23(c)(4) ..................................................................................40

Fed. R. Civ. P. 23(d)(1)(D)........................................................................ 1, 9

5 Moore's Federal Practice § 23.145 (3d ed. 2007)....................................................................9

U.S. Attorney's Manual, Criminal Resource Manual, §1729 .......................................................15

U.S. Const. art. III, § 2 ...........................................................................................................43, 45

Pursuant to Rules 12(b)(6), 12(f), and 23(d)(1)(D) of the Federal Rules of Civil Procedure, Defendant The Weinstein Company Holdings, LLC ("TWC"), by and through its attorneys, Seyfarth Shaw LLP, respectfully submits this Memorandum of Law In Support of Its Motion to Dismiss and Strike the Class Allegations in the Complaint against TWC filed by Plaintiffs Louisette Geiss ("Geiss"), Katherine Kendall ("Kendall"), Zoe Brock ("Brock"), Sarah Ann Thomas (a/k/a Sarah Ann Masse) ("Thomas"), Melissa Sagemiller ("Sagemiller"), and Nannette Klatt ("Klatt") (collectively "Plaintiffs").

## PRELIMINARY STATEMENT

The six Plaintiffs in this action have filed a broad-sweeping Class Action Complaint (the "Complaint"), asserting fourteen separate federal and state law claims on behalf of themselves, and purportedly on behalf of a putative class of every woman who met Harvey Weinstein ("H. Weinstein") in person in a wide variety of contexts (including both professional and purely social contexts) at any point in history.  Virtually all of the alleged conduct about which Plaintiffs complain in the Complaint was committed by H. Weinstein, acting alone, between ten and twenty-five years ago.

Even though all of Plaintiffs' claims are premised on the alleged conduct of H. Weinstein and H. Weinstein only, Plaintiffs assert their claims against numerous other Defendants, including TWC; Miramax, LLC; Miramax Film Corp.; and Miramax Film NY LLC; Robert Weinstein ("R. Weinstein") (H. Weinstein's brother and former business partner); and nine current and former Board Members of TWC.  Plaintiffs attempt to hook these numerous other individuals and entities into this lawsuit by asserting that all of them, as well as numerous law firms, private investigator firms, and media participants (who are nevertheless not named as parties to this lawsuit), were all part of a decades-long massive, yet secret, criminal sexual enterprise, in violation of the RICO statute.  According to Plaintiffs, this alleged RICO enterprise

remained undiscovered until very recently when *The New York Times* published an article in October 2017 detailing multiple allegations of sexual harassment against H. Weinstein. Plaintiffs Geiss and Thomas also seek to assert individual state common law claims against TWC (and other Defendants) under traditional principles of vicarious liability.[1]

The fundamental flaw with Plaintiffs' case theory as it applies to TWC is that all of Plaintiffs' claims — both RICO and the state common law claims Plaintiffs Geiss and Thomas assert against TWC — are time-barred.  In other words, Plaintiffs' own pleading on its face shows that the claims are all based on conduct that occurred a decade or more ago, and therefore the limitation periods for all of Plaintiffs' claims expired years ago.  Furthermore, Plaintiffs' own pleading demonstrates on its face that there is no legal basis on which the limitation periods should be tolled, and thus all of Plaintiffs' claims against TWC should be dismissed at the outset.

Furthermore, while Plaintiffs' conclusory allegations of a secret criminal sexual enterprise may make for good newspaper copy, they fail to satisfy the pleading requirements set forth in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), that require a plaintiff to state a plausible claim for relief to survive a motion to dismiss. Here, Plaintiffs' Complaint fails to plead numerous essential elements of a RICO claim.  For example, Plaintiffs fail to allege the requisite predicate acts underlying any RICO claim.  While Plaintiffs allege in conclusory fashion the existence of such predicate acts, they fail to plead facts plausibly suggesting that TWC committed a single predicate act, let alone the two acts required

---

[1]     The claims against TWC are as follows: Violation of RICO, 18 U.S.C. § 1962(c), brought by all Plaintiffs against all Defendants (Count One); Conspiracy to Violate RICO, 18 U.S.C. § 1962(d), brought by all Plaintiffs against all Defendants (Count Two); Negligent Supervision and Retention, brought by Geiss and Thomas against TWC and TWC's Board Members (Count Four); Civil Battery, brought by Geiss and Thomas against TWC and H. Weinstein (Count Six); Assault, brought by Geiss and Thomas against TWC and H. Weinstein (Count Eight); Intentional Infliction of Emotional Distress, brought by Geiss and Thomas against TWC and H. Weinstein (Count Ten); Negligent Infliction of Emotional Distress, brought by Geiss and Thomas against TWC and H. Weinstein (Count Twelve); and Ratification; brought by Geiss and Thomas against TWC and TWC's Board Members (Count Fourteen).

to state a claim.  Plaintiffs also fail to plead facts demonstrating that TWC's alleged participation in the RICO enterprise is ongoing.  They cannot do so consistent with the requirements of Rule 11.  As Plaintiffs admit, TWC terminated H. Weinstein's employment thereby severing their connection to the alleged central figure in the purported "enterprise."  Plaintiffs also fail to plead facts demonstrating that any Plaintiff has standing to assert a RICO claim, which requires Plaintiffs to show that the alleged "racketeering activity" was the proximate cause of an identifiable injury to their business or property.  Further, none of the Plaintiffs have pleaded facts demonstrating any concrete, non-speculative injury to their business prospects, nor have they alleged how TWC's alleged conduct was the direct cause of such injury.  For these reasons, Plaintiffs' RICO claims against TWC should be dismissed.

Likewise, the individual state common law tort claims that Geiss and Thomas bring against TWC also should be dismissed as inadequately pleaded.  Plaintiffs have failed to plead facts sufficient to demonstrate that TWC should be held liable for the alleged conduct of H. Weinstein.  While Plaintiffs allege in purely conclusory terms that H. Weinstein was acting within the scope of his employment during his alleged interactions with Geiss and Thomas, that does not suffice under *Twombly* and *Iqbal.*  Moreover, the general rule in New York is that claims of sexual impropriety and other intentional torts are not within the scope of an employee's employment and Plaintiffs fail to plead facts showing otherwise.  Neither may TWC be held liable for H. Weinstein's alleged conduct based on Plaintiffs' novel theory of ratification.  This is because ratification is a doctrine applicable to contract law, not to tort liability, and therefore it cannot form the basis of extending potential liability to TWC.

Finally, the Court should also strike all of Plaintiffs' class allegations because, by Plaintiffs' own pleading, none of the Plaintiffs have a legally cognizable interest in the outcome

of their class claims.  Further, the Complaint demonstrates that Plaintiffs cannot certify any purported class under either Rule 23(b)(2) or Rule 23(c)(4).  Plaintiffs' class allegations under Rule 23(b)(2) should also be stricken because all Plaintiffs lack standing to pursue injunctive relief.

For these reasons, and those set forth herein in more detail, all of Plaintiffs' claims against TWC should be dismissed and their class allegations should be stricken as to TWC.

## STATEMENT OF FACTS

Plaintiffs filed their Complaint in this matter on December 6, 2017.  (ECF No. 1.)  Set forth below are the factual allegations in the Complaint pertinent to TWC's motion to dismiss.[2]

H. Weinstein and R. Weinstein founded TWC, a multimedia production and distribution company, in October 2005.  (*See* Compl. ¶ 37; *see also* About The Weinstein Company, http://weinsteinco.com/about-us.)  TWC is a Delaware company with its principal place of business in New York City.  (Compl. ¶ 17.)  TWC employed H. Weinstein from 2005 through October 2017, when the company terminated his employment.  (*Id.* ¶¶ 4, 22.)  Prior to founding TWC, H. Weinstein was employed by Miramax, where he worked until September 30, 2005. (*Id.* ¶ 220.)

According to the Complaint, H. Weinstein's contract with TWC allegedly stated that if he treated someone improperly in violation of the company's Code of Conduct, he would be required to reimburse TWC for settlements or judgments and pay the company liquidated damages of $250,000 for the first instance, $500,000 for the second such instance, $750,000 for the third instance, and $1,000,000 for each additional incident.  (*Id.* ¶ 132.)

---

[2]    For purposes of this motion to dismiss only, the factual allegations in the Complaint are assumed to be true.

Plaintiffs are women who have worked in the entertainment industry.  (*Id.* ¶¶ 11-16.)  All but one resides in California.  (*Id.* (the one Plaintiff who does not currently reside in California, Brock, alleges that she currently resides in New Zealand).)  Each Plaintiff alleges that she was involved in an incident with H. Weinstein that she claims amounts to an assault.  (*Id.*)  All of the conduct giving rise to Plaintiffs' claims allegedly occurred somewhere between ten and twenty-five years ago, depending on the Plaintiff.  (*Id.*; *see also id.* ¶¶ 48-120.[3])

Plaintiffs allege that all Defendants were part of a criminal RICO enterprise.  (*Id.* ¶ 5.) Plaintiffs allege that all Defendants collectively (without identifying which individual or entity allegedly did what) conducted and participated in the enterprise by witness tampering (*id.* ¶ 196 (citing 18 U.S.C. § 1512)), sex trafficking (*id.* (citing 18 U.S.C. §§ 1590, 1591)), and committing mail and wire fraud (*id.*).  Plaintiffs do not plead facts identifying any witness with whom TWC allegedly tampered.  They also do not identify any purported victim of sex trafficking by TWC or allege how TWC participated in sex trafficking.  Nor do they identify any fraudulent material that TWC allegedly transmitted or received via the mail or wires.

Only two Plaintiffs — Geiss and Thomas — bring individual state common law tort claims against TWC.  (*Id.* ¶¶ 225-30, 238-44, 251-56, 265-72, 281-88, 295-300.)  The remaining four Plaintiffs (Kendall, Brock, Sagemiller, and Klatt) bring claims arising from conduct that allegedly occurred before September 2005 — *i.e.*, before TWC existed as a legal entity — and do not assert state law claims against TWC.  (*Id.* ¶¶ 219-24, 231-37, 245-50, 257-64, 273-80, 289-94.)

---

[3]    Kendall's alleged interaction with H. Weinstein was in 1993.  (Compl. ¶ 48.)  Brock's alleged interaction with H. Weinstein was in 1998.  (*Id.* ¶ 71.)  Sagemiller's alleged interaction with H. Weinstein was in 2000.  (*Id.* ¶ 84.)  Geiss's alleged interaction with H. Weinstein was in 2008.  (*Id.* ¶ 96.)  Thomas's alleged interaction with H. Weinstein was in 2008.  (*Id.* ¶ 104.)  While Plaintiffs do not plead exactly when Klatt's alleged interaction with H. Weinstein occurred, because she alleges that it occurred in H. Weinstein's office in a building occupied by Miramax (*id.* ¶ 115), and because Klatt asserts individual claims against Miramax and does not assert claims against TWC (*see id.* ¶¶ 219-300), it could not have occurred after September 30, 2005.

