## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

LOUISETTE GEISS, KATHERINE
KENDALL, ZOE BROCK, SARAH ANN
THOMAS (a/k/a SARAH ANN MASSE),
MELISSA SAGEMILLER, and NANNETTE
KLATT, individually and on behalf of all others
similarly situated,

                 Plaintiffs,

    vs.

THE WEINSTEIN COMPANY HOLDINGS,
LLC, MIRAMAX, LLC, MIRAMAX FILM
CORP., MIRAMAX FILM NY LLC, HARVEY
WEINSTEIN, ROBERT WEINSTEIN, DIRK
ZIFF, TIM SARNOFF, MARC LASRY,
TARAK BEN AMMAR, LANCE MAEROV,
RICHARD KOENIGSBERG, PAUL TUDOR
JONES, JEFF SACKMAN, JAMES DOLAN,
MIRAMAX DOES 1-10, and JOHN DOES 1-
50, inclusive,

                 Defendants.

Civil Action No. 1:17-CV-9554 (AKH)

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF
## DEFENDANTS JAMES DOLAN, PAUL TUDOR JONES, MARC LASRY
## AND DIRK ZIFF TO DISMISS COUNTS I, II, IV AND XIV OF THE COMPLAINT

February 20, 2018

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

SUMMARY OF ALLEGATIONS ..................................................................................... 4

      A.     Plaintiffs' Alleged Interactions with Weinstein ......................................... 4

      B.     Allegations Concerning the Outside Directors ........................................... 6

ARGUMENT ..................................................................................................................... 8

I.       THE STANDARD ................................................................................................... 8

II.      THE COMPLAINT FAILS TO ALLEGE A RICO VIOLATION (COUNT I) ............... 9

      A.     The Complaint Fails to Allege That the Outside Directors Engaged in a
              Pattern of Racketeering Activity, or Even a Single Predicate Act ....................... 10

            1.     The Complaint Fails to Allege That the Outside Directors Engaged
                  in Commercial Sex Trafficking ................................................................ 12

                  a.     The Complaint Fails to Allege the Outside Directors'
                        Knowledge of Commercial Sex Trafficking ................................... 13

                  b.     The Complaint Fails to Allege the Outside Directors
                        Participated in a Sex Trafficking Venture ..................................... 13

                  c.     The Complaint Fails to Allege the Outside Directors
                        Benefitted from Participating in a Sex Trafficking Venture .......... 15

            2.     The Complaint Fails to Allege That the Outside Directors Engaged
                  in Witness Tampering ............................................................................... 15

            3.     The Complaint Fails to Allege That the Outside Directors Engaged
                  in Mail Fraud or Wire Fraud ................................................................... 16

      B.     The Complaint Fails to Allege the Existence of a RICO Enterprise ................ 19

      C.     The Complaint Fails to Allege That the Outside Directors Participated in
               the Operation of a RICO Enterprise ....................................................... 20

      D.     Plaintiffs' Injuries Are Not Redressable Under RICO ............................... 21

      E.     Plaintiffs' Injuries Were Not Caused by Actions of the Outside Directors ........... 23

III.    THE COMPLAINT FAILS TO ALLEGE A CONSPIRACY TO VIOLATE
       RICO (COUNT II) ............................................................................................... 23

# TABLE OF CONTENTS
# (CONTINUED)

**Page**

IV.   THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION OR RETENTION AGAINST THE OUTSIDE DIRECTORS (COUNT IV) ................................................................................................24

    A.   The Complaint Fails to Allege That the Outside Directors Employed Weinstein ...........................................................................................................25

    B.   The Complaint Fails to Allege Any Facts to Support That the Outside Directors Knew or Should Have Known About Weinstein's Propensity For Sexual Misconduct ...................................................................................27

    C.   The Complaint Fails to Allege That Any Injury Occurred on Any Directors' or TWC's Premises....................................................................30

    D.   The Complaint Fails to Allege That the Outside Directors' Purported Negligent Supervision or Retention Caused Plaintiffs' Injuries............................33

V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION AGAINST THE OUTSIDE DIRECTORS (COUNT XIV) ................................................34

VI.   THE COMPLAINT'S CLAIMS AGAINST THE OUTSIDE DIRECTORS ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS ........................37

    A.   The RICO Claims (Counts I and II) Are Time-Barred .........................................37

    B.   The Negligent Supervision and Retention Claims (Count IV) Are Time-Barred ...............................................................................................................41

    C.   The Ratification Claim (Count XIV) Is Time-Barred...........................................41

    D.   Equitable Estoppel and the Continuing Violation Doctrine Do Not Save the Complaint's Time-Barred Claims ....................................................................42

        1.   Equitable Estoppel Does Not Save Plaintiffs' Stale Claims....................42

        2.   The Continuing Violations Doctrine Does Not Save Plaintiffs' Time-Barred Claims......................................................................................44

VII.   THE COMPLAINT DOES NOT SEEK RELIEF FROM THE OUTSIDE DIRECTORS ...............................................................................................................44

VIII.   THE CLASS CLAIMS SHOULD BE DISMISSED.........................................................45

CONCLUSION...............................................................................................................................46

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One,*
  2 F. Supp. 2d 485 (S.D.N.Y. 1998) ...............................................................34, 36

*Aerowest GmbH v. Freitag,*
  No. 15-CV-2894, 2016 U.S. Dist. LEXIS 84344 (E.D.N.Y. June 28, 2016) .........19

*Anderson v. Adam's Mark Hotels & Resorts,*
  No. 99-1100, 2000 U.S. App. LEXIS 6949 (10th Cir. Apr. 18, 2000)...................32

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)........................................................................................3, 9, 31

*Azrielli v. Cohen Law Offices,*
  21 F.3d 512 (2d Cir. 1994)....................................................................................20

*Baiul v. William Morris Agency, LLC,*
  No. 13-CV-8683, 2014 U.S. Dist. LEXIS 62633 (S.D.N.Y. May 6, 2014),
  *aff'd,* 601 F. App'x 58 (2d Cir. 2015)............................................................. *passim*

*Belmont v. MB Inv. Partners Inc.,*
  708 F.3d 470 (3d Cir. 2013)...................................................................................25

*Bigio v. Coca-Cola Co.,*
  675 F.3d 163 (2d Cir. 2012)............................................................................34, 36

*Bliss v. Putnam Valley Cent. Sch. Dist.,*
  No. 06-CV-15509, 2011 U.S. Dist. LEXIS 35485 (S.D.N.Y. Mar. 24, 2011) .......29

*Bryant v. Philadelphia,*
  No. 89-CV-6005, 1990 U.S. Dist. LEXIS 7132 (E.D. Pa. June 11, 1990)............24

*Calder v. Planned Cmty. Living, Inc.,*
  No. 93-CV-8882, 1995 U.S. Dist. LEXIS 10773 (S.D.N.Y. Aug. 2, 1995)...........26

*In re Citigroup Auction Rate Sec. Litig.,*
  700 F. Supp. 2d 294 (S.D.N.Y. 2009)...................................................................45

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.,*
  187 F.3d 229 (2d Cir. 1999)..................................................................................11

*Cohen v. S.A.C. Trading Corp.,*
  711 F.3d 353 (2d Cir. 2013).....................................................................................9

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Cont'l Fin. Co. v. Ledwith,*
   No. 08-CV-7272, 2009 U.S. Dist. LEXIS 52618 (S.D.N.Y. June 22, 2009) .........................19

*Conte v. Newsday, Inc.,*
   703 F. Supp. 2d 126 (E.D.N.Y. 2010) ...................................................................................21

*Corrado v. N.Y. Unified Court Sys.,*
   163 F. Supp. 3d 1 (E.D.N.Y. 2016) .......................................................................................44

*Crawford v. Franklin Credit Mgmt.,*
   758 F.3d 473 (2d Cir. 2014)...................................................................................................24

*DeFalco v. Bernas,*
   244 F.3d 286 (2d Cir. 2001)............................................................................................10, 16

*Derbaremdiker v. Applebee's Int'l, Inc.,*
   No. 12-CV-1058, 2012 U.S. Dist. LEXIS 138596 (E.D.N.Y. Sept. 26, 2012),
   *aff'd,* 519 F. App'x 77 (2d Cir. 2013).....................................................................................45

*Dilworth v. Goldberg,*
   No. 10-CV-2224, 2011 U.S. Dist. LEXIS 82392 (S.D.N.Y. July 28, 2011) .........................29

*DiVittorio v. Equidyne Extractive Indus., Inc.,*
   822 F.2d 1242 (2d Cir. 1987).................................................................................................17

*Doe 1 v. Bd. of Educ. of Greenport Union Free Sch. Dist.,*
   955 N.Y.S.2d 600 (2d Dep't 2012)........................................................................................30

*Doe v. Alsaud,*
   12 F. Supp. 3d 674 (S.D.N.Y. 2014)..............................................................27, 30, 32, 33

*Doe v. City of New York,*
   No. 09-CV-9895, 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013) .........................27

*Doe v. Roe,*
   958 F.2d 763 (7th Cir. 1992) .................................................................................................22

*Dooley v. Metro. Jewish Health Sys.,*
   No. 02-CV-4640, 2003 U.S. Dist. LEXIS 16520 (E.D.N.Y. Jul. 30, 2003).........................26

*Dunahoo v. Hewlett-Packard Co.,*
   No. 11-CV-5588, 2012 U.S. Dist. LEXIS 7717 (S.D.N.Y. Jan. 20, 2012) ..........................25

**TABLE OF AUTHORITIES**
**(CONTINUED)**

Page(s)

**Cases**

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004).............................................................................25, 27, 30

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004)...................................................................................20, 24

*Grant v. N.Y. Times Co.*,
   No. 16-CV-3175, 2017 U.S. Dist. LEXIS 149403 (S.D.N.Y. Sept. 14, 2017).....................45

*Green v. Emmanuel African Methodist Episcopal Church*,
   718 N.Y.S.2d 324 (1st Dep't 2000) ......................................................................41

*GrowBlox Scis., Inc. v. GCM Admin. Servs., LLC*,
   No. 14-CV-2280, 2015 U.S. Dist. LEXIS 71180 (S.D.N.Y. June 2, 2015) ...........................8

*Harris v. NYU Langone Med. Ctr.*,
   No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328 (S.D.N.Y. July 9, 2013) .............................11

*Haybeck v. Prodigy Servs. Co.*,
   944 F. Supp. 326 (S.D.N.Y. 1996) ......................................................................31

*Hecht v. Commerce Clearing House, Inc.*,
   897 F.2d 21 (2d Cir. 1990)..................................................................................10

*Hoatson v. N.Y. Archdiocese*,
   No. 05-CV-10467, 2007 U.S. Dist. LEXIS 9406 (S.D.N.Y. Feb. 8 2007), *aff'd*
   280 F. App'x 88 (2d Cir. 2008) .........................................................................20

*Jerome M. Sobel & Co. v. Fleck*,
   No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. Dec. 1, 2003) .....................10, 11

*Kalimantano GmbH v. Motion in Time, Inc.*,
   939 F. Supp. 2d 392 (S.D.N.Y. 2013)....................................................................16

*Katzman v. Victoria's Secret Catalogue*,
   167 F.R.D. 649 (S.D.N.Y. 1996) ........................................................................10

*Khapesi v. City of New York*,
   No. 13-CV-4391, 2014 U.S. Dist. LEXIS 79623 (S.D.N.Y. June 10, 2014) ...................28, 29

*Koch v. Christie's Int'l PLC*,
   699 F.3d 141 (2d Cir. 2012)..............................................................................37

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

**Cases**

*Krystal G. v. Roman Catholic Diocese of Brooklyn*,
  933 N.Y.S.2d 515 (Sup. Ct. Kings Cnty. 2011)........................................................33

*Levy v. BASF Metals Ltd.*,
  No. 15-CV-7317, 2017 U.S. Dist. LEXIS 89098 (S.D.N.Y. June 9, 2017) .....................39, 40

*Lewis v. Roosevelt Island Operating Corp.*,
  246 F. Supp. 3d 979 (S.D.N.Y. 2017)......................................................................26

*Li Jun An v. Hui Zhang*,
  No. 13-CV-5064, 2013 U.S. Dist. LEXIS 174158 (S.D.N.Y. Dec. 6, 2013) ...............9, 17, 18

*Lowery v. City of New York*,
  No. 10-CV-7284, 2014 U.S. Dist. LEXIS 77533 (S.D.N.Y. June 6, 2014) ...........................13

*Mackin v. Auberger*,
  59 F. Supp. 3d 528 (W.D.N.Y. 2014) ....................................................................22

*McIntosh v. United States*,
  No. 14-CV-7889, 2016 U.S. Dist. LEXIS 44290 (S.D.N.Y. Mar. 31, 2016) .....................3, 13

*Medina v. Tremor Video, Inc.*,
  640 F. App'x 45 (2d Cir. 2016) ...........................................................................13

*Medinol Ltd. v. Guidant Corp.*,
  500 F. Supp. 2d 345 (S.D.N.Y. 2007)....................................................................13

*Merrill Lynch, Pierce, Fenner & Smith v. Young*,
  No. 91-CV-2923, 1994 U.S. Dist. LEXIS 2929 (S.D.N.Y. Mar. 15, 1994) ...........................11

