**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LOUISETTE GEISS, KATHERINE KENDALL,
ZOE BROCK, SARAH ANN THOMAS (a/k/a
SARAH ANN MASSE), MELISSA SAGEMILLER,
and NANNETTE KLATT, individually and on behalf
of all others similarly situated,

        Plaintiffs,

        v.

THE WEINSTEIN COMPANY HOLDINGS, LLC,
MIRAMAX, LLC, MIRAMAX FILM CORP.,
MIRAMAX FILM NY LLC, HARVEY
WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF,
TIM SARNOFF, MARC LASRY, TARAK BEN
AMMAR, LANCE MAEROV, RICHARD
KOENIGSBERG, PAUL TUDOR JONES, JEFF
SACKMAN, JAMES DOLAN, MIRAMAX DOES
1-10, and JOHN DOES 1-50, inclusive,

        Defendants.

Civil Action No. 1:17-cv-09554-AKH

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT RICHARD KOENIGSBERG'S MOTION TO DISMISS COUNTS I, II, IV AND XIV OF THE COMPLAINT

Reed Smith LLP
599 Lexington Avenue
New York, New York 10022
(212) 521-5400

*Attorneys for Defendant Richard Koenigsberg*

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

SUMMARY OF ALLEGATIONS .......................................................................................... 5

ARGUMENT ........................................................................................................................... 6

I.      STANDARD OF REVIEW ........................................................................................... 6

II.     PLAINTIFFS' CLAIMS AGAINST MR. KOENIGSBERG ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS ................................................. 6

        A.      Plaintiffs' Civil RICO Claims (Counts I & II) Are Time-Barred .......................... 6

        B.      Plaintiffs' State Law Claims Against Mr. Koenigsberg (Counts IV & XIV) Are Time-Barred ................................................................................................ 7

        C.      Plaintiffs' Time-Barred Claims Are Not Saved by Any Tolling Doctrine ............ 8

                1.      The Continuing Violations Doctrine Does Not Save Plaintiffs' Time-Barred Claims ................................................................. 8

                2.      Equitable Estoppel Does Not Save Plaintiffs' Time-Barred Claims .......... 8

                3.      Duress Does Not Save Plaintiffs' Time-Barred Claims ............................. 8

III.    THE COMPLAINT FAILS TO ALLEGE A RICO VIOLATION (COUNT I) ............... 9

        A.      The Complaint Fails to Allege That Mr. Koenigsberg Engaged in a Pattern of Racketeering Activity, or Even a Single Predicate Act ..................................... 9

                1.      The Complaint Fails to Allege That Mr. Koenigsberg Engaged in Witness Tampering ................................................................................. 10

                2.      The Complaint Fails to Allege That Mr. Koenigsberg Engaged in Commercial Sex Trafficking .................................................................. 10

                3.      The Complaint Fails to Allege That Mr. Koenigsberg Engaged in Mail Fraud or Wire Fraud ...................................................................... 11

        B.      The Complaint Fails to Allege the Existence of a RICO Enterprise ................... 12

        C.      The Complaint Fails to Allege That Mr. Koenigsberg Participated in the Operation of a RICO Enterprise ........................................................................ 14

IV.    THE COMPLAINT FAILS TO ALLEGE THAT MR. KOENIGSBERG CONSPIRED TO VIOLATE RICO (COUNT II) ............................................................. 14

V.    THE COMPLAINT FAILS TO ALLEGE THAT PLAINTIFFS HAVE STANDING TO PURSUE A CIVIL RICO CLAIM (COUNTS I & II) .......................... 15

    A.    Plaintiffs Have Not Alleged Any Cognizable RICO Injury ................................. 16

    B.    Plaintiffs Have Not Alleged That Their Injuries Were Caused by Mr. Koenigsberg's Racketeering Activity ............................................................ 17

VI.    THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION AND RETENTION AGAINST MR. KOENIGSBERG (COUNT IV) ....................................................................................................................... 18

    A.    The Complaint Fails to Allege That Mr. Koenigsberg Employed Weinstein ....... 18

    B.    The Complaint Fails to Adequately Allege That Mr. Koenigsberg Knew or Should Have Known About Weinstein's Propensity for Sexual Misconduct Prior to the Occurrence of Plaintiffs' Injuries .................................. 18

    C.    The Complaint Fails to Allege That Any Injury Occurred on Mr. Koenigsberg's or TWC's Premises ................................................................. 19

VII.    THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION AGAINST MR. KOENIGSBERG (COUNT XIV) ............................................................. 19

VIII.    THE COMPLAINT DOES NOT SEEK RELIEF FROM MR. KOENIGSBERG .......... 19

IX.    THE CLASS CLAIMS SHOULD BE DISMISSED ........................................................ 20

CONCLUSION .................................................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aschcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................................1

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)................................................................................................1

*Cedar Swamp Holdings, Inc. v. Zaman,*
    487 F. Supp. 2d 444 (S.D.N.Y. 2007).............................................................13, 14

*Chandradat v. Navillus Tile,*
    No. 03 CIV. 10093 (RJH), 2004 WL 2186562 (S.D.N.Y. Sept. 28, 2004) ...........17

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.,*
    271 F.3d 374 (2d Cir. 2001)..................................................................................15

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC,*
    No. 11 CIV. 7801 PAE, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) .................12

*Conte v. Newsday, Inc.,*
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ................................................................14

*Cullen v. Margiotta,*
    811 F.2d 698 (2d Cir. 1987)...................................................................................9

*D. Penguin Bros. v. City Nat. Bank,*
    587 F. App'x 663, (2d Cir. 2014) ........................................................................13

*DLJ Mortg. Capital, Inc. v. Kontogiannis,*
    594 F. Supp. 2d 308 (E.D.N.Y. 2009) ................................................................10

*Doe v. Jacobs,*
    19 A.D.3d 641 (2d Dep't 2005)..............................................................................7

*Elavon, Inc. v. Ne. Advance Techs., Inc.,*
    No. 15-CV-7985 (KBF), 2017 WL 4876300 (S.D.N.Y. Oct. 27, 2017) ...............13

