UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISETTE GEISS, KATHERINE KENDALL, ZOE BROCK, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA SAGEMILLER, and NANNETTE KLATT, individually and on behalf of all others similarly situated,<br><br>   Plaintiffs,<br><br>   -against-<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX, LLC, MIRAMAX FILM CORP., MIRAMAX FILM NY LLC, HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MIRAMAX DOES 1-10, and JOHN DOES 1-50, inclusive,<br><br>   Defendants. | Case No. 17-cv-09554 (AKH)<br><br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT HARVEY WEINSTEIN'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(6) AND TO STRIKE CLASS ALLEGATIONS PURSUANT TO FED. R. CIV. P. 12(F)** |

Phyllis Kupferstein
Roxanna A. Manuel
KUPFERSTEIN MANUEL LLP
865 South Figueroa Street, Suite 3338
Los Angeles, California 90017
(213) 988-7531


Mary E. Flynn
Aaron M. Schue
MORRISON COHEN LLP
909 Third Avenue
New York, New York 10022
(212) 735-8600

*Attorneys for Defendant Harvey Weinstein*

# Table of Contents

PRELIMINARY STATEMENT ................................................................................... 1

STATEMENT OF FACTS ...................................................................................... 3

    A.    Plaintiffs' Alleged Interactions with Weinstein ..................................... 3

    B.    Summary of Plaintiffs' Complaint ....................................................... 6

ARGUMENT .................................................................................................... 7

    I.    STANDARD OF REVIEW ............................................................... 7

    II.    PLAINTIFFS' CLAIMS ARE BARRED BY THEIR RESPECTIVE
        STATUTES OF LIMITATIONS ......................................................... 8

        A.    Plaintiffs' Nonfederal Claims Expired Years Before
            They Filed Suit ...................................................................... 8

        B.    Plaintiffs' RICO Claims Are Subject to a Four-Year
            Statute of Limitations .......................................................... 10

        C.    None of Plaintiffs' Theories Serve to Toll the Statutes
            of Limitations for Any of Their Claims Under the
            Facts Alleged....................................................................... 12

            1.    The doctrine of equitable estoppel is inapplicable........... 12

            2.    The continuing violation doctrine is inapplicable .......... 13

            3.    Plaintiffs' "duress" theory is similarly baseless.............. 14

    III.    PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED.................. 16

    IV.    PLAINTIFFS' CLASS ACTION ALLEGATIONS MUST BE
        DISMISSED OR STRICKEN............................................................. 20

CONCLUSION ................................................................................................. 25

Table of Authorities

## Cases

*Agency Holding Corp. v. Malley-Duff Assoc., Inc.*
  483 U.S. 143 (1987)...................................................................................10

*Amchem Prods., Inc. v. Windsor,*
  521 U.S. 591, 117 S.Ct. 2231 (1997). .................................................... 22

*AMTRAK v. Morgan,*
  536 U.S. 101, 122 S. Ct. 2061 (2002) .................................................... 13

*Anza v. Ideal Steel Supply Corp.,*
  547 U.S. 451 (2006) ................................................................................ 17

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937 (2009) ..........................................7, 8, 21

*Bankers Tr. Co. v. Rhoades,*
  859 F.2d 1096 (2d Cir. 1988), *cert. denied*, 490 U.S. 1007 (1989) ......................... 10

*Baratta v. Kozlowski,*
  94 A.D.2d 454, 464 N.Y.S.2d 803 (2d Dep't 1983)................................. 15

*Barrus v. Dick's Sporting Goods, Inc.,*
  732 F. Supp. 2d 243 (W.D.N.Y. 2010) ...................................................... 8

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 570, 127 S. Ct. 1955 (2007) ....................................7, 8, 21

*Bingham v. Zolt,*
  66 F.3d 553 (2d Cir.1995)......................................................................... 10

*Blihovde v. St. Croix Cty.,.*
  219 F.R.D. 607 (W.D. Wis. 2003) .............................................................. 8

*Brecher v. Republic of Argentina,*
  806 F.3d 22 (2d Cir. 2015)........................................................................ 24

*Buggie v. Cutler,*
  222 A.D.2d 640, 636 N.Y.S.2d 357 (2d Dep't 1995)................................ 23

*Califano v. Yamasaki,*
  442 U.S. 682, 995 S. Ct. 2545 (1979) ..................................................... 20

*Cedric Kushner Promotions, Ltd. v. King,*
  533 U.S. 158, 121 S. Ct. 2087 (2001) ..................................................... 16

*Chenensky v. New York Life Ins. Co.*,
  2011 WL 1795305 (S.D.N.Y. Apr. 27, 2011) .......................................................... 21

*Cullen v. Margiotta*,
  811 F.2d 698 (2d Cir. 1987), *cert. denied*, 483 U.S. 1021 (1987) ........................... 14

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ............................................................................. 16, 24

*Discon, Inc. v. NYNEX Corp.*,
  93 F.3d 1055 (2d Cir. 1996), *vacated on other grounds,* 525 U.S. 128 (1998) ........ 20

*Flynn v. DIRECTV, LLC*,
  2016 WL 4467885 (D. Conn. Aug. 23, 2016) ..................................................... 22, 23

*Frankel v. Cole*,
  313 Fed. App'x. 418 (2d Cir. 2009) ........................................................................ 10

*Ganino v. Citizens Utils. Co.*,
  228 F.3d 154 (2d Cir. 2000) .................................................................................... 17

*Georgine v. Amchem Prods., Inc.*,
  83 F.3d 610 (3d Cir. 1996) ...................................................................................... 22

*Hecht v. Commerce Clearing House, Inc.*,
  897 F.2d 21 (2d Cir. 1990) ...................................................................................... 17

*Hodczak v. Latrobe Specialty Steel Co.*,
  2009 WL 911311 (W.D. Pa. March 31, 2009) ......................................................... 21

*In re Am. Med. Sys.*,
  75 F. 3d 1069 (6th Cir. 1996) .................................................................................. 22

*In re U.S. Foodserv. Pricing Litig.*,
  729 F.3d 108  (2d Cir. 2013) .................................................................................. 22

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
  610 F.3d 382 (7th Cir. 2010) .................................................................................. 11

*Johnson v Nextel Communs., Inc.*,
  780 F.3d 128 (2d Cir. 2015) .................................................................................... 22

*Kaplan v. Mamelack*,
  162 Cal. App.4th 637, 75 Cal. Rptr.3d 861 (2008) ................................................. 23

*Kassman v. KPMG, LLP*,
  925 F. Supp. 2d 453 (S.D.N.Y. 2013) ..................................................................... 21

*Klehr v. A.O. Smith Corp.*,
    521 U.S. 179, 117 S. Ct. 1984 (1997) ...................................................... 14

*Koch v. Christie's Int'l PLC*,
    699 F.3d 141 (2d Cir. 2012)................................................................... 10

