**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS, KATHERINE KENDALL, ZOE BROCK, SARAH ANN THOMAS (A/K/A SARAH ANN MASSE), MELISSA SAGEMILLER, and NANNETTE KLATT, individually and on behalf of all others similarly situated, | 17 Civ. 9554 (AKH) (BCM) |
| Plaintiffs, | ORAL ARGUMENT REQUESTED |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX, LLC, MIRAMAX FILM CORP., MIRAMAX FILM NY, LLC, HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MIRAMAX DOES 1-10, and JOHN DOES 1-50, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MIRAMAX, LLC,**
**MIRAMAX FILM CORP., AND MIRAMAX FILM NY, LLC'S**
**MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

I.     INTRODUCTION. ................................................................................................... 1

II.    PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS ........................... 3

III.   ARGUMENT. .......................................................................................................... 5

    A.    Motion To Dismiss Standard Under Rule 12(b)(6) And Rule 9(b). .................... 5

    B.    Plaintiffs' Impermissible Group Pleading Warrants Dismissal. ........................ 6

    C.    Plaintiffs' Claims Against The Miramax Defendants Are Time-Barred. ........................ 6

        1.    Plaintiffs' Conclusory Assertion That The Continuing Violation Doctrine
            Tolled Their Untimely Claims Fails As A Matter Of Law. ................................... 8

        2.    Equitable Estoppel Does Not Save Plaintiffs' Untimely Claims. ........................ 10

        3.    Plaintiffs' Untimely Claims Are Not Subject To Duress Tolling. ........................ 12

    D.    Each And Every Claim Against The Miramax Defendants Fails. ..................................... 14

        1.    Plaintiffs' RICO Claims Fail As A Matter Of Law. ............................................. 14

            a.    Plaintiffs Lack Standing To Assert Their RICO Claims. ...................... 15

                (1)    Plaintiffs Have Not Sustained A RICO Injury ........................... 15
                (2)    Plaintiffs' Alleged Injury Was Not Proximately Caused
                        By The Alleged RICO Violation. ................................................. 16

            b.    Plaintiffs' RICO Claim Under § 1962(c) Should Be Dismissed
                Because They Fail To Allege Requisite Elements. ................................. 17

                (1)    Plaintiffs Fail To Allege A RICO Enterprise ........................... 18
                (2)    Plaintiffs Have Not Sufficiently Alleged That The
                        Miramax Defendants Directed The Enterprise's Affairs. .......... 20
                (3)    Plaintiffs Have Not Alleged A Single RICO Predicate
                        Act, Let Alone The Required Pattern Of Racketeering. ............ 21

            c.    Plaintiffs' RICO Conspiracy Claim Fails As A Matter Of Law. ............ 23

        2.    Plaintiffs' State Law Claims Fail As A Matter Of Law ....................................... 24

            a.    Plaintiffs' Claims Based On *Respondeat Superior* Each Fail ................. 24
            b.    Plaintiffs' Negligent Supervision And Retention Claim Fails ................. 26
            c.    Plaintiffs' Claim For Ratification Fails. ................................................ 28

IV.    CONCLUSION ..................................................................................................... 29

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

**CASES**

*Abbott Labs. v. Adelphia Supply USA*,
No. 15-CV-5826, 2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. Jan. 4, 2017) .......................... 19

*Abdelhamid v. Altria Grp., Inc.*,
515 F. Supp. 2d 384 (S.D.N.Y. 2007) ................................................................. 24

*Abdullajeva v. Club Quarters, Inc.*,
No. 96 CIV. 0383, 1996 WL 497029 (S.D.N.Y. Sept. 3, 1996) .......................... 24

*Anza v. Ideal Steel Supply Corp.*,
547 U.S. 451 (2006) ................................................................................. 17

*Apollon Waterproofing & Restoration, Inc. v. Bergassi*,
87 F. App'x 757 (2d Cir. 2004) ................................................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................. 5

*Atuahene v. City of Hartford*,
10 F. App'x 33 (2d Cir. 2001) ................................................................. 6

*Baker v. Bank of America, N.A.*,
No. 16 CIV. 488, 2016 WL 9409022 (S.D.N.Y. Oct. 31, 2016), *aff'd*, 706 F. App'x
43 (2d Cir. 2017) ................................................................................. 7

*Baratta v. Kozlowski*,
464 N.Y.S.2d 803 (N.Y. App. Div. 1983) ................................................... 13

*Barnville v. Mimosa Cafe*,
No. 14-CV-518, 2014 WL 3582878 (S.D.N.Y. July 10, 2014) .......................... 27

*Barrett v. Forest Labs., Inc.*,
39 F. Supp. 3d 407 (S.D.N.Y. 2014) ........................................................... 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................. 5

*Boyle v. United States*,
556 U.S. 938 (2009) ................................................................................. 18

*Cabrera v. New York City*,
436 F. Supp. 2d 635 (S.D.N.Y. 2006) ......................................................... 8

*Carell v. Shubert Org., Inc.*,
104 F. Supp. 2d 236 (S.D.N.Y. 2000) ......................................................... 10

*Carroll v. New York*,
    No. 1:14-CV-00479, 2014 WL 6387125 (N.D.N.Y. Nov. 14, 2014)....................................9

*Chamberlin v. Hartford Fin. Servs. Inc.*,
    No. 05 Civ. 2650, 2005 WL 2007894 (S.D.N.Y. Aug. 19, 2005)....................................22

*Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*,
    236 F. Supp. 2d 288 (S.D.N.Y. 2002) ............................................................................26

*Coulter v. Morgan Stanley & Co., Inc.*,
    753 F.3d 361 (2d Cir. 2014) ...........................................................................................2

*Cruz v. New York*,
    24 F. Supp. 3d 299 (W.D.N.Y. 2014)............................................................................27

*Davis v. N.J. Dep't of Corr.*,
    10-cv-6439, 2011 U.S. Dist. LEXIS 130909 (D.N.J. Nov. 10, 2011)..............................9

*Day v. Moscow*,
    955 F.2d 807 (2d Cir. 1992) ..........................................................................................13

*DDR Constr. Servs., Inc. v. Siemens Indus.*,
    770 F. Supp. 2d 627 (S.D.N.Y. 2011) ............................................................................17

*DeFalco v. Bernas*,
    244 F.3d 286 (2d Cir. 2001) ..........................................................................................17

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ..........................................................................................15

*Doe v. Alsaud*,
    12 F.Supp.3d 674 (S.D.N.Y. 2014) ..........................................................13, 25, 26, 27

*Doe v. City of New York*,
    No. 09 Civ. 9895, 2013 WL 796014 (S.D.N.Y. Mar. 4, 2013) ........................................25

*Doe v. Schneider*,
    667 F. Supp. 2d 524 (E.D. Pa. 2009) ............................................................................16

*Duprey v. Conn. DMV*,
    191 F.R.D. 329 (D. Conn. 2000) .....................................................................................7

*Ehrens v. Lutheran Church*,
    385 F.3d 232 (2d Cir. 2004) ..........................................................................................27

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
    385 F.3d 159 (2d Cir. 2004) ...................................................................................19, 23

*Fountain v. United States*,
    357 F.3d 250 (2d Cir. 2004) ..........................................................................................22

*Gonzalez v. Hasty*,
  802 F.3d 212 (2d Cir. 2015) ................................................................................ 8, 9

*Gross v. Waywell*,
  628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................... 17, 21

*Haybeck v. Prodigy Servs. Co.*,
  944 F. Supp. 326 (S.D.N.Y. 1996) ......................................................................... 27

*Hemi Grp., LLC v. City of New York*,
  559 U.S. 1 (2010) ..................................................................................................... 16

*Hilow v. Rome City Sch. Dist.*,
  No. 6:14-CV-288, 2015 WL 893050 (N.D.N.Y. Mar. 2, 2015) .............................. 9

*Hoatson v. New York Archdiocese*,
  No. 05 Civ. 10467, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) *aff'd,* 280 F. App'x 88
  (2d Cir. 2008) ................................................................................................... 17, 20

*Hollander v. Flash Dancers Topless Club*,
  340 F. Supp. 2d 453 (S.D.N.Y. 2004) ................................................................... 15

*Holm v. C.M.P. Sheet Metal, Inc.*,
  89 A.D.2d 229 (N.Y. App. Div. 1982) ................................................................... 28

*Huckabone v. City of Jamestown*,
  No. 09-CV-602-A, 2014 U.S. Dist. LEXIS 115573 (W.D.N.Y. Aug. 19, 2014) ............... 13

*Int'l Bhd. of Teamsters v. Carey*,
  163 F. Supp. 2d 271 (S.D.N.Y. 2001) ................................................................... 21

*Jaeger v. Cellco P'ship*,
  936 F. Supp. 2d 87 (D. Conn. 2013), *aff'd,* 542 F. App'x 78 (2d Cir. 2013) .................... 10

*Jane Doe v. Miramax, LLC et al.*,
  No. 2:17-cv-08323 (C.D. Cal. 2017) ........................................................................ 3

*Jason v. Krey*,
  60 A.D.3d 735 (N.Y. App. Div. 2009) ................................................................... 13

*Jastrzebski v. New York*,
  423 F. Supp. 669 (S.D.N.Y. 1976) ......................................................................... 13

*Jones v. Nat'l Commc'n and Surveillance Networks*,
  409 F. Supp. 2d 456 (S.D.N.Y 2006) ............................................................. *passim*

*Koch v. Christie's Int'lern. PLC*,
  699 F.3d 141 (2d Cir. 2012) ..................................................................................... 6

*Lettis v. United States Postal Serv.*,
  39 F. Supp. 2d 181 (E.D.N.Y. 1998) ....................................................................... 9

