UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LOUISETTE GEISS, KATHERINE
KENDALL, ZOE BROCK, SARAH ANN
THOMAS (a/k/a SARAH ANN MASSE),
MELISSA SAGEMILLER, and NANNETTE
KLATT, individually and on behalf of all others
similarly situated,

Plaintiffs,

- against -

THE WEINSTEIN COMPANY HOLDINGS,
LLC, MIRAMAX, LLC, MIRAMAX FILM
CORP., MIRAMAX FILM NY LLC, HARVEY
WEINSTEIN, ROBERT WEINSTEIN, DIRK
ZIFF, TIM SARNOFF, MARC LASRY,
TARAK BEN AMMAR, LANCE MAEROV,
RICHARD KOENIGSBERG, PAUL TUDOR
JONES, JEFF SACKMAN, JAMES DOLAN,
MIRAMAX DOES 1-10, and JOHN DOES 1 –
50, inclusive,

Defendants.

1:17-cv-09554-AKH

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT LANCE MAEROV'S MOTION TO DISMISS COUNTS I, II, IV AND XIV OF THE COMPLAINT

Fried, Frank, Harris, Shriver & Jacobson LLP
One New York Plaza
New York, New York 10004
(212) 859-8000

*Attorneys for Defendant Lance Maerov*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ............................................................................................ 1

SUMMARY OF ALLEGATIONS ......................................................................................... 4

ARGUMENT .......................................................................................................................... 5

I.     STANDARD OF REVIEW ......................................................................................... 5

II.    THE COMPLAINT FAILS TO ALLEGE A RICO VIOLATION (COUNT I) ................ 5

    A.    The Complaint Fails to Allege That Mr. Maerov Committed Any
          Predicate Acts ..................................................................................................... 6

          1.    Allegation of Witness Tampering Fails ............................................ 7

          2.    Allegation of Commercial Sex Trafficking Fails............................. 7

          3.    Allegation of Mail and Wire Fraud Fails ......................................... 8

    B.    The Complaint Fails to Allege a Pattern of Racketeering ............................. 9

    C.    The Complaint Fails to Allege the Existence of a RICO Enterprise ............................. 9

    D.    The Complaint Fails to Allege That Mr. Maerov Participated in the
          Operation of a RICO Enterprise .................................................................. 13

III.   THE COMPLAINT FAILS TO ALLEGE THAT MR. MAEROV
      CONSPIRED TO VIOLATE RICO (COUNT II) ......................................................... 14

IV.   THE COMPLAINT FAILS TO ALLEGE THAT PLAINTIFFS HAVE
      STANDING TO PURSUE A CIVIL RICO CLAIM (COUNTS I & II) ......................... 15

    A.    The Complaint Does Not Allege A Cognizable RICO Injury ..................... 15

    B.    Alleged Injuries Not Proximately Caused By Alleged Racketeering Activity ........... 17

V.    THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT
      SUPERVISION AND RETENTION AGAINST MR. MAEROV (COUNT IV) .......... 18

Page

A. The Complaint Fails to Allege a Duty of Care ............................................19

B. The Complaint Fails to Allege Mr. Maerov Employed Harvey Weinstein ................20

C. The Complaint Fails to Allege Mr. Maerov Knew or Should Have Known About Weinstein's Propensity for Sexual Misconduct ................................21

D. The Complaint Fails to Allege Injury Occurred on Mr. Maerov's or TWC's Premises ................................................................................23

E. The Complaint Fails to Allege Causation ....................................................24

VI. THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION AGAINST MR. MAEROV (COUNT XIV) ..................................................25

VII. PLAINTIFFS' CLAIMS AGAINST MR. MAEROV ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS ........................................27

A. Plaintiffs' Civil RICO Claims (Counts I & II) Are Time-Barred ................27

B. Plaintiffs' State Law Claims Against Mr. Maerov (Counts IV & XIV) Are Time-Barred ..............................................................................28

C. Plaintiffs' Time-Barred Claims Are Not Saved by Any Tolling Doctrine .................28

1. Continuing Violations Doctrine Inapplicable ................................29

2. Equitable Estoppel Inapplicable ..................................................29

3. Duress Inapplicable ......................................................................29

VIII. THE COMPLAINT DOES NOT SEEK RELIEF FROM MR. MAEROV ..................30

IX. THE CLASS CLAIMS SHOULD BE DISMISSED ................................................30

CONCLUSION ..........................................................................................................31

# TABLE OF AUTHORITIES

**Page(s)**

*Allen v. New World Coffee, Inc.*,
    No. 00 CV 2610, 2001 WL 293683 (S.D.N.Y. March 27, 2001) ............................................ 14

*Anderson v. Adam's Mark Hotels & Resorts*,
    No. 99-1100, 2000 U.S. App. LEXIS 6949 (10th Cir. Apr. 18, 2000) ................................... 24

*Anza v. Ideal Steel Supply Corp.*,
    547 U.S. 451 (2006) ............................................................................................................... 18

*Apollon Waterproofing & Restoration, Inc. v. Bergassi*,
    87 F. App'x, 757 (2d Cir. 2004) ............................................................................................. 16

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ............................................................................................................ 5, 25

*Azrielli v. Cohen Law Offices*,
    21 F.3d 512 (2d Cir. 1994) ..................................................................................................... 13

*Bailey v. Synthes*,
    295 F. Supp. 2d 344 (S.D.N.Y. 2003) .................................................................................... 29

*Baiul v. William Morris Agency, LLC*, No. 13 CV 8683, 2014 U.S. Dist. LEXIS
    62633 (S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d Cir. 2015) ................................ 27

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
    758 F. Supp. 1522 (S.D.N.Y. 1991) ....................................................................................... 25

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................................. 5

*Belmont v. MB Inv. Partners Inc.*,
    708 F.3d 470 (3d Cir. 2013) .................................................................................................... 19

*Bigio v. Coca-Cola* Co.,
    675 F.3d 163 (2d Cir. 2012) .................................................................................................... 25

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
    69 F. Supp. 3d 342 (S.D.N.Y. 2014) ........................................................................................ 9

*Carte Blanche (Singapore) PTE, Ltd v. Diners Club Int'l Inc.*,
    758 F. Supp. 908 (S.D.N.Y. 1991) ......................................................................................... 26

*Cedar Swamp Holdings, Inc. v. Zaman*,
    487 F. Supp. 2d 444 (S.D.N.Y. 2007) ............................................................................... 11, 12

Page(s)

*Chandradat v. Navillus Tile*,
  No. 03 CV 10093, 2004 WL 2186562 (S.D.N.Y. Sept. 28, 2004) ....................................17, 18

*In re Citigroup Auction Rate Sec. Litig.*,
  700 F. Supp. 2d 294 (S.D.N.Y. 2009)...................................................................................31

*Cofacredit, S.A. v. Windsor Plumbing Supply*,
  187 F.3d 229 (2d Cir. 1999)......................................................................................................9

*Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*,
  271 F.3d 374 (2d Cir. 2001)....................................................................................................15

*Conte v. Newsday, Inc.*,
  703 F. Supp. 2d 126 (E.D.N.Y. 2010) ............................................................................13 n.4

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
  No. 11 CV 7801, 2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) .....................................10, 11

*Corrado v. N.Y. Unified Court Sys.*,
  163 F. Supp. 3d 1 (E.D.N.Y. 2016) .......................................................................................29

*Davis v. Carroll*,
  937. F. Supp. 2d 390 (S.D.N.Y. 2013)....................................................................................26

*DDR Constr. Servs., Inc. v. Siemens Indust., Inc.*,
  770 F. Supp. 2d 627 (SDNY 2011).........................................................................................18

*DeFalco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)..................................................................................................5, 6

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006)....................................................................................................15

*Derbaremdiker v. Applebee's Int'l, Inc.*,
  No. 12 CV 1058, 2012 U.S. Dist. LEXIS 138596 (E.D.N.Y. Sept. 26, 2012) .....................30

*DLJ Mortg. Capital, Inc. v. Kontogiannis*,
  594 F. Supp. 2d 308 (E.D.N.Y. 2009) ......................................................................................6

*Doe v. Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014)..............................................................19, 22, 23 n.9, 24

*Doe v. City of New York*,
  No. 09 CV 9895, 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013)............................21

*Doe v. Jacobs*,
  19 A.D.3d 641 (2d Dep't 2005) .....................................................................................28 n.10

**Page(s)**

*Doe 1 v. Bd. of Educ. of Greenport Union Free School Dist.*,
   955 N.Y.S. 2d. 600 (2d Dep't 2012) ..........................................................................23

*D. Penguin Bros. v. City Nat. Bank*,
   587 F. App'x 663 (2d Cir. 2014) ...................................................................11, 12

*Dunahoo v. Hewlett-Packard Co.*,
   No. 11 CV 5588, 2012 U.S. Dist. LEXIS 7717 (S.D.N.Y. Jan. 20, 2012) ..............19

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004) ...........................................................................19, 21, 23

*Elavon, Inc. v. Ne. Advance Techs., Inc.*,
   No. 15 CV 7985, 2017 WL 4876300 (S.D.N.Y. Oct. 27, 2017) ................................11

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) .....................................................................10, 13, 14

*Fountain v. United States*,
   57 F.3d 250 (2d Cir. 2004) ................................................................................8

*Gilfus v. Vargason*,
   No. 04 CV 1379, 2006 WL 2827658 (N.D.N.Y. Sept. 30, 2006) ............................17

