**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUISETTE GEISS, KATHERINE KENDALL, ZOE BROCK, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA SAGEMILLER, and NANNETTE KLATT, individually and on behalf of all others similarly situated,
,

Plaintiffs,

-vs-

THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX, LLC, MIRAMAX FILM CORP., MIRAMAX FILM NY LLC, HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MIRAMAX DOES 1-10, and JOHN DOES 1-50, inclusive,

Defendants.

Civil Action No.: 1:17-CV-9554 (AKH)

**ORAL ARGUMENT REQUESTED**

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ROBERT WEINSTEIN'S MOTION TO DISMISS COUNTS I, II, III, IV, XIII, AND XIV OF THE COMPLAINT**

SCHULTE ROTH & ZABEL LLP
919 Third Avenue
New York, NY 10022
(212) 756-2000

*Attorneys for Defendant Robert Weinstein*

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................ 1

SUMMARY OF ALLEGATIONS ........................................ 3

ARGUMENT ........................................ 5

I. PLAINTIFFS' CLAIMS AGAINST MR. WEINSTEIN ARE TIME-BARRED ........................................ 5

A. Equitable Estoppel Does Not Salvage Plaintiffs' Stale Claims ........................................ 6

B. Duress Tolling Does Not Salvage Plaintiffs' Stale Claims ........................................ 9

C. The Continuing Violation Doctrine Does Not Apply ........................................ 10

II. THE COMPLAINT FAILS TO STATE A CLAIM FOR A RICO VIOLATION ........................................ 11

A. Plaintiffs Fail to Plead that Mr. Weinstein Committed Any Predicate Acts ........................................ 12

1. Commercial Sex Trafficking Is Not Adequately Pled ........................................ 13

2. Witness Tampering Is Not Adequately Pled ........................................ 14

3. Mail/Wire Fraud is Not Adequately Pled ........................................ 15

B. Plaintiffs Fail to Plead a RICO Enterprise ........................................ 17

C. Plaintiffs Fail to Plead that Mr. Weinstein Participated in the Operation of a RICO Enterprise ........................................ 19

D. Plaintiffs Fail to Plead Compensable Injury Under RICO ........................................ 19

E. Plaintiffs Fail to Plead that Mr. Weinstein Caused Their Injuries ........................................ 20

III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RICO CONSPIRACY ........................................ 20

IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION OR RETENTION ........................................ 20

A. Plaintiffs Do Not Allege that Mr. Weinstein Owed Them a Duty of Care ........................................ 21

B. The Complaint Does Not Allege an Employer-Employee Relationship ........................................ 22

C. Plaintiffs Do Not Allege Facts Showing Mr. Weinstein Knew or Should Have Known About Harvey's Propensity for Sexual Misconduct ....................22

D. Plaintiffs Do Not Allege that Any Injury Occurred on Premises of, or Using Property of, Either Mr. Weinstein, Miramax, or TWC....................25

V. THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION....................27

VI. THE CLASS CLAIMS SHOULD BE DISMISSED....................29

CONCLUSION....................29

**TABLE OF AUTHORITIES**

**Cases** **Page(s)**

*A.B v. Staropoli*,
929 F. Supp. 2d 266 (S.D.N.Y. 2013) ..... 21, 23

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*,
2 F. Supp. 2d 485 (S.D.N.Y. 1998) ..... 27, 28

*Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*,
No. 02 Civ. 2195 (RWS), 2002 WL 31409450 (S.D.N.Y. Oct. 24, 2002) ..... 14

*Aerowest GmbH v. Freitag*,
No. CV 15-2894, 2016 WL 3636619 (E.D.N.Y. June 28, 2016) ..... 17

*Airlines Reporting Corp. v. Aero Voyagers, Inc.*,
721 F. Supp. 579 (S.D.N.Y. 1989) ..... 21

*Anderson v. Adam's Mark Hotels & Resorts*,
211 F.3d 1277 (table), 2000 WL 390107 (10th Cir. 2000) ..... 26

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ..... 4

*Azrielli v. Cohen Law Offices*,
21 F.3d 512 (2d Cir. 1994) ..... 19

*Barrett v. Forest Labs., Inc.*,
39 F. Supp. 3d 407 (S.D.N.Y. 2014) ..... 10

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F. Supp. 1522 (S.D.N.Y. 1991) ..... 27

*Belmont v. MB Inv. Partners, Inc.*,
708 F.3d 470 (3d Cir. 2013) ..... 22

*Bigio v. Coca-Cola Co.*,
675 F.3d 163 (2d Cir. 2012) ..... 28

*Cedar Swamp Hldgs., Inc. v. Zaman*,
487 F. Supp. 2d 444 (S.D.N.Y. 2007) ..... 17

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*
543 F. App'x 72 (2d Cir. 2013), ..... 18

*Chylinski v. Bank of Am., N.A.*,
630 F. Supp. 2d 218 (D. Conn. 2009) ..... 22

*Coleman & Co. Secs., Inc. v. Giaquinto Family Tr.*,
236 F. Supp. 2d 288 (S.D.N.Y. 2002) .......... 28

*Cont'l Fin. Co. v. Ledwith*,
No. 08 CIV. 7272 (PAC), 2009 WL 1748875 (S.D.N.Y. June 22, 2009) .......... 17

*Corley v. Jahr*,
No. 11 Civ. 9044 (RJS)(KNF), 2014 WL 772253 (S.D.N.Y. Feb. 10, 2014) .......... 20, 22

*Corrado v. N.Y. Unified Court Sys.*,
163 F. Supp. 3d 1 (E.D.N.Y. 2016) .......... 10, 11

*Dava v. City of New York*,
No. 1:15-cv-08575 (ALC), 2016 WL 4532203 (S.D.N.Y. Aug. 29, 2016) .......... 21

*DeFalco v. Bernas*,
244 F.3d 286 (2d Cir. 2001) .......... 12

*Doe v. Alsaud*,
12 F. Supp. 3d 674 (S.D.N.Y. 2014) .......... 23, 26

*Doe v. Blake*,
809 F. Supp. 1020 (D. Conn. 1992) .......... 11

*Doe v. Holy See*,
17 A.D.3d 793 (3d Dep't 2005) .......... 7

*Doe v. Kolko*,
Nos. 06-CV-2096, 06-CV-2215 (SLT) (MDG),
2008 WL 4146199 (E.D.N.Y. Sept. 5, 2008) .......... 8

*Matter of Eberhard*,
6 A.D.3d 971 (3d Dep't 2004) .......... 8

*Ehrens v. Lutheran Church*,
385 F.3d 232 (2d Cir. 2004) .......... 21, 23

*Feinberg v. Katz*,
No. 99 CIV 45 (CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002) .......... 16, 17, 18, 23

*G-I Hldgs., Inc. v. Baron & Budd*,
179 F. Supp. 2d 233 (S.D.N.Y. 2001) .......... 12

*Glick v. Berk & Michaels, P.C.*,
No. 90 Civ. 4230 (CSH), 1991 WL 152614 (S.D.N.Y. July 26, 1991) .......... 6, 8

*Gonzalez v. Hasty*,
802 F.3d 212 (2d Cir. 2015) .......... 10

*Gross v. Waywell*,
628 F. Supp. 2d 475 (S.D.N.Y. 2009) .......... 12

*Janese v. Scrufari*,
No. 09-CV-593 (JTC), 2013 WL 5503953 (W.D.N.Y. Oct. 2, 2013) .......... 6

*Kalimantano GmbH v. Motion in Time, Inc.*,
939 F. Supp. 2d 392 (S.D.N.Y. 2013) .......... 15

*Khapesi v. City of New York*,
No. 13-CV-4391(KBF), 2014 WL 2605342 (S.D.N.Y. June 10, 2014) .......... 24, 25

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) .......... 11, 12

*Klehr v. A.O. Smith Corp.*,
521 U.S. 179 (1997) .......... 11

*Li Jun An v. Hui Zhang*,
No. 13 Civ. 5064 (PKC), 2013 WL 6503513 (S.D.N.Y. Dec. 6, 2013) .......... 15

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*,
No. CV 14-1299, 2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014) .......... 20

*McIntosh v. United States*,
No. 14-CV-7889 (KMK), 2016 WL 1274585 (S.D.N.Y. Mar. 31, 2016) .......... 14

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Young*,
No. 91 Civ. 2923 (CSH), 1994 WL 88129 (S.D.N.Y. Mar. 15, 1994) .......... 15

*Miner v. Town of Cheshire*,
126 F. Supp. 2d 184 (D. Conn. 2000) .......... 10

*Murphy v. Guilford Mills, Inc.*,
No. 02CIV10105 (LTS)(THK), 2005 WL 957333 (S.D.N.Y. Apr. 22, 2005) .......... 27

*Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*,
420 F. Supp. 2d 253 (S.D.N.Y. 2006) .......... 18

*Noonan v. City of New York*,
No. 14-CV-4084-LTS-JLC, 2015 WL 3948836 (S.D.N.Y. June 26, 2015) .......... 24

