```
 1  UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
 2  ------------------------------x

 3  LOUISETTE GEISS, et al.,

 4                  Plaintiffs,

 5          v.                          17 CV 9554 (AKH)

 6  THE WEINSTEIN COMPANY HOLDINGS
    LLC, et al.,
 7                                      Conference
                    Defendants.
 8  ------------------------------x

 9
                                        New York, N.Y.
10                                      April 13, 2018
                                        11:20 a.m.
11
    Before:
12
            HON. ALVIN K. HELLERSTEIN
13
                                        District Judge
14

15

16

17           APPEARANCES

18
    HAGENS BERMAN SOBOL SHAPIRO LLP
19       Attorneys for Plaintiffs
    BY:  ELIZABETH A. FEGAN
20

21  LATHAM & WATKINS LLP
         Attorneys for Defendants Miramax and Sarnoff
22  BY:  MARVIN S. PUTNAM
         LAURA R. WASHINGTON
23

24  KUPFERSTEIN MANUEL LLP
         Attorneys for Defendant Harvey Weinstein
25  BY:  PHYLLIS KUPFERSTEIN
```

1              APPEARANCES

2

MORRISON COHEN LLP
3       Attorneys for Defendant Harvey Weinstein
BY:  MARY E. FLYNN
4

5  SCHULTE ROTH & ZABEL LLP
        Attorneys for Defendant Robert Weinstein
6  BY:  GARY STEIN

7

PATTERSON BELKNAP WEBB & TYLER LLP
8       Attorneys for Defendants Lasry, Jones, and Dolan
BY:  JAMES V. MASELLA, III
9       DANIEL LOWENTHAL
        MELISSA GINSBERG
10

11  FRIED FRANK HARRIS SHRIVER & JACOBSON LLP
        Attorneys for Defendants Maerov and Sackman
12  BY:  ISRAEL DAVID

13

REED SMITH LLP
14       Attorneys for Defendant Koenigsberg
BY:  JOHN C. SCALZO
15

16  SKADDEN ARPS SLATE MEAGHER & FLOM LLP
        Attorneys for Defendants Ziff and Dolan
17  BY:  ABIGAIL E. DAVIS
        LAWRENCE S. SPIEGEL
18

19  PAUL WEISS RIFKIND WHARTON & GARRISON LLP
        Attorneys for Defendant Lasry
20  BY:  ROBERTO FINZI
        SARA F. NICHOLS
21

22

23

24

25

1                    (Case called)

2             THE COURT:  The first question is to the plaintiff.

3   That is the question about service on the only defendant who

4   has not appeared, and that is Tarak Ben Ammar.

5             MS. FEGAN:  Yes, your Honor.  We are currently in the

6   process of serving him through the Hague Convention.  The

7   complaint is currently with the authorities in France.  We did

8   try to check in with them before this hearing.  They say it is

9   in process.  They won't tell us exactly where it is in process.

10  It is just the nature of the authorities there.  But it is

11  literally in France with the authorities for service.

12            THE COURT:  If service is not effected within the

13  120-day period provided by rule 4, do you need to do anything?

14            MS. FEGAN:  Your Honor, I don't believe so.  There is

15  an exception to that rule that deals with serving foreign

16  nationals.  If your Honor would like, we can move to fix a time

17  and bring the Court up to date.

18            THE COURT:  No.  Do what you need to do.

19            MS. FEGAN:  Thank you.

20            THE COURT:  The second question is for the attorney

21  for Robert Weinstein.  When is he prepared to answer or move?

22            MR. STEIN:  By next Friday, April 20th, your Honor.

23            THE COURT:  That is going to be a firm date.

24            MR. STEIN:  Yes.

25            THE COURT:  What do you think it's going to be, an

1  answer or a motion?

2          MR. STEIN:  It will be a motion, as with all the other

3  defendants in this case.

4          THE COURT:  I have eight motions, and that will make

5  nine.  I haven't had a chance to review them.  To help me,

6  could each lawyer for a party briefly explain what the motion

7  is, starting with the Weinstein Company.  Is the Weinstein

8  Company here?  It's filed for bankruptcy.

9          MS. FEGAN:  They may not be, your Honor.  They filed

10  for bankruptcy.

11          THE COURT:  The lawyers for the Weinstein Company need

12  to ask the bankruptcy court for permission to defend the case

13  here rather than in the bankruptcy.  They must do that within a

14  certain period of time.  How should I convey that instruction,

15  Ms. Fegan?

16          MS. FEGAN:  Your Honor, I am happy to convey that for

17  you.  Or if your Honor would like to put that into a minute

18  order, we can make sure that the lawyers at Seyfarth receive

19  that.

