**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| LOUISETTE GEISS, KATHERINE KENDALL, ZOE BROCK, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA SAGEMILLER, and NANNETTE KLATT, individually and on behalf of all others similarly situated,<br><br>         Plaintiffs,<br><br>    vs.<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX, LLC, MIRAMAX FILM CORP., MIRAMAX FILM NY LLC, HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MIRAMAX DOES 1-10, and JOHN DOES 1-50, inclusive,<br><br>         Defendants. | 1:17-CV-9554 (AKH) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTIONS OF DEFENDANTS JAMES DOLAN, PAUL TUDOR JONES, MARC LASRY, TIM SARNOFF, AND DIRK ZIFF TO DISMISS COUNTS I, II, IV AND XIV OF THE COMPLAINT**

June 29, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ iii

PRELIMINARY STATEMENT .................................................................................................. 1

ARGUMENT ............................................................................................................................... 5

I.     THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD A
RICO VIOLATION (COUNT I) ..................................................................................... 5

        A.     There Is No Well-Pled Allegation that the Outside Directors Engaged in a
Pattern of Racketeering Activity ......................................................................... 5

        B.     There Is No Well-Pled Allegation that the Outside Directors Participated in
a RICO Enterprise .............................................................................................. 10

        C.     The Alleged Injuries Are Not Redressable Under RICO ................................... 12

        D.     Joint and Several Liability Does Not Save the Deficient RICO Claims ............ 15

II.    THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD A
RICO CONSPIRACY (COUNT II) ............................................................................. 17

III.   THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD
NEGLIGENT SUPERVISION AND RETENTION (COUNT IV) ............................... 17

        A.     There Is No Well-Pled Allegation that the Outside Directors Employed
Weinstein .......................................................................................................... 18

        B.     There Is No Well-Pled Allegation that the Outside Directors Knew or
Should Have Known About Weinstein's Propensity for Sexual Misconduct
Before Any Alleged Incident Occurred ............................................................. 21

        C.     There Is No Well-Pled Allegation that Injuries Occurred on the Outside
Directors' Premises ........................................................................................... 23

IV.   THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD A
CLAIM FOR RATIFICATION (COUNT XIV) ........................................................... 24

V.    THE COMPLAINT DOES NOT CONTAIN ANY ALLEGATION THAT THE
OUTSIDE DIRECTORS ARE SUBJECT TO VICARIOUS LIABILITY .................... 29

VI.   THE CLAIMS AGAINST THE OUTSIDE DIRECTORS ARE TIME-BARRED ......... 31

        A.     Courts Regularly Dismiss Actions on a Motion to Dismiss Where the
Pleading Shows that the Statute of Limitations Has Run ................................... 31

        B.     The Statutes of Limitations Have Run on the RICO Claims .............................. 32

        C.     No Tolling Principle Applies to the Claims, So They Are Untimely ................. 35

                1.     Equitable Estoppel Does Not Apply ..................................................... 35

                2.     Equitable Tolling Does Not Apply ........................................................ 39

                3.     The Statute of Limitations Cannot Be Tolled Under the Doctrine
of Duress ............................................................................................... 39

VII.  THE CLASS CLAIMS SHOULD BE DISMISSED ..................................................... 41

# TABLE OF CONTENTS
## (CONTINUED)

**Page**

VIII.   THE OPPOSITION ATTEMPTS TO RESIST DISMISSAL BY QUOTING TEXT
        THAT DOES NOT EXIST IN THE *GEISS* PRAYER FOR RELIEF .............................42

IX.     LEAVE TO AMEND SHOULD BE DENIED ..................................................................42

CONCLUSION.......................................................................................................................................44

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One*,
   2 F. Supp. 2d 485 (S.D.N.Y. 1998) ........................................................................25, 26, 29

*Ahluwalia v. St. George's Univ., LLC*,
   63 F. Supp. 3d 251 (E.D.N.Y. 2014) ...................................................................................21

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*,
   No. 04-CV-2934, 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005)........................12

*Allstate Ins. Co. v. Nazarov*,
   No. 11-CV-6187, 2015 U.S. Dist. LEXIS 134481 (E.D.N.Y. May 19, 2015) .......................16

*Allstate Ins. Co. v. Williams*,
   No. 13-CV-2893, 2014 U.S. Dist. LEXIS 170191 (E.D.N.Y. Nov. 3, 2014).........................16

*Alston v. Stone*,
   No. 02-CV-5338, 2005 U.S. Dist. LEXIS 4426 (S.D.N.Y. Mar. 21, 2005) ...........................41

*Anderson v. Greene*,
   No. 14-CV-10249, 2017 U.S. Dist. LEXIS 130590 (S.D.N.Y. Aug. 16, 2017).....................43

*Arista Records, LLC v. Tkach*,
   122 F. Supp. 3d 32 (S.D.N.Y. 2015).............................................................................32, 42

*Bankers Tr. Co. v. Rhoades*,
   859 F.2d 1096 (2d Cir. 1988)................................................................................................32

*Belmont v. MB Inv. Partners, Inc.*,
   708 F.3d 470 (3d Cir. 2013)..................................................................................................19

*Bigio v. Coca-Cola Co.*,
   675 F.3d 163 (2d Cir. 2012)...........................................................................................26, 27

*Bliss v. Putnam Valley Cent. Sch. Dist.*,
   No. 06-CV-15509, 2011 U.S. Dist. LEXIS 35485 (S.D.N.Y. Mar. 24, 2011) .......................22

*Boyle v. United States*,
   556 U.S. 938 (2009).............................................................................................................10

*Bynog v. Cipriani Grp., Inc.*,
   802 N.E.2d 1090 (N.Y. 2003)...............................................................................................19

*Cabrera v. Jakabovitz*,
   24 F.3d 372 (2d Cir. 1994)....................................................................................................27

iii

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Castro-Quesada v. Tuapanta*,
  49 N.Y.S.3d 757 (2d Dep't 2017)............................................................19

*Chevron Corp. v. Donziger*,
  871 F. Supp. 2d 229 (S.D.N.Y. 2012)......................................................24

*Childers v. N.Y. & Presbyterian Hosp.*,
  36 F. Supp. 3d 292 (S.D.N.Y. 2014)........................................................32

*Cofacredit, S.A. v. Windsor Plumbing Supply Co.*,
  187 F.3d 229 (2d Cir. 1999).......................................................................5

*Connell v. Hayden*,
  443 N.Y.S.2d 383 (2d Dep't 1981)...........................................................20

*Corley v. Jahr*,
  No. 11-CV-9044, 2014 U.S. Dist. LEXIS 25489 (S.D.N.Y. Feb. 10, 2014)..........................20

*Crawford v. Franklin Credit Mgmt.*,
  758 F.3d 473 (2d Cir. 2014)......................................................................17

*Cruz v. Fxdirectdealer, LLC*,
  720 F.3d 115 (2d Cir. 2013)................................................................10, 11

*Cullen v. Margiotta*,
  811 F.2d 698 (2d Cir. 1987)...............................................................40, 41

*DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*,
  770 F. Supp. 2d 627 (S.D.N.Y. 2011).......................................................13

*De Falco v. Bernas*,
  244 F.3d 286 (2d Cir. 2001)........................................................................5

*DeSilva v. N. Shore-Long Island Jewish Health Sys.*,
  770 F. Supp. 2d 497 (E.D.N.Y. 2011) .......................................................15

*Dilworth v. Goldberg*,
  No. 10-CV-2224, 2011 U.S. Dist. LEXIS 82392 (S.D.N.Y. July 28, 2011) ..........................22

*Doe v. Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014).................................................. *passim*

*Doe v. City of New York*,
  No. 09-CV-9895, 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013) ....................23, 30

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Doe v. Kolko*,
Nos. 06-CV-2096, 06-CV-2215, 2008 U.S. Dist. LEXIS 71174
(E.D.N.Y. Sept. 4, 2008)........................................................................................37

*Eaves v. Designs for Fin., Inc.*,
785 F. Supp. 2d 229 (S.D.N.Y. 2011)....................................................................42

*Ehrens v. Lutheran Church*,
385 F.3d 232 (2d Cir. 2004).............................................................18, 20, 23, 24

*First Capital Asset Mgmt. v. Satinwood*,
385 F.3d 159 (2d Cir. 2004)...................................................................................17

*Glick v. Berk & Michaels, P.C.*,
No. 90-CV-4230, 1991 U.S. Dist. LEXIS 10347 (S.D.N.Y. July 26, 1991) ..........36

*Hamm v. United States*,
483 F.3d 135 (2d Cir. 2007)...................................................................................28

*Hemi Grp., LLC. v. City of New York*,
559 U.S. 1 (2010)...................................................................................................13

*Hinds Cnty. v. Wachovia Bank N.A.*,
No. 08-CV-2516, 2010 U.S. Dist. LEXIS 43202 (S.D.N.Y. Apr. 26, 2010)............6

*In re GM LLC Ignition Switch Litig.*,
No. 14-MD-2543, 2016 U.S. Dist. LEXIS 92499 (S.D.N.Y. July 15, 2016) ..........11

*Janese v. Scrufari*,
No. 09-CV-593, 2013 U.S. Dist. LEXIS 142888 (W.D.N.Y. Oct. 2, 2013) ..........36

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.*,
610 F.3d 382 (7th Cir. 2010) .....................................................................33, 34, 35

*Jerome M. Sobel & Co. v. Fleck*,
No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362 (S.D.N.Y. Dec. 1, 2003) ..............5

*K.I. v. N.Y.C. Bd. of Educ.*,
683 N.Y.S.2d 228 (1st Dep't 1998) .......................................................................30

*Kao v. British Airways, PLC*,
17-CV-232, 2018 U.S. Dist. LEXIS 8969 (S.D.N.Y. Jan. 19, 2018) ...............32, 42

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D. 649 (S.D.N.Y. 1996) ..............................................................................9

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Khapesi v. City of New York*,
No. 13-CV-4391, 2014 U.S. Dist. LEXIS 79623 (S.D.N.Y. June 10, 2014) .........................22

*Koch v. Christie's Int'l PLC*,
699 F.3d 141 (2d Cir. 2012)...............................................................................................2, 33

*Krystal G. v. Roman Catholic Diocese of Brooklyn*,
933 N.Y.S.2d 515 (Sup. Ct. Kings Cnty. 2011).....................................................................20

*L. Tarango Trucking v. Cnty. of Contra Costa*,
181 F. Supp. 2d 1017 (N.D. Cal. 2001) ..........................................................................24, 25

*LiveIntent, Inc. v. Naples*,
293 F. Supp. 3d 433 (S.D.N.Y. 2018)...................................................................................32

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
711 F.3d 106 (2d Cir. 2013)....................................................................................................6

*Mack v. Parker Jewish Inst. for Health Care & Rehab.*,
No. 14-CV-1299, 2014 U.S. Dist. LEXIS 154577 (E.D.N.Y. Oct. 30, 2014).................13, 14

*Mackin v. Auberger*,
59 F. Supp. 3d 528 (W.D.N.Y. 2014) ...................................................................................13

*Manswell v. United States*,
No. 09-CV-4102, 2010 U.S. Dist. LEXIS 82788 (S.D.N.Y. Aug. 9, 2010) ...........................26

*Meyer v. Holley*,
537 U.S. 280 (2003)..............................................................................................................19

*Moss v. BMO Harris Bank, N.A.*,
258 F. Supp. 3d 289 (E.D.N.Y. 2017) ..................................................................................17

*Murphy v. Guilford Mills, Inc.*,
No. 02-CV-10105, 2005 U.S. Dist. LEXIS 7160 (S.D.N.Y. Apr. 22, 2005)....................25, 26

*N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*,
312 F.R.D. 278 (E.D.N.Y. 2015) ............................................................................................8

*Naughright v. Robbins*,
No. 10-CV-8451, 2014 U.S. Dist. LEXIS 148497 (S.D.N.Y. Oct. 16, 2014) .................20, 43

*Noonan v. City of New York*,
No. 14-CV-4084, 2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. June 26, 2015) .................. 21-22

# TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Omar* v. *City of New York*,
   No. 13-CV-8264, 2015 U.S. Dist. LEXIS 4470 (S.D.N.Y. Jan. 5, 2015) ...............................20

*Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*,
   603 F.3d 144 (2d Cir. 2010)...............................................................................................43

*Precedo Capital Grp. Inc., v. Twitter Inc.*,
   33 F. Supp. 3d 245 (S.D.N.Y. 2014)..............................................................................26, 28

*Pyskaty v. Wide World of Cars, LLC*,
   856 F.3d 216 (2d Cir. 2017)..................................................................................................7

*Rainbow Apparel Distributor Center Corp. v. Gaze U.S.A., Inc.*,
   295 F.R.D. 18 (E.D.N.Y. 2013) ...........................................................................................27

*Ramos v. Jake Realty Co.*,
   801 N.Y.S.2d 566 (1st Dep't 2005) .................................................................................30-31

*Reach v. Music Publ'g, Inc. v. Warner/Chappell Music, Inc.*,
   No. 09-CV-5580, 2009 U.S. Dist. LEXIS 101943 (S.D.N.Y. Oct. 23, 2009) ........................32

*Rivera v. Puerto Rican Home Attendants Services*,
   930 F. Supp. 124 (S.D.N.Y. 1996) .......................................................................................26

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994)..............................................................................................40, 41

