UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LOUISETTE GEISS, KATHERINE
KENDALL, ZOE BROCK, SARAH ANN
THOMAS (a/k/a SARAH ANN MASSE),
MELISSA SAGEMILLER, and
NANNETTE KLATT, individually and on
behalf of all others similarly situated,

   Plaintiffs,

   -against-

THE WEINSTEIN COMPANY
HOLDINGS, LLC, MIRAMAX, LLC,
MIRAMAX FILM CORP., MIRAMAX
FILM NY LLC, HARVEY WEINSTEIN,
ROBERT WEINSTEIN, DIRK ZIFF, TIM
SARNOFF, MARC LASRY, TARAK BEN
AMMAR, LANCE MAEROV, RICHARD
KOENIGSBERG, PAUL TUDOR JONES,
JEFF SACKMAN, JAMES DOLAN,
MIRAMAX DOES 1-10, and JOHN DOES
1-50, inclusive,

   Defendants.

1:17-cv-09554 (AKH)

DEFENDANT HARVEY
WEINSTEIN'S REPLY
MEMORANDUM OF LAW IN
SUPPORT OF HIS MOTION TO
DISMISS

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT .......................................................................................................... 3

I.      PLAINTIFFS' TORT CLAIMS ARE TIME-BARRED AND SHOULD
        BE DISMISSED WITHOUT LEAVE TO AMEND ............................................. 3

II.     PLAINTIFFS' RICO CLAIMS ARE INSUFFICIENTLY PLEADED AND
        SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND ........................... 7

        A.      Plaintiffs' RICO Claims Are Barred By the Statute of Limitations ............ 7

                1.      Plaintiffs do not and cannot plausibly allege that Weinstein
                        misled them into believing that they could
                        not sue him ................................................................................... 7

                2.      Plaintiffs' claims should not be equitably tolled because
                        they fail to plausibly allege that they were threatened by
                        Weinstein or otherwise under duress ......................................... 9

        B.      Plaintiffs Fail to Allege a RICO Violation ............................................... 12

III.    THE CLASS ALLEGATIONS SHOULD BE DISMISSED OR,
        ALTERNATIVELY, STRICKEN ...................................................................... 15

CONCLUSION ...................................................................................................... 18

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
  556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................................... 18

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544, 127 S. Ct. 1955 (2007) ..................................................................... 18

*Childers v. N.Y. & Presbyterian Hospital,*
  36 F. Supp. 3d 292 (S.D.N.Y. 2014) ........................................................................ 3

*Ehrenreich* v. *Black*,
  994 F. Supp. 2d 284 (E.D.N.Y. 2014) ...................................................................... 5

*Friedman v. 24 Hour Fitness USA, Inc.,*
  2009 U.S. Dist. LEXIS 81975 (C.D. Cal. Aug. 24, 2009) ....................................... 16

*Jastrzebski v. New York,*
  423 F. Supp. 669 (S.D.N.Y. 1976) .......................................................................... 12

*Jay E. Hayden Found. v. First Neighbor Bank, N.A.,*
  610 F.3d 382 (7th Cir. 2010) .................................................................................... 9

*LiveIntent, Inc. v. Naples,*
  293 F. Supp. 3d 433 (S.D.N.Y. 2018) ...................................................................... 3

*Mayfield v. Asta Funding, Inc.,*
  95 F. Supp. 3d 685 (S.D.N.Y. 2015) ...................................................................... 16

*Mazzola v. Roomster Corp.,*
  849 F. Supp. 2d 395 (S.D.N.Y. 2012) .................................................................... 16

*McCarthy v. Volkswagen of Am., Inc.,*
  55 N.Y.2d 543 506 N.Y.S.2d 457, 435 N.E.2d 1072 (1980) ..................................... 4

*Overall v. Estate of Klotz,*
  52 F.3d 398 (2d Cir. 1995) ................................................................................. 3, 10

*Philco Corp. v. Radio Corp. of America,*
  186 F. Supp. 155 (E.D. Pa. 1960) ..................................................................... 11, 12

*Reach Music Publishing, Inc. v. Warner/Chappell Music, Inc.,*
  2009 WL 3491665 (S.D.N.Y. Oct. 23, 2009) ........................................................... 3

*Reynolds v. Lifewatch, Inc.*,
   136 F. Supp. 3d 503 (S.D.N.Y. 2015) ........................................................ 16

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
   30 F.3d 339 (2d Cir. 1994) ...................................................................... 10

*Saveria JFK, Inc. v. Flughafen Wien, AG*,
   2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017) ............................................ 4

*Shockley v. Vermont State Colleges*,
   793 F.2d 478 (2d Cir. 1986) ...................................................................... 4

