**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

LOUISETTE GEISS, KATHERINE
KENDALL, ZOE BROCK, SARAH ANN
THOMAS (A/K/A SARAH ANN MASSE),
MELISSA SAGEMILLER, and NANNETTE
KLATT, individually and on behalf of all
others similarly situated,

      Plaintiffs,

    v.

THE WEINSTEIN COMPANY HOLDINGS,
LLC, MIRAMAX FILM NY, LLC, HARVEY
WEINSTEIN, ROBERT WEINSTEIN, DIRK
ZIFF, TIM SARNOFF, MARC LASRY,
TARAK BEN AMMAR, LANCE MAEROV,
RICHARD KOENIGSBERG, PAUL TUDOR
JONES, JEFF SACKMAN, JAMES DOLAN,
MIRAMAX DOES 1-10, and JOHN DOES 1-
50,

      Defendants.

17 Civ. 9554 (AKH) (BCM)


ORAL ARGUMENT REQUESTED


**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**DEFENDANT MIRAMAX FILM NY, LLC'S MOTION TO DISMISS**
**PLAINTIFFS' CLASS ACTION COMPLAINT**

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION. ................................................................................................ 1

II.    ARGUMENT. .................................................................................................... 2

    A.    Courts Routinely Dismiss Actions For The Very Same Deficiencies Present In
          Plaintiffs' Complaint. ..................................................................................... 2

    B.    Plaintiffs' Claims Against Miramax Are Time-Barred. ...................................... 3

          1.    Plaintiffs' RICO Claims Accrued More Than Four Years Before
                Plaintiffs Filed This Action. ................................................................... 3

          2.    Tolling Doctrines Do Not Save Plaintiffs' Untimely Claims. ............................ 5

                a.    Equitable Estoppel Should Not Be Invoked Here. ................................... 5
                b.    Duress Tolling Should Not Be Invoked Here. ........................................ 7
                c.    Equitable Tolling Should Not Be Invoked Here. ..................................... 9

    C.    Plaintiffs' RICO Claims Fail As A Matter Of Law. ........................................ 11

          1.    Plaintiffs Lack Standing To Assert Their RICO Claims. ................................. 12

                a.    Plaintiffs Have Not Sustained A RICO Injury. ...................................... 12
                b.    Plaintiffs' Alleged Injury Was Not Proximately Caused By The
                    Alleged RICO Predicate Acts. ............................................................. 14

           2.    Plaintiffs' RICO Claim Under § 1962(c) Should Be Dismissed Because
                They Fail To Allege The Requisite Elements. .......................................... 15

                a.    Plaintiffs Fail To Allege A RICO Enterprise. ........................................ 15
                b.    Plaintiffs Have Not Adequately Alleged That Miramax Directed
                    The Enterprise's Affairs ..................................................................... 18
                c.    Plaintiffs Have Not Alleged Miramax Committed A Single
                    RICO Predicate Act, Let Alone The Required Pattern Of
                    Racketeering. .................................................................................... 21

                    (1)    Plaintiffs Have Not Pled Mail Or Wire Fraud. ......................... 21
                    (2)    Plaintiffs Have Not Pled Sex Trafficking. ................................. 23
                    (3)    Plaintiffs Have Not Pled Witness Tampering. ............................ 24

           3.    Plaintiffs' RICO Conspiracy Claim Fails As A Matter Of Law. ...................... 25

           4.    Joint And Several Liability Cannot Save Plaintiffs' Defective RICO
                Claims. ............................................................................................. 25

    D.    Plaintiffs' State Law Claims Fail As A Matter Of Law. ................................... 26

          1.    Plaintiffs' Claims Based On *Respondeat Superior* Each Fail. ........................ 26

          2.    Plaintiffs' Negligent Supervision And Retention Claim Fails. ........................ 28

3.      Plaintiffs' Claim For Ratification Fails................................................................ 30

III.   CONCLUSION......................................................................................................... 32

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*101 McMurray, LLC v. Porter,*
   2012 WL 997001 (S.D.N.Y. Mar. 26, 2012)................................................................ 16, 18

*A. Terzi Prods. v. Theatrical Protective Union,*
   2 F. Supp. 2d 485 (S.D.N.Y. 1998) ............................................................................ 31

*Abbott Labs. v. Adelphia Supply USA,*
   2017 U.S. Dist. LEXIS 1007 (E.D.N.Y. Jan. 4, 2017) ............................................. 16, 21

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.,*
   2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005) .......................................... 20

*Allstate Ins. Co. v. Nazarov,*
   2015 WL 5774459 (E.D.N.Y. Sept. 30, 2015) ........................................................... 26

*Allstate Insurance Co. v. Yehudian,*
   2018 U.S. Dist. LEXIS 27129 (E.D.N.Y. Feb. 15, 2018) .......................................... 25

*Alston v. Stone,*
   2005 WL 668395 (S.D.N.Y. Mar. 21, 2005) .............................................................. 9

*Anctil v. Ally Fin., Inc.,*
   998 F. Supp. 2d 127 (S.D.N.Y. 2014) ........................................................................ 17

*Apollon Waterproofing & Restoration, Inc. v. Bergassi,*
   87 F. App'x 757 (2d Cir. 2004) ................................................................................. 13

*Aramony v. United Way of Am.,*
   969 F. Supp. 226 (S.D.N.Y 1997) ............................................................................. 12

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................................ 2, 15

*Astech-Marmon, Inc. v. Lenoci,*
   349 F. Supp. 2d 265 (D. Conn. 2004) ....................................................................... 13

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ................................................................................................ 15, 26

*Boneta v. Rolex Watch USA, Inc.,*
   232 F. Supp. 3d 354 (S.D.N.Y. 2017) ....................................................................... 25

*Boyle v. United States,*
   556 U.S. 938 (2009) ................................................................................................. 16

*Cleveland v. United States*,
   531 U.S. 12 (2000) ............................................................................................. 23

*Crawford v. Franklin Credit Mgmt.*,
   758 F.3d 473 (2d Cir. 2014) ............................................................................... 25

*Cruz v. FXDirectDealer, LLC*,
   720 F.3d 115 (2d Cir. 2013) ............................................................................... 17

*Cullen v. Margiotta*,
   811 F.2d 698 (2d Cir. 1987) ................................................................................. 9

*De Sole v. Knoedler Gallery, LLC*,
   137 F. Supp. 3d 387 (S.D.N.Y. 2015) ............................................................... 19

*Doe ex re. Doe v. Federal Exp. Corp.*,
   571 F. Supp. 2d 330 (D. Conn. 2008) ............................................................... 30

*Doe v. Alsaud*,
   12 F. Supp. 3d 674 (S.D.N.Y. 2014) ..................................................... 3, 28, 29

*Doe v. City of New York*,
   2013 WL 796014 (S.D.N.Y. Mar. 4, 2013) ................................................ 27, 28

*Eaves v. Designs for Fin., Inc.*,
   785 F. Supp. 2d 229 (S.D.N.Y. 2011) ............................................................... 11

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004) ............................................................................... 29

*Eickhorst v. E.F. Hutton Grp., Inc.*,
   763 F. Supp. 1196 (S.D.N.Y. 1990) ................................................................... 5

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014) ............................................................................. 5, 9

*Elsevier Inc. v. W.H.P.R., Inc.*,
   692 F. Supp. 2d 297 (S.D.N.Y. 2010) ............................................................... 21

*First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ............................................................................... 17

*In re GM LLC Ignition Switch Litig.*,
   2016 U.S. Dist. LEXIS 92499 (S.D.N.Y. July 15, 2016) ................................... 17

*Goldfine v. Sichenzia*,
   118 F. Supp. 2d 392 (S.D.N.Y. 2000) ............................................................... 20

*Gross v. Waywell*,
   628 F. Supp. 2d 475 (S.D.N.Y. 2009) ............................................................... 23

*Hoatson v. N.Y. Archdiocese,*
   2007 WL 431098 (S.D.N.Y. Feb. 8, 2007) ........................................................ 3

*Hollander v. Flash Dancers Topless Club,*
   340 F. Supp. 2d 453 (S.D.N.Y. 2004) ........................................................... 15

*Holm v. C.M.P. Sheet Metal, Inc.,*
   89 A.D.2d 229 (N.Y. App. Div. 1982) .......................................................... 30

*Jastrzebski v. New York,*
   423 F. Supp. 669 (S.D.N.Y. 1976) ................................................................ 8

*Johnson v. Nextel Commc'ns Inc.,*
   2017 WL 4326052 (S.D.N.Y. Sept. 19, 2017) ............................................. 16

*Jones v. Nat'l Commc'n and Surveillance Networks,*
   409 F. Supp. 2d 456 (S.D.N.Y 2006) ........................................................ 2, 3

*Kao v. British Airways, PLC,*
   2018 U.S. Dist. LEXIS 8969 (S.D.N.Y. Jan. 19, 2018) ............................... 15

*Khapesi v. City of New York,*
   2014 U.S. Dist. LEXIS 79623 (S.D.N.Y. June 10, 2014) ............................ 29

*Kimm v. Chang Hoon Lee,*
   196 F. App'x 14 (2d Cir. 2006) .................................................................... 12

*Koch v. Christie's Int'l PLC,*
   699 F.3d 141 (2d Cir. 2012) .................................................................... 4, 10

*Koch v. Christie's Int'l PLC,*
   785 F. Supp. 2d 105 (S.D.N.Y. 2011) .......................................................... 10

*Lawson v. Rubin,*
   2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) .............................................. 15

*Lombardo v. Dr. Seuss Enterprises, L.P.,*
   2017 WL 1378413 (S.D.N.Y. Apr. 7, 2017) ................................................ 13

*Mack v. Parker Jewish Inst. for Health Care & Rehab.,*
   2014 WL 5529746 (E.D.N.Y. Oct. 30, 2014) .............................................. 12

*Mackin v. Auberger,*
   59 F. Supp. 3d 528 (W.D.N.Y. 2014) ..................................................... 12, 18

*Magnum v. Archdiocese of Phila.,*
   253 F. App'x 224 (3d. Cir. 2007) ................................................................. 14

*Miller v. Carpinello,*
   2007 WL 4207282 (S.D.N.Y. Nov. 20, 2007) .............................................. 24

*Moss v. BMO Harris Bank, N.A.*,
 258 F. Supp. 3d 289 (E.D.N.Y. 2017) ............................................................... 16

*Nasik Breeding & Research Farm Ltd. v. Merck & Co.*,
 165 F. Supp. 2d 514 (S.D.N.Y. 2001) ................................................................ 25

*Naughright v. Robbins*,
 2014 U.S. Dist. LEXIS 148497 (S.D.N.Y. Oct. 17, 2014) ................................... 29

*New York v. United Parcel Serv., Inc.*,
 2016 WL 4203547 (S.D.N.Y. Aug. 9, 2016) ....................................................... 16

