UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE KLATT, KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX FILM NY LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., BUENA VISTA INTERNATIONAL, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive, <br><br> Defendants. | No. 1:17-cv-09554 <br><br><br><br><br><br><br><br><br><br><br> Hon. Alvin K. Hellerstein |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO EXTEND
PROTECTIVE ORDER TO ABSENT CLASS MEMBERS**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................2

    A. The Bankruptcy Court deferred management of the use and discovery of putative class members' email communications with Harvey Weinstein to this Court..........................................................................................................2

    B. Harvey Weinstein's team has made clear that they intend to dump putative class members' emails in the press without notice or the opportunity to review by class counsel or the unnamed victims. .....................................................3

III. ARGUMENT..........................................................................................................5

    A. As sex assault victims, absent class members are entitled to additional privacy protections under federal law......................................................................5

    B. The fact that Weinstein has conducted discovery on absent class members through the Bankruptcy Court does not strip them of customary federal court protections..................................................................................................7

    C. Unnamed class members are entitled to additional protections under federal law...........................................................................................................9

        1. Absent class members are generally entitled to heightened protections during discovery, making a protective order appropriate. ..............................................................................................9

        2. Weinstein has not made the requisite showing that his interest in public disclosure of absent class members' communications outweighs their privacy rights...................................................10

IV. CONCLUSION....................................................................................................11

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Bennett Funding Grp., Inc.*,
   203 B.R. 24 (Bankr. N.D.N.Y. 1996) ........................................................................................8

*In re Blinder, Robinson & Co.*,
   127 B.R. 267 (D. Colo. 1991), *aff'd on other grounds sub nom. Secs. Inv. Protection Corp. v. Blinder, Robinson & Co.*, 962 F.2d 960 (10th Cir. 1992) ..........................8

*Casilla v. N.Y. State DOL*,
   No. 04 Civ. 6694 (NRB), 2005 U.S. Dist. LEXIS 35047 (S.D.N.Y. Dec. 21, 2005) .........................................................................................................................................8

*Doe v. City of San Diego*,
   No. 12-cv-0689-MMA (DHB), 2013 WL 3989193 (S.D. Cal. Aug. 1, 2013) .........................7

*In re GHR Energy Corp.*,
   35 B.R. 534 (Bankr. D. Mass. 1983) ........................................................................................8

*Hughes v. Twenty-First Century Fox, Inc.*,
   327 F.R.D. 55 (S.D.N.Y. Apr. 24, 2018) ..................................................................................7

*Indergit v. Rite Aid Corp.*,
   No. 08 Civ. 9361 (JPO) (HBP), 2015 U.S. Dist. LEXIS 160355 (S.D.N.Y. Nov. 30, 2015) .........................................................................................................................10

*In re Kipp*,
   86 B.R. 490 (Bankr. W.D. Tex. 1988) ......................................................................................8

*LNC Invs., Inc. v. First Fid. Bank*,
   No. 92 Civ. 7584 (CSH), 2000 U.S. Dist. LEXIS 10936 (S.D.N.Y. Aug. 3, 2000) .........................................................................................................................................8

*Ostrowski v. Amazon.com, Inc.*,
   No. C16-1378-JCC, 2016 WL 4992051 (W.D. Wash. Sept. 16, 2016) ...................................9

*Priest v. Rotary*,
   98 F.R.D. 755 (N.D. Cal. 1983) ................................................................................................5

*Redmond v. Moody's Inv'r Serv.*,
   No. 92 Civ. 9161, 1995 U.S. Dist. LEXIS 6277 (S.D.N.Y. May 10, 1995) ..........................10

*Robertson v. National Basketball Ass'n*,
   67 F.R.D. 691 (S.D.N.Y. 1975) ............................................................................................8, 9

010717-11 1089601 V1

*Salgado v. Land O'Lakes, Inc.*,
   No. 1:13-cv-0798-LJO-SMS, 2014 U.S. Dist. LEXIS 175158 (E.D. Cal. Dec.
   17, 2014) .................................................................................................................9, 10

*Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*,
   No. 16-cv-00158, 2018 U.S. Dist. LEXIS 6079 (E.D. Cal. Jan. 12, 2018) ...............................9

*In re Silverman*,
   36 B.R. 254 (Bankr. S.D.N.Y. 1984) ...................................................................................8

*The People of the State of New York v. Harvey Weinstein*,
   Ind. No. 2335/18 (N.Y. Sup. Ct. Nov. 29, 2018) ...............................................................3, 4

*The People of the State of New York v. Harvey Weinstein*,
   No. 2018NY023971 (N.Y. Sup. Ct.) ......................................................................................3

*In re The Weinstein Company Holdings, LLP*,
   No. 18-10601 (MFW) (Bankr. D. Del.) .......................................................................... *passim*

*In re Warner Chilcott Sec. Litig.*,
   No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 7613 (S.D.N.Y. Feb. 4,
   2008) ......................................................................................................................................10

**OTHER AUTHORITIES**

124 Cong. Rec. 34,913 (1978) ..........................................................................................................5

Fed. R. Evid. 412 .................................................................................................................5, 6, 7, 9

## I. INTRODUCTION

Plaintiffs, on behalf of all persons similarly situated, respectfully request that this Court extend its December 20, 2018 Protective Order to cover absent class members. Dkt. 207. The Protective Order is currently silent as to protections for putative class members, who are also victims of sexual abuse.

Other than Plaintiff Louisette Geiss, as Co-Chair of the Unsecured Creditors Committee in *In re The Weinstein Company Holdings, LLP*, No. 18-10601 (MFW) (Bankr. D. Del.) ("Bankruptcy"), and her counsel, putative class members have not received notice that (1) Harvey Weinstein identified them in a secret list provided to The Weinstein Company in the Bankruptcy to obtain all email communications between them; and (2) Harvey Weinstein intends to release the emails to the public.

Despite the lack of notice, unnamed class members deserve heightened protections from this Court. First, they are sexual assault, abuse and harassment victims, which demands prophylactic measures from the Court to prevent unnecessary disclosure of their private information. Second, as absent class members, many are not represented by counsel, nor are they privy to the numerous legal proceedings concerning their private communications. Finally, Weinstein has conceded that no prejudice would result from showing class counsel documents concerning class members before releasing them publicly.[1] Therefore, absent class members' privacy interests far outweigh Weinstein's interest in using their private communications publicly, immediately, and without restriction.

---

[1] Ex. 1, Dec. 20, 2018 Transcript of Telephone Conference re: Plaintiffs' Motion for Protective Order, at 8:21-25. All exhibits referenced herein are attached to the Declaration of Elizabeth A. Fegan in Support of Motion to Extend Protective Order to Absent Class Members, filed concurrently herewith.

- 1 -

## II. BACKGROUND

A. **The Bankruptcy Court deferred management of the use and discovery of putative class members' email communications with Harvey Weinstein to this Court.**

On December 20, 2018, upon motion by Plaintiffs' counsel, this Court entered a Protective Order, which states:

> If the Delaware Bankruptcy Court grants Weinstein's motion [to modify the Delaware Bankruptcy Court's discovery order], Weinstein shall make available to Plaintiffs' counsel any documents relating to any plaintiff named or identified in the First Amended Complaint. Plaintiffs' counsel shall review any such documents promptly and propose confidentiality designations to Weinstein's counsel. Counsel shall meet and confer regarding Plaintiffs' proposed confidentiality designations and, if any disagreements remain, file motions to this Court.[2]

This Order thus applies to the 10 named Plaintiffs and the 33 women identified by name in the body of the First Amended Complaint.[3] It does not apply, however, to all absent class members; that is, to those women who are not publicly identified in the complaint.

On January 8, 2019, the Delaware Bankruptcy Court held a hearing concerning Harvey Weinstein's Motion for an Order Permitting Use of Documents Produced Under 2004 Order.[4] Judge Mary Walrath indicated that she preferred to defer to this Court with respect to the management of emails of putative class members.[5] The Bankruptcy Court thus granted

---

[2] Protective Order, Dkt. 207, at 1-2.

[3] *See* Ex. 2, List of Potential Victims Who Appear in First Amended Complaint.

