UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LOUISETTE GEISS, SARAH ANN THOMAS
(a/k/a SARAH ANN MASSE), MELISSA
THOMPSON, MELISSA SAGEMILLER,
NANNETTE MAY (f/k/a NANNETTE KLATT),
KATHERINE KENDALL, ZOE BROCK,
CAITLIN DULANY, LARISSA GOMES, and
JANE DOE, individually and on behalf of all
others similarly situated,

                Plaintiffs,

                v.

THE WEINSTEIN COMPANY HOLDINGS,
LLC, MIRAMAX FILM NY LLC, THE WALT
DISNEY COMPANY, DISNEY ENTERPRISES,
INC., BUENA VISTA INTERNATIONAL, INC.,
HARVEY WEINSTEIN, ROBERT WEINSTEIN,
DIRK ZIFF, TIM SARNOFF, MARC LASRY,
TARAK BEN AMMAR, LANCE MAEROV,
RICHARD KOENIGSBERG, PAUL TUDOR
JONES, JEFF SACKMAN, JAMES DOLAN,
MICHAEL EISNER, IRWIN REITER, DAVID
GLASSER, FRANK GIL, RICK SCHWARTZ,
FABRIZIO LOMBARDO, MARK GILL,
NANCY ASHBROOKE, BARBARA
SCHNEEWEISS, MIRAMAX DOES 1-10,
TALENT AGENCY DOES 1-100, and JOHN
DOES 1-50, inclusive,

                Defendants.

------------------------------------------------------------X

1:17-cv-09554 (AKH)

 

**DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO EXTEND
<u>PROTECTIVE ORDER TO ABSENT CLASS MEMBERS</u>**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ……………………………………………….. 1

ARGUMENT

I.    MR. WEINSTEIN'S USE OF DOCUMENTS OBTAINED OUTSIDE THE DISCOVERY PROCESS HEREIN CANNOT BE RESTRAINED …………………….................................................... 4

    A.  Plaintiffs' Motion Should Be Denied Because Rule 26(c) Does Not Apply to the Subject E-mails ............................... 5

II.    THE PROPOSED PROTECTIVE ORDER WOULD VIOLATE MR. WEINSTEIN'S FIRST AMENDMENT RIGHTS ……………………... 8

III.    PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE FOR ISSUANCE OF THE REQUESTED MODIFIED PROTECTIVE ORDER ……………. 11

    A.  Plaintiffs' Modified Protective Order Should Be Denied As Vague and Overbroad …………………………………….. 11

    B.  Plaintiffs' Modified Protective Order Is An Abuse of Class Discovery …………………………………………….. 13

    C.  Denying the Motion for Protective Order Would Not Result in Abuse of Discovery or Trial By Ambush ………………….. 14

CONCLUSION …………………………………………………………….…..... 17

i

## TABLE OF AUTHORITIES

**Cases**                                                                                               **Pages**

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007)………..……………………………..13

*Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)....................................... 7

*Blinder, Robinson & Co., Inc.,* 127 B.R. 267 (D. Colo. 1991)……………………....…………8

*Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944 (2d Cir. 1983).............. 5,6,9

*City of Almaty v. Ablyazov*, 15-Civ-05345, 2017 U.S. Dist. LEXIS 146773, at *8
     (S.D.N.Y. Sep. 8, 2017) ................................................................................................................ 5

*Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010) ............................... 11

*Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002)...........................................................7,8

*Flaherty v. Seroussi,* 209 F.R.D. 295, 299 (N.D.N.Y. 2001) ....................................................... 12

*Indergit v. Rite Aid Corp.*, 08-Civ-9361, 2015 U.S. Dist. LEXIS 160355 (S.D.N.Y. Nov. 30,
     2015) ............................................................................................................................................. 15

*International Products Corp. v. Koons*, 325 F.2d 403, 407-408 (2d Cir. 1963) ........................ 5,9

*Job P. Wyatt & Sons' Co*., No. 11-02664-8-JRL, 2011 WL 5909534, at *1………………….....8

*Kirshner v. Uniden Corp. of Am,* 842 F.2d 1074........................................................................ 5,6

*Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 475 (S.D.N.Y. 1982) ............................ 9,10,13

*Nebraska Press Association v. Stuart*, 427 U.S. 539, 559 (1976) ................................................. 9

*Redmond v. Moody's Inv'r Serv.*, 92-Civ-9161, 1995 U.S. Dist. LEXIS 6277
     (S.D.N.Y. May 10, 1995)............................................................................................................. 15

*Rippee v. Boston Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ................................. 14

