**FilingUNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all other similarly situated, | 17-cv-9554 (AKH-BCM) |
| Plaintiffs, | **ORAL ARGUMENT REQUESTED** |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX FILM NY, LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., BUENA VISTA INTERNATIONAL, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, BARBARA SCHNEEWEISS, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TARAK BEN AMMAR'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT BASED UPON (1) LACK OF PERSONAL JURISDICTION AND (2) FAILURE TO STATE A CLAIM**

# <u>TABLE OF CONTENTS</u>

**Page**

I.  PRELIMINARY STATEMENT. .................................................................................1

II.  FACTUAL BACKGROUND. ...................................................................................4

    A.  Plaintiffs' Allegations. .................................................................................4

        1.  Plaintiffs' Alleged Interactions with Harvey Weinstein. ...........................4

        2.  Allegations Concerning Mr. Ben Ammar. ...................................................5

    B.  Mr. Ben Ammar's Limited Contacts with New York. ................................7

        1.  Contacts with New York in or Prior to 2011 ..............................................8

        2.  Contacts with New York After 2011 ...........................................................9

III.  STANDARD ON MOTION TO DISMISS BASED UPON LACK OF
     PERSONAL JURISDICTION. ..............................................................................11

IV.  THE COURT SHOULD DISMISS THE FAC AS AGAINST MR. BEN
     AMMAR BASED UPON LACK OF PERSONAL JURISDICTION. ..........................13

    A.  Mr. Ben Ammar is Not Subject to Personal Jurisdiction Under New York's
       Long Arm Statute. ......................................................................................15

        1.  No Jurisdiction Exists Under Section 302(a)(1) ........................................16

        2.  No Jurisdiction Exists Under Section 302(a)(2) Because Mr. Ben
           Ammar Did Not Commit a Tortious Act While Physically in New
           York ...........................................................................................................18

        3.  No Jurisdiction Exists Under Section § 302(a)(3) .....................................19

        4.  No Jurisdiction Exists Under Section 302(a)(4) Because Mr. Ben
           Ammar Does Not Own, Use, or Possess Any Real Property in
           New York ...................................................................................................20

    B.  Mr. Ben Ammar is Not Subject to Personal Jurisdiction on the RICO Claim. ........20

V.      THE FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BASED
        UPON THE GROUNDS ASSERTED BY THE MOVING DEFENDANTS AND
        THOSE SET FORTH HEREIN...........................................................................................22

        A.      Because Plaintiffs Allege that Harvey Weinstein was Acting Within the
                Scope of His Employment and Have Not Alleged Facts Sufficient to
                Demonstrate Gross Negligence on the Part of Mr. Ben Ammar or the Other
                Outside Board Representatives, They Have Not Stated a Claim For
                Negligent Supervision and Retention. ......................................................................23

        B.      Plaintiffs' State Law Claims Fail Because the FAC Does Not Allege Any
                Facts to Contradict the Limited Duties and Powers of Board
                Representatives of a Delaware Limited Liability Company...................................25

                1.      Plaintiffs Have Not Alleged Facts Showing that Mr. Ben Ammar,
                        as an Outside Board Representative of a Delaware Limited
                        Liability Company, Owed Any Duties to Them With Regard to
                        the Supervision and Retention of Harvey Weinstein................................27

                2.      Plaintiffs Have Not Alleged Facts Showing that Mr. Ben Ammar,
                        as an Outside Board Representative of a Delaware Limited
                        Liability Company, was in an Employer-Employee or Principal-
                        Agent Relationship with Harvey Weinstein, and Plaintiffs
                        Therefore Have Failed to State Claims that Rely on the Doctrines
                        of *Respondeat Superior* and Ratification..................................................29

VI.     CONCLUSION..............................................................................................................31

4824-2049-0630

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A. Terzi Prods., Inc. v. Theatrical Protective Union*,
  2 F. Supp. 2d 485 (S.D.N.Y. 1998) .....................................................................29

*Abdelhamid v. Altria Grp., Inc.*,
  515 F. Supp. 2d 384 (S.D.N.Y. 2007)..................................................................29

*A.I. Trade Fin., Inc. v. Petra Bank*,
  989 F.2d 76 (2d Cir. 1993).................................................................................11

*Aliano v. Quaker Oats Co.*,
  No. 16-3087, 2017 WL 56638 (N.D. Ill. Jan. 4, 2017)........................................12

*Barnville v. Mimosa Cafe*,
  No. 1:14–CV–518–GHW,
  2014 WL 3582878 (S.D.N.Y. July 10, 2014) .................................................23, 24

*Beach v. Citigroup Alt. Invests. LLC*,
  No. 12 Civ. 7717(PKC),
  2014 WL 904650 (S.D.N.Y. Mar. 7, 2014) .........................................................12

*Beacon Enters., Inc. v. Menzies*,
  715 F.2d 757 (2d Cir. 1983)...............................................................................17

*Bensusan Restaurant Corp. v. King*,
  126 F.3d 25 (2d Cir. 1997)..................................................................................18

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
  No. 12 Civ. 9258(ALC),
  2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ..........................................11, 13, 14

*BWP Media USA Inc. v. Hollywood Fan Sites, LLC*,
  69 F. Supp. 3d 342 (S.D.N.Y. 2014).....................................................11, 12, 21

*Carlson v. Cuevas*,
  932 F. Supp. 76 (S.D.N.Y. 1996) ........................................................................18

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
  No. 90 Civ. 5638, 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) ......................13, 14

iii

**TABLE OF AUTHORITIES**
**(cont'd)**

Page(s)

*Chernus v. Logitech, Inc.*,
    Civil Action No.: 17-673(FLW),
    2018 WL 1981481 (D. N.J. Apr. 27, 2018) ..................................................................12

*Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*,
    No. 11 Civ. 7801(PAE),
    2012 WL 1231775 (S.D.N.Y. Apr. 12, 2012) ...........................................................21

*Coville v. Ryder Truck Rental, Inc.*,
    30 A.D.3d 744, 817 N.Y.S. 179 (3d Dep't 2006) ......................................................23

*D'Amico v. Christie*,
    71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901 (1987).............................27, 28

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014)..........................................................................24

*Doe v. Unocal Corp.*,
    27 F. Supp. 2d 1174 (C.D. Cal. 1998),
    *aff'd*, 248 F.3d 915 (9th Cir. 2001) ..........................................................................21

*Ehrens v. Lutheran Church*,
    385 F.3d 232 (2d Cir. 2004).......................................................................................27

*Elsevier, Inc. v. Grossman*,
    77 F. Supp. 3d 331 (S.D.N.Y. 2015)..........................................................................21

*Famular v. Whirlpool Corp.*,
    16 CV 944 (VB), 2017 WL 2470844 (S.D.N.Y. Jun. 6, 2017) ..............................12

*Fischbarg v. Doucet*,
    9 N.Y.3d 375, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007)........................................16

*GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*,
    667 F. Supp. 2d 308 (S.D.N.Y. 2009)........................................................................11

*Giuliano v. Barch*,
    No. 16 CV 0859 (NSR),
    2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ...............................13, 14, 15, 16

*Gray v. Schenectady City Sch. Dist.*,
    86 A.D.3d 771, 927 N.Y.S.2d 442 (App. Div. 2011) ..............................................23

iv

**TABLE OF AUTHORITIES**
**(cont'd)**

**Page(s)**

*Harisch v. Goldberg*,
  No. 14-cv-9503 (KBF),
  2016 WL 1181711 (S.D.N.Y. Mar. 25, 2016) ...............................................................23, 24

*Henderson v. UPS*,
  252 A.D.2d 865, 675 N.Y.S.2d 715 (3d Dep't 1998) ..........................................................24

*In re Alstom SA Sec. Litig.*,
  406 F. Supp. 2d 346 (S.D.N.Y. 2004)............................................................................13, 14

*In re AstraZeneca Sec. Litig.*,
  559 F. Supp. 2d 453 (S.D.N.Y. 2008),
  *aff'd*, 334 F. App'x 404 (2d Cir. 2009)..................................................................................13

*In re DaimlerChrysler AG Sec. Litig.*,
  247 F. Supp. 2d 579 (D. Del. 2003)...............................................................................13, 14

*In re Dental Supplies Antitrust Litig.*,
  16 Civ. 696 (BMC) (GRB),
  2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ...........................................................16, 17

*In re Terrorist Attacks on September 11, 2001*,
  718 F. Supp. 2d 456 (S.D.N.Y. 2010)...................................................................................13

*Ingraham v. Carroll*,
  90 N.Y.2d 592, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997).........................................19, 20

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
  893 F. Supp. 1251 (S.D.N.Y. 1995),
  *aff'd*, 201 F.3d 431 (2d Cir. 1999).......................................................................................17

