UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOUISETTE GEISS, SARAH ANN THOMAS
(a/k/a SARAH ANN MASSE), MELISSA
THOMPSON, MELISSA SAGEMILLER,
NANNETTE MAY (f/k/a NANNETTE KLATT),
KATHERINE KENDALL, ZOE BROCK,
CAITLIN DULANY, LARISSA GOMES, and
JANE DOE, individually and on behalf of all
others similarly situated,

                      Plaintiffs,

                      v.

THE WEINSTEIN COMPANY HOLDINGS,
LLC, MIRAMAX FILM NY LLC, THE WALT
DISNEY COMPANY, DISNEY ENTERPRISES,
INC., BUENA VISTA INTERNATIONAL, INC.,
HARVEY WEINSTEIN, ROBERT WEINSTEIN,
DIRK ZIFF, TIM SARNOFF, MARC LASRY,
TARAK BEN AMMAR, LANCE MAEROV,
RICHARD KOENIGSBERG, PAUL TUDOR
JONES, JEFF SACKMAN, JAMES DOLAN,
MICHAEL EISNER, IRWIN REITER, DAVID
GLASSER, FRANK GIL, RICK SCHWARTZ,
FABRIZIO LOMBARDO, MARK GILL,
NANCY ASHBROOKE, BARBARA
SCHNEEWEISS, MIRAMAX DOES 1-10,
TALENT AGENCY DOES 1-100, and JOHN
DOES 1-50, inclusive,

                      Defendants.
------------------------------------------------------------X

1:17-cv-09554 (AKH)

**DEFENDANT HARVEY WEINSTEIN'S REPLY MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO DISMISS THE AMENDED COMPLAINT, AND IN RESPONSE TO PLAINTIFFS' OPPOSING MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

| | **Page** |
|---|---:|
| PRELIMINARY STATEMENT ………………………………………………….. | 1 |
| **ARGUMENT** | |
|     I.    THE SEX TRAFFICKING CLAIM SHOULD BE DISMISSED ………… | 2 |
|     II.    PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO DEMONSTRATE TOLLING OF STATUTES OF LIMITATIONS FOR COUNTS III-XVIII …………………………………………….. | 4 |
|     III.    THE RICO CLAIMS FAIL ………………………………………….. | 8 |
|     IV.    PLAINTIFFS HAVE ABANDONED THEIR VICARIOUS LIABILITY CLAIMS ……………………………………………………………… | 10 |
| CONCLUSION ……………………………………………………………….... | 11 |

**PRELIMINARY STATEMENT**

Defendant Harvey Weinstein, by his attorneys Lewis Brisbois Bisgaard & Smith LLP and Kupferstein Manuel LLP, respectfully submits this Memorandum of Law in further support of his motion to dismiss the Amended Complaint, and in response to Plaintiff's opposing Memorandum of Law (the "Plaintiffs' Opp.").[1]

Mr. Weinstein's motion, and that of the other Moving Defendants, should be granted because Plaintiffs have been unable to plead viable and timely causes of action.[2] The Plaintiffs' Opp. does not even attempt to refute the argument that application of the Justice for Victims of Trafficking Act of 2014, formerly the Victims of Trafficking and Violence Protection Act of 2000 (the "Act"), to this case is inconsistent with the legislative intent behind the law. This case does not involve human trafficking, people being held against their will or forced to engage in sexual acts for the monetary gain of their captors. Plaintiffs also fail to address Mr. Weinstein's argument that the FAC does not allege a commercial sex act under the Act. In fact, Plaintiffs' Opp. attempts to ignore the fact that Mr. Weinstein moved to dismiss and simply assumes that this Court will stretch the bounds of a statute enacted to combat modern day slavery to save their untimely intentional tort claims. There is no precedent for this extraordinary application of a law enacted to combat human trafficking. It is not a coincidence that the only law applying the Act in this manner are from cases against Mr. Weinstein. Emboldened by the torrent of negative media coverage over the past year and a half, there is no limit to the lengths plaintiffs will go to concoct causes of action against Mr. Weinstein and those formerly associated with The

---

[1] The abbreviations used herein are those defined in Mr. Weinstein's initial Memorandum of Law (the "Weinstein Memo.").

