**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all other similarly situated, | 17 Civ. 9554 (AKH) (BCM) |
| | ORAL ARGUMENT REQUESTED |
| Plaintiffs, | |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX FILM NY, LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., BUENA VISTA INTERNATIONAL, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, BARBARA SCHNEEWEISS, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive | |
| Defendants. | |

**REPLY BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

**THE FIRST AMENDED CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

Page

I.   PRELIMINARY STATEMENT ...................................................................................1

II.  VIRTUALLY ALL CLAIMS ARE TIME-BARRED (COUNTS III-XVIII).......................4

    A.  The Limitations Period Has Run On The RICO Claims...........................................4
        1.  Plaintiffs Misapply The Injury-Discovery Rule ............................................4
        2.  Thompson's Irrelevant 2017 Allegations Do Not Save Her Claims...........................7
    B.  Plaintiffs Concede The Limitations Period Has Run On Their State-Law Claims..............8
    C.  No Tolling Principle Can Revive Plaintiffs' Stale Claims ......................................8
        1.  Plaintiffs' Policy Arguments Are Inapplicable..........................................8
        2.  Equitable Estoppel Does Not Revive Plaintiffs' Claims .............................10
        3.  Plaintiffs Concede Duress And Continuing Violations Do Not Apply ....................14

III. PLAINTIFFS CANNOT PLEAD A RICO CLAIM (COUNTS V AND VI) ....................17

    A.  The Opposition Cannot Remedy The FAC's Failure To Plead Predicate Acts ...............17
    B.  Plaintiffs Cannot Allege A RICO Enterprise.............................................20
    C.  The Outside Directors Did Not Participate In A RICO Enterprise...............................23
    D.  Plaintiffs Cannot Establish RICO Standing..............................................25
    E.  Plaintiffs Fail To Save Their Deficient RICO Conspiracy Claim .....................................28

IV.  PLAINTIFFS CANNOT PLEAD A SEX-TRAFFICKING CLAIM (COUNT II).............29

    A.  In Their Opposition, Plaintiffs Dismiss Five Directors From Their Claim ......................29
    B.  Count II Fails Against The Other Directors................................................30
        1.  Plaintiffs Ignore Key Differences In The 2003 And 2008 TVPRA...........................30
        2.  Plaintiffs Cannot Plead The Participation Element ....................................31
        3.  Plaintiffs Cannot Plead The Benefits Element................................................34
        4.  Plaintiffs Cannot Plead Scienter Regarding The "Venture" ...................................36

V.   PLAINTIFFS CANNOT PLEAD A NEGLIGENT SUPERVISION AND RETENTION
    CLAIM (COUNT IV)...........................................................................................38

    A.  Plaintiffs Concede They Cannot Plead The "Premises or Chattels" Element ..................39
    B.  Plaintiffs Cannot Allege The Outside Directors Employed Harvey Weinstein................39
    C.  Plaintiffs Cannot Allege Any Outside Director Had Knowledge Prior To Any
    Injury...................................................................................................42
    D.  Plaintiffs Cannot Allege Any Outside Director Knew Or Should Have Known Of
    Harvey Weinstein's Propensity For Sexual Misconduct ...................................43

VI.  PLAINTIFFS CANNOT PLEAD A RATIFICATION CLAIM (COUNT XVIII)..............46

VII. PLAINTIFFS CANNOT PLEAD VICARIOUS LIABILITY (COUNTS VII-XVI)..........49

VIII. THE FAC'S UNCURED FLAWS REQUIRE DISMISSAL TO BE WITH PREJUDICE . 53

IX.   ADDITIONAL REPLY ARGUMENTS OF DEFENDANT MIRAMAX FILM NY,
      LLC .......................................................................................................................55

      A. Each And Every Claim Against Miramax Is Untimely ..................................55
         1.  Plaintiffs Allege No Post-2005 Wrongdoing Involving Miramax..............55
         2.  Newly Passed Legislation Does Not Save Jane Doe's Claims ...................57
      B. Plaintiffs Have No RICO Claims Against Miramax.......................................59
      C. Plaintiffs Have No State-Law Claims Against Miramax................................62

X.    ADDITIONAL REPLY ARGUMENTS OF THE DISNEY DEFENDANTS ...................64

      A. The Disney Defendants Are Not Named Defendants In Plaintiffs' Sex Trafficking
         And RICO Claims...........................................................................................65
      B. All Claims Against The Disney Defendants Are Untimely.............................66
      C. Plaintiffs Failed To Plead Sufficient Facts As To All Claims Against The Disney
         Defendants ......................................................................................................68
         1.  Plaintiffs Did Not, And Cannot, Adequately Plead That Harvey Weinstein
             Was Employed By The Disney Defendants................................................68
         2.  Plaintiffs Did Not, And Cannot, Adequately Plead That The Disney
             Defendants Knew, Or Should Have Known, Of Harvey Weinstein's Conduct ..........69
         3.  Plaintiffs Did Not, And Cannot, Adequately Plead That Harvey Weinstein's
             Conduct Occurred With The Disney Defendants' Chattels Or On Their
             Premises ....................................................................................................69
         4.  Plaintiffs Did Not, And Cannot, Adequately Plead That Harvey Weinstein
             Acted Within The Scope Of His Employment ...........................................70

XI.   ADDITIONAL REPLY ARGUMENTS OF DEFENDANT THE WEINSTEIN
      COMPANY HOLDINGS, LLC ...............................................................................71

      A. Plaintiffs Fail To Establish Predicate Acts Of Wire Fraud.............................71
      B. Plaintiffs Did Not Sustain RICO Injury And Their Injuries Were Not Caused By
         TWC................................................................................................................72
      C. Plaintiffs Fail To Allege A RICO Enterprise.................................................72

XII.  ADDITIONAL REPLY ARGUMENTS OF DEFENDANT ROBERT WEINSTEIN .......72

      A. The Opposition Fails To Demonstrate How The FAC's Status-Based Allegations
         Regarding Robert Weinstein Support Plaintiffs' Claims.................................73
      B. The Opposition Fails To Respond To Robert Weinstein's Arguments Regarding
         The FAC's Few Additional Allegations Specific To Him.................................75

XIII. ADDITIONAL REPLY ARGUMENTS OF DEFENDANT JAMES DOLAN .................78

XIV. ADDITIONAL REPLY ARGUMENTS OF FORMER OUTSIDE DIRECTOR
      RICHARD KOENIGSBERG ...................................................................................82

XV.  ADDITIONAL REPLY ARGUMENTS OF OUTSIDE DIRECTOR LANCE MAEROV 84

XVI. ADDITIONAL REPLY ARGUMENTS OF OUTSIDE DIRECTOR JEFF SACKMAN ..85

XVII.  ADDITIONAL REPLY ARGUMENTS OF OUTSIDE DIRECTORS MARC LASRY
AND PAUL TUDOR JONES............................................................................86

XVIII. ADDITIONAL REPLY ARGUMENTS OF DEFENDANT MARK GILL.....................87

XIX. ADDITIONAL REPLY ARGUMENTS OF DEFENDANT NANCY ASHBROOKE ......89

    A.  Plaintiffs' Claims Against Ms. Ashbrooke Are Time-Barred ...........................89
    B.  The Opposition Provides No Basis For Plaintiffs' Common Law Claims Against
       Ms. Ashbrooke....................................................................................................90
    C.  The Opposition Provides No Basis For A RICO Or RICO Conspiracy Claim
       Against Ms. Ashbrooke ......................................................................................91

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*A. Terzi Prods. v. Theatrical Protective Union, Local No. One,*
    2 F. Supp. 2d 485 (S.D.N.Y. 1998) ............................................................ 46, 47, 49

*Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC,*
    45 F. Supp. 3d 436 (S.D.N.Y. 2014) ............................................................ 18, 32

*Adams v. N.Y. State Educ. Dep't,*
    752 F. Supp. 2d 420 (S.D.N.Y. 2010) ................................................................ 8

*Aerowest GmbH v. Freitag,*
    No. 15-CV-2894, 2016 U.S. Dist. LEXIS 84344 (E.D.N.Y. June 28, 2016) .......................... 20, 22, 72

*Aguilera v. Aegis Commc'ns Grp., LLC,*
    72 F. Supp. 3d 975 (W.D. Mo. 2014) ................................................................ 35

*Ahluwalia v. St. George's Univ., LLC,*
    63 F. Supp. 3d 251 (E.D.N.Y. 2014) ................................................................ 41

*Airlines Reporting Corp. v. Aero Voyagers, Inc.,*
    721 F. Supp. 579 (S.D.N.Y. 1989) ................................................................. 40

*AIU Ins. Co. v. Olmecs Med. Supply, Inc.,*
    No. 04-CV-2934, 2005 U.S. Dist. LEXIS 29666 (E.D.N.Y. Feb. 22, 2005) ......................... 24

*Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer,*
    764 F.3d 1268 (10th Cir. 2014) ...................................................................... 5

*Alston v. Stone,*
    No. 02-CV-5338, 2005 WL 668359 (S.D.N.Y. Mar. 21, 2005) ...................................... 16

*Aramony v. United Way of Am.,*
    969 F. Supp. 226 (S.D.N.Y. 1997) ................................................................. 26

*Arista Records, LLC v. Tkach,*
    122 F. Supp. 3d 32 (S.D.N.Y. 2015) ......................................................... 14, 15, 83

*Arthur Andersen, LLP v. United States,*
    544 U.S. 696 (2005) ................................................................................ 62

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................................ 10

*Attia v. Google LLC,*
    No. 17-cv-06037-BLF, 2018 WL 2971049 (N.D. Cal. June 13, 2018) .............................. 60

*Baiul v. William Morris Agency, LLC*,
   No. 13 CIV. 8683 KBF, 2014 WL 1804526 (S.D.N.Y. May 6, 2014), *aff'd,* 601 F.
   App'x 58 (2d Cir. 2015) .................................................................................................. 6

*Bankers Tr. Co. v. Rhoades*,
   859 F.2d 1096 (2d Cir. 1988) ......................................................................................... 4

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................... 10

*Bingham v. Zolt*,
   683 F. Supp. 965 (S.D.N.Y. 1988) ............................................................................... 12

*Bliss v. Putnam Valley Cent. Sch. Dist.*,
   No. 06-CV-15509, 2011 U.S. Dist. LEXIS 35485 (S.D.N.Y. Mar. 24, 2011) .................... 45

*Board of Regents v. Tomanio*,
   446 U.S. 478 (1980) .................................................................................................. 9, 55

*Boyle v. United States*,
   556 U.S. 938 (2009) ...................................................................................................... 22

*Bresson v. Thomson McKinnon Sec., Inc.*,
   641 F. Supp. 338 (S.D.N.Y. 1986) ............................................................................... 81

*Bridgewater v. Taylor*,
   745 F. Supp. 2d 355 (S.D.N.Y. 2010) .......................................................................... 54

*Cabrera v. Jakabovitz*,
   24 F.3d 372 (2d Cir. 1994) ...................................................................................... 46, 47

*Cabusao v. Lombardi*,
   No. 1:14CV74-HSO-RHW, 2015 U.S. Dist. LEXIS 185609 (S.D. Miss. Jan. 30,
   2015)............................................................................................................................... 36

*Calfo v. Messina*,
   No. 15 Civ. 4010 (LGS), 2016 WL 3661548 (S.D.N.Y. July 5, 2016) ......................... 74

*Canosa v. Ziff*,
   No. 18 Civ. 4115, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019)............... *passim*

*Castro-Quesada v. Tuapanta*,
   49 N.Y.S.3d 757 (App. Div. 2017).............................................................................. 40

*Chau v. Donovan*,
   No. 18-cv-3365, 2019 U.S. Dist. LEXIS 2642 (S.D.N.Y. Jan. 7, 2019) ................. 50, 52

*In re Citigroup, Inc. Sec. Litig.*,
   330 F. Supp. 2d 367 (S.D.N.Y. 2004), *aff'd sub nom. Albert Fadem Tr. v. Citigroup,
   Inc.*, 165 F. App'x 928 (2d Cir. 2006)......................................................................... 74

*Cohen v. S.A.C. Trading Corp.*,
    711 F.3d 353 (2d Cir. 2013) ............................................................................ 6

*Conte v. Newsday, Inc.*,
    703 F. Supp. 2d 126 (E.D.N.Y. 2010) ........................................................... 23

*Cooper Indus., Inc. v. Aviall Servs., Inc.*,
    543 U.S. 157 (2004) ...................................................................................... 27

*Corley v. Jahr*,
    No. 11-CV-9044, 2014 WL 772253 (S.D.N.Y. Feb. 10, 2014) ...................... 41

*Cruz v. FXDirectDealer, LLC*,
    720 F.3d 115 (2d Cir. 2013) .......................................................................... 59

*Cullen v. Margiotta*,
    811 F.2d 698 (2d Cir. 1987) ................................................................... 15, 67

*D'Mel & Assocs. v. Athco, Inc.*,
    105 A.D.3d 451 (1st Dep't 2013) .................................................................. 75

*D. Penguin Bros. Ltd. v. City Nat'l Bank*,
    587 F. App'x 663 (2d Cir. 2014) ................................................................... 21

*Denny v. Barber*,
    576 F.2d 465 (2d Cir. 1978) .......................................................................... 54

*Dilworth v. Goldberg*,
    No. 10-CV-2224, 2011 U.S. Dist. LEXIS 82392 (S.D.N.Y. July 28, 2011) ....... 45

*DiVittorio v. Equidyne Extractive Indus., Inc.*,
    822 F.2d 1242 (2d Cir. 1987) ................................................................. 18, 92

*Doe v. Alsaud*,
    12 F. Supp. 3d 674 (S.D.N.Y. 2014) ...................................................... *passim*

*Doe v. City of New York*,
    No. 09-CV-9895, 2013 U.S. Dist. LEXIS 30010 (S.D.N.Y. Mar. 4, 2013) ...... 42

*Doe v. Fed. Express Corp.*,
    571 F. Supp. 2d 330 (D. Conn. 2008) ........................................................... 63

*Doe v. Schneider*,
    667 F. Supp. 2d 524 (E.D. Pa. 2009) ........................................................... 28

*Dornberger v. Metropolitan Life Ins. Co.*,
    961 F.Supp. 506 (S.D.N.Y. 1997) ................................................................ 26

*Douglas v. Victor Capital Grp.*,
    21 F. Supp. 2d 379 (S.D.N.Y. 1998) .............................................................. 8

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004) ........................................................................ 39, 42, 69

*Ellul v. Congregation of Christian Bros.*,
   774 F.3d 791 (2d Cir. 2014) ...................................................................................... 56

*Elsevier Inc. v. Memon*,
   97 F. Supp. 3d 21 (E.D.N.Y. 2015) ................................................................... 23, 24

*Feliberty v. Damon*,
   527 N.E.2d 261 (N.Y. 1988) ..................................................................................... 68

*First Capital Asset Mgmt. v. Satinwood, Inc.*,
   385 F.3d 159 (2d Cir. 2004) ...................................................................................... 22

*Flake v. Alper Holdings USA, Inc.*,
   398 B.R. 736 (S.D.N.Y. 2008) ................................................................................... 54

*Flores-Figueroa v. United States*,
   556 U.S. 646 (2009) ................................................................................................... 35

*Fonte v. Board of Managers*,
   848 F.2d 24 (2d Cir. 1988) ........................................................................................ 81

*Gleason v. Spota*,
   194 A.D.2d 764 (2d Dep't 1993) ............................................................................... 11

*Glick v. Berk & Michaels, P.C.*,
   90-CV-4230, 1991 U.S. Dist. LEXIS 10347 (S.D.N.Y. July 26, 1991) ............... 9, 12

*In re GM LLC Ignition Switch Litig.*,
   No. 14-MD-2543, 2016 U.S. Dist. LEXIS 92499 (S.D.N.Y. July 15, 2016) .......... 23

*Hamm v. Rhone-Poulenc Rorer Pharms.*,
   187 F.3d 941 (8th Cir. 1999) ..................................................................................... 27

*Hamm v. United States*,
   483 F.3d 135 (2d Cir. 2007) ...................................................................................... 49

*Hinds Cnty. v. Wachovia Bank N.A.*,
   No. 08-CV-2516, 2010 U.S. Dist. LEXIS 43202 (S.D.N.Y. Apr. 2010) ................. 19

*Holder v. General Motors Corp.*,
   734 N.Y.S.2d 545 (Sup. Ct. N.Y. 2001) ................................................................... 57

*Hollander v. Flash Dancers Topless Club*,
   173 F. App'x 15 (2d Cir. 2006) ................................................................................. 27

*Int'l Telecomms. Satellite Org. v. Colino*,
   No. 88-CV-1266, 1992 U.S. Dist. LEXIS 4887 (D.D.C. Apr. 14, 1992) ................ 24

*Janese v. Scrufari*,
  No. 09-CV-593, 2013 WL 5503953 (W.D.N.Y. Oct. 2, 2013) ........................... 12

*K.I. v. N.Y.C. Bd. of Educ.*,
  256 A.D.2d 189, 683 N.Y.S.2d 228 (N.Y. App. Div. 1998) ............................ 52

*Kao v. British Airways, PLC*,
  No. 17-CV-0232 (LGS), 2018 WL 501609 (S.D.N.Y. Jan. 19, 2018) ................... 14, 15, 83

*KBL Corp. v. Arnouts*,
  646 F. Supp. 2d 335 (S.D.N.Y. 2009) .................................................. 54

*Kerik v. Tacopina*,
  64 F. Supp. 3d 542 (S.D.N.Y. 2014) .................................................... 27

*Khapesi v. City of New York*,
  No. 13-CV-4391, 2014 U.S. Dist. LEXIS 79623 (S.D.N.Y. June 10, 2014) ........... 45

*Kimm v. Lee*,
  196 F. App'x 14 (2d Cir. 2006) ......................................................... 27

*Koch v. Christie's Int'l PLC*,
  699 F.3d 141 (2d Cir. 2012) ......................................................... 4, 7, 57

*Kolbek v. Twenty First Century Holiness Tabernacle Church, Inc.*,
  No. 10-CV-4124, 2013 WL 6816174 (W.D. Ark. Dec. 24, 2013) ..................... 35

*Krys v. Pigott*,
  749 F.3d 117 (2d Cir. 2014) .............................................................. 37

*Krystal G. v. Roman Catholic Diocese of Brooklyn*,
  933 N.Y.S.2d 515 (Sup. Ct. 2011) .............................................. 41, 68, 75

*L. Tarango Trucking v. C of Contra Costa*,
  181 F. Supp. 2d 1017 (N.D. Cal. 2001) ................................................. 46

*Lawson v. Rubin*,
  No. 17-cv-6404 (BMC), 2018 WL 2012869 (E.D.N.Y. Apr. 29, 2018) ............... 34

*Lerner v. Fleet Bank, N.A.*,
  459 F.3d 273 (2d Cir. 2006) ............................................................. 25

*Levy v. BASF Metals Limited*,
  No. 1:15-CV-7317-GHW, 2017 WL 2533501 (S.D.N.Y. June 9, 2017) ............... 4

*Lipton v. Cty. of Orange, N.Y.*,
  315 F. Supp. 2d 434 (S.D.N.Y. 2004) .................................................... 8

*In re Lupron Mktg. & Sales Practices Litig.*,
  295 F. Supp. 2d 148 (D. Mass. 2003) ................................................... 17

*Makowski v. United Bhd. & Joiners of Am.*,
   No. 08 Civ. 6150, 2010 U.S. Dist. LEXIS 77775 (S.D.N.Y. Aug. 2, 2010) ........................... 25, 28, 72

*Mapp v. City of New York*,
   2014 WL 1272869 (N.Y. Sup. Ct. Mar. 28, 2014) ............................................................. 40

*Maragh v. Roosevelt Island Operating Corp.*,
   2018 WL 6573452 (S.D.N.Y. Dec. 13, 2018) ..................................................................... 8

*Massey v. Fischer*,
   No. 02 Civ. 10281, 2004 U.S. Dist. LEXIS 17023 (S.D.N.Y. Aug. 27, 2004) ................................... 54

*Matthews v. Schushem*,
   247 N.Y.S.2d 285 (N.Y. Sup. Ct. 1964) ........................................................................ 64

*In re Mediators, Inc.*,
   105 F.3d 822 (2d Cir. 1997) .................................................................................. 12

*Matter of Mediators, Inc.*,
   190 B.R. 515 (S.D.N.Y. 1995) ................................................................................ 12

*Meyer v. Holley*,
    537 U.S. 280 (2003)), *report and recommendation adopted*, 2016 U.S. Dist. LEXIS
   30354 (S.D.N.Y. Mar. 8, 2016) ................................................................................ 41

*Miller v. Carpinello*,
   No. 06 CV 12940, 2007 U.S. Dist. LEXIS 86395 (S.D.N.Y. Nov. 19, 2007) ............................... 22, 92

*Moss v. BMO Harris Bank, N.A.*,
   258 F. Supp. 3d 289 (E.D.N.Y. 2017) ........................................................................ 21

*Murphy v. Guilford Mills, Inc.*,
   No. 92-CV-10105, 2005 WL 957333 (S.D.N.Y. Apr. 22, 2005) ........................................... 49

*N.X. v. Cabrini Med. Ctr.*,
   97 N.Y.2d 247 (2002) ........................................................................................ 51

*In re Nat'l W. Life Ins. Deferred Annuities Litig.*,
   635 F. Supp. 2d 1170 (S.D. Cal. 2009) ....................................................................... 20

*Naughright v. Robbins*,
   No. 10-CV-8451, 2014 U.S. Dist. LEXIS 148497 (S.D.N.Y. Oct. 16, 2014) ................................... 41

*Neiman Marcus Grp., Inc. v. Dispatch Transp. Corp.*,
   No. 09-CV-6861, 2011 U.S. Dist. LEXIS 30681 (S.D.N.Y. Mar. 17, 2011) .................................. 21

*Neitzke v. Williams*,
   490 U.S. 319 (1989) ........................................................................................ 55

*Noble v. Weinstein*,
   335 F. Supp. 3d 504 (S.D.N.Y. 2018) .................................................................*passim*

*Noonan v. City of New York*,
  No. 14-CV-4084, 2015 U.S. Dist. LEXIS 83451 (S.D.N.Y. June 26, 2015) ...................................... 45

*Matter of O'Brien v. Spitzer*,
  7 N.Y.3d 239 (2006) ......................................................................................................................... 40

*Omar v. City of New York*,
  No. 13-CV-8264, 2015 WL 178774 (S.D.N.Y. Jan. 5, 2015) ............................................................ 41

*Order of R.R. Telegraphers v. Railway Express Agency, Inc.*,
  321 U.S. 342 (1944) ........................................................................................................................... 9

*Overall v. Estate of Klotz*,
  52 F.3d 398 (2d Cir. 1995) ............................................................................................................... 56

*Pauk v. Bd. of Trustees of Cty of N.Y.*,
  654 F.2d 856 (2d. Cir. 1981) ............................................................................................................ 57

*Precedo Capital Grp., Inc. v. Twitter Inc.*,
  33 F. Supp. 3d 245 (S.D.N.Y. 2014) ................................................................................................. 49

*Productores Asociados de Café Rio Claro, C.A. v. Barnett*,
  No. 98 CIV. 499 (DAB), 1999 WL 287389 (S.D.N.Y. May 7, 1999) ................................................. 74

*Psykaty v. Wide World of Cars, LLC*,
  856 F.3d 216 (2d Cir. 2017) ............................................................................................................. 19

*Rainbow Apparel Distributor Center Corp. v. Gaze U.S.A., Inc.*,
  295 F.R.D. 18 (E.D.N.Y. 2013) ................................................................................................... 46, 47

*Ramos v. Jake Realty Co.*,
  21 A.D.3d 744, 801 N.Y.S.2d 566 (App. Div. 2005) ......................................................................... 51

*Ratha v. Patthana Seafood Co., Ltd.*,
  No. 16-4271, 2017 WL 8293174 (C.D. Cal. Dec. 21, 2017) ............................................................... 31

*Rhodes v. Alexander Sch. Dist.*,
  No. 05-CV-431S, 2006 WL 232722 (W.D.N.Y. Jan. 30, 2006) ........................................................ 65

*Rivera v. Puerto Rican Home Attendants Services*,
  930 F. Supp. 124 (S.D.N.Y. 1996) ................................................................................................... 48

*Riviello v. Waldron*,
  47 N.Y.2d 297, 391 N.E.2d 1278 (N.Y. 1979) ............................................................................ 51, 70

*Robbins v. Tucker Anthony, Inc.*,
  649 N.Y.S.2d 856 (4th Dep't 1996) .................................................................................................. 48

*Rotella v. Wood*,
  528 U.S. 549 (2000) ..................................................................................................................... 19, 57

*Saldana v. Port Chester*,
   No. 09-CV-6268, 2010 U.S. Dist. LEXIS 142099 (S.D.N.Y. July 21, 2010) ...................................... 43

*Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*,
   33 A.D.3d 875 (N.Y. App. Div. 2006) ................................................................................................ 68

*Saveria JFK, Inc. v. Flughaven Wien, AG*,
   No. 15-CV-6194, 2016 WL 11263673 (E.D.N.Y. May 3, 2016), *report and*
   *recommendation adopted*, 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017) ................................... 13, 67

*Schultz v. Motor Vehicle Acc. Indemnification Corp.*,
   377 N.Y.S.3d 959 (N.Y. Sup. Ct. 1976) ............................................................................................ 58

*Schwab v. Philip Morris USA, Inc.*,
   449 F. Supp. 2d 992 (E.D.N.Y. 2006) ............................................................................................... 79

*Sclafani v. PC Richard & Son*,
   668 F. Supp. 2d 423 (E.D.N.Y. 2009) ........................................................................................ 51, 52

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995) ................................................................................................................ 26

*Sedima, S.P.R.L. v. Imrex Co.*,
   473 U.S. 479 (1985) ..................................................................................................... 19, 25, 26, 72

*Shostack v. Diller*,
   No. 15-CV-2255, 2015 U.S. Dist. LEXIS 123777 (S.D.N.Y. Sept. 16, 2015) .................................. 41

*Sky Med. Supply Inc. v. SCS Support Claims Servs.*,
   17 F. Supp. 3d 207 (E.D.N.Y. 2014) ................................................................................................ 23

*Snowden v. Lexmark Int'l, Inc.*,
   237 F.3d 620 (6th Cir. 2001) ...................................................................................................... 60, 61

*Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG*,
   277 F. Supp. 3d 521 (S.D.N.Y. 2017) ........................................................................................ 14, 67

*Southwick Clothing LLC v. GFT (USA) Corp.*,
   No. 99 CV 10452(GBD), 2004 WL 2914093 (S.D.N.Y. Dec. 15, 2004) ............................................ 65

*Stamile v. Cty. of Nassau*,
   No. CV 10-2632 (AKT), 2014 WL 1236885 (E.D.N.Y. Mar. 25, 2014) ............................................ 45

*Swierkiwicz v. Sorema*,
   534 U.S. 506 (2002) .......................................................................................................................... 65

*Taylor v. Darcy*,
   2018 U.S. Dist. LEXIS 137489 (S.D.N.Y. July 13, 2018), *report and*
   *recommendation adopted*, 2018 U.S. Dist. LEXIS 152176 (S.D.N.Y. Sept. 6, 2018) ....................... 18

*Taylor v. Williams Commc'ns, Inc.*,
   No. 02–02011, 2004 WL 5614591 (N.Y. Sup. Ct. Oct. 22, 2004) ..................................................... 64

*Torain v. Casey*,
    No. 16 Civ. 2682 (VEC) (JCF), 2016 WL 6780078 (S.D.N.Y. Sept. 16, 2016) .................................. 68

*Treppel v. Biovail Corp.*,
    No. 03 Civ. 3002, 2005 U.S. Dist. LEXIS 18511 (S.D.N.Y. Aug. 30, 2005) ...................................... 54

*In re Trilegiant Corp.*,
    11 F. Supp. 3d 88 (D. Conn. 2014) ................................................................................ 21

*Trisci v. Trisci*,
    673 N.Y.S.2d 918 (2d Dep't 1998) ............................................................................... 16

*Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*,
    886 F. Supp. 1134 (S.D.N.Y. 1995) .............................................................................. 28

*Tsipouras v. W&M Props., Inc.*,
    9 F. Supp. 2d 365 (S.D.N.Y. 1998) .............................................................................. 26

*Twersky v. Yeshiva Univ.*,
    993 F. Supp. 2d 429 (S.D.N.Y. 2014) ............................................................... 9, 10, 11, 12

*Tymoshenko v. Firtash*,
    No. 11-CV-2794, 2015 U.S. Dist. LEXIS 125126 (S.D.N.Y. Sept. 18, 2015) ........................... 19, 71

*U.S. v. Guadagna*,
    183 F.3d 122 (2d Cir. 1999) ...................................................................................... 71

*United States v. Afyare*,
    632 F. App'x 272 (6th Cir. 2016) ........................................................................ 31, 33, 34

*United States v. Allen*,
    155 F.3d 35 (2d Cir. 1998) ........................................................................................ 24

*United States v. Blackmon*,
    839 F.2d 900 (2d Cir. 1988) ...................................................................................... 29

*United States v. Cain*,
    671 F.3d 271 (2d Cir. 2012) ...................................................................................... 22

*United States v. Cook*,
    782 F.3d 983 (8th Cir. 2015) ................................................................................. 34, 35

*United States v. Turkette*,
    452 U.S. 576 (1981) ............................................................................................... 22

*United States v. Weintraub*,
    273 F.3d 139 (2d Cir. 2001) ...................................................................................... 35

*United States v. Zemylansky*,
    908 F.3d 1 (2d Cir. 2018) ........................................................................................ 29

*Uribe v. Merchants Bank of New York*,
239 A.D.2d 128 (1st Dep't 1997) .................................................................. 75

*Velez v. Sanchez*,
693 F.3d 308 (2d Cir. 2012) ......................................................................... 32

*Wexner v. First Manhattan Co.*,
902 F.2d 169 (2d Cir. 1990) ......................................................................... 19

*Williams v. Affinion Grp., LLC*,
889 F.3d 116 (2d Cir. 2018) ..................................................................... 17, 71

*Wood v. Carpenter*,
101 U.S. 135 (1879) ...................................................................................... 55

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ............................................................... 18, 47, 78

*Zanfardino v. City of New York*,
230 F. Supp. 3d 325 (S.D.N.Y. 2017) ........................................................... 70

*Zimmerman v. Poly Prep Country Day School*,
888 F. Supp. 2d 317 (E.D.N.Y. 2012) ...................................................... 13, 67

*Zoe G. v. Frederick F.G.*,
617 N.Y.S. 2d 370 (2d Dep't 1994) ............................................................... 16

*Zumpano v. Quinn*,
6 N.Y.3d 666 (2006) ............................................................................ 9, 10, 11

## STATUTES

U.S.C. title 18 ................................................................................................. 60

18 U.S.C.
§ 1512 ................................................................................................. 91, 92
§ 1590 ...................................................................................................... 60
§ 1591 ...................................................................................................... 60
§ 1591(a) .................................................................................................. 30
§ 1591(a)(1) ........................................................................................ 34, 37
§ 1595 ...................................................................................................... 31
§ 1595(a) .......................................................................................... 34, 36, 37
§ 1961(1) .................................................................................................. 91
§ 1961(5) .................................................................................................. 19
§ 1964(c) .................................................................................................. 26

## RULES

CPLR 1024 ...................................................................................................... 64

Fed. R. Civ. P.

