**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all other similarly situated,<br><br>　　　　　　　　　　　Plaintiffs,<br><br>　　　　v.<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX FILM NY, LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., BUENA VISTA INTERNATIONAL, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, BARBARA SCHNEEWEISS, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive<br><br>　　　　　　　　　　　Defendants. | 17-cv-9554 (AKH-BCM)<br><br><br>**ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TARAK BEN AMMAR'S MOTION TO DISMISS THE FIRST AMENDED CLASS ACTION COMPLAINT BASED UPON (1) LACK OF PERSONAL JURISDICTION AND (2) FAILURE TO STATE A CLAIM**

# TABLE OF CONTENTS

**Page**

I.    PRELIMINARY STATEMENT. ...................................................................................1

II.   PLAINTIFFS' STATEMENT OF THE FACTS. ...............................................................4

      A.   Mr. Ben Ammar's Claimed "Role and Knowledge." ....................................................4

      B.   Mr. Ben Ammar's Claimed "Purposeful Connection to New York." ..........................4

III.  PLAINTIFFS HAVE NOT DISPUTED THAT THE PERSONAL JURISDICTION DETERMINATION MUST BE BASED ON THE CLAIMS OF NAMED CLASS MEMBERS. ...................................................................................................................6

IV.  PLAINTIFFS HAVE NOT ESTABLISHED A BASIS FOR JURISDICTIONAL DISCOVERY ............................................................................................................7

V.   THE COURT SHOULD DISMISS THE FAC AS AGAINST MR. BEN AMMAR BASED UPON LACK OF PERSONAL JURISDICTION. ................................................8

      A.   Mr. Ben Ammar is Not Subject to Personal Jurisdiction Under New York's Long Arm Statute. ................................................................................................9

          1.   No Jurisdiction Exists Under Section 302(a)(1). ...........................................9

          2.   No Jurisdiction Exists Under Section 302(a)(2) Because Mr. Ben Ammar Did Not Commit a Tortious Act While Physically in New York. ....................................13

          3.   No Jurisdiction Exists Under Section 302(a)(3). ........................................14

      B.   Mr. Ben Ammar is Not Subject to Personal Jurisdiction on the RICO Claim. ...........16

VI.  THE FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BASED UPON THE GROUNDS ASSERTED BY THE MOVING DEFENDANTS AND THOSE SET FORTH HEREIN. ...............................................................................16

      A.   Because Plaintiffs Allege that Harvey Weinstein was Acting Within the Scope of His Employment and Have Not Alleged Facts Sufficient to Demonstrate Gross Negligence on the Part of Mr. Ben Ammar or the Other Outside Board Representatives, They Have Not Stated a Claim For Negligent Supervision and Retention. ..........................................................................................16

      B.   Plaintiffs' State Law Claims Fail Because the FAC Does Not Allege Any Facts to Contradict the Limited Duties and Powers of Board Representatives of a Delaware Limited Liability Company. ..............................................................18

VII.  CONCLUSION ......................................................................................................20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*Alicea v. Lasar Mfg. Co.*,
   No. 91-CV-3929 (JFK),
   1992 U.S. Dist. LEXIS 13027 (S.D.N.Y. Aug. 31, 1992) ....................................................7

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009).......................................................................................7, 8

*Barnville v. Mimosa Cafe*,
   No. 1:14–CV–518–GHW,
   2014 WL 3582878 (S.D.N.Y. July 10, 2014) ..............................................................17, 18

*Bensusan Restaurant Corp. v. King*,
   126 F.3d 25 (2d Cir. 1997).................................................................................................13

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
   No. 12 Civ. 9258(ALC),
   2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014) ....................................................................8

*Charas v. Sand Tech. Sys. Int'l, Inc.*,
   No. 90 Civ. 5638, 1992 WL 296406 (S.D.N.Y. Oct. 7, 1992) .......................................9, 15

*D'Amico v. Christie*,
   71 N.Y.2d 76, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901 (1987)...............................................19

*Ehrens v. Lutheran Church*,
   385 F.3d 232 (2d Cir. 2004)................................................................................................18

*Famular v. Whirlpool Corp.*,
   16 CV 944 (VB), 2017 WL 2470844 (S.D.N.Y. Jun. 6, 2017) ............................................6

*Fonte v. Board of Managers*,
   848 F.2d 24 (2d Cir. 1988)..................................................................................................17

*Giuliano v. Barch*,
   No. 16 CV 0859 (NSR),
   2017 WL 1234042 (S.D.N.Y. Mar. 31, 2017) ...........................................................8, 9, 15

*Goland v. Iglesias*,
   No. 85 Civ. 9697 (SWK),
   1988 U.S. Dist. LEXIS 3528 (S.D.N.Y. Apr. 21, 1988)...............................................12, 14

4825-7240-0777

## TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

*Henderson v. UPS*,
252 A.D.2d 865, 675 N.Y.S.2d 715 (3d Dep't 1998) ...........................................................18

*Holman v. Indiana*,
211 F.3d 399 (7th Cir. 2000) ..................................................................................................16

*In re Dental Supplies Antitrust Litig.*,
16 Civ. 696 (BMC) (GRB),
2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ............................................................9, 10

*Int'l Customs Assocs., Inc. v. Ford Motor Co.*,
893 F. Supp. 1251 (S.D.N.Y. 1995),
*aff'd*, 201 F.3d 431 (2d Cir. 1999) ..................................................................................10

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*,
631 F.3d 436 (7th Cir. 2011) ..................................................................................................16

*United States v. Swiss Am. Bank, Ltd.*,
274 F.3d 610 (1st Cir. 2001) .....................................................................................................7

*United Techs. Corp. v. Mazer*,
556 F.3d 1260 (11th Cir. 2009) ................................................................................................7

