UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all others similarly situated,

1:17-cv-09554 (AKH)

                     Plaintiffs,

                  v.

THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX FILM NY LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., BUENA VISTA INTERNATIONAL, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, BARBARA SCHNEEWEISS, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive,

                   Defendants.
------------------------------------------------------------X

# DEFENDANT HARVEY WEINSTEIN'S MEMORANDUM OF LAW IN SUPPORT OF HIS MOTION TO CERTIFY THE APRIL 18, 2019, OPINION AND ORDER FOR INTERLOCUTORY APPEAL PURSUANT TO 28 U.S.C. § 1292(B) AND TO STAY THESE PROCEEDINGS PENDING RESOLUTION OF THE APPEAL

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| PRELIMINARY STATEMENT …………………………………………….. | | 1 |
| **ARGUMENT** | | |
| I. | THE COURT SHOULD CERTIFIY THE ORDER FOR APPEAL UNDER § 1292(b) …………………………………………………… | 4 |
| | A. Whether Under The Trafficking Statute, A "Commercial Sex Act" Includes a Sex Act For Which No Benefit Is Provided Is a Controlling Question of Law ………………………………………….. | 4 |
| | B. There Exists Substantial Grounds For Difference Of Opinion With The Court's Resolution Of The Question ……………………… | 5 |
| | C. An Interlocutory Appeal May Result In The Termination Of This Litigation …………………………………………………………… | 9 |
| II. | A STAY PENDING APPEAL IS APPROPRIATE ……………………… | 10 |
| CONCLUSION ……………………………………………………………...... | | 10 |

# TABLE OF AUTHORITIES

**Cases**

*Adelphia Communs. Corp. Sec. & Derivative. Litig.*, No. 03 MDL 1529, 2006
    U.S. Dist. LEXIS 11743, at *10, 2006 WL 708303, at *4 (S.D.N.Y. Mar. 20, 2006) .............. 6

*Canosa v. Ziff*, 18-Civ-4115, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019) ................. 2

*Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) ........................................................ 5

*David v. The Weinstein Company LLC, et al.*, 18-Civ-05414 (RA), ECF No. 147
    (S.D.N.Y. May 17, 2019) ........................................................................................................ 9

*Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990) ......................................... 5

*Keller v. Lee*, No. 96 Civ. 4168, 1997 U.S. Dist. LEXIS 7519, at *2, 1997
    WL 289853, at *1 (S.D.N.Y. May 28, 1997) ......................................................................... 5

*Kersh v. General Council of the Assemblies of God*, 535 F. Supp. 494, 498
    (N.D. Cal. 1982) ...................................................................................................................... 5

*Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) ............................................ 5

*Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc.*, No.
    10-CV-4124, 2013 U.S. Dist. LEXIS 180463, at * 52, 2013 WL 6816174,
    at * 16 (WD. Ark. Dec. 24, 2013) ........................................................................................... 8

*Lawson v. Rubin*, 17-Civ-6404, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Arp. 29, 2018) ........... 7

*LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, No. 92 Civ. 7584, 2000 U.S. Dist.
    LEXIS 5154, at *7-8 & 12 (S.D.N.Y. Apr. 18, 2000) ............................................................. 5

*Marsall v. City of Portland*, 2004 U.S. Dist. LEXIS 15976, at *20 (D. Or. Aug. 9, 2004) ........... 5

*Noble v. Weinstein,* 335 F. Supp.3d 504 (S.D.N.Y. 2018) ............................................. 2,3,6,7,8,9

*United States v. Mack*, 808 F.3d 1074 (6th Cir. 2015) ................................................................. 7

*United States v. Thompson*, 864 F.3d 837 (7th Cir. 2017) .................................................................. 7

*WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 22718,
    at *20, 2003 WL 22953644, at *6 (S.D.N.Y. Dec. 16, 2003) ..................................................... 5

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................... 1,4,5,9

18 U.S.C. § 1591 ……………………………………………………………………...……...3,4

**PRELIMINARY STATEMENT**

Defendant Harvey Weinstein ("Defendant" or "Weinstein"), by his attorneys Lewis Brisbois Bisgaard & Smith LLP, respectfully submits this memorandum of law in support of his motion for an Order (1) certifying the portion of the Court's April 18, 2019, Order ("Order") denying Defendant's motion to dismiss Count I of the Amended Complaint for interlocutory appeal pursuant to 28 U.S.C. § 1292(b), and (2) staying this proceeding pending the Second Circuit's resolution of the § 1292(b) appeal.

