**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all others similarly situated, | No. 1:17-cv-09554-AKH<br><br>Hon. Alvin K. Hellerstein |
| Plaintiffs, | |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*, | |
| Defendants. | |
| JILL DOE, individually and on behalf of all others similarly situated, | No. 1:19-cv-3430-AKH |
| Plaintiff, | |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*, | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF SETTLEMENT CLASS REPRESENTATIVES' MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASSES, APPOINTMENT OF CLASS COUNSEL, AND PERMISSION TO DISSEMINATE CLASS NOTICE**

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................... 1

II.  BACKGROUND AND PROCEDURAL HISTORY ......................................... 5

    A.   Dozens of women filed lawsuits and claims in domestic and
        foreign tribunals. ....................................................................................... 5

        1.   The *Geiss*, *Dulany*, and *Jill Doe* class actions are filed in this
        District.................................................................................................. 5

        2.   The NYOAG filed a lawsuit in state court alleging violations
        of state and city human rights laws.......................................... 6

        3.   Approximately 20 additional women filed individual foreign,
        federal and state lawsuits and claims. ...................................... 7

    B.   A series of rulings by federal courts, including this Court,
        significantly narrowed the claims and defendants. ................................. 8

    C.   The Weinstein Company Holdings and its affiliates filed a
        voluntary Chapter 11 petition for bankruptcy....................................... 10

    D.   Harvey Weinstein is currently serving a 23-year prison sentence in
        New York and faces additional criminal charges in Los Angeles. ...... 11

    E.   Class Counsel and the NYOAG have engaged in complex,
        prolonged and arms-length settlement discussions with the
        Debtors, Defendants, UCC, and Insurance Companies for more
        than two years. ....................................................................................... 12

III. MATERIAL TERMS OF THE SETTLEMENT ............................................... 14

    A.   The Settlement creates a Class Action Settlement Fund. ...................... 14

    B.   Settlement Class Members can choose their level of participation
        in a two-tier Claims Process. .................................................................. 14

    C.   All Settlement Class Members may object to the Settlement............... 18

    D.   Pre-2005 Subclass Members may opt out of the Settlement. .............. 18

    E.   Class Counsel will apply for Attorneys' Fees in an amount not to
        exceed 25 percent of the Settlement Fund, plus out-of-pocket
        expenses. ................................................................................................. 19

IV.   THE PROPOSED SETTLEMENT MERITS NOTICE AND
SCHEDULING FOR FINAL APPROVAL ........................................................ 19

    A.   This Court should make the preliminary determinations required as
part of the class action settlement process, as amended. ...................... 19

    B.   The proposed Settlement satisfies Rule 23(e)(2) and the *Grinnell*
factors................................................................................................ 21

        1.   Settlement Class Representatives and Class Counsel have
fairly and adequately protected the interests of the Class.................... 21

        2.   The settlement was arrived at after arms' length negotiations
with the assistance of an experienced JAMS mediator......................... 25

        3.   The Settlement provides adequate relief for the Settlement
Class.................................................................................................... 26

        4.   The Settlement treats Class Members equitably through
application of the Allocation Guidelines. .............................................. 34

        5.   The remaining *Grinnell* factors support preliminary approval
of the Settlement. ................................................................................ 34

V.   THE COURT WILL BE ABLE TO CERTIFY THE PROPOSED
SETTLEMENT SUBCLASSES. ..................................................................... 36

    A.   The Subclasses satisfy Rule 23(a)......................................................... 37

        1.   The Subclasses satisfy the numerosity requirement in Rule
23(a)(1) ............................................................................................... 37

        2.   The claims of the Settlement Class Representatives arise from
the same pattern and practice of sexual abuse, sexual harassment,
and retaliation, satisfying Rule 23(a)(2) and (a)(3). ............................. 38

        3.   Pursuant to Rule 23(a)(4), the Settlement Class
Representatives will fairly and adequately protect the interests of
the Settlement Class. ........................................................................... 40

    B.   The Post-2005 Subclass should be certified pursuant to Rule
23(b)(1)(B). ........................................................................................ 41

        1.   The Chapter 11 Cases, dismissals of the Director Defendants,
and conviction of Harvey Weinstein have resulted in limited funds
available to the Post-2005 Subclass...................................................... 42

2.   The Class Settlement Fund will be used to pay for Class Claim Awards, Class Administrative Expenses, Attorneys' Fees and Costs, and Class Service Awards. .......................................................... 47

3.   Settlement Class Members will be treated equitably under the Allocation Guidelines. ......................................................................... 48

C.   The Pre-2005 Subclass should be certified pursuant to Rule 23(b)(3). ...................................................................................................... 48

1.   Common questions of law or fact predominate for the Pre-2005 Subclass ........................................................................................ 49

2.   Class treatment is superior to individual litigation ........................................ 51

VI.   THIS COURT SHOULD APPOINT ELIZABETH A. FEGAN AND STEVE W. BERMAN AS COUNSEL FOR THE CLASS .............................................. 52

VII.   THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE .................................................................................................. 53

VIII.   THE PROPOSED DEADLINES AND SCHEDULE FOR FINAL APPROVAL HEARING COORDINATE WITH THE CHAPTER 11 CASES ....................... 56

IX.   CONCLUSION ............................................................................................................... 58

# TABLE OF AUTHORITIES

**Cases**

*A.H. Robins Co. v. Piccinin*,
  788 F.2d 994 (4th Cir. 1986) .......................................................................... 43, 44

*Ahearn v. Fibreboard Corp.*,
  162 F.R.D. 505 (E.D. Tex. 1995) ........................................................................ 44

*Alleyne v. Time Moving & Storage Inc.*,
  264 F.R.D. 41 (E.D.N.Y. 2010) ........................................................................... 38

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997) ........................................................................... 36, 48, 49

*Beecher v. Able*,
  575 F.2d 1010 (2d Cir. 1978) .............................................................................. 48

*Canosa v. Ziff*,
  No. 18 Civ. 4115 (PAE), 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28,
  2019) ....................................................................................................................... 9

*Caridad v. Metro-N. Commuter R.R.*,
  191 F.3d 283 (2d Cir. 1999) ................................................................................ 38

*Carr v. Allison Gas Turbine Div., Gen. Motors Corp.*,
  32 F.3d 1007 (7th Cir. 1994) .............................................................................. 50

*Consol. Rail Corp. v. Town of Hyde Park*,
  47 F.3d 473 (2d Cir. 1995) ................................................................................. 38

*David v. Weinstein Co.*,
  No. 18-cv-5414 (RA), 2019 U.S. Dist. LEXIS 69917 (S.D.N.Y. Apr. 24, 2019)
  ................................................................................................................................. 9

*David v. Weinstein Co.*,
  No. 18-cv-5414 (RA), 2019 U.S. Dist. LEXIS 220125 (S.D.N.Y. Dec. 19,
  2019) ....................................................................................................................... 9

*Del Sesto v. Prospect CharterCARE, L.L.C.*,
  No. 18-328 WES, 2019 U.S. Dist. LEXIS 94918 (D.R.I. June 6, 2019) ............... 44

*Denney v. Deutsche Bank AG*,
  443 F.3d 253 (2d Cir. 2006) ............................................................................... 22

*Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974) ............................................................................... 21

*Doe v. Bradley*,
  64 A.3d 379 (Del. Super. Ct. 2012) .................................. 25, 26, 27, 28, 37, 45, 46, 48, 50, 51

*Doe v. The John Hopkins Hosp.*,
   No. 24C13001041, 2014 WL 5040602 (Md. Cir. Ct. Sept. 19, 2014) ...................... 37, 49-50

*Fed. Ins. Co. v. Weinstein*,
   No. 18 Civ. 2526 (PAC), 2019 U.S. Dist. LEXIS 53165 (S.D.N.Y. Mar. 28,
   2019) ......................................................................................................... 3, 11, 16, 17, 43

*Feliciano v. Corelogic Rental Prop. Sols., L.L.C.*,
   332 F.R.D. 98 (S.D.N.Y. July 29, 2019) ............................................................... 40

*Frank v. Eastman Kodak Co.*,
   228 F.R.D. 174 (W.D.N.Y. 2005) ......................................................................... 35

*Fresno Cty. Emps. Ret. Ass'n v. Isaacson*,
   925 F.3d 63 (2d Cir. 2019) ................................................................................. 33

*Geiss v. Weinstein Co. Holdings L.L.C.*,
   383 F. Supp. 3d 156 (S.D.N.Y. Apr. 17, 2019) ...................................................... 3

*Handschu v. Special Servs. Div.*,
   605 F. Supp. 1384 (S.D.N.Y. 1985) ..................................................................... 24

*Huett v. Weinstein Co.*,
   No. 2:18-cv-06012-SVW-MRW, 2018 U.S. Dist. LEXIS 223736 (C.D. Cal.
   Nov. 5, 2018) .................................................................................................... 10

*In re Drexel Burnham Lambert Grp.*,
   960 F.2d 285 (2d Cir. 1992) ...................................................................... 42, 44, 47

*In re Granada P'ships Secs. Litig.*,
   803 F. Supp. 1236 (S.D. Tex. 1992) ..................................................................... 44

*In re Granada P'ships Secs. Litig.*,
   803 F. Supp. 1236, 1992 U.S. Dist. LEXIS 22990 (1992) ...................................... 43

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. Nov. 7, 2019) ...................................................... 20

*In re Imax Secs. Litig.*,
   No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 108516 (S.D.N.Y. Aug. 1,
   2012) ................................................................................................................ 33

*In re Joint E. & S. Dist. Asbestos Litig.*,
   78 F.3d 764 (2d Cir. 1996) ................................................................................. 41

*In re Luxottica Grp. S.p.A. Secs. Litig.*,
   233 F.R.D. 306 (E.D.N.Y. 2006) ......................................................................... 29

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   176 F.R.D. 99 (S.D.N.Y. 1997) ........................................................................... 20

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ................................................................... 24

*In re Payment Card, Interchange Fee & Merch. Disc. Antitrust Litig.*,
    330 F.R.D. 11 (E.D.N.Y. Jan., 2019) .................................. 20, 26, 27, 29

*In re September 11 Litig. World*,
    723 F. Supp. 2d 534 (S.D.N.Y. 2010) ................................................... 27

*In re USC Student Health Ctr. Litig.*,
    No. 2:18-cv-06115-SVW-GJS, 2019 U.S. Dist. LEXIS 122658 (C.D. Cal. June
    12, 2019) ....................................................................................... 37, 39, 49

*Long v. HSBC USA Inc.*,
    No. 14 Civ. 6233 (HBP), 2015 U.S. Dist. LEXIS 122655 (S.D.N.Y. Sept. 11,
    2015) ........................................................................................ 28, 29, 35-36

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-cv-05669 (BMC), 2012 U.S. Dist. LEXIS 166383 (E.D.N.Y. Nov. 16,
    2012) ....................................................................................................... 36

*Newman v. Stein*,
    464 F.2d 689 (2d Cir. 1972) ................................................................... 35

*Noble v. Weinstein*,
    335 F. Supp. 3d 504 (S.D.N.Y. 2018) ................................................. 9-10

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ................................................................... 41, 42, 47

*Padovano v. FedEx Ground Package Sys.*,
    *No. 16-CV-17-FPG, 2019 U.S. Dist. LEXIS 107092* (W.D.N.Y. June 10, 2019)
    ..................................................................................................... 22, 26

*Peoples v. Annucci*,
    180 F. Supp. 3d 294 (S.D.N.Y. 2016) ................................................... 51

*Reserve Fund Secs. & Derivative Litig. v. Reserve Mgmt. Co.*,
    673 F. Supp. 2d 182 (S.D.N.Y. 2009) ................................................... 45

*Reyes v. City of Rye*,
    No. 13 Civ. 9051 (NSR), 2017 U.S. Dist. LEXIS 103096 (S.D.N.Y. June 30,
    2017) ....................................................................................................... 33

*Robidoux v. Celani*,
    987 F.2d 931 (2d Cir. 1993) ........................................................... 37-38, 38

*Shakhnes v. Eggleston*,
    740 F. Supp. 2d 602 (S.D.N.Y. 2010) ................................................... 38

*St. Louis v. Perlitz*,

No. 3:14-cv-00668-RNC, 2019 U.S. Dist. LEXIS 130324 (D. Conn. June 6,
  2019) ...................................................................................................... 33, 37, 49, 50

*Stott v. Capital Fin. Servs.*,
  277 F.R.D. 316 (N.D. Tex. 2011) ........................................................................ 45

*Thornhill v. CVS Pharm., Inc.*,
  No. 13 Civ. 5507 (JMF), 2014 U.S. Dist. LEXIS 37007 (S.D.N.Y. Mar. 20,
  2014) ...................................................................................................................... 33

*Tyson Foods, Inc. v. Bouaphakeo*,
  136 S. Ct. 1036 (2016) ........................................................................................ 49

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ...................................................................... 32, 33, 55

*Warnell v. Ford Motor Co.*,
  189 F.R.D. 383 (N.D. Ill. 1999) ........................................................................ 50

*Wedtech Corp. v. Fed. Ins. Co.*,
  740 F. Supp. 214 (S.D.N.Y. 1990) .................................................................... 43

**Statutes**

18 U.S.C. §§ 1591, 1595 (2018) ................................................................................ 9

California Civil Code § 51.9 ..................................................................................... 10

**Rules**

Fed. R. Civ. P. 23 .......................................................................................... *passim*

Plaintiffs Louisette Geiss, Sarah Ann Thomas (a/k/a Sarah Ann Masse), Melissa Thompson, Melissa Sagemiller, Nannette May (f/k/a Nannette Klatt), Katherine Kendall, Caitlin Dulany, Larissa Gomes, and Jill Doe (collectively, the "Settlement Class Representatives"), respectfully request that this Court grant their Motion For Preliminary Approval Of Class Settlement, Certification Of Settlement Classes, Appointment Of Class Counsel, and Permission To Disseminate Class Notice ("Motion"), and in support thereof state as follows:[1]

## I.    INTRODUCTION

The proposed Settlement[2] represents a hard-fought battle on behalf of women who allege Harvey Weinstein engaged in sexual harassment and abuse, which various companies, including The Weinstein Company Holdings, LLC and Miramax Film NY LLC and their respective officers and directors, failed to stop or prevent.[3] Unlike several #MeToo-era settlements that came quickly to fruition, the Settlement Class Representatives have battled multiple rounds of motions to dismiss that resulted in dismissals of all defendants except Harvey Weinstein and the majority of the Plaintiffs' claims on the basis of statutes of limitations, a bankruptcy filing by the Debtors, a public relations strategy by Harvey Weinstein's team to shop "dirt" files on the Plaintiffs to media outlets, an intervening criminal conviction of Harvey Weinstein in New York, and pending criminal charges in Los Angeles that threatened the ability to conduct discovery in

---

[1] The New York State Office of the Attorney General ("NYOAG") supports this Motion.