Geiss alleges that she met H. Weinstein in his private hotel room in 2008 in Park City, Utah.  (*Id.* ¶ 96.)  She alleges that during this encounter H. Weinstein assaulted her.  (*Id.* ¶¶ 96-103.)  Geiss does not allege any conduct or action by TWC or any of its employees other than H. Weinstein.  (*Id.* ¶¶ 96-103.)  She does not allege any interaction with H. Weinstein or any TWC employee after 2008.  Geiss does not plead that she reported the alleged assault to any TWC employee or that anybody at TWC was aware of the alleged assault.

Thomas alleges that she met H. Weinstein in 2008 when she interviewed for a personal nanny position for H. Weinstein's children.  (*Id.* ¶ 104-07.)  The interview took place in H. Weinstein's private home in Connecticut.  (*Id.* ¶ 106.)  Before interviewing with H. Weinstein, Thomas allegedly interviewed with Weinstein's female assistants from TWC and the assistants allegedly scheduled the interview with H. Weinstein.  (*Id.* ¶ 105.)  Thomas alleges that during her meeting with H. Weinstein regarding the nanny position, he assaulted her.  (*Id.* ¶¶ 104-14.)  Thomas alleges that a few days later H. Weinstein's assistant informed her that she did not get the job.  (*Id.* ¶ 113.)  Other than H. Weinstein's assistants, Thomas does not allege any conduct or action by TWC or any of its employees other than H. Weinstein.  She does not allege that any TWC employee other than H. Weinstein or his assistants knew that H. Weinstein was interviewing Thomas for a private nanny position.  She does not allege any interaction with H. Weinstein or any TWC employee after 2008.  She does not plead that she reported the alleged assault to any TWC employee or that anybody at TWC was aware of the alleged assault. Thomas alleges that she heard rumors that casting directors had complained about Thomas's public position *vis-à-vis* her allegations against H. Weinstein.  (*Id.* ¶ 114.)  Thomas does not allege that the casting directors were employees of TWC.

In their Complaint, Plaintiffs allege a nationwide class and two state-law subclasses.  (*Id.* ¶¶ 183-85.)  Plaintiffs define the nationwide class as all women who met with H. Weinstein in person to audition for, or discuss, involvement in a project to be produced or distributed by either TWC or Miramax, depending on the time period, and all women who met with H. Weinstein in a meeting or event facilitated, hosted, or underwritten by TWC or Miramax, depending on the time period.  (*Id.* ¶ 183.)  Plaintiffs bring their nationwide class against all Defendants for alleged RICO violations.  (*Id.* ¶¶ 212-18.)  Plaintiffs' first state-law subclass is against TWC; the other against Miramax.  (*Id.* ¶¶ 184-85.)  The subclass definitions are the same as the nationwide class definition, except apply to TWC or Miramax depending on the time period.  (*See id.* ¶¶ 184-85.)  Only two Plaintiffs (Geiss and Thomas) bring state law subclasses against TWC.[4]

Plaintiffs allege that TWC's purported actions caused injury to Plaintiffs and the members of the putative class.  (*Id.* ¶¶ 2, 7.)  They allege that H. Weinstein's behavior, purportedly facilitated by TWC, caused Plaintiffs severe emotional and physical distress and injured Plaintiffs' business prospects, career, and reputation.  (*Id.* ¶ 2.)  Plaintiffs allege that the last act of the purported "Weinstein Sexual Enterprise" — a telephone call to Plaintiff Kendall — occurred in 2017, however, they do not allege that this act was by or at the direction of TWC.  (*Id.* ¶ 7.)  In fact, Plaintiffs do not identify any purported actions by TWC that they allege caused them injury or will likely cause them future injury.

---

[4]   The state law causes of action against TWC are for negligent supervision and retention, civil battery, assault, ratification, and intentional and negligent infliction of emotional distress.  (Compl. ¶¶ 225-30, 238-44, 251-56, 265-72, 281-88, 295-300.)

<u>**ARGUMENT**</u>

**I.    LEGAL STANDARDS FOR A MOTION TO DISMISS AND MOTION TO STRIKE CLASS ALLEGATIONS**

It is well established that in order to survive a motion to dismiss and state a viable claim, a complaint must allege sufficient facts, which, if accepted as true, state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.  Importantly, it is not enough to allege facts that merely raise the "sheer possibility that a defendant has acted unlawfully," nor is it sufficient to rely on "labels and conclusions" or "naked assertion[s]" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678.  Rather, the Complaint must allege facts that move a claim "across the line from conceivable to plausible." *Twombly*, 550 U. S. at 570.  Where a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678.  Though this Court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.  Where, as here, the Complaint fails to state a "plausible" claim, the Complaint should be dismissed early and "at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 557-58.

Rule 12(f) provides that the Court may strike from a pleading "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  To prevail on a motion under Rule 12(f), the moving party must show that "[i] no evidence in support of the allegations would be admissible; [ii] that the allegations have no bearing on the issues in the case; and [iii] that to permit the allegations to stand would result in prejudice to the movant." *Landesbank Baden-Württemberg v. RBS Holdings USA, Inc.*, 14 F. Supp. 3d 488, 497 (S.D.N.Y. 2014).  A defendant can use Rule 12(f) to strike class allegations where it would be impossible to

certify a class as a matter of law or the purported class fails as a matter of law.  *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015).

Rule 23(d)(1)(D) provides that when the plaintiffs are trying to bring a class action under Rule 23, the Court may issue an order that requires the pleadings to be "amended to eliminate allegations about representation of absent persons and that the action proceed accordingly."  Fed. R. Civ. P. 23(d)(1)(D).  A party may move to strike class allegations in a complaint under this rule if the complaint "demonstrates that a class action cannot be maintained."  *Gitman v. Pearson Educ., Inc.*, No. 14 Civ. 8626, 2015 WL 5122564, at *3 (S.D.N.Y. Aug. 31, 2015).  This rule permits the Court to "order deletion of portions [of] a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims."  5 Moore's Fed. Practice § 23.145 (3d ed. 2007).

Rules 12(f) and 23(d)(1)(D) both permit a defendant to move to strike class allegations at the very beginning of the case before engaging in discovery.  Whether a defendant moves under Rule 12(f), Rule 23(d)(1)(D), or both, the analysis is the same.  *Compare Gordon v. Hain Celestial Group, Inc.*, 16 Civ. 652,  2017 WL 213815, at *6 (S.D.N.Y. Jan. 18, 2017), *with Kassman v. KPMG LLP*, 925 F. Supp. 2d 453, 462 (S.D.N.Y. 2013).  In the context of moving to strike class allegations, both rules are often read in connection with Rule 23(c)(1)(A), which provides that the court must determine whether to certify the action as a class action at "an early practicable time after a person sues."  Fed. R. Civ. P. 23(c)(1)(A); *see, e.g.*, *Gordon*, 2017 WL 213815, at *6.

In this case, the Complaint is precisely the type of baseless pleading that the Supreme Court rejected in *Twombly* and *Iqbal*.  Even if Plaintiffs' claims were to survive dismissal, the Court should strike their class allegations because Plaintiffs lack a legally cognizable interest in

representing a class and lack standing to bring them.  As a result, this Court should dismiss the Complaint for failure to state a claim, or strike all class allegations in the Complaint.

## II.     PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE RICO VIOLATION AGAINST TWC

Plaintiffs assert that TWC is liable under 18 U.S.C. § 1962(c) of the RICO statute, which creates a civil cause of action against a person who is employed by, or associated with, an enterprise engaged in interstate commerce, and conduct or participate in the conduct of its affairs "through a pattern of racketeering activity."  18 U.S.C. § 1962(c) (emphasis added); *see LLM Bar Exam, LLC v. Barbri, Inc.*, 16 Civ. 3770, 2017 WL 4280952, at *26-27 (S.D.N.Y. Sept. 25, 2017).  To plead a civil RICO claim under § 1962(c), a plaintiff must plead the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999); *see also Tardibuono–Quigley v. HSBC Mortg. Corp. (USA)*, No. 15 Civ. 6940, 2017 WL 1216925, at *5 (S.D.N.Y. Mar. 30, 2017) ("[T]o establish a defendant's violation of 18 U.S.C. § 1962, a plaintiff must allege 'the existence of seven constituent elements: [i] that the defendant [ii] through the commission of two or more acts [iii] constituting a pattern [iv] of racketeering activity [v] directly or indirectly invests in, or maintains an interest in, or participates in [vi] an enterprise [vii] the activities of which affect interstate or foreign commerce.'" (internal quotation marks omitted) (quoting *Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 17 (2d Cir. 1983)).

Courts have described a civil RICO claim as "'an unusually potent weapon — the litigation equivalent of a thermonuclear device.'"  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991), *aff'd*, 113 F.3d 1229 (2d Cir. 1997)).  "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts

should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)). RICO claims also expose defendants to potentially extremely burdensome discovery, further necessitating close court scrutiny at the pleading stage. *See Flexborrow LLC v. TD Auto Fin. LLC*, 255 F. Supp. 3d 406, 420 (E.D.N.Y. 2017) (holding in RICO action that due to "'the absence of any prima facie showing' of a cognizable pattern of racketeering activity, the Court will not 'subject defendant[ ] to the burden and expense of discovery (which likely would result in a fishing expedition)'" (quoting *Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190, 208 (S.D.N.Y. 2001)); *see also Twombly*, 550 U.S. at 558-59 (noting the importance of the court's job in weeding out pleadings lacking in specificity, especially where the claims may expose the defendant to expansive and expensive discovery).

Accordingly, courts have expressed skepticism toward civil RICO claims at the pleadings stage. *See DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) ("Plaintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations."). And although a civil RICO claim may be a "potent weapon," plaintiffs wielding RICO claims often miss the mark at that stage. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (discussing high rate of civil RICO cases resolved in defendants' favor both on the merits and at the motion to dismiss stage).

### A. Plaintiffs' Claims Are Barred By The RICO Statute Of Limitations

It is apparent from the face of their Complaint that Plaintiffs' claims are time-barred. The statute of limitations applicable for a civil RICO claim is four years. *Agency Holding Corp v. Malley-Duff & Assocs. Inc.*, 483 U.S. 143, 156 (1987). "Discovery of the injury, not discovery of

the other elements of a claim, is what starts the clock" for a RICO claim.  *Rotella v. Wood*, 528

U.S. 549, 555 (2000).

Here, Plaintiffs are individuals who, by their own pleading, were allegedly injured based

on their isolated, one-on-one dealings with H. Weinstein that allegedly occurred between 1993

and 2008.  (*See* Compl. ¶¶ 59, 61, 83, 95, 102-03, 114, 120.)  By their own pleading, Plaintiffs

admit that they were unaware of the alleged injuries at the time they occurred; none allege that

they learned of any purported injuries for the first time within the last four years.  (*Id.*)[5]  Thus, at

the very latest, the statute of limitations for all of Plaintiffs' RICO claims expired by 2012, and

therefore their claims should be dismissed as time-barred.  *In Re Trilegiant Corp., Inc.*, 11 F.