*Miller v. Carpinello*,
  No. 06-CV-12940, 2007 U.S. Dist. LEXIS 86395 (S.D.N.Y. Nov. 19, 2007)........................20

*Moss v. Morgan Stanley, Inc.*,
  719 F.2d 5 (2d Cir. 1983).......................................................................................10

*Murphy v. Guilford Mills, Inc.*,
  No. 02-CV-10105, 2005 U.S. Dist. LEXIS 7160 (S.D.N.Y. Apr. 22, 2005)....................34, 35

*Nat'l Grp. for Commnc'ns Ltd. v. Lucent Techs. Inc.*,
  420 F. Supp. 2d 253 (S.D.N.Y. 2006)......................................................................19

# TABLE OF AUTHORITIES
# (CONTINUED)

**Page(s)**

**Cases**

*Naughright v. Robbins*,
  No. 10-CV-8451, 2014 U.S. Dist. LEXIS 148497 (S.D.N.Y. Oct. 17, 2014) ................26, 31

*Navin v. Wells Fargo Bank, N.A.*,
  199 F. Supp. 3d 646 (D. Conn. 2016) .................................................................................22

*New York v. UPS, Inc.*,
  No. 15-CV-1136, 2016 U.S. Dist. LEXIS 105038 (S.D.N.Y. Aug. 9, 2016) ...................24, 40

*Noonan v. City of New York*,
  No. 14-CV-4084, 2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. June 26, 2015) .........................27

*Norlin Corp. v. Rooney, Pace Inc.*,
  744 F.2d 255 (2d Cir. 1984) ................................................................................................25

*O'Brien v. Spitzer*,
  851 N.E.2d 1195 (N.Y. 2006) .............................................................................................26

*Rahman v. Smith & Wollensky Rest. Grp., Inc.*,
  No. 06-CV-6198, 2008 U.S. Dist. LEXIS 2932 (S.D.N.Y. Jan. 16, 2008) ...........................45

*Reiter v. Sonotone Corp.*,
  442 U.S. 330 (1979) .............................................................................................................22

*Reves v. Ernst & Young*,
  507 U.S. 170 (1993) .............................................................................................................20

*RJR Nabisco, Inc. v. European Cmty.*,
  136 S. Ct. 2090 (2016) .........................................................................................................21

*Ross v. Mitsui Fudosan, Inc.*,
  2 F. Supp. 2d 522 (S.D.N.Y. 1998) ....................................................................................30

*Rotella v. Wood*,
  528 U.S. 549 (2000) .............................................................................................................37

*Russello v. United States*,
  464 U.S. 16 (1983) ...............................................................................................................9

*S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.*,
  No. 08-CV-5175, 2009 U.S. Dist. LEXIS 91414 (S.D.N.Y. Sept. 30, 2009) .......................23

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*Saldana v. Vill. of Port Chester*,
No. 09-CV-6268, 2010 U.S. Dist. LEXIS 142099 (S.D.N.Y. July 21, 2010) ..................25, 33

*Sedima, S.P.R.L. v. Imrex Co.*,
473 U.S. 479 (1985)...........................................................................................................21

*Stamile v. Cnty. of Nassau*,
No. 10-CV-2632, 2014 U.S. Dist. LEXIS 39320 (E.D.N.Y. Mar. 25, 2014).........................28

*Sykes v. Mel S. Harris & Assocs. LLC*,
780 F.3d 70 (2d Cir. 2015)..................................................................................................21

*Targum v. Citrin Cooperman & Co., LLP*,
No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585 (S.D.N.Y. Nov. 19, 2013)...................1, 10

*In re Ted Is Back Corp.*,
475 N.E.2d 113 (N.Y. 1984)...............................................................................................26

*Toomer v. Cellco P'ship*,
No. 11-CV-7515, 2012 U.S. Dist. LEXIS 101265 (S.D.N.Y. July 20, 2012) ........................33

*Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*,
886 F. Supp. 1134 (S.D.N.Y. 1995)....................................................................................22

*Tsipouras v. W&M Props., Inc.*,
9 F. Supp. 2d 365 (S.D.N.Y. 1998) .....................................................................................22

*Twersky v. Yeshiva Univ.*,
993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd*, 579 F. App'x 7 (2d Cir. 2014)...................42, 43

*Tymoshenko v. Firtash*,
57 F. Supp. 3d 311 (S.D.N.Y. 2014)....................................................................................16

*United States v. Afyare*,
632 F. App'x 272 (6th Cir. 2016) ..............................................................................12, 13, 14

*United States v. Flanders*,
752 F.3d 1317 (11th Cir. 2014) ...........................................................................................15

*United States v. Guadagna*,
183 F.3d 122 (2d Cir. 1999)...........................................................................................17, 18

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

**Cases**

*United States v. Persico*,
    832 F.2d 705 (2d Cir. 1987)............................................................................................11

*United States v. Pierce*,
    224 F.3d 158 (2d Cir. 2000)......................................................................................16, 18

*United States v. Shellef*,
    507 F.3d 82 (2d Cir. 2007)........................................................................................16, 18

*United States v. Todd*,
    627 F.3d 329 (9th Cir. 2010) ........................................................................................12

*United States v. Turkette*,
    452 U.S. 576 (1981)..........................................................................................................9

*United States v. Walls*,
    784 F.3d 543 (9th Cir. 2015) ........................................................................................12

*Universitas Educ., LLC v. T.D. Bank, N.A.*,
    No. 15-CV-5643, 2015 U.S. Dist. LEXIS 170264 (S.D.N.Y. Dec. 21, 2015) .......................41

*Webb v. Goord*,
    340 F.3d 105 (2d Cir. 2003)..........................................................................................24

*Weinfeld v. HR Photography, Inc.*,
    52 N.Y.S.3d 458 (2d Dep't 2017)..................................................................................26

*Westchester Cnty. Independence Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015).................................................................... *passim*

*Williams v. Dow Chem. Co.*,
    255 F. Supp. 2d 219 (S.D.N.Y. 2003)............................................................................21

*Wilson v. Wilson-Polson*,
    No. 09-CV-9810, 2010 U.S. Dist. LEXIS 100425 (S.D.N.Y. Sep. 22, 2010),
    *aff'd*, 446 F. App'x 330 (2d Cir. 2011)...........................................................................45

*Wood v. Inc. Vill. of Patchogue*,
    311 F. Supp. 2d 344 (E.D.N.Y. 2004) ..........................................................................20

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

**Cases**

*World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*,
  530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd* 328 F. App'x 695 (2d Cir. 2009)......................22

*Zimmerman v. Poly Prep Country Day Sch.*,
  888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................................................22

*Zumpano v. Quinn*,
  849 N.E.2d 926 (N.Y. 2006)..................................................................................................43

**Statutes**

18 U.S.C. § 1341.............................................................................................................11, 16

18 U.S.C. § 1343.............................................................................................................11, 16

18 U.S.C. § 1512.......................................................................................................11, 15, 16

18 U.S.C. § 1590.............................................................................................................11, 12

18 U.S.C. § 1591.....................................................................................11, 12, 13, 14, 15

18 U.S.C. § 1961......................................................................................................................10

18 U.S.C. § 1962.............................................................................10, 11, 16, 23, 40, 37

42 U.S.C. § 1983......................................................................................................................28

**Other Authorities**

CPLR § 202................................................................................................................................41

CPLR § 213-1 ...........................................................................................................................41

Ct. Gen. Stat. § 52-584..............................................................................................................41

Fed. R. Civ. P. 8(a)(3).................................................................................................................45

Fed. R. Civ. P. 9(b) ................................................................................................................9, 17

Fed. R. Civ. P. 12(b)(6).............................................................................................................8, 9

Defendants James Dolan, Paul Tudor Jones, Marc Lasry and Dirk Ziff (the "Outside Directors") respectfully submit this memorandum of law in support of their motion to dismiss Counts I, II, IV and XIV of the Complaint (the "Complaint"), all of the claims against the Outside Directors.

## PRELIMINARY STATEMENT

The Complaint alleges that each of the plaintiffs was sexually harassed and/or assaulted by Harvey Weinstein ("Weinstein") between 1993 and 2008—seven to eight years *before* the Outside Directors are alleged to have joined the Board of The Weinstein Company ("TWC").  It separately contends that the Outside Directors violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I), conspired to violate RICO (Count II), engaged in negligent supervision and retention (Count IV), and ratified Weinstein's conduct (Count XIV). As discussed below, however, the Complaint contains *no* factual allegations that support any of these claims against the Outside Directors and, therefore, all of them should be dismissed.

As an initial matter, the Complaint falls far short of satisfying the high burden[1] necessary to allege a RICO claim.  To bring a RICO claim, a plaintiff must allege facts demonstrating that *each defendant* against whom it brings a claim, through the commission of two or more predicate acts constituting a pattern of racketeering activity, participated in a RICO enterprise.  The Complaint, however, does not allege that *even one* of the Outside Directors personally engaged in a single predicate act.  Whatever misconduct *others* might have engaged in, the Outside Directors were not part of it.

The Complaint's attempt to allege a conspiracy to violate RICO fares no better.  First, the conspiracy claim fails because Plaintiffs have failed to plead a substantive violation of RICO.

---

[1] *See, e.g., Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 U.S. Dist. LEXIS 164585, at *18-19 (S.D.N.Y. Nov. 19, 2013) ("A plaintiff's burden is high when pleading RICO allegations.").

Second, an "agreement" is a necessary element of a conspiracy.  There is not a single allegation that the Outside Directors *agreed* to commit a substantive RICO offense.  They could not possibly have "agreed" to participate in conduct that allegedly took place seven or eight years before they joined the Board.

The claim for negligent supervision and retention also is deficient.  To plead such a claim, a plaintiff must allege facts showing the standard elements of negligence *as well as* that (i) the alleged wrongdoer and the defendant were in an employee-employer relationship, (ii) the employer knew or should have known of the employee's propensity for the conduct that caused the injury prior to the injury's occurrence, and (iii) the underlying tort was committed on the employer's premises or using the employer's property.  The Complaint does not contain factual allegations as to even one of these elements.  Rather, among other deficiencies, it is clear as a matter of law that Messrs. Dolan, Jones, Lasry and Ziff did ***not*** employ Weinstein.  Indeed, the Complaint *admits* that Weinstein was an employee of *TWC*, not of any of the individual Outside Directors.  This claim also fails because the injuries allegedly suffered as a result of Weinstein's conduct plainly were not caused by actions of the Outside Directors who, Plaintiffs allege, were not even on the Board until seven or eight years after the injuries occurred.

The claim that the Outside Directors somehow subsequently ratified Weinstein's conduct also finds no support in the factual allegations or the law.  To establish a claim for ratification, the Complaint must (but does not) allege a principal-agent relationship, the principal's full knowledge of the material facts concerning the allegedly binding act, and acceptance by the principal of the benefit of the agent's acts.  Here, a ratification claim cannot succeed because the Complaint does not (and could not) contain factual allegations showing that the Outside Directors had a "principal-agent" relationship with Weinstein, knowledge of Weinstein's alleged

sexual assaults of Plaintiffs, or that Weinstein's allegedly tortious conduct was done *for the benefit of* any of the Outside Directors.

In addition, for each of its claims, the Complaint must—but fails to—allege that the Outside Directors knew about the underlying alleged assaults. There is not a single factual allegation that the Outside Directors knew about the alleged misconduct. Although the Complaint asserts that each director "knew of Weinstein's pattern and practice of predatory sexual conduct" and that the "Board" (without identifying which board members or at what time) "had knowledge of Weinstein's misconduct," ***the Complaint is devoid of a single factual allegation that supports those conclusory assertions***. It is axiomatic that such conclusory allegations—without factual support—must be disregarded.[2] The Complaint's failure to allege that the Outside Directors knew about the underlying assaults is fatal to every single one of its claims against them, all of which require knowledge of the misconduct as one of the required elements.

Finally, all of these claims are barred by applicable statutes of limitations. Both the relevant conduct and the resulting injuries are alleged to have taken place more than nine years ago and, in some cases, more than 25 years ago. The Complaint was not filed until December 2017, well after the limitations period expired.

For all of these reasons, Counts I, II, IV and XIV of the Complaint should be dismissed.

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A complaint [does not] suffice if it tenders naked assertions devoid of further factual enhancement . . . [T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.") (internal quotation marks omitted); *McIntosh v. United States*, No. 14-CV-7889, 2016 U.S. Dist. LEXIS 44290, at *68 (S.D.N.Y. Mar. 31, 2016) ("[G]eneralized allegations of knowledge are too conclusory" to survive a motion to dismiss.).

## SUMMARY OF ALLEGATIONS

Plaintiffs Louisette Geiss, Katherine Kendall, Zoe Brock, Sarah Ann Thomas, Melissa Sagemiller, and Nanette Klatt allege that they were sexually assaulted by defendant Harvey Weinstein ("Weinstein") at various times between 1993 and 2008.  (Complaint ¶¶ 48-120.) During that time, Weinstein was associated with Miramax[3] (from the 1970s until 2005) and then later with TWC (from 2005 until 2017).  (*Id.* ¶¶ 22, 34, 37.)