*Gross v. Waywell,*
    628 F. Supp. 2d 475 (S.D.N.Y. 2009)...............................................................1, 10

*Hall v. Tressic,*
    381 F. Supp. 2d 101 (N.D.N.Y. 2005)..................................................................17

*Hecht v. Commerce Clearing House*,
    897 F.2d 21 (2d Cir.1990) ...................................................................................17

*Hoatson v. New York Archdiocese*,
    No. 05 CIV 10467 PAC, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280
    F. App'x 88 (2d Cir. 2008) .......................................................................10, 11, 12

*Hollander v. Flash Dancers Topless Club*,
    340 F. Supp. 2d 453 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006) ......................16

*Holmes v. Secs. Investor Protection Corp.*,
    503 U.S. 258 (1992) .............................................................................................15

*Jordan (Bermuda) Inv. Co. v. Hunter Green Investments Ltd.*,
    205 F. Supp. 2d 243 (S.D.N.Y. 2002) ...................................................................11

*Langford v. Roman Catholic Diocese of Brooklyn*,
    271 A.D.2d 494 (2d Dep't 2000) .............................................................................7

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*,
    No. CV 14-1299, 2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014) ...........................16

*Mackin v. Auberger*,
    59 F. Supp. 3d 528 (W.D.N.Y. 2014) ...................................................................15

*Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*,
    156 F. Supp. 2d 376 (S.D.N.Y. 2001) ...................................................................14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
    No. 91 CIV. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) ...........................10, 12

*Moore v. Guesno*,
    485 F. Supp. 2d 300 (W.D.N.Y. 2007), *aff'd*, 301 F. App'x 17 (2d Cir. 2008) ....................17

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
    No. 15 CV 293-LTS-JCF, 2017 WL 570929 (S.D.N.Y. Feb. 13, 2017) ...........................13

*Nat'l Grp. for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
    420 F. Supp. 2d 253 (S.D.N.Y. 2006) ...................................................................14

*Overall v. Estate of Klotz*,
    52 F.3d 398 (2d Cir. 1995) .....................................................................................8

*In re Platinum & Palladium Commodities Litig.*,
    828 F. Supp. 2d 588 (S.D.N.Y. 2011) ...................................................................10

*Roitman v. New York City Transit Auth.*,
    704 F. Supp. 346 (E.D.N.Y. 1989) .......................................................................16

*Schmidt v. Bishop*,
   779 F. Supp. 321 (S.D.N.Y. 1991)......................................................................8, 9

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985)...........................................................................................16

*Sharon B. v. Reverend S.*,
   244 A.D.2d 878 (4th Dep't 1997)..........................................................................9

*Tserotas v. Greek Orthodox Archdiocese of N. & S. Am.*,
   251 A.D.2d 323 (2d Dep't 1998).............................................................................7

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
   No. 14-CV-7349 (AJN), 2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016)................14

**Statutes**

18 U.S.C. §§ 1341 and 1343 .......................................................................................10

18 U.S.C. § 1512 .....................................................................................................9, 10

18 U.S.C. §§ 1590 and 1591 .......................................................................................10

18 U.S.C. § 1962(d) ................................................................................................3, 14

18 U.S.C. § 1964(c) .........................................................................................2, 3, 9, 15

**Rules**

Fed. R. Civ. P. 9(b) ....................................................................................................10

Defendant Richard Koenigsberg ("Mr. Koenigsberg") respectfully submits this memorandum of law in support of his motion to dismiss Counts I, II, IV and XIV of the Complaint (the "Complaint") as to himself.

## PRELIMINARY STATEMENT

Mr. Koenigsberg, a former director of The Weinstein Company ("TWC"), is named in this lawsuit for having allegedly violated the Racketeer Influenced and Corrupt Organization Act ("RICO") (Count I), conspired to violate RICO (Count II), engaged in negligent supervision or retention of defendant Harvey Weinstein ("Weinstein") (Count IV), and ratified Weinstein's alleged sexual misconduct (Count XIV). Although the Complaint spans 76 pages and contains 300 paragraphs, it mentions Mr. Koenigsberg by name only twice. *First*, abandoning any pretense of notice pleading, the Complaint lumps Mr. Koenigsberg together with a laundry list of other individuals and corporate entities under the convenient but legally defective umbrella of the "Weinstein Sexual Enterprise." *Second*, the Complaint baldly asserts, with no factual support, that Mr. Koenigsberg "knew of Weinstein's pattern and practice of predatory sexual conduct toward women from his personal relationship with Weinstein and his position as a director of TWC." Neither of these conclusory allegations is sufficient under the heightened pleading standards articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to give rise to a claim against Mr. Koenigsberg, much less a RICO claim, a cause of action long disfavored by the federal courts in this District.[1]

---

[1] *See Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) ("[T]his Court conducted a rough survey of the 145 cases filed in the Southern District of New York from 2004 through 2007 in which the complaints asserted civil RICO claims. The study revealed that of the 36 cases that to date have been resolved on the merits, all resulted in judgments against the plaintiffs. Thirty were dismissed on defendants' motions pursuant to Fed. R. Civ. P. 12(b)(6), three dismissed by the district court *sua sponte* for lack of merit, and three dismissed on summary judgment for the defendants. Only four of the 30 Rule 12(b)(6) dismissals were appealed and each was affirmed by the Second Circuit. Two of the three dismissals on summary judgment were appealed and both were affirmed. Hence, experience bears out that overwhelmingly the RICO plaintiffs' gilded vision of threefold damages and attorney's fees dispels into a mirage.")

As an initial matter, all of Plaintiffs' claims against Mr. Koenigsberg are barred by the applicable statutes of limitations because the relevant conduct and the resulting injuries are alleged to have taken place more than nine years ago and, in some cases, more than 25 years ago. Plaintiffs did not file their complaint until December 2017, several years after even the longest of the pertinent limitations periods had expired.  Nor are Plaintiffs' stale claims saved pursuant to the doctrines of continuing violations, equitable estoppel or duress. The continuing violations doctrine is inapplicable because it does not apply to discrete acts such as Weinstein's alleged distinct torts.  Equitable estoppel does not apply because the Complaint does not allege any fraud, misrepresentations or deception by Mr. Koenigsberg that prevented Plaintiffs from bringing their claims before the expiration of the applicable statutes of limitations.  And duress tolling is not available to Plaintiffs in this case because duress is not an element of any of the causes of action alleged in the Complaint. Accordingly, Plaintiffs' claims against Mr. Koenigsberg should be dismissed as untimely.