*Lee v. Langley*,
    2005 UT App. 339, *aff'd,* 147 P.3d 443 (Utah Ct. App. 2006)................................ 23

*Lopez v. Annucci*,
    690 F. App'x 56 (2d Cir. 2017) ............................................................. 13

*M.G. v. New York City Dep't of Educ.*,
    162 F.Supp.3d 216 (S.D.N.Y. 2016) .......................................................... 24

*McLaughlin v. Anderson*,
    962 F.2d 187 (2d Cir. 1992).................................................................. 17

*Nicholas v. CMRE Fin. Serv., Inc.*,
    2009 WL 1652275 (D.N.J. June 11, 2009)....................................................... 21

*Picus v. Wal-Mart Stores, Inc.*,
    256 F.R.D 651 (D. Nev. 2009) ................................................................ 8

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ................................................................ 21

*Piper v. Hoard*,
    107 N.Y. 67 (1887)........................................................................... 15

*Robles v. Agreserves, Inc.*,
    158 F. Supp.3d 952 (E.D. Cal. 2016) ........................................................ 23

*Rotella v. Wood*,
    528 U.S. 549 (2000) ..................................................................... 10, 11

*Schmidt v. Bishop*,
    779 F.Supp.321 (S.D.N.Y. 1991) ............................................................. 15

*Smith v. Lyons, Doughty & Veldhuius, P.C.*
    2008 WL 2885887 (D.N.J. July 22, 2008)....................................................... 8

*Smith v. Westchester Cty.*,
    769 F. Supp. 2d 448 (S.D.N.Y. 2011) ........................................................ 13

*So v. Shin*,
    212 Cal. App.4th 652, 151 Cal. Rptr.3d 257 (2013) .......................................... 23

iv

*Tardd v. Brookhaven Nat'l Lab.*,
    407 F. Supp. 2d 404 (E.D.N.Y. 2006) ..................................................................... 12

*Trinidad v. N.Y. City Dep't of Corr.*,
    423 F. Supp. 2d 151 (S.D.N.Y. 2006) ..................................................................... 13

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd* 597 F. App'x (2d Cir. 2014) ................. 12

*United States v. Clark*,
    435 F.3d 1100 (9th Cir. 2006) ............................................................................... 19

*United States v. Evans*,
    476 F.3d 1176 (11th Cir.) ...................................................................................... 18

*United States v. Morrison*,
    529 U.S. 598, 120 S. Ct. 1740 (2000) .................................................................... 19

*United States v. Philip Morris USA, Inc.*,
    566 F. 3d 1095 (D.C. Cir. 2009) ............................................................................ 16

*Wagner v. Utah Dep't of Human Servs.*,
    2005 UT 54 (Utah 2005) ......................................................................................... 23

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338, 131 S. Ct. 2541 (2011) .................................................................... 21

## Statutes

18 U.S.C. §1341 ........................................................................................................... 16

18 U.S.C. §1343 ........................................................................................................... 16

18 U.S.C. §1512 ......................................................................................... 2, 11, 16, 18

18 U.S.C. §1590 ..................................................................................................... 2, 16

18 U.S.C. §1591 ................................................................................................ 2, 16, 18, 19

18 U.S.C. §1961(1)(a) ................................................................................................. 16

18 U.S.C. § 1962 ........................................................................................................ 10

18 U.S.C. § 1962(c) .............................................................................................. 16, 20

18 U.S.C. § 1962(d) ..................................................................................................... 20

18 U.S.C. § 1964(c) ........................................................................ 16

18 U.S.C. § 2246(2) ........................................................................ 19

18 U.S.C. § 2246(3) ........................................................................ 19

Article 2270-1 ................................................................................ 9

Conn. Gen. Stat. §52-577 ............................................................... 10

Conn. Gen. Stat. §52-584 ............................................................... 10

N.Y. C.P.L.R. 214 ........................................................................... 9

Utah Code §78B-2-307 .................................................................. 10

Limitations Act, 2002, S.O. 2002, c. 24, Sched. B-4 ...................... 9

Limitations Act, 2002, S.O. 2002, c. 24, Sched. B-15 .................... 9

**Federal Rules of Civil Procedure**

Rule 8(a) ........................................................................................ 21

Rule 9(b) ........................................................................................ 17

Rule 12(b)(6) ............................................................................. 1, 7

Rule 12(f) ........................................................................................ 1

Rule 23 ................................................................................ *passim*

**Other Authorities**

5 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure*
§ 1216 (1990) ............................................................................. 8

http://www.imdb.com/title/tt0192071/locations?ref_=tt_dt_dt .................... 9

https://www.huffingtonpost.com/entry/meryl-streep-harvey
weinstein_us_59db5d87e4b072637c45420e ........................................ 25

https://www.usatoday.com/story/life/people/2017/12/07/jennifer-lawrence-discusses-
harvey-weinstein-oprah-winfrey/929913001/ ...................................... 25

Defendant Harvey Weinstein ("Weinstein"), through his attorneys Kupferstein Manuel LLP and Morrison Cohen LLP, hereby respectfully submits this memorandum of law in support of his motion to dismiss the first, second, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth Counts of the Complaint of Plaintiffs Louisette Geiss, Katherine Kendall, Zoe Brock, Sarah Ann Thomas (a/k/a Sarah Ann Masse), Melissa Sagemiller, and Nannette Klatt, pursuant to Fed. R. Civ. P. 12(b)(6), and to strike the class allegations in various paragraphs of the Complaint, pursuant to Fed. R. Civ. P. 12(f).

## PRELIMINARY STATEMENT

Trying to revive what are long expired claims, Plaintiffs creatively assert several causes of action under federal and state law, contending that the various statutes of limitations are tolled by the continuing violation doctrine, the doctrine of equitable estoppel, and by alleged duress. None of those doctrines apply here to toll the statutes of limitations on Plaintiffs' claims that they were assaulted and battered some nine to 24 (or more) years ago. Accordingly, all of the named Plaintiffs' claims should be dismissed with prejudice.

Even if their sole federal claims under RICO were not time barred, Plaintiffs fail to state a claim on which relief can be granted. They fail to allege that they were injured in their business or property by any actionable RICO violation, and therefore lack standing. The alleged predicate acts – witness tampering, sex trafficking, and mail and wire fraud – are not properly pleaded to support a claim. Plaintiffs fail to identify any federal "official proceeding," as required under 18

U.S.C. §1512, in which the alleged witness tampering occurred. Plaintiffs also fail to set forth any facts that they were caused to engage in a "commercial sex act" by Weinstein, or that he otherwise violated 18 U.S.C. §1591 with respect to Plaintiffs. They further fail to allege any facts demonstrating how a violation of 18 U.S.C. §1590, which requires "trafficking with respect to peonage, slavery, involuntary servitude or forced labor," allegedly occurred here.