*Lundy v. Catholic Health Sys. of Long Island Inc.*,
711 F.3d 106 (2d Cir. 2013), 711 F.3d 353 (2d Cir. 2013) ................................ 5

*Mackin v. Auberger*,
59 F. Supp. 3d 528 (W.D.N.Y. 2014) ........................................................ 16, 20

*Madera v. Metro. Life Ins. Co.*,
No. 99-CV-4005, 2002 WL 1453827 (S.D.N.Y. July 3, 2002) ........................... 8

*Major League Baseball Props., Inc. v. Price*,
105 F. Supp. 2d 46 (E.D.N.Y. 2000) .......................................................... 14

*Makowski v. United Bhd. of Carpenters & Joiners of Am.*,
No. 08 Civ. 6150, 2010 WL 3026510 (S.D.N.Y. Aug. 2, 2010) ........................ 15

*Mary KK v. Jack LL*,
203 A.D.2d 840 (N.Y. App. Div. 1994) ....................................................... 25

*Matthews v. Schushem*,
247 N.Y.S.2d 285 (N.Y. Sup. Ct. 1964) ....................................................... 2

*McCabe v. Lifetime Entm't Servs., LLC*,
No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212 (E.D.N.Y. Jan. 4, 2018) ............. 7

*McFadden v. Wilhelm*,
No. 03 CIV 8341, 2007 WL 1225345 (S.D.N.Y. Apr. 24, 2007) ........................ 7

*McIntyre v. Ogemaw Cty. Bd. of Comm'rs*,
No. 15-cv-12214, 2016 U.S. Dist. LEXIS 125282 (E.D. Mich. Sep. 15, 2016) ................. 9

*Miller v. Carpinello*,
No. 06 CV 12940, 2007 WL 4207282 (S.D.N.Y. Nov. 20, 2007) ...................... 22

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
737 F. Supp. 2d 137 (S.D.N.Y. 2010) .......................................................... 5

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) .......................................................... 19

*MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*,
No. 15-CV-3997, 2015 WL 6685523 (S.D.N.Y. Oct. 29, 2015) ........................ 5

*Murphy v. Am. Home Products Corp.*,
58 N.Y.2d 293 (N.Y. 1983) ........................................................................ 13

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001) .......................................................... 23

*NEM Re Receivables, LLC v. Fortress Re, Inc.*,
187 F. Supp. 3d 390 (S.D.N.Y. 2016) .......................................................... 7

*New York v. United Parcel Serv., Inc.*,
    No. 15-cv-1136, 2016 WL 4203547 (S.D.N.Y. Aug. 9, 2016) ..................................................... 18, 19

*Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*,
    No. 12 Civ. 2837, 2012 WL 6082387 (S.D.N.Y. Dec. 3, 2012) ......................................................... 6

*Overall v. Estate of Klotz*,
    52 F.3d 398 (2d Cir. 1995) .................................................................................................................... 12, 13

*Pearl v. City of Long Beach*,
    296 F.3d 76 (2d Cir. 2002) .................................................................................................................... 10, 12

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
    33 F. Supp. 3d 245 (S.D.N.Y. 2014) ...................................................................................................... 28

*Pulte Homes of N.Y., LLC v. Town of Carmel*,
    No. 16 CV 8093, 2017 U.S. Dist. LEXIS 143290 (S.D.N.Y. Sept. 5, 2017) ......................................... 8

*Redtail Leasing, Inc. v. Bellezza*,
    No. 95 Civ. 5191, 1997 WL 603496 (S.D.N.Y. Sept. 30, 1997).......................................................... 21

*Reves v. Ernst & Young*,
    507 U.S. 170 (1993) .......................................................................................................................... 20, 21

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
    30 F.3d 339 (2d Cir. 1994) ...................................................................................................................... 13

*Ross v. Mitsui Fudosan, Inc.*,
    2 F. Supp. 2d 522 (S.D.N.Y. 1998) ................................................................................................... 25, 26

*Russo v. N.Y. Presbyterian Hosp.*,
    972 F. Supp. 2d 429 (E.D.N.Y. 2013) ...................................................................................................... 8

*Santan-Morris v. N.Y. Univ. Med. Ctr.*,
    No. 96 Civ. 0621, 1996 U.S. Dist. LEXIS 18237 (S.D.N.Y. Dec. 9, 1996)........................................ 10

*Santos v. Dist. Council of N.Y.C.*,
    619 F.2d 963 (2d Cir. 1980) ..................................................................................................................... 7

*Schmidt v. Bishop*,
    779 F. Supp. 321 (S.D.N.Y. 1991) .......................................................................................................... 13

*Schmidt v. Fleet Bank*,
    16 F. Supp. 2d 340 (S.D.N.Y. 1998) ....................................................................................................... 24

*Sevits v. McKiernan-Terry Corp. (N. J.)*,
    264 F. Supp. 810 (S.D.N.Y. 1966) ........................................................................................................... 5

*Smith v. Smith*,
    830 F.2d 11 (2d Cir. 1987) ...................................................................................................................... 12

*Snowden v. Lexmark Int'l, Inc.*,
    237 F.3d 620 (6th Cir. 2001) ...................................................................................... 23

*Stadtman v. Cambere*,
    422 N.Y.S.2d 102 (N.Y. App. Div. 1979) .................................................................... 13

*Taylor v. Williams Communications, Inc.*,
    No. 02–02011, 2004 WL 5614591 (N.Y. Sup. Ct. Oct. 22, 2004) ................................... 3

*Thaw v. N. Shore Univ. Hosp.*,
    129 A.D.3d 937 (N.Y. App. Div. 2015) ....................................................................... 13

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ............................................................. 5, 7, 10, 11

*United States Fire Ins. Co. v. United Limousine Serv., Inc.*,
    303 F. Supp. 2d 432 (S.D.N.Y. 2004) .......................................................................... 20

*United States v. Turkette*,
    452 U.S. 576 (1981) ................................................................................................... 20

*United States v. Viola*,
    35 F.3d 37 (2d Cir. 1994), *abrogated on other grounds by Salinas v. United States*,
    522 U.S. 52 (1997) ..................................................................................................... 21

*Villoldo v. BNP Paribas S.A.*,
    No. 15 Civ. 268, 2015 WL 13145807 (S.D.N.Y. July 21, 2015) ................................... 15

*Westchester Cty. Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015) ............................................................................ 2

*Woods v. CVS*,
    No. 13 Civ. 611, 2013 WL 1736587 (S.D.N.Y. April 19, 2013) ................................... 24

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    530 F. Supp. 2d 486 (S.D.N.Y. 2007), *aff'd* 328 F. App'x 695 (2d Cir. 2009)................ 16

*Zarzycki v. Lan Metal Prods. Corp.*,
    62 A.D.3d 788 (N.Y. App. Div. 2009) ........................................................................... 5

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003) .......................................................................................... 11

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (N.Y. 2006).............................................................................. 10, 11, 12

## STATUTES

18 U.S.C.
    § 1512 .................................................................................................................. 22
    § 1590 .................................................................................................................. 23
    § 1591 .................................................................................................................. 23
    § 1961(5) ............................................................................................................. 21
    § 1962(c) ......................................................................................................... *passim*
    § 1962(d) .......................................................................................................... 4, 15

Pub. L. No. 108-193 .............................................................................................. 23

## RULES

Fed. R. Civ. P.
    8 ............................................................................................................................ 6
    9(b) ....................................................................................................... 1, 5, 6, 22
    12(b)(2) ............................................................................................................ 1, 5
    12(b)(4) ............................................................................................................ 1, 5
    12(b)(5) ............................................................................................................ 1, 5
    12(b)(6) ............................................................................................................ 1, 5

N.Y. CPRL
    § 214(5) ............................................................................................................... 6
    § 215 .................................................................................................................... 6

## TREATISES

Restatement (Third) Of Agency § 4.04 TD No 3 (2002) ......................................... 24

Pursuant to Rules 12(b)(2), (4), (5) and (6) and Rule 9(b) of the Federal Rules of Civil Procedure, defendants Miramax, LLC, Miramax Film Corp., and Miramax Film NY, LLC (collectively, the "Miramax defendants") submit the following memorandum of law in support of their motion to dismiss plaintiffs' putative class action in its entirety with prejudice.

## I.     **INTRODUCTION**.

There is no question that plaintiffs' claims are time-barred.  They seek to hold the Miramax defendants liable for incidents they admit occurred decades ago.  Indeed, one plaintiff asserts claims based on alleged conduct that occurred 25 years ago.  As such, plaintiffs are asking this Court for an extraordinary remedy—to resurrect their expired claims by tolling the relevant statute of limitations periods until October 5, 2017, when the *The New York Times* published an article regarding defendant Harvey Weinstein and his alleged misconduct.  That is no small request.  Nor a lawful one.  Plaintiffs' passing reference (in a heading in their complaint) to three tolling doctrines is simply not enough to resurrect these claims.  Plaintiffs fail to sufficiently plead these tolling doctrines or establish they even apply.  Plaintiffs' complaint is unequivocally time-barred and should be dismissed with prejudice.

But even if plaintiffs' claims were not time-barred (and they are), each and every claim asserted against the Miramax defendants contains fundamental defects that separately warrant their dismissal.  Plaintiffs' conclusory RICO claims are unintelligible and fail to plead the most basic requirements, including, RICO standing, an enterprise that exists separate from the racketeering activity, or even a single predicate act.  This failure stems from plaintiffs' attempt to recast tort injuries into a racketeering offense, which courts repeatedly have rejected— recognizing that was not Congress' intention when it enacted RICO.  Further, notably absent from the complaint are any specific allegations tying any of the *Miramax defendants* to the alleged racketeering activity or explaining how they supposedly controlled an enterprise

1

spanning decades, including for the last twelve years when the Miramax defendants had no association whatsoever with Harvey Weinstein.  Given that the "mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts . . . strive to flush out frivolous RICO allegations at an early stage of the litigation." *Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586, 599 (S.D.N.Y. 2015).  This Court should do so here and dismiss plaintiffs' RICO claims.