*Grant v. N.Y. Times Co.*,
   No. 16 CV 3175, 2017 U.S. Dist. LEXIS 149403 (S.D.N.Y. Sept. 14, 2017) ..........30

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) ...................................................... 6 & n.3

*Hall v. Tressic*,
   381 F. Supp. 2d 101 (N.D.N.Y. 2005) ..................................................................17

*Hecht v. Commerce Clearing House*,
   897 F.2d 21 (2d Cir.1990) .....................................................................................17

*Hemi Grp., LLC v. City of New York*,
   559 U.S. 1 (2010) ...................................................................................................17

*Hoatson v. New York Archdiocese*,
   No. 05 CIV 10467 PAC, 2007 WL 431098 (S.D.N.Y. Feb. 8, 2007), *aff'd*,
   280 F. App'x 88 (2d Cir. 2008) ...................................................................8, 9, 13

*Hollander v. Flash Dancers Topless Club*,
   340 F. Supp. 2d 453 (S.D.N.Y. 2004), *aff'd*, 173 F. App'x 15 (2d Cir. 2006) ..........16

**Page(s)**

*Holm v. C.M.P. Sheet Metal, Inc.*,
  89 A.D.2d 229 (4th Dep't 1982) ........................................................................26

*Holmes v. Secs. Investor Protection Corp.*,
  503 U.S. 258 (1992)......................................................................................15, 17

*Jerome M. Sabel & Co. v. Fleck*, No. 03 CV 1041,
  2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. Dec. 1, 2003) .......................................6

*Jones v. Nat'l Commc'n and Surveillance Networks*,
  409 F. Supp. 2d 456 (S.D.N.Y. 2006)................................................................10

*Langford v. Roman Catholic Diocese of Brooklyn*,
  271 A.D.2d 494 (2d Dep't 2000) ................................................................28 n.10

*Le Paw v. BAT Indus. P.L.C.*,
  No. 96 CV 4373, 1997 WL 242132 (EDNY Mar. 6, 1997) ..................................17

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*,
  No. 14 CV 1299, 2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014) ...........................16

*Mackin v. Auberger*,
  59 F. Supp. 3d 528 (W.D.N.Y. 2014)..................................................................16

*Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*,
  156 F. Supp. 2d 376 (S.D.N.Y. 2001)................................................................12

*McLaughlin v. Andersen*,
  962 F.2d 187 (2d Cir. 1992)................................................................................5

*Merrill Lynch, Pierce, Fenner, & Sminth, Inc. v. Young*,
  No. 91 CV 2923, 1994 WL 88129 (S.D.N.Y. Mar. 14, 1994)................................8

*Miller v. Carpinello*,
  No. 06 CV 12940, 2007 WL 4207282 (S.D.N.Y. Nov. 20, 2007) .....................7, 17

*Moore v. Guesno*,
  485 F. Supp. 2d 300 (W.D.N.Y. 2007), *aff'd*, 301 F. App'x 17 (2d Cir. 2008) ....................18

*Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*,
  No. 15 CV 293, 2017 WL 570929 (S.D.N.Y. Feb. 13, 2017) ...............................12

*Moss v. Morgan Stanley, Inc.*,
  719 F.2d 5 (2d Cir. 1983)....................................................................................5

*Nasik Breeding & Research Farm Ltd. v. Merck & Co. Inc.*,
  165 F. Supp. 2d 514 (S.D.N.Y. 2011)............................................................14, 15

**Page(s)**

*Nat'l Grp. for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*,
    420 F. Supp. 2d 253 (S.D.N.Y. 2006)....................................................................12

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Archway, Ins. Servs., LLC*,
    No. 11 CV 1134, 2012 WL 1142285 (S.D.N.Y. Mar. 23, 2012)..............................8

*Naughright v. Robbins*,
    No. 10 CV 8451, 2014 U.S. Dist. LEXIS 148497 (S.D.N.Y. Oct. 17, 2014)...................20, 24

*Norlin Corp. v. Rooney, Pace Inc.*,
    744 F.2d 255 (2d Cir. 1984)........................................................................19, 20

*O'Brien v. Spitzer*,
    851 N.E.2d 1195 (N.Y. 2006) ........................................................................21

*Overall v. Estate of Klotz*,
    52 F.3d 398 (2d Cir. 1995)........................................................................29, 30

*Plant v. Deutsche Bank Sec., Inc.*,
    No. 07 CIV 3498, 2007 WL 2187109 (S.D.N.Y. Jul. 23, 2007) ...........................29

*In re Platinum & Palladium Commodities Litig.*,
    828 F. Supp. 2d 588 (S.D.N.Y. 2011)................................................................6

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
    33 F. Supp. 3d 245 (S.D.N.Y. 2014)................................................................25

*Roitman v. New York City Transit Auth.*,
    704 F. Supp. 346 (E.D.N.Y. 1989) ................................................................16

*Saldana v. Village of Port Chester*,
    No. 09 CV 6268, 2010 U.S. Dist. LEXIS 142099 (S.D.N.Y. July 21, 2010)...................19, 24

*Schmidt v. Bishop*,
    779 F. Supp. 321 (S.D.N.Y. 1991) ........................................................12, 13, 30

*Sedima, S.P.R.L. v. Imrex Co.*,
    473 U.S. 479 (1985)........................................................................15

*Tserotas v. Greek Orthodox Archdiocese of N. & S. Am.*,
    251 A.D.2d 323 (2d Dep't 1998) ................................................................28 n.10

*United States v. Turkette*,
    452 U.S. 576 (1981)........................................................................12

**Page(s)**

*Universitas Educ., LLC v. T.D. Bank, N.A.*, No. 15 CV 5643,
   2015 U.S. Dist. LEXIS 170264 (S.D.N.Y. Dec. 21, 2015) ....................................................28

*Wilson v. Wilson-Polson*,
   No. 09 CV 9810, 2010 U.S. Dist. LEXIS 100425 (S.D.N.Y. Sept. 22, 2010) ........................30

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
   No. 14 CV 7349, 2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016)......................................13 n.4

**Statutes**

18 U.S.C. § 1341 ................................................................................................................................6

18 U.S.C. § 1343 ................................................................................................................................6

18 U.S.C. § 1512 ...........................................................................................................................6, 7

18 U.S.C. § 1590 ...........................................................................................................................6, 7

18 U.S.C. § 1591 ...........................................................................................................................6, 7

18 U.S.C. § 1962(d) ................................................................................................................2, 4, 14

18 U.S.C. § 1962(c) ................................................................................................................. *passim*

18 U.S.C. § 1964(c) ..........................................................................................................................5

Racketeer Influenced and Corrupt Organization Act............................................................ *passim*

**Rules**

Fed. R. Civ. P. 8(a)(3) ....................................................................................................................30

Fed. R. Civ. P. 9(b) ..................................................................................................................1, 5, 6

Fed. R. Civ. P. 12(b)(6)........................................................................................................1, 5, 6 n.3

Mr. Lance Maerov respectfully submits this memorandum of law in support of his motion to dismiss all counts of the Complaint against him (Counts I, II, IV, and XIV) in their entirety and with prejudice pursuant to Rules 12(b)(6) and Rule 9(b) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The six individually named plaintiffs in this putative class action lawsuit assert that fifteen defendants – and dozens of additional as-of-yet unnamed co-conspirators – are liable for the alleged sexual assaults committed by Harvey Weinstein during the 25-year period from 1993 to 2008.  Notwithstanding that Mr. Maerov did not become a member of the Board of The Weinstein Company ("TWC") until 2013, a full five years *after* the last of those assaults are alleged to have occurred, the complaint indiscriminately lumps Mr. Maerov together with all of the other defendants under the legally defective moniker "The Weinstein Sexual Enterprise" and asserts that these defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") (Count I) and conspired to violate RICO (Count II).  In addition, two of the named plaintiffs assert individual claims against members of TWC's current and former Board, including Mr. Maerov, for negligent supervision and retention (Count IV) and for ratification (Count XIV).

As detailed below, the complaint contains no factual allegations supporting any of these claims, and fails to plead any of the required elements of these claims, much less all of the required elements.  The complaint suffers from multiple additional infirmities, each of which mandates dismissal with prejudice of the claims against Mr. Maerov.

***The RICO Claims Fail.***  To begin with, the complaint falls far short of satisfying the high pleading standard for alleging a RICO claim.  To plead a Section 1962(c) claim under

RICO, a plaintiff must allege facts demonstrating that each defendant against whom a claim is asserted, through the commission of two or more predicate acts constituting a pattern of racketeering activity, participated in a RICO enterprise. Yet, the complaint does not allege that Mr. Maerov personally engaged in even a single predicate act. This alone is fatal to the Section 1962(c) claim. The complaint also fails to plausibly allege that Mr. Maerov and the other alleged members of the "Weinstein Sexual Enterprise" joined together as a group to pursue a common purpose and functioned as a continuing unit. To the contrary, the complaint itself alleges that (i) Mr. Maerov and the Board were adverse to Harvey Weinstein and the so-called "Law Firm Participant," (ii) the Law Firm Participant concealed Harvey Weinstein's sexual misconduct from the TWC Board, and (iii) the TWC Board inserted provisions into Harvey Weinstein's 2015 employment contract that imposed substantial financial penalties and that could result in the termination of Harvey Weinstein's employment for any violations of TWC's code of conduct. That is not the picture of an enterprise operating as a single continuing unit with a common purpose. Nor does the complaint attempt to establish that the "Weinstein Sexual Enterprise" had an existence that was "separate and distinct" from the alleged predicate racketeering acts – which, again, Mr. Maerov is not even alleged to have committed – or that Mr. Maerov participated in the alleged enterprise's operation and management.