*Overall v. Estate of Klotz*,
52 F.3d 398 (2d Cir. 1995) .......... 9

*P. v. Delta Air Lines, Inc.*,
102 F. Supp. 2d 132 (E.D.N.Y. 2000),
*aff'd*, *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128 (2d Cir. 2001) .......... 26

*Pharr v. Evergreen Gardens, Inc.*,
No. 03 Civ. 5520(HB), 2004 WL 42262 (S.D.N.Y. Jan. 7, 2004)
*aff'd*, 123 F. App'x 420 (2d Cir. 2005) ....................11

*In re Platinum & Palladium Commodities Litig.*,
828 F. Supp. 2d 588 (S.D.N.Y. 2011). ....................12

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
33 F. Supp. 3d 245 (S.D.N.Y. 2014) ....................27

*Riverwoods Chappaqua Corp. v. Marine Midland Bank*,
30 F.3d 339 (2d Cir. 1994) ....................9

*Rotella v. Wood*,
528 U.S. 549 (2000) ....................8

*Selkirk v. State*,
249 A.D.2d 818 (3d Dep't 1998) ....................11

*Snowden v. Lexmark Int'l, Inc.*,
237 F.3d 620 (6th Cir. 2001) ....................13

*Stamile v. Cnty. of Nassau*,
No. CV 10-2632 (AKT), 2014 WL 1236885 (E.D.N.Y. Mar. 25, 2014) ....................23

*Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*,
No. 15 Civ. 6940 (KMK), 2017 WL 1216925 (S.D.N.Y. Mar. 30, 2017) ....................11

*Twersky v. Yeshiva Univ.*,
993 F. Supp. 2d 429 (S.D.N.Y. 2014) ....................6, 7, 8

*United States v. Shellef*,
507 F.3d 82 (2d Cir. 2007) ....................15

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
No. 14 CV 7349 (AJN), 2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) ....................19

*Zumpano v. Quinn*,
6 N.Y.3d 666 (2006) ....................7

**Statutes**

18 U.S.C. § 1341 ....................12

18 U.S.C. § 1343 ....................12

18 U.S.C. § 1512 ....................12, 14

18 U.S.C. § 1515 ....................14

18 U.S.C. § 1590 .......... 12

18 U.S.C. § 1591 .......... 12, 13

18 U.S.C. § 1962(c) .......... 11, 12

18 U.S.C. § 1962(d) .......... 20

**Rules**

Fed. R. Civ. P. 12(b)(6) .......... 4

Fed. R. Civ. P. 9(b) .......... 6, 15

N.Y. CPLR § 213-1 .......... 5

**Other Authorities**

RESTATEMENT (SECOND) OF TORTS § 317 (1965) .......... 26

Defendant Robert Weinstein ("Mr. Weinstein") respectfully submits this memorandum of law in support of his motion to dismiss Counts I, II, III, IV, XIII, and XIV of the Complaint (the "Complaint"), all of the counts against him.

## PRELIMINARY STATEMENT

This putative class action lawsuit, brought by six individually-named plaintiffs ("Plaintiffs"), arises out their past encounters with defendant Harvey Weinstein ("Harvey"). During those encounters, which all occurred between 1993 and 2008, Harvey allegedly isolated Plaintiffs in his homes, hotel rooms and private offices and subjected them to sexual assault or other forcible physical contact. Plaintiffs assert causes of action for assault, civil battery and intentional infliction of emotional distress against Harvey.

By contrast, Plaintiffs do not allege that *Robert* Weinstein, who is Harvey's younger brother and former business partner at The Weinstein Company ("TWC") and Miramax, had any involvement in these encounters whatsoever. Not one Plaintiff alleges that Mr. Weinstein was present during Harvey's encounters with them, that he played any role in arranging these encounters, or that he knew about or expected or facilitated the sexual misconduct that allegedly occurred at these encounters. Not one Plaintiff alleges that she ever communicated with Mr. Weinstein, met him, or even saw him, or that he ever directed any conduct at her.

Nevertheless, Plaintiffs now seek to hold Mr. Weinstein accountable for the alleged wrongs committed against them by his brother, claiming that Mr. Weinstein (along with TWC, Miramax, and nine other TWC directors) violated the Racketeer Influenced and Corrupt Organization Act ("RICO"), negligently supervised Harvey, and ratified Harvey's conduct. Plaintiffs' claims of wrongdoing against Mr. Weinstein, however, are entirely conclusory and legally defective for a host of reasons, requiring their dismissal.

As an initial matter, all of Plaintiffs' claims against Mr. Weinstein are barred by the applicable statutes of limitations. Both the relevant conduct and the resulting injuries are alleged to have taken place at least nine years and, in some cases, nearly 25 years before the Complaint was filed in December 2017. Although Plaintiffs seek refuge in various tolling doctrines, they can find none. Under well-established case law, Plaintiffs have failed to plead a legally sufficient reason why they could not have filed suit earlier, and certainly have not alleged any improper conduct by Mr. Weinstein that prevented them from doing so.

In addition to being time-barred, each of Plaintiffs' claims against Mr. Weinstein fails as a matter of law. The Complaint is devoid of even a single factual allegation suggesting that Mr. Weinstein committed any of the charged RICO predicate acts: commercial sex trafficking, witness tampering, or mail or wire fraud. Indeed, other than Harvey's own acts, the Complaint's allegations of RICO wrongdoing center on the activities of a so-called "Army of Spies" that consisted of Harvey's lawyers, investigators, and other persons who have not been named as defendants. Mr. Weinstein is not alleged to have played any role in those activities. Moreover, Plaintiffs fail to sufficiently plead a number of other RICO elements, including a racketeering enterprise, Mr. Weinstein's participation in such an enterprise, and cognizable RICO injury.

Plaintiffs' common law claims against Mr. Weinstein are equally infirm. The Complaint fails to plead any of the necessary elements of a claim for negligent supervision or retention: that Mr. Weinstein owed Plaintiffs a duty of care, that he was Harvey's employer or supervisor, that he had knowledge of Harvey's propensity for sexual assault, or that Harvey's acts were committed on Mr. Weinstein's premises or using his property. Likewise, the Complaint does not state a viable ratification claim: no allegations suggest a principal-agent relationship between the Weinstein brothers or Mr. Weinstein's full knowledge and acceptance of Harvey's acts.

For these and the additional reasons set forth below, the Court should dismiss Counts I, II, III, IV, XIII, and XIV of the Complaint against Mr. Weinstein.

## SUMMARY OF ALLEGATIONS

The Complaint alleges that, in the late 1970s, Mr. Weinstein and his older brother Harvey created a small independent film-distribution studio company called Miramax, named after their parents. (¶ 34.)[1] Miramax became the most successful independent film studio in America, producing movies that achieved both critical attention and commercial success. (*Id.*) In 1993, the Weinsteins sold Miramax to Disney but continued to remain at the head of the company, Mr. Weinstein as an executive and co-chairman. (¶¶ 23, 35, 220.) The Weinsteins left Miramax on September 30, 2005 to form their own production company, TWC, along with several other media executives. (¶ 37.) Mr. Weinstein has served as a director of TWC ever since. (¶ 23.)

Beyond this high-level biographical information, the Complaint says virtually nothing about Mr. Weinstein. In its 76 pages and 300 paragraphs, his name appears only an additional ten times—and only *twice* in the section alleging "Facts" (*see* ¶¶ 34-180):

1. The allegations about Ms. Geiss's incident with Harvey include that while "hold[ing] on to [her] arm, [Harvey] Weinstein told Geiss that he would introduce her to his brother, Bob, and she could act in films through Dimension Films, a TWC subsidiary, if she watched him masturbate. She said no. He then offered her a three-film deal as an actress to stay. She said no. Fearing an imminent sexual assault, Geiss escaped [Harvey] Weinstein's grasp and fled, with [Harvey] Weinstein giving chase." (¶ 101.)

2. The Complaint alleges that "Kathy DeClesis, Bob Weinstein's assistant in the early 1990s at Miramax," told the *The New York Times* decades later, in 2017, that Harvey's harassment of women "wasn't a secret to the inner circle." (¶ 138.)

Nowhere in these two paragraphs, or anywhere else in the Complaint, is there a single non-conclusory allegation that Mr. Weinstein participated in, helped facilitate, committed any act in furtherance of, or knew about Harvey's alleged sexual assaults.

[1] Citations in the form "¶" refer to paragraphs of the Complaint ("Compl."), ECF No. 1.