20          THE COURT:  We will do the order.

21          MS. FEGAN:  Thank you.

22          THE COURT:  Lawyers for Dolan, Jones, Lasry, and Ziff,

23  who are they?  Who is the lead?

24          MR. FINZI:  We don't really have one, your Honor.

25          THE COURT:  Have one now.  I want a lead, responsible

1    lead counsel.  Are there four separate firms?

2              MR. MASELLA:  Three separate firms, your Honor:

3    Patterson Belknap, Paul Weiss, and Skadden Arps.

4              THE COURT:  You are all similarly situated?

5              MR. MASELLA:  Correct, your Honor.  We all filed a

6    joint motion to dismiss.

7              THE COURT:  One motion on behalf of the four?

8              MR. MASELLA:  That's correct, your Honor.

9              THE COURT:  Who will tell me what the motions are?  I

10   think you need to talk amongst yourselves so that one lawyer

11   answers in response.

12             MR. MASELLA:  We will do that, your Honor.  I'm James

13   Masella from Patterson Belknap.

14             THE COURT:  Why don't you tell me.

15             MR. MASELLA:  Thank you.  We seek to dismiss the

16   complaint on the grounds that the events at issue here happened

17   seven or more years before our clients were appointed to the

18   board according to the complaint.  Second, the claim with

19   respect to RICO, RICO conspiracy, negligent supervision, and

20   retention and ratification are not adequately pleaded.

21   Finally, there is statute of limitations.

22             THE COURT:  What is the deficiency?

23             MR. MASELLA:  There is no conspiracy pled, no

24   predicate acts pled.  The complaint merely says the outside

25   directors are names and provides the dates according to the

1   complaint on which they were appointed to the board.  It has no

2   details whatsoever, no factual allegations merely conclusory

3   allegation.

4               THE COURT:  Was there entry of business or property?

5               MR. MASELLA:  Your Honor, we, the outside directors,

6   had no involvement in any injury to business or property to the

7   best of our knowledge and none is pled.

8               THE COURT:  Did the plaintiffs suffer injury to

9   business or property?

10              MR. MASELLA:  I don't know from the complaint because

11  there is no relief sought from the outside directors in the

12  complaint itself.

13              THE COURT:  On the RICO claim?

14              MR. MASELLA:  There is no relieve sought on that one

15  either.

16              THE COURT:  How can you get a judgment, Ms. Fegan,

17  without asking for relief?

18              MS. FEGAN:  Your Honor, we do believe we have asked

19  for relief and we do believe we have pled injury to business

20  and property by the fact that each of these plaintiffs and the

21  class members' careers were severely impacted, limited, as a

22  result of in particular the RICO conspiracy.

23              THE COURT:  Are there cases that say loss of personal

24  standard is an injury to business or property?

25              MS. FEGAN:  Damage to your career, loss of business

1    deals, for example and loss of income is injury to business or

2    property under RICO.

3              THE COURT:  Thank you.

4              MR. MASELLA:  Thank you, your Honor.

5              THE COURT:  Who is representing Koenigsberg?

6              MR. SCALZO:  John Scalzo, Reed Smith.  We join in the

7    motion incorporated by reference to the outside directors.  Mr.

8    Koenigsberg joined in the arguments that the outside directors

9    articulated by Mr. Masella made.  We do not have any arguments

10   unique to him.  The pleading deficiencies are the same.

11             THE COURT:  Have you joined his brief?

12             MR. SCALZO:  Yes.

13             THE COURT:  Excellent.  Harvey Weinstein.

14             MR. KUPFERSTEIN:  Phyllis Kupferstein.  The basis for

15   our motion is one, statute of limitations.  The events occurred

16   9 to 24 years ago.

17             THE COURT:  How long ago?

18             MR. KUPFERSTEIN:  9 to 24 or more years ago.

19             THE COURT:  This is essentially the same motion as I

20   heard before.

21             MR. KUPFERSTEIN:  We also assert that the RICO claims

22   are not sufficiently played, the alleged predicate acts.

23             THE COURT:  Same grounds.

24             MR. KUPFERSTEIN:  Similar grounds, your Honor.  We

25   also move that the class allegations are insufficient to meet

1   the requirements for asserting a class claim.