*Riviello v. Waldron*,
   391 N.E.2d 1278 (N.Y. 1979) .........................................................................................30-31

*RJR Nabisco, Inc. v. European Cmty.*,
   136 S. Ct. 2090 (2016).........................................................................................................12

*Robbins v. Tucker Anthony, Inc.*,
   649 N.Y.S.2d 856 (4th Dep't 1996)......................................................................................29

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*,
   84 F.3d 629 (2d Cir. 1996)....................................................................................................8

*Salvatore v. KLM Royal Dutch Airlines*,
   No. 98-CV-2450, 1999 U.S. Dist. LEXIS 15551 (S.D.N.Y. Sept. 30, 1999).........................30

*Saveria JFK, Inc. v. Flughafen Wien, AG*,
   No. 15-CV-6195, 2016 U.S. Dist. LEXIS 60737 (E.D.N.Y. May 3, 2016) .............................8

vii

**TABLE OF AUTHORITIES**
**(CONTINUED)**

**Page(s)**

*Securitron Magnalock Corp. v. Schnabolk*,
    65 F.3d 256 (2d Cir. 1995)...................................................................................13, 14

*Shockley v. Vt. State Colls.*,
    793 F.2d 478 (2d Cir. 1986)......................................................................................32

*Shostack v. Diller*,
    No. 15-CV-2255, 2015 U.S. Dist. LEXIS 123777 (S.D.N.Y. Sept. 16, 2015).......19

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*,
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) .......................................................................12

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Grp. AG*,
    277 F. Supp. 3d 521 (S.D.N.Y. 2017)......................................................................39

*Stamile v. Cnty. of Nassau*,
    No. 10-CV-2632, 2014 U.S. Dist. LEXIS 39320 (E.D.N.Y. Mar. 25, 2014).........22

*Stochastic Decisions, Inc. v. DiDomenico*,
    995 F.2d 1158 (2d Cir. 1993)....................................................................................15

*Trisci v. Trisci*,
    673 N.Y.S.2d 918 (2d Dep't 1998)...........................................................................41

*Tsipouras v. W&M Props., Inc.*,
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) ..........................................................................13

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014).............................................................35, 37, 38, 39

*Tymoshenko v. Firtash*,
    No. 11-CV-2794, 2015 U.S. Dist. LEXIS 125126 (S.D.N.Y. Sept. 18, 2015).........6

*United States v. Autuori*,
    212 F.3d 105 (2d Cir. 2000)........................................................................................9

*United States v. Blackmon*,
    839 F.2d 900 (2d Cir. 2000)......................................................................................17

*United States v. Guadagna*,
    183 F.3d 122 (2d Cir. 1999)........................................................................................9

*United States v. Pierce*,
    224 F.3d 158 (2d Cir. 2000)........................................................................................9

## TABLE OF AUTHORITIES
## (CONTINUED)

**Page(s)**

*Voiceone Commc'ns, LLC v. Google Inc.*,
   No. 12-CV-9433, 2014 U.S. Dist. LEXIS 189357 (S.D.N.Y. Mar. 29, 2014) ......................32

*Wexner v. First Manhattan Co.*,
   902 F.2d 169 (2d Cir. 1990).............................................................................................6

*Williams v. Dow Chem. Co.*,
   255 F. Supp. 2d 219 (S.D.N.Y. 2003) ..................................................................................12

*Woods v. CVS*,
   No. 13-CV-611, 2013 U.S. Dist. LEXIS 58764 (S.D.N.Y. Apr. 19, 2013) ..........................30

*Worldwide Directories, S.A. De C.V. v Yahoo! Inc.*,
   No. 14-CV-7349, 2016 U.S. Dist. LEXIS 44265 (S.D.N.Y. Mar. 31, 2016) .........................43

*Wright v. Ernst & Young LLP*,
   152 F.3d 169 (2d Cir. 1998)..............................................................................7, 13, 28, 29

*Zimmerman v. Poly Prep Country Day Sch.*,
   888 F. Supp. 2d 317 (E.D.N.Y. 2012) ..................................................................................38

*Zoe G. v. Frederick F.G.*,
   617 N.Y.S.2d 370 (2d Dep't 1994)......................................................................................41

*Zumpano v. Quinn*,
   849 N.E.2d 926 (N.Y. 2006)........................................................................................36, 37

## <u>TABLE OF AUTHORITIES</u>
### <u>(CONTINUED)</u>

<u>**Page(s)**</u>

**Statutes**

18 U.S.C. § 1962(c) ..............................................................................................5, 17

18 U.S.C. § 1962(d) ...................................................................................................17

**Other Authorities**

CPLR 302.....................................................................................................................27

Fed. R. Civ. P. 9(b) ................................................................................................6, 38

Defendants James Dolan, Paul Tudor Jones, Marc Lasry, Tim Sarnoff and Dirk Ziff (the "Outside Directors")[1] respectfully submit this reply memorandum of law in further support of their motions to dismiss Counts I, II, IV and XIV of the Complaint (the "Complaint"), all of the claims against the Outside Directors.

## PRELIMINARY STATEMENT

Far from advancing the claims against the Outside Directors, the Memorandum in Opposition (Dkt. No. 108 (the "Opposition" or "Opp.")) to the Outside Directors' Motions to Dismiss highlights that the Complaint seeks to impose liability on the Outside Directors for alleged conduct that they did not know about or participate in, let alone condone or ratify.  In an attempt to side-step the Complaint's failure to allege facts against the Outside Directors that tie them to any of this alleged misconduct, the Opposition seeks to obfuscate the differences between the Outside Directors and other defendants, and encourages the Court to infer a scheme by "Defendants" generally, without ever explaining how the Outside Directors, who allegedly joined the Board of Directors (the "TWC Board") of The Weinstein Company ("TWC") in 2013, 2015, and 2016, were part of any alleged RICO enterprise.  Although the Outside Directors understand the severity of the allegations against Mr. Weinstein, the Opposition's attempt impermissibly to group the  Outside Directors together with all other defendants should be rejected, particularly where, as independent outside directors, the Outside Directors had no day-to-day management role at TWC.  Accordingly, the belated claims against the Outside Directors should be dismissed for the following reasons.

---

[1] Defendant Tim Sarnoff joins defendants James Dolan, Paul Tudor Jones, Marc Lasry and Dirk Ziff for this reply memorandum in support of their motions to dismiss.  Although Mr. Sarnoff initially filed a separate memorandum of law in support of his motion to dismiss, this group of defendants now joins together to file a single reply memorandum in light of their similar positions and the Court's instruction to consolidate argument where possible.

As an initial matter, each of the claims set forth in the Complaint has long been time-barred by applicable statutes of limitations.  (*See* Section VI *infra*.)  The Opposition does not dispute that Mr. Weinstein's last alleged assault took place in 2008, well outside any relevant limitations period.  Rather, the Opposition purports to use the discovery doctrine and various tolling arguments to revive stale claims.  These efforts fail as a matter of law.  For example, relying on non-binding case law from the Seventh Circuit, the Opposition contends that the limitations period on the RICO claim did not begin to run until 2017, when Plaintiffs purportedly "discover[ed] Weinstein's network of professional spies" (none of whom are alleged to have been Outside Directors).  But Second Circuit precedent is clear that a plaintiff need not discover the *extent* of any purported RICO violation for their claims to accrue. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012) ("The RICO statute of limitations runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry.") (omission and internal quotation marks omitted).  The Complaint itself alleges that each Plaintiff discovered that Weinstein had harmed her career almost immediately after her encounter with Weinstein, the most recent of which occurred in 2008.  (*See* Compl. ¶¶ 59-60, 83, 92, 102-03, 113, 120; *see also* Dkt. No. 54 ("Mot.") at 38-40.)

The tolling arguments are equally inapplicable.  Equitable estoppel does not apply because there is no allegation that any of the Outside Directors—as opposed to any other defendant—actually took steps to prevent the filing of this action within the limitations period.  (*See* Opp. at 50-53 (failing to include a single assertion that the Outside Directors were involved in any "Black Cubing" of Plaintiffs).)  Equitable tolling does not save the claims either, because the Complaint does not and cannot allege that the Outside Directors—as opposed to any

other defendant—concealed material facts that prevented the timely filing of suit.  (*See id.* at 53-54.)  Nor is the doctrine of duress available because the Complaint does not and cannot identify any specific or general threats made by the Outside Directors that prevented the filing of this action.  Indeed, the Opposition recognizes that the Outside Directors took no such actions, conceding that the Complaint does not contend that the Outside Directors engaged in witness tampering.  (*See id.* at 32.)

Even if not time-barred, the Opposition also confirms that the Complaint fails adequately to plead any RICO violation by the Outside Directors.  (*See* Section I *infra*.)  The RICO claim against the Outside Directors fails because it ignores strict legal requirements that *each* element must be pled with respect to *each* defendant.  Throughout the Opposition, as in the Complaint, the Outside Directors are lumped together with other defendants (and unnamed defendants), and alleged to be part of a purported RICO enterprise, but nowhere is *a single allegation identified* that is specific to the Outside Directors (much less to any one of them individually).

Moreover, the Opposition *concedes* that the Outside Directors did *not* engage in witness tampering or commercial sex trafficking.  (*See* Opp. at 3.)  Instead, the RICO claim rests on conclusory assertions that the Outside Directors committed wire fraud and mail fraud.  The core of those assertions appears to be that TWC's Board allegedly used mails and wires to discuss, negotiate, and edit Weinstein's employment contract and engage in other correspondence related to TWC's ongoing business.  But neither the Opposition nor the Complaint explains how those mails and wires were part of any fraudulent scheme.  Nor do they allege that any of the Outside

Directors made any misrepresentations or possessed the requisite scienter to participate in a fraudulent scheme.[2]

The RICO claim also fails because the Opposition tacitly concedes that (i) there is no allegation that the Outside Directors actually participated in or otherwise exerted control over an illicit RICO enterprise (which must be distinct from the legitimate operations of TWC), (ii) the Plaintiffs did not suffer one of the narrow types of injuries redressable under RICO, and (iii) the Outside Directors—the first of whom, according to the Complaint, joined TWC's Board five years after the last of the assaults occurred in 2008—did not *cause* any RICO injuries.  Any one of these failings requires dismissal of the RICO and RICO conspiracy claims against the Outside Directors.

The negligent supervision claim fares no better.  (*See* Section III *infra*.)  The Opposition fails to demonstrate that the Complaint alleges facts suggesting that the Outside Directors knew or should have known of Weinstein's purported propensity for sexual misconduct.  Even accepting the Opposition's conclusory assertion that "the Board" (without identifying which particular directors) was informed of that propensity in 2015, there is no allegation that the Outside Directors were aware of Weinstein's propensity for sexual misconduct *before* the assaults occurred in 2008 and earlier.  That is a fatal deficiency in the negligent supervision claim, which also fails because the Complaint does not (and cannot) allege that the Outside Directors individually employed Weinstein or that any of the alleged assaults were committed on the Outside Directors' premises or with their chattels.

---

[2] Indeed, two of the Outside Directors—Paul Tudor Jones and Marc Lasry—***were not even on TWC's Board*** when communications and negotiations regarding Weinstein's employment agreement were underway.

The ratification claim is equally deficient.  (*See* Section IV *infra*.)  The Opposition does nothing to cure the Complaint's failure to allege (i) a principal-agent relationship between any individual Outside Director and Weinstein; (ii) that each of the Outside Directors had full knowledge of the material facts concerning each of Weinstein's alleged actions; or (iii) that each of the Outside Directors knowingly accepted the benefits of those actions.  Plainly, Weinstein was not acting as any of the Outside Directors' agent when he allegedly assaulted Plaintiffs, years before the Complaint alleges that any of the Outside Directors joined TWC's Board.  Nor are there any factual allegations that the Outside Directors knew the assaults occurred or gained any benefit from them.

Accordingly, because the claims against the Outside Directors suffer from multiple fatal deficiencies, none of which can be remedied by repleading, they should be dismissed with prejudice.

## ARGUMENT

I.   THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD A RICO VIOLATION (COUNT I)

A.   There Is No Well-Pled Allegation that the Outside Directors Engaged in a Pattern of Racketeering Activity

"[T]o establish a violation of § 1962(c), plaintiffs must allege that *each defendant* committed at least two predicate acts of racketeering activity" within a 10-year period.  *Jerome M. Sobel & Co. v. Fleck*, No. 03-CV-1041, 2003 U.S. Dist. LEXIS 21362, at *18-19, *25 (S.D.N.Y. Dec. 1, 2003) (citing *De Falco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)) (emphasis supplied); *see also Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999).  Neither the Complaint nor the Opposition does so.  The Opposition concedes that the Outside Directors did *not* engage in sex trafficking or witness tampering (*see* Opp. at 3), and the only RICO predicates it continues to argue as to the Outside Directors are

mail and wire fraud.  Nevertheless, the Complaint does not allege that any of the Outside
Directors actually engaged in mail or wire fraud.

　　*First*, as the Opposition acknowledges (*id.* at 27), allegations of mail and wire fraud
underlying a RICO claim must be pled with particularity.  *See* Fed. R. Civ. P. 9(b); *Lundy v.
Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("[T]he complaint
must adequately specify the statements it claims were false or misleading, give particulars as to
the respect in which plaintiff contends the statements were fraudulent, state when and where the
statements were made, and identify those responsible for the statements.") (internal quotation
marks omitted); *Tymoshenko v. Firtash*, No. 11-CV-2794, 2015 U.S. Dist. LEXIS 125126, at
\*12 (S.D.N.Y. Sept. 18, 2015) ("When there are multiple defendants, a plaintiff must specify
how each contributed to the fraud, rather than simply allege general participation in an overall
fraudulent scheme.").