*Sykes v. Mel S. Harris & Assocs. LLC*,
   780 F. 3d 70 (2d Cir. 2015) ...................................................................... 16

*Twersky v. Yeshiva Univ.*,
   993 F. Supp. 2d 429 (S.D.N.Y. 2014), *aff'd* 597 F. App'x (2d Cir. 2014).................. 4

*Voiceone Commc'ns, LLC v. Google Inc.*,
   2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) .......................................... 3

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ..................................................................... 17

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338, 131 S. Ct. 2541 (2011) .......................................... 2, 16, 17

*Zimmerman v. Poly Prep Country Day School*,
   888 F. Supp. 2d 317 (E.D.N.Y. 2012) .................................................. 5, 8

## Statutes

18 U.S.C. §1341 ................................................................................................ 13

18 U.S.C. §1343 ................................................................................................ 13

18 U.S.C. §1512 ...................................................................................... 8, 13, 14

18 U.S.C. §1590 ........................................................................................ 13, 14

18 U.S.C. §1591 ......................................................................................... 13, 14

18 U.S.C. § 2246(2) .......................................................................................... 15

**Federal Rules of Civil Procedure**

Rule 8 ............................................................................................................. 18

Rule 9(b) .........................................................................................................13

Rule 12(b)(6) ................................................................................................... 1

Rule 12(f) ......................................................................................................... 1

Rule 23 ........................................................................................................... 15

Rule 23(b)(3) .................................................................................................. 17

**Other Authorities**

https://www.imdb.com/name/nm0447607/?ref_=fn_al_nm_1 ......................................... 9

https://www.imdb.com/name/nm0756089/bio?ref_=nm_ov_bio_sm ............................. 13

Defendant Harvey Weinstein ("Weinstein"), through his attorneys Kupferstein Manuel LLP and Morrison Cohen LLP, respectfully submits this reply to Plaintiffs' Combined Response In Opposition to Defendants' Motions to Dismiss (Dkt. #108) and in support of his motions to dismiss the first, second, fifth, sixth, seventh, eighth, ninth, tenth, eleventh, and twelfth Counts of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), and to strike the class allegations pursuant to Fed. R. Civ. P. 12(f). (Dkt. #58) For the reasons set forth below and in the moving papers, Weinstein's motion should be granted in all respects.

## PRELIMINARY STATEMENT

Plaintiffs impugn the hard work, talent, and reputation of every female actor who ever met with Weinstein to discuss a project or at an industry event. Plaintiffs insinuate that those women who made it in Hollywood did so only by using sexual relationships to get ahead, while those who did not succeed failed only because they rejected Weinstein's advances. This insulting accusation levied against those who had successful careers based on merit reflects the preposterous over-inclusiveness of Plaintiffs' class claims. Nevertheless, despite the class definition's overbreadth, it does not include named plaintiff Sarah Ann Thomas, who neither met with Weinstein to discuss a project nor attended an event hosted by TWC or Miramax, but rather alleges she interviewed for a nanny job with the Weinstein family ten years ago. Naturally, Plaintiffs all but ignore the overbreadth of the class allegations. Furthermore, Plaintiffs utterly fail to identify material questions that could be determined in "one stroke" on a class-wide basis to resolve Harvey Weinstein's

liability. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct, 2541, 2551 (2011). Thus, the class allegations should be stricken.

Furthermore, even though some of the alleged acts of misconduct asserted against Weinstein occurred no later than 10 years ago, Plaintiffs nonchalantly state in a sentence or two that their claims were timely filed because they could not have "discovered the cause of the damage to their careers" earlier than October 2017 when the *New Yorker* published an article about Weinstein.  These equitable tolling and equitable estoppel arguments—which Plaintiffs assert excuse their failure to comply with the applicable statutes of limitations—are baseless for several reasons.

First, they offer no excuse why they could not have asserted their tort claims within the applicable limitations periods. Certainly Plaintiffs knew when and how they were purportedly assaulted, and they each allege that they suffered emotional distress and damage to their careers almost immediately thereafter.  Second, Plaintiffs cannot explain away the untimeliness of their RICO claim.  They do not allege any facts that Weinstein made any statement, or took any action, to deceive or defraud any of the named Plaintiffs into dropping their claims.  Third, the allegations of a "blacklist" and a telephone call from a "fake" reporter asking for information (the only purported facts unique to these Plaintiffs) do not constitute threats, coercion, or duress in order to toll the statutes of limitations. Plaintiffs' speculative "feelings" that they should not upset a film mogul by going public with their claims do not justify their delay.  If that were the case, any and all civil claims against every powerful person in the world would be subject to indefinite tolling.