*Overall v. Estate of Klotz*,
 52 F.3d 398 (2d Cir. 1995) ................................................................................. 8, 9

*Pearl v. City of Long Beach*,
 296 F.3d 76 (2d Cir. 2002) ................................................................................. 10

*Pietri v. N.Y.S. Office of Court Admin.*,
 936 F. Supp. 2d 120 (E.D.N.Y. 2013) ................................................................ 10

*Precedo Capital Grp. Inc. v. Twitter Inc.*,
 33 F. Supp. 3d 245 (S.D.N.Y. 2014) ............................................................... 3, 30

*Ramos v. Jake Realty Co.*,
 21 A.D.3d 744 (1st Dep't 2005) ......................................................................... 27

*Republic of Colom. v. Diego N. Am. Inc.*,
 531 F. Supp. 2d 365 (E.D.N.Y. 2007) ................................................................ 19

*Reves v. Ernst & Young*,
 507 U.S. 170 (1993) ........................................................................................... 18

*Rivera v. Puerto Rican Home Attendants Servs.*,
 930 F. Supp. 124 (S.D.N.Y. 1996) ..................................................................... 31

*Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*,
 30 F.3d 339 (2d Cir. 1994) ................................................................................... 8

*Riviello v. Waldron*,
 391 N.E.2d 1278 (N.Y. 1979) ....................................................................... 27, 28

*Robbins v. Tucker Anthony Inc.*,
 233 A.D.2d 854 (N.Y. App. Div. 1996) .............................................................. 31

*Roitman v. N.Y.C. Transit Auth.*,
 704 F. Supp. 346 (E.D.N.Y. 1989) ..................................................................... 13

*Ross v. Mitsui Fudosan, Inc.*,
 2 F. Supp. 2d 522 (S.D.N.Y. 1998) ............................................................... 27, 28

*Rotella v. Wood,*
    528 U.S. 549 (2000) ............................................................................................ 4, 22

*Sanchez v. City of New York,*
    2017 WL 3381892 (S.D.N.Y. Aug. 4, 2017)......................................................... 4

*Saveria JFK, Inc. v. Flughafen Wien, AG,*
    2016 WL 11263673 (E.D.N.Y. May 3, 2016).......................................................... 7

*Securitron Magnalock Corp. v. Schnabolk,*
    65 F.3d 256 (2d Cir. 1995) .................................................................................. 12

*Simpson v. Putnam Cty. Nat. Bank of Carmel,*
    20 F. Supp. 2d 630 (S.D.N.Y. 1998) ................................................................... 10

*Sky Med. Supply Inc. v. SCS Support Claims Servs.,*
    17 F. Supp. 3d 207 (E.D.N.Y. 2014) ................................................................... 20

*Snowden v. Lexmark Int'l, Inc.,*
    237 F.3d 620 (6th Cir. 2001) ............................................................................... 23

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG,*
    277 F. Supp. 3d 521 (S.D.N.Y. 2017) ................................................................. 11

*Southwick Clothing LLC v. GFT (USA) Corp.,*
    2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ........................................................ 1

*Tarango Trucking v. City of Contra Costa,*
    181 F. Supp. 2d 1017 (N.D. Cal. 2001) ............................................................... 31

*Thomas v. N.Y.C. Dep't of Educ.,*
    2016 WL 4544066 (S.D.N.Y. Aug. 31, 2016)........................................................ 3

*Town of Mamakating, N.Y. v. Lamm,*
    2015 WL 5311265 (S.D.N.Y. Sept. 11, 2015) ................................................ 16, 18

*Trisci v. Trisci,*
    251 A.D.2d 494 (2d Dep't 1998).......................................................................... 9

*Twersky v. Yeshiva University,*
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ........................................................... 5, 6, 7

*Tymoshenko v. Firtash,*
    57 F. Supp. 3d 311 (S.D.N.Y. 2014) ................................................................... 23

*United States v. Campanale,*
    518 F.2d 352 (9th Cir. 1975)............................................................................... 24

*United States v. Turkette,*
    452 U.S. 576 (1981) ............................................................................................ 18

*Villoldo v. BNP Paribas S.A.*,
    2015 WL 13145807 (S.D.N.Y. July 21, 2015)....................................................... 13

*Villoldo v. BNP Paribas SA*,
    648 F. App'x 53 (2d Cir. 2016)....................................................................... 14

*Westchester Cty. Indep. Party v. Astorino*,
    137 F. Supp. 3d 586 (S.D.N.Y. 2015)............................................................. 11

*Wexner v. First Manhattan Co.*,
    902 F.2d 169 (2d Cir. 1990)........................................................................... 21

*Woods v. CVS*,
    2013 WL 1736587 (S.D.N.Y. April 19, 2013).............................................. 28

*Wright v. Ernst & Young LLP*,
    152 F.3d 169 (2d Cir. 1998)..................................................................... 1, 22

*Zimmerman v. Poly Prep Country Day School*,
    888 F. Supp. 2d 317 (E.D.N.Y. 2012)............................................................. 7

*Zoe G. v. Frederick F.G.*,
    208 A.D.2d 675 (2d Dep't 1994)..................................................................... 9

*Zumpano v. Quinn*,
    6 N.Y.3d 666 (N.Y. 2006)................................................................................ 6

## STATUTES

18 U.S.C.
    § 1590............................................................................................................... 23
    § 1591............................................................................................................... 23
    § 1962(c)..................................................................................................... 11, 21
    § 1962(d).......................................................................................................... 11

Pub. L. No. 108-193............................................................................................ 23

## RULES

Fed. R. Civ. Proc. 8...................................................................................... 2, 26

Fed. R. Civ. Proc. 9(b)...................................................................... 10, 15, 21, 22

Fed. R. Civ. Proc. 12(b)(6)................................................................................. 3

## I.     <u>INTRODUCTION</u>.

Understandably concerned that defendant Miramax Film NY, LLC ("Miramax")'s motion to dismiss exposed the fatal deficiencies in plaintiffs' complaint—including that plaintiffs' decades-old claims are clearly time-barred, plaintiffs' opposition improperly asserts new supposed "facts" (including allegations from another lawsuit) that appear nowhere in the complaint and flatly misrepresents the allegations actually contained in their complaint in hopes to avoid Miramax's outright dismissal from this action.[1]  For instance, the opposition boldly asserts—without citing any allegations in the complaint, because there are none—that Miramax employees purposely "lured" women to meetings with Harvey Weinstein knowing they would be sexually assaulted; Miramax-funded cars, airplanes and hotel rooms were used in connection with such assaults; and Miramax blacklisted and targeted women to harm their careers.  Such baseless assertions cannot be raised for the first time in plaintiffs' opposition to save their defective claims, and must be disregarded.  *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998); *Southwick Clothing LLC v. GFT (USA) Corp.*, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004) ("A complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers, and hence such new allegations and claims should not be considered in resolving the motion.").  Indeed, plaintiffs' inclusion of such unfounded assertions tellingly demonstrates their failure to adequately plead their claims.  To address the sheer volume of these false statements, Miramax was compelled to provide this separate reply.

The complaint's deficiencies are also apparent from plaintiffs' last ditch effort to characterize the issues raised in Miramax's motion as "questions of fact" that cannot be properly

---

[1]     Plaintiffs voluntarily dismissed Miramax, LLC and Miramax Film Corp. after defendants brought this motion.  Dkt. 109.

decided at the motion-to-dismiss stage.  This is not the law.  This Court can and should dismiss plaintiffs' complaint because it is unequivocally time-barred *on its face*.  Moreover, plaintiffs' opposition entirely fails to refute (and at times, plainly ignores) dispositive authority demonstrating they have not sufficiently pled their RICO and state law claims—mandating dismissal.  Plaintiffs' repeated decision to ignore Miramax's arguments and authority—and instead rely on bald misrepresentations of the allegations contained in their complaint and new "facts" contained nowhere in their complaint—only confirms their claims fail as a matter of law. Accordingly, amendment is futile and the complaint should be dismissed with prejudice.

## II.    ARGUMENT.

### A.    Courts Routinely Dismiss Actions For The Very Same Deficiencies Present In Plaintiffs' Complaint.

In an attempt to save their deficient complaint, plaintiffs mischaracterize the burden on a motion to dismiss as "significant," and suggest it is improper to dismiss plaintiffs' claims.  Opp. at 13.  That is not the standard.  Rather, dismissal at the motion-to-dismiss stage is warranted when the complaint fails to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Indeed, this Court has stated that the "mere litany of vague and conclusory allegations whose relevance to the asserted claims is uncertain is not a plain statement in compliance with Rule 8."  *Jones v. Nat'l Commc'n & Surveillance Networks*, 409 F. Supp. 2d 456, 464 (S.D.N.Y. 2006) (Hellerstein, J.) (citation and internal quotation marks omitted).  Here, the complaint fails to even satisfy this most basic requirement of notice pleading; it is filled with conclusory allegations that impermissibly lump all defendants together and fail to give Miramax notice of any specific act of wrongdoing that is ostensibly committed.  Courts in this district consistently grant motions to dismiss for the exact deficiencies raised in Miramax's motion.  *See,*

*e.g.*, *Hoatson v. N.Y. Archdiocese*, 2007 WL 431098, at *6 (S.D.N.Y. Feb. 8, 2007), *aff'd*, 280 F.

App'x 88 (2d Cir. 2008) (dismissing complaint with prejudice when plaintiff lacked RICO

standing); *Jones*, 409 F. Supp. 2d at 474 (dismissing RICO claim for failure to specifically plead

pattern of racketeering or predicate acts); *Doe v. Alsaud*, 12 F. Supp. 3d 674, 678 (S.D.N.Y.

2014) (dismissing negligent supervision claim and claims based on *respondeat superior* against

employer); *Precedo Capital Grp. Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 257-58 (S.D.N.Y.

2014) (dismissing claim based on ratification).

> **B.**     **Plaintiffs' Claims Against Miramax Are Time-Barred.**

Contrary to plaintiffs' claims, dismissal based on the statute of limitations is not "strongly

disfavored."  Plaintiffs' Opposition ("Opp."), Dkt. 108 at 47.  Rather, courts routinely grant

motions to dismiss based on the statute of limitations when the claims are time-barred on the face

of the complaint.  *See, e.g., Thomas v. N.Y.C. Dep't of Educ.*, 2016 WL 4544066, at *3

(S.D.N.Y. Aug. 31, 2016) (granting motion to dismiss because it is well-established that "a

statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on

the face of the complaint").  Here, it is undeniable on the face of the complaint that every claim

asserted against Miramax falls well outside the relevant statute of limitations periods, which are

one to four years.  Miramax's Motion to Dismiss ("Mot."), Dkt. 67 at 6.  Each of plaintiffs'

claims unlawfully attempts to hold Miramax liable for alleged conduct that occurred decades

ago, and should be dismissed with prejudice.