[4] Ex. 3, Harvey Weinstein's Motion for an Order Permitting Use of Documents Produced Under 2004 Order, Dkt. 1829, *In re The Weinstein Company Holdings, LLC, et al.*, No. 18-10601 (MFW) (Bankr. D. Del. Dec. 6, 2018).

[5] Ex. 4, Transcript of Hearing, *In re The Weinstein Company Holdings, LLC, et al.*, No. 18-10601 (MFW) (Bankr. D. Del. Jan. 8, 2019) ("January 8 Bankruptcy Hearing Transcript"), at 13:25-14:3 (with respect to the management of discovery conducted by Harvey Weinstein concerning putative class members: "But I am interested in getting out of this area."); 18:5-7 (in response to Weinstein's counsel: "Well, then you're suggesting that any protocol with respect to any un-named putative class action plaintiffs should be addressed to Judge Hellerstein."); 22:24-25 ("I want to get out of this. This is Judge Hellerstein's domain.").

Weinstein's motion,[6] with the condition that Weinstein maintain the confidentiality of the emails for 48 hours to give attorneys for victims a reasonable period to file motions for protective orders in their respective forums.[7] The Bankruptcy Court further ordered that Weinstein will not be permitted to release the emails of any victims who had filed motions for protective orders while the motions are pending.[8]

**B.      Harvey Weinstein's team has made clear that they intend to dump putative class members' emails in the press without notice or the opportunity to review by class counsel or the unnamed victims.**

Weinstein's counsel has made clear, in a number of forums and communications, that they intend to use the putative class members' communications in the press without notice or the opportunity for the victims to review and seek protections if appropriate.

In the action *The People of the State of New York v. Harvey Weinstein*, No. 2018NY023971 (N.Y. Sup. Ct.), Weinstein moved to dismiss his indictment on two counts of predatory sexual assault under New York Penal Law ("P.L.") § 130.15(2), one count of criminal sexual act in the first degree under P.L. § 130.5(1), one count of rape in the first degree under P.L. § 130.35(1), and one count of rape in the third degree under P.L. § 130.25(1).[9] In his reply in support of his motion and in anticipation of the New York District Attorney filing a *Molineux* motion (i.e., a motion to introduce other bad acts),[10] Weinstein references "thousands of emails

---

[6] Ex. 5, Order Permitting Use of Documents Produced Under 2004 Order, Dkt. 1957, *In re The Weinstein Company Holdings, LLC, et al.*, No. 18-10601 (MFW) (Bankr. D. Del. Jan. 8, 2019).

[7] *Id.* at 2.

[8] *Id.*

[9] One count of criminal sexual act in the first degree under P.L. § 130.50(1) was dismissed.

[10] *See* Ex. 6, Attorney's Reply Affirmation, *The People of the State of New York v. Harvey Weinstein*, Ind. No. 2335/18 (N.Y. Sup. Ct. Nov. 29, 2018).

between Mr. Weinstein and many of those who have publicly claimed sexual assault."[11] As a teaser of what he intended to introduce, he attached emails from unnamed class members who were not complaining witnesses (with their names redacted).[12]

In hearings and communications, Weinstein's team has consistently reaffirmed the intent to use these unnamed victims' communications publicly and without restriction:

- In a November 26, 2018 hearing in the Bankruptcy, Weinstein's counsel stated that he intended to "ultimately get all of these emails out."[13]

- On December 12, 2018, Weinstein's criminal attorney Benjamin Brafman reportedly wrote a letter to Judge Burke, who presides over the criminal cases, announcing his intention to use unnamed class members' emails in the press.[14]

- In this Court's December 20, 2018 telephonic hearing on Plaintiff's Motion for a Protective Order, Weinstein's counsel represented that he sought to use the emails "with respect to responding to public accusations that were made against him by individuals who have not even filed lawsuits."[15]

- In the Bankruptcy Court's January 8, 2019 hearing, Weinstein's counsel reaffirmed their intent to use the words of unnamed class members to respond to "a constant barrage regularly in the media of allegations."[16]

---

[11] *Id.* ¶¶ 57-66.