*Robertson v. National Basketball Ass'n,* 67 F.R.D. 691, 700 (S.D.N.Y. 1975) .......................... 14

*Schiller v. City of New York*, 04-Civ-7922, 2007 U.S. Dist. LEXIS 4285, at *5
     (S.D.N.Y. Jan. 17, 2007)............................................................................................................. 12

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984) ................................................................ 5

*Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009)…………………………………...7,8

**Secondary Sources**

*Erwin Chemerinsky, Silence Is Not Golden: Protecting Lawyer Speech Under The First*
  *Amendment,* 47 Emory L.J. 859, 868-6 …………….…………………………………………9

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004) [MANUAL FOR
COMPLEX LITIGATION (FOURTH)…………………………………………………………13

Norton Bankr. L. & Prac. 3d § 163:73…………..………………………………………….…8

**Rules**

Rule 26(c) *Fed.R. Civ.P.* ...................................................................... 2,3,5,6,9

Fed.R.Evid. 412(b)(1)(B)..............................................................................13

## PRELIMINARY STATEMENT

Defendant Harvey Weinstein, by his attorneys Lewis Brisbois Bisgaard & Smith LLP and Alan Dershowitz, Esq., respectfully submits this memorandum of law in opposition to Plaintiffs' motion to extend the December 20, 2018, Protective Order (the "Order") to putative members of the proposed and uncertified class.[1]

Plaintiffs' motion to expand the Order seeks the same relief sought when they first moved for a protective order restricting Mr. Weinstein's right to use his own property (ECF Dkt. Nos. 183, 185, and 187). At the hearing on that motion, the Court denied Plaintiffs' class-wide protective order application. The Court recommended a protocol whereby e-mails relating to the named Plaintiffs only would be shared with class counsel prior to use to allow for an objection to be interposed. (ECF Dkt. No. 207).  Mr. Weinstein – without being given an opportunity to brief the merits of the original motion – agreed to the Court's recommendation because the Court expressly limited the Plaintiffs' initial motion seeking a broad protective order and he further has nothing to hide from the named Plaintiffs. This successive motion for a protective order covering putative class members should be denied. This Court already considered this issue and made a ruling that only documents relating to any "plaintiff named or identified in the First Amended Complaint" would be subject to Court's recommended protocol (ECF Dkt. No. 207). The Court declined to grant Plaintiffs' request for the protective order to apply to the entire uncertified and unknown putative class. Plaintiffs' attempt to relitigate this issue should be rejected.

Apparently unsatisfied with this Court's ruling on their first motion and concerned with the viability of their case, Plaintiffs' counsel is trying again  to restrain Mr. Weinstein's ability to defend himself against any allegation ever made by anyone. By granting this motion, the Court would

---

[1] Plaintiffs' Memorandum of Law is referred to herein as the Plaintiffs' Memo.

effectively be interfering with this defendant's constitutional right to a defense by restraining his use of his own words and communications to defend himself. Doing so would be improper because it is a fundamental tenet of our justice system that litigants and their counsel do not check their First Amendment rights at the courthouse door.

Moreover, Plaintiffs' application represents an unprecedented and transparent attempt to conduct premature class discovery and put in effect a veritable gag order against Mr. Weinstein under the guise of a Rule 26(c), *Fed R. Civ. P.*, protective order. This is not a scenario where Mr. Weinstein obtained e-mail correspondence from Plaintiffs or putative class members and now seeks the right to use them. These e-mail communications are the property of Mr. Weinstein. They are his communications with various individuals, including some Plaintiffs. As a result of the Weinstein Company ("TWC") bankruptcy, Mr. Weinstein was required to make multiple applications in the Bankruptcy Court to obtain his own e-mails.  Mr. Weinstein reimbursed TWC substantial sums of money for counsel to TWC to cull through the company's servers for  his own communications. This lengthy process inured to the benefit of publicly advertised media tours (press conferences, social media platforms, on air interviews, and printed publications) by Plaintiffs and others. During that process, Mr. Weinstein was forced to remain silent as a result of not having his own communications to rebut public allegations made against him. Now, Plaintiffs, having sat back and not taken any action during the several months in which Mr. Weinstein was filing motions in the Bankruptcy Court to obtain his own e-mails, ask this Court to enter an overly broad order that would threaten Mr. Weinstein's First Amendment rights and render him helpless to respond to public attacks on his character including attacks made by those who are not parties to this action.