*Karoon v. New York City Transit Authority*,
  241 A.D.2d 323, 659 N.Y.S.2d 27 (1st Dep't 1997) ...........................................................24

*Kunz v. New Netherlands Routes, Inc.*,
  64 A.D.3d 956 (N.Y. App. Div. 2009) .................................................................................28

*LaFontaine v. City of New York*,
  No. 08 Civ. 1555(SHS),
  2009 WL 3335362 (S.D.N.Y. Oct. 14, 2009) .....................................................................23

4824-2049-0630

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*,
  673 F.3d 50 (2d Cir. 2012)..............................................................................................11, 16

*MacDermid, Inc. v. Deiter*,
  702 F.3d 725 (2d Cir. 2012)....................................................................................................11

*Marvel Characters, Inc. v. Kirby*,
  726 F.3d 119 (2d Cir. 2013)....................................................................................................12

*Norlin Corp. v. Rooney, Pace Inc.*,
  744 F.2d 255 (2d Cir. 1984)....................................................................................................28

*Paterno v. Laser Spine Inst.*,
  24 N.Y.3d 370, 998 N.Y.S.2d 720, 23 N.E.3d 988 (2014)................................................16

*PDK Labs, Inc. v. Friedlander*,
  103 F.3d 1105 (2d Cir. 1997)..................................................................................................12

*Perkumpulan Investor Crisis Center Dressel—WBG v. Wong*,
  Case No. C09-1786-JCC 2012 WL 13024801 (W.D. Wash. Apr. 6, 2012)........................21

*Selman v. Harvard Med. Sch.*,
  494 F. Supp. 603 (S.D.N.Y.),
  *aff'd*, 636 F.2d 1204 (2d Cir. 1980)........................................................................................12

*Sonera Holding B.V. v. Çukurova Holding A.Ş.*,
  750 F.3d 221 (2d Cir. 2014)....................................................................................................12

*Talavera v. Arbit*,
  18 A.D.3d 738, 795 N.Y.S.2d 708 (2d Dep't 2005)..........................................................23

### STATUTES

6 Del. C. § 18-402..........................................................................................................26, 28, 30

6 Del. C. § 18-407..........................................................................................................26, 28, 30

8 Del. C. § 141(a)...........................................................................................................26, 28, 30

18 U.S.C. § 1964........................................................................................................................20

4824-2049-0630

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

18 U.S.C. § 1965 ................................................................................................................. 21

18 U.S.C. § 1965(b) ..................................................................................................... 20, 21

N.Y. C.P.L.R. § 301 ........................................................................................................... 15

N.Y. C.P.L.R. § 302(a) ................................................................................................... 2, 15

N.Y. C.P.L.R. § 302(a)(1) ....................................................................................... 2, 16, 17

N.Y. C.P.L.R. § 302(a)(2) ............................................................................................. 2, 18

N.Y. C.P.L.R. § 302(a)(3) ............................................................................................. 2, 19

N.Y. C.P.L.R. § 302(a)(3)(i) ....................................................................................... 19, 20

N.Y. C.P.L.R. § 302(a)(3)(ii) ...................................................................................... 19, 20

N.Y. C.P.L.R. § 302(a)(4) ............................................................................................. 2, 20

## RULES

Fed. R. Civ. P. 12(b)(2) .................................................................................................. 1, 11

Fed. R. Civ. P. 12(b)(6) .................................................................................................. 1, 22

## MISCELLANEOUS

12th Ann. Report of N.Y. Jud. Conf ........................................................................... 19, 20

4824-2049-0630

Defendant Tarak Ben Ammar ("Mr. Ben Ammar") respectfully submits this memorandum of law in support of his motion to dismiss Plaintiffs' First Amended Class Action Complaint [Dkt. 140] (the "FAC") as against him based upon (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and (2) failure to state a claim pursuant to Fed. R. Civ P. 12(b)(6).[1]

## I.   PRELIMINARY STATEMENT.

Mr. Ben Ammar is a citizen and resident of France who served as an Outside Board Representative of defendant The Weinstein Company Holdings, LLC ("TWC") from 2005 through 2017.  Mr. Ben Ammar is not subject to personal jurisdiction in New York because he had no personal contacts with New York with regard to any matters of relevance to the claims asserted by the named Plaintiffs;[2] instead, during his 12 years on the TWC Board, he attended all but five TWC Board meetings telephonically from outside New York (largely from France), in his capacity as an Outside Board Representative, and the five Board meetings that he attended in New York had no connection to the named Plaintiffs' claims.  There is no personal jurisdiction in New York over a board member whose contacts with New York are all carried out in his

---

[1]  Mr. Ben Ammar joins in, and incorporates by reference, Defendants' Motion to Dismiss the First Amended Class Action Complaint [Dkt. 199] filed on December 17, 2018 by Defendants The Weinstein Company Holdings, LLC, Miramax Film NY, LLC, the Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc Lasry, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, James Dolan, and Michael Eisner (together the "Moving Defendants").

[2]  Personal jurisdiction in a putative class action is evaluated based upon the claims of the named plaintiffs, without regard to the claims of unnamed class members.  *See* p. 12, *infra*.  Because the named Plaintiffs allege that they were sexually assaulted by Harvey Weinstein in 2008 and 2011, Mr. Ben Ammar's contacts with New York after 2011 are not relevant to the issue of specific jurisdiction.  As detailed below, from 2005 through the end of 2011, Mr. Ben Ammar attended only two Board meetings in person in New York (one in 2005 and one in 2009), both of which had no connection with the named Plaintiff's claims and were not even in the same calendar years during which the named Plaintiffs' claim to have been sexually assaulted by Harvey Weinstein.

1

capacity with the company and whose claimed liability to a plaintiff is predicated upon his alleged failure to exercise oversight.

There is no personal jurisdiction over Mr. Ben Ammar under any prong of New York's long-arm statute, N.Y. C.P.L.R. § 302(a).  First, Mr. Ben Ammar was not transacting business in New York, and there is not a strong nexus or a direct relation between the named Plaintiffs' claims and Mr. Ben Ammar's alleged New York conduct.  *See* N.Y. C.P.L.R. § 302(a)(1).  Second, Mr. Ben Ammar did not commit a tortious act while physically in New York.  *See* N.Y. C.P.L.R. § 302(a)(2).  Third, Mr. Ben Ammar is not subject to personal jurisdiction under the theory that he committed tortious acts outside of New York that caused injury in New York because: (1) two of the four named Plaintiffs claim to have suffered injury only outside New York; (2) Mr. Ben Ammar does not regularly do or solicit business, or engage in any other persistent course of conduct, in New York; and (3) Mr. Ben Ammar does not derive substantial revenue from (a) goods or services in New York or (b) interstate or international commerce.  *See* N.Y. C.P.L.R. § 302(a)(3).  Fourth, Mr. Ben Ammar does not own, use, or possess any real property in New York.  *See* N.Y. C.P.L.R. § 302(a)(4).

Mr. Ben Ammar joins in, and incorporates by reference, the Moving Defendants' Motion to Dismiss the First Amended Class Action Complaint [Dkt. 199] filed on December 17, 2018.  Mr. Ben Ammar also moves to dismiss Count IV for Negligent Supervision and Retention on the ground that New York law generally precludes any claim for negligent supervision and retention where the employee was acting within the scope of employment.  Because Plaintiffs allege that Harvey Weinstein was acting within the scope of his employment with TWC, they cannot state a claim for negligent supervision and retention.  While this general rule does not apply where the plaintiff has stated a claim that supervision and retention of the employee was grossly negligent,

2

Plaintiffs have not alleged that the Outside Board Representatives, including Mr. Ben Ammar, were grossly negligent in supervising or retaining Harvey Weinstein, nor have they alleged any facts that could support a finding of the moral turpitude and criminal indifference to civil obligations that is necessary to prove gross negligence.

Furthermore, the FAC fails to allege facts that could support a finding that the Outside Board Representatives, including Mr. Ben Ammar: (1) owed any duty to Plaintiffs with regard to oversight of Harvey Weinstein; (2) were in an employer-employee relationship with Harvey Weinstein such that they could be held liable under the doctrine of *respondeat superior* for his alleged conduct; or (3) were in a principal-agent relationship with Harvey Weinstein such that they could be held liable under a theory of ratification. Because TWC is a Delaware limited liability company, not a corporation, it is managed by its members – not its Board – unless its limited liability company agreement vests management authority in the Board. Because the FAC does not allege that TWC's limited liability company agreement gave the Board oversight authority as to Harvey Weinstein, it does not allege a basis for finding that the Outside Board Representatives owed a duty to TWC, let alone to Plaintiffs, with regard to oversight of Harvey Weinstein. Similarly, because the FAC does not allege that TWC's limited liability company agreement somehow created an employer-employee or principal-agent relationship between the Outside Board Representatives and Harvey Weinstein (nor would it be plausible for a limited liability company agreement to do so), it does not allege a basis for finding that the Outside Board Representatives could be liable for Harvey Weinstein's conduct under theories of *respondeat superior* or ratification. Accordingly, Count VIII for Civil Battery, Count X for Assault, Count XII for False Imprisonment, Count XIV for Intentional Infliction of Emotional Distress, Count XVI for Negligent Infliction of Emotional Distress, and Count XVIII for

3

Ratification must be dismissed as against Mr. Ben Ammar and the other Outside Board Representatives because such claims are predicated upon the contention that their status as Board Representatives gave them some responsibility of oversight as to Harvey Weinstein or somehow made them liable for his alleged conduct under the doctrines of *respondeat superior* or ratification.