[2] Mr. Weinstein adopts and joins in the arguments set forth in the Moving Defendants' Reply Memorandum of Law ("Moving Defendants' Reply"), where applicable, and does not restate those arguments herein.

Weinstein Company. This Court should put a stop to this improper expansion of the laws against human trafficking.

As further set forth in the Moving Defendants' Reply, Plaintiffs, after being given a second bite at the apple, again fail to plead the elements of a RICO cause of action. In any event, Plaintiffs' RICO claims, as well as their state law claims, are all untimely. The Plaintiffs' Opp. concedes that these claims are brought well outside the statutes of limitations. Plaintiffs do not, because they cannot, point to non-conclusory allegations in the Amended Complaint to demonstrate that any tolling doctrine applies.

Finally, Plaintiffs do not oppose Mr. Weinstein's motion to dismiss the vicarious liability claims of negligent hiring and supervision, and ratification. These claims as asserted against Mr. Weinstein – the product of improper group pleading – should be deemed abandoned and dismissed.

## ARGUMENT

### I

### THE SEX TRAFFICKING CLAIM SHOULD BE DISMISSED

Plaintiffs Geiss, Thomas, and Thompson offer no substantive rebuttal to Mr. Weinstein's showing that application of the Act to their claims is wholly inconsistent with the legislative purpose of the statute. Further, Plaintiffs' Opp. does not address the argument that the FAC fails to allege the existence of a "commercial sex act" under the Act. Instead, it simply argues that a "sex act" occurred without addressing the requisite commercial component. (Plaintiffs' Opp. pp. 83). Plaintiffs' utter failure to address this material threshold question in their opposition to Mr. Weinstein's motion should be deemed as waiver and abandonment of the sex trafficking claim. *See Lipton v. Cty. Of Orange*, *N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may,

and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed.").

"The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591 (e)(3). Plaintiffs' reference to Judge Sweet's decision in *Noble v. Weinstein* is misplaced. As set forth in the Weinstein Memo., that decision was wrongly decided. As the Court in *Noble* acknowledged, applying the Act to claims of alleged assaults in the context of single meetings to discuss film or business opportunities was not supported by any on point authority. *Noble v. Weinstein,* 335 F. Supp.3d 504, 520 (S.D.N.Y. 2018). In construing the Act broadly to apply to allegations that Mr. Weinstein assaulted the plaintiff at a meeting to discuss film opportunities, Judge Sweet's decision cites to several cases purporting to apply the Act to similar fact patterns. *Id. at* 504, 516, n. 5. (". . . other courts have applied Section 1591 to defendants who have lured women, under false pretenses and with lucrative promises, for sexual purposes."). However, the cases relied on in the *Noble* decision are in no way similar to the allegations in that case or here.

An examination of the facts of the cases relied on by *Noble* in applying the Act highlight the error in the Court's overly broad application of the law. *United States v. Thompson*, 864 F.3d 837 (7th Cir. 2017), involved a prostitution operation in which the defendant sold a minor's sexual services to at least 15 different men across three states. Similarly, in *United States v. Mack*, 808 F.3d 1074 (6th Cir. 2015), the defendant enticed a woman to have sex with him in exchange for drugs, but then claimed the woman owed him money for the drugs and forced her into prostitution to pay down the claimed debt. In *Lawson v. Rubin*, 17-Civ-6404, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Arp. 29, 2018), the defendants were alleged to have participated in a scheme where women were brought to New York City with promises of being paid for fetish

3

photographs, "fetish play, and "companionship" with defendant Rubin, but were then drugged and assaulted by Rubin. Afterwards, the women were paid for these encounters. *Id.* at \*4-13. The remaining cases relied on in *Noble* are similarly factually distinguishable as they all involve women trafficked and assaulted for clear financial gain.[3]

These cases all have common themes of kidnapping and commercial sexual transactions such as prostitution, acting as a pimp, and pornography. Nothing of the like is present here. Plaintiffs do not allege they were forced to have sex with other individuals, trafficked, kidnapped, or otherwise brought somewhere against their will. Similarly, there are no allegations that anything of value was exchanged. In fact, the gravamen of Plaintiffs' claims is that they did not receive anything of value. Moreover, there are no allegations that anything of commercial value was received by Mr. Weinstein or anyone else.