   8 ........................................................................................................................... 88

   9 ........................................................................................................... 18, 19, 88

   9(b) ............................................................................................................... *passim*

   11(b)(3) .............................................................................................................. 19

   12(b)(6) ............................................................................................. 10, 37, 54

   23 ........................................................................................................................ 81

N.Y. C.P.L.R.

   § 214-g .......................................................................................................... 58, 66

   § 302 .................................................................................................................... 47

## OTHER AUTHORITIES

PERPETRATOR, Black's Law Dictionary (10th ed. 2014) ......................................................... 30

## I.       **PRELIMINARY STATEMENT**

The December 17, 2018 joint motion to dismiss—filed by the Outside Directors

(defendants Dirk Ziff, Tim Sarnoff, Marc Lasry, Paul Tudor Jones, and James Dolan), together

with other former TWC directors (Robert Weinstein, Richard Koenigsberg, Lance Maerov, and

Jeff Sackman), as well as The Weinstein Company Holdings, LLC, Miramax Film NY, LLC,

and the Disney Defendants (The Walt Disney Company, Disney Enterprises, Inc., Buena Vista

International, Inc., and Michael Eisner)—set forth the numerous reasons why all of Plaintiffs'

claims against the moving defendants fail as a matter of law.  *See* ECF No. 201, the "MTD" or

the "Motion."  Indeed, each claim is beset by multiple independent flaws, any one of which

mandates dismissal.

This is the second time that the parties are before this Court in the context of a challenge

to the sufficiency of the allegations that Plaintiffs have presented in support of their claims.  On

the prior occasion on which the parties addressed these issues (*i.e.*, the September 12, 2018

hearing before this Court on defendants' motions to dismiss Plaintiffs' initial complaint), the

Court found Plaintiffs' claims to be legally insufficient, and articulated detailed pleading

requirements that Plaintiffs would have to satisfy in order to survive a second motion to dismiss.

Plaintiffs' First Amended Complaint (ECF No. 140, the "FAC") ignores those directives and

admonitions, once again falling woefully short of the pleading requirements necessary to sustain

any claim against the moving defendants.  And because these are legal defects—uncured and

incurable, as is evident from the FAC—further amendment would be futile.  This time, dismissal

should be with prejudice.

Nothing in Plaintiffs' opposition (ECF No. 243, the "Opp." or "Opposition") requires

otherwise.  As set forth in Section II below, Plaintiffs' claims fail most blatantly because they are

untimely.  This is not a close question: the staleness of Plaintiffs' claims is measured in the years

(and in many cases, the decades) that elapsed after their alleged injuries.  Nor does the FAC contain any allegations that could possibly meet Plaintiffs' burden to establish the applicability of any tolling doctrine.  The statutes of limitations must be enforced.

Plaintiffs' claims also fail for other, independent reasons.  As set forth in Section III, the FAC's RICO theory fails against the moving defendants on every level: it pleads not a single predicate act (much less the required "pattern"), pleads no facts sufficient to meet the "enterprise" or "participation" elements, and alleges injuries that are categorically not redressable under RICO and insufficient to confer RICO standing.  The Opposition's attempt to rebut these points entirely misinterprets RICO case law, and succumbs to the same glaring pleading defects that the Court identified at the September 12, 2018 hearing.

Plaintiffs' only other federal claim (for "sex-trafficking" liability) fares no better.  As set forth in Section IV, Plaintiffs do not try to defend this claim on the law, but contend the facts of this case distinguish it from the numerous other sex-trafficking cases in which courts have rejected the same sweeping theory of "guilt by association" that Plaintiffs offer here.  Plaintiffs are wrong; there is no material distinction between the flaws in their pleading and the flaws that were fatal to equally meritless claims in the cases cited in the Motion (which Plaintiffs almost entirely ignore).  Nor does the FAC contain any factual allegations that could satisfy even one of the elements of the sex-trafficking statute.

As for Plaintiffs' state-law claims, Sections V through VII demonstrate that Plaintiffs cannot plead any of the elements required for those claims, either.  Most notably, and as other courts in this district have held, Plaintiffs cannot overcome the fact that Harvey Weinstein's alleged assaults (a) did not take place on any moving defendant's "premises" or with any moving defendant's "chattels," (b) were not within the scope of his employment (but were instead

matters of self-interest and personal gratification), and (c) were not known to the moving defendants prior to the occurrence of any Plaintiff's alleged injury.  Each of these points (and others detailed below) is sufficient to defeat Plaintiffs' claims, and each is firmly enshrined in established New York law.  The Opposition's attempt to skirt these core legal principles is halfhearted at best, and utterly meritless.

Accordingly, and as further demonstrated in Section VIII below, Plaintiffs' claims should be dismissed with prejudice.  The pervasive and persistent flaws in Plaintiffs' FAC shows that Plaintiffs have no claim against the moving defendants.

Indeed, most of Plaintiffs' claims are based on general allegations that conclusorily lump all defendants together—painting dozens of different actors, and dozens of years of allegations— with the same broad brush.  But to the extent Plaintiffs do make specific arguments against specific moving defendants, those are addressed by each moving defendant below.  Thus, Sections IX-XI contain the reply arguments of Miramax Film NY, LLC, the Disney Defendants, and TWC, respectively.  Sections XII-XVII contain the reply arguments of certain director defendants, specifically, Robert Weinstein, James Dolan, Richard Koenigsberg, Lance Maerov, Jeff Sackman, Marc Lasry, and Paul Tudor Jones.  And Sections XVIII and XIX contain the reply arguments of two defendants—Mark Gill and Nancy Ashbrooke—who filed separate motions to dismiss the FAC (*see* ECF Nos. 213 and 239), but who join in and include their arguments in this consolidated reply for the convenience of the Court.

## II.   <u>VIRTUALLY ALL CLAIMS ARE TIME-BARRED (COUNTS III-XVIII)</u>

Plaintiffs' Opposition only confirms what was evident on the face of the FAC—that the vast majority of Plaintiffs' claims are barred by their respective statutes of limitations and no tolling doctrine applies to the Outside Directors.[1]

### A.   The Limitations Period Has Run On The RICO Claims

#### 1.   Plaintiffs Misapply The Injury-Discovery Rule

Plaintiffs argue that their RICO claims are timely because they could not have discovered "that [Harvey] Weinstein's network of professional spies had targeted them" until October 2017. *See* Opp. at 48. This argument misconstrues well-established law and is belied by the allegations in the FAC and the contentions in the Opposition.

Plaintiffs assert that defendants argued "that the date on which each Plaintiff was sexually assaulted triggered the four-year statute of limitations for RICO." Opp. at 49. This is not what the defendants argued. As explained in the Motion, and as Plaintiffs concede, the statute of limitations begins to run when a plaintiff discovers or should have discovered her RICO injury. *See* MTD at 13-16; Opp. at 48 (citing *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1103 (2d Cir. 1988)). Contrary to Plaintiffs' assertion, Plaintiffs need not have discovered the *extent* of any alleged RICO conspiracy (*e.g.*, the extent of Harvey Weinstein's alleged network of spies and plan to blackmail Plaintiffs) in order for the limitations period to start running. *See* Opp. at 49. Rather, they need only have discovered their alleged injury. Indeed, Second Circuit precedent holds that "[t]he RICO statute of limitations . . . runs even where the full extent of the RICO scheme is not discovered until a later date, so long as there were 'storm warnings' that

---

[1]   Plaintiffs also argue in their Opposition that Ms. Geiss', Ms. Thomas' and Ms. Thompson's claims under the TVPRA are timely under the 10-year statute of limitations. That argument is irrelevant, as defendants did not move to dismiss Plaintiffs' TVPRA claims on statute of limitations grounds.

should have prompted the inquiry." *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 151 (2d Cir. 2012) (citations omitted); *see also Levy v. BASF Metals Ltd.*, No. 1:15-CV-7317-GHW, 2017 WL 2533501, at *5 (S.D.N.Y. June 9, 2017) ("Plaintiff's argument that she did not know of the specific wrongdoing of the specific defendants in this case has no significance in light of RICO's accrual rule, as courts have held that a plaintiff need not know all of the specific elements of the claim in order for the statute of limitations to run, which includes knowledge of the Defendants' identities." (citing *Robert L. Kroenlein Tr. ex rel. Alden v. Kirchhefer*, 764 F.3d 1268, 1278 (10th Cir. 2014))).

The FAC alleges that each Plaintiff discovered her RICO injury soon after she allegedly was assaulted by Harvey Weinstein.  *See* MTD at 14-16.  Notably, each Plaintiff alleges not only that she understood the alleged harm to her career soon after the alleged assault, but also that she understood Harvey Weinstein to be the source of that harm.[2]  *Id.*  In fact, they allege that "*[a]t all times*, Plaintiffs and the Class operated under duress and the credible and objective threat of being threatened, deceived, or blacklisted by [Harvey] Weinstein."  *Id.* ¶ 9 (emphasis added).[3]

---

[2]     Indeed, the Opposition goes further than the FAC in confirming that Plaintiffs discovered their alleged RICO injuries many years ago, in some instances by including new allegations that do not appear in the FAC.  *See, e.g.*, Opp. at 28 (identifying Ms. Kendall's RICO injury as not being cast in two films that came out in 1995 and 1996); *id.* at 33 (identifying Ms. Sagemiller's RICO injury as her not being cast in films that came out in 2001, 2002, 2004, and 2005).

[3]     Certain Plaintiffs even acknowledge that they knew how Harvey Weinstein allegedly harmed them soon after the alleged assaults.  *See, e.g.*, Opp. at 33 (asserting that Ms. Sagemiller auditioned for a role in a movie, but her manager "told her that the producer had 'made it known' throughout Hollywood that he did not like her and would not cast her"); *id.* at 36-37 (asserting that Harvey Weinstein told Jane Doe from the time she was 16, in 2002, that "he was the sole gatekeeper to the industry, and she would have to give him sexual favors in exchange for becoming an actor," and that due to her unwillingness, "[Harvey] Weinstein never gave her the extent of the work he promised her and made sure others didn't either.").  While Plaintiff Thomas alleges that she was notified in December 2017 that casting directors had complained about her public position that she "will not audition for roles for productions in which known predators are involved" (*see* FAC ¶ 265), this allegation is unrelated to any defendant in this action.  Moreover, the FAC acknowledges that Ms. Thomas discovered the injury to her career in 2008, claiming that she was not hired "because she did not respond to [Harvey] Weinstein's propositions."  *See* FAC ¶ 263.

Further, to the extent Plaintiffs did not actually discover their injurer, their allegations show that each was, at the very least, on inquiry notice at that time and had a duty to investigate. For example, the Opposition asserts that several Plaintiffs discussed or auditioned for roles in a certain film, but did not receive the role after turning Harvey Weinstein down.  *See* Opp. at 27 (Ms. Klatt); *id.* at 28 (Ms. Kendall); *id.* at 29-30 (Ms. Dulany); *id.* at 31 (Ms. Brock); *id.* at 37 (Jane Doe).  Because each Plaintiff discovered her alleged injury and injurer soon after her encounter with Harvey Weinstein, or reasonably should have discovered both the injury and injurer around that time—*i.e.*, between 7 and 25 years before the filing of this action—Plaintiffs' RICO claims are time-barred.  *See Baiul v. William Morris Agency, LLC*, No. 13 CIV. 8683 KBF, 2014 WL 1804526, at *6 (S.D.N.Y. May 6, 2014), *aff'd,* 601 F. App'x 58 (2d Cir. 2015) (four-year RICO statute of limitations begins to run "when plaintiffs discover or should have discovered their RICO injury, not when they discover or should have discovered the underlying pattern of racketeering activity").

For these reasons, Plaintiffs' reliance on *Cohen v. S.A.C. Trading Corp.* misses the mark. The plaintiff in *Cohen* did not have actual knowledge of any possible RICO injury; rather, the issue before the Court was whether she had a duty to investigate.  *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 361-62 (2d Cir. 2013).  Here, all Plaintiffs are alleged to have had actual knowledge of their purported RICO injuries (*i.e.*, lost career opportunities) many years ago.  And even if Plaintiffs did not have actual knowledge, *Cohen* does not provide support for their assertion that they had no duty to investigate until October 2017.  Unlike the plaintiff in *Cohen*, Plaintiffs here have alleged that they were aware of sufficient facts to put them on notice that their careers were potentially affected by Harvey Weinstein after their encounters with him: each Plaintiff allegedly lost potential career opportunities, was aware at the time of the lost

opportunities, and tied the loss of such opportunities directly to Harvey Weinstein. *See* Opp. at 27-42 (detailing when each Plaintiff knew of her alleged RICO injury).

For similar reasons, and contrary to Plaintiffs' assertion, *Baiul v. William Morris Agency, LLC* is instructive here. In that case, Plaintiff was promised and signed agreements for performances, but never received compensation pursuant to those agreements. *Baiul*, 2014 WL 1804526, at *7. Accordingly, she was on notice of a pattern of non-payment, which started the clock on her RICO claim. *Id.* Like the plaintiff in *Baiul*, Plaintiffs here allege that they discussed or auditioned for film roles or related work, and then did not receive that work after refusing Harvey Weinstein's advances. At the very least, they were on notice of their alleged RICO injuries at that time.

### 2. Thompson's Irrelevant 2017 Allegations Do Not Save Her Claims

The Opposition also argues Ms. Thompson's RICO claim is timely by pointing to an alleged interaction between Ms. Thompson and Harvey Weinstein's former criminal counsel in 2017 that allegedly deprived her of a property interest in a cause of action against defendants. *See* Opp. at 51-52. But that is not when the FAC alleges that Ms. Thompson first discovered her alleged RICO injury. The FAC alleges that in 2011, Harvey Weinstein raped Ms. Thompson while she was trying to pitch her video platform, Intercast. The FAC alleges that after the rape, Ms. Thompson "went to great lengths to make sure she was never alone again with [Harvey] Weinstein," and so missed out on potential "Intercast projects." *See* FAC ¶ 299. Thus, because she first discovered that alleged harm in 2011, the statute of limitations began to run on her RICO claim at that time—and thus expired in 2015. Events in 2017 cannot revive her claim, even if they made her aware of "the full extent of the RICO scheme" at that time. *Koch*, 699 F.3d at 151. Moreover, even assuming the loss of her "property interest" in claims against Harvey Weinstein and others constitutes a RICO injury (it does not), Ms. Thompson's 2017

allegations have nothing to do with the Outside Directors.  They relate only to Harvey Weinstein

and his former counsel.  They do not provide a basis for Ms. Thompson filing untimely claims

against other defendants.

**B.    Plaintiffs Concede The Limitations Period Has Run On Their State-Law Claims**

The Opposition does not dispute that each of Plaintiffs' state law claims against the

Outside Directors are barred by the statute of limitations.  Rather, Plaintiffs rely on various

tolling doctrines to attempt to revive their admittedly stale claims.  *Compare* MTD at 16-20 *with*

Opp. at 55-64.[4]  Plaintiffs therefore concede that the statute of limitations has run for each of

their state law claims.  Thus, the only question is whether Plaintiffs have met their burden to

establish the applicability of any tolling doctrine.  They have not.

**C.    No Tolling Principle Can Revive Plaintiffs' Stale Claims**

**1.    Plaintiffs' Policy Arguments Are Inapplicable**

Plaintiffs contend that the statutes of limitations on their claims should be tolled because

the policies underlying statutes of limitations do not apply here.  *See* Opp. at 53-54.  As

explained in the Motion, statutes of limitations serve many important policy goals.  Among these

are the concern that claims will be prosecuted long after memories fade (making fact-finding

difficult, if not impossible) and protecting settled expectations that claims will not be asserted

---

[4]      *Adams v. N.Y. State Educ. Dep't*, 752 F. Supp. 2d 420, 452 n.32 (S.D.N.Y. 2010) (collecting cases in which courts deemed plaintiff's claims abandoned for failure to address defendant's arguments); *Lipton v. Cty. of Orange, N.Y.*, 315 F. Supp. 2d 434, 446 (S.D.N.Y. 2004) ("This Court may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed."); *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 393 (S.D.N.Y. 1998) (deeming claims abandoned where plaintiff failed to address claims in opposition to defendants' summary judgment motion); *Maragh v. Roosevelt Island Operating Corp.*, 2018 WL 6573452, at *2 (S.D.N.Y. Dec. 13, 2018) (granting defendants' motions to dismiss "as unopposed" where plaintiff failed to "directly contest several points" made in defendants' motions to dismiss).

years or even decades after they accrue.  *See* MTD at 12-13.  Contrary to Plaintiffs' assertion, these policies are certainly applicable here.

First, Plaintiffs argue that because evidence may exist supporting their claims, this Court need not be concerned about the prosecution of stale claims—some of which are decades old. *See* Opp. at 53-54.  This argument defies logic.  The possible existence of evidence does not address the reality that memories fade over the years, leading to the strong possibility of inaccurate testimony.  *See Board of Regents v. Tomanio*, 446 U.S. 478, 487 (1980); *Order of R.R. Telegraphers v. Railway Express Agency, Inc.*, 321 U.S. 342, 349 (1944); MTD at 12-13 (quoting *id.*).

Second, Plaintiffs assert that because Harvey Weinstein "and others on his behalf" allegedly hired spies to track his victims, defendants reasonably should have expected that otherwise time-barred sexual assault claims could be asserted by Plaintiffs.  *See* Opp. at 54.  But the FAC alleges only that Harvey Weinstein and third parties were involved in the hiring of spies, not any other defendant.  *See* FAC ¶¶ 820-821.  Because Plaintiffs have not alleged that any particular defendant—let alone any of the Outside Directors—actually assisted Harvey Weinstein in his alleged Black Cube scheme, Plaintiffs' argument provides no basis for allowing time-barred claims to proceed against them.

Finally, Plaintiffs argue that the equitable tolling doctrines are "fact-based," so, apparently, they should be granted discovery.  However, courts regularly dismiss complaints on a motion to dismiss even where plaintiff has asserted an equitable tolling doctrine applies.  *See*, *e.g.*, *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 444-45 (S.D.N.Y. 2014) (holding on motion to dismiss that equitable estoppel did not apply to plaintiffs' claims); *Zumpano v. Quinn*, 6

N.Y.3d 666, 675 (2006); *see Glick v. Berk & Michaels, P.C.*, 90-CV-4230, 1991 U.S. Dist. LEXIS 10347, at *30-32 (S.D.N.Y. July 26, 1991).

### 2.    Equitable Estoppel Does Not Revive Plaintiffs' Claims

The Opposition contends that equitable estoppel tolled the relevant statutes of limitations because Plaintiffs allegedly were "induced" to refrain from filing this action within the limitations period.  *See* Opp. at 55-61.  But the Opposition demonstrates that this is not one of the "exceptional circumstances" in which equitable estoppel should be invoked.  *Twersky*, 993 F. Supp. 2d at 442 (internal quotation marks omitted), *aff'd*, 579 F. App'x 7 (2d Cir. 2014). Plaintiffs do not (and cannot) identify a single representation made to them by the Outside Directors—let alone a misrepresentation or fraudulent statement—that induced them not to timely file suit.[5]  *See Zumpano*, 6 N.Y.3d at 674 (explaining elements of equitable estoppel).

The Opposition's attempt to distinguish the authority cited in the Motion is unavailing. For example, Plaintiffs attack *Zumpano* (a case alleging that priests sexually abused children) by asserting that the court in that case relied on a "lack of affirmative steps to silence victims" to find there was no fraudulent concealment.  *See* Opp. at 59.  But the allegations in *Zumpano* were both broader and stronger than the accusations leveled against the Outside Directors here.  For example, the defendants in that case (a) "fail[e]d to investigate and report" alleged assaults to law enforcement; (b) "reassigned offending priests without disclosure of their offenses; and, (c) when victims complained, made private payments to them so that the charges would not be

---

[5]    Plaintiffs' barebones allegation that the "TWC Directors took affirmative actions to conceal their knowledge and facilitation of [Harvey] Weinstein's pattern of abusing, silencing, and blacklisting women from Class Members, thereby misrepresenting to Class Members that they had no claims against TWC or its Directors" (*see* FAC ¶ 679) is entirely conclusory and thus should be given no weight.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (to withstand a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a claim must have "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'").

publicized." *See id.* at 672, 675.  In contrast, the factual allegations against the Outside Directors are that they allegedly renegotiated Harvey Weinstein's employment contract and declined to sue for access to Harvey Weinstein's personnel file.  *See* FAC ¶¶ 680-681.  Accordingly, at most, the FAC accuses the Outside Directors of passive concealment.  But as Plaintiffs admit, any such passive concealment is insufficient as a matter of law to toll the limitations period, because the FAC does not and cannot allege that the Outside Directors owed Plaintiffs any fiduciary duty mandating explicit disclosure of the alleged claims.  *See Zumpano*, 6 N.Y.3d at 675 (citing *Gleason v. Spota*, 194 A.D.2d 764, 765 (2d Dep't 1993) ("Where concealment without actual misrepresentation is claimed to have prevented a plaintiff from commencing a timely action, the plaintiff must demonstrate a fiduciary relationship . . . which gave the defendant an obligation to inform him or her of facts underlying the claim.")); *see also* Opp. at 59 ("In other words, 'passive concealment' is not sufficient to estop application of the statute of limitations.").[6]

The Opposition also attempts to distance the present case from *Twersky* (a case brought by students alleging they were abused by employees of their school), which is similarly dispositive.  Plaintiffs argue that the holding in *Twersky*—that passive concealment is insufficient to trigger equitable estoppel—is inapposite.  *See* Opp. at 59.  In reality, *Twersky* is on all fours with this case.  The defendant school administrators in that case allegedly (a) "failed to report known abuse" to the authorities; (b) failed to warn students and families of the risk of abuse; and (c) made statements "to the school community at large about the trustworthiness" of the alleged abusers.  993 F. Supp. 2d at 444-45.  Such behavior, the court held, was insufficient

---

[6]     Moreover, the Complaint does not identify what role, if any, each Outside Director allegedly played in negotiating the employment contract and ignores that Jones and Lasry did not play *any* role because they were not on TWC's Board at the time.  *See* FAC ¶¶ 680-681.  This is a far cry even from the behavior that the *Zumpano* court found to be *insufficient* to invoke equitable estoppel.

to trigger equitable estoppel because it amounted to no more than passive concealment.  *See*

MTD at 23 (citing *Twersky*, 993 F. Supp. 2d at 440).

Indeed, the *Twersky* plaintiffs even alleged that school administrators informed them that

their "complaints were baseless," and the court found such allegations "insufficient as a matter of

law" to establish equitable estoppel because they "fail[ed] to specify the content of the

misrepresentations that were made, the timing of the misrepresentations, how the plaintiffs

reasonably relied on the misrepresentations, and how the plaintiffs exercised due diligence in

bringing the current Complaint."  993 F. Supp. 2d at 446-47 (alterations and internal quotation

marks omitted).  The FAC is devoid of any similar allegations regarding any misrepresentations

by any of the Outside Directors and does not identify even a single *communication* between any

Outside Director and any Plaintiff.

Moreover, Plaintiffs' assertion that they "need not show that every individual Defendant

made separate threats" (*see* Opp. at 60 n.128) is contrary to New York law.  *See Glick*, 1991 U.S.

Dist. LEXIS 10347, at *29 ("Allegations that *other* defendants acted to deceive plaintiffs from

filing suit do not plead fraudulent concealment against *all* defendants.  That is because the

doctrine of fraudulent concealment tolls the statute of limitations *only* as to those defendants who

committed the concealment." (emphasis in original) (citation and internal quotation marks

omitted)); *accord Bingham v. Zolt*, 683 F. Supp. 965, 975 (S.D.N.Y. 1988) ("The doctrine of

fraudulent concealment tolls the running of the statute of limitations only as to the defendants

who committed the concealment."); *Matter of Mediators, Inc.*, 190 B.R. 515, 525 (S.D.N.Y.

1995), *aff'd sub nom. In re Mediators, Inc.*, 105 F.3d 822 (2d Cir. 1997); *Janese v. Scrufari*, No.

09-CV-593, 2013 WL 5503953, at *4 (W.D.N.Y. Oct. 2, 2013).  Apparently aware of this well-

established New York rule, Plaintiffs cite only inapposite precedent from other jurisdictions in

support of their argument.  *See* Opp. at 60 n.128.  This Court should disregard them, as New York law requires that Plaintiff demonstrate that each defendant made separate threats to toll the statute of limitations on equitable estoppel grounds.  *See* MTD at 21, 22 n.15 (explaining requirement that Plaintiffs allege threats by each Defendant).  Indeed, this Court admonished Plaintiffs of their obligation to plead that each Defendant "knew that Harvey Weinstein was attempting to blacklist the plaintiffs."  Sept. 12, 2018 H'rg Tr. 16:14-19.  Despite this warning, they have failed to do so.

The remaining authorities cited in the Opposition do not save Plaintiffs' untimely claims. In *Zimmerman v. Poly Prep Country Day School*, for example, the court found that central to the plaintiffs' claims were their "allegations that [defendant] engaged in an *affirmative course of conduct* during the period of limitations *to deceive the plaintiffs* into believing that they had no claim against Poly Prep."  888 F. Supp. 2d 317, 340 (E.D.N.Y. 2012) (emphases added); *see id.* at 339-40 ("The acts relied on must be of an affirmative character and fraudulent.") (internal quotation marks omitted).[7]  Likewise, the court in *Saveria JFK, Inc. v. Flughaven Wien, AG* based its holding on plaintiff's allegation regarding "an assurance from defendant's alleged agent that defendant's campaign to destroy Sardana did not extend to business opportunities in New York."  No. 15-CV-6194, 2016 WL 11263673, at *9 (E.D.N.Y. May 3, 2016), *report and recommendation adopted*, 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017).  Notwithstanding the Opposition's attempt to gloss over the insufficiency of the allegations in the FAC by asserting

---

[7]     Plaintiffs argue that *Zimmerman* is apposite because there the defendants "consistently portrayed [tortfeasor coach] to the plaintiffs as a reputable and esteemed football coach," and here Defendants portrayed Weinstein "as the face of their company and the most successful producer in the business." MTD at 58.  Setting aside Plaintiffs' failure, once again, to make any allegations with regard to any specific Defendant (let alone any Outside Director), this analogy fails.  There is no allegation in the FAC that any Defendant made any representation regarding Weinstein's role at Miramax or TWC (or his success as a producer) to any Plaintiff.

that "Defendants" generally hired journalists, spies and lawyers to intimidate, spy on and deceive

Plaintiffs (when the FAC makes no such allegation regarding the Outside Directors) (*compare*

Opp. at 56, 59 *with* FAC), the FAC utterly fails to allege that the Outside Directors made *any*

affirmative misstatements (or any statements at all) to Plaintiffs.  Accordingly, *Zimmerman* and

*Saveria JFK, Inc.* are both inapposite.  Because Plaintiffs have not alleged a single

misrepresentation made by any Outside Director to any Plaintiff (unlike the plaintiffs in

*Zimmerman*), they are not entitled to any discovery on their equitable estoppel argument.