### STATUTES

N.Y. C.P.L.R. § 301 ........................................................................................................................9

N.Y. C.P.L.R. § 302(a) ....................................................................................................................1

N.Y. C.P.L.R. § 302(a)(1)....................................................................................................9, 11, 12

N.Y. C.P.L.R. § 302(a)(2)....................................................................................................9, 13, 14

N.Y. C.P.L.R. § 302(a)(3).............................................................................................................9

N.Y. C.P.L.R. § 302(a)(3)(i).......................................................................................................14

N.Y. C.P.L.R. § 302(a)(3)(ii)................................................................................................14, 15

N.Y. C.P.L.R. § 302(a)(4).............................................................................................................9

4825-7240-0777

# TABLE OF AUTHORITIES
### (cont'd)

**Page(s)**

## RULES

Fed. R. Civ. P. 8(d) ...........................................................................................................16

Fed. R. Civ. P. 12(b)(2).......................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 17

Defendant Tarak Ben Ammar ("Mr. Ben Ammar") respectfully submits this reply memorandum of law in support of his motion to dismiss [Dkt. 255] Plaintiffs' First Amended Class Action Complaint [Dkt. 140] (the "FAC") as against him based upon (1) lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) and (2) failure to state a claim pursuant to Fed. R. Civ P. 12(b)(6).[1]

## I.    PRELIMINARY STATEMENT.

Plaintiffs do not address – let alone dispute – most of the key legal points raised by Mr. Ben Ammar's motion to dismiss based upon lack of personal jurisdiction.  For example, they concede through their silence that:

(1)    Personal jurisdiction in the context of a class action lawsuit must be determined based solely upon the claims of the named plaintiffs.  *See* Dkt. 255 at 12.  Thus, Mr. Ben Ammar's contacts with New York after 2011 are irrelevant to the issue of specific personal jurisdiction.

(2)    Personal jurisdiction over Mr. Ben Ammar must be based on his personal contacts with the forum, not acts carried out from outside New York in his capacity as a board representative of The Weinstein Company Holdings, LLC ("TWC").  *See id.* at 13.  In particular, personal jurisdiction under N.Y. C.P.L.R. § 302(a) cannot be sustained based solely on the basis of a defendant's

---

[1]  Mr. Ben Ammar hereby joins in, and incorporates by reference, the Reply Brief in Support of Motion to Dismiss the First Amended Class Action Complaint [Dkt. 264] filed on February 28, 2019 by Defendants The Weinstein Company Holdings, LLC, Miramax Film NY, LLC, the Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc Lasry, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, James Dolan, and Michael Eisner (together the "Moving Defendants").

1

communications from outside of New York with a party in New York.  *See* Dkt. 255 at 17.

(3)     Personal jurisdiction cannot be predicated upon the alleged failure of a person located outside of New York to monitor a company's affairs inside New York.  *See id.* at 13-14.

(4)     Specific personal jurisdiction must be predicated upon contacts with New York that are related to the claims at issue.  *See id.* at 16-17. Accordingly, Mr. Ben Ammar's contacts with New York with regard to TWC are irrelevant to the personal jurisdiction inquiry except insofar as such contacts involved Harvey Weinstein's employment agreements or any claims of misconduct by him.[2]  (As demonstrated in Mr. Ben Ammar's motion, none of his contacts with New York involved either.)

For the reasons discussed in the Moving Defendants' opening and reply briefs on their motions to dismiss, *see* Dkts. 199, 264, Plaintiffs have not stated a claim on their state law claims.  Nor have Plaintiffs refuted the additional arguments for dismissal of those claims raised by Mr. Ben Ammar.  First, Plaintiffs do not dispute that they cannot bring a claim for negligent supervision and retention based upon Harvey Weinstein's alleged conduct within the scope of his

---

[2]  Plaintiffs filed a corrected brief after counsel for Defendants told counsel for Plaintiffs that Plaintiffs' original opposition brief confused A-1 International Investments B.V. ("AII") – the Netherlands company that designated Mr. Ben Ammar as a TWC Board representative – with a British Virgin Islands company named A1 International Holdings (BVI) Limited ("A1 Holdings") that made a $45 million loan to TWC in 2016.  However, the corrected brief does not fully correct this error, stating in the Introduction that "Ben Ammar was placed on the TWC Board to protect a $45 million loan made by" AII and that he "stood to derive economic benefit from the loan made in New York that he was protecting."  Dkt. 268 at 1.  *See id.* at 11.  It was A1 Holdings – not AII – that made the $45 million loan; Mr. Ben Ammar has no connection to A1 Holdings.

2

employment, absent gross negligence.  While Plaintiffs note that they can plead claims in the alternative, the FAC does not do so.  Furthermore, Mr. Ben Ammar's alleged inaction simply does not rise to the level of gross negligence required for Plaintiffs to bring a claim for negligent supervision and retention based upon claimed conduct of Harvey Weinstein alleged by Plaintiffs to be within the scope of his employment.