The Order dismissed the claims against all defendants in this action save for Count I of the Amended Complaint which asserts a claim of sex trafficking – on behalf of Plaintiffs Geiss, Thomas and Thompson[1] – solely against Mr. Weinstein under the Justice for Victims of Trafficking Act of 2014, formerly the Victims of Trafficking and Violence Protection Act of 2000 (the "Trafficking Statute").

The Order is the third in a series of decisions over the past several months from this Court applying the Trafficking Statute to claims against Defendant arising from alleged assaults during meetings with Defendant. Notably, neither this case nor the other two matters involve allegations of actual sex trafficking. Rather, the trafficking claims arise from alleged meetings between Defendant and the plaintiffs which were purportedly for the purpose of discussing business and career opportunities. In the case at bar, Plaintiff Geiss was meeting with Mr. Weinstein to discuss her music company and her career (FAC ¶¶ 243-246), Plaintiff Thomas's meeting was for a nanny position (FAC ¶¶ 254-256), and Plaintiff Thompson met with Mr. Weinstein to discuss use of her company's technology (FAC ¶ 268). Plaintiffs allege that during these meetings they were sexually assaulted by Defendant. Critically, there are no allegations that any money or anything of value was exchanged

---

[1] Plaintiffs Geiss, Thomas and Thompson are collectively referred to as "Plaintiffs."

attendant to these alleged sex acts. A required element of a claim under the Trafficking Statute is that the defendant must have caused the plaintiff to engage in a "commercial sex act." 18 U.S.C. § 1591. "The term 'commercial sex act' means any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Importantly, Plaintiffs do not allege they actually received anything of value. Plaintiffs do not allege they received any money, any property, or any specific career advancement.

The critical question presented by the Order is whether Plaintiffs have alleged the existence of a commercial sex act. In holding that the FAC does allege such an act, this Court's Order adopts the reasoning of the Hon. Robert W. Sweet, U.S.D.J. in *Noble v. Weinstein,* 335 F. Supp.3d 504 (S.D.N.Y. 2018) ("*Noble*"), which was later followed by the Hon. Paul A. Engelmayer, U.S.D.J. in *Canosa v. Ziff*, 18-Civ-4115, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019).[2]

> I join Judges Engelmayer and Sweet in holding that the TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in consensual, or as alleged here, non-consensual sexual activity. Accordingly, H. Weinstein's motion to dismiss the TVPA claim against him is denied.

(Order, p. 14).

The Order adopted Judge Sweet's reasoning that the mere opportunity to meet someone in Defendant's position constituted an exchange of value such that a commercial act took place.

> The opportunity . . .for [an] actress to sit down with [Weinstein] in a private meeting to review her film reel and discuss a promised film role carries value that is career-making and life-changing. The contention, therefore, that [plaintiff] was given nothing of value – that the expectation of a film role, of a modeling meeting, of "his people" being "in touch with her" had no value – does not reflect modern reality.

---

[2] Defendant's motion for certification of the Noble decision for interlocutory appeal is currently pending before the Hon. Alison J. Nathan, U.S.D.J.

(Order, p. 14, *citing Noble*, at 521).

Critically, *Noble*, on which the Order relies, concedes whether a trafficking claim based upon allegedly fraudulent promises of career advancement for purposes of inducing someone to engage in sexual conduct can proceed is a case of first impression.

> It is fair to say that these allegations present an extension of an element of Section 1591 on which there is little to no prior authority. What follows is an effort, aided by the tools of statutory construction, to navigate these uncharted waters.

*Noble*, 335 F. Supp. 3d at 520.

As further developed below, the application of the Trafficking Statute to the allegations at bar constitutes an incomprehensible application of a law enacted to combat modern day slavery and sex trafficking.

This Order is ripe for certification for appeal. Whether a meeting that entails the mere possibility or hope of career advancement constitutes a thing of value such that a sexual interaction that occurs during that meeting is transformed into a commercial sex act under the Trafficking Statute is a controlling question of law involving the construction of a federal statute that is not depending on any factual proofs in this case.

The Order entirely adopts the reasoning in *Noble* which acknowledges that there is "little to no prior authority" to support the application of the Trafficking Statute to similar claims against Defendant. Moreover, comparing the facts of this case to those in other sex trafficking cases indicates substantial grounds for disagreement with application of the Trafficking Statute to these allegations. Finally, if the Second Circuit holds that meeting with Defendant is not an exchange of value, the remaining Plaintiffs' case is over. More importantly, this Circuit will not have to be faced with a tidal wave of Trafficking Statute cases arising from job interviews or any meeting in which there is a disparate level of power or fame. Right now, based on the decisions in *Noble*, *Canosa*,

and this case, every plaintiff in an employment action alleging a sexual encounter related to an interview or meeting with a superior can successfully allege a sex trafficking claim. Such application of the Trafficking Statute is far from its intended purpose.