[2] All "capitalized" terms shall have the meanings set forth in the Settlement Agreement and Release ("SA") attached as Ex. 1 to the Motion, unless otherwise set forth herein.

[3] The Weinstein Company Holdings, LLC and its affiliates that are debtors in the jointly administered Chapter 11 proceedings styled (In re The Weinstein Company Holdings, LLC), 18-10601 (Bankr. D. Del.) will collectively be referred to as "TWC" or the "Debtors."

Harvey Weinstein ("Weinstein"), Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, and James Dolan shall collectively be referred to as the "Director Defendants."

Miramax Film NY LLC, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc. are referred as the "Released Non-TWC Entities."

this civil proceeding and to recover in the event of judgment.

Notwithstanding these barriers, the Settlement Class Representatives and the NYOAG were determined to obtain a recovery for all Settlement Class Members and not just the select few whose claims survived motion practice.

The Settlement resolves all Sexual Misconduct Claims[4] against the Released Parties[5] on behalf of a Settlement Class that includes:[6]

> **The Post-2005 Subclass**, defined as "all women, on or after June 30, 2005, who (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof"; and

> **The Pre-2005 Subclass**, defined as "all women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.; provided, however, the Pre-2005 Subclass does not include former employees of Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or any other entity for which Harvey Weinstein worked prior to June 30, 2005."

The Settlement results in the creation of a common fund in the amount of $18,875,000 as the Class Action Settlement Amount. While no amount of money could ever fully compensate

---

[4] SA, ¶ 83 (definition of "Sexual Misconduct Claim"), ¶ 92 (definition of "Tort Claim").
[5] SA, ¶ 76.
[6] SA, ¶ 79 (definition of Settlement Class); ¶ 66 (Pre-2005 Subclass definition); ¶ 62 (Post-2005 Subclass Definition).

the victims for the abuse they suffered at Weinstein's hands, the Settlement provides monetary compensation for the Settlement Class which otherwise would be unlikely to recover given the Debtors' Chapter 11 Cases, the multiple adverse rulings dismissing the Director Defendants, and the dismissal of those representatives who Plaintiffs alleged did not stop or prevent the decades of Weinstein's misconduct.[7]  The common fund represents success with contributions from Insurance Companies despite Harvey Weinstein's criminal conviction and the Insurance Companies' exclusions for coverage for "intentional acts" and, in some policies, "molestation, misconduct or abuse."[8] Finally, the common fund represents the culmination of extensive negotiations with the Official Committee of Unsecured Creditors ("UCC" or "Committee") in the Chapter 11 Cases, led by Plaintiff Louisette Geiss who serves as Co-Chair of the Committee.

Class Counsel and the NYOAG have developed a simple, straightforward process which allows the Settlement Class Members to engage in a confidential and safe claims process, which provides each woman the choice on whether and how much to engage in the claims process to tell their personal, and oftentimes traumatic, histories.  Some key features of the settlement are:

*Accountability:*  While all but one of the defendants were dismissed in this litigation, the defendants and their Insurance Companies will cause the total sum of $18,875,000 to be paid for the benefit of the Settlement Class Members.

*Immediacy and Certainty*:  The Settlement offers guaranteed compensation to the victims quickly and with certainty as compared to protracted, re-traumatizing litigation with

---

[7] *See, e.g., Geiss v. Weinstein Co. Holdings L.L.C.,* 383 F. Supp. 3d 156 (S.D.N.Y. Apr. 17, 2019) (Hellerstein, J.) (denying motion to dismiss against Harvey Weinstein as to three plaintiffs' TVPA claims; granting motion to dismiss all other claims against Weinstein and against Miramax-related companies, The Weinstein Company-related companies, and their officers and directors).

[8] *Fed. Ins. Co. v. Weinstein*, No. 18 Civ. 2526 (PAC), 2019 U.S. Dist. LEXIS 53165, at *4 (S.D.N.Y. Mar. 28, 2019) (Crotty, J.) (discussing insurance policies and summary judgment motion filed by insurers in declaratory judgment action claiming Weinstein's insurers had no duty to defend or indemnify Weinstein in the 18 sexual misconduct lawsuits and claims filed against him).

unpredictable results.

*Choice and Sensitivity*:  The Settlement's two-tier claims structure allows Settlement Class Members to decide in how much detail they wish to tell their story to the Special Master in order to recover under the Settlement.  Tier 1 allows a Settlement Class Members to submit an online or written Claim Form describing her experience, the impact to her, and/or the damages she suffered, and if she chooses, any documentation in support of her Claim Form.  If the Special Master determines that the Claim Form is credible and the conduct or statements actionable, and based on an assessment of the harm to the Claimant, the Settlement Class Member will receive a Claim Award of no less than $7,500 and up to $150,000, subject to Pro Rata Adjustments.

Tier 2 is for Settlement Class Members who decide to provide further evidence of conduct or statement(s) of Harvey Weinstein or persons acting on his behalf and their impact.  In addition to the Claim Form, and if she chooses, any documentation in support of her Claim Form, a Tier 2 Claimant will  also be interviewed by the Special Master or his team.   If the Special Master determines that the Claim Form is credible and that the conduct or statements are actionable, and based on an assessment of the harm to the Claimant, the Tier 2 Claimant shall receive a Claim Award of no less than $7,500 and no more than $750,000, subject to Pro Rata Adjustments.

*Simplicity*:  The Settlement's claims process is designed to make it as easy and comfortable as possible for the victims to effectively participate without having to hire an attorney.  Class Counsel will also help any Settlement Class Member prepare her Claim at no charge to the Claimant.

*Privacy*:  The Settlement structure and process is designed to provide a safe, private place for victims to tell their stories to the extent and in the way they choose, and the opportunity to be

monetarily compensated for the harms they suffered without having to go through invasive, adversarial, and drawn-out litigation.  Defendants will not have access to the identities of Settlement Class Members or their Claim Forms and will have no role whatsoever in determining individual Claim Awards.

Plaintiffs respectfully request that this Court: (i) make a preliminary determination that this Settlement is fair, reasonable and adequate, (ii) determine that it has a basis for concluding that the Court likely will be able, after the final approval hearing, to certify the Pre-2005 Subclass pursuant to Rule 23(a) and (b)(3) and certify the Post-2005 Subclass pursuant to Rule 23(a) and (b)(1)(B), and (iii) direct combined Notice of the proposed Settlement Class and the Settlement to class members pursuant to Rule 23(c)(2)(B) and 23(e)(1).

## II.        BACKGROUND AND PROCEDURAL HISTORY

### A. Dozens of women filed lawsuits and claims in domestic and foreign tribunals.

#### 1. The *Geiss*, *Dulany*, and *Jill Doe* class actions are filed in this District.

On December 6, 2017, the *Geiss* class action complaint was filed by six Plaintiffs in this Court, alleging that Harvey Weinstein was a serial sexual harasser and abuser, whose abuse was not stopped or prevented by the various companies with which he was affiliated and certain of their respective officers and directors, in violation of federal and state law.

On June 1, 2018, the *Dulany* class action complaint, No. 1:18-cv-04857-AKH, was filed by three Plaintiffs in this Court, expanding the scope of the Plaintiffs and claims represented.  At the direction of this Court, on October 31, 2018, Plaintiffs filed the First Amended Complaint which consolidated the two separate class actions under the *Geiss* action. (Dkt. #140).

Finally, the *Jill Doe* complaint was filed on April 17, 2019, No. 1:19-cv-03430, to add a class representative with state law claims within the statute of limitations.

The class action Plaintiffs alleged that Harvey Weinstein was one of the most powerful and influential executives in the entertainment industry.  He had the ability to make or break careers, and he wielded this power to lure his victims and then to abuse and silence them.  Under the guise of meetings ostensibly to help further their careers, to hire them, to make business deals with them, or to network with them at industry events, Weinstein isolated women in an attempt to engage in unwanted sexual conduct that took many forms:  flashing, groping, fondling, battering, falsely imprisoning, sexually assaulting, attempting to rape, and rape.  If they refused Weinstein's unwanted sexual advances, the women were threatened with being blacklisted by Weinstein and his related companies.  Weinstein's conduct followed a consistent and predatory pattern.  *See generally, Geiss* First Amended Complaint (FAC), ¶¶ 8-9 (Dkt. #140).

The class action Plaintiffs also alleged that certain companies owned by Weinstein, as well as certain of their current and former directors and officers, knew or should have known that Harvey Weinstein was a serial predator. Plaintiffs alleged that Weinstein's widespread sexual misconduct occurred because,  among other things: (i) certain employees of TWC and Miramax failed to stop or prevent the assaults; (ii) TWC paid third parties to cover-up Harvey Weinstein's pattern of assault and to silence his victims; and (iii) TWC's Former Representatives, including Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, and James Dolan knew of complaints against Weinstein but nonetheless deliberately chose not to conduct an independent investigation of any misconduct, but instead took the word of the perpetrator at face value. *See, e.g.,* FAC, ¶ 12; *Jill Doe* Compl., ¶ 10.

### 2. The NYOAG filed a lawsuit in state court alleging violations of state and city human rights laws.

On February 11, 2018, the New York State Office of the Attorney General (the

"NYOAG") filed a lawsuit entitled The People of the State of New York v. The Weinstein Company LLC, The Weinstein Company Holdings LLC, Harvey Weinstein, and Robert Weinstein, Case No. 0450293/2018 (N.Y. Sup. Ct.) (the "NYOAG Lawsuit").[9] The lawsuit alleged that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, including demanding sexual contact as a quid pro quo for continued employment or career advancement, subjecting female employees to verbal abuse and demeaning work tasks, and forcing female employees to engage in unwanted sexual contact, and alleged that Robert Weinstein and TWC aided and abetted these violations of law by failing to investigate and/or stop Harvey Weinstein's unlawful activities, all in violation of state and city human rights laws.

### 3. Approximately 20 additional women filed individual foreign, federal, and state lawsuits and claims.

In addition to the class actions and NYOAG Lawsuit, from 2017 through 2019, at least 20 other women filed individual lawsuits or claims in federal and state courts and foreign tribunals similarly alleging that Harvey Weinstein engaged in a serial pattern of sexual abuse and harassment in violation of foreign, federal, or state law. Some of the lawsuits also sought to hold the Director Defendants responsible for failing to stop Weinstein's abuse.

The domestic actions were filed by Plaintiff Kadian Noble in Case No. 17 CV 9260 (S.D.N.Y.); Plaintiff Alexandra Canosa in Case No. 18-cv-4115 (S.D.N.Y.); Plaintiff Wedil David in Case No. 18-cv-05414 (S.D.N.Y.); Plaintiff Emma Loman in Case No. 18-cv-7310 (C.D. Cal.); Plaintiff Dominique Huett in Case No. 18-cv-6012 (C.D. Cal.); Plaintiff Ashley Judd in Case No. 2:18-cv-05724 (C.D. Cal.); Plaintiff Sandeep Rehal in Case No. 151738/2018 (N.Y.

---

[9] See Ex. 3(A).

Sup. Ct.); Plaintiff Paz De La Huerta in Case No. 18SCTV04723 (Sup. Ct. Cal.) and 19-cv-02183 (C.D. Cal); Plaintiff Jane Doe in Case No. 18STCV08468 (Sup. Ct. Cal.); and Plaintiff Kaja Sokola in Case No. 950250/2019 (N.Y. Sup. Ct.), removed to Case No. 20-cv-925 (S.D.N.Y.).[10]

The lawsuits filed in Canada include Plaintiff Jane Doe in Case No. 17-585449 (Ont. Supr. Ct.); Plaintiff Kelly Sipherd in Case No. CV-18-608438 (Ont. Supr. Ct.); and Plaintiff Jill Doe in Case No. CV-18-608425 (Ont. Sup. Ct.) (collectively, the "Canadian Plaintiffs").[11]

The claims filed in tribunals in the United Kingdom include Plaintiffs ABC, CDE, GHI, JKL, and LMN in CLAIM NUMBER: QB-2017-000118 (U.K.); Plaintiff EFG in CLAIM NUMBER: HQ18P00908 (U.K.); Plaintiff Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal); and Plaintiff Pamela Ryan (Ireland) (collectively, "U.K. Plaintiffs").[12]

### B. A series of rulings by federal courts, including this Court, significantly narrowed the claims and defendants.

On September 13, 2018, after oral argument, this Court granted Defendants' motions to dismiss the original *Geiss* Class Action Complaint with leave to amend. Subsequently, on April 19, 2019, this Court granted in part and denied in part Defendants' motions to dismiss the First

---

[10] Except for Emma Loman, each of these Plaintiffs is excluded from the Settlement Classes. Plaintiff Emma Loman has chosen to remain in the Settlement Class. SA, ¶ 78. Plaintiffs Kadian Noble, Sandeep Rehal, Paz De La Huerta, and Jane Doe (Case No. 18STCV08468 (Sup. Ct. Cal.)) are parties to a separate settlement agreement. SA, ¶ 78. *See also* Individual Plaintiffs' Settlement Agreement and Release, attached as Ex. 2(F) to the Joint Declaration of Elizabeth A. Fegan and Steve W. Berman In Support of Motion for Preliminary Approval of Settlement ("Class Counsel Decl."). Plaintiffs Ashley Judd, Alexandra Canosa, Wedil David, Dominque Huett, and Rose McGowan, are excluded from the Settlement Class, and Kaja Sokola is excluded from the Pre-2005 Subclass, because they have chosen to pursue their separate lawsuits. SA, ¶¶ 66, 78.

[11] The Canadian Plaintiffs are excluded from the Settlement Class, as their claims are being resolved through a separate settlement agreement. SA, ¶ 78. *See also* Class Counsel Decl., Ex. 2(F).

[12] Except for Plaintiff Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal), the U.K. Plaintiffs are excluded from the Settlement Class as they are parties to a separate settlement agreement. SA, ¶ 78. *See also* Class Counsel Decl., Ex. 2(F). Plaintiff Jane Doe has chosen to remain in the Settlement Class. SA, ¶ 78.