Supp. 3d 82, 107 (D. Conn. 2014) (granting motion to dismiss three plaintiffs' RICO claims as

time-barred).

### B.    Plaintiffs Also Have Not Pleaded The Requisite Predicate Acts

Plaintiffs also have failed to plead a RICO predicate act. To state a RICO violation of 18

U.S.C. § 1962(c), a plaintiff must first identify a predicate act of "racketeering activity," which

the RICO statute defines as certain specific criminal acts under federal and state laws.  *See* 18

U.S.C. § 1961(1) (listing all qualifying predicate criminal acts).  A plaintiff must also show that

each defendant committed "at least two acts of racketeering activity," "the last of which occurred

within ten years . . . after the commission of a prior act of racketeering activity."  18 U.S.C.

§ 1961(5); *see DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001).  Although at least two

---

[5]    While Kendall alleges that she suffered emotional distress and fear in 2017 based on receiving calls from someone purporting to be Seth Freeman and learning that her name was allegedly included on a "secret hit list" (Compl. ¶¶ 63, 70), as set forth *infra*, Section II.D, such alleged injuries are not RICO injuries and therefore do not serve to restart the statute of limitations on Kendall's RICO claims.  Likewise, Thomas alleges that in 2017 she heard rumors that casting directors had complained that she had publicly complained about H. Weinstein.  (*Id.* ¶ 120.)  This, too, is not an actionable injury under RICO.  *See Trs. of Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech., Inc.*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995).

predicate acts must be present to constitute a pattern, two acts alone will not always suffice to form a pattern.  *See, e.g.*, *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n.14 (1985).

Plaintiffs allege that the "Weinstein Sexual Enterprise" engaged in "racketeering activity" by purportedly committing three separate offenses, including: (i) a purported violation of 18 U.S.C. § 1512, relating to tampering with a witness, victim, or an informant (herein referred to collectively as "witness tampering"); (ii) a purported violation of 18 U.S.C. §§ 1590 and 1591, relating to sex trafficking, and (iii) purported wire and mail fraud.  (Compl. ¶ 196.); *see also* 18 U.S.C. § 1961(1).  As set forth below, Plaintiffs have failed to plausibly plead that TWC engaged in any such predicate acts to support their RICO claims, or engaged in a "pattern" of racketeering activity, and, therefore, the RICO claims against TWC should be dismissed.[6]

           1.     *Plaintiffs Fail To Plead A Viable Claim That TWC Engaged In Witness Tampering*

Plaintiffs allege generally and in purely conclusory fashion that the "Weinstein Sexual Enterprise" engaged in "multiple instances of tampering with a witness or victim in violation of 18 U.S.C. § 1512."  (Compl. ¶¶ 196, 215.)  Such a conclusory allegation is not sufficient to plausibly demonstrate that TWC engaged in any actionable witness tampering and should be disregarded by the Court.

The purely conclusory allegations contained in Paragraphs 196 and 215 of the Complaint — stating that the "Weinstein Sexual Enterprise" engaged in "multiple instances of tampering with a witness or victim in violation of 18 U.S.C. § 1512" — are the types of "labels and conclusions" or "naked assertion[s]" devoid of "further factual enhancement" that the Supreme Court has instructed courts to ignore on a motion to dismiss.  *See Iqbal*, 556 U.S. at 678.  Once

---

[6]    For the reasons set forth *infra*, Section IV.A.2., by Plaintiffs' own pleading, there is no basis for tolling Plaintiffs' RICO claims.

such conclusory allegations are disregarded, the Complaint contains nothing, let alone any viable *factual allegations*, plausibly suggesting that TWC allegedly "tampered with" any witness or victim in violation of 18 U.S.C. § 1512.  None of the Plaintiffs identify any TWC employee who allegedly tried to kill, threaten, or intimidate them, or to dissuade them from doing anything.  *See Miller v. Carpinello*, No. 06 Civ. 12940, 2007 WL 4207282, at *7 (S.D.N.Y. Nov. 20, 2007) (granting motion to dismiss RICO claim and finding plaintiff may not rely on alleged violation of Sections 1512 where among other things she failed to allege any defendant "hindered, delayed or prevented the communication of information to any law enforcement official or federal judge relating to any federal offense").

To the extent Kendall claims she was contacted by "Seth Freeman," an individual purporting to be a reporter for *The Guardian*, that is likewise insufficient to show "witness tampering."  (*See* Compl. ¶ 62.)  She alleges only that he asked her if she was going to talk to *The New York Times*.  (*Id.* ¶ 63.)  She does not allege that "Mr. Freeman" threatened or "tampered" with her in any way.  She does not even allege that he attempted to prevent her from reporting her story to *The New York Times*, far less that he prevented her from reporting her story to law enforcement or a federal judge as required by § 1512.  Importantly, she also does not allege that "Mr. Freeman" was employed by or directed to contact her by TWC.  In fact, Plaintiff does not even know who "Mr. Freeman" is (all she claims to know is that he is not employed by *The Guardian*) and, therefore, cannot link this alleged telephone call to any person at TWC — as this is nothing more than pure speculation.  (*Id.* ¶ 65.)

Moreover, Plaintiffs fail to allege any "official proceeding" in which they or other alleged, yet unidentified and unnamed, witnesses or victims were somehow prevented from participating.  The U.S. Attorney's Criminal Resource Manual, which provides guidance to

14

prosecutors on prosecution under the statute, states: "Section 1512 of Title 18 . . . proscribes conduct intended to illegitimately affect the presentation of evidence in federal proceedings or the communication of information to federal law enforcement officers.  It applies to 'official proceedings' before Congress, executive departments and administrative agencies as well as to civil and criminal judicial proceedings . . . ."  U.S.A.M. Criminal Resource Manual, Section 1729; *see* 18 U.S.C. § 1515(a)(1).  While an official proceeding need not be pending or about to be instituted at the time of the alleged offense, it must still be foreseeable, meaning the subject was aware that he was the subject of an existing federal investigation.  *United States v. Binday*, 804 F.3d 558, 590 (2d Cir. 2015).  A plaintiff must also establish some "nexus" between the act of tampering or concealment and the official proceeding at issue.  *See United States v. Desposito*, 704 F.3d 221, 230-31 (2d Cir. 2013).  Here, Plaintiffs fail to identify any such "official proceeding," either existing or foreseeable at the time of any alleged witness tampering, and therefore, for this additional reason, the Court should dismiss Plaintiffs' civil RICO claims against TWC.  *See Miller*, 2007 WL 4207282, at *7 (finding that plaintiff could not rely on alleged violations of Section 1512 as predicate act to support a RICO claim where she did not allege that any official proceeding was pending).

> 2.    *Plaintiffs Also Fail To Plead Any Viable Facts That TWC Engaged In Sex Trafficking*

Plaintiffs also allege violations of 18 U.S.C. §§ 1590 (slave trafficking) and 1591 (sex trafficking) as predicate acts under RICO.  (Compl. ¶ 196.)  While Plaintiffs aver that these statutes relate to "aggravated sex abuse," that is a far cry from the actual subject matter of these statutes, which are titled "Trafficking With Respect to Peonage, Slavery, Involuntary Servitude or Forced Labor" and "Sex Trafficking of Children by Force, Fraud, or Coercion" and were issued pursuant to the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA").

18 U.S.C. §§ 1590, 1591.  By their chosen case theory, Plaintiffs are trying to divert the Court's attention from the true subject matter of the statutes because the allegations here have no relation whatsoever to sex trafficking.

As the statute makes clear, the purpose of the TVPRA was to "combat trafficking in persons," which it defined as "a contemporary manifestation of slavery."  22 U.S.C. § 7101(a); *United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) (noting that "[c]ongress recognized that human trafficking, particularly of women and children in the sex industry, 'is a modern form of slavery and the largest manifestation of slavery today'" (quoting 22 U.S.C. § 7101(b)(1)).  The term "sex trafficking" is defined in the TVPRA as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."  22 U.S.C. § 7102.  Section 1590(a) states, in pertinent part, that it is a crime to "knowingly recruit[], harbor[], transport[], provide[], or obtain[] by any means, any person for labor or services in violation of this chapter."  Section 1591 states, in pertinent part, that: it is a crime to knowingly:

> (1) in or affecting interstate or foreign commerce, . . . recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person, or (2) benefit[], financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), . . . knowing . . . or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act.

Nothing in the Complaint suggests, let alone pleads any viable facts, any conduct remotely resembling "sex trafficking."  As an initial matter, no Plaintiff alleges engaging in a "commercial sex act."  *See Todd v. United States*, No. 11 Civ. 0470, 2012 WL 2952084, at *6 (W.D. Wash. June 26, 2012) (noting that the TVPRA relates to commercial sex acts that are necessarily economic in nature and is distinguishable from laws governing gender-motivated crimes).  Nor does any Plaintiff allege that she was recruited, enticed, harbored, transported, or

solicited for the purpose of a commercial sex act, or that the conduct impacted interstate or foreign commerce. Nor does any Plaintiff allege how TWC benefitted financially or otherwise from any such "venture." What is alleged, at most, are one-time unwelcome incidents committed by H. Weinstein completely unconnected to any sex trafficking scheme. Because Plaintiffs failed to allege a plausible "sex trafficking" claim under the TVPRA against TWC, this cannot serve as one of the requisite predicate acts supporting their RICO claim.

        3.    *Plaintiffs Fail To Plead Any Viable Facts With Particularity That TWC Engaged In Mail Or Wire Fraud*

Plaintiffs also allege that "the RICO defendants utilized the interstate [sic] and mail and wires for the purposes of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described therein." (Compl. ¶ 202.) Such claims of mail and wire fraud sound in fraud and thus must be pleaded with the requisite particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, which Plaintiffs fail to do here. *See Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1176-77 (E.D. Cal. 2017).

Rule 9(b) provides that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In cases in which a plaintiff makes specific averments of fraud as predicate acts for RICO claims, "Rule 9(b) calls for the complaint to specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 173 (2d Cir. 1999); *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1176-77. Here, Plaintiffs failed to plead with the requisite particularity that TWC engaged in any alleged wire or mail fraud.

The only allegations that aver that Defendants used the mails or wires are contained in

Paragraphs 201 through 204 of the Complaint.  Plaintiffs summarily allege the following:

- "The RICO Defendants used the mails and wires for the transmission, delivery, or shipment of the following by the RICO Defendants or third parties that were foreseeably caused to be sent as a result of Defendants' illegal scheme: (a) contracts between H. Weinstein and the Law Firms and Intelligence Participants; (b) wires among the Complicit Producers about H. Weinstein's sexual misconduct; (c) wires and mails between the Law Firms and the Intelligence Participants on the subject of H. Weinstein's sexual activities, his victims, and concealing his acts of sexual misconduct; (d) payments to the Law Firm Participants and Intelligence Participants to perform their roles in concealing H. Weinstein's sexual misconduct; (e) emails from the Law Firm Participants to lawyers retained by Class Members to encourage confidentiality in connection with accusations of sexual misconduct by H. Weinstein; (f) emails from the Intelligence Participants to Class Members in connection with inquiries or meetings designed to elicit information from Class Members using deception; (g) use of the wires by the Intelligence Participants to construct false identities and websites to deceive Class Members and journalists." (Compl. ¶ 201.)