Although the Complaint alleges that several TWC directors have been a part of the organization since as early as 2005 (*see id*. ¶¶ 22-23, 28-29, 31), it does not allege that the Outside Directors became part of the board until much later.  Plaintiffs allege that: (i) Defendant James Dolan did not become a director of TWC until mid-2015 (*id.* ¶ 32); (ii) Defendant Dirk Ziff served on the TWC Board from September 2015 to October 2017 (*id.* ¶ 24); (iii) Defendant Paul Tudor Jones served on the TWC Board from December 2015 to October 2017 (*id.* ¶ 30); and (iv) Defendant Marc Lasry served on the TWC Board from mid-2016 to October 2017 (*id.* ¶ 26).

### A.     Plaintiffs' Alleged Interactions with Weinstein

Katherine Kendall alleges that she was assaulted by Weinstein in 1993 after he met with her to discuss her career.  (*Id.* ¶ 48.)  Ms. Kendall allegedly experienced emotional distress and physical pain, along with shame, depression, and a loss of self-worth because of the alleged assault.  (*Id.* ¶ 59.)  Ms. Kendall also alleges that she suffered additional distress and fear in 2017 after she was contacted by a person claiming to be a reporter from *The Guardian* and learned that she was on a list of individuals who were being investigated by Weinstein.  (*Id.* ¶¶ 62-70.)

---

[3] "Miramax" collectively refers to Miramax, LLC, Miramax Film Corp., and Miramax Film NY LLC.

Zoe Brock alleges that, in 1998, she was assaulted by Weinstein in his hotel room.  (*Id.* ¶¶ 71, 75-78.)  Ms. Brock alleges that after the assault she suffered from depression, a lack of self-confidence, and a loss of reputation, which affected her ability to be a professional actor. (*Id.* ¶ 83.)  She avoided travel to Hollywood for several years after the assault because she was afraid of Weinstein.  (*Id.*)

Melissa Sagemiller alleges that she was assaulted by Weinstein in his hotel room during the summer of 2000.  (*Id.* ¶¶ 84, 86.)  Weinstein allegedly later prevented Ms. Sagemiller from travelling on a commercial flight by holding her luggage hostage so she would travel on Weinstein's personal plane.  (*Id.* ¶ 94.)  Ms. Sagemiller alleges that she was concerned that it would hurt her career if she discussed what happened to her, and frightened that Weinstein "wielded so much power that he could prevent her from traveling on public transportation."  (*Id.* ¶¶ 92, 95.)

Louisette Geiss alleges that, in 2008, she was assaulted by Weinstein after meeting him in his hotel room to discuss a script.  (*Id.* ¶ 96.)  Weinstein purportedly told her that "he would 'greenlight' her script if she watched him masturbate."  (*Id.* ¶¶ 96-100.)  Weinstein also allegedly told Ms. Geiss that he would introduce her to his brother, Bob Weinstein, and offered her a film deal as an actress if she stayed in Weinstein's hotel room.  (*Id.* ¶ 101.)  Ms. Geiss refused, and alleges that her refusal cost her a "three-film deal and other opportunities at TWC."  (*Id.* ¶103.) Ms. Geiss experienced fear, helplessness, anger and depression because of the alleged assault. (*Id.* ¶ 102.)  In addition, Ms. Geiss alleges that her professional career in the entertainment industry was damaged, causing her to leave the industry.  (*Id.* ¶ 103.)

Sarah Ann Thomas, an aspiring actress, alleges that she was assaulted by Weinstein in 2008 in his home after interviewing for a job as a nanny.  (*Id.* ¶¶ 104, 108.)  This made Ms. Thomas feel unsafe, sexualized, upset, shaken, afraid and disrespected.  (*Id.* ¶¶ 111-12.)

Nannette Klatt alleges that she was assaulted by Weinstein in his private office.  (*Id.* ¶ 115.)  Although the Complaint does not state any specific dates for the assault, it alleges that the assault occurred during Weinstein's time at Miramax, which ended in 2005.  (*See id.* ¶¶ 37, 115.)  Ms. Klatt reports that she was terrified during the assault and feared for her safety and life. (*Id.* ¶ 117.)  As a result of the assault, "Klatt has changed how she conducts her life, pursues her career, takes meetings and interacts with men both personally and professionally."  (*Id.* ¶ 120.) "Her professional and personal interactions are thus limited by her fears."  (*Id.*)

The Complaint does not allege that any of the Outside Directors participated in or knew about any of these incidents.

### B.      Allegations Concerning the Outside Directors

Notwithstanding the fact that Plaintiffs allege that the Outside Directors did not join the TWC Board until at least seven years after the last of the underlying sexual assaults, the Complaint nonetheless contains four claims against them: violation of RICO (Count I), conspiracy to violate RICO (Count II), negligent supervision (Count IV), and ratification (Count XIV).

The Complaint contains 300 paragraphs of allegations.  In those 300 paragraphs, however, each Outside Director is mentioned by name only twice.  (*See id.* ¶¶ 5, 24, 26, 30, 32.) The sum total of these allegations describes the time period that the Outside Director served on TWC's Board, and two conclusory assertions: (i) that each Outside Director (along with a laundry list of other individuals and corporate entities) was allegedly a member of what Plaintiffs

term the "Weinstein Sexual Enterprise" and (ii) that each Outside Director allegedly "knew of

Weinstein's pattern and practice of predatory sexual conduct toward women from both his

personal relationship with Weinstein and his position as a director of TWC."  (*Id.* ¶¶ 24, 26; *see

id.* ¶¶ 30, 32.)

Although Plaintiffs assert that each of the Outside Directors "knew of Weinstein's pattern

and practice of predatory sexual conduct toward women from his personal relationship with

Weinstein and his position as a director of TWC," nowhere does the Complaint identify *when*

any of these individuals supposedly learned that information, *how* they learned it*, or *what* they

supposedly knew.  The Complaint does not identify any reasons that these four individuals

would have known of Weinstein's "pattern and practice of sexual conduct toward women"

beyond its general description of their "personal relationship" and role "as a director of TWC,"

and offers no rationale for why they would have condoned his behavior.

The Complaint also makes several allegations with respect to the "Board" generally,

without identifying who was on the Board at the relevant times or which members of the Board

knew of the relevant facts or engaged in the pertinent conduct.  For example, it alleges that

"TWC's Board of Directors approved employment contracts for Weinstein for the periods 2005

to 2010 and 2010 to 2015" (*id.* ¶ 127), without identifying who was on the Board at each of those

times and ignoring the Complaint's own allegations that Dolan, Jones, Lasry, and Ziff *did not

join the Board until 2015 or later*.

The Complaint likewise makes a series of allegations with respect to the 2015

negotiations to renew Weinstein's contract.  It repeatedly refers to the "Board," without

identifying who was on the Board at the time or which defendants took which actions or knew

which facts, and misleadingly attributes knowledge of one board member—who is not one of the

Outside Directors—to the Board as a whole.  (*See, e.g., id.* ¶ 129.)  The Complaint further asserts that certain provisions in Weinstein's employment contract and TWC's Code of Conduct "reflect TWC's knowledge that Weinstein was more likely than not to engage in sexual harassment and other misconduct."  (*Id.* ¶ 133.)  But the Complaint does not allege facts supporting the conclusion that any *individual* Outside Director knew of Weinstein's purported propensity to engage in sexual misconduct.  Despite the Complaint's reliance on TWC's 2015 contract negotiations with Weinstein, the Complaint does not allege that any of the Outside Directors participated in those negotiations and completely ignores its own allegations that Jones and Lasry did not join the TWC Board until December 2015 and mid-2016, respectively, *after Weinstein's 2015 employment contract had been finalized.*  (*See generally id.* ¶¶ 26, 30, 129, 132.)

Although the Complaint baldly asserts that "TWC's executives, officers and employees had actual knowledge of Weinstein's repeated acts of sexual misconduct with women" and that this knowledge was supposedly possessed by "TWC's Board of Directors" (*see id.* ¶ 135), the Complaint does not allege which directors supposedly knew what information, how they knew it, or when they knew it.

## ARGUMENT

## I.    THE STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "test[s], in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief."  *GrowBlox Scis., Inc. v. GCM Admin. Servs., LLC*, No. 14-CV-2280, 2015 U.S. Dist. LEXIS 71180, at *14 (S.D.N.Y. June 2, 2015) (quoting *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)).

To survive a Rule 12(b)(6) motion, a claim must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Pleadings that are no more than conclusions "are not entitled to the assumption of truth," nor are "naked assertion[s] devoid of further factual enhancement." *Id.* at 678-79 (internal quotation marks omitted).

In addition, to the extent the Complaint alleges mail and wire fraud as RICO predicates, the Complaint must satisfy the heightened pleading requirements set forth by Federal Rule of Civil Procedure 9(b) in pleading those purported frauds. *Li Jun An v. Hui Zhang*, No. 13-CV-5064, 2013 U.S. Dist. LEXIS 174158, at *11 (S.D.N.Y. Dec. 6, 2013) ("To the extent that any predicate acts sound in fraud, the pleading of those acts must satisfy the particularity requirements of Rule 9(b)."). Rule 9(b) requires that allegations of fraud "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations, explain how the misrepresentations were fraudulent and plead those events which give rise to a strong inference that the defendant had an intent to defraud, knowledge of the falsity, or a reckless disregard for the truth." *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013) (internal quotation marks omitted).

## II.     THE COMPLAINT FAILS TO ALLEGE A RICO VIOLATION (COUNT I)

Congress enacted RICO as an "assault upon organized crime and its economic roots." *Russello v. United States*, 464 U.S. 16, 26 (1983); *see also United States v. Turkette,* 452 U.S.

576, 589 (1981); P.L. 91-452 Statement of Findings and Purpose ("It is the purpose of this Act to seek the eradication of organized crime").  The statute has a narrow purpose with strict legal requirements, and is not designed to be used broadly "as an instrument against all unlawful acts." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990).  "[C]ourts should strive to flush out frivolous RICO allegations at an early stage of the litigation."  *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (internal quotation marks omitted).

It is well settled that "[a] plaintiff's burden is high when pleading RICO allegations." *Targum*, 2013 U.S. Dist. LEXIS 164585, at *18-19.  To establish a violation of 18 U.S.C. § 1962(c), a plaintiff must plead "seven constituent elements:  (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce."  *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983).  In addition, a plaintiff must allege injury to his or her "business or property *by reason of* a violation of section 1962." *Id.* (quoting 18 U.S.C. § 1964(c)).  Each of these elements "must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 305-06 (2d Cir. 2001).  As discussed below, the Complaint fails to adequately allege the necessary elements as to any of the Outside Directors.

### A.    The Complaint Fails to Allege That the Outside Directors Engaged in a Pattern of Racketeering Activity, or Even a Single Predicate Act

RICO identifies an exclusive list of criminal acts that constitute predicate acts of racketeering.  *See* 18 U.S.C. § 1961(1).  "[T]o establish a violation of § 1962(c), plaintiffs must allege that **each defendant** committed at least two predicate acts of racketeering activity" within a 10-year period.  *Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003 U.S. Dist. LEXIS

21362, at *18-19, 25-26 (S.D.N.Y. Dec. 1, 2003) (citing *De Falco*, 244 F.3d at 306) (emphasis added); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  The Complaint, however, does not allege a single violation of a RICO predicate by any of the Outside Directors.

As an initial matter, it is well settled that a RICO cause of action must be pled with sufficient specificity to put the defendant on notice of the claim alleged against him.  The Complaint, however, alleges generally that "Defendants" engaged in four predicate acts, without identifying which defendants supposedly engaged in which predicate.  That is insufficient, and the RICO claim should be dismissed for that reason alone.  *Harris v. NYU Langone Med. Ctr.*, No. 12-CV-454, 2013 U.S. Dist. LEXIS 99328, at *26 (S.D.N.Y. July 9, 2013) ("In order to comply with Rule 8, a complaint should offer specification as to the particular activities by any particular defendant.") (internal quotation marks omitted); *Merrill Lynch, Pierce, Fenner & Smith v. Young*, No. 91-CV-2923, 1994 U.S. Dist. LEXIS 2929, at *48-49 (S.D.N.Y. Mar. 15, 1994) (dismissing a complaint where plaintiffs failed to "specify which defendant is alleged to have committed a particular predicate act").

Furthermore, "[t]he focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise." *United States v. Persico*, 832 F.2d 705, 714 (2d Cir. 1987); *see also Jerome M. Sobel & Co.*, 2003 U.S. Dist. LEXIS 21362, at *18-19 (RICO predicates must be alleged as to "each defendant").  Although the Complaint mentions four RICO predicates—sex trafficking in violation of 18 U.S.C. §§ 1590 and 1591, witness tampering in violation of 18 U.S.C. § 1512, and mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343—the Complaint fails to allege the required elements for *any* of these crimes.

1.      **The Complaint Fails to Allege That the Outside Directors Engaged in Commercial Sex Trafficking**

The Complaint is devoid of factual allegations that the Outside Directors engaged in commercial sex trafficking.[4]  Commercial sex trafficking occurs when a person, in or affecting interstate commerce, knowingly "recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person" to "engage in a commercial sex act."  18 U.S.C. § 1591.[5]  A person can also be held liable for commercial sex trafficking if they "knowingly" benefit "from participation in a venture" that has engaged in such a violation. *Id.* § 1591(a)(2).