Even if Plaintiffs' claims are not time-barred, they still fail as a matter of law. The Complaint falls far short of satisfying the high pleading standard for alleging a RICO claim or establishing an injury to business or property redressable under the RICO statute.  Indeed, to plead a Section 1962(c) claim, a plaintiff must at a bare minimum allege facts demonstrating that each defendant against whom a claim is asserted, through the commission of two or more predicate acts constituting a pattern of racketeering activity, participated in a RICO enterprise. The Complaint, however, does not allege that Mr. Koenigsberg personally engaged in a single predicate act.  This alone is fatal to the Section 1962(c) claim, but there is still more.  The Complaint does not even attempt to establish that Mr. Koenigsberg and the other alleged members of the "Weinstein Sexual Enterprise" joined together as a group to pursue a common

purpose and functioned as a continuing unit.  To the contrary, the Complaint alleges that Mr. Koenigsberg and his fellow directors were adverse to the so-called "Law Firm Participant" (Boies Schiller) and Weinstein in that the Law Firm Participant concealed Weinstein's sexual misconduct from the TWC Board and the TWC Board inserted provisions into Weinstein's 2015 employment contract that imposed substantial financial penalties for any violations of TWC's code of conduct.  Moreover, the Complaint does not attempt to establish that the "Weinstein Sexual Enterprise" had an existence that was "separate and distinct" from the alleged predicate racketeering acts—which, again, Mr. Koenigsberg is not alleged to have committed—or that Mr. Koenigsberg participated in its operation and management.

Equally deficient is Plaintiffs' claim that Mr. Koenigsberg conspired to violate RICO in violation of Section 1962(d).  First, the failure to plead a violation of Section 1962(c) with respect to any of the defendants necessarily dooms any claim Plaintiffs might assert under Section 1962(d).  Second, a "conscious agreement" is necessary to state a claim for conspiracy to violate RICO under Section 1962(d).  Here, there is not a single allegation that Mr. Koenigsberg agreed to commit a substantive RICO offense, and the conclusory allegations made against "Defendants" collectively are plainly insufficient.  In any event, Mr. Koenigsberg could not possibly have "agreed" to participate in the conduct alleged by four of the six Plaintiffs, Katherine Kendall, Zoe Brock, Melissa Sagemiller, or Nannette Klatt (the "Miramax Plaintiffs"), because the alleged conduct occurred *before* he joined the TWC Board in 2005.  And, as noted above, the allegations in the Complaint undermine any possibility of a conscious agreement to violate RICO because they establish that Mr. Koenigsberg and the other directors were adverse to the Law Firm Participant and Weinstein.

The claim for negligent retention and supervision asserted by Plaintiffs Louisette Geiss and Sarah Ann Thomas also should be dismissed for failure to state a claim.  First, the Complaint does not—and could not—allege an employee-employer relationship between Mr. Koenigsberg and Weinstein.  Rather, the Complaint (correctly) alleges that Weinstein was actually an employee of TWC at all relevant times.  Second, the Complaint does not allege that Mr. Koenigsberg had actual or constructive knowledge of *prior* acts by Weinstein that made his *subsequent* actions foreseeable.  Indeed, the Complaint does not even attempt to allege that the TWC Board collectively had actual or constructive knowledge of Weinstein's alleged sexual misconduct until 2015, seven years *after* the last incidents alleged.  Third, the Complaint fails to identify a single act that occurred on Mr. Koenigsberg's premises or with his property.  Nor could it, as Weinstein is alleged to have engaged in sexual misconduct in his own hotel room in Park City, Utah (Ms. Geiss) and at his own home in Connecticut (Ms. Thomas).  Absent any one of these essential elements, let alone all three of them, the negligent supervision and retention claim is deficient on its face and should be dismissed.

Finally, the claim by Ms. Geiss and Ms. Thomas that Mr. Koenigsberg is liable because he subsequently "ratified" Weinstein's sexual misconduct fares no better than their other causes of action against him.  Such ratification claims are essentially grounded in the doctrine of *respondeat superior*, which requires an employer-employee or principal-agent relationship, the employer's/principal's full knowledge of the material facts concerning the allegedly binding act, and acceptance by the employer/principal of the benefit of the employee's/agent's acts.  As discussed above, the Complaint neither allege an "employer-employee" relationship nor a principal-agent relationship between Mr. Koenigsberg and Weinstein.  Nor does the Complaint allege facts showing that Mr. Koenigsberg had knowledge of Weinstein's sexual misconduct

towards Ms. Geiss or Ms. Thomas, or that Weinstein engaged in the sexual misconduct for the benefit of Mr. Koenigsberg.  Accordingly, the ratification claim fails as a matter of law.

For all of these reasons, Counts I, II, IV and XIV of the Complaint should be dismissed as against Mr. Koenigsberg.

## SUMMARY OF ALLEGATIONS

Mr. Koenigsberg was a member of the TWC Board from its inception in September 2005 through October 2017.  (Compl. ¶¶ 29, 37.)   The Miramax Plaintiffs allege that they were sexually harassed and/or assaulted by Weinstein at various times *before* Mr. Koenigsberg became a member of the TWC Board, and, indeed, *before* TWC even existed.  (*Compare id.* ¶¶ 48-58, 71-82, 84-94, 115-119 *with id.* ¶¶ 29, 37.)   Ms. Geiss and Ms. Thomas allege that they were sexually harassed and/or assaulted by Weinstein in 2008.   (*Id.* ¶¶ 96-102, 104-111.) Although the Complaint asserts that Mr. Koenigsberg "knew of Weinstein's pattern and practice of predatory sexual conduct toward women" (*id.* ¶ 29), it is devoid of a single factual allegation to support that conclusory assertion.