Nor does simply listing various wires and mails "sent as a result of Defendants' illegal scheme," Complaint, ¶201, satisfy the stringent pleading requirements for alleged predicate acts of mail and wire fraud. Plaintiffs do not even suggest how these wires and mails furthered any fraudulent scheme to obtain property from them, nor do they show that any mailings or wire usages contained false information. There is certainly nothing inherently unlawful or fraudulent in executing settlement agreements with claimants or contracts with law firms or investigators, even if solely undertaken with the objective of furthering confidentiality and thereby precluding the disclosure of alleged sexual misconduct. Such actions simply do not amount to any cognizable scheme to defraud. Moreover, Plaintiffs' claimed injuries could not have been proximately caused by the alleged RICO scheme, but would have resulted, if at all, from the alleged assaults and batteries that occurred before the limitations period.

In addition, Plaintiffs' class allegations fall significantly short of the requirements of Fed. R. Civ. P. 23(a), and should be dismissed or stricken. The alleged class and subclasses consist of all women who ever met in person with Weinstein since some unidentified time before 2005 either to discuss a project or at

2

an event hosted or sponsored by his companies. Complaint, ¶¶183-185. These are not ascertainable classes. Moreover, it is apparent from the face of the complaint that individual questions of fact and law will predominate over any common questions. Although Plaintiffs fail to invoke any particular state (or foreign) laws, they seek a nationwide class action for claims of civil battery, assault, and negligent and intentional infliction of emotional distress. The statutes of limitations and elements of the causes of action under state law vary from state to state (and country to country). Whether any of the putative class members was assaulted, battered, or caused emotional distress will necessarily require individualized factual inquiry. Similarly, with regard to Plaintiffs' federal claims, whether any of the putative class members engaged in a commercial sex act with Weinstein, was enslaved, or participated in an official federal proceeding, or was fraudulently deprived of money or property, will also necessarily be an individualized factual inquiry.

Thus, as further explained below, all claims against Weinstein should be dismissed with prejudice and the irrelevant allegations stricken.

## STATEMENT OF FACTS[1]

### A.   Plaintiffs' Alleged Interactions with Weinstein

The six named plaintiffs each allege independent and unrelated encounters with Weinstein that occurred in different states and countries at different times over the past three or more decades. Plaintiff Nannette Klatt alleges that she met

---

[1] The facts are drawn from the Complaint and, solely for purposes of this motion, are assumed to be true.

Weinstein at an unspecified time, but it could have occurred only between the late 1970s and September 2005, because the alleged meeting occurred in his office at Miramax.[2] Complaint, ¶115. Klatt alleges that Weinstein was reportedly casting a film, that she read from the script for him, was told that she had gotten the part, and was preparing to leave when Weinstein allegedly asked to see her breasts and said it was required by the role. She refused, was directed to a side door that led to a dark stairwell, and needed a maintenance worker to let her out. Klatt claims that her "professional and personal interactions are ... limited by her fears generated by Weinstein's assault." *Id.*, ¶¶115-120.

Plaintiff Katherine Kendall alleges that in 1993, at Weinstein's apartment (presumably in New York City), after an intellectual discussion lasting an hour, he returned from the bathroom in a robe and repeatedly requested a massage, which she refused. Complaint, ¶¶48-53. Weinstein allegedly went back to the bathroom, this time returning naked, "chased [her] around the apartment, demanding that she kiss him, that she touch him, and that she allow him to see her breasts." *Id.*, ¶56. Kendall alleges that "Weinstein barred Kendall in the apartment," *Id.*, ¶57, and ultimately "agreed to allow her to leave" if she would allow him to accompany her to a taxicab. She then alleges that Weinstein "forced his way into the taxi with her."[3] *Id.*, ¶58. Kendall claims that as a result of the alleged assault, she "experienced

---

[2] Miramax was founded in 1979.  On September 30, 2005, Weinstein and his brother, Defendant Bob Weinstein, left Miramax (which was earlier acquired by the Walt Disney Company) and founded The Weinstein Company. Complaint, ¶¶34, 37.
[3] The allegations beg the question: did Weinstein get into the taxi naked, or did he put on some clothes first? If he went to get dressed, why did plaintiff Kendall simply not leave the apartment?

4

both emotional distress and physical pain," and has experienced depression since. *Id.*, ¶¶59, 61.

Plaintiff Zoe Brock alleges that in 1998, at the Hotel du Cap Eden-Roc in Cannes, France, she was in Weinstein's hotel room when he appeared in the nude and demanded a massage. She claims that after he maneuvered her into his bedroom, she "escape[d] to the bathroom" and locked herself in. Weinstein got dressed, and thereafter Weinstein and his assistant took Brock in a car back to the harbor so that she could return to the yacht on which she was staying. Because no water taxis were available, Weinstein offered (and she accepted) his penthouse suite at Hotel Barriere le Majestic. The next morning, she returned to the yacht, but later attended a screening at which Weinstein sat directly behind her, with his hand on her chair. Brock claims that, as a result of the alleged assault, she suffered from depression, a lack of self-confidence, and a loss of reputation. *Id.*, ¶¶71-83.

Plaintiff Melissa Sagemiller alleges that, in the summer of 2000, she went to Weinstein's hotel room while filming *Get Over It*. Weinstein allegedly answered the door in his robe, asked for a massage, and then a kiss. Sagemiller claims that he blocked the door, and she "finally submitted to a forcible kiss," after which she left. When the film shoot was over, Weinstein purportedly removed her bags from her commercial flight and had them put on his private plane, thereby "forc[ing]" her to travel with him. *Id.*, ¶¶84-94.

Plaintiff Louisette Geiss alleges that she ran into Weinstein at the 2008 Sundance Festival in Park City, Utah. She attended a movie premiere at his invitation, and thereafter agreed to meet with Weinstein in an office adjacent to his

hotel room. They had a professional conversation for 30 minutes. Geiss alleges that Weinstein then left the room and returned in an open bathrobe, naked underneath. He purportedly informed Geiss that he would hear the rest of her pitch from the hot tub and started to masturbate. Geiss alleges that she tried to leave the room, but Weinstein climbed out of the tub, grabbed her arm, and pulled her to the bathroom, insisting that she watch him masturbate. Weinstein then allegedly offered her various inducements (ultimately, a three picture deal as an actress) if she stayed while he masturbated. She refused and left. Geiss claims that she experienced fear, helplessness, anger and depression, and sought professional help. *Id.,* ¶¶96-103.

Plaintiff Sarah Ann Thomas alleges that in 2008 she met with Weinstein at his Connecticut home to interview for a nanny position. Weinstein answered the door in his boxer shorts and undershirt and proceeded to interview Thomas. At one point, Weinstein's children came into the room and Weinstein yelled at them not to come back in. Thomas alleges that later, "leaning forward and wiggling his eyebrows as if leering at her, Weinstein asked whether she would 'flirt' with his friends to 'get ahead,'" which made her uncomfortable. At the conclusion of the interview, Weinstein purportedly grabbed her in a hug that "was uncomfortably close, and lasted too long," and said that he loved her. Thomas claims she left "feeling upset, shaken, afraid and disrespected." *Id.,* ¶¶104-113.