Plaintiffs' state law claims are similarly defective.  Each tort claim fails under *respondeat superior* liability because Harvey Weinstein's alleged sexual misconduct was not—and could not be—in furtherance of the Miramax defendants' business and thus falls outside the scope of his employment.  Plaintiffs' failure to allege specific facts showing the Miramax defendants' knowledge of any prior sexual assault is fatal to their negligent supervision and retention claim.  And plaintiffs make no attempt to adequately plead ratification.

Simply stated, the complaint provides no factual or legal basis to hold the Miramax defendants liable.  As plaintiffs concede, Harvey Weinstein and Miramax departed ways on September 30, 2005—twelve years before this lawsuit was filed.  Thus, any misconduct by Harvey Weinstein that occurred before this date is time-barred, and any conduct occurring after it cannot impose liability on the Miramax defendants.  As such, amendment would be futile.  Accordingly, the Miramax defendants respectfully request that the Court dismiss each of plaintiffs' claims against the Miramax defendants with prejudice.  *See Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d 361, 368 (2d Cir. 2014).[1]

---

[1]     Plaintiffs' complaint also names Miramax Does as defendants.  Yet, plaintiffs have not alleged any fact describing who the Miramax Does might be, nor have they alleged a specific cause of action against any Miramax Doe.  Instead, plaintiffs improperly included them as a placeholder in this litigation.  As such, the court should also dismiss the complaint as to the "Miramax Does." *See Matthews v. Schushem*, 247 N.Y.S.2d 285, 286-287 (N.Y. Sup. Ct. 1964) (CPLR 1024 does not "permit the use of a fictitious name [John Doe], applicable to no specific individual, but adopted as an expedient to cover the name of a person not sued, not intended to be sued, and whom the plaintiff

## II.   PROCEDURAL HISTORY AND SUMMARY OF ALLEGATIONS.[2]

On November 15, 2017, plaintiffs' counsel filed a putative class action in the Central

District of California on behalf of "Jane Doe 1" against three defendants:  Miramax, LLC,

Harvey Weinstein, and The Weinstein Company Holdings, LLC.  *See Jane Doe v. Miramax,*

*LLC et al.*, No. 2:17-cv-08323 (C.D. Cal. 2017).  Three weeks later, on December 6, 2017,

plaintiffs' counsel filed the current action—which is virtually identical—on behalf of six named

plaintiffs.  Plaintiffs named twelve new defendants, including Miramax Film Corp. and Miramax

Film NY, LLC.  Compl. ¶¶ 19-21.  Choosing to proceed in this forum, plaintiffs' counsel

withdrew the California action the next day.

Each of plaintiffs' claims against the Miramax defendants is premised on "unwanted

sexual conduct" by Harvey Weinstein occurring decades ago.  *See, e.g.*, Compl. ¶¶ 48-58

(plaintiff Kendall's alleged incident occurred in 1993), ¶¶ 71-82 (plaintiff Brock's alleged

incident occurred in 1998), ¶¶ 84-94 (plaintiff Sagemiller's alleged incident occurred in 2000).[3]

These incidents purportedly occurred at Harvey Weinstein's apartment or in his hotel rooms, and

in one instance, in his private office, located in the same building as a Miramax office, but on an

entirely separate floor.  *Id.* at ¶¶ 1, 12-13, 15, 53-55, 71, 74, 86-88, 115.  Each incident is alleged

to have occurred before Harvey Weinstein left Miramax on September 30, 2005.  *Id.* at ¶¶ 37,

184, 290.

Plaintiffs allege eight causes of action against the Miramax defendants:  RICO in

---

only purposes [proposes] to make a defendant if he discovers at some later time that he ought to do so.") *see also Taylor v. Williams Commc'ns, Inc.*, No. 02–02011, 2004 WL 5614591 at *4 (N.Y. Sup. Ct. Oct. 22, 2004)(same).

[2]   The facts alleged in the complaint are assumed true only for purposes of this motion to dismiss.

[3]   Although specific dates for the allegations are not provided, it is also clear from the face of the complaint that plaintiff Klatt's claims are time-barred as she purports to be a representative of the "Miramax Subclass" which is limited to women who met with Harvey Weinstein "before September 30, 2005."  *See* Compl. ¶¶ 184, 219, 231, 245, 257, 273, 289.  The other two named plaintiffs, Geiss and Thomas, do not assert claims against the Miramax defendants.

violation of 18 U.S.C. § 1962(c) (Count I); RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count II); negligent supervision and retention (Count III); civil battery (Count V); assault (Count VII); intentional infliction of emotional distress ("IIED") (Count IX); negligent infliction of emotional distress ("NIED") (Count XI); and ratification (Count XIII).  The two RICO causes of action, premised on what plaintiffs have termed "The Weinstein Sexual Enterprise," Compl. ¶ 5, rely heavily on news articles published in late 2017 in *The New York Times*, *The New Yorker*, *Variety*, and *Fortune*.  These articles (which plaintiffs admit to relying upon) primarily discuss events that occurred after Harvey Weinstein left Miramax to found The Weinstein Company. *See id.* at ¶¶ 3-4, 6, 27-28, 40-42, 45-46, 66-68, 121-132, 137, 150-167, 169-173, 179.  Plaintiffs assert that the purported RICO enterprise is comprised of the 15 named defendants as well as a litany of identified and unidentified non-party members, including journalists, lawyers and law firms, film directors and talent agencies, and intelligence agencies.  *Id.* at ¶ 5.  Plaintiffs' state law claims are based upon allegations that Harvey Weinstein's conduct was somehow in the scope of his employment, the Miramax defendants "knew or should have known" of his behavior, and failed to take action to stop him.  *See, e.g.*, *id.* at ¶¶ 222, 235, 248, 262, 278, 292.  Each of plaintiffs' claims against the Miramax defendants, however, fails as a matter of law.

## III.   <u>ARGUMENT</u>.

### A.   <u>Motion To Dismiss Standard Under Rule 12(b)(6) And Rule 9(b).</u>[4]

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege enough facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plaintiffs are required to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Id*. at 555; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").  Moreover, claims that sound in fraud, such as plaintiffs' RICO claims, are subject to Rule 9(b), which requires that averments of fraud be stated with particularity.  *See Lundy v. Catholic Health Sys. of Long Island Inc.,* 711 F.3d 106, 119 (2d  Cir. 2013), 711 F.3d 353, 359 (2d Cir. 2013).  To satisfy this heightened standard, a complaint must "specify the time, place, speaker, and content of the alleged misrepresentations," and must allege specific facts that "give rise to a strong inference of fraudulent intent." *Id.*; *MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 737 F. Supp. 2d 137, 142 (S.D.N.Y. 2010).  When ruling on a motion to dismiss, courts may consider matters that are judicially noticeable.  *See Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 434 (S.D.N.Y. 2014).

---

[4]      Miramax Film Corp. also moves for dismissal under Rule 12(b)(2) and 12(b)(4) & (5), as it is a defunct corporation that cannot be sued.  As discussed in the Request for Judicial Notice ("RJN") filed concurrently herewith, Miramax Film Corp. was the non-surviving corporation of a merger that occurred in 2010.  *See* RJN Exs. B & E.  Under New York law, the non-surviving corporation in a merger ceases to exist and therefore lacks the capacity to be sued.  *See Zarzycki v. Lan Metal Prods. Corp.*, 62 A.D.3d 788, 789 (N.Y. App. Div. 2009) (absorbed corporation, immediately ceased to exist as a separate entity, and could no longer be named party in litigation.).  As a now defunct company, Miramax Film Corp. cannot properly be served with process, and thus the Court lacks personal jurisdiction over the company.  *See Sevits v. McKiernan-Terry Corp. (N. J.)*, 264 F. Supp. 810, 812 (S.D.N.Y. 1966); *see also MPEG LA, L.L.C. v. Toshiba Am. Info. Sys., Inc.*, No. 15-CV-3997, 2015 WL 6685523, at *6-7 (S.D.N.Y. Oct. 29, 2015).  Thus, all claims against Miramax Film Corp. must be dismissed with prejudice.

### B.   Plaintiffs' Impermissible Group Pleading Warrants Dismissal.

Based almost exclusively on news articles, plaintiffs' claims are vague, conclusory, and often unintelligible.  They fail to meet the notice pleading standard under Rule 8, let alone the particularity mandated by Rule 9(b) for the RICO claims.  The complaint is an impermissible group pleading, which fails to give each of the Miramax defendants notice of any actual claims as to them.  Not only does the complaint impermissibly lump the three separate Miramax entities together,[5] *see, e.g.*, Compl. ¶¶ 1 & n.1, 220-224, 235-237, 248-250, 262-264, 278-280, 290-294, plaintiffs repeatedly rely on conclusory allegations that lump *all 15 named defendants together*, *see, e.g.*, Compl. ¶¶ 189, 193-194, 196, 198, 200-211, 214-218, and further group the Miramax defendants with wholly unrelated entities and individuals—such as "Complicit Producers" and "Weinstein Participants." Compl. ¶¶ 2, 5.  This alone necessitates dismissal of plaintiffs' complaint.  *See Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001) (lumping defendants together fails to provide "fair notice of what the plaintiff's claim is and the ground upon which it rests" and is grounds for dismissal); *Ochre LLC v. Rockwell Architecture Planning & Design, P.C.*, No. 12 Civ. 2837, 2012 WL 6082387, at *6-7 (S.D.N.Y. Dec. 3, 2012) (dismissing complaint when plaintiff lumped all defendants together and provided no factual basis to distinguish their conduct).