Plaintiffs' claim that Mr. Maerov conspired to violate RICO in violation of Section 1962(d) is likewise deficient. The failure to plead any violation by Mr. Maerov of Section 1962(c) dooms plaintiffs' claim under Section 1962(d). Additionally, a "conscious agreement" is necessary to state a claim for conspiracy to violate RICO under Section 1962(d). Here, there is not a single allegation that Mr. Maerov agreed to commit a substantive RICO offense. And, as noted above, the allegations in the complaint affirmatively undermine any possibility of a

conscious agreement to violate RICO because they establish that Mr. Maerov and the other directors were actually adverse to Harvey Weinstein and the Law Firm Participant.

*The Negligent Retention and Supervision Claim Fails.*   The claim for negligent retention and supervision asserted by plaintiffs Geiss and Thomas also should be dismissed for failure to state a claim.  First, the complaint does not allege an employee-employer relationship between Mr. Maerov and Harvey Weinstein.   Rather, the complaint alleges that Harvey Weinstein was an employee *of TWC* at all relevant times.  Second, the complaint does not allege that Mr. Maerov had actual or constructive knowledge of prior acts by Harvey Weinstein that made Harvey Weinstein's subsequent actions foreseeable.  Indeed, the complaint does not even attempt to allege that the TWC Board collectively (or that Mr. Maerov, individually) had actual or constructive knowledge of Harvey Weinstein's alleged sexual misconduct until 2015, seven years *after* the last incidents allegedly occurred.  Third, the complaint fails to identify a single act that occurred on Mr. Maerov's premises or with his property.  The failure to plead each (and indeed, in this case, any) of these essential elements requires dismissal of the negligent supervision and retention claim.

*The Ratification Claim Fails.*   The claim by plaintiffs Geiss and Thomas that Mr. Maerov somehow "ratified" Harvey Weinstein's sexual misconduct likewise fails as a matter of law.  Ratification claims are grounded in the doctrine of *respondeat superior*, and require (i) the existence of an employer-employee or principal-agent relationship, (ii) the employer's/principal's full knowledge of the material facts concerning the allegedly binding act, and (iii) clear acceptance by the employer/principal of the benefit of the employee's/agent's acts.  The complaint does not allege any of these required elements, much less all of them.  Each of these failures independently mandates dismissal of the ratification claim.

***The Claims Are Time-Barred.***   Finally – and most fundamentally – in addition to their wholesale failure to state a claim on any of the four counts asserted against Mr. Maerov, all of plaintiffs' claims against Mr. Maerov are barred by the applicable statutes of limitations because the relevant conduct and resulting injuries are alleged to have taken place more than nine years ago and, in some cases, more than 25 years ago.   Plaintiffs did not file their complaint until December 2017, several years after even the longest of the pertinent limitations periods had expired.   As detailed below, plaintiffs' claims are not saved pursuant to the doctrines of continuing violations, equitable estoppel, or duress.

For all of these reasons, Counts I, II, IV, and XIV of the complaint should be dismissed as against Mr. Maerov.

## <u>SUMMARY OF ALLEGATIONS</u>

The six named plaintiffs allege that they were sexually assaulted by Harvey Weinstein at various times between 1993 and 2008.   ¶¶ 48-120.[1]   During that time, Harvey Weinstein was associated with the Miramax defendants[2] (from the 1970s until 2005) and then with TWC (from 2005 until 2017).   ¶¶ 22, 34, 37.   The complaint alleges that Mr. Maerov was a non-voting observer of the TWC Board from 2005 to 2013 and then a director from 2013 through the present.   ¶ 28.   The complaint does not allege that Mr. Maerov participated in or knew about any of the alleged incidents of sexual assault.

The six named plaintiffs allege that all defendants (along with numerous other specified and unspecified individuals, law firms, and corporate entities) were part of an unlawful RICO enterprise labeled "The Weinstein Sexual Enterprise" and assert two claims under RICO:   RICO

---

[1] Citations to paragraphs ("¶") are to paragraphs of the complaint, filed December 6, 2017 (Dkt. No. 1). Copies of cited documents are attached as exhibits to the accompanying Declaration of Anne S. Aufhauser (the "Aufhauser Decl."). Unless otherwise noted, emphasis is added and internal citations are omitted throughout.

[2] "Miramax" refers to Miramax, LLC, Miramax Film Corp., and Miramax Film NY LLC, collectively.

in violation of 18 U.S.C. § 1962(c) (Count I), and RICO conspiracy in violation of 18 U.S.C. § 1962(d) (Count II).

In addition, two of the six named plaintiffs (plaintiffs Geiss and Thomas) assert two individual state common law tort claims against members of the TWC Board, including Mr. Maerov:  negligent supervision and retention (Count IV), and ratification (Count XIV).

## ARGUMENT

### I.  STANDARD OF REVIEW

The standard of review for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is familiar. To survive such a motion, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.

In addition, where, as here, a complaint alleges mail and wire fraud as RICO predicates, the complaint must meet the heightened pleading requirements of Fed. R. Civ. P. 9(b).  In the RICO context, this requires a complaint alleging mail and wire fraud to "adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiffs contend the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *McLaughlin v. Andersen*, 962 F.2d 187, 191 (2d Cir. 1992).

### II.  THE COMPLAINT FAILS TO ALLEGE A RICO VIOLATION (COUNT I)

Plaintiffs assert that Mr. Maerov is liable under 18 U.S.C. § 1962 (c) of the RICO statute. To establish a civil RICO claim under 18 U.S.C. § 1962 (c), a plaintiff must plead "seven constituent elements:  (1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or

maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983). Each of these elements "must be established as to each individual defendant." *DeFalco v. Bernas*, 244 F.3d 286, 305-06 (2d Cir. 2001). Plaintiffs have not sufficiently pled any of these elements.[3]

### A. The Complaint Fails to Allege That Mr. Maerov Committed Any Predicate Acts

To state a RICO violation of 18 U.S.C. § 1962 (c), "plaintiffs must allege that each defendant committed at least two predicate acts of racketeering activity" within a 10-year period. *Jerome M. Sabel & Co. v. Fleck*, No. 03 CV. 1041, 2003 U.S. Dist. LEXIS 21362, at *18-19, 25-26 (S.D.N.Y. Dec. 1, 2003). Here, the complaint does not allege a single RICO predicate by Mr. Maerov. Instead, the complaint alleges generally that "Defendants" collectively have engaged in four predicate acts – witness tampering in violation of 18 U.S.C. § 1512, sex trafficking in violation of 18 U.S.C. §§ 1590 and 1591, and mail and wire fraud in violation 18 U.S.C. §§ 1341 and 1343 –without identifying which defendants supposedly engaged in which predicate acts.

Courts in this Circuit have repeatedly held that such "group pleading" is insufficient to plead the RICO predicate acts with the particularity required by Fed. R. Civ. P. 9(b). *See, e.g., In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011) (dismissing RICO claim because "Plaintiffs rely impermissibly on group pleading to allege the existence of predicate acts . . . . [and] do nothing to differentiate the conduct of the various

---

[3] RICO claims are strongly disfavored in the Second Circuit. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 480 (S.D.N.Y. 2009) ("[T]his Court conducted a rough survey of the 145 cases filed in the Southern District of New York from 2004 through 2007 in which the complaints asserted civil RICO claims. The study revealed that of the 36 cases that to date have been resolved on the merits, all resulted in judgments against the plaintiffs. Thirty were dismissed on defendants' motions pursuant to Fed. R. Civ. P. 12(b)(6), three dismissed by the district court *sua sponte* for lack of merit, and three dismissed on summary judgment for the defendants. Only four of the 30 Rule 12(b)(6) dismissals were appealed and each was affirmed by [the] Second Circuit. Two of the three dismissals on summary judgment were appealed and both were affirmed. Hence, experience bears out that overwhelmingly the RICO plaintiffs' gilded vision of threefold damages and attorney's fees dispels into a mirage.").

Defendants"); *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (same); *DLJ Mortg.*
*Capital, Inc. v. Kontogiannis*, 594 F. Supp. 2d 308, 326 (E.D.N.Y. 2009) (same).  This alone is
fatal to the RICO claim.

> 1.    Allegation of Witness Tampering Fails.

The complaint's allegation of witness tampering boils down to the single boilerplate
allegation that "Defendants" have engaged in "multiple instances of tampering with a witness or
victim in violation of 18 U.S.C. § 1512."  ¶ 196.  That allegation does not plead a single incident
of tampering by Mr. Maerov.   Indeed, it does not allege any of the elements of witness
tampering, and it does not allege that Mr. Maerov knowingly (or even unknowingly) used
intimidation, threats, or corruptly persuaded anyone to influence, delay or prevent their
testimony in an official proceeding.  *See* 18 U.S.C. § 1512.  Moreover, plaintiffs fail to identify
any federal (or other official) proceeding where witness tampering could have conceivably
occurred.  *See Miller v. Carpinello*, No. 06 CV 12940, 2007 WL 4207282, at *7 & n.6 (S.D.N.Y.
Nov. 20, 2007) (dismissing RICO claim where plaintiff failed to allege any federal proceeding or
that defendants hindered communications of information to law enforcement or federal judge
relating to federal offense).

> 2.    Allegation of Commercial Sex Trafficking Fails.