Indeed, the Complaint's remaining eight references to Mr. Weinstein include *no* factual content. Mr. Weinstein is specifically mentioned twice early in the Complaint, in conclusory assertions that: (i) he (along with a laundry list of individuals and corporate entities, including each of the Director Defendants[2]) allegedly was a member of what Plaintiffs term the "Weinstein Sexual Enterprise" (¶ 5); and (ii) he (like the Director Defendants) allegedly "has known of Harvey Weinstein's pattern and practice of predatory sexual conduct toward women." (¶ 23; *compare* ¶¶ 24-32.) Mr. Weinstein's name does not appear again until the section setting forth the Counts—*i.e.*, in rote recitals of the elements of certain counts. (*See* ¶¶ 222, 224, 291, 292, 294.) His name then appears one final time, in the Prayer for Relief.[3]

Under well-settled pleading standards,[4] these threadbare factual allegations are not nearly enough to adequately state any of the claims Plaintiffs have asserted against Mr. Weinstein: a violation of the RICO statute (Count I), RICO conspiracy (Count II) (together, the "RICO claims"), negligent supervision or retention (Counts III and IV), and ratification (Counts XIII and XIV). The absence of specific facts alleged against Mr. Weinstein, moreover, cannot be overcome by the Complaint's generalized allegations—no matter how large in number—that lump him together with varying assortments of people and entities, including TWC's "Board" (*see*, *e.g.*, ¶¶ 129, 135, 228, 298, 300,); "executives, officers and employees" of TWC and Miramax (¶ 135), the so-called "Complicit Producers" (*see* ¶ 2); the "Weinstein Participants"

---

[2] The term "Director Defendants" is used herein to refer collectively to defendants Dirk Ziff, Tim Sarnoff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, and James Dolan, all of whom either have served or currently serve alongside Mr. Weinstein on TWC's board of directors (the "Board"). All other capitalized terms, unless defined herein, shall have the meaning given to them in the Complaint.

[3] In the Prayer for Relief, Plaintiffs mistakenly ask that the Court enter judgment against Mr. Weinstein on all fourteen counts in the Complaint, even though he is named in only six of them. (*See* Compl. at 75.)

[4] The standard of review under Rule 12(b)(6) is a familiar one: for a complaint to survive, it must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

(¶¶ 5, 142, 146, 194, 215); the "Weinstein Sexual Enterprise"; or simply "Defendants." (*See, e.g.*, ¶¶ 5-7, 140-42, 149, 153, 186.)

**ARGUMENT**[5]

**I. PLAINTIFFS' CLAIMS AGAINST MR. WEINSTEIN ARE TIME-BARRED**

It is undeniable that Plaintiffs' causes of action expired long ago. Plaintiffs' claims against Mr. Weinstein arise out of particular encounters each woman allegedly had with his brother, Harvey, involving unwelcome sexual advances, all of which occurred on discrete occasions *at least nine years ago*, and some as many as *25 years ago.* (*See* ¶¶ 48, 71, 84, 96, 115, 104.)

The Complaint, however, was not filed until December 2017—well outside the four-year statute of limitations applicable to Plaintiffs' RICO claims,[6] the three-year statute of limitations applicable to Plaintiffs' claims for negligent supervision or retention,[7] and the (at most) six-year statute of limitations applicable to Plaintiffs' ratification claims.[8] Accordingly, Counts I, II, III, IV, XIII, and XIV are time-barred, and must be dismissed.

Recognizing that the alleged facts fall outside the relevant limitations periods, Plaintiffs

[5] To avoid unnecessary duplication, and consistent with the Court's instruction at the April 13, 2018 status conference, we rely on and incorporate by reference below various of the legal arguments, and authorities cited in support thereof, made in briefs filed by Mr. Weinstein's co-defendants in support of their motions to dismiss the Complaint. These include the briefs filed by (i) TWC (ECF No. 48) (hereinafter, "TWC Br."); (ii) Miramax (ECF No. 67) ("Miramax Br."); (iii) Lance Maerov (ECF No. 87) ("Maerov Br."); and (iv) James Dolan, Paul Tudor Jones, Marc Lasry, and Dirk Ziff, collectively (ECF No. 54) ("Outside Dir. Br.").

[6] The four-year limitations period for civil RICO claims begins to run on the date that the plaintiff discovered, or should have discovered, her alleged injury. Here, the Complaint demonstrates that each Plaintiff discovered her alleged injury at or shortly after Harvey's alleged misconduct—and in any event, well before December 2013. (*See* Maerov Br. 27-28; Outside Dir. Br. 37-40; TWC Br. 11-12.)

[7] New York courts apply a three-year statute of limitations to negligent supervision and retention claims, regardless of the nature of the underlying injury or when the injury is discovered. Accordingly, all limitations periods had run on Plaintiffs' claims by the start of 2012. (*See* Maerov Br. 28; Outside Dir. Br. 41; Miramax Br. 6 & n.6.)

[8] *See* N.Y. CPLR § 213-1. Here, this outer limit renders Plaintiffs' ratification claims, all of which are based on alleged torts in 2008 and earlier, time-barred. (*See* Outside Dir. Br. 41-42; Maerov Br. 28; *see also id.* at 28 n.10 (ratification claims can be subject to limitations period as short as one year in New York).

contend their claims were tolled until October 5, 2017, when "*The New York Times* published a powerful report revealing allegations of sexual harassment against [Harvey] Weinstein." (¶ 181.) But none of the three tolling doctrines upon which Plaintiffs rely—equitable estoppel, duress, and the continuing violation doctrine (Compl. at 47 (Heading F))—is applicable here.

**A. Equitable Estoppel Does Not Salvage Plaintiffs' Stale Claims**

Equitable estoppel may be used to toll the statute of limitations where the plaintiff is "induced by fraud, misrepresentations or deception to refrain from filing a timely action." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014). The fraud or deception must be "*affirmative* and *specifically directed* at … the plaintiff"; statements directed at other persons, or "broad misstatements to the community at large," are not enough. *Id.* (emphasis added). Under Fed. R. Civ. P. 9(b), Plaintiffs must plead the fraudulent concealment on which their equitable estoppel allegations are based with particularity. *Id.* at 443 n.5.

Moreover, "[a]llegations that *other* defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against *all* defendants. That is because the doctrine of fraudulent concealment tolls the statute of limitations only as to those defendants who committed the concealment." *Glick v. Berk & Michaels, P.C.*, No. 90 Civ. 4230 (CSH), 1991 WL 152614, at *9 (S.D.N.Y. July 26, 1991) (quotations and citation omitted) (emphasis in original)). In other words, "the plaintiff may not use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in affirmative fraudulent acts to conceal." *Id.* (citation omitted); *accord, e.g., Janese v. Scrufari*, No. 09-CV-593-JTC, 2013 WL 5503953, at *4 (W.D.N.Y. Oct. 2, 2013).

The Complaint does not allege any affirmative misrepresentations or deception, much less any committed by Mr. Weinstein or directed at one of the named Plaintiffs. Accordingly,

there is no basis for tolling the statute of limitations on this ground, as both this Court and the New York Court of Appeals have squarely held in analogous circumstances. *See Twersky*, 993 F. Supp. 2d at 444-49 (granting motion to dismiss complaint filed by former high school students alleging sexual abuse by their teachers, and rejecting plaintiffs' argument that their claims were equitably tolled until a news article exposed the sexual abuse); *Zumpano v. Quinn*, 6 N.Y.3d 666, 675 (2006) (dismissing as untimely claims based on alleged sexual abuse by clergy members where "[p]laintiffs d[id] not allege any specific misrepresentation to them by defendants, or any deceptive conduct sufficient to constitute a basis for equitable estoppel").[9]

Plaintiffs' allegations that "[Harvey] Weinstein and his associates used nondisclosure agreements, payoffs, and legal threats to suppress the[] accounts" of allegedly abused women and "enforced a code of silence" (¶¶ 169, 178) are insufficient. In *Zumpano*, the plaintiffs similarly alleged that the defendant dioceses and bishops were aware that priests had abused children and engaged in "a corrupt campaign and pattern of concealment" by, among other things, "making secret payments to victims and their families in return for their silence." 6 N.Y.3d at 672. But the Court of Appeals held that such conduct "is not fraudulent concealment as a matter of law." *Id.* at 675. Here, as in *Zumpano*, Plaintiffs' allegations simply do not "alter [their] early awareness of the essential facts and circumstances underlying their causes of action"—namely, Harvey's alleged sexual misconduct, his employment at Miramax and TWC, and Mr. Weinstein's role at those companies—"or their ability to timely bring their claims." *Id.*

---

[9] For "concealment without actual misrepresentation" to give rise to equitable tolling, "the plaintiff must demonstrate a fiduciary relationship . . . which gave the defendant an obligation to inform him or her of facts underlying the claim." *Zumpano*, 6 N.Y.3d at 675 (citation omitted); *accord, e.g., Twersky*, 993 F. Supp. 2d at 444; *Doe v. Holy See*, 17 A.D.3d 793, 795 (3d Dep't 2005). Here, Plaintiffs do not, and cannot, allege a fiduciary relationship with Mr. Weinstein (or any other defendant).

at 674; *see Twersky*, 993 F. Supp. 2d at 444, 447.[10]

Likewise, in *Doe v. Kolko*, Nos. 06-CV-2096 (SLT)(MDG), 06-CV-2215 (SLT)(MDG), 2008 WL 4146199 (E.D.N.Y. Sept. 5, 2008), the court rejected an equitable tolling claim made by the plaintiffs, former religious school students who were allegedly sexually abused by a rabbi. The plaintiffs in *Kolko* argued that it was unnecessary for them to allege misrepresentations or deceptive conduct directed specifically at them, because the school allegedly "intimidated" *other* victims "into silence." (*See* ¶¶ 170-77 (similarly relying on accounts of *other* women who have accused Harvey of abuse).) Noting that this argument evinced a "fundamental misunderstanding of the equitable estoppel doctrine," the court held that equitable estoppel was appropriate only when a plaintiff is prevented from filing suit "due to defendants' misconduct toward the potential plaintiff, not a community at large," and dismissed the action as time-barred. *Id.* at *4.