2           THE COURT:  One of the purposes of having you all here

3   today is to assure that I don't get a multitude of briefs or

4   even two briefs on the same subject.  This will not prevent any

5   party from adding whatever is appropriate.  You have read the

6   class allegations.  No one else has made that motion yet.  But

7   in all other respects your brief is the same as the briefs

8   filed on behalf of the individual defendants mentioned above.

9   In the future you can have a built-in program where you have a

10  conference together and establish one brief for one issue.  If

11  you have different issues, there will be another brief for that

12  issue.  But each issue will have one brief.  Okay?

13          MR. KUPFERSTEIN:  Yes, your Honor.

14          THE COURT:  Have you said anything different from what

15  has been said before?

16          MR. KUPFERSTEIN:  As to the RICO claims, in addition

17  to the argument that was made about no injury to business or

18  property, we also go into the fact that the allegations don't

19  establish predicate acts on the face of the complaint.

20          THE COURT:  That has already been said.  Mr. Masella

21  said that.  He said there is no conspiracy alleged, no

22  predicate acts alleged, and no relief sought.

23          MR. KUPFERSTEIN:  Then I misheard.

24          MR. PUTNAM:  Marvin Putnam, your Honor.  We have made

25  the same allegations as the others.  However, ours are even

1    older.

2             THE COURT:  In a separate brief?

3             MR. PUTNAM:  Separate brief, yes, your Honor.

4    Actually, it is even older.  This is 25 years.  Miramax has had

5    nothing to do with that since 2005.

6             THE COURT:  You broke with Weinstein in 2005?

7             MR. PUTNAM:  That's correct, your Honor, and the

8    complaint says so.  In addition, your Honor, we go into the

9    idea that there is no reason to toll these under any of the

10   alleged tolling that is provided in the complaint.

11            THE COURT:  The tolling allegations are that Weinstein

12   procured silence illegally.  How are you going to get past that

13   as a matter of attack on the pleadings?

14            MR. PUTNAM:  I apologize, your Honor missed the last

15   word.

16            THE COURT:  The plaintiffs allege that there was an

17   illegal procurement of silence on the part of Weinstein.  In

18   order for you to say that tolling doesn't apply, in order for

19   everyone else to defend on the basis of statute of limitations

20   other than from the fact of assuming a particular position, you

21   would have to deal with the facts of whether or not there has

22   been an illegal procurement of silence.

23            MR. PUTNAM:  There are no facts in support of that.

24   The only thing stated is within the heading.  It is

25   particularly true as to Miramax.

1          THE COURT:  You said you broke the relationship.

2          MR. PUTNAM:  Yes, your Honor.

3          THE COURT:  Let me get anybody else.  Then I'll come

4     back to plaintiff.  Tim Sarnoff, who represents him?

5          MR. PUTNAM:  I do as well.  We represent both Mr.

6     Sarnoff as well as the Miramax.

7          THE COURT:  You are giving me the same answers?

8          MS. WASHINGTON:  Yes, it is the same as the other

9     outside independent directors.

10          THE COURT:  You filed the same brief?

11          MS. WASHINGTON:  We filed a different brief.

12          THE COURT:  That is just not going to go.  This is

13     very important, folks.  One brief, one issue.

14          MR. FINZI:  In fairness, your Honor, all of the

15     defendants are not similarly situated with respect to what is

16     alleged.  Where we make attacks on the pleadings --

17          THE COURT:  It is very easy for the brief to deal with

18     that issue.

19          MR. FINZI:  What we have tried to do, your Honor, so

20     you didn't get 15 different groups, is put ourselves into

21     groups.  For example, the outside directors --

22          THE COURT:  Mr. Finzi, I have too many briefs on the

23     issue.  I can't deal with that.  I don't have the time for

24     that.

25          MR. FINZI:  Statement, your Honor, I don't know that a

1    brief from us that is joint with a brief from Mr. Weinstein

2    against whom the allegations are very different, I won't

3    characterize them, but they are obviously very different, I

4    don't know that that is most helpful to your Honor.

5              THE COURT:  It doesn't have to be that way either.  It

6    depends on the issue.  You need to talk and where it is

7    possible file a single brief or two briefs.  That should the

8    way it will be done.  I will be able to tell after the fact

9    whether there is a lot of redundancy or not.

10             Can you briefly respond, Ms. Fegan, first with Miramax

11   separating with Weinstein in 2005, why should they be

12   responsible for anything that happened after that?

13             MS. FEGAN:  Your Honor, we are not seeking to hold

14   Miramax responsible for what the Weinstein Company did per se.

15   What we are seeking to hold Miramax responsible for is what

16   occurred during the time that the plaintiffs were assaulted or

17   battered when Mr. Weinstein worked for Miramax.  Miramax's role

18   in the cover-up of those assaults during that time.