　　Yet, the Opposition attempts to set aside this longstanding rule by arguing that "the
particularity requirement is not a mechanical formula demanding exacting precision but must
instead be applied in view of its express purposes and the facts of each case."  (Opp. at 27
(internal quotation marks omitted).)  While "courts have relaxed the Rule 9(b) pleading
requirements where much of the factual information needed to fill out a plaintiff's complaint lies
within the opposing party's knowledge," *Hinds Cnty. v. Wachovia Bank N.A.*, No. 08-CV-2516,
2010 U.S. Dist. LEXIS 43202, at \*43 (S.D.N.Y. Apr. 26, 2010), "[t]his exception to the general
rule must not be mistaken for license to base claims of fraud on speculation and conclusory
allegations.  Where pleading is permitted on information and belief, a complaint must adduce
specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading
standard."  *Wexner v. First Manhattan Co*., 902 F.2d 169, 172-73 (2d Cir. 1990); *see also*

*Pyskaty v. Wide World of Cars*, *LLC*, 856 F.3d 216, 226 (2d Cir. 2017) (conclusory allegations made on information and belief are "insufficient to make a claim plausible where the complaint's *factual allegations* do not raise a right to relief above the speculative level") (emphasis in original) (omission, alterations, and internal quotation marks omitted).  The Complaint offers only conclusory assertions regarding the Outside Directors' participation in mail or wire fraud (rather than any specific facts), to which the Opposition adds only speculation.

*Second*, the Outside Directors established that the Complaint does not adequately allege that they participated in a scheme to defraud, and the Opposition does nothing to alter this conclusion.  Indeed, of the seven purported examples of mail or wire fraud identified in the Opposition, only one of them actually includes mails and wires that were purportedly made by members of TWC's Board.[3]  The Opposition contends that TWC's Board used mails and wires to negotiate, discuss, and edit Weinstein's employment contract, correspond with TWC and Weinstein's lawyer concerning Weinstein's personnel file, correspond regarding "each complaint against Weinstein as it occurred," negotiate non-disclosure agreements, and discuss, negotiate, or approve employment contracts with TWC employees.  (Opp. at 28.)[4]  But neither the Complaint

---

[3] Notably, the Complaint does not identify any communications involving the Outside Directors. (*See, e.g.,* Compl. ¶ 201 (identifying list of mails and wires sent in connection with "Defendants' illegal scheme," none of which include the Outside Directors).)  The Opposition attempts to remedy this failure by identifying additional mails and wires that are not pled in the Complaint. This newly-minted assertion should be rejected.  *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (holding party cannot amend complaint through motion papers).

[4] Several other allegations concern mails or wires that were used by others, including Weinstein, Weinstein's lawyers, and Miramax.  (*See* Opp. at 27-29.)  But there is no allegation or argument that any of the Outside Directors knew about, directed, or otherwise participated in those wires. For example, the Opposition contends that wires were used by Ambassador Paolo Zampolli and Alex Spiro, Esq. to contact proposed plaintiff Melissa Thompson in October 2017.  (Opp. at 28.) But those contacts are not alleged in the operative complaint in this action, and in any event did not take place until October 13, 2017 and later.  (*See Dulany, et al. v. Miramax Film NY, et al.*, 18-CV-4857 (S.D.N.Y.), Dkt. No. 11 ¶ 126.)  By that time, the Outside Directors had all

nor the Opposition contains the required particularized allegations about which director

supposedly engaged in (or knew about) which purported communications.  Indeed, many of

these hypothetical communications (such as those purportedly discussing each complaint against

Weinstein as it occurred) would have taken place before *any* of the Outside Directors allegedly

joined TWC's Board.  According to the Complaint, none of them joined until five years after the

last of the Plaintiffs in this action was allegedly assaulted.[5]  Because there are no allegations that

the Outside Directors made or were aware of these supposed communications, there is no

plausible way they could have participated in any mail or wire fraud related to those

communications.

Moreover, the Complaint does not allege that any of the mails or wires at issue (such as

those regarding Weinstein's employment) actually were part of a fraudulent scheme.[6]  The

Complaint contains no allegations suggesting that any of the Outside Directors made any

material misrepresentation, or even that they failed to disclose information that they were under a

duty to disclose.  Instead, the Complaint points to the discussions surrounding Weinstein's 2015

employment agreement as purportedly supporting an inference that various directors knew of

---

resigned from TWC's Board, and there is no allegation—nor could there be—that the Outside
Directors knew about, directed, or participated in those contacts.

[5] The Complaint alleges that none of the Outside Directors joined the TWC Board before 2013
(with some not joining until 2016), well after Weinstein allegedly assaulted Ms. Geiss and Ms.
Thomas in 2008.  (Compl. ¶ 24 (alleging Ziff joined TWC board in September 2015); *id.* ¶ 26
(alleging Lasry joined TWC board in mid-2016); *id.* ¶ 30 (alleging Jones joined TWC board in
December 2015); *id.* ¶ 32 (alleging Dolan joined TWC board in mid-2015); Opp. at 43 n.182
(conceding Sarnoff joined the TWC Board in 2013).)

[6] It is black letter law that a "complaint alleging mail and wire fraud must show (1) the existence
of a scheme to defraud, (2) defendant's knowing or intentional participation in the scheme, and
(3) the use of interstate mails or transmission facilities in furtherance of the scheme."
*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629, 633 (2d Cir. 1996).  A complaint
fails to allege mail or wire fraud unless the alleged mails or wires are "made in furtherance of"
the alleged scheme to defraud.  *See N.Y. State Catholic Health Plan, Inc. v. Acad. O & P Assocs.*,
312 F.R.D. 278, 297 (E.D.N.Y. 2015).

Weinstein's alleged misconduct.  (*See* Compl. ¶¶ 127-33.)  But the Complaint does not allege that the agreement or communications leading up to it were somehow fraudulent, nor that they were they made in furtherance of a fraudulent scheme.  Indeed, the only allegation related to the 2015 agreement that could possibly sound in fraud is that *David Boies* withheld Weinstein's personnel file *from the Board* "to cover up Weinstein's pattern and practice of sexual assault." (*Id.* ¶ 129.)  But David Boies' alleged efforts to mislead and withhold information from the very Board members the Opposition now argues knew that information is no substitute for allegations that any of the Outside Directors themselves participated in a fraudulent scheme.

*Third,* neither the Complaint nor the Opposition identifies any material misrepresentation that was made by any of the Outside Directors, or even that the Outside Directors directed or were aware of material misrepresentations made by others.  *See United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000).[7]

*Fourth*, as the Outside Directors established in their moving brief, the Complaint fails to allege that the Outside Directors possessed a "conscious knowing intent to defraud" or "contemplated . . . harm to the property rights of the victim."  *United States v. Guadagna,* 183 F.3d 122, 129 (2d Cir. 1999) (internal quotation marks omitted); (*see also* Dkt. No. 54 ("Mot.") at 18).  The Opposition contains no answer to this showing.

Indeed, the Complaint does not even plead facts that suggest any of the Outside Directors knew about Weinstein's alleged misconduct.  The Opposition points to unsupported assertions that the TWC Board discussed "each complaint against Weinstein as it occurred," negotiated

---

[7] The Complaint also does not allege, nor does the Opposition establish, that any of the Outside Directors failed to disclose any information that they had a duty to disclose.  *See United States v. Autuori*, 212 F.3d 105, 119 (2d Cir. 2000) ("[A]n omission can violate the fraud statute only in the context of a duty to disclose . . . ."); *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 656 (S.D.N.Y. 1996) (dismissing RICO claim; "[a]bsent the existence of any such duty to disclose, a mail fraud claim premised on a material omission must fail").

"non-disclosure agreements with Weinstein's victims," and approved an employment agreement

with Weinstein that "specifically incorporated clauses to address Weinstein's sexual assaults."

(Opp. at 28.)  But the Complaint *contains no factual allegations* to support the notion that the

Outside Directors discussed complaints against Weinstein or were involved in negotiating any

non-disclosure agreements.  And it does not even attempt to particularize any alleged acts taken

by individual Outside Directors as opposed to the Board as a whole.  Regarding Weinstein's

employment agreement, the Complaint makes no allegations indicating that any of the Outside

Directors were involved in the negotiations or had knowledge about the reasons for including

each specific term within it.  ***Indeed, defendants Jones and Lasry did not join TWC's Board***

***until after the employment agreement was executed.***  It is undisputed that they did not

participate in its negotiation or approve that agreement.

**B.     There Is No Well-Pled Allegation that the Outside Directors Participated in a RICO
         Enterprise**

By averring that there is no requirement that a RICO enterprise "have any particular

organizational structure," the Opposition seeks to end-run the strict requirements that defendants

must share a common purpose to be a part of a RICO enterprise.  (Opp. at 15 (*citing Boyle v.*

*United States*, 556 U.S. 938, 948 (2009).)  As the Opposition acknowledges (*see* Opp. at 15-18),

however, to properly plead a RICO enterprise, a plaintiff must allege facts showing that the

defendants were members of an enterprise that "share[d] a common purpose to engage in a

particular fraudulent course of conduct and work[ed] together to achieve such purposes."  *Cruz v.*

*Fxdirectdealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013) (internal quotation marks omitted).

Here, the Complaint does not plausibly allege that the diverse group of individuals,

corporations, and firms it identifies all shared a common illicit purpose or worked together to

achieve that goal.[8]  Indeed, the *legitimate* business operations of TWC cannot constitute a RICO

enterprise.  *In re GM LLC Ignition Switch Litig.*, No. 14-MD-2543, 2016 U.S. Dist. LEXIS

92499, at *137 (S.D.N.Y. July 15, 2016) ("Plaintiffs' RICO claim fails because they do not

allege a common purpose or organized conduct separate and apart from New GM's ordinary

affairs.").

      The only argument the Opposition makes in support of the contention that the Outside

Directors participated in the alleged RICO enterprise's illicit purpose is that "all of the Directors,

including the Outside Directors, negotiated and agreed to increasingly protective employment

agreements with Harvey Weinstein from 2005 through 2015 in direct response to his history of

assault."  (Opp. at 21 (emphasis omitted).)  That some of the Outside Directors, acting in their

capacity as Board members, may have participated in negotiations regarding Weinstein's

employment agreement says nothing about their knowledge of or involvement in any alleged

illicit purpose.[9]  Further, the Complaint does not actually allege what role any of the Outside

---

[8] The Opposition contends that the Complaint "clearly allege[s] contacts between TWC,
Weinstein and the Directors, and Koenigsberg admits to contacts with Law Firm Participant
David Boies."  (Opp. at 18.)  *First*, alleging that directors of a company interacted with the
company and its management does not establish an enterprise.  *See Cruz*, 720 F.3d at 121
(holding that "a corporate defendant associated with its own employees or agents carrying on the
regular affairs of the defendant" does not constitute a RICO enterprise) (internal quotation marks
omitted).  *Second*, defendant Koenigsberg's opening brief does not actually contain the purported
"admission."  Rather, the cited pages state that "the Complaint's conclusory assertion of a
common purpose among the TWC Board, Law Firm Participant [David Boies], and Weinstein is
*contradicted* by the [Complaint's] allegations that (a) the Law Firm Participant withheld
Weinstein's personnel file from the TWC Board (Compl. ¶ 129), and (b) the TWC Board
inserted provisions in Weinstein's 2015 employment contract that imposed liquidated damages
for sexual misconduct (*id.* ¶ 132)."  (Dkt. No. 56 ("Koenigsberg Mot.") at 13-14 (emphasis
supplied); *see also id.* at 3.).

[9] The Opposition contends that the terms of the 2015 employment agreement are "unique and
reflect[] the Directors' knowledge and participation in the enterprise and agreement to participate
in the scheme."  (Opp. at 22.)  Not so.  Voting to approve the employment agreement does not
reflect such knowledge or participation because, among other reasons, the Outside Directors
were necessarily *adverse* to Weinstein in those negotiations, and the inclusion of those

Directors purportedly played in the negotiations.  And it completely ignores that two of the

Outside Directors—Jones and Lasry—did not even join TWC's Board until *after* the negotiations

regarding Weinstein's employment agreement were completed and the agreement itself was

approved.  (*See* Compl. ¶¶ 26, 30, 127-30.)

 In an attempt to overcome this glaring deficiency, the Opposition contends that there is

no requirement that a plaintiff must allege that each of the defendants participated in the RICO

enterprise's illicit affairs.  (Opp. at 18-19 & n.69.)  That is not the law—as is apparent from the

cases on which the Opposition relies.  Each of those cases contains detailed allegations regarding

each defendant's alleged role in the illicit RICO enterprise.  *See Sky Med. Supply Inc. v. SCS

Support Claims Servs.*, 17 F. Supp. 3d 207, 225 (E.D.N.Y. 2014) (finding sufficient participation

where plaintiff alleged that each of the defendants were "vital actors who enabled the scheme by

allowing others to use their names on [independent medical examinations] and peer review

reports, and by testifying falsely in support of those reports") (internal quotation marks omitted);

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934, 2005 U.S. Dist. LEXIS 29666, at

*22 (E.D.N.Y. Feb. 22, 2005) ("Plaintiffs describe in detail each defendant's necessary and

symbiotic contribution to the overall scheme.").  The Complaint here contains no such

allegations concerning the Outside Directors.