Plaintiffs have represented to the Court that they are satisfied with their Complaint. No amount of amendment can cure its deficiencies.  Thus, Weinstein's Motion to Dismiss should be granted without leave to amend.

## ARGUMENT

### I.   PLAINTIFFS' TORT CLAIMS ARE TIME-BARRED AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Plaintiffs blur their allegations in order to avoid dismissal of their tort claims against Weinstein[1] on the grounds that they are barred by the applicable statutes of limitations.  They also deftly attempt to conflate their RICO claims with their tort allegations to bootstrap all Plaintiffs—and plaintiffs in other cases—into their argument that the Complaint was timely filed, when it was not.  Consequently, the Court should consider each of the individual Plaintiffs' claims when ruling on this motion.  The facts pleaded in the Complaint disprove Plaintiffs' arguments that Weinstein is equitably estopped from asserting a statute of limitations defense or that their tort claims should be equitably tolled.[2]  *See Overall v. Estate of Klotz*, 52 F.3d

---

[1] Plaintiffs assert state or common law claims against Weinstein for battery (Counts V and VI), assault (Counts VII and VIII), intentional infliction of emotional distress (Counts IX and X), and negligent inflection of emotional distress (Counts XI and XII).
[2] Trial courts frequently grant motions to dismiss claims that are clearly time-barred. *See, e.g.*, *Voiceone Commc'ns, LLC v. Google Inc.*, 2014 WL 10936546 (S.D.N.Y. Mar. 31, 2014) (dismissing claims as time-barred on defendant's motion to dismiss); *LiveIntent, Inc. v. Naples*, 293 F. Supp. 3d 433, 442 (S.D.N.Y. 2018) (relevant dates in the pleading supported motion to dismiss on statute-of-limitations grounds). Further, Plaintiffs' cited authorities do not support their contention that dismissal is inappropriate in this case. In *Reach Music Publishing, Inc. v. Warner/Chappell Music, Inc.*, 2009 WL 3491665, *6-7 (S.D.N.Y. Oct. 23, 2009), the complaint did not plead specific dates showing that the statute of limitations had run. Plaintiffs here, on the other hand, allege dates affirmatively establishing that their claims are time-barred.  Similarly, in *Childers v. N.Y. & Presbyterian Hospital,* 36 F. Supp. 3d 292, 314 (S.D.N.Y. 2014), the complaint did not show that the fraud and breach of fiduciary

398, 404 (2d Cir. 1995) (stating that "New York construes tolling doctrines as narrowly as possible") (*citing McCarthy v. Volkswagen of Am., Inc.*, 55 N.Y.2d 543, 548, 506 N.Y.S.2d 457, 459, 435 N.E.2d 1072 (1980)).

Plaintiffs do not dispute that their assault, battery, and emotional distress claims fall outside of the applicable limitations periods.  Instead, they contend that Weinstein should be equitably estopped from asserting a statute of limitations defense due to his supposed fraud, misrepresentations, and deception.  On the face of it, this argument simply fails – Plaintiffs do not allege, nor could they plausibly do so, that Weinstein "concealed" his alleged assaults on them, or that he otherwise "induced" them "to refrain from filing a timely action." *Twersky v. Yeshiva Univ.,* 993 F. Supp. 2d 429, 442 (S.D.N.Y. 2014), *aff'd,* 579 F. App'x 7 (2d Cir. 2014). Moreover, the cases Plaintiffs cite in support of their argument are unavailing.

Plaintiffs first rely on *Saveria JFK, Inc. v. Flughafen Wien, AG,* 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017), but falsely state that the court in that case "denied a motion to dismiss a RICO claim, finding that equitable estoppel tolled the statute of limitations." Opp. at 49. In fact, *no RICO claim was asserted* in *Saveria,* but rather New York common law claims for fraudulent concealment and tortious interference with prospective economic advantage.  Moreover, the court *declined to consider the defendant's motion to dismiss* because it decided to grant the plaintiffs' motion for remand. The case had been removed on the basis of diversity and the defendant's

---

claims were untimely. Plaintiffs cite the dissenting opinion in *Shockley v. Vermont State Colleges*, 793 F.2d 478, 485 (2d Cir. 1986), and fail to note that the majority found that the statute of limitations had run.  *Id.* at 482.

allegation that a non-diverse plaintiff was fraudulently joined. While the court concluded that the plaintiff "has potentially viable claims of equitable tolling or estoppel that could be asserted in state court," it cited cases holding that "any possibility of recovery, however slim, militates against a finding of fraudulent joinder." *Id.* at *5 (quoting *Ehrenreich* v. *Black*, 994 F. Supp. 2d 284, 289 (E.D.N.Y. 2014)).