> **1.**     **Plaintiffs' RICO Claims Accrued More Than Four Years Before**
> **Plaintiffs Filed This Action.**

Plaintiffs do not dispute that the four-year statute of limitations period for their RICO

claims began to run when they discovered or should have discovered their RICO injury.  Opp. at

47-48.  To the extent the Court might somehow determine plaintiffs' purported reputational harm

and resulting lost career opportunities is a cognizable RICO injury, then the statute of limitations would have started to run when plaintiffs lost such employment opportunities decades ago.[2]  The time to bring their RICO claims thus has long passed.

Plaintiffs, however, claim they "could not have discovered and did not discover Weinstein's network of professional spies had targeted them until October 2017 at the earliest." Opp. at 48.  This argument fails as a matter of law.  In *Rotella v. Wood*, the Supreme Court made clear that "discovery of the injury, not discovery of the other elements of the claim, is what starts the clock."  528 U.S. 549, 555 (2000); *see also Koch v. Christie's Int'l PLC*, 699 F.3d 141, 150 (2d Cir. 2012) ("It remains the law in this Circuit that a RICO claim accrues upon the discovery of the injury alone.").  Thus, it is irrelevant when plaintiffs learned of the "shadowy network of spies, lawyers, and media that was concealed and could not be discovered until 2017" or when they discovered the alleged pattern of racketeering activity.  Opp. at 48; *see Koch*, 699 F.3d at 148 (noting *Rotella* rejected the "injury and pattern discovery rule").  The relevant legal question is when plaintiffs discovered they lost out on job opportunities, which they necessarily discovered decades ago.  At the very least, knowledge of such information plainly "trigger[ed] a duty to inquire."  *Koch*, 699 F.3d at 153.  Once this duty arose, plaintiffs' failure to inquire within the four-year statute of limitations period demands dismissal of their RICO claims.  *Id.* Plaintiffs' contention that they could not have brought their RICO claims until after October 2017 is without merit.

---

[2]      The opposition also asserts "injury to their causes of action through destruction of evidence and interference," Opp. at 48, which plaintiffs did not allege in the complaint, as they must.  Plaintiffs cannot survive a motion to dismiss by alleging new "facts" in their opposition brief.  *See Sanchez v. City of New York*, 2017 WL 3381892, at *4 n.3 (S.D.N.Y. Aug. 4, 2017).  In any event, a lost cause of action is not a cognizable RICO injury. *See* section II.C.1.a, *infra*.

### 2.    Tolling Doctrines Do Not Save Plaintiffs' Untimely Claims.

Plaintiffs concede that their remaining claims against Miramax fall well outside the relevant statute of limitations period, then attempt to save their time-barred claims by asserting three tolling doctrines—equitable estoppel, duress, and equitable tolling.[3]  It was plaintiffs' burden to establish that these tolling doctrines somehow applied.  *Eickhorst v. E.F. Hutton Grp., Inc.*, 763 F. Supp. 1196, 1202 (S.D.N.Y. 1990).  Plaintiffs have not come close to meeting their burden.

### a.    Equitable Estoppel Should Not Be Invoked Here.

As an initial matter, plaintiffs' fundamental misunderstanding of equitable estoppel is underscored by their claim that they did not learn of "Black Cubing" until October 2017, because equitable estoppel is reserved for "cases where the plaintiff *knew* of the existence of his cause of action but the defendant's conduct caused him to delay in bringing his lawsuit."  *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (emphasis added).  Here, plaintiffs' argument that they *did not* know about the existence of their claims precludes the applicability of the equitable estoppel doctrine.

But even if the doctrine could be invoked here, plaintiffs' argument that they were purportedly "induced" to refrain from timely filing this lawsuit, Opp. at 49-51, still falls well below the stringent "exceptional circumstances" standard to invoke equitable estoppel.  *Twersky v. Yeshiva University*, 993 F. Supp. 2d 429 (S.D.N.Y. 2014) (equitable estoppel is an "extraordinary remedy" that should be invoked sparingly).  Contrary to the opposition's misrepresentation that plaintiffs "have asserted, *ad nauseum [sic]*, multiple allegations of

---

[3]    Although the complaint asserts continuing violation as the third tolling doctrine, the opposition "concede[s] that the continuing violation doctrine does not apply to toll the statute of limitations for Plaintiffs' claims," Opp. at 49 n.206, and then improperly asserts equitable tolling in its place, even though this new doctrine was not pled in the complaint.  *See* Compl. at 47, Heading F.

affirmative steps to silence victims," Opp. at 52, the complaint fails to allege (let alone with the required particularity under New York law) even one affirmative act that *Miramax* took to prevent the *individual plaintiffs* from filing this lawsuit within the applicable statute of limitations periods.  Not one.  Further, although plaintiffs admit they were required to bring this action "within a 'reasonable time after the facts giving rise to the estoppel have ceased to be operational,'" Opp. at 53 (citation omitted), the complaint lacks *any* explanation as to why plaintiffs waited decades to bring their tort claims.

Moreover, *Twersky v. Yeshiva University* and *Zumpano v. Quinn* remain instructive here. 993 F. Supp. 2d 429 (S.D.N.Y. 2014); 6 N.Y.3d 666 (N.Y. 2006).  Like in *Twersky* and *Zumpano*, plaintiffs' complaint is similarly devoid of any allegations that *Miramax* made any specific misrepresentation or took any affirmative act directed at the individual plaintiffs to prevent them from timely filing their claims.  Recognizing this pleading defect, the opposition attempts to distinguish *Twersky* and *Zumpano* by making assertions that impermissibly lump all of the defendants together.  *See, e.g.*, Opp. at 52 ("Rather, the RICO Defendants hired lawyers and spies, pushed women into NDAs, blacklisted victims, and intimidated journalists and others who threatened to blow the whistle.").  Not only does the complaint fail to allege facts tying Miramax to this conduct, such generalizations still fail to satisfy equitable estoppel's particularity requirement, which mandates specific allegations that "specify the content of the misrepresentations that were made, the timing of the misrepresentations, how the plaintiffs reasonably relied on the misrepresentations, and how the plaintiffs exercised due diligence in bringing the current Complaint."  *Twersky*, 993 F. Supp. 2d at 446-47.  Simply stated and wholly contrary to plaintiffs' assertion, the facts alleged as to Miramax specifically do not even rise to the level of passive concealment.

Finally, plaintiffs' cited authorities are inapposite and do not support invoking the equitable estoppel doctrine here.  In *Zimmerman v. Poly Prep Country Day School*, the complaint alleged the defendant "engaged in an affirmative course of conduct during the period of limitations to deceive the plaintiffs into believing they had no claim against Poly Prep."  888 F. Supp. 2d 317, 340 (E.D.N.Y. 2012).  In contrast, plaintiffs here have not made a single allegation that *Miramax* took affirmative steps to deceive plaintiffs into believing they had no legal claims.  Further, *Twersky* expressly found *Zimmerman* "unpersuasive" because the complaint there did not allege any specific misrepresentations the defendants made to the plaintiffs.  993 F. Supp. 2d at 445 n.6.  Plaintiffs' reliance on *Saveria JFK, Inc. v. Flughafen Wien, AG* is similarly misplaced because the court there determined tolling was potentially applicable solely due to the plaintiff's reliance on false assurances by the defendant's agent. 2016 WL 11263673, at *9 (E.D.N.Y. May 3, 2016).  The court's reasoning was not based on the supposed hiring of others to spread defamatory statements, wiretapping of plaintiffs' phones, or spying on plaintiffs, as the opposition misleadingly suggests.  *Compare id. with* Opp. at 50.

The requisite "exceptional circumstances" simply do not exist here to warrant invoking the equitable estoppel doctrine to resurrect plaintiffs' untimely claims as to Miramax.

> **b.**      <u>**Duress Tolling Should Not Be Invoked Here**</u>.

Conceding duress tolling is only available if duress is an element of the cause of action asserted, plaintiffs only attempt to toll their intentional infliction of emotional distress ("IIED") and RICO claims.  Opp. at 54.  Duress tolling, however, is strictly applied and cannot save either claim.

Plaintiffs first contend duress played a role in their IIED claim, but then fail to point to a single allegation in the complaint that Miramax ever threatened plaintiffs Brock, Kendall, Klatt or Sagemiller in any way.  The opposition's generalized assertion that "Weinstein used

emotional and physical abuse and industry and economic power to command silence," Opp. at

55, plainly falls short of the requisite "threats or force" detailed in Miramax's motion and

supporting authority—which the opposition makes no attempt to at all refute.  Mot. at 12-13

(citing cases holding that threats of death, physical violence, and loss of employment were

insufficient).[4]  Even if plaintiffs had alleged Miramax made the requisite threats to establish legal

duress (they have not), the complaint would still fail to plead that each individual plaintiff was

under *continuous* legal duress during the entire period between the alleged assault and the filing

of the complaint in 2017.  Mot. at 13 n.12 (citing *Overall v. Estate of Klotz*, 52 F.3d 398, 406 (2d

Cir. 1995)).  The opposition's broad assertion that there "was a continuing effort dating back to

Miramax's inception to keep Class Members silent," Opp. at 56, does not establish that *each*

*individual plaintiff* was subjected to uninterrupted legal duress.  The absurdity of plaintiffs'

position is illustrated by their contention that Harvey Weinstein placing his hand on plaintiff

Brock's chair during a movie screening in 1998 caused her to remain under continuous legal

duress for the next 20 years.  Opp. at 56 & n.242.  This is simply not the law.  Because plaintiffs

have not cited a single case where a court tolled an IIED claim based on duress tolling, let alone

under the lacking circumstances alleged here, the Court should not invoke duress tolling to save

plaintiffs' unsupported IIED claim.