[12] *Id.*

[13] Ex. 7, Transcript of Hearing, *In re The Weinstein Company Holdings, LLP*, No. 18-10601 (MFW) (Bankr. D. Del. Nov. 26, 2018), at 8:13-14.

[14] https://variety.com/2018/biz/news/brafman-weinstein-response-publicity-1203088094/.

[15] Ex. 1, Dec. 20, 2018 Transcript of Telephone Conference re: Plaintiffs' Motion for Protective Order, at 4:3-5.

[16] Ex. 4, January 8, 2019 Bankruptcy Hearing Transcript, at 6:12-13; *see also id.* at 8:20-24 ("THE COURT: Well, I'm not sure that it's only his words that your [sic] seeking to use. I think

- 4 -

Moreover, since this Court's December 20, 2018 Protective Order, counsel for Plaintiffs was contacted by a reporter, who disclosed that Weinstein's counsel was shopping a "dirt file" on one of the named plaintiffs in this case.[17] Thus, it remains clear that Weinstein is armed and ready to try this case in the press against named and unnamed victims. And, while that may be his right, the Federal Rules of Civil Procedure first require the sharing of information and the opportunity to determine if confidentiality is warranted.

### III.  ARGUMENT

**A.  As sex assault victims, absent class members are entitled to additional privacy protections under federal law.**

Federal law explicitly favors heightened protections for sexual assault victims in civil and criminal cases. The Rape Victims' Crime Act of 1978 (the "Act") signed into law Fed. R. Evid. ("Rule") 412, which renders inadmissible any evidence about the alleged victim's prior sexual behavior or sexual predisposition.[18] Regarding his sponsorship of the bill, Representative Holtzman declared: "Too often in this country victims of rape are humiliated and harassed when they report and prosecute the rape."[19] His words confirm that the Act was meant to prohibit the

---

you're seeking to use the responses of others to his emails and the original emails of others. MR. SHILOH: That's correct, Your Honor.").

[17] Ex. 8, Declaration of Elizabeth A. Fegan in Support of Objection of Class Plaintiffs to Harvey Weinstein's Motion for an Order Permitting Use of Documents Produced Under 2004 Order, Dkt. 1911, *In re The Weinstein Company Holdings, LLP*, No. 18-10601 (MFW) (Bankr. D. Del.), at 2.

[18] Fed. R. Evid. 412.

[19] 124 Cong. Rec. 34,913 (1978) (statement of Rep. Holtzman) (quoted in *Priest v. Rotary*, 98 F.R.D. 755, 762 (N.D. Cal. 1983) (noting that "in the context of civil suits for sexual harassment, and absent extraordinary circumstances, inquiry into such areas [i.e., complainant's past sexual behavior] should not be permitted, either in discovery or at trial")).

precise tactics Weinstein has enlisted to silence and shame his victims (which now include release of their private communications without notice).[20]

Committee notes to the 1994 amendments to the Act—which extended Rule 412 to civil matters[21]—implore federal courts to "presumptively issue protective orders barring discovery unless the party seeking discovery makes a showing that the evidence sought to be discovered would be relevant under the facts and theories of the particular case, and cannot be obtained except through discovery."[22] Weinstein already possesses communications from absent class members who have not come forward and are not represented by counsel, but it is up to this Court to dictate how he may use them.[23] It is crucial that class counsel (or the unnamed class member herself) first have the opportunity to review the documents and apply for confidentiality protections, if warranted, before they are released publicly.[24]

Notably, in criminal cases, Rule 412(c) requires a party who seeks to introduce sexual behavior evidence that falls under one of its exceptions to file a motion with the court and notify the victim, and the court is required to conduct an *in camera* hearing affording the victim the right to attend and be heard.[25] The recommendation to "presumptively issue protective orders" is

---

[20] *See generally*, First Amended Complaint, Dkt. 140 (describing actions by defendants to threaten, extort, blacklist, and silence victims of Harvey Weinstein).

[21] Fed. R. Evid. 412(a).

[22] Fed. R. Evid. 412 advisory committee's notes to the 1994 amendments.