Further, this application has no basis in law and is improper under Rule 26(c). There has been no discovery in this case. The e-mail communications at issue were not received via discovery in this

litigation or  any other litigation; nor were they received from Plaintiffs or any putative class members. Plaintiffs do not have the power under Rule 26(c) to restrain Mr. Weinstein's use of his personal property that was not received via discovery herein. Additionally, the First Amendment concerns raised by Plaintiffs' application are appallingly threatening to the freedoms we hold true. Plaintiffs' broadly-defined uncertified class effectively encompasses every woman Mr. Weinstein has ever met during the course of his entire film career. Under Plaintiffs' proposed order, Mr. Weinstein would have to turn over every e-mail he seeks to use or refer to in any court or in the media to class counsel to obtain their permission before using them. The Court should not permit Plaintiffs' counsel – plainly adverse to Mr. Weinstein – to become the gatekeeper of Mr. Weinstein's First Amendment rights.

Moreover, the irony in this application is that, while the Geiss Plaintiffs continue to champion their cause through constant media interviews and social media campaigns, they now ask this Court to strip Mr. Weinstein of his defenses against anyone who has made a public accusations against him.  This Court must recognize this motion for what it is - an encroachment on one's inalienable constitutional rights and a transparent attempt to gain access to class discovery before any class has been certified. Plaintiffs' counsel knows this case is not viable as a class action and is using this motion as an attempt to learn the identities of other potential plaintiffs.

Finally, Plaintiffs' repeated invocations of Rule 412 of the Federal Rules of Evidence is inapplicable. These e-mails are communications between the accused and accusers. Rule 412 does not authorize a Court to strip an individual of the right to defend himself against a public accusation of an alleged non-consensual relationship through his own correspondence.

Plaintiffs' counsel has an order in place with respect to their clients who are the named Plaintiffs in this case. The propriety of that order aside, Plaintiffs' counsel has no basis to restrain

3

Mr. Weinstein's use of his own e-mails not germane to those individuals simply because they have baselessly styled this civil assault case as a class action. This Court's Order should remain in place and Plaintiffs' baseless attempt to drastically expand it should be rejected.

## ARGUMENT

## I

## MR. WEINSTEIN'S USE OF DOCUMENTS OBTAINED OUTSIDE THE DISCOVERY PROCESS HEREIN CANNOT BE RESTRAINED

Based upon this Court's recommendation, Mr. Weinstein agreed to a protective order protocol for only the named Plaintiffs whereby any e-mail relating to them would be disclosed to counsel so that counsel can interpose an objection. Without an opportunity to brief the initial protective order request, Mr. Weinstein agreed to that protocol as a showing of good faith to this Court even though no protective order was warranted or impermissible under the authority cited herein. Now, Plaintiffs and their counsel seek to go too far to gain an advantage in controlling Mr. Weinstein's defense strategy by demanding that they be given access as well as the ability to control any and all e-mail correspondence relating to any potential putative class member for a class that has yet to be formed. Given the overly broad class definition, this equates to every communication retrieved from the bankruptcy proceeding (See FAC ¶ 66 ". . . the class also includes any woman who was meeting with Harvey Weinstein for business-related purposes"). Fatal to this motion, among other things, is that the subject e-mails were not obtained from Plaintiffs or any putative class member via discovery herein. In fact, they were not obtained from Plaintiffs or putative class members at all. These are Mr. Weinstein's e-mails containing his own communications with various individuals. This is not a genuine motion for a protective order. Rather, it is an improper effort to interfere with the defendant's ability to defend himself and to obtain class discovery before any discovery has commenced and before any class has been certified.

4

A. **Plaintiffs' Motion Should Be Denied Because Rule 26(c)**
   **Does Not Apply to the Subject E-mails**

This motion must be denied because Rule 26(c) does not apply when there is no pending discovery in an action.  Even if there was pending discovery, Rule 26(c) does not apply to information obtained outside of the instant proceeding.  The right to seek a protective order under Rule 26(c) applies "to a party or any person *from whom discovery is sought*." Fed. R. Civ. P. 26(c) (emphasis added). While, Rule 26 grants the court power to impose conditions on *discovery*, it is not a blanket authorization to prohibit *disclosure* of information.  *City of Almaty v. Ablyazov*, 15-Civ-05345, 2017 U.S. Dist. LEXIS 146773, at *8 (S.D.N.Y. Sep. 8, 2017) (citing *Bridge C.A.T. Scan Assocs. v. Technicare Corp.,* 710 F.2d 940, 944 (2d Cir. 1983)). This distinction is critical to this application. Plaintiffs do not seek to impose conditions on discovery or disclosure of documents obtained in discovery. They wish to silence Mr. Weinstein and prevent him from responding to any allegations levied against him whether in the media or in another pending civil action.