## II.     FACTUAL BACKGROUND.

### A.     Plaintiffs' Allegations.

#### 1.     Plaintiffs' Alleged Interactions with Harvey Weinstein.

Of the 10 plaintiffs named in the Complaint, four have asserted claims against parties affiliated with TWC, including Mr. Ben Ammar: (1) Louisette Geiss; (2) Sarah Ann Thomas; (3) Melissa Thompson; and (4) Jane Doe.  *See* FAC at 7, ¶¶ 15-18 (Counts II, IV, V, VI, VIII, X, XII, XIV, XVI, XVIII).

Ms. Geiss alleges she was sexually assaulted by Harvey Weinstein at the 2008 Sundance Film Festival in Park City, Utah.  *See id.* at 70-72, ¶¶ 243-51.  Ms. Thomas alleges that in 2008, at his house in Connecticut during an interview for a nanny position, Harvey Weinstein was wearing only underwear and gave her a hug that was "uncomfortably close, and lasted too long." *See id.* at 72-74, ¶¶ 254-63.  Ms. Thompson alleges she was sexually assaulted by Harvey Weinstein in 2011 at TWC's office in New York.  *See id.* at 74-81, ¶¶ 267-97.  Ms. Doe alleges Harvey Weinstein sexually assaulted her in 2002 (prior to TWC, and therefore not a basis for her claim against Mr. Ben Ammar) and exposed himself to her at TWC's office in New York in 2008.  *See id.* at 62-69, ¶¶ 203-42.

4824-2049-0630

Thus, the named Plaintiffs' claims against Mr. Ben Ammar involve alleged conduct by Harvey Weinstein in 2008 (as to three of the named plaintiffs) and 2011 (as to the fourth named plaintiff).[3]

The FAC alleges that Harvey Weinstein's "conduct was perpetuated within the scope of his employment" by TWC. *Id.* at 121, ¶ 430. *See id.* at 247, 250, 253, 256, 259, ¶¶ 851, 863, 875, 891, 907.

### 2.      Allegations Concerning Mr. Ben Ammar.

The FAC alleges that:

> Defendant Tarak Ben Ammar is a citizen of Tunisia and currently resides in France. Tarak Ben Ammar was a director of TWC from in or about October 21, 2005 to July 13, 2018. Ammar [*sic*] knew of Weinstein's pattern and practice of predatory sexual conduct toward women from his position as a director of TWC. Ammar [*sic*] admitted that he and the TWC Board were aware that Weinstein had been accused of groping model Ambra Battilana Gutierrez in 2015. According to Ammar [*sic*], the majority of the then-TWC Board members supported renewing Weinstein's contract despite the serious assault allegations.

FAC at 17, ¶ 45 (footnotes omitted). *See id.* at 115, ¶ 438 ("[a]fter the sale of TWC in bankruptcy, . . . Ben Ammar . . . resigned on July 13, 2018").

Using a subset of the same conclusory allegations that they use for other Outside Board Representatives, Plaintiffs allege that Mr. Ben Ammar "knew or should have known that Harvey Weinstein was a serial sexual predator." *Id.* at 132-37, ¶¶ 494-508. Specifically, Plaintiffs allege that Mr. Ben Ammar knew or should have known about Harvey Weinstein's alleged behavior because he allegedly (1) "witnessed" abusive behavior by Harvey Weinstein (although Plaintiffs cannot identify any such instances), (2) received complaints and a 2015 internal

---

[3]  As discussed below, *see* p. 12, *infra*, personal jurisdiction is to be established based on the claims asserted by named class representatives, not by unnamed members of the class. Accordingly, Mr. Ben Ammar's alleged action or inaction after 2011 cannot establish specific personal jurisdiction against him.

memorandum regarding Harvey Weinstein's behavior (although they cannot identify any specific complaints made to Mr. Ben Ammar), and (3) was aware of certain comments made in the media (only one of which pre-dates the alleged assaults in 2008, and a second of which pre-dates the alleged assault in 2011 but not the alleged assaults in 2008) and unspecified "settlements paid by TWC with victims who were assaulted by Weinstein" (although they do not allege how or when Mr. Ben Ammar became aware of such comments or payments or whether the alleged settlements involved sexual assaults).  *See id.*

Plaintiffs allege that "[a]ccording to Fortune magazine, Ben Ammar 'assert[ed] that Weinstein for years bullied and insulted employees, directors, and his brother, squandered outside investors' money, and ran TWC not to earn profits for its outside investors, but as a personal fiefdom that bestowed celebrity and power.'"  *Id.* at 133, ¶ 496 (footnote omitted).  However, such statements say nothing about Harvey Weinstein's purported propensity to engage in sexual misconduct.

Plaintiffs allege that Mr. Ben Ammar had or should have had access to Harvey Weinstein's personnel file, *see id.* at 132-33, ¶¶ 495(g), 497, but they allege elsewhere that Harvey Weinstein's attorney refused the Board's demand to see that personnel file, *see, e.g.*, *id.* at 147, ¶ 536.

The FAC includes allegations about an article and a memorandum in 2015 concerning Harvey Weinstein, a 2015 accusation that Harvey Weinstein had groped a model, the Board's decision to renew Harvey Weinstein's employment agreement in 2015, and its purported failure to investigate him thereafter.  *See, e.g.*, *id.* at 135-37, ¶¶ 501-02, 504-08.  However, the FAC makes no attempt to explain how information that Mr. Ben Ammar allegedly learned *in 2015*, or

the Board's supposed action or inaction after learning of such information, could have
proximately resulted in alleged sexual assaults ***in 2008 or 2011***.

### B.    Mr. Ben Ammar's Limited Contacts with New York.

Mr. Ben Ammar was born in Tunisia and is a citizen of France.  *See* Declaration of Tarak
Ben Ammar ("Ben Ammar Decl."), ¶ 3.  In 2015, Mr. Ben Ammar received a Green Card from
the United States.  *See id.*, ¶ 4.  Mr. Ben Ammar continues to be a fiscal resident of France.  *See
id.*  From 2005 through 2017, Mr. Ben Ammar's primary residence was in France.  *See id.*, ¶ 5.
During the summer of 2016, Mr. Ben Ammar lived in a summer vacation rental home in
California, and from time to time he has stayed in a rental home in California from June 2017
through the present; throughout such time period, however, he has spent the majority of his time
at his main residence in France.  *See id.*, ¶ 6.

Mr. Ben Ammar is in the business of producing and distributing international movies.
*See id.*, ¶ 7.  He has a direct ownership interest in the Netherlands company Holland Coordinator
& Service Company B.V., which itself has an ownership interest in various companies, including
the Italian independent film distributor Eagle Pictures SpA and the Netherlands company A-1
International Investments B.V. ("AII").  *See id.*  Mr. Ben Ammar does business only through
companies, not as an individual.  *See id.*, ¶ 8.

Mr. Ben Ammar does not regularly do or solicit business in New York, nor does he, as an
individual, derive revenue from goods used or consumed, or services rendered, in New York.
*See id.*, ¶ 9.  Nor does Mr. Ben Ammar, as an individual, derive revenues from interstate or
international commerce.  *See id.*

Mr. Ben Ammar has never lived in New York.  *See id.*, ¶ 10.  He has never leased or
owned property in New York.  *See id.*  He has never had a professional license or driver's license
in New York.  *See id.*  He has never had a bank account in New York.  *See id.*  He has never had

an office, an employee, or a telephone listing in New York, and he has never conducted a business in New York.  *See id.*

　　As discussed in more detail below, Mr. Ben Ammar visited New York on nine occasions between 2005 and 2018.  *See id.*, ¶ 11.  On five of those trips – in 2005, 2009, 2013, 2015, and 2017, respectively – Mr. Ben Ammar attended TWC Board meetings.  *See id.*

### 1.　　Contacts With New York in or Prior to 2011.

**Contacts Involving TWC.**  Mr. Ben Ammar was named to TWC's Board as a Representative pursuant to TWC's limited liability company agreement, which gave AII the right to appoint a Representative to the Board.  *See id.*, ¶ 12.  Mr. Ben Ammar was never paid for serving on TWC's Board; Mr. Ben Ammar was not entitled to be reimbursed by TWC for any expenses he incurred in connection with such service, nor did he receive any such reimbursement.  *See id.*, ¶ 13.  Indeed, AII lost its entire $30 million investment in TWC.  *See id.*

　　Mr. Ben Ammar was in New York from October 24-28, 2005, during which time he attended TWC's first Board meeting on October 25, 2005.  *See id.*, ¶ 14.  Harvey Weinstein's conduct and his employment agreement were not discussed at that Board meeting.  *See id.*  As of the time of that first Board meeting, Harvey Weinstein had already entered into his first employment agreement with TWC, which was dated as of June 30, 2005, as amended by a certain letter agreement dated as of August 29, 2005.  *See id.*, ¶ 15.