Plaintiffs' sex trafficking claims are nothing more than a thinly veiled attempt to save untimely intentional tort claims. This Court should not permit an expansion of a statute so far outside the bounds of Congress' intent when the harms Plaintiffs alleged to have suffered are compensable under a variety of other laws.

## II

**PLAINTIFFS HAVE FAILED TO MEET THEIR BURDEN TO DEMONSTRATE TOLLING OF STATUTES OF LIMITATIONS FOR COUNTS III-XVIII**

---

[3] *See United States v. Mozie*, 752 F.3d 1271 (11th Cir. 2014) (defendant sold the sexual services of teenage women in what the court described as a "brothel business"); *United States v. Flanders*, 752 F.3d 1317 (11th Cir. 2014) (defendants lured women to South Florida, drugged them, and then sold films of them engaged in sex acts); *United States v. Rojas-Coyotl*, 13-Cr-128, 2014 U.S. Dist. LEXIS 65693 (N.D.Ga. Feb. 7, 2014) (defendants smuggled women into the United States and then forced them to engage in prostitution); *United States v. Cook*, 782 F. 3d 983 (8th Cir. 2015) (defendant paid for sex with minor by providing sadomasochistic and torture videos); *United States v. Rivera*, No. 12-dr-121, 2012 WL 6589526 (M.D. Fla. Dec. 18, 2012) (minor, who was transported across state lines, was ordained as a prophet and given cash, an iPod, and a cell phone in exchange for sex).

4

Plaintiffs fail to demonstrate their RICO claims are timely for the reasons set forth in the Moving Defendants' Reply. Additionally, Plaintiffs' Opp. does not contest the fact that their state law claims are untimely. As such, plaintiffs bear the burden of demonstrating a basis to toll their claims. As argued in the Moving Defendants' Reply, Plaintiffs' argument that the claims should be tolled because the policy underpinning statutes of limitations is inapplicable defies logic and should be rejected. (See, Moving Defendants' Reply).

Plaintiffs fail to rebut Mr. Weinstein's argument that there is no basis for tolling based on equitable estoppel. (Weinstein Memo. pp. 2-3). The Plaintiffs' Opp. does not identify any specific actions by Mr. Weinstein whereby he mispresented the statute of limitations or otherwise tried to convince Plaintiffs not to file suit on a timely basis. Further, Plaintiffs do not, because they cannot, allege that Mr. Weinstein concealed his alleged assaults. *See Twersky v. Yeshiva Univ.*, 993 F. Supp.2d 429, 442 (S.D.N.Y 2014), *aff'd,* 579 F. App'x 7 (2d Cir. 2014). Rather,

Plaintiffs were well aware of the when and how of the alleged acts of sexual misconduct the moment they occurred. Moreover, Plaintiffs each allege that they suffered emotional distress immediately after the alleged encounters with Mr. Weinstein, thus confirming that they knew of their claimed injuries and were on notice of their tort claims.

Plaintiffs' reliance on *Saveria JFK, Inc. v. Flughafen Wien, AG,* 15-Civ-6195 (E.D.N.Y. May 3, 2016) for the argument that equitable estoppel tolls the limitations period on the RICO claims is not only misplaced, but based upon a misrepresentation of that decision. First, the plaintiff in *Saveria* did not assert a RICO claim, but rather common law fraudulent concealment and tortious interference with prospective economic advantage. *Id.* at *8. Second, the Court in

5

*Saveria* did not consider the full merits of defendant's motion to dismiss because it remanded the case back to state court. *Id.* at *29.

Plaintiffs' reliance on *Zimmerman v. Poly Prep Country Day School*, 888 F. Supp.2d 317 (E.D.N.Y. 2012), is similarly misplaced for the same reasons it was when Plaintiffs' tried to rely on it during the first round of briefing. *Zimmerman* involved alleged sexual abuse by the plaintiffs' football coach. Plaintiffs in that case argued they were deceived into believing they had no claim against the school because the school had no knowledge of the coach's wrongdoing based on alleged affirmative misrepresentations by the school. Here, the FAC does not allege any facts that, if true, would demonstrate Mr. Weinstein made affirmative misrepresentations such that Plaintiffs would not believe they had a claim against him. Quite to the contrary, Plaintiffs certainly were aware they were auditioning for parts and not receiving them in the years following the alleged assaults. Plaintiffs' conspiracy theories of a network of spies and agents – which is based almost entirely on an article in the New Yorker – is a red herring. Critically, not one Plaintiff alleges she was ever contacted by or came in contact with any potential spy posing as a journalist, etc., during the period in which their claims were timely. Moreover, Plaintiffs concede they were not even aware of these alleged suppressive tactics until October 2017, long after their claims had already expired. "Having learned in October 2017 of Defendants' years-long practice of Black cubing, Plaintiffs' swung into action, filing suit in just a few months' time." (Plaintiffs' Opp. pp. 60-61). Plaintiffs cannot simultaneously claim they were coerced not to file timely suit and that they did not learn of the supposed tactics and methods to ensure their silence until October 2017, years after the statutes of limitations had expired.