Finally, *Sonterra Capital Master Fund Ltd. v. Credit Suisse Group AG* is distinguishable

because there the court dealt with a bid-rigging conspiracy that it found to be "inherently self-

concealing."  277 F. Supp. 3d 521, 567 (S.D.N.Y. 2017) (internal quotation marks omitted).  The

plaintiff accused defendant banks of making false submissions to manipulate the CHF LIBOR

rate in order to bolster their own trading positions.  *Id.* at 539.  That case dealt with a conspiracy

of traders working across multiple banks to, among other things, lock in trades shortly before

LIBOR was fixed in order to inflate or deflate the rates applicable to their trades.  *Id.*  Beyond

being factually inapposite, there the court found that plaintiffs were prevented from having

notice of their claims by virtue of defendants' collusion.  *Id.* at 567.  Here, as described at length

above, all Plaintiffs were on notice of their potential claims at the time of or shortly after their

alleged interactions with Harvey Weinstein.

### 3.     Plaintiffs Concede Duress And Continuing Violations Do Not Apply

In the FAC, Plaintiffs asserted that the continuing violations doctrine tolled the relevant

statutes of limitations on their claims (as well as the doctrines of equitable estoppel and duress).

*See* FAC ¶¶ 718-728.  The Outside Directors argued in their Motion that this doctrine could not

save Plaintiffs' claims.  *See* MTD at 26-28.  Plaintiffs offered no response on this point in the

Opposition.  Having failed to respond to the Outside Directors' arguments in the Opposition (*see*

*generally* Opp.), Plaintiffs have conceded that the continuing violations doctrine does not apply

to their claims. *See Kao v. British Airways, PLC*, No. 17-CV-0232 (LGS), 2018 WL 501609, at

*5 (S.D.N.Y. Jan. 19, 2018) ("Plaintiffs' failure to oppose Defendants' specific argument in a

motion to dismiss is deemed a waiver of that issue."); *Arista Records, LLC v. Tkach*, 122 F.

Supp. 3d 32, 28-39 (S.D.N.Y. 2015) (same).

The same is true for duress tolling. Indeed, the Opposition fails even to mention the

Outside Directors—at all—in its discussion of duress. Plaintiffs therefore concede that that

doctrine cannot apply to toll Plaintiffs' claims against the Outside Directors. First, the Outside

Directors explained in the Motion that Plaintiffs' IIED and NIED claims cannot be tolled as to

them because duress is not an element of Plaintiffs' claims against them. Rather, Plaintiffs' IIED

and NIED claims against those defendants are based solely on vicarious liability—of which

duress is not a component. *See* MTD at 25. By failing to address this argument, Plaintiffs have

waived any opposition to it. *See Kao*, 2018 WL 501609, at *5; *Arista Records*, 122 F. Supp. 3d

at 28-39.

Second, the Outside Directors explained that the FAC fails to identify any actions taken

by any Outside Director that could constitute duress. *See* MTD at 25-26. Although the

Opposition discusses allegations regarding Harvey Weinstein's actions, it does not identify a

single such allegation regarding any Outside Director. *See* Opp. at 62-63. Accordingly,

Plaintiffs have also waived any opposition to this argument. *See Kao*, 2018 WL 501609, at *5;

*Arista Records*, 122 F. Supp. 3d at 28-39.

In any event, *Cullen v. Margiotta*, on which the Opposition relies in addressing certain

allegations about Harvey Weinstein, does not support that duress tolling applies against the

Outside Directors. In *Cullen*, all defendants were alleged to have participated in extortion, of

which duress was an element.  811 F.2d 698, 722 (2d Cir. 1987).  Here, the Opposition concedes

that the FAC's allegations regarding witness tampering do <u>not</u> apply to the Outside Directors.

*See* Opp. at 88 (detailing alleged victim tampering acts by other defendants).  Indeed, nowhere in

the FAC do Plaintiffs allege that the Outside Directors made any "threats of physical force" to

cause any Plaintiff—or anyone else—not to report their alleged assaults.  Nor do Plaintiffs' sex

trafficking claims against the Outside Directors "include[] the use of force, fraud, or coercion."

*Id*. at 61.  The FAC alleges only that the Outside Directors "knew or should have known that

Harvey Weinstein was engaging in acts that constitute sex trafficking," and that they "benefitted

financially from their participation in the cover-up and venture[.]"  *See* FAC ¶¶ 755-756.  These

allegations do not support the application of duress tolling.

Finally, while the Opposition argues that the Court must wait to address duress at

summary judgment or trial (*see* Opp. at 61), courts have dismissed cases at the motion to dismiss

stage where, as here, the plaintiff raised the duress doctrine to save untimely claims, but failed to

plead sufficient facts supporting the invocation of that doctrine.  *See, e.g.*, *Zoe G. v. Frederick

F.G.*, 617 N.Y.S. 2d 370, 371 (2d Dep't 1994) (upholding dismissal of complaint as time-

barred); *Alston v. Stone*, No. 02-CV-5338, 2005 WL 668359, at *4 n.16 (S.D.N.Y. Mar. 21,

2005) (dismissing complaint and noting that "[t]o the extent that the . . . Complaint is attempting

to allege that the statute of limitations is tolled by this alleged duress, this contention is

unavailing . . . ."); *Trisci v. Trisci*, 673 N.Y.S.2d 918, 918 (2d Dep't 1998) (upholding dismissal

of complaint and explaining that "[v]iewing the evidence in a light most favorable to the wife,

she has not met her burden of demonstrating such continuing duress as would toll the running of

the Statute of Limitations").  Accordingly, this issue is properly before the Court at this stage.

## III.   PLAINTIFFS CANNOT PLEAD A RICO CLAIM (COUNTS V AND VI)

### A.   The Opposition Cannot Remedy The FAC's Failure To Plead Predicate Acts

The Opposition does nothing to remedy Plaintiffs' failure to plead a single predicate act against the Outside Directors, much less the requisite pattern.[8]  First, despite this Court's admonition to Plaintiffs—based on their prior dismissed complaint—that the TWC Board's approval of Harvey Weinstein's 2015 employment agreement cannot amount to mail or wire fraud (*see* Sept. 12, 2018 H'rg Tr. 34-35), the Opposition recycles the same argument, based on the same insufficient allegations.  *See* Opp. at 87.  As the Court already held, allegations that the TWC Board participated in negotiating and approving the 2015 employment agreement are insufficient to properly plead a predicate act.[9]

Second, Plaintiffs contend that "the mail or wire communications themselves need not contain a false statement."  *Id*. at 84 (quoting *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 125 (2d Cir. 2018).  The Opposition, however, fails to acknowledge the critical point from *Williams*: "a plaintiff still needs to allege a material misrepresentation as part of the defendants' scheme to defraud to state a violation" of the mail or wire fraud statutes.  *Williams*, 889 F.3d at 125.  As set forth in the Motion, the FAC pleads no such misrepresentation by the Outside Directors.  *See* MTD at 33.  Recognizing this deficiency, the Opposition also argues (without citation to the FAC) that "each [alleged material misrepresentation held] out the sender as someone who is

---

[8]     The Opposition concedes that Plaintiffs do not assert the Outside Directors engaged in witness tampering, Opp. at 88-89, or that, other than Mr. Ziff, they engaged in sex trafficking.  *Id.* at 82.  As to Mr. Ziff, the Opposition only contends—without any factual support—that he (and all other individual defendants allegedly involved with TWC in 2008) knowingly benefited in a venture participating in sex trafficking.  *See* Opp. at 65.  In any event, the FAC fails to allege a sex-trafficking violation under the TVPA/TVPRA by anyone, let alone Outside Director Ziff.  *See* Section IV, *infra*.

[9]     The FAC's allegation that Mr. Jones was appointed to the TWC Board on the same day the TWC Board approved Harvey Weinstein's employment agreement (FAC ¶ 590) omits two crucial facts: Mr. Jones did not attend the October 2015 meeting and did not serve on the TWC Board until December 2015.

sympathetic to and willing to help the victims, when they were actually working for [Harvey] Weinstein." *See* Opp. at 85.  This new allegation has no bearing on Plaintiffs' RICO claims against the Outside Directors, however, because *nowhere* does the FAC allege that any one of them communicated with any of the Plaintiffs at all, much less misrepresented any facts to them.

Third, the Opposition asserts that each defendant need not actually use mails or wires to further a scheme to defraud.  *Id*. at 84 (quoting *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 165 (D. Mass. 2003)).  This ignores the fundamental requirement for Plaintiffs to plead each element of mail or wire fraud **as to each defendant**.  *See DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  The FAC fails to do this as to the Outside Directors (*see* MTD at 31-34), and the Opposition offers no meaningful response.  *See, e.g.*, *Taylor v. Darcy*, No. 16-CV-6465, 2018 U.S. Dist. LEXIS 137489, at *15-16 (S.D.N.Y. July 13, 2018), *report and recommendation adopted*, 2018 U.S. Dist. LEXIS 152176 (S.D.N.Y. Sept. 6, 2018).

Finally, Plaintiffs assert that they have satisfied Rule 9 by alleging that defendants, including the Outside Directors, engaged in mail and wire fraud as a RICO predicate.  *See* Opp. at 85-86.  The Opposition itself, however, shows that they have not.  Although the Opposition states that members of the TWC Board used the mails and wires for multiple purposes, including to "correspond about and discuss each complaint against [Harvey] Weinstein as it occurred" (*see* Opp. at 87), these allegations are found nowhere in the FAC.[10]  Moreover, as described above, Plaintiffs fail to plead even a single misrepresentation (the heart of fraud) against the Outside

---

[10]     *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (party may not amend complaint through motion papers); *Ace Arts, LLC v. Sony/ATV Music Publ'g, LLC*, 45 F. Supp. 3d 436, 451 (S.D.N.Y. 2014) ("[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss[.]'") (quotations omitted).

Directors.  Therefore, despite newly-minted assertions in the Opposition (but not the FAC)

apparently designed to meet the pleading requirement of Rule 9(b) (*see* Opp. at 86-87), Plaintiffs

still fail to identify any factual allegations sufficiently specific to meet that standard.  Plaintiffs

were required to "specify the statements it claims were false or misleading, give particulars as to

the respect in which plaintiffs contend the statements were fraudulent, state when and where the

statements were made, and identify those responsible for the statements," and, failing that, have

failed to plead the RICO predicate of mail or wire fraud.  *Tymoshenko v. Firtash*, No. 11-CV-

2794, 2015 U.S. Dist. LEXIS 125126, at *11 (S.D.N.Y. Sept. 18, 2015) (quotations omitted).

In a last ditch attempt to save the RICO claims, the Opposition asserts that Rule 9's

requirements should be "relaxed" until Plaintiffs receive "necessary evidence" from discovery.

*See* Opp. at 87.  This is the opposite of what Rule 9(b) requires.  The Second Circuit has made

clear that even where "pleading is permitted on information and belief, a complaint must adduce

specific facts supporting a strong inference of fraud or it will not satisfy even a relaxed pleading

standard."[11]  *Wexner*, 902 F.2d at 172; *see also Psykaty v. Wide World of Cars, LLC*, 856 F.3d

216, 226 (2d Cir. 2017) (conclusory allegations made on information and belief are "insufficient

---

[11]      Plaintiffs cite *Rotella v. Wood*, 528 U.S. 549 (2000), to support their request that this Court
dispense with Rule 9(b)'s requirements.  *Rotella* involved the statute of limitations for a civil RICO
claim.  There, the Court rejected the petitioner's argument that a RICO claim should not accrue until he
discovers both an injury and a pattern of RICO activity.  *See id.* at 553-54.  In response to petitioner's
argument that Rule 9(b) would bar RICO claims like his, the Court noted the flexibility in pleading
afforded plaintiffs by Rule 11(b)(3) and the availability of equitable tolling.  The Court did not, however,
pass on whether or where such exceptions applied.  Second Circuit precedent demonstrates that while
"courts have relaxed the Rule 9(b) pleading requirements where much of the factual information needed
to fill out a plaintiff's complaint lies within the opposing party's knowledge," *Hinds Cnty. v. Wachovia
Bank N.A.*, No. 08-CV-2516, 2010 U.S. Dist. LEXIS 43202, at *43 (S.D.N.Y. Apr. 2010), courts have
made clear that "[t]his exception to the general rule must not be mistaken for license to base claims of
fraud on speculation and conclusory allegations," *id.*; *see also Wexner v. First Manhattan Co.*, 902 F.2d
169, 172-73 (2d Cir. 1990).  That is exactly what Plaintiffs seek to do here, where they fail to plead even
the most basic elements of fraud against the Outside Directors.

to make a claim plausible where the complaint's *factual allegations* do not raise a right to relief above the speculative level") (emphasis in original) (quotations omitted).[12]

### B.       Plaintiffs Cannot Allege A RICO Enterprise

Rather than explain how the disparate entities and individuals listed in the FAC functioned as a continuing unit, Plaintiffs ask this Court to ignore well-settled precedent requiring that a RICO enterprise be more than just the sum of multiple alleged illegal acts.

First, Plaintiffs argue that "all members . . . need not be directly working with all other members of that enterprise." *See* Opp. at 76 (quoting *In re Nat'l W. Life Ins. Deferred Annuities Litig.*, 635 F. Supp. 2d 1170, 1174 (S.D. Cal. 2009)). This misses the point: the existence of a RICO enterprise requires that its members "share a common purpose" and "work together to achieve their goal." *See* MTD at 34 (quoting *Aerowest GmbH v. Freitag*, No. 15-CV-2894, 2016 U.S. Dist. LEXIS 84344, at *7 (E.D.N.Y. June 28, 2016)). Plaintiffs have not sufficiently alleged that all members of the so-called "Weinstein Sexual Enterprise" worked together to achieve any common goal. *National Western Life Insurance*—on which Plaintiffs rely—is distinguishable. In that case, the court found that sales agencies and their agents all shared the common purpose of selling a particular annuity, despite competition among those agencies and agents. 635 F. Supp. 2d at 1174-75. Here, by contrast, the Opposition fails to articulate any common purpose uniting such disparate persons as Black Cube and the Outside Directors. There is no allegation, for example, that Black Cube sought to "produce and promote movies and entertainment," or that the Outside Directors sought to "procure women for [Harvey] Weinstein's assaults" or "cover up his pattern of sexual harassment and assault through

---

[12]      Plaintiffs' inability to establish even one RICO predicate against the Outside Directors means, *a fortiori*, that they cannot establish RICO's "pattern" element, which "requires at least two acts of racketeering activity" that must be connected to a common racketeering purpose. *See Sedima*, 473 U.S. at 496 n.14; 18 U.S.C. § 1961(5).

intimation, threats, payoffs, and deception." Opp. at 76.[13]  Plaintiffs' allegation of "contacts between and among . . . [Harvey] Weinstein, TWC, and the Directors" (*id.*) is unremarkable: every company must communicate through and with its executives and board, and these allegations do not suffice to specify the necessary "relationships among those associated with the enterprise." *D. Penguin Bros. Ltd. v. City Nat'l Bank*, 587 F. App'x 663, 668 (2d Cir. 2014) (no RICO enterprise where complaint failed to allege that defendants "acted on behalf of the enterprise as opposed to on behalf of themselves in their individual capacities, to advance their individual self-interests") (quotations omitted).  As Plaintiffs' own Opposition shows, there was no such relationship here.[14]

Next, Plaintiffs argue that a RICO enterprise need not have a specific hierarchy, structure, or chain of command.  *See* Opp. at 77.  This is beside the point because the FAC fails to allege the existence of any functioning unit at all.  *See Moss v. BMO Harris Bank, N.A.*, 258 F. Supp. 3d 289, 301 (E.D.N.Y. 2017).  Neither the FAC nor the Opposition points to any facts suggesting that the disparate individuals and entities alleged to be part of the "Weinstein Sexual Enterprise" "acted on behalf of the *enterprise* as opposed to on behalf of themselves in their individual capacities," nor do they provide "any basis for inferring that they . . . formed an ongoing organization, formal or informal, let alone a coherent entity separate and apart from the alleged fraudulent scheme."  *Id.* at 304 (quotations omitted); *see also D. Penguin Bros.*, 587 F. App'x at 668 (plaintiff failed to plead association-in-fact enterprise where allegation of common purpose

---

[13]    As discussed below, the Opposition does not cure the FAC's failure to plead that the Outside Directors knew of Harvey Weinstein's alleged propensity to commit sexual assault.  *See* Sections V(C)-(D), *infra*.

[14]    To the extent Plaintiffs suggest a "hub-and-spoke" enterprise existed, courts in this Circuit are clear that such an allegation is insufficient for purposes of RICO.  *See In re Trilegiant Corp.*, 11 F. Supp. 3d 88, 98-99 (D. Conn. 2014) (collecting cases); *Neiman Marcus Grp., Inc. v. Dispatch Transp. Corp.*, No. 09-CV-6861, 2011 U.S. Dist. LEXIS 30681, at *25-26 n.11 (S.D.N.Y. Mar. 17, 2011).

was "little more than a naked assertion devoid of further factual enhancement") (quotations omitted).

Further, Plaintiffs ask this Court to ignore well-settled law in this Circuit requiring that a RICO enterprise exist "separate and apart" from the underlying RICO predicates. *See* Opp. at 77-78. While evidence of the existence of a RICO enterprise and commission of RICO predicate acts may "coalesce," *Boyle v. United States*, 556 U.S. 938, 947 (2009), Plaintiffs must do more than allege the commission of underlying racketeering activity. *See Aerowest GmbH*, 2016 U.S. Dist. LEXIS 84344, at *8-9 ("The defendants cannot be grouped together for the sole reason that they all allegedly had [roles] in the alleged acts.") (quotations omitted); *Miller v. Carpinello*, No. 06 CV 12940, 2007 U.S. Dist. LEXIS 86395, at *23 (S.D.N.Y. Nov. 19, 2007) (plaintiff failed to plead existence of RICO enterprise where he "simply alleges that a group of union members committed some illegal acts"). A RICO enterprise must be "'an entity separate and apart from the pattern of activity in which it engages,' and 'at all times remains a separate element which must be proved.'" *United States v. Cain*, 671 F.3d 271, (2d Cir. 2012) (quoting *United States v. Turkette*, 452 U.S. 576, 583 (1981)). The Supreme Court explicitly recognized this in *Boyle*: "Even if the same evidence may prove two elements, this does not mean that the two elements collapse into one." 556 U.S. at 950 n.5. The FAC fails to allege the existence of a RICO enterprise (*see* MTD at 34-36), and contrary to Plaintiffs' argument, allegations that certain entities committed underlying offenses, without more, is not enough.[15]

---

[15]    The Opposition relies entirely on the alleged coproduction of "Project Runway" by TWC and Miramax to support the existence of the entire "Weinstein Sexual Enterprise" as an entity separate and apart from the alleged racketeering activity. *See* Opp. at 78. But the coproduction of a television show cannot demonstrate the requisite "*course of fraudulent or illegal conduct* separate from the alleged predicate racketeering acts themselves." *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 173 (2d Cir. 2004) (emphasis added).

### C.     The Outside Directors Did Not Participate In A RICO Enterprise

The Opposition argues that the Outside Directors' alleged participation in the negotiation of Harvey Weinstein's 2015 employment contract is sufficient to show that they directed the affairs of the so-called "Weinstein Sexual Enterprise."  *Id.* at 79-80.  It is not.[16]

Nowhere do Plaintiffs explain how the discharge of one of the TWC Board's key duties can be deemed participation in the purported "Weinstein Sexual Enterprise."  Nor can they. Participation in TWC's legitimate business affairs is not sufficient.[17]  *See* MTD at 37; *see also In re GM LLC Ignition Switch Litig.*, No. 14-MD-2543, 2016 U.S. Dist. LEXIS 92499, at *135-137 (S.D.N.Y. July 15, 2016) (collecting cases).  And allegations that defendants had business dealings with an enterprise "without any allegations that they exert any control over the enterprise does not sufficiently allege a claim under RICO against those entities."  *Conte v. Newsday, Inc.*, 703 F. Supp. 2d 126, 135-36 (E.D.N.Y. 2010) (quotations omitted); *see Elsevier Inc. v. Memon*, 97 F. Supp. 3d 21, 33 (E.D.N.Y. 2015).  The cases Plaintiffs cite do not hold otherwise, and instead addressed detailed allegations regarding each defendant's alleged role in the illicit RICO enterprise.  *See Sky Med. Supply Inc. v. SCS Support Claims Servs.*, 17 F. Supp. 3d 207, 225 (E.D.N.Y. 2014) (finding sufficient participation where plaintiff alleged that each of the defendants were "vital actor[s] who enabled the scheme by allowing others to use their name[s] on [independent medical examinations] and peer review reports, and by testifying

---

[16]     Again, Messrs. Lasry and Jones were not on the TWC Board during negotiation and approval of Harvey Weinstein's 2015 employment contract.

[17]     The Opposition asserts that the "Directors knew that settlements to women had been paid."  *See* Opp. at 79 (citing FAC ¶ 489).  That paragraph, however, alleges only that Boies claimed Maerov and Ben Ammar knew of prior settlements, and does not mention any of the Outside Directors.  As to the purported knowledge of Ben Ammar, there is no allegation in the FAC that the settlements about which Ben Ammar was allegedly aware involved claims of sexual assault, or in Maerov's case that such settlements were not associated with consensual relationships.  Moreover, the alleged knowledge of improprieties—acquired *after* Plaintiffs' were purportedly sexually abused—cannot support a claim against any of the Outside Directors.  *See* Section V(C), *infra*.

falsely in support of those reports") (quotations omitted); *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934, 2005 U.S. Dist. LEXIS 29666, at *22 (E.D.N.Y. Feb. 22, 2005) ("Plaintiffs describe in detail each defendant's necessary and symbiotic contribution to the overall scheme.").[18]  The FAC contains no such allegations concerning the Outside Directors.

The Opposition also asserts that alleging participation "in the cover-up of crimes" is sufficient to plead participation in the management of the alleged RICO enterprise against the Outside Directors.  *See* Opp. at 80.  Nowhere, however, do Plaintiffs explain how members of the TWC Board fulfilling their legitimate business roles can be construed as a "cover-up of crimes."  In any event, Plaintiffs' sole authority for such a proposition is a decades-old, out-of-circuit decision holding that mails and wires used to effectuate and conceal a bid-rigging scheme sufficiently established a violation of the mail and wire fraud statutes.  *Int'l Telecomms. Satellite Org. v. Colino*, No. 88-CV-1266, 1992 U.S. Dist. LEXIS 4887, at *56-57 (D.D.C. Apr. 14, 1992).  In that case, the court had no trouble finding that the architect and principal beneficiary of a bid-rigging scheme participated in directing the affairs of a RICO enterprise devoted to that scheme.  *See id.* at *3-4, *51-52.  This is in stark contrast to the FAC, which does not allege any such involvement or misrepresentations by the Outside Directors in furtherance of the alleged scheme.  *See* MTD at 36-37; *see also* Sections III(A)-(B), *supra*.  The Opposition fails to explain how the Outside Directors—who were neither the architects nor beneficiaries of any alleged scheme to satisfy Harvey Weinstein's sexual appetite—conducted or participated in the conduct of the alleged enterprise.  *See Elsevier*, 97 F. Supp. 3d at 33-34 (dismissing those defendants who

---

[18]     *Allen* is also inapposite.  There, the court held that certain defendants' acts of bribery related to the RICO scheme *did not* constitute "participation" as a matter of law, affirming the trial court's denial of summary judgment to the government on that question.  *United States v. Allen*, 155 F.3d 35, 43 (2d Cir. 1998).  The court did not address whether conclusory allegations of participation in a civil RICO enterprise are sufficient on a motion to dismiss.  They are not.

merely "provided a service that was helpful to the association in fact enterprise without exercising direct control over it").

### D. Plaintiffs Cannot Establish RICO Standing

Plaintiffs concede that their alleged physical and emotional injuries are not redressable under RICO. *See* Opp. at 92. The Opposition points only to the alleged "blacklisting" of Plaintiffs as injuries to satisfy RICO's standing requirement.[19]  *Id*. at 91. This is insufficient.

As detailed in the Motion, a "plaintiff only has standing if . . . he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "The remedial purpose of RICO is to put the injured plaintiff in the same financial position it would have been . . . absent the misconduct. As such, RICO [standing also requires] *actual*, quantifiable injury." *Makowski v. United Bhd. & Joiners of Am.*, No. 08 Civ. 6150, 2010 U.S. Dist. LEXIS 77775, at *26 (S.D.N.Y. Aug. 2, 2010) (emphasis in original) (quotations omitted). And the injury must be both the proximate and "but for" result of a particular defendant's RICO violation. *See Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 283-84 (2d Cir. 2006).

As an initial matter, Plaintiffs assert they were all "blacklisted," without citation to the FAC. *See* Opp. at 91-93. But the FAC alleges that only *two* out of ten of the named Plaintiffs were "blacklisted." *See* FAC ¶¶ 26, 265, 830(b) (Thomas); *id.* ¶¶ 27, 179, 830(h) (Sagemiller). The other eight Plaintiffs do not allege that they were "blacklisted," and thus concede that they

---

[19]     Although the Opposition claims that the FAC alleges that the "RICO scheme . . . impeded and injured [Plaintiffs'] legal claims against Harvey Weinstein" (*see* Opp. at 91), Plaintiffs provide no support or specifics for such an assertion. *See id.* at 96. To the extent Plaintiffs refer to the FAC's allegations of Ms. Thompson's communications with Alex Spiro (*see* FAC ¶¶ 306-311), neither the FAC nor the Opposition explains how any cause of action of Ms. Thompson's was actually harmed (because it was not). Indeed, by the time Ms. Thompson alleges she spoke to Spiro, in 2017, any RICO claim she may have had was already untimely. *See* Section II(A), *supra*.

do not have standing to assert their RICO claims.[20]  Regardless, even if all the Plaintiffs had

sufficiently alleged they were blacklisted (they have not), Plaintiffs still have not articulated any

basis to confer RICO standing.

       Plaintiffs further argue that they need not quantify the specific amount of damages caused

by Harvey Weinstein's alleged "blacklisting."  *See* Opp. at 93-94.  But precision is not at issue

here.  Plaintiffs' alleged injuries are impermissibly speculative not because they cannot yet be

measured precisely, but because their indefinite nature means they may never be capable of

measurement, regardless of the industry in which they work.  *See* MTD at 39; *see Tsipouras v.

W&M Props., Inc.*, 9 F. Supp. 2d 365, 368 (S.D.N.Y. 1998) (loss of a promised future,

contingent bonus could not constitute RICO injury).[21]

       The Opposition next contends that the intent of the alleged RICO scheme determines

whether an alleged injury confers RICO standing.  *See* Opp. at 92-93.  Not so.  Intent to harm a

business or property interest, without any *actual harm*, is not enough to confer RICO standing.

*See, e.g.*, *Sedima*, 473 U.S. at 496 ("[T]he plaintiff only has standing if, and can only recover to

the extent that, he has been injured in his business or property by the conduct constituting the

violation."); *Dornberger v. Metropolitan Life Ins. Co.*, 961 F. Supp. 506, 521 (S.D.N.Y. 1997)

(18 U.S.C. § 1964(c) "requires a showing of some actual, out-of-pocket financial loss").[22]  In

---

[20]     Plaintiff Kendall alleges only that she "believed that if she were to disclose the assault, she would
be blacklisted and blamed."  *See* FAC ¶ 113.  She does not allege that this came to pass.

[21]     Plaintiffs have no meaningful response to *Tsipouras* (*see* Opp. at 94 n.285), and the loss of a
future, promised bonus—which the court held to be insufficient to confer RICO standing—is similar to
Plaintiffs' alleged losses of future, undetermined opportunities.

[22]     Plaintiffs' authorities do not hold otherwise.  *See* Opp. at 91 n.271.  *Aramony* held that an
organization did *not* have RICO standing based on fees actually incurred in mitigating reputational harm
caused by its former president's embezzlement.  *See Aramony v. United Way of Am.*, 969 F. Supp. 226,
233 (S.D.N.Y. 1997).  *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256 (2d Cir. 1995) did not
consider the question of RICO standing or injury at all—it addressed the wholly separate issue of the
sufficiency of the evidence to uphold the jury's verdict on the "enterprise" element of a RICO claim.  *See*

their Opposition, Plaintiffs claim that the cases cited in the Motion are inapplicable because they do not address whether the defendants intended to harm a property interest of the Plaintiffs. Opp. at 92-93 & nn.275, 277.  Plaintiffs, however, cite no authority to support their argument that intent—alone—is sufficient.  Contrary to Plaintiffs' argument, *Hollander* is instructive here: in that case, the court found no RICO injury where the plaintiff's damages were "the costs of [his] acts, not the defendants' RICO violations."  *See Hollander v. Flash Dancers Topless Club*, 173 F. App'x 15, 17 (2d Cir. 2006).