Second, Plaintiffs attempt to rely upon the claimed duties of directors of a corporation (duties which are, for the reasons shown by the Moving Defendants, inadequate to support Plaintiffs' claims), and fail to respond to Mr. Ben Ammar's showing that under Delaware law the board representatives of a Delaware limited liability company – unlike the directors of a Delaware corporation – have only the authority that is conferred upon them by the limited liability company agreement.  Because the FAC includes no allegations as to any management authority that had been delegated to the Board with regard to any oversight of Harvey Weinstein, Plaintiffs have not alleged the duty that is the necessary predicate to Count IV for Negligent Supervision and Retention.  Similarly, because the FAC includes no allegations that could support a finding that the Outside Board Representatives were the employers of Harvey Weinstein or were in a principal-agent relationship with him, Plaintiffs have not stated a claim on Count VIII for Civil Battery, Count X for Assault, Count XII for False Imprisonment, Count XIV for Intentional Infliction of Emotional Distress, Count XVI for Negligent Infliction of Emotional Distress, and Count XVIII for Ratification.[3]

_____

[3]  Plaintiffs' brief combines arguments in response to the motions to dismiss filed by Mr. Ben Ammar and Barbara Schneeweiss, even though the legal issues and arguments raised by Ms. Schneeweiss have virtually no overlap with those raised by Mr. Ben Ammar.  Mr. Ben Ammar will not be responding to the portions of Plaintiffs' brief that are directed solely towards Ms. Schneeweiss.  *See* Dkt. 268 at 2-3, 18-20, 23-25.  Furthermore, Mr. Ben Ammar will not be responding to the portions of Plaintiffs' brief that are directed towards the issue whether the exercise of personal jurisdiction would comport with Constitutional due process requirements,

4825-7240-0777

## II.    PLAINTIFFS' STATEMENT OF THE FACTS.

Plaintiffs do not dispute, or directly respond to, Mr. Ben Ammar's statement of the factual background. *See* Dkt. 255 at 4-11. Instead, Plaintiffs provide their own summary of facts. *See* Dkt. 268 at 3-5. Plaintiffs overstate their allegations as to Mr. Ben Ammar and fail to support the alleged facts relevant to the jurisdictional motion with admissible evidence, as required.

### A.    Mr. Ben Ammar's Claimed "Role and Knowledge."

In reciting Mr. Ben Ammar's claimed "[r]ole and knowledge," Plaintiffs rely largely upon claimed conduct in and after 2015, and fail to argue that the exercise of specific personal jurisdiction is appropriate based upon conduct during the period that is of relevance to the specific personal jurisdiction inquiry – in and prior to 2008 (for plaintiffs Louisette Geiss, Sarah Ann Thomas, and Jane Doe) and 2011 (for plaintiff Melissa Thompson). *See id.* at 3-4.

### B.    Mr. Ben Ammar's Claimed "Purposeful Connection to New York."

Plaintiffs overstate and misstate Mr. Ben Ammar's claimed "[p]urposeful connection to New York." Dkt. 268 at 4-5. First, Plaintiffs make no attempt to distinguish Mr. Ben Ammar's visits to New York or participation in TWC Board meetings before 2008/2011, the relevant period for the personal jurisdiction inquiry, from visits or meetings after that time. *See id.* at 4-5. By doing so, Plaintiffs mistakenly double Mr. Ben Ammar's visits to New York and participation in Board meetings during the relevant time period.[4]  Furthermore, Plaintiffs do not

---

*see id.* at 6-7, 15-17, because his motion to dismiss for lack of personal jurisdiction is based on the more restrictive New York long-arm statute, not Constitutional grounds, *see* Dkt. 255 at 12 n.5.

[4]  While Plaintiffs assert that Mr. Ben Ammar "attended TWC Board meetings via telephone 60 times between 2005 and 2018," Dkt. 261 at 5 (footnote omitted), the undisputed evidence shows that about 41 meetings occurred from 2012 through 2018 (with 24 of those meetings after

4

dispute that Mr. Ben Ammar's limited visits to New York during the relevant time period did not involve Harvey Weinstein's conduct or his employment agreement.

Second, Plaintiffs make no showing that Mr. Ben Ammar's two visits to the United States with regard to *Hannibal Rising* in 2006 and 2007 were in any way tied to the management of TWC; the fact that TWC owned U.S. distribution rights to *Hannibal Rising*, *see id.*, does not establish such a nexus.

Third, Plaintiffs note that "[i]n the TWC bankruptcy proceedings, Ben Ammar submitted a proof of claim, individually, claiming that TWC owes him no less than $232,982 as of December  31, 2018, and asserting, *inter alia*, 'common law rights of indemnity, contribution and/or reimbursement' for certain fees and costs."[5]  *Id.* at 5.  *See* Corrected Declaration of Elizabeth A. Fegen, Ex. 4 [Dkt. 269-4].  However, Plaintiffs make no attempt to explain how specific personal jurisdiction in New York with regard to alleged conduct occurring in and prior to 2008/2011 could be established by submission of a proof of claim in 2019 in Bankruptcy Court in Delaware seeking to enforce indemnification obligations owed under Delaware law.

---

Harvey Weinstein's resignation from the TWC Board).  *See* Declaration of Tarak Ben Ammar, ¶¶ 24-26 [Dkt. 256].

[5]  In an apparent attempt to conceal the fact that Mr. Ben Ammar's proof of claim seeks relief based upon Delaware law – not New York law – Plaintiffs fail to mention that the proof of claim seeks relief based upon the LLC Agreement (which is subject to Delaware law) and statute (that of Delaware).  *See* Proof of Claim at 4, ¶ 9 ("Claimant hereby asserts claims against TWCH, without limitation, based on or arising from: (i) ***the LLC Agreement*** (including, without limitation, the Debtor's rejection, future rejection, breach, future breach, modification, future modification, amendment, or future amendment thereof), (ii) Claimant's ***contractual, statutory***, or common law rights of indemnity, contribution, and/or reimbursement for amounts that have been or may be incurred, liquidated, unliquidated, paid, unpaid, fixed, or contingent . . . .") (emphasis added).  The common law rights also arise under Delaware law.