A stay pending the § 1292(b) appeal will conserve both the parties' and the Court's resources. A stay will avoid costly discovery and motion practice, all of which may be mooted by a contrary ruling from the Second Circuit. And a stay will not prejudice Plaintiffs. Plaintiffs Geiss, Thomas and Thompson waited almost a decade to bring their claims, and Mr. Weinstein is prepared to expedite his appeal.

## ARGUMENT

## I

## THE COURT SHOULD CERTIFIY THE ORDER FOR APPEAL UNDER § 1292(b)

An Order is appropriate for interlocutory appeal under 28 U.S.C. § 1292(b) if (1) the Order "involves a controlling question of law"; (2) there is "substantial ground for difference of opinion" as to that question; and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." Each of the foregoing criteria are satisfied by the Order.

### A. Whether Under The Trafficking Statute, A "Commercial Sex Act" Includes a Sex Act For Which No Benefit Is Provided Is a Controlling Question of Law

The question Defendant seeks to appeal immediately is a pure question of law: whether the term "commercial sex act" in 18 U.S.C. § 1591(a) requires that the victim was sexually exploited for profit, or that something of actual value – as opposed to value hoped for or perceived by the alleged victim – was exchanged. The Order answered this question in the affirmative by what Defendant respectfully submits was an incorrect interpretation of a federal statute. Interpretation of the Trafficking Statute and whether it applies to Plaintiffs' allegations does not turn on the development of any facts in this case.

The question of whether a commercial sex act requires actual commercial exploitation of a victim or the exchange of some real tangible value is a controlling one. A question is controlling if its resolution on appeal could materially affect the outcome of the case in the district court. *LNC Invs., Inc. v. First Fid. Bank, Nat'l Ass'n*, No. 92 Civ. 7584, 2000 U.S. Dist. LEXIS 5154, at *7-8 & 12 (S.D.N.Y. Apr. 18, 2000) (emphasis in the original) (quoting *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982) and holding "that certification of this Court's … Order for interlocutory appeal is not only appropriate under § 1292(b), it is highly desirable"). If the Second Circuit holds that the Trafficking Statute requires an actual exchange of real value for a commercial sex act, Plaintiffs' claims cannot lie and this case is over.

### B. There Exists Substantial Grounds For Difference Of Opinion With The Court's Resolution Of The Question

There is "a substantial ground for difference of opinion" when a controlling legal question "is difficult and of first impression." *Marsall v. City of Portland*, 2004 U.S. Dist. LEXIS 15976, at *20 (D. Or. Aug. 9, 2004) (quotation omitted); *see also Kersh v. General Council of the Assemblies of God*, 535 F. Supp. 494, 498 (N.D. Cal. 1982) (finding substantial grounds on "difficult questions of first impression in this Circuit"), *overruled in part on other grounds*, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990); *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990) (holding that "substantial grounds for difference of opinion" exist when the "issues are difficult and of first impression"). It also may arise from a healthy division and debate among the district courts. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288, 2003 U.S. Dist. LEXIS 22718, at *20, 2003 WL 22953644, at *6 (S.D.N.Y. Dec. 16, 2003) (finding substantial difference of opinion among "a handful of courts elsewhere" plus "at least one member of the Second Circuit"); *Keller v. Lee*, No. 96 Civ. 4168, 1997 U.S. Dist. LEXIS 7519, at *2, 1997 WL 289853, at *1 (S.D.N.Y. May 28, 1997) (noting generally that "[t]he courts that have considered this issue have

come to divergent results"). Finally, as is the case here, the absence of controlling authority in the Second Circuit weighs heavily in the determination. *See In re Adelphia Communs. Corp. Sec. & Derivative. Litig.*, No. 03 MDL 1529, 2006 U.S. Dist. LEXIS 11743, at *10, 2006 WL 708303, at *4 (S.D.N.Y. Mar. 20, 2006).

As the *Noble* decision acknowledges, the Second Circuit has not reached the issue of whether the Trafficking Statute applies to a situation where there was no "trafficking,"[3] no *quid pro quo*, no conferring of a real benefit, and no actual value provided. In fact, neither the decisions in *Noble Canosa*, or the Order, where the Trafficking Statute was applied to a situation that did not involve a victim being smuggled into the U.S. for prostitution, enslaved, given drugs for sex, or where the victim was a juvenile. Plaintiffs do not cite any case as they failed to even address the argument that they failed to allege a commercial sex act. The absence of similar decisions, or the Trafficking Statute's application in employment related actions, is not surprising given the legislative purpose of the Trafficking Statute. The House of Representatives Committee Report on the original version of the Trafficking Statute demonstrates a legislative purpose completely inapplicable to the allegations contained in this case.