Amended Complaint. (Dkt. #278).  The Court denied the motion to dismiss the claims of three

Plaintiffs against Harvey Weinstein alleging violations of the Trafficking Victims Protection Act

(TVPA), 18 U.S.C. §§ 1591, 1595 (2018). (Dkt. #278, at 2).  This Court found that the TVPA

"extends to enticement of victims by means of fraudulent promises of career advancement, for

the purpose of engaging them in … non-consensual sexual activity."  (*Id.* at 14).

       As to the remaining claims, the Court dismissed the TVPA claims against TWC and the

Director Defendants, holding that Plaintiffs failed to allege receipt of a benefit from participation

in sex trafficking.  *Id.* at 14-17.  This Court further dismissed the claims brought under the

Racketeer Influenced and Corrupt Organizations Act (RICO) for failure to allege injury to

business or property caused by a RICO violation.  *Id.* at 18-19.  Finally, this Court dismissed the

state law claims as untimely under the applicable limitations periods.  *Id.* at 18-29.  The Court's

decision resulted in the dismissal of all claims alleged by the Pre-2005 Subclass, as well as the

dismissal of all Defendants except Harvey Weinstein.

       During this same period, multiple courts ruled consistently, maintaining TVPA claims

against Harvey Weinstein, but dismissing the claims against the Director Defendants. *See, e.g.,*

*David v. Weinstein Co.,* No. 18-cv-5414 (RA), 2019 U.S. Dist. LEXIS 220125 (S.D.N.Y. Dec.

19, 2019) (Abrams, J.) (denying motion to dismiss of Harvey Weinstein and granting motion to

dismiss of Robert Weinstein); *David v. Weinstein Co.*, No. 18-cv-5414 (RA), 2019 U.S. Dist.

LEXIS 69917 (S.D.N.Y. Apr. 24, 2019) (Abrams, J.) (granting motion to dismiss of nine former

directors of Weinstein's companies); *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 U.S. Dist.

LEXIS 13263 (S.D.N.Y. Jan. 28, 2019) (Engelmayer, J.) (denying motions to dismiss Harvey

Weinstein and certain companies in part, and granting the motions to dismiss all claims against

six former directors of The Weinstein Company); *Noble v. Weinstein*, 335 F. Supp. 3d 504

(S.D.N.Y. 2018) (Sweet, J.) (denying motion to dismiss of Harvey Weinstein and granting motion to dismiss of Robert Weinstein).  *Cf. Huett v. Weinstein Co.*, No. 2:18-cv-06012-SVW-MRW, 2018 U.S. Dist. LEXIS 223736 (C.D. Cal. Nov. 5, 2018) (denying motion to dismiss TVPA claim against Harvey Weinstein); *Judd v. Weinstein*, No. CV 18-5724 PSG (FFMx), 2019 U.S. Dist. LEXIS 42238, at *25 (C.D. Cal. Jan. 9, 2019) (granting Harvey Weinstein's motion to dismiss claim for sexual harassment under California Civil Code § 51.9 with prejudice, but permitting defamation, intentional interference with prospective economic advantage, and violation of California's Unfair Competition Law claims).

### C.  The Weinstein Company Holdings and its affiliates filed a voluntary Chapter 11 petition for bankruptcy.

When Harvey Weinstein's abuse and wrongdoing became widely publicized in late 2017, TWC effectively ceased operations.  On March 19, 2018 ("Petition Date"), The Weinstein Company Holdings LLC and its affiliates ("Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 18-10601 (the "Chapter 11 Cases") (Walrath, J.).  Class Plaintiff Louisette Geiss serves as a Co-Chair of the Official Committee of Unsecured Creditors in the Chapter 11 Cases. Individual Plaintiff Sandeep Rehal is also a member of the Committee.

Through the Chapter 11 Cases, substantially all the assets of the Debtors were sold to Lantern Entertainment pursuant to a sale transaction approved by the Bankruptcy Court on May 9, 2018 that closed on July 13, 2018, with a substantial portion of the proceeds of such sale transaction being applied by the Debtors to satisfy secured debt obligations and other secured obligations of the Debtors in accordance with applicable bankruptcy and non-bankruptcy law.

Prior to the Petition Date and in the ordinary course of business, the Debtors purchased directors and officers liability insurance policies and general liability policies from the Insurance

Companies, which policies provide coverage for, among other things, legal defense costs of and civil judgments entered against the Former Representatives (the "Insurance Policies").  Under the Insurance Policies, the Insurance Companies have contested whether actions such as those alleged in the lawsuits against Harvey Weinstein are covered and require the Insurance Companies to reimburse the directors and officers for costs related to such lawsuits.[13]

Notwithstanding the scope of the Insurance Policies and the Insurance Companies' rights to contest coverage, the Insurance Companies have agreed to contribute certain of the proceeds available under the Insurance Policies in consideration for the agreed upon terms reflected in the Global Settlement Agreement. *See* Ex. 2(C).

The proceeds of the Insurance Policies are the only significant funds available to facilitate consensual resolution of the various Claims against the Debtors and other Released Parties.  Absent the Global Settlement Agreement and the contribution of certain proceeds of the Insurance Policies, the Debtors contend they would be forced to convert their Chapter 11 Case to cases under Chapter 7 of the Bankruptcy Code, which would leave the Debtors' creditors (including the Settlement Class Members) with a recovery significantly lower than what is available due to the Global Settlement Agreement.

### D.  Harvey Weinstein is currently serving a 23-year prison sentence in New York and faces additional criminal charges in Los Angeles.

In *People of the State of New York v. Harvey Weinstein* (N.Y. Sup. Ct.), Harvey Weinstein was convicted of first-degree criminal sexual act and third-degree rape.  On March 11, 2020, he received consecutive prison sentences of 20 years and three years, respectively. The

---

[13] *See, e.g., Fed. Ins. Co.,* 2019 U.S. Dist. LEXIS 53165, at *4 (Crotty, J.) (discussing insurance policies and summary judgment motion filed by insurers in declaratory judgment action claiming Weinstein's insurers had no duty to defend or indemnify Weinstein in the 18 sexual misconduct lawsuits and claims filed against him). *See also* Class Counsel Decl., Ex. C (The Weinstein Company Global Settlement Agreement).

sentences include five years of supervision after release and require Weinstein to register as a sex offender.  As Judge Burke said at the sentencing: "This is a first conviction, but it is not a first offense."[14]

In *The People of the State of California v. Harvey Weinstein*, No. BA483663 (Cal. Sup. Ct.), Weinstein was charged on January 6, 2020 with forcible oral copulation, sexual penetration by force, forcible rape, sexual battery by restraint, and on April 10, 2020, with another charge of sexual battery by restraint.

### E.  Class Counsel and the NYOAG have engaged in complex, prolonged and arms-length settlement discussions with the Debtors, Defendants, UCC, and Insurance Companies for more than two years.

The Settlement Class Representatives for themselves and the Class Members, together with the Individual Plaintiffs, the NYOAG on behalf of the female former employees of TWC whose interests are represented by the NYOAG Lawsuit, the Debtors, Defendants, and the Insurance Companies, engaged in extensive settlement negotiations supervised by Jed Melnick, Esq. of JAMS ADR, a mediator with past experience resolving sexual abuse class actions as well as complex commercial cases involving insurance coverage disputes.  *See* Ex. 6 (Declaration of Jed Melnick ("Melnick Decl.")).

The negotiations spanned a period of more than two years.  All told, there were dozens of in-person mediation sessions hosted by JAMS and negotiation sessions among the parties.  In addition to the face-to-face negotiations, there were hundreds of telephone calls, emails, and other exchanges of information between the Parties.  Melnick Decl., ¶¶ 11, 18-29, 32, 36-37; Class Counsel Decl., ¶¶ 27-33.

The settlement discussions were guided and informed by:

---

[14] https://www.cnn.com/2020/03/11/us/harvey-weinstein-sentence/index.html (last accessed May 7, 2020).

- Rulings in this Court and other federal courts and foreign tribunals;

- The NYOAG's evaluation of documents produced to it from the Debtor and the TWC Former Representatives;

- The production of documents in certain lawsuits;

- The analyses of the Official Committee of Unsecured Creditors (of which Settlement Class Representative Louisette Geiss served as co-chair);

- The Debtors' independent analysis of any direct claims they could assert against the Director Defendants;

- The parties' exchanges of information; and

- The criminal proceedings involving Harvey Weinstein.

*See generally* Melnick Decl.; Class Counsel Decl.

Class Counsel worked closely with the NYOAG to ensure that the settlement negotiations maximized the recovery for the Settlement Class, while also conducting sufficient due diligence with respect to the Debtors' assets and insurance policies.  Together, Class Counsel and the NYOAG also actively participated in the Chapter 11 Cases to secure the limited fund for the Post-2005 Subclass. Class Counsel Decl., ¶¶ 8, 27-33.

During the Settlement process, Class Counsel also retained (i) Brown Rudnick LLP to represent Louisette Geiss in her role as Co-Chair of the Unsecured Creditors Committee in the Chapter 11 Cases, and to ensure that the interests of the Settlement Class were represented in the Chapter 11 Cases; (ii) Morris James LLP as local counsel in the Chapter 11 Cases on behalf of the Settlement Class; and (iii) two independent law firms, Kohn Swift and Girard Sharp, to represent the interests of the Pre- and Post-2005 Subclasses respectively, in order to ensure structural fairness and separate representation in the negotiations of the Allocation Guidelines with the NYOAG. Class Counsel Decl., ¶¶ 8, 38.

Finally, Class Counsel has investigated the experiences of and spoken with putative

Class Members, as well as counsel who represent women with individual claims, who reside domestically and abroad. Class Counsel Decl., ¶ 25.

## III.    MATERIAL TERMS OF THE SETTLEMENT

### A.  The Settlement creates a Class Action Settlement Fund.

Pursuant to the SA, Defendants or their Insurance Companies will contribute the total amount of $18,875,000.00 as the Class Settlement Fund. SA, ¶ 110. The Class Settlement Fund will be used to pay: (a) Administrative Expenses of the Class Action Settlement (including all noticing costs); (b) Taxes on the Class Action Settlement Amount; (c) distributions to Class Action Claimants as provided herein and in the Claim Procedures; (d) Attorneys' Fees and Costs of Class Action Counsel as approved by the District Court; and (e) any service awards that the District Court may award to the Settlement Class Action Representatives.  SA, ¶ 116.

### B.  Settlement Class Members can choose their level of participation in a two-tier Claims Process.

The Settlement contemplates a two-tiered claims process that will be overseen and administered by a Special Master.  The purpose of the two-tiered structure ensures that each Settlement Class Member maintains the personal choice as to how involved she wants to be in the claims process.

**Tier 1**.  Each Settlement Class Member has the option to submit a Claim Form online or via U.S. Mail, describing her experience, the impact to her, and/or the damages she suffered, and if she chooses, any documentation in support of her Claim Form.  That Claim Form will be reviewed by the Special Master or her designee, who may submit additional questions to a Claimant to be answered in writing.  If the Special Master determines that the Claim Form is credible, that the conduct or statements are determined to otherwise be actionable, and based on an assessment of the harm, the Claimant shall receive a Claim Award of no less than $7,500 and

up to $150,000, subject to Pro Rata Adjustments.  SA, ¶ 130, 135-139.

**Tier 2**.  Tier 2 is reserved for Settlement Class Members who decide to provide further evidence of conduct by or statement(s) from Harvey Weinstein or persons acting on his behalf and their impact.  Beyond the written Claim Form, any documentation in support of the Claim Form and written responses to follow up questions by the Special Master Settlement Class Member making a Tier 2 Claim may will also be interviewed by the Special Master or his team regarding the Class Member's experience and the impact of the events on her.  The interviewer will provide an assessment to the Special Master.  Based on all information, if the Special Master determines that the Claim Form is credible, that the conduct or statements are determined to otherwise be actionable, and based on an assessment of the harm to the Claimant, the Special Master shall recommend a Claim Award of no less than $7,500 and no more than $750,000, subject to Pro Rata Adjustments.  SA, ¶ 131, 140-145.

The settlement process is designed to be simple, with a Claim Form that walks the Settlement Class Member through a series of questions designed to elicit sufficient information for review by the Special Master, without the necessity of attorney assistance.  However, to the extent any Settlement Class Member requires help navigating this process or completing a Claim Form, Class Counsel stand prepared to do so at no cost to the Settlement Class Member.

Defendants will not have access to the identities of Claimants or to their Claim Forms and will have no role in determining individual Claim Awards or to challenge Claim Awards. SA, ¶ 149.

The Claim Forms will be administered and adjudicated by a Special Master who has been selected by Class Counsel together with the NYOAG and who is to be approved by the Court. *See* SA, ¶ 152.  Class Counsel will be filing a separate motion to appoint a Special Master.

The Allocation Guidelines are designed to provide the Special Master with guidelines for assigning points to individual claims during the Claims Process. *See* Ex. A to the SA. The guidelines are illustrative only; they are not meant to be a complete or conclusive description of all possible fact patterns for which the Special Master may assign points.  In evaluating a Claim, the Special Master must consider the totality of the circumstances of the Claim.  *Id.*

First, the Special Master will assign up to 80 points to each Claimant based on Weinstein's alleged unwanted conduct or contact, such as unwanted penetration, unwanted sexualized touching, indecent exposure, imprisonment, stalking, verbal sexual harassment, unfavorable or gendered employment terms or denial of professional opportunity based on sex or sex stereotypes, and retaliation. Allocation Guidelines, at 2-3. Each of these types of conduct are more fully explained in the Allocation Guidelines.  By way of example, the Allocation Guidelines explain: "Unwanted sexualized touching may include being touched by [Harvey Weinstein], being coerced or forced to touch HW, or forced or coerced to masturbate in front of HW. The touching may be over or under clothing." Allocation Guidelines, at 2.

Second, the Special Master will consider the alleged impact of Weinstein's conduct on the Settlement Class Member and may assign up to an additional 20 points. The impact may include personal injury and economic harm. Out-of-pocket costs associated with these impact(s) may be presented as evidence of the magnitude of the impact(s), but there is no guarantee or expectation that out-of-pocket costs will be covered nor an assumption that a Claimant with out-of-pocket costs was more greatly impacted by Weinstein's conduct than a Claimant without out-of-pocket costs. *Id.* at 3-4.

The Special Master will also consider the likelihood that the Claimant would have been able to prove her claims in court, including the application of the relevant statutes of limitation

and any other relevant considerations.  The fact that a claim may be time-barred under the relevant statute of limitations, however, shall not be used as a total bar to recovery in the Class Claims Process. *Id.* at 1.