- "The RICO Defendants utilized the interstate and mail and wires for the purpose of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described therein."  (*Id.* ¶ 202.)

- "The RICO Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, and other third-party entities in furtherance of the scheme."  (*Id.* ¶ 203.)

- "The RICO Defendants also communicated by U.S. Mail, by interstate facsimile, and by interstate electronic mail with various other affiliates, regional offices, divisions, and other third-party entities in furtherance of the scheme."  (*Id.* ¶ 204.)

Plaintiffs provide no further detail to support their generalized and self-serving allegation.

Therefore dismissal is warranted.

Importantly, Plaintiffs do not identify any of the following key elements required to plead

a claim of mail or wire fraud with particularity:  (i) any document involved in mail or wire fraud;

(ii) the persons who allegedly exchanged such documents; (iii) the alleged dates they transmitted

or shipped the mails or wires; (iv) any alleged fraudulent content contained in any such mail or

wire; or (v) the contents of any such transmission generally.  Thus, Plaintiffs fail to provide the

details of mail or wire fraud as required by Rule 9(b), rendering these allegations against TWC insufficient as a matter of law. *See Sony Music Entmt. Inc. v. Robison*, No. 01 Civ. 6415, 2002 WL 272406, at *5 (S.D.N.Y. Feb. 26, 2002) (dismissing RICO counterclaims because the defendants failed to specify the specific dates and details of the fraudulent communications, the people involved, and why the acts constituted fraud); *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1232 (E.D.N.Y. 1996) (dismissing RICO claims where mail and wire fraud predicate acts were not adequately pleaded; "the amended complaint contains sweeping and general allegations of mail and wire fraud directed at all the defendants rather than connecting the alleged fraud to the individual defendants"); *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1180 (dismissing RICO claim because plaintiffs failed to plead fraudulent racketeering activity with specificity under RICO, failed to allege a pattern of activity, and failed to allege a predicate offense of mail or wire fraud).  This failure to establish a sufficient RICO predicate act warrants dismissal of the RICO claim.

Additionally, to support a RICO claim against multiple defendants, Plaintiffs are required to allege two separate acts of fraud for each Defendant, and the circumstances pursuant to with each Defendant allegedly committed them. *Comm. to Protect Our Agric. Water*, 235 F. Supp. 3d at 1177; *see also DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud.").  Because Plaintiffs have not even alleged one act of fraud against TWC, the Court should dismiss Plaintiffs' civil RICO claim against TWC for this additional reason.

C.      **Plaintiffs Fail To Plead Viable Facts Of A Pattern Of Continued
        Racketeering Activity**

Plaintiffs also fail to plead viable facts of a pattern of racketeering activity. To plead a

"pattern" of racketeering activity, in addition to alleging that each defendant committed two

predicate acts of racketeering activity within a ten-year time period, 18 U.S.C. § 1961(5),

Plaintiffs must show that the predicate acts relied upon are "related, and that they amount to or

pose a threat of continued criminal activity." *Cofacredit, S.A.*, 187 F.3d at 242.  "Continued

criminal activity" may be shown by demonstrating either a closed period of repeated conduct, or

by pointing to past conduct that by its nature projects into the future with a threat of repetition.

*See Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir. 1987).  A

plaintiff in a RICO action must therefore allege either an open-ended or closed-ended pattern of

racketeering activity.  *GICC Capital Corp. v. Tech. Fin. Group, Inc.*, 67 F.3d 463, 466 (2d Cir.

1995).  A plaintiff must also allege that the defendants' activities were "neither isolated nor

sporadic." *Id.* at 467.

Here, Plaintiffs appear to allege an open-ended continuity scheme, as the Complaint

alleges that "The Weinstein Sexual Enterprise is an ongoing organization that functions as a

continuing unit."  (Compl. ¶ 194.)  However, this allegation alone is not enough to plausibly

plead open-ended racketeering activity as to TWC.  "To satisfy open-ended continuity, the

plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period

during which the predicate acts were performed." *Cofacredit, S.A.*, 187 F.3d at 242.  Here,

however, as Plaintiffs concede in the Complaint, TWC terminated H. Weinstein's employment

with the company in October 2017.  (Compl. ¶ 114.)  Accordingly, by the Complaint's own

terms, TWC has no continued professional affiliation with H. Weinstein, and therefore Plaintiffs

have failed to demonstrate that there is any ongoing threat of continued alleged "racketeering

activity" by TWC.  *See GICC Capital Corp.*, 67 F.3d at 466 (dismissing RICO claim as failing to allege open-ended continuity where it is clear the scheme was *inherently* terminable, stating "[i]t defies logic to suggest that a threat of continued looting activity exists when, as plaintiff admits, there is nothing left to loot").

### D.     Plaintiffs Have Failed To Adequately Allege Viable Facts Of A RICO Injury

Plaintiffs also fail to allege viable facts of a plausible RICO injury, and thus, by their own pleading, lack standing to bring such a claim.  A civil RICO plaintiff "only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation."  *Sedima, S.P.R.L.*, 473 U.S. at 496; 18 U.S.C. § 1964(c).

In order to establish standing, a civil plaintiff must show:

1.    that she suffered an injury-in-fact — an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical;

2.    that there was a causal connection between the injury and the conduct complained of; and

3.    that it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Carver v. City of New York*, 621 F.3d 221, 225 (2d Cir. 2010).  A plaintiff "must allege facts demonstrating both that plaintiff's injury is to his business or property — and not physical, emotional or reputational harm or any economic aspect of such harm — and that plaintiff's injury is proximately caused by the acts constituting the RICO violation."  *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2004).  Damages arising from emotional injuries are not recoverable under RICO.  *Id.*; *see also Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003) ("RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries.");  *Tsipouras v. W &*

21

*M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) ("[M]ere injury to character, business reputation, and/or the intentional infliction of emotional distress are not actionable under civil RICO.").

Here, Plaintiffs do not plead any viable ***facts*** suggesting that any Plaintiff suffered injury to their business or property that is actionable under RICO. Plaintiffs' conclusory allegation that "Plaintiffs have been and are continuing to be injured in their business or property" is not entitled to any weight. *See Iqbal*, 556 U.S. at 678. The remaining allegations do not make out an actionable injury under RICO. Indeed, Plaintiffs primarily allege damages arising from alleged emotional injury or reputational harm that are ***non-actionable under RICO***. (*See, e.g.*, Compl. ¶¶ 59, 61, 63 and 70 (Kendall alleging non-actionable injuries such as shame, depression, loss of self-worth, post-traumatic stress, emotional trauma, emotional distress, and significant fear); ¶ 83 (Brock alleging non-actionable injuries such as depression, lack of self-confidence and loss of reputation, and fear of auditioning and travel); ¶ 95 (Sagemiller alleging non-actionable injury of fear), ¶ 102 (Geiss alleging non-actionable injuries of deep distress, fear, helplessness, anger, and depression), ¶ 114 (Thomas alleging non-actionable injuries of deep distress, fear, helplessness, anger, and depression, and damage to her reputation among casting directors), ¶ 120 (Klatt alleging non-actionable injury of a change in how she interacts personally and professionally based on fear).)

While Plaintiffs Geiss, Thomas, and Klatt also allege that they suffered various forms of professional harm, those allegations are too speculative to demonstrate an actionable injury under RICO. A plaintiff must allege "concrete financial loss" in order to plead an injury under RICO. *Makowski v. United Bd. of Carpenters & Joiners of Am.*, No. 08 Civ. 6150, 2010 WL 3026510, at *12 (S.D.N.Y. Aug. 2, 2010) (finding that the plaintiff's claim that the union

extorted his "intangible rights" due to corruption and alleged racketeering activity which harmed

him and all union members, failed to satisfy the RICO injury requirement as he had not alleged

any "concrete financial loss"). "[A] RICO plaintiff may not recover for speculative losses or

where the amount of damages is unprovable." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,

530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (dismissing

RICO claim, finding that the plaintiff's speculative assertion that royalty rates it received were

lower than what it could have earned if not for the RICO violation were not sufficiently concrete

to state a RICO injury).

Here, Geiss alleges in conclusory fashion that she lost a three-film deal, even though she

admits that she turned down H. Weinstein's alleged offer. (Compl. ¶¶ 101, 103.) She also

alleges loss of other unspecified opportunities at TWC, and that her professional career in the

entertainment industry was damaged in unspecified ways. (*Id.* ¶ 103.) Thomas alleges that she

did not receive a nanny position. (*Id.* ¶¶ 113-14.) But she does not allege that she already held

the nanny position or that she would have received the nanny position if not for her alleged

interaction with H. Weinstein. (*Id.*) Klatt alleges that she lost a part that H. Weinstein had

offered her mere moments before, and that she lost other unspecified opportunities at Miramax,

TWC, and elsewhere. (Compl. ¶ 120.) These alleged injuries by Geiss, Thomas, and Klatt are

precisely the kind of speculative, unquantifiable injuries that are not actionable under RICO. *See*

*Makowski*, 2010 WL 3026510, at *12 (holding that the plaintiff's claims that he suffered harm

were far too speculative to provide standing); *World Wrestling Entm't, Inc.*, 530 F. Supp. 2d at

521; *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 560 (S.D.N.Y. 2014) (finding that the plaintiff

lacked standing where he could not show quantifiable injury to his business or property based on

his allegation that he expected to receive a larger finder's fee than he actually received).

Furthermore, even if the alleged professional harms asserted by Geiss, Thomas, and Klatt were actionable injuries under RICO, Plaintiffs fail to demonstrate that such alleged injuries were directly caused by Defendants' alleged RICO violations and thus dismissal is warranted. *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006) ("When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries."). A mere "showing that the defendant violated § 1962, the plaintiff was injured, and the defendant's violation was a 'but for' cause of plaintiff's injury" is insufficient to meet the requirement in § 1964(c) that the plaintiff's injury be "by reason of" the RICO violation. *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 265-66 (1992). Proximate causation requires "some ***direct relation*** between the injury asserted and the injurious conduct alleged." *Id.* at 268 (emphasis added).