The Complaint does not allege any facts showing that the Outside Directors took steps to cause a person to "engage in a commercial sex act."[6]  Nor does it allege that the Outside Directors knowingly benefitted from participating in a sex trafficking venture.  *United States v. Afyare*, 632 F. App'x 272, 285 (6th Cir. 2016) ("The defendant's mere membership in the venture is insufficient if he is ignorant of the venture's sex trafficking activities (and the means and methods thereof).").  Indeed, each of the alleged sexual assaults occurred in 2008 or earlier—long before the Complaint alleges any of the Outside Directors even joined TWC's Board.  That alone should end the inquiry.

---

[4] Congress enacted this statute to "criminalize[] and attempt[] to prevent slavery, involuntary servitude, and human trafficking for commercial gain.  Congress recognized that human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today."  *United States v. Walls*, 784 F.3d 543, 548 (9th Cir. 2015) (internal quotation marks omitted).

[5] The Complaint makes the conclusory assertion that "Defendants" (without identifying which defendants) engaged in "aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 and 1591."  (Complaint ¶ 196.)  Section 1591 is discussed above.  Section 1590 discusses the penalties for violations of Chapter 77 of the United States Code, "Peonage, Slavery, and Trafficking in Persons," and does not create additional categories of unlawful acts.  *See* 18 U.S.C. § 1590.

[6] The Complaint fails to allege that *any* defendant engaged in commercial sex trafficking.  Alleging that Weinstein sexually assaulted Plaintiffs is not sufficient to allege he engaged in commercial sex trafficking.  *See United States v. Todd*, 627 F.3d 329, 333 (9th Cir. 2010) (distinguishing between sex trafficking and "gender-motivated crimes of violence").

a.     The Complaint Fails to Allege the Outside Directors' Knowledge
of Commercial Sex Trafficking

The Complaint fails to allege that the Outside Directors knew that Weinstein engaged in

commercial sex trafficking.  The only allegation that comes even close is the Complaint's

conclusory assertion that each director "knew of Weinstein's pattern and practice of predatory

sexual conduct toward women from both his personal relationship with Weinstein and his

position as a director of TWC."  (Complaint ¶¶ 24, 26; *see id.* ¶¶ 30, 32.)  This boilerplate

allegation is insufficient as a matter of law.  *Medina v. Tremor Video, Inc.*, 640 F. App'x 45, 49

(2d Cir. 2016) (plaintiffs failed to plausibly allege knowledge where plaintiffs provided no

specific factual allegations such as at what point the defendants allegedly knew of the relevant

information); *Lowery v. City of New York*, No. 10-CV-7284, 2014 U.S. Dist. LEXIS 77533, at

*22 & n.12 (S.D.N.Y. June 6, 2014) ("boilerplate, conclusory allegations are insufficient to

withstand dismissal."); *McIntosh*, 2016 U.S. Dist. LEXIS 44290, at *68 ("[G]eneralized

allegations of knowledge are too conclusory" to survive a motion to dismiss.).[7]

Accordingly, this claim fails because there is no allegation that any of the Outside

Directors knew about any alleged sex trafficking venture.  *See* 18 U.S.C. § 1591(a)(2).

b.     The Complaint Fails to Allege the Outside Directors Participated
in a Sex Trafficking Venture

The Complaint also fails to allege that any of the Outside Directors participated in an

alleged sex trafficking venture.  *See* 18 U.S.C. § 1591(a)(2).  The Sixth Circuit's decision in

*United States v. Afyare* is instructive on this point.  There, the Government argued that a

---

[7] The Complaint insinuates that the "Board" generally knew about alleged misconduct because Lance Maerov and
Tarak Ben Ammar knew that "settlements with women" had been paid.  (Complaint ¶¶ 129-30.)  The Complaint,
however, does not allege that Maerov or Ben Ammar informed any other TWC Board members that these
settlements occurred, or the nature of the claims that were settled.  In any event, awareness that a settlement had
been paid does not establish knowledge that Weinstein engaged in a commercial sex act.  Settlements are paid for a
variety of reasons, whether a suit is valid or invalid.  *See, e.g., Medinol Ltd. v. Guidant Corp.*, 500 F. Supp. 2d 345,
353 (S.D.N.Y. 2007) ("There are many reasons to settle a matter.").

defendant could be held responsible for "participating" in a "venture" that engaged in

commercial sex trafficking, even if the defendant himself participated in the venture for "legal or

innocuous reasons" that were "wholly unrelated to sex trafficking." 632 F. App'x at 279. The

Sixth Circuit soundly rejected the Government's position:

> [C]onsider a hypothetical defendant who joins a soccer team with some sex
> traffickers, who sponsor the team financially (i.e., pay for travel accommodations,
> uniforms and equipment, training, etc.) using the money they generate from sex
> trafficking activities. And assume that the sex traffickers do not conceal the
> source of this money from the rest of the team, such that our defendant knows (or
> recklessly disregards clear knowledge) that his teammate-sex-trafficker-sponsors
> are engaged in sex trafficking. Under this scenario, the prosecution can meet the
> first two elements under either construction: (1) the defendant knows of the sex
> trafficking and (2) benefits from it (i.e., free travel, equipment, training, etc.).
> Under the government's four-element construction, the prosecution would then
> prove (3) that the defendant participates in "a" venture with the sex traffickers
> (i.e., the soccer team), and (4) some members of the soccer team engage in sex
> trafficking, though everyone agrees that our particular defendant does not, nor
> does he engage in any activities that further any aspect of the sex trafficking in
> any way.
>
> Ignoring the reprehensible amorality of our hypothetical defendant, who
> knowingly participates on a soccer team funded by sex trafficking money, the
> question is whether Congress criminalized his conduct in § 1591(a)(2). . . .
>
> We agree with the district court and find that § 1591(a)(2) targets those who
> participate in sex trafficking; it does not target soccer players who turn a blind eye
> to the source of their financial sponsorship.

*Id.* at 286. The Court explained that the Government could prove this hypothetical

defendant participated in this "sex-trafficking venture" only if he "engaged in some

aspect of the sex-trafficking along with his teammates." *Id.* Participation in an

organization for legitimate purposes is irrelevant, and does not establish liability under

§ 1591(a)(2). *Id.* Here, the Complaint does not contain any allegations that the Outside

Directors engaged in any aspect of a sex-trafficking venture, let alone that they engaged

in any alleged sex-trafficking, so the Complaint fails to adequately allege this RICO predicate.

> c.    <u>The Complaint Fails to Allege the Outside Directors Benefitted from Participating in a Sex Trafficking Venture</u>

Another defect with this claim is that the Complaint does not allege that any of the Outside Directors derived any benefit from participating in an alleged sex trafficking venture. Indeed, the Complaint is entirely devoid of allegations regarding any benefit whatsoever that any of the Outside Directors received at any time, let alone from sex trafficking.  *United States v. Flanders*, 752 F.3d 1317, 1338 (11th Cir. 2014) (§ 1591(a)(2) "requires proof that the defendant received a valuable benefit from his participation" in a sex trafficking venture).  For this separate reason, Plaintiffs have failed to plead sex trafficking as a RICO predicate.

> 2.    **The Complaint Fails to Allege That the Outside Directors Engaged in Witness Tampering**

The witness tampering statute, 18 U.S.C. § 1512, proscribes a variety of behavior under four separate subsections.[8]  The Complaint does not identify any of the acts that purportedly constituted witness tampering or which portions of this statute were violated.

In any event, a review of the allegations makes clear that the Outside Directors did not engage in witness tampering of any sort.  The Complaint's allegations with respect to witness

---

[8] Section § 1512(a) makes it a crime to "kill[] or attempt[] to kill another person" or "use[] physical force or the threat of physical force against any person" with certain improper intents.  Section 1512(b) makes it a crime to "knowingly use[] intimidation, threaten[] or corruptly persuade[] another person, or attempt[] to do so, or engage[] in misleading conduct toward another person, with intent to (1) influence, delay or prevent the testimony of any person in an official proceeding; [or] (2) cause or induce any person to (A) withhold testimony, or withhold a record, document, or other object, from an official proceeding . . . ."  Section 1512(c) makes it a crime to "corruptly (1) alter[], destroy[], mutilate[], or conceal[] a record, document, or other object, or attempt[] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or (2) otherwise obstruct[], influence[], or impede[] any official proceeding, or attempt[] to do so."  Section 1512(d) makes it a crime to "intentionally harass[] another person and thereby hinder[], delay[], prevent[], or dissuade[] any person from (1) attending or testifying in an official proceeding; (2) reporting to a law enforcement officer or judge of the United States the commission or possible commission of a Federal offense . . . ; (3) arresting or seeking the arrest of another person in connection with a Federal offense; or (4) causing a criminal prosecution, or a parole or probation revocation proceeding, to be sought or instituted, or assisting in such prosecution or proceeding."

tampering center on various other defendants' alleged actions to investigate and "gather intelligence to prevent the reporting or publication of [] accusations."  (*See* Complaint ¶¶ 148-67.)  Setting aside the insufficiency of these allegations against those defendants,[9] ***not a single one of these allegations concerns any of the Outside Directors***, the TWC Board, or even TWC more generally.  Because the Complaint does not adequately allege that the Outside Directors engaged in witness tampering, witness tampering cannot be used as a predicate to support a RICO claim against any of them.  *See, e.g., DeFalco*, 244 F.3d at 306 ("The requirements of section 1962(c) must be established as to each individual defendant.").

### 3.   The Complaint Fails to Allege That the Outside Directors Engaged in Mail Fraud or Wire Fraud

The Complaint baldly contends that "Defendants" (again without identifying which ones) engaged in mail fraud and wire fraud under 18 U.S.C. §§ 1341 and 1343.

To establish a claim for mail or wire fraud, one must allege "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails or wires to further the scheme."  *United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (internal quotation marks omitted); *see also Westchester Cnty. Independence Party v. Astorino*, 137 F. Supp. 3d 586, 600 (S.D.N.Y. 2015); *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 321 (S.D.N.Y. 2014).  To establish the first element, the Complaint must allege "(i) the existence of a scheme to defraud, (ii) the requisite scienter (or fraudulent intent) on the part of the defendant, and (iii) the materiality of the misrepresentations."  *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (citations omitted).  Plaintiffs must plead each of these elements with particularity for each defendant.

---

[9] Plaintiffs allege, at most, that other defendants acted in the media to influence the story that news outlets reported concerning the allegations against Weinstein.  But it is not witness tampering to attempt to influence a news article.  Rather, witness tampering requires that the defendant act with intent to delay or prevent evidence from being admitted at an "official proceeding."  18 U.S.C. § 1512; *Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 410 (S.D.N.Y. 2013) (witness tampering statute requires "'nexus' between the actions alleged and the legal process or proceeding contemplated," and "generalized threats to intimidate Plaintiffs" rather than "threats in contemplation of an actual future court proceeding" do not constitute witness tampering).

Fed. R. Civ. P. 9(b); *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Li Jun An*, 2013 U.S. Dist. LEXIS 174158, at *11.  "It is not sufficient that [the] defendant realizes that the scheme is fraudulent and that it has the capacity to cause harm to its victims.  Instead, the proof must demonstrate that the defendant had a conscious knowing intent to defraud and that the defendant contemplated or intended some harm to the property rights of the victim." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (alteration, omission, and internal quotation marks omitted).

The Complaint fails to satisfy these requirements.  It does not allege any facts showing that any of the Outside Directors participated in—or even knew about—a scheme to defraud.  It also does not allege that any of the Outside Directors possessed the requisite "fraudulent intent." Instead, the Complaint makes the conclusory assertion that "Defendants" engaged in a "scheme and common course of conduct to deceive the public about Weinstein's sexual activities" (Complaint ¶ 205), but this conclusory assertion is undermined by other allegations contained in the Complaint, including the supposed litany of steps allegedly taken by various *other* defendants in an attempt to mislead the public.

Moreover, notably absent from the Complaint is any factual allegation that links any of the Outside Directors to this purported scheme:

- The Complaint does not allege that any of the Outside Directors retained the companies that allegedly deceived the public, were responsible for their actions, or even knew that those firms were misleading the public with respect to Weinstein's alleged sexual misconduct.

- The Complaint does not allege facts showing that any of the individual Outside Directors knew about Weinstein's sexual misconduct.

- The Complaint does not identify any steps that the Outside Directors took to deceive anyone about Weinstein's sexual misconduct.

- The Complaint does not allege facts suggesting that any of the Outside Directors had a "conscious knowing intent to defraud." *Guadagna*, 183 F.3d at 129; *see also United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000) (establishing a scheme to defraud requires demonstrating "the requisite scienter (or fraudulent intent) on the part of the defendant").

- The Complaint does not allege facts showing that any of the Outside Directors—or anyone else—"contemplated . . . harm to the property rights of the victim." *Guadagna*, 183 F.3d at 129; *see also Shellef*, 507 F.3d at 107 (to show mail or wire fraud, a plaintiff must demonstrate that "money or property [was] the object of the scheme."). "A scheme to deceive, however dishonest the methods employed, is not a scheme to defraud in the absence of a property right for the scheme to interfere with." *Pierce*, 224 F.3d at 165. The Complaint alleges no such property right. Instead, it suggests that the purpose of the scheme was "to deceive the public." (Complaint ¶ 205.) But there is no property right belonging to "the public" that was impacted by this supposed scheme to deceive. *See*, *e.g.*, *Li Jun An*, 2013 U.S. Dist. LEXIS 174158, at *18 ("The mere fact that a statement is negative or even defamatory with respect to a plaintiff does not make it fraudulent").