Mr. Koenigsberg hereby adopts and incorporates by reference the entirety of the "Summary of Allegations" in the Memorandum of Law in Support of the Motion of Defendants James Dolan, Paul Tudor Jones, Mark Lasry, and Dirk Ziff (the "Outside Directors") to Dismiss Counts I, II, IV, and XIV of the Complaint (the "Outside Directors' Mem. of Law").  Apart from the different dates that Mr. Koenigsberg (2005) and the Outside Directors (2015-2016) joined the TWC Board, the scant, conclusory allegations made against Mr. Koenigsberg and the Outside Directors are identical.  (*Compare id.* ¶ 29 *with id.* ¶¶ 24, 26, 30, 32.)  Moreover, this difference does not matter for purposes of determining whether Plaintiffs' claims are timely or adequately pled.

## ARGUMENT

### I.   STANDARD OF REVIEW

Mr. Koenigsberg hereby adopts and incorporates by reference hereto the entirety of the standard of review for a motion to dismiss set forth in Section I of the Outside Directors' Memorandum of Law.  (*See* Outside Directors' Mem. of Law at pp. 8-9.)

### II.   PLAINTIFFS' CLAIMS AGAINST MR. KOENIGSBERG ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS

Mr. Koenigsberg hereby adopts and incorporates by reference the statutes of limitations arguments set forth in Section VI of the Outside Directors' Memorandum of Law.  (*See id.* at 37-44.)   As detailed in the Outside Directors' Memorandum Law, the facts underlying all of Plaintiffs' claims against the Outside Directors relate to events that allegedly took place *at least nine years ago*, and in some cases, *as many as 25 years ago*.   Plaintiffs' claims against Mr. Koenigsberg are based on the same events.   Because the applicable statutes of limitations have long-since expired, the claims in the Complaint are time-barred and must be dismissed.

#### A.   Plaintiffs' Civil RICO Claims (Counts I & II) Are Time-Barred

As set forth in the Outside Directors' Memorandum of Law, Plaintiffs' civil RICO claims (Counts I & II) are subject to a four-year statute of limitations that began to run when each of the Plaintiffs discovered or should have discovered her alleged RICO injury.   (*See id.* at 37.) Because the Complaint was filed in December 2017, Plaintiffs' civil RICO claims are time-barred if each Plaintiff actually discovered or should have discovered her alleged RICO injury prior to December 2013.   Here, the facts alleged in the Complaint make clear that each of the Plaintiffs discovered or should have discovered her alleged RICO injury no later than 2008, and certainly prior to December 2013.  (*See id.* at 38-40.)   Accordingly, Plaintiffs' civil RICO claims against Mr. Koenigsberg are time-barred and must be dismissed.

### B.    Plaintiffs' State Law Claims Against Mr. Koenigsberg (Counts IV & XIV) Are Time-Barred

Ms. Geiss and Ms. Thomas bring negligent supervision and retention claims (Count IV) against Mr. Koenigsberg based on a single, separate meeting each of them had with Weinstein in 2008.  As set forth in the Outside Directors' Memorandum of Law, New York courts apply a three-year statute of limitations to negligent supervision and retention claims, regardless of the nature of the underlying injury or when the injury is discovered.  (*See id.* at 41.)  Accordingly, the three-year statute of limitations expired on Ms. Geiss' and Ms. Thomas' negligent supervision and retention claims in 2011.

Ms. Geiss and Ms. Thomas have also brought claims for ratification against Mr. Koenigsberg (Count XIV).  As set forth in the Outside Directors' Memorandum of Law, the statute of limitations for a ratification claim is no more than six years (*see id.* at 41-42), and it may be as short as one year.[2]  Because the statute of limitations would run from the date of the alleged underlying tortious conduct, which occurred in 2008, and certainly no later than the first extension of Weinstein's contract, which occurred in 2010, Ms. Geiss' and Ms. Thomas' ratification claim against Mr. Koenigsberg is time-barred and should be dismissed.

---

[2] New York "courts look to the essence of the stated claims and not to the label ascribed to them by the plaintiffs" for purposes of determining the applicable statute of limitations.  *Doe v. Jacobs*, 19 A.D.3d 641, 642 (2d Dep't 2005) (holding that "the gravamen of the plaintiffs' claims is that the defendant subjected her to unwelcome sexual conduct for purposes unrelated to medical treatment [and] [r]egardless of how it is characterized, such a claim alleges an intentional tort subject to a one-year statute of limitations").  Here, Ms. Geiss and Ms. Thomas are seeking to recover damages for "Weinstein's acts of assault, battery, and intentional or negligent infliction of emotional distress."  (Compl. ¶ 300.)  As such, New York courts would apply the one-year statute of limitations applicable to intentional torts to their claims for ratification.  *See, e.g., Langford v. Roman Catholic Diocese of Brooklyn*, 271 A.D.2d 494, 495 (2d Dep't 2000) ("[R]egardless of how they were pleaded, these causes of action sought to recover damages for unwelcome, intentional sexual conduct . . . and were thus governed by one-year Statute of Limitations."); *Tserotas v. Greek Orthodox Archdiocese of N. & S. Am.*, 251 A.D.2d 323, 324 (2d Dep't 1998) ("Regardless of how it is pleaded, sexual abuse is an intentional tort subject to a one-year Statute of Limitations.") (quoting *Sharon B. v. Reverend S.*, 244 A.D.2d 878, 879 (4th Dep't 1997)).

### C.   Plaintiffs' Time-Barred Claims Are Not Saved by Any Tolling Doctrine

As set forth in the Outside Directors' Memorandum of Law, the statutes of limitations applicable to Plaintiffs' claims were not tolled by the continuing violations doctrine, equitable estoppel, or duress.  (*See id.* at 42-44.)  Moreover, even if the allegations in the Complaint about Weinstein' power in the entertainment industry were sufficient to warrant application of any tolling doctrine—and they are not—there would still be no basis to toll the statutes of limitations applicable to Ms. Geiss's claims because she concededly left the industry many years ago. (*Compare* Cmplt. ¶¶ 168-182 *with id.* ¶ 103).