B.   <u>Summary of</u> <u>Plaintiffs' Complaint</u>

Plaintiffs assert a total of 14 claims for relief, including two claims for violation of the RICO Act against the "Weinstein Sexual Enterprise" ("WSE") and eight non-federal claims alleged against Weinstein for civil assault, battery, and

intentional and negligent infliction of emotional distress. Plaintiffs do not specify under what state or country's laws they assert their non-federal claims. Each of the Plaintiffs resides in California, except for Brock who previously resided in California but is temporarily residing in New Zealand. Complaint, ¶13. Plaintiffs seek a nationwide class action to assert all these claims on behalf of all women who met Weinstein either to discuss a project or at an event hosted or sponsored by Miramax and The Weinstein Company ("TWC").

Plaintiffs claim that, "over time," Weinstein enlisted these companies, which he co-founded, "along with other firms and individuals, to facilitate and conceal his pattern of unwanted sexual conduct." *Id.*, ¶5. Plaintiffs allege that the WSE was an "association in fact" consisting of all these individuals and firms, and was formed for the common purposes of preventing the reporting and prosecution of his alleged misconduct, as well as destroying evidence of his alleged offenses. *Id.*, ¶¶140-141.

## ARGUMENT

### I.   STANDARD OF REVIEW

The law applicable to this motion is clear. Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949-50 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)). In determining the adequacy of a complaint, a court must disregard the complaint's conclusory allegations and legal conclusions, which are not entitled to the assumption of truth, and determine whether the remaining "well-pleaded factual allegations" suggest that the plaintiff

has a plausible – as opposed to merely conceivable – claim for relief. *Id.* at 679. Claims that do not cross the "line from conceivable to plausible" must be dismissed. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570). When the complaint cannot raise a claim of entitlement to relief, "'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly,* 127 S. Ct. at 1965, 550 U.S. at 558, (*citing* 5 Wright & Miller § 1216, at 233-234 (internal citations omitted)).

The same standards apply to allegations attempting to establish grounds to proceed as a class action under Fed. R. Civ. P. 23. *See Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp. 2d 243, 247-48 (W.D.N.Y. 2010); *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D 651, 655 (D. Nev. 2009); *Smith v. Lyons, Doughty & Veldhuis, P.C.*, 2008 WL 2885887, at *5-6 (D.N.J. July 22, 2008). *See also Blihovde v. St. Croix Cty,* 219 F.R.D. 607, 614 (W.D. Wis. 2003) ("[W]hen there has been no discovery and the defendants challenge class certification on the basis of the allegations in the complaint only, the proper standard is the same as a motion to dismiss for failure to state a claim.").

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS

### A.   Plaintiffs' Nonfederal Claims Expired Years Before They Filed Suit

Plaintiffs' nonfederal claims for assault, battery, and negligent and intentional infliction of emotional distress are barred by the applicable state and foreign country statutes of limitations.  Although Plaintiffs allege that the statutes should be tolled, their assertion of equitable estoppel, continuing violation and

duress as grounds to toll their claims is wholly unsupported by facts as to any of the plaintiffs. The 5th through 12th claims for relief should be dismissed with prejudice.

The complaint was not filed until December 2017, despite Plaintiffs' contention that Weinstein's alleged proclivity for sexual misconduct was well-known throughout the entertainment industry. *See, e.g.*, Complaint, ¶¶122, 168. Klatt's allegations stem from an alleged encounter sometime before September 2005, presumably in New York City, while Kendall's claims arise from an alleged 2003 meeting at Weinstein's apartment in New York City. *Id.*, ¶49. New York law provides a three-year statute of limitations for injury to person or personal property. N.Y. C.P.L.R. 214.

Brock alleges Weinstein assaulted her in May 1998, in Cannes, Frances, when she was 24 years old. Complaint, ¶71. France has a 10-year statute of limitations. Article 2270-1. Sagemiller's claims against Weinstein arose in the summer of 2000. *Id.*, ¶84. Although Sagemiller does not state the location, she alleges it occurred during the shoot of a movie filmed in Ontario, Canada, according to imdb.com.[4] Canada has a two-year statute of limitations for personal injury actions (Limitations Act, 2002, S.O. 2002, c. 24, Sched. B-4), with an ultimate limitations period of 15 years (Sched. B-15), which does not run during periods of incapacity or concealment.

Geiss allegedly met Weinstein in 2008 in Utah. Complaint, ¶96. Utah has a four-year statute of limitations for personal injury, assault and battery, and

---

[4] http://www.imdb.com/title/tt0192071/locations?ref_=tt_dt_dt

9

negligence. Utah Code §78B-2-307. Thomas's claims arise from a 2008 interview with Weinstein at his home in Connecticut. *Id.*, ¶104. In Connecticut, the statute of limitations for personal injury is three years. Conn. Gen. Stat. §52-577 ("No action founded upon a tort shall be brought but within three years from the date of the act or omission complained of."); §52-584.

B.   <u>Plaintiffs' RICO Claims Are Subject to a Four-Year Statute of Limitations</u>

Plaintiffs' causes of action for violation of RICO are also time-barred by the established four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff Assoc., Inc.* 483 U.S. 143, 156 (1987). The Second Circuit has long held that under 18 U.S.C. section 1962, "a cause of action to recover damages based on that injury accrues to plaintiff *at the time he discovered or should have discovered the injury.*" *Bankers Tr. Co. v. Rhoades,* 859 F.2d 1096, 1102 (2d Cir. 1988), *cert. denied*, 490 U.S. 1007 (1989); *Frankel v. Cole*, 313 F. App'x. 418 (2d Cir. 2009). When a plaintiff discovers the pattern of racketeering activity is irrelevant; rather the inquiry is when the plaintiff was first injured. *Bingham v. Zolt,* 66 F.3d 553, 560 (2d Cir.1995) (RICO claim's accrual was based on when damage occurred, rather than plaintiff's knowledge of wrongful acts).

The *Bankers Trust* rule has been affirmed over a rule which would require a plaintiff's discovery of not only the injury, but other elements of a RICO claim. *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 148 (2d Cir. 2012) (quoting *Rotella v. Wood*, 528 U.S. 549, 554 (2000)). In *Rotella*, the plaintiff treated with the defendant in 1985-86, and the defendant pleaded guilty to fraud. After learning of the plea,

the plaintiff sued.  The Court rejected the "injury and pattern discovery" accrual rule and held that her claims were time-barred.  The facts are even more compelling here, because all Plaintiffs knew of the alleged harm to them (each of them pleading immediate emotional injuries) at the time of their encounters with Weinstein, the most recent of which occurred in 2008.