### C.   Plaintiffs' Claims Against The Miramax Defendants Are Time-Barred.

It is undeniable that the claims asserted against the Miramax defendants fall well outside the relevant statute of limitations periods, which are one to four years.[6]  Indeed, each of

---

[5]      One of which does not now exist, *see supra* n. 2, and another that did not exist until more than a decade after Harvey Weinstein stopped working at Miramax.  *See infra* n. 17.

[6]      The statute of limitations for plaintiffs' claims for assault, civil battery, and IIED is one year.  N.Y. CPRL § 215.  Plaintiffs' NIED and negligent supervision and retention claims have a three-year statute of limitations.  N.Y. CPRL § 214(5).  Plaintiffs' RICO claims have a four-year statute of limitations.  *Koch v. Christie's Int'lern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012).

plaintiffs' claims attempt to hold the Miramax defendants liable for alleged conduct that occurred decades ago. *See, e.g.*, Compl. ¶¶ 48-58 (plaintiff Kendall's alleged conduct occurred 25 years ago), ¶¶ 71-82 (plaintiff Brock's alleged conduct occurred nearly 20 years ago), ¶¶ 84-94 (plaintiff Sagemiller's alleged conduct occurred nearly 18 years ago). Plaintiffs' claims therefore are time-barred and should be dismissed with prejudice. *See Santos v. Dist. Council of N.Y.C.*, 619 F.2d 963, 967 n.4 (2d Cir. 1980); *Twersky*, 993 F. Supp. 2d, at 434, 452.[7]

Necessarily conceding the alleged conduct against the Miramax defendants falls outside the applicable statute of limitations periods, plaintiffs contend their claims were tolled until October 5, 2017, when "*The New York Times* published a powerful report revealing allegations of sexual harassment against Weinstein." Compl. ¶ 181. As ostensible support for this contention, plaintiffs reference three tolling doctrines: the continuing violation doctrine, equitable estoppel, and duress. Compl. at p. 47, heading F. It is plaintiffs' burden to establish tolling. *NEM Re Receivables, LLC v. Fortress Re, Inc.*, 187 F. Supp. 3d 390, 398 (S.D.N.Y. 2016) (when statute of limitations has expired, burden shifts to plaintiff to submit evidence of tolling). Plaintiffs have not met their burden. Accordingly, each claim against the Miramax defendants remains time-barred and should be dismissed with prejudice. *See Baker v. Bank of America, N.A.*, No. 16 CIV. 488, 2016 WL 9409022, at *4 (S.D.N.Y. Oct. 31, 2016) (Hellerstein, J.), *aff'd*, 706 F. App'x 43 (2d Cir. 2017) (denying tolling and dismissing all claims with prejudice); *McFadden v. Wilhelm*, No. 03 CIV 8341, 2007 WL 1225345, at *8 (S.D.N.Y. Apr.

---

[7]     Plaintiffs cannot save their claims against the Miramax defendants by relying on other class members with timely claims against other defendants. *See Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 459 (S.D.N.Y. 2014) (one plaintiff's timely claim cannot save another's time-barred claim simply because the case is brought as a class action). Moreover, "[a] class action cannot proceed on behalf of class members whose claims are time-barred." *Duprey v. Conn. DMV*, 191 F.R.D. 329, 341 (D. Conn. 2000); *see also McCabe v. Lifetime Entm't Servs., LLC*, No. 17-CV-908-ERK-SJB, 2018 U.S. Dist. LEXIS 3212, at *27-28 (E.D.N.Y. Jan. 4, 2018) (granting motion to dismiss with prejudice when in addition to named plaintiffs' untimely claim, "each and every [class] member's claim is also time barred").

24, 2007) (Hellerstein, J.) (same).

1.    **Plaintiffs' Conclusory Assertion That The Continuing Violation Doctrine Tolled Their Untimely Claims Fails As A Matter Of Law.**

Plaintiffs' passing reference to the continuing violation doctrine relies upon a fundamental misunderstanding of the doctrine and its application.  *See* Compl. at p. 47, heading F.  After all, "the continuing violation doctrine is disfavored in [the Second] Circuit and will be applied only upon a showing of compelling circumstances."  *Cabrera v. New York City*, 436 F. Supp. 2d 635, 642 (S.D.N.Y. 2006).  In any event, plaintiffs' attempt to revive their untimely claims by asserting this disfavored doctrine fails for several reasons.

First, plaintiffs' lone reference to the continuing violation doctrine—in a heading—is insufficient to trigger application of the doctrine.  *See Russo v. N.Y. Presbyterian Hosp.*, 972 F. Supp. 2d 429, 444-45 (E.D.N.Y. 2013) (conclusory allegations insufficient to invoke continuing violation doctrine)*.  Moreover, "plaintiff[s]' conclusory allegation[s] that the acts amounted to a continuing violation are an insufficient substitute for an explanation of how these distinct acts are related."  *Madera v. Metro. Life Ins. Co.*, No. 99-CV-4005, 2002 WL 1453827, at *4 (S.D.N.Y. July 3, 2002).

Second, the continuing violation doctrine only applies to "unlawful conduct [that] takes place over a period of time, making it difficult to pinpoint the exact day the violation occurred."  *Pulte Homes of N.Y., LLC v. Town of Carmel*, No. 16 CV 8093, 2017 U.S. Dist. LEXIS 143290, at *9 (S.D.N.Y. Sept. 5, 2017); *see also Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015).  It is thus axiomatic that the doctrine does not apply "to discrete unlawful acts, even where those discrete acts are part of a serial violation."  *Gonzalez*, 802 F.3d at 220.  Here, the very nature of the misconduct claimed by each plaintiff—an alleged assault that occurred on a specific date— does not take place over a period of time and thus constitutes a "discrete unlawful act"

precluding application of this doctrine.

Third, plaintiffs' failure to allege that each Miramax defendant committed a wrongful act *within the relevant statute of limitations period* is fatal.  *See Davis v. N.J. Dep't of Corr.*, 10-cv-6439, 2011 U.S. Dist. LEXIS 130909, at *17 (D.N.J. Nov. 10, 2011) ("Each defendant's conduct is separately evaluated to determine if that defendant engaged in a continuing pattern of violations.  Thus, the plaintiff must identify a wrongful act committed within the limitations period by each defendant."); *see also Gonzalez*, 802 F.3d at 220 (doctrine only applies "if the plaintiff alleges some non-time-barred acts contributing to the alleged violation").  The most recent misconduct alleged as to the Miramax defendants occurred in 2000—clearly outside the relevant statute of limitations period.[8]  Compl. ¶ 84.  Thus, because plaintiffs have not alleged any misconduct committed by the Miramax defendants within the respective statute of limitations periods, they cannot invoke the continuing violation doctrine.  *See Carroll v. New York*, No. 1:14-CV-00479, 2014 WL 6387125, at *3 (N.D.N.Y. Nov. 14, 2014) (rejecting continuing violation doctrine when plaintiff failed to allege specific acts of misconduct that occurred within statute of limitations period).[9]

Finally, courts routinely reject attempts to apply the continuing violation doctrine to the exact claims plaintiffs assert against the Miramax defendants.  *See, e.g.*, *Hilow v. Rome City Sch. Dist.*, No. 6:14-CV-288, 2015 WL 893050, at *9 n.8 (N.D.N.Y. Mar. 2, 2015) ("The continuing violation doctrine does not apply under RICO"); *Lettis v. United States Postal Serv.*, 39 F. Supp.

---

[8]    Plaintiffs concede Harvey Weinstein left Miramax in 2005, terminating any employment relationship between him and Miramax.  Compl.  ¶¶ 37, 290.  Thus, Miramax cannot be liable for Harvey Weinstein's conduct after 2005, as it was no longer Harvey Weinstein's employer.

[9]    To the extent plaintiffs contend the effects of the alleged misconduct continued into the statute of limitations periods, that argument similarly fails.  *See Gonzalez*, 802 F.3d at 222 (continuing effects do not make act itself continuing); *see also McIntyre v. Ogemaw Cty. Bd. of Comm'rs*, No. 15-cv-12214, 2016 U.S. Dist. LEXIS 125282, at *13 (E.D. Mich. Sep. 15, 2016) (continued psychological and emotional damage caused by sexual harassment are continuing effects, not a continuing violation, and not sufficient to toll statute of limitations).

2d 181, 204 (E.D.N.Y. 1998) (claims for assault and battery accrue immediately upon occurrence of tortious act and are not appropriate for continuing violation exception); *Santan-Morris v. N.Y. Univ. Med. Ctr.*, No. 96 Civ. 0621, 1996 U.S. Dist. LEXIS 18237, at *12 (S.D.N.Y. Dec. 9, 1996) (rejecting application of continuing violation doctrine to IIED claim); *Jaeger v. Cellco P'ship*, 936 F. Supp. 2d 87, 100 n.10 (D. Conn. 2013), *aff'd*, 542 F. App'x 78 (2d Cir. 2013) (rejecting application of continuing violation doctrine to NIED claim).

Accordingly, any reliance on the continuing violation doctrine is misplaced.  It does not (and cannot) toll the statute of limitations.

### 2. Equitable Estoppel Does Not Save Plaintiffs' Untimely Claims.

Equitable estoppel is "an extraordinary remedy" that "should be invoked sparingly and only under exceptional circumstances." *Twersky*, 993 F. Supp. 2d at 442.  The Second Circuit has made clear that this "exceptional circumstances" standard requires plaintiffs to "show that it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 79, 85, 89 (2d Cir. 2002) (affirming dismissal of plaintiff's untimely claims for RICO, IIED and NIED) (emphasis in original and internal quotation marks omitted).  Further, federal courts "follow New York law in requiring a plaintiff to plead each element of equitable estoppel with *particularity*." *Twersky*, 993 F. Supp. 2d at 443 n.5 (emphasis added).