The complaint's allegation of commercial sex trafficking is limited to the boilerplate
allegation that "Defendants" engaged in "multiple instances obtaining a victim for the purpose of
committing aggravated sexual abuse in violation of 18 U.S.C. §§ 1590 and 1591."  ¶ 196.  The
complaint is devoid of factual allegations that Mr. Maerov engaged in commercial sex
trafficking.   In particular, it does not allege that Mr. Maerov knowingly (or unknowingly)
recruited, harbored, transported, provided, or obtained by any means, any person to commit

aggravated sexual abuse.  *See* 18 U.S.C. §§ 1590 and 1591.  Accordingly, plaintiffs have failed to plead sex trafficking as a RICO predicate act.

> 3.      Allegation of Mail and Wire Fraud Fails.

In order to state a claim for mail or wire fraud, a plaintiff must allege:  "(1) a scheme to defraud, (2) money or property (as the object of the scheme), and (3) use of the mails (or wires) to further the scheme."  *Fountain v. United States*, 357 F.3d 250, 255 (2d Cir. 2004).  When multiple defendants are charged with fraud, the complaint must "particularize and prove each defendant's participation in the fraud."  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Archway, Ins. Servs., LLC*, No. 11 CV 1134, 2012 WL 1142285, at *5 (S.D.N.Y. Mar. 23, 2012).

The complaint fails to satisfy the rigorous pleading requirements for asserting a claim for mail or wire fraud against Mr. Maerov.  First, the complaint does not allege any facts showing that Mr. Maerov participated in (or even knew about) a scheme to defraud or made any affirmative misrepresentations.  *See Hoatson v. New York Archdiocese*, No. 05 CV 10467, 2007 WL 431098, at *5 (S.D.N.Y. Feb. 8, 2007) (dismissing RICO claim alleging predicate mail or wire fraud offense where there were "no specific misrepresentations alleged").  Second, the complaint does not allege any facts showing that the object of the alleged scheme was to deprive plaintiffs of money or property.  *See id.*, 2007 WL 431098, at *5 ("Plaintiff has not sufficiently alleged that he was deprived of 'money or property' since loss of a job is not 'property in the victim's hands'").  Third, the complaint "does not identify specific acts of communication by mail or by interstate wires undertaken by [Mr. Maerov] in furtherance of the fraudulent scheme." *See Merrill Lynch, Pierce, Fenner, & Smith, Inc. v. Young*, No. 91 Civ. 2923, 1994 WL 88129, at *11 (S.D.N.Y. Mar. 14, 1994) ("The sweeping allegation that [the RICO Defendants] caused the listed communications to be made impermissibly collectivizes the defendants, failing to

inform each of the[m] ... of the specific communications [he] is alleged to have made or caused to be made in furtherance of the fraudulent scheme"). In fact, of the communications identified in Paragraph 201 of the complaint, none is alleged to have been made specifically by Mr. Maerov.

Instead, the complaint simply alleges that "Defendants" – a group consisting of 14 other defendants in addition to Mr. Maerov – supposedly "used the mails and wires for the transmission, delivery, or shipment of the following [mails and wires]." ¶ 201. This type of conclusory allegation cannot state a claim for wire or mail fraud against Mr. Maerov. *See Hoatson*, 2007 WL 431098, at *5 ("bare allegations that defendants took numerous predicate acts . . . . falls [far] short of pleading with particularity and is insufficient to ground a predicate act for a RICO claim").

### B.    The Complaint Fails to Allege a Pattern of Racketeering

Because plaintiffs have not alleged that Mr. Maerov committed even a single predicate act, they cannot establish a "pattern" of racketeering activity. To establish a pattern of racketeering activity, in addition to alleging that each defendant committed two predicate acts of racketeering activity within a ten-year period, plaintiffs must also show that those predicate acts are "related, *and* that they amount to or pose a threat of continued criminal activity." *Cofacredit, S.A. v. Windsor Plumbing Supply*, 187 F.3d 229, 242 (2d Cir. 1999) (emphasis in the original). Here, plaintiffs failed to adequately allege that Mr. Maerov ever committed a single RICO predicate act, much less the requisite two related acts in the prescribed ten-year period. Thus, plaintiffs have not pled that Mr. Maerov engaged in a pattern of racketeering activity. For this independent reason, too, the RICO claim should be dismissed.

### C.    The Complaint Fails to Allege the Existence of a RICO Enterprise

The RICO claim should be also dismissed because the complaint fails to plead the existence of an "enterprise." "The heart of any civil RICO claim is the enterprise. There can be no RICO violation without one." *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 359 (S.D.N.Y. 2014). To properly establish the existence of a RICO enterprise, plaintiffs must allege "solid information regarding the 'hierarchy, organization, and activities' of this alleged association-in-fact enterprise," from which a court "could fairly conclude that its 'members functioned as a unit.'" *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004); *see also Jones v. Nat'l Commc'n and Surveillance Networks*, 409 F. Supp. 2d 456, 474 (SDNY 2006) (Hellerstein, J.) (dismissing complaint where plaintiff failed to plead with specificity the "existence of a racketeering enterprise, or its purported hierarchy, organization, continuing structure, or activities"). Plaintiffs fail to allege these requisite elements.

First, entirely absent from the complaint are any allegations addressing (much less detailing) the hierarchy, organization, and relationships between the numerous alleged enterprise members. The complaint likewise wholly fails to allege (much less demonstrate) where Mr. Maerov supposedly fits within this alleged hierarchy and organization, or his relationship with the various alleged members of "The Weinstein Sexual Enterprise." Instead, the enterprise allegations are boilerplate assertions that lump Mr. Maerov together with numerous other unassociated defendants: "The Weinstein Sexual Enterprise is an association-in-fact enterprise . . . consisting of (i) Defendants, including their employees and agents; (ii) the Weinstein Participants, (iii) the Intelligence Participants; (iv) the Firm Participants; (v) the Journalist Participants, and [*sic*] (v) the Film Participants, and other unnamed co-conspirators." ¶ 194; *see e.g.*, ¶¶ 142-47.

- 10 -

These meaningless generic allegations provide zero information as to the hierarchy, organization, or nature of the relationship between Mr. Maerov and other alleged enterprise members. This failure itself mandates dismissal of the RICO claim. *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 CIV. 7801, 2012 WL 1231775, at *6 (S.D.N.Y. Apr. 12, 2012) (dismissing RICO claim where plaintiff failed to plead with particularity "the nature of . . . the alleged ongoing working relationship among defendants").

Second, plaintiffs conspicuously fail to allege that the so-called enterprise acted as a functioning unit. The lack of "any concrete factual assertions as to the mechanics of the interactions among [the members], including facts indicating that the disparate [members] functioned as a unit," further requires dismissal. *Id.* The complaint offers the conclusory assertion that "[t]hrough the Weinstein Sexual Enterprise, the defendants and their co-conspirators functioned as a continuing unit with the purpose of furthering the illegal scheme and their common purpose." ¶ 200. This falls far short of the demanding pleading requirements for alleging a civil RICO claim. Equally absent are any allegations that suggest or identify any connection between Mr. Maerov and the non-TWC defendants, or with the numerous non-party members of the alleged enterprise, such as the journalists, law firms, film directors, and intelligence agencies mentioned in the complaint. *See Elavon, Inc. v. Ne. Advance Techs., Inc.*, No. 15 CV 7985, 2017 WL 4876300, at *10 (S.D.N.Y. Oct. 27, 2017) (dismissing RICO claim because "there [wa]s nothing to suggest that many of the defendants have ever met or communicated with each other in any way"); s*ee also Cedar Swamp Holdings, Inc. v. Zaman*, 487 F. Supp. 2d 444, 452 (S.D.N.Y. 2007) (stringing together a "laundry list" of individuals and entities and labeling them an enterprise does not state a RICO claim).

Third, the complaint fails to allege a plausible "common purpose" among the alleged members of "The Weinstein Sexual Enterprise." The complaint does not contain any factual allegations that Mr. Maerov "benefitted in any way from the alleged enterprise" or "to suggest why [he] would share the [alleged] goal of [concealing Weinstein's sexual misconduct]." *See D. Penguin Bros. v. City Nat. Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) ("plaintiffs' allegations of the RICO defendants' common purpose fall short of supporting a plausible inference that an association-in-fact enterprise existed"); *see also Mortg. Resolution Servicing, LLC v. JPMorgan Chase Bank, N.A.*, No. 15 CV 293, 2017 WL 570929, at *5 (S.D.N.Y. Feb. 13, 2017) (dismissing RICO claim where alleged purpose of the enterprise "plausibly relate[d] only to Chase's interests" and the complaint "provide[d] no factual basis for an inference that [other members of the enterprise] had this purpose in common with Chase").

Indeed, the complaint's conclusory assertion of a common purpose among the TWC Board, Law Firm Participant, and Harvey Weinstein is contradicted by the allegations that (a) the Law Firm Participant withheld Harvey Weinstein's personnel file from the TWC Board (¶ 129), and (b) the TWC Board inserted provisions in Harvey Weinstein's 2015 employment contract that imposed liquidated damages and termination of his employment for sexual misconduct (¶ 132). These conflicting goals negate any inference that the alleged "Weinstein Sexual Enterprise" was an "ongoing organization." *See Nat'l Grp. for Commc'ns and Computers Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 271–72 (S.D.N.Y. 2006); *Cedar Swamp Holdings*, 487 F. Supp. 2d at 451; *see also Manhattan Telecomms. Corp., Inc. v. DialAmerica Mktg., Inc.*, 156 F. Supp. 2d 376, 383 (S.D.N.Y. 2001) (artful pleading cannot create an enterprise out of a loose connection of separate and independent business entities).