Finally, the Complaint lacks any non-conclusory allegations that *Mr. Weinstein* engaged in any misconduct designed to prevent Plaintiffs from filing suit within the applicable limitations periods. For this additional reason, Plaintiffs cannot rely on equitable estoppel to resuscitate their time-barred claims against Mr. Weinstein. *See, e.g., Matter of Eberhard*, 6 A.D.3d 971, 972 (3d Dep't 2004) (equitable estoppel did not toll claims by allegedly abused student against school district where, despite plaintiff's claim that the abusive teacher threatened that "exposing their relationship would embarrass [plaintiff]," there was nothing to indicate that "the [school] district deceived [plaintiff] in any fashion or that the teacher's representations should be imputed to the district"); *accord, e.g., Glick*, 1991 WL 152614, at *9-10.

[10] Plaintiffs cannot claim that they were unable to bring their RICO claims until they were aware that their injuries were part of a "pattern" of supposed misconduct. The Supreme Court specifically rejected such an accrual rule for RICO actions in *Rotella v. Wood*, 528 U.S. 549, 556-58 (2000). Rather, as noted above, a RICO claim accrues when a plaintiff discovers or should have discovered her injury; and as alleged here, that occurred, for each Plaintiff, more than four years before the institution of this action. (*See supra* n.6.)

### B. Duress Tolling Does Not Salvage Plaintiffs' Stale Claims

Plaintiffs allege that "class members" were placed "under duress" and thereby "induced . . . to forebear asserting their legal rights in response to [Harvey] Weinstein's actions" out of fear that Harvey could "blacklist" them or otherwise retaliate against them if they complained about his abusive behavior. (¶¶ 168-69.) But as a matter of law, these allegations fall far short of meeting the stringent standards for tolling the statute of limitations based on duress.

The Second Circuit has taken a "narrow[] view" of when a claim of duress can toll the statute of limitations in a civil RICO action. *Riverwoods Chappaqua Corp. v. Marine Midland Bank*, 30 F.3d 339, 347 (2d Cir. 1994). Tolling based on duress "is available only when *specific threats by the defendant* are used to *prevent the plaintiff from commencing a lawsuit* at an earlier time." *Id.* (emphasis added). Here, the Complaint does not allege that Mr. Weinstein or any other defendant made any specific threat to any Plaintiff concerning the filing of a lawsuit. Accordingly, duress is not a viable basis for tolling the statute of limitations on Plaintiffs' RICO claims. *See id.* at 347-48 (duress tolling unavailable where none of defendant's threats of economic injury "were directed at the filing of this lawsuit").

New York law takes a similarly narrow view of duress tolling: "[it] is available only when duress is an element of the cause of action alleged." *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995). Moreover, even where duress is a necessary element, tolling can apply only where the plaintiff is subjected to a "continuous wrong," *i.e.*, "the tortious conduct itself must continue," and it must "continue uninterrupted." *Id.* at 404-05.

Here, duress is not an element of either a claim for negligent supervision or retention or of a claim for ratification, the two state-law causes of action asserted by Plaintiffs against Mr. Weinstein. (*See infra*, pp. 20-21 (listing elements of negligent supervision or retention claim); p.

27 (listing elements of ratification claim).) Nor do Plaintiffs allege that the tortious conduct directed at each of them was continuing in nature. Accordingly, duress is equally unavailing as a theory for tolling the statute of limitations on Plaintiffs' common law claims.

### C. The Continuing Violation Doctrine Does Not Apply

The continuing violation doctrine—one "heavily disfavored in the Second Circuit and [which] courts have been loath to apply … absent a showing of compelling circumstances," *Corrado v. N.Y. Unified Court Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016) (quotations omitted)—likewise does not salvage Plaintiffs' time-barred claims.

First, the continuing violation doctrine does not apply "to discrete unlawful acts, even where those discrete acts are part of a 'serial violation.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015); *see also Miner v. Town of Cheshire*, 126 F. Supp. 2d 184, 190 (D. Conn. 2000) ("Discrete incidents[,] or *even similar multiple incidents* of discrimination …, do not amount to a continuing violation.") (emphasis added). Here, Plaintiffs' claims against Mr. Weinstein arise from alleged discrete torts committed by Harvey, all of which took place outside the relevant limitations periods. While the Complaint also references assaults that Harvey allegedly committed against *other* women, those allegations cannot resuscitate Plaintiffs' claims, both because any such assault would *also* constitute a discrete act and because named Plaintiffs cannot rely on other putative class members with timely claims to pursue their time-barred causes of action. *See Barrett v. Forest Labs., Inc.*, 39 F. Supp. 3d 407, 459 (S.D.N.Y. 2014).

Second, to the extent that Plaintiffs contend that they were unable to obtain work after their respective assaults, or were subject to the continual fear of being "blacklisted" (*see* ¶¶ 2, 7, 59, 114, 168, 197), such allegations are legally insufficient because they "amount to nothing more than an attempt to apply the continuing violation doctrine because Plaintiff continued to

feel the effects of a time-barred discriminatory act." *Corrado*, 163 F. Supp. 3d at 21; *see also Selkirk v. State*, 249 A.D.2d 818, 819 (3d Dep't 1998) (under New York law, application of the continuing violation doctrine cannot be predicated on "the continuing effects of earlier unlawful conduct"); *Pharr v. Evergreen Gardens, Inc.*, No. 03 Civ. 5520(HB), 2004 WL 42262, at *2 (S.D.N.Y. Jan. 7, 2004) (dismissing RICO action and rejecting plaintiffs' reliance on continuing violation theory, despite allegation that defendants continued to send unlawful rent bills within the limitations period, because plaintiffs knew or should have known of their injury when defendants originally imposed fraudulent rent increase), *aff'd*, 123 F. App'x 420 (2d Cir. 2005).

Third, for the continuing violation doctrine to apply to him, Plaintiffs would have to allege that Mr. Weinstein engaged in continued wrongdoing against them within the limitations period. *See Doe v. Blake*, 809 F. Supp. 1020, 1025 (D. Conn. 1992) ("Each defendant will be discussed individually for application of the 'continuing violation' theory to him or her."); *see also* Miramax Br. 9. The Complaint, however, is devoid of any such allegation. Although one Plaintiff, Ms. Kendall, complains about contacts from an individual identifying himself as "Seth Freeman" in 2017 (¶¶ 62-64), the Complaint does not allege any involvement by Mr. Weinstein in that alleged incident.[11]

## II. <u>THE COMPLAINT FAILS TO STATE A CLAIM FOR A RICO VIOLATION</u>

To plead a violation of § 1962(c), a plaintiff must adequately allege the following elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kim v. Kimm*, 884 F.3d 98, 103 (2d Cir. 2018); *see also Tardibuono-Quigley v. HSBC Mortg. Corp. (USA)*, No. 15-CV-6940 (KMK), 2017 WL 1216925, at *5 (S.D.N.Y. Mar. 30, 2017). In

[11] Nor does Ms. Kendall allege any cognizable RICO injury resulting from the "Seth Freeman" contacts. (See TWC Br. 12 n.5.) In any event, the Supreme Court has squarely held that a plaintiff "cannot use an independent, new predicate act as a bootstrap to recover for injuries caused by other, earlier predicate acts that took place outside the limitations period." *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997).

addition, a plaintiff must allege "an injury to [her] business or property … caused by the violation of Section 1962." *Kim*, 884 F.3d at 103. Moreover, each of these elements "must be established as to *each individual defendant*." *DeFalco v. Bernas*, 244 F.3d 286, at 305-06 (2d Cir. 2001) (emphasis added). As set forth below, for a number of reasons, the Complaint fails to adequately allege the requisite elements against Mr. Weinstein.

### A. <u>Plaintiffs Fail to Plead that Mr. Weinstein Committed Any Predicate Acts</u>

"[P]laintiffs must allege that *each defendant* committed at least two predicate acts of racketeering activity" within a 10-year period. (Outside Dir. Br. 10-11 (collecting cases).) Against Mr. Weinstein, the Complaint alleges *not even one.* Instead, it alleges in the collective that the numerous "Defendants" engaged in three categories of predicate acts—(i) sex trafficking in violation of 18 U.S.C. §§ 1590 and 1591; (ii) witness tampering in violation of 18 U.S.C. § 1512; and (iii) mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343 (¶ 196)—without identifying which defendant(s) supposedly engaged in which predicate act(s).

This form of impermissible "group pleading" itself renders Plaintiffs' RICO claims fatally defective, requiring dismissal. *See, e.g.*, *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011) (dismissing RICO claim because "Plaintiffs rely impermissibly on group pleading to allege the existence of predicate acts … [and] do nothing to differentiate the conduct of the various Defendants"); *Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (same); *G-I Hldgs., Inc. v. Baron & Budd*, 179 F. Supp. 2d 233, 264 (S.D.N.Y. 2001) (dismissing RICO claims based on failure to plead predicate witness tampering violation where "[a]lthough at least one of the individual defendants [was] charged with a primary act of witness tampering, Holdings' allegations ma[de] it impossible to determine which defendant [was] so charged"); *see also* Outside Dir. Br. 11.