19             THE COURT:  That would be tolled because of the

20   reasons I mentioned.

21             MS. FEGAN:  That's exactly right.  And because we have

22   Mr. Weinstein, both Mr. Weinsteins, who were common figures

23   throughout this time, the cover-up continued, the threats.

24             THE COURT:  Does your complaint make clear that you

25   are not seeking to hold Miramax for the period of time after

1   they severed their relationship with Weinstein?

2           MS. FEGAN:  We do have separate classes and those are

3   defined by people, for example, that were assaulted during the

4   time that Miramax was responsible versus the time that the

5   Weinstein Company.

6           THE COURT:  I guess it clear that Miramax is sued only

7   for the period prior to 2005?  If it is not, you will have to I

8   can ma it clear.

9           MS. FEGAN:  We will look at that, your Honor, and

10  address it.

11          THE COURT:  That would still leave you with the charge

12  that the statute of limitations ran.  From what I understand it

13  seems to me it is an issue of fact.

14          MS. FEGAN:  I do believe it is an issue of fact.

15          THE COURT:  Mr. Putnam.

16          MR. PUTNAM:  In terms of Miramax, that would be a true

17  issue of fact if there was an alleged fact, your Honor.  But

18  there is no fact alleged as to Miramax in terms of the ongoing

19  RICO or otherwise.

20          THE COURT:  She mentions it.  I will study the

21  complaint again, but I think she mentions it generally.

22          MR. PUTNAM:  Does she have a sentence that says that?

23  Yes, your Honor.

24          THE COURT:  I think it is going to be a issue of fact

25  and defeat a motion to dismiss.  You don't need much to defeat

1    a motion to dismiss.

2            MR. PUTNAM:  If there was an alleged fact, I think

3    that would be true, your Honor.  I do not believe there is

4    particularly as to Miramax and separately as to several of the

5    individual directors as noted by my co-counsel.

6            THE COURT:  Did you sign it?

7            MR. PUTNAM:  Marvin Putnam, yes, I did, your Honor.

8    I'm on the top left of the additional addendum.

9            THE COURT:  Got you.  Sorry.  I think the motion is

10   defeated.  Look at it again.  There is no point in asking me to

11   do work that is going to be very easy to answer with there is a

12   question of fact that prevents an order now.

13           MR. PUTNAM:  I will do that your Honor.  Yet I will

14   tell your Honor I read it again on the plane here this morning.

15   It's just not there.

16           THE COURT:  How much detail has to be alleged?

17           MR. PUTNAM:  Any fact would be helpful.  There is

18   none.  It is a conclusory allegation, nothing more.

19           THE COURT:  You note from the press that this charges

20   that Weinstein procured silence and that the board acquiesced

21   in that silence.  How much more than that do you have to say in

22   a pleading?

23           MR. PUTNAM:  Acquiescence would not be enough.  Even

24   if it was, it would have to be a specific acquiescence of a

25   board members.  That is not what it was.  There is a group

1   pleading, which is impermissible.  You are not allowed to

2   proceed with a group pleading in this way for precisely the

3   reason that you have to have some idea as an individual

4   director, Mr. Sarnoff, as to what is alleged as to him.

5           THE COURT:  Can you supply that, Ms. Fegan?

6           MS. FEGAN:  Your Honor, we believe we have and we

7   believe that our allegations are supported.  Each of those

8   directors was not just a silent acquiescor.  They had to make

9   decisions about covering up what Mr. Weinstein was alleged to

10  have done.

11          THE COURT:  I'm not talking about the merits.  In

12  terms of the pleading, have you pled in a group fashion or have

13  you pled in an individual fashion?

14          MS. FEGAN:  Your Honor, we have pled with respect to

15  each direct the time period during which they were a director,

16  then throughout the complaint we have alleged what occurred

17  occurring those time periods, including certain of the

18  directors.

19          THE COURT:  I will look at it, Mr. Putnam.  I think

20  you can't succeed on this motion, but I'll look at it.

21          MR. PUTNAM:  Your Honor, that is in fact not the case.

22          THE COURT:  Let's not argue the point now.  I'll look.

23  I just want to use this as a definitional point.

24          MS. DAVIS:  Your Honor, we submit a Second Circuit

25  case from 2014.  We cite it in our brief at length.  It is on

1    all fours with this case.  You have plaintiffs who were victims

2    of sexual assault.  They claimed that board members and other

3    people in charge of the school made them feel uncomfortable and

4    essentially precured silence so they didn't feel comfortable

5    enough to file the complaint until the statute of limitations

6    had run.  Your Honor, the Second Circuit held that that was not

7    sufficient to toll the statute, and it is not sufficient here.