## C. The Alleged Injuries Are Not Redressable Under RICO

 The Opposition does not dispute that RICO claims can only be used to recover for injury

to business and property, not physical and emotional injuries.  *Williams v. Dow Chem. Co.*, 255

F. Supp. 2d 219, 225 (S.D.N.Y. 2003); *see also RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct.

2090, 2108 (2016) (Congress "cabin[ed] RICO's private cause of action to particular kinds of

---

provisions in the agreement reflects nothing more than that *Weinstein himself* requested them and
negotiated for them.

injury—excluding, for example, personal injuries").  Instead, it seeks to recast the injuries at

issue as "reputational damage" and "career damage."  (Opp. at 35.)[10]  This effort fails.[11]

      The case upon which the Opposition relies, *Securitron Magnalock Corp. v. Schnabolk*, 65

F.3d 256, 263-64 (2d Cir. 1995), did not rule one way or the other regarding whether deliberate

harm to a plaintiff's reputation is recoverable under RICO; that question simply was not before

the court.   In contrast, many courts *have* explicitly held that injuries to "business reputation . . .

are not actionable under civil RICO."  *Tsipouras v. W&M Props., Inc.*, 9 F. Supp. 2d 365, 368

(S.D.N.Y. 1998); *see also Mackin v. Auberger,* 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014)

("[T]he loss of Plaintiff's reputation and resulting inability to gain future employment are

---

[10] Only Plaintiff Brock makes specific allegations in the Complaint concerning any harm to her reputation, explaining that her reputation was harmed as a result of Weinstein's alleged assault. (*See* Compl. ¶ 83 ("After Weinstein assaulted her, Brock suffered from depression, a lack of self-confidence and a loss of reputation.").)  None of the other Plaintiffs make any factual allegations regarding purported harms to their reputations.  *See Wright*, 152 F.3d at 178 (holding party cannot amend complaint through motion papers).

[11] In their opening briefs, the Outside Directors demonstrated that the RICO claim against them cannot succeed because they did not cause any of the alleged injuries.  (*See* Mot. at 23; Dkt. No. 71 ("Sarnoff Mot.") at 7-8.)  The Opposition does not dispute—or even discuss—this showing. There is no question that the injuries alleged are significant.  The Complaint makes clear, however, that those injuries were not caused, in whole or in part, by any act or omission of the Outside Directors.  While the Opposition asserts that "Defendants" used mails and wires to negotiate Weinstein's employment agreement, it does not make any allegations as to how Plaintiffs' reputations were harmed by that agreement or related communications.  *See Mack v. Parker Jewish Inst. for Health Care & Rehab.*, No. 14-CV-1299, 2014 U.S. Dist. LEXIS 154577, at *14 (E.D.N.Y. Oct. 30, 2014)  ("The injury suffered by Plaintiff was not a direct result of the alleged scheme to defraud Medicare . . . .  Acts that merely furthered, facilitated, permitted or concealed an injury which happened or could have happened independently of the act do not directly cause that injury, and thus do not proximately cause it.") (internal quotation marks omitted); *Hemi Grp., LLC. v. City of New York*, 559 U.S. 1, 15 (2010) (causation not sufficiently direct where plaintiff's "theory of liability rests on the independent actions of third and even fourth parties," and where "[m]ultiple steps . . . separate the alleged fraud from the asserted injury"); *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 652 (S.D.N.Y. 2011) ("[A] theory of causation that either (A) requires the Court to look much beyond the 'first step' of harm caused, or (B) in which the alleged violation is not 'directly responsible' for the injury but rather allows it to have occurred more easily, cannot meet RICO's standing requirements.") (quoting *Hemi Grp.*, 559 U.S. at 10-11).

personal injuries and are not compensable under RICO."); *Mack*, 2014 U.S. Dist. LEXIS 154577, at *13 ("[G]eneralized reputational harms . . . are not a cognizable injury under RICO.") (internal quotation marks omitted).[12]  In addition, *Securitron* involved a RICO enterprise that targeted a specific company (Securitron) and spread false rumors concerning the supposed dangers of Securitron locks.  65 F.3d at 263-64.  Under those circumstances—where a competitor's conduct was designed specifically and deliberately to achieve an advantage within the market by maligning a competitor's product—the Second Circuit affirmed a verdict that included damages to the corporation in the form of lost profits, out of pocket expenses, injury to reputation and/or loss of goodwill.  Here, in contrast, the Complaint does not allege that any of the purported RICO predicates undertaken by the Outside Directors were specifically designed to malign Plaintiffs' reputations.  There are no allegations, for example, that any Outside Director made false or defamatory statements about Plaintiffs.

Moreover, as the Outside Directors established in their opening brief, the asserted injuries to Plaintiffs' reputations are not recoverable under RICO because they are impermissibly speculative.  (*See* Mot. at 22-23.)  The Opposition's only response is to argue that additional evidence about Plaintiffs' purported damages will be adduced from experts as the case progresses.  (Opp. at 38.)  That misses the point.  The deficiency is not simply that the damages have not yet been calculated.  Rather, it is that the nebulous and generalized "loss of reputation" claimed in the Opposition is, by its nature, the type of speculative loss that is not recoverable

---

[12] The Opposition attempts to distinguish *Mack* by arguing that "Defendants" (without identifying which ones) took "affirmative steps to blacklist them and interfere with their careers."  (Opp. at 37.)  This does not actually distinguish *Mack*, in which the court determined that there was no RICO injury despite allegations that the defendants damaged the plaintiff's reputation through deliberate slander, libel, and defamation.  *See Mack*, 2014 U.S. Dist. LEXIS 154577, at *13.  In any event, here, neither the Complaint nor the Opposition identifies *any* affirmative actions that *any* of the Outside Directors took to blacklist Plaintiffs or interfere with their careers.

under RICO.  *See, e.g., Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1165 (2d Cir.

1993) (dismissing plaintiff's RICO claim for lack of standing where amount of plaintiff's injury

was indefinite and "unprovable").[13]

Then, the Opposition asserts that Plaintiffs also suffered injury to their "causes of action"

as a result of the RICO scheme.  (Opp. at 37.)[14]  While the Opposition argues that "Defendants"

(without identifying which ones) "purposefully obstructed justice, destroyed evidence, [and]

manipulated and deceived Class Members" (Opp. at 37), the Complaint contains no allegations

tying any of the *Outside Directors* (as opposed to other defendants) to that purported misconduct

or the resulting harms.  To the contrary, the Opposition acknowledges that the Outside Directors

were ***not*** part of that alleged misconduct by conceding that the Outside Directors did not engage

in witness tampering.  (*See* Opp. at 3.)

## D.      Joint and Several Liability Does Not Save the Deficient RICO Claims

The Opposition contends that this Court should resurrect the deficient RICO claims and

ignore the Complaint's failure to allege that each defendant participated in the illicit enterprise

by finding the Outside Directors jointly and severally liable, even for injuries that were suffered

before any of the Outside Directors joined TWC's Board.  (Opp. at 23-24.)  That is not the law.

---

[13] The Opposition sets up a straw man, claiming that the Outside Directors believe that Plaintiffs'
injuries are "speculative" because they "involve Hollywood."  (Opp. at 38.)  This is not the
Outside Directors' view.  (*See* Mot. at 22.)  Rather, under applicable case law (cited above),
general harm to an individual's career is too speculative to be redressed under RICO, regardless
of the industry in which that individual works.

[14] Under the circumstances alleged in the Complaint, harm to a "cause of action" is not
recoverable under RICO.  Indeed, any alleged harm to a plaintiff's "cause of action" is circular
because it presupposes that the plaintiff had a viable cause of action in the first place.  Moreover,
while a case from more than 30 years ago discussed the theoretical possibility that, under certain
circumstances not present here, interference with a plaintiff's litigation of certain claims during
discovery may constitute a RICO injury, more recent precedent is clear that "hypothetical
inability to recover does not state a RICO claim that is ripe for adjudication."  *DeSilva v. N.
Shore-Long Island Jewish Health Sys.*, 770 F. Supp. 2d 497, 522 (E.D.N.Y. 2011).

*First*, joint and several liability cannot create liability where none otherwise exists.  *See, e.g.*, *Allstate Ins. Co. v. Williams,* No. 13-CV-2893, 2014 U.S. Dist. LEXIS 170191, at *26 (E.D.N.Y. Nov. 3, 2014) (imposing joint and several liability against those "who participated in the fraudulent act"), *report and recommendation adopted*, 2014 U.S. Dist. LEXIS 168920 (E.D.N.Y. Dec. 5, 2014).  Because the Complaint does not allege the required RICO elements as to any of the Outside Directors, there is no basis for this Court to even consider the magnitude of damages or scope of conduct for which they could be liable.

*Second,* the Opposition mischaracterizes how joint and several liability operates for RICO claims.  (*See* Opp. at 23-24.)  Contrary to the contention in the Opposition (*id.* at 24), a defendant cannot be held liable for *all* of an enterprise's alleged wrongful acts merely for his participation in a *subset* of them.  Joint and several liability for RICO violations can only be imposed on defendants who *actually participated in a specific RICO violation*.  *See, e.g.*, *Williams*, 2014 U.S. Dist. LEXIS 170191, at *26 (imposing joint and several liability where the defendants each contributed "to a single indivisible injury").  In other words, while RICO defendants may be subject to joint and several liability, that liability attaches only for damages resulting from the RICO violation in which that particular defendant participated.  *See Allstate Ins. Co. v. Nazarov*, No. 11-CV-6187, 2015 U.S. Dist. LEXIS 134481, at *49-50 (E.D.N.Y. May 19, 2015) (imposing joint and several liability where "defendants acted jointly and/or concurrently to produce a single injury," but *declining* to impose joint and several liability for acts that were not undertaken jointly) (internal quotation marks omitted), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 135718 (E.D.N.Y. Sept. 30, 2015).

In arguing the contrary position, the Opposition relies on conspiracy cases that have nothing to do with RICO.  (*See* Opp. at 24 & nn.91-93.)  These cases do not resuscitate the

16

Complaint.  Indeed, one of the cases cited in the Opposition—the Second Circuit's decision in *United States v. Blackmon*—holds that "for *substantive offenses*, a defendant cannot be retroactively liable for offenses committed prior to his joining the conspiracy." 839 F.2d 900, 909 (2d Cir. 1988) (emphasis in original).  In other words, even if the Outside Directors belatedly joined a RICO enterprise—which they did not—they "cannot be retroactively liable" for the underlying substantive RICO offenses.  *Id.*

## II.    THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD A RICO CONSPIRACY (COUNT II)

The Opposition makes no serious effort to defend the RICO conspiracy claim, which fails for at least two reasons.

*First*, "[i]n the absence of any viable underlying 18 U.S.C. § 1962(c) claim, plaintiff's RICO conspiracy claims . . . pursuant to 18 U.S.C. § 1962(d) must also fail."  *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 309 (E.D.N.Y. 2017); *see also First Capital Asset Mgmt. v. Satinwood*, 385 F.3d 159, 182 (2d Cir. 2004) (RICO conspiracy claim properly dismissed where complaint did not state a claim for a substantive RICO violation).  Because the Complaint's RICO claim fails, the RICO conspiracy claim fails as well.

*Second*, the Complaint does not allege that any of the Outside Directors "agreed with at least one other entity to commit a substantive RICO offense."  *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 487 (2d Cir. 2014).  For example, the Complaint does not allege that any of the Outside Directors knowingly agreed to commit wire fraud or knew that any such fraud was part of a pattern of racketeering activity.

## III.   THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD NEGLIGENT SUPERVISION AND RETENTION (COUNT IV)

In their opening brief, the Outside Directors demonstrated that the Complaint did not (and cannot) include well-pled factual allegations regarding the Outside Directors' supervision or

17

retention of Weinstein.  (Mot. at 24-34; Sarnoff Mot. at 18-21.)  The Opposition does not

contend otherwise.  To the contrary, it recognizes that the Complaint does not allege two of the

three elements a plaintiff must plead to state a claim for negligent supervision as to the Outside

Directors:  (i)  that the Outside Directors employed Weinstein, and (ii) that the alleged torts were

committed on the Outside Directors' premises or with their chattels.[15]  *See Ehrens v. Lutheran*

*Church*, 385 F.3d 232, 235 (2d Cir. 2004); (Opp. at 43-45).

      The Opposition instead focuses on the third element, arguing that the Outside Directors

knew or should have known about Weinstein's propensity for sexual misconduct.  This, too, is

incorrect, as is demonstrated by other allegations in the Complaint.  For example, the assertion

that the TWC Board learned of Weinstein's propensity for sexual misconduct *in 2015* during

negotiations over his employment contract is irrelevant because the Complaint does not allege

any sexual misconduct *after* 2015.  Facts learned in 2015 could not form the basis for

constructive knowledge of a propensity to commit acts alleged to have taken place many years

earlier.[16]

## A.  There Is No Well-Pled Allegation that the Outside Directors Employed Weinstein

      To state a claim for negligent supervision and retention, a plaintiff must allege that the

defendant employed the relevant wrongdoer.  Yet, the Opposition concedes that the Outside

Directors and Weinstein do not share an employer-employee relationship, stating that "Plaintiffs

---

[15] The Opposition argues only that there was an employer-employee relationship between
Miramax and Weinstein, and TWC and Weinstein.  (Opp. at 43.)  Likewise, it contends that the
"torts were committed on either Miramax's or TWC's premises . . . or with their personnel and
chattels."  (*Id.* at 44.)  Neither argument implicates the Outside Directors or the property or
chattels of the Outside Directors.