Similarly, Plaintiffs misplace their reliance on *Zimmerman v. Poly Prep Country Day School,* 888 F. Supp. 2d 317 (E.D.N.Y. 2012). That case arose from alleged sexual abuse by the plaintiffs' football coach, Foglietta, who predeceased the filing of the litigation and was not a defendant. Thus, the issue was whether equitable principles estopped the school defendant from asserting the statute of limitations as a defense. The plaintiffs in that case alleged that they were deceived "into believing that they had no claim against Poly Prep because the school had no knowledge of Foglietta's wrongdoing," based on the school's "affirmative[] misrepresent[ations], at school events [plaintiffs] attended and in school publications that they received, that Foglietta 'remained in good standing' and 'was held in high regard.'" *Id.*, at 340. As the court explained, while those misrepresentations about Foglietta "could not have plausibly altered plaintiffs' knowledge to the contrary,[3] it might plausibly have led them to falsely believe that Poly Prep was unaware of Foglietta's misconduct and could not be liable for negligent retention or supervision." *Id.* Plaintiffs' Complaint

---

[3] And, thus, no doubt would not have served to toll the statute of limitations as to Foglietta, were he still alive.

here is devoid of any allegation that *any* defendant, let alone Weinstein, made any affirmative misrepresentations to any of them.

Indeed, in contrast to their cited cases, Plaintiffs here are well aware of when and how the purported acts of sexual misconduct occurred and make no allegations that anyone, let alone Weinstein, "concealed" the alleged assaults or misled any of the Plaintiffs as to whether they could assert tort claims against him. Furthermore, Plaintiffs each allege that they suffered emotional distress (which impacted their careers) almost immediately after their alleged encounters with Weinstein, thus demonstrating that they knew of their alleged injuries and were thus on notice of their tort claims.[4]  The alleged hiring of journalists, "spies," and lawyers "to directly deceive Plaintiffs that they were working for victims when in fact they were working for Weinstein" (Opp. at 50)—an allegation that is not made by any of the named Plaintiffs in this case—does not constitute a plausible explanation for why Plaintiffs failed to assert their tort claims against Weinstein on a timely basis, particularly given that the only specific allegations concerning the named Plaintiffs assert that the alleged "deception" occurred years after the various statutes of limitations had expired. Not one named Plaintiff alleges that she was approached by any journalist,

---

[4]  Complaint, ¶¶59 & 61 ("After the [1993] assault," Kendall experienced both emotional distress and physical pain); ¶83 ("After he assaulted her [in 1998], Brock suffered from depression, a lack of self-confidence and a loss of reputation"); ¶95 (Sagemiller was "frightened" during the summer of 2000 that Weinstein "wielded so much power that he could prevent her from traveling on public transportation, over her objections"); ¶¶100 & 102 (Geiss felt "distressed"); ¶112 ("Thomas left [a 2008 interview with Weinstein] feeling upset, shaken, afraid and disrespected"); and ¶¶119 & 120 (Klatt was "[s]cared and upset," and the "assault was profoundly disturbing and life changing").

"spy," or lawyer *during the applicable limitations period*. Thus, Plaintiffs' tort claims are time-barred.

## II.   PLAINTIFFS' RICO CLAIMS ARE INSUFFICIENTLY PLEADED AND SHOULD BE DISMISSED WITHOUT LEAVE TO AMEND

Weinstein adopts and incorporates by this reference the arguments set forth in the Outside Directors' reply memorandum (Dkt. # 112) and the reply memorandum of Miramax Film NY, LLC  that Plaintiffs (a) fail to plead that their RICO claims are timely; (b) fail to plead RICO violations; and (c) fail to plead cognizable RICO injuries. The following additional points support Weinstein's arguments that Plaintiffs RICO claims against him in particular fail.

### A.   Plaintiffs' RICO Claims Are Barred By the Statute of Limitations

The facts alleged in the Complaint refute and undermine Plaintiffs' contention that the four-year statute of limitations under RICO did not begin to run until 2017 when they allegedly discovered the "shadowy network of spies, lawyers, and media" working to "blacklist" them. None of Plaintiffs' excuses for their untimely filing have merit and defeat their RICO claims as a matter of law.

#### 1.   Plaintiffs do not and cannot plausibly allege that Weinstein misled them into believing that they could not sue him

Plaintiffs erroneously contend in their opposition memorandum that Weinstein should be equitably estopped from asserting a statute of limitations affirmative defense to their time-barred claims because he somehow fraudulently induced them to refrain from filing suit within the limitations period.  As discussed above in the context of their tort claims, this theory is not supported by the allegations in the Complaint, however, but is predicated on improper conclusions and

inexplicable leaps of logic.  Unlike the case of *Zimmerman v. Poly Prep* discussed above, Plaintiffs here do not and could not plausibly allege that Weinstein (or any of the defendants) made an affirmative misrepresentation to any Plaintiff that caused her to believe that she had no case against Weinstein.