      Second, duress tolling does not apply to plaintiffs' RICO claims.  The Second Circuit

only applies duress tolling to RICO claims "when specific threats by the defendant are used to

prevent the plaintiff from commencing a lawsuit at an earlier time."  *Riverwoods Chappaqua*

*Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 347 (2d Cir. 1994).  Plaintiffs do not refute

---

[4]     Further, the opposition's contention that "[a]lmost every woman who has come forward has said that she did not do so sooner because she was afraid," Opp. at 55, is foreclosed by *Jastrzebski v. New York*—which plaintiffs do not refute—because fear that the defendant *might* cause the plaintiff harm is not sufficient for duress tolling. Mot. at 13 n.11 (citing *Jastrzebski*, 423 F. Supp. 669, 674 (S.D.N.Y. 1976)).

this, but fail to point to any specific threats *by Miramax* that prevented plaintiffs from filing this lawsuit within the applicable statute of limitations.  Instead, plaintiffs cite *Cullen v. Margiotta* (which pre-dates *Riverwoods*) for the proposition that duress tolling applies when duress is an element of the underlying RICO predicate act.  Opp. at 55 (citing *Cullen*, 811 F.2d 698, 722 (2d Cir. 1987)).  This is a clear misstatement of the law.  Tolling every claim simply because it has an element of duress would eviscerate the doctrine altogether.  *See Overall*, 52 F.3d at 405 ("Duress tolling is not triggered, however, simply because duress constitutes an element of the underlying tort.").  Moreover, whether duress constitutes an element of the claim is only step one of the analysis.  Under *Riverwoods*, plaintiffs must also plead "specific threats" made by *Miramax,* which they fail to do.[5]  The Court thus should also reject application of duress tolling to plaintiffs' RICO claims.[6]

### c.      <u>Equitable Tolling Should Not Be Invoked Here</u>.

Apparently realizing the continuing violation doctrine cannot apply to their claims, Opp. at 49 n.206, plaintiffs now pivot to a new tolling doctrine in their opposition (once again, not pled in the complaint)—equitable tolling due to fraudulent concealment.  But this tolling doctrine is equally inapplicable.  As an initial matter, equitable tolling does not apply to plaintiffs' state law claims because the doctrine can only be invoked "in cases where the plaintiff is ignorant of his cause of action." *Ellul*, 774 F.3d at 802.  Here, each of plaintiffs' state law claims for civil

---

[5]      Plaintiffs similarly fail to cite any authority holding that duress is an element of sex trafficking and witness tampering in the first instance.  Opp. at 55.

[6]      Plaintiffs' argument that "duress is presumed to be true at this stage" and that the Court must wait to address duress tolling at summary judgment or trial, Opp. at 54, 57, is once again wrong as a matter of law because courts routinely grant motions to dismiss where the plaintiff failed to plead sufficient facts to invoke duress tolling. *See, e.g.*, *Alston v. Stone*, 2005 WL 668395, at *4 n.16 (S.D.N.Y. Mar. 21, 2005); *Zoe G. v. Frederick F.G.*, 208 A.D.2d 675, 675 (2d Dep't 1994); *Trisci v. Trisci*, 251 A.D.2d 494, 494 (2d Dep't 1998).  Nor does *Cullen*, which involved an appeal of a judgment after jury trial, support plaintiffs' baseless argument.  There, the Second Circuit remanded the case to the district court to either summarily determine whether there were no genuine questions of material fact or to put the question to the jury.  *Cullen*, 811 F.2d at 724.

assault, battery, IIED, negligent infliction of emotional distress ("NIED"), and negligent supervision and retention is based on their alleged assaults. Plaintiffs cannot realistically contend that they were ignorant of such claims.

Moreover, plaintiffs have not met their heavy burden of establishing equitable tolling with respect to their RICO claims. Plaintiffs plainly have not met the Second Circuit's exacting standard that "it would have been *impossible* for a reasonably prudent person to learn about his or her cause of action." *Pearl v. City of Long Beach*, 296 F.3d 76, 85 (2d Cir. 2002) (emphasis in original); *see also Pietri v. N.Y.S. Office of Court Admin.*, 936 F. Supp. 2d 120 (E.D.N.Y. 2013) ("Equitable tolling is only appropriate in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights."). First, plaintiffs have not pled fraudulent concealment with the requisite particularity required by Rule 9(b).[7] The complaint does not allege any material facts that Miramax concealed—let alone that such purported concealment prevented plaintiffs from discovering their RICO claims within the statute of limitations period—or any facts showing how they were "'reasonably diligent' throughout the period to be tolled." *Koch v. Christie's Int'l PLC*, 785 F. Supp. 2d 105, 118 (S.D.N.Y. 2011) (granting motion to dismiss); *see also Simpson v. Putnam Cty. Nat. Bank of Carmel*, 20 F. Supp. 2d 630, 634 (S.D.N.Y. 1998) (granting motion to dismiss when "plaintiff has neither properly asserted his due diligence in uncovering his claim nor pled fraud with particularity"). The opposition instead points to the "secretive nature of the Black-Cubing campaign," and does so without tying this purported campaign in any way to Miramax. Opp. at 54. Indeed, plaintiffs admit that Black Cube was not retained until October 2016—more than a

---

[7]    To establish fraudulent concealment, plaintiffs must plead with particularity: (1) that Miramax wrongfully concealed material facts relating to its wrongdoing; (2) the concealment prevented plaintiffs' discovery of the nature of the claim within the statute of limitations period; and (3) plaintiffs exercised due diligence in pursuing the discovery of the claim. *See Koch*, 699 F.3d at 157. Plaintiffs do not dispute this. Opp. at 53-54.

decade after Miramax parted ways with Harvey Weinstein—and they do not allege any connection whatsoever to Miramax.  Compl. ¶¶ 148-167.  Plaintiffs thus have failed to satisfy their burden and the Court should not invoke equitable tolling.[8]

In sum, each asserted tolling doctrine fails as a matter of law and cannot resurrect plaintiffs' time-barred claims.  Plaintiffs' complaint therefore must be dismissed with prejudice on this basis alone.[9]

### C.    Plaintiffs' RICO Claims Fail As A Matter Of Law.

Plaintiffs' contention that Miramax is somehow liable for alleged racketeering activity spanning three decades is merely an attempt to recast their time-barred tort claims as RICO offenses.  Plaintiffs' manufactured RICO claims involve several fatal deficiencies warranting dismissal, including:  (1) lack of RICO standing; (2) failure to plead each of the required elements under section 1962(c); and (3) failure to plead a RICO conspiracy under section 1962(d).  Mot. at 14-24.  Plaintiffs' attempt to cure such deficiencies by misstating the law, citing inapposite authority, and pleading new "facts" in their opposition that appear nowhere in the complaint only further highlight the absurdity of their RICO claims.  Plaintiffs' RICO claims must be dismissed.  *See, e.g., Westchester Cty. Indep. Party v. Astorino*, 137 F. Supp. 3d 586,

---

[8]    The sole authority plaintiffs rely on to support their equitable tolling argument, *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*, is inapposite.  277 F. Supp. 3d 521 (S.D.N.Y. 2017).  *Sonterra* involved a conspiracy to conceal defendants' manipulation of the market from the public (including plaintiffs) such that plaintiffs were prevented from having notice of the existence of their claims.  *Id.* at 567, 583.  In contrast, here plaintiffs allege Black Cube was retained to "prevent the reporting or publication of the accusations" against Harvey Weinstein, with the purpose of concealing the sexual assaults from the public (not from plaintiffs who already knew of their assaults and injuries).  Further, unlike in *Sonterra*, the alleged "secretive nature" of the Black Cubing campaign in 2016 and 2017 (such as gathering intelligence on plaintiffs) did not conceal from plaintiffs the existence of their actual claims years earlier.  *See* section II.B.1, *supra*.

[9]    Plaintiffs' request for leave to amend should thus be denied.  Amendment cannot cure plaintiffs' time-barred claims, nor can it cure the remaining fatal defects discussed here and in Miramax's motion.  *See Eaves v. Designs for Fin., Inc*., 785 F. Supp. 2d 229, 268 (S.D.N.Y. 2011) ("Where the problem with a claim 'is substantive . . . better pleading will not cure it,' and 'repleading would thus be futile.'") (citation omitted).

599 (S.D.N.Y. 2015) (courts in this district "strive to flush out frivolous RICO allegations at an early stage of the litigation").

    1.      **Plaintiffs Lack Standing To Assert Their RICO Claims.**

        a.      **Plaintiffs Have Not Sustained A RICO Injury.**

Plaintiffs' asserted reputational damage is foreclosed by clear authority that an *individual's* reputational harm is not a cognizable RICO injury.  *See Mackin v. Auberger*, 59 F. Supp. 3d 528, 558 (W.D.N.Y. 2014) ("[T]he loss of Plaintiff's reputation and resulting inability to gain future employment are personal injuries and are not compensable under RICO."); *Kimm v. Chang Hoon Lee*, 196 F. App'x 14, 16 (2d Cir. 2006) (rejecting plaintiff's "generalized reputational harms" and dismissing his RICO claim for lack of standing); *Mack v. Parker Jewish Inst. for Health Care & Rehab.*, 2014 WL 5529746, at *6 (E.D.N.Y. Oct. 30, 2014) ("generalized reputational harms . . . are not a cognizable injury under RICO.").[10]  Without providing any authority, plaintiffs' attempt to circumvent this clear rule by conflating the injury and causation elements, asserting that "where the reputational damage is proximately caused by the RICO scheme, it is a RICO injury."  Opp. at 35.  This unsupported argument is illogical and would eviscerate the RICO-injury requirement altogether.  Yet plaintiffs double down on their flawed theory (again conflating the injury and causation elements) by improperly raising new assertions—*again not alleged in the complaint*—that the purpose of the alleged RICO scheme was to "blacklist victims and cause career damage," "injure the Plaintiffs' reputation to keep them from getting jobs," "target the Class Members' reputations and cause them to lose business," and "harm them in their professions," and that defendants took "affirmative steps to

---

[10]      The cases plaintiffs rely on in their opposition are inapposite.  Both *Securitron* and *Aramony* involve a *company's* business goodwill (not an individual's reputation).  Opp. at 35 n.146 (citing *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995); *Aramony v. United Way of Am.*, 969 F. Supp. 226 (S.D.N.Y 1997)).

blacklist [plaintiffs] and interfere with their careers." Opp. at 35-37; *Compare* Compl. ¶¶ 140-41, 195.[11] Plaintiffs cannot manufacture a RICO injury by making false assertions that are nowhere in their complaint. *Lombardo v. Dr. Seuss Enterprises, L.P.*, 2017 WL 1378413, at *4 (S.D.N.Y. Apr. 7, 2017) (Hellerstein, J.) ("Nor is it proper for plaintiffs to have asserted these new legal theories in their opposition brief.").

Moreover, plaintiffs' purported "loss of career" is simply too speculative and involves nothing more than an "expectation" of employment, which is not a RICO injury. *See Roitman v. N.Y.C. Transit Auth.*, 704 F. Supp. 346, 349 (E.D.N.Y. 1989) (granting motion to dismiss RICO claim because expectation of employment is not a cognizable property right); *see also Villoldo v. BNP Paribas S.A.*, 2015 WL 13145807, at *3 (S.D.N.Y. July 21, 2015) (Hellerstein, J.) ("[A] party does not have standing under RICO for injury to an expectancy interest."). Plaintiffs do not truly dispute the speculative nature of their alleged injury. Instead, they contend they should have the opportunity to discover evidence and use experts to prove the amount of their alleged injury. Opp. at 37-38 & n.159 (citing *Astech-Marmon, Inc. v. Lenoci*, 349 F. Supp. 2d 265 (D. Conn. 2004)). Yet, plaintiffs' authority in support of this contention is inapposite. Unlike in *Astech-Marmon*, where the plaintiff pled a specific lost contract that would have been awarded (a *non*-speculative loss for which the precise amount of the loss could not be ascertained at that time), plaintiffs here vaguely allege their careers in Hollywood were damaged, which is a speculative loss of nothing more than an expectancy interest.[12]

---

[11]    Plaintiffs' reliance on these new unpled "facts" in an attempt to distinguish Miramax's authority is therefore unavailing. Opp. at 36-37 & n.149. Plaintiffs also fundamentally misread *Mack v. Parker Jewish Inst. for Health Care & Rehab.*, which in no way held that reputational harm can constitute a cognizable RICO injury if the defendants took affirmative steps to harm the plaintiff's reputation (as plaintiffs erroneously contend). Opp. at 37.