[23] *See, e.g.*, Ex. 4, January 8 Bankruptcy Hearing Transcript, at 13:25-14:3 (with respect to the management of discovery conducted by Harvey Weinstein concerning putative class members: "But I am interested in getting out of this area."); 18:5-7 (in response to Weinstein's counsel: "Well, then you're suggesting that any protocol with respect to any un-named putative class action plaintiffs should be addressed to Judge Hellerstein."); 22:24-25 ("I want to get out of this. This is Judge Hellerstein's domain.").

[24] The Debtors, for instance, had the opportunity to conduct a privilege review of all documents produced to Weinstein pursuant to his 2004 Motion. *See* Ex. 9, Protocol Order, Dkt. 976, *In re The Weinstein Company Holdings, LLP*, No. 18-10601 (MFW) (Bankr. D. Del.), ¶ 10.

[25] Fed. R. Evid. 412(c).

meant to serve a similar purpose for civil cases.[26] Notice here is particularly important, because courts recognize additional privacy protections for victims of sexual misconduct to "encourage[] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders."[27] As the defendants in this case have—over the course of several decades—taken affirmative actions to prevent victims from coming forward,[28] it is even more critical that the Court enforce the federal laws meant to promote victim reporting.

**B.     The fact that Weinstein has conducted discovery on absent class members through the Bankruptcy Court does not strip them of customary federal court protections.**

While class counsel has had the opportunity to be aware of Weinstein's Rule 2004 discovery as a result of Plaintiff Geiss's role on the Unsecured Creditors Committee, many victims have no knowledge of Weinstein's discovery or intentions to unleash the victims' communications publicly. ***In fact, to this day, no one but the Debtors and Weinstein know which victims were on the list of communications he sought—not even class counsel***.[29] Absent Court intervention, unnamed class members could be subjected to disclosure of their private

---

[26] Fed. R. Evid. 412 advisory committee's notes to the 1994 amendments.

[27] Fed. R. Evid. 412 advisory committee's notes to the 1994 amendments ("[Rule 412] aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details and the infusion of sexual innuendo into the factfinding process. By affording victims protection in most instances, the rule also encourages victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders."); *Doe v. City of San Diego*, No. 12-cv-0689-MMA (DHB), 2013 WL 3989193, at *4 (S.D. Cal. Aug. 1, 2013) ("Although Rule 412 governs the *admissibility* of sexual behavior evidence rather than its *discoverability*, the policies underlying the Rule must be considered.") (collecting cases); *Hughes v. Twenty-First Century Fox, Inc.*, 327 F.R.D. 55, 58 (S.D.N.Y. Apr. 24, 2018) (granting plaintiff's motion to quash subpoenas issued to men with whom she had allegedly had sexual relations under the defense strategy of painting her as a "serial seductress").

[28] *See generally*, First Amended Complaint, Dkt. 140 (describing actions by defendants to threaten, extort, blacklist, and silence victims of Harvey Weinstein).

[29] At the outset, Weinstein provided a list of names and/or email addresses to the Debtor to use to search their servers and produce email communications with Weinstein. *See* Ex. 9, Protocol Order, at 2.

communications without notice and an opportunity to be heard. In addition to violating their fundamental privacy and due process rights, this violates unnamed class members' rights to be free from unnecessary and invasive discovery.[30]

Weinstein continues to seek to avoid the protections of the Federal Rules of Civil Procedure and the federal and state trial courts' jurisdiction with regard to absent class members. As Plaintiffs have repeatedly asserted, this is not how the rules work.[31] In other words, "[b]etween the filing of the complaint and the trial lie the discovery procedures which are intended to eliminate trial by ambush."[32]

Courts thus frown on using Rule 2004 discovery from a bankruptcy in pending civil litigation to gain an advantage by bypassing the procedural safeguards provided by the discovery rules of the Federal Rules of Civil Procedure.[33] This should be no different with regard to discovery about absent class members.

---

[30] *See, e.g.*, *Robertson v. National Basketball Ass'n*, 67 F.R.D. 691, 700 (S.D.N.Y. 1975) ("The court must also seek to protect the class from undue harassment and excessive taxing of their resources, and from the danger of the use of full-blown discovery as a means of reducing class size.").