Moreover, the Supreme Court has made clear that information known to a party (or obtained by a party) independent of the subject litigation is not subject to a protective order. In *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 37 (1984), the Court held that where a "protective order is entered on a showing of good cause as required by Rule 26(c), is limited to the context of pretrial civil discovery, and does not restrict the dissemination of the information *if gained from other sources*, it does not offend the First Amendment" (emphasis added). *See also*, *Bridge C.A.T. Scan Assocs.,* 710 F.2d at 944-46 (holding that a court's order limiting the use of information plaintiff's counsel obtained independently of the litigation infringed plaintiff's "First Amendment rights and was contrary to historic principles of equity"); *Int'l Prods. Corp. v. Koons*, 325 F.2d 403, 407-08 (2d Cir. 1963) (holding that an order prohibiting defendants from disclosing pre-discovery documents was not authorized by discovery rules and constituted a prior restraint on free speech).  *Kirshner v.*

*Uniden Corp. of Am.*, is instructive. There, the Ninth Circuit held it could not control or limit the use of documents obtained in a separate proceeding, even when the separate proceeding involved the same plaintiff's counsel and the same defendant, 842 F.2d 1074, 1079-81 (9th Cir. 1988) (citing *Bridge C.A.T. Scan Assocs.,* 710 F.2d at 942).  Specifically, the Court held: "Rule 26(c) provides no authority for the issuance of protective orders purporting to regulate the use of information or documents obtained through means other than discovery in the *pending* proceeding." *Id*.

In the instant matter, Plaintiffs are trying to do precisely what the weight of authority forbids, which is to use Rule 26(c) to regulate the use of documents Mr. Weinstein obtained outside of, and before discovery has begun in, the pending litigation.  Unlike in *Kirshner*, where the documents at issue were obtained from the party trying to limit the use of said documents, the documents here were not even obtained from the unnamed class members.  Mr. Weinstein's emails were obtained from his former employer; TWC did not object to the release of the emails and it is not trying to limit Mr. Weinstein's use of the emails.  It is only these Plaintiffs who improperly seek to silence Mr. Weinstein.

Importantly, these emails were in possession of Mr. Weinstein prior to the start of this litigation and before any public allegations were made.  Mr. Weinstein temporarily did not have access to his emails for a brief period of time as a result of his termination from TWC.  Had he remained in his position at TWC, there is no question that he would have the ability to use his own communications, and Plaintiffs would not have conceived of this creative attempt to bar him from using his own communications. These emails are by no means newly discovered information.  Also, had Mr. Weinstein kept copies of his own correspondence, as many do, there would be no question

that he would be entitled to use his own e-mails as he saw fit. Plaintiffs are using the fact that he had to go through the Bankruptcy Court to obtain his own correspondence to try to miscast his efforts to retake possession of his property as discovery. Moreover, Mr. Weinstein had been working to regain possession of his own emails and other property since April 20, 2018.  Any attempt to now limit Mr. Weinstein's ability to utilize information he obtained outside of this litigation, prior to discovery, and from a third party, is contrary to the Federal Rules of Civil Procedure and decades of jurisprudence.

Moreover, it must be emphasized that Plaintiff Geiss is a member of the Creditors' Committee in the TWC Bankruptcy. As such, she and class counsel have been well aware of Mr. Weinstein's months long effort to recover his own property, namely his communications. Plaintiff Geiss and her counsel stood idly by while Mr. Weinstein incurred hundreds of thousands in legal fees to fight to regain his own property. Now, they seek to hinder his defense and obtain free discovery via this misguided application.

Plaintiffs' argument that courts discourage the use of Bankruptcy Rule 2004 discovery in separate civil matters is also misplaced.  First, Plaintiffs cite no on point authority to support this proposition.  Second, Plaintiffs misstate the cases they do cite. None of the cases cited by Plaintiffs involve using 2004 discovery in a civil matter unrelated to the bankruptcy.

The cases Plaintiffs cite are limited to the use of different discovery procedures for adversary proceedings and contested matters *within the bankruptcy* proceeding. To be sure, only *after* an adversary proceeding or contested matter has been commenced in a bankruptcy case must discovery proceed pursuant to the Federal Rules of Civil Procedure*, rather than by a Bankruptcy Rule 2004 examination.  *See In re Washington Mut., Inc.*, 408 B.R. 45, 50 (Bankr. D. Del. 2009) (citing *In re Bennett Funding Group, Inc.,* 203 B.R. 24, 28 (Bankr. N.D.N.Y. 1996)); *In re Enron Corp.*, 281

B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (same).[2]  Moreover, in these cases the objecting party is typically the party to whom the 2004 discovery is directed.  Here, the 2004 discovery was not directed to the Plaintiffs, but rather to TWC.