　　In 2007 and 2008, Mr. Ben Ammar attended meetings in New York that related to TWC (but did not attend a TWC Board meeting): (1) while in New York for business meetings from January 16-18, 2007, Mr. Ben Ammar was in New York to meet with Charles Layton, who worked in business affairs for TWC; and (2) while in New York for business meetings from June 2-5, 2008, Mr. Ben Ammar had a meeting with Harvey Weinstein.  *See id.*, ¶ 16.  Harvey

Weinstein's conduct and his employment agreement were not discussed at either of those meetings.  *See id.*

Mr. Ben Ammar was in New York from June 22-25, 2009, during which time he attended a TWC Board meeting on June 23, 2009 and also met with Harvey and Robert Weinstein.  *See id.*, ¶ 17.  Harvey Weinstein's conduct and his employment agreement were not discussed at any of those meetings.  *See id.*

With the exception of the TWC Board meetings that he attended in person in New York on October 25, 2005 and June 23, 2009, between 2005 and 2011 Mr. Ben Ammar attended TWC Board meetings telephonically from outside New York (largely from France).  *See id.*, ¶ 18. From 2005 through 2011, the Board met about 29 times, for an average of about four meetings a year.  *See id.*, ¶ 19.  Mr. Ben Ammar participated in TWC Board meetings by telephone from outside New York (largely from France) as follows from 2005 through 2011: (1) two meetings in 2005; (2) one meeting in 2006; (3) five meetings in 2007; (4) five meetings in 2008; (5) eight meetings in 2009; (6) three meetings in 2010; and (7) two meetings in 2011.  *See id.*, ¶ 20.

**Contacts Not Involving TWC.**  From May 7-10, 2006, Mr. Ben Ammar was in New York to screen a movie – released as *Hannibal Rising* in 2007 – produced by an international company that he was involved with.  *See id.*, ¶ 21.  From January 31 through February 1, 2007, Mr. Ben Ammar was in New York for the premiere of *Hannibal Rising*.  *See id.*

2.    **Contacts With New York After 2011.**[4]

**Contacts Involving TWC.**  Between 2012 and 2017, Mr. Ben Ammar attended three TWC Board meetings in New York: (1) Mr. Ben Ammar was in New York from March 13-15,

---

[4] As discussed below, *see* p. 12, *infra*, personal jurisdiction is to be established based on the claims asserted by named class representatives, not by unnamed members of the class. Accordingly, Mr. Ben Ammar's alleged action or inaction after 2011 cannot establish specific

2013, during which time he attended a TWC Board meeting on March 13, 2013 and also had a meeting with Harvey Weinstein; (2) Mr. Ben Ammar was in New York from March 23-25, 2015, during which time he attended a pre-Board meeting on March 24, 2015 and a Board meeting on March 25, 2015; and (3) Mr. Ben Ammar attended an October 25, 2017 TWC Board meeting in New York (after Harvey Weinstein's resignation from the Board of Representatives). *See id.*, ¶ 22.

With the exception of the TWC Board meetings that he attended in person in New York on March 13, 2013, March 25, 2015, and October 25, 2017, between 2012 and 2018 Mr. Ben Ammar attended TWC Board meetings telephonically, from outside New York (largely from France). *See id.*, ¶ 23. From 2012 through January 17, 2017, the Board met about 17 times, for an average of about three meetings a year. *See id.*, ¶ 24. The TWC Board next met on October 17, 2017, holding about 24 meetings through March 1, 2018. *See id.*, ¶ 25. Mr. Ben Ammar participated in TWC Board meetings by telephone from outside New York (largely from France) as follows from 2012 through 2018: (1) two meetings in 2012 (and a telephone conference related to TWC); (2) six meetings in 2013 (and a telephone conference with an attorney for the Outside Board Representatives); (3) four meetings in 2014 (and a pre-meeting conference call); (4) four meetings (and a TWC-related phone call) in 2015; (5) three meetings in 2016; (6) about 10 meetings in 2017 (all but two of them after Harvey Weinstein's resignation from the TWC Board); and (7) about 16 meetings in 2018. *See id.*, ¶ 26.

**Contacts Not Involving TWC.** On July 15, 2018, Mr. Ben Ammar had a six-hour layover in New York while he was traveling from Los Angeles to Paris. *See id.*, ¶ 27. Other

---

personal jurisdiction against him. Mr. Ben Ammar provides the information set forth in this section with regard to his post-2011 contacts with New York to show that he is not subject to general jurisdiction in New York.

4824-2049-0630

than as set forth above, Mr. Ben Ammar made no other trips to New York from 2005 through the present.  *See id.*, ¶ 28.

## III.   STANDARD ON MOTION TO DISMISS BASED UPON LACK OF PERSONAL JURISDICTION.

"On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction."  *BWP Media USA Inc. v. Hollywood Fan Sites, LLC*, 69 F. Supp. 3d 342, 349 (S.D.N.Y. 2014) (citing *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012)).  "On a motion to dismiss for lack of personal jurisdiction, the Court may consider affidavits submitted by the parties."  *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258(ALC), 2014 WL 1331046, *2 (S.D.N.Y. Mar. 31, 2014) (citing *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 314 (S.D.N.Y. 2009)).

"'[W]here, as here, a court relies on pleadings and affidavits, the complaint need only allege facts constituting a prima facie showing of personal jurisdiction.'"  *BWP Media USA Inc.*, 69 F. Supp. 3d at 352 (quoting *Bidonthecity.com LLC*, 2014 WL 1331046, *2).  "All jurisdictional allegations 'are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor. . . .'"  *Id.* (quoting *A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76, 79-80 (2d Cir. 1993)).  "However, the Court will not 'draw argumentative inferences in the plaintiff's favor, nor accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012)).

"District courts deciding a motion to dismiss for lack of personal jurisdiction engage in a two-part analysis, first determining whether there is "a statutory basis for exercising personal jurisdiction,' and second deciding whether the exercise of jurisdiction comports with due

process."[5]  *Id.* (quoting *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 128 (2d Cir. 2013), and *Sonera Holding B.V. v. Çukurova Holding A.Ş.*, 750 F.3d 221, 224 (2d Cir. 2014) (*per curiam*)). "In the statutory portion of the analysis, the court in a federal question case 'applies the forum state's personal jurisdiction rules,' unless a federal statute 'specifically provide[s] for national service of process.'"  *Id.* (quoting *PDK Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1108 (2d Cir. 1997)).

"When the action is brought as a purported class action, personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action." *Famular v. Whirlpool Corp.*, 16 CV 944 (VB), 2017 WL 2470844, *2 (S.D.N.Y. Jun. 6, 2017) (citing *Beach v. Citigroup Alt. Invests. LLC*, No. 12 Civ. 7717(PKC), 2014 WL 904650, *6 (S.D.N.Y. Mar. 7, 2014)). "Contacts with unnamed class members may not be used as a jurisdictional basis, especially before a class has been certified." *Beach*, 2014 WL 904650, *6 (citing *Selman v. Harvard Med. Sch.*, 494 F. Supp. 603, 613 n. 6 (S.D.N.Y.), *aff'd*, 636 F.2d 1204 (2d Cir. 1980)). *See Chernus v. Logitech, Inc.*, Civil Action No.: 17-673(FLW), 2018 WL 1981481, *3, 7 (D. N.J. Apr. 27, 2018) ("[i]t must be stressed that, even in the context of a class action, 'it is the named plaintiff's claim that must arise out of or result from the defendant's forum-related activities, not the claims of the unnamed members of the proposed class, who are not party to the litigation absent class certification'") (footnote omitted) (quoting *Aliano v. Quaker Oats Co.*, No. 16-3087, 2017 WL 56638, *4 (N.D. Ill. Jan. 4, 2017)).