Duress does not save Plaintiffs' untimely RICO and state law claims. There are no allegations that Mr. Weinstein made any specific threats that would have prevented them from

filing suit within the limitations period. *See Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.*, 30 F.3d 339, 347 (2d Cir. 1994); *see also Overall v. Estate of Klotz,* 52 F.3d 398, 404 (2d Cir. 1995) ("Duress involves both threats or force by the defendant, and the submission of the plaintiff's free will to those threats"). In order to toll based on duress, a plaintiff must allege the tortious conduct continued. *Overall,* 52 F.3d at 405. Plaintiffs Klatt, Brock, Sagemiller, Dulany, Geiss, and Thomas only point to the specifics of the alleged assaults to show duress and do not point to any by Weinstein *after* those alleged encounters (Plaintiffs' Opp. pp. 62-64). Plaintiff Kendall only alleges that Mr. Weinstein called a few times to ask if they were still friends. This is hardly conduct that would prevent Kendall from exercising free will. *See Id.* Kendall's allegation concerning her being contacted in 2017 is irrelevant because her claims were untimely by over two decades at that point. Plaintiff Gomes merely alleges that she heard secondhand that Mr. Weinstein would "destroy" people who spoke out against him. As such, Gomes does not even attempt to allege any actions against her by Mr. Weinstein.

Similarly, Plaintiff Thompson also only alleges she learned of Mr. Weinstein's "reputation for ruining the lives of those who spoke out against him." (Plaintiffs' Opp. p. 63). Thompson's claims concerning Mr. Weinstein's former criminal counsel in 2017 are irrelevant as her claims were untimely by several years by then. Plaintiff Doe makes only generalized allegations that she was emotionally abused and harassed for a period of years (Plaintiffs' Opp. 64). This is insufficient to establish duress. *See Silva Run Worldwide Ltd. v. Gaming Lottery*

*Corp.*, 96-Civ-3231, 2000 U.S. Dist. LEXIS 3805, at *15, n. 4 (E.D.N.Y. Mar. 28, 2000) (stating duress requires specificity as to the speaker, place, date and nature of the duress).[4]

Again, Plaintiffs' theory is that they had no idea Mr. Weinstein was doing anything with respect to their careers until October 2017. This is fatal to their tolling arguments. If, as they claim, Plaintiffs were not aware that Mr. Weinstein was suppressing their careers in the years following the alleged assaults, then they have no excuse for not asserting their claims timely.

Plaintiffs do not respond to Mr. Weinstein's argument that duress tolling is not available for causes of action where duress is not an element. Accordingly, Plaintiffs have waived any opposition to the argument that the IIED and NIED claims cannot be tolled by duress. *See Lipton*, 315 F. Supp. 2d at 446. Plaintiffs also fail to allege any specific conduct by Mr. Weinstein, outside of the alleged assaults themselves, that constitute duress. (Plaintiffs' Opp. pp. 62-64).

In any event, as demonstrated above, Plaintiffs do not allege they were aware of any conduct by Mr. Weinstein after the alleged assaults – but before the statutes of limitations expired – that placed them under duress. In fact, Plaintiffs appear not to have had any contact with Mr. Weinstein at all after the alleged incidents. As such, there is no basis to toll these grossly untimely claims.