Finally, as to causation, the Opposition contends that discovery will illuminate who denied Plaintiffs roles and for what reason.  *See* Opp. at 96-97.  But Plaintiffs' focus on discovery puts the cart before the horse.  Plaintiffs must have a claim to be entitled to discovery, and because of the FAC's failure to allege that the Outside Directors caused any alleged RICO violation, no claim exists.  *See* MTD at 40-42.  Plaintiffs' attempt to distinguish *Mack* fails because the Opposition does no more than restate the argument that mere intent to harm business or property is sufficient to confer standing.  As discussed above, it is not.  And in any event, the Opposition does not (and cannot) respond to defendants' argument in the Opening Brief that the Outside Directors (as opposed to Harvey Weinstein and others working on his behalf) did not take any "affirmative steps to blacklist" them.  *Compare* MTD at 41-42 *with* Opp. at 96-97.  A RICO plaintiff must plead both proximate and but-for causation, in addition to an injury to her

---

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 170 (2004) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").  Neither case contradicts the rule that "[d]amage to reputation is generally considered personal injury and thus is not an injury to 'business or property' within the meaning of [RICO]."  *Hamm v. Rhone-Poulenc Rorer Pharms.*, 187 F.3d 941, 954 (8th Cir. 1999); *Kerik v. Tacopina*, 64 F. Supp. 3d 542, 561 (S.D.N.Y. 2014) ("[R]eputational injuries are insufficient to support a civil RICO claim."); *see also Kimm v. Lee*, 196 F. App'x 14, 16 (2d Cir. 2006) ("[G]eneralized reputational harms, including the risk of future lost business . . . are too speculative to constitute an injury [under RICO].").

business or property.  *See Makowski*, 2010 U.S. Dist. LEXIS 77775, at *24-27.  The FAC does neither.

In fact, Plaintiffs cannot respond to defendants' causation argument because the types of injuries Plaintiffs claim they suffered are the exact kinds of speculative, contingent, unprovable injuries that cannot be traced back to any purported racketeering activity or any one cause, period.  Plaintiffs fail to identify a single lost contract for film-industry employment, yet insist that they would be Hollywood stars with successful careers if not for the underlying conduct. Nothing could be more speculative—to determine whether any given Plaintiff would have succeeded in Hollywood would require an individualized assessment of each Plaintiff's career prospects (itself requiring subjective assessment of the aesthetics, acting abilities, and marketability of each Plaintiff) against a decade of Hollywood history and which projects would have been available, director preference and countless other untold factors.  *See* MTD at 40-42.; *see also Trs. of the Plumbers & Pipefitters Nat'l Pension Fund v. Transworld Mech.*, 886 F. Supp. 1134, 1146 (S.D.N.Y. 1995) ("[A] RICO plaintiff may not recover for speculative losses or where the amount of damages is unprovable."); *Doe v. Schneider*, 667 F. Supp. 2d 524, 534 (E.D. Pa. 2009) (dismissing ballet performer's RICO claim arising from allegations of abuse).

## E.   Plaintiffs Fail To Save Their Deficient RICO Conspiracy Claim

Defendants demonstrated that the FAC's RICO conspiracy claim fails without a properly pled substantive RICO violation as against each defendant.  *See* MTD at 42-43.  The Opposition provides no response, and this failure is fatal to Plaintiffs' RICO conspiracy claim.

Plaintiffs state, without support, that "each Defendant knowingly agreed to join the conspiracy and involved itself (or himself) in the commission of at least two predicate acts."  Not so.  Plaintiffs' lone authority is instructive.  *Zemylansky* explained that to prove a RICO conspiracy at trial, the government must establish that the "defendant knowingly agreed to

facilitate the general criminal objective of a jointly undertaken racketeering scheme." *See United States v. Zemlansky*, 908 F.3d 1, 14 (2d Cir. 2018) (emphasis added) (quotations omitted).  The FAC does not (and cannot) allege that the Outside Directors agreed with others to further any criminal scheme, let alone that they did so with knowledge of the alleged scheme's criminal goals.  *See* MTD at 43-44.[23]

## IV.   PLAINTIFFS CANNOT PLEAD A SEX-TRAFFICKING CLAIM (COUNT II)

### A.   In Their Opposition, Plaintiffs Dismiss Five Directors From Their Claim

Plaintiffs concede that there is no sex-trafficking claim against James Dolan, Paul Tudor Jones, Marc Lasry, Irwin Reiter, and Tim Sarnoff.[24]  Initially, in the FAC, Plaintiffs included those individuals among the "TWC Directors" and "TWC Officers" that Count II indiscriminately targeted (in a blatant example of impermissible group pleading).  *See* FAC ¶¶ 16, 755-77; *id.* at 1 (defining the "TWC Directors" and "TWC Officers" for purposes of the FAC).  But in the Opposition, Plaintiffs effectively dismiss them from their claim, contending only that they have properly pleaded Count II against Harvey Weinstein, "TWC, Robert Weinstein, Dirk Ziff, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, David Glasser, Frank Gil, and Barbara Schneeweiss."  *See* Opp. at 65-66 & n.153.  In other words, Plaintiffs are no longer even attempting to plead a sex-trafficking claim against former TWC Board members Dolan, Jones, Lasry, and Sarnoff.  Accordingly, these individuals must be dismissed from Count II, with prejudice.

---

[23]   The Opposition also asserts that defendants argue "that they cannot be liable for acts prior to joining the [TWC] Board."  *See* Opp. at 98 n.300 (citing *United States v. Blackmon*, 839 F.2d 900, 908 (2d Cir. 1988)).  But defendants do not make such an argument as to the RICO conspiracy claim.  *See* MTD at 42-44.  And in any event, *Blackmon* affirms that defendants may not be held liable for substantive offenses committed by others before they joined the TWC Board.  *Blackmon*, 893 F.2d at 909.

[24]   Plaintiffs dismissed Mr. Reiter from the case on December 13, 2018.  *See* ECF No. 182.

### B.     Count II Fails Against The Other Directors

With respect to the other remaining directors that Plaintiffs label as "TWC Directors"—Robert Weinstein, Dirk Ziff, Tarak Ben Ammar, Lance Maerov, and Richard Koenigsberg—Plaintiffs have failed to plead, and cannot plead, any of the required elements for civil liability under the sex-trafficking statutes.[25]

### 1.     Plaintiffs Ignore Key Differences In The 2003 And 2008 TVPRA

Plaintiffs concede that the conduct on which Plaintiffs Geiss and Thomas base their claims arises under the 2003 TVPRA, not the 2008 TVPRA, but contend that any distinction between those two versions of the statute is "a red herring" at this stage.  *See* MTD at 45-46; Opp. at 64-65.  Not so.  Even assuming the 2003 TVPRA permits claims against mere beneficiaries—as opposed to the actual perpetrator of the acts of sex trafficking—there is a critical distinction between the *knowledge* requirements of the 2003 and 2008 versions of the statute, which Plaintiffs entirely ignore.[26]

As Plaintiffs acknowledge, there can be no liability under the 2003 version of the TVPRA in the absence of actual, direct, affirmative knowledge that they are participating in a venture where "force, fraud, or coercion . . . will be used to cause the person"—a specific person—"to engage in a commercial sex act[.]"  *See* Opp. at 64-65 (quoting 18 U.S.C. § 1591(a)).  But Plaintiffs do not plead any actual, non-conclusory *facts* suggesting that any director defendant had actual knowledge of the means of "force, fraud, or coercion" on which

---

[25]     This Reply (like the MTD) takes no position on the pleading adequacy of Plaintiffs' allegations against Harvey Weinstein.  *See* MTD at 44 n.25.

[26]     Moreover, Plaintiffs offer no citation to authority for their argument that the "perpetrator" who can be civilly liable under the 2003 TVPRA is not confined to the person who used force to coerce commercial sex acts, but can reach a beneficiary of that criminal misconduct, as well.  That interpretation flies in the face of the commonly understood meaning of the word "perpetrator"—i.e., the person who commits the "illegal or immoral" act.  *See* PERPETRATOR, Black's Law Dictionary (10th ed. 2014).

Plaintiffs Geiss's and Thomas's claims rely.  Rather, Plaintiffs' entire theory is that the director defendants *should have known* that Harvey Weinstein was coercing illicit sex acts—primarily due to a thin patchwork of disconnected and vaguely antagonistic statements against Harvey Weinstein over the years.  *See, e.g.*, FAC ¶¶ 481(a) (referencing "a statement made by Courtney Love on the red carpet of the 2005 Comedy Central celebrity roast of Pamela Anderson"), 481(c)-(d) (referencing statements by a character on the comedy series "30 Rock").

Under the 2003 version of the TVPRA, that is not enough; actual knowledge, tying to each specific defendant, is required.  *See* MTD at 45-46.  Accordingly, the differences between the 2003 and 2008 versions of the TVPRA require the Count II claims of Plaintiffs Geiss and Thomas to be dismissed with prejudice.

### 2.  Plaintiffs Cannot Plead The Participation Element

Plaintiffs do not dispute that 18 U.S.C. § 1595 requires allegations of "participation" in a sex-trafficking venture.  *See* Opp. at 66-67.  Nor do they dispute that the participation element requires that they allege *active* and *direct* involvement in sex-trafficking violations.  *See* MTD at 47.  Plaintiffs offer no response to that case law, and thus concede that "specific conduct that furthered the sex trafficking venture" and "some participation in the sex trafficking act itself must be shown."  *Noble v. Weinstein*, 335 F. Supp. 3d 504, 524 (S.D.N.Y. 2018); *Canosa v. Ziff*, No. 18 Civ. 4115, 2019 U.S. Dist. LEXIS 13263, at *64-65 (S.D.N.Y. Jan. 28, 2019) (following *id.*); *see also United States v. Afyare*, 632 F. App'x 272, 286 (6th Cir. 2016) ("[Liability] would require that a defendant actually participate and commit some 'overt act' that furthers the sex trafficking aspect of the venture."); *Ratha v. Patthana Seafood Co., Ltd.*, No. 16-4271, 2017 WL 8293174, at *4 (C.D. Cal. Dec. 21, 2017) ("[T]he relevant case law requires more than receipt of a passive benefit to satisfy the TVPRA's participation in a venture element.").

Rather than challenge these authorities or the pleading requirements they impose, Plaintiffs assert that just one of the cited cases, *Noble*, is distinguishable.  *See* Opp. at 66.  In furtherance of that contention, Plaintiffs offer a bulleted list of allegations with no analysis, and no supporting citations to the FAC.  *See id.* at 66-67.  Those omissions are telling, because several of the assertions in Plaintiffs' list—that unidentified "Defendants helped Harvey Weinstein set up for the assaults," or "participated in the cover-up of the assaults"—are *not in their pleading*, at all.  Plaintiffs cannot save their claim with uncited and unpleaded assertions (against undefined "Defendants") that appear for the first time in their opposition brief instead of their complaint.  *See Ace Arts*, 45 F. Supp. 3d at 451 ("[I]t is 'axiomatic that the Complaint cannot be amended by briefs in opposition to a motion to dismiss[.]'") (quotations omitted).

The other assertions in Plaintiffs' list—i.e., that unspecified "Defendants . . . were told that TWC employees were helping [Harvey Weinstein] set up for assaults," "received complaints from women who were assaulted or knew about the assaults," "knew of settlement payments to women who were assaulted[,]" or otherwise "knew of the assaults"—are also insufficient.  *See* Opp. at 66-67.  First and foremost, these assertions are at best gross mischaracterizations of allegations against *other* defendants in the FAC (and at worst, total inventions, unsupported by Plaintiffs' pleading).[27]  Second, the undisputed law holds that sex-trafficking liability must be

---

[27]    The only allegation in the FAC that remotely connects to the Opposition's assertion of "TWC employees . . . helping [Harvey Weinstein] set up for assaults" is the "O'Connor memorandum," which Plaintiffs stretch too far.  In that document, Ms. O'Connor said she *suspected* that Harvey Weinstein had used her to "facilitate liaisons" with aspiring actresses.  *See* FAC ¶ 445.  Ms. O'Connor's suspicion is a far cry from affirmative knowledge, *on the part of the remaining director defendants*, of coercive acts of sex-trafficking—especially in light of her later disavowal of any wrongdoing having occurred at TWC.  *See id.*  Nor did any Outside Director "receive[] complaints from women who were assaulted or who knew of the assaults."  *See* Opp. at 67.  Similarly, Plaintiffs' allegations regarding "settlement payments" do not relate to any Outside Director, and could only refer (at most) to a 1998 allegation that entirely predates the TVPRA and is therefore not actionable.  *See* FAC ¶ 358; *see also* MTD at 45, 109-110; *Velez v. Sanchez*, 693 F.3d 308, 324-25 (2d Cir. 2012) (no pre-2003 liability under the TVPRA).

based on some overt *participation* in the underlying misconduct; merely *knowing* or *being told* of the misconduct cannot give rise to liability. *E.g.*, *Noble*, 335 F. Supp. 3d at 524.

For that reason, the FAC fundamentally fails to plead the participation element. The FAC's actual allegations against the remaining director defendants are not that they *took action* in furtherance of any sex-trafficking violation, but that they *failed to take action* to "oust" Harvey Weinstein from TWC, and thus "acquiesced" in his misconduct. *See* MTD at 47.[28] But "inaction" is the antithesis of "participation." The sex-trafficking statutes do "not target [those] who turn a blind eye" to misconduct, only those who "engaged in some aspect of the sex trafficking[.]" *Afyare*, 632 F. App'x at 286; *see also Noble*, 335 F. Supp. 3d at 524 (quoting *id.*). Although Plaintiffs do not challenge that point of law, they run headlong into it: their Opposition expressly admits that their theory of liability is "that Defendants turned a blind eye to [Harvey Weinstein's] abuse[.]" *See* Opp. at 68. Under established—and uncontested—law, that is not enough. Liability "cannot be established by association alone." *Noble*, 335 F. Supp. 3d at 524.

Plaintiffs thus fail to distinguish *Noble*, and their unpleaded assertions and allegations of inaction are categorically insufficient to state a claim. Accordingly, Plaintiffs' claim fails for the same reason a similar claim failed in *Noble*: "What [was] missing [were] factual allegations that link Robert [Weinstein]'s actions to Harvey [Weinstein]'s 2014 conduct toward [the plaintiff]." 335 F. Supp. 3d at 524. Plaintiffs' allegations against the remaining director defendants in this case are equally—if not even more—attenuated. None of Plaintiffs' allegations remotely touch on any act or omission of the remaining director defendants. *See* MTD at 49. Instead, the FAC

---

[28]   In contrast to Plaintiffs' Opposition, the MTD summarized and distilled these allegations with comprehensive citations to the FAC. *See* MTD at 47-48. Plaintiffs' Opposition offers no response to (and does not even address) that summary.

alleges that Harvey Weinstein seized on chance encounters ("bumping into" Plaintiffs Geiss and Thompson in social settings, and meeting Plaintiff Thomas when she applied to be a nanny to his children) to commit misconduct for his own personal gratification.  *See id.*; *see also* FAC ¶¶ 243, 267, 254.  These concessions show that Plaintiffs cannot save their claim through re-pleading—manifestly, the directors did not "participate" in any act of "recruit[ment], entice[ment] . . . solicit[ation]," or other sex-trafficking offense on which the Plaintiffs base their claims.  *See* 18 U.S.C. §§ 1591(a)(1), 1595(a).  A defendant who was not "present for any of the alleged assaults" nor "told about them after they occurred" has no liability under the sex-trafficking statutes.  *Noble*, 335 F. Supp. 3d at 524 (quoting *Lawson v. Rubin*, No. 17-cv-6404 (BMC), 2018 WL 2012869, at *12 (E.D.N.Y. Apr. 29, 2018)).

Accordingly, Plaintiffs have failed to plead the "participation" element, and cannot cure that failure through amendment.

### 3.        Plaintiffs Cannot Plead The Benefits Element

Liability under 18 U.S.C. § 1595(a) requires allegations that the remaining director defendants "knowingly benefit[ed] . . . from participation" in a sex-trafficking venture.  *See* MTD at 49-52.  Plaintiffs claim they have fulfilled this pleading requirement because the statutory definition of "benefits" is "extremely broad," and encompasses "the power, prestige, and perks" Harvey Weinstein allegedly gave unspecified "Defendants," as well as the "benefit" of preventing "the downfall of [TWC]."  *See* Opp. at 68.

Yet Plaintiffs' definition of "benefits" sweeps too far.  The scope of liability must not "ensnare conduct that the statute never contemplated."  *Afyare*, 632 F. App'x at 286.  Indeed, Plaintiffs offer no authority suggesting that the social acts of attending parties and events can give rise to a violation of the sex-trafficking statutes.  Certainly *United States v. Cook*, 782 F.3d

34

983 (8th Cir. 2015)—the sole authority Plaintiffs cite on this point—does not.  *See* Opp. at 67.[29]

Nor is there any merit to (or support for) Plaintiffs' argument that the directors "benefitted" by

avoiding the downfall of TWC.  The word "benefit" cannot be stretched to cover Plaintiffs'

theory; it is plainly not a "benefit" to avoid self-harm.  *See* MTD at 49-51.

But even if Plaintiffs' overbroad definition of "benefits" were cognizable (and it is not),

their claim would still fail—because Plaintiffs completely fail to address the *mens rea*

component of the "benefits" element.  That is fatal to their claim.  No receipt of benefits is

actionable unless the defendant had affirmative knowledge of the link between those benefits and

his or her participation in a sex-trafficking venture.  *See* MTD at 49 (citing *Flores-Figueroa v.*

*United States*, 556 U.S. 646, 652 (2009), and *United States v. Weintraub*, 273 F.3d 139, 147 (2d

Cir. 2001)).  Thus, it is not enough for Plaintiffs simply to argue that anything and everything

can be a "benefit" for purposes of sex-trafficking liability (and they offer no authority stating

otherwise).[30]  Plaintiffs must still draw a connection and "causal relationship" between an act of

sex trafficking, the alleged benefits, and each defendant's *mens rea*.  *Kolbek v. Twenty First*

---

[29]    *Cook* upheld a guilty plea against a challenge to the sex-trafficking statute on constitutional grounds, rejecting the defendant's argument that his criminal liability for receiving "benefits" (sex acts and sexual photographs) from years of direct participation in violent and horrific sex-trafficking was void for vagueness.  *See Cook*, 782 F.3d at 986, 988-89.  The facts and issues in *Cook* bear no resemblance whatsoever to this action and are completely inapposite.

[30]    Plaintiffs cite *Aguilera v. Aegis Commc'ns Grp., LLC*, 72 F. Supp. 3d 975, 980 (W.D. Mo. 2014), for the proposition that they need not allege "the source or amount of the benefit, how and when the alleged benefit was conferred upon [defendant] or how [defendant] knew it received the alleged benefit."  *See* Opp. at 67.  That proposition does not save Count II.  The problem with Plaintiffs' claim is not merely that it lacks sufficient detail regarding the amount or timing of alleged benefits, but that it lacks any coherent connection between the benefits and the wrongful acts.  By contrast, in *Aguilera*, that connection was explicit:  the moving defendant was alleged to be the entity that created, implemented, and recruited the plaintiff to enroll in a fraudulent forced labor enterprise in India.  *See Aguilera*, 72 F. Supp. 3d at 977, 980.  Thus, the "benefits" received in *Aguilera* (plaintiff's labor) and the underlying criminal violations (coercive labor practices) were part of a commons scheme purposefully (and knowingly) crafted by a single entity.  But in this case the alleged "benefits" are distinct from the acts of exploitation themselves, and the remaining director defendants had nothing to do with Harvey Weinstein's acts of exploitation.

*Century Holiness Tabernacle Church, Inc.*, No. 10-CV-4124, 2013 WL 6816174, at *16 (W.D. Ark. Dec. 24, 2013).[31]

In other words, Plaintiffs must plead that each defendant received those benefits "*knowing*" that they were the results of sex-trafficking violations. They have not done so. The FAC contains no allegations regarding that necessary link. Plaintiffs make no attempt to tie the alleged benefits—Harvey Weinstein's "social currency" in the form of Hollywood parties and "tables at the Oscars"—to any act of sex trafficking. Nor do Plaintiffs allege that any of the remaining director defendants *actually received* any of those alleged benefits (as the statutory language requires), or that any such benefit was received because it was offered by Harvey Weinstein (as opposed to other industry channels). *See* MTD at 50-51. Plaintiffs' Opposition contains no response whatsoever to these points, and, accordingly, Plaintiffs have failed to plead the "benefits" element.

### 4.     Plaintiffs Cannot Plead Scienter Regarding The "Venture"

The third element of liability under 18 U.S.C. § 1595(a) requires allegations of the defendants' scienter regarding the criminal acts of sex-trafficking committed by the "venture." *See* MTD at 52-53. For Plaintiffs Geiss and Thomas, the scienter standard requires affirmative and specific allegations of *knowledge*; under the 2003 version of the TVPRA, constructive knowledge or mere recklessness is not enough. *See* Opp. at 65 (acknowledging that "prior to December 31, 2008, the TVPRA's reach did not extend to persons who 'should have known'" that the "venture" in question had violated the sex-trafficking statutes). For Plaintiff Thompson,

---

[31]     Plaintiffs assert, in a footnote, that *Kolbek* and *Cabusao v. Lombardi*, No. 1:14CV74-HSO-RHW, 2015 U.S. Dist. LEXIS 185609, at *10 (S.D. Miss. Jan. 30, 2015), are "inapposite," but aside from that *ipse dixit* assertion, Plaintiffs offer no analysis to distinguish those cases. *See* Opp. at 68 n.160.

the 2008 version of the TVPRA—with its "knew or should have known" standard—applies.  *See* 18 U.S.C. § 1595(a).

Under either standard, Plaintiffs' allegations fail.  Indeed, Plaintiffs do not even address the argument that the FAC alleges the existence of an expansive "venture" with many components (the "Weinstein Sexual Enterprise"), but contains no allegations linking the directors to those components.  *See* MTD at 52-53.  Simply put, nothing in the FAC suggests that the remaining director defendants knew that the constituent parts of the "venture" even existed, much less that they "knew or should have known" that they were engaged in alleged violations of the sex-trafficking laws.  Nor do Plaintiffs dispute that they failed to allege (but were *required* to allege) that the remaining director defendants had knowledge of the venture's use of "force, fraud, or coercion" to cause Plaintiffs to engage in "commercial sex acts."  *See* 18 U.S.C. §§ 1591(a)(1); 1595(a); MTD at 53-54.

Rather than address these points—which are independently fatal to their claim—Plaintiffs assert that "the question of knowledge is for the trier of fact and not for Rule 12(b)(6)."  *See* Opp. at 65.  Plaintiffs are wrong.  They cannot avoid dismissal merely by posing a "question of knowledge."  They must *plead facts showing* knowledge of the sex-trafficking venture (and the connection between any illicit activity and the "benefits" on which they base their claim).  *See Krys v. Pigott*, 749 F.3d 117, 129 (2d Cir. 2014) ("Although the Rule permits a plaintiff to plead knowledge 'generally' . . . 'generally' is merely a 'relative term' . . . [and] not the equivalent of conclusorily[.]") (quotations omitted).  Again, they have not done so.

Lastly, Plaintiffs ask this Court to uphold their claim solely because Judge Engelmayer "in *Canosa v. Ziff* . . . recently denied the ***TWC defendants***' motion to dismiss a claim under the TVPRA."  *See* Opp. at 69 (emphasis added).  That argument egregiously misrepresents the

outcome of *Canosa*.  In actuality, Judge Engelmayer dismissed all of the director defendants (except Harvey Weinstein) from all of the claims in that case.  *See Canosa*, 2019 U.S. Dist. LEXIS 13263, at *70-71 ("dismiss[ing] all claims against the directors" but retaining a TVPRA claim against Harvey Weinstein and TWC).  Indeed, faced with a conclusory group pleading no more undifferentiated than the FAC here, Judge Engelmayer refused to construe the *Canosa* plaintiff's claim to target any directors other than Robert Weinstein, because (like in this case), it failed to specify which other "individual defendants" committed conduct in violation of the sex-trafficking statutes.  *Id.* at *56 n. 25.  And with respect to Robert Weinstein, Judge Engelmayer found:

> [The FAC] states only, in general terms, that Robert Weinstein facilitated [Harvey] Weinstein's interstate and foreign travel. . ., knew of [Harvey] Weinstein's pattern or practice of assault. . ., and was privy to multiple claims of assault alleged against [Harvey] Weinstein. . . .  These were exactly the allegations found inadequate in *Noble*.  The Court has not been given good reason to depart from Judge Sweet's analysis.

*Id.* at *64-65.

Plaintiffs' allegations in this case are no stronger—and certainly no more specific to the Outside Directors—and the outcome should be no different.  Count II must be dismissed against the remaining director defendants with prejudice.

## V.   PLAINTIFFS CANNOT PLEAD A NEGLIGENT SUPERVISION AND RETENTION CLAIM (COUNT IV)

As explained in the MTD, Plaintiffs cannot plead any of the elements of a claim for negligent supervision and retention.  *See* MTD at 54-62.  Plaintiffs' Opposition does nothing to alter that conclusion.  Most notably, Plaintiffs *concede* that they "have not alleged that any of the tortious conduct occurred on the personal properties owned by the Outside Directors," and do not argue that any tort was committed with the Outside Directors' chattels.  *See* Opp. at 73, n.185.

Those concessions alone require the dismissal of the Outside Directors from Count IV.  More broadly, the Court explicitly cautioned the Plaintiffs that claims against the Outside Directors needed to allege each director's specific knowledge and involvement in order to state a claim. *See* Sept. 12, 2018 H'rg Tr. 41:12-13.  Plaintiffs have not done that.  Thus, the negligent supervision and retention claim should be dismissed with prejudice.

### A.    Plaintiffs Concede They Cannot Plead The "Premises or Chattels" Element

Plaintiffs concede that they "have not alleged that any of the tortious conduct occurred on the personal properties owned by the Outside Directors" (*see* Opp. at 73 n.185) and they do not allege that the Outside Directors' chattels were used to commit any tortious conduct.  This failure is dispositive.  A factually supported allegation that "the tort was committed on the employer's premises or with the employer's chattels" is a required element of a cause of action for negligent supervision or retention.  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal citations omitted); *see also Doe v. Alsaud*, 12 F. Supp. 3d 674, 676, 683-84 (S.D.N.Y. 2014) (dismissing negligent supervision claim where sexual misconduct took place at a hotel because it was not the employer's premises, despite the employer's use of the hotel for business).[32]

### B.    Plaintiffs Cannot Allege The Outside Directors Employed Harvey Weinstein

Plaintiffs' claim of negligent supervision also fails because Plaintiffs have failed to allege that the Outside Directors employed Harvey Weinstein.  In defending the adequacy of the pleading, Plaintiffs attempt to cast the Outside Directors as Harvey Weinstein's employers by stating that the Directors "exercised control over [Harvey] Weinstein's employment contracts,

---

[32]    Plaintiffs have not argued, nor could they plausibly argue, that the Outside Directors are liable for any alleged tort which occurred on TWC's property or with TWC's chattel because TWC is a separate legal entity with its own property and its own chattels.  *See* Opp. at 73.

and the manner in which he was supervised." *See* Opp. at 72.[33]  But this allegation, which is not part of the standard by which courts evaluate whether an employer-employee relationship existed, is insufficient.

Under New York law, "[t]he critical inquiry in determining whether an employment relationship exists 'pertains to the degree of control exercised by the purported employer over the results produced or the means used to achieve the results.'"  *Castro-Quesada v. Tuapanta*, 49 N.Y.S.3d 757, 759 (App. Div. 2017) (quoting *Matter of O'Brien v. Spitzer*, 7 N.Y.3d 239, 242 (2006)).  Plaintiffs have not alleged that the Outside Directors had any control "over the results" produced by Harvey Weinstein or the "means used" to achieve TWC's results.  Conclusory statements that the undifferentiated Directors "exercised control over [Harvey] Weinstein's employment contracts and the manner in which he was supervised" do not state a claim.  *See* Opp. at 72.[34]

In fact, the FAC specifically alleges Harvey Weinstein was employed by <u>TWC</u>, not by individual members of TWC's Board.  *See* FAC ¶ 769 (alleging that "at all times material from September 30, 2005, to October 2017, TWC employed [Harvey] Weinstein"); FAC Ex. B

---

[33]     Plaintiffs' Opposition mirrors the vague and imprecise drafting of the FAC, lumping each of the director defendants together despite the Court's specific request for individualized pleading.  The facts surrounding each individual defendant are necessarily different and should have been pleaded as such.