4825-7240-0777

## III.    **PLAINTIFFS HAVE NOT DISPUTED THAT THE PERSONAL JURISDICTION DETERMINATION MUST BE BASED ON THE CLAIMS OF NAMED CLASS MEMBERS.**

Plaintiffs acknowledge that the issue of personal jurisdiction must be determined separately for each claim asserted in the FAC, *see* Dkt. 268 at 5, but they neither address nor dispute the authority cited by Mr. Ben Ammar for the proposition that in a putative class action "'personal jurisdiction over each defendant is assessed with respect to the named plaintiffs' causes of action.'"  Dkt. 255 at 12 (quoting *Famular v. Whirlpool Corp.*, 16 CV 944 (VB), 2017 WL 2470844, *2 (S.D.N.Y. Jun. 6, 2017)).  Thus, under the applicable law, Mr. Ben Ammar's alleged knowledge, action, and inaction after 2011 is irrelevant to the inquiry into specific personal jurisdiction.

In his motion, Mr. Ben Ammar stated that "[b]ecause there is no personal jurisdiction over Mr. Ben Ammar under the New York long-arm statute, he will not brief the issue whether the exercise of personal jurisdiction over him would comport with due process under the United States Constitution."  Dkt. 255 at 12 n. 5.  Nevertheless, Plaintiffs devote several pages to the argument that exercising personal jurisdiction over Mr. Ben Ammar would somehow be consistent with traditional notions of fair play and substantial justice, the standard for due process under the United States Constitution.  *See* Dkt. 268 at 6-7, 15-17.  Because there can be no personal jurisdiction over Mr. Ben Ammar if the requirements of the long-arm statute are not met regardless of whether the exercise of personal jurisdiction would satisfy due process, there is no reason to reach the due process issue.  Accordingly, Mr. Ben Ammar will not burden the Court by briefing a ground on which he did not base his motion and that is unnecessary to its resolution.

4825-7240-0777

## IV.   <u>PLAINTIFFS HAVE NOT ESTABLISHED A BASIS FOR JURISDICTIONAL DISCOVERY</u>.

Plaintiffs conclusorily ask the Court to grant them leave to conduct jurisdictional discovery in the event that the evidence before the Court is found insufficient to support an exercise of personal jurisdiction.  *See* Dkt. 268 at 6.  However, Plaintiffs have made no attempt to identify the facts towards which such discovery would be directed.  *See*, *e.g.*, *Alicea v. Lasar Mfg. Co.*, No. 91-CV-3929 (JFK), 1992 U.S. Dist. LEXIS 13027, *5 (S.D.N.Y. Aug. 31, 1992) ("to withstand a motion to dismiss at this stage and qualify for an order of discovery, plaintiffs must show that their position is not frivolous and that they have made a sufficient start toward establishing personal jurisdiction"; "***[t]o make such a showing, plaintiffs must show that facts supporting personal jurisdiction may exist that discovery would educe***") (emphasis added). Because Plaintiffs have failed to identify any facts that might exist that could support personal jurisdiction, the Court should grant the motion to dismiss based upon lack of personal jurisdiction without jurisdictional discovery.  *See United States v. Swiss Am. Bank, Ltd.*, 274 F.3d 610, 625-27 (1st Cir. 2001) ("in addition to presenting a colorable claim, a plaintiff must be diligent in preserving his rights to be entitled to jurisdictional discovery"; "[t]his includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted").

Furthermore, the court may deny jurisdictional discovery where, as here, a party "never formally moved the district court for jurisdictional discovery but, instead, buried such requests in its briefs as a proposed alternative to dismissing [the defendant] on the state of the current record."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1280-81 (11th Cir. 2009).  *See Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1022-23 (Fed. Cir. 2009)

(affirming denial of jurisdictional discovery where the "required formal motion" was not filed, although jurisdictional discovery was requested in the opposition and at oral argument).

## V.   THE COURT SHOULD DISMISS THE FAC AS AGAINST MR. BEN AMMAR BASED UPON LACK OF PERSONAL JURISDICTION.

Plaintiffs do not dispute Mr. Ben Ammar's showing that the New York courts that have considered the issue whether a non-resident is subject to personal jurisdiction for actions taken in his or her capacity as a director or officer have generally done so by reference to general principles of personal jurisdiction law, rather than in the framework of the New York long-arm statute.  *See* Dkt. 255 at 13.  Nor do they discuss any of the cases cited by Mr. Ben Ammar that have addressed jurisdiction over corporate directors or officers without reference to specific provisions of the long-arm statute.  *See id.* at 13-14.  That undisputed authority requires dismissal based upon lack of personal jurisdiction, without proceeding to the long-arm statute.

The following three related legal propositions are undisputed:

(1)      "'Jurisdiction over a corporation's board member, officer or employee, in his or her individual capacity, must be premised on the defendant's own personal contacts with the forum, and not the acts and/or contacts carried out by the defendant in his or her corporate capacity.'"  Dkt. 255 at 13 (quoting *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258(ALC), 2014 WL 1331046, *5 (S.D.N.Y. Mar. 31, 2014)).

(2)      "[B]oard members' "failures in their corporate capacity do not give rise [to] personal jurisdiction over directors where none otherwise lies." *Id.* at 13-14 (quoting *Giuliano v. Barch*, No. 16 CV 0859 (NSR), 2017 WL 1234042, *12 n. 23 (S.D.N.Y. Mar. 31, 2017)).

8

(3)     There is "'no personal jurisdiction over [a] former outside director "charged with failing to monitor [a corporation's] affairs and thereby permitting the fraudulent activities to continue.'"" *Id.* (quoting *Giuliano*, 2017 WL 1234042, *12 n. 23 (quoting *Charas v. Sand Tech. Sys. Int'l, Inc.*, No. 90 Civ. 5638, 1992 WL 296406, *4 (S.D.N.Y. Oct. 7, 1992)).