> (a) Purposes – The purposes of this division are to combat trafficking in persons, a contemporary manifestation of slavery whose victims are predominantly women and children, to ensure just and effective punishment of traffickers, and to protect their victims.
>
> (b) Findings – Congress finds that:
>
> > (1) As the 21st Century begins, the degrading institution of slavery continues through the world. Trafficking in persons is

---

[3] Congress, in passing the Trafficking Statute, which "criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain," defined "human trafficking, particularly of women and children in the sex industry, [as] a modern form of slavery, and it is the largest manifestation of slavery today." *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir.) (internal quotation omitted), *cert. denied*, 552 U.S. 878 (2007).

6

> a modern form of slavery, and it is the largest manifestation of slavery today . . .

H. Rept. 106-939 – Victims of Trafficking and Violence Protection Act of 2000, at pp. 3-6.

An examination of the facts of the cases relied on by *Noble* in applying the Trafficking Statute highlight the error in this overly broad application of the law and the inconsistency with the legislative purpose. *United States v. Thompson*, 864 F.3d 837 (7th Cir. 2017), involved a prostitution operation in which the defendant sold a minor's sexual services to at least 15 different men across three states. Similarly, in *United States v. Mack*, 808 F.3d 1074 (6th Cir. 2015), the defendant enticed a woman to have sex with him in exchange for drugs, but then claimed the woman owed him money for the drugs and forced her into prostitution to pay down the claimed debt. In *Lawson v. Rubin*, 17-Civ-6404, 2018 U.S. Dist. LEXIS 71582 (E.D.N.Y. Arp. 29, 2018), the defendants were alleged to have participated in a scheme where women were brought to New York City with promises of being paid for fetish photographs, "fetish play, and "companionship" with defendant Rubin, but were then drugged and assaulted by Rubin. Afterwards, the women were paid for these encounters. *Id.* at *4-13. The remaining cases relied on in *Noble* are similarly factually distinguishable as they all involve women trafficked and assaulted for clear financial gain.[4]

---

[4] *See United States v. Mozie*, 752 F.3d 1271 (11th Cir. 2014) (defendant sold the sexual services of teenage women in what the court described as a "brothel business"); *United States v. Flanders*, 752 F.3d 1317 (11th Cir. 2014) (defendants lured women to South Florida, drugged them, and then sold films of them engaged in sex acts); *United States v. Rojas-Coyotl*, 13-Cr-128, 2014 U.S. Dist. LEXIS 65693 (N.D.Ga. Feb. 7, 2014) (defendants smuggled women into the United States and then forced them to engage in prostitution); *United States v. Cook*, 782 F.3d 983 (8th Cir. 2015) (defendant paid for sex with minor by providing sadomasochistic and torture videos); *United States v. Rivera*, No. 12-dr-121, 2012 WL 6589526 (M.D. Fla. Dec. 18, 2012) (minor, who was transported across state lines, was ordained as a prophet and given cash, an iPod, and a cell phone in exchange for sex).

These cases all have common themes of kidnapping and commercial sexual transactions such as prostitution, acting as a pimp, and pornography. Nothing of the like is present here. Plaintiffs do not allege they were forced to have sex with other individuals, trafficked, kidnapped, or otherwise brought somewhere against their will. Similarly, there are no allegations that anything of value was exchanged. In fact, the gravamen of Plaintiffs' claims is that they did not receive anything of value. Moreover, there are no allegations that anything of commercial value was received by Mr. Weinstein or anyone else.

While there is no case law, aside from *Noble* and *Canosa*, applying the Trafficking Statute to non-trafficking conduct, there is case law holding it does not apply in absence of a clear exchange of value. In *Kolbeck v. Twenty First Century Holiness Tabernacle Church, Inc*., No. 10-CV-4124, 2013 U.S. Dist. LEXIS 180463, at * 52, 2013 WL 6816174, at * 16 (WD. Ark. Dec. 24, 2013), *vacated in part, aff'd in part*, 2014 U.S. Dist. LEXIS 529, at *8 (W.D. Ark. Jan. 2, 2014), the Court denied the plaintiffs' claim under the Trafficking Statute because there was no *quid pro quo* given. Indeed, in *Kolbeck*, something of value was given (housing and other expenses) – just not in exchange for the sex. Here, the Order holds that something of value was given – a meeting with a prominent film producer – but even that, too, was not in exchange for sex. Plaintiff obtained the meeting regardless of the alleged sexual activity. The Order's analysis on the value element required in the Trafficking Statute conflates the fraud element of the Statute. Just as a false promise of a green card to trafficked women might satisfy the fraud element of the Statute, it is not a thing of value because it is an empty promise. The commercial element is satisfied in such a typical trafficking situation by the payment of money by the trafficked women's johns to the defendant trafficker. Here, there was nothing of value received by either Plaintiff or Defendant in exchange for sex.