While the overall types of fact patterns that the Special Master may assess were informed by the investigation and due diligence of Class Counsel and the NYOAG, the weight to be afforded to conduct and status of claims (e.g. pending lawsuit or statute of limitations) was negotiated by Subclass Counsel and the NYOAG. In order to ensure that the rights and interests of the Pre-2005 Subclass Members were protected in the claims process, Jonathan Shub of Kohn, Swift & Graf, P.C. was asked by Class Counsel to represent the Pre-2005 Subclass for the purpose of negotiating the Allocation Guidelines.  *See* Declaration of Jonathan Shub ("Shub Decl."). Similarly, so that the interests of the Post-2005 Subclass Members were equally protected in the claims process, Dan Girard and Elizabeth Kramer of Girard Sharp LLP were asked by Class Counsel to represent the Post-2005 Subclass for the limited purpose of negotiating the Allocation Guidelines. *See* Declaration of Daniel Girard ("Girard Decl.").

Both Mr. Shub and Mr. Girard are experienced class action attorneys, have experience with negotiating on behalf of subclasses where interests may diverge during the settlement process, and are trauma-informed litigators.  *Id.* Each of the Settlement Subclass Representatives consulted with either Mr. Shub or Mr. Girard to ensure that the interests of the respective subclasses were zealously represented during the negotiations of the Allocation Guidelines.

In consultation with the Special Master and his team, Class Counsel and the NYOAG will jointly develop the protocols for interviews or other oral or written direct contact with the Class Members relating to applications for Class Claim Awards.  SA, ¶ 152.

The Special Master will also hear and decide the appeals of any Class Claimants who

17

wish to challenge their Claim Award.  The Special Master will establish fair procedures to govern this reconsideration process and ensure that each Class Claimant is provided adequate notice of those procedures in connection with the distribution of Claim Awards. SA, ¶ 146.

In the event the total payments for Class Action Claim Awards, Class Action Administrative Expenses, Attorneys' Fees and Costs, and Class Action Service Awards do not meet or exceed the Class Settlement Amount, Tier 1 and Tier 2 Claim Awards will be increased on a *pro rata* basis until the Class Settlement Amount is reached.  There will similarly be a *pro rata* decrease in the event the total payments for Class Action Claim Awards, Class Action Administrative Expenses, Attorneys' Fees and Costs, and Class Action Service Awards exceed the Settlement Amount.  SA, ¶¶ 73-75, 90-91, 130-31, 138, 144-45.

### C.  All Settlement Class Members may object to the Settlement.

Any Settlement Class Member may object to the fairness, reasonableness, or adequacy of the Class Settlement, or the application of Class Counsel for an award of attorneys' fees and costs and/or for service awards for Settlement Class Representatives.  Class Counsel propose that the date for objections be set as for the same calendar day as the Tort Claims Bar Date[15] in the Chapter 11 Cases in order to reduce the burden on the Post-2005 Subclass; in other words, Settlement Class Members will only need to be aware of one date by which to submit their Claim Form (which will satisfy their obligations in the Chapter 11 Cases) and any objections. The parties recognize this will require coordination with Judge Walrath, who is overseeing the Chapter 11 Cases. To that end, a suggested schedule is set forth in Section VIII, *infra*.

### D.  Pre-2005 Subclass Members may opt out of the Settlement.

Any Pre-2005 Settlement Subclass Member who wishes to opt out of the Pre-2005

---

[15] *See* 1(C) (The Weinstein Company Global Settlement Agreement, ¶ 10); Ex. 2(D) (Joint Chapter 11 Plan of Liquidation, § 3.2).

Settlement Subclass must submit a timely written request for exclusion on or before the Pre-2005

Settlement Subclass Opt-Out Deadline, in the manner specified in the notice and Preliminary

Approval Order, which written request will in any event include sufficient identifying

information so that Defendants may properly evaluate their right to withdraw from the

Settlement.  SA, ¶ 101, 161.

Post-2005 Subclass Members may not opt out of the Settlement because Plaintiffs seek to

certify the Post-2005 Subclass as a limited fund class action or mandatory class pursuant to Fed.

R. Civ. P. 23(b)(1)(B). *See* Section V.B, *infra.*

### E. Class Counsel will apply for Attorneys' Fees in an amount not to exceed 25 percent of the Settlement Fund, plus out-of-pocket expenses.

Class Counsel, on behalf of Additional Class Counsel and Subclass Counsel, will apply

for an award of Attorneys' Fees not to exceed 25 percent of the Class Settlement Fund, plus

reimbursement for out-of-pocket expenses. Former Class Counsel may also apply for an award

of Attorneys' Fees and reimbursement of expenses. The Settlement may not be set aside if the

Attorneys' Fees and Costs award approved by the District Court is less than the amount sought

by Class Counsel, Additional Class Counsel, Subclass Counsel, or Former Class Counsel. SA, ¶

155.

## IV.    THE PROPOSED SETTLEMENT MERITS NOTICE AND SCHEDULING FOR FINAL APPROVAL

### A. This Court should make the preliminary determinations required as part of the class action settlement process, as amended.

While the Court is well-familiar with long-standing class action settlement approval

procedure, given the newly-effective amendments to Fed. R. Civ. P. 23 governing class

settlements, the Settlement Class Representatives respectfully set out the new process here.

Prior to these changes, courts in the Second Circuit interpreted Rule 23 to only require

19

the settlement to be "within the range of possible final approval." *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997). "Under the new standards, a district court must consider whether the court 'will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal.'" *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. Nov. 7, 2019) (quoting *In re Payment Card, Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. Jan. 28, 2019).

While Rule 23(e)(2) sets forth the criteria the court must consider in determining whether a proposed class settlement merits approval, the court must also consider the perspective of the class members who would be bound by a settlement. The approval process is thus a three-step process. Further, where, as here, no class had been certified prior to settlement, consideration of class certification is folded into the three-step settlement approval process. The resulting combined approval/certification process is as follows:

First, the Court must make a preliminary determination of whether a settlement satisfies the criteria set out in Rule 23(e)(2). At the same time, the Court must determine whether it has a basis for concluding that it likely will be able, after the final approval hearing, to certify the class under the standards of Rule 23(a) and (b). If the answer to both questions is "yes," the Court proceeds to step two.

Second, the Court directs combined notice of the proposed Class and the Settlement to class members pursuant to Rule 23(c)(2)(B) and 23(e) (1), which includes a period for class members to voice objections to the settlement, opt out of the proposed class if certification is pursuant to Rule 23(b)(3), or to indicate their approval by making claims.

Third, the Court holds a hearing to make its final determination of whether the settlement is fair, reasonable, adequate under the criteria set forth in 23(e) (2); and whether the class merits

certification.

As detailed below, this Settlement meets the standard for preliminary approval set by 23(e)(1), and Plaintiffs have established a basis for the Court to certify the Class, so notice should be directed to the Class.

### B.  The proposed Settlement satisfies Rule 23(e)(2) and the *Grinnell* factors.

To be likely to approve a proposed settlement under Rule 23(e)(2), the Court must find that the Settlement is "fair, reasonable, and adequate." The newly amended Rule 23 enumerates four factors for the Court to consider as part of this inquiry: (1) adequacy of representation, (2) existence of arm's-length negotiations, (3) adequacy of relief, and (4) equitableness of treatment of class members. Fed. R. Civ. P. 23(e)(2). Prior to the 2018 amendments, courts in the Second Circuit considered whether a settlement was "fair, reasonable, and adequate" under nine factors set out in *Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974).[16] The Advisory Committee Notes to the 2018 amendments indicate that the four new Rule 23 factors were intended to supplement rather than displace these "Grinnell" factors. *See* 2018 Advisory Notes to Fed. R. Civ. P. 23, Subdiv. (e)(2) ("2018 Advisory Note"). Accordingly, we address both sets of factors in the below analysis.

#### 1.  Settlement Class Representatives and Class Counsel have fairly and adequately protected the interests of the Class

The first two subsections under Rule 23(e)(2), subsections (A) and (B), represent the

---

[16] The *Grinnell* factors include: "(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]" *Id.* at 436.

procedural factors which examine the conduct of the litigation and the negotiations leading up to the proposed settlement.  Advisory Committee Note to 23(e)(2).  "[A]dequacy of representation is measured not only by reference to class counsel—who must be qualified, experienced, and generally able to conduct the litigation—but also to class representatives—who must have sufficient knowledge and involvement to be able and willing to protect the interests of the class against the possibly competing interests of the attorneys." *Padovano v. FedEx Ground Package Sys.*, No. 16-CV-17-FPG, 2019 U.S. Dist. LEXIS 107092, at *8 (W.D.N.Y. June 10, 2019) (citation and internal quotations omitted).  The proposed class representatives must have an interest in vigorously pursuing the claims of the class and must not have interests antagonistic to the interests of the other class members. *Denney v. Deutsche Bank AG*, 443 F.3d 253, 268 (2d Cir. 2006).

First, this Court has witnessed first-hand Class Counsel's tenacity in pursuing claims on behalf of the Settlement Class, as well as their ability to present complex and novel legal arguments during multiple oral arguments. Class Counsel successfully defeated Harvey Weinstein's motion to dismiss where this Court found that the TVPA "extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in …non-consensual sexual activity." (Dkt. #278, at 14).  This decision, which allows sex trafficking claims against Harvey Weinstein to proceed even when money has not exchanged hands, was a victory for the Settlement Class Representatives and the putative class – as well as an important step forward in the law.  Class Counsel also has deep experience generally in class actions, including in sexual abuse and sexual harassment cases. *See also* Exs. 1(A), 1(B) (Firm Resumes).

Second, the Settlement Class Representatives' interests are aligned with the Settlement

Class.  The interests of Louisette Geiss, Sarah Anne Masse, Melissa Thompson, and Jill Doe are aligned with the Post-2005 Subclass. Each has worked tirelessly with Class Counsel to ensure a recovery for all class members, regardless of whether they have pending claims, as well as worked with the Post-2005 Subclass Counsel to ensure that the Allocation Guidelines were negotiated with the subclass's interests in mind. Moreover, Ms. Geiss serves as Co-Chair of the Unsecured Creditors Committee, and has spent significant time to ensure that the Debtors' assets were protected for the benefit of all unsecured creditors in a fair manner. *See* Exs. 8 (Geiss Decl., ¶¶ 16-20); 9 (Masse Decl. ¶¶ 20-27); 10 (Thompson Decl., ¶¶ 6-12); 16 (Jill Doe Decl., ¶¶ 21-24).

Similarly, the interests of the Pre-2005 Subclass are aligned with the Settlement Class Representatives Nanette Klatt, Melissa Sagemiller, Caitlin Dulaney, Larissa Gomes, and Katherine Kendall. Each has also worked closely with Class Counsel, demonstrating their willingness to share very personal details of their experiences in order to forge the claims for the Pre-2005 Subclass. Each recognized the risks involved in bringing a class action but felt it important to do so to recover for all class members. Moreover, each consulted directly with the Pre-2005 Subclass Counsel to ensure fairness was included in the Allocation Guidelines – even for expired or unfiled claims. *See* Exs. 11 (Sagemiller Decl., ¶¶ 15-16); 12 (Klatt Decl., ¶¶ 14-15); 13 (Kendall Decl., ¶¶ 22-26); 14 (Dulany Decl., ¶¶ 6-11); 15 (Gomes Decl., ¶¶ 14-17). Accordingly, Rule 23(a)(4) is satisfied.

Additionally, the Settlement Class Representatives have publicly revealed deeply private and profoundly traumatic events from their personal lives which form the basis of the underlying claims.  The Settlement Class Representatives' collective reporting of the events show that they have the same injuries as the Class Members, the central claim being that Harvey Weinstein

abused his position of power and trust under the guise of furthering careers and businesses, in order to sexually assault and abuse those women. *See e.g.,* Exs. 8 (Geiss Decl., ¶¶ 3-14); 11 (Sagemiller Decl., ¶¶ 3-14); 12 (Klatt Decl., ¶¶ 3-11); 14 (Dulany Decl., ¶ 3-7); 15 (Gomes Decl., ¶¶ 3-12); and 16 (Jill Doe Decl. ¶¶ 3-21). In so doing, the Settlement Class Representatives have positioned this case for settlement and demanded confidentiality protections for the Settlement Class Members who come forward to file claims. The Settlement Class Representatives have therefore more than adequately represented the Settlement Class.

In addition, the NYOAG gathered and reviewed documents and information from the Debtors and several of the Director Defendants. In furtherance of settlement negotiations and for the benefit of Weinstein's victims, including the former female employees of TWC whose interests are represented by the NYOAG Lawsuit, the NYOAG presented this information during mediation sessions. Ex. 3 (Declaration of the New York State Office of the Attorney General ("NYOAG Decl."), ¶ 5).   Moreover, Class Counsel has conducted extensive investigation, including interviewing many putative class members.[17]

Armed with this knowledge, Class Counsel and the NYOAG participated in more than two dozen in-person and telephonic mediation sessions with the Debtors, Director Defendants, Insurance Companies, and Unsecured Creditors Committee.  There have been 11 in-person mediation sessions by and between the various parties presided over by Mr. Melnick of JAMS, which have been hard-fought and at arms-length.  Ex. 2 (Class Counsel Decl., ¶¶ 27-30); Ex. 6

---

[17] Discovery within the context of a class action settlement need not be formal discovery; instead, to adequately represent the class, counsel must demonstrate access to the information regarding the facts of the case. *Handschu v. Special Servs. Div.*, 605 F. Supp. 1384 (S.D.N.Y. 1985) (formal discovery is not a necessary ticket to the bargaining table); *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 436-37 (3d Cir. 2016) ("In some cases, informal discovery will be enough for class counsel to assess the value of the class' claims and negotiate a settlement that provides fair compensation"). *See also* Fed. R. Civ. P. 23, *Advisory Committee Comments to Paragraphs (A) and (B).*

(Melnick Decl.).

Finally, in order to ensure that there was no conflict between the Pre-2005 Subclass and the Post-2005 Subclass with respect to the weighting of factors in the Allocation Guidelines, Class Counsel requested that Jonathan Shub of Kohn, Swift & Graf protect the interests of the Pre-2005 Subclass and Daniel Girard of Girard Sharp, LLP protect the interests of the Post-2005 Subclass.  Ex. 2 (Class Counsel Decl., ¶ 37); Ex. 4 (Shub Decl., ¶ 2); Ex. 5 (Girard Decl., ¶ 2). The NYOAG also participated in the negotiation of the Allocation Guidelines to advocate for the female former employees of TWC whose interests are represented by the NYOAG Lawsuit. Ex. 3 (NYOAG Decl., ¶ 8). That process has ensured that the Settlement Class and the Subclasses have been adequately represented. Accordingly this factor favors preliminary approval of the Settlement.