The predicate acts upon which Plaintiffs base their RICO claims are alleged witness tampering, sex trafficking, and wire and mail fraud. (Compl. ¶ 196.) The alleged professional injuries to Geiss, Thomas, and Klatt are purported lost jobs, lost roles, and lost job opportunities. (*Id.* ¶¶ 103, 113-14, 120.) Yet, Plaintiffs fail to plead facts linking any alleged witness tampering, sex trafficking, or wire or mail fraud to the alleged lost job opportunities. *See Holmes*, 503 U.S. at 268. Here, as Plaintiffs themselves plead on the face of their Complaint, the direct cause of Plaintiffs' asserted harms was H. Weinstein's alleged actions, not any alleged racketeering activity by TWC. For example, both Klatt and Geiss allege that H. Weinstein denied them roles and/or a three-film deal after they denied his advances. (Compl. ¶¶ 101-03, 117-20.) They fail to assert, because they cannot, that any alleged witness tampering, wire or mail fraud, or sex trafficking was the actual direct cause of such alleged injuries. For these reasons, Plaintiffs RICO claims also should be dismissed. *See Sperber v. Boesky*, 849 F.2d 60,

24

64 (2d Cir. 1987) (dismissing RICO action for failure to allege proximate causation, where plaintiff failed to allege that wire and mail fraud *directly* deprived plaintiffs of money or property); *Red Ball Interior Demolition Corp. v. Palmadessa*, 874 F. Supp. 576, 587 (S.D.N.Y. 1995) (dismissing RICO action for failure to allege proximate causation where plaintiffs did not allege that they were directly harmed by the predicate mail and wire fraud, only that their ability to discover or prevent defendants other wrongful acts was somewhat impaired or limited").

Finally, the Court should dismiss the RICO claims of Kendall, Sagemiller, Brock, and Klatt against TWC because these Plaintiffs do not allege any conduct by TWC relating to them, and as such, no TWC conduct could have proximately caused any of their alleged injuries.

## III.  PLAINTIFFS FAIL TO PLEAD A PLAUSIBLE CLAIM AGAINST TWC OF A CONSPIRACY TO VIOLATE RICO

For the same reasons set forth in the previous section, this Court should dismiss Count II of the Complaint, "Conspiring to Violate 18 U.S.C. § 1962(c)," brought forth under 18 U.S.C. § 1962(d).  In order to maintain a RICO conspiracy claim, Plaintiffs must properly plead a substantive RICO violation.  *See Condos Bros. Constr. Corp. v. Main St. Am. Assurance Co.*, No. 16 Civ. 4769, 2017 WL 5591625, at \*4 (E.D.N.Y. Nov. 17, 2017).  It is fundamental that at the motion to dismiss stage, "analysis of any RICO conspiracy claim begins with the premise that it necessarily fails where the underlying substantive claim is insufficiently pled."  *See In Re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 108 (D. Conn. 2014); *Dandong Old N.-E. Agric. & Animal Husbandry Co. v. Hu*, No. 15 Civ. 10015, 2017 WL 3328239, at \*9 (S.D.N.Y. Aug. 3, 2017) ("[B]oth [defendants] are charged with conspiracy to commit RICO under 18 U.S.C. § 1962(d), which is analytically dependent on subsection (c)."); *Katzman*, 167 F.R.D. at 658 (S.D.N.Y. 1996) (dismissing RICO conspiracy claim because "failure to plead facts that would

satisfy the pleading requirements of § . . . 1962(c) necessarily dooms any claim [plaintiff] might assert arising under § 1962(d)").

As detailed above, Plaintiffs have not adequately alleged a substantive violation of RICO under 18 U.S.C. § 1962(c), and accordingly the Court should also dismiss Plaintiffs' claim for relief based on a civil RICO conspiracy.

## IV.    GEISS AND THOMAS FAIL TO PLEAD PLAUSIBLE INDIVIDUAL STATE LAW CLAIMS AGAINST TWC

In addition to the RICO class claims asserted by all Plaintiffs against TWC, Geiss and Thomas also each assert the following six individual state law claims against TWC:  Count Four (alleged negligent supervision and retention); Count Six (alleged civil battery); Count Eight (alleged assault); Count Ten (alleged intentional infliction of emotional distress); Count Twelve (alleged negligent infliction of emotional distress); and Count Fourteen (alleged ratification).  As set forth below, all of these claims against TWC should be dismissed as time-barred. Furthermore, (i) the claims of civil battery, assault, and negligent and intentional infliction of emotional distress should be dismissed against TWC because Plaintiffs have not adequately pleaded a theory of vicarious liability against TWC; (ii) the claims of negligent supervision and retention and negligent infliction of emotional distress against TWC should be dismissed because Plaintiffs have failed to plead that TWC owed a duty to Geiss or Thomas; and (iii) the ratification claim against TWC should dismissed because ratification is not a stand-alone cause of action.

### A.    The Near Decade-Old State Law Claims Against TWC Should Be Dismissed As Time-Barred

The statute of limitations on all six state law claims brought by both Geiss and Thomas against TWC ran out years ago.  Geiss's state law claims all stem from one alleged incident with H. Weinstein that allegedly occurred in 2008 at a hotel in Park City.  (Compl. ¶¶ 96-103.)

Likewise, Thomas's state law claims all stem from one alleged incident with H. Weinstein that allegedly occurred in 2008 at H. Weinstein's Connecticut home. (*Id.* ¶¶ 104-14.[7])  Because, as set forth below, none of the statutes of limitations for these claims is more than three years and Plaintiffs have failed to plead an adequate basis for tolling of these statutes, these claims are all time-barred and should be dismissed.

1.      *By Plaintiffs' Own Pleading, The Individual State Law Claims Of Geiss And Thomas Against TWC Are Time-Barred*

Although Geiss's and Thomas's interactions with H. Weinstein occurred in Utah and Connecticut, respectively, the Court is required to apply New York's "borrowing" statute, CPLR § 202, to determine which state's limitation period applies to their state law claims.[8]  New York's borrowing statute provides that when non-residents (like Geiss and Thomas) bring a lawsuit in New York, but their causes of action accrued in a different state, the Court must apply the limitations period of either New York or the state where the cause of action accrued, whichever is shorter.  CPLR § 202; *Vincent*, 915 F. Supp. 2d. at 562; *Glob. Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528 (1999).  In connection with this inquiry, a cause of action accrues "at the time and in the place of the injury."  *Glob. Fin. Corp.*, 93 N.Y.2d at 529.

Applying New York's borrowing statute to Geiss's and Thomas's state law claims — *i.e.*, determining the shorter of the New York and Utah/Connecticut statute of limitations for each claim — the following limitation periods apply:

---

[7]      Thomas alleges that in December 2017, she was "informed" that several casting directors complained about Thomas's public declaration that "she will not audition for roles for productions in which known predators are involved."  (Compl. ¶ 114.)  This allegation is irrelevant to the statute of limitations as it applies to TWC because it does not involve any conduct or action by TWC.

[8]      Geiss and Thomas invoke this Court's diversity jurisdiction under 29 U.S.C. § 1332(d)(2).  (Compl. ¶ 9.)  Therefore, because jurisdiction over Geiss's and Thomas's state law claims rests on diversity, New York's choice-of-law rules and statutes of limitations apply.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Vincent v. Money Store*, 915 F. Supp. 2d. 553, 562 (S.D.N.Y. 2003) ("A federal court sitting in diversity applies the forum state's statute of limitations provisions, as well as any provisions that govern the tolling of the statute of limitations.") (citing *Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir. 1990)).

- **Negligent Supervision And Retention (Count Four)**

  o <u>Geiss</u>:  New York's three-year limitation period.  CPLR § 214(5); *Green v. Emmanuel African Methodist Episcopal Church*, 278 A.D.2d 132, 132 (1st Dep't 2000).[9]

  o <u>Thomas</u>:  Connecticut's two-year limitation period.  Ct. Gen. Stat. § 52-584.

- **Civil Battery (Count Six)**

  o <u>Geiss and Thomas</u>:  New York's one-year limitation period.  CPLR § 215(3).[10]

- **Assault (Count Eight)**

  o <u>Geiss and Thomas</u>:  New York's one-year limitation period.  CPLR § 215(3).[11]

- **Intentional Infliction Of Emotional Distress (Count Ten)**

  o <u>Geiss and Thomas</u>:  New York's one-year limitation period.  CPLR § 215(3).[12]

- **Negligent Infliction Of Emotional Distress (Count Twelve)**

  o <u>Geiss</u>:  New York's three-year limitation period.  *Yong Wen Mo v. Gee Ming Chan*, 17 A.D.3d 356, 359-60 (2d Dep't 2005).[13]

  o <u>Thomas</u>:  Connecticut's two-year limitation period.  Ct. Gen. Stat. § 52-584.

- **Ratification (Count Fourteen)**

  o <u>Geiss and Thomas</u>: There is no applicable statute of limitation because ratification is not a stand-alone cause of action in Connecticut, New York, or Utah.  Geiss and Thomas seem to concede this point.  (Compl. ¶ 300 (noting that their cause of action for ratification is based on an attempt to hold TWC

---

[9]   Utah's limitation period for negligent supervision/retention is four years.  Utah Code Ann. § 78-12-25(3); *Retherford v. AT&T Commc'ns*, 844 P.2d 949, 977 (Utah 1992).

[10]   Utah's limitation period for civil battery is four years.  Utah Code Ann. § 78B-2-307(3).  Connecticut's limitation period is three years.  Ct. Gen. Stat. § 52-577.

[11]   Utah's limitation period for assault is four years.  Utah Code Ann. § 78B-2-307(3).  Connecticut's limitation period is three years.  Ct. Gen. Stat. § 52-577.

[12]   Utah's limitation period for intentional infliction of emotional distress is four years.  Utah Code Ann. § 78B-2-307(3).  Connecticut's limitation period is three years.  Ct. Gen. Stat. § 52-577.

[13]   Utah's limitation period for negligent infliction of emotion distress is four years.  Utah Code Ann. § 78B-2-307(3).

liable "for [H. Weinstein's] acts of assault, battery, and intentional or
negligent infliction of emotional distress.").)  Thus, even if it could be treated
as an independent claim, it would have the same statute of limitations as the
corresponding assault, battery, or intentional or negligent infliction of
emotional distress claim on which the ratification claim is based.  In other
words, as set forth above, the statute of limitations for this claim would be no
more than three years if it applied at all.

Because both Geiss and Thomas claim their alleged injury stemmed from H. Weinstein's
conduct in 2008 (Compl. ¶¶ 96, 104), the statute of limitations on all of their individual state law
claims would have expired no later than 2011.  Because Geiss and Thomas did not file this
lawsuit until December 2017, the claims are all time-barred.  Indeed, even if the Court were to
apply the longest possible limitation period (which would be Utah's four-year limitation period)
for all of the claims, their claims are still time-barred by more than five years.  As a result, the
Court should dismiss all their state law claims against TWC.

## 2. *Plaintiffs Have Failed To Plead Viable Facts That Tolling Should Apply To The Individual State Law Claims*

Because their state law claims are time-barred based on the allegations in the Complaint,
Geiss and Thomas have the burden to plausibly allege that the limitations period on these claims
should be tolled.  *Overall*, 52 F.3d at 403; *Twersky*, 993 F. Supp. 2d at 436.  Ostensibly
recognizing this obligation, Geiss and Thomas allege that the Court should toll their claims based
on three theories, including:  (i) the doctrine of equitable estoppel; (ii) duress; and (iii) because
the alleged violation of the law purportedly constitutes a continuing violation.  (Compl. ¶¶ 168-
82.)