For all these reasons, the Complaint fails to adequately allege mail or wire fraud as a RICO predicate.

**B.      The Complaint Fails to Allege the Existence of a RICO Enterprise**

The RICO claim also should be dismissed because a RICO enterprise is not properly

pleaded.  To properly plead a RICO enterprise, a plaintiff must allege facts showing that the

defendants were members of an enterprise that "share[d] a common purpose" and "work[ed]

together to achieve their goal."  *Aerowest GmbH v. Freitag*, No. 15-CV-2894, 2016 U.S. Dist.

LEXIS 84344, at *7 (E.D.N.Y. June 28, 2016) (internal quotation marks omitted).  In addition,

the plaintiff must allege facts demonstrating that the enterprise was a "functioning unit," by

providing sufficient allegations "regarding the hierarchy, organization, and activities of the

alleged enterprise."  *Cont'l Fin. Co. v. Ledwith*, No. 08-CV-7272, 2009 U.S. Dist. LEXIS 52618,

at *16 (S.D.N.Y. June 22, 2009); *see Aerowest GmbH*, 2016 U.S. Dist. LEXIS 84344, at *7-8.

The Complaint does none of this.  Rather, the Complaint contends that a laundry list of

diverse groups of individuals, corporations, and firms—including Weinstein, Miramax, TWC,

individual TWC directors, Kroll, Black Cube, David Boies, Boies Schiller, several other law

firms, and various amorphous "casting directors and agencies, directors, co-producers of

Miramax and TWC, and other entertainment industry members," and journalists—comprise a

"RICO enterprise."  (Complaint ¶ 5.)  Plaintiffs do not even attempt to establish that each of

these persons, groups or companies was actually working together as part of a single

organization to achieve a common purpose.  *Nat'l Grp. for Commnc'ns Ltd. v. Lucent Techs.*

*Inc.*, 420 F. Supp. 2d 253, 271 (S.D.N.Y. 2006) ("[P]laintiff fails to set forth facts to support the

conclusion that all seventeen defendants were actually working with one another or associated

together in a single ongoing organization or continuing unit where members worked together to

accomplish a common purpose.").

Moreover, the Complaint does not allege facts showing an organization that exists

"separate and distinct from the alleged predicate racketeering acts themselves—a requirement in

19

this Circuit." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004); *see also Miller v. Carpinello*, No. 06-CV-12940, 2007 U.S. Dist. LEXIS 86395, at *23 (S.D.N.Y. Nov. 19, 2007) (a RICO plaintiff must allege the existence of an enterprise "that exists separate and apart from its alleged illegal activities.").  "[I]n assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering, it is appropriate to consider whether the enterprise would still exist were the predicate acts removed from the equation." *Wood v. Inc. Vill. of Patchogue*, 311 F. Supp. 2d 344, 357 (E.D.N.Y. 2004) (internal quotation marks omitted).  Here, the Complaint fails to allege any enterprise that "exist[s] and function[s] separately from the alleged illegal acts," and so its RICO claim must be dismissed.  *Hoatson v. N.Y. Archdiocese*, No. 05-CV-10467, 2007 U.S. Dist. LEXIS 9406, at *10 (S.D.N.Y. Feb. 8 2007), *aff'd* 280 F. App'x 88 (2d Cir. 2008) (dismissing complaint where other than "wholly conclusory allegations, Plaintiff does not allege any facts that the defendants functioned 'as a continuing unit,' or were 'an entity separate and apart' from their alleged illegal activities . . . The 'enterprise' . . . must exist and function separately from the alleged illegal acts, and Plaintiff has failed to assert that.").

## C.   The Complaint Fails to Allege That the Outside Directors Participated in the Operation of a RICO Enterprise

Even if the Complaint had adequately alleged that a RICO enterprise existed (and it has not), the claims against the Outside Directors would nonetheless fail because the Complaint does not allege that any of those individuals participated in the operation or management of that enterprise.  "[O]ne is liable under RICO only if he participated in the operation or management of the enterprise itself." *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994) (internal quotation marks omitted); *see also Reves v. Ernst & Young*, 507 U.S. 170, 536-37 (1993); *Satinwood*, 385 F.3d at 175-76 ("For RICO purposes, simply establishing the presence of an

20

enterprise is not enough.  Plaintiffs must also allege that the defendants 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" (quoting 18 U.S.C. § 1962(c))).

But just as the Outside Directors did not engage in any of the underlying predicate acts (which is itself fatal to any RICO claim against them), these individuals also did not participate in the operation or management of the purported enterprise. *See Conte v. Newsday, Inc*., 703 F. Supp. 2d 126, 135-36 (E.D.N.Y. 2010) (plaintiffs failed to allege participation in an enterprise where they "fail[ed] to articulate how these various entities and individuals exerted control over the enterprise's affairs").

### D.     Plaintiffs' Injuries Are Not Redressable Under RICO

"In order to bring a suit under RICO, each plaintiff must allege injury to his or her business or property caused 'by reason of the substantive RICO violation.'" *Astorino*, 137 F. Supp. 3d at 612 (quoting *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 91 (2d Cir. 2015)); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) ("[T]he plaintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation.").  In determining whether a plaintiff has suffered a RICO injury, the court must engage in a two-step analysis: (1) identify "the property interest that is protected by RICO, as alleged by plaintiffs," and (2) determine "whether the injury to that interest was caused by the RICO violation." *Sykes*, 780 F.3d at 91.

Although the harms alleged by Plaintiffs are undoubtedly significant, they are not RICO injuries.  (*See*, *e.g.*, Complaint ¶¶ 55-60, 76, 83.)  "RICO provides recovery for injury to business and property; it does not provide recovery for physical and emotional injuries." *Williams v. Dow Chem. Co.*, 255 F. Supp. 2d 219, 225 (S.D.N.Y. 2003); *see also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2108 (2016) (Congress "cabin[ed] RICO's private cause of action to

particular kinds of injury—excluding, for example, personal injuries"); *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) ("[I]njury to character, business reputation, and/or intentional infliction of emotional distress are not actionable under civil RICO."); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979) ("The phrase 'business or property' . . . exclude[s] personal injuries suffered.").  RICO likewise does not provide redress for the "economic consequences of personal injuries."  *Navin v. Wells Fargo Bank, N.A.*, 199 F. Supp. 3d 646, 657 (D. Conn. 2016); *see also Doe v. Roe,* 958 F.2d 763, 770 (7th Cir. 1992) ("Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress—and therefore reflect personal injuries which are not compensable under RICO."); *Zimmerman v. Poly Prep Country Day Sch.*, 888 F. Supp. 2d 317, 329-30 (E.D.N.Y. 2012) (collecting cases).

Moreover, RICO damages must be provable, not speculative.  *World Wrestling Entm't, Inc.* v. *Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 520 (S.D.N.Y. 2007), *aff'd* 328 F. App'x 695 (2d Cir. 2009).  "Specific damages are required because the purpose of a civil RICO award is to return the plaintiff to the same financial position [s]he would have enjoyed absent the illegal conduct."  *Trustees of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995).  Harm to Plaintiffs' careers is too speculative to be redressed under RICO.  *See id*. at 1146 ("a RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable"); *Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014) ("loss of career" is "speculative and indefinite," and "loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO"); *Tsipouras*, 9 F. Supp. 2d at 368 ("[B]onus claims are not recoverable under civil RICO because the fact of their accrual is speculative or their amount and

nature unprovable.") (internal quotation marks omitted).  Because the Complaint fails to allege that Plaintiffs suffered RICO injuries, the RICO claim must fail.

### E.    Plaintiffs' Injuries Were Not Caused by Actions of the Outside Directors

Even if Plaintiffs' injuries were compensable under RICO (which they are not), the Complaint fails to allege that those injuries were *caused* by the Outside Directors' conduct.  To adequately plead a RICO cause of action, "each plaintiff must allege injury to his or her business or property caused 'by reason of the substantive RICO violation.'"  *Astorino*, 137 F. Supp. 3d at 612 (quoting *Sykes*, 780 F.3d at 91)).

Whatever injuries Plaintiffs may have suffered were not caused by a RICO violation committed by one of the Outside Directors.  The timeline alone makes this clear.  For example, Ms. Geiss alleges the loss of her "three-film deal and other opportunities at TWC" based on a *2008* meeting with Weinstein.  (Complaint ¶ 103.)  That meeting took place at least seven years before any of the Outside Directors allegedly joined TWC's Board.  Similarly, the other Plaintiffs allege physical, emotional, and reputational injuries—all of which occurred in 2008 or earlier, well before the Complaint alleges the Outside Directors joined TWC's Board.  *See S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.*, No. 08-CV-5175, 2009 U.S. Dist. LEXIS 91414, at *24 (S.D.N.Y. Sept. 30, 2009) (dismissing complaint where plaintiffs failed to plead that their injuries were caused by defendants' alleged RICO violations).

## III.   THE COMPLAINT FAILS TO ALLEGE A CONSPIRACY TO VIOLATE RICO (COUNT II)

The Complaint also unsuccessfully attempts to allege a conspiracy to violate RICO under 18 U.S.C. § 1962(d) (making it "unlawful for any person to conspire to violate any of" § 1962's other provisions).

Because the Complaint does not properly plead a substantive RICO violation, no conspiracy claim can succeed.  *See Satinwood*, 385 F.3d at 182 (RICO conspiracy claim properly dismissed where "Plaintiffs did not adequately allege a substantive violation of RICO"); *New York v. UPS, Inc.*, No. 15-CV-1136, 2016 U.S. Dist. LEXIS 105038, at \*13 (S.D.N.Y. Aug. 9, 2016) ("[A]ny claim under § 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (internal quotation marks omitted).

Plaintiffs' RICO conspiracy claim against the Outside Directors is also deficient because the Complaint does not allege that any of them "agreed with at least one other entity to commit a substantive RICO offense."  *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 487 (2d Cir. 2014); *see also Webb v. Goord,* 340 F.3d 105, 111 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any . . . meeting of the minds occurred among any or all of the defendants.  Their conspiracy allegation must therefore fail."); *Bryant v. Philadelphia*, No. 89-CV-6005, 1990 U.S. Dist. LEXIS 7132, at \*16 (E.D. Pa. June 11, 1990) (dismissing RICO conspiracy claim against lawyer and city because, among other things, "most of the alleged violations occurred when only the City of Philadelphia could have been part of the conspiracy (that is, before the plaintiff retained [the lawyer]").  The Outside Directors cannot have "agreed" to commit an offense that occurred before they joined the TWC Board.

IV.     **THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION OR RETENTION AGAINST THE OUTSIDE DIRECTORS (COUNT IV)**

Count IV of the Complaint purports to state a claim for negligent supervision or retention against TWC's Board Members.  (Complaint ¶¶ 225-30.)  But the Complaint does not include any, much less sufficient, well-pled allegations about the individual directors' actual supervision

or retention of Weinstein.  The Complaint's utter failure to include any factually-supported claims against the Outside Directors requires that it be dismissed as against them.

To state a claim for negligent supervision or retention, Plaintiffs must demonstrate the standard elements of negligence[10] and "(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004).  Finally, Plaintiffs must allege that "the employer's negligence [is] the proximate cause of the plaintiff's injuries."  *Saldana v. Vill. of Port Chester*, No. 09-CV-6268, 2010 U.S. Dist. LEXIS 142099, at *16 (S.D.N.Y. July 21, 2010).  Count IV fails to adequately allege any one of these elements, much less all of them.

### A.    The Complaint Fails to Allege That the Outside Directors Employed Weinstein

Nowhere does the Complaint allege (even summarily) that the Outside Directors and Weinstein were in an employer-employee relationship.  Rather, the Complaint identifies Weinstein as an employee of TWC, stating that "at all times material from September 30, 2005, to October 2017, TWC employed Weinstein."  (Complaint ¶ 226; *see also id*. ¶ 22 (Weinstein

---

[10]  As a threshold matter, the Complaint does not allege that the Outside Directors owed Plaintiffs the duty of care that is required for a negligence claim.  Under New York law, the elements of a negligence claim are that "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach."  *Dunahoo v. Hewlett-Packard Co.*, No. 11-CV-5588, 2012 U.S. Dist. LEXIS 7717, at *7 (S.D.N.Y. Jan. 20, 2012) (dismissing a negligent supervision claim because the plaintiff failed to adequately plead that the defendant breached a duty).  In this case, Plaintiffs cannot show a duty of care because board members do not owe third parties any duty to supervise the corporation's employees.  *Belmont v. MB Inv. Partners Inc.*, 708 F.3d 470, 489 (3d Cir. 2013) (dismissing a negligent supervision claim as against a company's board members arising out of an alleged Ponzi scheme because a corporate director's duty to act in good faith for the corporation does not extend to supervising employees' day-to-day actions).  A board member's duty of care and loyalty is owed to the corporation and shareholders, *Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984), and the Outside Directors cannot be obligated to third parties, including Plaintiffs, to supervise Weinstein's individual conduct.  In the absence of a duty of care, Plaintiffs' negligent supervision or retention claim must fail.

was an "employee of TWC"); *id.* ¶ 296 ("Weinstein was an agent, director, and employee of TWC").)  Absent an allegation that the Outside Directors employed Weinstein, Plaintiffs' negligent supervision or retention claim fails as a matter of law.  *See Naughright v. Robbins*, No. 10-CV-8451, 2014 U.S. Dist. LEXIS 148497, at *18 (S.D.N.Y. Oct. 17, 2014) (dismissing a claim for negligent hiring, supervision, or retention because the plaintiff did not plead that the tortfeasor was employed by the defendant, the alleged medical director of a clinic where the tortfeasor treated patients including the plaintiff).[11]

Under New York law, an employee-employer relationship depends on the employer exercising substantial control over the "results produced" and the "means used" to create the results, with "means used" being the more important.  *O'Brien v. Spitzer*, 851 N.E.2d 1195, 1196 (N.Y. 2006); *In re Ted Is Back Corp.*, 475 N.E.2d 113, 114 (N.Y. 1984); *Weinfeld v. HR Photography, Inc.*, 52 N.Y.S.3d 458, 460 (2d Dep't 2017) (finding that the defendant did not control the alleged tortfeasor as an employee and was not liable for negligently supervising or retaining the tortfeasor).  In this case, none of the individual Board members controlled Weinstein, and Plaintiffs make no allegation to the contrary.  Specifically, the Complaint does not (and could not) allege that the Outside Directors controlled or directed Weinstein's day-to-day actions in running TWC, and without that allegation the Complaint cannot allege the first element of a negligent supervision or retention claim.  Accordingly, the Complaint's claim for negligent supervision and retention fails as a matter of law.