### 1.   The Continuing Violations Doctrine Does Not Save Plaintiffs' Time-Barred Claims

As set forth in the Outside Directors' Memorandum of Law, the continuing violations doctrine is heavily disfavored in the Second Circuit and does not apply here because Plaintiffs' claims against the Outside Directors, just like those asserted against Mr. Koenigsberg, are based on alleged discrete torts committed by Weinstein.  (*See* Outside Directors' Mem. of Law at 44.)

### 2.   Equitable Estoppel Does Not Save Plaintiffs' Time-Barred Claims

As set forth in the Outside Directors' Memorandum of Law, equitable estoppel is an extraordinary remedy and does not apply where, as here, Plaintiffs have not alleged that any fraud, misrepresentations, or deception by Mr. Koenigsberg prevented any of the Plaintiffs from bringing a timely claim.  (*See id.* at 42-43.)

### 3.   Duress Does Not Save Plaintiffs' Time-Barred Claims

The Second Circuit has recognized that the doctrine of duress—as with any tolling doctrine—is to be narrowly applied.  *See Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995).  Consistent with this narrow application, "duress tolling is available only when duress is an element of the cause of action alleged."  *Id.* at 404 (collecting cases); *see also Schmidt v.*

*Bishop*, 779 F. Supp. 321, 330 (S.D.N.Y. 1991) ("For this doctrine to apply, duress must be an element of the cause of action asserted") (internal quotation marks and citation omitted).  Thus, "[i]f a plaintiff was under some duress from the defendant not to sue but duress is not part of the gravamen of his claim, New York courts do not toll the statute of limitations." *Cullen v. Margiotta*, 811 F.2d 698, 722 (2d Cir. 1987) (citing *Baratta v. Kozlowski*, 94 A.D.2d 454, 458–59 (2d Dep't 1983)).  Because duress is not an element of any of Plaintiffs' causes of action against Mr. Koenigsberg, duress tolling is not available here.  *See Schmidt*, 779 F.Supp. at 330–31 (S.D.N.Y.1991) (rejecting duress tolling in case involving claims arising out of alleged sexual abuse by a pastor because duress is not an element of negligence, fraud or malpractice); *Sharon B.*, 244 A.D.2d at 879 (rejecting duress tolling in a case involving claims arising out of alleged sexual abuse by a reverend).

## III.     THE COMPLAINT FAILS TO ALLEGE A RICO VIOLATION (COUNT I)

Mr. Koenigsberg hereby adopts and incorporates by reference the entirety of the arguments in Section II of the Outside Directors' Memorandum of Law that the Complaint fails to allege a RICO violation (Count I), as they are equally applicable to Mr. Koenigsberg. (*See* Outside Directors' Mem. of Law at 9-23.)

### A.     The Complaint Fails to Allege That Mr. Koenigsberg Engaged in a Pattern of Racketeering Activity, or Even a Single Predicate Act

As discussed in the Outside Directors' Memorandum of Law, to establish a violation of § 1962(c), "plaintiffs must allege that each defendant committed at least two predicate acts of racketeering activity" within a 10-year period.  (*See id.* at 10-11 (collecting cases).)  Here, however, the Complaint does not allege a single RICO predicate act by Mr. Koenigsberg. Instead, the Complaint alleges generally that "Defendants" collectively have engaged in four predicate acts—witness tampering in violation of 18 U.S.C. § 1512, sex trafficking in violation

of 18 U.S.C. §§ 1590 and 1591, and mail and wire fraud in violation 18 U.S.C. §§ 1341 and 1343

(Compl. ¶ 196)—without identifying which defendants supposedly engaged in which predicates.

As courts in this Circuit have repeatedly held, such "group pleading" is insufficient to

plead the RICO predicate acts with the particularity required by Fed. R. Civ. P. 9(b). *See, e.g., In*

*re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011)

(dismissing RICO claim because "Plaintiffs rely impermissibly on group pleading to allege the

existence of predicate acts … [and] do nothing to differentiate the conduct of the various

Defendants"); *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (same); *DLJ Mortg.*

*Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) (same); *Hoatson v.*

*New York Archdiocese*, No. 05 CIV 10467 PAC, 2007 WL 431098, at *3 (S.D.N.Y. Feb. 8,

2007), *aff'd*, 280 F. App'x 88 (2d Cir. 2008) (same); *Merrill Lynch, Pierce, Fenner & Smith, Inc.*

*v. Young*, No. 91 CIV. 2923 (CSH), 1994 WL 88129, at *6 (S.D.N.Y. Mar. 15, 1994) (same).

This alone is fatal to the RICO claim.

1.   The Complaint Fails to Allege That Mr. Koenigsberg Engaged in
Witness Tampering

The Complaint alleges generally that "Defendants" have engaged in "multiple instances

of tampering with a witness or victim in violation of 18 U.S.C. § 1512" (Compl. ¶ 196), but it

does not plead a single incident of tampering by Mr. Koenigsberg.  As discussed in the Outside

Directors' Memorandum of Law, witness tampering cannot be used as a predicate act to support

a RICO claim against a defendant who is not alleged specifically to have tampered with a

witness.  (*See* Outside Directors' Mem. of Law at 15-16.)

2.   The Complaint Fails to Allege That Mr. Koenigsberg Engaged in
Commercial Sex Trafficking

The Complaint is devoid of factual allegations that Mr. Koenigsberg engaged in

commercial sex trafficking.   Indeed, the Complaint does not allege that Mr. Koenigsberg

arranged even a single meeting for Weinstein or otherwise procured women for him.  As noted in the Outside Directors' Memorandum of Law, the "only allegation that comes even close is the Complaint's conclusory assertion that each director 'knew of Weinstein's pattern and practice of predatory sexual conduct toward women from both his personal relationship with Weinstein and his position as a director of TWC.'"  (*See* Outside Directors' Mem. of Law at 13.)  But this boilerplate allegation is insufficient as a matter of law.  (*Id.*); *see also Jordan (Bermuda) Inv. Co. v. Hunter Green Investments Ltd.*, 205 F. Supp. 2d 243, 252 (S.D.N.Y. 2002) (dismissing RICO claim against individual because allegations that "mention [him] once as a director [and] [o]therwise... mention[] [him] in the category of 'Investment Manager Defendants' … do not assert sufficient facts to allege adequately his knowing or intentional particpation").  Because the Complaint does not contain any allegations that Mr. Koenigsberg took steps to cause a person to engage in a commercial sex act, knew that Weinstein engaged in commercial sex trafficking, knowingly participated in an alleged sex trafficking venture, or knowingly benefitted from participating in a sex trafficking venture, Plaintiffs have failed to plead sex trafficking as a RICO predicate act.  (*See* Outside Directors' Mem. of Law at 12-15.)