Plaintiffs' attempt to bring this matter within the four year statutory period, by alleging that Weinstein engaged Boies Schiller and Black Cube in 2016-2017 to investigate putative class members and prevent public reporting of their accusations (Complaint, ¶¶148-162), is unavailing.  First, only two of the six named plaintiffs even allege any acts directed at them after 2008.[5]  Second, even if Plaintiffs incurred additional injuries from later alleged predicate acts, the statute of limitations began to run when they were injured by the first predicate act. *Jay E. Hayden Found. v. First Neighbor Bank, N.A.,* 610 F.3d 382, 386-387 (7th Cir. 2010) ("the injury arising from the first predicate act to injure the plaintiff ... starts the limitations period running, rather than the injury from the last predicate act, which might occur decades after the first") (*citing Rotella,* 528 U.S. at 554).  Accordingly, the RICO claims are time-barred.

---

[5] Plaintiff Kendall alleges that she was contacted by a "fake" reporter in the summer of 2017 who asked her whether she had talked or intended to talk to reporters about her experiences with the casting couch and producers, and claims these contacts caused her emotional distress. Complaint, ¶¶62-63.  Plaintiff Thomas alleges that, in December 2017, she learned casting directors had complained about her public statements that she would not audition for productions involving sexual predators, "implicitly threatening to blacklist her." *Id.*, ¶114. Neither of these Plaintiff's allegations comes even close to establishing witness tampering under 18 U.S.C. §1512, or any other predicate act under RICO, as discussed *infra*.

C.   **None of Plaintiffs' Theories Serve to Toll the Statutes of Limitations for Any of Their Claims Under the Facts Alleged**

Perhaps knowing full well that their claims are time-barred, and probably only filing this action for its newsworthiness rather than its legal efficacy, Plaintiffs rely on various tolling doctrines in the hope that one will permit them to proceed on their stale claims. Plaintiffs assert the "continuing violations doctrine," "equitable estoppel," and "the duress pursuant to which Weinstein threatened the class if they complained." Complaint, ¶47. The complaint's heading informs of the grounds, but the body of the pleading fails to provide facts to support tolling.[6]

1.   **The doctrine of equitable estoppel is inapplicable**

Equitable estoppel does not operate to toll the statute of limitations; its application prevents a defendant from asserting a statute of limitations defense where the elements are satisfied. *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014), *aff'd* 597 F. App'x 7 (2d Cir. 2014). "Typically, the doctrine is invoked in cases in which [a defendant] has made misrepresentations concerning the statute of limitations or lulled the plaintiff into believing that it was not necessary for him to commence litigation." *Tardd v. Brookhaven Nat'l Lab.,* 407 F. Supp. 2d 404, 416 (E.D.N.Y. 2006) ("[P]laintiff must show that: (1) the defendant made a definite misrepresentation of fact, and had reason to believe that the plaintiff would rely on it; and (2) the plaintiff reasonably relied on that misrepresentation to his detriment."). *Id.*

---

[6] Plaintiffs' contention that the statutes of limitations were "tolled at least until *The New York Times* published a powerful report revealing allegations of sexual harassment against Weinstein," Complaint, ¶181, is absurd on its face. Taking Plaintiffs' position to its logical extreme would be to maintain that, had it not been for *The New York Times* article being published, the statute of limitations would never have even started to run with respect to an alleged pattern of conduct going back to the 1980s.

(internal quotation marks and citation omitted). Here, there is no allegation that Weinstein misrepresented the statute of limitations or otherwise "lulled the plaintiff[s] into believing that it was not necessary for [them] to commence litigation," so equitable tolling is unavailing on any of plaintiffs' claims. *Id.*

### 2.   <u>The continuing violation doctrine is inapplicable</u>

Courts "in the Second Circuit have been loath to apply the continuing violation doctrine absent a showing of compelling circumstances." *Smith v. Westchester Cty.,* 769 F. Supp. 2d 448, 464 n.14 (S.D.N.Y. 2011) (*quoting Trinidad v. N.Y. City Dep't of Corr.,* 423 F. Supp. 2d 151, 165 n.11 (S.D.N.Y. 2006) (punctuation omitted)). "The continuing violation doctrine allows a plaintiff to challenge acts of misconduct occurring outside the statute of limitations period *if at least one act of the ongoing misconduct occurred within the limitations period.*" *Lopez v. Annucci,* 690 F. App'x 56, 58–59 (2d Cir. 2017) (internal citations omitted and emphasis added).

With regard to their non-RICO claims, not one of the plaintiffs alleges any tortious act by Weinstein against them after 2008. Analogizing to Title VII cases, absent a discrete act that occurred within the limitations period as to any of the plaintiffs, their claims are time-barred. *See AMTRAK v. Morgan*, 536 U.S. 101, 113, 122 S. Ct. 2061, 2072 (2002) (In Title VII employment cases, "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.").

With specific regard to civil RICO claims, the Supreme Court determined in

13

*Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 117 S. Ct. 1984 (1997), that "the last predicate act" rule is not appropriate because

> it creates a limitations period that is longer than Congress could have contemplated.  Because a series of predicate acts (including acts occurring at up to 10–year intervals) can continue indefinitely, such an interpretation, in principle, lengthens the limitations period dramatically. It thereby conflicts with a basic objective - repose - that underlies limitations periods.

*Id.* at 187, 117 S. Ct. at 1989. The Court held that "the plaintiff cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other earlier predicate acts that took place outside the limitations period." *Id.* at 190, 117 S. Ct. at 1991. Here, as discussed above, only two of the named plaintiffs allege that anything occurred to them within the statute of limitations. *See* note 5, *supra*. But a call from a "fake" reporter does not constitute a predicate act,[7] and Plaintiff Thomas "hearing" that casting directors have "implicitly blacklisted her" because she said she would not work with sexual predators is also not a predicate act. Thus, because none of Plaintiffs allege a predicate act that occurred with respect to them within the statute of limitations, the continuing violation theory does not serve to revive their stale claims.

### 3.    Plaintiffs' "duress" theory is similarly baseless

Duress may only be used to toll the statute of limitations if duress is "an element of the cause of action asserted." *Cullen v. Margiotta*, 811 F.2d 698, 722 (2d Cir. 1987), *cert. denied*, 483 U.S. 1021 (1987).  This requirement has been applied

---

[7] Presumably Plaintiff Kendall would have been equally distressed if the calls had been from a "real" reporter. Further, her claim that she suffered distress from reading in *The Observer* that she was included in a list of targets for investigation, Complaint, ¶¶67-70, also fails to allege a cognizable injury from a predicate act.

strictly; courts confronted by facts that might suggest that "duress" is present have routinely refused to apply the doctrine. *See, e.g.*, *Baratta v. Kozlowski,* 94 A.D.2d 454, 459, 464 N.Y.S.2d 803, 807 (2d Dep't 1983) ("the statute begins to run irrespective of . . . whether [the party seeking to avoid it] has enough of courage and independence to resist a hostile influence and assert his rights or not") (quoting *Piper v. Hoard*, 107 N.Y. 67, 71 (1887)). Consequently, courts have rejected duress to toll the statute of limitations in the tort context, such as child sex abuse cases. *See, e.g., Schmidt v. Bishop,* 779 F.Supp.321 (S.D.N.Y. 1991).