Plaintiffs have not met this burden.  They fail to allege, with the required particularity, that any of the Miramax defendants took any action to prevent *plaintiffs* from timely filing this lawsuit.  It is "fundamental to the application of equitable estoppel for plaintiffs to establish that *subsequent* and *specific* actions *by defendants* somehow kept them from timely bringing suit." *Zumpano v. Quinn*, 6 N.Y.3d 666, 674 (N.Y. 2006) (emphasis added); *see also Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 250 (S.D.N.Y. 2000).  In addition, each plaintiff must establish

with specificity that she "acted with reasonable diligence during the time period she seeks to have tolled." *Zerilli-Edelglass v. N.Y.C. Transit Auth.*, 333 F.3d 74, 80-81 (2d Cir. 2003); *see also Twersky*, 993 F. Supp. 2d at 442-43.

*Twersky* and *Zumpano* are particularly instructive here.  In *Twersky*, former students abused by school faculty members, decades earlier, filed a lawsuit against the school and other defendants, asserting claims for negligent supervision and retention, IIED and NIED.  993 F. Supp. 2d at 429.  Plaintiffs argued their claims were tolled until a news article was published decades later disclosing defendants' knowledge of the abuse and alleged cover up.  *Id.* at 436, 440.  Rejecting plaintiffs' equitable estoppel argument, the court concluded that defendants' failure to disclose prior incidents of abuse fell "short of the sort of specific and affirmative misrepresentation required to trigger an equitable estoppel defense."  *Id.* at 444.  Further, because each plaintiff "clearly knew he was abused, who had abused him, and who employed his abuser," plaintiffs could not establish reasonable reliance on any misrepresentations explaining the delay in bringing suit.  *Id.* at 447.  The court found the claims time-barred and dismissed with prejudice.  *Id.* at 452.

In *Zumpano*, plaintiffs asserted untimely claims for sexual abuse, battery, and negligent retention against Catholic priests and the diocese.  6 N.Y.3d at 672.  Plaintiffs alleged the diocese knew the priests abused children and "engaged in a corrupt campaign and pattern of concealment" by not reporting the abuse, transferring abusive priests to other parishes, and paying for victims' silence.  *Id.*  The court rejected plaintiffs' equitable estoppel argument because they failed to allege *specific actions* that kept them from bringing suit.  *Id.* at 674-75. The court reasoned that plaintiffs undeniably were aware of the sexual abuse they suffered and were aware that the diocese employed the priests and therefore could have brought claims

against them.  *Id.* at 674.  Since plaintiffs did not allege any specific misrepresentation the diocese made to them nor any subsequent actions that altered their "early awareness of the essential facts and circumstances underlying their causes of action or their ability to timely bring their claims," the court dismissed the complaint as time-barred.  *Id.*

Similar to *Twersky* and *Zumpano*, plaintiffs here knew—at the time of the alleged assaults—that Harvey Weinstein had allegedly assaulted them, that Miramax employed him, and of their potential legal claims.  Nonetheless, rather than acting with the required reasonable diligence, plaintiffs delayed filing a lawsuit for decades.  Plaintiffs' complaint does not explain this delay nor allege the delay was a result of conduct by the Miramax defendants.  In fact, it is entirely devoid of any allegations demonstrating that *the Miramax defendants* made any misrepresentation or took any act directed at the individual plaintiffs to prevent them from timely filing their claims.  Plaintiffs have simply not alleged equitable estoppel with the required particularity, including how it was "impossible" to bring their claims in the 1990s or 2000s before the statute of limitations periods expired.  *Pearl*, 296 F.3d at 85.[10]  Equitable estoppel is inapplicable as a matter of law.

### 3.   Plaintiffs' Untimely Claims Are Not Subject To Duress Tolling.

To toll a statute of limitations due to duress, a plaintiff must demonstrate "both threats or force by the defendant, and the submission of the plaintiff's free will to those threats."  *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995).  Neither is alleged against the Miramax defendants.  Indeed, duress tolling is *only* available if the alleged duress is "an element of the

---

[10]    Plaintiffs' suggestion that their claims should be tolled because they result from emotional and physical abuse, Compl. ¶ 180, is contrary to law.  The Second Circuit has expressly rejected the contention that the "traumatic emotional and psychiatric effect" of sexual abuse somehow saves untimely claims under equitable estoppel, as the trauma relates to the initial wrong, and is not some separate, independent wrong by defendant that "prevented the plaintiff from discovering or suing upon the initial wrong."  *Smith v. Smith*, 830 F.2d 11, 13 (2d Cir. 1987).

cause of action asserted." *Id.*; *see also Day v. Moscow*, 955 F.2d 807, 813 (2d Cir. 1992). This requirement "has been applied strictly; courts confronted by facts which might suggest to the layman that 'duress' is present have routinely refused to apply the doctrine." *Schmidt v. Bishop*, 779 F. Supp. 321, 331 (S.D.N.Y. 1991); *see also Baratta v. Kozlowski*, 464 N.Y.S.2d 803 (N.Y. App. Div. 1983) (death threat did not toll statute); *Stadtman v. Cambere*, 422 N.Y.S.2d 102, 103 (N.Y. App. Div. 1979) (threats of physical violence and loss of employment insufficient).[11]

Here, none of the state law claims asserted against the Miramax defendants includes duress as an express element. *See, e.g.*, *Thaw v. N. Shore Univ. Hosp.*, 129 A.D.3d 937, 938-39 (N.Y. App. Div. 2015) (civil assault and battery elements); *Murphy v. Am. Home Products Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983) (IIED elements); *Jason v. Krey*, 60 A.D.3d 735, 736 (N.Y. App. Div. 2009) (NIED elements); *Doe v. Alsaud*, 12 F.Supp.3d 674, 680 (S.D.N.Y. 2014) (negligent retention elements).[12] Moreover, courts specifically reject duress tolling for the claims plaintiffs assert here. *See, e.g.*, *Schmidt*, 779 F. Supp. at 331 (no duress tolling for negligent retention claim); *Overall*, 52 F.3d at 406-07 (no duress tolling for IIED claim). Duress tolling as applied to plaintiffs' state law claims thus fails as a matter of law.

Furthermore, the Second Circuit takes an even narrower view of duress tolling for RICO claims, holding it is available "only when specific threats by the defendant are used to prevent the plaintiff from commencing a lawsuit at an earlier time." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 347 (2d Cir. 1994); *see also Huckabone v. City of Jamestown*, No. 09-CV-602-A, 2014 U.S. Dist. LEXIS 115573, at *10-12 (W.D.N.Y. Aug. 19,

---

[11]    Moreover, fear that defendant *might* cause plaintiff harm is not sufficient. *See Jastrzebski v. New York*, 423 F. Supp. 669, 674 (S.D.N.Y. 1976).

[12]    Even if duress were an element of the asserted claims (and it is not), duress tolling still fails as a matter of law because plaintiffs have not alleged they were "continually subjected to tortious conduct." *Overall*, 52 F.3d at 406.

2014) (dismissing complaint as time-barred when plaintiff failed to identify specific threats by defendants which "prevented him from commencing a lawsuit based upon RICO claims during the relevant statutory period").  Accordingly, because plaintiffs failed to allege any specific threats *by the Miramax defendants* that prevented them from filing this lawsuit within the applicable statute of limitations, duress tolling is also inapplicable as a matter of law to plaintiffs' RICO claims.

In sum, each of the asserted tolling doctrines fails as a matter of law and cannot resurrect plaintiffs' time-barred claims.  The complaint against the Miramax defendants should be dismissed with prejudice.

> ### D.     <u>Each And Every Claim Against The Miramax Defendants Fails</u>.

While the Court should dismiss this complaint against the Miramax defendants because each claim is time-barred, plaintiffs likewise failed to plead any viable claims against the Miramax defendants.

> #### 1.     <u>Plaintiffs' RICO Claims Fail As A Matter Of Law</u>.[13]

Plaintiffs' RICO claims are nothing more than an attempt to recast their tort claims as racketeering offenses.  This is in plain contravention of the very purpose of the RICO statute. Courts repeatedly assert that "Congress enacted RICO 'to combat organized crime, not to provide a federal cause of action and treble damages' for personal injuries."  *Major League Baseball Props., Inc. v. Price*, 105 F. Supp. 2d 46, 49 (E.D.N.Y. 2000) (citation omitted). Indeed, this Court has recognized the "danger of [RICO] being applied to situations absurdly remote from the concerns of the statute's framers" and specifically noted that the purpose of

---

[13]     It is unclear whether plaintiffs Louisette Giess and Sarah Ann Thomas (representatives of the purported "TWC Subclass") assert RICO claims against the Miramax defendants, as they have not alleged any state law claims or made any factual allegations against them.  To the extent they are bringing RICO claims against the Miramax defendants, the Court should also dismiss their claims for the reasons stated herein.

RICO is "'the elimination of the infiltration of organized crime and racketeering into legitimate organizations operating in interstate commerce.'" *Villoldo v. BNP Paribas S.A.*, No. 15 Civ. 268, 2015 WL 13145807, at *2 (S.D.N.Y. July 21, 2015) (Hellerstein, J.) (citations omitted).

It is thus not surprising that plaintiffs' RICO claims (which simply reiterate their tort claims) are deficient, and fail for the following reasons:  (1) plaintiffs lack standing; (2) plaintiffs fail to plead each of the required elements under section 1962(c); and (3) plaintiffs fail to plead a RICO conspiracy under section 1962(d).  Each of these defects provides yet another independent reason plaintiffs' RICO claims should be dismissed.

a.      **Plaintiffs Lack Standing To Assert Their RICO Claims.**

"RICO standing is a more rigorous matter than standing under Article III;" plaintiffs must also establish:  (1) an injury to "business or property," and (2) that the injury is proximately caused by the alleged RICO activity.  *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006).  Plaintiffs fail to establish either requirement.