Finally, the complaint fails to adequately plead the existence of a RICO enterprise because the alleged enterprise is not separate and distinct from the purported racketeering activity. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (enterprise must be an "entity separate and apart from the pattern of activity in which it engages"). When determining whether an alleged enterprise is separate and distinct from the purported racketeering activity, courts "consider whether the enterprise would still exist were the predicate acts removed from the equation." *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 349 (S.D.N.Y. 1998). Here, no enterprise would exist without the alleged predicate acts (witness tampering, sex trafficking, and mail and wire fraud). Indeed, plaintiffs expressly admit as much by stating, "[t]he Weinstein Sexual Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity." ¶ 194. Plaintiffs' RICO claim thus also fails for this independent reason, and should be dismissed. *See Hoatson*, 2007 WL 431098, at *3 (dismissing RICO claim where defendants associated with each other solely to conduct the alleged RICO activities).

### D. The Complaint Fails to Allege That Mr. Maerov Participated in the Operation of a RICO Enterprise

Even if the complaint had adequately alleged that a RICO enterprise existed (it did not), the claims against Mr. Maerov would still fail because the complaint does not allege that Mr. Maerov participated in the operation or management of that enterprise or plead facts from which the Court could draw such an inference.[4] *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994). As the Second Circuit has noted, "[f]or RICO purposes, simply establishing the

---

[4] The complaint's assertion that the "Weinstein Participants" and "Defendants" participated in the operation or management of the affairs of the "Weinstein Sexual Enterprise" (¶¶ 142, 198) does not permit a plausible inference that Mr. Maerov was involved in the operation or management of the enterprise. *See Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14 CV 7349, 2016 WL 1298987, at *5 (S.D.N.Y. Mar. 31, 2016) (dismissing RICO claim because "allegations ascrib[ing] actions to all Defendants as an undifferentiated group, without identifying any role for the Yahoo Defendants in particular," did not permit a plausible inference that Yahoo was involved in the operation or management of the enterprise); *see also Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 136 (E.D.N.Y. 2010) (plaintiffs failed to allege participation in an enterprise where "the complaint fail[ed] to articulate in a plausible manner how the defendants participated in the operation and management of the enterprise").

presence of an enterprise is not enough.   Plaintiffs must also establish that the defendants 'conduct[ed] or participate[d], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'"   *Satinwood*, 385 F.3d at 175-76 (quoting 18 U.S.C. § 1962(c)).   Just as Mr. Maerov did not commit any underlying predicate acts (which itself mandates dismissal of the RICO claim), he likewise did not participate in the operation or management of the purported enterprise.   Accordingly, the RICO claim against Mr. Maerov should be dismissed.

## III.   THE COMPLAINT FAILS TO ALLEGE THAT MR. MAEROV CONSPIRED TO VIOLATE RICO (COUNT II)

The complaint asserts a cause of action (Count II) for conspiracy to violate RICO under 18 U.S.C. § 1962(d), which makes it "unlawful for any person to conspire to violate any of" Section 1962's other provisions.   Thus, there cannot be a viable RICO conspiracy under 18 U.S.C. § 1962(d) without a substantive RICO violation.   Because the complaint does not properly plead a substantive RICO violation, no conspiracy claim can succeed against Mr. Maerov.   *See Satinwood,* 385 F.3d at 182 (upholding dismissal of RICO conspiracy claim where plaintiff failed to adequately allege substantive RICO violation).

Plaintiffs' RICO conspiracy claim against Mr. Maerov also fails because the complaint does not allege that he agreed with at least one other person or entity to commit a substantive RICO offense.   *See Allen v. New World Coffee, Inc.*, No. 00 CV 2610, 2001 WL 293683, at *9 (S.D.N.Y. March 27, 2001) (RICO conspiracy allegations insufficient to state a claim under Section 1962(d) because they were "devoid of factual assertions concerning the nature of the agreement and unspecific as to time period during which the conspiracy took place"); *Nasik Breeding & Research Farm Ltd. v. Merck & Co. Inc.,* 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2011) (dismissing RICO conspiracy claim where plaintiff's "allegations, devoid of factual assertions

concerning the existence and nature of an agreement and unspecific as to the participants therein, are insufficient to state a claim under Section 1962(d)"). Yet again, plaintiffs' sole allegation of any alleged agreement is boilerplate: "The nature of the above-described Defendants' co-conspirators' acts in furtherance of the conspiracy gives rise to an inference that they not only agreed to . . . [a] violation of RICO . . . but also were aware that their ongoing fraudulent acts have been and are part of an overall pattern of racketeering activity." ¶ 216. Such conclusory allegations are insufficient to withstand a motion to dismiss, as a "plaintiff must plead facts sufficient to show that *each defendant* knowingly agreed to participate in the conspiracy." *Nasik Breeding*, 165 F. Supp. 2d at 541.[5] Plaintiffs' RICO conspiracy claim against Mr. Maerov should be dismissed.

## IV.   THE COMPLAINT FAILS TO ALLEGE THAT PLAINTIFFS HAVE STANDING TO PURSUE A CIVIL RICO CLAIM (COUNTS I & II)

The RICO statute grants standing to pursue civil damages to "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c). The Second Circuit has emphasized that "RICO standing is a more rigorous matter than standing under Article III." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 266 (2d Cir. 2006). This rigor requires a plaintiff asserting a civil RICO claim to allege (1) an injury to his or her "business or property" (2) proximately caused by the defendant's alleged racketeering activity. *See, e.g., Commercial Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 380 (2d Cir. 2001); *see also Holmes v. Secs. Investor Protection Corp.*, 503 U.S. 258, 268 (1992) (Plaintiff must establish standing to assert a RICO claim by alleging an injury to her "business or

---

[5]  Moreover, as discussed *supra* at II.C, the complaint's allegations regarding the Law Firm Participant's concealment of Harvey Weinstein's sexual misconduct from the TWC Board and the TWC Board's insistence on provisions that impose penalties and termination of employment for misconduct in Harvey Weinstein's 2015 employment contract contradict any claim that Mr. Maerov agreed to facilitate Harvey Weinstein's sexual misconduct.

property," of which defendants' violation of RICO was both the "but for" and proximate cause);
*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985) (A "plaintiff only has standing if, and
can only recover to the extent that, he has been injured in his business or property by the conduct
constituting the violation").  Plaintiffs fail to establish either RICO standing requirement.

###    A.    The Complaint Does Not Allege A Cognizable RICO Injury

Plaintiffs assert as their alleged RICO injuries "lost employment and employment
opportunities, as well as contractual and contractual opportunities."  ¶ 209.  Such personalized
and speculative injuries are not cognizable RICO injuries.  Courts repeatedly hold that lost future
employment opportunities are not RICO injuries because they are either not injuries to "business
or property" or are too speculative to be redressed under RICO.  *See Mack v. Parker Jewish Inst.
for Health Care & Rehab.*, No. CV 14 1299, 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014)
(plaintiff's inability "to seek employment that reflects her level of professional achievement and
standing within her field, or to further her career" is not a cognizable injury under RICO, and
simply alleging an inability to find employment reflective of education and experience is "too
speculative to constitute an injury to business or property"); *Mackin v. Auberger*, 59 F. Supp. 3d
528, 558 (W.D.N.Y. 2014) ("loss of Plaintiff's reputation and resulting inability to gain future
employment are personal injuries and are not compensable under RICO"); *Hollander v. Flash
Dancers Topless Club*, 340 F. Supp. 2d 453, 459 (S.D.N.Y. 2004) (damages to plaintiff's
"business reputation and goodwill" are not the type of injuries to business or property actionable
under RICO), *aff'd*, 173 F. App'x 15 (2d Cir. 2006); *Roitman v. N.Y.C. Transit Auth.*, 704 F.
Supp. 346, 348-49 (E.D.N.Y. 1989) (damage to a plaintiff's reputation and resulting inability to
secure employment was personal injury as opposed to a property injury).

Indeed, not only are lost employment opportunities not cognizable RICO injuries, but
plaintiffs also do not allege any contract or actual job opportunity lost as a result of the alleged

RICO conduct.  This, too, mandates dismissal of their RICO claims.  *See Apollon Waterproofing & Restoration, Inc. v. Bergassi*, 87 F. App'x, 757, 759-60 (2d Cir. 2004) (dismissing RICO claim for lack of standing where "conclusory pleading of unspecified lost contracts fails to provide such minimal notice of a timely injury stemming from the" challenged activity).

Finally, plaintiffs' allegations that they suffered emotional distress, physical pain, depression, and lack of self-confidence are personal injuries not cognizable under RICO.  *See Miller v. Carpinello*, No. 06 CV 12940, 2007 WL 4207282, at *6 (S.D.N.Y. Nov. 20, 2007) (dismissing RICO claim for failure to establish standing because physical and emotional injuries are not cognizable under RICO); *Gilfus v. Vargason*, No. 04 CV 1379, 2006 WL 2827658, at *8 (N.D.N.Y. Sept. 30, 2006) ("plain reading of the RICO statute reveals that Plaintiffs cannot seek damages for physical injury, mental suffering, distress or humiliation"); *Le Paw v. BAT Indus. P.L.C.*, No. 96 CV 4373, 1997 WL 242132, at *2 (EDNY Mar. 6, 1997) ("personal injuries or emotional distress are not cognizable under RICO").

Because plaintiffs have failed to allege a cognizable RICO injury, they have no standing to assert any RICO claims.  Accordingly, Count I and Count II must be dismissed.