But even if the Complaint *had* individually charged Mr. Weinstein with these purported predicate acts, dismissal would still be required for an additional, fundamental reason: the Complaint contains no factual allegations to support his commission of a single one of them.

1. Commercial Sex Trafficking Is Not Adequately Pled

To be liable for commercial sex trafficking, a person must, *inter alia*, either "recruit[], entice[], harbor[], transport[], provide[], obtain[], advertise[], maintain[], patronize[], or solicit[] by any means a person" to "engage in a commercial sex act," 18 U.S.C. § 1591(a)(1), or "benefit[], financially or by receiving anything of value, from participation in a [sex trafficking] venture." *Id.* § 1591(a)(2); *see also generally* Outside Dir. Br. 13-15. The Complaint's threadbare allegations raise no plausible inference that Mr. Weinstein did either of these things.

Even if Plaintiffs had adequately alleged that Harvey engaged in commercial sex trafficking in violation of 18 U.S.C. § 1591—and they have not (*see* Outside Dir. Br. 12 n.9)[12]—the Complaint contains no allegations, let alone plausible ones, that Mr. Weinstein recruited, enticed, or caused any woman to engage in commercial sexual acts with Harvey. Nor is there any allegation that Mr. Weinstein participated in Harvey's alleged predatory sexual conduct, much less that he benefitted (financially or otherwise) from doing so. The Complaint therefore fails to sufficiently plead that Mr. Weinstein engaged in commercial sex trafficking.

The Complaint is equally devoid of plausible allegations that Mr. Weinstein knew (or recklessly disregarded) that "force, threats of force, fraud, [or] coercion" would be used by Harvey to cause women to engage in "commercial sex acts," which is another required element of the offense. *See* 18 U.S.C. § 1591(a). Plaintiffs have made only conclusory, boilerplate

[12] Moreover, Plaintiffs Kendall and Brock cannot, as a matter of law, assert § 1591 violations as RICO predicate acts; the statute was not enacted until 2000, after their alleged assaults had occurred. (*See* ¶¶ 48, 71.) The same is true of Plaintiff Sagemiller, whose alleged encounter with Harvey transpired in 2000 (*see* ¶ 84), and possibly Ms. Klatt as well (*see* ¶ 115)—as the commercial sex trafficking statutes did not become RICO predicate acts until 2003. *See* Pub. L. No. 108-193; *see also Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 624-25 (6th Cir. 2001).

assertions that Mr. Weinstein (as well as the Director Defendants) had knowledge of Harvey's conduct. (*See* ¶ 23; *see also* ¶¶ 24-32.) Such "generalized allegations of knowledge are too conclusory" to survive a motion to dismiss. *McIntosh v. United States*, No. 14-CV-7889 (KMK), 2016 WL 1274585, at *19 (S.D.N.Y. Mar. 31, 2016). Accordingly, Plaintiffs have failed to plead commercial sex trafficking as a predicate act against Mr. Weinstein.

2. Witness Tampering Is Not Adequately Pled

The witness tampering statute, 18 U.S.C. § 1512, proscribes a variety of behavior under four separate subsections. The Complaint, however, does not specifically identify any of the acts that purportedly constituted witness tampering, nor which portions of the statute were violated. (*See* ¶ 196; *see also* Outside Dir. Br. 15 & n.8.) Rather, it broadly asserts that members of the purported "Weinstein Sexual Enterprise" jointly undertook to harass and threaten "[Harvey's] victims … to prevent, hinder and avoid the prosecution" of his sexual misconduct. (¶ 6.)

The Complaint simply does not allege that Mr. Weinstein engaged in witness tampering of any sort. Rather, Plaintiffs' allegations in this regard center on various *other* alleged enterprise members, including the so-called Law Firm Participants, the Journalist Participants and what *The New Yorker* has referred to as "Weinstein's Army of Spies" (¶ 6; *see also* Compl. at 40 (Heading E)), and their alleged actions to harass victims, gather intelligence and influence the media in an effort to prevent the "reporting, prosecution, or disclosure" of Harvey's sexual misdeeds. (¶ 140; *see also* ¶¶ 148-67.) Even assuming the allegations of witness tampering were sufficient with regards to these individuals (and they are not),[13] *not a single one of these*

[13] Among other things, Plaintiffs ignore the requirement that, to violate federal law, witness tampering must take place in connection with an "official proceeding." 18 U.S.C. § 1512(b)(2), (c)(2); *see also id.* § 1515(a)(1) (defining an "official proceeding" to include a proceeding before a federal court, a federal grand jury, Congress, or a federal agency). Thus, it is not "witness tampering" to pursue confidential settlements of claims with parties to potential civil lawsuits. *See, e.g., Admiral Ins. Co. v. Weitz & Luxenberg, P.C.*, No. 02 Civ. 2195 (RWS), 2002 WL 31409450, at *5 (S.D.N.Y. Oct. 24, 2002) (distinguishing between "allegations of extortionate threats and witness tampering" versus those complaining merely that defendants "negotiat[ed] settlements[] and advise[d] their clients

*allegations concerns Mr. Weinstein*. Accordingly, witness tampering cannot be used as a predicate act to support a RICO claim against him.

3. Mail/Wire Fraud Is Not Adequately Pled

As against Mr. Weinstein, Plaintiffs fail to plead any of the elements of a mail or wire fraud scheme, much less with the specificity necessary to satisfy the heightened pleading standard of Rule 9(b). *See Li Jun An v. Hui Zhang*, No. 13 Civ. 5064 (PKS), 2013 WL 6503513, at *7 (S.D.N.Y. Dec. 6, 2013). Most importantly, the Complaint does not even try to allege, let alone with particularity, that Mr. Weinstein made any misrepresentation to Plaintiffs or anyone else, or that he participated in (or even knew about) any scheme to defraud. Allegations that "the RICO Defendants hid from the general public the unlawfulness of [Harvey's] conduct" (¶ 206) are patently deficient, both because they fail to comply with Rule 9(b) and because Plaintiffs cannot identify any duty Mr. Weinstein had to disclose Harvey's alleged conduct to the general public or anyone else.

Plaintiffs' mail and wire fraud allegations are also defective in that they do not, and cannot, allege that Mr. Weinstein intended to deprive Plaintiffs or any other purported victim of money or property. *See United States v. Shellef*, 507 F.3d 82, 107 (2d Cir. 2007) (essential ingredient of mail or wire fraud is that "money or property [was] the object of the scheme"). Further, although the Complaint lists, in generalized fashion, various alleged uses of the mails and wires by Harvey and other purported enterprise members, not a single one is alleged to have involved Mr. Weinstein. (*See* ¶ 201.) For this reason, too, the Complaint does not adequately plead mail or wire fraud as a predicate act against Mr. Weinstein. *See, e.g., Merrill Lynch,*

---

whether [to] … file suit despite the settlement"). Nor is it "witness tampering" to attempt to influence stories in the media. *See Kalimantano GmbH v. Motion in Time, Inc.*, 939 F. Supp. 2d 392, 410 (S.D.N.Y. 2013) ("generalized threats to intimidate Plaintiffs" rather than "threats in contemplation of an actual future court proceeding" do not suffice to show witness tampering).

*Pierce, Fenner & Smith, Inc. v. Young*, No. 91 Civ. 2923 (CSH), 1994 WL 88129, at *16-17 (S.D.N.Y. Mar. 15, 1994).

In short, the Complaint is utterly devoid of well-pled allegations indicating that Mr. Weinstein did anything to commit any of the charged predicate acts. And as the courts of this Circuit have made clear, Plaintiffs cannot make up for this pleading deficiency by relying on Mr. Weinstein's status as Harvey's brother and co-CEO. In *Feinberg v. Katz*, No. 99 CIV 45(CSH), 2002 WL 1751135 (S.D.N.Y. July 26, 2002), for example, plaintiffs brought RICO claims alleging that a father and son, who ran a business together, engaged in a scheme to loot the company's assets. Dismissing the RICO claims because the Complaint "fail[ed] to set forth factual allegations that show[ed] that Norman [the father] may have acted in concert with Stephen [the son] by directing or benefitting from Stephen's acts," the court explained:

> To be sure, Norman and Stephen are alleged to have 'worked intimately in managing I. Appel,' lived in the same building and generally spent a great deal of time together, [] but that *legitimate proximity alone does not reasonably suggest Norman's complicity in Stephen's malfeasance*. Nor, as plaintiff seems to suggest, does the closeness of the filial relationship indict Norman … In short, while the Amended Complaint broadly avers that father and son jointly undertook to loot the Company, it is *devoid of facts suggesting that Norman took part in or reaped the benefits of Stephen's acts of misappropriation*. Without any facts which might suggest that Norman knew of and participated in Stephen's assorted fraudulent activities, there can be no reasonable suggestion that the two worked together toward the common purpose of looting I. Appel.

*Id.* at *15 (emphasis added) (quoting operative complaint).