8              THE COURT:  What is the name of the case?

9              MS. DAVIS:  It's Twersky v. Yeshiva University.

10             THE COURT:  I know the case.

11             MS. FLYNN:  99 F.Supp.2d 439.

12             THE COURT:  I know the case.  It is an appeal from

13   Judge Koeltl's ruling.  Ms. Fegan, in terms of the RICO

14   arguments, no allegations of conspiracy or predicate acts?  Do

15   you feel satisfied with the pleadings?

16             MS. FEGAN:  Absolutely, your Honor.  We have a

17   situation where Mr. Weinstein with attorneys and others were

18   hiring former agents of the Mossad and others to make sure that

19   these victims stayed silent.

20             THE COURT:  I've heard it.

21             MS. FEGAN:  Thank you.

22             THE COURT:  I will read the motions.  No oppositions

23   have so far been filed?

24             MS. FEGAN:  That's correct, your Honor.  We had agreed

25   both with Robert Weinstein's lawyer that he would have an

1    extension, and then we have --

2            THE COURT:  He has to move by April 20th.

3            MS. FEGAN:  Correct.  We have asked until June 1st to

4    respond to the nine motions.

5            THE COURT:  Who is representing Robert Weinstein?

6            MR. STEIN:  Me, your Honor, Gary Stein.

7            THE COURT:  Mr. Stein, where it is possible to

8    identify yourself when someone else is arguing, would you

9    please do so and just do your own argument and argue your own

10   issues.

11           MR. STEIN:  I got the message even before you said it,

12   your Honor.  Yes, we will.

13           THE COURT:  That will be easier for you as well.

14           MR. STEIN:  Yes.  Thank you.

15           THE COURT:  All motions will have been made by April

16   20 except possibly for Mr. Tarak Ben Ammar.

17           MS. FEGAN:  That's correct, your Honor.  We have asked

18   until June 1st to respond to all of them.  We are hoping to do

19   one combined brief.

20           THE COURT:  With Tarak Ben Ammar, I don't know if any

21   of the defendants are connected with him or not, but the case

22   is going to move without him.  It might be very much to his

23   advantage to join the case now, where he can have some input

24   into original strategy and the like.  I am not imposing this as

25   an obligation on anyone, but some of the defendants who may

1    have been close to Mr. Ammar might want to call him and mention

2    the possibility that he might like to accept service without

3    losing any of his objections and joining the action.

4            We are going to have opposition by June 1?

5            MS. FEGAN:  Yes, your Honor.

6            THE COURT:  Is that a satisfactory date for everyone?

7    June 20 for replies.  I urge you very strongly to reduce the

8    number of replies.

9            MR. KUPFERSTEIN:  Your Honor, Phyllis Kupferstein for

10   Harvey Weinstein.  As you have asked us to meet and confer and

11   try to consolidate our briefing, I think we do need more time

12   than June 20th in order to file the replies.  We filed our

13   motion back in February, so plaintiff has had months now and

14   will have months to do their opposition.  I would like some

15   more time to do the reply.

16           MR. PUTNAM:  Their opposition was due a week ago.  It

17   was not filed.

18           THE COURT:  June 29.

19           MR. PUTNAM:  Thank you, your Honor.

20           MR. KUPFERSTEIN:  May we also have an extension on

21   page limit?

22           THE COURT:  I don't have any page limits.

23           MR. KUPFERSTEIN:  Thank you, your Honor.

24           THE COURT:  The only page limits I have are boredom.

25   The thought that the longer you write the more you write, the

1   less interested the reader is likely to be.  You should

2   economize.  I have never written a 100-page opinion.  I don't

3   think I have written a 75-page opinion.  Things can be said a

4   lot more quickly and concisely than most lawyers say them.

5           The bar date for filing motions and supporting papers

6   April 20.  The bar date for filing opposition papers June 1.

7   One paper will suffice for everything.

8           MS. FEGAN:  Yes, your Honor.

9           THE COURT:  The bar date for serving reply papers June

10  29.  I'll let you know if I need oral argument.

11          Is there anything else you would like me to entertain

12  today?

13          MS. FEGAN:  No.  Thank you, your Honor.

14          THE COURT:  Thank you very much.  Enjoy your weekend.

15          (Adjourned)

16

17

18

19

20

21

22

23

24

25