[16] In their opening brief, the Outside Directors also demonstrated that the Complaint fails to
allege the elements of negligence necessary to state a claim for negligent supervision or
retention.  (*See* Mot. at 25 n.10, 33-34; Sarnoff Mot. at 18-19.)  The Opposition does not
dispute—or even discuss—this showing.  For this reason alone, the negligent supervision and
retention claim should be dismissed as against the Outside Directors.

have clearly alleged an employer-employee relationship between Miramax and Weinstein . . .

and between TWC and Weinstein." (Opp. at 43.) Not surprisingly, the Opposition is silent as to

any allegation of an employer-employee relationship between the Outside Directors and

Weinstein (because there was none). *See Shostack v. Diller*, No. 15-CV-2255, 2015 U.S. Dist.

LEXIS 123777, at *12-13 (S.D.N.Y. Sept. 16, 2015) (it is "well-established that . . . 'it is the

corporation, not its owner or officer, who is the principal or employer'" and may be liable for

torts committed by its employees) (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)), *report

and recommendation adopted*, 2016 U.S. Dist. LEXIS 30354 (S.D.N.Y. Mar. 8, 2016); *Belmont

v. MB Inv. Partners, Inc.*, 708 F.3d 470, 490-91 (3d Cir. 2013) (dismissing negligent supervision

claim against directors of the defendant corporation because the tortfeasor's employment with

the corporation did not "turn[] individual board members of [the corporation] into [the

tortfeasor's] employers as well") (internal quotation marks omitted).[17]

The Opposition attempts to repair this glaring (and fatal) omission by arguing—in a

footnote—that an employer-employee relationship is not required to sustain a negligent

supervision and retention claim. (Opp. at 44 n.186.) The law, however, is to the contrary.

Indeed, the Opposition cites binding Second Circuit precedent confirming that "negligent

supervision and retention claims require plaintiffs to plead (i) an *employee-employer

relationship*." (Opp. at 43 (emphasis supplied) (citing *Ehrens*, 385 F.3d at 235)); s*ee also Corley

v. Jahr*, No. 11-CV-9044, 2014 U.S. Dist. LEXIS 25489, at *33 (S.D.N.Y. Feb. 10, 2014) ("A

claim for negligent supervision under New York law is limited to cases where an employer-

_____

[17] Under New York law, "[t]he critical inquiry in determining whether an employment
relationship exists 'pertains to the degree of control exercised by the purported employer over the
results produced or the means used to achieve the results.'" *Castro-Quesada v. Tuapanta*, 49
N.Y.S.3d 757, 759 (2d Dep't 2017) (quoting *Bynog v. Cipriani Grp., Inc.*, 802 N.E.2d 1090,
1092-93 (N.Y. 2003)). Here, the Outside Directors did not control the "results produced" by
Weinstein or the "means used" by him to run TWC.

employee relationship exists."); *Naughright v. Robbins*, No. 10-CV-8451, 2014 U.S. Dist.

LEXIS 148497, at *18-19 (S.D.N.Y. Oct. 16, 2014) (dismissing claim for negligent supervision

because plaintiff did not plead that tortfeasor was employed by defendant, and collecting similar

cases).

       The Opposition's reliance on *Krystal G. v. Roman Catholic Diocese of Brooklyn* is

misplaced.  The *Krystal G.* court found that an employer-employee relationship was not required

when one employee was charged with negligent supervision of another employee.  933 N.Y.S.2d

515, 522 (Sup. Ct. Kings Cnty. 2011) (citing *Connell v. Hayden*, 443 N.Y.S.2d 383, 397 (2d

Dep't 1981) (discussing medical malpractice negligence claims against a senior doctor and his

subordinate)).  *Krystal G.* involved a pastor, himself an employee, who was sued for negligent

supervision of an associate pastor.  *Id.*  In contrast, here, the Complaint does not (and cannot)

plead that Weinstein, the Chief Executive Officer and Co-Chairman of the TWC Board, was

subordinate to the Outside Directors or that Weinstein and the Outside Directors were co-

employees.

       In any event, *Krystal G.* is an outlier, which in the seven years since it was rendered has

not been followed by a single court on this issue.  New York courts routinely dismiss negligent

supervision claims for failure to allege an employer relationship.  *See e.g.*, *Naughright*, 2014

U.S. Dist. LEXIS 148497, at *18-19; *Corley*, 2014 U.S. Dist. LEXIS 25489, at *33-34; *Omar* v.

*City of New York*, No. 13-CV-8264, 2015 U.S. Dist. LEXIS 4470, at *16-17 (S.D.N.Y. Jan. 5,

2015) (dismissing negligent supervision and retention claim where the allegations failed to

support inference that tortfeasors were employed by defendant); *Ahluwalia v. St. George's Univ.,*

*LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014), *aff'd*, 626 F. App'x 297, 300 (2d Cir. 2015)

(affirming dismissal because, among other reasons, "the complaint does not plausibly allege that the school employees in question were employed by the named defendant entities").

**B.    There Is No Well-Pled Allegation that the Outside Directors Knew or Should Have Known About Weinstein's Propensity for Sexual Misconduct Before Any Alleged Incident Occurred**

Echoing the vague, conclusory, and generic allegations made in the Complaint, the Opposition conclusorily states that "[k]nowledge of Weinstein's behavior went all the way up to the Directors," but does not *identify* which Outside Director knew which fact (or when they knew it), and fails to explain how this generic statement leads to an inference that any individual director knew or should have known about Weinstein's alleged misconduct.  (Opp. at 43.)  The Opposition points to an allegation that certain TWC *employees* knew of a pattern of meetings that resulted in Weinstein making sexual advances.  (*Id.*)  But even that claim—involving unspecified "employees"—does not say anything about what the Outside Directors knew or should have known.

Simply put, conclusory allegations about the knowledge of others are insufficient to allege that each of the Outside Directors had knowledge of Weinstein's propensities.  The sufficiency of allegations must be evaluated defendant-by-defendant.[18]  *Noonan v. City of New*

---

[18] Even if the knowledge attributable to certain TWC employees could be imputed to the individual Outside Directors—and clearly it cannot be—an allegation that certain employees knew about a pattern of "meetings that resulted in sexual advances" (Opp. at 43) would be insufficient to state a claim for negligent supervision.  The Complaint alleges sexual assault (Compl. ¶¶ 11, 12, 13, 15, 16) and rape (*id.* ¶¶ 1, 46(a), 46(o), 46(p)), and while all forms of sexual misconduct are abhorrent, rumors about "sexual advances" do not put a defendant on notice that sexual assault or rape are foreseeable.  *See Doe v. Alsaud*, 12 F. Supp. 3d 674, 680-81 (S.D.N.Y. 2014) (finding that an employer must be on notice of the tortfeasor's propensity to engage in the precise nature of conduct causing plaintiff's injury and that "general, unrelated or lesser allegations of prior wrongdoing are insufficient"); *Stamile v. Cnty. of Nassau*, No. 10-CV-2632, 2014 U.S. Dist. LEXIS 39320, at *24-25 (E.D.N.Y. Mar. 25, 2014) ("Many cases discussing this standard appear to require actual knowledge of the [underlying] practices, rather than simple knowledge of inappropriate behavior.").

21

*York*, No. 14-CV-4084, 2015 U.S. Dist. LEXIS 83451, at *8-9 (S.D.N.Y. June 26, 2015)

(assertion that sexual assault by police officers was going on "for years" insufficient to plead

knowledge without factual allegations that the *defendant* knew of the tortfeasor's propensity for

sexual assault or related acts); *Khapesi v. City of New York*, No. 13-CV-4391, 2014 U.S. Dist.

LEXIS 79623, at *22-29, 34-35 (S.D.N.Y. June 10, 2014) (granting defendant's motion to

dismiss negligent supervision claim arising out of alleged sexual abuse of a prison inmate

notwithstanding allegations that other employees knew or suspected misconduct); *Bliss v.

Putnam Valley Cent. Sch. Dist.*, No. 06-CV-15509, 2011 U.S. Dist. LEXIS 35485, at *28-29

(S.D.N.Y. Mar. 24, 2011) (dismissing supervisory claim against individual defendants because

complaint lacked facts indicating that they knew or should have known of prior incident, but not

against school district or the defendant who received a complaint about the prior incident);

*Dilworth v. Goldberg*, No. 10-CV-2224, 2011 U.S. Dist. LEXIS 82392, at *86-88 (S.D.N.Y. July

28, 2011) (allegations that certain defendants knew about prior misconduct insufficient to sustain

a negligent supervision claim against another defendant), *report and recommendation adopted*,

2011 U.S. Dist. LEXIS 112329 (S.D.N.Y. Sept. 30, 2011).

   In contending that the Outside Directors had knowledge of the alleged assaults, the

Opposition points to a purported provision in Weinstein's 2015 employment contract along with

a generalized assertion that the directors knew—at the time the contract was negotiated in

2015—that Weinstein had entered into settlements with other women.  Plaintiffs then argue that

this resulted in knowledge of Weinstein's prior sexual misconduct, and that such knowledge

rendered his future acts foreseeable.  (Opp. at 43-44.)  But the Complaint provides no detail

about which Board members were involved in the contract negotiations, who learned of

Weinstein's alleged settlements, or what they were told, or how and why certain provisions were

included in Weinstein's employment contract.  There is no reason to believe that the five Outside

Directors, two of whom were not even on the Board when the contract was negotiated in 2015,

played any role in the negotiations.[19]

In any case, these allegations are irrelevant to the claim against *all* the directors because

the Complaint does not allege any sexual misconduct *after* 2015.  In order to satisfy the

knowledge element of a negligent supervision and retention claim, a complaint must show that

the defendants knew of the tortfeasor's propensity to engage in the alleged misconduct *before* the

underlying tort was committed.  *Ehrens*, 385 F.3d at 235 (plaintiffs must show that, before the

tortfeasor's misconduct occurred, the employer-defendant was aware of its employee's

propensity to engage in the conduct that caused injury); *Doe v. City of New York*, No. 09-CV-

9895, 2013 U.S. Dist. LEXIS 30010, at *17-18 (S.D.N.Y. Mar. 4, 2013) (dismissing negligent

supervision claim where plaintiff failed to allege that defendant knew or should have known of

relevant misconduct by its employee prior to the employee's alleged assault upon plaintiff),

*aff'd*, 558 F. App'x 75 (2d Cir. 2014).  The Complaint alleges no such knowledge as to the

Outside Directors; nor could it, since the alleged assaults occurred in 2008 and earlier and the

Complaint indicates that the Outside Directors first joined TWC's Board years later.

**C.     There Is No Well-Pled Allegation that Injuries Occurred on the Outside Directors'
        Premises**

The Opposition concedes that the Complaint does not allege that (i) the Outside

Directors' chattels were used to commit any tortious conduct, or (ii) "any of the tortious conduct

occurred on the personal properties owned by the Outside Directors."  (Opp. at 44 n.188.)  These

---

[19] The Opposition states that the Complaint "alleged that TWC's entire board negotiated and approved Harvey Weinstein's contracts."  (Opp. at 44 n.184.)  But different Board members served at different times, and the fact that the "entire board" *as it existed at the time* negotiated and approved a contract says nothing about the knowledge of Board members who joined after that date.

admissions are fatal.  A factually-supported claim that "the tort was committed on the employer's premises or with the employer's chattels" is a required element of a cause of action for negligent supervision.  *Ehrens*, 385 F.3d at 235; *see also Alsaud*, 12 F. Supp. at 676, 684 (granting employer's motion to dismiss in part because employee's sexual misconduct took place off-premises at a hotel, notwithstanding that the employee engaged in business at the hotel).[20]

## IV.  THE OPPOSITION CONFIRMS THAT THE COMPLAINT FAILS TO PLEAD A CLAIM FOR RATIFICATION (COUNT XIV)

The Opposition does not argue that the Complaint contains the required elements for a well-pled ratification claim.  Rather, it contends that "[u]nder the doctrine of ratification, a defendant who deliberately allows illegal conduct to continue when he can stop it is liable for ratifying the conduct."  (Opp. at 40.)[21]  This is not the law.

To establish a claim for ratification, a complaint must allege (i) a principal-agent relationship, (ii) the principal's full knowledge of material facts concerning the agent's actions, and (iii) the principal's knowing acceptance of the benefit of those actions.  *See A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998)

---

[20] The Opposition asserts that "torts were committed on either Miramax's or TWC's premises . . . or with their *personnel* and chattels."  (Opp. at 44 (emphasis supplied).)  These allegations relate only to Miramax and TWC—not to the Outside Directors.  In any case, the Opposition cites no authority for the contention that the involvement of an employer's personnel is relevant to the "premises or chattels" prong of their negligent supervision claim. Human beings are not chattel.  *Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) ("'Chattel' is defined as movable or transferable property such as personal property.") (alterations and internal quotation marks omitted).