Plaintiff Katherine Kendall attempts to allege that she had been targeted by a private investigator purportedly retained by Weinstein, but her allegations fall far short of establishing fraud, misrepresentation, or deception designed to thwart a timely lawsuit.  Specifically, Kendall alleges that someone claiming to be a reporter contacted her in the summer of 2017 – 20 years after the limitations period had expired – and asked whether "she *had or was going to talk* [to] reporters at the *New York Times* about her experiences with the casting couch and producers."  Complaint, ¶63 (emphasis added).  *Being contacted in 2017* by an alleged private investigator who merely asked whether Kendall was talking to the press about Weinstein is not an act that would have prevented Kendall from timely pursuing her claims for a *1993 alleged assault*.[5]  In addition, Kendall clearly alleges that the "fake" reporter's call was seeking to elicit information from her, *not* to mislead her into refraining from filing suit.

Similarly, Plaintiffs fail to allege a plausible theory of fraudulent concealment by Weinstein that prevented them from timely filing suit.  Kendall's supposed

---

[5] Moreover, as explained in the moving papers, because there was no "official proceeding" at the time of the investigator's inquiry, his alleged conduct (even if there were plausible facts alleged connecting him to Weinstein) could not possibly constitute witness tampering under 18 U.S.C. § 1512, or any other predicate act, under RICO.

discovery in November 2017—25 years after the alleged assault—that her name was on a "blacklist" does not form a reasonable excuse for her untimely complaint.[6]  Her allegation that the list was *"prepared in early 2017"* (Complaint, ¶66) wholly belies Plaintiffs' equitable estoppel argument as it pertains to their RICO claims.  *See Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 386-387 (7th Cir. 2010) ("But if the obstructive behavior occurs *after* the plaintiff's inquiry has reached the point at which he has discovered that he has a claim upon which to found a suit, the defendant's obstructionism has no causal significance, ... and so is not a ground for an estoppel.") (citations omitted).  There are no allegations explaining how a "blacklist" created in "early 2017" prevented Kendall or any other Plaintiff from timely filing suit in the decades prior to its creation.

### 2.   Plaintiffs' claims should not be equitably tolled because they fail to plausibly allege that they were threatened by Weinstein or otherwise under duress

Plaintiffs' equitable tolling claim is similarly flawed and should be disregarded across the board.  Plaintiffs fail to plead any facts that they were under duress for the past 10 or 20 years, or that Weinstein threatened or otherwise committed acts that prevented each of them from filing suit within four years of the alleged sexual

---

[6] Despite Kendall's allegation in paragraph 61 that, since the alleged 1993 assault, she has "had to remove herself completely off from the entertainment industry," she has had a successful acting career that most actors would covet, with 24 screen credits.   https://www.imdb.com/name/nm0447607/?ref_=fn_al_nm_1 (accessed June 23, 2018).   For example, during the last 23 years, Kendall has been involved in various projects starring Golden Globe winners Gabriel Byrne and Tony Shalhoub. *Id.*

encounters. No facts – as opposed to boilerplate conclusions – show any affirmative steps by Weinstein to silence them in any manner.

Plaintiffs claim that "Weinstein enforced a code of silence" (Complaint, ¶178), but do not say when or how the code of silence was enforced.  They claim Weinstein engaged in multiple instances of "tampering with a witness or a victim" but do not allege when, how, or who was involved – they certainly do not allege that any of the named Plaintiffs was "tampered" with and thus prevented from filing suit. *Id.,* ¶196. Plaintiffs cite a newspaper article claiming that a female actor complained to a Miramax producer in 1996 that Weinstein had sexually assaulted her, and was told by the producer not to say anything about it until after the film's release that year. *Id.*, ¶176. Even if that story concerned one of the named Plaintiffs, it would not amount to fraudulent concealment or duress tolling the statute of limitations because the producer's statement merely reflects the producer's interest in successfully promoting the film, and would not excuse the actor's failure to file suit in the 22 years since the film's 1996 release.