[12]    In any event, plaintiffs' failure to identify a single job lost warrants dismissal. Like in *Apollon*—which the opposition does not refute, the Court should dismiss plaintiffs' RICO claim for failing to identify a single employment or contractual opportunity plaintiffs lost. Mot. at 16 (citing *Apollon Waterproofing & Restoration, Inc. v. Bergassi*, 87 F. App'x 757, 759-60 (2d Cir. 2004)).

Realizing they entirely failed to plead a cognizable RICO injury, plaintiffs advance a new purported RICO injury for the first time in their opposition—lost causes of action. Opp. at 37. Plaintiffs cannot simply recast the same injury (damage to their careers) as "lost" causes of action to create RICO standing.[13] Plaintiffs' argument is also nonsensical because plaintiffs have, in fact, asserted claims against defendants for such alleged harm, and they fail to identify any cause of action they were unable to assert due to defendants' conduct, let alone Miramax's. Further, plaintiffs have not cited a single case in the Second Circuit that held that a cause of action constitutes "property" under RICO. In fact, the Second Circuit "has made clear that a mere 'expectation' cannot constitute 'business or property' under RICO." *Villoldo v. BNP Paribas SA*, 648 F. App'x 53, 55 (2d Cir. 2016). Here, the mere hope of prevailing on a cause of action amounts to nothing more than an insufficient expectancy interest. Plaintiffs therefore have not sustained a RICO injury and their RICO claims must be dismissed.

      **b.**      **Plaintiffs' Alleged Injury Was Not Proximately Caused By The Alleged RICO Predicate Acts.**

Plaintiffs also lack standing because they have not pled the requisite causation. Plaintiffs do not dispute that they must show that their alleged harm was proximately caused by the asserted RICO predicate acts, Opp. at 35, but then fail to even address (or even dispute) any of Miramax's arguments and authority.[14] Instead, as set forth above, plaintiffs have concocted a

---

[13]      Plaintiffs' reliance on *Malley-Duff* is misplaced. Opp. at 37 & n.154. The Third Circuit has subsequently made clear that "although a cause of action indeed may be a form of property, injuries to that property will only be redressable under civil RICO if the plaintiff can allege that the wrong to be vindicated is itself an injury to 'business or property' within the meaning of RICO." *Magnum v. Archdiocese of Phila.*, 253 F. App'x 224, 228 (3d. Cir. 2007) (holding a lost opportunity to sue for personal injury from sexual abuse does not implicate injury to business or property and therefore cannot constitute a RICO injury). Here, any purported lost cause of action to sue for reputational harm and damage to plaintiffs' careers fails because, as discussed, the underlying harm is not a cognizable RICO injury. *See* section II.C.1.a, *supra*.

[14]      For example, plaintiffs' opposition completely ignores arguments concerning the allegations in the complaint that their purported career damage was "a result of *Weinstein's* conduct," Compl. ¶ 209 (emphasis added), and that it was Harvey Weinstein's alleged assault that *caused* injury to each plaintiff's "property or livelihood," *id.* at ¶¶ 12-16, 61, 83, 120. Mot. at 17. Thus, plaintiffs concede that their asserted harm was caused by Harvey

new theory that was not pled in the complaint—that the purported RICO scheme targeted plaintiffs' reputations.  Opp. at 35-37; *compare* Compl. ¶¶ 140-41, 195.  But this argument still fails.  To establish proximate cause, plaintiffs must plead facts establishing a "direct" relationship between the alleged RICO injury (reputational harm and resulting career damage) and *the asserted predicate acts* (sex trafficking, witness tampering, or mail and wire fraud).  Mot. at 16-17.  Plaintiffs have failed to do so and their RICO claim should be dismissed.  *See, e.g., Lawson v. Rubin,* 2018 WL 2012869, at *10 (E.D.N.Y. Apr. 29, 2018) (finding no RICO standing when alleged sex trafficking of models did not cause business injury); *Hollander v. Flash Dancers Topless Club*, 340 F. Supp. 2d 453, 462 (S.D.N.Y. 2004) (finding no RICO standing when alleged witness tampering was to prevent plaintiff from interfering with defendant's conduct, not to cause injury to plaintiff's business or property).

## 2. Plaintiffs' RICO Claim Under § 1962(c) Should Be Dismissed Because They Fail To Allege The Requisite Elements.

### a. Plaintiffs Fail To Allege A RICO Enterprise.

Plaintiffs' conclusory assertions that they "*plausibly* alleged that the Defendants were members of the Weinstein Sexual Enterprise and shared a common purpose" and "*plausibly* alleged relationships among those associated with the enterprise" demonstrates a basic misunderstanding of the law and wholly mischaracterizes the facts actually alleged in their complaint.  Opp. at 17, 18 (emphasis added).[15]

---

Weinstein's alleged assault, not the predicate acts.  *See Kao v. British Airways, PLC*, 2018 U.S. Dist. LEXIS 8969, at *12 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a motion to dismiss is deemed waiver of that issue.").

[15]      The plausibility standard under *Bell Atlantic Corp. v. Twombly* applies to the *claim* itself, not the underlying components.  550 U.S. 544, 558 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (a claim is facially plausible when complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged").

First, plaintiffs have not alleged a single fact regarding the purported enterprise's structure to establish that its members functioned as a continuing unit. *See New York v. United Parcel Serv., Inc.*, 2016 WL 4203547, at *3 (S.D.N.Y. Aug. 9, 2016) ("[P]laintiff must demonstrate the relationships between the various members and their roles in the purported RICO scheme.").[16] As set forth in Miramax's motion, plaintiffs' failure to allege any specific personal relationships between Miramax and the other purported enterprise members or how the participants coordinated their activities during any period of the alleged racketeering is fatal. Mot. at 18-19. In response, plaintiffs' opposition points to a purported relationship with TWC (ignoring the entire period from 1993 until August 2005 when TWC did not exist) based entirely on a list of movies in Exhibit A to their complaint, some of which they contend were "co-produced by both companies." Opp. at 18. Yet, nowhere does the complaint allege that any of these movies were co-produced by Miramax and TWC, and even if they were, legitimate business relationships do not constitute the interpersonal relationships necessary to establish a RICO enterprise. *See Abbott Labs. v. Adelphia Supply USA*, 2017 U.S. Dist. LEXIS 1007, at *15 (E.D.N.Y. Jan. 4, 2017) (granting motion to dismiss RICO claim because alleged business relationships did not establish "an interpersonal relationship in which [defendants] worked

---

[16]     Plaintiffs contend they are not required to allege any facts regarding the purported enterprise's structure, hierarchy and activities under *Boyle v. United States*, and argue that defendants' pre-2009 cases are no longer good law. Opp. at 15, 17. Although a RICO enterprise need not have a *formal* hierarchy after *Boyle*, the Supreme Court expressly held that an "association-in-fact enterprise must have a *structure*." *Boyle v. United States*, 556 U.S. 938, 945 (2009) (emphasis added). Moreover, even after *Boyle*, "courts in this Circuit look to the hierarchy, organization, and activities of the association to determine whether its members functioned as a unit." *Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017) (granting motion to dismiss when plaintiff failed to "provide the court with solid information regarding the hierarchy, organization and activities of an alleged association in fact enterprise."); *see also Johnson v. Nextel Commc'ns Inc.*, 2017 WL 4326052, at *9 n.12 (S.D.N.Y. Sept. 19, 2017) (no RICO enterprise when plaintiff failed to plead "the hierarchy, organization and activities of the alleged association in fact"); *Town of Mamakating, N.Y. v. Lamm*, 2015 WL 5311265, at *9 (S.D.N.Y. Sept. 11, 2015) ("The fatal flaw is plaintiffs' failure to explain the specific details of any hierarchy, organization, or unity among the various alleged conspirators in any non-conclusory way."), *aff'd sub nom.*, 651 F. App'x 51 (2d Cir. 2016); *101 McMurray, LLC v. Porter*, 2012 WL 997001, at *7 (S.D.N.Y. Mar. 26, 2012) ("Plaintiff has failed to provide any information from which the Court can fairly conclude that the members functioned as a unit, including facts regarding the hierarchy, organization, and activities of the alleged association-in-fact enterprise.").

together for a common *illicit interest*") (emphasis added); *Anctil v. Ally Fin., Inc.*, 998 F. Supp. 2d 127, 141 (S.D.N.Y. 2014) (dismissing RICO claim when plaintiff "merely allege[d] the roles each entity played in the legitimate mortgage industry, which is more accurately described as parallel activity among companies – not coordinated activity to jointly achieve a common fraudulent purpose); *In re GM LLC Ignition Switch Litig.*, 2016 U.S. Dist. LEXIS 92499, at *137 (S.D.N.Y. July 15, 2016) ("Plaintiffs' RICO claim fails because they do not allege a common purpose or organized conduct separate and apart from New GM's ordinary affairs.").  Plaintiffs therefore have not established Miramax was part of a RICO enterprise after 2005.

Nor can plaintiffs impose liability between 1993 and 2005 based on their allegation that "Miramax employed" the Weinsteins up until September 30, 2005, Compl. ¶ 220, because it is well-established that a company cannot violate the RICO statute by participating in an enterprise that is made up only of the corporation and its employees and agents because it fails RICO's distinctiveness requirement.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013). Plaintiffs thus have not pled Miramax had the requisite interpersonal relationships at *any* point during the alleged RICO enterprise.