[31] *Casilla v. N.Y. State DOL*, No. 04 Civ. 6694 (NRB), 2005 U.S. Dist. LEXIS 35047, at *19 (S.D.N.Y. Dec. 21, 2005) ("[The Federal Rules of Civil Procedure] are designed specifically to avoid 'trial by ambush.' Under the Rules, parties may not intentionally withhold their most damning evidence until trial, at which point they blindside the opposition. *See, e.g.*, *Lesser v. Camp Wildwood*, 2003 U.S. Dist. LEXIS 16921, 01 Civ. 4209 (RWS), 2003 WL 22228757 at *2 (S.D.N.Y. Sep. 29, 2003) ('The rules are designed to avoid surprise or trial by ambush') (internal quotations and citations omitted). Instead, parties must share all relevant information with each other well in advance of trial in order to enable each side to fully prepare its legal strategy.").

[32] *LNC Invs., Inc. v. First Fid. Bank*, No. 92 Civ. 7584 (CSH), 2000 U.S. Dist. LEXIS 10936, at *4 (S.D.N.Y. Aug. 3, 2000).

[33] *In re Blinder, Robinson & Co.*, 127 B.R. 267, 274 (D. Colo. 1991), *aff'd on other grounds sub nom. Secs. Inv. Protection Corp. v. Blinder, Robinson & Co.*, 962 F.2d 960 (10th Cir. 1992); *In re Bennett Funding Grp., Inc.*, 203 B.R. 24, 28-29 (Bankr. N.D.N.Y. 1996); *In re Kipp*, 86 B.R. 490, 491 (Bankr. W.D. Tex. 1988); *In re Silverman*, 36 B.R. 254, 259 (Bankr. S.D.N.Y. 1984); *In re GHR Energy Corp.*, 35 B.R. 534, 538 (Bankr. D. Mass. 1983) ("While it is obvious that particular rights of a creditor are affected when one of its debtors files for protection under the Bankruptcy Code, it cannot be said that a creditor necessarily loses the protections afforded

### C. Unnamed class members are entitled to additional protections under federal law.

#### 1. Absent class members are generally entitled to heightened protections during discovery, making a protective order appropriate.

Now that Weinstein evaded this Court's jurisdiction by using Rule 2004 in the Bankruptcy, additional protections are warranted until discovery opens in this case and class counsel has the opportunity to review the emails.[34] The protections class counsel seeks here, in the first instance, are short-term and consistent with due process: to provide notice and the opportunity to justify longer-term confidentiality requests ***only if warranted*** upon review of the emails.

Absent class members should still be provided the customary federal court protections from unnecessary and invasive disclosures.[35] This is especially true in a case such as this, where use of discovery about absent class members could have a chilling effect on victims' willingness to come forward.[36] This is why it is customary for courts to require a protective order before either side is permitted to obtain discovery about absent class members.[37] Here, extending the

---

by the Federal Rules of Civil Procedure especially in the context of an action arising under non-bankruptcy law.").

[34] Of note, Weinstein has filed a motion to stay this proceeding pending resolution of his criminal charges. Dkt. 163.

[35] *See, e.g.*, *Robertson*, 67 F.R.D. at 700 ("The court must also seek to protect the class from undue harassment and excessive taxing of their resources, and from the danger of the use of full-blown discovery as a means of reducing class size.").

[36] *Id.*; *see also* Fed. R. Evid. 412 advisory committee's notes to the 1994 amendments (the purpose of the Rule's additional safeguards against admission of evidence of other sexual acts or sexual proclivities is to "encourage[] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders").