Plaintiffs do not, because they cannot, cite to any authority under the Federal Rules of Civil Procedure entitling them to what is in essence an overly broad application for pre-certification class discovery disguised as a protective order.

## II

## THE PROPOSED PROTECTIVE ORDER WOULD VIOLATE MR. WEINSTEIN'S FIRST AMENDMENT RIGHTS

The abuse of Rule 26 is not the only concern posed by this application. Plaintiffs' counsel's attempt to use the judicial process to silence Mr. Weinstein from speaking about any accusation by anyone who has or may come forward threatens Mr. Weinstein's First Amendment rights. The Second Circuit has held that a prohibition on the disclosure of pre-discovery documents constitutes a

---

[2] This principle is recognized as the "pending proceeding" rule, and the reasons supporting the rule are twofold: (1) "the discovery rules apply both in adversary proceedings and contested matters," *Washington Mut.*, 408 B.R. at 50 (citing Bankruptcy Rules 7001 & 9014(c)); and (2), "a Rule 2004 examination does not provide the same procedural safeguards as Rule 7026." *Id.*; *see also In re Job P. Wyatt & Sons' Co.*, No. 11-02664-8-JRL, 2011 WL 5909534, at *1 (Bankr. E.D.N.C. July 14, 2011) (ruling that proceeding with a Rule 2004 exam instead of the formal discovery rules after a contested proceeding is initiated is inappropriate) (citing *In re Dinubilo,* 177 B.R. 932, 942 (E.D. Cal. 1993); *In re Blinder, Robinson & Co., Inc.,* 127 B.R. 267 (D. Colo. 1991); *In re Bakalis,* 199 B.R. 443 (Bankr. E.D.N.Y 1996)).  *See also* 8 Norton Bankr. L. & Prac. 3d § 163:73 ("Though broad, the 2004 exam has certain limits.  First, the court may limit the 2004 exam after it considers the purpose of the examining party[;] courts will usually not allow a 2004 exam where an adversary proceeding is pending, because the party requesting the exam is likely seeking to avoid the procedural safeguards of Bankruptcy Rules 7026 to 7037[;] the 2004 exam may not be used to abuse or harass a witness, and the examiner cannot examine a witness on matters bearing no relation to the debtor's affairs or having no effect on the administration of the debtor's estate").

prior restraint on free speech and is not authorized by the rules of discovery. *Bridge,* 710 F.2d at 945 (2d Cir. 1983) (*citing International Products Corp. v. Koons*, 325 F.2d 403, 407-408 (2d Cir. 1963) (holding that certain trade data information obtained outside of discovery in the litigation could not be restrained under Rule 26(c)).

Plaintiffs' motion does not seek a protective order – it seeks a gag order which would unconstitutionally limit Mr. Weinstein's First Amendment Rights by seeking a prior restraint on his ability to defend himself in the media. Prior restraints are rarely upheld because they are viewed as "the most serious and least tolerable infringement on First Amendment rights." *Nebraska Press Association v. Stuart*, 427 U.S. 539, 559 (1976). Such restraints are particularly damaging when one side has the ability to talk to the press and the other does not.

Erwin Chemerinsky, a foremost constitutional law scholar, when discussing the rights of the accused and their attorneys to defend themselves in the media, explains that "[i]f there is no gag order and one side is speaking to the press, the other should be able to counter." Erwin Chemerinsky, Silence Is Not Golden: Protecting Lawyer Speech Under The First Amendment, 47 Emory L.J. 859, 868-69. Additionally, Chemerinsky notes the reality that in some high profile cases even a gag order on both parties would be ineffective. *Id.* "Even if no attorney or participant in the case ever spoke to the media, there would still be intense coverage[,]" and "[s]uch media publicity can be adverse to one side or the other and may include false, damaging information," which should be answered to avoid the "public from having a false and unfair impression." *Id.* Importantly, "[t]he First Amendment rights of litigants and lawyers are not checked at the door of the courthouse upon the commencement of litigation, and in particular, these rights are not waived when the parties embark upon the discovery process." *Koster v. Chase Manhattan Bank*, 93 F.R.D. 471, 475 (S.D.N.Y. 1982).