---

[5]  Because there is no personal jurisdiction over Mr. Ben Ammar under the New York long-arm statute, he will not brief the issue whether the exercise of personal jurisdiction over him would comport with due process under the United States Constitution.

4824-2049-0630

## IV.   THE COURT SHOULD DISMISS THE FAC AS AGAINST MR. BEN AMMAR BASED UPON LACK OF PERSONAL JURISDICTION.

The New York courts that have considered the issue whether a non-resident is subject to personal jurisdiction for actions taken in his or her capacity as a director or officer have generally done so by reference to general principles of personal jurisdiction law, rather than in the framework of the New York long-arm statute.  Accordingly, Mr. Ben Ammar first discusses the cases that have addressed jurisdiction over corporate directors or officers without reference to specific provisions of the long-arm statute, before proceeding to apply the long-arm statute itself.

"Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity." *Bidonthecity.com LLC*, 2014 WL 1331046, *5 (citing *In re Terrorist Attacks on September 11, 2001*, 718 F. Supp. 2d 456, 470-71 (S.D.N.Y. 2010)).  *See In re Alstom SA Sec. Litig.*, 406 F. Supp. 2d 346, 398 (S.D.N.Y. 2004) ("'[j]urisdiction over the representatives of a corporation "may not be predicated on jurisdiction over the corporation itself, and jurisdiction over the individual officers and directors must be based on their individual contacts with the forum state"'") (quoting *Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90 Civ. 5638, 1992 WL 296406, *4-5 (S.D.N.Y. Oct. 7, 1992)).  "Indeed, 'a person's status as a board member is not alone sufficient to establish jurisdiction.'"  *Id.* (quoting *In re AstraZeneca Sec. Litig.*, 559 F. Supp. 2d 453, 467 (S.D.N.Y. 2008), *aff'd*, 334 F. App'x 404 (2d Cir. 2009)).

Furthermore, board members' "failures in their corporate capacity do not give rise [to] personal jurisdiction over directors where none otherwise lies."  *Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, *12 n. 23 (S.D.N.Y. Mar. 31, 2017) (citing *In re DaimlerChrysler AG Sec. Litig.*, 247 F. Supp. 2d 579, 587 (D. Del. 2003), as holding that

13

"'[w]here a board member's only contact with the forum has been in the scope of his corporate capacity, the individual's contact is insufficient to support the exercise of personal jurisdiction'"), and *Charas*, 1992 WL 296406, *4, as holding that "no personal jurisdiction over former outside director 'charged with failing to monitor [corporation's] affairs and thereby permitting the fraudulent activities to continue'").  *See Bidonthecity.com LLC*, 2014 WL 1331046, *5 (same); *In re Alstom SA*, 406 F. Supp. 2d at 399 (quoting *In re DaimlerChrysler AG Sec. Litig.*, 247 F. Supp. 2d at 587, for the same proposition, and *Charas*, 1992 WL 296406, *5, for the statement, "'[a]ny fraudulent activities that Defendants may have committed in relation to Sand's public offerings cannot reasonably be deemed the "direct and foreseeable result" of the alleged failure of an outside director residing in Japan to monitor the Canadian corporation's affairs'").

Here, Plaintiffs' claims are based on Mr. Ben Ammar's alleged contacts with New York in his corporate capacity – his participation, from outside New York (largely from France), in telephonic Board meetings.  Because Mr. Ben Ammar did not have his "own personal contacts with the forum" with regard to the matters underlying Plaintiffs' claims, there is no personal jurisdiction over him with regard to such claims.  Furthermore, Plaintiffs' claims against Mr. Ben Ammar are predicated in their entirety upon the contention that he, acting in his capacity as an Outside Board Representative, supposedly failed to adequately monitor Harvey Weinstein's conduct.  Under the authority cited above, *see* p. 12, *supra*, such alleged failure is not, by itself, sufficient to support the exercise of personal jurisdiction.

A.   **Mr. Ben Ammar is Not Subject to Personal Jurisdiction Under New York's Long Arm Statute.**

New York's long-arm statute, N.Y. C.P.L.R. § 302(a), provides as follows with regard to

the exercise of personal jurisdiction based upon the acts of a non-domiciliary:[6]

> (a)   Acts which are the basis of jurisdiction.  As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
>> 1.   transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>>
>> 2.   commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
>>
>> 3.   commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
>>
>>> (i)   regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
>>>
>>> (ii)   expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
>>
>> 4.   owns, uses or possesses any real property situated within the state.

*Id.*

---

[6] "Pursuant to N.Y. C.P.L.R. § 301, a defendant is subject to personal jurisdiction if he is domiciled in New York, served with process in New York, or continuously and systematically does business in New York.  *Giuliano*, 2017 WL 1234042, *4.  Mr. Ben Ammar is not subject to general personal jurisdiction pursuant to Section 301 because: (1) he is a "foreign individual[] that do[es] not systematically and continuously do business in New York"; and (2) "individuals acting on a corporation's behalf are not subject to general personal jurisdiction under Section 301." *Id.* at *5.

4824-2049-0630

### 1.    No Jurisdiction Exists Under Section 302(a)(1).

"'To establish personal jurisdiction under section 302(a)(1), two requirements must be met: (1) The defendant must have transacted business within the state [or contracted to supply goods in the state]; and (2) the claim asserted must arise from that business activity.'" *In re Dental Supplies Antitrust Litig.*, 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115, *4 (E.D.N.Y. Sept. 20, 2017) (quoting *Licci*, 732 F.3d at 168).  Plaintiffs have not satisfied either of these requirements.

First, "'[w]hether a non-domiciliary is transacting business within the meaning of CPLR 302(a)(1) is a fact based determination, and requires a finding that the non-domiciliary's activities were purposeful and established "a substantial relationship between the transaction and the claim asserted."'" *Giuliano*, 2017 WL 1234042, *7 (quoting *Paterno v. Laser Spine Inst.*, 24 N.Y.3d 370, 376, 998 N.Y.S.2d 720, 23 N.E.3d 988 (2014)).  "'Purposeful activities are volitional acts by which the non-domiciliary "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."'" *Id.* (quoting *Paterno*, 24 N.Y.3d at 376).  "'More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York.'" *Id.* (quoting *Paterno*, 24 N.Y.3d at 376).  "New York case law makes clear that 'it is the quality of the defendants' New York contacts that is the primary consideration' in a 302(a)(1) analysis." *Id.* (quoting *Fischbarg v. Doucet*, 9 N.Y.3d 375, 380, 849 N.Y.S.2d 501, 880 N.E.2d 22 (2007)).

While Mr. Ben Ammar attended a handful of Board meetings in New York in person, those contacts were *de minimis*.  During the period of relevance of the named Plaintiffs' claims – in and prior to 2011 – none of Mr. Ben Ammar's trips to New York involved Harvey Weinstein's employment agreements or any claims of misconduct by him.  *See* Ben Ammar

16

Decl., ¶¶ 14-17.  Thus, there was not any relationship – let alone a "substantial relationship" – between Mr. Ben Ammar's trips to New York and the claims asserted by the named Plaintiffs.

Furthermore, Mr. Ben Ammar is unaware of any authority holding that a director "conducts business" in New York through telephonic attendance, outside of New York, of board meetings of a company that has offices in New York.  To the contrary, "New York courts have consistently refused to sustain section 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York."  *Beacon Enters., Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983).  *See Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261-62 (S.D.N.Y. 1995) ("[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who is outside New York, generally are insufficient to establish personal jurisdiction") (collecting cases), *aff'd*, 201 F.3d 431 (2d Cir. 1999).

"In determining whether the second prong of § 302(a)(1) is met, courts must analyze whether a defendant's actions 'bear a substantial relationship to the transaction out of which the instant cause of action arose[,]' *i.e.*, whether there is a 'strong nexus' or a 'direct relation' between plaintiff's claim and the defendant's New York conduct."  *In re Dental Supplies Antitrust Litig.*, 2017 WL 4217115, *6 (quoting *Beacon Enters., Inc.*, 715 F.2d at 764).  Here, the connection with Plaintiffs' claims and Mr. Ben Ammar's alleged conduct – whether in or outside of New York – is extremely attenuated.

It is Harvey Weinstein – not Mr. Ben Ammar or any of the other Outside Board Representatives – who is alleged to have committed sexual assault.  It is TWC's officers and the Board collectively – not Mr. Ben Ammar in particular – that are alleged to have failed to stop Harvey Weinstein's alleged conduct.  Plaintiffs' claims do not arise out of Mr. Ben Ammar's

4824-2049-0630

very limited travel to New York, for meetings that did not involve Harvey Weinstein's alleged conduct or his employment agreements.