### III

### THE RICO CLAIMS FAIL

Mr. Weinstein joins in the arguments set forth in the Moving Defendants' Reply with respect to Plaintiffs' inability to plead the elements of RICO. For the second time, Plaintiffs have

---

[4] Plaintiff Doe also invokes the recently enacted New York Child Victims Act. Her invocation of this statue is premature as any presently time-barred claim cannot be brought under that law until August 14, 2019. CPLR 214-g.

failed to allege the existence of a RICO enterprise or a cognizable RICO injury. This Court should follow Judge Engelmayer's decision in *Canosa*, and not permit Plaintiffs to transform alleged intentional torts into a RICO claim. *See Canosa v. Ziff, et al.*, 18-Civ-04115, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019).

Among other deficiencies, Plaintiffs still fail to allege predicate acts. There is no sex trafficking here as set forth above and in the Weinstein Memo, and Plaintiffs still fail to plead anything remotely close to witness tampering. Mr. Weinstein allegedly keeping his hand on Plaintiff Brock's chair in a theater is not witness tampering under any stretch of the imagination. Likewise, there is no support for the claim that allegedly moving Plaintiff Sagemiller's bags to a different plane constitutes witness tampering. The allegations that Mr. Weinstein locked Plaintiff Klatt in a stairwell to prevent her going to authorities is conclusory and lacks any allegation that this was done to prevent her reporting any crime. The alleged harassment of Plaintiff Doe is also conclusory and does not contain any specific allegations from which to draw an inference of witness tampering. Lastly, Plaintiff Thompson's claims concerning Mr. Weinstein's former criminal counsel do not contain any allegations of specific conduct by Mr. Weinstein. (Plaintiffs' Opp. 88-89) Such conclusory allegations are insufficient to plead the predicate act of witness tampering. *See Rambarran v. Mount Sinai Hosp.*, 06-Civ-5100, 2008 U.S. Dist. LEXIS 30580, at *22 (S.D.N.Y. Mar. 28, 2008) (vague allegations that defendant threatened, intimidated, or otherwise persuaded a witness to testify falsely insufficient to plead witness tampering as a predicate act).

As set forth in the Weinstein Memo., Plaintiffs' allegations of mail and wire fraud fail to satisfy the heightened pleading requirements of Rule 9(b). Plaintiffs' request that this Court excuse them from the pleading requirements of Rule 9(b) should be given short shrift (See,

9

Moving Defendants' Reply). Moreover, Plaintiffs must do more than simply allege Mr. Weinstein or an agent used a telephone or the mails to contact a plaintiff. Plaintiffs must "detail the specific statements that are false or fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018). The FAC comes nowhere close to meeting this pleading burden despite Plaintiffs' being given a second chance to plead their claims. Plaintiffs cannot meet this burden because they have no knowledge of any such communications or misrepresentation. Instead, these claims are primarily derived from a New Yorker article and other media reports concerning non-parties (*See, e.g.* FAC ¶¶ 439-445).[5] Plaintiffs have failed for the second time to plead these allegations with the requisite specificity. They should not be afforded a third.

## IV

## PLAINTIFFS HAVE ABANDONED THEIR VICARIOUS LIABILITY CLAIMS

Plaintiffs' opposition does not oppose or address Mr. Weinstein's motion for dismissal of the negligent hiring and supervision and ratification claims against him. As such, said claims should be deemed abandoned and dismissed. *Lipton*, 315 F. Supp. 2d at 446.

---

[5] As an illustrative example of Plaintiffs' reliance on secondary sources for their allegations, Ronan Farrow – author of the New Yorker piece on The Weinstein Company – is cited approximately 45 times in the FAC.

## CONCLUSION

For the reasons set forth herein, in the previously submitted papers, and in the papers of the Moving Defendants, it is respectfully submitted that the First Amended Complaint be dismissed in its entirety without leave to replead.

Dated: New York, New York
February 28, 2019

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Elior D. Shiloh
Elior D. Shiloh, Esq.
Brian Pete, Esq.
*Attorneys for Defendant Harvey Weinstein*
77 Water Street, Suite 2100
New York, New York 10005
Tel: 212-232-1300
elior.shiloh@lewisbrisbois.com
brian.pete@lewisbrisbois.com

**KUPFERSTEIN MANUEL LLP**

By: /s/ Phyllis Kupferstein
Phyllis Kupferstein, Esq.
865 South Figueroa Street, Suite 3338
Los Angeles, California 90017
Tel: 213-988-7531
pk@kupfersteinmanuel.com