[34]     Plaintiffs further misunderstand this point in arguing that the Outside Directors did not need to owe Plaintiffs any duty.  Opp. at 70 n.170-71.  Two of the cases cited by Plaintiff, which concern the companies themselves, say nothing about whether a Company's directors can be found personally liable for negligent supervision, and indeed just further highlight Plaintiffs' misunderstanding of the requirement of an employer-employee relationship.  Opp. at 70 n.170.  The third case, *Mapp v. City of New York*, is distinguishable: the defendants there did not contest that they were at the bar they owned during the shooting and that they had control over the bar's security.  2014 WL 1272869, at *2 (N.Y. Sup. Ct. Mar. 28, 2014).  By contrast, Plaintiffs have not alleged that the Outside Directors were personally involved in any of the alleged assaults nor are there any allegations that they exercised control over how Weinstein ran TWC.  Thus, and as laid out more fully in the opening brief, the Outside Directors are not liable to Plaintiffs because there is no allegation that the Outside Directors "themselves participated in the misconduct."  *Airlines Reporting Corp. v. Aero Voyagers, Inc.*, 721 F. Supp. 579, 585 (S.D.N.Y. 1989); *see also* MTD at 55.

(showing that the employment contract was between TWC and Harvey Weinstein, not the individual directors and Harvey Weinstein). This flaw is not fixable: it is black-letter law that employees are employed by the company, not by members of the TWC Board. *See Shostack v. Diller*, No. 15-CV-2255, 2015 U.S. Dist. LEXIS 123777, at *12 (S.D.N.Y. Sept. 16, 2015) (finding it "well-established that . . . 'it is the corporation, not its owner or officer, who is the principal or employer'") (quoting *Meyer v. Holley*, 537 U.S. 280, 286 (2003)); *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 490-91 (3d Cir. 2013) (holding that board members did not employ the company's tortfeasor-employee for the purposes of a negligent supervision claim).

Finally, Plaintiffs claim that "[a]n employer relationship is not required under New York law." *See* Opp. at 73 n.183. That is not the law, and *Krystal G. v. Roman Catholic Diocese of Brooklyn* is inapposite. 933 N.Y.S.2d 515, 537 (Sup. Ct. 2011). Specifically, *Krystal G.* concerned a pastor, himself an employee of the Diocese, who was sued for negligent supervision of an associate pastor, another employee of the Diocese. Here, by contrast, the FAC does not and cannot plead that Harvey Weinstein, the Chief Executive Officer and Co-Chairman of the TWC Board, was subordinate to or co-employed with the Outside Directors.

In addition to the factual differences between the instant matter and *Krystal G.*, that case is an outlier that has not been followed by a single court in the eight years since it was decided. *See Alsaud*, 12 F. Supp. 3d 674, 684. Indeed, New York courts routinely dismiss negligent supervision claims that fail to allege an employee-employer relationship. *See, e.g.*, *Naughright v. Robbins*, No. 10-CV-8451, 2014 U.S. Dist. LEXIS 148497, at *18-19 (S.D.N.Y. Oct. 16, 2014); *Corley v. Jahr*, No. 11-CV-9044, 2014 WL 772253, at *9 (S.D.N.Y. Feb. 10, 2014); *Omar v. City of New York*, No. 13-CV-8264, 2015 WL 178774, at *7 (S.D.N.Y. Jan. 5, 2015); *Ahluwalia v. St. George's Univ., LLC*, 63 F. Supp. 3d 251, 263 (E.D.N.Y. 2014).

### C.     Plaintiffs Cannot Allege Any Outside Director Had Knowledge Prior To Any Injury

Furthermore, Plaintiffs' allegations regarding the Outside Directors' purported

knowledge fail to state a claim because the Complaint does not allege any sexual misconduct

*after* the Outside Directors allegedly became aware of Harvey Weinstein's propensity.  A

complaint must show that defendants knew of the tortfeasor's propensity to engage in the alleged

misconduct *before* the underlying tort is committed to adequately plead negligent supervision.

*Ehrens*, 385 F.3d at 235 (holding that plaintiffs must show that, before the tortfeasor's

misconduct occurred, the employer-defendant was aware of its employee's propensity to engage

in the conduct that caused injury); *Doe v. City of New York*, No. 09-CV-9895, 2013 U.S. Dist.

LEXIS 30010, at *17-18 (S.D.N.Y. Mar. 4, 2013) (dismissing negligent supervision claim where

plaintiff failed to allege that defendant knew or should have known of relevant misconduct by its

employee prior to the employee's alleged assault upon plaintiff).

Plaintiffs have failed to allege that the individual Outside Directors knew or should have

known of Harvey Weinstein's propensity before any of the assaults alleged by the Plaintiffs.  *See*

MTD at 59-61.  Plaintiffs attempt to avoid this issue by stating that "at discovery and at trial,

Plaintiffs will establish the date by which each Defendant knew or should have known of

[Harvey] Weinstein's abusive behavior." *See* Opp. at 74.  But Plaintiffs' implicit admission that

they currently have no basis to suggest that the Outside Directors knew or should have known of

Harvey Weinstein's misconduct prior to Plaintiffs' alleged injuries establishes the insufficiency

of the FAC.  Similarly, Plaintiffs cannot assert that the Outside Directors' negligence was the

proximate cause of injuries, especially as to Dolan, Jones, Lasry, and Sarnoff, who were not on

the TWC Board until 2013 or later, years after the final assault alleged in the FAC.  *Id.*; *see also*

*Saldana v. Port Chester*, No. 09-CV-6268, 2010 U.S. Dist. LEXIS 142099, at *14-17 (S.D.N.Y. July 21, 2010).

### D.   Plaintiffs Cannot Allege Any Outside Director Knew Or Should Have Known Of Harvey Weinstein's Propensity For Sexual Misconduct

More generally, the FAC is devoid of any factual allegations regarding the individual Outside Directors' knowledge of Harvey Weinstein's propensity for sexual misconduct.  The Opposition's vague and conclusory statement that "[k]nowledge of [Harvey] Weinstein's behavior went all the way up to the Directors" does not even allege (much less adequately allege) what each individual Outside Director knew or should have known.  *See* Opp. at 73.  Plaintiffs' group pleading of the Outside Directors' purported knowledge ignores the Court's explicit instructions on this very issue:  "[Plaintiffs] can't say outside directors.  She has to be specific." *See* Sept. 12, 2018 H'rg Tr. 41:12-13.

Unable to follow the Court's direction, Plaintiffs lump all of the directors together or make generalized, conclusory allegations.  For example, and as more fully outlined in the MTD, Plaintiffs' repetition of baseless conclusory allegations that the Outside Directors knew of certain public comments is insufficient.  *See* MTD at 59-61.  Similarly, the Opposition asserts that "the Directors" "knew of settlements with victims during contract negotiations," citing to a statement by a non-party regarding only two directors' alleged knowledge of Harvey Weinstein's settlements with women.  *Id.* at 72-73 n.181.  Plaintiffs also improperly mischaracterize some defendants' regret of their own ignorance upon having learned of the allegations against Harvey Weinstein as somehow admitting that they should have known.  *Id.* at 73 n.182 (citing FAC ¶¶ 587, 604).  There is no evidence to support this mischaracterization.  In short, no fact alleged in the FAC (not one) supports the allegation that any specific Outside Director knew or should have known of Harvey Weinstein's propensity to commit the acts alleged in the Complaint.

Plaintiffs also assert that Harvey Weinstein's 2015 employment agreement, which included punishments for certain violations of the Code of Conduct, demonstrates the Outside Directors' knowledge of Harvey Weinstein's propensity. *See* Opp. at 72-73. Plaintiffs' reliance on this agreement is insufficient because nothing about the contract suggests any understanding of Harvey Weinstein's propensity for sexual assault. The FAC provides no details about which former TWC Board members are alleged to have been involved in the contract negotiations, who learned of Harvey Weinstein's alleged settlements and what they were told, or how and why certain provisions were included in Harvey Weinstein's employment agreement. Plaintiffs' allegations that certain provisions of the employment contract which provide for liquidated damages for each violation of the Code of Conduct provide no basis to infer that the Outside Directors had knowledge of Harvey Weinstein's propensity—instead they merely supports the inference that the TWC Board wanted to discourage acts contrary to the Code of Conduct. *See* FAC ¶¶ 428-429.

Crucially, the allegations fail to recognize that some defendants (Jones and Lasry) were not even on the TWC Board for the contract negotiations in 2015. Allegations about Harvey Weinstein's contract simply cannot hold any weight as against defendants Jones and Lasry when they had absolutely no role in negotiating or approving the contract because they were not TWC Board members.[35] These general allegations regarding the Directors as a group also fail to provide a basis for the conclusion that any *specific* TWC Board member knew or should have known.

---

[35] Plaintiffs state that they have "alleged that TWC's entire board negotiated and approved Harvey Weinstein's contracts." *See* Opp. at 72 n.180. This allegation ignores that different TWC Board members served on the TWC Board during different time periods and for different lengths of time. *See* FAC ¶¶ 42-50.

Plaintiffs attempt to make up for the lack of allegations of each director's knowledge by citing allegations concerning the knowledge of non-defendants. *See* Opp. at 72 n.179. But vague allegations about others' knowledge does not satisfy Plaintiffs' burden to allege that each of the Outside Directors had knowledge of Harvey Weinstein's propensities; knowledge cannot be imputed from others to the Outside Directors.[36] *Noonan v. City of New York*, No. 14-CV-4084, 2015 U.S. Dist. LEXIS 83451, at *8-9 (S.D.N.Y. June 26, 2015) (finding the bare assertion that sexual assault by police officers was going on "for years" insufficient to plead the defendant's knowledge without further factual allegations); *Khapesi v. City of New York*, No. 13-CV-4391, 2014 U.S. Dist. LEXIS 79623, at *22-29, *34-35 (S.D.N.Y. June 10, 2014) (granting defendant's motion to dismiss negligent supervision claim arising out of alleged sexual abuse notwithstanding allegations that non-defendants knew or suspected misconduct); *Bliss v. Putnam Valley Cent. Sch. Dist.*, No. 06-CV-15509, 2011 U.S. Dist. LEXIS 35485, at *28-29 (S.D.N.Y. Mar. 24, 2011) (dismissing a negligent supervision claim against certain defendants because the complaint lacked facts that they knew or should have known of a prior incident); *Dilworth v. Goldberg*, No. 10-CV-2224, 2011 U.S. Dist. LEXIS 82392, at *86-88 (S.D.N.Y. July 28, 2011) (finding allegations that certain defendants knew about prior misconduct insufficient to sustain a negligent supervision claim against another defendant).

---

[36]   Even if the knowledge allegedly held by certain TWC employees could be imputed to the individual Outside Directors—which it cannot—an allegation that certain employees knew about a pattern of meetings that resulted in "sexual advances," *see* Opp. at 72, is insufficient to state a negligent supervision and retention claim based on sexual assault and rape. *See* FAC ¶¶ 23, 24, 25, 27, 28, 29, 30, 31, 293. While all forms of sexual misconduct are inappropriate, rumors about "sexual advances" do not put a defendant on notice that sexual assault or rape is foreseeable. *See Alsaud*, 12 F. Supp. 3d at 680-81 (finding that an employer must be on notice of the tortfeasor's propensity to engage in the precise nature of conduct causing plaintiff's injury and that "general, unrelated or lesser allegations of prior wrongdoing are insufficient"); *Stamile v. Cty. of Nassau*, No. CV 10-2632 (AKT), 2014 WL 1236885, at *8 (E.D.N.Y. Mar. 25, 2014) ("Many cases discussing this standard appear to require . . . knowledge of the [specific underlying] practices, rather than simple knowledge of inappropriate behavior.").

For each of these reasons, the negligent supervision claim against the Outside Directors must be dismissed.

## VI.   PLAINTIFFS CANNOT PLEAD A RATIFICATION CLAIM (COUNT XVIII)

The Opposition does not argue that the FAC contains the required elements for a well-pled ratification claim.  Rather, it contends that "[u]nder the doctrine of ratification, a defendant who deliberately allows illegal conduct to continue when he can stop it is liable for ratifying the conduct."  *See* Opp. at 101.[37]  This is not the law.  To establish a claim for ratification, a complaint must allege adequately (a) a principal-agent relationship; (b) the principal's full knowledge of material facts concerning the agent's actions; and (c) the principal's knowing acceptance of the benefit of those actions.  *See A. Terzi Prods. v. Theatrical Protective Union, Local No. One*, 2 F. Supp. 2d 485, 492 (S.D.N.Y. 1998) (collecting cases).  As demonstrated in the Motion (*see* MTD at 63-65) and confirmed by the Opposition, the FAC does not allege facts supporting even one of these elements.

First, the Opposition makes no attempt to remedy the FAC's failure to allege the required agency relationship between Harvey Weinstein and the Outside Directors.  *See id.* at 63-64.  In an attempt to withstand dismissal, the Opposition contends that whether Harvey Weinstein was an agent of the Outside Directors is a "question of fact."  *See* Opp. at 103.  Not so.  Neither of the Opposition's cited authorities—*Cabrera v. Jakabovitz*, 24 F.3d 372 (2d Cir. 1994) (superseded by statute on other grounds), and *Rainbow Apparel Distributor Center Corp. v. Gaze U.S.A.,*

---

[37]      The Opposition's sole supposed authority for this contention—*L. Tarango Trucking v. C of Contra Costa*, 181 F. Supp. 2d 1017, 1032 (N.D. Cal. 2001)—is wholly inapposite.  *First, Tarango* represents the court's findings of fact and conclusions of law *after* a bench trial—and not a ruling on the adequacy of pleadings on a motion to dismiss.  *Second, Tarango* addresses an intentional discrimination claim—where intent to violate the Equal Protection Clause can be found through deliberate indifference to known existing discrimination—and not whether outside directors ratified conduct of a supposed agent. The Opposition's reliance on *Tarango* is therefore misplaced.

*Inc.*, 295 F.R.D. 18 (E.D.N.Y. 2013)—supports this unfounded assertion nor excuses the FAC's

failure to plead facts supporting the existence of an agency relationship. *Cabrera* stands for the

uncontroversial proposition that when properly submitted to a jury, the existence of an agency

relationship is a question of fact. *See Cabrera*, 24 F.3d at 387. The court in *Rainbow* examined

agency only in the context of personal jurisdiction under New York's long-arm statute, CPLR

302—not a claim for ratification—and is similarly inapposite. 295 F.R.D. at 25.

Second, contrary to the Opposition's assertion, the FAC contains only conclusory

allegations that the Outside Directors were aware of Harvey Weinstein's alleged misconduct.

For instance, the Opposition references comments allegedly made by Harvey Weinstein's lawyer

in arguing that the FAC sufficiently alleges the Outside Directors' knowledge. *See* Opp. at 103

n.323. In support of this assertion, the Opposition cites to FAC ¶ 556, which makes no reference

to the Outside Directors' purported knowledge. Reading the Opposition in its best light, it

appears that Plaintiffs meant to refer to an allegation in their original complaint that Harvey

Weinstein's counsel stated that the TWC Board reviewed Harvey Weinstein's personnel file and

did not identify anything in the file of which they were unaware in 2015. *See* FAC ¶ 129. This

allegation does not appear in the FAC and should be disregarded for purposes of this Motion.

*See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir 1998) (a party may not amend

pleading via opposition to motion to dismiss) (internal citations omitted).

Even if it did appear in the operative complaint, this allegation says nothing about the

Outside Directors' knowledge. There is no allegation that the personnel file contained any

information regarding Harvey Weinstein's alleged assault of any named Plaintiff. The FAC thus

does not allege that the Outside Directors had the requisite knowledge of the specific acts in

question, and their ratification claim also fails for this reason. *See A Terzi Prods.*, 2 F. Supp. 2d

at 492 (ratification requires a showing that "each and every" defendant had "full knowledge of . . . *each specific act*") (emphasis added); *Robbins v. Tucker Anthony, Inc.*, 649 N.Y.S.2d 856, 855 (4th Dep't 1996) ("It is well established that a principal cannot be deemed to have ratified the acts of his agent absent knowledge *of those acts* and an intent to ratify.") (emphasis added).

Moreover, the Opposition's assertion that Harvey Weinstein's conduct was "open and notorious" (*see* Opp. at 102-03) does not establish that any of the Outside Directors had sufficient knowledge to ratify such conduct. The case Plaintiffs cite to support this premise—*Rivera v. Puerto Rican Home Attendants Services*, 930 F. Supp. 124 (S.D.N.Y. 1996)—is inapposite. Contrary to the representation contained in the Opposition, *Rivera* had little to do with ratification, and it is wholly untrue that the *Rivera* court denied the motion to dismiss on the basis that ratification occurs where the offensive conduct was open and notorious. *Id*. at 130-131. Rather, the *Rivera* court held that a *company* defendant may be liable for an employer's workplace harassment toward the plaintiff when it was open and notorious conduct, other employees observed the harassment, and the plaintiff submitted an internal complaint. *Id*. It did *not* find that such conduct may be imputed to any individuals.

Third, the Opposition contains no serious rebuttal to the argument that the ratification claim fails because the FAC does not plead that Harvey Weinstein committed the alleged wrongful acts on the Outside Directors' behalf. *See* MTD at 65. The only response the Opposition offers to this deficiency is that unspecified defendants supposedly gained "money, power, and prestige" by allowing Harvey Weinstein to "bully and assault Hollywood." *See* Opp. at 103. Setting aside the well-established principle that sexual assault arises from personal motives, *see Alsaud*, 12 F. Supp. 3d at 677, it is simply implausible that the Outside Directors gained anything from assaults alleged to have occurred years before they joined the TWC Board.

Nor does the FAC allege that any of the Outside Directors received "money, power, and privilege" from TWC.  None of them was paid or otherwise compensated for his position on the TWC Board, and the FAC does not allege otherwise.  Because the FAC fails to allege that the tortious conduct was done on the Outside Directors' behalf, the ratification claim cannot succeed.  *See Hamm v. United States*, 483 F.3d 135, 140 (2d Cir. 2007) (ratification requires the act be "done or professedly done" on the principal's behalf) (internal quotation marks omitted); *Precedo Capital Grp., Inc. v. Twitter Inc.*, 33 F. Supp. 3d 245, 254 (S.D.N.Y. 2014) (ratification is knowing acceptance of "benefits of the agent's action already made on his behalf") (internal quotation marks omitted).

Finally, the Opposition asserts that the Outside Directors ratified Harvey Weinstein's tortious behavior by "continu[ing] to offer him contracts with increasing levels of job security . . . year after year."  *See* Opp. at 102.  But the alleged approval of a subsequent employment agreement does not constitute ratification of Harvey Weinstein's earlier misconduct.  *See A. Terzi Prods.*, 2 F. Supp. 2d at 492 (approval of an agreement does not mean defendants "knew of and ratified" tortfeasor's conduct and noting that approval "of one . . . act is not the ratification of another and entirely distinct act") (internal quotation marks omitted); *Murphy v. Guilford Mills, Inc.*, No. 92-CV-10105, 2005 WL 957333, at *8 (S.D.N.Y. Apr. 22, 2005) ("[R]atification requires not only knowledge of the material facts, but also an intention to ratify another's actions.").  For all of these reasons, Plaintiffs have failed to allege adequately a ratification cause of action against the Outside Directors, and this cause of action should be dismissed.

## VII.   PLAINTIFFS CANNOT PLEAD VICARIOUS LIABILITY (COUNTS VII-XVI)

In the MTD, the Outside Directors conclusively demonstrate that Plaintiffs have not alleged in the FAC any basis to hold the Outside Directors vicariously liable for Harvey Weinstein's alleged sexual assaults and related tortious conduct (Counts VII-XVI), as (a) under

well-established New York law, such personally-motivated conduct—even if undertaken in the context of employment—cannot give rise to *respondeat superior* liability; and (b) New York law does not permit the imposition of vicarious liability on the Outside Directors, as they were not Harvey Weinstein's employer.  Consistent with that settled authority, in the recent *Canosa* decision, Judge Engelmayer dismissed vicarious liability claims against a number of the same defendants whom Plaintiffs seek to hold vicariously liable in this action, finding that the allegations underlying those claims—allegations that largely mirror those proffered by Plaintiffs in the FAC—"do not support that [Harvey] Weinstein, when assaulting [the plaintiff], purported to act on behalf of TWC—but instead support that he acted for his own personal gratification," *Canosa*, 2019 U.S. Dist. LEXIS 13263, at *32-33, *i.e.*, he was not "acting on anyone's behalf other than himself."  *Id.*, at *35.

In the face of dispositive authority on the issue, Plaintiffs suggest in their Opposition that there is "an exception to the rule for vicarious liability" where alleged intentional torts of an employee, even though not within the scope of employment, were "reasonably foreseeable and a natural incident of employment."  *See* Opp. at 98, 99.  But no such "exception to the rule" exists in cases predicated on an employee's alleged sexual assault.  Indeed, *every* New York decision that has addressed the issue—including Judge Engelmayer's decision in *Canosa*—has expressly rejected claims for *respondeat superior* liability arising from an employee's sexual assault and related misconduct—even where it may have been foreseeable—as such conduct, by definition, "arise[s] from personal motives and do[es] not further an employer's business, even when committed within the employment context." *Chau v. Donovan*, No. 18-cv-3365, 2019 U.S. Dist. LEXIS 2642, at *25 (S.D.N.Y. Jan. 7, 2019) ("[N]o decision in New York has been cited to date in which the doctrine of respondeat superior was held to apply to sexual assault.") (citations

omitted); *see also Alsaud*, 12 F. Supp. 3d at 677-78 (noting that "[i]f Plaintiff had sufficiently

pleaded that Saudi Oger had direct knowledge of prior sexual misconduct on the part of Ouanes

. . . that still would not give rise to respondeat superior liability in the absence of an allegation

that the misconduct was part of any actual responsibility Ouanes had to Saudi Oger");[38] *Sclafani*

*v. PC Richard & Son*, 668 F. Supp. 2d 423, 447-48 (E.D.N.Y. 2009) ("If plaintiff's facts are

credited, a rational jury could find that Piscopo's assault was reasonably foreseeable, but a

rational jury could not find that the assault was within the scope of Piscopo's employment at

PCR.  Although the assault occurred in the PCR parking lot before work, the assault in no way

furthered PCR's business.  Instead, it was committed wholly for Piscopo's personal motives.")

(citation omitted); *N.X. v. Cabrini Med. Ctr.*, 97 N.Y.2d 247, 252 (2002) ("This was a sexual

assault that in no way advanced the business of the hospital.").[39]  Since Harvey Weinstein's

alleged sexual misconduct and closely related tortious behavior—*i.e.*, the allegations for which

Plaintiffs seek to hold defendants vicariously liable (*see, e.g.*, FAC ¶¶ 232, 247, 249, 261, 275,

---

[38]    Attempting to distinguish *Alsaud*, Plaintiffs argue in their Opposition that, unlike in that case, Plaintiffs here "pled that Miramax and TWC employees had the responsibility to lure the women victims to [Harvey] Weinstein to be assaulted." *See* Opp. at 100.  Even if this were true (and it is not), it misses the point:  as the Court expressly observed in *Alsaud*, the relevant question for employer vicarious liability is whether the *employee* (*i.e.*, Harvey Weinstein) was acting to further his employer's interests when he allegedly committed the acts in question. *See id.*  There simply is no conceivable scenario in which Harvey Weinstein's alleged sexual abuse of the Plaintiffs was done to further any of the defendants' interests, particularly those of the Outside Directors, who, in any event, did not employ him.

[39]    Neither of the cases Plaintiffs cite in ostensible support of their vicarious liability argument actually advances their position.  As Plaintiffs readily concede in their Opposition, the cases they cite did not even concern alleged sexual misconduct and thus in no way undercut the dispositive case authority cited above. *See Ramos v. Jake Realty Co.*, 21 A.D.3d 744, 746, 801 N.Y.S.2d 566, 568 (App. Div. 2005) (concerning alleged physical assault of tenant by building superintendent where "[t]here is no evidence that the superintendent had any personal motivation for the assault," but instead acted out of "animus, shared by management, . . . about the rent strike" and sought to "prevent[] tenants from collecting evidence to support their applications for rent abatements"); *Riviello v. Waldron*, 47 N.Y.2d 297, 302, 391 N.E.2d 1278, 1280 (N.Y. 1979) (concerning accidental eye injury caused by one restaurant employee to another while both performed their regular employment duties to serve food and drinks to customers).  In neither of those cases, unlike here, did the alleged tortfeasor engage in sexual assault or otherwise act for his own gratification or any other personally motivated reason.

293)—were undertaken, as Judge Engelmayer observed in *Canosa*, "for his own personal gratification," that conduct cannot give rise to *respondeat superior* liability, as a matter of law. *See Sclafani*, 668 F. Supp. 2d at 447 ("An employer is not liable for a tort committed by an employee for his own personal motives even when the tort might be reasonably foreseeable."); *Alsaud*, 12 F. Supp. 3d at 677 ("An employer will not be held liable under [the doctrine of respondeat superior] for actions which were not taken in furtherance of the employer's interest and which were undertaken by the employee for wholly personal motives.") (citations omitted).[40]

In addition to Plaintiffs' inability to rebut the inescapable conclusion that their allegations of sexual misconduct by Harvey Weinstein are insufficient to permit the imposition of *respondeat superior* liability, Plaintiffs fail in their Opposition to even address, let alone rebut, the equally dispositive argument in defendants' Motion that the vicarious liability claims should be dismissed as against the Outside Directors for the independent reason that they were not Harvey Weinstein's employer.  In fact, as explicated in detail in defendants' Motion at Section VIII(C), and further addressed at Section V(B), *supra*, Plaintiffs do not even allege, whether "plausibly" or otherwise, the existence of an employer-employee relationship between the Outside Directors and Harvey Weinstein, and in any event the law is settled that independent board members do not "employ" company employees.  Absent "a present employer-employee relationship . . . [r]espondeat superior liability cannot exist."  *K.I. v. N.Y.C. Bd. of Educ.*, 256 A.D.2d 189, 191, 683 N.Y.S.2d 228, 230 (N.Y. App. Div. 1998).[41]

---

[40]    Plaintiffs also argue in their Opposition—just as the *Alsaud* plaintiff unsuccessfully argued in that case—that their allegations in the FAC present a "highly unusual" fact pattern (*see* Opp. at 100) that renders dismissal at the pleadings stage inappropriate.  Where, as here, settled law precludes *respondeat superior* liability, dismissal is warranted.  *See, e.g.*, *Alsaud*, 12 F. Supp. 3d at 679-80 (dismissing vicarious liability claim predicated on sexual assault); *Chau*, 2019 U.S. Dist. LEXIS 2642, at *28 (same).

[41]    Moreover, as set forth in the MTD, the FAC is devoid of any allegation that the Outside Directors participated in or directed Harvey Weinstein's sexual misconduct, offering only the insufficient

In light of the foregoing, and as further set forth in defendants' Motion, Plaintiffs' tort claims premised on vicarious liability should be dismissed.

## VIII.   THE FAC'S UNCURED FLAWS REQUIRE DISMISSAL TO BE WITH PREJUDICE

At the September 12, 2018 hearing on defendants' Motions to Dismiss Plaintiffs' original Complaint, the Court admonished Plaintiffs that, to avoid dismissal of their contemplated Amended Complaint, Plaintiffs would be required to plausibly allege in that pleading—*as to each* defendant—facts supporting each of the elements of Plaintiffs' claims and, at the same time, remedy the specific (and numerous) pleading deficiencies highlighted by the Court at the hearing.  By way of illustrative example, the Court instructed Plaintiffs that they would be required to:

- "plead that each defendant . . . knew that Harvey Weinstein was attempting to blacklist the plaintiffs, each of the plaintiffs until the statute of limitations period would be tolled" (Sept. 12, 2018 H'rg Tr. 16:14-19);

- "plead for each person [*i.e.*, each defendant] separately that they knew of this continuing effort of Harvey Weinstein to blacklist the plaintiffs" (*id.* 17:7-9);

- "prove that the person implicated [*i.e.*, each particular defendant] knew about the conspiracy and consciously made it his own. . . [*i.e.*,] plead in good faith that each defendant knew of this effort by Harvey Weinstein and others whom he enlisted to silence the women and that they participated in some fashion in doing that" (*id.* 19:15-20);

- plead "that each defendant personally was aware of the continuing effort by Harvey Weinstein to intimidate them [*i.e.*, Plaintiffs]" (*id.* 18:23-19:3);

- plead "in good faith" and "as to each individual defendant" that Plaintiffs had not been offered specific film parts as a result of "calls from Mr. Weinstein to various producers, [instructing] Don't give her the part.[,]" (*id.* 14:10-16).