Under this authority, as a matter of law, personal jurisdiction cannot be sustained over Mr. Ben Ammar based upon: (1) his phone-call participation from outside of New York in TWC Board meetings in New York in his capacity as a Board representative of TWC (such participation does not constitute personal contacts for purposes of personal jurisdiction); or (2) his alleged failure outside of New York to monitor Harvey Weinstein's conduct.

### A.      Mr. Ben Ammar is Not Subject to Personal Jurisdiction Under New York's Long Arm Statute.

Plaintiffs agree that Mr. Ben Ammar is not subject to general jurisdiction under N.Y. C.P.L.R. § 301.  *See* Dkt. 268 at 7.  Plaintiffs do not dispute Mr. Ben Ammar's showing, *see* Dkt. 255 at 20, that he is not subject to specific personal jurisdiction under N.Y. C.P.L.R. § 302(a)(4). Instead, they argue that he is subject to specific personal jurisdiction under N.Y. C.P.L.R. §§ 302(a)(1), (2), and (3).  *See* Dkt. 268 at 7-15.

### 1.      No Jurisdiction Exists Under Section 302(a)(1).

**Claimed Personal Contacts with New York.**  Plaintiffs assert that "Section 302(a)(1) of New York's long-arm statute provides in relevant part that a court may exercise jurisdiction over a non-domiciliary who 'transacts any business within the state.'"  Dkt. 268 at 8 (quoting Section 302(a)(1)) (footnote omitted).  However, Plaintiffs do not and cannot dispute Mr. Ben Ammar's showing, *see* Dkt. 255 at 16, that for there to be personal jurisdiction under Section 302(a)(1), "'the claim asserted must arise from that business activity.'"  *In re Dental Supplies Antitrust*

9

*Litig.*, 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115, *4 (E.D.N.Y. Sept. 20, 2017) (citation

omitted).  Instead, Plaintiffs focus on the first requirement, and largely ignore the second

requirement.

Plaintiffs also do not dispute that personal jurisdiction over Mr. Ben Ammar must be

determined based upon the named class members, or that, as a result: (1) Mr. Ben Ammar's post-

2008 contacts with New York are relevant to personal jurisdiction only as to Ms. Thompson; and

(2) his post-2011 contacts with New York are not relevant to the personal jurisdiction inquiry at

all.  Instead, Plaintiffs lump together all of Mr. Ben Ammar's visits to, and telephone calls to,

New York.  *See* Dkt. 268 at 8-10.  Mr. Ben Ammar's visits to New York in 2013, 2015, and

2017 are irrelevant to the personal jurisdiction inquiry, as is his participation in TWC Board

meetings from 2012 through 2018.[6]  *See supra* at 4-6 & n. 4.

Furthermore, Plaintiffs have offered no authority to support the contention that Mr. Ben

Ammar's telephonic participation in TWC Board meetings constitutes the transaction of business

in New York.  Nor have they disputed Mr. Ben Ammar's authority to the contrary.  *See Int'l*

*Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1261-62 (S.D.N.Y. 1995)

("[t]elephone calls and correspondence sent into New York, by a non-domiciliary defendant who

is outside New York, generally are insufficient to establish personal jurisdiction") (collecting

cases), *aff'd*, 201 F.3d 431 (2d Cir. 1999).

Plaintiffs argue that "Ben Ammar has filed a proof of claim in the TWC bankruptcy

seeking monies purportedly owed."  Dkt. 268 at 9 (footnote omitted).  They do not, however,

explain how the filing of a proof of claim in Delaware Bankruptcy Court in 2019 to seek

---

[6]  Plaintiffs offer no explanation as to how personal jurisdiction could be established by the fact
that Mr. Ben Ammar made two trips to New York in connection with *Hannibal Rising* simply
because TWC owned U.S. distribution rights for the film.  *See* Dkt. 268 at 9.

4825-7240-0777

indemnification from TWC against claims including those asserted by Plaintiffs is relevant to the existence of personal jurisdiction in New York based upon events that allegedly occurred long before such filing.

Thus, Plaintiffs' attempt to assert personal jurisdiction over Mr. Ben Ammar under Section 302(a)(1) based upon his personal contacts with New York is based upon his attendance at two TWC Board meetings (in 2005 and 2009) and meetings with TWC personnel (including Harvey Weinstein) that occurred on three trips to New York in 2007, 2008, and 2009. However, Plaintiffs do not dispute that Harvey Weinstein's conduct and his employment agreement were not discussed at any of those meetings.

Plaintiffs claim that these visits "bear a substantial relationship with all of the claims for oversight or ratification of, or complicity in, Harvey Weinstein's actions" and "bear the requisite relationship to the facts Ben Ammar 'knew or should have known.'" Dkt. 268 at 10. However, Plaintiffs cite no authority in support of their implicit contention that an alleged tort involving a claimed failure to act occurs every time that the defendant fails to act. Nor do they dispute Mr. Ben Ammar's authority, *see* Dkt. 255 at 13-14, demonstrating that personal jurisdiction is not created by alleged inaction that is claimed to have allowed improper conduct to continue.

**Claimed Agency.** In arguing that the Court may exercise personal jurisdiction over Mr. Ben Ammar based upon the theory that TWC acted as Mr. Ben Ammar's agent, *see* Dkt. 268 at 10-12, Plaintiffs misstate the law and evidence a fundamental misunderstanding of the management of limited liability companies (and corporations).

Plaintiffs argue that "[i]n order to establish that TWC served as Ben Ammar's agent in New York, Plaintiffs must show that (1) TWC engaged in purposeful activities in New York (2) for the benefit of and with the knowledge and consent of Ben Ammar, and (3) Ben Ammar

11

exercised some control over the corporation in that transaction." Dkt. 268 at 10-12.  Plaintiffs

are wrong on all three grounds.