Without any similar application of the Trafficking Statute in cases not against Defendant, and the absence of any support in the legislative intent of the law, this Court's decision, and those in *Noble* and *Canosa*, to uphold sex trafficking claims, can only be viewed as punitive. Defendant is not of the view that the Courts in this district would or should apply the Trafficking Statute for a purely punitive purpose. Accordingly, immediate Second Circuit review is appropriate.

### C. An Interlocutory Appeal May Result In The Termination Of This Litigation

Weinstein is the only remaining defendant in this case and Plaintiffs' claims under the Trafficking Statute are the only remaining claims. Accordingly, the Second Circuit's resolution of this question in Defendant's favor will bring about the "termination of the litigation." 28 U.S.C. § 1292(b). Immediate appeal is also necessary to prevent a flood of Trafficking Statute claims arising from non-sex trafficking fact patterns. Following the *Noble* decision, the plaintiffs in this action and *Canosa* raised Trafficking Statute claims in amended pleadings. Additionally, Wedil David filed a Third Amended Complaint on May 17, 2019, asserting, for the first time, a sex trafficking claim. *David v. The Weinstein Company LLC, et al.*, 18-Civ-05414 (RA), ECF No. 147 (S.D.N.Y. May 17, 2019). The Order's expansion of what constitutes an exchange of value will result in the Trafficking Statute's ten-year statute of limitations being used – as Plaintiffs did here – to revive otherwise untimely tort and employment claims. The potential for an unintended expansion of the Trafficking Statute has already generated concerned commentary.[5]

If, as the Order holds, simply meeting with Mr. Weinstein constituted an exchange of value, then it must follow that a meeting with any person who maintains a position of power or influence –

---

[5] "If cases like these succeed, we can expect to see whole lot more trumped-up trafficking cases, which could not only lead to unjust outcomes for those accused but also take resources away from prosecuting cases of labor exploitation and sexual abuse." *Harvey Weinstein Is Terrible. Calling Him a Sex Trafficker is Absurd*, Elizabeth Nolan Brown, *Reason*, April 19, 2019, *available at*: https://reason.com/2019/04/19/harvey-weinstein-is-not-a-sex-trafficker/.

whether famous or not – would amount to an exchange of a thing of value. For example, a Trafficking Statute claim could lie under the following hypothetical. A person seeking employment in the pharmaceutical industry is offered an interview by the owner of a large pharmaceutical company and is then sexually assaulted or harassed during that interview. The aforementioned wrongful conduct, already barred by common law tort and various statutory employment laws, could now form the basis for a sex trafficking claim in the Second Circuit. Immediate review by the Second Circuit is necessary to prevent a flood of new litigation under this now expanded law. Conversely, if Second Circuit were to affirm the Order, it would prevent the filing of unnecessary motions to dismiss in the District Courts.

## II

## A STAY PENDING APPEAL IS APPROPRIATE

If the Second Circuit accepts Defendant's argument, then this case will be over and the stay will have saved the parties, and the Court, from the time and expense of needless discovery and motion practice. There has not been any discovery in this case and a stay will defer, and potentially moot, all of this burden and expense.

In contrast, there is no prejudice to Plaintiff from a stay. Plaintiffs waited years to sue, until after traditional claims based on the conduct alleged were time barred. An immediate appeal will put the Trafficking Statute claim before the Second Circuit and give that Court the opportunity to issue a definitive ruling on the law of this Circuit.

## CONCLUSION

For the reasons set forth herein, it is respectfully submitted that that the motion be granted in its entirety.

Dated: New York, New York
       May 23, 2019

**LEWIS BRISBOIS BISGAARD & SMITH LLP**

By: /s/ Elior D. Shiloh
   Elior D. Shiloh, Esq.
   Brian Pete, Esq.
   *Attorneys for Defendant Harvey Weinstein*
   77 Water Street, Suite 2100
   New York, New York  10005
   (212) 232-1300