> ## 2.   The settlement was arrived at after arms' length negotiations with the assistance of an experienced JAMS mediator.

The extensive involvement of JAMS' Jed Melnick underscores the procedural fairness of the Settlement.  The involvement of a neutral mediator or facilitator in settlement negotiations suggests that they were not the product of collusion and were conducted in a manner that would protect and further the class's interests.  *See* Fed. R. Civ. P. 23, *Advisory Committee Comments to Paragraphs (A) and (B)*.  Mr. Melnick has historic experience successfully mediating and settling sex abuse claims.  *See Doe v. Bradley*, 64 A.3d 379 (Del. Super. Ct. 2012) (reflecting Mr. Melnick's participation as a mediator in the settlement of a pediatric sex abuse class action).

Mr. Melnick's involvement in the settlement process is illustrated by the many mediation sessions that he hosted for the parties, and various combinations of the parties and their Insurance Companies.  All were held with the goal of reaching a resolution that would consider

the interests of the Class, the Defendants' exposure and wherewithal, the availability of

insurance, and considerations relating to the bankruptcy.

Mr. Melnick was ultimately able to broker the Settlement whereby the Insurance

Companies would agree to contribute proceeds to the Settlement Fund on behalf of the

Defendants (and the Director Defendants agreed to forego any rights to those proceeds) in

exchange for a release from claims pursuant to the Class Settlement and the Bankruptcy Court

process.   A full and final settlement of the claims induced the carriers to participate in mediation

and ultimately to contribute substantially to the Settlement.  *See Doe v. Bradley,* 64 A.3d at 395.

Based on the foregoing, the fact that the Settlement was reached after extensive, arms'

length negotiations before a skilled, experienced neutral mediator favors preliminary approval

consistent with Rule 23(e)(2)(B).

### 3.   The Settlement provides adequate relief for the Settlement Class.

A court must examine the following factors in assessing whether a settlement provides

adequate relief for the putative class:

> (i) the costs, risks, and delay of trial and appeal; (ii) the
> effectiveness of any proposed method of distributing relief to the
> class, including the method of processing class-member claims, if
> required; (iii) the terms of any proposed award of attorney's fees,
> including timing of payment; and (iv) any agreement required to be
> identified under Rule 23(e)(3).

Fed. R. Civ. P. 23(e)(2)(C).  The contemplated Settlement provides significant monetary relief to

class members without the risks and delays of trial and appeal.  *See In re Payment Card*

*Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019); *Padovano*,

2019 U.S. Dist. LEXIS 107092, at *10.

### a. The costs, risks, and delay of trial and appeal

This Rule 23(e)(2)(C)(i) factor encompasses several *Grinnell* factors which will be addressed in turn, including (i) the complexity, expense and likely duration of the litigation; (ii) the risks of establishing liability; (iii) the risks of establishing damages; and (iv) the risks of maintaining the class through the trial." *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 36.

"Settlement is favored if settlement results in substantial and tangible present day recovery, without the attendant risk and delay of trial." *Id.* (citations and internal quotations omitted). What would occur with continued litigation of this matter has been aptly summarized in another case:

> Formal document and deposition discovery would have been costly, intrusive and time consuming. Expert discovery likewise would have taken much time and money. Dispositive motion practice surely would have followed discovery and would have added time to the litigation and burden upon the parties and the Court. If the claims survived dispositive motions, the trial would have been lengthy and unimaginably complex. And then the appeals....

*Bradley,* 64 A.3d at 395.

"One strong motivation for this settlement, animating both plaintiffs and defendants, is to avoid the risks, expenses and delays of a trial." *In re September 11 Litig. World*, 723 F. Supp. 2d 534, 545 (S.D.N.Y. 2010) (Hellerstein, J.). Because Harvey Weinstein is expected to pursue an appeal of his criminal conviction in New York as well as contest the criminal charges pending in Los Angeles, he is incentivized to fight and not concede any issue in this litigation. As such, it is expected that Harvey Weinstein would dispute the appropriateness of class certification, deny liability, and contest damages. Continuing the litigation through trial would undoubtedly be lengthy, time-consuming, and expensive.

27

Moreover, subjecting class members to cross-examination would unnecessarily and painfully draw out the Class's quest for accountability and closure.  Litigating through trial would impose a substantial emotional toll on the Class Members, requiring them to re-live the traumatic experiences they endured.  *See Bradley,* 64 A.3d at 395 ("the emotional costs of litigation cannot be ignored").

Finally, if the case ultimately went to verdict, an appeal would likely be taken regardless of the outcome.  This has already been shown where Harvey Weinstein sought a Certificate of Appealability in an attempt to take an interlocutory appeal and to stay proceedings in this case after this Court denied his motion to dismiss Count I.  (Dkt. #281).  The Settlement presents "a significantly superior means by which to resolve the class claims," *see Bradley,* 64 A.3d at 395, and this *Grinnell* factor therefore weighs in favor of preliminary approval.

"Litigation inherently involves risks, both in establishing liability and damages."  *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 U.S. Dist. LEXIS 122655, at *10 (S.D.N.Y. Sept. 11, 2015) (citation omitted).  As a result of this Court's ruling on the Defendants' motions to dismiss, the only viable claim is the TVPA claim brought by the Post-2005 Subclass Representatives against Harvey Weinstein individually.  Proceeding to trial and establishing both liability and damages presents a risk for the Post-2005 Subclass Representatives because of the unique nature of the TVPA claim in this context.  A settlement avoids years of litigation that would require significant discovery, briefing related to class certification and summary judgment, and the attendant time, expense, and risk of litigating fact intensive, potentially re-traumatizing claims.  A settlement provides an outcome with certainty.

Importantly, without a settlement, the Pre-2005 Subclass Members, whose claims have been dismissed by this Court, would not have any redress except only after a successful appeal,

which success cannot be predicted with any certainty.  A settlement at this juncture provides the

Pre-2005 Subclass Members an immediate remedy where a future one is uncertain and perhaps

unlikely.

Finally, the Settlement provides for contributions from corporate defendants and/or their

Insurance Companies, none of whom have any present exposure because they were dismissed

from this action.  A settlement affords relief for the all Class Members and provides

contributions from parties that have been dismissed from the litigation.  The Settlement Class

Members view this as a significant element of the settlement.  *See* Ex. 11, ¶ 16; Ex. 14, ¶ 14; Ex.

15, ¶ 21; and Ex. 16, ¶ 28. "Class action suits readily lend themselves to compromise because of

the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.

There is a strong public interest in quieting any litigation; this is particularly true in class

actions." *In re Luxottica Grp. S.p.A. Secs. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006).  Thus,

these two *Grinnell* factors, relating to the risks of establishing liability and damages, favor

preliminary approval.

"Settlement eliminates the risk, expense, and delay inherent in the litigation process."

*Long*, 2015 U.S. Dist. LEXIS 122655, at *11 (citation omitted).  Although the risk of

maintaining a class through trial is present in every class action, this factor weighs in favor of

settlement where it is likely that the defendant would oppose class certification.  *In re Payment*

*Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 39-40.  Because Weinstein

is personally exposed to liability in this proceeding, and because he reportedly plans to appeal his

criminal conviction, he will undoubtedly oppose class certification if the litigation continues.

Settlement at this juncture eliminates this risk of maintaining this action as a class action through

trial, and this *Grinnell* factor favors preliminary approval of the settlement.

**b. The proposed method of distributing relief to the Settlement Class Members is effective.**

This element requires a court to consider "the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." *Id.* R. 23, Advisory Committee Note to Paragraphs (C) and (D). The Settlement provides that the Settlement Fund will be distributed to qualifying Settlement Class Members under a two-tiered claim process which ensures that all Settlement Class Members have the opportunity for compensation consistent with how involved each chooses to be in the settlement process. The process will be administered by a Special Master, who will be specifically chosen by Class Counsel and the NYOAG and approved by the Defendants, as well as appointed by the Court. SA, ¶ 152. Class Counsel and the NYOAG, in consultation with the Special Master, will oversee all written and oral communications with the Class Members. *Id.,* ¶ 152.

In order to protect the respective interests of the Pre-2005 Settlement Subclass and the Post-2005 Settlement Subclass, Jonathan Shub of Kohn, Swift & Graf represented the Pre-2005 Settlement Subclass Members for purposes of negotiating the Allocation Guidelines that will be used by the Special Master to award claims. Daniel Girard of Girard Sharp represented the Post-2005 Subclass in this process. *See* Shub Decl.; Girard Decl. The NYOAG negotiated on behalf of former female employees of TWC whose interests are represented by the NYOAG Lawsuit. NYOAG Decl., ¶ 8.

While the Special Master's process of adjudicating claims may be somewhat involved, the process involving the Class Members in *submitting* claims will be relatively simple. Tier 1 Claimants will submit an online or written Claim Form which has been carefully crafted, describing her experience, the impact to her, and/or the damages she suffered, and if she chooses,

any documentation in support of her Claim Form.  The Special Master and his team will review

the Claim Form and may submit additional questions to a Claimant to be answered in writing.  If

the Special Master determines that the Claim Form is credible, and that the conduct or statements

are determined to otherwise be actionable, and based on an assessment of the harm to the

Claimant, the Claimant shall receive a Claim Award of no less than $7,500 and up to $150,000.

SA, ¶ 130.

Tier 2 Claimants are those who decide to provide further evidence beyond the written

Claim Form and written follow up questions of conduct by or statement(s) about Harvey

Weinstein or persons acting on his behalf and their impact.  The Special Master or his team will

review the Claim Form and any additional evidence submitted describing Class Member's

experience, the impact to her, and/or the damages she suffered, and will conduct interviews.  The

interviewer will provide an assessment to the Special Master, and if the Special Master

determines that the Claim Form is credible, that the conduct or statements are determined to

otherwise be actionable, and based on an assessment of the harm to the Claimant, the Special

Master shall recommend a Claim Award of no less than $7,500 and no more than $750,000.  SA,

¶ 131.

In the event the total payments for Class Claim Awards, Class Administrative Expenses,

Attorneys' Fees and Costs, and Class Service Awards do not meet or exceed the Class Settlement

Amount, Tier 1 and Tier 2 Claim Awards will be increased on a percentage basis until the Class

Settlement Amount is reached.  There will similarly be a corresponding decrease in the event the

total payments for Class Claim Awards, Class Administrative Expenses, Attorneys' Fees and

Costs, and Class Service Awards exceed the Settlement Amount.  SA, ¶¶ 72-74.

There will be an appeal process for any Claimant who wishes to challenge their Claim

31

Award.  This process will be adjudicated by the Special Master, who will also establish fair procedures to govern this reconsideration process and ensure that each Claimant is provided adequate notice of those procedures in connection with the distribution of Claim Awards. SA, ¶ 146.

These procedures will ensure fairness, uniformity, and consistency in distributing the awards to the Class Members, based on their decision as to how involved they want to be in the process, and as such, this factor favors preliminary approval of the Settlement.

### c. Class Counsel will apply for an award of Attorneys' Fees up to 25 percent of the Settlement Fund, plus out-of-pocket costs.

The Settlement provides that Class Counsel and Additional Class Counsel will be paid from the Class Settlement Fund, subject to this Court's approval, and fees may not exceed 25 percent of the Class Settlement Fund.  Class Counsel's expenses will also be reimbursed, subject to this Court's approval.  Former Class Counsel may also apply for an award of attorneys' fees and reimbursement of expenses.  The Settlement may not be set aside if the fee and cost award approved by this Court is less than the amount sought by Class Counsel.  SA, ¶ 155.

This Court will undertake a full analysis at the final approval stage of attorneys' fees, and Class Members will have the opportunity to review and comment on or object to the fee petition, *see* Rule 23(h).  At this stage, the attorneys' fees provision favors preliminary approval of the Settlement.  *See In re Payment Card,* 330 F.R.D. at *42.

Courts may award attorneys' fees in common fund cases under the lodestar method or the percentage of the fund method.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 121 (2d Cir. 2005).  The trend in this Circuit is the percentage method which aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early

resolution of litigation. *Id.* at 122. Such awards ensure that counsel is compensated not only for skillfully negotiating the monetary settlement fund but for bearing the risk that the suit would not generate any recovery. *Fresno Cty. Emps. Ret. Ass'n v. Isaacson*, 925 F.3d 63, 73 (2d Cir. 2019). Attorneys' fees of no more than 25% of the Settlement Fund is fair and appropriate in this matter, with its inherent risks and contingencies.

In fact, in this Circuit, one-third, or 33-1/3%, of the settlement amount in common fund cases is considered reasonable and fair. *See Reyes v. City of Rye*, No. 13 Civ. 9051 (NSR), 2017 U.S. Dist. LEXIS 103096, at *20 (S.D.N.Y. June 30, 2017) (awarding fees of one-third of the settlement amount in a wage and hour case, which is "consistent with the norms of class litigation in this circuit;" citing cases); *Thornhill v. CVS Pharm., Inc.*, No. 13 Civ. 5507 (JMF), 2014 U.S. Dist. LEXIS 37007, at *7-8 (S.D.N.Y. Mar. 20, 2014) (awarding attorneys' fees in the amount of 33-1/3% of the settlement fund in a FLSA action; "In this Circuit, courts typically approve attorney's fees that range between 30 and 33-1/3%;" collecting cases); *In re Imax Secs. Litig.*, No. 06 Civ. 6128 (NRB), 2012 U.S. Dist. LEXIS 108516, at *2 (S.D.N.Y. Aug. 1, 2012) (awarding 33% of the settlement amount to be apportioned among counsel as attorneys' fees and expenses in a securities class action). The amount requested in this matter is actually lower than another attorneys' fee award in a sexual abuse class action in this Circuit. *See St. Louis v. Perlitz*, No. 3:14-cv-00668-RNC, 2019 U.S. Dist. LEXIS 130324, at *820 (D. Conn. June 6, 2019) (awarding fees of 31% of the Settlement Fund, in addition to expenses).

Based on the foregoing, the attorneys' fees provision favors preliminary approval under Rule 23(e)(2)(C)(iii).

### d.  This Settlement Agreement is one part of the overall resolution of the Chapter 11 Cases.

Rule 23(e)(2)(C)(iv) requires the parties seeking approval of a settlement to identify any

agreement made in connection with the proposed settlement.  In addition to this Court's approval, the Settlement is contingent on a Confirmation Order from the Bankruptcy Court approving the Joint Chapter 11 Plan of Liquidation (Ex. 2(D)), which incorporates The Weinstein Company Bankruptcy Global Settlement Agreement (Ex. 2(C)) and the Individual Plaintiffs' Settlement Agreement and Release (Ex. 2(E)).