Because, as set forth *supra*, the statutes of limitations for New York and Connecticut
apply to Geiss's and Thomas's state law claims, those states' laws govern whether those
untimely claims may be subject to tolling.  *Smith Barney, Harris Upham & Co., Inc. v. Luckie*,
85 N.Y.2d 193, 207 (1995) (in borrowing the foreign statute, "[a]ll the extensions and tolls

applied in the foreign state must be imported with the foreign statutory period, so that the entire foreign statute of limitations applie[s], and not merely its period.") (emphasis and internal quotation and citation omitted). As set forth below, however, based on Plaintiffs' own pleading, none of these exceptions apply under either Connecticut or New York law, and therefore these claims against TWC are all barred by the statute of limitations.

a.    New York Law Regarding Tolling Exceptions

New York construes tolling doctrines as narrowly as possible. *See McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548 (1980). Tolling through equitable estoppel applies only to circumstances where a plaintiff is "induced by fraud, misrepresentations or deception to refrain from filing a timely action" and that plaintiff demonstrates reasonable reliance on the defendant's misrepresentations. *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (2006) (quotation and citation omitted). "Duress" tolling is only available when duress is an element of the alleged cause of action and the tortious conduct persists as a "continuous wrong." *Overall v. Estate of LHP Klotz*, 52 F.3d 398, 404 (2d Cir. 1995). Further, the continuous violation doctrine tolls the limitation period only to the date of the last wrongful act when there is a series of continuing wrongs. *Selkirk v. New York*, 249 A.D.2d 818, 819 (3d Dep't 1998).

All three of these New York tolling doctrines necessarily focus on the conduct that formed the basis for the various causes of action, not the alleged *effects* of such acts. *Zumpano*, 6 N.Y.3d at 675-76 (rejecting application of equitable tolling where plaintiffs were aware of their own abuse, could have brought an intentional tort cause of action against their abusers, and were aware of the entity that employed their abusers); *Overall*, 52 F.3d at 406-07 (rejecting claims for "duress" tolling for claims of assault, battery, and intentional infliction of emotional distress where the alleged tortious conduct ended decades earlier); *Selkirk*, 249 at 818 (rejecting

application for tolling under the continuous act exception because such tolling cannot be

predicated "on the continuing effects of earlier unlawful conduct").

b.    <u>Connecticut Law Regarding Tolling Exceptions</u>

In order to establish equitable estoppel under Connecticut law, a plaintiff must change her

position in reliance on an act or statement by a defendant that was calculated or intended to

induce the plaintiff to believe certain facts existed and to act on that belief. *Buell Indus., Inc. v.*

*Greater N.Y. Mut. Ins. Co.*, 791 A.2d 489, 502 (2002). Connecticut law does not recognize

"duress" tolling. Rather, in order to act under duress, a plaintiff must establish that she acceded

to a defendant's wrongful act or threat and that conduct induced "a fearful state of mind" that

made it impossible to exercise her own free will. *Chase Manhattan Mortg. Corp. v. Machado*,

850 A.2d 260, 265 (Conn. Ct. App. 2004). Lastly, Connecticut law recognizes tolling by a

continuous course of conduct only where there is "evidence of the breach of a duty that remained

in existence after commission of the original wrong" and that duty remained in existence during

the applicable limitation period. *Stuart v. Snyder*, 8 A.3d 1126, 1129-30 (Conn. Ct. App. 2010).

In order to establish that a duty "continued to exist after the cessation of the act or omission

relied upon," there must be either a "special relationship between the parties giving rise to such a

continuing duty" or later wrongful conduct by the defendant that related to the prior act. *Id.* at

1230 (citations omitted). In the case of intentional torts, the conduct at issue must have occurred

within the applicable limitation period. *Id.* at 1226.

c.    <u>Geiss And Thomas Fail To Establish Any Basis That Their<br>Time-Barred Claims Should Be Tolled</u>

Plaintiffs have failed to allege facts sufficient to demonstrate that Geiss's and Thomas's

untimely claims should be tolled based on theories of equitable estoppel, duress, or a continuous

violation. Neither Geiss nor Thomas allege any facts suggesting that they acted on a

31

misrepresentation made by TWC (or any other Defendant), which dooms their claims for equitable estoppel.  *See Zumpano*, 6 N.Y.3d at 666; *Buell Indus., Inc.*, 791 A.2d at 502. Similarly, neither pleaded any allegations that TWC somehow prevented them from exercising their own free will or that the alleged tortious conduct continued during the applicable limitation periods.  This dooms their claims for both "duress" tolling and tolling under a theory of continuing violation.  *See Overall*, 52 F.3d at 404; *Selkirk*, 249 A.D.2d at 818; *Chase Manhattan Mortgage Corp.*, 850 A.2d at 265; *Stuart*, 8 A.3d at 1130.

The Court should reject any argument by Plaintiffs that Geiss's and Thomas's claims should be tolled until the time that *The New York Times* published its article about H. Weinstein. (*See* Compl. ¶ 181.)  The court's decision in *Twersky v. Yeshiva University*, 993 F. Supp. 2d 429, 436-38 (S.D.N.Y. 2014), makes clear that Geiss and Thomas cannot wait to bring claims until an article has been published and then claim tolling.  In *Twersky*, the plaintiffs brought their lawsuit in the wake of an article that discussed allegations about a teacher at their former high school. *Id.* at 436.  The court rejected the plaintiffs' argument that it was only after publication of the article that they learned other defendants were allegedly aware of the conduct at issue.  *Id.* at 440.  Instead, the court dismissed their claims as time-barred because the plaintiffs knew they were subject to wrongful conduct, they knew who had subjected them to this conduct, and they knew who employed the perpetrators and could point to no misrepresentation made by the defendants.  *Id.* at 447.

Plaintiffs' tolling argument should be dismissed for the same reasons that the court rejected the same argument made by plaintiffs in *Twersky*.  Like those plaintiffs, Geiss and Thomas were aware of the alleged conduct on which they base their claims, knew the identity of H. Weinstein (Compl. ¶¶ 96, 104), knew that TWC employed H. Weinstein (*id.* ¶¶ 96, 101, 103,

105, 114), and point to no misrepresentation by any Defendant.  Accordingly, all of Geiss's and

Thomas's state law claims against TWC should be dismissed.

> **B.    The Individual Claims Of Civil Battery, Assault, And Negligent And
> Intentional Infliction Of Emotional Distress Against TWC Should Be
> Dismissed Because Plaintiffs Geiss And Thomas Have Failed To Plead
> A Plausible Theory Of Vicarious Liability**

The individual claims of civil battery, assault, and negligent and intentional infliction of

emotional distress against TWC are all based on conduct allegedly committed by H. Weinstein.

(Compl. ¶¶ 239-41, 252-53, 258-61, 266-69.)  Plaintiffs Geiss and Thomas seek to hold TWC

vicariously liable for this alleged conduct based on the theories of *respondeat superior* and

ratification.  (*Id.* ¶¶ 242-44, 254-56, 262-64, 270-72.)  Plaintiffs have failed to plead facts

demonstrating a plausible claim of vicarious liability under either theory.

> 1.    *Plaintiffs Geiss And Thomas Have Failed To Plead Facts
> Demonstrating That Liability May Be Extended To TWC Based On
> A Theory Of Respondeat Superior*

To assert a claim premised on *respondeat superior* liability, a plaintiff must plead facts

showing, among other things, that the tortious conduct causing the alleged injury was undertaken

within the scope of the employee's duties to the employer and was thus in furtherance of the

employer's interests.  *See, e.g.*, *K.I. v. New York City Bd. of Educ.*, 256 A.D.2d 189, 191 (1st

Dep't 1998) (noting that *respondeat superior* liability will not be found where tortious conduct

was outside scope of volunteer's duties). "An employer will not be held liable under [the

doctrine of *respondeat superior*] for actions which were not taken in furtherance of the

employer's interest and which were undertaken by the employee for wholly personal motives."

*Galvani v. Nassau Cnty. Police Indemnification Review Bd.*, 242 A.D.2d 64, 68 (2d Dep't 1998).

On a motion to dismiss, if the court "concludes that the conduct complained of cannot be

considered as a matter of law within the scope of employment, then the court must dismiss the

complaint for failure to state a claim." *Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 329 (S.D.N.Y. 1996) (granting motion to dismiss because employee's alleged sexual misconduct was not within the scope of his employment).

It is well established under New York law that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context. *See Judith M. v. Sisters of Charity Hosp.*, 93 N.Y.2d 932, 933 (1999) (sexual abuse is a departure of employee's duties for personal motives unrelated to employer's business). Courts in this jurisdiction regularly dismiss claims against employers on this basis. *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995) (dismissing claim against employer based on theory of *respondeat superior* liability because employee's alleged sexual assault fell outside the scope of his employment as a matter of law), abrogated on other grounds by *Chiaramonte v. Animal Med. Ctr.*, 677 F. App'x 689, 691 (2d Cir. 2017); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 678-80 (S.D.N.Y. 2014) (dismissing claim based on theory of *respondeat superior* liability where victim alleged she was sexually assaulted by perpetrator whose employment duties included luring women to hotel for benefit of prince and his entourage were insufficient to state claim for *respondeat superior* liability under New York law against perpetrator's employer, absent any allegation that the assault furthered employer's business interests or that the misconduct was part of any actual duty perpetrator had to employer); *Wait v. Beck N. Am. Inc.*, 241 F. Supp. 2d 172, 181 (N.D.N.Y. 2003) (employer not vicariously liable when the supervisor's conduct consisted of an alleged sexual battery, offensive touching, unwarranted reprimands, and attempts to undermine plaintiff's work even when alleged acts occurred during business hours).

34

Here, Plaintiffs Geiss and Thomas fail to plead facts demonstrating that H. Weinstein's alleged tortious conduct arose out of anything other than purely personal motives or how it furthered TWC's business interests in any way.  As an initial matter, Plaintiffs do not allege that TWC sought or encouraged H. Weinstein to engage in tortious conduct toward Geiss or Thomas. Nor do they allege that it was part of his job duties to harass or assault aspiring actresses. Plaintiffs do not even attempt to explain how TWC benefitted or could have benefitted from H. Weinstein's alleged behavior.  It defies logic to suggest that H. Weinstein somehow served TWC's interests by advancing his own prurient interests or that TWC's business plan was to lure potential actresses into business meetings with H. Weinstein so that he could assault them.  It is a ludicrous proposition that cannot survive the plausibility requirements of *Twombly* and *Iqbal*. Because Plaintiffs have failed to allege how TWC benefited from or participated in any alleged conduct, it is evident that H. Weinstein's alleged conduct was fueled purely by personal motives and was outside the scope of his employment.