---

[11] One Southern District of New York decision, which dismissed a negligent hiring, screening, retention, supervision, and training claim as against a company and its directors, identified, in dicta, two cases in which negligent hiring and supervision claims were allowed to proceed against individual board members.  *Lewis v. Roosevelt Island Operating Corp.*, 246 F. Supp. 3d 979, 994 n. 8 (S.D.N.Y. 2017).  Neither of those cases address the employee-employer element of a negligent supervision claim, *Dooley v. Metro. Jewish Health Sys.*, No. 02-CV-4640, 2003 U.S. Dist. LEXIS 16520, *33-34 (E.D.N.Y. Jul. 30, 2003); *Calder v. Planned Cmty. Living, Inc.*, No. 93-CV-8882, 1995 U.S. Dist. LEXIS 10773, *28 (S.D.N.Y. Aug. 2, 1995), and no other court has cited *Dooley* or *Calder* in deciding a negligent supervision or retention claim.

**B.     The Complaint Fails to Allege Any Facts to Support That the Outside Directors Knew or Should Have Known About Weinstein's Propensity for Sexual Misconduct**

As discussed above, the Complaint is utterly barren of factual allegations showing that the Outside Directors knew or should have known of Weinstein's propensity for sexual misconduct.  Under New York law, an employer is liable for negligent supervision or retention only if he or she has actual or constructive knowledge of specific prior acts or allegations that make the employee's underlying action foreseeable.  *Ehrens*, 385 F.3d at 235 (holding that plaintiffs must show that the employer-defendant is aware of its employee's propensity for the misconduct that caused the injury, before the injury occurs); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (granting motion to dismiss because the complaint did not allege facts suggesting that the defendant knew or should have known of prior misconduct by the employee); *Doe v. City of New York*, No. 09-CV-9895, 2013 U.S. Dist. LEXIS 30010, at *17-18 (S.D.N.Y. Mar. 4, 2013) (granting motion to dismiss where the plaintiff did not plausibly allege that the defendant knew or should have known of its employee's propensity for rape).  Because Plaintiffs have not alleged facts establishing that the Outside Directors knew or should have known of a prior instance or allegation of Weinstein's sexual misconduct, Plaintiffs' negligent supervision or retention claim fails.

The Complaint's allegations against the Outside Directors are limited to a single paragraph for each Director, alleging only—and without reference to any facts—that each Director "knew of Weinstein's pattern and practice of predatory sexual conduct toward women from both his personal relationship with Weinstein and his position as a director of TWC." (Complaint ¶¶ 24, 26; *see id.* ¶¶ 30, 32.)  But empty conclusions that an employer knew or should have known of its employee's propensity to engage in tortious conduct are not sufficient to state a claim.  *Noonan v. City of New York*, No. 14-CV-4084, 2015 U.S. Dist. LEXIS 83451,

27

at *8-9 (S.D.N.Y. June 26, 2015) (finding that a bare assertion that sexual assault by police officers was going on "for years" is deficient without factual allegations that the defendant knew of the alleged tortfeasor's propensity for sexual assault or related acts); *Stamile v. Cnty. of Nassau*, No. 10-CV-2632, 2014 U.S. Dist. LEXIS 39320, at *26-28 (E.D.N.Y. Mar. 25, 2014) (holding that plaintiff's conclusory allegations that defendant had actual or constructive knowledge of the tortfeasor's propensity to engage in inmate sexual abuse cannot withstand a motion to dismiss). In the same way, the Complaint's entirely unsupported and conclusory allegation that the Outside Directors knew of Weinstein's "pattern and practice" of sexual misconduct fails to satisfy the applicable pleading standard. The Complaint's bald allegations that TWC's "Board" as a whole knew or should have known of Weinstein's sexual misconduct (Complaint ¶¶ 1, 5, 27, 129, 135, 228, 298) are likewise unsupported by any allegations of facts, and fare no better.

Lacking any individualized allegations relating to specific directors, the Complaint makes generalized allegations about the "Board" (and what it knew) without acknowledging—much less addressing—that different Board Members served for and at different periods of time. But these generalized allegations, like allegations involving Miramax or TWC employees (*id.* ¶¶ 79, 122, 123, 137, 138, 174, 176, 177) or other directors (*id.* ¶¶ 27, 28, 130), do not satisfy Plaintiffs' burden of alleging that each of the Outside Directors had actual or constructive knowledge of Weinstein's propensity for misconduct and assault.

In *Khapesi v. City of New York*, for example, which involved claims against various New York City Department of Corrections employees and the City based on 42 U.S.C. § 1983 and state law discrimination and negligent hiring, retention, supervision, and training causes of action, the court granted a motion to dismiss the negligence claims as against all defendants. In

that case, arising out of a chaplain's alleged sexual misconduct against a prison inmate, the court dismissed the negligence claims notwithstanding allegations that another inmate reported the abuse to a non-defendant correctional officer, and that two additional non-defendant officers suspected the misconduct.  In so doing, the court relied on the absence of any allegations that the defendants were informed of or put on notice of the wrongdoing.  No. 13-CV-4391, 2014 U.S. Dist. LEXIS 79623, at *22-29 (S.D.N.Y. June 10, 2014).

Here, like in *Khapesi*, Plaintiffs' allegations that certain employees or directors were informed of some of Weinstein's conduct, and allegations that others knew of rumors, are insufficient because they do not speak to what the individual Outside Directors knew or should have known.  *See also Dilworth v. Goldberg*, No. 10-CV-2224, 2011 U.S. Dist. LEXIS 82392, at *86-88 (S.D.N.Y. July 28, 2011) (dismissing a negligent supervision claim against defendant New York Medical College ("NYMC") because the complaint lacked facts showing NYMC's awareness of its employees' torts even where other defendants allegedly knew about the misconduct), *report and recommendation adopted in relevant part*, 2011 U.S. Dist. LEXIS 112329 (S.D.N.Y. Sept. 30, 2011); *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-CV-15509, 2011 U.S. Dist. LEXIS 35485, at *28 (S.D.N.Y. Mar. 24, 2011) (dismissing a negligent supervision claim against individual defendants for whom there was no evidence that they knew or should have known about a prior incident of sexual behavior toward a student, but not dismissing the claim against the school district or a defendant who received a complaint about the prior incident).

Finally, the Complaint's general allegation that "Ammar admitted that he and the TWC Board were aware that Weinstein had been accused of groping model Ambra Battilana Gutierrez in 2015" (Complaint ¶ 27) fails to satisfy the knowledge element of Plaintiffs' negligent

supervision or retention claim.  First, this vague assertion does not provide any detail about which Board members are alleged to have been aware of the accusation; when they learned of the accusation; or what in particular they were allegedly told.[12]  Second, and even assuming this allegation were true, it is not relevant to Plaintiffs' claim because the Complaint does not allege sexual misconduct *after* 2015; a complaint must show that defendants had knowledge of a related act or allegation *before* the tort is committed to state a negligent supervision or retention claim. *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (dismissing a negligent supervision or retention claim for failure to allege a prior act or allegation of sexual misconduct).  Here, Plaintiffs' negligent supervision and retention claim fails because Plaintiffs do not and cannot allege facts purporting to demonstrate the Outside Directors' knowledge of Weinstein's propensity for sexual misconduct before he engaged in it.

## C.   The Complaint Fails to Allege That Any Injury Occurred on Any Directors' or TWC's Premises

The Complaint's negligent supervision and retention claim fails for the additional reason that the Complaint does not adequately plead that an underlying tort occurred on the Outside Directors' or TWC's premises or with their personal property.  *See Ehrens*, 385 F.3d at 236 (affirming dismissal of negligent supervision claim when a minister allegedly sexually assaulted the plaintiff outside of church property); *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 532-33 (S.D.N.Y. 1998) (finding defendants not liable for employees' sexual misconduct that occurred off-premises at an apartment and a restaurant); *Doe 1 v. Bd. of Educ. of Greenport Union Free Sch. Dist.*, 955 N.Y.S.2d 600, 602 (2d Dep't 2012) (granting motion to dismiss negligent supervision claim where teacher's sexual misconduct took place off school grounds).  Even if

---

[12] At least one Director (Defendant Marc Lasry) was not even on the Board in 2015, and another (Defendant Paul Tudor Jones) did not join until December 2015, after the Board is alleged to have supported a renewal of Weinstein's contract notwithstanding an awareness of the Gutierrez allegation.

Plaintiffs initially met Weinstein on the Outside Directors' or TWC's premises, Plaintiffs must assert that Weinstein *committed tortious conduct* on or using the Outside Directors' or TWC's property.  *See Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 332 (S.D.N.Y. 1996) (dismissing negligent retention claim where employee, who met the plaintiff on employer's online sex chat room, had sex with the plaintiff outside the employer's premises without disclosing his HIV status).

The Complaint fails to identify a single act that occurred on the Outside Directors' premises or with their personal property.  Its unsupported and general allegation that Weinstein's conduct occurred on "TWC property or at locations paid for by TWC" (Complaint ¶¶ 242, 254, 270, 286) is insufficient.  *See Iqbal*, 556 U.S. at 679 ("[P]leadings that, because they are no more than conclusions, are not entitled to the assumption of truth.").  Moreover, Count IV is brought by Plaintiffs (Ms. Geiss and Ms. Thomas) who do not even allege that they were injured on "TWC property or at locations paid for by TWC."

Ms. Thomas was allegedly injured at Weinstein's Connecticut home.  (Complaint ¶¶ 14, 106.)  The Outside Directors are not liable for Weinstein's actions at Weinstein's home as a matter of law.  In *Naughright*, the court dismissed a negligent hiring, supervision, or retention claim against the defendant clinic director because the complaint clearly alleged that the tort occurred at the clinic founder's apartment.  2014 U.S. Dist. LEXIS 148497, at *19.  Similarly, Plaintiffs cannot state a negligent supervision or retention claim against the Outside Directors for Weinstein's conduct in his own home.

Ms. Geiss was allegedly injured in a hotel room in Utah.  (Complaint ¶ 96.)  The Outside Directors are similarly not liable for this alleged misconduct because Plaintiffs must establish that the tortious conduct occurred on the employer's *premises*, rather than a location at which the

employer or employee *happens to conduct business*.  In *Doe v. Alsaud*, the court granted the
defendant-employer's motion to dismiss in part because the sexual assault committed by its
employee took place off-premises at the Plaza Hotel, even though the complaint alleged that the
employee lived at the Plaza to serve in the entourage of a client, a Saudi Arabian prince, and one
of the employee's job responsibilities was regulating the temperature of the prince's floor at the
Plaza.  12 F. Supp. 3d 674, 676, 684 (S.D.N.Y. 2014).  So too here, it is not enough that
Weinstein may have conducted business at the hotel at which he allegedly met Ms. Geiss.
(Complaint ¶ 98.)

The Complaint's factually unsupported assertion that Weinstein committed torts at
"locations paid for by TWC" is similarly legally insufficient.  When an underlying tort did not
occur at an employer's premises, the plaintiff must show that the employer exercised "dominion
or control" over the off-premises property.  *See Alsaud*, 12 F. Supp. 3d. at 684 (finding negligent
supervision and retention claims inadequately alleged because the underlying assault occurred at
an off-premises hotel that the defendant did not control, regardless of the fact that the
defendant's employee regulated the temperature on one floor of the hotel as part of his job).  A
Tenth Circuit case, in which the plaintiff alleged she was sexually assaulted by the defendant's
employee in his private room at the defendant's hotel, is informative.  *See Anderson v. Adam's
Mark Hotels & Resorts*, No. 99-1100, 2000 U.S. App. LEXIS 6949 (10th Cir. Apr. 18, 2000).  In
*Anderson*, the court dismissed the plaintiff's negligent supervision claim even though the
underlying tort took place on the employer's property because the employer "did not have
complete authority to police the room and the activities inside, nor was [the employee] privileged
to enter the room only as an employee."  *Id.* at *7.  Clearly, the defendant's control of a location

is key to the premises prong of a negligent supervision or retention claim.  Here, Plaintiffs make

no allegations that TWC controlled the locations that it allegedly paid for.