       3.     The Complaint Fails to Allege That Mr. Koenigsberg Engaged in
                   Mail Fraud or Wire Fraud

The Complaint fails to satisfy with respect to Mr. Koenigsberg the rigorous pleading requirements set forth in the Outside Directors' Memorandum of Law for asserting a claim for mail or wire fraud.  (*See id.* at 16-17.)  *First*, the Complaint does not allege any facts showing that Mr. Koenigsberg participated in—or even knew about—a scheme to defraud or made any affirmative mispresentations. *See Hoatson*, 2007 WL 431098, at *5 (dismissing RICO claim alleging predicate mail or wire fraud offense where there were "no specific misrepresentations alleged").  *Second*, the Complaint does not allege any facts showing that the object of the alleged

scheme was to deprive Plaintiffs of money or property  *See id.*, 2007 WL 431098, at *5 ("Plaintiff has not sufficiently alleged that he was deprived of 'money or property' since loss of a job is not 'property in the victim's hands'") (citation omitted). *Third*, the Complaint "does not identify specific acts of communication by mail or by interstate wires undertaken by [Mr. Koenigsberg] in furtherance of the fraudulent scheme."  *See Merrill Lynch*, 1994 WL 88129, at *11 ("The sweeping allegation that [the RICO Defendants] caused the listed communications to be made impermissibly collectivizes the defendants, failing to inform each of the[m] . . . of the specific communications [he] is alleged to have made or caused to be made in furtherance of the fraudulent scheme").   In fact, of the communications identified in Paragraph 201 of the Complaint, none is alleged to have been made specifically by Mr. Koenigsberg.  Accordingly, for these reasons, and the additional reasons set forth in the Outside Directors' Memorandum of Law, the Complaint fails to allege mail or wire fraud as a predicate act to support a RICO claim against Mr. Koenigsberg.

**B.     The Complaint Fails to Allege the Existence of a RICO Enterprise**

As demonstrated in the Outside Directors' Memorandum of Law, the RICO claim should be dismissed because the Complaint fails to plead the existence of an "enterprise."  (*See* Outside Directors' Mem. of Law at 19-20.)  In addition to the reasons set forth in the Outside Directors' Memorandum of Law, the lack of "any concrete factual assertions as to the mechanics of the interactions among [the members], including facts indicating that the disparate [members] functioned as a unit," further supports dismissal.  *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 CIV. 7801 PAE, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012). To be sure, the Complaint makes the conclusory assertion that "[t]he Weinstein Participants determined the members of the Weinstein Sexual Enterprise and assigned each member of the enterprise a task or tasks" (Compl. ¶ 142), but it does not allege any facts that Mr. Koenigsberg

met or communicated in any way with most of the other members of the enterprise.  *See Elavon,*

*Inc. v. Ne. Advance Techs., Inc.*, No. 15-CV-7985 (KBF), 2017 WL 4876300, at *10 (S.D.N.Y.

Oct. 27, 2017) (dismissing RICO claim because "there [wa]s nothing to suggest that many of the

defendants have ever met or communicated with each other in any way").  The lack of

"interpersonal association" among the purported members of the enterprise is fatal to Plaintiffs'

RICO claim.  *See Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 452 (S.D.N.Y.

2007) (stringing together a "laundry list" of individuals and entities and labeling them an

enterprise does not state a RICO claim).

Moreover, the Complaint fails to allege a plausible "common purpose" among the alleged

members of the Weinstein Sexual Enterprise.  For example, the Complaint does not contain any

factual allegations that Mr. Koenigsberg "benefitted in any way from the alleged enterprise" or

"to suggest why [he] would share the [alleged] goal of [concealing Weinstein's sexual

misconduct]."  *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014)

("[P]laintiffs' allegations of the RICO defendants' common purpose fall short of supporting a

plausible inference that an association-in-fact enterprise existed."); *see also Mortg. Resolution*

*Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 CV 293-LTS-JCF, 2017 WL 570929, at

*5 (S.D.N.Y. Feb. 13, 2017) (dismissing RICO claim where alleged purpose of the enterprise

"plausibly relate[d] only to Chase's interests" and the complaint "provide[d] no factual basis for

an inference that [other members of the enterprise] had this purpose in common with Chase").

Further, the Complaint's conclusory assertion of a common purpose among the TWC

Board, Law Firm Participant, and Weinstein is contradicted by the allegations that (a) the Law

Firm Participant withheld Weinstein's personnel file from the TWC Board (Compl. ¶ 129), and

(b) the TWC Board inserted provisions in Weinstein's 2015 employment contract that imposed

liquidated damages for sexual misconduct (*id.* ¶ 132).  These conflicting goals negate any inference that the alleged "Weinstein Sexual Enterprise" was an "ongoing organization'" as opposed to an *ad hoc* collection of entities and individuals.  *See Nat'l Grp. for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 271–72 (S.D.N.Y. 2006); *Cedar Swamp Holdings*, 487 F. Supp. 2d at 451; *see also Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 383 (S.D.N.Y. 2001) (artful pleading cannot create an enterprise out of a loose connection of separate and independent business entities).

### C.    The Complaint Fails to Allege That Mr. Koenigsberg Participated in the Operation of a RICO Enterprise

Even if the Complaint had adequately alleged that a RICO enterprise existed—and it does not—the claims against Mr. Koenigsberg would still fail because the Complaint does not allege that Mr. Koenigsberg participated in the operation or management of that enterprise or plead facts from which the Court could draw such an inference.[3]  (*See* Outside Directors' Mem. of Law at 20-21.)  Accordingly, the RICO claims against Mr. Koenigsberg should be dismissed.