Quoting *The New Yorker'*s contention that "Weinstein and his associates used nondisclosure agreements, payoffs, and legal threats to suppress" women's accounts of their interactions with Weinstein, Plaintiffs claim this alleged conduct "actually and reasonably placed class members under duress and induced them to forebear asserting their legal rights...." Complaint, ¶169.[8]  Plaintiffs further allege that "[s]hortly before *The New York Times* and *The New Yorker* finally revealed the decades-long pattern of harassment, Weinstein and his legal team began calling Class Members, threatening them for talking." *Id.*, ¶179.  That putative class members were allegedly threatened in 2017 does not excuse Plaintiffs' failure to assert their rights within the applicable limitations period. Moreover, not one of the named Plaintiffs alleges that she herself was subject to this "suppress[ive]" or

---

[8] The specific facts alleged call into question the veracity of the *general* allegations that putative class members were under duress. For example, Gwyneth Paltrow was allegedly harassed during the filming of *Emma* in 1994, which allegedly caused her to fear the prospect of being fired.  Complaint, ¶¶44a, 175.  Yet, Paltrow went on to star in another Weinstein production—*Shakespeare in Love*— for which she won an Academy Award in 1998.  *See id.*, ¶36.  Paltrow was not so offended that she refused to work with Weinstein again, nor did her career suffer as a result of her rebuffing his alleged advances.

"threatening" conduct or otherwise under duress and, thus, unable to bring suit within the limitations period. Accordingly, there is no basis to toll the statute on any of Plaintiffs' claims.

## III.   PLAINTIFFS' RICO CLAIMS SHOULD BE DISMISSED

Plaintiffs' claims of racketeering activity are premised on Weinstein's alleged violation of statutes prohibiting (1) mail and wire fraud (18 U.S.C. §§1341, 1343), (2) witness and/or victim tampering in connection with an official proceeding (18 U.S.C. §1512), and (3) human and commercial sex trafficking (18 U.S.C. §§1590, 1591).   These alleged "predicate acts," through which Weinstein purportedly conducted the WSE, are not supported by Plaintiffs' factual allegations. Complaint, ¶196. *See* 18 U.S.C. §1961(1)(a).[9]

Plaintiffs lack standing to assert RICO claims because none can show she was "injured in [her] business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006) ("A RICO plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the [RICO] violation.") (internal quotations omitted). "But-for" causation is not sufficient; Plaintiffs must also show that their alleged injuries were

---

[9] A glaring defect in Plaintiffs' RICO claims is that they assert those claims against the WSE only, and not any individual defendant, including Weinstein. Complaint, ¶¶ 55, 59. Only a "person" can be held liable under section 1962(c). "The enterprise as such generally faces no section 1962(c) RICO liability...." *United States v. Philip Morris USA, Inc.,* 566 F. 3d 1095, 1111 (D.C. Cir. 2009) (citing *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 164, 121 S. Ct. 2087 (2001) ("RICO both protects a legitimate `enterprise' from those who would use unlawful acts to victimize it, and also protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful ... activity is committed.'") (internal citation omitted)). But assuming Plaintiffs were to amend to name Weinstein as a defendant to the RICO claims, those claims still fail, as discussed herein.

proximately caused by the alleged racketeering activity. *See Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 23 (2d Cir. 1990). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

First, Plaintiffs' allegations are insufficient to plead that any mail or wire fraud occurred, let alone that their alleged injuries were directly caused by it. Plaintiffs fail to satisfy the heightened pleading requirements of Rule 9(b), which require that "in alleging fraud ... a party must state with particularity the circumstances constituting fraud." *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 168 (2d Cir. 2000). Although a litany of wires and mails is alleged to have occurred, not a single false or misleading statement is identified. Instead, the Complaint merely alleges the "RICO Defendants utilized the interstate and mail and wires for the purpose of obtaining money or property by means of the omissions, false pretenses, and misrepresentations described therein." Complaint, ¶202. Such boilerplate, conclusionary pleading does not satisfy Rule 9(b). The pleadings must specify the statements that were false or misleading, give particulars as to their alleged falsity, and state the time and place the statements were made and the identity of the persons who made them. *McLaughlin v. Anderson,* 962 F.2d 187, 191 (2d Cir. 1992). Moreover, Plaintiffs fail to allege how *they* were directly injured by any mail or wire fraud. The closest they come – and it is quite a stretch – is Kendall's allegation that she was contacted by a "fake" reporter, but she only alleges emotional distress, not "injury to [her] business or property." Complaint, ¶63.

17

Second, Plaintiffs' invocation of the witness tampering statute as a predicate act is unavailing. Plaintiffs conclusorily allege that defendants engaged in "multiple instances of tampering with a witness or victim in violation of 18 U.S.C. §1512" (*id.*, ¶196), but fail to allege any facts to support that claim or even what subsection they rely on. The statute prohibits the use of physical force, threats, or harassment intended to prevent a witness from testifying "in an official proceeding" or a victim from reporting the commission of "a Federal offense." None of Plaintiffs' allegations identify any "official proceeding" in which they were dissuaded from providing evidence, nor do they identify any federal offense they were dissuaded from reporting. And, once again, Plaintiffs fail to allege any injury to "business or property" as a result of the alleged tampering that they were caused.

Third, Plaintiffs fail to allege facts demonstrating that Weinstein engaged in human and commercial sex trafficking in violation of 18 U.S.C. §§1590 and 1591. These statutes, enacted in 2000,[10] are "part of a comprehensive regulatory scheme" that "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain." *United States v. Evans,* 476 F.3d 1176, 1179 (11th Cir.), *cert. denied,* 552 U.S. 878 (2007) ("Congress recognized that human trafficking, particularly of women and children in the sex industry, is a modern form of slavery, and it is the largest manifestation of slavery today."). There are no allegations here that Weinstein somehow enslaved or trafficked Plaintiffs for commercial gain. "[I]n the most sterile terms, the statute covers the

---

[10]Kendall and Brock (and possibly Klatt and Sagemiller) cannot assert §§1590 and 1591 as predicate acts because their encounters with Weinstein occurred before these statutes were enacted in 2000.

situation where a U.S. citizen engages in a commercial transaction through which money is exchanged for sex acts." *United States v. Clark*, 435 F.3d 1100, 1115 (9th Cir. 2006), *cert. denied,* 549 U.S. 1343 (2007). What Plaintiffs allege is not unlawful commercial activity as proscribed by §1591, but purported unwanted sexual activity. *Cf. United States v. Morrison,* 529 U.S. 598, 613, 120 S. Ct. 1740, 1751 (2000) ("Gender-motivated crimes of violence are not, in any sense of the phrase, economic activity.").