(1)      **Plaintiffs Have Not Sustained A RICO Injury.**

Plaintiffs lack standing because they have not suffered an injury to business or property. It is well established that the "business or property" requirement "has a restrictive significance which helps to assure that RICO is not expanded to provide a federal cause of action and treble damages to every tort plaintiff." *Makowski v. United Bhd. of Carpenters & Joiners of Am.*, No. 08 Civ. 6150, 2010 WL 3026510, at *12 (S.D.N.Y. Aug. 2, 2010).  [P]hysical, emotional or reputational harm" thus cannot be a cognizable RICO injury.  *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 458 (S.D.N.Y. 2004).

Plaintiffs attempt to circumvent this clear limitation by recasting their alleged harm as "lost employment and employment opportunities, as well as contractual and contractual opportunities," misses the mark.  Compl. ¶ 209.  This conclusory allegation does not identify a

single contractual or employment opportunity plaintiffs lost and is insufficient to plead a RICO injury. *See Doe v. Schneider*, 667 F. Supp. 2d 524, 534 (E.D. Pa. 2009) (ballerina who suffered sexual abuse lacked RICO standing for alleged loss of professional opportunities because injury was not to "business or property," but rather was "based upon the mental distress and physical injuries that negatively affected his future ballet career"); *see also Apollon Waterproofing & Restoration, Inc. v. Bergassi*, 87 F. App'x 757, 759-60 (2d Cir. 2004) (affirming dismissal of RICO claim when complaint included conclusory allegations of lost contracts and failed to identify a single contract loss during statute-of-limitations period).

Moreover, "courts regularly [hold] that a plaintiff who alleges injuries that are indefinite and unprovable does not have standing under, and cannot recover damages pursuant to, RICO." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 530 F. Supp. 2d 486, 521 (S.D.N.Y. 2007), *aff'd* 328 F. App'x 695 (2d Cir. 2009); *see also Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014) ("loss of career" is "speculative and indefinite" loss). A career in Hollywood is simply too speculative and indefinite to constitute a legally cognizable RICO loss. Plaintiffs' RICO claims should be dismissed for lack of standing, as they have not sustained a RICO injury.

### (2)     Plaintiffs' Alleged Injury Was Not Proximately Caused By The Alleged RICO Violation.

Even if plaintiffs had plead a cognizable RICO injury (and they have not), they would still lack standing because they fail to allege that the purported racketeering activity caused their alleged RICO injury. *See Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010). Proximate cause under RICO requires a "direct" relationship between the RICO injury and the predicate acts; "[a] link that is 'too remote,' 'purely contingent,' or 'indirect' is insufficient." *Id.* Here, plaintiffs fail to tie the alleged RICO injury to the asserted *predicate acts* (witness tampering, sex

trafficking or mail and wire fraud).  Rather they allege the supposed lost employment

opportunities (alleged RICO injury) were "a result of *Weinstein's* conduct" not the alleged

predicate RICO acts.  Compl. ¶ 209.  In fact, each plaintiff asserts it was Harvey Weinstein's

alleged assault that caused injury to "her property or livelihood"—the supposed lost employment

opportunities.  *Id.* at ¶¶ 12-16, 61, 83, 120.  Plaintiffs thus fail to establish causation—a

connection between the RICO injury (lost employment opportunities) and witness tampering, sex

trafficking or mail and wire fraud (the predicate acts).  This is yet another reason plaintiffs'

RICO claims should be dismissed.  *See DDR Constr. Servs., Inc. v. Siemens Indus.,* 770 F. Supp.

2d 627, 651 (S.D.N.Y. 2011) (dismissing RICO complaint when plaintiffs pleaded their alleged

damages were caused by acts other than the RICO predicate acts).[14]

      Because plaintiffs cannot establish either element of RICO standing, their RICO claims

should be dismissed with prejudice.  *See Hoatson v. New York Archdiocese*, No. 05 Civ. 10467,

2007 WL 431098, at *6 (S.D.N.Y. Feb. 8, 2007) *aff'd,* 280 F. App'x 88 (2d Cir. 2008)

(dismissing complaint with prejudice when plaintiff lacked RICO standing).

      **b.**     **Plaintiffs' RICO Claim Under § 1962(c) Should Be Dismissed Because They Fail To Allege Requisite Elements.**

      To establish racketeering under 18 U.S.C. section 1962(c), a plaintiff must plead:  (1) a

RICO enterprise; (2) direction or control over the enterprise's affairs; and (3) a pattern of

racketeering activity.  *DeFalco v. Bernas*, 244 F.3d 286, 306, 309 (2d Cir. 2001).  These

requirements "must be established as to *each individual defendant*."  *Id.* (emphasis added); *see

also Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) ("[L]umping the defendants

---

[14]    And even if plaintiffs had alleged their purported RICO injury was caused by the predicate acts, they still would lack standing because their purported lost business opportunities could have been caused by innumerable factors other than the alleged RICO activity (*e.g.*, the competitive nature of the movie business).  RICO claims lack standing when the purported losses could have been caused "by any number of reasons unconnected" to the RICO activity.  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-58 (2006).

into collective allegations results in a failure to demonstrate the elements of § 1962(c) with respect to each defendant individually, as required.").  Plaintiffs have not adequately pled any of these elements.

### (1)  Plaintiffs Fail To Allege A RICO Enterprise.

Plaintiffs' conclusory assertion that the purported "Weinstein Sexual Enterprise" is an association-in-fact enterprise is insufficient by itself to establish a RICO enterprise for a number of reasons.  Compl. ¶ 194.  First, plaintiffs fail to plead the purported enterprise's hierarchy, structure, and activities to establish that its members functioned as a continuing unit.  *Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 474 (S.D.N.Y 2006) (Hellerstein, J.) (dismissing complaint with prejudice when plaintiff failed to plead "with *specificity* the existence of a racketeering enterprise, or its purported hierarchy, organization, continuing structure, or activities") (emphasis added and citations omitted).  In fact, plaintiffs here fail to plead anything at all as to the supposed hierarchy or structure of the alleged enterprise.  Nor do they allege how the Miramax defendants would somehow fit into this supposed enterprise.

Additionally, plaintiffs fail to allege any relationships between the Miramax defendants and the other members of the purported enterprise.  *See Boyle v. United States*, 556 U.S. 938, 946 (2009) ("[A]ssociation requires both interpersonal relationships and a common interest."); *New York v. United Parcel Serv.*, *Inc.,* No. 15-cv-1136, 2016 WL 4203547, at *3 (S.D.N.Y. Aug. 9, 2016) ("[P]laintiff must demonstrate the relationships between the various members and their roles in the purported RICO scheme.").  Aside from alleging "Miramax employed" the Weinsteins up until September 30, 2005, *see* Compl. ¶ 220, the complaint is devoid of any facts concerning the supposed relationship between the Miramax defendants, the remaining defendants, and the purported non-party members (*e.g.*, journalists, law firms, film directors and

18

agencies, and intelligence agencies) that are ostensibly members of the Weinstein Sexual

Enterprise. Such generalized and conclusory allegations are wholly insufficient. *Id.; see Moss v.*

*BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017) (granting motion to dismiss

when plaintiff failed to describe "with any specificity the personal relationships among the

various [alleged associates], let alone how those entities coordinate their activities so as to

advance a collective goal outside of their own discrete pecuniary objectives"); *Abbott Labs. v.*

*Adelphia Supply USA*, No. 15-CV-5826, 2017 U.S. Dist. LEXIS 1007, at *14-15 (E.D.N.Y. Jan.

4, 2017) (granting motion to dismiss when complaint included "nothing more than the

conclusory naming of a string of entities combined with legal conclusions").

    Moreover, plaintiffs failed to plead the "common purpose" requirement. *See United*

*Parcel Serv.*, 2016 WL 4203547, at *3 ("[I]ndividuals that [compose] the enterprise 'must share

a common purpose to engage in a particular fraudulent course of conduct and work together to

achieve such purposes.'") (citation omitted). The Second Circuit has made clear that this

common purpose must be *fraudulent* and that plaintiffs must detail a "*course* of fraudulent or

illegal conduct separate and distinct from the alleged predicate racketeering acts themselves[.]"

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (emphasis in

original). Here, plaintiffs' allegations regarding the purported common purpose of the enterprise

rely on impermissible group pleading, do not detail a course of fraudulent conduct separate from

the alleged predicate acts, and, most importantly, have no link whatsoever to the Miramax

defendants. *See, e.g.*, Compl. ¶ 195. This failure to plead a fraudulent common purpose—or a

single fact showing that any of the Miramax defendants shared this purported purpose—requires

dismissal of plaintiffs' RICO claims.

    Finally, even if the alleged enterprise was somehow considered one functioning unit (and

clearly it is not), plaintiffs' RICO claim would still fail as a matter of law because the enterprise

is not separate and distinct from the purported racketeering activity.  *See United States v.*

*Turkette*, 452 U.S. 576, 583 (1981) (enterprise must be "an entity separate and apart from the

pattern of activity in which it engages").  The Court must "consider whether the enterprise would

still exist were the predicate acts removed from the equation."  *Mackin*, 59 F. Supp. 3d at 544.

Here, it clearly would not.  Plaintiffs even provide that "The Weinstein Sexual Enterprise was

created and used as a tool to effectuate Defendants' pattern of racketeering activity."  Compl. ¶

194.  Plaintiffs therefore have admittedly not plead a RICO enterprise, and their claim should be

dismissed.  *See Hoatson*, 2007 WL 431098, at *10.