## B.     Alleged Injuries Not Proximately Caused By Alleged Racketeering Activity

Even if the injuries alleged by plaintiffs were cognizable under the RICO statute (they are not), the complaint fails to allege that those injuries were caused, let alone proximately caused, by Mr. Maerov's alleged racketeering activities.  In a civil RICO case, each plaintiff must show that his injury was "caused by a pattern of racketeering activity violating section 1962 or by individual RICO predicate acts."  *Hecht v. Commerce Clearing House*, 897 F.2d 21, 23 (2d Cir.1990); *accord Chandradat v. Navillus Tile*, No. 03 CV 10093, 2004 WL 2186562, at *4 (S.D.N.Y. Sept. 28, 2004).  Additionally, "the plaintiff is required to show that a RICO predicate offense 'not only was a 'but for' cause of his injury, but was the proximate cause as well.'"

*Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010) (*quoting Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268 (1992)).  Stated differently, "the plaintiff must plead and prove that the violation not only was the logical, or 'but for,' cause of the injury but also was its legally cognizable, or proximate, cause."  *Hall v. Tressic*, 381 F. Supp. 2d 101, 111 (N.D.N.Y. 2005); *Moore v. Guesno*, 485 F. Supp. 2d 300, 306 (W.D.N.Y. 2007) ("the injury must be a *direct result* of the alleged RICO violation, and not the result of a non-RICO violation or some other intervening action") (emphasis in original), *aff'd*, 301 F. App'x 17 (2d Cir. 2008).

Here, plaintiffs' allegations make clear that that they have not suffered any direct loss as a result of the alleged RICO violations (*e.g.*, witness tampering, sex trafficking, mail or wire fraud) because plaintiffs repeatedly and expressly allege that their losses were caused directly by Harvey Weinstein's alleged assaults rather than by the alleged RICO activity.  *See* ¶¶ 59, 61, 83, 95, 102, 113, 120; *see also* ¶¶ 11, 13-14 (alleging that each of the plaintiffs suffered injuries "as a result of Weinstein's actions").  Accordingly, plaintiffs cannot meet the "proximate cause" requirement and lack standing to assert any RICO claims.  Their RICO claims should be dismissed.  *See Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 456-58 (2006) (upholding dismissal where plaintiffs' alleged harms were "entirely distinct from the alleged RICO violation"); *DDR Constr. Servs., Inc. v. Siemens Indust., Inc.*, 770 F. Supp. 2d 627, 651 (SDNY 2011) (RICO claims dismissed where damages were caused by acts other than the alleged RICO predicate acts).

Because plaintiffs do not allege that Mr. Maerov's (nonexistent) racketeering activity proximately caused their injuries, the RICO claims against him must be dismissed.  *See Chandradat*, 2004 WL 2186562, at *4 (dismissing civil RICO claim because plaintiff had "not

demonstrated that his alleged injury – the denial of wages – was proximately caused by defendants' alleged wire fraud, mail fraud, or money laundering").

## V.   THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION AND RETENTION AGAINST MR. MAEROV (COUNT IV)

In Count IV of the complaint, plaintiffs Geiss and Thomas assert a cause of action for negligent supervision and retention.  To state a claim for negligent supervision and retention, a plaintiff must allege both the necessary elements of a standard claim for negligence *as well as* "(1) that the tortfeasor and the defendant[s] were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels."  *Ehrens v. Lutheran Church*, 385 F.3d 232, 232 (2d Cir. 2004); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (quoting *Ehrens*).  In addition, a plaintiff must also allege that "the employer's negligence [is] the proximate cause of the plaintiff's injuries."  *Saldana v. Village of Port Chester*, No. 09 CV 6268, 2010 U.S. Dist. LEXIS 142099, at *16 (S.D.N.Y. July 21, 2010).  Plaintiffs fail to allege any of these elements.

### A.   The Complaint Fails to Allege a Duty of Care

As a threshold matter, the complaint fails to allege that Mr. Maerov owed plaintiffs any duty of care.  Under New York law, to establish a cause of action for negligence claim, a plaintiff must show "(1) the defendant owed the plaintiff a cognizable duty of care; (2) the defendant breached that duty; and (3) the plaintiff suffered damage as a proximate result of that breach."  *Dunahoo v. Hewlett-Packard Co.*, No. 11 CV 5588, 2012 U.S. Dist. LEXIS 7717, at *7 (S.D.N.Y. Jan. 20, 2012) (dismissing negligent supervision claim where plaintiff failed to adequately allege that defendant breached any duty).

Plaintiffs cannot show that Mr. Maerov owed any duty to plaintiffs because directors do not owe third parties any duty to supervise the corporation's employees. *Belmont v. MB Inv. Partners Inc.*, 708 F.3d 470, 489 (3d Cir. 2013) (upholding dismissal of negligent supervision claim against board members because a director's duty to act in good faith for the corporation does not extend to supervising employees' day-to-day conduct); *see also Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984) (director's duties are owed to corporation and stockholders, not third parties). Because Mr. Maerov did not owe any duties to plaintiffs, their negligent supervision and retention claim must be dismissed.[6]

## B. The Complaint Fails to Allege Mr. Maerov Employed Harvey Weinstein

Plaintiffs' claim for negligent supervision and retention fails because the complaint does not allege that Mr. Maerov and Harvey Weinstein were in an employer-employee relationship. First, the complaint alleges that Mr. Maerov's supposed duty arises out of his role on the TWC Board. ¶ 230 ("TWC and its Board of Directors' negligence in supervising and or retaining Weinstein was a substantial factor in causing harm to plaintiffs"). Yet, the complaint itself makes clear that Mr. Maerov did not become a member of the Board until 2013, five years after the alleged assaults against plaintiffs Geiss and Thomas occurred in 2008. ¶ 28.[7] Second, the complaint does not contain any allegations whatsoever suggesting that Mr. Maerov employed Harvey Weinstein. To the contrary, it alleges that "at all times material from September 30, 2005, to October 2017, TWC employed Weinstein." ¶ 226; *see also* ¶ 22 (Weinstein was an

---

[6] Even if there was a general duty (there is none) owed by directors to third parties such as plaintiffs, the negligent supervision and retention claim would still need to be dismissed as against Mr. Maerov because Mr. Maerov did not become a TWC "director" until 2013, five years *after* plaintiffs Geiss and Thomas were allegedly assaulted in 2008. ¶ 28. Hence, Mr. Maerov had no duty to plaintiffs in 2008, mandating dismissal of the claim.

[7] The complaint alleges that Mr. Maerov "was a director of TWC, including as a non-voting observer from 2005 to 2013 and then as a voting member through the present." ¶ 28. In other words, notwithstanding the complaint's contortions, Mr. Maerov was a TWC director *only* from 2013 through the present. A "non-voting observer" is by definition not a director, and most certainly not someone who could "employ" or "exercise substantial control over" Harvey Weinstein.

"employee of TWC").  Accordingly, plaintiffs' negligent supervision and retention claim fails.  *Naughright v. Robbins*, No. 10 CV 8451, 2014 U.S. Dist. LEXIS 148497, at *18 (S.D.N.Y. Oct. 17, 2014) (dismissing claim for negligent supervision or retention where plaintiff failed to allege that the tortfeasor was employed by defendant).

Third, under New York law, an employee-employer relationship depends on the employer exercising substantial control over the "results produced" and the "means used" to create the result, with the "means used" being the more important factor.  *O'Brien v. Spitzer*, 851 N.E.2d 1195, 1996 (N.Y. 2006).  Here, Mr. Maerov did not control Harvey Weinstein.  The complaint makes no allegation to the contrary.  Nor does the complaint allege that Mr. Maerov controlled or directed Harvey Weinstein's day-to-day activities in running TWC.  The absence of any such allegation means plaintiffs have failed to allege this necessary element of any claim for negligent supervision and retention.

### C.     The Complaint Fails to Allege Mr. Maerov Knew or Should Have Known About Weinstein's Propensity for Sexual Misconduct

Under New York law, an employer is liable for negligent supervision or retention only if he has actual or constructive knowledge of specific prior acts or allegations that make the employee's subsequent wrongful conduct foreseeable.  *Ehrens*, 385 F.3d at 235 (plaintiff must show that employer is aware of its employee's propensity for the misconduct that caused the injury, before the injury occurs); *see also Doe v. City of New York*, No. 09 CV 9895, 2013 U.S. Dist. LEXIS 30010, at *17-18 (S.D.N.Y. Mar. 4, 2013) (dismissing case where plaintiff failed to plausibly allege that defendant knew or should have known of its employee's propensity for sexual assault).