So too here, Plaintiffs' failure to allege facts suggesting that Mr. Weinstein knowingly participated in any of the illegal conduct alleged in the Complaint requires dismissal of the RICO claims against him.

### B. <u>Plaintiffs Fail to Plead a RICO Enterprise</u>

To properly plead a RICO enterprise, a plaintiff must allege facts demonstrating that the purported members "share[d] a common purpose" and "work[ed] together to achieve their goal." *Aerowest GmbH v. Freitag*, No. CV 15-2894, 2016 WL 3636619, at *3 (E.D.N.Y. June 28, 2016) (quotations omitted). In addition, the plaintiff must allege facts demonstrating that the enterprise was a "functioning unit" by providing "solid information regarding the hierarchy, organization, and activities of the alleged enterprise." *Cont'l Fin. Co. v. Ledwith*, No. 08 CIV. 7272 (PAC), 2009 WL 1748875, at *5 (S.D.N.Y. June 22, 2009); *see also Aerowest*, 2016 WL 3636619, at *3; *Feinberg*, 2002 WL 1751135, at *12, *14.

The Complaint does not come close to satisfying these requirements. Rather, Plaintiffs lump Mr. Weinstein together with a laundry list of other individuals and corporate entities across a spectrum of professions and fields—including (i) Harvey; (ii) the Director Defendants; (iii) TWC and Miramax (which together are classified as the "Complicit Producers"); (iv) David Boies, Boies Schiller Flexner LLP, and other such "Law Firm Participants"; (v) "Journalist Participants," such as reporters affiliated with *The National Enquirer*; and (vi) "Film Participants," including anonymous "casting directors and agencies, directors, co-producers of Miramax and TWC, and other entertainment industry members"—and dub it "The Weinstein Sexual Enterprise." (¶ 5; *see also* ¶ 194 ("The Weinstein Sexual Enterprise is an association-in-fact …").) As Mr. Weinstein's co-defendants have explained, these scattershot allegations lack the specificity required to plead the existence of a RICO enterprise. (*See* Outside Dr. Br. 19; Maerov Br. 10-11; Miramax Br. 18; *see also Cedar Swamp Hldgs., Inc. v. Zaman*, 487 F. Supp. 2d 444, 452 (S.D.N.Y. 2007) (stringing together a "laundry list" of individuals and entities and labeling them an enterprise is not enough to state a RICO claim).)

Relatedly, Plaintiffs do not even attempt to establish that each of these persons, groups, or companies actually was working together as part of a single organization to achieve a common purpose. Although the Complaint contains the vague assertion that the members of the purported enterprise banded together with the "common purpose" of preventing the public disclosure or prosecution of Harvey's sexual misconduct (*see* ¶¶ 140-41, 195), it offers no allegations of fact to support that assertion. (*See* Outside Dir. Br. 19; Maerov Br. 11-12; Miramax Br. 19.)

Indeed, the allegations in the Complaint actually contradict the purported "common goal" shared by the various, far-flung members of the "Weinstein Sexual Enterprise." In setting forth that purported common purpose, the Complaint equates the "Weinstein Sexual Enterprise" with "Weinstein's Army of Spies" (*see* ¶ 6; *see also* Compl. at 40 (Heading E))—a specific reference to an article reporting on a number of *other* purported members of the enterprise, including David Boies and Israeli intelligence firm Black Cube. As noted above, the Complaint (as well as the article itself[14]) make *no* reference to Mr. Weinstein, any other Director Defendant, or even TWC generally.[15] As such, Plaintiffs' allegations fall far short of pleading a viable RICO enterprise, joined together in pursuit of a common purpose. *See Feinberg*, 2002 WL 1751135, at *15 (RICO enterprise not adequately alleged where complaint contained no facts suggesting that father-son enterprise members both participated in illegal activities and thus "there c[ould] be no

---

[14] Ronan Farrow, *Harvey Weinstein's Army of Spies*, THE NEW YORKER (Nov. 16, 2017), *available at* https://www.newyorker.com/news/news-desk/harvey-weinsteins-army-of-spies. Plaintiffs have incorporated this article into their pleading, and its contents can thus be considered on a motion to dismiss. *See Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 n.3 (2d Cir. 2013).

[15] Moreover, additional well-pleaded facts controvert the alleged common purpose, including, for example, (1) David Boies's refusal of the Board's request to see Harvey's personnel file while renegotiating his employment contract in 2015 (¶ 129); and (2) the Board's insertion of provisions in that contract imposing liquidated damages, and ensuring Harvey could be fired, for sexual misconduct. (¶ 132.) These conflicting goals negate any plausible inference that the "Weinstein Sexual Enterprise" was an "ongoing organization" in pursuit of a common goal. *See Nat'l Grp. for Commc'ns & Computs. Ltd. v. Lucent Techs. Inc.*, 420 F. Supp. 2d 253, 271-72 (S.D.N.Y. 2006).

reasonable suggestion that the two worked together word the *common purpose* of looting [their company]") (emphasis added).

### C. Plaintiffs Fail to Plead that Mr. Weinstein Participated in the Operation of a RICO Enterprise

Given that the Complaint fails to allege that Mr. Weinstein committed any of the predicate acts purportedly engaged in by the alleged RICO enterprise, it also fails to properly allege that he participated in the operation or management of the enterprise—an additional, independent failure that requires dismissal. *See Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994) ("one is liable under RICO only if he participated in the operation or management of the enterprise itself") (citation omitted). Indeed, the Complaint never identifies what role Mr. Weinstein purportedly played in the alleged enterprise, instead impermissibly lumping him together with ten other defendants in an undifferentiated group of so-called "Weinstein Participants." (*See* ¶¶ 5, 142.)[16] This is plainly insufficient to plead Mr. Weinstein's participation in the alleged enterprise. *See Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14 CV 7349 (AJN), 2016 WL 1298987, at *5 (S.D.N.Y. Mar. 31, 2016).

### D. Plaintiffs Fail to Plead Compensable Injury Under RICO

The Complaint alleges a number of injuries (*see, e.g.*, ¶ 59 (emotional distress and physical pain); ¶ 83 (depression), ¶ 102 (fear, helplessness, and anger); ¶ 112 ("disrespect[]"); ¶ 120 ("changed how she conducts her life … "))—but none of them are redressable under RICO. As set forth in briefs filed by Mr. Weinstein's co-defendants, Plaintiffs do not state an injury to their "business or property," and their purported harms are too speculative to be compensable through a civil RICO suit. (*See* Outside Dir. Br. 4-6, 21-23; Maerov Br. 16-17; TWC Br. 21-23;

[16] The Complaint vaguely and inscrutably alleges that the role of the "Weinstein Participants" was to "determine[] the members of the Weinstein Sexual Enterprise" and to "assign[] each member of the enterprise a task or tasks to fulfill [their] common purpose." (¶ 142.) No facts are alleged anywhere in the Complaint indicating that Mr. Weinstein did any such thing.

Miramax Br. 15; *see also Mack v. Parker Jewish Inst. for Health Care & Rehab.*, No. CV 14-1299, 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014) (a plaintiff's inability "to seek employment that reflects her level of professional achievement and standing within her field, or to further her career" is not a cognizable injury under RICO).) Accordingly, Plaintiffs lack standing to sue under RICO.

### E. Plaintiffs Fail to Plead that Mr. Weinstein Caused Their Injuries

It is evident from the Complaint that the cause of Plaintiffs' claimed damages are the result of Harvey's alleged sex acts. Even if they had stated cognizable RICO injuries (which they have not), Plaintiffs do not plead that any alleged racketeering acts by Mr. Weinstein caused their injuries. For this reason as well, Plaintiffs' RICO claims against Mr. Weinstein should be dismissed. (*See* Outside Dir. Br. 23; Maerov Br. 17-19; TWC Br. 24-25; Miramax Br. 16.)

## III. THE COMPLAINT FAILS TO STATE A CLAIM FOR RICO CONSPIRACY

The Complaint also unsuccessfully attempts to allege a conspiracy to violate RICO under 18 U.S.C. § 1962(d). As set forth above, the Complaint does not properly plead a substantive RICO violation. Accordingly, the RICO conspiracy claim against Mr. Weinstein must also be dismissed. (*See* Outside Dir. Br. 24; Maerov Br. 14; TWC Br. 25-26; Miramax Br. 23.) Plaintiffs' RICO conclusory conspiracy claim against Mr. Weinstein is also deficient because the Complaint does not adequately allege that he "agreed with at least one other [person] to commit a substantive RICO offense." (*See* Outside Dir. Br. 24; Maerov Br. 14-15; Miramax Br. 23-24.)

## IV. THE COMPLAINT FAILS TO STATE A CLAIM FOR NEGLIGENT SUPERVISION OR RETENTION

To state a claim for negligent supervision or retention, Plaintiffs must demonstrate the standard elements of negligence—including, *inter alia*, that defendant owed plaintiff a "legal[ly] … cognizable duty of care," *see Corley v. Jahr*, No. 11 Civ. 9044 (RJS) (KNF), 2014 WL

772253, at *7 (S.D.N.Y. Feb. 10, 2014) (quotations omitted); *Dava v. City of New York*, No. 1:15-cv-08575, 2016 WL 4532203, at *12 (S.D.N.Y. Aug. 29, 2016)—*and* "(1) that the tortfeasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004). Plaintiffs fail to adequately allege any of these elements against Mr. Weinstein.