[21] The Opposition's sole supposed authority for this contention—*L. Tarango Trucking v. County of Contra Costa*, 181 F. Supp. 2d 1017, 1032 (N.D. Cal. 2001)—is wholly inapposite.  *First*, *Tarango* is the court's findings of facts and conclusions of law *after* a bench trial—and not a ruling on the adequacy of pleadings on a motion to dismiss.  *Second*, *Tarango* addresses an intentional discrimination claim—where intent to violate the Equal Protection Clause can be found through deliberate indifference to known existing discrimination—and not whether outside directors ratified conduct of a supposed agent.  The Opposition's reliance on *Tarango* is misplaced.

(collecting cases).  "[R]atification requires not only knowledge of the material facts, but also an intention to ratify another's actions."  *Murphy v. Guilford Mills, Inc.*, No. 02-CV-10105, 2005 U.S. Dist. LEXIS 7160, at *23 (S.D.N.Y. Apr. 22, 2005).  As demonstrated in the Outside Directors' opening briefs (*see* Mot. at 34-36; Sarnoff Mot. at 21-23) and confirmed in the Opposition, the Complaint does not allege facts supporting even one of these elements.

Even assuming *arguendo* that the Opposition's characterization of the law of ratification is correct (which it is not), the Outside Directors still could not have ratified the alleged assaults because they could not have stopped assaults that occurred *five years* before any of them allegedly joined the TWC Board.  Indeed, the Opposition cites no authority holding directors liable for their failure to stop a tort that occurred years before they joined a board.

The remaining arguments in support of ratification are equally spurious.  *First*, the Opposition asserts that the Outside Directors "knowingly ratified Weinstein's practice of assaulting women under the guise of business in Miramax's and TWC's names" as they "continued to offer him contracts with increasing levels of job security . . . year after year." (Opp. at 40-41.)  But the alleged approval of a subsequent employment agreement does not equate to the Outside Directors' ratification of Weinstein's earlier misconduct.  (*See* Mot. at 36); *see also A Terzi Prods.*, 2 F. Supp. 2d at 492 (approval of an agreement does not mean defendants "knew of and ratified" tortfeasor's conduct and noting that approval "of one . . . act is not the ratification of another and entirely distinct act") (internal quotation marks omitted).

The Opposition's assertion that Weinstein's conduct was open and notorious also does not show that any of the Outside Directors ratified it.  The case cited for this premise—*Rivera v. Puerto Rican Home Attendants Services*, 930 F. Supp. 124 (S.D.N.Y. 1996)—is inapposite. Contrary to the representation contained in the Opposition, *Rivera* had little to do with

ratification, and it is wholly untrue that the *Rivera* court denied the motion to dismiss on the basis that ratification occurs where the offensive conduct was open and notorious.  (Opp. at 42.) Rather, the *Rivera* court held that a *company* defendant may be liable for an employee's workplace harassment toward the plaintiff when it was open and notorious conduct, other employees observed the harassment, and the plaintiff submitted an internal complaint.  *Rivera*, 930 F. Supp. at 127, 131.  It did *not* find that such conduct may be imputed to any individuals. And the Complaint here contains no factual allegations that the Outside Directors were aware of Weinstein's alleged misconduct.  The Opposition's only attempt to argue they had such knowledge is to contend that the Outside Directors must have known of Weinstein's alleged misconduct because they approved Weinstein's employment agreement.  (*See* Opp. at 41.)  For the reasons explained above, this argument is entirely without merit.[22]  *See A Terzi Prods.*, 2 F. Supp. 2d at 492.

     *Second*, the Opposition makes no attempt to remedy the Complaint's failure to allege the required agency relationship between Weinstein and the Outside Directors.  (*See* Mot. at 34-35; Sarnoff Mot. at 22-23); *see also Bigio*, 675 F.3d at 175-76 (dismissing agency liability claim for failure to allege facts supporting existence of agency relationship).  In an attempt to withstand dismissal, the Opposition contends that whether Weinstein is an agent of the Outside Directors is a "question of fact."  (Opp. at 42.)  Not so.  Neither of the Opposition's cited authorities,

---

[22] The Opposition's contention that "New York and Connecticut courts regularly deny motions to dismiss claims that a corporate defendant ratified the sexual harassment of the plaintiff" does not apply to the Outside Directors, as they are not a corporate entity.  (Opp. at 41.)  In any event, this assertion is incorrect and ignores that New York courts routinely dismiss improperly pleaded ratification claims.  *See, e.g.*, *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175-176 (2d Cir. 2012) (granting motion to dismiss ratification claim); *Precedo Capital Grp. Inc., v. Twitter Inc.*, 33 F. Supp. 3d 245, 257-258 (S.D.N.Y. 2014) (same); *Murphy*, 2005 U.S. Dist. LEXIS 7160, at *22-26 (same); *Manswell v. United States*, No. 09-CV-4102, 2010 U.S. Dist. LEXIS 82788, at *11-13 (S.D.N.Y. Aug. 9, 2010) (same).

*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (superseded by statute on other grounds) or *Rainbow Apparel Distributor Center Corp. v. Gaze U.S.A., Inc.*, 295 F.R.D. 18 (E.D.N.Y. 2013), supports this unfounded assertion nor excuses the Complaint's failure to plead facts supporting the existence of an agency relationship.

*Cabrera* concerned a jury trial—not a motion to dismiss—and stands for the uncontroversial proposition that when properly submitted to a jury, the existence of an agency relationship is a question of fact.[23]   24 F.3d at 386-87.  Here, in contrast, the Complaint's allegations are "insufficient to support a [jury's] finding of agency."  *Id.* at 386; (*see also* Mot. at 34; Sarnoff Mot. at 21-23).

*Rainbow*, meanwhile, concerned agency in the context of personal jurisdiction under New York's long-arm statute, CPLR 302—not a claim for ratification—and is similarly inapposite.  295 F.R.D. at 25.  In *Rainbow,* the court specifically noted that for the *purposes of personal jurisdiction*, agency is defined "broadly" and that "[r]ather than require a formal agency relationship, the court looks to the realities of the commercial situation."  *Id.*  As personal jurisdiction is not at issue, this rule does not apply.

*Third*, the Opposition contains no serious rebuttal to the Outside Directors' argument that the ratification claim fails because the Complaint does not plead that Weinstein committed the alleged wrongful acts on the Outside Directors' behalf.  *See Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007) (ratification requires the act be "done or professedly done on" the principal's behalf) (internal quotation marks omitted); *Precedo Capital*, 33 F. Supp. 3d at 254 (ratification is knowing acceptance of "benefits of the agent's action already made on his

---

[23] *See Cabrera*, 24 F.3d at 386-87 (explaining that the elements include "the manifestation by the principal that the agent shall act for him, the agent's acceptance of the undertaking and the understanding of the parties that the principal is to be in control of the undertaking") (internal quotation marks omitted).

behalf") (internal quotation marks omitted).  The only response to this deficiency is that unspecified defendants supposedly gained "money, power, and prestige" by allowing Weinstein to "bully and assault Hollywood."  (Opp. at 42.)  But it is simply not plausible that the Outside Directors gained anything from assaults alleged to have occurred years before they allegedly joined the TWC Board.  Nor does the Complaint allege that any of the Outside Directors received "money, power, and prestige" from TWC.  None of them was paid or otherwise compensated for his position on the TWC Board, and the Complaint does not allege otherwise. Regardless, this assertion appears nowhere in the Complaint and should be disregarded.  *Wright*, 152 F.3d at 178.

*Fourth*, the Opposition argues that "direct quotes from Weinstein's lawyer" show that the Outside Directors had knowledge of Weinstein's misconduct.  (Opp. at 42.)  According to the Complaint, Weinstein's lawyer stated that the Board "has not identified anything in [Weinstein's employment file] of which the Board was not aware in 2015" and that it "is simply false" "that Messrs. Maerov and Ben Ammar did not know about Mr. Weinstein's settlements with women when they approved his 2015 contract."  (Compl. ¶¶ 129-30.)  But these quotes say nothing about the Outside Directors' knowledge.  Two of the Outside Directors—Jones and Lasry—were not on TWC's Board when Mr. Maerov requested to see Weintsein's personnel file in 2015.  Nor is there any allegation that *any* Outside Director reviewed the personnel file or knew its contents.[24]  There also is no allegation that the personnel file contained any information regarding the specific acts in question.  The Complaint does not allege that the Outside Directors had the requisite knowledge of the specific acts in question and their ratification claim also fails for this reason.  *A Terzi Prods.,* 2 F. Supp. 2d at 492 (ratification requires a showing that "each

---

[24] Indeed, the Complaint alleges that Boies withheld the file.  (Compl. ¶ 129.)

and every" defendant had "full knowledge of . . . . *each specific act*") (emphasis supplied);

*Robbins v. Tucker Anthony, Inc.*, 649 N.Y.S.2d 856, 856 (4th Dep't 1996) ("It is well established

that a principal cannot be deemed to have ratified the acts of his agent absent knowledge *of those*

*acts* and an intent to ratify.") (emphasis supplied).

## V.    THE COMPLAINT DOES NOT CONTAIN ANY ALLEGATION THAT THE OUTSIDE DIRECTORS ARE SUBJECT TO VICARIOUS LIABILITY

The Opposition asserts—for the very first time—that "the Directors are vicariously liable

for Weinstein's conduct because it was reasonably foreseeable." (Opp. at 45.) But there is no

vicarious liability claim against the Outside Directors in the Complaint. Rather, the Complaint

specifically contends that "Miramax" and "TWC" are vicariously liable for alleged assault,

battery, and intentional and negligent infliction of emotional distress. (Compl. ¶¶ 237, 244, 250,

256, 264, 272, 280, 288.) That alone is reason to reject this new claim against the Outside

Directors. *Wright*, 152 F.3d at 178.

In any event, to the extent Plaintiffs propose to amend the Complaint to add such a claim,

it would be futile. To assert a *respondeat superior* liability claim, a plaintiff must plead facts

showing that the tortious conduct was taken in furtherance of the employer's interests and within

the scope of the employee's duties to the employer. *Alsaud*, 12 F. Supp. 3d at 677 (plaintiff must

allege "that the tortious conduct causing the injury was undertaken within the scope of the

employee's duties to the employer and was thus in furtherance of the employer's interests"). An

inherent requirement of a *respondeat superior* claim is that the defendant employed the

tortfeasor. *K.I.* v. *N.Y.C. Bd. of Educ.*, 683 N.Y.S.2d 228, 230 (1st Dep't 1998) ("Respondeat

superior cannot exist without a present employer-employee relationship."). As discussed above,

the Complaint does not (and could not) assert that the Outside Directors employed Weinstein.

*See supra* Section III.A.

Furthermore, under New York law, an employer is not vicariously liable as a matter of law for a sexual assault committed by an employee because sexual assault is never within the scope of employment. *Alsaud*, 12 F. Supp. 3d at 677 ("No decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault."); *Woods v. CVS*, No. 13-CV-611, 2013 U.S. Dist. LEXIS 58764, at *7-8 (S.D.N.Y. Apr. 19, 2013) (dismissing vicarious liability claims based on sexual misconduct because "New York courts have consistently held that 'sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, *even when committed within the employment context*'") (emphasis in original) (quoting *Salvatore v. KLM Royal Dutch Airlines*, No. 98-CV-2450, 1999 U.S. Dist. LEXIS 15551, at *12 (S.D.N.Y. Sept. 30, 1999)); *Doe v. City of New York*, 2013 U.S. Dist. LEXIS 30010, at *20 (same).

The Opposition contends that there is an exception to the scope-of-employment rule such that employers can be held vicariously liable for intentional torts that occur outside the scope of employment, as long as those torts are reasonably foreseeable and a natural incident of employment.  (Opp. at 45-46.)  The Opposition cites two cases in support of this argument: (i) *Ramos v. Jake Realty Co.*, 801 N.Y.S.2d 566, 567 (1st Dep't 2005); and (ii) *Riviello v. Waldron*, 391 N.E.2d 1278, 1280-81 (N.Y. 1979).  *Ramos* and *Riviello* stand only for the proposition that physical—not sexual—assault can sometimes occur *within* the scope of employment.  This principle is not disputed in this case.

*Ramos* and *Riviello* are distinguishable:  they did not involve sexual assault and the torts at issue occurred while the tortfeasor attempted to further the employer's interests.  *Ramos*, 801 N.Y.S.2d at 568 ("Certainly, [the employers'] interests would be furthered by preventing tenants from collecting evidence to support their applications for rent abatements."); *Riviello*, 391

30

N.E.2d at 1281-82 (explaining that the employer hired the tortfeasor in part to increase its popularity by exploiting his friendly relations with the pub's patrons, with whom he was interacting when the injury occurred).  The Complaint does not—and cannot—allege that Weinstein's purported sexual assaults furthered the interests of the Outside Directors.