Plaintiffs' argument that the statutes of limitations should be tolled under the doctrine of duress is simply not supported by the facts alleged in the Complaint against Weinstein.  Plaintiffs do not allege that Weinstein made any specific threats that would have prevented them from filing suit within the limitations period. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 347 (2ᵈ Cir. 1994); see also *Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir. 1995) ("'Duress' involves both threats or force by the defendant, and the submission of the

plaintiff's free will to those threats."). That Weinstein allegedly placed his hand on the back of Brock's chair, asked Sagemiller whether she wanted to limit herself to teen films, or told Klatt that he could "make" or "break" her career cannot reasonably be construed as threats directed to these Plaintiffs to remain silent about their alleged assault or to prevent them from filing suit. Thus, Plaintiffs' generalized statements of duress do not support their equitable tolling defense.

Indeed, what Plaintiffs allege is not that Weinstein made any actual threats against them, but merely that they speculated he might somehow harm their careers. For example, Kendall alleges that "[a]fter the [purported 1993] assault," she "*believed* that if she were to disclose the assault, *she would be blacklisted* and blamed as a result of Weinstein's power in the industry" (Complaint, ¶59); and "[e]ach time [Weinstein] attempted to contact her, Kendall became upset [because] *[s]he knew Weinstein could hurt her career.*" *Id.,* ¶60 (emphasis added). Similarly, Plaintiff Thomas asserts that she was "informed" (by whom, she does not say) that casting directors had complained about her "public position" that she would not work with sexual predators, and that such casting directors—*not* Weinstein—were "*implicitly* threatening to blacklist her." Complaint, ¶114 (emphasis added). That Thomas "felt" she could not "talk publicly about Weinstein" is not duress that tolls the statute of limitations.

*Philco Corp. v. Radio Corp. of America,* 186 F. Supp. 155, 162 (E.D. Pa. 1960), is instructive here. As the court explained in that case:

> [T]he mere fact that the plaintiffs anticipated duress does not establish it as a legal defense. . . Surely mere relative strength and weakness does not per se

11

> constitute duress.  Yet Philco's complaint and whole argument on this point seems to boil down to the proposition that R.C.A. was big and strong and that a suit against it might result in serious financial loss to Philco. Surely no litigant can expect a party whom they sued to reward them.

*See also Jastrzebski v. New York*, 423 F. Supp. 669, 674 (S.D.N.Y. 1976) (finding no duress because "all plaintiff alleges is that he was afraid that the defendants might cause further unfounded charges to be lodged against him," and citing *Philco* with approval). Such is the case here. Just because Weinstein was a powerful figure in the entertainment industry and Plaintiffs allegedly feared that he might harm their careers does not mean that Plaintiffs were under such duress that they were excused from filing suit on a timely basis.

There are simply no allegations that Weinstein threatened Plaintiffs in order to silence them and prevent them from filing suit.  Accordingly, Plaintiffs' reliance on equitable principles to justify violations of the applicable statutes of limitations is unfounded.

### B.    Plaintiffs Fail to Allege a RICO Violation

Plaintiffs allege that their respective careers were negatively affected because of their time-barred interactions with Weinstein, but not because of any purported RICO scheme. They allege that as a result of the alleged assaults, they *felt* that they might be blacklisted[7], or were afraid to audition for roles[8] or interact with men in the

---

[7] Kendall claims she "believed" she would be blacklisted if she were to disclose the alleged assault because of Weinstein's "power in the industry." Complaint, ¶59.
[8] Brock was "afraid" to audition for roles that required her "to travel to Hollywood" (*id.*, ¶83).  She does not allege that Weinstein made any threats to her, but only that Weinstein kept his hand on the back of her chair in a movie theater. *Id.*, ¶82.

industry.[9] As set forth in the Outside Directors' reply memorandum (Dkt. # 112), these are not cognizable RICO injuries. Moreover, some of these Plaintiffs enjoyed success in the industry[10], or voluntarily removed themselves from it.[11]   While Plaintiffs' feelings may have been relevant to emotional distress claims – had they been timely raised, which they were not – they do not support their claim that Weinstein engaged in RICO predicate criminal activity such as wire and mail fraud (18 U.S.C. §§1341, 1343), witness tampering (18 U.S.C. §1512), or commercial sex trafficking (18 U.S.C. §§1590, 1591).

Plaintiffs also ignore the fact that allegations of mail and wire fraud must be pleaded with particularity.  Fed. R. Civ. P 9(b).  They attempt to explain the basis of this claim in a footnote (Opp., p. 26, n. 102), in which they erroneously assert that Weinstein "admits" he used "wire" to communicate with putative class members. Weinstein admits no such thing.  That he has an email account does not mean he communicated with putative class members, let alone committed wire fraud.[12]

---

[9] Klatt alleges that her "fears" following Weinstein's alleged assault[9] affected her interactions "with men both personally and professionally."  *Id.*, ¶120.