Second, plaintiffs completely ignore the Second Circuit's requirement that a RICO common purpose must be *fraudulent* and the complaint must detail a "*course* of fraudulent or illegal conduct separate and distinct from the alleged predicate racketeering acts themselves." *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 174 (2d Cir. 2004) (emphasis in original).[17]  Plaintiffs' alleged common purpose—"to cover up Harvey Weinstein's pattern of

---

[17]     Plaintiffs' opposition incorrectly asserts that *Boyle v. United States* rejected the Second Circuit's fraudulent common purpose requirement.  Opp. at 27 n.103.  *Boyle* does not even mention *First Capital* or discuss what is required to plead a common purpose.  Moreover, courts within this Circuit continue to require a fraudulent common purpose to establish an association-in-fact enterprise.  *See, e.g.*, *Cruz*, 720 F.3d at 120 ("For an association of individuals to constitute an enterprise, the individuals must share a common purpose to engage in a particular fraudulent course of conduct and work together to achieve such purposes.").

sexual harassment" and "to silence victims," Opp. at 16, thus fails as a matter of law because it does not involve a course of fraudulent conduct separate from the alleged predicate acts (sex trafficking, witness tampering, and mail and wire fraud).[18]  Moreover, as set forth in Miramax's motion, the complaint fails to plead a single fact showing that Miramax shared this purported purpose, relying instead on impermissible group pleading.  Mot. at 19.  Plaintiffs' failure to refute this deficiency in their opposition—or plead a single allegation tying Miramax to the asserted purpose—warrants dismissal of plaintiffs' RICO claim.

Finally, despite relying on *Turkette* in their opposition, Opp. at 15, plaintiffs completely ignore *Turkette*'s requirement that the enterprise must be separate and distinct from the purported racketeering activity.  Mot. at 20 (citing *United States v. Turkette*, 452 U.S. 576, 583 (1981)).[19] Plaintiffs' opposition also fails to address their allegation that the "Weinstein Sexual Enterprise was created and used as a tool to effectuate Defendants' pattern of racketeering activity," Compl. ¶ 194—thus again admitting their failure to plead a distinct RICO enterprise.

### b.   Plaintiffs Have Not Adequately Alleged That Miramax Directed The Enterprise's Affairs.

The Supreme Court has held that *each* defendant must have some part in "directing the enterprise's affairs" and that participation in an alleged enterprise alone is insufficient.  Mot. at 20 (citing *Reves v. Ernst & Young*, 507 U.S. 170, 179, 185 (1993)).  As set forth in Miramax's

---

[18]     Plaintiffs' opposition asserts two additional common purposes not alleged in the complaint:  "to produce and promote movies and entertainment" and "to procure woman for Weinstein's assaults."  *Compare* Opp. at 16 *with* Compl. ¶¶ 140-141, 195.  Even if they had been pled (and they were not), neither satisfies *First Capital*'s fraudulent common purpose requirement.

[19]     To the extent plaintiffs contend that *Boyle* overruled *Turkette* on this point, *see* Opp. at 27 n.103, they are incorrect.  Courts within this Circuit routinely dismiss RICO claims when the alleged enterprise would not exist if the "predicate acts [were] removed from the equation."  *Mackin*, 59 F. Supp. 3d at 544 (granting motion to dismiss); *see also 101 McMurray*, 2012 WL 997001, at *7 (granting motion to dismiss because plaintiff's failure to allege an enterprise separate and distinct from the racketeering activity was fatal to plaintiff's RICO claim); *Town of Mamakating, N.Y.*, 2015 WL 5311265, at *6, *aff'd sub nom.*, 651 F. App'x 51 (2d Cir. 2016) (granting motion to dismiss because "the enterprise must have some existence beyond the commission of the individual racketeering violations alone").

motion, plaintiffs' conclusory allegations that defendants *collectively* "conducted or participated in the affairs of the Weinstein Sexual Enterprise," and "exerted control" are not sufficient.  Mot. at 20 (citing Compl. ¶¶ 196, 198).  In response, plaintiffs argue that Miramax was a "vital actor that enabled the scheme" and make unfounded assertions that are not alleged in the complaint (or alleged against Miramax), and most importantly, have nothing to do with *directing* the affairs of the purported enterprise.  Opp. at 19-20.

First, plaintiffs' argument that Miramax "*facilitat[ed]* Harvey's conduct through Miramax employees who lured victims to Harvey's hotel rooms" and by allowing hotel rooms to be used for Miramax meetings "knowing that victims were to be lured there for the purpose of sexual assault" is legally insufficient.  Opp. at 19-20 (emphasis added).  As an initial matter, there are *no* factual allegations in the complaint claiming that Miramax "lured" women for the purpose of sexual assault or had knowledge that hotel rooms were used for such a purpose.  None.  Moreover, even if such facilitation had been pled (and it was not), it—at most—amounts to mere assistance, which does not constitute management of the enterprise's affairs under *Reves*.  Mot. at 21 (collecting cases).[20]  Further, plaintiffs' reliance on purported actions that occurred before Miramax parted ways with Harvey Weinstein is misplaced.  *See, e.g.*, Compl. ¶¶ 44, 51, 72-74, 86, 115, 124-25.  Because a RICO enterprise cannot consist merely of a corporation associated with its own employees, Miramax could not have possibly directed the affairs of a RICO enterprise that did not exist as a matter of law.  *See* Section II.C.2.a, *supra*.

---

[20]    The cases plaintiffs rely on are inapposite because the defendants in those cases did more than merely schedule meetings and allow hotel rooms to be used for meetings.  *See Republic of Colom. v. Diego N. Am. Inc.*, 531 F. Supp. 2d 365 (E.D.N.Y. 2007) (complaint alleged facts showing defendants were at "the top of the enterprise's hierarchy," including facts that defendants controlled all financial transactions, illegally manipulated and controlled prices at all levels of the distribution chain, determined the methods and means of payments, and sent employees to oversee the money laundering in foreign nations); *De Sole v. Knoedler Gallery, LLC*, 137 F. Supp. 3d 387 (S.D.N.Y. 2015) (complaint alleged specific facts showing defendant had clear knowledge of the fraudulent scheme, directed all finances related to the fraud, incentivized another member to continue fraudulent activities, took ill-gotten gains from the fraud, and directed that reports of fraud not be publicized).

Second, plaintiffs' argument that Miramax "cover[ed] up Harvey's conduct" by hiding alleged assaults, dissuading women from reporting alleged assaults, and persuading women to enter into confidential settlements similarly fails.  Opp. at 19.  None of the allegations plaintiffs cite actually support such assertions.  *Id.* (citing Compl. ¶¶ 137, 169).  And such assertions have nothing to do with Miramax directing the enterprise's affairs.

Third, plaintiffs claim that Miramax "engag[ed] in retribution," including "blacklisting victims, spying on them, smearing them in the press, otherwise sabotaging them in their profession, and sabotaging their legal claims," without pointing to any factual allegations that actually support such assertions—in the complaint or otherwise (there are none).  *Id.* at 20 (citing Compl. ¶¶ 171-72, 174, 177).  Indeed, the sole allegation in the complaint purporting to establish Miramax's role in the supposed enterprise alleges only that Miramax allowed Harvey Weinstein to conduct business at his office and concealed his misconduct, Compl. ¶ 143, and in no way supports the opposition's new baseless assertions.  Nor do such assertions demonstrate that Miramax directed the enterprise's affairs.

Tacitly conceding their allegations are deficient, plaintiffs now claim they should be entitled to take discovery to determine whether Miramax operated or managed the enterprise.  Opp. at 19 & n.69.[21]  Discovery is unwarranted, however, as a motion to dismiss is properly granted when a complaint fails to allege facts showing that each defendant directed the affairs of the RICO enterprise.  *See, e.g.*, *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 403 (S.D.N.Y. 2000)

---

[21]     The cases plaintiffs rely on for this assertion are inapposite because each actually contains detailed allegations regarding each defendant's alleged role in the RICO enterprise.  *See Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 225 (E.D.N.Y. 2014) (finding plaintiff alleged that each defendant did more than merely provide services because they not only permitted "others to use their names on [independent medical examination] and peer review reports" but also falsely testified in support of those reports); *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, 2005 U.S. Dist. LEXIS 29666, at *21-22 (E.D.N.Y. Feb. 22, 2005) (finding plaintiff's allegations established that defendants were "key participants" who provided misleading prescriptions that facilitated the fraud, "not that they were merely used for their 'services' by, or were merely acting at the direction of, the RICO enterprise").  Here, the complaint lacks any similar detailed allegations concerning Miramax.

(granting motion to dismiss when plaintiff failed to allege facts showing defendants "were

leaders, managers, or directors of the SAC enterprise" and holding that "the mere fact that a

defendant may have *aided* in the alleged scheme to defraud, *even if that aid was intentional*, does

not give rise to liability under § 1962(c)") (emphasis in original); *Abbott Labs*, 2017 U.S. Dist.

LEXIS 1007, at *25 (granting motion to dismiss when complaint "alleges no facts from which

the Court could reasonably infer that [defendants] operated or managed the alleged enterprise"

rather than conducting their own affairs); *Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297,

307-08 (S.D.N.Y. 2010) (granting motion to dismiss as to certain defendants when complaint

only alleged they provided services).  Without the required alleged facts showing that Miramax

*directed* the purported enterprise, dismissal is likewise compelled here.

> **c.**    **Plaintiffs Have Not Alleged Miramax Committed A Single RICO Predicate Act, Let Alone The Required Pattern Of Racketeering.**

> **(1)**    **Plaintiffs Have Not Pled Mail Or Wire Fraud.**

Plaintiffs acknowledge they are required to plead mail or wire fraud with the particularity

required by Rule 9(b), but contend that this Court should relax this standard, as "the particularity

requirement is not a mechanical formula demanding exact precision but must instead be applied

in view of its express purposes and the facts of each case." Opp. at 27.  While some courts have

indicated that plaintiffs are not required to plead the dates, times, and places of the fraudulent

actions with absolute precision, plaintiffs' own authorities confirm that Rule 9(b) still requires

their complaint to give fair and reasonable notice to the defendants of the claim, which includes

providing some measure of precision and substantiation of their fraud allegations.  Opp. at 29.

Indeed, a complaint must adduce specific facts supporting a strong inference of fraud or it will

not satisfy even a relaxed pleading standard.  *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172,

173 (2d Cir. 1990) ("conclusory" allegations "unsupported by the amended complaint" did not

support inference of fraud sufficient for Rule 9(b)).  Plaintiffs' allegations simply do not meet the

9(b) standard—relaxed or otherwise.[22]

Plaintiffs' complaint only alleges threadbare recitations that impermissibly group all

defendants together and includes a single passing reference to purported "[w]ires among the

Complicit Producers about Weinstein's sexual misconduct."  Mot. at 22 (citing Compl. ¶¶ 201-

205).  In an attempt to bolster this woefully deficient allegation, the opposition (once again)

improperly asserts new "facts" that were never alleged in the complaint.  Opp. at 27-28.  For

example, *nowhere* in the complaint do plaintiffs allege that:

- Miramax employees used mails and wires to speak with plaintiff Brock's agent to set up the private screening, rented and paid for the screening, or that Miramax's accounting department was involved in any way;

- Miramax employees used mails and wires to schedule and pay for the private plane on which plaintiff Sagemiller flew;

- Miramax used mails and wires to remove women from projects or dissuade other people from hiring them; or

- Miramax used mails and wires to discuss sexual assault complaints or to negotiate nondisclosure agreements.