[37] *See, e.g.*, *Salgado v. Land O'Lakes, Inc.*, No. 1:13-cv-0798-LJO-SMS, 2014 U.S. Dist. LEXIS 175158, at *31 (E.D. Cal. Dec. 17, 2014); *Ostrowski v. Amazon.com, Inc.*, No. C16-1378-JCC, 2016 WL 4992051, at *2 (W.D. Wash. Sept. 16, 2016) (granting motion to compel absent class members' contact information when there was a protective order in place); *Shasta Linen Supply, Inc. v. Applied Underwriters Inc.*, No. 16-cv-00158, 2018 U.S. Dist. LEXIS 6079, at *13 (E.D. Cal. Jan. 12, 2018) (holding that defendants must provide contact information of

existing Protective Order will "strike the appropriate balance between the need for information and privacy concerns."[38]

### 2. Weinstein has not made the requisite showing that his interest in public disclosure of absent class members' communications outweighs their privacy rights.

Generally, when discovery of absent class members is sought, courts weigh "the competing interests of the absent class members in remaining passive and the defendant in having the ability to ascertain necessary information for its defense."[39] Under the normal course, "in order to obtain such discovery, a defendant must demonstrate that the information sought is relevant to the decision of common questions, that it is not available from the representative parties, that it is requested in good faith, and that the request is not burdensome."[40] Weinstein has not made such a showing.

For instance, he has repeatedly stated that he is interested in using victims' emails to discredit individual accusations of sexual assault,[41] rather than issues common to the class. Moreover, he has explicitly stated that he will use this discovery to smear unnamed class members in the media.[42] Perhaps most importantly, he conceded to this Court that he would not

---

absent class members in part "because confidential information is already protected from disclosure by the stipulated protective [order]").

[38] *Salgado*, 2014 U.S. Dist. LEXIS 175158, at *32 (quoting *Putnam v. Eli Lilly & Co.*, 508 F. Supp. 2d 812 (C.D. Cal. 2007)).

[39] *Indergit v. Rite Aid Corp.*, No. 08 Civ. 9361 (JPO) (HBP), 2015 U.S. Dist. LEXIS 160355, at *3 (S.D.N.Y. Nov. 30, 2015) (citation omitted).

[40] *Redmond v. Moody's Inv'r Serv.*, No. 92 Civ. 9161, 1995 U.S. Dist. LEXIS 6277, at *2-3 (S.D.N.Y. May 10, 1995); *see also In re Warner Chilcott Sec. Litig.*, No. 06 Civ. 11515 (WHP), 2008 U.S. Dist. LEXIS 7613, at *4-5 (S.D.N.Y. Feb. 4, 2008).

[41] *See, e.g.*, *supra* Section II.B.

[42] *Id.*

be prejudiced if required to give class members notice and an opportunity to object.[43] Thus, Weinstein has offered nothing to tip the scales in favor of compromising unnamed class members' privacy without giving them notice and an opportunity to seek this Court's protection.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court extend its Protective Order to require that Weinstein produce all communications relating to unnamed class members to class counsel (or, alternatively, each victim directly) with 21-days' notice before allowing them to be used publicly (and then only if class counsel or the victim fails to seek the appropriate protection).

DATED: January 10, 2019

Respectfully submitted,

HAGENS BERMAN SOBOL SHAPIRO LLP

By */s/ Elizabeth A. Fegan*
   Elizabeth A. Fegan
Emily Brown
HAGENS BERMAN SOBOL SHAPIRO LLP
455 N. Cityfront Plaza Dr., Suite 2410
Chicago, IL 60611
Telephone: (708) 628-4949
Facsimile: (708) 628-4950
*beth@hbsslaw.com*
*emilyb@hbsslaw.com*

Steve W. Berman
Shelby Smith
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
*steve@hbsslaw.com*
*shelby@hbsslaw.com*

---

[43] Ex. 1, Dec. 20, 2018 Transcript of Telephone Conference re: Plaintiffs' Motion for Protective Order, 8: 21-25.

Jason Zweig
HAGENS BERMAN SOBOL SHAPIRO LLP
555 Fifth Avenue, Suite 1700
New York, NY 10017
*jasonz@hbsslaw.com*

- 13 -

## CERTIFICATE OF SERVICE

I hereby certify that on January 10, 2019, I electronically transmitted the foregoing document to the Court Clerk using the ECF System for filing. The Clerk of the Court will transmit a Notice of Electronic Filing to all ECF registrants.

Dated: January 10, 2019

*/s/ Elizabeth A. Fegan*
Elizabeth A. Fegan