Mr. Weinstein has been publicly accused, and continues to be accused, in the media by not only the named Plaintiffs, but by a multitude of others at great harm to his professional reputation and livelihood. It is impossible to quantify the number of articles published daily, or the number of alleged victims, victims' representatives/attorneys, and pundits who speak publicly about Mr. Weinstein's alleged conduct on a regular basis. This includes the parties in the instant litigation, other litigations, Plaintiffs' counsel, Plaintiffs, as well as those who are not parties to any litigation.[3] Mr. Weinstein agreed to share any e-mail concerning the named Plaintiffs with their counsel before use only because of this Court's recommendation. However, to expand this to every other current and potential public accuser would render him defenseless. Plaintiffs clearly benefit from Mr. Weinstein's destroyed reputation and public image, and this application demonstrates that while they campaign their cause to every news outlet to bolster their claims – they will go to great lengths to prevent him from making any attempt to clear his name.

Expanding the protective order would allow Plaintiffs [and others] to continue speaking to the media unfettered, while preventing Mr. Weinstein from using his own property, his own words, to respond to allegations within the instant complaint, as well as all other public allegations. Plaintiffs' application in essence asks this Court to treat Mr. Weinstein differently so that they are the only ones permitted to stand on their soapbox. Unfortunately for that misguided effort, this country's jurisprudence enables all parties to the same rights in prosecuting as well as defending claims. *See Koster,* 93 F.R.D. at 475.  As Chemerinsky highlights, when one side levies allegations

---

[3]   The public accusations made by named Plaintiffs and others are too numerous to list. Illustrative examples include:  <u>Former actress and screenwriter Louisette Geiss is latest Harvey Weinstein accuser</u>, Oct. 10, 2017, Los Angeles Times, *available at: https://www.latimes.com/entertainment/la-et-entertainment-news-updates-latest-weinstein-accuser-former-1507665743-htmlstory.html;* <u>Harvey Weinstein scandal: Who has accused him of what?</u>, January 10, 2019, BBC News, *available at:* https://www.bbc.com/news/entertainment-arts-41580010

to the media, as is the case here, the accused  should be able to respond to whatever extent necessary to prevent the public from having a false and unfair impression.  Such rights must be safeguarded, especially when one is facing criminal prosecution. The court cannot unring the bell and retroactively grant a gag order that would undo what has been reported in the extensive media coverage related to Mr. Weinstein and those public accusers. Countless individuals had an opportunity to tell their side of the story as to Mr. Weinstein, and he deserves that right as well. Again, there is no legal basis for this application as a protocol is in place for communications encompassing the named Plaintiffs.

### III

### PLAINTIFFS HAVE NOT SHOWN GOOD CAUSE FOR ISSUANCE OF THE REQUESTED MODIFIED PROTECTIVE ORDER

Not only does Plaintiffs' requested modification constitute an attempted abuse of Rule 26 and restriction on Mr. Weinstein's right to free speech, it fails to meet the requisite good cause standard for issuance of a protective order.  The proposed order would be vague, because it would be based on an overly broad class definition that encompasses arguably every woman Mr. Weinstein has ever met. Further, this application is nothing more than a class fishing expedition. Tellingly, this "protective order" will result in Plaintiffs receiving class discovery from Mr. Weinstein.

#### A.  Plaintiffs' Modified Protective Order Should Be Denied As Vague and Overbroad

Even if Plaintiff's Motion for Protective Order is deemed not to be a violation of Mr. Weinstein's First Amendment rights, the scope of the requested protective order is overbroad, overreaching, and vague on its face.  The Motion should be denied on this basis alone.  The party seeking a protective order bears the burden of establishing that good cause for the order exists. *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 71 (S.D.N.Y. 2010). The movant must show that disclosure will result in a clearly defined, specific, and serious injury. *Id.* Simply broad

11

allegations of harm unsubstantiated by specific examples or articulated reasoning will not satisfy the good cause requirement. *Id. See also Schiller v. City of New York*, 04-Civ-7922, 2007 U.S. Dist. LEXIS 4285, at *5 (S.D.N.Y. Jan. 17, 2007). Further, "the mere fact that some level of discomfort, or even embarrassment, may result from the dissemination of [defendant's] deposition testimony is not in and of itself sufficient to establish good cause to support the issuance of [a] protective order." *Flaherty v. Seroussi,* 209 F.R.D. 295, 299 (N.D.N.Y. 2001).