      **2.**      **No Jurisdiction Exists Under Section 302(a)(2) Because Mr. Ben Ammar Did Not Commit a Tortious Act While Physically in New York.**

On its face, Section 302(a)(2) imposes personal jurisdiction only upon a person who "commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2). In keeping with this plain language, the Second Circuit has recognized that "[t]o subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State." *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (quoting *Carlson v. Cuevas*, 932 F. Supp. 76, 80 (S.D.N.Y. 1996)).

Here, the evidence demonstrates that Mr. Ben Ammar did not engage in any conduct in New York of relevance to Plaintiffs' claims – let alone any allegedly tortious act – at any time prior to 2011, the date of the last assault alleged by a named Plaintiff.[7] During the period prior to 2011, Mr. Ben Ammar was in New York for business involving TWC on only four occasions, during which time he attended two TWC Board meetings. *See* Ben Ammar Decl., ¶¶ 14-17. None of those trips involved negotiation or renewal of Harvey Weinstein's employment agreements, nor was there any discussion of any alleged wrongdoing by Harvey Weinstein. *See id.* Accordingly, Section 302(a)(2) does not create personal jurisdiction over Mr. Ben Ammar.

---

[7] For the reasons discussed above, *see* p. 12, *infra*, Plaintiffs cannot establish personal jurisdiction over Mr. Ben Ammar based on any of his trips to New York after 2011. There is no evidence that Mr. Ben Ammar engaged in tortious activities after 2011, either, but such later time period is not relevant to the personal jurisdiction analysis.

4824-2049-0630

### 3.      No Jurisdiction Exists Under Section § 302(a)(3).

Section 302(a)(3) applies where the defendant "commits a tortious act without the state causing injury to person or property within the state."  N.Y. C.P.L.R. § 302(a)(3).  Two of the four named Plaintiffs asserting claims against Mr. Ben Ammar – Ms. Geiss and Ms. Thomas – claim to have been assaulted by Harvey Weinstein outside of New York.  Because Section 302(a)(3) does not apply where the plaintiff claims to have suffered injury outside of New York, neither Ms. Geiss nor Ms. Thomas may rely upon Section 302(a)(3) as a basis for finding that Mr. Ben Ammar is subject to personal jurisdiction based upon alleged tortious conduct outside of New York.

Furthermore, none of the four Plaintiffs can establish personal jurisdiction over Mr. Ben Ammar under Section 302(a)(3) because they cannot establish the facts required for the imposition of personal jurisdiction under either Section 302(a)(3)(i) or Section 302(a)(3)(ii).

First, Section 302(a)(3)(i) creates personal jurisdiction only where the defendant "regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state." N.Y. C.P.L.R. § 302(a)(3)(i).  "By this provision, the Legislature limited CPLR 302(a)(3)(i) jurisdiction to extend only to those 'who have sufficient contacts with this state so that it is not unfair to require them to answer in this state for injuries they cause here by acts done elsewhere.'"  *Ingraham v. Carroll*, 90 N.Y.2d 592, 597, 665 N.Y.S.2d 10, 687 N.E.2d 1293 (1997) (quoting 12th Ann. Report of N.Y. Jud. Conf., at 343)).  "Thus, CPLR 302(a)(3)(i) necessitates some ongoing activity *within New York State*."  *Id.* (emphasis in original).

Here, Mr. Ben Ammar's contacts with New York were and are very limited; he did not and does not regularly do or solicit business in New York, engage in any other persistent course

of conduct in New York, or derive any revenue from goods or services in New York.  *See* Ben Ammar Decl., ¶ 9.  Thus, no personal jurisdiction exists under Section 302(a)(3)(i).

Second, Section 302(a)(3)(ii) creates personal jurisdiction only where the defendant "expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce."  N.Y. C.P.L.R. § 302(a)(3)(ii). "The substantial interstate commerce revenue component . . . narrows the long-arm reach to preclude the exercise of jurisdiction over nondomiciliaries who might cause direct, foreseeable injury within the State but "whose business operations are of a local character."  *Ingraham*, 90 N.Y.2d at 599 (quoting 12th Ann. Report of N.Y. Jud. Conf., at 342-43 as "describing the interstate commerce prong of CPLR 302(a)(3)(ii) as requiring a showing that defendant 'was engaged in extensive business activities on an interstate or international level'").  Mr. Ben Ammar does not have extensive business activities on an interstate or international level.  *See* Ben Ammar Decl., ¶¶ 8-9.  Thus, there is no personal jurisdiction over Mr. Ben Ammar pursuant to Section 302(a)(3)(ii).

> **4.  No Jurisdiction Exists Under Section 302(a)(4) Because Mr. Ben Ammar Does Not Own, Use, or Possess Any Real Property in New York.**

Section 302(a)(4) creates personal jurisdiction only where a defendant "owns, uses, or possesses any real property situated within the state."  N.Y. C.P.L.R. § 302(a)(4).  Because Mr. Ben Ammar does not own, use, or possess any real property located in New York, *see* Ben Ammar Decl., ¶ 10, no personal jurisdiction over him exists pursuant to Section 302(a)(4).

> **B.  Mr. Ben Ammar is Not Subject to Personal Jurisdiction on the RICO Claim.**

Nationwide jurisdiction is authorized on a RICO claim, as long as the defendant resides in a district of the United States.  *See* 18 U.S.C. § 1965(b) ("[i]n any action under section 1964 of this chapter in any district court of the United States in which it is shown that the ends of justice

20

require that other parties ***residing in any other district*** be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district by the marshal thereof"). Because Section 1965(b) does not create personal jurisdiction over parties residing outside the United States, this service provision does not create personal jurisdiction over Mr. Ben Ammar, a resident of France who was served in France.[8] *See Elsevier, Inc. v. Grossman*, 77 F. Supp. 3d 331, 343 (S.D.N.Y. 2015) ("a district court relying on § 1965 may only exert this jurisdictional pull over defendants 'residing in any other district,' 18 U.S.C. § 1965(b), not foreign defendants").

Furthermore, "the Court need[] not reach this question, because Plaintiffs 'cannot rely upon 18 U.S.C. § 1965(b) to establish personal jurisdiction over each of the defendants' if the RICO claim is dismissed." *BWP Media USA Inc.*, 69 F. Supp. 3d at 352 (quoting *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 Civ. 7801(PAE), 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012)). As shown in the pending motion to dismiss, the FAC does not state a claim for relief under RICO against the outside Board representatives, including Mr. Ben Ammar. Because the FAC does not state a viable RICO claim against Mr. Ben Ammar, Plaintiffs cannot rely on the nationwide jurisdiction provision of Section 1965(b) even if that provision afforded jurisdiction over Mr. Ben Ammar, which it does not.

---

[8] Even assuming *arguendo* that Mr. Ben Ammar could be deemed a resident of California for purposes of Section 1965(b), the fact that the statute authorizes only nationwide service means that service of the Summons and FAC on Mr. Ben Ammar in France is ineffective to subject him to personal jurisdiction on the RICO claims. *See, e.g., Perkumpulan Investor Crisis Center Dressel—WBG v. Wong*, Case No. C09-1786-JCC 2012 WL 13024801, *8 (W.D. Wash. Apr. 6, 2012) ("[b]y its terms, RICO does not authorize worldwide service of process"; "a plaintiff may not rely on a defendant's national contacts to establish personal jurisdiction over the defendant before service has been effected pursuant to RICO's service provisions") (citing *Doe v. Unocal Corp.*, 27 F. Supp. 2d 1174, 1182-83 (C.D. Cal. 1998), *aff'd*, 248 F.3d 915 (9th Cir. 2001)).

4824-2049-0630

## V.     THE FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BASED UPON THE GROUNDS ASSERTED BY THE MOVING DEFENDANTS AND THOSE SET FORTH HEREIN.

Mr. Ben Ammar joins in, and incorporates by reference, the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by the Moving Defendants.  The grounds asserted by the Moving Defendants in their motion with regard to dismissal of the claims asserted against the Outside Directors, *see* Dkt. 201 at 12-68, 127-29, are equally applicable to Mr. Ben Ammar, and Plaintiffs drafted their opposition to that motion as if Mr. Ben Ammar had joined in it, *see* Dkt. 243 at 18-19 (summarizing allegations against Mr. Ben Ammar).

Mr. Ben Ammar also moves to dismiss on the grounds that: (1) Plaintiffs' allegations that Harvey Weinstein was acting within the scope of his employment with TWC precludes them from pursuing a claim for negligent supervision and retention, a claim which is generally available only where the employee acted outside the scope of his or her employment;[9] (2) Plaintiffs have not alleged facts showing that TWC's Outside Board Representatives owed any duties to them, given that the members of the Board of a Delaware limited liability company do not have the same duties as the directors of a Delaware corporation, and Plaintiffs therefore cannot maintain any claim based upon negligence as to duties owed to TWC, much less duties owed to Plaintiffs; and (3) Plaintiffs have not alleged facts showing that TWC's Outside Board Representatives were in an employer-employee or principal-agent relationship with Harvey Weinstein, based on the duties conveyed by TWC's limited liability company agreement, and

---

[9]  While there is an exception to this rule in the case of gross negligence, Plaintiffs have not pled a claim for grossly negligent supervision and retention, nor have they pled facts that could support a finding that the Outside Board Representatives acted with moral turpitude and a criminal indifference to civil obligations.  *See* pp. 24-25, *infra*.