---

conclusory allegation that TWC and its officers and directors somehow "ratified" that conduct.  As discussed in Section VI, *supra*, Plaintiffs' ratification claim is legally insufficient, as Dolan, Jones, Lasry, and Sarnoff were not even TWC directors at the time of any of the alleged assaults (and Ziff was not a director at the time of most of the alleged assaults), and it is therefore not only implausible, but indeed impossible, that they participated in or "ratified" that conduct in their capacity as board members.

As set forth in defendants' Motion and further explicated above, despite being afforded both explicit notice of many of the deficiencies in their pleading and yet another chance to allege cognizable claims against the defendants, Plaintiffs have once again failed to do so.  Having now twice failed to support their putative claims with allegations sufficient to state claims against the defendants, it is apparent that further "leave to amend would be futile because [Plaintiffs have] already had two bites at the apple and they have proven fruitless." *Treppel v. Biovail Corp.*, No. 03 Civ. 3002, 2005 U.S. Dist. LEXIS 18511, at *37 (S.D.N.Y. Aug. 30, 2005).  As such, under the law of this Circuit, Plaintiffs are not entitled to, and should not be afforded, "still a third go-around." *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (dismissing amended complaint with prejudice since the plaintiff "clearly has no right to a second amendment" under Fed. R. Civ. P 15(a) and the Court previously "had put plaintiff's counsel on the plainest notice of what was required" to avoid dismissal); *see also Massey v. Fischer*, No. 02 Civ. 10281, 2004 U.S. Dist. LEXIS 17023, at *17 (S.D.N.Y. Aug. 27, 2004) (dismissing first amended complaint with prejudice since "[l]eave to amend further would be futile in light of [the Court's] earlier clear directions to Plaintiff to include requisite facts to support his claims and Plaintiff's failure to come forward with such facts in response to defendants' motion").  For the reasons stated in defendants' opening Memorandum and in this Reply, the Court should grant defendants' Motion in its entirety, and dismiss all claims asserted against them in the FAC, with prejudice.[42]

---

[42]    Nor should this Court entertain Plaintiffs' request "in the alternative" to conduct discovery.  *See* Opp. at 103.  Given the patent deficiencies in Plaintiffs' claims, discovery "would serve no purpose, other than as a fishing expedition for evidence in search of a theory that has yet to be asserted." *Flake v. Alper Holdings USA, Inc.*, 398 B.R. 736, 754 (S.D.N.Y. 2008).  Indeed, "a litigant has to state claims before he or she is entitled to discovery," *Bridgewater v. Taylor*, 745 F. Supp. 2d 355, 358 (S.D.N.Y. 2010), and having failed to do so here, Plaintiffs should not be given that opportunity now.  *See KBL Corp. v. Arnouts*, 646 F. Supp. 2d 335, 346 n.6 (S.D.N.Y. 2009) (dismissing amended complaint with prejudice and noting that "allowing the plaintiff to conduct discovery in order to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), which is to 'streamline litigation by dispensing with needless discovery and factfinding' where the plaintiff has failed to state a claim under

IX.   **ADDITIONAL REPLY ARGUMENTS OF DEFENDANT MIRAMAX FILM NY,**
      **LLC**

  A.   **Each And Every Claim Against Miramax Is Untimely**

     1.   **Plaintiffs Allege No Post-2005 Wrongdoing Involving Miramax**

As explained in the MTD, Plaintiffs' claims against Miramax suffer from a basic, fatal,

and incurable flaw—that by the time this lawsuit was filed, there had been no connection

between Miramax and Harvey Weinstein for at least twelve years.  Because the longest

applicable statute of limitations is four years (and most are shorter), any claims against Miramax

expired long ago.  It is fundamental to the law and "vital to the welfare of society" that those

statutes of limitations be enforced, and that Plaintiffs' claims be dismissed as to Miramax with

prejudice.  *Wood v. Carpenter*, 101 U.S. 135, 139 (1879); *Tomanio*, 446 U.S. at 487; *see also*

MTD at 12-13, 69-74.

Plaintiffs' Opposition does not (and cannot) change this result.  The FAC contains no

allegations of wrongdoing by Miramax in or after 2005 (the year Miramax parted ways with

Harvey Weinstein).  *See* MTD at 69-70.  Moreover, the Opposition does not dispute that the *only*

allegation of *any kind* concerning Miramax after 2005 is that it coproduced one television show

and eight movies with TWC, and that it sold TWC rights to develop sequels of Miramax movies

(but not that any such sequels were actually made).  *See id.*; *see also* Opp. at 8; *id.* at 77 n.200.

Not one of those projects—neither the television show, the movies, nor the unmade sequels—has

anything to do with any misdeed alleged by Plaintiffs.  Nor is there any basis in law to hold

Miramax liable for merely co-producing entertainment, which is the only post-2005 fact pleaded

against Miramax.  Thus, Plaintiffs have no cognizable claims against Miramax for any conduct

the law") (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)).

in the twelve-year period before they filed this action.  In other words, all of Plaintiffs' claims are unsalvageably stale.

Plaintiffs try to bridge that twelve-year gap—*three times* the duration of the longest applicable statute of limitations—on two principal theories.  The first is a patchwork of tolling arguments that fail for the reasons set forth in Section II(C), *supra*.  But they also fail as a matter of common sense.  Tolling doctrines do not apply *ad infinitum*.  They require affirmative conduct by the defendant over the tolling period that prevents a plaintiff from filing a lawsuit with reasonable diligence.[43]  The act of coproducing a movie or television show cannot possibly qualify—especially given the FAC's total failure to draw any connection between those projects, Plaintiffs, and Plaintiffs' claims.  *See* MTD at 75-76.  As to Miramax, Plaintiffs either entirely ignored this Court's instruction "to show that each defendant personally was aware of the continuing effort by Harvey Weinstein to intimidate [the Plaintiffs],"or make no attempt to comply with the Court's instruction because they understand—as is obvious from the FAC—that Miramax was plainly not aware of Harvey Weinstein's alleged actions given its limited, arm-length connection post-2005.  *See* Sept. 12, 2018 H'rg Tr. 18:23-19:3.  Either way, Miramax "has to be dismissed."  *Id.*

---

[43]     Plaintiffs' FAC invokes three doctrines to escape the statute of limitations:  equitable estoppel, duress, and continuing violations.  *See* MTD at 75-77.  Plaintiffs have completed abandoned the third, as their Opposition contains no arguments supporting any "continuing violations" theory nor responds to the MTD's assertions that Plaintiffs have failed to sufficiently plead a continuing violation.  *See* MTD at 26-28.  And the first two would require, at a minimum, allegations of affirmative misconduct *by Miramax*.  *See, e.g.*, *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 802 (2d Cir. 2014) (requiring that "the defendant's conduct caused [the plaintiff] to delay in bringing his lawsuit," through a "definite misrepresentation of fact" for purposes of equitable tolling); *Overall v. Estate of Klotz*, 52 F.3d 398, 404-05 (2d Cir. 1995) ("tortious conduct itself must continue" for the entire period for purposes of duress tolling).  And while the Opposition makes vague assertions regarding a "code of silence" and "payments to abuse victims," none of those assertions is supported by any citation to the FAC, and none can fill the gap between 2005 and 2017—during which no misconduct (and barely any conduct of any kind) is alleged against Miramax.

Plaintiffs' second theory for evading the statute of limitations is a theory of RICO accrual that flatly fails as a matter of law. *See* Section II(A), *supra*. Plaintiffs' RICO claims were triggered by the alleged "injury alone," *i.e.*, the moment at which they realized they had not been cast in the roles for which they auditioned. *Koch*, 699 F.3d at 149-50; *see also* MTD at 69-70.[44] According to Plaintiffs' own allegations, that moment occurred well before the four-year period leading up to the filing of this lawsuit. *See id.* at 71-73. And despite Plaintiffs' pledge to the Court to cure this defect from the original complaint, they instead have wholly failed to follow this Court's instruction to plead a "continued inability to get parts that continued up to and through the four-year period before the filing of the complaint." *See* Sept. 12, 2018 H'rg Tr. 12:8-15. Plaintiffs' attempt to evade the RICO statute of limitations therefore fails.

### 2.      Newly Passed Legislation Does Not Save Jane Doe's Claims

Plaintiffs' final attempt to circumvent the statute of limitations relies on a new, New York statute passed after the MTD was filed. The Opposition argues that according to that statute—the "Child Victims Act" or "CVA"—the time-bar on Plaintiff Doe's state-law claims has been removed.[45] They are wrong, for three principal reasons.

---

[44]      Plaintiffs' attempt to restart the RICO clock with their 2017 discovery of an alleged "blacklist" is precisely what the Supreme Court forbade in *Rotella*. Plaintiffs' theory ties RICO accrual not to the discovery of lost business or property, but to the discovery of the *mechanism* (blacklisting) by which such business or property was allegedly lost. Plaintiffs' approach is the opposite of the law. *Rotella*, 528 U.S. at 555-56.

[45]      The CVA has no effect on Plaintiff Doe's federal claims (asserted solely under RICO) against Miramax, because state legislatures have no power to revise federal statutes of limitations. *See Pauk v. Bd. of Trustees of Cty of N.Y.*, 654 F.2d 856, 865 (2d. Cir. 1981) ("determination of an appropriate [] limitations period applicable to a federal cause of action is 'a matter of federal law.'") (citations omitted); *accord Holder v. General Motors Corp.*, 734 N.Y.S.2d 545, 548-49 (Sup. Ct. N.Y. 2001). The RICO claims remain time-barred. Moreover, even assuming that Plaintiff Doe's state law claims are timely and properly alleged (which they are not), she would be the only remaining named Plaintiff in this putative class action, which would drastically shrink the putative class, and the claims would be limited to state claims to redress conduct "committed against a child less than eighteen years of age[.]"

First, Plaintiff Doe's claims do not satisfy the plain letter of the statute.  An action under the CVA "may be commenced not earlier than six months after . . . the effective date" of the statute.  *See* Opp. at 52; N.Y. C.P.L.R. § 214-g.  Because the CVA became effective with the Governor's signature on February 14, 2019—less than six months ago—Plaintiff Doe's claim remains untimely.  *Id.*  Statutory waiting periods are entitled to strict enforcement.  *See, e.g.*, *Schultz v. Motor Vehicle Acc. Indemnification Corp.*, 377 N.Y.S.3d 959, 961 (N.Y. Sup. Ct. 1976) ("[W]here a statute specifically bars commencement of an action for a stated period of time . . . a mandatory waiting period is prescribed over which plaintiff has no control.").

Second, the CVA applies only to an "action . . . against any party whose intentional or negligent acts or omissions" are alleged to have resulted in the commission of a specified offense.  N.Y. C.P.L.R. § 214-g.  Miramax Film NY, LLC, however, is not such a "party."  The company did not even *exist* at the time of the underlying allegations.  *See* FAC ¶ 34.  And nothing in the text of the CVA evinces any legislative intent to revive stale claims against one entity and apply them against a wholly different entity that did not exist at the time the relevant plaintiff was injured.

Third, the CVA applies only to Plaintiff Doe's allegations from the period before she reached "eighteen years of age" (which occurred on May 4, 2004).  *See* N.Y. C.P.L.R. § 214-g; *see also* Opp. at p. 52.  The FAC, however, does not plead a single fact that could give rise to liability for Miramax over that period (or any other period).  Rather, Plaintiff Doe describes a chance encounter with Harvey Weinstein at an event she attended with her modeling agency, after which he took her to his private residence in New York.  *See* FAC ¶¶ 203-217.  Her encounter with Harvey Weinstein had no connection to Miramax.  *Id.*[46]  In fact, the sole

---

[46]     Notably, Plaintiff's account shows that no Miramax "premises" or "chattels" were used by

allegation concerning Miramax is that Harvey Weinstein's "assistant from Miramax" later (at an unspecified time) "called Jane Doe to try to set up appointments with [Harvey] Weinstein, but Jane Doe said no." *Id.* ¶ 216.  That telephone call is not remotely within the scope of the offenses enumerated by the CVA.

Moreover, under settled New York law, Miramax has no vicarious liability—over any period—for any sexual misconduct by Harvey Weinstein.  *See, e.g.*, *Alsaud*, 12 F. Supp. 3d at 677 ("No decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault.").  Accordingly, Plaintiff Doe's claims still fail as to Miramax, as the CVA does not cure the blatant inadequacy of her allegations against Miramax.

### B. Plaintiffs Have No RICO Claims Against Miramax

As explained in the MTD, the defects in Plaintiffs' RICO claims are legion:  Plaintiffs have no standing,[47] fail to define any role of Miramax in the alleged enterprise,[48] fail to plead the conduct element against Miramax, and fail to plead the elements of a conspiracy claim against Miramax.  *See* MTD at 77-85.  Tellingly, the Opposition does not even attempt to defend these points with respect to Miramax.  Instead, it offers a scattered and broad-brush apology for these pleading failures, which fails for the reasons set forth in Section III, *supra*.

---

Harvey Weinstein in connection with the alleged assault.  But that is an essential element of a claim for negligent supervision and retention—which therefore has not been properly pleaded even if it were timely (which it is not).  *Canosa*, 2019 U.S. Dist. LEXIS 13263, at *40-41.

[47]     On the issue of RICO standing, Plaintiffs assert:  "Defendants do *not* argue that Plaintiffs fail to allege that other Defendants proximately caused Plaintiffs' RICO injuries."  *See* Opp. at 96 n.293.  It is unclear what "other Defendants" Plaintiffs are referring to, but Miramax could not be one of them.  Miramax specifically challenged Plaintiffs' RICO standing in the MTD, including on the grounds that Plaintiffs cannot "establish the causation prong of standing[.]"  *See* MTD at 79.

[48]     On the issue of the RICO enterprise, Plaintiffs' allegations of pre-2005 acts by officers and directors of Miramax are categorically insufficient.  It is well-settled that "a corporate person cannot violate the [RICO] statute by corrupting itself[,]" and a company cannot be liable in connection with a RICO enterprise that consists solely of the company, its employees, and/or its agents.  *Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 120 (2d Cir. 2013); *see also* MTD at 82 (quoting *id.*).  Plaintiffs' Opposition contains no response to this point of law.

Plaintiffs also fail to plead that Miramax committed any RICO predicate acts—another

fatal pleading defect.  *See* MTD at 82-85.  Plaintiffs' Opposition actually attempts to rehabilitate

this deficiency (which is its only attempt to directly address Miramax's RICO arguments).  That

effort, however, is entirely meritless.

First, Plaintiffs assert that Miramax committed predicate acts of sex trafficking in

violation of 18 U.S.C. §§ 1590-1591.  *See* Opp. at 81-83.  As explained in the MTD, that theory

fails under black letter principles against *ex post facto* laws.  The acts of "sex trafficking" that

Plaintiffs allege against Miramax occurred in the "summer of 2000," at the latest.  *See* Opp. at

82-83; FAC ¶ 165.  But 18 U.S.C. §§ 1590-1591 did not even become law until later that year,

on October 28, 2000, and did not become RICO predicates until years later, at the end of 2003.

*See* MTD at 83.  It is well-established that a plaintiff cannot build a RICO claim from predicate

acts that were not yet in the RICO statutes (nor anywhere in title 18 of the U.S. Code) at the time

they occurred.  *Snowden v. Lexmark Int'l, Inc.*, 237 F.3d 620, 624 (6th Cir. 2001); *Attia v.

Google LLC*, No. 17-cv-06037-BLF, 2018 WL 2971049, at *9-10 (N.D. Cal. June 13, 2018).

Plaintiffs address only one of those cases (*Snowden*), which they completely misinterpret.

Like the plaintiff in *Snowden*, Plaintiffs here argue that Congress's "broad retroactive design for

RICO as enacted in 1970" requires every later statutory amendment to the RICO predicates to be

given retroactive effect.  *See Snowden*, 237 F.3d at 623; Opp. at 83 & n.231.  And like the

plaintiff in *Snowden*, Plaintiffs here are similarly wrong.  *See Snowden*, 237 F.3d at 624 ("[W]e

are unpersuaded that RICO's legislative history from 1970 now dictates retroactive application

of the 1996 amendment[.]").  Moreover, as in *Snowden*, Plaintiffs here "fail[] to complete the

analogy between the first passage of RICO and its subsequent revision."  *Id.*  Under the original

RICO statute, "[a] RICO action could incorporate acts before October 15, 1970 only if the

defendant also *engaged in prohibited activities after that date*." *Id.*  But here, Plaintiffs make no allegation that Miramax violated any sex-trafficking statute during any period in which such a statute was *actually enacted and effective as law*.

In other words, Plaintiffs argue that their allegations of pre-2003 sex trafficking still count for purposes of establishing a pattern of racketeering conduct—even though the alleged conduct was not a RICO predicate (or even a crime) at the time.  There could hardly be a more blatant violation of *ex post facto* principles than that argument, which has no support in law. Plaintiffs cannot allege a sex trafficking predicate act against Miramax.

Second, Plaintiffs assert Miramax committed predicate acts of mail or wire fraud.  *See* Opp. at 86.  Yet, for the reasons set forth in Section III(A), *supra*, Plaintiffs do not even come close to meeting the pleading standard required for a fraud claim under Rule 9(b) of the Federal Rules of Civil Procedure.  Indeed, far from pleading the specifics of any alleged fraud, Plaintiffs instead assert that "[m]ails and wires *were likely used* by Miramax . . . to remove women from projects" or "negotiate non-disclosure agreements."  *See* Opp. at 86 (emphasis added).[49]  On their face, those acts do not constitute fraud—*i.e.*, a false representation of fact on which another party relied to its detriment—but they are also explicitly pleaded *as speculation*, not *with specificity*.  *See* Fed. R. Civ. P. 9(b).  Thus, Plaintiffs cannot plead these alleged predicate acts, either.

Third, Plaintiffs assert that Miramax committed predicate acts of witness tampering.  *See* Opp. at 88-89.  As an initial matter, none of Plaintiffs' allegations of witness tampering identifies

---

[49]     Similarly, Plaintiffs' allegation of "a 'fake' journalist hired by unidentified members of the enterprise in the summer of 2017 to contact [a] Miramax-era" plaintiff, which does not even attempt to plead any fraudulent or misrepresentative conduct *by Miramax*, falls far short of the RICO pleading requirements.  *See* Opp. at 86.

conduct performed by Miramax—only *by Harvey Weinstein*. *See id.*  On that basis alone,

witness tampering thus cannot be asserted as a predicate act against Miramax.  But perhaps more

disturbing is Plaintiffs' complete failure to address the controlling U.S. Supreme Court precedent

cited in the MTD on this point—*Arthur Andersen*.  Under that case, a plaintiff must plead "some

type of nexus" between the allegation of intimidation and an official proceeding that is

"foreseen" at the time.  *Arthur Andersen, LLP v. United States*, 544 U.S. 696, 707-08 (2005).

Plaintiffs do not meet this standard (and do not even try to meet it).  *See* Opp. at 89-90.  Instead,

they ignore it.  The Court should reject their effort to disregard the Supreme Court's construction

of the witness-tampering statute, which recognizes that it is impossible to *tamper* with a witness

when there is no foreseeable *proceeding* in which that witness will give testimony.

In sum, Plaintiffs cannot plead even a single RICO predicate against Miramax.

Combined with the numerous other flaws that pervade their RICO theories, the defects in

Plaintiffs' claims are incurable, and further amendment would be futile.  The RICO claims

against Miramax should be dismissed with prejudice.

### C. Plaintiffs Have No State-Law Claims Against Miramax

As detailed in the Motion, Plaintiffs' state-law claims fail under black letter principles.

Specifically, five of Plaintiffs' seven claims (battery, assault, false imprisonment, and intentional

and negligent infliction of emotional distress) assert theories of vicarious liability that New York

law expressly forbids, and the other two claims (negligent supervision and retention, and

ratification) fail to allege required elements.  *See* MTD at 86-90.

The Opposition's arguments on vicarious liability are an exercise in changing the subject.

Plaintiffs use dated and inapposite case law to argue generalities, contending that an employer

can be liable for any "general type of conduct" by an employee that is foreseeable, even if the

"precise act" is not foreseeable.  *See* Opp. at 98-99.  The problem for Plaintiffs is that scores of

New York cases have considered the "precise act" at issue in this case—alleged sexual predation by an employee—and held, categorically, that the employer is not liable. *See* MTD at 87; *see also* Section VII, *supra*.

Puzzlingly, Plaintiffs respond to that raft of case law by attempting to distinguish one case—*Alsaud*—on its facts. *See* Opp. at 100. They fail in concept and execution. First, *Alsaud* only confirms a thorough collection of cases establishing that *respondeat superior* liability does not—*ever*—"apply to sexual assault." *See Alsaud*, 12 F. Supp. 3d at 677 (collecting cases). That broad principle swallows the entirety of Plaintiffs' claims, and renders irrelevant any effort to distinguish *Alsaud* on its particular facts. Second, *Alsaud* is not distinguishable on the material facts. Plaintiffs contend that unlike in *Alsaud*, they have pleaded a "sufficient nexus" between the employee's official duties and his sexual misconduct. *See* Opp. at 100. Not so. Indeed, in *Alsaud*, the nexus between duties and misconduct was much closer: the defendant's *job* was to procure sexual candidates for his employer, and when he himself sexually assaulted one of those candidates, she tried to hold his employer liable. *Alsaud*, 12 F. Supp. 3d at 676. Here, by contrast, it was *not* Harvey Weinstein's job to procure sexual candidates for his employer, and thus any acts of sexual assault he committed had an even lesser link to his employment than in *Alsaud*. Nor have Plaintiffs pleaded *any* connection between Harvey Weinstein's alleged acts of "*personal gratification*" and his official duties to Miramax. *See* FAC at 28 (emphasis added). This case requires the same outcome as *Alsaud*—dismissal.

Similarly, the Opposition demonstrates that Plaintiffs' claims for negligent supervision and retention cannot be properly pleaded. As explained in the Motion, that claim fails most fundamentally because it does not allege the use of any Miramax "premises" or "chattels" in connection with any Plaintiff's alleged injury. *See* MTD at 88-89 (quoting *Doe v. Fed. Express*

*Corp.*, 571 F. Supp. 2d 330, 333 (D. Conn. 2008)); *see also Canosa*, 2019 U.S. Dist. LEXIS

13263, at *40-41 ("Even assuming the hotel rooms in which the assaults took place were paid for

by TWC for use in connection with TWC projects, the [chattels] element . . . would not be

satisfied.").  Plaintiffs' Opposition responds with a throwaway assertion regarding Miramax—

"the torts were committed on *either* Miramax's *or* TWC's premises . . . or with their personnel

and chattels"—but speaks entirely in terms of "TWC employees," "TWC," and "TWC's chattel."

*See* Opp. at 73 (emphasis added).  Plaintiffs offer no specific example (nor citation to the FAC)

regarding any Miramax premises or chattel that caused any Plaintiffs' injury—because they have

not alleged, and cannot allege, this element of their claim.

Lastly, Plaintiff's "claim" for ratification fails to establish any of the elements that (as

explained in the Motion) they were required to plead.  *See* MTD at 89-90.  They cannot plead

that any misconduct by Harvey Weinstein was done for the benefit of Miramax, that Miramax

accepted the "benefits" of such misconduct (or that there even *were* any benefits), or that

Miramax had full knowledge of the acts it allegedly ratified.  *See id.*; *see also* Section VI, *supra*.

Accordingly, all of Plaintiffs' claims against Miramax are meritless, and must be

dismissed with prejudice.[50]

## X.   ADDITIONAL REPLY ARGUMENTS OF THE DISNEY DEFENDANTS

Defendants The Walt Disney Company ("TWDC"), Disney Enterprises, Inc. ("DEI")

(together with TWDC, "Disney"), Buena Vista International, Inc. ("Buena Vista") and Michael

---

[50]     The same goes for the "Miramax Does," placeholder defendants against whom Plaintiffs offer no
factual allegations.  *See Matthews v. Schushem*, 247 N.Y.S.2d 285, 286-287 (N.Y. Sup. Ct. 1964) (CPLR
1024 does not "permit the use of a fictitious name [John Doe], applicable to no specific individual, but
adopted as an expedient to cover the name of a person not sued, not intended to be sued, and whom the
plaintiff only purposes [proposes] to make a defendant if he discovers at some later time that he ought to
do so."); *see also Taylor v. Williams Commc'ns, Inc.*, No. 02–02011, 2004 WL 5614591 at *4 (N.Y. Sup.
Ct. Oct. 22, 2004)(same).

Eisner (collectively, the "Disney Defendants") respectfully set forth arguments specific to them in further support of their motion to dismiss the FAC.  The Disney Defendants incorporate by reference arguments made elsewhere in this joint reply.

A.     **The Disney Defendants Are Not Named Defendants In Plaintiffs' Sex Trafficking And RICO Claims**

In the FAC, Plaintiffs specifically list each defendant to which each cause of action applies.  For the four Counts in the FAC based on alleged sex trafficking or RICO violations (Counts I, II, V and VI), Plaintiffs did not name any Disney Defendant.  Instead, Plaintiffs specified that these causes of action applied only to other defendants:  FAC Count I ("VERSUS HARVEY WEINSTEIN"); Count II ("VERSUS TWC, THE TWC DIRECTORS AND TWC OFFICERS"); Counts V and VI ("VERSUS MIRAMAX, MIRAMAX OFFICERS, TWC, TWC DIRECTORS, TWC OFFICERS").  In the paragraphs supporting these causes of action, Plaintiffs similarly omit the Disney Defendants.  FAC ¶¶ 738-61; 774-839.

With no explanation, Plaintiffs' Opposition suggests for the first time that the Disney Defendants may be liable under federal sex trafficking and RICO statutes.  Opp. at 76, 82, 88-89.  These claims would be specious for reasons, among others, already set forth by other defendants, but Plaintiffs did not even attempt to plead them against the Disney Defendants.  *See Rhodes v. Alexander Central Sch. Dist.*, No. 05-CV-431S, 2006 WL 232722, at *2 (W.D.N.Y. Jan. 30, 2006) ("Plaintiff's Complaint must be dismissed" when it "does not 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'" (quoting *Swierkiwicz v. Sorema, N.A.*, 534 U.S. 506, 512 (2002))).

Plaintiffs already filed a complaint in this action and the Court dismissed it for failure to state a claim.  That "complaint cannot be amended merely by raising new facts and theories in plaintiffs' opposition papers."  *Southwick Clothing LLC v. GFT (USA) Corp.*, No. 99 CV

10452(GBD), 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004).  Nor could any amendment be made now.  Plaintiffs are not entitled to yet another attempt at avoiding dismissal.  *See* Section VIII, *supra*.

### B.    All Claims Against The Disney Defendants Are Untimely

None of Plaintiffs' arguments for reviving their state law claims[51] against the Disney Defendants can overcome the statute of limitations bar established by the fact that the last point at which conduct of the Disney Defendants could be relevant was in September 2005, when Harvey Weinstein left Miramax.  *See* FAC ¶¶ 34, 63.[52]

Plaintiffs argue that claims brought by one plaintiff, Jane Doe, are timely under the recently enacted New York Child Victims Act.  But that statute expressly provides that a plaintiff whose claim is revived cannot commence an action "earlier than six months after . . . the effective date" of the Act, February 14, 2019.  N.Y.C.P.L.R. § 214-g.  Plaintiff Doe's claims thus could not be timely, if at all, any earlier than August 14, 2019.[53]

Plaintiffs also contend that their claims are not time-barred because of equitable estoppel.  Opp. at 53-60.  But they do not allege that the Disney Defendants committed the necessary affirmative acts of fraud, misrepresentation or deception to prevent Plaintiffs from bringing timely claims.  *See* Opp. at 59-60 (acknowledging that even "passive concealment" by the Disney Defendants would not toll the claims).  Plaintiffs rely on two allegations to justify tolling

---

[51]    FAC Counts III (negligent supervision and retention), VII (civil battery), IX (assault), XI (false imprisonment), XIII (IIED), XV (NIED) and XVII (ratification).

[52]    Plaintiffs' arguments that their sex trafficking and RICO claims are timely are irrelevant to the Disney Defendants, as those claims are not stated against them.

[53]    Since the Disney Defendants believe that Plaintiffs' claims against the Disney Defendants should be dismissed for failure to state a claim, the New York Child Victims Act would not create a viable path for these claims even if Plaintiff Doe were to wait out the statutory bar and then seek to refile.  *See* Section IX(A)(2), *supra*.