First, Plaintiffs miss the point in arguing that "there can be no dispute that TWC engaged

in purposeful activities in New York by producing movies and television shows, as well as by

employing Weinstein in New York." *Id.* at 11.  As Plaintiffs concede, the "purposeful activities"

must be "in relation to the 'transaction.'" *See id.* at 10-11.  The activities identified by Plaintiffs

were not in relation to the "transaction," and the alleged negligence in supervising Harvey

Weinstein was not purposeful.

Second, as stated in *Goland v. Iglesias*, No. 85 Civ. 9697 (SWK), 1988 U.S. Dist. LEXIS

3528, *10 (S.D.N.Y. Apr. 21, 1988), a case heavily relied upon by Plaintiffs, *see* Dkt. 268 at 12-

13, for there to be personal jurisdiction based upon an agency theory under Section 302(a)(1),

"the agent must not be acting in its own interest, but must act for the ***sole benefit*** of its

principal." *Goland*, 1988 U.S. Dist. LEXIS 3528, *10 (emphasis added).  Plaintiffs do not and

cannot assert that TWC was acting not in its own interest, but for the sole benefit of Mr. Ben

Ammar, who was one of numerous TWC Board representatives.  Furthermore, by claiming that

companies affiliated with Mr. Ben Ammar benefited from TWC's continued operation,[7] *see* Dkt.

268 at 11, Plaintiffs disregard the fact that the determination whether there is personal

jurisdiction over an individual must focus on the benefit to an individual, not to a company with

which the individual is involved.  The benefit element is therefore not satisfied.

---

[7]  As noted above, *see supra* at 2 n. 2, Plaintiffs have failed to correct the incorrect statement, *see* Dkt. 268 at 11, that AII made a $45 million loan to TWC.  A-1 Holding, a company unrelated to Mr. Ben Ammar, made this loan.  Similarly, there is no factual basis for Plaintiffs' contention, *see id.*, that Mr. Ben Ammar was placed on the Board to protect "his personal investment."  Mr. Ben Ammar had no "personal investment" in TWC.

  Nor does the FAC allege that Mr. Ben Ammar "directed TWC to take actions to protect Harvey Weinstein."  *Id.*  At most, the FAC alleges inaction by Mr. Ben Ammar.

Third, Plaintiffs have made no attempt to refute Mr. Ben Ammar's showing that under the Delaware Limited Liability Company Act, a Delaware limited liability company is by default managed by its members – not its Board – unless the limited liability company agreement provides otherwise.  Thus, Plaintiffs have made no allegations that, under the applicable law, the Board as a whole exercised control over Harvey Weinstein's alleged conduct during the relevant time period, let alone that Mr. Ben Ammar, as an individual Board member, exercised sufficient control that TWC could be treated as his agent for purposes of personal jurisdiction (or otherwise).

### 2.      No Jurisdiction Exists Under Section 302(a)(2) Because Mr. Ben Ammar Did Not Commit a Tortious Act While Physically in New York.

Plaintiffs do not dispute Mr. Ben Ammar's showing, *see* Dkt. 255 at 18, that: (1) Section 302(a)(2) imposes personal jurisdiction only upon a person who "commits a tortious act within the state," N.Y. C.P.L.R. § 302(a)(2); and (2) the Second Circuit has recognized that "[t]o subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State."  *Bensusan Restaurant Corp. v. King*, 126 F.3d 25, 28-29 (2d Cir. 1997) (citation omitted).  Instead, Plaintiffs acknowledge that Section 302(a)(2) "requires Defendant's physical presence in New York," but essentially ask the Court to disregard the requirement that the tort be committed while the defendant is physically in New York.  *See* Dkt. 268 at 12-13.

Plaintiffs make an indefensible logical leap in claiming that because Mr. Ben Ammar has "admitted" he "attended meetings of the TWC Board of Directors in New York and "to meeting with Harvey Weinstein and Robert Weinstein in New York," "he has admitted that he engaged in activities that are at the heart of supervising Harvey Weinstein while in New York."  Dkt. 268 at 12.  Mr. Ben Ammar stated that Harvey Weinstein's conduct and his employment agreement

13

were not discussed at any of the Board meetings that he attended in New York prior to 2011, or at his 2008 and 2009 meetings in New York with Harvey Weinstein. *See* Declaration of Tarak Ben Ammar, ¶¶ 14-17 [Dkt. 256]. He did not "admit" to any conduct that could be considered "supervising Harvey Weinstein in New York." Defendants cite no authority in support of the extraordinary proposition that allegations of negligent supervision can support the exercise of personal jurisdiction under Section 302(a)(2) based upon a handful of visits to New York that had no relationship to supervision.

Plaintiffs are wrong in contending, *see* Dkt. 268 at 12-13, that *Goland*, 1988 U.S. Dist. LEXIS 3528, *11-12, is in any way analogous to the facts presented here. The *Goland* court indicated that there could be personal jurisdiction over defendant Julio Iglesias if he made misrepresentations to the plaintiff at meetings in New York. *See id.* The case did not hold or suggest that Section 302(a)(2) authorizes jurisdiction based upon alleged inaction.