To that end, as set forth in Section VIII *infra*, Class Counsel has worked with the Debtors and UCC to propose a plan of coordination as between this Court and the Bankruptcy Court, subject to each respective Court's availability and approval.

### 4. The Settlement treats Class Members equitably through application of the Allocation Guidelines.

Consideration under this Rule 23(e)(2)(D) factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23, *Advisory Committee Comment to Paragraphs (C) and (D).*  For the reasons set out above addressing the method of distributing relief to the Class, and separate counsel representing the Subclasses for purposes of negotiating the Allocation Guidelines, the Settlement treats all Class Members equitably.  *See In re: USC Student Health Center Litig.*, No. 2:18-cv-04258, Final Approval Order and Judgement (2/25/20) (Dkt. #172), ¶ 7 ("Rule 23(e)(2)(D) is satisfied as the Settlement treats Class Members equitably by presenting each of them with the same choices within the three-tier structure").

### 5. The remaining *Grinnell* factors support preliminary approval of the Settlement.

#### a. Neither the Debtors nor Harvey Weinstein could withstand seriatim judgments.

The Settlement contemplates a fund in the amount of $18,875,000, which includes

contributions from the Insurance Companies for the Debtors (including relating to the D&O policies which provide coverage for the Director Defendants), Director Defendants, and Non-Debtor Entities.  Without the Settlement, there will likely be little, if any, contribution from the Debtors, and any additional contribution from the Director Defendants[18] (or any contribution from the Non-Debtor Entities) would likely only occur after a successful appeal if the claims were reinstated – and such an outcome is contingent, only occurring after years of litigation, if at all.  Thus, the Settlement amalgamates resources from parties who presently have no exposure in the litigation.

Relatedly, the remaining claims that survived motions to dismiss are solely against defendant Harvey Weinstein.  Based on the fact that Harvey Weinstein  is currently incarcerated and facing additional criminal charges, it is highly unlikely that he, personally, could withstand seriatim judgments.  Moreover, any such verdict could only come after years of litigation, and all during that time, any financial resources Weinstein does have will be used to defend his criminal cases.  Therefore, this *Grinnell* factor supports preliminary approval of the Settlement.

### b. The Settlement is within the range of reasonableness in light of the best possible recovery and the attendant risks of litigation.

"'[T]here is a range of reasonableness with respect to a settlement –  a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)).  "The inquiry with respect to this factor is to see whether the settlement falls below the lowest point in the range of reasonableness."  *Long*, 2015 U.S. Dist. LEXIS 122655, at *12

---

[18] Moreover, the Director Defendants have indemnification rights against the Debtors.

(citations and internal quotations omitted).  Importantly, "when a settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable under this factor." *Massiah v. MetroPlus Health Plan, Inc.*, No. 11-cv-05669 (BMC), 2012 U.S. Dist. LEXIS 166383, at *11 (E.D.N.Y. Nov. 16, 2012) (internal quotation marks and citation omitted).

The Settlement provides for payments of $7,500 to $150,000 for Tier 1 Claimants and $7,500 to $750,000 for Tier 2 Claimants with approved claims, subject to Pro Rata Adjustments. The Special Master will recommend the awards after determining the claim is credible and the conduct described is actionable. As set out above, the possibility that Harvey Weinstein could withstand seriatim verdicts following more than 20 civil trials (based on currently pending lawsuits) is unlikely.  In light of the risks of litigation, this Settlement provides a meaningful, financial recovery for Settlement Class Members.  Therefore, the final two *Grinnell* factors support preliminary approval of the Settlement.

Based on the foregoing, the elements of Fed. R. Civ. P. 23(e)(2) and the *Grinnell* factors, this Court should preliminarily find that the Settlement is fair, reasonable, and adequate.

## V.   THE COURT WILL BE ABLE TO CERTIFY THE PROPOSED SETTLEMENT SUBCLASSES.

Before granting preliminary approval of a settlement and providing notice to the class in a case where the class has not yet been certified, the Court must determine whether the class proposed for settlement purposes is appropriate under Rule 23.  *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).  While the ultimate decision to certify the class is not made until the final approval hearing, at the preliminary approval stage, "the parties must ensure that the court has a basis for concluding that it likely will be able, after the final hearing, to certify the class." Fed. R. Civ. P. 23, Advisory Committee Note to Subdivision (e)(1).

Certification of settlement classes in sexual abuse cases has become an appropriate tool

in cases where a perpetrator has allegedly engaged in a pattern of conduct facilitated by the

network around him. *See In re USC Student Health Ctr. Litig.*, No. 2:18-cv-06115-SVW-GJS,

2019 U.S. Dist. LEXIS 122658 (C.D. Cal. June 12, 2019) (certifying settlement class of

thousands of patients exposed to physician who sexually harassed or abused female patients at

university student health center); *St. Louis*, 2019 U.S. Dist. LEXIS 130324 (granting final

approval to a class action settlement under Rule 23 involving claims of sexual abuse of children

at a school in Haiti); *Doe v. The John Hopkins Hosp.*, No. 24C13001041, 2014 WL 5040602

(Md. Cir. Ct. Sept. 19, 2014) (approving a class settlement of claims of surreptitious

photographing and inappropriate touching brought by former patients against gynecologist Dr.

Nikita Levy and Johns Hopkins University); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379

(Del. Super. Ct. 2012) (approving a class settlement of the claims of 7,000 former patients who

were sexually abused by a physician at a medical center from 1994 through 2009).

To proceed as a class action, Plaintiffs must satisfy the four prerequisites of Rule 23(a),

otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of

representation. Fed. R. Civ. P. 23(a). In addition, at least one of the three requirements of Rule

23(b) must be met. Fed. R. Civ. P. 23(b). Here, the Settlement Class meets all of the

requirements of Rule 23(a), the Post-2005 Subclass meets the requirements of Rule 23(b)(1), and

the Pre-2005 Subclass meets the requirements of Rule 23(b)(3).

### A.  The Subclasses satisfy Rule 23(a).

#### 1.  The Subclasses satisfy the numerosity requirement in Rule 23(a)(1)

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is

impracticable." "Impracticable does not mean impossible," *Robidoux v. Celani*, 987 F.2d 931,

935 (2d Cir. 1993), and in this Circuit, "numerosity is presumed at a level of 40 members."

*Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). Both proposed

Subclasses consist of dozens of women who allege they have been victims of Harvey

Weinstein's predatory and abusive conduct when he was at Miramax and then TWC. FAC, ¶

732. *See also* NYOAG Decl., ¶ 3, Ex. 3(A) (NYOAG Verified Petition). Moreover, the Post-

2005 Subclass also includes dozens of former female employees of TWC. NYOAG Decl., ¶ 6.

As such, because joinder of all these women in one action is impracticable, Rule 23(a)(1) is

satisfied.

### 2. The claims of the Settlement Class Representatives arise from the same pattern and practice of sexual abuse, sexual harassment, and retaliation, satisfying Rule 23(a)(2) and (a)(3).

The commonality element of Rule 23(a)(2) requires that "there are questions of law or

fact common to the class," and the typicality requirement of Rule 23(a)(3) provides that "the

claims or defenses of the representative parties are typical of the claims or defenses of the class."

"As a practical matter, the two requirements [commonality and typicality] merge in the Second

Circuit's inquiry." *Alleyne v. Time Moving & Storage Inc.*, 264 F.R.D. 41, 48 (E.D.N.Y. 2010)

(citing *Caridad v. Metro-N. Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999)). The

commonality and typicality requirements are satisfied "when each class member's claim arises

from the same course of events and each class member makes similar legal arguments to prove

the defendant's liability." *Robidoux v. Celani*, 987 F.2d at 936-37. As such, it is "easily"

satisfied where the defendant has engaged in some course of conduct that affects a group of

persons and gives rise to a cause of action. *Shakhnes v. Eggleston*, 740 F. Supp. 2d 602

(S.D.N.Y. 2010) (citation omitted).

As set out above, the Settlement Class Representatives' and Settlement Class Members'

claims arise from Harvey Weinstein's predatory pattern and course of conduct: Weinstein

worked with or employed the Class Member, or set up a meeting with the individual Class

Member purportedly to discuss a role, a business concept, a project, or to network, or hire them

for work, but then Weinstein would isolate the Class Member and sexually abuse or harass them.

The Class Members seek redress for the same type of harms.  Although the dates and manner in

which each Class Member encountered Weinstein may be different, the distinctions do not

present any antagonistic interests given his common course of predatory conduct.  Moreover, all

Class Members sought to hold the Debtors, Non-Debtor Entities, and Director Defendants,

among others, responsible based on their allegations that each failed to stop or prevent

Weinstein's sexually abusive and discriminatory conduct.

A similar fact pattern was held to satisfy Rule 23(a)(2) in *In re USC Student Health Ctr.*

*Litig.*, 2019 U.S. Dist. LEXIS 122658.  In *USC*, a physician at the university's student health

center sexually abused and harassed thousands of female students over a 20-year period. After

several class actions and hundreds of individual lawsuits were filed, a class settlement was

reached that created a common fund.  At preliminary approval, the court held that "Rule 23(a)(2)

is satisfied because there are common issues—[the physician's] alleged misconduct toward

female patients at the USC student health center, and USC's alleged failure to terminate or

otherwise discipline him are at the core of all claims." *Id.*, *8.

The above analysis applies here where the Settlement Class Representatives' allegations

focus on the sexual misconduct of one individual (Harvey Weinstein), and the alleged failure of

those around him – including his companies and certain of their respective officers and directors

– to halt or prevent the decades of his sexual abuse and harassment.  Thus, this Court should find

that the commonality and typicality elements of Rule 23(b) and (c) are met.

### 3. Pursuant to Rule 23(a)(4), the Settlement Class Representatives will fairly and adequately protect the interests of the Settlement Class.

The fourth and final requirement is Rule 23(a)(4), which provides that "the representative parties will fairly and adequately protect the interests of the class." "That determination requires a two pronged inquiry: (1) class counsel must be qualified, experienced, and generally able to conduct the litigation; and (2) class members must not have antagonistic interests to one another." *Feliciano v. Corelogic Rental Prop. Sols., L.L.C.*, 332 F.R.D. 98, 107 (S.D.N.Y. July 29, 2019) (Hellerstein, J.) (internal quotations omitted).  Each of these two requirements are satisfied here.

First, this Court has witnessed first-hand Class Counsel's tenacity in pursuing claims on behalf of the Settlement Class, as well as their ability to present complex and novel legal arguments that have extended the TVPA to the claims of the Post-2005 Subclass Representatives here.  Class Counsel also has deep experience generally in class actions, including in sexual abuse and sexual harassment cases.

Second, the Settlement Class Representatives do not have any unique relationships with Defendants and do not have interests that are antagonistic to the Class.  The interests of Louisette Geiss, Sarah Anne Masse, Melissa Thompson, and Jill Doe are aligned with the Post-2005 Subclass. Each has worked tirelessly with Class Counsel to ensure a recovery for all class members, regardless of whether they have pending claims, as well as worked with the Post-2005 Subclass Counsel to ensure that the Allocation Guidelines were negotiated with the NYOAG with subclass's interests in mind. Moreover, Ms. Geiss serves as Co-Chair of the Unsecured Creditors Committee, and has spent significant time to ensure that the Debtors' assets were protected for the benefit of all unsecured creditors in a fair manner.

Similarly, the interests of the Pre-2005 Subclass are aligned with the Settlement Class Representatives Nanette Klatt, Melissa Sagemiller, Caitlin Dulaney, Larissa Gomes, and Katherine Kendall. Each has also worked closely with Class Counsel, demonstrating their willingness to share very personal details of their experiences in order to forge the claims for the Pre-2005 Subclass. Each recognized the risks involved in bringing a class action but felt it important to do so to recover for all class members. Moreover, each consulted directly with the Pre-2005 Subclass Counsel to ensure fairness was included in the Allocation Guidelines – even for expired or unfiled claims. Accordingly, Rule 23(a)(4) is satisfied.

### B. The Post-2005 Subclass should be certified pursuant to Rule 23(b)(1)(B).

Rule 23(b)(1)(B) provides, in relevant part, "A class action may be maintained if Rule 23(a) is satisfied and if . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(1)(B) provides for certification of a mandatory class whose members have no right to opt out. *See In re Joint E. & S. Dist. Asbestos Litig.*, 78 F.3d 764, 778 (2d Cir. 1996) (approving use of same).

Historically, class actions have been certified under Rule 23(b)(1)(B) where there are "limited funds" available to satisfy the class claims. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 834 (1999). The traditional "limited fund" situation typically involved multiple claims to a single, tangible fund, such as a bank account, trust, insurance policy, or proceeds from a sale of an asset. *See id.* at 835-36.  A limited fund class action is appropriate where having class members individually litigate their claims would deplete the fund's resources and diminish the eventual recovery of other class members.  Proceeding as a limited fund class action settlement avoids a race to judgment among class members and ensures that all class members receive "an

41

equitable, pro rata distribution" of the fund. *See Ortiz*, 527 U.S. at 841.

Certification of a limited-fund class action is appropriate when (1) the total of the aggregated claims and the funds available for satisfying them demonstrates the inadequacy of the fund to pay all claims; (2) the whole of the inadequate fund is to be devoted to the overwhelming claims; and (3) the claimants, identified by a common theory of recovery, must be treated equitably among themselves. *Id.* at 838-39.

> **1. The Chapter 11 Cases, dismissals of the Director Defendants, and conviction of Harvey Weinstein have resulted in limited funds available to the Post-2005 Subclass.**

The first factor in determining whether a limited fund exists is whether the total of the aggregated claims and the funds available for satisfying them demonstrates the inadequacy of the fund to pay all claims. Here, limited funds are available to Post-2005 Settlement Subclass Members due to several factors, including the Chapter 11 Cases, the dismissal of the Director Defendants, and the criminal proceedings against Harvey Weinstein. Plaintiffs address each below.

Limited-fund class actions are appropriate when an entity is in bankruptcy. *See, e.g., In re Drexel Burnham Lambert Grp.,* 960 F.2d 285, 292 (2d Cir. 1992) ("even though Drexel's assets will not be distributed to claimants until final approval of Drexel's reorganization plan, some members of the putative class might attempt to maintain costly individual actions in the hope and, perhaps, the belief that their claims are more meritorious than the claims of the other class members"). Here, the Debtors have ceased operations and will no longer exist after the Chapter 11 Cases are completed.