This argument is even more compelling with respect to Thomas's claims against TWC. As Thomas alleges, her interaction with H. Weinstein occurred in the context of an interview in H. Weinstein's private home for a personal nanny position; it did not relate in any way to a potential film role or a job with TWC.  (Compl. ¶¶ 104-06.)  Indeed, Thomas admits that she did not seek to use her nanny work as an opportunity to advance her acting career.  (*Id.* ¶ 105.)  To the extent that Thomas alleges that she coordinated with H. Weinstein's TWC assistants when interviewing for the nanny position, that is not enough either, as Weinstein's assistants held lower-level positions, and there are no allegations that TWC was aware that H. Weinstein was using his assistants to assist with his personal hiring of a nanny.

For these reasons, Geiss's and Thomas's individual claims of civil battery, assault, and negligent and intentional infliction of emotional distress against TWC should be dismissed. *See Judith M.*, 93 N.Y.2d at 933; *Tomka*, 66 F.3d at 1317; *Alsaud*, 12 F. Supp. 3d at 678; *Wait*, 241 F. Supp. 2d at 181.

> 2.   *Plaintiffs Geiss And Thomas Have Not Pleaded Facts Demonstrating That Liability May Be Extended To TWC Based On A Theory Of Ratification*

Plaintiffs have also failed to plead any viable facts demonstrating that TWC has somehow "ratified" the alleged conduct of H. Weinstein that would thereby render the company liable for his alleged acts. Plaintiffs allege that TWC "ratified" H. Weinstein's conduct on the ground that TWC "had investigated or knew of the acts and omissions of [H.] Weinstein and TWC's employees, managers, supervisors, executives, and directors were informed that Weinstein was sexually abusing female actors and members of the entertainment industry and refused to take any action to stop him," "hid this information so that Weinstein could continue to work for TWC," and "contract[ed] with [H.] Weinstein that he could not be fired for [his conduct]." (Compl. ¶¶ 127, 298.) These allegations are not sufficient to extend liability to TWC for H. Weinstein's conduct.

As an initial matter, ratification is a principle that applies in the context of contract law, not tort law. *See Clark v. Buffalo Wire Works Co.*, 3 F. Supp. 2d 366, 372 n.5 (W.D.N.Y. 1998) (noting that ratification is a "contract doctrine" pursuant to which an otherwise voidable agreement is confirmed and thereby made valid); *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334, 347 (S.D.N.Y. 2007); *RLI Ins. Co. v. Athan Contracting Corp.*, 667 F. Supp. 2d 229, 232 (E.D.N.Y. 2009). Neither Geiss nor Thomas bring contract or quasi-contract claims against TWC, and therefore, they have failed to plead an actionable theory of liability premised on ratification.

To the extent ratification may apply in a tort context — which it may not — TWC cannot be deemed to have ratified H. Weinstein's alleged conduct because Geiss and Thomas fail to plead any viable facts demonstrating that TWC had knowledge of all material facts of the alleged incidents between H. Weinstein and the two Plaintiffs or that it took some action to "ratify" such conduct.  *See Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 233 (4th Dep't 1982) (noting that ratification of the acts of an agent occurs only where the principal has ***full knowledge of all material facts and takes some action to affirm the agent's actions***) (emphasis added); *see also Bernstein v. Centaur Ins. Co.*, 644 F. Supp. 1361, 1371 (S.D.N.Y. 1986); *Botticello v. Stefanovicz*, 177 Conn. 22, 28 (1979).

Neither Geiss nor Thomas allege that they or anybody else informed any employee of TWC of their alleged interactions with H. Weinstein, far less than TWC had knowledge of ***all material facts*** regarding such alleged incidents.  Indeed, Thomas admits that she did not disclose H. Weinstein's alleged conduct until after TWC terminated his employment.  (Compl. ¶ 114.) Likewise, Plaintiffs fail to plead with facts any action by TWC that amounts to ratifying such alleged conduct.  To the contrary, Plaintiffs themselves admit that TWC's contract with H. Weinstein imposed hefty and increasing financial penalties on H. Weinstein if he "treated someone improperly in violation of the company's Code of Conduct."  (*Id.* ¶ 132.)  This can hardly be deemed "ratification" by TWC of any alleged improper conduct between H. Weinstein and Geiss or Thomas.

For these reasons, Plaintiffs' theory of ratification fails as pleaded against TWC.

### C.     The Individual Claims Of Negligent Retention And Supervision Against TWC Should Be Dismissed Because The Alleged Conduct Did Not Occur On TWC's Premises Or With TWC Chattels

To state a claim for negligent retention or supervision, a plaintiff must allege, in addition to the elements of standard negligence, that: "(1) the tort-feasor and the defendant were in an

employee-employer relationship, (2) the employer knew or should have known of the

employee's propensity for the conduct which caused the injury prior to the injury's occurrence,

and (3) that the tort was committed on the employer's premises or with the employer's chattels."

*Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).  Here, the negligent retention and

supervision claims against TWC should be dismissed because, as Geiss and Thomas admit, the

alleged incidents pursuant to which their claims arise did not occur on TWC's premises, nor do

they allege that the incidents involved TWC's chattels.  Geiss alleges that the incident giving rise

to her claims occurred in H. Weinstein's private hotel room.  (Compl. ¶ 97.)  Thomas alleges that

the incident giving rise to her claims occurred in H. Weinstein's personal home.  (*Id.* ¶ 107.)

Neither Geiss nor Thomas identify any of TWC's chattels that were purportedly used in

connection with the alleged incidents giving rise to their claims.  For these reasons, their

negligent retention and supervision claims against TWC should be dismissed.  *See Ehrens*, 385

F.3d at 236 (affirming dismissal of negligent supervision cause of action where plaintiff

acknowledged that incidents of sexual assault about which he complained did not occur on

church property but instead were perpetrated at his home and at the home of the alleged

perpetrator).

> **D.   The Individual Claims Of Negligent Infliction Of Emotional Distress Against TWC Should Be Dismissed Because Plaintiffs' Fail To Plead Any Viable Facts That TWC Owed Them a Duty**

A fundamental element of any negligence claim, including Plaintiffs' claims of negligent

infliction of emotional distress, is that the alleged tortfeasor owed a duty to the plaintiff.  *Mortise*

*v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (noting that in context of negligent infliction

of emotional distress claim, plaintiff must allege a duty that is "specific to the plaintiff, and not

some amorphous, free-floating duty to society").

Importantly, here, Plaintiffs pleaded no viable facts that TWC owed a specific duty to Thomas or Geiss, and therefore their negligent infliction of emotional distress claims against TWC should fail.  *See Morgan v. Cnty. of Nassau*, 720 F. Supp. 2d 229, 242-43 (E.D.N.Y. 2010) (dismissing negligent infliction of emotional distress claim where plaintiff pleaded no facts that the defendant owed a special duty to her); *Wahlstrom v. Metro-N. Commuter R.R. Co.*, 89 F. Supp. 2d 506, 531 (S.D.N.Y. 2000) (dismissing claim for negligent infliction of emotional distress where plaintiff's co-worker who allegedly verbally threatened and assaulted her did not owe her any duty "other than the duty to obey the law"); *Schultes v. Kane*, 50 A.D.3d 1277, 1278 (3d Dep't 2008) ("A cause of action for negligent infliction of emotional distress generally requires plaintiff to show a breach of duty owed to her which unreasonably endangered her physical safety, or caused her to fear for her own safety").  For this additional reason, Geiss's and Thomas's claims of negligent infliction of emotional distress against TWC should also be dismissed.

### E.   The Ratification Claim Against TWC Also Should Be Dismissed Because Ratification Is Not a Stand Alone Cause Of Action

The purported claim of ratification by Geiss and Thomas against TWC also should be dismissed because ratification is not an independent cause of action, but rather a contractual doctrine by which an otherwise voidable or invalid contract is confirmed and thereby made valid. *See, e.g.*, *Clark*, 3 F. Supp. 2d 366, 371-72; *Rothschild v. Title Guarantee & Trust Co.*, 204 N.Y. 458 (1912) (noting that ratification is an act of recognition or adoption of a contract or transaction causing one to be equitably estopped from impeaching it, although it was originally void or voidable).  Indeed, Geiss and Thomas appear to recognize that ratification is not an independent cause of action, as they admit in the Complaint that via their ratification claims, they seek to hold TWC responsible for H. Weinstein's alleged acts of assault, battery, and intentional

or negligent infliction of emotional distress.  (Compl. ¶ 300.[14])  Accordingly, the ratification

claims against TWC should be dismissed.

## V.    THE COURT ALSO SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS AS THEY ARE LEGALLY DEFICIENT

Plaintiffs seek to certify classes under Rules 23(b)(2) and 23(c)(4) of the Federal Rules of

Civil Procedure.  (Compl. ¶ 183.)  Plaintiffs pursue the Rule 23(b)(2) class in order to obtain

injunctive relief for the class.  (*Id.*, Prayer for Relief ¶ 1.[15])  The only injunctive relief

purportedly sought by Plaintiffs is an injunction "prohibiting Defendants' illegal acts constituting

a pattern of racketeering activity."  (*Id.* ¶ 218.)  Plaintiffs do not seek injunctive relief in

connection with their non-RICO claims.  Plaintiffs also seek certification of a Rule 23(c)(4) class

and sub-classes on the issue of "liability" for each of their RICO and state law claims and seek to

"reserve" the issue of "damages" for those claims for an unspecified later date and time.  (*Id.* ¶ 7

& Prayer for Relief, ¶ 1.)[16]

As set forth below, the Court should strike all of Plaintiffs' class allegations.  The Court's

authority to do so derives from Rule 23(d)(1)(D). *See Pilgrim v. Universal Health Card, LLC*,

660 F.3d 943, 949 (6th Cir. 2011) (affirming dismissal of class claims based on motion to

dismiss because the class claims were legally deficient on their face and incapable of being

certified).  The class claims are invalid on their face, and no discovery is necessary, for the class

claims cannot be amended. First, all of Plaintiffs' class allegations under Rules 23(b)(2) and

23(c)(4) should be stricken because none of the Plaintiffs have a legally cognizable interest in the

---

[14]    For the reasons set forth *supra*, Section IV.B.2, Geiss and Thomas have failed to plead a plausible theory of ratification that would permit vicarious liability to extend to TWC for these state law claims.

[15]    A Rule 23(b)(2) class is proper when a plaintiff claims that a defendant has acted on grounds that apply generally to the class so that injunctive relief or corresponding declaratory relief would be appropriate for the class as a whole.  Fed. R. Civ. P. 23(b)(2).

[16]    A Rule 23(c)(4) class (commonly referred to as an "issue" class) applies when a plaintiff seeks to bring or maintain a class with respect to a particular issue in the case.  Fed. R. Civ. P. 23(c)(4).

outcome of those claims.  Second, Plaintiffs' class allegations under Rules 23(b)(2) and 23(c)(4) should be stricken because the Complaint demonstrates that Plaintiffs cannot certify either class and their class claims are legally deficient.  Third, all of Plaintiffs' class allegations under Rule 23(b)(2) should be stricken because all Plaintiffs lack standing to pursue injunctive relief.