Plaintiffs have not adequately pled the "premises" prong of their negligent supervision or

retention claim because the Complaint does not allege any tortious conduct on the Outside

Directors' property or using their property; does not contain any factual support for the allegation

that tortious conduct occurred on property owned or paid for by TWC; and does not allege that

TWC controlled any locations used by Weinstein and paid for by TWC.[13]

### D. The Complaint Fails to Allege That the Outside Directors' Purported Negligent Supervision or Retention Caused Plaintiffs' Injuries

The Complaint's negligent supervision and retention claim against the Outside Directors

also cannot succeed because it does not allege that the Outside Directors' purported negligent

supervision or retention *caused* Plaintiffs' injuries.  Ms. Geiss and Ms. Thomas allege that

Weinstein assaulted them in 2008.  (Complaint ¶¶ 96, 104.)  But the Complaint itself alleges that

Messrs. Dolan, Jones, Lasry, and Ziff were not even on the TWC Board at that time.  By the time

they allegedly took seats on the TWC Board in 2015 and 2016, those alleged assaults had already

occurred.  The Outside Directors' purportedly inadequate supervision or retention therefore was

not a cause of the harms Ms. Geiss or Ms. Thomas suffered, and so their claim cannot proceed.

*Saldana*, 2010 U.S. Dist. LEXIS 142099, at *15 (claims for negligent supervision or retention

require showing that the alleged negligence is the proximate cause of a plaintiff's injuries);

*Toomer v. Cellco P'ship*, No. 11-CV-7515, 2012 U.S. Dist. LEXIS 101265, at *29 (S.D.N.Y.

July 20, 2012) (dismissing negligent hiring and retention claim where plaintiff did not allege

---

[13] One New York Supreme Court decision held that a negligent supervision claim does not require the underlying tort to have occurred on the employer's premises.  *Krystal G. v. Roman Catholic Diocese of Brooklyn*, 933 N.Y.S.2d 515 (Sup. Ct. Kings Cnty. 2011).  No court has followed *Krystal G.* on that issue, and a recent case in the Southern District of New York, applying New York law, found that *Krystal G.* is "an outlier on this issue, and the vast weight of authority establishes a premises element to negligent supervision and retention claims."  *Alsaud*, 12 F. Supp. 3d at 684.

"any concrete facts whatsoever supporting her bare claim that [the employer defendant] breached a duty of reasonable care by hiring and retaining [the employee defendant], causing a foreseeable injury to plaintiff") (alteration and internal quotation marks omitted).

## V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION AGAINST THE OUTSIDE DIRECTORS (COUNT XIV)

Ms. Geiss' and Ms. Thomas's ratification cause of action against the Outside Directors is also insufficient to state a claim and must be dismissed.  To plead ratification, a plaintiff must allege (i) a principal-agent relationship; (ii) the principal's full knowledge of the material facts concerning the allegedly binding transaction; and (iii) acceptance by the principal of the benefits of the agent's acts.  *See A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998) (collecting cases).  It is well settled that "ratification requires not only knowledge of the material facts, but also an intention to ratify another's actions." *Murphy v. Guilford Mills, Inc*., No. 02-CV-10105, 2005 U.S. Dist. LEXIS 7160, at *22-26 (S.D.N.Y. Apr. 22, 2005).  Further, plaintiffs must specifically allege that "the underlying tortious conduct was done or professedly done on the principal's account."  *Bigio v. Coca-Cola Co*., 675 F.3d 163, 176 n.12 (2d Cir. 2012) (alteration and internal quotation marks omitted). The Complaint does not adequately allege *any* of these elements.

First, Plaintiffs fail to adequately allege a principal-agent relationship between Weinstein and the Outside Directors.  The Complaint's conclusory allegation that "there was an actual or assumed agency relationship between . . . Weinstein and TWC's Board of Directors" (*see* Complaint ¶ 297), without more, falls short of the requisite pleading standard.  *See, e.g.*, *Bigio*, 675 F.3d at 175 (finding that the complaint did not contain sufficient facts to infer the type of control necessary to plead an agency relationship).  Indeed, the Complaint does not contain *a*

*single allegation* that Weinstein at any time held himself out as an agent of any of the Outside Directors or that Plaintiffs believed that he was acting as their agent.

Second, Plaintiffs' ratification claim fails because the allegations in the Complaint are insufficient to show that the Outside Directors knew of (let alone had "full knowledge" of) Weinstein's or anyone else's alleged tortious conduct. "Agency law requires that, in order to ratify an agent's act, the principal must have 'full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language." *Murphy*, 2005 U.S. Dist. LEXIS 7160, at *22-23 (finding no ratification where there was no evidence that defendants had knowledge of the material facts).

Here, Plaintiffs fail to adequately plead that the Outside Directors had any knowledge of Weinstein's alleged tortious acts prior to October 5, 2017, when *The New York Times* published an article on that subject. Rather, Plaintiffs allege, without any factual basis, that the Outside Directors "knew of Weinstein's pattern and practice of predatory sexual conduct toward women from both [their] personal relationship[s] with Weinstein and [their] position[s] as . . . director[s] of TWC" (Complaint ¶¶ 24, 26, *see id.* ¶¶ 30, 32), and that they "investigated or knew of the acts and omissions of Weinstein" (*id.* ¶ 298). These are just the type of conclusory allegations that fail to state a ratification claim. Moreover, "ratification requires not only *knowledge* of the material facts, but also an *intention* to ratify another's actions." *Murphy*, 2005 U.S. Dist. LEXIS 7160, at *23 (emphasis added). Plaintiffs have not alleged any such intent.

The Complaint's allegation that the TWC Board approved an employment contract that provided that one of only two reasons Weinstein could be terminated was for conviction for a crime of "moral turpitude" (Complaint ¶ 127) is insufficient as a matter of law. Two of the Outside Directors—Paul Tudor Jones and Marc Lasry—did *not* approve Weinstein's

employment contract and were not even on TWC's Board at the time it was approved.  In any event, mere approval of an employment contract is insufficient to state a cause of action for ratification.  *See A. Terzi Prods.*, 2 F. Supp. 2d at 492 ("Plaintiffs' conclusory allegation that Local One's members 'ratified the tortious acts of defendants . . . by approving the Agreement' wants this Court to assume that simply because Local One's members approved the Agreement, they necessarily knew of and ratified McGarty's and Lynch's allegedly tortious conduct.  Such a leap finds no support in the Complaint's allegations.").  Plaintiffs have not alleged that the Outside Directors intentionally ratified Weinstein's alleged misconduct, nor have they alleged a single fact in support of such an assertion.  Their claim accordingly must fail.  *Id.*

Finally, Plaintiffs fail to state a claim for ratification because the Complaint does not allege that any of Weinstein's alleged tortious conduct was done for any of the Outside Directors' benefit.  It is well settled that to state a claim for ratification, a plaintiff must specifically allege that "the underlying tortious conduct was done or professedly done on the principal's account."  *Bigio*, 675 F.3d at 176 n.12.  Here, Plaintiffs do not—and cannot— plausibly allege that Weinstein's sexual misconduct was done on the Outside Directors' account. Indeed, it is hard to imagine what the Outside Directors could have stood to gain from such alleged misconduct.

Because Plaintiffs have failed to adequately plead any (much less all) of the elements of a ratification claim, they have failed to state a cause of action and the claim must be dismissed.[14]

---

[14] The Complaint alleges that TWC's "Board of Directors" is "responsible for Weinstein's acts of assault, battery, and intentional or negligent infliction of emotional distress" (Complaint ¶ 300)—*i.e.*, Weinstein's unlawful assaults in 2008 and earlier.  It does not allege ratification of other wrongful conduct.  Even if the Complaint had alleged that TWC's Board ratified other wrongful conduct, such as the actions taken in 2016 and 2017 by Boies Schiller and Black Rock, that claim would fail for the same reasons: (i) Boies Schiller (and the firm it hired, Black Rock) were not in a principal-agent relationship with the  Outside Directors; indeed, Boies Schiller was *adverse* to TWC; (ii) the Complaint does not allege that the Outside Directors had "full knowledge" or an intent to ratify those actions; and (iii) the Complaint does not allege that any such conduct was done on account of the Outside Directors or for their benefit.

## VI.   THE COMPLAINT'S CLAIMS AGAINST THE OUTSIDE DIRECTORS ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS

The facts underlying all of Plaintiffs claims against the Outside Directors relate to events that allegedly took place *at least nine years ago*, and in some cases *as many as twenty-five years ago*.  Because the applicable statutes of limitations have long-since expired, the Complaint not only fails to state a claim, but also is time barred and must be dismissed for that reason as well.

### A.   The RICO Claims (Counts I and II) Are Time-Barred

Plaintiffs' first and second causes of action against the Outside Directors for violation of 18 U.S.C. §§ 1962(c) and (d) (RICO and conspiracy to violate RICO) should be dismissed as time barred.  The statute of limitations for a civil RICO claim is four years.  *See Rotella v. Wood*, 528 U.S. 549, 552 (2000).  The limitations period begins to run "when plaintiffs discover or should have discovered their *RICO injury*, *not* when they discover or should have discovered *the underlying pattern of racketeering activity*."  *Baiul v. William Morris Agency, LLC*, No. 13-CV-8683, 2014 U.S. Dist. LEXIS 62633, at *18 (S.D.N.Y. May 6, 2014) (emphasis added), *aff'd*, 601 F. App'x 58 (2d Cir. 2015).  Moreover, the statute of limitations "runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry."  *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 153 (2d Cir. 2012) (quoting *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 328 F. App'x 695, 697 (2d Cir. 2009)).

Whether a RICO claim is timely turns on a two-part inquiry.  First, the court must determine "when the plaintiff sustained the alleged injury for which the plaintiff seeks redress. The court then determines when the plaintiff discovered or should have discovered the injury and begins the four-year statute of limitations period at that point."  *Koch*, 699 F.3d at 150 (alteration and internal quotation marks omitted).  Here, each individual Plaintiff alleges a RICO injury

stemming from alleged assaults by Weinstein that took place over nine years ago, and in some cases more than twenty years ago, all of which are barred by the four-year statute of limitations:

Katherine Kendall alleges that Weinstein assaulted her soon after they met to discuss Ms. Kendall's acting career *in 1993* (Complaint ¶¶ 48-58), and Ms. Kendall's allegations reflect an awareness of potential injury to her acting career soon after the alleged assault[15] (*see id.* ¶ 59 ("[a]fter the assault . . . she believed that if she were to disclose the assault, she would be blacklisted and blamed as a result of Weinstein's power in the industry"); *id.* ¶ 60 ("[s]he knew Weinstein could hurt her career"); *id.* ¶ 61("various times since the assault, Kendall has had to remove herself completely off [sic] from the entertainment industry")).  *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *19-20 ("The law does not require that [the plaintiff] have understood all of the nuances of the various frauds she alleges, it merely requires that she have been aware that she did not receive the earnings generated from her various performances.").  Accordingly, Ms. Kendall discovered or should have discovered her alleged injury more than twenty years ago, and the clock on her RICO claim has long-since run.  *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *19-20, 25-26.

Zoe Brock alleges that Weinstein assaulted her at the Cannes Film Festival that was held from May 13-24, 1998.  (Complaint ¶¶ 71-81.)  Ms. Brock alleges that because of "actions of Weinstein and his enablers, Brock was afraid to audition for roles that required her to travel to Hollywood and avoided going there for several years.  Weinstein and his Miramax colleagues significantly affected Brock's confidence and her ability to be a professional actor."  (*Id.* ¶ 83.)  Accordingly, assuming that Ms. Brock suffered any RICO injury, she was aware of it during the

---

[15] Kendall also alleged that she suffered "emotional distress," "physical pain," "shame, depression, and a loss of self-worth."  (*Id.* ¶ 59.)  These are not RICO injuries.  *Astorino*, 137 F. Supp. 3d at 612.

"several years" following 1998, triggering the limitations period long before 2017. *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *18-20. Her claim is therefore time barred. *Id.* at *25-26.

Melissa Sagemiller alleges that Weinstein assaulted her in the summer of 2000. (Complaint ¶¶ 84-91.) Ms. Sagemiller alleges that when she "disclosed the assault to her castmates, the implicit warning from others on the set was not to cause any trouble, because it would hurt her career to discuss what happened to her." (*Id.* ¶ 92.) Ms. Sagemiller does not allege any subsequent injury to her career. The harms Ms. Sagemiller alleges—battery, assault, and emotional distress—are certainly serious, but they are not RICO injuries. *Astorino*, 137 F. Supp. 3d at 612. Even assuming that they are RICO injuries, any claim Ms. Sagemiller had accrued 15 years ago because she knew or should have known of any possible harm to her career at the time of her castmates' alleged "implicit warning" in or about the summer of 2000. *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *18-20. Her claim is therefore time barred. *Id.* at *25-26.