## IV.    THE COMPLAINT FAILS TO ALLEGE THAT MR. KOENIGSBERG CONSPIRED TO VIOLATE RICO (COUNT II)

Mr. Koenigsberg hereby adopts and incorporates by reference the arguments set forth in Section III of the Outside Directors' Memorandum of Law regarding the Complaint's unsuccessful attempts to allege a conspiracy to violate RICO under 18 U.S.C. § 1962(d). (*See id.* at 23-24.)  Because the Complaint does not properly plead a substantive RICO violation, no

---

[3] The Complaint's assertion that the "Weinstein Participants" and "Defendants" participated in the operation or management of the affairs of the Weinstein Sexual Enterprise (Compl. ¶¶ 142, 198) does not permit a plausible inference that Mr. Koenigsberg was involved in the operation or management of the enterprise.  *See Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-CV-7349 (AJN), 2016 WL 1298987, at *5 (S.D.N.Y. Mar. 31, 2016) (dismissing RICO claim because "allegations ascrib[ing] actions to all Defendants as an undifferentiated group, without identifying any role for the Yahoo Defendants in particular," did not permit a plausible inference that Yahoo was involved in the operation or management of the enterprise); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 136 (E.D.N.Y. 2010) (plaintiffs failed to allege participation in an enterprise where "the complaint fail[ed] to articulate in a plausible manner how the defendants participated in the operation and management of the enterprise").

conspiracy claim can succeed against Mr. Koenigsberg.  (*Id.* at 24.)  Plaintiff's RICO conspiracy claim against Mr. Koenigsburg is also deficient because the Complaint does not allege that he agreed with at least one other entity to commit a substantive RICO offense.  (*Id.*)

As an initial matter, Mr. Koenigsberg could not have "agreed" to participate in the conduct alleged by the Miramax Plaintiffs because it occurred *before* Mr. Koenigsberg joined the TWC Board and, indeed, *before* TWC even existed.  *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 556 (W.D.N.Y. 2014) ("Loszynski was not even hired until May 2009 and, therefore, there could not have been any meeting of the minds with regard to any of the alleged predicate acts before that time.").  Moreover, as discussed in Section III(B), *supra*, the Complaint's allegations regarding the Law Firm Participant's concealment of Weinstein's sexual misconduct from the TWC Board and the TWC Board's insistence on provisions that impose penalties for misconduct in Weinstein's 2015 employment contract do not support, and indeed undermine, any claim that Mr. Koenigsberg agreed to facilitate Weinstein's sexual misconduct.

## V.   THE COMPLAINT FAILS TO ALLEGE THAT PLAINTIFFS HAVE STANDING TO PURSUE A CIVIL RICO CLAIM (COUNTS I & II)

The RICO statute grants standing to pursue civil damages to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter."  18 U.S.C. § 1964(c).  Accordingly, in order to bring a civil RICO claim, a plaintiff must first allege (1) an injury to his or her "business or property" (2) proximately caused by the defendant's alleged racketeering activity.  *See, e.g., Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d  Cir. 2001); *see also Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (Plaintiff must establish standing to assert a RICO claim by alleging an injury to her "business or property," of which Defendants' violation of RICO was both the "but for" and proximate cause); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (A "plaintiff only has

standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation"). Here, Plaintiffs' civil RICO claims also fail because they have not alleged a cognizable injury to their "business or property" that was proximately caused by Mr. Koenigsberg's alleged predicate acts (which, again, he is not alleged to have committed).

### A.    Plaintiffs Have Not Alleged Any Cognizable RICO Injury

Mr. Koenigsberg hereby adopts and incorporates by reference the arguments set forth in Section II(D) of the Outside Directors' Memorandum of Law that Plaintiffs' injuries are not redressable under RICO. (*See* Outside Directors' Mem. of Law 21-23.) As set forth in greater detail in the Outside Directors' Memorandum of Law, and pursuant to the additional authorities herein, Plaintiffs' alleged injuries are either not injuries to "business or property" or are too speculative to be redressed under RICO. (*Id.*); *see also Mack v. Parker Jewish Inst. for Health Care & Rehab.*, No. CV 14-1299, 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014) (plaintiff's inability "to seek employment that reflects her level of professional achievement and standing within her field, or to further her career" is not a cognizable injury under RICO, and simply alleging an inability to find employment reflective of education and experience is "too speculative to constitute an injury to business or property"); *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453 , 459 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006) (explaining that damages to plaintiff's "business reputation and goodwill" are not the type of injuries to business or property actionable under RICO); *Roitman v. New York City Transit Auth.*, 704 F. Supp. 346, 348-49 (E.D.N.Y. 1989) (damage to a plaintiff's reputation and resulting inability to secure employment was personal injury as opposed to a property injury).

B.      **Plaintiffs Have Not Alleged That Their Injuries Were Caused by Mr. Koenigsberg's Racketeering Activity**

Even if the injuries alleged by Plaintiffs were cognizable under the RICO statute (which they are not), the Complaint fails to allege that those injuries were caused—let alone proximately caused—by Mr. Koenigsberg's alleged racketeering activties.  To plead a civil RICO claim, each plaintiff must show that his injury was "caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts."  *Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir.1990); *accord Chandradat v. Navillus Tile*, No. 03 CIV. 10093 (RJH), 2004 WL 2186562, at *4 (S.D.N.Y. Sept. 28, 2004).  Additionally, "[t]he plaintiff must plead and prove that the violation not only was the logical, or 'but for,' cause of the injury but also was its legally cognizable, or proximate, cause."  *Hall v. Tressic*, 381 F. Supp. 2d 101, 111 (N.D.N.Y. 2005) (internal quotations and citation omitted); *see also Moore v. Guesno*, 485 F. Supp. 2d 300, 306 (W.D.N.Y. 2007) (emphasis in original), *aff'd*, 301 F. App'x 17 (2d Cir. 2008) ("[T]he injury must be a *direct result* of the alleged RICO violation, and not the result of a non-RICO violation or some other intervening action.") (emphasis in original).