Moreover, Plaintiffs do not allege that they engaged in a "sex act" with Weinstein. Although the Act defines the "commercial" component of the commercial sex act element, it provides no corresponding definition of "sex act." The phrase is not a term of art. However, the provisions that outlaw other sex offenses within the special maritime and territorial jurisdiction of the United States do define the term "sexual act" as distinct from "sexual contact." *Compare* 18 U.S.C. § 2246(2) (defining "sexual act")[11] *with* 18 U.S.C. § 2246(3) (defining "sexual contact")[12]. Neither a kiss (Sagemiller), a hug (Thomas), being asked to give a massage (Brock, Klatt), being "chased" around an apartment (Kendall), nor being asked to watch

---

[11] "[T]he term 'sexual act' means- (A) contact between the penis and the vulva or the penis and the anus, and for purposes of this subparagraph contact involving the penis occurs upon penetration, however slight; (B) contact between the mouth and the penis, the mouth and the vulva, or the mouth and the anus; (C) the penetration, however slight, of the anal or genital opening of another by a hand or finger or by any object, with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person; or (D) the intentional touching, not through the clothing, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. §2246(2).

[12] "[T]he term 'sexual contact' means the intentional touching, either directly or through the clothing, of the genitalia, anus, groin, breast, inner thigh, or buttocks of any person with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." 18 U.S.C. §2246(3).

someone masturbate (Geiss)—even if those alleged events happened—constitutes a "sex act" within the sex trafficking statute. Finally, because the alleged sexual misconduct occurred more than four years before they filed their lawsuit, Plaintiffs cannot show any actionable injury from this purported predicate act.[13]

Lastly, because the proximate cause and predicate act requirements apply equally to claims under Sections 1962(c) and 1962(d), both RICO claims should be dismissed. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1064 (2d Cir. 1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present claim does not set forth a conspiracy to commit such violations."), *vacated on other grounds*, 525 U.S. 128 (1998).

## IV.   PLAINTIFFS' CLASS ACTION ALLEGATIONS MUST BE DISMISSED OR STRICKEN

Plaintiffs' class allegations are insufficient to support a class action and should be stricken. The class-action rule is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700-01, 995 S. Ct. 2545, 2557 (1979). To justify

---

[13] Each of the plaintiffs alleges some form of *emotional* injury resulting from her encounter with Weinstein, the most recent of which was in 2008 (and thus outside the limitations period). To the extent any of the allegations can be read to assert injury to Plaintiffs' careers, those injuries are again attributed to the alleged time-barred assaults. For example, Kendall alleges that "since the assault" she removed herself from the industry (Complaint, ¶61); Brock alleges that "[a]fter Weinstein assaulted her," she avoided auditioning in Hollywood for several years (*id.*, ¶83); Geiss alleges that she "lost" the three picture deal Weinstein purportedly offered her during their 2008 encounter and thereafter left the industry (*id.*, ¶103); Klatt alleges she "lost" the part Weinstein purportedly offered her in their encounter and asserts the alleged assault has affected her "professional and personal interactions" (*id.*, ¶120); and Thomas alleges only that she did not get the nanny job Weinstein interviewed her for (*id.*, ¶ 113). Sagemiller alleges no injuries of any kind, other than Weinstein's ability to "prevent her from traveling on public transportation, over her objections, frightened [her]." *Id.*, ¶95.

departure from that rule, the named plaintiffs must satisfy the requirements of Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349, 131 S. Ct. 2541, 2550 (2011). In *Dukes*, the Supreme Court made clear that Rule 23 sets forth not only a burden of proof for class certification, but also a "pleading standard." *Id.* at 350-51, 131 S. Ct. at 2551. And in *Twombly* and *Iqbal*, the Court adopted the pleading standard that applies under Rule 8(a) to all civil claims. *See generally Twombly*, 550 U.S. 544, 127 S. Ct. 1955; *Iqbal*, 556 U.S. 662, 129 S. Ct. 1937.

While courts are generally reluctant to dismiss class allegations at the pleading stage (*see, e.g., Chenensky v. New York Life Ins. Co.*, 2011 WL 1795305, at *1 (S.D.N.Y. Apr. 27, 2011), the allegations must at least plausibly suggest that plaintiffs will produce enough evidence to justify class certification. *See Kassman v. KPMG, LLP,* 925 F. Supp. 2d 453, 464 (S.D.N.Y. 2013). Further, a court may determine whether the class can be certified "[a]t an early practicable time," and may make this determination even before the plaintiffs have moved for certification. *Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943, 949 (6th Cir. 2011). Since the Supreme Court rendered the *Twombly* and *Iqbal* decisions, federal courts have held that "*class allegations* must also comply with Rule 8(a) in order to proceed to class discovery." *Nicholas v. CMRE Fin. Serv., Inc.,* 2009 WL 1652275, at *4 (D.N.J. June 11, 2009) (emphasis added). Accordingly, class allegations must comply with the pleading requirements of *Twombly* and *Iqbal*, or be dismissed. *Hodczak v. Latrobe Specialty Steel Co.*, 2009 WL 911311, at *8-10 (W.D. Pa. March 31, 2009).

Plaintiffs' class allegations should be stricken because individual questions of law and fact will predominate across the proposed classes with respect to Plaintiffs' claims against Weinstein. *See Flynn v. DIRECTV, LLC*, 2016 WL 4467885, at *5 (D. Conn. Aug. 23, 2016). Not only will the statute of limitations, with its individualized factual inquiry as to when injury occurred or was discovered, need to be adjudicated on a class member by class member basis, but so too would the substantive law underlying the class claims. Importantly, courts have been reluctant to certify a class when resolution of common issues would require the application of numerous state's substantive laws, which would "defeat the predominance of **common** issues and the superiority of trying the case as a class action." *See Johnson v Nextel Communs., Inc.*, 780 F.3d 128, 148 (2d Cir. 2015) (citing *In re U.S. Foodserv. Pricing Litig.*, 729 F.3d 108, 127 (2d Cir. 2013).[14]

For example, it is readily apparent that the laws of the different states and countries differ with respect to Plaintiffs' proposed class claims for common law or statutory assault and battery.[15] *See In re Am. Med. Sys.*, 75 F.3d 1069, 1081 n. 10 (6th Cir. 1996) (holding that alleged common issues failed to satisfy Rule 23(a)(2)). To establish a *prima facie* claim of civil assault and battery under New York law,[16]

---

[14] *See also Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (noting that application of "individualized choice of law analysis to each plaintiff's claims" may cause "the proliferation of disparate factual and legal issues [to be] compounded exponentially"), *aff'd sub nom. Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997).