### (2)     Plaintiffs Have Not Sufficiently Alleged That The Miramax Defendants Directed The Enterprise's Affairs.

To survive a motion to dismiss, plaintiffs must allege the "conduct" element:  that each

defendant "participate[d] in the operation or management" of the purported enterprise.  *Reves v.*

*Ernst & Young*, 507 U.S. 170, 179, 184 (1993).  In the Second Circuit, "the operation and

management test is an extremely rigorous test" and the relevant analysis is whether any of the

Miramax defendants directed the affairs of the enterprise.  *United States Fire Ins. Co. v. United*

*Limousine Serv., Inc.,* 303 F. Supp. 2d 432, 451 (S.D.N.Y. 2004) (citations and internal quotation

marks omitted).  Plaintiffs' broad assertions that "Defendants have conducted and participated in

the affairs of the Weinstein Sexual Enterprise," Compl. ¶ 196, and that "Defendants exerted

control over the Weinstein Sexual Enterprise," *id.* at ¶ 198, fall far short of satisfying this

"extremely rigorous test," *United States Fire Ins.,* 303 F. Supp. 2d at 451*; Cf. Jones*, 409 F.

Supp. 2d at 473 (conclusory allegations insufficient to survive a motion to dismiss RICO claims,

"especially given the 'inevitable stigmatizing effect' a RICO claifm can have on a defendant[.]")

Further, the complaint's sole allegation regarding the Miramax defendants—that

"Miramax . . . allowed Weinstein to conduct business at their offices, were aware of his misconduct and agreed to conceal it so that they could continue to benefit from their lucrative collaborations with Weinstein," Compl. ¶ 143,—in no way establishes that any of the Miramax defendants "exerted control" over the alleged enterprise's affairs.  At most, plaintiffs' allegation amounts to nothing more than mere assistance, which the Supreme Court has expressly held is insufficient to state a section 1962(c) RICO claim.  *See Reves*, 507 U.S. at 186 (aiding and abetting racketeering, including failure to disclose another's fraudulent activity, not sufficient to trigger 1962(c) liability); *see also United States v. Viola*, 35 F.3d 37, 41 (2d Cir. 1994), *abrogated on other grounds by Salinas v. United States*, 522 U.S. 52 (1997) ("Since *Reves*, it is plain that the simple taking of directions and performance of tasks that are 'necessary or helpful' to the enterprise, without more, is insufficient to bring a defendant within the scope of § 1962(c).").  Plaintiffs' RICO claim therefore should be dismissed on this basis as well.  *See e.g., Redtail Leasing, Inc. v. Bellezza*, No. 95 Civ. 5191, 1997 WL 603496, at *5 (S.D.N.Y. Sept. 30, 1997) (dismissing RICO claim when complaint alleged defendants participated in enterprise's affairs but was "devoid of allegations suggesting" they directed enterprise's affairs).[15]

### (3)   <u>Plaintiffs Have Not Alleged A Single RICO Predicate Act, Let Alone The Required Pattern Of Racketeering</u>.

Plaintiffs fail to plead that *each* Miramax defendant committed at least two RICO predicate acts to establish a pattern of racketeering activity.  *See* 18 U.S.C. § 1961(5); *see also Int'l Bhd. of Teamsters v. Carey*, 163 F. Supp. 2d 271, 280-81 (S.D.N.Y. 2001) ("[C]ourts focus solely on the predicate acts of racketeering each defendant is alleged to have committed.").

---

[15]   Plaintiffs' conclusory allegations fail for the additional reason that they do not establish that the Miramax defendants acted to further the purported enterprise's affairs, rather than their own business affairs.  *See Reves*, 507 U.S. at 185 (RICO liability requires a "showing that the defendants conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs") (emphasis in original); *see also Gross*, 628 F. Supp. 2d at 498 (defendants who "engage in predicate offenses in furtherance of the defendants' own affairs or purposes, as opposed to the affairs or purposes of their common 'enterprise,' would fail to satisfy the requirements of RICO.").

First, plaintiffs fail to establish that each Miramax defendant committed mail or wire fraud.[16]  This Court has held that mail and wire fraud predicate acts must satisfy the particularity requirement of Rule 9(b).  *See Chamberlin v. Hartford Fin. Servs. Inc.*, No. 05 Civ. 2650, 2005 WL 2007894, at *3 (S.D.N.Y. Aug. 19, 2005) (Hellerstein, J.).  Thus, plaintiffs must plead with specificity:  (1) statements they believe were fraudulent, (2) the speaker, (3) where and when they were made, (4) why plaintiffs believe the statements are fraudulent, and (5) particular facts that give rise to a strong inference of fraudulent intent.  *Jones*, 409 F. Supp. 2d at 465 (citations omitted).  Here, plaintiffs fail to allege *any* statement made by any of the Miramax defendants that was supposedly false, why they believe the supposed misrepresentation was fraudulent, or that it was made with intent to defraud plaintiffs.  Plaintiffs' threadbare recitations that once again group all defendants together, *see* Compl. ¶¶ 201-205, and a single passing reference to purported "[w]ires among the Complicit Producers about Weinstein's sexual misconduct" are plainly insufficient.  *See Chamberlin*, 2005 WL 2007894, at *3-4 (dismissing RICO claim with prejudice for failing to allege facts sufficient to constitute mail and wire fraud predicate acts when complaint only included general allegations against many defendants and did not provide "examples of specific fraudulent behavior").

Second, plaintiffs' witness tampering predicate act fails because they do not allege that the Miramax defendants attempted to tamper with plaintiffs, or anyone else for that matter.  *See* Compl. ¶¶ 148-167, 196.  Moreover, the alleged witness tampering must occur in a *federal proceeding*.  *See* 18 U.S.C. § 1512.  Plaintiffs' complete failure to identify a single federal proceeding interfered with by the Miramax defendants also mandates dismissal of plaintiffs' RICO claim.  *See Miller v. Carpinello*, No. 06 CV 12940, 2007 WL 4207282, at *7 & n.6

---

[16]     To establish mail or wire fraud, plaintiffs must prove:  (1) a scheme to defraud, (2) money or property is the object of the scheme, and (3) use of the mails or wires in furtherance of the scheme.  *See Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004).

(S.D.N.Y. Nov. 20, 2007) (dismissing RICO claim with prejudice when plaintiff failed to allege any pending federal proceeding or that defendants hindered communication of information to any law enforcement official or federal judge relating to any federal offense).

Third, plaintiffs' passing reference to 18 U.S.C. sections 1590 and 1591 as predicate acts, *see* Compl. ¶ 196, demonstrates yet another misunderstanding of RICO and its application. These statutes did not become RICO predicate offenses until 2003—well after any alleged incident against the Miramax defendants—and thus cannot form the basis of plaintiffs' RICO claim. *See* Pub. L. No. 108-193; *see also Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 624-25 (6th Cir. 2001) (RICO predicate act cannot apply retroactively to conduct that occurred before predicate act was added to list of actionable racketeering activity).

Accordingly, because plaintiffs fail to plead a single RICO predicate act, they cannot establish a pattern of racketeering activity. Plaintiffs' RICO claim under section 1962(c) therefore should be dismissed. *See Jones*, 409 F. Supp. 2d at 474 (dismissing RICO claim for failure to specifically plead pattern of racketeering or predicate acts).

### c.    **Plaintiffs' RICO Conspiracy Claim Fails As A Matter Of Law.**

It is axiomatic that plaintiffs' RICO conspiracy claim cannot survive without an underlying RICO violation. *See First Capital Asset Mgmt.*, 385 F.3d at 182 (RICO conspiracy claim fails when the complaint does "not adequately allege a substantive violation of RICO") Because plaintiffs fail to state a RICO claim under section 1962(c), their RICO conspiracy claim likewise fails.

Additionally, plaintiffs' RICO conspiracy claim fails because they have not pled the "specific factual allegations" that each of the Miramax defendants knew about and agreed to "facilitate the goals" of the conspiracy. *See Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 540 (S.D.N.Y. 2001) (RICO conspiracy requires allegations that "*each*

23

*defendant*, by words or actions, manifested an agreement to commit two predicate acts in furtherance of the common purpose of a RICO enterprise") (emphasis added).  Plaintiffs' conclusory allegations that assert all 15 defendants' acts "in furtherance of the conspiracy gives rise to an inference" that they all agreed to facilitate the goals of the conspiracy is plainly insufficient.  *Compare* Compl. ¶¶ 215-216 with *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 354 (S.D.N.Y. 1998) ("Plaintiff must plead facts sufficient to show that each defendant knowingly agreed to participate in the conspiracy.") (citation omitted).  Accordingly, the Court should dismiss plaintiffs' RICO conspiracy claim.

### 2.    Plaintiffs' State Law Claims Fail As A Matter Of Law.

#### a.    Plaintiffs' Claims Based On *Respondeat Superior* Each Fail.

Putting aside plaintiffs' failure to even allege which Miramax defendant supposedly employed Harvey Weinstein[17] —which itself provides yet another ground for dismissal, each state law claim (civil battery, assault, IIED, and NIED) also fails as a matter of law because courts consistently hold that sexual misconduct understandably falls outside the scope of employment and cannot be the basis for *respondeat superior* liability.[18]  "Sexual assault by an employee is a clear departure from the scope of employment, committed solely for personal reasons, and unrelated to the furtherance of the employer's business."  *Woods v. CVS,* No. 13

---

[17]    Plaintiffs' claims premised on an employment relationship between Harvey Weinstein and Miramax, LLC necessarily fail because Miramax, LLC was not even formed until October 31, 2011—more than a decade after Weinstein's alleged conduct and more than six years after plaintiffs concede Harvey Weinstein left Miramax.  Thus, it cannot be liable for his alleged tortious conduct, for negligent supervision, or for ratification.  *See* RJN Ex. D; *see also Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007) ("key element" of *respondeat superior* is an "employment relationship"); Restatement (Third) of Agency § 4.04 TD No 3 (2002) (ratification requires that the corporation "existed at the time of the act").