The complaint's allegation that Mr. Maerov knew or should have known of Harvey Weinstein's propensity for sexual misconduct largely boils down to the misleading allegation

that, "[a]ccording to Maerov, for years prior to the 2015 Gutierrez allegations, he had heard from TWC employees about complaints against Weinstein."   ¶ 28 (citing a November 2017 *Fortune* article attached herein as Exhibit A to the Aufhauser Declaration).[8]  First, the allegation that Mr. Maerov had heard these complaints "*for years prior* to the [2015] Gutierrez allegation" is pulled by plaintiffs from thin air.  What the article actually states is that "Mr. Maerov says that the Gutierrez bombshell aside, he'd been hearing anonymously from employees about complaints from both male and female employees."  Aufhauser Decl., Ex. A.  In purporting to paraphrase that statement, plaintiffs disingenuously insert the phrase "for years."   Second, while their allegation is designed to give the impression that Mr. Maerov had heard complaints regarding Harvey Weinstein's alleged sexual misconduct, on a plain reading of the article, it is replete with references to complaints Mr. Maerov had heard regarding Harvey Weinstein (i) not "show[ing] respect for the people around him," (ii) "squander[ing] outside investors' money," (iii) being "Mr. Bully," (iv) "mismanage[ing] the company," (v) "misusing company funds," (vi) "making gifts with company money," and (vii) using company "personnel for his personal projects."  *Id.*

In any event, even if the article suggests that – following the 2015 Gutierrez "bombshell" sexual misconduct allegation – Mr. Maerov began to investigate whether Harvey Weinstein might have engaged in similar misconduct on other occasions, it has no bearing on whether Mr. Maerov knew or should have known of Harvey Weinstein's alleged propensity for sexual misconduct *prior to* the alleged sexual assaults upon plaintiffs, which had occurred in 2008 – a full seven years prior to Mr. Maerov's efforts in 2015 to determine whether Harvey Weinstein's alleged assault upon Ms. Gutierrez was an isolated incident.  *See Alsaud*, 12 F. Supp. 3d at 680

---

[8] As noted, the complaint cites a November 2017 *Fortune* article authored by Shawn Tully, entitled "How a Handful of Billionaires Kept Their Friend Harvey Weinstein in Power."  A true and correct copy of that article is attached as Exhibit A to the accompanying Declaration of Anne S. Aufhauser.  We note that the complaint erroneously states that the article is dated November 24, 2017.  The actual date of the article is November 19, 2017.

(dismissing claim where plaintiff failed to show that defendant knew or should have known of misconduct by employee prior to the alleged assault upon plaintiff).[9]

Because the complaint contains no allegations whatsoever suggesting that Mr. Maerov had or should have had knowledge of Harvey Weinstein's alleged propensity for sexual misconduct prior to alleged assaults upon plaintiffs Geiss and Thomas in 2008, the negligent supervision or retention claim must be dismissed.  *See Ehrens*, 385 F.3d at 235 (plaintiff must show that employer is aware of its employee's propensity for the misconduct that caused the injury, before the injury occurs).

### D.    The Complaint Fails to Allege Injury Occurred on Mr. Maerov's or TWC's Premises

The complaint's negligent supervision and retention claim also fails for the additional reason that the complaint does not allege, as it must, that an underlying tort occurred on Mr. Maerov's or TWC's premises or with Mr. Maerov's or TWC's property.  *See Ehrens*, 385 F.3d at 236 (affirming dismissal of negligent supervision claim where a minister allegedly assaulted plaintiff outside of church property); *Doe 1 v. Bd. of Educ. of Greenport Union Free School Dist.*, 955 N.Y.S. 2d. 600, 602 (2d Dep't 2012) (upholding dismissal of negligent supervision claim where teacher's sexual misconduct occurred off of school premises).

Here, plaintiffs Geiss and Thomas expressly allege that they were *not* assaulted on TWC property, or even at locations paid for by TWC (which would nonetheless be insufficient).  The

---

[9] The complaint asserts that certain provisions added to Harvey Weinstein's employment contract during the 2015 negotiations of that contract, and TWC's Code of Conduct, somehow suggest that defendants had "knowledge that [Harvey] Weinstein was more likely than not to engage in sexual harassment and other misconduct."  ¶ 133.  But the complaint does not allege facts supporting the conclusion that any director knew of Harvey Weinstein's alleged propensity to engage in sexual assault.  Moreover, even assuming this allegation were true, the complaint fails to explain how any such knowledge in 2015 (there was no such knowledge) would render defendants liable for alleged assaults committed by Harvey Weinstein against plaintiffs many years earlier, between 1993 and 2008.  *See Alsaud*, 12 F. Supp. at 680 (a complaint for negligent supervision and retention must show that defendants had knowledge of a related act or allegation *before* the assault upon plaintiff was committed).

complaint alleges that plaintiff Thomas was assaulted at Harvey Weinstein's Connecticut home. ¶¶ 14, 106. *See Naughright*, 2014 U.S. Dist. LEXIS 148497, at *19 (dismissing negligent supervision and retention claim where tort occurred at tortfeasor's apartment). Likewise, the complaint alleges that plaintiff Geiss was assaulted in a hotel room in Utah, not on TWC's premises. *See Alsaud*, 12 F. Supp. 3d at 676, 684 (granting employer's motion to dismiss in part because employee's sexual misconduct took place off-premises at a hotel, even though the employee was at the hotel in connection with his employment). Moreover, even if TWC paid for the hotel room in Utah (a factually unsupported premise), there would still be no liability to the employer unless plaintiff Geiss could show that TWC exercised "dominion or control" over the hotel room. *Id.* at 684; *see also Anderson v. Adam's Mark Hotels & Resorts*, No. 99-1100, 2000 U.S. App. LEXIS 6949, at *7 (10th Cir. Apr. 18, 2000) (upholding dismissal where employer "did not have complete authority to police the [hotel] room and the activities inside").

Accordingly, plaintiffs Geiss and Thomas have not adequately alleged the "premises" prong of a negligent supervision and retention claim. Their claim should be dismissed for this reason, too.

### E.     The Complaint Fails to Allege Causation

The negligent supervision and retention claim also fails for the additional independent reason that the complaint fails to allege that Mr. Maerov's purported negligent supervision and retention caused plaintiffs' injuries. As noted, while plaintiffs Geiss and Thomas allege that Harvey Weinstein assaulted them in 2008, the complaint makes clear that Mr. Maerov did not become a director until five years later in 2013. *See supra* notes 6 & 7. Thus, Mr. Maerov's alleged negligent supervision and retention was not the cause of plaintiffs Geiss' and Thomas' injuries. *See Saldana,* 2010 U.S. Dist. LEXIS 142099, at *15 (a plaintiff must allege that "[t]he

employer's negligence [is] the proximate cause of the plaintiff's injuries").   Their negligent supervision and retention claim should be dismissed for this additional reason.

## VI.   THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION AGAINST MR. MAEROV (COUNT XIV)

In Count XIV of the complaint, plaintiffs Geiss and Thomas assert a cause of action for ratification.   Under well-settled New York law, Mr. Maerov cannot be liable on a ratification theory unless he "affirms or ratifies an act done by one who purports to be acting for the ratifier." *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) (dismissing complaint where conduct did not give rise to a plausible inference of an agency relationship). Plaintiffs fail to adequately allege that Mr. Maerov ratified any alleged acts by Harvey Weinstein.

First, and as a threshold matter, plaintiffs' ratification claim fails because the complaint does not allege a principal-agent relationship between Harvey Weinstein and Mr. Maerov.   To allege a principal-agent relationship, plaintiffs must plead:   (1) a manifestation by the principal that the agent shall act for the principal; (2) acceptance of the undertaking by the agent; and (3) an understanding between the parties that the principal is to be in control of the undertaking. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991). Plaintiffs have not alleged any of these elements.   The sole allegation regarding the existence of an agency relationship between Harvey Weinstein and Mr. Maerov is the conclusory statement that "[a]t the time of the acts alleged . . . there was an actual or assumed agency relationship between . . . Weinstein and TWC's Board of Directors."   ¶ 297.   This "naked assertion[] devoid of further factual enhancement" is insufficient to plead the required elements of agency.   *See Ashcroft*, 556 U.S. at 678; *see also Bigio v. Coca-Cola* Co., 675 F.3d 163, 175-76 (2d Cir. 2012) (rejecting claim of agency relationship in the absence of particularized factual allegations).

Indeed, not only is the complaint's assertion that "[a]t the time of the acts alleged . . . there was an actual or assumed agency relationship between . . . Weinstein and TWC's Board of Directors" wholly inadequate to plead an agency relationship, but it is also contradicted by plaintiffs' allegations elsewhere in the complaint, where plaintiffs allege that Mr. Maerov first became a member of TWC's Board in 2013, five years after the last alleged assault by Harvey Weinstein occurred.  *Compare* ¶ 297 *with* ¶ 28.

Second, plaintiffs' ratification claim also (and separately) fails because the complaint does not allege that any of Harvey Weinstein's alleged acts were committed on behalf of Mr. Maerov.  *See Carte Blanche (Singapore) PTE, Ltd v. Diners Club Int'l, Inc.*, 758 F. Supp. 908, 921 (S.D.N.Y. 1991) (act can only be ratified where alleged agent "purports to be acting for the ratifier").  The reason the complaint shies away from making any such allegation is obvious; the notion that Harvey Weinstein's alleged assaults were committed on behalf of Mr. Maerov (or any other person) is completely implausible.

Finally, plaintiffs' ratification claim fails for the additional independent reason that the complaint does not plead any facts demonstrating that Mr. Maerov had "full knowledge of the material facts."  *See Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 233 (4th Dep't 1982) (rejecting claim of ratification where there was no evidence that the principal had requisite knowledge of material facts relating to the transaction); *see also Davis v. Carroll*, 937. F. Supp. 2d 390, 427 (S.D.N.Y. 2013) (a principal can only ratify the act of its agent when it has "full and complete knowledge of the material facts" regarding the agent's acts).  Here, far from pleading any such evidence, the complaint merely makes the boilerplate allegation that "TWC's Board of Directors had investigated or knew of the acts and omissions of Weinstein . . . and refused to take any action to stop him."  ¶ 298.  That is insufficient, as the complaint itself makes clear that

Mr. Maerov did not become a member of TWC's Board until 2013, five years after the last alleged assault by Harvey Weinstein occurred.  ¶ 28.  Moreover, in the absence of any allegations explaining how or when Mr. Maerov allegedly obtained any knowledge whatsoever regarding Harvey Weinstein's alleged assaults in 2008 upon plaintiffs Geiss and Thomas (or any other plaintiff), plaintiffs have not adequately pled that Mr. Maerov ratified that conduct with "full knowledge of the material facts."