**A. Plaintiffs Do Not Allege that Mr. Weinstein Owed Them a Duty of Care**

As a threshold matter, the Complaint does not—because it cannot—allege that Mr. Weinstein owed Plaintiffs a duty of care. It is well-established that "[u]nder New York law, an officer or director is not personally liable to third persons 'for an act of nonfeasance pertaining to the duties owed to the corporation.'" *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585 (S.D.N.Y. 1989) (quoting BUSINESS RELATIONSHIPS, N.Y. JUR. 2D § 1086 (1981)). Accordingly, this Court has found that although a corporate officer may owe his *employer* a duty to supervise other employees, that duty does not extend to third parties. *See id.* (dismissing negligence-based tort claims against two executives of defendant-corporation because a "failure to perform a duty owed to the corporation—*i.e.*, to supervise employees—does not make corporate officers or directors personally liable to third parties"); *see also A.B v. Staropoli*, 929 F. Supp. 2d 266, 281-82 (S.D.N.Y. 2013) (finding a soccer club's president had no duty to plaintiff-player in the context of negligent supervision claims stemming from her coach sexually assaulting her during a team trip). On this basis alone, Plaintiffs' negligent supervision or retention claims against Mr. Weinstein must be dismissed.

### B. The Complaint Does Not Allege an Employer-Employee Relationship

Also fatal to Plaintiffs' claims for negligent supervision is their failure to allege that Mr. Weinstein and Harvey were in an employer-employee relationship. To the contrary, the Complaint states that "at all times material from September 30, 2005, to October 2017, *TWC* employed [Harvey]," and that "[a]t all times material prior … *Miramax* employed [Harvey]." (¶¶ 220, 226 (emphasis added).) As a matter of law, Plaintiffs' negligent supervision claims therefore cannot survive this motion. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 490 (3d Cir. 2013) (where "[p]laintiff alleges in the [c]omplaint that [defendant] is not an employer … 'negligent supervision' is not a viable theory of liability") (quotations omitted); *Chylinski v. Bank of Am., N.A.*, 630 F. Supp. 2d 218, 222 (D. Conn. 2009) ("courts have not recognized a claim for negligent hiring or retention against a manager, as opposed to the employer itself").

The fact that "Robert Weinstein was … an executive and/or director" of Harvey's employer-companies during the same respective time periods (*see* ¶ 220; *see also* ¶ 23) does not render him Harvey's employer, and the Complaint is barren of facts supporting any contrary conclusion. Indeed, nowhere do Plaintiffs allege that Harvey reported to Mr. Weinstein, was subject to supervision or directed by Mr. Weinstein, or any other hallmark of an employee-employer relationship that existed between them. *See Corley*, 2014 WL 772253, at *9 (recognizing that where complaint did not allege "a[ny] duty ... [d]efendants [had] to supervise or train [employees]," it "certainly sa[id] nothing … establishing an employer-employee relationship," requiring dismissal of negligent supervision claims).

### C. Plaintiffs Do Not Allege Facts Showing Mr. Weinstein Knew or Should Have Known About Harvey's Propensity for Sexual Misconduct

Under New York law, an employer can only be liable for negligent supervision if he or she knew or should have known of the employee's propensity to engage in the underlying

tortious conduct, *before* the tort occurs. *See Ehrens*, 385 F.3d at 235. In this context, "an employer is only liable for negligent supervision or retention if it is aware of *specific* prior acts or allegations against the employee." *Doe v. Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (emphasis added). Additionally, the employer must be made aware of the precise nature of the tortious conduct causing the plaintiff's injury; "general, unrelated or lesser allegations of prior wrongdoing are insufficient." *Id.* at 680-81 (granting motion to dismiss negligent supervision claims where the plaintiff failed to provide any "fact to [support her conclusory allegation] that [defendant] knew or should have known of any prior assault" by its employee); *see also Stamile v. Cnty. of Nassau*, No. CV 10-2632 (AKT), 2014 WL 1236885, at *8 (E.D.N.Y. Mar. 25, 2014) ("Many cases discussing this standard appear to require … knowledge of the [actual underlying] practices, rather than simple knowledge of inappropriate behavior.").

As noted previously (*see supra* p. 4), among the Complaint's scant allegations against Mr. Weinstein are three conclusory assertions that he, just like the Director Defendants, knew of Harvey's "pattern and practice of predatory sexual conduct." (¶¶ 23, 222, 292; *see also* ¶¶ 24-32.) These bare assertions do not satisfy Plaintiffs' burden of pleading the requisite knowledge to state a negligent supervision claim. (*See* Outside Dir. Br. 27-30.)

Plaintiffs also cannot satisfy that burden by citing the Weinsteins' fraternal relationship and joint management of TWC and Miramax. (*See* ¶¶ 23, 34; *see also supra* p. 16.) Courts have consistently found that such physical proximity or close relationships, standing alone, do not warrant an inference of actual or constructive knowledge of tortious conduct. *See, e.g., Feinberg*, 2002 WL 1751135, at *15 (holding that neither the "closeness of the filial relationship" between defendant and his son, nor their "legitimate proximity" from working for the same company, gave rise to an inference of knowledge); *Staropoli*, 929 F. Supp. 2d at 278-79

(no showing defendant negligently failed to supervise her husband in case involving his sexual abuse of a minor, even where misdeeds sometimes occurred just outside defendant's bedroom).[17]

The two other mentions of Mr. Weinstein's name in the Complaint are likewise inadequate to plead knowledge. Although Paragraph 101 references his name in passing in the allegations relating to Harvey's purported assault of Ms. Geiss, it does not state any fact suggesting that Mr. Weinstein participated in or was present for that incident; that he had any interaction with Ms. Geiss (or any other of the named Plaintiffs or putative class members); or that he came to learn any of the underlying facts. (*See* ¶ 101.)

Similarly, a former assistant's nebulous reference to knowledge possessed by an "inner circle" in Paragraph 138 suggests nothing about *Mr. Weinstein's* knowledge of Harvey's sexual misconduct. (*See* ¶ 138; *see also supra* p. 3.) Under New York law, such speculative allegations—effectively, office gossip—do not sufficiently support an inference of knowledge, be it actual or constructive. *See Khapesi v. City of New York*, No. 13-CV-4391 (KBF), 2014 WL 2605342, at *11 (S.D.N.Y. June 10, 2014) (alleging that there were "rumors" of sexual abuse at a correctional facility insufficient to plead knowledge element of negligent supervision claim); *Noonan v. City of New York*, No. 14-CV-4084-LTS-JLC, 2015 WL 3948836, at *2 (S.D.N.Y. June 26, 2015) (conclusory allegations that employer had been on notice of "widespread" conduct "for years" insufficient to plead knowledge required for supervisory liability).

Rather, to plead a viable claim for negligent supervision, a complaint must allege facts that suggest the *specific defendant* had knowledge of the tortfeasor's misconduct; knowledge on

---

[17] That is especially true here because, as detailed in an article from *Fortune* magazine, which Plaintiffs cited a number of times throughout the Complaint (*see* ¶¶ 27, 28, 127-130, 132), the Weinstein brothers worked on entirely different films and headed up different divisions of the company. *See* Exhibit A to Declaration of Anne S. Aufhauser in Support of Defendant Lance Maerov's Motion to Dismiss Counts I, II, IV, and XIV of the Complaint, ECF No. 88 ("The Weinsteins specialized in different genres: Harvey made highbrow Oscar contenders and winners, while Bob focused on horror and action films through his Dimension division"); *see also* ¶ 101 (alleging that Mr. Weinstein made "films through Dimension Films, a TWC subsidiary").

the part of defendant's colleagues is not enough. *See Khapesi*, 2014 WL 2605342, at *7-11 (granting prison officials' motion to dismiss supervisory claims, arising out of purported sexual abuse of prison inmate, for failure to plead facts in support of knowledge requirement, notwithstanding allegations that other prison employees knew or suspected misconduct). For the same reasons, as well as those set forth in the Outside Directors' Brief, the Complaint's generalized assertions about the "Board" or the Company's "executives, officers, and employees" collectively (*see*, *e.g.*, ¶ 135) do not properly allege that Mr. Weinstein had actual or constructive knowledge of Harvey's propensity for sexual assault. (*See* Outside Dir. Br. 28-30; *see also id.* at 13 n.7.)

Finally, the series of allegations regarding the renewal of Harvey's employment contract in 2015 (¶¶ 129-33)—which purportedly demonstrate knowledge of the "Board" as a whole (¶¶ 129-30, 133) are entirely irrelevant to Plaintiffs' claims—which require Mr. Weinstein to have had such knowledge *prior* to their alleged assaults, which occurred between seven and 22 years earlier. (*See* Maerov Br. 23 n.9.)