Even if Weinstein intended to further TWC's interests by meeting with Ms. Geiss as a prospective actress, no business purpose would have induced Weinstein's sexual misconduct toward her.  As a matter of law, Weinstein's sexual misconduct cannot be considered within the scope of his employment.[25]

## VI.   THE CLAIMS AGAINST THE OUTSIDE DIRECTORS ARE TIME-BARRED

### A.   Courts Regularly Dismiss Actions on a Motion to Dismiss Where the Pleading Shows that the Statute of Limitations Has Run

Despite the Opposition's contention to the contrary, trial courts can and do dismiss causes of action at the motion to dismiss stage where the facts pleaded in the complaint allow a finding that such claims are time-barred.  *See, e.g.*, *Voiceone Commc'ns, LLC v. Google Inc.*, No. 12-CV-9433, 2014 U.S. Dist. LEXIS 189357, at *20-23 (S.D.N.Y. Mar. 29, 2014) (dismissing claims as time-barred on defendant's motion to dismiss); *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018) ("Because the relevant dates appear on the face of Defendants' pleading, the Court may rule as a matter of law on LiveIntent's motion to dismiss on statute-of-limitations grounds.").  Dismissal is appropriate here because it is clear from the face of the

---

[25] The Opposition (Opp. at 46-47) unsuccessfully attempts to distinguish *Doe v. Alsaud*, in which the court declined to hold an employer vicariously liable for sexual assault committed by its employee because it was outside the employee's scope of employment, even when part of the employee's duties included luring women to and for the benefit of one of the defendants.  12 F. Supp. 3d at 676.  The Opposition argues that it was Miramax and TWC employees, not Weinstein, whose job responsibilities allegedly included procuring women.  (Opp. at 47.)  This argument only confirms that Weinstein's sexual misconduct was not within the scope of his employment because his job responsibilities did not include procuring women for others or any other activity that arguably might lead to sexual assault.

Complaint—which alleges specific dates of the alleged assaults—that all of the Complaint's causes of actions against the Outside Directors are time-barred.  (*See* Mot. at 38-40 (listing dates alleged in Complaint showing statute of limitations has run on every Plaintiff's RICO claim).)[26]

**B.      The Statutes of Limitations Have Run on the RICO Claims[27]**

As the Opposition acknowledges, the four-year civil RICO statute of limitations runs from "'the time when plaintiff suffers injury to 'his business or property' from the violation.'" (Opp. at 47 (quoting *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988)).)  It also acknowledges that the alleged RICO injuries consist of damage to Plaintiffs' reputations or careers—and thus that the statute of limitations began to run when they became aware, or should have become aware, of that alleged damage.  (*Id.* at 48.)

The Opposition falters, however, in attempting to argue that the four-year statute of limitations did not begin to run until 2017, when Plaintiffs allegedly discovered the "shadowy network of spies, lawyers, and media" working to blacklist them.  (*Id.*)  Notably, the Opposition

_____

[26] The authorities cited in the Opposition are inapposite.  In *Reach Music Publishing, Inc. v. Warner/Chappell Music, Inc.*, the court found that it could not dismiss the complaint pursuant to the statute of limitations because the dates alleged in the complaint did not show that the statute of limitations had run.  *See* No. 09-CV-5580, 2009 U.S. Dist. LEXIS 101943, *6-7 (S.D.N.Y. Oct. 23, 2009).  Here, in contrast, the Complaint offers dates affirmatively establishing that the claims are time-barred.  Similarly, in *Childers v. New York & Presbyterian Hospital*, the court found that "nothing in the Complaints clearly show[ed] that the fraud and breach of fiduciary duty claims [we]re untimely."  36 F. Supp. 3d 292, 314 (S.D.N.Y. 2014).  Here, as described in Section VI.B, *infra*, the Complaint pleads sufficient facts showing that the statute of limitations has run on Plaintiffs' claims.  Finally, the Opposition cites *Shockley v. Vermont State Colleges*—without revealing that it cites the ***dissent*** in that case.  793 F.2d 478, 485 (2d Cir. 1986).  The ***majority*** in *Shockley* found that the statute of limitations had run.  *Id.* at 482.

[27] In their opening briefs, the Outside Directors established that the relevant statutes of limitations have run on the ratification and negligent supervision and retention claims.  (Mot. at 41-42; Sarnoff Mot. at 16-18.)  The Opposition ignores those arguments, thereby tacitly conceding that, if no tolling doctrine applies, the statutes of limitations have run.  *See Kao v. British Airways, PLC*, 17-CV-232, 2018 U.S. Dist. LEXIS 8969, at *12 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue."); *Arista Records, LLC v. Tkach*, 122 F. Supp. 3d 32, 38-39 (S.D.N.Y. 2015) (same).

cites to precedent from a different circuit to argue that these claims did not accrue because the "injurer" was not discovered until 2017. (*Id.* (citing *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 387 (7th Cir. 2010)).) Second Circuit precedent is clear, however, that a plaintiff does not need to discover the extent of any purported RICO conspiracy to harm their careers for their claims to accrue. "The RICO statute of limitations runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that should have prompted an inquiry." *Koch*, 699 F.3d at 151 (omission and internal quotation marks omitted).[28] Indeed, the Opposition's argument is belied by the Complaint itself: each Plaintiff alleges that she understood Weinstein to be the source of the harm to her career almost immediately after each Plaintiff's encounter with Weinstein, the most recent of which occurred in 2008.[29] (*See* Compl. ¶¶ 59-60, 83, 92, 102-03, 113, 120; *see also* Mot. at 38-40 (listing dates alleged in Complaint showing approximately when each Plaintiff learned of her alleged RICO injury, including that Weinstein could harm each Plaintiff's career); *see also* Opp. at 8 (demonstrating Sagemiller's knowledge of potential harm to her career during the alleged assault).) For example, Ms. Kendall alleges that "she believed that if she were to disclose the assault, she would be blacklisted . . . . She knew Weinstein could hurt her career . . . ." (Compl. ¶¶ 59-60.) The statute of limitations began to run on the RICO claims far before 2017.

---

[28] The Opposition relies on *Koch* to argue that the statute of limitations began to run in 2017. (Opp. at 48 & n.203.) In that case, the Second Circuit held that plaintiff's RICO claim was untimely and upheld the district court's decision not to equitably toll the statute of limitations. *Koch*, 699 F.3d at 153, 157. Notably, the district court rendered that decision at the motion to dismiss stage.

[29] While Plaintiff Thomas alleges that she was notified in December 2017 that casting directors had complained about her public position that "she will not audition for roles for productions in which known predators are involved" (Compl. ¶ 114), this allegation is unrelated to any of the Outside Directors. Moreover, the Complaint acknowledges that Thomas discovered the injury to her career in 2008, claiming that she was not hired "because she did not respond to Weinstein's propositions." (*Id.* ¶ 113.)

Moreover, while the Opposition points to reports of the "shadowy network of spies" as the first time Plaintiffs could have learned about their RICO injuries (Opp. at 48), those reports could not have revealed any of the alleged RICO injuries.  Other than Plaintiff Katherine Kendall, the Complaint does not allege that Plaintiffs were contacted by anyone working on behalf of the alleged "shadowy network," nor that the public reports named them as subjects of the alleged RICO conspiracy.   And even as to Plaintiff Kendall, the Complaint does not actually allege that she learned anything about having been blacklisted, blocked from film projects, or any other damage to her career as a result of being contacted in 2017 or from reading related news reports; it instead alleges that this contact caused her "distress" and "fear" (Compl. ¶ 70), neither of which are RICO injuries.

In any event, the Opposition's reliance on *Jay E. Hayden Foundation* does not help its argument.  There, the Seventh Circuit found that the plaintiff's RICO claim was time-barred because

> when an event occurs that tolls the statute of limitations in [a RICO case], even if the event is fraud by the defendant, the plaintiff cannot fold his hands, sit back, and do nothing until the defendant returns to good behavior.  He has to continue investigating diligently, to the extent he can despite the defendants' obstructionism[.]

*Jay E. Hayden Found.*, 610 F.3d at 385-86.  The same is true for Plaintiffs here.  They knew of their alleged injuries between 1993 and 2008.  Even if some of the defendants concealed their attempts to damage Plaintiffs' careers—and there is absolutely *no factual allegation tying the Outside Directors to such attempts*—Plaintiffs themselves had an obligation to investigate their

injury and injurer during that time period.[30]  The Complaint does not plead any facts indicating

that they did so.

**C.   No Tolling Principle Applies to the Claims, So They Are Untimely**[31]

   1.   Equitable Estoppel Does Not Apply

The Opposition contends that equitable estoppel tolled the relevant statutes of limitations

because Plaintiffs allegedly were "induced" to refrain from filing this action within the

limitations period.  (Opp. at 49-51.)  But the Opposition makes clear that this is not one of the

"exceptional circumstances" in which equitable estoppel should be invoked.  *Twersky v. Yeshiva*

*Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014) (internal quotation marks omitted), *aff'd*, 579

F. App'x 7 (2d Cir. 2014).  Plaintiffs do not (and cannot) identify a single representation made to

them by the Outside Directors—let alone a misrepresentation or fraudulent statement—that

induced them not to timely file a suit.[32]  *See Zumpano v. Quinn*, 849 N.E.2d 926, 929 (N.Y.

2006) (explaining elements of equitable estoppel).

---

[30] Likewise, the argument that Plaintiffs suffered an "injury to their causes of action through the destruction of evidence and interference" (Opp. at 48) fails, both because the Complaint does not plead any facts tying the Outside Directors to that purported destruction of evidence and interference and because it does not plead facts showing that they would have brought a cause of action at an earlier date absent that purported misconduct.  A plaintiff cannot sit on his or her rights without bringing suit and let the statute of limitations expire, only later to claim that the limitations period was revived when he or she learned that evidence—that he or she never sought in the first place—purportedly was destroyed.

[31] Besides equitable estoppel, equitable tolling, and duress, the Complaint also asserts that the statute of limitations should be tolled under the continuing violations doctrine.  (Compl. ¶¶ 168-82.)  However, the Opposition concedes that the continuing violations doctrine does not apply here.  (Opp. at 49 n.206.)  Because the Opposition concedes that the doctrine does not apply, this memorandum does not address it.

[32] Plaintiffs must establish that the statute of limitations should be tolled separately for each defendant against whom they seek such relief.  They have not done so here.  "Allegations that *other* defendants acted to deceive plaintiffs from filing suit do not plead fraudulent concealment against *all* defendants.  That is because the doctrine of fraudulent concealment tolls the statute of limitations *only* as to those defendants who committed the concealment."  *Glick v. Berk & Michaels, P.C.*, No. 90-CV-4230, 1991 U.S. Dist. LEXIS 10347, at *29 (S.D.N.Y. July 26,

The Opposition runs from this precedent.  For example, it attacks *Zumpano* (a case alleging that priests sexually abused children), by arguing that the court in that case relied on a "lack of affirmative steps to silence victims" to find there was no fraudulent concealment.  (Opp. at 51-52.)  But the allegations in *Zumpano* were both broader and stronger than the accusations leveled against the Outside Directors in the Complaint.  For example, the defendants in that case (i) "fail[e]d to investigate and report" alleged assaults to law enforcement, 849 N.E.2d at 928; (ii) "reassigned offending priests without disclosure of their offenses; and, (iii) when victims complained, made private payments to them so that the charges would not be publicized," *id.* at 930.  In contrast, the factual allegation against the Outside Directors is that they allegedly renegotiated Weinstein's employment contract and engaged in other business communications related to TWC and its employees.  (Compl. ¶¶ 127-33.)  At most, the Complaint accuses the Outside Directors of passive concealment, *i.e.*, of concealing their alleged knowledge of Weinstein's propensity to commit sexual misconduct and continuing to employ him.[33]  This is insufficient to toll the limitations periods as a matter of law because the Complaint does not and cannot allege that the Outside Directors owed Plaintiffs any duty of disclosure.  Moreover, the Complaint does not identify what role, if any, each Outside Director allegedly played in negotiating the employment contracts and ignores that Jones and Lasry did not play *any* role because they were not on TWC's Board at the time.  (*See id.*)  This is a far cry even from the behavior that the court in *Zumpano* found to be *insufficient* to invoke equitable estoppel.

---

1991) (emphasis in original) (citation and internal quotation marks omitted) ("[T]he plaintiff may not use fraudulent concealment by one defendant as a basis for tolling the statute of limitations against another defendant who did not engage in affirmative fraudulent acts to conceal.") (internal quotation marks omitted); *accord Janese v. Scrufari*, No. 09-CV-593, 2013 U.S. Dist. LEXIS 142888, at *15-18 (W.D.N.Y. Oct. 2, 2013).

[33] As discussed above, the Complaint does not even allege facts indicating that the Outside Directors had such knowledge.