[10] Sagemiller alleges that she was "frightened" that Weinstein "wielded so much power" that he could arrange for her to fly home on a private plane.  *Id.*, ¶95. Yet Sagemiller had a successful career following her interaction with Weinstein in 2000. She was a series regular on *Law & Order: Special Victims Unit, Raising the Bar*, and *Sleeper Cell*, and landed a role in *The Guardian* with Kevin Costner. https://www.imdb.com/name/nm0756089/bio?ref_=nm_ov_bio_sm (accessed June 23, 2018).

[11] Geiss claims that she "lost" a "three-film deal" because she did not engage in sexual activity with Weinstein.  However, there was no "deal" that could be "lost" because Weinstein's purported offer was never accepted or finalized and, besides, Geiss claims she voluntarily left the industry.  *Id.*, ¶103.

[12] Likewise, that Weinstein allegedly used a telephone or email to arrange for his private plane or rent a theatre for a private screening does not establish wire or mail

Additionally, discussions concerning sexual assault allegations and "secret" negotiations of non-disclosure agreements ("NDAs") with third parties are not fraudulent acts.  Nor could the fact that Weinstein purportedly entered into NDAs with other alleged victims have constituted a fraud against Plaintiffs that injured them in any way.  Thus, even assuming the purported sexual misconduct occurred, Plaintiffs fail to allege any plausible facts showing any alleged damage to Plaintiffs' business or property that was caused by a RICO scheme to defraud.  Plaintiffs' failure to allege any actual acts constituting wire fraud is fatal to their RICO claim.

Plaintiffs' witness tampering allegations also fail.  As discussed above, there are absolutely no facts alleging that Weinstein tampered with *any witness* (let alone, one of the Plaintiffs) in an official proceeding, as required by 18 U.S.C. § 1512. Assuming the "fake" reporter's conversation with Kendall occurred as alleged, nothing he is alleged to have said to Kendall could remotely be construed as witness tampering.  He asked questions only, and made no threats. He said nothing that could plausibly be read as intending to coerce her to destroy evidence, refuse to testify, or alter truthful testimony in an official proceeding

Lastly, Plaintiffs fail to address how Kendall and Brock (and possibly Klatt and Sagemiller, assuming their interactions with Weinstein occurred before 2000) can assert violations of 18 U.S.C. §§1590 and 1591 as predicate acts when their encounters with Weinstein occurred *before* these statutes were enacted in 2000.  And,

---

fraud. Plaintiffs fail to allege any facts showing how those communications were either themselves fraudulent or part of a scheme to defraud Plaintiffs.

importantly, none of the Plaintiffs allege that a commercial sex act even occurred[13], an argument that Plaintiffs choose to ignore in their Opposition.

## III.   THE CLASS ALLEGATIONS SHOULD BE DISMISSED OR, ALTERNATIVELY, STRICKEN

Plaintiffs attempt to bring a class action on behalf of others similarly situated, but do not satisfy the pleading requirements of Rule 23.  In their opposition, Plaintiffs fail to adequately address Weinstein's contention that their class definition is hopelessly overbroad, or that the lack of commonality and predominance defeat class-wide resolution. In fact, Plaintiffs spend just a few sentences on these critical issues that are necessary for maintenance of a class action Complaint.  *See* Opp., pp. 61-62. Plaintiffs also do not explain why, on the same day they filed their opposition memorandum in this case, they also filed in this Court a virtually identical class action with the same class definitions on behalf of three additional alleged victims. *See Dulany v. Miramax*, Case No. 1:18-cv-04857, S.D.N.Y., Dkt. #1.

This case cannot, and should not, proceed as a class action.  Unlike consumer fraud or products liability class actions, in which all class members were charged an

---

[13] Importantly, none of the plaintiffs allege that a sex act (as defined in 18 U.S.C. § 2246(2)) with Weinstein occurred, so their RICO claim fails as a matter of law. Brock claims Weinstein appeared naked in his hotel room, and that the next evening, he "kept his hands on Brock's chair" (which Brock characterizes as an "assault") at a private theater he rented so she and her friends could attend a film screening. Complaint, ¶¶75, 82-83. Thomas alleges only that Weinstein hugged her too long at the conclusion of her nanny interview (*id.*, ¶¶111), and Kendall claims that Weinstein appeared naked in front of her and "chased her around the apartment."  *Id.*, ¶56. Sagemiller alleges that Weinstein asked for a massage and forcibly kissed her (*id.*, ¶¶89 & 91). Geiss alleges that Weinstein masturbated in front of her. *Id.*, ¶99.  Lastly, Klatt alleges only that Weinstein asked her to show him her breasts and, when she refused, he purportedly made her exit his office to a locked stairwell. *Id.*, ¶¶ 117-119.