Yet, plaintiffs now make such claims—and tellingly even try to bolster their legitimacy with

citations to unrelated or nonexistent authority.  Opp. at 27-28 & n.107-109.  Plaintiffs cannot

avoid dismissal by pleading new "facts" in their opposition.  *Wright*, 152 F.3d at 178.

Accordingly, plaintiffs' mail and wire fraud predicate act fails because the complaint does not

allege *any* statement by Miramax that was supposedly false, who made the statement, where the

statement was made and when, why the statement was fraudulent, that it was made with an intent

---

[22]     Plaintiffs fundamentally misread *Rotella*, which discussed RICO accrual in the context of statute of limitations and said nothing regarding Rule 9(b)'s requirements to establish mail and wire fraud predicate acts.  *See Rotella*, 528 U.S. at 560.

to defraud plaintiffs, or that plaintiffs detrimentally relied on the statement. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 495 (S.D.N.Y. 2009) (granting motion to dismiss when complaint failed to state with particularity each defendant's involvement and "information concerning where, when and by which defendant any representations involved in the fraudulent scheme constituting deception of Plaintiffs were communicated by use of the mail and/or wires, and how such statements actually deceived Plaintiffs").[23]

### (2)      Plaintiffs Have Not Pled Sex Trafficking.

Plaintiffs' passing reference to 18 U.S.C. sections 1590 and 1591 in their complaint, Compl. ¶ 196, is plainly not sufficient to plead sex trafficking.  The opposition attempts to cure this deficiency by referencing two examples of purported sex trafficking under these sections: (1) in 1998, plaintiff Brock rode in a car with Harvey Weinstein and two other Miramax employees to a hotel in Cannes, France, and all four individuals subsequently went up to Mr. Weinstein's hotel room, Compl. ¶ 74; and (2) in 2000, Harvey Weinstein's assistant scheduled a meeting with plaintiff Sagemiller in Mr. Weinstein's hotel room to discuss the script for a movie she was filming, *id.* at ¶ 86.  Opp. at 30.  Not only do these examples fall short of establishing the statutory requirements for sex trafficking, *see* 18 U.S.C. sections 1590 and 1591, RICO predicate acts cannot apply retroactively.  And these alleged incidents occurred before these statutes were added to the list of actionable racketeering activity in 2003.  As such, they cannot form the basis for plaintiffs' RICO claims.  Mot. at 23 (citing Pub. L. No. 108-193; *Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 624-25 (6th Cir. 2001)).  Even under plaintiffs' reading of

---

[23]      Even if such allegations had been properly pled, plaintiffs' mail and wire fraud would still fail as a matter of law because the object of the purported mail and wire fraud was not money or property "in the victim's hands." *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 321 (S.D.N.Y. 2014); *see also Cleveland v. United States*, 531 U.S. 12, 15 (2000) ("[F]or purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim.").  Here, plaintiffs allege the object of the scheme to defraud was to "deceive the public about Weinstein's sexual activities," Compl. ¶ 205, not to obtain plaintiffs' money or property.

*Snowden* (which Miramax disputes), plaintiffs concede they must allege at least one act of sex trafficking *after* the 2003 amendment.  Opp. at 31.[24]  Because plaintiffs have not plead *any* acts of sex trafficking with respect to Miramax after 2003, they cannot rely on this predicate act to establish a pattern of racketeering.

**(3)**      **Plaintiffs Have Not Pled Witness Tampering.**

The examples asserted in plaintiffs' opposition do not constitute witness tampering—*e.g.*, Harvey Weinstein placing his hand on plaintiff Brock's chair at a movie screening in 1998; Harvey Weinstein's purported statement to plaintiff Sagemiller on his private plane in 2000 that he always gets what he wants; and Harvey Weinstein directing plaintiff Klatt to exit his office through a side door that led into a dark stairwell.  Opp. at 33.  Despite the opposition's characterization that such actions "intimidated [plaintiffs] into silence" and "prevented [plaintiff Klatt] from going to the authorities," *id.*, there are no such allegations in the complaint.  As such, the Court should dismiss plaintiffs' RICO claims because they have failed to allege "any official proceeding was pending at the time" the alleged conduct occurred, or that Miramax "hindered, delayed, or prevented the communication of information to any law enforcement official or federal judge relating to any federal offense."  *Miller v. Carpinello*, 2007 WL 4207282, at *7 (S.D.N.Y. Nov. 20, 2007).

In sum, because plaintiffs fail to plead a single RICO predicate act, they cannot establish a pattern of racketeering activity, and plaintiffs' RICO claim must be dismissed.

---

[24]      Contrary to plaintiffs' assertion, the defendants in *United States v. Campanale* were convicted for the acts (plural) taken *after* RICO's effective date, not the acts committed prior.  Opp. at 31 & n.125 (citing *Campanale*, 518 F.2d 352, 365 (9th Cir. 1975)).  Further, the 1969 legislative history plaintiffs cite concerns the retroactivity of RICO itself, which became effective in 1970, not the retroactive application of *amendments* to RICO, and offers no support for plaintiffs' suggestion that acts under sections 1590 and 1591 that occurred prior to 2003 can establish a pattern of racketeering activity.  *Id.* at n.124.

### 3. Plaintiffs' RICO Conspiracy Claim Fails As A Matter Of Law.

Plaintiffs dedicate one paragraph of their 78 page opposition to their RICO conspiracy claim. This is not surprising, as this claim is doomed given plaintiffs' concession that they must plead that *each* defendant *agreed* to commit two predicate acts in furtherance of the RICO enterprise, Opp. at 39, and their utter failure to plead that Miramax "agreed with at least one other entity to commit a substantive RICO offense." *Crawford v. Franklin Credit Mgmt.*, 758 F.3d 473, 487 (2d Cir. 2014); *see also* Mot. at 23-24. First, there could not have been the requisite meeting of the minds prior to September 30, 2005, because the complaint's allegations only involve Harvey Weinstein and other Miramax employees during this period. *See Boneta v. Rolex Watch USA, Inc.*, 232 F. Supp. 3d 354, 359 (S.D.N.Y. 2017) (granting motion to dismiss RICO conspiracy claim because a "corporation cannot conspire with itself or with its own employees or agents"). Second, the complaint contains no specific facts whatsoever to show that Miramax knowingly *agreed* to participate in any RICO conspiracy with the Weinsteins, TWC, or any other purported member of the alleged enterprise after Harvey Weinstein left Miramax. *Compare* Compl. ¶¶ 215-216 *with Nasik Breeding & Research Farm Ltd. v. Merck & Co.*, 165 F. Supp. 2d 514, 541 (S.D.N.Y. 2001) (dismissing RICO conspiracy claim where the complaint was "devoid of factual assertions concerning the existence and nature of an agreement"). The Court therefore must also dismiss plaintiffs' RICO conspiracy claim.

### 4. Joint And Several Liability Cannot Save Plaintiffs' Defective RICO Claims.

Plaintiffs' contention that Miramax is jointly and severally liable for purported RICO violations occurring after it parted ways with Harvey Weinstein in 2005 is absurd. Opp. at 23. Joint and several liability applies only to defendants who *actually jointly participated in a specific RICO violation*. *See Allstate Insurance Co. v. Yehudian*, 2018 U.S. Dist. LEXIS 27129,

at \*59 (E.D.N.Y. Feb. 15, 2018) (defendants are jointly and severally liable when each "contributed" to "a single injury"); *see also Allstate Ins. Co. v. Nazarov*, 2015 WL 5774459, at \*18 (E.D.N.Y. Sept. 30, 2015) (imposing joint and several liability when "defendants acted jointly and/or concurrently to produce a single injury," but *declining* to impose such liability for acts not undertaken jointly).  As such, plaintiffs Geiss and Thomas (representatives of the purported "TWC Subclass") who met with Harvey Weinstein in 2008 while he was working for TWC (not Miramax) cannot bring valid RICO claims against Miramax because the complaint fails to plead a single fact with respect to how Miramax participated in a RICO violation "jointly" with any other defendant after Harvey Weinstein's departure in 2005.  Opp. at 9, 23.

Necessarily, admitting the complaint fails to adequately plead any involvement by Miramax post-2005, plaintiffs resort to arguing (without any authority) that "the extent of Miramax's liability for the RICO claims cannot be certain" until discovery is complete because "it is a question of fact whether Miramax is responsible for acts that occurred after Weinstein left for TWC."  Opp. at 23-24.[25]  Not so.  Plaintiffs are required to allege facts *in the complaint* establishing each of the elements of RICO, including that *Miramax* committed a pattern of racketeering activity.  Plaintiffs' illogical argument would do away with Rule 8 notice pleading altogether.  *See Twombly*, 550 U.S. at 558 ("[A] district court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed.").

**D.**    **Plaintiffs' State Law Claims Fail As A Matter Of Law.**

**1.**    **Plaintiffs' Claims Based On *Respondeat Superior* Each Fail.**

Plaintiffs' state law claims for civil battery, assault, IIED, and NIED each fail because

---

[25]    Plaintiffs' reliance on two conspiracy cases that have nothing to do with RICO is unavailing.  Opp. at 23 & n.88-89.

"sexual misconduct cannot give rise to vicarious liability" as a matter of law.  *Doe v. City of New York*, 2013 WL 796014, at *4 (S.D.N.Y. Mar. 4, 2013); *see also* Mot. at 24-25.[26]  Plaintiffs completely ignore the clear controlling authority in Miramax's motion and instead incorrectly argue that "vicarious liability can be imposed for intentional torts that are reasonably foreseeable and a natural incident of employment"—notably without citing a single case involving sexual assault to support this baseless assertion.  Opp. at 46.