Here, Plaintiffs have failed to establish good cause to support the modified protective order and are requesting a "first-look" at documents that they have no right to at this stage of the litigation. Plaintiffs' counsel is seeking emails between Mr. Weinstein and arguably every woman he has met during the course of his entire career in the film industry. Plaintiffs' have not demonstrated a clearly defined, specific, and serious injury that would arise from Mr. Weinstein utilizing his own words and communications to defend himself as permitted and protected by the laws of this country. Plaintiffs' counsel relies on the notion that absent class' members deserve heightened protections to prevent unnecessary disclosure of their private information but fails to demonstrate any identifiable or significant harm that would come from this. Plaintiffs fail to identify a significant harm here because none exists. This application is an abuse of the Court's prior protocol and a discovery request masquerading as a protective order motivated by counsel's desire to review the contents of emails rather than any significant or identifiable harm.  Moreover, Mr. Weinstein would suffer significant harm in the form of remaining unable to defend himself against public accusations and other civil lawsuits. Further, his ability to defend himself in the ongoing criminal action would be severely prejudiced by the proposed blanket restriction on Mr. Weinstein's ability to respond to accusations. Mr. Weinstein's undeniably strong interest in defending his reputation and defending himself against criminal and

civil charges overwhelmingly weigh in favor of denying this application. *See Koster*, 93 F.R.D. at 479 (interests of the party opposing the motion can weigh against issuance of a protective order).

In addition, Plaintiffs' repeated references to Federal Rule of Evidence 412 are misplaced. Plaintiffs do not cite to any case applying Rule 412 to correspondence between an accused and his or her accuser. The e-mails at issue only pertain to individuals' relationships with Mr. Weinstein and not with others.[4] Plaintiffs, and other public accusers of Mr. Weinstein, have already made their relationships and encounters with Mr. Weinstein a matter of public record. While Rule 412 is an important evidentiary rule that protects victims of sexual assault who come forward from having every sexual relationship in their past brought to light, it does not apply in this situation.

### B. Plaintiffs' Modified Protective Order Is An Abuse of Class Discovery

At this stage, there is no certified class and the broadly defined class encompasses essentially every woman Mr. Weinstein ever met.  It includes litigants in other cases, as well as everyone who made a public accusation.  With the present motion, Plaintiffs' counsel is attempting to manipulate the Federal Rules and this Court in the effort to gain access to absent class member documents they have no right to at this stage of the litigation. Courts are reluctant to allow access to information about absent class members unless they are convinced that the information is indispensable.[5] Plaintiffs have not made any showing that e-mails concerning unknown putative class members is necessary for their prosecution of this action at this stage.

---

[4] In the criminal context, Rule 412 does not apply to evidence concerning the accuser's relationship with the accused for purposes of showing consent. Fed. R. Evid. 412(b)(1)(B).

[5] *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.14 (2004) [MANUAL FOR COMPLEX LITIGATION (FOURTH)] ("Discovery of unnamed members of a proposed class requires a demonstration of need."). Although the Manual for Complex Litigation is not binding law, it is edited by a panel of federal judges, and courts generally follow and cite to its procedures for class action litigation. *See, e.g., Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967 (2007) (citing to the Manual regarding discovery in an antitrust class action lawsuit).

Further, the legislative history of the Class Action Fairness Act of 2005 suggests limits on precertification discovery of information regarding absent class members. *See, e.g., Rippee v. Boston Mkt. Corp.,* 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) (citing the Class Action Fairness Act's legislative history in the denial of a request for contact information of absent members during precertification discovery). In the Senate Judiciary Committee's report accompanying the bill, legislators described "limited discovery" that might help resolve issues such as citizenship and amount in controversy that are necessary for a ruling on personal jurisdiction and subject-matter jurisdiction. S. REP. NO. 109-14, at 44 (2005). At that stage of discovery, the committee wrote, "it would in most cases be improper for plaintiffs to request a list of all class members *(or detailed information that would allow the construction of such a list),* in many instances a massive, burdensome undertaking that will not be necessary unless a proposed class is certified." *Id.* (emphasis added).

This modified protective order is a blatant effort to bypass the limitations on class discovery prior to certification. Furthermore, the selection and review process for each and every email that may or may not be a communication with an absent class member would be a massive and burdensome task, which would all be unnecessary in the event the proposed class fails to be certified.