Plaintiffs therefore have not stated claims for liability under the doctrines of *respondeat superior* or ratification.

> ### A. Because Plaintiffs Allege that Harvey Weinstein was Acting Within the Scope of His Employment and Have Not Alleged Facts Sufficient to Demonstrate Gross Negligence on the Part of Mr. Ben Ammar or the Other Outside Board Representatives, They Have Not Stated a Claim For Negligent Supervision and Retention.

"Under New York law, where an employee acts within the scope of his or her employment, the employer cannot be held liable for a claim of negligent hiring, retention, or training."[10] *Barnville v. Mimosa Cafe*, No. 1:14–CV–518–GHW, 2014 WL 3582878, *2 (S.D.N.Y. July 10, 2014) (citing *Talavera v. Arbit*, 18 A.D.3d 738, 795 N.Y.S.2d 708, 708 (2d Dep't 2005)). *See Harisch v. Goldberg*, No. 14-cv-9503 (KBF), 2016 WL 1181711, *14 (S.D.N.Y. Mar. 25, 2016) ("[i]n order to make out a claim for negligent hiring, supervision, or retention, '[t]he employee . . . must not be acting within the scope of his or her employment'") (quoting *Gray v. Schenectady City Sch. Dist.*, 86 A.D.3d 771, 927 N.Y.S.2d 442, 446 (App. Div. 2011)); *LaFontaine v. City of New York*, No. 08 Civ. 1555(SHS), 2009 WL 3335362, *12 (S.D.N.Y. Oct. 14, 2009) ("[u]nder New York law, employees' actions within the scope of their employment do not subject their employers to liability for negligent hiring, training, supervision or retention") (quoting *Coville v. Ryder Truck Rental, Inc.*, 30 A.D.3d 744, 817 N.Y.S. 179, 180 (3d Dep't 2006)). "The reason for this rule is that 'if the employee was not negligent, there is no basis for imposing liability on the employer, and if the employee was negligent, the employer

---

[10] For the reasons stated in the Moving Defendants' motion, Mr. Ben Ammar disputes that he and the other Outside Board Representatives were Harvey Weinstein's employers, and contends that the lack of an employer-employee relationship requires dismissal of Plaintiffs' claim for negligent supervision and retention as against them. This Part presents an alternative argument requiring dismissal of the claim against all defendants, even those who were Harvey Weinstein's employer, based upon Plaintiffs' contention that he was acting within the scope of his employment.

4824-2049-0630

must pay the judgment regardless of the reasonableness of the hiring or retention or the adequacy of the training.'" *Barnville*, 2014 WL 3582878, *2 (quoting *Karoon v. New York City Transit Authority*, 241 A.D.2d 323, 659 N.Y.S.2d 27, 29 (1st Dep't 1997)).

Here, the FAC repeatedly alleges that Harvey Weinstein's conduct was committed within the scope of his employment at TWC.[11]  *See* FAC at 121, 247, 250, 253, 256, 259, ¶¶ 430, 851, 863, 875, 891, 907.  These allegations, which are not made in the alternative, preclude Plaintiffs from stating a claim for negligent supervision and retention.

New York law allows a claim for negligent supervision and retention of an employee who was acting within the scope of his or her employment where the defendants are alleged to have been grossly negligent and subject to a claim for punitive damages.  *See Harisch*, 2016 WL 1181711, *14; *Barnville*, 2014 WL 3582878, *3.  "However, [the FAC] fails to plead any facts to establish a claim of gross negligence—a theory that is not mentioned once in [the FAC] and that would require [Plaintiffs] to plead facts that [the Outside Board Representatives'] conduct was 'so outrageous as to evince a high degree of moral turpitude . . . [so] as to imply a criminal indifference to civil obligations.'" *Barnville*, 2014 WL 3582878, *3 (quoting *Henderson v. UPS*, 252 A.D.2d 865, 675 N.Y.S.2d 715, 716 (3d Dep't 1998)).

The FAC alleges a claim for negligent supervision and retention, without any allegations of gross negligence.  *See* FAC at 208-09, ¶¶ 768-73.  Furthermore, the facts alleged in the FAC

---

[11]  To be clear, Mr. Ben Ammar disagrees that conduct like that allegedly engaged in by Harvey Weinstein could have been within the scope of his employment with TWC. As shown by the Moving Defendants, *see*, *e.g.*, Dkt. 201 at 4, it is well-established New York law that a person who engages in sexual misconduct does so for personal motives and not within the scope of his employment. *Id.* (quoting *Doe v. Alsaud*, 12 F. Supp. 3d 674, 677 (S.D.N.Y. 2014), for the proposition that "[n]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault").  However, Plaintiffs are bound by their allegations to the contrary, without which their other state law claims would fail as a matter of law.

4824-2049-0630

show that the alleged negligence of the Outside Board Representatives, including Mr. Ben

Ammar, does not come anywhere near moral turpitude implying a criminal indifference to civil

obligations.  Plaintiffs have not alleged any facts that could support such a finding with regard to

the knowledge and conduct of the Outside Board Representatives in or prior to 2008 (when three

of the four named Plaintiffs allege sexual assaults) or 2011 (when the fourth of the four named

Plaintiffs alleges a sexual assault).  Accordingly, Plaintiffs cannot amend the FAC to state a

claim for grossly negligent supervision and retention, and the Court should dismiss Count IV for

Negligent Supervision and Retention without leave to amend.

### B.   Plaintiffs' State Law Claims Fail Because the FAC Does Not Allege Any Facts to Contradict the Limited Duties and Powers of Board Representatives of a Delaware Limited Liability Company.

The FAC alleges that TWC is a Delaware limited liability company.  *See* FAC at 13, ¶

33.  However, the FAC's state law claims implicitly assume that the Outside Board

Representatives have the same authority as the board of a Delaware corporation, which

disregards the fundamental distinctions drawn by Delaware statute between the management of

Delaware corporations and Delaware limited liability companies.  As discussed by the Moving

Defendants, Plaintiffs cannot allege that the Outside Board Representatives owed the duties with

regard to Harvey Weinstein's alleged conduct, or had the relationships with Harvey Weinstein,

that would be necessary for Plaintiffs to plead viable state law claims against them even if they

were corporate directors.  In this Part, Mr. Ben Ammar will elaborate why the FAC's state law

claims against the Outside Board Representatives are insufficient because Plaintiffs have not

made and cannot make the allegations necessary to seek to impose liability on the members of a

board of a Delaware limited liability company, whose duties and relationships are not the same

as those of corporate directors.

25

By default, a Delaware corporation is managed by its board of directors.  *See* 8 Del. C. §

141(a) ("[t]he business and affairs of every corporation organized under this chapter shall be

managed by or under the direction of a board of directors, except as may be otherwise provided

in this chapter or in its certificate of incorporation").  By contrast, a Delaware limited liability

company is by default managed by its members unless the limited liability company agreement

delegates authority to managers or other persons (such as a board).  *See* 6 Del. C. § 18-402

("[u]nless otherwise provided in a limited liability company agreement, the management of a

limited liability company shall be vested in its members . . . ; provided however, that if a limited

liability company agreement provides for the management, in whole or in part, . . . by a manager,

the management of the limited liability company, to the extent so provided, shall be vested in the

manager"); 6 Del. C. § 18-407 ("[u]nless otherwise provided in the limited liability company

agreement, a member or manager . . . has the power and authority to delegate to 1 or more other

persons any or all of the member's or manager's, as the case may be, rights, powers and duties to

manage and control the business and affairs of the limited liability company").

Notwithstanding the fact that the Delaware Limited Liability Company Act confers the

authority to manage and direct the affairs of a Delaware limited liability company on the

company's members unless otherwise provided in the limited liability company agreement, *see* 6

Del. C. § 18-402, the FAC makes no allegations whatsoever regarding the terms of TWC's

limited liability company agreement or the scope of the authority conferred by such agreement

on TWC's Outside Board Representatives, including Mr. Ben Ammar.  Accordingly, the FAC

fails to allege facts showing that Mr. Ben Ammar and the other Outside Board Representatives:

(1) owed any duties to TWC, much less Plaintiffs, with regard to the retention and supervision of

Harvey Weinstein, a required element of Count IV for Negligent Supervision and Retention; (2)

were in an employer-employee relationship with Harvey Weinstein, a predicate to imposing

*respondeat superior* liability upon them, the basis for Plaintiffs' attempt to hold them liable

under Count VIII for Civil Battery, Count X for Assault, Count XII for False Imprisonment,

Count XIV for Intentional Infliction of Emotional Distress, and Count XVI for Negligent

Infliction of Emotional Distress; or (3) were in a principal-agent relationship with Harvey

Weinstein, a required element of Count XVIII for Ratification.