(*see* Opp. at 58):  (a) that Disney assigned an executive to supervise Harvey Weinstein, an allegation that is immaterial to equitable estoppel and, in any event, could not create any tolling after 2005, when Harvey Weinstein left Miramax; and (b) that Fabrizio Lombardo sent threatening messages in 2017 and was paid by Buena Vista long before that, whereas the FAC states that any connection between Mr. Lombardo and Buena Vista ended in 2004, *see* FAC ¶ 55; and, further, by the time the purported messages were sent, all claims against the Disney Defendants already were untimely.[54]

Plaintiffs further argue that their claims are tolled based on duress.  Opp. at 61-64.  As with equitable estoppel, Plaintiffs concede that they must plead specific acts (threats or force) by the Disney Defendants, and that tolling ceases when that conduct ends.  *Id.* at 61.  The Opposition does not and cannot cite a single allegation in the FAC that any Disney Defendant prevented any Plaintiff from bringing suit through threat or force, let alone that such acts occurred after 2005.  Opp. at 62-64.[55]

---

[54]   Because the FAC contains no allegations that the Disney Defendants took affirmative actions to prevent Plaintiffs from bringing timely claims, Plaintiffs' equitable estoppel cases are inapposite.  *See Zimmerman*, 888 F. Supp. 2d at 340 (applying equitable estoppel only where a defendant took an "affirmative course of conduct during the period of limitations to deceive the plaintiffs"); *Saveria JFK, Inc.*, 2016 WL 11263673, at *9 (finding that plaintiff had articulated sufficient facts to toll a defamation claim based on "an assurance from defendant's alleged agent that defendant's campaign to destroy [plaintiff] did not extend to business opportunities in New York"), *report and recommendation adopted*, 2017 WL 1194656 (E.D.N.Y. Mar. 30, 2017); *Sonterra Capital Master Fund Ltd.*, 277 F. Supp. 3d at 583 (addressing tolling for RICO claims based on concerted RICO activity).

[55]   The only case that Plaintiffs cite invoking duress tolling involved extortion as a predicate act for a RICO claim.  *See Cullen*, 811 F.2d at 722.  The Disney Defendants do not face that cause of action.

C.   **Plaintiffs Failed To Plead Sufficient Facts As To All Claims Against The Disney Defendants**

1.   **Plaintiffs Did Not, And Cannot, Adequately Plead That Harvey Weinstein Was Employed By The Disney Defendants**

Plaintiffs failed to allege sufficient facts of an employment or agency relationship between the Disney Defendants and Harvey Weinstein, which is fatal to all of their claims. Plaintiffs point to the allegations in the FAC that Disney was a co-signatory on Harvey Weinstein's employment contracts and that Harvey Weinstein reported to Mr. Eisner, *see* Opp. at 71, but none of those alleged facts suggest that the Disney Defendants "control[led] the manner in which work [was] performed" by Harvey Weinstein, the core element of an employment relationship. *Feliberty v. Damon*, 527 N.E.2d 261, 263-64 (N.Y. 1988). In fact, Plaintiffs concede that both Disney and Mr. Eisner "could not control the [Weinstein] brothers." FAC ¶ 342.

Plaintiffs claim that despite the fact that Mr. Eisner was not Harvey Weinstein's employer, he can still be liable for negligent supervision or retention under New York law. Opp. at 69-70, 72. The case law they cite is unsupportive. *Sandra M.* stands for the opposite proposition—that the cause of action "is based upon the defendant's status as an employer." *Sandra M. v. St. Luke's Roosevelt Hosp. Ctr.*, 33 A.D.3d 875, 878 (N.Y. App. Div. 2006). *Krystal G.* addressed a narrow, inapposite type of negligent supervision claim against a co-employee, when both the alleged tortfeasor and the defendant worked together for a common employer, unlike Harvey Weinstein (Miramax) and Mr. Eisner (TWDC). *Krystal G.*, 933 N.Y.S.2d at 537. Even on those allegations, this Court has called *Krystal G.* an "outlier" that does not reflect the doctrine in New York state. *See* MTD at 58, n.33; *Alsaud*, 12 F. Supp. 3d at 68-84 ("Plaintiffs' reliance on *Krystal G.* . . . is misplaced."); *see also Torain v. Casey*, No. 16 Civ. 2682 (VEC) (JCF), 2016 WL 6780078, at *7 (S.D.N.Y. Sept. 16, 2016) ("To state a claim

for negligent hiring, retention or supervision under New York law, a plaintiff must . . . show that

[] the tortfeasor and the defendant were in an employee-employer relationship . . . .") (citing

*Ehrens*, 385 F.3d at 235).

> **2.    Plaintiffs Did Not, And Cannot, Adequately Plead That The Disney Defendants Knew, Or Should Have Known, Of Harvey Weinstein's Conduct**

None of Plaintiffs' claims can survive a motion to dismiss without specific factual

allegations that defendants knew, or at least should have known, of alleged misconduct.  Against

the Disney Defendants, Plaintiffs come nowhere close.  Plaintiffs' Opposition recites a litany of

conclusory allegations in the FAC as to how the Disney Defendants might have known about

Harvey Weinstein's misconduct, Opp. at 6-7, 9, but none are sufficient.  *See* MTD at 97.  While

Plaintiffs say that Disney and Buena Vista had some control over Miramax's finances and paid

certain Miramax employees, Opp. at 6-7, and that Mr. Eisner delegated oversight of Harvey

Weinstein to others, Opp. at 9, none of those alleged facts, even if true, would make the Disney

Defendants "aware of specific prior acts or allegations against [Harvey Weinstein]."  *Alsaud*, 12

F. Supp. 3d at 680.  Tellingly, in the section of the Opposition describing Plaintiffs' allegations

that the Defendants knew or should have known about Harvey Weinstein's conduct, Plaintiffs

exclude the Disney Defendants entirely.  Opp. at 72-73.

> **3.    Plaintiffs Did Not, And Cannot, Adequately Plead That Harvey Weinstein's Conduct Occurred With The Disney Defendants' Chattels Or On Their Premises**

Plaintiffs' negligent supervision and retention claim cannot survive without sufficient

allegations that Harvey Weinstein's conduct occurred on or with the Disney Defendants'

property.  In arguing this point, Plaintiffs do not even mention the Disney Defendants, Opp. at

73, let alone counter any argument about the insufficiency of their allegation that Disney paid for

Harvey Weinstein's hotel rooms to support their negligent supervision and retention claim.  *See* MTD at 98; FAC ¶¶ 844, 857, 869, 883, 899.

> **4.      Plaintiffs Did Not, And Cannot, Adequately Plead That Harvey Weinstein Acted Within The Scope Of His Employment**

The Disney Defendants cannot be held vicariously liable for conduct that was outside the scope of Harvey Weinstein's employment.  This dooms Plaintiffs' remaining state law claims. *See* MTD at 97.  Plaintiffs assert that Harvey Weinstein's sexual misconduct falls within an exception to the scope of employment element because the alleged assaults were "reasonably foreseeable and a natural incident of employment."  Opp. at 99.  But foreseeability is not an exception to—rather, it is a requirement of—the scope of employment inquiry.  *See Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 338 (S.D.N.Y. 2017) ("[A]n employer can be held vicariously liable for torts committed by an employee acting within the scope of employment . . . *so long as* the tortious conduct is generally foreseeable and a natural incident of the employment.") (emphasis added) (citation and internal quotation marks omitted)).

Plaintiffs find no support in *Riviello v. Waldron*.  *See* Opp. at 98-100.  That case addressed claims for negligent conduct falling within "the range of things commonly done" by an employee.  *See Riviello*, 391 N.E.2d at 1282.  Sexual assault is not within "the range of things commonly done" by an employee under any circumstances, and has thus never been found by this Court to be within the scope of employment.  *See Canosa*, 2019 U.S. Dist. LEXIS 13263, at *35 (dismissing vicarious liability claims because plaintiff "ha[d] not alleged, other than conclusorily, that when [Harvey Weinstein] attacked [plaintiff], he was acting on anyone's behalf other [than] himself"); *Alsaud*, 12 F. Supp. 3d at 677 ("No decision in New York has been cited to date in which the doctrine of *respondeat superior* was held to apply to sexual assault.").

Similarly, the Disney Defendants could not be held liable for ratification of Harvey Weinstein's conduct because sexual assault and related tortious behavior are understood to be committed for the personal gratification of the perpetrator and not on behalf of any principal or employer. *See Alsaud*, 12 F. Supp. 3d at 677. Plaintiffs did not plead otherwise. *See Canosa*, 2019 U.S. Dist. LEXIS 13263, at *32-34 (dismissing ratification claims because plaintiff failed adequately to plead as to each defendant that Harvey Weinstein's "tortious conduct—consisting of crude sexual assaults—was done *on its account*") (emphasis in original).

## XI.   ADDITIONAL REPLY ARGUMENTS OF DEFENDANT THE WEINSTEIN COMPANY HOLDINGS, LLC

### A.   Plaintiffs Fail To Establish Predicate Acts Of Wire Fraud

Plaintiffs fail to plausibly allege that TWC—by using emails or wires to arrange for business meetings with Plaintiffs, or create and disseminate contact lists containing the names of Plaintiffs, or by using emails or wires to pay for the legal fees of lawyers or advisors allegedly retained by Harvey Weinstein—itself participated in a scheme to defraud Plaintiffs and cause harm to their property rights. *See U.S. v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999). They likewise fail to satisfy the pleading requirements with respect to the predicate act of wire fraud, which must be pled with particularity under Fed. R. Civ. P. 9(b). *See Williams*, 889 F.3d at 124. Instead, the allegations set forth in the FAC relating to TWC speak generally to the types of communications that might be shared by TWC with any individual doing business with TWC, including Plaintiffs, and fail to provide *any* detail as to any specific statements—such as any statements made by whom, and to whom, when they were made, or at the very least, what was false or misleading about them. This type of generic pleading fails to satisfy the dictates of Rule 9 (b). *Tymoshenko*, 2015 U.S.Dist. LEXIS 125126, at *12.

**B.    Plaintiffs Did Not Sustain RICO Injury And Their Injuries Were Not Caused By TWC**

As set forth in Section III, Plaintiffs' alleged physical and emotional injuries, stemming from the sexual abuse they sustained by Harvey Weinstein are not redressable under RICO, and the FAC does not allege otherwise.  The other conduct that Plaintiffs claim to have sustained is in the nature of a "loss of business opportunity," and considered too speculative to be an actionable RICO injury. Neither measure of damages, however, is attributed to TWC.  Plaintiffs' Opposition now alleges that Plaintiffs were "blacklisted," but does not allege that TWC (as opposed to Harvey Weinstein and agents working on his behalf) took any "affirmative steps to blacklist" Plaintiffs. *See Makowski*, 2010 U.S. Dist. LEXIS, at \*24-27.  A RICO Plaintiff must plead both proximate and but-for causation, in addition to an injury to her business or property by the conduct constituting the violation.  *Sedima*, 473 U.S. at 496.  The FAC does neither as to TWC, and thus the FAC fails to plead the requisite element of causation as to TWC.

**C.    Plaintiffs Fail To Allege A RICO Enterprise**

Finally, Plaintiffs fail to allege a RICO enterprise, and that TWC shared in a common purpose with the enterprise to achieve a common goal.  *See Aerowest GMGH*, 2016 U.S. Dist. LEXIS 84344, at \*7.

In light of the foregoing, Plaintiffs' FAC fails to state a RICO claim as to TWC and should be dismissed in its entirety.

**XII.    ADDITIONAL REPLY ARGUMENTS OF DEFENDANT ROBERT WEINSTEIN**

In Section XIV of the Motion, Robert Weinstein demonstrated that the vast majority of Plaintiffs' allegations against him arise solely from his service on the TWC Board and, therefore, are no different from those made against the other TWC Board members.  *See* MTD at 106 &

n.66.  Thus, he argued that nearly all of the arguments made by the Outside Directors in the

Motion applied equally to him.  The Opposition does not dispute that point.[56]

Robert Weinstein also explained in the Motion how the FAC's scant allegations even

arguably particular to him are insufficient to support any of Plaintiffs' claims against him.  *See*

*id.* at 106-118.  With one exception (discussed below), Plaintiffs do not address *any* of Robert

Weinstein's arguments in their 103-page Opposition.  The Opposition's silence speaks volumes,

demonstrating that the FAC's claims against him, like the claims against the other Directors, are

woefully insufficient and cannot survive this Motion.

The insufficiency of Plaintiffs' claims against Robert Weinstein is further highlighted by

Judge Engelmayer's decision last month in *Canosa*.  In *Canosa*, Judge Engelmayer granted in its

entirety Robert Weinstein's motion to dismiss the same causes of action that Plaintiffs assert

here, under RICO and the TVPRA and for negligent supervision and retention, ratification and

vicarious liability.  *Id.* at *13, *32-34, *37-41, *64-71.  This Court should do the same.

### A.    The Opposition Fails To Demonstrate How The FAC's Status-Based Allegations Regarding Robert Weinstein Support Plaintiffs' Claims

In the Motion, Robert Weinstein demonstrated that, under well-settled law, the FAC's

allegations regarding his status as Harvey Weinstein's brother and as an officer and owner of

Miramax and TWC do not remedy the FAC's many fatal pleading deficiencies.  MTD at 107-09

(citing cases).  By and large, Plaintiffs do not dispute the point.[57]  Nonetheless, in attempting to

---

[56]     Similarly, virtually all of the reply arguments made above on behalf of the Outside Directors also apply to Robert Weinstein, and Robert Weinstein adopts and incorporates those arguments here, as well as the arguments made by other Defendants to the extent that those arguments are applicable to Robert Weinstein.

[57]     Specifically, Plaintiffs do not dispute that Robert Weinstein's role as an executive or director at Miramax and TWC or his familial relationship with Harvey Weinstein do not transform him into Harvey Weinstein's employer or principal, as would be necessary to sustain their claims against him for negligent supervision and retention (Counts III and IV), vicarious liability (Counts VII to XVI), and ratification (Counts XVII and XVIII).  *See* MTD at 108.  The Opposition is likewise silent as to Robert Weinstein's

defend the sufficiency of the fraud allegations underlying their RICO claims, Plaintiffs argue, in

a footnote, that Robert Weinstein "ignores the allegations that he participated as an officer and

director at both Miramax and TWC."  Opp. at 80 n.217.  Plaintiffs' assertion is baffling

considering that Robert Weinstein squarely addressed those allegations in the Motion, citing

cases establishing that his corporate roles are insufficient to plead a claim for fraud, as well as

the other claims asserted in the FAC.  *See* MTD at 109.

In any event, Plaintiffs are wrong.  The law in this Circuit is firmly established that a

defendant's status as an officer or director is *not* sufficient to sustain an accusation of fraud.

There are countless cases so holding, in addition to those cited in the Motion.  *See*, *e.g.*, *Calfo v.

Messina*, No. 15 Civ. 4010 (LGS), 2016 WL 3661548, at *11 (S.D.N.Y. July 5, 2016) (rejecting

plaintiffs' argument that defendants must have known of alleged fraud because they served as

officers and directors; "without more [such allegations] are insufficient"); *In re Citigroup, Inc.

Sec. Litig.*, 330 F. Supp. 2d 367, 381 (S.D.N.Y. 2004) (rejecting plaintiffs' argument that

fraudulent intent can be inferred from defendants' "high ranking positions" within company),

*aff'd sub nom. Albert Fadem Tr. v. Citigroup, Inc.*, 165 F. App'x 928 (2d Cir. 2006);

*Productores Asociados de Café Rio Claro, C.A. v. Barnett*, No. 98 CIV. 499 (DAB), 1999 WL

287389, at *3 (S.D.N.Y. May 7, 1999) ("Plaintiffs cannot link Defendants to any

misrepresentations by Machado by stating only that Defendants were officers and shareholders

of Machado, absent allegations of personal knowledge or participation in the fraud.").[58]

---

argument that his positions within TWC and Miramax are insufficient to hold him accountable for
participation in a sex trafficking venture (Count II), *see id.* at 109—which is no surprise, given that both
Judge Sweet and now Judge Engelmayer have dismissed substantially identical TVPRA claims against
Robert Weinstein as defectively pled.  *See Noble*, 335 F. Supp. 3d at 523-25; *Canosa*, 2019 U.S. Dist.
LEXIS 13263, at *64-65.

[58]      The cases cited by Plaintiffs warrant no different conclusion.  Those cases merely recognize that
the element of *scienter* in securities fraud cases may be properly pleaded where the complaint alleges
particular *facts* giving rise to a strong inference that corporate officers or directors were aware of alleged

Plaintiffs also argue (although not specifically as to Robert Weinstein) that a corporate officer can be held liable for an employee's torts based on a theory of negligent supervision, whether or not an employer-employee relationship exists.  Opp. at 70, 73 n.183.  As set forth above, however, the case upon which Plaintiffs rely, *Krystal G.*, 933 N.Y.S.2d at 522, is an outlier that conflicts with Second Circuit precedent.  And even if that were not the case, *Krystal G.* is inapposite here.  In *Krystal G.*, the defendant-pastor was the direct supervisor and superior of the alleged tortfeasor, an associate pastor.  *See id.* at 522-23.  Here, the FAC does not (and cannot) allege that Robert Weinstein was Harvey Weinstein's "supervisor."  To the contrary, the FAC describes Harvey Weinstein as the most powerful man in the movie industry, *see, e.g.*, FAC ¶¶ 9-10, 65, and notes that Robert Weinstein headed a different division of the Company entirely.  *See id.* ¶ 830(h); *see also* MTD at 107 n.67.[59]

## B.    The Opposition Fails To Respond To Robert Weinstein's Arguments Regarding The FAC's Few Additional Allegations Specific To Him

The Opposition's silence with respect to all other arguments Robert Weinstein made in the Motion only serves to highlight why Plaintiffs' claims against him must be dismissed.

---

misrepresentations that involve an important aspect of the company's business.  *See* Opp. at 80 n.217.  The FAC here pleads no such facts as to Robert Weinstein.  To the contrary, the conduct alleged by Plaintiffs relates to Harvey Weinstein's personal sexual exploits, *not* the business of TWC or Miramax.  Moreover, as explained above and in the Motion, Plaintiffs fraud claim suffers from even more fundamental defects, including, *inter alia*, their failure to plead that Robert Weinstein made or participated in making any material misrepresentation or omission.

[59]    Furthermore, Plaintiffs do not dispute Robert Weinstein's argument that the FAC fails to plead the premises-or-chattels prong of a negligent supervision claim against him.  *See* MTD at 112 n.72.  Indeed, Plaintiffs admit that they allege only that torts were committed using "Miramax's or TWC's" premises or chattels.  Opp. at 73.  Of course, property belonging to a company is *not* property of any individual officer, director or owner.  *See, e.g.*, *D'Mel & Assocs. v. Athco, Inc.*, 105 A.D.3d 451, 452-53 (1st Dep't 2013); *Uribe v. Merchants Bank of New York*, 239 A.D.2d 128, 128 (1st Dep't 1997); *see also Canosa*, 2019 U.S. Dist. LEXIS 13263, at *40-41 (dismissing negligent supervision claim against Robert Weinstein for failure to plead the premises-or-chattels element).

First, as demonstrated in the Motion, the FAC's allegations concerning Robert Weinstein's payment of personal funds to settle claims made against his brother in 1998 cannot satisfy any element of any of Plaintiffs' claims against him.  *See* MTD at 109-12.  Tellingly, although the Opposition refers to these allegations, *see* Opp. at 13, it offers no response to any of Robert Weinstein's arguments on this point, including his showing that the FAC's claim that he was "a part[y] to the settlement agreements" is unambiguously disproven by the very document on which Plaintiffs rely.  MTD at 110.  As the Motion noted, Judge Sweet deemed allegations about these same 1998 settlement payments to be insufficient to state a claim against Robert Weinstein in the *Noble* case, *id.* at 111, and Plaintiffs offer no reason why this Court should reach a different conclusion here.

The Opposition nonetheless argues that *Noble* is "readily distinguishable," Opp. at 66, because of allegations made against "the TWC Defendants" in the FAC that purportedly were not made in *Noble*.  *Id.* at 66-67.  But other than the settlement related allegations already deemed insufficient by Judge Sweet, Plaintiffs' bullet points identify no conduct that the FAC alleges *Robert Weinstein* engaged in.[60]  Plaintiffs' other allegations relate only to "Defendants'" purported knowledge of Harvey Weinstein's activities, and even if they were adequately pled as to Robert Weinstein (and they are not), that would not amount to the type of affirmative conduct required to meet the participation element of a TVPRA claim.  *See* MTD at 47-49; Section IV(B)(2), *supra*; *see also Canosa*, 2019 U.S. Dist. LEXIS 13263, at *64-65 (dismissing participation claim against Robert Weinstein because complaint "state[d] only, in general terms,

---

[60]     The Opposition asserts that the FAC alleges that "*Defendants* helped Harvey Weinstein set up for the assaults," Opp. at 67 (emphasis added), but there is no such allegation anywhere in the FAC as to Robert Weinstein.  Similarly, the Opposition claims that "Defendants" participated in cover-ups, witness retaliation and spoliation of evidence, *id.*, but the only such allegations in the FAC relate to the purported activities of the "Army of Spies," and Robert Weinstein is not alleged to have had any involvement in those activities.  *See* MTD at 30-37; Sections III(A)-(C), (E), *supra*.

that [he] facilitated [Harvey] Weinstein's interstate and foreign travel, . . . knew of [Harvey] Weinstein's pattern or practice of assault, . . . and was privy to multiple claims of assault alleged against [Harvey] Weinstein") (citations omitted).

Likewise, the Opposition fails to substantively respond to any of Robert Weinstein's specific arguments regarding the FAC's failure to allege facts plausibly suggesting that he knew or should have known about Harvey Weinstein's propensity for sexual assault. *See* MTD at 112-17. Specifically, despite his detailed showing in the Motion demonstrating the insufficiency of the FAC's speculative allegations about office gossip, internal personnel records, and what other TWC or Miramax employees may have known about, *see id.* at 113-16, the Opposition merely regurgitates those allegations, without explaining how they satisfy Plaintiffs' burden. *See* Opp. at 13-14, 72-73. As set forth in the Motion, they do not.

Plaintiffs also attempt to improperly embellish upon the FAC's actual allegations. Specifically, the Opposition asserts that in 1991, "after being *assaulted* by Harvey Weinstein, Robert Weinstein's [former] girlfriend . . . had a discussion with Robert Weinstein about the *assault*." *Id.* at 13 (emphasis added). That this assertion is made without any citation to the FAC is unsurprising, as the FAC makes no such allegation.[61] In similar fashion, although the Opposition disingenuously implies that Robert Weinstein "received" a complaint from former employee Sandeep Rehal about how she was tasked with purchasing erectile dysfunction shots for Harvey Weinstein, Opp. at 13, nowhere is that pleaded in the FAC or in Ms. Rehal's own complaint. *See* MTD at 115-16 & n.76; FAC ¶¶ 459-60. It is well-settled that a plaintiff may

---

[61]     Instead, the FAC alleges only that the former girlfriend informed Robert Weinstein that his brother had "aggressively tr[ied]" to sleep with her and other women, and that she reported in a book years later that Harvey Weinstein had "chased her around a room" and made other crude innuendoes toward her. *See* MTD at 115; FAC ¶¶ 354, 450-53.

not supplement her complaint in opposing a motion to dismiss. *See, e.g.*, *Wright*, 152 F.3d at

178. Thus, these allegations must be disregarded.

Accordingly, for all the reasons set forth by Robert Weinstein and his co-Defendants here

and in the Motion, the FAC should be dismissed against him in its entirety and with prejudice.

## XIII.   ADDITIONAL REPLY ARGUMENTS OF DEFENDANT JAMES DOLAN

Defendant James Dolan submits these additional arguments as a supplement to the

Outside Directors' consolidated Reply, and to amplify, in response to Plaintiffs' arguments in

Opposition to his request for dismissal, his Additional Arguments incorporated in the Motion.

*See* MTD at Section XV (the "Dolan Addendum"). While Mr. Dolan joins in all of the

arguments set forth both in the Motion and in this Reply, as discussed in the Dolan Addendum,

the analysis is particularly clear-cut for one simple, yet dispositive reason:  Mr. Dolan's brief

tenure as a TWC Board member—the sole role upon which Plaintiffs predicate their claims

against him—commenced years, if not decades, after Harvey Weinstein allegedly engaged in the

conduct underlying those claims.  As such, there simply is no conceivable basis for a

determination that Mr. Dolan caused, in any legally cognizable sense, the harm to Plaintiffs

alleged in the FAC.  Tellingly, Plaintiffs' Opposition, which devotes only a single page to their

allegations concerning Mr. Dolan, fails even to address, let alone rebut, the compelling

arguments for dismissal set forth in the Dolan Addendum.

As discussed in the Dolan Addendum, the FAC alleges that Mr. Dolan served on the

TWC Board as an independent outside director for less than nine months, from September 30,

2015 until June 20, 2016—the shortest tenure of any of the Outside Directors.  FAC ¶ 50.  The

FAC also confirms that the alleged assaults and related conduct of Harvey Weinstein underlying

Plaintiffs' claims occurred during the period commencing in the early 1990s and ending in 2011,

*i.e.*, the latest of those alleged acts occurred some *four years* before Mr. Dolan joined TWC's

Board.  As such, it is self-evident that Mr. Dolan cannot, in his capacity as a TWC Board

member—the only basis upon which Plaintiffs allege that Mr. Dolan owed Plaintiffs any duty,

legal or otherwise—have caused, prevented, facilitated or otherwise participated in that alleged

conduct.  Stated most succinctly, as Mr. Dolan could not have contributed to, let alone caused,

Harvey Weinstein's alleged assaults—which occurred years before Mr. Dolan assumed his

position as an Outside Director—and, as such, the injuries Plaintiffs allege they suffered as a

result, he cannot be held liable for them.  *See Schwab v. Philip Morris USA, Inc.*, 449 F. Supp.

2d 992, 1043 (E.D.N.Y. 2006) ("Factual causation is a requirement of every tort.").

Rather than even attempt to rebut that dispositive conclusion, in their Opposition

Plaintiffs instead all but abandon any pretense of asserting a cognizable claim against Mr. Dolan.

In fact, Plaintiffs devote only *one page* of their 104-page Opposition to the purported "factual"

predicate of their claims against him.  *See* Opp. at 23.  Far from supporting Plaintiffs' claims

against Mr. Dolan, that feeble attempt ultimately confirms conclusively that Plaintiffs have not

alleged any possible (let alone plausible) basis for the imposition of liability against him.

Indeed, Plaintiffs do not even make an effort in their Opposition to explain how or why Mr.

Dolan might be held responsible for conduct or resulting injuries that occurred years, or even

decades, before he assumed the role upon which their claims against him are predicated, *i.e.*, that

of an Outside Director on the TWC Board.

Instead, in their Opposition, Plaintiffs aver (albeit falsely), without any supporting factual

basis, that (a) by 2010, Mr. Dolan supposedly learned, through unspecified "references to

[Harvey] Weinstein's assaults in media and entertainment," that Harvey Weinstein engaged in

unspecified sexual misconduct directed towards unspecified women (*id.*); (b) also in 2010, Mr.

Dolan learned of Harvey Weinstein's alleged misconduct through a documentary movie that IFC

Films—a media enterprise that is a subsidiary of one of the many companies in which the Dolan family possesses an ownership stake—purchased and later "altered" (although Plaintiffs do not allege that Mr. Dolan ever saw that film or knew of or had any involvement in its purchase or IFC Films' supposed decision to alter it) (*see id.*; *see also* FAC ¶¶ 573-577); and (c) at certain other unspecified times, Mr. Dolan "should have known" about alleged efforts "to cover up Weinstein's pattern of assaults."  *See* Opp. at 23.  Thus, according to Plaintiffs, their claims against Mr. Dolan arise from two vaguely alleged foundational predicates: (a) that his "participation in the cover-up of Weinstein's behavior began in 2010"; and (b) that he "was a director at TWC during the time that all Plaintiffs were blacklisted or targeted by Weinstein."  *Id.* at 24.  Notwithstanding the fact that the FAC does not contain a single, plausible allegation that Mr. Dolan knew of or participated in any manner in Harvey Weinstein's alleged assaultive conduct, or that he was involved in the alleged "blacklisting" of Plaintiffs, none of the foregoing, utterly conclusory, assertions in Plaintiffs' Opposition provides any basis for the imposition of liability on Mr. Dolan.

First, as noted above, Mr. Dolan's erstwhile status as a TWC Director for a nine-month period in 2015 and 2016 is Plaintiffs' sole asserted basis for seeking to hold him liable for the conduct of TWC's then employee, Harvey Weinstein.  It is thus indisputable that Mr. Dolan cannot, under any conceivable theory, be held liable for any supposed conduct (or inaction) on his part concerning either Harvey Weinstein's alleged misconduct or the purported "cover-up" of those events that occurred in the years *before* Mr. Dolan joined the TWC Board.  Stated another way, Mr. Dolan cannot possibly have breached his duties as a TWC Board member—the sole basis of Plaintiffs' putative claims against him—*before* he even assumed those duties.