### 3.     No Jurisdiction Exists Under Section 302(a)(3).

Plaintiffs do not dispute that there is no jurisdiction over Mr. Ben Ammar under N.Y. C.P.L.R. § 302(a)(3)(i), instead arguing only that he is subject to personal jurisdiction under N.Y. C.P.L.R. § 302(a)(3)(ii). *See* Dkt. 268 at 13-15. Plaintiffs effectively concede that Ms. Geiss and Ms. Thomas cannot establish personal jurisdiction over Mr. Ben Ammar under Section 302(a)(3)(ii) because the alleged assaults on them occurred outside of New York.[8]

Plaintiffs concede that Section 302(a)(3)(ii) creates personal jurisdiction only when the defendant derives substantial revenue from interstate or international commerce, but claim that

---

[8] Plaintiffs assert that "[a]ll of the Plaintiffs' career damage claims also gave rise to injury in New York given that is the state from which TWC blacklisted their careers and converted Thompson's attorney-client privileged communications." Dkt. 268 at 14 n. 53. However, Section 302(a)(3)(ii) is tied to the place of injury, not the place of conduct. *See* N.Y. C.P.L.R. § 302(a)(3)(ii).

14

the element is satisfied because: (1) they "need only show that Ben Ammar's operations were far from local in character (in France) but instead international in scope"; and (2) "Ben Ammar admits his operations are international in scope in his declaration."  Dkt. 268 at 15 (footnotes omitted).  The evidence shows that Mr. Ben Ammar has an ownership interest in companies that derive revenue from international commerce, not that Mr. Ben Ammar himself derives such revenues.[9]  Plaintiffs do not and cannot cite any authority that suggests that Section 302(a)(3)(ii) authorizes the exercise of personal jurisdiction over an individual based on the receipt of revenues by a company with which he or she is affiliated.

Plaintiffs argue that "Ben Ammar expected or should reasonably have expected the act to have consequences in the State," but the evidence that they cite relates to Mr. Ben Ammar's claimed contacts with New York generally, not to the alleged conduct on which Plaintiffs' claims are based.[10]  Dkt. 268 at 14-15.  Furthermore, Plaintiffs cite no authority on the issue whether personal jurisdiction can be established over a defendant under Section 302(a)(3)(ii) under the theory that he or she expected or should have expected alleged negligent inaction to have consequences in New York.  To the contrary, the case law recognizes that there is no personal jurisdiction over a former outside director based upon an alleged failure of supervision outside of New York.  *See Giuliano*, 2017 WL 1234042, *12 n. 23; *Charas*, 1992 WL 296406, *4.

---

[9]  Plaintiffs attempt to conceal this fact by referring vaguely to "investments in TWC," without stating that it was AII – not Mr. Ben Ammar – that invested in TWC.

[10]  Plaintiffs offer neither authority nor argument in support of their contention that Mr. Ben Ammar's submission in 2019 in the Delaware Bankruptcy Court of a proof of claim seeking indemnity from TWC for attorneys' fees incurred in this and other lawsuits somehow means that "he could expect to be haled into court in New York."  Dkt. 268 at 14-15.

4825-7240-0777

**B.**     **Mr. Ben Ammar is Not Subject to Personal Jurisdiction on the RICO Claim.**

Through their silence, Plaintiffs concede that they cannot rely on RICO's provision for nationwide jurisdiction because Mr. Ben Ammar is a resident of France who was served in France.  *See* Dkt. 255 at 20-21.

**VI.     THE FAC SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) BASED UPON THE GROUNDS ASSERTED BY THE MOVING DEFENDANTS AND THOSE SET FORTH HEREIN.**

**A.     Because Plaintiffs Allege that Harvey Weinstein was Acting Within the Scope of His Employment and Have Not Alleged Facts Sufficient to Demonstrate Gross Negligence on the Part of Mr. Ben Ammar or the Other Outside Board Representatives, They Have Not Stated a Claim For Negligent Supervision and Retention.**

Plaintiffs do not dispute Mr. Ben Ammar's showing that their claims that Harvey Weinstein's alleged conduct was committed within the scope of his employment with TWC bar any claim for negligent hiring, retention, or training (in the absence of gross negligence).  *See* Dkt. 255 at 23-24.  Instead, Plaintiffs claim that under Fed. R. Civ. P. 8(d) they may pursue claims in the alternative either (1) for negligent retention and supervision or (2) under the doctrine of *respondeat superior*.  *See* Dkt. 268 at 20 & nn. 76-77.

However, "'[w]hile [plaintiffs] need not use particular words to plead in the alternative, they must use a formulation from which it can be reasonably inferred that this is what they were doing.'"  *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011) (quoting *Holman v. Indiana*, 211 F.3d 399, 407 (7th Cir. 2000)).  Because nothing in the FAC supports an inference that Plaintiffs intended to plead the claim for negligent retention and supervision in the alternative, such claim is subject to dismissal.  *See id.*  Furthermore, "because of the axiomatic rule that a plaintiff may not amend his complaint in his response brief," Plaintiffs cannot "elide[] the complaint's omission of alternative pleading" through their belated contention that the claim is pled in the alternative.  *Id.*

Plaintiffs do not dispute that they must plead gross negligence to establish a claim for negligent supervision.  Plaintiffs claim that they "have alleged that Ben Ammar knew that there was a high degree of risk that Weinstein would engage in sexual abuse of women he lured under the guise of business to meetings—and deliberately failed to prevent Weinstein from continuing."  Dkt. 268 at 21.  However, the FAC does not in fact so allege, especially with regard to the period of relevance to the claims asserted by the named Plaintiffs (in or prior to 2008 with regard to three of the four named Plaintiffs, and in or prior to 2011 with regard to the fourth named Plaintiff).  The facts against Mr. Ben Ammar as alleged in the FAC are insufficient to establish gross negligence.[11]  The FAC thus does not state a claim for negligent retention and supervision.