The only assets of the Debtors with any value are insurance policies for commercial

general liability, employment practices liability, and directors' and officers' liability insurance.[19] Yet, the Insurance Companies have unequivocally contested coverage for Weinstein's actions. As reflected *supra,* the policies generally contain exclusions for coverage for "intentional acts" and, in some policies, "molestation, misconduct or abuse."[20]

Moreover, all of the Director Defendants have been dismissed from this class action and have little to no exposure as a result of a series of district court opinions. The Director Defendants have agreed to the contribution of insurance proceeds to which they would otherwise be entitled for the reimbursement of their attorneys' fees in defending the series of cases brought by putative class members (and for their continuing defense in ongoing litigation).[21] Given the dismissal of the Director Defendants in this (and similar) litigation, continuing to pursue them on appeal would be a difficult, costly, and risky endeavor – unlikely to create any fund, much less a larger fund, for the Settlement Class.  In fact, continuing litigation will result in further wasting of the D&O policies, supporting the finding that a limited fund exists. *In re Granada P'ships Secs. Litig.*, 803 F. Supp. 1236, 1244, 1992 U.S. Dist. LEXIS 22990, at *3 (1992) ("This Court has further determined that the National Union policy proceeds available to satisfy plaintiffs' claims constitute a limited fund under the standards and circumstances….").

---

[19] *See A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001 (4th Cir. 1986) ("A products liability policy of the debtor is … a valuable property of a debtor, particularly if the debtor is confronted with substantial liability claims within the coverage of the policy in which case the policy may well be, as one court has remarked in a case like the one under review, 'the most important asset of [i.e., the debtor's] estate,' In re Johns Manville Corp., 40 Bankr. 219, 229 (S.D.N.Y. 1984).")

[20] *Fed. Ins. Co.*, 2019 U.S. Dist. LEXIS 53165, at *4 (Crotty, J.) (discussing insurance policies and summary judgment motion filed by insurers in declaratory judgment action claiming Weinstein's insurers had no duty to defend or indemnify Weinstein in the 18 sexual misconduct lawsuits and claims filed against him).

[21] *Wedtech Corp. v. Fed. Ins. Co.*, 740 F. Supp. 214, 221 (S.D.N.Y. 1990) (holding "the insurance company's obligation to reimburse the directors attaches as soon as the attorneys' fees are incurred.") (citations omitted).

Moreover, while the Director Defendants are not depleting their personal assets for this Settlement, "[t]he Court need not ensure that a defendant designate a particular source of its assets to satisfy the class' claims; the Court need only determine whether the amount recovered by the class is fair." *Ahearn v. Fibreboard Corp.*, 162 F.R.D. 505, 527 (E.D. Tex. 1995) (citing *Drexel Burnham Lambert Grp.*, 960 F.2d 285, 293 (2d Cir. 1992)). The *Ahearn* Court explained: "There is no authority or reason why Class Counsel may settle a 23(b)(1)(B) class action only if all of the defendant's resources are included in the settlement. Such a rule would make no sense, would discourage settlements and has been rejected." *Id.* (citing *In re Granada P'ships Secs. Litig.*, 803 F. Supp. 1236, 1244 (S.D. Tex. 1992)).

Even if class members continued to pursue claims against the Director Defendants and received a judgment, the Director Defendants have indemnification rights against the Debtors. *See* Ex. 2(F) (The Weinstein Company Holdings LLC Operating Agreement, § 10.02(c)(i)). Thus, collecting from the Director Defendants leads right back to the limited fund. In similar situations, courts have held that the release of directors and officers is permissible in a limited fund context.  *See A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1008 (4th Cir. 1986) (affirming district court's decision to enjoin litigation against debtors' co-defendants and employees who were indemnified by the estate, and were named as additional insureds under the company's insurance policy where "there are thousands of Dalkon Shield actions and claims pending … and the limited fund available under Robins' insurance policy is recognized in the record.); *Del Sesto v. Prospect CharterCARE, L.L.C.*, No. 18-328 WES, 2019 U.S. Dist. LEXIS 94918 (D.R.I. June 6, 2019) (granting preliminary approval of a limited fund settlement that also provided for the release of the officers and directors of the settling defendants);[22] *In re Johns-Manville Corp.,* 26

---

[22] *Del Sesto v. Prospect CharterCARE, LLC*, No. 18-328 (D.R.I. Sept. 30, 2019) (Dkt. # 164) (granting final approval of limited fund settlement which included a release of the officers and directors).

Bankr. 420, 423 (S.D.N.Y. 1983) (enjoining litigation against officers and directors of bankrupt entity where the third party litigation could cause the insurance policies to waste instead of being secured for the benefit of creditors); *In re Johns-Manville Corp.,* 33 Bankr. 254, 261 (S.D.N.Y. 1983) (continuing entry of injunction, stating: "In the event of a recovery against the past or present officers, directors or employees of Manville in any of the pending 1,000 cases, Manville's Insurance Companies may be called upon to indemnify such officers, directors and employees under the provisions of the policies issued by them to Manville. If such Insurance Companies are called upon to make such indemnification payments, those payments may cause an asset of the Manville estates to be diminished."). *See also Stott v. Capital Fin. Servs.*, 277 F.R.D. 316, 335 (N.D. Tex. 2011) (approving limited fund settlement which released claims against individual registered representatives, directors, and officers); *Reserve Fund Secs. & Derivative Litig. v. Reserve Mgmt. Co.*, 673 F. Supp. 2d 182, 202-03 (S.D.N.Y. 2009) (approving a "limited fund" settlement that enjoined claims against the settling defendant's officers, directors, trustees, representatives, and employees).

Finally, Harvey Weinstein is the only Defendant with exposure at present in this class action.  Weinstein's assets, which by all accounts are being used to fight his criminal conviction in New York and the pending criminal charges in Los Angeles, are likely insufficient to satisfy his potential exposure if individual claims proceed to trial seriatim.  Absent class certification, judgments secured by individual plaintiffs would quickly deplete Weinstein's assets before other plaintiffs, including the Settlement Class Representatives here, had their respective days in court.

An analogous class action case involving sexual abuse claims and a limited fund settlement provides guidance here. In *Doe v. Bradley*, 64 A.3d 379 (Del. Super. Ct. 2012)  , a pediatrician raped and sexually exploited hundreds of child patients over 15 years. He was

ultimately convicted of criminal offenses, including rape, and sentenced to multiple life

sentences.  The physician had no assets, and his medical malpractice insurance provided no

coverage for the physical and sexual abuse of his patients. *Id.* at 381. The Court thus found that

the physician would not be able to provide "any monetary compensation to his many victims,

much less adequate compensation." *Id.* at 382.

More than 40 lawsuits were filed against the physician, as well as a local medical center

for failing to report the physician to regulatory or law enforcement authorities. *Id.* at 382. The

medical center advised that its resources to satisfy potential individual judgments "would quickly

be depleted leaving subsequent claimants with nothing," forcing the center to seek protection in

the federal bankruptcy court. The Court found "[t]his was no idle threat. The numbers of

potential claims were staggering; the impact of the potential liability on [the medical center's]

ability to secure financing for ongoing operations was obvious; and the likelihood of insurance

coverage for [the medical center] was tenuous at best." *Bradley*, 64 A.3d at 384-385.

After protracted negotiations, a limited fund settlement was created for 7,000 class

members. Approving the settlement, the *Bradley* court stated:

> It has been represented to the Court that use of the class action
> form to address multiple cases alleging sexual abuse is
> unprecedented. That may well be so. Nevertheless, the Court is
> satisfied that certification of a limited fund class action was the
> only way to ensure that all victims could be compensated in this
> instance given the scope and severity of the sexual abuse alleged
> here, the common threads that run through the claims, the
> relatively limited resources of the Covered Defendants, and the
> real likelihood of a race to the courthouse by individual filers with
> the losers finding no money to compensate them at the finish line.

*Bradley*, 64 A.3d at 386.  While the use of the class device in sexual abuse cases has since been

extended to other cases, the court's analysis is applicable here.

Certification of a limited fund class action for the Post-2005 Subclass is the only way to

ensure that all victims can be compensated given the scope and severity of the sexual abuse by

Harvey Weinstein. The Debtors, Non-Debtor Entities, and Director Defendants have contested

liability in this case and were successful in having the claims against them dismissed.  The

Insurance Companies have disputed coverage.  Harvey Weinstein is currently incarcerated.

Under these circumstances, this Settlement procures contributions from the Debtors' insurance

policies, which are the only viable assets of the Debtors.  Without the Settlement, the majority of

Post-2005 Subclass Members would receive nothing, and those with pending lawsuits or claims

would be unlikely to collect on any judgments after seriatim trials against an incarcerated

defendant.

While some Post-2005 Subclass Members will separately litigate their claims against

Harvey Weinstein,[23] a mandatory class action under Rule 23(b)(1)(B) is necessary to "prevent

[additional unknown] claimants with such motivations from unfairly diminishing the eventual

recovery of other class members."  *In re Drexel Burnham Lambert Grp.*, 960 F.2d at 292.

Accordingly, the first factor supports certifying the Post-2005 Subclass as a limited fund class

under Rule 23(b)(1)(B).

> **2.  The Class Settlement Fund will be used to pay for Class
> Claim Awards, Class Administrative Expenses,
> Attorneys' Fees and Costs, and Class Service Awards.**

Certification in this case would ensure that "the class as a whole was given the best deal;

they did not give a defendant a better deal than seriatim litigation would have produced."  *Ortiz*,

527 U.S. at 839.  As set out above, the Settlement optimizes the Class's recovery.  The

Settlement Fund will be depleted through the payment of Class Claim Awards, Class

---

[23] The Settlement Class excludes certain women with pending lawsuits against Harvey Weinstein. SA, ¶¶ 66, 79.

Administrative Expenses, Attorneys' Fees and Costs, and Class Service Awards.  No funds will revert to Defendants.  Thus, the second factor supports Rule 23(b)(1)(B) certification.

### 3. Settlement Class Members will be treated equitably under the Allocation Guidelines.

The Allocation Guidelines were devised to ensure an equitable distribution of the settlement among Settlement Class members with approved claims. "The purpose of developing a plan of allocation is to devise a method that permits the equitable distribution of limited settlement proceeds to eligible class members." *Beecher v. Able*, 575 F.2d 1010, 1016 (2d Cir. 1978). Here, the Allocation Guidelines provide for consideration of the types of sexually abusive, harassing, and discriminatory conduct to which women were subjected, as well as the impact of the conduct on each woman. The Special Master will consider the totality of the circumstances presented by each Claimant when evaluating the claims, including pending lawsuits or claims and any applicable statutes of limitations.  The Allocation Guidelines are similar to those approved by the *Bradley* court in the limited fund settlement there. *Bradley,* 64 A.3d at 388-89.

In sum, the three *Ortiz* requirements are satisfied, and this Court should certify the Post-2005 Subclass for settlement purposes under Rule 23(b)(1).

### C.  The Pre-2005 Subclass should be certified pursuant to Rule 23(b)(3).

The Settlement Class Representatives seek certification of the Pre-2005 Subclass pursuant to Fed. R. Civ. P. 23(b)(3). As to the familiar predominance and superiority requirements of Rule 23(b)(3), when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial." *Amchem Prods.*, 521 U.S. at 620 (explaining that subdivision 23(b)(3)(D) drops out of the analysis).

### 1. Common questions of law or fact predominate for the Pre-2005 Subclass.

The "predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623.  The predominance inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation omitted).  When "one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual Class members." *Id*. (citation omitted).

Common question of law and fact predominate here.  As noted above, at the heart of each Plaintiff's claim is the abuse and harassment inflicted by Harvey Weinstein.  Weinstein's conduct was part of an enduring, predatory pattern that is amenable to class treatment, particularly given the emphasis Plaintiffs have placed on the alleged failure to stop or prevent, or ratification of, that conduct by Debtors, the Non-Debtor Entities, and Director Defendants.

Under similar circumstances, courts have recently certified settlement classes. *See In re USC Student Health Ctr. Litig.*, 2019 U.S. Dist. LEXIS 122658 (finding that "[Dr.] Tyndall's alleged misconduct toward female patients at the USC student health center, and USC's alleged failure to terminate or otherwise discipline him are at the core of all claims," and that "the questions of law or fact common to the Settlement Class predominate over individual questions."); *St. Louis*, 2019 U.S. Dist. LEXIS 130324 (granting final approval to a class action settlement under Rule 23 involving claims of sexual abuse of children at a school in Haiti). *See also Doe*, 2014 WL 5040602 (approving a class settlement of claims of surreptitious

photographing and inappropriate touching brought by former patients against gynecologist Dr.

Nikita Levy and Johns Hopkins University); *Jane Doe 30's Mother v. Bradley*, 64 A.3d 379

(Del. Super. Ct. 2012) (approving a class settlement of the claims of 7,000 former patients who

were sexually abused by Dr. Earl Bradley at Beebe Medical Center from 1994 through 2009).[24]

*Cf. Warnell v. Ford Motor Co.*, 189 F.R.D. 383, 387-88 (N.D. Ill. 1999) (certifying sexual

harassment pattern-or-practice class pursuant to Rule 23(b)(3), noting that individualized inquiry

would not predominate where "'welcome sexual harassment is an oxymoron'") (quoting *Carr v.*

*Allison Gas Turbine Div., Gen. Motors Corp.*, 32 F.3d 1007, 1008 (7th Cir. 1994)).

The court's final approval order in *St. Louis*, 2019 U.S. Dist. LEXIS 130324, is

instructive. In *St. Louis*, plaintiffs sought final approval of a class action settlement on behalf of

all persons who were subjected to sexual abuse at a school in Haiti. In certifying the settlement

class pursuant to Rule 23(b)(3), the court held that the following common questions

predominated over individual issues for settlement purposes:

> (1) whether any of the Defendants owed a duty to minor children at
> Project Pierre Toussaint ("PPT"); (2) whether any of the
> Defendants were negligent in failing to protect the minor children
> at PPT from harmful conduct by Douglas Perlitz or others; (3)
> whether any of the Defendants were negligent in hiring Perlitz; (4)
> whether any of the Defendants were negligent in supervising
> Perlitz; (5) whether any of the Defendants who supervised Father
> Paul Carrier were negligent in supervising him; (6) whether any of
> the Defendants were in a fiduciary relationship with the minor
> children at PPT; (7) whether Connecticut law applies to the claims
> against Father Carrier; (8) whether any of the Defendants is
> entitled to volunteer immunity; and (9) whether it was foreseeable
> that, in the absence of safeguards, minor children at PPT would be
> sexually abused.