> **A.** **Plaintiffs' Class Claims Under Rules 23(b)(2) And 23(c)(4) Should Be Stricken Because No Plaintiff Has A Legally Cognizable Interest In The Outcome**

A claim is moot when "'the parties lack a legally cognizable interest in the outcome.'"  *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).  In general, if the claims of all named plaintiffs become moot prior to class certification, the entire action becomes moot.  *Bd. of Sch. Comm'rs of Indianapolis v. Jacobs*, 420 U.S. 128, 129-30 (1975) (per curiam); *see Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) (dismissing action after the named plaintiff's individual claim was satisfied and became moot because the named plaintiff "lacked any personal interest in representing others in this action").

Here, as set forth in the previous sections, all of Plaintiffs' RICO claims and state law claims fail as a matter of law and should be dismissed.  Because no named Plaintiff has a viable cause of action against TWC (or any other Defendant for that matter), none have a legally cognizable interest in the outcome of the class claims.  As a result, Plaintiffs cannot pursue class allegations on behalf of others where their own claims have been dismissed.  *See Jacobs*, 420 U.S. at 129-30.  Accordingly, the class claims should be stricken.

> **B.** **Plaintiffs' Class Claims Under Rules 23(b)(2) And 23(c)(4) Should Be Stricken Because The Complaint Demonstrates That Plaintiffs Cannot Certify Either Class**

Plaintiffs' class claims under Rules 23(b)(2) and 23(c)(4) should be stricken because the face of the Complaint demonstrates "that it would be impossible to certify the alleged class

regardless of the facts Plaintiffs may be able to obtain during discovery." *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685, 696 (S.D.N.Y. 2015). To certify a class under either section of Rule 23, Plaintiffs would, among other things, need to meet the requirements of Rule 23(a). *See* Fed. R. Civ. P. 23; *Charron v. Pinnacle Grp. N.Y. LLC*, 269 F.R.D. 221, 239 (S.D.N.Y. 2010) (noting that "[f]or particular issues to be certified pursuant to Rule 23(c)(4), the requirements of Rules 23(a) and (b) must be satisfied only with respect to those issues"). Rule 23(a) requires a showing that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties and counsel will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

Here, based on Plaintiffs' own pleading, which as set forth *supra* demonstrates that all of Plaintiffs' individual claims should be dismissed as a matter of law, it would be impossible for Plaintiffs to meet the requirements of Rule 23(a). First, implicit in the requirements of Rule 23(a) is that the class representative themselves be members of the class. Fed. R. Civ. P. 23(a) ("One or more members of a class may sue or be sued as representative parties on behalf of all members . . . ."). Where a named plaintiff's claims are dismissed, as they should be here, she ceases to be a member of the class. *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 120 F.3d 893, 899 (8th Cir. 1982) (holding that where sole plaintiff's claims were time-barred, class could not be certified because it lacked a class representative). Furthermore, because their claims fail as a matter of law, Plaintiffs also cannot demonstrate that they are "adequate" representatives of the class. Fed. R. Civ. P. 23(a)(4).

**C.      The Court Should Strike Plaintiffs' Rule 23(b)(2) Class Allegations Because Plaintiffs All Lack Standing To Seek An Injunction**

Under Article III of the United States Constitution, federal courts are confined "to adjudicating actual 'cases' and 'controversies.'" *Allen v. Wrig*ht, 468 U.S. 737, 750 (1984), abrogated on other grounds by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *see* U.S. Const. art. III, § 2. "This limitation is effectuated through the requirement of standing." *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d Cir. 2009) (citation omitted). In order to establish standing to seek injunctive relief, a plaintiff "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) ("Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way."). "Abstract injury is not enough." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974). Rather, the injury or threat of injury must be "real" and "immediate" and not "conjectural" or "hypothetical." *Golden v. Zwickler*, 394 U. S. 103, 109-10 (1969).

Here, based on the face of their pleading, Plaintiffs do not have standing to pursue the injunctive relief sought in this case — *i.e.*, an injunction "prohibiting Defendants' illegal acts constituting a pattern of racketeering activity." (*See* Compl. ¶ 218.) Plaintiffs were allegedly injured based on their isolated, one-on-one dealings with H. Weinstein that allegedly occurred between 1993 and 2008. (*See id.* ¶¶ 59, 61, 83, 95, 102-03, 114, 120.) Plaintiffs do not allege that they engaged in any further interaction with H. Weinstein. Nor do they allege any subsequent interaction with TWC or other members of the alleged "Weinstein Sexual Enterprise"

43

or identify any alleged conduct by TWC or other members of the alleged "Weinstein Sexual Enterprise" that is allegedly continuing or likely to occur in the future.  At most, Plaintiffs allege that Kendall was contacted by somebody identifying himself as "Seth Freeman" in 2017.  (*See id.* ¶ 62.)  However, as set forth *supra*, Section II.B.1, Kendall fails to plausibly allege that this individual's actions constituted "witness tampering" or any other predicate act under RICO, that he was employed by or directed to contact her by TWC, or that she suffered any actionable injury based on the telephone call.  (*See id.* ¶ 63.)  Likewise, Thomas alleges that she heard rumors that she had been blacklisted by casting directors.  (*Id.* ¶ 114.)  But she does not allege that these rumors were the result of any RICO predicate act, that TWC caused any casting directors to blacklist Thomas, or that she suffered any actionable injury based on these rumors.

Indeed, Plaintiffs' allegations make clear that TWC's alleged conduct has stopped and is not likely to occur in the future.  Specifically, Plaintiffs allege that, had they known about H. Weinstein's conduct beforehand, they would not have been injured.  (*Id.* ¶ 210.)  Yet now, all Plaintiffs acknowledge that they know about H. Weinstein's alleged conduct, and therefore by their own pleading, they will not be subject to future injury.  Furthermore, as Plaintiffs admit, TWC no longer employs H. Weinstein (*Id.* ¶ 181), further demonstrating that future alleged injuries to Plaintiffs are not likely to occur in the future.

For these reasons, all Plaintiffs lack standing to pursue the injunctive relief sought in the Complaint, and therefore their Rule 23(b)(2) class should be stricken as a matter of law.  *Chen-Oster v. Goldman, Sachs & Co.*, 877 F. Supp. 2d 113, 120 (S.D.N.Y. 2012) (granting motion to strike Rule 23(b)(2) class allegations where all named plaintiffs lacked standing to bring claims for injunctive relief); *see also Gordon v. Hain Celestial Group, Inc.*, 16 Civ. 6526, 2017 WL 213815, at *8 (S.D.N.Y. Jan. 18, 2017) (dismissing claim for injunctive relief where plaintiff

could not establish that she was likely to be injured again, as it was unlikely she would purchase the same mislabeled products in the future).

A motion to strike Plaintiffs' Rule 23(b) class allegations is not premature at this stage of the case.  In a putative class action, where the standing of ***all named plaintiffs*** is in question, a court should not defer consideration of Article III standing until after class certification. *Kassman*, 925 F. Supp. 2d at 465 (explaining that the general rule that a court may defer consideration of Article III standing until after class certification should not apply where the standing of all the named plaintiffs is in question).  This is because federal courts have an obligation to examine their own jurisdiction to ensure the parties have standing to seek their requested relief.  *See FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).  Rather, where all named plaintiffs lack standing to bring class claims for injunctive relief, a court may and should address this deficiency on a motion to strike the class allegations.  *Chen-Oster*, 877 F. Supp. 2d at 120 (rejecting plaintiffs' argument that defendants' motion to strike Rule 23(b)(2) allegations on standing grounds was procedurally premature).

The Court should disregard any argument by Plaintiffs that they have demonstrated standing based on the conclusory allegations in the Complaint that the *effects* of Defendants' past conduct are continuing (*see* Compl. ¶ 217 ("Plaintiffs have been and are continuing to be injured . . . ."); ¶ 218 ("[T]he effects . . . detailed above are continuing and will continue unless injunctive relief prohibiting Defendants' illegal acts . . . is fashioned and imposed by the Court.")).  Ongoing effects of past harms are insufficient to confer Article III standing to seek an injunction. *Nicosia*, 834 F.3d at 239.  Rather, a plaintiff must "demonstrate that she is likely to be harmed again ***in the future in a similar way***." *Id.* (emphasis added).  Because, as set forth above, Plaintiffs' allegations show that Defendants' alleged wrongful conduct towards them has

ceased, Plaintiffs cannot show that it is likely they will be harmed "in the future in a similar way" as alleged in the Complaint.  They therefore cannot demonstrate that they have standing to seek an injunction pursuant to Rule 23(b)(2) based on a continuing harm.

For all of these reasons, the Court should grant TWC's motion to strike Plaintiffs' Rule 23(b)(2) class claims.

## CONCLUSION

For all the foregoing reasons, Defendant TWC respectfully requests dismissal of the Complaint against TWC in its entirety, that the Court strike all class allegations in the Complaint against TWC, and that the Court grant any other relief it deems appropriate.

Dated:  New York, New York
      February 20, 2018

Respectfully submitted,

SEYFARTH SHAW LLP

By:  _/s/ Gerald L. Maatman, Jr._
      Gerald L. Maatman, Jr.
      gmaatman@seyfarth.com
      Lynn Kappelman
      lkappelman@seyfarth.com
      Lorie Almon
      lalmon@seyfarth.com
      Scott Rabe
      srabe@seyfarth.com
      Karen Bitar
      KBitar@seyfarth.com
      620 Eighth Avenue
      New York, New York  10018
      Telephone:  (212) 218-5500
      Facsimile:  (212) 218-5526

      *Attorneys for Defendant*
      *The Weinstein Company Holdings, LLC*

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that on this date, a true and correct copy of the

foregoing was served, via ECF to the following counsel:

Jason Zweig
Hagens Berman Sobol Shapiro LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017

Steve W. Berman
Shelby Smith
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101

Elizabeth A. Fegan
Emily Brown
Hagens Berman Sobol Shapiro LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611

Robert B. Carey
Hagens Berman Sobol Shapiro LLP
11 West Jefferson Street, Suite 1000
Phoenix, Arizona 85003

M. Cris Armenta
Credence E. Sol
The Armenta Law Firm, APC
1230 Rosecrans Ave., Suite 300
Manhattan Beach, CA 90266

Marvin S. Putnam
Latham & Watkins LLP (LA)
355 South Grand Avenue
Los Angeles, CA  90071

Brad S. Karp
Roberto Finzi
Sara Nichols
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, New York  10019

Lawrence Steve Spiegel
Abigail Elizabeth Davis
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)
Four Times Square
New York, NY 10036

James V. Masella, III
Daniel Ruzumna
Melissa Ginsberg
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York  10036

John C. Scalzo
Ann V. Kramer
Reed Smith LLP
599 Lexington Ave.
New York, New York  10022

Phyllis Kupferstein
Kupferstein Manuel LLP
865 South Figueroa Street, Suite 3338
Los Angeles, CA  90017


Dated:        New York, New York
              February 20, 2018


                            */s/ Gerald L. Maatman, Jr.*