Louisette Geiss makes clear that she was aware of purported harm to her career *in or around 2008* when she was allegedly assaulted by Weinstein. (Complaint ¶¶ 96-101.) Ms. Geiss contends that the assault caused her to lose a film deal and other opportunities and to "leave the [entertainment] industry." (*Id.* ¶ 103.) Accordingly, Ms. Geiss was aware of (or at the very least should have been aware of) her alleged injury much more than four years ago. *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *18-20; *Levy v. BASF Metals Ltd.*, No. 15-CV-7317, 2017 U.S. Dist. LEXIS 89098, at *15 (S.D.N.Y. June 9, 2017) (dismissing RICO claim as time barred where "Plaintiff had *actual* notice of her injury almost seven years before filing the" complaint) (emphasis in original). Her RICO claim is accordingly barred by the 4-year statute of

limitations.  *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *25-26; *Levy*, 2017 U.S. Dist. LEXIS 89098, at *16-17.

Sarah Ann Thomas similarly acknowledges that she was actually aware of any RICO injuries in 2008.  She claims that Weinstein sexually harassed her when she interviewed with him in 2008 to be his children's nanny, and that "*a few days later*," Weinstein's assistant informed her that she did not receive the nanny job.  (Complaint ¶¶ 104-13.)  The statute of limitations for Ms. Thomas's RICO claim therefore began to run in 2008, and her claim is untimely.  *See Baiul*, 2014 U.S. Dist. LEXIS, at *25-26.

Finally, while the Complaint does not provide any specific dates relating to the allegations made by Ms. Klatt, it alleges that she was assaulted by Weinstein during his time at Miramax, which he left in 2005 to form TWC.  (*See* Complaint ¶¶ 37, 115.)  The Complaint alleges that when she denied his advances, Weinstein "told her he could 'make' or 'break' her" and "'[w]ithout me, you will never work again.'"  (*Id.* ¶ 118.)  Ms. Klatt alleges that because she would not engage with Weinstein, she "lost the part Weinstein offered, lost other opportunities at Miramax and TWC, and has lost other professional opportunities as the consequence of Weinstein's assault."  (*Id.* ¶ 120.)   Because the Complaint itself makes clear that Ms. Klatt was aware that she lost the part that was offered to her in or before 2005, the limitations period began to run then, and her claim is time barred.  *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *21 (plaintiff was on notice of RICO claim when she received no payment for performances); *Levy* 2017 U.S. Dist. LEXIS 89098, at *16-17.

Accordingly, each of Plaintiff's RICO claims is time barred and should be dismissed.  *See Baiul*, 2014 U.S. Dist. LEXIS 62633, at *18-20, 25-26.[16]

---

[16] As discussed above, because the RICO claims must be dismissed, the RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) also fails.  *See, e.g., UPS, Inc.*, 2016 U.S. Dist. LEXIS 105038, at *13 ("[A]ny claim under

## B.    The Negligent Supervision and Retention Claims (Count IV) Are Time-Barred

Ms. Geiss and Ms. Thomas bring negligent supervision and retention claims based on underlying tort claims against Weinstein and TWC.  In support of their claims, each of Ms. Geiss and Ms. Thomas alleges a single, separate meeting with Weinstein in 2008 from which her claim arises.  (*See* Complaint ¶¶ 96-103 (Geiss); *id.* ¶¶ 104-14 (Thomas).)

New York applies a three-year statute of limitations to negligent supervision and retention claims, regardless of the nature of the underlying injury.  *See Universitas Educ., LLC v. T.D. Bank, N.A.*, No. 15-CV-5643, 2015 U.S. Dist. LEXIS 170264, at *8-9 (S.D.N.Y. Dec. 21, 2015); *Green v. Emmanuel African Methodist Episcopal Church*, 718 N.Y.S.2d 324, 324 (1st Dep't 2000).  The limitations period "begins to run at the time and place of injury, *even though the injured party may be ignorant of the existence of the wrong or injury*."  *Universitas Educ., LLC*, 2015 U.S. Dist. LEXIS 170264, at *8 (internal quotation marks omitted).  Accordingly, Ms. Geiss and Ms. Thomas have brought these claims six years too late.  *Id.*  The three-year statute of limitations expired in 2011, and these claims should be dismissed.[17]

## C.    The Ratification Claim (Count XIV) Is Time-Barred

Ms. Geiss and Ms. Thomas have also brought a claim for ratification against the Outside Directors.  Their ratification claim is time barred.  The statute of limitations for a ratification claim is no more than six years.  *See* N.Y. CPLR 213-1 ("an action for which no limitation is specifically prescribed by law" must be commenced within six years).  As explained above, both Plaintiffs' claims arise from Weinstein's alleged tortious conduct in 2008, so any purported

---

§ 1962(d) based on conspiracy to violate the other subsections of section 1962 necessarily must fail if the substantive claims are themselves deficient.") (internal quotation marks omitted).

[17] Indeed, even if Connecticut's statute of limitations were to apply to Ms. Thomas's claim via New York's borrowing statute, *see* CPLR § 202, her claim would still be time barred under Connecticut's two-year statute of limitations.  *See* Ct. Gen. Stat. § 52-584.

"ratification" of that conduct likewise would have occurred in or around 2008.  At the very latest, any "ratification" by TWC would have occurred in 2010, when it renewed Weinstein's contract for a five-year term.  (*See* Complaint ¶ 127.)  Plaintiffs' ratification cause of action is therefore time-barred and should be dismissed.  *See, e.g., Baiul*, 2014 U.S. Dist. LEXIS 62633, at *21 (noting that untimeliness of claims appeared on the face of the complaint).

### D.      Equitable Estoppel and the Continuing Violation Doctrine Do Not Save the Complaint's Time-Barred Claims

Plaintiffs contend that the statutes of limitations applicable to their claims are tolled pursuant to the "continuing violations doctrine, equitable estoppel, and the duress pursuant to which Weinstein threatened the Class if they complained."  (Complaint ¶¶ 168-82.)  The Complaint alleges that a number of actresses, not including any Plaintiff, have stated in news articles that they never reported Weinstein's abuse because of his "ability to blacklist an actress or model for complaining about his predatory behavior," and assert that the "statute of limitations was thus tolled at least until" *The New York Times* reported on sexual harassment allegations against Weinstein and TWC subsequently fired Weinstein, when thereafter his "victims felt comfortable enough to complain."  (*Id.* ¶¶ 168, 181-82.)  Plaintiffs' argument fails for the following reasons.

#### 1.      Equitable Estoppel Does Not Save Plaintiffs' Stale Claims

Under New York Law, equitable estoppel is an "extraordinary remedy" that "should be invoked sparingly and only under exceptional circumstances."  *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks omitted) (dismissing as time-barred claims related to alleged sexual abuse, including related claims for negligent supervision, and holding that equitable estoppel did not apply), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).  Indeed, the New York Court of Appeals has held, in a case regarding supervisory liability for alleged

sexual assaults, that "equitable estoppel will apply where plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action," and "the plaintiff must demonstrate reasonable reliance on the defendant's misrepresentations." *Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y. 2006) (internal quotation marks omitted).

Moreover, it is "fundamental to the application of equitable estoppel for plaintiffs to establish that subsequent and specific actions by defendants somehow kept them from timely bringing suit." *Id.*; *see also Twersky*, 993 F. Supp. 2d at 442 (noting that those actions "must be affirmative and specifically directed at preventing the plaintiff from bringing suit"). "[E]quitable estoppel is only appropriate where the plaintiff is prevented from filing an action within the applicable statute of limitations due to defendants' misconduct toward the potential plaintiff, *not a community at large*." *Twersky*, 993 F. Supp. 2d at 445 (internal quotation marks omitted) (emphasis added).

The Complaint does not allege any such fraud, misrepresentation or deception by the Outside Directors that prevented Plaintiffs from bringing their claims years ago. Instead, the Complaint alleges that Weinstein's power in the entertainment community at large caused them duress, which kept them from speaking out, and that they could not bring suit until public allegations against Weinstein made them feel "comfortable enough to complain." (Complaint ¶¶ 181-82.) These are exactly the type of allegations that courts have held are insufficient to warrant the application of equitable estoppel. *See Twersky*, 993 F. Supp. 2d at 440 (rejecting argument that plaintiffs could not have brought their abuse claims against a school until an interview was published in which an administrator acknowledged the abuse); *Zumpano*, 849 N.E.2d at 930 ("A wrongdoer is not legally obliged to make a public confession, or to alert people who may have claims against it, to get the benefit of a statute of limitations.").

2.      **The Continuing Violations Doctrine Does Not Save Plaintiffs' Time-Barred Claims**

The continuing violations doctrine, which often arises in the employment discrimination context, "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016) (internal quotation marks omitted).  It provides that when "a plaintiff has experienced a continuous practice and policy of discrimination, . . . the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." *Id.* (internal quotation marks omitted) (omission in original).  The doctrine *does not* apply to discrete acts or "merely because the claimant continues to feel the effects of a time-barred discriminatory act." *Id.* (internal quotation marks omitted).

Here, Plaintiffs' claims against the Outside Directors relate to alleged discrete acts because they all arise from alleged discrete torts committed by Weinstein.  The continuing violations doctrine therefore does not apply.  *See id.* at 21 (holding that decisions underlying negligent supervision claims to initiate and dismiss sexual harassment investigation were discrete acts).  To the extent that the Complaint seeks to contend that Plaintiffs were unable to work or suffered other injuries after their assaults, such allegations "amount to nothing more than an attempt to apply the continuing violation doctrine because Plaintiff continued to feel the effects of a time-barred discriminatory act," and the doctrine is inapplicable.  *Id.* (alterations and internal quotation marks omitted).

VII.    **THE COMPLAINT DOES NOT SEEK RELIEF FROM THE OUTSIDE DIRECTORS**

Perhaps in recognition of the serious deficiencies in its allegations, the Complaint does not seek relief from the Outside Directors.  (*See* Complaint, Prayer for Relief.)  Absent any request for relief from these defendants, the Complaint as to the Outside Directors is defective

and should be dismissed.  Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain a demand for the relief sought, which may include relief in the alternative or different types of relief."); *Wilson v. Wilson-Polson*, No. 09-CV-9810, 2010 U.S. Dist. LEXIS 100425, at *11-12 (S.D.N.Y. Sept. 22, 2010) (dismissing claim against defendant where the prayer for relief sought "no damages or other equitable remedies against" defendant and the complaint otherwise lacked factual support), *aff'd*, 446 F. App'x 330 (2d Cir. 2011).

## VIII.   THE CLASS CLAIMS SHOULD BE DISMISSED

Because Plaintiffs' individual claims cannot succeed, the related class claims must also be dismissed.  *See Grant v. N.Y. Times Co.*, No. 16-CV-3175, 2017 U.S. Dist. LEXIS 149403, at *25 (S.D.N.Y. Sept. 14, 2017) ("Of course, plaintiffs may not pursue class claims based on any individual claim that has been dismissed."); *Rahman v. Smith & Wollensky Rest. Grp., Inc.*, No. 06-CV-6198, 2008 U.S. Dist. LEXIS 2932, at *11 (S.D.N.Y. Jan. 16, 2008) ("[A] court may order deletion of portions of a complaint's class claims once it becomes clear that the plaintiffs cannot possibly prove the deleted portion of those claims.") (internal quotation marks omitted); *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-1058, 2012 U.S. Dist. LEXIS 138596, at *28-29 & n.9 (E.D.N.Y. Sept. 26, 2012) (dismissing class complaint in its entirety because the named plaintiff failed to state a claim and, absent class certification, "there are no other parties or claims remaining in this action"), *aff'd,* 519 F. App'x 77 (2d Cir. 2013); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308 (S.D.N.Y. 2009) ("If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim.") (internal quotation marks omitted).

## CONCLUSION

For the reasons discussed above, the Court should dismiss Counts I, II, IV and XIV of the

Complaint against Messrs. Dolan, Jones, Lasry and Ziff.

Dated:  New York, New York
      February 20, 2018

By:  */s/ James V. Masella, III*_____
     James V. Masella, III (jmasella@pbwt.com)
     Melissa Ginsberg (mginsberg@pbwt.com)
     Patterson Belknap Webb & Tyler LLP
     1133 Avenue of the Americas
     New York, New York 10036
     Telephone:  (212) 336-2000
     Fax:  (212) 336-2222

     *Attorneys for Defendant Paul Tudor Jones*

By:  */s/ Roberto Finzi*_____
     Brad S. Karp (bkarp@paulweiss.com)
     Roberto Finzi (rfinzi@paulweiss.com)
     Sara F. Nichols (snichols@paulweiss.com)
     Paul, Weiss, Rifkind, Wharton & Garrison LLP
     1285 Avenue of the Americas
     New York, New York 10019
     Telephone:  (212) 373-3000
     Fax:  (212) 757-3990

     *Attorneys for Defendant Marc Lasry*

By:  */s/ Lawrence S. Spiegel*_____
     Lawrence S. Spiegel
     (lawrence.spiegel@skadden.com)
     Abigail E. Davis
     (abigail.sheehan@skadden.com)
     Skadden, Arps, Slate, Meagher & Flom LLP
     4 Times Square
     New York, New York 10036
     Telephone:  (212) 735-3000
     Fax:  (212) 735-2000/1

     *Attorneys for Defendants James Dolan and Dirk Ziff*