As an initial matter, the Miramax Plaintiffs cannot allege that their injuries were proximately caused by Mr. Koenigsberg because those injuries resulted from encounters with Weinstein that took place before Mr. Koenigsberg joined the TWC Board in 2005.  (*Compare* Compl. ¶¶ 48-58, 71-82, 84-91, 115-119 *with id*. ¶ 29.)  Moreover, the Complaint alleges that each of the Plaintiffs suffered injuries "as a result of *Weinstein's* actions" (Compl. ¶¶ 11, 13-14 (emphasis added); *see also id.* ¶¶ 12, 15-16), not the actions of Mr. Koenigsberg, against whom no predicate acts have been alleged.  Because Plaintiffs do not (and cannot) allege that Mr. Koenigsberg's unpled racketeering activity proximately caused their injuries, the RICO claims against him must be dismissed.  *See Chandradat*, 2004 WL 2186562, at *4 (dismissing

- 17 -

civil RICO claim because plaintiff had "not demonstrated that his alleged injury—the denial of wages—was proximately caused by defendants' alleged wire fraud, mail fraud, or money laundering").

**VI.      THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION AND RETENTION AGAINST MR. KOENIGSBERG (COUNT IV)**

Mr. Koenigsberg hereby adopts and incorporates by reference the arguments set forth in Section IV of the Outside Directors' Memorandum of Law.  (*See* Outside Directors' Mem. of Law at pp. 24-33.)

**A.      The Complaint Fails to Allege That Mr. Koenigsberg Employed Weinstein**

Plaintiffs' claim for negligent supervision and retention against Mr. Koenigsberg fails for the same reason that claim fails against the Outside Directors: The Complaint does not (nor could it) allege that Mr. Koenigsberg and Weinstein were in an employer-employee relationship, or that Mr. Koenigsberg controlled or directed Weinstein's day-to-day actions in running TWC. (*See id.* at 25-26.)

**B.      The Complaint Fails to Adequately Allege That Mr. Koenigsberg Knew or Should Have Known About Weinstein's Propensity for Sexual Misconduct Prior to the Occurrence of Plaintiffs' Injuries**

The Complaint does not allege that Mr. Koenigsberg knew or should have known of Weinstein's propensity for sexual misconduct.  As discussed above, the Complaint's allegations against Mr. Koenigsberg, just like the Outside Directors, are limited to the conclusory assertion that he "knew of Weinstein's pattern and practice of predatory sexual conduct toward women from both his personal relationship with Weinstein and his position as a director of TWC." (Compl. ¶ 29.)  As set forth in the Outside Directors' Memorandum of Law, this bare assertions, as well as the generalized allegations that Miramax or TWC employees, TWC's "Board" as a whole, or other directors knew or should have known of Weinstein's sexual misconduct, do not

satisfy Plaintiffs' burden of alleging that Mr. Koenigsberg had actual or constructive knowledge of Weinstein's propensity for misconduct and assaults. (*See* Outside Directors' Mem. of Law at pp. 27-30.)

C.     **The Complaint Fails to Allege That Any Injury Occurred on Mr. Koenigsberg's or TWC's Premises**

The Complaint's negligent supervision and retention claim fails for the additional reason that Plaintiffs do not adequately plead, as it must, that an underlying tort occurred on Mr. Koenigsberg's or TWC's premises or with Mr. Koenigsberg's or TWC's property. (*See id.* at 30-32.) Conclusory allegations that Weinstein committed torts at "locations paid for by TWC" is insufficient for the reasons stated in the Outside Directors' Memorandum of Law. (*Id.* at 32-33.).

## VII.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION AGAINST MR. KOENIGSBERG (COUNT XIV)

Mr. Koenigsberg hereby adopts and incorporates by reference the arguments set forth in Section V of the Outside Directors' Memorandum of Law that the Complaint fails to state a claim for ratification. (*See id.* at 34-36.) The Complaint does not adequately allege a principal-agent relationship between Mr. Koenigsberg and Weinstein, Mr. Koenigsberg's knowledge of Weinstein's tortious conduct, or that Weinstein's allegd tortious conduct was done for Mr. Koenigsberg's benefit. (*See id.*) As discussed in the Outside Directors' Memorandum of Law, because Plaintiffs have failed to adequately plead any of these essential elements of a ratification claim, they have failed to state a cause of action against Mr. Koenigsberg and the claim must be dismissed.

## VIII.   THE COMPLAINT DOES NOT SEEK RELIEF FROM MR. KOENIGSBERG

Mr. Koenigsberg hereby adopts and incorporates by reference the arguments set forth in Section VII of the Outside Directors' Memorandum of Law regarding the Complaint's requests

for relief.  (*See id.* at 44-45.)  As with the Outside Directors, the Complaint does not seek any relief from Mr. Koenigsberg (*see* Compl., Prayer for Relief.)  As set forth in the Outside Directors' Memorandum of Law, absent any request for relief from Mr. Koenigsberg, the Complaint as to him is defective and should be dismissed.  (*See* Outside Directors' Mem. of Law at 44-45.)

## IX.    THE CLASS CLAIMS SHOULD BE DISMISSED

Mr. Koenigsberg hereby adopts and incorporates by reference the arguments set forth in Section VIII of the Outside Directors' Memorandum of Law.  (*See id.* at 45.)

## <u>CONCLUSION</u>

For the reasons discussed above, and those incorporated by reference in the Outside Directors Memorandum of Law, the Court should dismiss Counts I, II, IV and XIV of the Complaint against Mr. Koenigsberg with prejudice.


Dated: February 20, 2018
      New York, New York

                                        Respectfully submitted,

                                        **REED SMITH LLP**

                                        By:   /s/ John C. Scalzo
                                               John C. Scalzo
                                           Jonathan P. Gordon
                                           599 Lexington Avenue
                                         New York, New York 10022
                                         Telephone:  (212) 521-5400

                                        *Attorneys for Defendant Richard Koenigsberg*