[15] Counts V and VII assert claims for civil battery and assault on behalf of Plaintiffs Brock, Kendall, Sagemiller, and Klatt against Weinstein and Miramax; Counts VI and VIII assert claims for civil battery and assault on behalf of Plaintiffs Geiss and Thomas against Weinstein and TWC.

[16] It appears from the pleading that the claims of Plaintiffs Kendall and Thomas arise under New York law. Plaintiff Geiss' claims arose under Utah law.

a plaintiff must show "that the defendant intended to inflict personal injury on her *without her consent*, that the defendant took action to carry out that intent, and that he did in fact injure her." *Buggie v. Cutler*, 222 A.D.2d 640, 641, 636 N.Y.S.2d 357, 358 (2d Dep't 1995). California law[17] is similar: a "civil battery is 'an offensive and intentional touching without the victim's consent.'" *Robles v. Agreserves, Inc.*, 158 F. Supp.3d 952, 985-86 (E.D. Cal. 2016) (citing *Kaplan v. Mamelack*, 162 Cal. App.4th 637, 645, 75 Cal. Rptr.3d 861 (2008), and *So v. Shin*, 212 Cal.App.4th 652, 669, 151 Cal. Rptr.3d 257 (2013)). But Utah[18] state law differs in material respects, including the requirement that the alleged victim have expressly communicated lack of consent. *See Wagner v. Utah Dep't of Human Servs.*, 2005 UT 54, ¶ 51 (Utah Supreme Court holding that civil battery includes "all physical contacts that the individual either expressly communicates are unwanted, or those contacts to which no reasonable person would consent."); *Lee v. Langley*, 2005 UT App. 339, ¶ 20 n. 3, *aff'd*, 147 P.3d 443 (Utah Ct. App. 2006) ("No intentional tort will lie where the plaintiff consents to otherwise tortious activity.").[19]

Because consent "may be given in any number of ways, and consent need not be written down, or even spoken," *Flynn*, 2016 WL 4467885, at *6 (citing, *e.g.,*

---

[17] Although unclear from the complaint, it appears as if the alleged wrongful acts on which Plaintiff Klatt bases her claims against Weinstein occurred in California.

[18] Geiss alleges that Weinstein's misconduct occurred at the Sundance Film Festival, which takes place in Utah.

[19] Additionally, Plaintiff Brock claims Weinstein assaulted her in Cannes, France, so French civil law will apply to her claims. Plaintiff Sagemiller does not allege *where* the purported wrongful acts involving Mr. Weinstein occurred, only that they purportedly occurred sometime *after* shooting commenced on the movie "Get Over It," which was filmed in Canada, and *before* she returned to the United States on Weinstein's private plane. Complaint, ¶¶ 84-95. Thus, Canadian law governs Plaintiff Sagemiller's tort claims against Weinstein.

Restatement (Second) of Torts, ¶ 892), the defense of consent will necessarily defeat class certification because the issue of consent will require an individual-by-individual consideration of the interaction (if any) between Plaintiffs and the class members, on the one hand, and Weinstein, on the other hand.  Such analysis on the issue of consent cannot be adjudicated on a class-wide basis, *id.*, thus; this Court should strike the class allegations as to Plaintiffs' assault and battery claims.

Further, Plaintiffs' proposed class definitions should be stricken because they do not identify an ascertainable class.  In addition to the express requirements of Rule 23(a), the Second Circuit recognizes an "implied requirement of ascertainability."  *M.G. v. New York City Dep't of Educ.*, 162 F.Supp.3d 216, 233 (S.D.N.Y. 2016) (citing *Brecher v. Republic of Argentina*, 806 F.3d 22, 24 (2d Cir. 2015)). The "touchstone" of ascertainability is "whether the class is 'sufficiently definite so that it is administratively feasible for the court to determine whether a particular individual is a member.'" *Id.* (citations omitted). The Second Circuit has cautioned against certifying overbroad classes.  *Id.*  As the court held in *Denney v. Deutsche Bank AG,* 443 F.3d 253, 264 (2d Cir. 2006), the class must "be defined in such a way that anyone within it would have standing." But as to the RICO claims, the putative class member would only have "standing if, and can only recover to the extent that, [she] has been injured in [her] business or property by the conduct constituting the [RICO] violation." *Id.* at 266 (internal quotations omitted).

Here, Plaintiffs seek a nationwide class of "[a]ll women who met with Harvey Weinstein in person (i) to audition for or to discuss involvement in a project to be produced or distributed by either The Weinstein Company Holdings, LLC or, prior

24

to September 30, 2005, Miramax LLC, or (ii) in a meeting or event facilitated, hosted, or underwritten by TWC."  Complaint, ¶ 183. Plaintiffs also seek similar subclasses involving Miramax and TWC, respectively.  *Id.*, ¶¶ 184-185.  These proposed class definitions are fatally overbroad as to be not ascertainable.  As drafted, they would include all women who ever met with Weinstein, regardless of whether they claimed to have suffered any identifiable harm as a result of that meeting.  Such women would include, presumably, Jennifer Lawrence, who told Oprah Winfrey she had known Weinstein since she was 20 years old and said "he had only ever been nice to me,"[20] and Meryl Streep, who stated publicly that Weinstein had always been respectful to her in their working relationship.[21]  The nationwide class and the Miramax and TWC subclasses would also include women working at industry events hosted by these companies who may have met Weinstein briefly while serving him an hors d'oeuvre or a drink.  They would include women who may have briefly met Weinstein but had no discernable communication with him except to say "hello."  Clearly these class definitions do not identify an ascertainable class for which this Court could exercise jurisdiction; thus, they should be stricken.

## CONCLUSION

For the foregoing reasons, the Complaint, and the first, second, and fifth through twelfth claims for relief, should be dismissed with prejudice, and Plaintiffs'

---

[20]https://www.usatoday.com/story/life/people/2017/12/07/jennifer-lawrence-discusses-harvey-weinstein-oprah-winfrey/929913001/

[21] https://www.huffingtonpost.com/entry/meryl-streep-harvey-weinstein_us_59db5d87e4b072637c45420e

class allegations should be dismissed or stricken in their entirety.

Dated:  Los Angeles, California

      February 20, 2018

                               KUPFERSTEIN MANUEL LLP

                               */s/ Phyllis Kupferstein*

                               Phyllis Kupferstein
                               865 S. Figueroa St.
                               Suite 3338
                               Los Angeles, California 90017
                               (213) 988-7531 – Telephone
                               (213) 988-7531 – Telefax
                               pk@kupfersteinmanuel.com

                               MORRISON COHEN LLP
                               Mary E. Flynn
                               909 Third Ave.
                               New York, New York 10022
                               (212) 735-8600 – Telephone
                               (212) 735-8708 – Telefax

                               *Attorneys for Defendant*
                               *Harvey Weinstein*