[18]    Plaintiffs' NIED claim fails for the additional reason that the Miramax defendants did not owe a specific special duty to plaintiffs, nor have plaintiffs alleged one.  *Abdullajeva v. Club Quarters, Inc.*, No. 96 CIV. 0383, 1996 WL 497029, at *9 (S.D.N.Y. Sept. 3, 1996) (dismissing NIED claim based on employee's alleged sexual assault when plaintiffs failed to specify a "special duty" owed to them).

Civ. 611, 2013 WL 1736587, at *2 (S.D.N.Y. April 19, 2013) (refusing to find corporation

vicariously liable for employee's sexual assault); *see also Doe v. City of New York*, No. 09 Civ.

9895, 2013 WL 796014, at *4 (S.D.N.Y. Mar. 4, 2013) ("As a matter of law sexual misconduct

cannot give rise to vicarious liability"); *Alsaud,* 12 F. Supp. 3d at 677 ("No decision in New

York has been cited to date in which the doctrine of respondeat superior was held to apply to

sexual assault.").

Each of plaintiffs' claims is premised on "unwanted sexual conduct" (Compl. ¶ 1) that

occurred almost exclusively at Harvey Weinstein's apartment or in hotel rooms (*id.* at ¶¶ 12-13,

15).  These alleged assaults occurred outside the scope of Harvey Weinstein's employment as a

matter of law because they were committed due to his personal demons, not to somehow further

the business of the Miramax defendants.  *See Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522,

531 (S.D.N.Y. 1998) ("New York courts consistently have held that sexual misconduct and

related tortious behavior arise from personal motives and do not further an employer's business,

even when committed within the employment context.").  Plaintiffs even concede that the

alleged misconduct was committed for personal motives—"Weinstein's predatory behavior

followed a pattern *designed for his personal gratification*."  Compl. at p. 12, Heading IV.B.

(emphasis added).  Plaintiffs' claims based on *respondeat superior* liability thus fail and should

be dismissed.  *See Mary KK v. Jack LL*, 203 A.D.2d 840, 841 (N.Y. App. Div. 1994) (teacher's

sexual assault of student on *school property during school hours* was "clearly outside the scope

of teacher's employment as they were wholly personal in nature and certainly not done in the

furtherance of the District's business") (emphasis added).[19]

---

[19]     Even if plaintiffs contend the Miramax defendants somehow had knowledge of prior incidents, this still
cannot establish *respondeat superior* liability.  *See Alsaud*, 12 F. Supp. 3d at 678 (granting motion to dismiss and
concluding that even if employer had direct knowledge of prior sexual misconduct, it still would not give rise to
*respondeat superior* liability when the misconduct is not part of any actual responsibility employee owes to

b. **<u>Plaintiffs' Negligent Supervision And Retention Claim Fails</u>**.

In addition to the standard elements for negligence, negligent supervision and retention also requires that plaintiffs plead:  (1) defendant and tort-feasor were in an employee-employer relationship; (2) employer knew or should have known of employee's propensity for the conduct that caused the injury prior to the injury's occurrence; and (3) the tort was committed on employer's premises or with its chattels.  *Alsaud*, 12 F. Supp. 3d at 680.  Plaintiffs have not plead any of these requirements.

First, as noted above, plaintiffs fail to plead which Miramax defendants employed Harvey Weinstein.  Compl. ¶ 220.  Additionally, as also noted above, because plaintiffs admit that Harvey Weinstein left "Miramax" on September 30, 2005 (*id.* at ¶¶ 37, 220), Miramax, LLC— formed in 2011—could not have had the requisite employer-employee relationship to warrant liability.  *See generally Coleman & Co. Sec., Inc. v. Giaquinto Family Trust*, 236 F. Supp. 2d 288, 304 (S.D.N.Y. 2002); *see also supra* n.17.

Second, plaintiffs' conclusory allegations that "Miramax" knew or should have known that Harvey Weinstein posed a "particular risk of harassing and assaulting [women]," Compl. ¶ 222, and had "actual knowledge of Weinstein's repeated acts of sexual misconduct with women going back to the 1990s," *id.* at ¶¶ 135-136, are inadequate and cannot establish the Miramax defendants' knowledge.  Plaintiffs have not alleged "a single prior act or allegation of sexual misconduct" committed by Harvey Weinstein that put the Miramax defendants on notice of his alleged propensity to engage in sexual assault *before* plaintiffs' alleged incidents.  Compl. ¶¶ 48-58, 71-82, 84-94; *see Alsaud,* 12 F. Supp. 3d at 680 ("New York courts have held in sexual misconduct cases that an employer is only liable for negligent supervision or retention if it is

---

employer); *see also Ross*, 2 F. Supp. 2d at 527, 531 (granting motion to dismiss even when plaintiff informed employer of sexual assaults and employee had pending sexual harassment lawsuits).

aware of *specific* prior acts or allegations against the employee.") (emphasis added). Thus, without alleging any known specific prior acts, plaintiffs' assertion regarding the Miramax defendants' purported "knowledge" is nothing more than conclusory, and plaintiffs' negligent supervision and retention claim should be dismissed. *See Cruz v. New York*, 24 F. Supp. 3d 299, 311 (W.D.N.Y. 2014) (dismissing negligent retention claim when plaintiff's allegation that defendants knew or should have known of employee's dangerous propensities was "conclusory and unsupported by any factual allegations supporting his assertion"); *see also Alsaud*, 12 F. Supp. 3d at 680 (granting motion to dismiss negligent supervision claim when plaintiff failed to allege "a single prior act or allegation of sexual misconduct committed by [employee]").

Third, negligent supervision requires that the tort was "committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Here, plaintiffs Kendall, Brock, and Sagemiller all admit the alleged incidents did not occur on the Miramax defendants' premises. *See* Compl. ¶ 12 (Harvey Weinstein's apartment); ¶ 13 (Harvey Weinstein's hotel room); ¶ 15 (Harvey Weinstein's hotel room). And while plaintiff Klatt alleges that she auditioned at a building where a Miramax office was located, she does not allege an incident that occurred on the Miramax defendants' premises, as she specifically alleges that the assault took place in Harvey Weinstein's "private office on another floor." *Id.* at ¶ 115. As such, these plaintiffs cannot assert a negligent supervision claim. *Alsaud*, 12 F. Supp. 3d at 681 (dismissing claim when sexual misconduct occurred at a hotel, not on defendant's premises or with its chattels); *see also Haybeck v. Prodigy Servs. Co.*, 944 F. Supp. 326, 332 (S.D.N.Y. 1996) (dismissing claim when conduct took place outside employer's premises and without its chattels).[20]

---

[20]    If the Court should somehow conclude that Harvey Weinstein was somehow acting within the scope of his employment, then plaintiffs' negligent supervision and retention claim must be dismissed. *See Barnville v. Mimosa*

c.       <u>**Plaintiffs' Claim For Ratification Fails**</u>.

Plaintiffs' assertion that "All acts or omissions alleged for the period before September 30, 2005 were ratified by Miramax" is also wholly conclusory and fails to plead the requirements for ratification. *See Jones*, 409 F. Supp. 2d at 470 ("A plaintiff cannot survive a motion to dismiss simply by stating legal conclusions as if they were facts."). First, plaintiffs do not plead that the alleged incidents were performed on behalf of the Miramax defendants. *See Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 232 (N.Y. App. Div. 1982) ("The law is clear that only an act done on another's behalf may be ratified."); *see also Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 257-58 (S.D.N.Y. 2014) (granting motion to dismiss when conduct did not give rise to plausible inference agent was acting for alleged ratifier). Nor could they. There is simply no basis to conclude Harvey Weinstein was somehow acting on behalf of the Miramax defendants when he committed the alleged assaults. After all, as plaintiffs concede, such conduct was for his "personal gratification." Compl. at p. 12, Heading IV.B.

Second, the complaint fails to plead factual allegations to show the Miramax defendants had full and complete knowledge of the material facts surrounding Harvey Weinstein's alleged misconduct. *See Holm*, 89 A.D.2d at 233 (ratification "must be performed with full knowledge of the material facts relating to the transaction, and the assent must be clearly established and may not be inferred from doubtful or equivocal acts or language") (internal quotation marks omitted). Here, plaintiffs' bare assertion that the Miramax defendants "knew of the acts and omissions" and "refused to take any action" falls short. Compl. ¶ 292. In fact, plaintiffs have not alleged a single specific act that the Miramax defendants purportedly ratified, let alone that they had full knowledge of the material facts and ratified such conduct with clear assent. Plaintiffs'

---

*Cafe*, No. 14-CV-518, 2014 WL 3582878, at *2 (S.D.N.Y. July 10, 2014) (when employee acts within the scope of his or her employment, the employer cannot be liable for a negligent supervision and retention claim).

ratification claim fails.

## IV.   **CONCLUSION**.

For the reasons stated above, the Miramax defendants respectfully request that the Court

dismiss plaintiffs' complaint against the Miramax defendants with prejudice.


                                    Respectfully Submitted,

Dated:  February 20, 2018           LATHAM & WATKINS LLP
        Los Angeles, California
                                    By:     /s/ Marvin S. Putnam
                                            Marvin S. Putnam
                                            Laura R. Washington (*pro hac vice* pending)
                                            10250 Constellation Blvd, Suite 1100
                                            Los Angeles, California 90067
                                            Telephone: 424.653.5500
                                            Email: marvin.putnam@lw.com
                                                   laura.washington@lw.com

                                            *Attorneys for defendants*
                                            *Miramax, LLC, Miramax Film Corp., and*
                                            *Miramax Film NY, LLC*

29