Because Plaintiffs have failed to adequately plead any of these essential elements of a ratification claim, that claim must be dismissed as against Mr. Maerov.

## VII.   PLAINTIFFS' CLAIMS AGAINST MR. MAEROV ARE BARRED BY THEIR RESPECTIVE STATUTES OF LIMITATIONS

The Court may dismiss *all* of plaintiffs' claims against Mr. Maerov on another independent ground:  the underlying facts relate to events that allegedly took place *at least nine years ago*, and in some cases, *as many as 25 years ago*.  Because the applicable statutes of limitations have long-since expired, the claims in the complaint are time-barred and must be dismissed.

### A.   Plaintiffs' Civil RICO Claims (Counts I & II) Are Time-Barred

Plaintiffs' civil RICO claims (Counts I & II) are subject to a four-year statute of limitations that began to run when each of the plaintiffs discovered or should have discovered her alleged RICO injury.  *Baiul v. William Morris Agency, LLC*, No. 13 CV 8683, 2014 U.S. Dist. LEXIS 62633, at *18 (S.D.N.Y. May 6, 2014), *aff'd*, 601 F. App'x 58 (2d Cir. 2015). Because the complaint was filed in December 2017, plaintiffs' civil RICO claims are time-barred if each plaintiff actually discovered or should have discovered her alleged RICO injury prior to December 2013.  The facts alleged in the complaint make clear that each of the plaintiffs discovered or should have discovered her alleged RICO injury no later than 2008, and certainly

prior to December 2013.  *See, e.g.*, ¶¶ 48, 71, 84.  Accordingly, plaintiffs' civil RICO claims

against Mr. Maerov are time-barred and must be dismissed.

> **B.      Plaintiffs' State Law Claims Against Mr. Maerov (Counts IV & XIV) Are Time-Barred**

Plaintiffs Geiss and Thomas also assert negligent supervision and retention claims (Count

IV) against Mr. Maerov based on a single, separate meeting each of them had with Harvey

Weinstein in 2008.  New York courts apply a three-year statute of limitations to negligent

supervision and retention claims, regardless of the nature of the underlying injury or when the

injury is discovered.  *See Universitas Educ., LLC v. T.D. Bank, N.A.*, No. 15 CV 5643, 2015 U.S.

Dist. LEXIS 170264, at *8 (S.D.N.Y. Dec. 21, 2015).  Accordingly, the three-year statute of

limitations expired on Ms. Geiss and Ms. Thomas' negligent supervision and retention claims in

2011.

Plaintiffs Geiss and Thomas have also brought claims for ratification against Mr. Maerov

(Count XIV).  The statute of limitations for a ratification claim is no more than six years, and it

may be as short as one year.[10]  Because the statute of limitations would run from the date of the

alleged underlying tortious conduct, which occurred in 2008, and certainly no later than the first

extension of Harvey Weinstein's contract, which occurred in 2010, Ms. Geiss and Ms. Thomas'

ratification claims against Mr. Maerov are time-barred and should be dismissed.

> **C.      Plaintiffs' Time-Barred Claims Are Not Saved by Any Tolling Doctrine**

---

[10]  New York "courts look to the essence of the stated claims and not to the label ascribed to them by the plaintiffs" for purposes of determining the applicable statute of limitations.  *Doe v. Jacobs*, 19 A.D.3d 641, 642 (2d Dep't 2005) (holding that "the gravamen of the plaintiffs' claims is that the defendant subjected her to unwelcome sexual contact for purposes unrelated to medical treatment [and] [r]egardless of how it is characterized, such a claim alleges an intentional tort subject to a one-year statute of limitations").  Here, plaintiffs Geiss and Thomas are seeking to recover damages for "Weinstein's acts of assault, battery, and intentional or negligent infliction of emotional distress." ¶ 300.  As such, New York courts would apply the one-year statute of limitations applicable to intentional torts to their claims for ratification.  *See, e.g., Langford v. Roman Catholic Diocese of Brooklyn*, 271 A.D.2d 494, 495 (2d Dep't 2000) ("regardless of how they were pleaded, these causes of action sought to recover damages for the unwelcome, intentional sexual conduct ... and were thus governed by a one-year Statute of Limitations"); *Tserotas v. Greek Orthodox Archdiocese of N. & S. Am.*, 251 A.D.2d 323, 324 (2d Dep't 1998) (same).

The statutes of limitations applicable to plaintiffs' claims were not tolled by the continuing violations doctrine, equitable estoppel, or duress.

      1.      Continuing Violations Doctrine Inapplicable.

The continuing violations doctrine is "heavily disfavored in the Second Circuit." *Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016); *see also Plant v. Deutsche Bank Sec., Inc.*, No. 07 CV 3498, 2007 WL 2187109 (S.D.N.Y. Jul. 23, 2007) (Hellerstein, J.) ("As a general rule, [ ] courts in the Second Circuit have viewed continuing violation arguments with disfavor."). The doctrine does not apply here because plaintiffs' claims against Mr. Maerov are based on alleged discrete tortious acts committed by Harvey Weinstein. *See Corrado*, 163 F. Supp. 3d at 20 (continuing violations doctrine does not apply to discrete acts or "merely because the claimant continues to feel the effects of a time-barred discriminatory act"); *see also Bailey v. Synthes*, 295 F. Supp. 2d 344, 353 (S.D.N.Y. 2003) (discrete acts "cannot be lumped together to form a 'continuing violation.'").

      2.      Equitable Estoppel Inapplicable.

The extraordinary remedy of equitable estoppel only applies when plaintiffs "show that the defendant wrongfully induced the plaintiff to refrain from timely commencing an action by deception, concealment, threats or other misconduct." *Overall v. Estate of Kloz*, 52 F.3d 398, 404 (2d Cir. 1995). Here, the complaint is wholly devoid of any allegations that Mr. Maerov took any action whatsoever – much less any deception, concealment or threats – to prevent plaintiffs Geiss and Thomas from filing a lawsuit. Accordingly, equitable estoppel cannot toll the statutes of limitations.

      3.      Duress Inapplicable.

The Second Circuit has stressed that the doctrine of duress, as with any tolling doctrine, is to be narrowly applied. *See Estate of Klotz*, 52 F.3d at 404. In particular, "duress tolling is available only when duress is an element of the cause of action alleged." *Id.*; *see also Schmidt v. Bishop*, 779 F. Supp. 321, 330 (S.D.N.Y. 1991) ("For this doctrine to apply, duress must be an element of the cause of action asserted"). Since duress is not an express element of any of plaintiffs' claims asserted against Mr. Maerov, it is inapplicable and cannot toll the limitations periods. *See Schmidt*, 779 F. Supp. at 330–31 (S.D.N.Y.1991) (rejecting duress tolling in case involving claims arising out of alleged sexual abuse by defendant because duress is not an element of negligence, fraud, or malpractice).

## VIII.   THE COMPLAINT DOES NOT SEEK RELIEF FROM MR. MAEROV

In their complaint, plaintiffs fail to seek any relief against Mr. Maerov. *See* Compl. Prayer for Relief at 75-76. This omission requires dismissal of the claims against Mr. Maerov. *See* Fed. R. Civ. P. 8(a)(3) ("A pleading that states a claim for relief must contain a demand for the relief sought, which may include relief in the alternative or different types of relief."); *Wilson v. Wilson-Polson*, No. 09 CV 9810, 2010 U.S. Dist. LEXIS 100425, at*11-12 (S.D.N.Y. Sept. 22, 2010) (dismissing complaint where prayer for relief sought "no damages or other equitable remedies against" defendant and the complaint, as here, lacked factual support).

## IX.   THE CLASS CLAIMS SHOULD BE DISMISSED

Because plaintiffs' individual claims fail to state a claim, the related class claims must also be dismissed. *See Grant v. N.Y. Times Co.,* No. 16 CV 3175, 2017 U.S. Dist. LEXIS 149403, at *25 (S.D.N.Y. Sept. 14, 2017) ("Of course, plaintiffs may not pursue class claims based on any individual claim that has been dismissed"); *Derbaremdiker v. Applebee's Int'l, Inc.,* No. 12 CV 1058, 2012 U.S. Dist. LEXIS 138596, at *28-29 & n.9 (E.D.N.Y. Sept. 26, 2012) (dismissing claim complaint because the named plaintiff failed to state a claim), *aff'd,* 519

F. App'x 77 (2d Cir. 2013); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 308

(S.D.N.Y. 2009) ("if the named plaintiffs have no cause of action in their own right, their

complaint must be dismissed, even though the facts set forth in the complaint may show that

others might have a valid claim").

## **CONCLUSION**

For the reasons detailed above, the Court should dismiss Counts I, II, IV and XIV of the

Complaint against Mr. Maerov with prejudice.


Dated: March 22, 2018
      New York, New York

Respectfully submitted,

FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP

By:  _____*/s/ Israel David*_____
                    Israel David

Israel David
Anne S. Aufhauser *(admitted in California only)*
One New York Plaza
New York, New York 10004
Telephone:  (212) 859-8000
israel.david@friedfrank.com
anne.aufhauser@friedfrank.com


FRIED, FRANK, HARRIS, SHRIVER
 & JACOBSON LLP

James D. Wareham *(not admitted in SDNY)*
801 17th Street, NW
Washington, DC 20006
Telephone:  (202) 639-7000
james.wareham@friedfrank.com

*Attorneys for Defendant Lance Maerov*