### D. Plaintiffs Do Not Allege that Any Injury Occurred on Premises of, or Using Property of, Either Mr. Weinstein, Miramax, or TWC

The Complaint's negligent supervision claim fails for the additional reason that Plaintiffs do not adequately plead, as they must, that an underlying tort occurred on the premises, or used any physical property, of either TWC or Miramax—let alone on premises owned by or using property belonging to *Mr. Weinstein*.

To the contrary, the Complaint definitively alleges that Plaintiffs were assaulted *elsewhere*. As demonstrated by Mr. Weinstein's co-defendants, Ms. Geiss and Ms. Thomas, the two Plaintiffs bringing claims against Mr. Weinstein and TWC in Count IV, have set forth facts placing their respective assaults in a hotel in Utah (¶ 96), and Harvey's "Connecticut home." (¶

14; *see* Outside Dir. Br. 31-32; Maerov Br. 23-24; TWC Br. 38.) The other four named Plaintiffs, who assert their negligence claims in Count III against Mr. Weinstein and Miramax, have similarly failed to plead the premises element; as set forth in Miramax's Brief, their purported encounters also occurred in hotels (¶¶ 77-80 (Ms. Brock); ¶ 85 (Ms. Sagemiller)), Harvey's personal homes (¶ 53 (Ms. Kendall)), and "private offices" not controlled by Miramax or Mr. Weinstein (¶ 115 (Ms. Klatt)[18]). (*See* Miramax Br. 27.)

The Complaint's vague assertions that Plaintiffs' purported encounters with Harvey occurred at locations "paid for" by one of the two companies (*see* ¶¶ 235, 242) are likewise insufficient. Even if those conclusory statements were substantiated by factual allegations (and they are not), an employer's subsidy is not enough; a plaintiff must also plead facts showing the employer's *control* over the property. (Outside Dir. Br. 32; Maerov Br. 24.) For example, in *P. v. Delta Air Lines, Inc.*, 102 F. Supp. 2d 132 (E.D.N.Y. 2000), *aff'd in relevant part*, *Ferris v. Delta Air Lines, Inc.*, 277 F.3d 128 (2d Cir. 2001), this court declined to hold the employer-airline liable for negligently supervising an employee-flight attendant who sexually assaulted plaintiff, his colleague, in a hotel room after the two worked on an international flight—explicitly holding that despite the fact that the "hotel rooms [were] paid for by Delta, the airline neither had control over activities in those rooms, nor did it have access to the rooms." *Id.* at 144. As in that case, the fact that TWC or Miramax underwrote the costs of certain hotel rooms

[18] Although Ms. Klatt allegedly met Harvey when auditioning in an office building in which Miramax also maintained office space, critically, she does *not* allege that the incident occurred on *Miramax's* premises. Rather, as specifically asserted in the Complaint, Ms. Klatt was allegedly assaulted in Harvey's "private office on another floor." (¶ 115.) Thus, the allegations do not suggest that Miramax, let alone Mr. Weinstein, had any "dominion or control" over that office, as is necessary to sufficiently plead the third element of a negligent supervision claim. *Alsaud*, 12 F. Supp. 3d at 684 (not enough to allege "only that the Plaza Hotel was the site of the sexual assault, that the hotel was partially owned by the [major client] and that [employee's] duties included regulating the temperature on [the client]'s floor"); *see also Anderson v. Adam's Mark Hotels & Resorts*, 211 F.3d 1277 (table), 2000 WL 390107, at *2 (10th Cir. Apr. 18, 2000) (affirming dismissal of negligent supervision claims where employee's sexual abuse occurred in his private room in the hotelier-employer's resort, as the employer "did not have complete authority to police the room and the activities inside, nor was [the employee] privileged to enter the room only as an employee"); RESTATEMENT (SECOND) OF TORTS § 317 (1965).

where Plaintiffs were allegedly assaulted is irrelevant; "accommodations cannot be considered 'premises' or 'equipment' as support for a claim of negligence against [TWC, Miramax, or Mr. Weinstein] for [those] assault[s]." *Id.*[19]

Thus, Plaintiffs' negligent supervision claims against Mr. Weinstein should be dismissed.

## V. THE COMPLAINT FAILS TO STATE A CLAIM FOR RATIFICATION

It is well-settled under New York law that a defendant can only be liable under a ratification theory if he "affirms or ratifies an act done by one who purports to be acting for the ratifier." *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014); *see also Murphy v. Guilford Mills, Inc.*, No. 02CIV10105 (LTS)(THK), 2005 WL 957333, at *8-9 (S.D.N.Y. Apr. 22, 2005). Thus, to plead ratification, a plaintiff must allege (i) a principal-agent relationship; (ii) the principal's full knowledge of the material facts concerning the allegedly binding transaction; and (iii) acceptance by the principal of the benefits of the agent's acts. *See A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998). The Complaint does not adequately allege any of these elements.

*First*, Plaintiffs fail to adequately allege that Harvey was Mr. Weinstein's agent during any of the relevant years. To plead a principal-agent relationship, a plaintiff must allege: (i) a manifestation by the principal that the agent shall act for the principal; (ii) acceptance of the undertaking by the agent; and (iii) an understanding between the parties that the principal is to be in control of the undertaking. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991). But the Complaint is devoid of facts supporting any of these elements, alleging only in conclusory terms that "there was an actual or assumed agency relationship between . . . [Harvey] and Robert Weinstein" at all relevant times. (*See* ¶ 291; *see also* ¶ 297.)

[19] Additionally, dismissal of Plaintiffs' negligent claims is required because, even if all other elements had properly been pleaded, the Complaint contains no factual allegations suggesting any such negligence proximately caused Plaintiffs' injuries. (*See* Outside Dir. Br. 33-34; Maerov Br. 24-25.)

These bald assertions, unmoored to any factual support, do not satisfy Plaintiffs' burden. *See, e.g.*, *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175-76 (2d Cir. 2012).

While the Complaint alleges that Mr. Weinstein and Harvey together founded and worked for the same two companies over the relevant years and served as co-chairmen of the their respective boards (¶¶ 22, 23, 220), those mundane background facts, without more, do not magically transform Harvey into Mr. Weinstein's agent—let alone support a claim that Harvey somehow committed sexual assaults on his brother's behalf. *See Coleman & Co. Secs., Inc. v. Giaquinto Family Tr.*, 236 F. Supp. 2d 288, 304 (S.D.N.Y. 2002) (facts showing merely that defendant was a "board member" and "part owner" not sufficient to demonstrate agency).

*Second*, as discussed above, the Complaint does not adequately allege that Mr. Weinstein had the requisite knowledge of Harvey's tortious conduct. (*See also* Outside Dir. Br. 35; Maerov Br. 26-27; TWC Br. 37; Miramax Br. 28.) Moreover, although Mr. Weinstein is alleged to have served on the Board during the relevant years (*see* ¶ 23), Plaintiffs fall far short of demonstrating his "full knowledge" of Harvey's behavior simply by alleging that the Board approved Harvey's employment contracts in 2005 and 2010. (¶ 127; *see also* Outside Dir. Br. 35.)

Rather, in serial fashion, the Complaint lumps Mr. Weinstein together with undefined members of the "Board," and fails to provide a single fact to suggest he even took part in any contract negotiations. And in any case, as the Outside Directors note, mere approval of an employment contract is insufficient to state a cause of action for ratification. (*See* Outside Dir. Br. 26 (discussing *A. Terzi Prods.*, 2 F. Supp. 2d at 492).)

*Third*, given Plaintiffs fail to state facts suggesting Mr. Weinstein knew about Harvey's conduct, they also, unsurprisingly, fail to state facts suggesting he accepted that conduct for his own benefit. As such, they do not properly plead the final element required to state a ratification

claim. (*See* Outside Dir. Br. 36; Maerov Br. 26.) Indeed, it is difficult to imagine what Mr. Weinstein could have possibly stood to gain from Harvey's sexual assault—acts done, as Plaintiffs concede, for Harvey's own "personal gratification." (Compl. at 12 (Heading IV.B.).)

Because the Complaint fails to adequately plead any (much less all) of the required elements, Plaintiffs' ratification claims against Mr. Weinstein should be dismissed.

## VI. THE CLASS CLAIMS SHOULD BE DISMISSED

As explained by Mr. Weinstein's co-defendants, because no named Plaintiff has stated viable individual claims, and because Plaintiffs' class action allegations do not, in any event, comply with Fed. R. Civ. P. 23, the Court should also dismiss the related class claims. (*See* TWC Br. 40-46; Outside Dir. Br. 45; Maerov Br. 30-31.)

## CONCLUSION

For the reasons set forth above, the Court should dismiss Counts I, II, III, IV, XIII, and XIV of the Complaint against Defendant Robert Weinstein in their entirety and with prejudice.

Dated: New York, New York
April 20, 2018

SCHULTE ROTH & ZABEL LLP

By: /s/ Gary Stein
Gary Stein
Barry A. Bohrer
Brian T. Kohn
Abigail F. Coster

919 Third Avenue
New York, NY 10022
(212) 756-2000
gary.stein@srz.com
barry.bohrer@srz.com
brian.kohn@srz.com
abigail.coster@srz.com

*Attorneys for Defendant Robert Weinstein*