The Opposition also attempts to distance the present case from *Twersky* (a case brought by students alleging they were abused by employees of their private school), which is similarly dispositive.  It argues that the holding in *Twersky*—that passive concealment is insufficient to trigger equitable estoppel—does not apply here.  (Opp. at 52.)  The defendant school administrators in that case (i) "failed to report known abuse" to the authorities; (ii) failed to warn students and families of the risk of abuse; and (iii) made statements "to the school community at large about the trustworthiness" of the alleged abusers.  993 F. Supp. 2d at 444-45.  *Twersky* holds that passive concealment is insufficient to trigger equitable estoppel.  (Mot. at 42-43 (citing *Twersky*, 993 F. Supp. 2d at 444-45).)[34]

Indeed, the *Twersky* plaintiffs even alleged that school administrators informed them that their "complaints were baseless," and the court found such allegations "insufficient as a matter of law" to establish equitable estoppel because they "fail[ed] to specify the content of the misrepresentations that were made, the timing of the misrepresentations, how the plaintiffs reasonably relied on the misrepresentations, and how the plaintiffs exercised due diligence in bringing the current Complaint."  993 F. Supp. 2d at 446-47 (alterations and internal quotation marks omitted).  The Complaint is devoid of any similar allegations regarding such misrepresentations by even one of the Outside Directors.  Rather, the Opposition lumps all of the defendants together and attempts to attribute the actions of differently-situated defendants to one another.  (*See* Opp. at 52-53 (referring generally to the "RICO Defendants" without any reference to the Outside Directors).)  This is unavailing because the Complaint simply does not

---

[34] The Opposition attempts to distinguish *Doe v. Kolko* on similar grounds—and this attempt fails for similar reasons.  In *Kolko*, the court held that plaintiffs failed to establish that defendants "directed the[] tactics at them," rather than "victims" in general.  Nos. 06-CV-2096, 06-CV-2215, 2008 U.S. Dist. LEXIS 71174, at *13-14 (E.D.N.Y. Sept. 4, 2008).

allege that any Outside Director made any misrepresentations that would support the application of equitable estoppel against him.[35]

The remaining authorities cited in the Opposition do not save the Complaint.  In *Zimmerman v. Poly Prep Country Day School*, for example, the court found that central to plaintiffs' claims were their "allegations that [defendant] engaged in an affirmative course of conduct during the period of limitations to deceive the plaintiffs into believing that they had no claim against Poly Prep."  888 F. Supp. 2d 317, 340 (E.D.N.Y. 2012).  That is, the defendants in *Zimmerman* allegedly made *affirmative* misstatements to the plaintiffs in that case.  *See id.* at 339-40 ("The acts relied on must be of an affirmative character and fraudulent.") (internal quotation marks omitted).  Likewise, the court in *Saveria JFK, Inc. v. Flughafen Wien, AG* based its holding on plaintiff's allegation regarding "an assurance from defendant's alleged agent that defendant's campaign to destroy Sardana did not extend to business opportunities in New York."  No. 15-CV-6195, 2016 U.S. Dist. LEXIS 60737, at *28-29 (E.D.N.Y. May 3, 2016), *report and recommendation adopted*, 2017 U.S. Dist. LEXIS 50416 (E.D.N.Y. Mar. 30, 2017).  Notwithstanding its attempt to bypass this requirement by lumping all of the defendants together with allegations of intimidation and "Black Cubing" (Opp. at 52-53), the Complaint fails to allege that the Outside Directors made any affirmative misstatements to Plaintiffs.  Accordingly, the Complaint does not plead a single fact supporting the application of equitable estoppel to revive the Complaint's claims against the Outside Directors.[36]

---

[35] The Complaint does not allege such misrepresentations in any capacity, and certainly does not satisfy the strict requirements of Rule 9(b).  *See Twersky*, 993 F. Supp. 2d at 443 n.5 (requiring a plaintiff alleging that the statute of limitations has been tolled based on a fraudulent misrepresentation to plead that misrepresentation with particularity under the requirements of Fed. R. Civ. P. 9(b)).

[36] Because the claims are *prima facie* barred by the relevant statutes of limitations, the burden is on Plaintiffs to "make sufficient factual allegations that each of the requirements of equitable

2.      Equitable Tolling Does Not Apply

The Opposition's equitable tolling argument is even weaker, relying on an allegation concerning the "secretive nature of the Black-Cubing campaign." (*Id.* at 54.) But neither the Complaint nor the Opposition offers any non-conclusory allegations tying the Outside Directors to that campaign. (*See* Compl. ¶¶ 148-67 (describing work allegedly performed by Black Cube and failing to allege a single non-conclusory fact implicating the Outside Directors).) Because neither the Complaint nor the Opposition alleges facts showing that the Outside Directors concealed any material facts relating to their alleged wrongdoing, the claims against them may not be equitably tolled.[37] (*See* Opp. at 53 (admitting that equitable tolling requires a plaintiff to establish, among other things, that "the defendant wrongfully concealed material facts relating to defendant's wrongdoing").)

3.      The Statute of Limitations Cannot Be Tolled Under the Doctrine of Duress

The Opposition argues that the doctrine of duress tolls the statute of limitations because duress is an element of both the RICO claims and state-law claims for infliction of emotional distress (Opp. at 54), effectively conceding that the doctrine of duress *does not* toll other state-law claims against the Outside Directors, including for negligent supervision and ratification.

---

estoppel is satisfied" or at least to raise an issue of fact as to each element. *See Twersky*, 993 F. Supp. 2d at 443.

[37] The Opposition's reliance on *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*—the only case cited in support of the Opposition's equitable tolling argument—is misplaced. There, the court dealt with a bid-rigging conspiracy that it found to be "inherently self-concealing." 277 F. Supp. 3d 521, 567 (S.D.N.Y. 2017) (internal quotation marks omitted). Plaintiff accused defendant banks of making false submissions to manipulate the CHF LIBOR rate in order to bolster their own trading positions. *Id.* at 539. Such a conspiracy is inherently self-concealing because discovery of the false statements would destroy the conspiracy. *Id.* at 567. The alleged attempts by "Defendants" here to intimidate Plaintiffs into silence, on the other hand, were necessarily self-*revealing*: if Plaintiffs were unaware of the attempts to intimidate or silence them, such attempts could not be successful.

39

(The Complaint does not assert state-law claims for infliction of emotional distress against the Outside Directors.)  (*See* Compl. ¶¶ 257-88 (detailing infliction of emotional distress claims).)

That doctrine, however, cannot save the RICO claims against the Outside Directors.  In a civil RICO case, "an equitable tolling defense based on duress is available only when specific threats by the defendant are used to prevent the plaintiff from commencing a lawsuit at an earlier time." *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 347 (2d Cir. 1994).  In other words, it is not enough that duress is an element of the cause of action alleged.  Rather, "duress inherent in [the] violation does not toll the statute of limitations." *Id.*

The Complaint does not (and cannot) identify any threats by the Outside Directors that were aimed at preventing Plaintiffs from filing a civil lawsuit.  Indeed, as explained above, the Complaint does not even identify any communications between Plaintiffs and the Outside Directors.  At most, the Complaint alleges generally that the so-called "Weinstein Sexual Enterprise had the common purpose of preventing (or attempting to prevent) the reporting, prosecution, or disclosure of Weinstein's sexual misconduct."  (Compl. ¶ 140.)  This allegation is far too general to trigger a tolling of the statute of limitations under the doctrine of duress, which requires "specific threats" aimed at preventing the plaintiff from timely filing a lawsuit.[38] *See Riverwoods Chappaqua Corp.*, 30 F.3d at 347.  Moreover, the Opposition improperly

_____

[38] *Cullen v. Margiotta*, on which the Opposition relies, does not alter this conclusion.  There, all defendants were alleged to have participated in the extortion of which duress was an element. 811 F.2d 698, 722 (2d Cir. 1987).  Here, on the other hand, the Opposition concedes that the Complaint's allegations regarding witness tampering and sex trafficking do <u>not</u> apply to the Outside Directors.  (Opp. at 3.)  Nor does *Cullen* stand for the proposition, as suggested in the Opposition, that "the 'fact-specific nature of the duress contention' is one that should be addressed at summary judgment or trial."  (Opp. at 54 (internal quotation marks omitted).) Rather, the Second Circuit in *Cullen* simply offered that the nature of the duress argument made in that case "mean[t] that on this appeal [the Second Circuit could] give the district court only the above general guidance."  811 F.2d at 724.

conflates the Outside Directors with their co-defendants in an attempt to mask the nonexistence of any specific allegations regarding actions taken or threats made by the Outside Directors.

While the Opposition argues that the Court must wait to address duress at summary judgment or trial, courts have dismissed cases at the motion to dismiss stage where the plaintiff raised the duress doctrine to save untimely claims but failed to plead sufficient facts supporting invocation of that doctrine.  *See, e.g.*, *Zoe G. v. Frederick F.G.*, 617 N.Y.S.2d 370, 371 (2d Dep't 1994) (upholding dismissal of complaint as time-barred); *Alston v. Stone*, No. 02-CV-5338, 2005 U.S. Dist. LEXIS 4426, at *18 n.16 (S.D.N.Y. Mar. 21, 2005) (dismissing complaint and noting that "[t]o the extent that the . . . Complaint is attempting to allege that the statute of limitations is tolled by this alleged duress, this contention is unavailing to Plaintiffs"); *Trisci v. Trisci*, 673 N.Y.S.2d 918, 918 (2d Dep't 1998) (upholding dismissal of complaint and explaining that "[v]iewing the evidence in a light most favorable to the wife, she has not met her burden of demonstrating such continuing duress as would toll the running of the Statute of Limitations").  Accordingly, this issue is properly before the Court on the Outside Directors' Motions to Dismiss.

## VII.   THE CLASS CLAIMS SHOULD BE DISMISSED

The Opposition does not dispute that, without claims alleged against the Outside Directors by an individually-named named plaintiff, the related class claims must also be dismissed.  (*See* Mot. at 45.)  The Opposition's failure to address this argument is fatal.  The class claims against the Outside Directors should be dismissed in their entirety.  *See Kao*, 2018 U.S. Dist. LEXIS 8969, at *12 ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue."); *Arista Records*, 122 F. Supp. 3d at 38-39 (same).

## VIII.   THE OPPOSITION ATTEMPTS TO RESIST DISMISSAL BY QUOTING TEXT THAT DOES NOT EXIST IN THE *GEISS* PRAYER FOR RELIEF

As explained in the Outside Directors' opening brief, the Complaint must also be dismissed because it does not seek any relief from the Outside Directors.  (*See* Mot. at 44-45.)  In an attempt to overcome this deficiency, the Opposition cites a prayer for relief that simply does not exist.  The Opposition contends that "Compl. at 90, Prayer for Relief, ¶ 5" in the *Geiss* Complaint contains a request that the Court enter judgment against the Outside Directors and other director-defendants.  (Opp. at 62 & n.272.)  But page 90 of the *Geiss* Complaint does not exist, and Prayer for Relief ¶ 5 asks only that Plaintiffs receive "individual damage proceedings and prove-ups" for "pain and suffering, and compensatory and punitive damages"—it does not seek any relief from any of the individual Outside Directors.

## IX.   LEAVE TO AMEND SHOULD BE DENIED

It would be impossible for the defects in the claims against the Outside Directors to be cured.  The Outside Directors cannot be held responsible for acts that occurred years before they joined TWC's Board, or acts that they did not know about.  Nor can claims for which the limitations period has expired be resurrected.  Amendment cannot cure these fatal defects or the others discussed elsewhere in this memorandum and the Outside Directors' moving papers.  *See Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 268 (S.D.N.Y. 2011) ("Where the problem with a claim 'is substantive better pleading will not cure it,' and 'repleading would thus be futile.'" (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)) (omission and alteration omitted).  Leave to amend should be denied.  *See Anderson v. Greene*, No. 14-CV-10249, 2017 U.S. Dist. LEXIS 130590, at *23-31 (S.D.N.Y. Aug. 16, 2017) (denying leave to amend civil RICO claim that was untimely and fraud claim that was not supported by sufficient factual allegations); *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, No. 14-CV-7349, 2016 U.S.

Dist. LEXIS 44265, at *40 (S.D.N.Y. Mar. 31, 2016) (dismissing RICO claims with prejudice because there was "'no basis for suggesting, much less concluding, that plaintiffs could amend their claims in a way that would make them viable'") (quoting *Pac. Inv. Mgmt. Co. v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010)) (omission omitted); *Naughright*, 2014 U.S. Dist. LEXIS 148497, at *20 (dismissing negligent supervision and retention claim with prejudice because it was substantively inadequate and time barred).

## **CONCLUSION**

For the reasons discussed in the Outside Directors' opening briefs and above, the claims
against the Outside Directors should be dismissed with prejudice.

Dated: New York, New York
       June 29, 2018

By:    /s/ James V. Masella, III
       James V. Masella, III (jmasella@pbwt.com)
       Melissa Ginsberg (mginsberg@pbwt.com)
       Patterson Belknap Webb & Tyler LLP
       1133 Avenue of the Americas
       New York, New York 10036
       Telephone:  (212) 336-2000
       Fax:  (212) 336-2222

       *Attorneys for Defendant Paul Tudor Jones*

By:    /s/ Roberto Finzi
       Roberto Finzi (rfinzi@paulweiss.com)
       Brad S. Karp (bkarp@paulweiss.com)Sara F.
       Nichols (snichols@paulweiss.com)
       Paul, Weiss, Rifkind, Wharton & Garrison LLP
       1285 Avenue of the Americas
       New York, New York 10019
       Telephone:  (212) 373-3000
       Fax:  (212) 757-3990

       *Attorneys for Defendant Marc Lasry*

By:    /s/ Lawrence S. Spiegel
       Lawrence S. Spiegel
       (lawrence.spiegel@skadden.com)
       Abigail E. Davis
       (abigail.sheehan@skadden.com)
       Skadden, Arps, Slate, Meagher & Flom LLP
       4 Times Square
       New York, New York 10036
       Telephone:  (212) 735-3000
       Fax:  (212) 735-2000/1

       *Attorneys for Defendants James Dolan and Dirk Ziff*

44

By:    */s/ Marvin S. Putnam*
Marvin S. Putnam
(marvin.putnam@lw.com)
Laura R. Washington
(laura.washington@lw.com)
Latham & Watkins LLP
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: (424) 653-5588

*Attorneys for Defendant Tim Sarnoff*