unwanted fee or purchased a faulty widget, Plaintiffs here suffered purported harm arising out of circumstances that are factually unique and are necessarily subject to individual interpretation.[14]  For example, with respect to Plaintiff Klatt who alleges that Weinstein asked to see her breasts because nudity was required for a role, another actor may not have considered the request to be sexually motivated, suggestive, or even unusual given Weinstein's position as a film producer.  Unlike Sagemiller, other aspiring actors may have been thrilled to fly in Weinstein's private plane, and unlike Brock, another person may not have considered Weinstein's hand on the back of a theater chair to be threatening.  Whether the statute of limitations should be tolled as to any class member is also an individualized question. Thus, there are no predominant common questions of fact that can determine Weinstein's liability on Plaintiffs' claims in "one stroke."  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct, 2541, 2551 (2011) ("That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that

---

[14] Indeed, most of the cases cited by Plaintiffs are consumer fraud cases in which a uniform deceptive practice was engaged in by the defendant. *See, e.g., Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503 (S.D.N.Y. 2015) (identical misleading sales pitch made to consumers); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395 (S.D.N.Y. 2012) (defendant had a knowingly false cancellation procedure with which it uniformly failed to comply); *Friedman v. 24 Hour Fitness USA, Inc.,* 2009 U.S. Dist. LEXIS 81975 (C.D. Cal. Aug. 24, 2009) (defendant "imposed post-cancellation [Electronic Funds Transfer] charges in a uniform manner"); *Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 (S.D.N.Y. 2015) (defendants mass-produced false affidavits to obtain and enforce fraudulent consumer debt judgments); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F. 3d 70 (2d Cir. 2015) (defendants operated a "default judgment mill" using false documents following a uniform format).

determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.").

In addition, as shown above and in the moving papers, the commonality requirement is defeated on the face of Plaintiffs' Complaint.  One of the named plaintiffs (*i.e.,* Thomas) does not even qualify as a class member because she neither met with Weinstein to audition for a role or discuss a project, nor met him at an industry event.  In their opposition, Plaintiffs do not even attempt to redefine the class definition or dispute Weinstein's contention that the class could conceivably include all women who consented to engaging in sexual activity with Weinstein; all women whose alleged claims are time-barred; and all women who had even a chance encounter with Weinstein at a party hosted by one of his companies.

Further, Plaintiffs' attempt to downplay the fact that different state laws will need to be examined for each putative class member is unavailing.  *See* Opp., p. 60, n. 262.  The law is clear that a district court's need to review and analyze multiple state laws on which the class members' tort claims are based will not satisfy Rule 23's predominance requirement.  Plaintiffs fail to cite a single Second Circuit opinion holding otherwise. In fact, the holding of the most recent case to which Plaintiffs cite – from the First Circuit – *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 296 (1st Cir. 2000), was rejected squarely by the Supreme Court in *Dukes*.  In *Mowbray,* the Court held that "[p]redominance under Rule 23(b)(3) cannot be reduced to a mechanical, single-issue test."  In the 2007 *Dukes* decision, however, the Court disagreed, holding that the "common contention" proposed in the class action

17

complaint must be capable of classwide resolution in "one stroke."  564 U.S. at 350, 131 S. Ct. at 2551.

Lastly, Plaintiffs improperly urge the Court to ignore their pleading deficiencies until the class certification stage.  Recent Supreme Court precedent has confirmed that class allegations must comply with the pleading requirements of Fed. R. Civ. P. 8.  *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009).  Thus, Plaintiffs' reliance on cases that predate the *Twombly* and *Iqbal* decisions (*see* Opp., p. 58, n. 252) should be disregarded, and this Court should dismiss and/or strike the class allegations.

## CONCLUSION

For the reasons set forth above and in the moving papers, the Complaint, and the first, second, and fifth through twelfth claims for relief, should be dismissed with prejudice, and Plaintiffs' class allegations should be dismissed or stricken in their entirety.

Dated:  Los Angeles, California

June 29, 2018                                KUPFERSTEIN MANUEL LLP

                                             */s/ Phyllis Kupferstein*
                                             Phyllis Kupferstein
                                             865 S. Figueroa St.
                                             Suite 3338
                                             Los Angeles, California 90017
                                             (213) 988-7531 – Telephone
                                             (213) 988-7531 – Telefax
                                             pk@kupfersteinmanuel.com

MORRISON COHEN LLP
Mary E. Flynn
909 Third Ave.
New York, New York 10022
(212) 735-8600 – Telephone
(212) 735-8708 – Telefax

*Attorneys for Defendant*
*Harvey Weinstein*