Instead, plaintiffs cite two inapposite cases in support of their so-called "exception." Opp. at 45-46 & n.191-193.  First, plaintiffs rely on *Ramos v. Jake Realty Co.*, which reversed summary judgment, finding it was reasonable to infer that the superintendent's physical violence to stop a tenant from videotaping an inspection of the building's fire escape was committed in furtherance of the employer's interest to prevent the tenant from collecting evidence to support an ongoing rent strike.  21 A.D.3d 744, 746 (1st Dep't 2005).  As such, *Ramos* has nothing to do with vicarious liability for an alleged sexual assault.  This distinction is key because courts consistently hold that sexual misconduct "arise[s] from personal motives and do[es] not further an employer's business, even when committed within the employment context."  Mot. at 25 (citing *Ross v. Mitsui Fudosan, Inc.*, 2 F. Supp. 2d 522, 531 (S.D.N.Y. 1998)).  Moreover, unlike in *Ramos*, where there was "no evidence that the superintendent had any personal motivation for the assault," 21 A.D.3d at 746, plaintiffs here concede the alleged sexual conduct was committed for Harvey Weinstein's personal motives.  Mot. at 25 (citing Compl. at p. 12, Heading IV.B.). Second, plaintiffs' reliance on *Riviello v. Waldron* is equally misplaced.  At issue in *Riviello* was whether a tavern could be vicariously liable for its employee's negligent act of accidentally

---

[26]     Plaintiffs' NIED claim fails for the additional reason that Miramax did not owe a specific special duty to plaintiffs, Mot. at 24 & n.18, which the opposition does not refute.

striking a patron's eye with a knife; it has nothing to do with whether sexual misconduct falls outside the scope of employment. 391 N.E.2d 1278, 1282 (N.Y. 1979). All of the cases cited in Miramax's motion—decided well after *Riviello*—uniformly hold that the doctrine of *respondeat superior* does not apply to an employee's sexual assault. Mot. at 24-25. Plaintiffs should not be permitted to fabricate a new "exception" to save their claims.[27]

Plaintiffs' claims based on vicarious liability thus fail and must be dismissed.[28]

## 2.   <u>Plaintiffs' Negligent Supervision And Retention Claim Fails</u>.

Plaintiffs' complete failure to allege "a single prior act or allegation of sexual misconduct" that put Miramax on notice of Harvey Weinstein's alleged propensity to engage in sexual assault *before* plaintiffs' alleged incidents mandates dismissal. Mot. at 26 (citing *Alsaud*, 12 F. Supp. 3d at 680). As demonstrated in Miramax's motion, the complaint's conclusory allegations regarding Miramax's purported "knowledge" are legally insufficient. *Id.* (citing Compl. ¶¶ 135-136, 222). In response, the opposition solely argues that "Miramax knew of Weinstein's behavior dating to at least the 1990s, given that Weinstein used Miramax's offices, funds and personnel to assault women"—with supposed supporting citations to the complaint, which in actuality fail to reference a single actually pled allegation supporting that Miramax had

---

[27]    Plaintiffs' argument that Harvey Weinstein's conduct was "reasonably foreseeable," Opp. at 45, is also foreclosed by *Doe v. Alsaud*, which granted the employer's motion to dismiss and concluded that even if the employer had direct knowledge of the employee's prior sexual misconduct, it still would not give rise to *respondeat superior* liability when the misconduct was not part of any actual responsibility the employee owed to the employer. 12 F. Supp. 3d 674, 678 (S.D.N.Y. 2014). Plaintiffs' attempt to distinguish *Alsaud* is nonsensical, as it is particularly analogous, as—like here—it involves allegations about luring women. In *Alsaud,* part of the employees duties included luring women for the benefit of the defendant, but the court rejected holding an employer liable for sexual assault because it was outside of the employee's scope of employment. 12 F. Supp. 3d at 676.

[28]    Contrary to plaintiffs' claim that "whether conduct is 'an incident of employment'" is a question of fact, Opp. at 46 & n.195, courts uniformly grant motions to dismiss because sexual misconduct cannot give rise to vicarious liability as a matter of law. *See, e.g., Alsaud*, 12 F. Supp. 3d 674 (granting motion to dismiss and rejecting plaintiff's argument that whether employee's sexual misconduct was within the scope of his employment is a question for the jury); *Ross*, 2 F. Supp. 2d 522 (granting motion to dismiss in part); *Woods v. CVS*, 2013 WL 1736587, (S.D.N.Y. April 19, 2013) (granting motion to dismiss); *City of New York*, 2013 WL 796014 (granting motion to dismiss).

knowledge of any specific prior *sexual assault*.  *Compare* Opp. at 43 & n.179 *with Alsaud*, 12 F.

Supp. 3d at 681 (holding prior misconduct "must be of the same kind that caused the injury;

general, unrelated or lesser allegations of prior wrongdoing are insufficient").[29]  Plaintiffs thus

fail to establish the requisite prior knowledge.

Plaintiffs' claim fails for the additional reason that the alleged torts were not "committed

on the employer's premises or with the employer's chattels."  *Ehrens v. Lutheran Church*, 385

F.3d 232, 235 (2d Cir. 2004).  Plaintiffs' belated attempts to cure this pleading deficiency all fail.

First, plaintiffs' argument that the alleged torts occurred in Miramax's "offices and company-

funded hotel rooms," Opp. at 44, is contrary to the allegations in the complaint:  plaintiff Kendall

alleges the assault occurred in Harvey Weinstein's apartment, Compl. ¶ 12, plaintiffs Brock and

Sagemiller allege the assaults occurred in Harvey Weinstein's hotel room (but do not allege that

they were "company-funded"), *id.* ¶¶ 13, 15, and plaintiff Klatt alleges the assault took place in

Harvey Weinstein's "private office on another floor" of a building where a Miramax office was

located, *id.* ¶ 115.  Courts have dismissed negligent supervision and retention claims with similar

allegations.  *See, e.g.*, *Naughright v. Robbins*, 2014 U.S. Dist. LEXIS 148497, at *19 (S.D.N.Y.

Oct. 17, 2014) (tortfeasor's home apartment); *Alsaud*, 12 F. Supp. 3d at 681, 684 (hotel where

employee engaged in business).

Second, plaintiffs' claim that the torts were committed with Miramax's chattels because

"employees" set up meetings that involved "company-funded cars and planes" is contrary to law.

Opp. at 44.  Plaintiffs cite no authority for the contention that an employer's personnel

---

[29]     To the extent plaintiffs argue that certain Miramax employees were aware of Harvey Weinstein's behavior, this is legally insufficient to impute knowledge to the company.  *See Khapesi v. City of New York*, 2014 U.S. Dist. LEXIS 79623, at *22-29, 34-35 (S.D.N.Y. June 10, 2014) (dismissing negligent supervision claim arising out of alleged sexual abuse of a prison inmate notwithstanding allegations that other employees knew of or suspected misconduct).

Case 1:17-cv-09554-AKH   Document 119   Filed 06/29/18   Page 39 of 41

constitutes "chattels"—which refers to personal property and physical objects (not people).  *See Doe ex re. Doe v. Federal Exp. Corp.*, 571 F. Supp. 2d 330, 333 (D. Conn. 2008).  Nor are allegations that plaintiff Brock rode in a car to Harvey Weinstein's hotel in Cannes, France or that plaintiff Sagemiller traveled on Harvey Weinstein's private plane sufficient because the relationship between plaintiffs' alleged sexual assaults and such transportation is attenuated at best.  *Id.* (employer is liable "from an employee's use of its chattel only where that use is directly involved in the harm or injury to the plaintiff").

Accordingly, plaintiffs' claim for negligent supervision and retention must be dismissed.

### 3. <u>Plaintiffs' Claim For Ratification Fails</u>.

Plaintiffs' opposition also ignores the requisite elements for a well-pleaded ratification claim and the deficiencies raised by Miramax's motion. Mot. at 28.  Plaintiffs offer no serious rebuttal to Miramax's argument that plaintiffs have not pled the requisite element that Harvey Weinstein committed the alleged wrongful acts *on Miramax's behalf*.  *Id.* (citing *Holm v. C.M.P. Sheet Metal, Inc.*, 89 A.D.2d 229, 232 (N.Y. App. Div. 1982) ("The law is clear that only an act done on another's behalf may be ratified."); *see also Precedo Capital Grp. Inc.*, 33 F. Supp. 3d at 257-58 (granting motion to dismiss when conduct did not give rise to plausible inference that agent was acting for alleged ratifier)).  Plaintiffs' only response to this deficiency—namely that unspecified "Defendants" gained "money, power and prestige" by allowing Harvey Weinstein to "bully and assault Hollywood"—demonstrates a plain misunderstanding of ratification.  Opp. at 42.  The question is not whether Miramax benefitted from the acts allegedly ratified, but rather whether the underlying torts were committed *on its behalf*.  There is simply no basis to conclude that Harvey Weinstein was somehow acting on Miramax's behalf when he committed the alleged sexual assaults (in fact plaintiffs concede such conduct was for his personal gratification), nor do plaintiffs refute this argument or Miramax's cited authority in their opposition.

Plaintiffs' attempt to save their ratification claim by asserting that "[u]nder the doctrine of ratification, a defendant who deliberately allows illegal conduct to continue when he can stop it is liable for ratifying the conduct."  Opp. at 40.  This is not the law.[30]  Ratification requires that Miramax had full knowledge of the material facts of Harvey Weinstein's alleged misconduct *with plaintiffs*.  *See A. Terzi Prods. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998) (ratification requires "full knowledge [of] . . . the *specific acts* in question") (emphasis added); *Robbins v. Tucker Anthony Inc.*, 233 A.D.2d 854, 855 (N.Y. App. Div. 1996) ("It is well established that a principal cannot be deemed to have ratified the acts of his agent absent knowledge *of those acts* and an intent to ratify") (emphasis added).  Plaintiffs have not pled this knowledge.  The opposition's list of supposed allegations of *general* "knowledge" of unnamed Miramax employees (allegations that once again are not even alleged in the complaint), Opp. at 41, does not establish that Miramax ratified *each individual plaintiff's alleged assault*. The complaint never once alleges facts that Miramax knew the individual plaintiffs were assaulted or covered up their assaults after-the-fact.  Further, contrary to plaintiffs' claim, *Rivera v. Puerto Rican Home Attendants Servs.*, 930 F. Supp. 124 (S.D.N.Y. 1996), is not "instructive." While the *Rivera* plaintiffs' complaints were circulated internally and contain allegations that employees in the office observed the harassment, *id.* at 133 n.9, here, plaintiffs' complaint contains no such allegations that Miramax ever received any complaints, internal or otherwise, about Harvey Weinstein's sexual misconduct (let alone with respect to the individual plaintiffs), or that Miramax observed such misconduct.

This Court therefore should also dismiss plaintiffs' ratification claim against Miramax.

---

[30]     Plaintiffs' sole authority for this contention, *Tarango Trucking v. City of Contra Costa*, addresses an intentional discrimination claim—where intention to violate the Equal Protection Clause can be found through deliberate indifference to known existing discrimination—and not whether an employer ratified an employee's specific acts of sexual misconduct. 181 F. Supp. 2d 1017, 1032 (N.D. Cal. 2001).  Plaintiffs' reliance is unfounded.

III.     <u>**CONCLUSION**</u>.

For the foregoing reasons, and those in Miramax's motion to dismiss, Miramax

respectfully requests that the Court dismiss plaintiffs' complaint against Miramax and Miramax

Does 1-10 with prejudice.

Respectfully Submitted,

Dated:  June 29, 2018                          LATHAM & WATKINS LLP
        Los Angeles, California

By:   <u>/s/ Marvin S. Putnam</u>
      Marvin S. Putnam
      Laura R. Washington (admitted *pro hac vice*)
      10250 Constellation Blvd., Suite 1100
      Los Angeles, CA 90067
      Telephone: (424) 653-5588

      *Attorneys for defendant*
      *Miramax Film NY, LLC*