### C. Denying the Motion for Protective Order Would Not Result in Abuse of Discovery or Trial By Ambush

Plaintiffs' motion repeatedly misapplies the law to the facts in the present case. For example, Plaintiffs argue that absent Court intervention, unnamed class members could be subjected to disclosure of their private communications without notice and an opportunity to be heard…this violates class members' rights to be free from unnecessary and invasive discovery." (Plaintiffs' Memo, p. 8). Plaintiffs rely on *Robertson v. National Basketball Ass'n,* 67 F.R.D. 691, 700

(S.D.N.Y. 1975), in which this Court held: "[T]he court must also seek to protect the class from undue harassment and excessive taxing of their resources, and from the danger of the use of full-blown discovery as a means of reducing class size."   However, in that case, the Court was referencing the *amount* of discovery requests and the burden on the unnamed class members. Here, Plaintiff's counsel is seeking a protective order that would restrict Mr. Weinstein's use of his own emails. This is not discovery. Highlighting the inability of this case to be brought as a class action, Plaintiffs do not, because they cannot, cite to any class action case involving allegations of rape or sexual assault.

Plaintiffs further argue, without any support, that Mr. Weinstein needs to make some showing that his interests in using his own property outweighs Plaintiffs' counsel's speculative privacy interests of putative class members (Plaintiffs' Memo p. 10). Plaintiffs' reliance on *Indergit v. Rite Aid Corp.*, 08-Civ-9361, 2015 U.S. Dist. LEXIS 160355 (S.D.N.Y. Nov. 30, 2015), is misplaced. Here, unlike there, Mr. Weinstein is not seeking discovery from absent class members. *Indegit* involved the defendant's attempt to take eight deposition of absent class members over plaintiffs' objection. *Id.* at *3. Similarly unavailing is Plaintiffs' reliance on *Redmond v. Moody's Inv'r Serv.*, 92-Civ-9161, 1995 U.S. Dist. LEXIS 6277 (S.D.N.Y. May 10, 1995). There, as in *Indegit*, the Court was addressing the defendant's request to take several depositions of absent class members. These cases have absolutely nothing to do with this motion. Plaintiffs have not cited to any case ordering the relief they seek here, because no Court has stripped a defendant of his right to use his own property in the brazen manner Plaintiffs try to do here.

Plaintiffs go beyond the clear misconstruing of case law and attempt to misrepresent the hearing that took place before the Court on December 20, 2018. Plaintiffs falsely state that counsel for Mr. Weinstein conceded that Mr. Weinstein would not be prejudiced if required to give class

members notice and an opportunity to object to use of e-mails (Plaintiffs' Memo. pp. 10-11). The transcript is clear that counsel was discussing only e-mails of the named Plaintiffs (Declaration of Elizabeth A. Fegan, Exh. 1, at pp. 7-8). Mr. Weinstein would be severely prejudiced by having to share any e-mail he wished to use in another litigation or to respond to a public allegation by a non-party if he was required to consult class counsel first and wait weeks for their approval.

Lastly, Plaintiffs argue that a denial of the motion would result in a "trial by ambush." This is nonsensical. As outlined above, Mr. Weinstein secured his own emails through the TWC bankruptcy proceedings. This was far from an ambush or a surprise as Mr. Weinstein's application in the bankruptcy court was known to the public for the last ten months. Moreover, Plaintiffs are already in possession of, or would have knowledge of, e-mails they sent to Mr. Weinstein. There cannot be "trial by ambush" with one's own words.  Additionally, any documents to be used at trial will be disclosed via discovery and in the appropriate pre-trial submissions. Needless to say, trial of this nascent action is a quite a ways in the future.

Plaintiffs' counsel is certainly aware that this fishing expedition disguised as a protective order is not how the rules work. Plaintiffs attempt to utilize the Federal Rules of Civil Procedure and discovery procedures as authority for this request, yet these arguments fail at the outset. First, there can be no dispute that Mr. Weinstein's emails were not obtained in discovery. Second, post-certification discovery is not even available in this case yet as it remains at the pleading stage. After class certification, Plaintiffs' counsel can issue discovery requests seeking class and absent class member information and communications. The parties can meet and confer per the discovery procedures at that time. Granting the present request for the modified protective order at this stage would be an abuse of justice unsupported by any authority.

## CONCLUSION

For the reasons set forth herein, Mr. Weinstein respectfully requests that the motion be denied in all respects.

Dated: New York, New York
      January 17, 2019

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Elior D. Shiloh
    Elior D. Shiloh, Esq.
    Brian Pete, Esq.
    *Attorneys for Defendant Harvey Weinstein*
    77 Water Street, Suite 2100
    New York, New York  10005
    Tel: 212-232-1300

By: /s/ Alan Dershowitz
    Alan Dershowitz, Esq.
    *Of Counsel to Defendant Harvey Weinstein*
    1575 Massachusetts Ave.
    Cambridge, Massachusetts 02138
    *Application for admission pro hac vice to be filed*