Absent such allegations, the FAC does not state a claim against Mr. Ben Ammar and the

other Outside Board Representatives, regardless of whether Plaintiffs could refute the other

arguments made by the Moving Defendants for liability on the state law claims (which they have

not, and cannot).  Because Plaintiffs cannot allege that TWC's limited liability company

agreement imposed obligations on the Outside Board Representatives with regard to the

supervision of Harvey Weinstein or created an employer-employee or principal-agent

relationship between the Outside Board Representatives and Harvey Weinstein, the FAC's state

law claims should be dismissed without leave to amend.

> 1. **Plaintiffs Have Not Alleged Facts Showing that Mr. Ben Ammar, as an Outside Board Representative of a Delaware Limited Liability Company, Owed Any Duties to Them With Regard to the Supervision and Retention of Harvey Weinstein.**

Mr. Ben Ammar emphasizes that, as argued by the Moving Defendants, Plaintiffs have

not alleged a factual basis for finding that the Outside Board Representatives owed any duty to

Plaintiffs.  "Under New York law, . . . , '[a] defendant generally has no duty to control the

conduct of third persons so as to prevent them from harming others.'"  *Ehrens v. Lutheran*

*Church*, 385 F.3d 232, 235 (2d Cir. 2004) (quoting *D'Amico v. Christie*, 71 N.Y.2d 76, 88, 524

N.Y.S.2d 1, 518 N.E.2d 896, 901 (1987)).  For Plaintiffs to prevail on a claim that a defendant

negligently failed to control the conduct of third parties, "there must first be a legal duty owed by defendant to them.  Foreseeability of harm is alone not enough."  *D'Amico*, 71 N.Y.2d 76, 87.

Because foreseeability without a duty cannot support a claim for negligence, Plaintiffs' allegations that Mr. Ben Ammar and the other Outside Board Representatives knew of facts putting them on notice of Harvey Weinstein's claimed propensities are insufficient, by themselves, to support such a claim.  Instead, Plaintiffs' claims are necessarily predicated upon the contention that Mr. Ben Ammar and the Outside Board Representatives owed them a duty by reason of their positions on TWC's Board.  Thus, Plaintiffs allege that "[a]s a Board member of TWC from October 21, 2005 through July 13, 2018, Ben Ammar was responsible for oversight of the Board's Co-Chairman Harvey Weinstein."  FAC at 132, ¶ 494.

As the Moving Defendants argue, even in the context of a corporation, *see* Dkt. 201 at 55, a board of directors owes a duty only to the company and its owners, not to third parties.  *See Norlin Corp. v. Rooney, Pace Inc.*, 744 F.2d 255, 264 (2d Cir. 1984); *Kunz v. New Netherlands Routes, Inc.*, 64 A.D.3d 956, 957 (N.Y. App. Div. 2009).  Furthermore, as discussed above, the duties of the directors of a Delaware limited liability company are far more circumscribed than the duties of the directors of a Delaware corporation.  This is because under Delaware law: (1) a Delaware corporation is managed by its board of directors, *see* 8 Del. C. § 141(a); and (2) a Delaware limited liability company is managed by its members or the manager(s) identified in a limited liability company agreement except to the extent that authority has been delegated to other parties as permitted by law, *see* 6 Del. C. §§ 18-402, 18-407.

The FAC includes no allegations as to any management authority that had been delegated to the Board with regard to the oversight of Harvey Weinstein.  Absent such allegations, there is no basis for finding that the Outside Board Representatives owed any duty to TWC, let alone to

Plaintiffs, with regard to Harvey Weinstein's alleged conduct.  Accordingly, the Court should dismiss Count IV for Negligent Supervision and Retention based upon failure to state a claim.

        2.      **Plaintiffs Have Not Alleged Facts Showing that Mr. Ben Ammar, as an Outside Board Representative of a Delaware Limited Liability Company, was in an Employer-Employee or Principal-Agent Relationship with Harvey Weinstein, and Plaintiffs Therefore Have Failed to State Claims that Rely on the Doctrines of *Respondeat Superior* and Ratification.**

Mr. Ben Ammar emphasizes that, as argued by the Moving Defendants, Plaintiffs have not alleged a factual basis for finding that the Outside Board Representatives are employers of Harvey Weinstein and therefore may be held liable under the doctrine of *respondeat superior*. Accordingly, the Court should dismiss as against Mr. Ben Ammar and the other Outside Board Representatives each of Plaintiffs' claims against them that relies upon the doctrine of *respondeat superior*, *i.e.*, Count VIII for Civil Battery, Count X for Assault, Count XII for False Imprisonment, Count XIV for Intentional Infliction of Emotional Distress, and Count XVI for Negligent Infliction of Emotional Distress.  *See* FAC at 241, 244, 246, 251, 252, ¶¶ 853, 865, 877, 901, 909.  Similarly, as shown by the Moving Defendants, Plaintiffs have not alleged a factual basis for finding that the Outside Board Representatives were in a principal-agent relationship with Harvey Weinstein, and the Court should therefore dismiss Count XVIII for Ratification, which relies upon the allegation that Harvey Weinstein was in "an actual or assumed agency relationship" with TWC's Board.  *Id.* at 254, ¶ 918.

"The key element of *respondeat superior* . . . is an employment relationship between the alleged tortfeasor and the party that the plaintiff is seeking to hold vicariously liable." *Abdelhamid v. Altria Grp., Inc.*, 515 F. Supp. 2d 384, 398 (S.D.N.Y. 2007).  Ratification requires, *inter alia*, a principal-agent relationship.  *See A. Terzi Prods., Inc. v. Theatrical Protective Union*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998).  Mr. Ben Ammar is unaware of any

4824-2049-0630

authority that suggests that there is an employer-employee or principal-agent relationship between even a corporate director and an employee of the corporation, based solely on the director's status as a director.  As discussed above, the duties of the directors of a Delaware limited liability company are far more circumscribed than the duties of the directors of a Delaware corporation because under Delaware law: (1) a Delaware corporation is managed by its board of directors, *see* 8 Del. C. § 141(a); and (2) a Delaware limited liability company is managed by its members or the manager(s) identified in a limited liability company agreement except to the extent that authority has been delegated to other parties as permitted by law, *see* 6 Del. C. §§ 18-402, 18-407.

The FAC does not and cannot allege any basis for finding that TWC's limited liability company agreement somehow created an employer-employee or principal-agent relationship between TWC's Outside Board Representatives and Harvey Weinstein.  Absent such allegations, there is no basis for finding that the Outside Board Representatives and Harvey Weinstein were in an employer-employee or principal-agent relationship, or that they could be held liable under a theory of *respondeat superior* or ratification for his alleged conduct.  Accordingly, the Court should dismiss Count VIII for Civil Battery, Count X for Assault, Count XII for False Imprisonment, Count XIV for Intentional Infliction of Emotional Distress, Count XVI for Negligent Infliction of Emotional Distress, and Count XVIII for Ratification based upon failure to state a claim.

4824-2049-0630

VI.  **CONCLUSION**

For the reasons discussed above, the Court should dismiss the FAC as against Mr. Ben

Ammar based upon (1) lack of personal jurisdiction and (2) failure to state a claim.


Dated: February 13, 2019                          Respectfully submitted,


                                   By:    /s/ Kathy A. Jorrie
                                          Kathy A. Jorrie (admitted *pro hac vice*)
                                          (kathy.jorrie@pillsburylaw.com)
                                          Jeffrey D. Wexler (admitted *pro hac vice*)
                                          (jeffrey.wexler@pillsburylaw.com)
                                          PILLSBURY WINTHROP SHAW
                                            PITTMAN LLP
                                          725 S. Figueroa St., Suite 2800
                                          Los Angeles, California 90017-5406
                                          Telephone: (213) 488-7100
                                          Fax: (213) 629-1033

                                          Matthew D. Stockwell
                                          (matthew.stockwell@pillsburylaw.com)
                                          PILLSBURY WINTHROP SHAW
                                            PITTMAN LLP
                                          1540 Broadway
                                          New York, New York 10035
                                          Telephone: (212) 858-1558
                                          Fax: (212) 858-1500

                                          *Attorneys for Defendant Tarak Ben Ammar*


31

4824-2049-0630