Second, Plaintiffs' conclusory allegations concerning what Mr. Dolan supposedly "should have known" during the brief period in 2015 and 2016 when he served as a TWC Director also do not provide any basis to impose liability on him.  As an initial matter, Plaintiffs' own allegations in the FAC directly contradict their new suggestion, proffered for the first time in their Opposition,[62] that Mr. Dolan "was a director at TWC during the time that all Plaintiffs were blacklisted or targeted by Weinstein."  *Id.*  Indeed, as set forth above, Plaintiffs allege precisely the contrary in the FAC, *i.e.*, that they were assaulted by Harvey Weinstein and "blacklisted" long before Mr. Dolan joined the TWC Board in 2015, in some instances decades before.  *See* FAC ¶¶ 101, 113, 142, 164, 173, 201-02, 226, 236, 239, 251, 263, 298.[63]  By the time Mr. Dolan joined the TWC Board and assumed the duties attendant to that position, there is simply no knowledge, actual or constructive, that he may have possessed and nothing he could have done (or failed to do) that could "turn back the clock" to prevent Harvey Weinstein's alleged assaults or the injuries Plaintiffs allege resulted therefrom.[64]  As such, as a matter of

---

[62]    It is, of course, well-established that averments in a brief are no substitute for, and cannot cure, a lack of allegations in a Complaint.  *See Fonte v. Bd. of Managers,* 848 F.2d 24, 25 (2d Cir. 1988) (noting that "[f]actual allegations contained in legal briefs or memoranda" are not to be considered on a motion pursuant to Fed. R. Civ. P. 12(b)(6)).

[63]    In any event, in light of the Court's prior admonition that, for their Amended Complaint to withstand dismissal, Plaintiffs must allege that "each [defendant] separately . . . knew of [the] continuing effort of Harvey Weinstein to blacklist the plaintiffs," Sept. 12, 2018 H'rg Tr. 17:7-9, the allegation that Mr. Dolan "should have known" about that alleged conduct when he served as a TWC Director is plainly insufficient.

[64]    To the extent that Plaintiffs now suggest—contrary to their allegations in the FAC—that any of them may still have been "targeted" by Harvey Weinstein as late as 2015-2016, such an allegation would plainly be implausible, at best, since the latest of the alleged acts underlying their claims occurred in 2011.  Nor would it save Plaintiffs' claims against Mr. Dolan to suggest that *other* women, not named as Plaintiffs, may have been assaulted and "blacklisted" in 2015 or 2016 when Mr. Dolan was a TWC Director.  As no class has yet been certified in this action pursuant to Fed. R. Civ. P. 23, it is axiomatic that the only relevant allegations for purposes of a determination of the present Motion are those alleged in the FAC concerning the named Plaintiffs.  *See Bresson v. Thomson McKinnon Sec., Inc.*, 641 F. Supp. 338, 343 (S.D.N.Y. 1986) ("The Court cannot now [*i.e.*, at the motion to dismiss stage] consider the claims of unidentified members of a class not yet certified.  The claims of the named plaintiffs must stand or fall on their own.").

well-established law—not to mention basic logic—Mr. Dolan cannot be held liable for that conduct.

For the foregoing reasons and as further set forth in the Dolan Addendum and in Defendants' consolidated submissions in support of their Motion, Plaintiffs' claims against Mr. Dolan should be dismissed, with prejudice.

## XIV. ADDITIONAL REPLY ARGUMENTS OF FORMER OUTSIDE DIRECTOR RICHARD KOENIGSBERG

What is most significant about Plaintiffs' Opposition as it relates to former TWC director Richard Koenigsberg ("Mr. Koenigsberg") is not what it says but what it does not say.  Plaintiffs do not address, let alone rebut, any of Mr. Koenigsberg's additional arguments for dismissal of the FAC with prejudice as against him.  Instead, Plaintiffs simply repeat the two implausible and legally deficient allegations in the FAC made specifically against him—namely, that Mr. Koenigsberg allegedly (a) owned "'W' shares" of TWC, and, therefore, "had full control over all decisions involved in running the studio under the TWC operating agreement"; and (b) was "aware or should have been aware of the settlements with Harvey Weinstein's victims" because he was "Harvey and Robert Weinstein's long-term personal accountant."  *See* Opp. at 19-20; *see also* FAC ¶¶ 47, 510(g)-(f), 511-512, 525, & 808(b).  Neither of these conclusory allegations has merit.

First, as demonstrated in defendants' Motion, the Court need not accept as true Plaintiffs' allegation that Mr. Koenigsberg owned Class "W" Shares because that allegation is squarely refuted by TWC's Voluntary Petition for Bankruptcy ("Voluntary Petition"), which identifies Harvey Weinstein and Robert Weinstein as the only owners of Class "W" Shares.  *See* MTD at

124-125 (citing *In re: The Weinstein Co. Holdings, LLC, et al.*, Case No. 18-10601-MFW

(Bankr. D. Del.), ECF Dkt. No. 1 at p. 30).   Remarkably, Plaintiffs' Opposition completely

ignores the Voluntary Petition and fails to explain how they can allege in good faith that Mr.

Koenigsberg owned Class "W" shares (or any other shares of TWC) in light of this contrary

public record.   Nor do Plaintiffs dispute Mr. Koenigsberg's argument that the Court may

consider the Voluntary Petition in rejecting at the motion-to-dismiss-stage Plaintiffs' bad faith

allegation that he owed Class "W" shares.   *See* MTD at 124, n.80-81.   Plaintiffs, by failing to

address each of these points, concede them. *See Kao*, 2018 WL 501609, at *5; *Arista Records*,

122 F. Supp. 3d at 28-39.

        Second, the Court cannot plausibly infer that Mr. Koenigsberg had knowledge of alleged

settlements with Harvey Weinstein's alleged victims or Harvey Weinstein's alleged misconduct

simply because he was Harvey and Robert Weinstein's personal accountant.   As established in

defendants' opening brief, courts in this Circuit and elsewhere have repeatedly rejected attempts

to infer knowledge based on the position of a defendant.   *See* MTD at 126 (collecting cases from

the Second and Seventh Circuits).   Moreover, the Court cannot, without more, infer knowledge

of or participation in Harvey Weinstein's alleged wrongdoing solely from the fact that

Mr. Koenigsberg was his personal accountant.   *Id.* at 126-127.   Finally, Mr. Koenigsberg's

alleged knowledge of settlements with Harvey Weinstein's alleged victims is inadequate as a

matter of law to establish knowledge of or participation in Harvey Weinstein's alleged

misconduct.   *Id.* at 127.   Just as with the Class "W" shareholder issue, Plaintiffs do not address,

and therefore concede, all of these points.   *See Kao*, 2018 WL 501609, at *5; *Arista Records*,

122 F. Supp. 3d at 28-39.

In light of Plaintiffs failure to address, much less refute, any of the additional arguments made by Mr. Koenigsberg relating to the two allegations in the FAC unique to him, the Court should consider those arguments conceded.  Accordingly, and because all of the other arguments set forth by the other Outside Directors for dismissal are equally applicable to Mr. Koenigsberg, the FAC should be dismissed with prejudice as against him for all of the same reasons that it should be dismissed with prejudice as against each of the other Outside Directors.

## XV.   ADDITIONAL REPLY ARGUMENTS OF OUTSIDE DIRECTOR LANCE MAEROV

All of the arguments set forth above by the Outside Directors for dismissal are equally applicable to outside director Lance Maerov.  Accordingly, the FAC should be dismissed with prejudice as against him for all of the same reasons that it should be dismissed with prejudice as against each of the other Outside Directors.  Additionally, while the Opposition (at 79, citing FAC ¶ 489) asserts that non-party David Boies self-servingly and vaguely claimed in a public letter-to-the-editor of the *Financial Times* that it is "simply false" to assert that Mr. Maerov did not know—in 2015—about Harvey Weinstein's "settlements with women," neither the FAC nor the David Boies letter-to the-editor provides any inkling as to when, where or how Mr. Maerov ever became aware of any such settlements.  Moreover, any purported knowledge obtained in 2015 regarding unspecified settlements with unspecified individuals does not suggest that Mr. Maerov had knowledge of Harvey Weinstein's misconduct *many years earlier*, at the time Plaintiffs were allegedly assaulted by Harvey Weinstein (between 1993 and 2011).

Plaintiffs assert that Mr. Maerov was motivated to overlook Harvey Weinstein's misconduct because, according to a *New York Times* article, Harvey Weinstein had threatened to "find" embarrassing details about Mr. Maerov's past and use them against him if he spoke out.  FAC ¶ 490.  Tacitly recognizing the sheer speculative nature—and utter uselessness—of

this allegation, Plaintiffs dissemble.  They allege *for the first time* in the Opposition that there is evidence of "[e]mails between Weinstein and individual members of the TWC Board, including Maerov, in which Weinstein threatened to publicly release embarrassing details from their past if they did not renew his employment contract."  Opp. at 44-45.  In support of this claim, Plaintiffs cite to a paragraph in the FAC (¶ 490).  Yet, that paragraph says absolutely *nothing* whatsoever about any such emails.  Rather, it simply cites to the same *New York Times* article—which contains only a single sentence regarding Mr. Maerov—stating, "[Harvey Weinstein] pressured his business associates, telling Lance Maerov, an outspoken member of the Weinstein Company board, that he **would find** embarrassing details from his past and them against him."  (emphasis added).  As detailed above, a party is not permitted to amend its complaint by offering new allegations in its opposition papers.[65]

For the reasons set forth in this section, and for all of the reasons set forth above by the Outside Directors, the FAC should be dismissed as against Mr. Maerov with prejudice.

## XVI.   ADDITIONAL REPLY ARGUMENTS OF OUTSIDE DIRECTOR JEFF SACKMAN

All of the arguments set forth above by the Outside Directors for dismissal are equally applicable to outside director Jeff Sackman.  Accordingly, the FAC should be dismissed with prejudice as against him for all of the same reasons that it should be dismissed with prejudice as against each of the other Outside Directors.  In addition, we note that Plaintiffs now concede that there is no sex-trafficking claim against Mr. Sackman under the 2003 TPVRA.  In particular, the

---

[65]     The Opposition repeats the FAC's assertion that Mr. Maerov "did not take action to terminate Weinstein in order to protect his investment," but (unsurprisingly) fails to offer any response to Mr. Maerov's argument that there are no *factual* allegations in the FAC supporting Plaintiffs' speculation that Mr. Maerov would overlook Harvey Weinstein's conduct (of which Mr. Maerov was not aware) simply because a subsidiary of his employer, WPP—a $25 billion company at the time—had made a relatively small minority investment in TWC years earlier.  *Compare* Opp. at 18 *with* MTD at 129 n.84.

FAC initially included Mr. Sackman among the "TWC Directors" indiscriminately named by Count II. *See* FAC ¶¶ 15, 755-61. But in the Opposition, Plaintiffs effectively dismiss Mr. Sackman from that claim, contending only that they have properly pleaded such a claim against certain expressly-enumerated defendants, but not Mr. Sackman, who is not alleged to have been on the TWC Board prior to the enactment of the 2008 TPVRA. *See* Opp. at 65. For this additional reason, too, this claim should be dismissed with prejudice as against Mr. Sackman.

## XVII. ADDITIONAL REPLY ARGUMENTS OF OUTSIDE DIRECTORS MARC LASRY AND PAUL TUDOR JONES

Messrs. Lasry and Jones join in all of the arguments made by the Outside Directors. We offer this brief addendum to highlight a dispositive point applicable only to the two of them. Specifically, as to Mr. Lasry, we write to highlight the undisputed fact that he joined the TWC Board in June 2016, nearly a decade after the last incident of sexual harassment raised in the FAC, and more than six months after the 2015 negotiations regarding Harvey Weinstein's employment contract.

Similarly, as Plaintiffs admitted in their prior complaint, Mr. Jones did not join the TWC Board until December 2015, two months after Plaintiffs allege Harvey Weinstein's employment contract was approved. The FAC's new allegation that Mr. Jones was appointed to the TWC Board on the same day Harvey Weinstein's employment agreement was approved omits a crucial fact: Plaintiffs do not (and cannot) allege that Mr. Jones took any part in negotiating or approving that agreement or even attended a TWC Board meeting in October 2015. He did not.

The timing of Messrs. Lasry's and Jones's tenure on the TWC Board is critical because Plaintiffs repeatedly cite the 2015 negotiations regarding Harvey Weinstein's employment contract for the proposition that the directors knew (or should have known) about Harvey Weinstein's propensity for sexual assault and harassment. The undisputed fact that Messrs.

Lasry's and Jones's late and limited tenure on the TWC Board occurred after any relevant act alleged in the FAC requires the dismissal of all of the claims alleged against them.

It is undisputed that Messrs. Lasry and Jones were not on the TWC Board during any of the relevant periods covered by the FAC, including the alleged incidents of sexual harassment, the negotiation of Harvey Weinstein's 2015 contract, or any other alleged disclosures to or decision by the TWC Board.  As a result, there are not—*and cannot be*—any factually-supported claims, either general or specific to either Mr. Lasry or Mr. Jones, that support an inference that they knew (or should have known) anything about Harvey Weinstein's sexual misconduct prior to October 2017, when the issues became public and they resigned from the TWC Board.[66]

For this reason, and for the reasons set forth in this Reply above, the claims against Messrs. Lasry and Jones should be dismissed.  Further, and because Plaintiffs—despite the Court's specific instruction that Plaintiffs re-plead each Defendant's personal involvement— have failed to allege that either Mr. Lasry or Mr. Jones is liable for any of the conduct alleged in the FAC, the claims against them should be dismissed with prejudice.

## XVIII. ADDITIONAL REPLY ARGUMENTS OF DEFENDANT MARK GILL

Mr. Gill joins in all of the arguments made by the Outside Directors.  Additionally, with respect to the statute of limitations, Mr. Gill also joins in the submissions by Miramax and others that refute the Plaintiffs' reliance on the recently passed Child Victims Act.  Notably, there is no

---

[66]     The FAC contains eight numbered paragraphs relating to Mr. Lasry's knowledge and involvement.  *See* FAC ¶¶ 606-613.  Only two of these are unique to him.  The half dozen remaining allegations are copied word-for-word from allegations made against all of the Outside Directors, including those that served on TWC's board much longer than Lasry, and those who had other business interests with Weinstein or TWC.  The two remaining allegations that relate specifically to Mr. Lasry are: (a) that Mr. Lasry and Harvey Weinstein were neighbors and attended the same charitable events and parties (FAC ¶ 607); and (b) that several women were assaulted at family parties at Harvey Weinstein's home at times when Mr. Lasry and his family "may have been present."  FAC ¶ 608.  Neither fact, even if taken as true, supports any inference that Mr. Lasry knew or should have known about Harvey Weinstein's misconduct.

allegation in the FAC that would make that Act applicable to Mr. Gill because there is no

allegation that he committed a "sexual offense" as defined by New York's penal law with respect

to Jane Doe.  And any argument that Mr. Gill falls under this Act by virtue of claims of alleged

negligent supervision, or any of the other torts alleged under a theory of respondent superior,

fails for all of the reasons addressed in the moving and reply brief with respect to those claims.

With respect to all of the counts pertaining to Mr. Gill, the Opposition further

demonstrates Plaintiffs' failure to satisfy Rule 8 by giving him fair notice of the grounds upon

which their claims rely.  Instead, Plaintiffs "lump[] all the defendants together in each claim and

provide[] no factual basis to distinguish their conduct." *Canosa*, 2019 U.S. Dist. LEXIS 13263 at

*24 (internal quotation and citation omitted).  For example, in their Opposition, Plaintiffs refer

generally to "Defendants" as hiring journalists, spies and lawyers to engage in various alleged

wrongdoings, Opp. at 56, but there is not a single allegation that Mr. Gill engaged in any of those

wrongdoings.  Plaintiffs also refer to "Defendants" as having "directly and intentionally

blacklisted them," Opp. at 93, but there is no allegation in the FAC that Mr. Gill played any role

in blacklisting any of the Plaintiffs.  The conclusory boilerplate language repeated throughout the

FAC as to a number of defendants, including Mr. Gill, that he "took affirmative actions to

conceal his knowledge and facilitation of Weinstein's . . . blacklisting of women from Class

Members" does not satisfy Rule 8's pleading requirement, let alone the heightened pleading

requirements of Rule 9 for their RICO claims against him.  Furthermore, for their equitable

estoppel argument, Plaintiffs state that the "Defendants" portrayed Weinstein as the face of "their

company" and then enumerate a list of acts that purportedly stopped them from knowing about

"Defendants' knowledge of Weinstein's abusive behavior."  Opp. at 58.  But none of the

enumerated acts involve Mr. Gill.  Similarly, there is no basis in the complaint to include Mr.

Gill in the broad statement that "Defendants here built an elaborate system to illegally procure

victims' and witnesses' silence." Opp. at 60.  Finally, equally problematic is Plaintiffs' reliance

on general statements about Weinstein's "co-conspirators."  *See, e.g.*, Opp. at 51, 54.

Put simply, the Court should dismiss with prejudice all of the claims against Mr. Gill,

because the FAC is devoid of any allegation that he did *anything* to proximately harm Plaintiffs.

There is no claim that he committed any RICO predicate acts; that he did anything to make

himself part of any RICO conspiracy; that he was *personally* Weinstein's employer; or that he

had any duty to protect third parties such as Plaintiffs from the alleged tortious actions by Harvey

Weinstein.

## XIX.   <u>ADDITIONAL REPLY ARGUMENTS OF DEFENDANT NANCY ASHBROOKE</u>

Plaintiffs' Opposition does not and cannot point to any allegations in the FAC that sustain

viable causes of action against Nancy Ashbrooke, nor does it explain how the FAC satisfies the

essential elements of her various claims against Ms. Ashbrooke.

### A.   **Plaintiffs' Claims Against Ms. Ashbrooke Are Time-Barred**

As demonstrated by the Outside Directors arguments herein, the causes of action in the

FAC, including each and every claim against Ms. Ashbrooke, are time-barred.  Plaintiffs

concede that Ms. Ashbrooke worked for Miramax from 1991 to 2000 and that her "participation

in the Weinstein Sexual Enterprise ended when she departed Miramax in 2000."  FAC ¶ 422.

The FAC does not contain any allegations specific to Ms. Ashbrooke from outside that period of

time.  Thus, because the conduct at issue occurred between 18 and 27 years ago and the FAC

does not allege that Ms. Ashbrooke committed any act that could toll the statute of limitations

against her, Plaintiffs' claims against Ms. Ashbrooke are untimely.

The Opposition makes no attempt to cure this fatal flaw.  It does not argue that Ms.

Ashbrooke engaged in conduct warranting equitable tolling, *e.g.*, acts of duress or fraud, nor

does it point to a single allegation in the FAC showing that Ms. Ashbrooke sought to prevent the Plaintiffs from timely bringing suit.  For these reasons, Plaintiffs are unable to show that any of their time barred claims against Ms. Ashbrooke are tolled by the doctrines of equitable estoppel, duress or continuing violation.

**B.      The Opposition Provides No Basis For Plaintiffs' Common Law Claims Against Ms. Ashbrooke**

As set forth in all the moving papers, an actionable claim for vicarious liability, negligent supervision or ratification would require Plaintiffs to plead that Harvey Weinstein engaged in tortious conduct while employed by Ms. Ashbrooke or while acting as her agent.  *See* Nancy Ashbrooke's Motion to Dismiss (ECF No. 239) ("Ashbrooke Brief") at 3-5; MTD at 56-58, 66-68.  Ms. Ashbrooke's Moving Brief also showed that the FAC lacked any factual allegations sufficient to establish such an employment or agent-principal relationship between herself and Harvey Weinstein.  *Id.*

Plaintiffs' Opposition does nothing to challenge these arguments.  It does not dispute that an employment or agency relationship is a necessary element of the vicarious liability, negligent supervision and/or ratification claims against Ms. Ashbrooke, yet fails to point to any allegations of fact that satisfy this requirement.  Instead, the Opposition argues only that "Miramax was required to dismiss Weinstein if there were any further complaints," while ignoring the fact that Ms. Ashbrooke lacked the authority to do so.  Because Plaintiffs cannot dispute that Ms. Ashbrooke was a subordinate of Harvey Weinstein and did not exercise the level of control over him necessary to justify holding her vicariously liable for his actions, all of the claims requiring an employment or agency relationship must be dismissed.

The Opposition also fails to address well-established New York precedent which deems sexual assault to be outside the scope of employment, as a matter of law. *See* Ashbrooke Brief at 4; MTD at 66.

To the extent applicable, Ms. Ashbrooke relies on and incorporates by reference the Outside Directors' arguments with respect to Plaintiffs' common law claims.

## C.    The Opposition Provides No Basis For A RICO Or RICO Conspiracy Claim Against Ms. Ashbrooke

Plaintiffs' Opposition cannot overcome the fatal flaws in their RICO claims, which were addressed at length in all of the Defendants' moving papers. *See* Ashbrooke Brief at 4; MTD at 28-44. The FAC alleges three predicate acts under 18 U.S.C. § 1961(1): sex trafficking, victim tampering, and mail and wire fraud. However, the FAC does not allege a TVPA claim (Counts I and II) against Ms. Ashbrooke, nor does it sufficiently allege that she knew of, benefitted from, participated in, or engaged in any conduct that *furthered* the alleged sex trafficking venture. As such, sex trafficking cannot serve as a predicate act to support the RICO claims against Ms. Ashbrooke. *Canosa,* 2019 U.S. Dist. LEXIS 13263, at *69 (Recognizing sex trafficking as a predicate act for only those defendants against whom a TVPA claim remained: "[T]he Court has sustained [Plaintiff]'s TVPA claims against Weinstein and the TWC Companies, but not as against Robert Weinstein. Accordingly, sex trafficking is a predicate act only as to Weinstein and the TWC Companies."); *see also Noble*, 335 F. Supp. 3d at 524.

The Opposition also fails to address the lack of allegations in the FAC that could possibly constitute violations of the federal witness tampering statute by Ms. Ashbrooke. As noted in her Moving Brief (pages 4-5), the FAC does not allege that Ms. Ashbrooke intentionally harassed or used physical force, threats, coercion, intimidation or persuasion, 18 U.S.C. § 1512, to prevent the Plaintiffs from reporting Weinstein's abuse to law enforcement. Instead, it offers the

conclusory allegation that "certain Defendants tampered with one or more victim in violation of 18 U.S.C. § 1512" (FAC ¶ 805)—yet only identifies threats purportedly made by Harvey Weinstein (FAC ¶ 807).  Ms. Ashbrooke's Moving Brief made clear that these allegations, absent more, lack the specificity required to demonstrate that she engaged in any acts of victim tampering.  Accordingly, victim tampering cannot serve as a predicate RICO act against her. *Canosa,* 2019 U.S. Dist. LEXIS 13263, at *68*; Miller*, 2007 WL 4207282, at *7.

As support for the predicate acts of mail and wire fraud, the FAC alleges "transmission, delivery or shipment of the following by the Defendants or third parties" and then lists a variety of documents including communications with "the Law Firms" and "Intelligence Participants." *See* FAC ¶¶ 808-812.  This exact theory was just rejected by Judge Engelmayer, who held that the near identical allegations contained in the *Canosa* complaint lacked "any facts supporting a claim of mail and wire fraud, let alone by the defendants named in the RICO counts."  2019 U.S. Dist. LEXIS 13263, at *70.  Moreover, despite its inability to meet the standard of specificity required for pleading acts of mail or wire fraud generally, the FAC also lacks any allegations of mail or wire fraud specific to Ms. Ashbrooke.  *See DiVittorio*, 822 F.2d at 1247.  The Opposition does nothing to cure these pleading deficiencies.

Thus, because the FAC does not identify a single predicate RICO act committed by Ms. Ashbrooke, Plaintiffs' RICO claims against her must be dismissed as a matter of law.

Ms. Ashbrooke also relies on and incorporates by reference the Outside Directors' arguments regarding Plaintiffs' lack of RICO standing and failure to allege the existence of a RICO enterprise.  *See* Sections III(B) and III(D), *supra*.

Dated: February 28, 2019     Respectfully submitted,

By: /s/ Marvin S. Putnam
   Marvin S. Putnam
   (marvin.putnam@lw.com)
   Laura R. Washington (*pro hac vice*)
   (laura.washington@lw.com)
   LATHAM & WATKINS LLP
   10250 Constellation Blvd., Suite 1100
   Los Angeles, California 90067
   Telephone: (424) 653-5588
   Fax: (424) 653-5501

   *Attorneys for Defendants Tim Sarnoff and*
   *Miramax Film NY, LLC*

Electronic signatures used with consent in accordance with Rule 8.5(b) of the Court's ECF Rules and Instructions:

By: /s/ James V. Masella, III
   James V. Masella, III (jmasella@pbwt.com)
   Melissa Ginsberg (mginsberg@pbwt.com)
   PATTERSON BELKNAP WEBB &
   TYLER LLP
   1133 Avenue of the Americas
   New York, New York 10036
   Telephone: (212) 336-2000
   Fax: (212) 336-2222

   *Attorneys for Defendant Paul Tudor Jones*

By: /s/ Brad S. Karp
   Brad S. Karp (bkarp@paulweiss.com)
   Roberto Finzi (rfinzi@paulweiss.com)
   Sara F. Nichols (snichols@paulweiss.com)
   PAUL, WEISS, RIFKIND, WHARTON &
   GARRISON LLP
   1285 Avenue of the Americas
   New York, New York 10019
   Telephone: (212) 373-3000
   Fax: (212) 757-3990

   *Attorneys for Defendant Marc Lasry*

By:      /s/ Lawrence S. Spiegel
         Lawrence S. Spiegel
         (lawrence.spiegel@skadden.com)
         Abigail E. Davis
         (abigail.sheehan@skadden.com)
         SKADDEN, ARPS, SLATE, MEAGHER &
         FLOM LLP
         4 Times Square
         New York, New York 10036
         Telephone: (212) 735-3000
         Fax: (212) 735-2000

         *Attorneys for Defendant Dirk Ziff*


By:      /s/ John J. Rosenberg
         John J. Rosenberg
         (jrosenberg@rglawpc.com)
         Brett T. Perala
         (bperala@rglawpc.com)
         ROSENBERG & GIGER P.C.
         250 Park Avenue
         12th Floor
         New York, NY  10177
         Telephone: (646) 494-5000
         Fax: (646) 595-0590

         *Attorneys for Defendant James Dolan*


By:      /s/ Gerald L. Maatman
         Gerald L. Maatman, Jr.
         (gmaatman@seyfarth.com)
         Karen Y. Bitar
         (kbitar@seyfarth.com)
         Lisa L. Savadjian
         (LSavadjian@seyfarth.com)
         SEYFARTH SHAW LLP
         620 Eighth Avenue
         New York, New York 10018
         Telephone: (212) 218-5500
         Fax: (212) 218-5526

         *Attorneys for The Weinstein Company
         Holdings, LLC*

94

By:      /s/ Evan R. Chesler
         Evan R. Chesler
         (echesler@cravath.com)
         J. Wesley Earnhardt
         (wearnhardt@cravath.com)
         CRAVATH, SWAINE & MOORE LLP
         825 Eighth Avenue
         New York, New York 10019
         Telephone: (212) 474-1000
         Fax: (212) 474-3700

         *Attorneys for Defendants The Walt Disney
         Company, Disney Enterprises, Inc., Buena
         Vista International, Inc. and Michael Eisner*

By:      /s/ Barry A. Bohrer
         Barry A. Bohrer
         (barry.bohrer@srz.com)
         Gary Stein
         (gary.stein@srz.com)
         Brian T. Kohn
         (brian.kohn@srz.com)
         SCHULTE ROTH & ZABEL LLP
         919 Third Avenue
         New York, New York 10022
         Telephone: (212) 756-2000
         Fax: (212) 593-5955

         *Attorneys for Defendant Robert Weinstein*

By:      /s/ Israel David
         Israel David
         (israel.david@friedfrank.com)
         James D. Wareham
         (james.wareham@friedfrank.com)
         Anne S. Aufhauser
         (anne.aufhauser@friedfrank.com)
         FRIED, FRANK, HARRIS, SHRIVER &
         JACOBSON LLP
         One New York Plaza
         New York, New York 10004
         Telephone: (212) 859-8218
         Fax: (212) 859-4000

         *Attorneys for Defendants Lance Maerov and
         Jeff Sackman*

By: /s/ John C. Scalzo
   John C. Scalzo
   (jscalzo@reedsmith.com)
   Jonathan P. Gordon
   (jonathan.gordon@reedsmith.com)
   REED SMITH LLP
   599 Lexington Avenue
   New York, New York 10022
   Telephone: (212) 521-5400
   Fax: (212) 521-5450

   *Attorneys for Defendant Richard*
   *Koenigsberg*

By: /s/ Silvia L. Serpe
   Silvia L. Serpe
   (sserpe@serperyan.com)
   SERPE RYAN LLC
   16 Madison Sq. West
   New York, New York 10010
   Telephone: (212) 257-5010
   Fax: (212) 981-2720

   *Attorneys for Defendant Mark Gill*

By: /s/ Helene R. Hechtkopf
   Helene R. Hechtkopf
   (hhechtkopf@hnrklaw.com)
   Allison Angel
   (aangel@hnrklaw.com)
   HOGUET NEWMAN REGAL &
   KENNEY, LLP
   60 East 42nd Street, 48th Floor
   New York, New York 10165
   Telephone: (212) 689-8808
   Fax: (212) 689-5101

   *Attorneys for Defendant Nancy Ashbrooke*