Plaintiffs miss the point in arguing that "Ben Ammar also attempts to apply a standard applicable when a court entertains a motion to strike a request for punitive damages."  Dkt. 268 at 21 (footnote omitted).  A party must satisfy the standard for pleading punitive damages in order to pursue a claim for negligent retention and supervision of an employee acting within the scope of employment because such a claim is permissible only where punitive damages are recoverable.  *See Barnville v. Mimosa Cafe*, No. 1:14–CV–518–GHW, 2014 WL 3582878, *3 (S.D.N.Y. July 10, 2014) ("a negligent hiring and training claim can proceed even if an employee is acting within the scope of his employment where the claim seeks punitive damages as a result of gross negligence").  The FAC simply does not "plead facts that [the Outside Board Representatives'] conduct was 'so outrageous as to evince a high degree of moral turpitude . . .

---

[11]  Plaintiffs' allegations in their opposition cannot cure the failure to allege such facts in the FAC.  *See, e.g.*, *Fonte v. Board of Managers*, 848 F.2d 24, 25 (2d Cir. 1988) ("[f]actual allegations contained in legal briefs or memoranda" are not to be considered on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)).

4825-7240-0777

[so] as to imply a criminal indifference to civil obligations.'"  *Id.* (quoting *Henderson v. UPS*, 252 A.D.2d 865, 675 N.Y.S.2d 715, 716 (3d Dep't 1998)).  Plaintiffs' contention that "these facts 'imply a criminal indifference to civil obligations,'" Dkt. 268 at 21 (footnote omitted), fails even when considering all of the allegations in the FAC; the claim of "criminal indifference" is particularly frivolous when considered in light of the facts alleged to have put the Outside Board Representatives on notice of Harvey Weinstein's claimed conduct as of 2008 and 2011, the dates of relevance to the named Plaintiffs' claims.

**B.**       **Plaintiffs' State Law Claims Fail Because the FAC Does Not Allege Any Facts to Contradict the Limited Duties and Powers of Board Representatives of a Delaware Limited Liability Company.**

Through their silence, Plaintiffs concede Mr. Ben Ammar's showing, *see* Dkt. 255 at 27-29, that as a matter of Delaware law, a Delaware limited liability company is managed by its members, unless the limited liability company agreement provides otherwise.  Nor do Plaintiffs claim that TWC's limited liability company agreement gave the Outside Board Representatives any duties with regard to Harvey Weinstein's alleged conduct, or created an employer-employee or principal-agent relationship between the Outside Board Representatives and Harvey Weinstein.

Instead, Plaintiffs argue that "[c]orporate documents cannot immunize Ben Ammar from liability to third parties."  Dkt. 268 at 21-22.  Mr. Ben Ammar's argument, however, is not that the limited liability company agreement insulates the Outside Board Representatives from liability, but that it demonstrates a lack of duty.  Plaintiffs do not dispute that "[u]nder New York law, . . . , '[a] defendant generally has no duty to control the conduct of third persons so as to prevent them from harming others.'"  *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (citation omitted).  Nor do they dispute that for them to prevail on a claim that a defendant negligently failed to control the conduct of third parties, "there must first be a legal duty owed by

18

defendant to them.  Foreseeability of harm is alone not enough." *D'Amico v. Christie*, 71 N.Y.2d 76, 87, 524 N.Y.S.2d 1, 518 N.E.2d 896, 901 (1987)).  Plaintiffs' failure to identify any legal duty owed to them by the board representatives of TWC, a Delaware limited liability company, requires dismissal of their claims.

With minor revisions, Plaintiffs' argument on this point is the same that they made in opposition to the Moving Defendants' motion to dismiss.  *Compare* Dkt. 268 at 21-22 *with* Dkt. 243 at 69-70.  Accordingly, Mr. Ben Ammar will refer to and incorporate by reference the Moving Defendants' response to that argument, *see* Dkt. 264 at 39-41, without briefing it further.

Instead of providing a substantive response to Mr. Ben Ammar's showing that Plaintiffs have not alleged a factual basis for finding that the Outside Board Representatives are employers of Harvey Weinstein and that they therefore have not stated a claim under the doctrines of *respondeat superior* and ratification, *see* Dkt. 255 at 29-30, Plaintiffs simply incorporate Section VIII of their Opposition to the Moving Defendants' motion to dismiss [Dkt. 243 at 98-103], *see* Dkt. 268 at 23.  However, the arguments made by Plaintiffs in that Opposition are not responsive to Mr. Ben Ammar's arguments that Plaintiffs' state law claims fail because the FAC does not and cannot allege any basis for finding that TWC's limited liability company agreement created an employer-employee or principal relationship between the Outside Board Representatives and Harvey Weinstein.  *See* Dkt. 255 at 29-30.  The Court should dismiss all of Plaintiffs' state law claims based upon this unrefuted showing.

4825-7240-0777

## VII.  <u>CONCLUSION</u>

For the reasons discussed above and in Mr. Ben Ammar's moving papers, the Court should dismiss the FAC as against Mr. Ben Ammar based upon (1) lack of personal jurisdiction and (2) failure to state a claim.

Dated: March 5, 2019                    Respectfully submitted,


By:      /s/ Kathy A. Jorrie
         Kathy A. Jorrie (admitted *pro hac vice*)
         (kathy.jorrie@pillsburylaw.com)
         Jeffrey D. Wexler (admitted *pro hac vice*)
         (jeffrey.wexler@pillsburylaw.com)
         PILLSBURY WINTHROP SHAW
          PITTMAN LLP
         725 S. Figueroa St., Suite 2800
         Los Angeles, California 90017-5406
         Telephone: (213) 488-7100
         Fax: (213) 629-1033

         Matthew D. Stockwell
         (matthew.stockwell@pillsburylaw.com)
         PILLSBURY WINTHROP SHAW
          PITTMAN LLP
         1540 Broadway
         New York, New York 10035
         Telephone: (212) 858-1558
         Fax: (212) 858-1500

         *Attorneys for Defendant Tarak Ben Ammar*

4825-7240-0777