*St. Louis*, 2019 U.S. Dist. LEXIS 130324, at *9-10.

---

[24] While the *Johns Hopkins* and *Bradley* courts considered class certification under state law, Md.
Rule 2-231 and Del. Super. Ct. Civ. R. 23 largely track Fed. R. Civ. P. 23, making their analyses
instructive here.

Similar common questions are at the heart of Plaintiffs' case here, which sought to hold Weinstein's companies and the Director Defendants accountable for negligent supervision and retention of Harvey Weinstein. Because the case concerns an alleged institutional failure to implement adequate practices and policies that allowed a perpetrator to thrive, "[a] settlement is vastly superior to a litigated outcome, which would have been a non-consensual process not likely to result in an improved attitude or atmosphere . . . ." *Peoples v. Annucci*, 180 F. Supp. 3d 294, 308 (S.D.N.Y. 2016) (approving class action settlement in litigation challenging prison's solitary confinement practices). Accordingly, this Court should find that common questions predominate over individual issues for settlement purposes.

### 2.    Class treatment is superior to individual litigation.

Rule 23(b) (3) also requires a class action to be "superior to other available methods for fairly and efficiently adjudicating the controversy." The Settlement allows all of Weinstein's victims to apply for compensation through a confidential and non-adversarial process, instead of limiting recovery to women willing to publicly litigate as a plaintiff. Collective action is plainly superior in cases involving traumatic injuries, as victims of assault or abuse often do not wish to subject themselves to litigation, whether to avoid making their experience public, having to testify about it, or having to confront their abuser in court. *See, e.g., Doe v. Roman Catholic Diocese of Covington*, 2006 Ky. Cir. LEXIS 5, *12 (Ky. Cir. Ct. Jan. 31, 2006) ("The class action procedure has encouraged a large number of people to come forward who would otherwise never have done so had they been left to their individual devices."); *Bradley*, 64 A.3d at 385 (certified sexual abuse settlement class where the victims "would have been emotionally traumatized by separate litigation and trials" and "a class action ensures consistent and transparent resolution of all claims"). Thus, the class action serves as a valuable, vastly superior

mechanism in cases like these, where those individuals who choose to come forward and speak up may obtain justice for those who cannot.

The Settlement is also specifically designed so that members do not have to wholly surrender control of their claims. The Settlement contemplates individualized consideration of particular claims through the Special Master's administration of the two-tiered settlement structure. This focus on claimant choice is a creative way to maximize payments and simplicity, while allowing for fuller inquiry and greater payment for those who want it. This proposed process incorporates the efficiency of the class mechanism with the particular needs of Class members in this case. The result: an efficient claims process that provides the opportunity for fair compensation to all victims. Because the class action device provides the superior means to resolve this controversy effectively and efficiently, and as the other requirements of Rule 23 are each satisfied, certification of the Class under Rule 23(b)(3) is appropriate.

## VI.    THIS COURT SHOULD APPOINT ELIZABETH A. FEGAN AND STEVE W. BERMAN AS COUNSEL FOR THE CLASS

Elizabeth A. Fegan of Fegan Scott LLC and Steve W. Berman of Hagens Berman Sobol & Shapiro LLP respectfully request appointment as Class Counsel. Rule 23(g)(1) of the Federal Rules of Civil Procedure requires that when a court certifies a class, the court must also appoint class counsel.  The Court should consider the work counsel has undertaken; counsel's experience in handling class actions; counsel's knowledge of the applicable law; and the resources that counsel brought to bear in the matter.  *See* Rule 23(g)(1)(i)-(iv).  Rule 23(g)(4) requires that counsel must also "fairly and adequately represent the interests of the class."

As reflected in Class Counsel's Declaration, Ms. Fegan and Mr. Berman have zealously pursued claims on behalf of the Settlement Class, presenting complex and novel legal arguments during multiple oral arguments.  Class Counsel successfully defeated Harvey Weinstein's motion

to dismiss the TVPA claim, which was an important step forward in the law.  Class Counsel also has deep experience generally in class actions, including in sexual abuse and sexual harassment cases.  *See id.*

Class Counsel has worked closely with the NYOAG to ensure that the settlement negotiations maximized the recovery for the Settlement Class, while also conducting sufficient due diligence with respect to the Debtors' assets and insurance policies.  Together, Class Counsel and the NYOAG also actively participated in the Chapter 11 Cases to secure the limited fund for the Post-2005 Subclass.

During the Settlement process, Class Counsel also retained (i) Brown Rudnick LLP to represent Louisette Geiss in her role as Co-Chair of the Unsecured Creditors Committee in the Chapter 11 Cases, and to ensure that the interests of the Settlement Class were represented in the Chapter 11 Cases; (ii) Morris James LLP as local counsel in the Chapter 11 Cases on behalf of the Settlement Class; and (iii) two independent law firms, Kohn Swift and Girard Sharp, to represent the interests of the Pre- and Post-2005 Subclasses respectively, in order to ensure structural fairness and separate representation in the negotiations of the Allocation Guidelines.

Finally, Class Counsel has investigated the experiences of and spoken with putative Class Members, as well as counsel who represent women with individual claims, who reside domestically and abroad. Both Fegan Scott and Hagens Berman have expended considerable attorney time and expense throughout the course of their representation of the Settlement Class Representatives and the Class.  Accordingly, Elizabeth A. Fegan of Fegan Scott and Steve W. Berman of Hagens Berman should be appointed as Class Counsel.

## VII.    THE PROPOSED NOTICE PROGRAM PROVIDES THE BEST PRACTICABLE NOTICE

Under Rule 23(c)(2) and Rule 23(e) of the Federal Rules of Civil Procedure, the Court

must direct the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.  Rule 23(c)(2)(B) sets forth certain required information to be in the Notice.

The plan of proposed notice is set forth in the Declaration of Kyle Bingham on Settlement Notice Plan and readily satisfies this standard. *See* Ex. 7.

Here, Class Counsel and the NYOAG worked with the Debtors to identify the records that may include Settlement Class Members. Through that process, the Debtors identified contacts maintained in the Debtors' email system that may include potential Settlement Class Members, as well as a list of employees which may include Settlement Class Members (collectively, "Direct Notice Targets").  Because the Direct Notice Targets would also require notice of the Tort Claims Bar Date in the Chapter 11 Cases, Class Counsel, the NYOAG, and the Debtors propose to send a combined notice to the Direct Notice Targets via email where available and via U.S. Mail where email is not available as reflected in the Bingham Declaration. *See* Ex. 7; Ex. 1(E) (Letter Notice); Ex. 1(F) (Email Notice). *See also* Fed. R. Civ. P. 23(c)(2) (directing that the best notice practicable under the circumstances should include individual notice to all members who can be identified through reasonable effort). This combined Notice will not only reduce costs and maximize efficiencies,[25] but also ensure that the Direct Notice Targets understand all applicable deadlines in this class action and the Chapter 11 Cases.

The parties, including Class Counsel and the NYOAG, have also prepared a plain-language and comprehensive Long Form Notice, which will be available on the Settlement website and mailed to Settlement Class Members upon request. Ex. 1(D).

In addition, the parties propose that the Summary Notice be published in *The Hollywood*

---

[25] The Debtors have agreed to pay 50 percent of the notice costs that would otherwise be paid from the Class Settlement Fund.

*Reporter, Variety,* and *NY Post*. *See* Ex. 7; Ex. 1(C). Moreover, internet Banner Notices will run

on the following websites: *The Toronto Star* (TheStar.com)*, The Sun* (TheSun.co.uk), *NY Post*

(NYPost.com), and *Page 6* (Page6.com); and on the social media platforms, LinkedIn, Facebook,

and Instagram.  Ex. 7. This multi-faceted class notice program is thus reasonably calculated to

reach the Settlement Class.

Any notice provided to class members should "clearly and concisely state in plain, easily

understood language" the nature of the action; the class definition; the class claims, issues, or

defenses; that the class member may appear through counsel; that the Court will exclude from

the Pre-2005 Settlement Subclass any member who requests exclusion within the time and

manner for requesting exclusion; and the binding effect of a class judgment on Settlement Class

Members in both the Pre-2005 Subclass and the Post-2005 Subclass.  *See* Fed. R. Civ. P.

23(c)(2).  "Notice is adequate if it may be understood by the average class member."  *Wal-Mart*

*Stores, Inc.*, 396 F.3d at 114 (internal quotations and citation omitted).  The form of class notice

proposed here complies with those requirements.

Each of the Publication Notice, Letter Notice, Email Notice, and Long-Form Notice

informs class members of the material terms of the Settlement Agreement and the relief the

Settlement will provide, and the Long Form Notice describes the two-tiered claim process.  *See*

Exs. 1(C)-(F). The Notices also set out the date, time and place of the final-approval hearing, and

the Class Members' right to appear and be heard.  For the Post-2005 Subclass, the Notices

explain that the Post-2005 Subclass Members do not have any right or ability to opt out of the

settlement yet will be bound by any final judgment in the case, including a release of claims.  For

the Pre-2005 Subclass, the Notices explains the procedures and deadlines for opting out of the

settlement and submitting comments or objections; and that, if the Pre-2005 Subclass Members

do not opt out, they will be bound by any final judgment in this case, including a release of claims.

The proposed Notices also advise class members that Class Counsel will apply to the Court for an award of fees and expenses, and that this award will be paid out of the Settlement Fund.  Thus, the Notices are accurate and inform Settlement Class Members of the material terms of the settlement and their rights pertaining to it.  The Class Notice will also be posted on a website maintained by the settlement administrator at www.weinsteinclaims.com.

This Court should approve the proposed Publication Notice, Long-Form Notice, Letter Notice for direct mail and facsimile, and Email Notice, and direct that they be disseminated as proposed by the parties.

## VIII.   THE PROPOSED DEADLINES AND SCHEDULE FOR FINAL APPROVAL HEARING COORDINATE WITH THE CHAPTER 11 CASES

The final step in the approval process is the final approval hearing at which the Court may hear argument necessary to evaluate the Settlement.  At the hearing, proponents of the Settlement may explain and describe its terms and conditions and offer argument in support of settlement approval, and Class Members, or their counsel, may be heard in support of or in opposition to the Settlement.

The following proposed schedule reflects both the proposed dates to be entered in this Court as well as the proposed dates to be entered in the Chapter 11 Cases to demonstrate the overlap of issues and need for coordination:

| Event | District Court | Bankruptcy Court |
| --- | --- | --- |
| File Motion for Preliminary Approval of Settlement | June 30, 2020 | N/A |
| File Motion to Set Tort Claims Bar Date, Joint Plan of Liquidation, | N/A | June 30, 2020 |

| Event | District Court | Bankruptcy Court |
|---|---|---|
| Disclosure Statement and Solicitation Procedures Memo | | |
| Hearing on Motion for Preliminary Approval of Settlement | July 14, 2020 | N/A |
| Proposed Hearing on Motion to Set Tort Claims Bar Date | N/A | On or before July 14, 2020 |
| Publish combined Class Settlement Notice, Tort Claim Bar Date Notice, and Disclosure Statement | Beginning 14 days after District Court's Preliminary Approval Order or Bankruptcy Court's Tort Claims Bar Date Order, whichever is later | Beginning 14 days after District Court's Preliminary Approval Order or Bankruptcy Court's Tort Claims Bar Date Order, whichever is later |
| File Class Counsel's Motion for Attorneys' Fees and Costs | 75 days after District Court's Preliminary Approval Order | N/A |
| Deadline for Settlement Class Members to file comments objecting to or in support of the Settlement | 90 days after District Court's Preliminary Approval Order | N/A |
| Deadline for Pre-2005 Subclass Members to exclude themselves from the Settlement | 90 days after District Court's Preliminary Approval Order | N/A |
| Deadline for Settlement Class Members to submit Claims and for the Tort Claims Bar Date (applicable to the Post-2005 Subclass Members who must submit the Statement of Class Membership (part of the Claim Form) for the Chapter 11 Cases) | 90 days after District Court's Preliminary Approval Order | 90 days after District Court's Preliminary Approval Order |
| Service of Solicitation Package and Publish Notice of Confirmation Hearing | N/A | 7 days after the Tort Claims Bar Date |
| File Motion for Final Approval of Class Settlement, including response to objections | 14 days after the Objection Deadline | N/A |
| Final Fairness Hearing on Class Settlement | October 15, 2020, or at the Court's convenience after the | N/A |

| Event | District Court | Bankruptcy Court |
|---|---|---|
|  | filing of the Motion for Final Approval of Class Settlement |  |
| Voting Deadline on Plan of Liquidation | N/A | 28 days after service of Solicitation Package |
| Confirmation Hearing | N/A | October 15, 2020 or at the Bankruptcy Court's convenience |

## IX.      CONCLUSION

For the foregoing reasons, the Settlement Class Representatives respectfully request that this Court grant preliminary approval of the Settlement; certify the Subclasses for purposes of this Settlement, only; appoint Elizabeth A. Fegan and Steve W. Berman as Class Counsel; direct that notice be given to the Class; and grant such other and further relief as this Court deems appropriate.

Dated:  June 30, 2020                          Respectfully submitted,

By:  /s/ Elizabeth A. Fegan
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor,
Chicago, Illinois 60606
Tel:  (312) 741-1019
beth@feganscott.com

Lynn A. Ellenberger
FEGAN SCOTT LLC
500 Grant Street, Suite 2900
Pittsburgh, Pennsylvania 15219
Tel:  (412) 346-4104
lynn@feganscott.com

Steve W. Berman
Shelby Smith
HAGENS BERMAN SOBOL
SHAPIRO LLP

1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Tel: (206) 623-7292
steve@hbsslaw.com
shelby@hbsslaw.com

Whitney K. Siehl
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Drive, Suite
2410
Chicago, Illinois 60611
Tel:  (708) 628-4949
whitneys@hbsslaw.com

*Attorneys for Settlement Class
Representatives*

## CERTIFICATE OF SERVICE

I, Elizabeth A. Fegan, an attorney, affirm that the foregoing was filed on June 30, 2020 on ECF, which automatically served all counsel of record.

Dated:  June 30, 2020

Respectfully submitted,

By: */s/ Elizabeth A. Fegan*

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor,
Chicago, Illinois 60606
Tel:  (312) 741-1019
beth@feganscott.com