# EXHIBIT 2(E)

## SETTLEMENT AGREEMENT AND RELEASE

## I.  THE SETTLING PARTIES

This Settlement Agreement and Release dated June 29, 2020 (the "Agreement"), is made and entered into by and among the following plaintiffs in the following actions on the one hand:

1. Plaintiff Kadian Noble in Case No. 17 CV 9260 (S.D.N.Y.);

2. Plaintiff Sandeep Rehal in Case No. 151738/2018 (N.Y. Sup. Ct.);

3. Plaintiff Jane Doe in Case No. 17-585449 (Ont. Supr. Ct.);

4. Plaintiff Kelly Sipherd in Case No. CV-18-608438 (Ont. Supr. Ct.);

5. Plaintiff Jill Doe in Case No. CV-18-608425 (Ont. Sup. Ct.)

6. Plaintiff ABC in CLAIM NUMBER: QB-2017-000118 (U.K.);

7. Plaintiff EFG in CLAIM NUMBER: HQ18P00908 (U.K.);

8. Plaintiff CDE whose claim is scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.);

9. Plaintiff GHI whose claim is scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.);

10. Plaintiff JKL whose claim is scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.);

11. Plaintiff LMN whose claim is scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.);

12. Plaintiff Paz De La Huerta in Case Nos. 18SCTV04723 (L.A. Sup. Ct.); 19STCV30894 (L.A. Sup. Ct.); 19-cv-02183 (C.D. Cal.); and 19-cv-07682 (C.D. Cal.);

13. Plaintiff Pamela Ryan (Ireland); and

14. Plaintiff Jane Doe in Case No. 18STCV08468 (Sup. Ct. Cal.);

(collectively, the "Individual Plaintiffs"; the cases enumerated above are collectively referred to as the "Cases"); and

Certain Defendants who are currently or were formerly named in all or certain of the foregoing actions, namely: The Weinstein Company LLC and The Weinstein Company Holdings, LLC (collectively "TWC"), Harvey Weinstein, Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, James Dolan, David Glasser, Barbara Schneeweiss, and Frank Gil (collectively, the "Former Representatives") (TWC and the Former Representatives together, the "Defendants") (the Individual Plaintiffs and the Defendants are each a "Party" and collectively, the "Parties" or "Settling Parties").

The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Claims (as defined herein) as against the Released Parties (as defined herein), subject to the approval of the Bankruptcy Court and the terms and conditions set forth in this Agreement.

## II. RECITALS

WHEREAS, the Individual Plaintiffs filed individual lawsuits or claims in federal and state courts and foreign tribunals alleging, *inter alia,* Harvey Weinstein engaged in sexual harassment and abuse, facilitated or allowed to continue by various companies and their respective officers and directors, in violation of federal, foreign, and state law;

WHEREAS, on March 19, 2018, the Debtors (as defined below) commenced jointly administered cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases are presently pending in the Bankruptcy Court and captioned *In re Weinstein Company Holdings, LLC*, Case No. 18-10601 (the "Chapter 11 Cases");

WHEREAS, Plaintiff Sandeep Rehal serves as Co-Chair of the Official Committee of Unsecured Creditors in the Bankruptcy;

WHEREAS, several United States District Courts denied the motions to dismiss of Harvey Weinstein in part, but granted certain motions to dismiss of certain other Defendants;

WHEREAS, the Parties engaged in extensive arm's-length settlement negotiations over the course of nearly two years;

WHEREAS, those negotiations were supervised by Jed Melnick of JAMS and informed by the rulings in various federal courts and foreign tribunals, the production of documents and information from the Debtors (as defined herein) and current and former officers and members of the boards of representatives/directors of TWC to the New York State Office of the Attorney General, the production of documents in certain lawsuits and in the Bankruptcy, the analyses of the Official Committee of Unsecured Creditors in the Bankruptcy, the Debtors' independent analysis of their claims, and the Parties' multiple exchanges of information;

WHEREAS, after carefully considering the facts and applicable law and the risks and uncertainty of continued litigation, and as a result of having engaged in extensive negotiations, the Parties agree that it is in their mutual best interests to finally resolve the claims in the Cases on fair, reasonable, and adequate terms as set forth in this Agreement;

WHEREAS, the Defendants deny all allegations and claims asserted against them;

WHEREAS, each Party has independently determined that it is desirable and beneficial for the Cases and Claims to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement;

WHEREAS, in November 2019, the Parties reached an agreement in principle on terms and conditions of settlement; and

WHEREAS, the Parties have agreed to this Settlement on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Individual Plaintiffs and the Defendants that, subject to the Settlement Effective Date in the Chapter 11 Cases, the Cases, and the Claims will be finally and fully compromised, settled, and released, and the Cases will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

### III. DEFINITIONS

The following terms, when used in this Agreement, have the meanings as set forth below. All terms defined in the singular have the same meaning when used in the plural, and all terms defined in the plural have the same meaning when used in the singular.

1.      "Affiliate" or "Affiliated With" means (i) any entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, a specified entity, and (ii) any entity that is an "affiliate" within the meaning of Bankruptcy Code § 101(2) of a specified entity.  As used in clause (i) of this definition, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an entity (whether through ownership of equity of that entity, by contract, or otherwise).

2.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

3.      "Bankruptcy Court Approval Order" means those orders of the Bankruptcy Court necessary to approve the Bankruptcy Settlement Agreement.

4.      "Bankruptcy Settlement" and/or "Bankruptcy Settlement Agreement" means The Weinstein Company Bankruptcy Global Settlement Agreement.

5.      "Business Day" means any day other than Saturday, Sunday, or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

6.      "Cases" means the cases enumerated and defined as such in Section I.

7.      "Chapter 11 Cases" shall be defined as set forth in Section II.

8.      "Chapter 11 Plan" means the plan under Chapter 11 of the Bankruptcy Code jointly proposed by the Debtors and the UCC, incorporating the terms of this Agreement and the Bankruptcy Settlement Agreement.

9.      "Claims" means without limitation, any and all past, present or future claims, cross- claims, counterclaims, third-party claims, contribution claims, indemnification claims, rights, causes of action, orders, liabilities, notices of liability or potential liability, arbitrations, actions, suits, damages, demands, disputes, obligations, judgments, duties, defenses, liens, administrative proceedings, costs, expenses, attorneys' (and other) fees, matters, requests or proceedings of any kind or nature whatsoever and any claim within the definition of "claim" in section 101(5) of the Bankruptcy Code, regardless of where arising or where brought, whether at law, equity, contract, statute, or otherwise direct, indirect, or derivative, known or unknown, actual or alleged, asserted or not asserted, suspected or unsuspected, anticipated or unanticipated, fixed or contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, domestic or foreign, disclosed or undisclosed, accrued or unaccrued, apparent or unapparent existing under any federal, state, local, foreign, tribal, common law, ordinance, statute or regulation, which has been, could have been, or may be asserted by or on behalf of any person or entity against the Debtors, their predecessors, successors, assigns, or any current or former Affiliate of any of the foregoing, or any other Released Party, whether seeking damages (including compensatory, punitive or exemplary damages and all other potential elements of recovery or relief) or equitable,

mandatory, injunctive, or any other type of relief, irrespective of the expiration of any applicable statute of limitations.

10.     "Class Action Settlement Agreement" means that certain settlement agreement dated June 29, 2020 executed by the Class Action Members (as defined in the Class Action Settlement Agreement), by and through the Class Action Counsel (as defined in the Class Action Settlement Agreement), the Defendants and the NYOAG.

11.     "Confirmation Order" means an order by the Bankruptcy Court confirming the Chapter 11 Plan.

12.     "Debtors" means The Weinstein Company Holdings, LLC and its affiliates (collectively, "TWC") that are debtors in the jointly administered Chapter 11 proceedings styled (*In re The Weinstein Company Holdings, LLC*), 18-10601 (Bankr. D. Del.).

13.     "Defendants" means those defendants enumerated and defined as such in Section I.

14.     "Insurance Companies" means National Union Fire Insurance Company of Pittsburgh, Pa.; AIG Specialty Insurance Company; Steadfast Insurance Company; The American Insurance Company; Fireman's Fund Insurance Company; Zurich American Insurance Company; AXIS Surplus Insurance Company; The Travelers Companies, Inc.; Travelers Indemnity Company; Travelers Excess and Surplus Lines Company; Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company; Travelers Casualty and Surety Company of America; St. Paul Surplus Lines Insurance Company; St. Paul Fire & Marine Insurance Company; Gulf Insurance Company; Federal Insurance Company; Great Northern Insurance Company; Westchester Fire Insurance Company; Pacific Indemnity Company; Chubb Indemnity Insurance Company; Executive Risk Indemnity Inc.; Chubb National Insurance

Company; ACE American Insurance Company, on behalf of themselves and their subsidiaries, Affiliates, parents, predecessors, or successors; *provided*, *however*, Insurance Companies shall not include AIG Europe Limited and AIG Europe SA.

15.     "Insurance Policies**"** means any insurance policy issued by an Insurance Company.

16.     "NYOAG" means The Office of the New York Attorney General.

17.     "Non-Debtor Additional Affiliates" means Scary Movie 4 LLC' Derailed SPV, LLC; Mrs. Henderson Presents SPV, LLC; The Matador SPV, LLC; Breaking and Entering SPV, LLC; Come Drink With Me SPV, LLC; SPV Film Distribution LLC; Butler Films LLC; Kristy Films LLC; and TWC Gold SPV, LLC.

18.     "Non-Debtor Affiliates" means The Weinstein Company (UK) Ltd.; Tulip Fever Films Limited; Current Films UK Limited; and MarcoThree, LLC.

19.     "Non-Debtor Entities" means all companies (other than the Debtors) that Harvey Weinstein was employed by, worked for, or held a position as an officer or director of between January 1, 1979 and October 1, 2017, as well as each of their parents, subsidiaries and Affiliates (including, without limitation, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and Miramax Film NY, LLC), or any of their respective equity holders or members, any of their Affiliates or any other independent contractor, current or former members of the board of representatives of the Non-Debtor Entities; provided, however, that Non-Debtor Entities shall not include (a) the Four Seasons Hotel Limited and Burton Way Hotels LLC, defendants in Paz De La Huerta v. Harvey Weinstein et. al., Case No. 19-cv-07682 (C.D. Cal.)) or (b) the Four Seasons Hotel Limited, Burton Way Hotels LLC and

Burton Way Hotels Ltd., defendants in Paz De La Huerta v. Harvey Weinstein et. al., Case No. 19STCV30894 (L.A. Sup. Ct.).

20.      "Non-Debtor Persons" means any and all individuals employed by or Affiliated With any of the Non-Debtor Entities against whom claims have or could have been made in any of the Cases in their capacity as such, including but not limited to Barbara Schneeweiss, Michael Eisner, Irwin Reiter, Rick Schwartz, Fabrizio Lombardo, Mark Gill and Nancy Ashbrooke, as well as each of their respective heirs, estates, predecessors, successors, agents, and assigns.

21.      "Non-SMC Claims" shall mean all Claims that are not Sexual Misconduct Claims.

22.      "Parties" or "Settling Parties" means the parties enumerated and defined as such in Section I.

23.      "Released Parties" means (i) the Debtors, the TWC Estate, the Non-Debtor Entities, the Non-Debtor Persons, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Exhibit B; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, financial advisors, attorneys, insurers, reinsurers, accountants, investment bankers, consultants, representatives, and other professionals, and such persons' respective heirs, executors, estates, and nominees, in each case, in their capacity as such, or any other person who rendered services for, or provided goods to, any of the Debtors or the Non-Debtor Entities, with respect to liability for the actions or inactions of the Former Representatives, the Debtors, the TWC Estate, the Non-Debtor Entities, the Non-Debtor Persons, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies;

provided, however, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the TWC Estate, the Non-Debtor Entities, the Non-Debtor Persons, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies, to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or to cover up any Sexual Misconduct Claim (each a "Non-Released Party").[1]

24.     "Settlement" means the terms and conditions of settlement embodied in this Agreement.

25.     "Settlement Effective Date" means the Plan Effective Date, as defined in the Bankruptcy Settlement Agreement.

26.     "Sexual Misconduct Claims" shall mean all Tort Claims that arise out of, connect to or relate in any way to any actual or alleged sexual conduct of Harvey Weinstein.

27.     "Tax" or "Taxes" mean any and all taxes, fees, liens, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

28.     "Tax Expenses" means expenses and costs incurred in connection with the operation and implementation of any Taxes (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) returns).

29.     "Tort Claim" shall mean any Claim (including any Claim asserted against any Released Party by any Non-Released Party) that arises out of or connects or relates in any way to,

---

[1]  As specified above, AIG Europe Limited and AIG Europe SA are not Insurance Companies and as such, AIG Europe Limited and AIG Europe SA are not Released Parties.

any actual or alleged conduct of Harvey Weinstein, which shall include, without limitation: (i) actual or alleged sexual misconduct, nonconsensual interactions, harassment (including sexual harassment), uninvited or unwelcome conduct, predatory conduct, inappropriate conduct, degrading conduct, coercive or intimidating behavior, humiliation, tort, hostile work environment, sexual assault, rape, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, battery, assault, gender violence, false imprisonment, false arrest or detention, sexual abuse, sex trafficking or discrimination based on sex or gender or any similar or related actions, or (ii) defamation, witness tampering, mail fraud, wire fraud, negligent hiring, negligent supervision, negligent retention, negligence, failure to prevent harassment or ratification, in each case that took place in whole or in part prior to preliminary approval of the Class Action Settlement Agreement, whether based on direct or vicarious liability, whether domestic or foreign, whether based on breach of fiduciary duty or intentional or negligent conduct, including but not limited to allegations of failure to prevent or remedy, failure to disclose, aiding and abetting or efforts or conspiracy to prevent the disclosure, or cover up, of any of the preceding, against the Released Parties.

30.    "Tort Claimant" means any holder of a Tort Claim.

31.    "TWC" means the companies enumerated in and defined as such in Section I.

32.    "TWC Estate" means, collectively, the estates of the Debtors.

33.     "UCC" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy.

### IV. SCOPE AND EFFECT OF SETTLEMENT

34.    **Scope of the Settlement; Effectiveness.** This Settlement compromises and resolves the Claims and the Cases to the extent set forth herein.  Except to the extent any provision

of this Agreement contemplates the taking of an action prior to the Settlement Effective Date, this Agreement shall become effective upon the occurrence of the Settlement Effective Date (including, without limitation, the satisfaction or waiver of any condition thereto).

35.     **Stay and Dismissal of Litigations.**

a.  Promptly after execution of the Agreement, the Individual Plaintiffs will seek to stay their respective Cases. Within 10 days following the Settlement Effective Date, and subject to payment being made to each Individual Plaintiff pursuant to Section V below, the respective Cases of the Individual Plaintiffs shall be dismissed with prejudice, except with respect to any defendants or persons who are not released under the terms of the Settlement.

b.  The Parties who are defendants in the cases filed in Canada and the United Kingdom (the "Commonwealth Cases") shall not seek attorneys' fees or costs from any of the plaintiffs in the Commonwealth Cases (the "Commonwealth Case Plaintiffs") provided that such cases are dismissed in accordance with the terms of this Settlement.  Prior to the court-established deadline to file a proof of claim concerning a Tort Claim in the Chapter 11 Cases, any Commonwealth Case Plaintiff may withdraw from the Settlement if all of the defendants in the Commonwealth Cases who are not a Party to this Agreement fail to waive their rights to seek attorneys' fees and costs from any of the Commonwealth Case Plaintiffs.

36.     **Extinguishment of Claims.** Upon payment of the Individual Plaintiffs' Settlement Fund as provided in Paragraph 38 below, (i) all Individual Plaintiffs and anyone claiming through or on behalf of any of them, including but not limited to each of their respective

heirs, estates, predecessors, successors, agents, and assigns, will be deemed to have (and shall have) fully, finally, and forever released, relinquished, and discharged all Claims against the Released Parties; and (ii) upon the Settlement Effective Date, the Individual Plaintiffs will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative forum, asserting any Claim against any of the Released Parties. As to the Claims only, all Individual Plaintiffs hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

The Individual Plaintiffs expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Claims. In connection with such waiver and relinquishment, the Individual Plaintiffs hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Claims known or unknown, actual or alleged, asserted or not asserted, suspected or unsuspected, anticipated or unanticipated, matured or unmatured, domestic or

foreign, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties, or any of them. In furtherance of such intention, the release herein given by the Individual Plaintiffs to the Released Parties shall be and remain in effect as a full and complete general release as to the Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Individual Plaintiffs hereby expressly acknowledges that she has been advised by her attorney of the contents and effect of Section 1542, and with knowledge, each of the Individual Plaintiffs hereby expressly waives whatever benefits she may have had pursuant to such section. The Individual Plaintiffs acknowledge that the foregoing waiver was separately bargained for and is a material element of the Settlement of which this Release is a part.

37.     **Tort Claims Against Non-Released Parties.** In the event an Individual Plaintiff has initiated (or initiates in the future) an action against a Non-Released Party related to a Tort Claim and the applicable court or governing body finds such action may move forward notwithstanding the provisions of the Chapter 11 Plan, the Bankruptcy Settlement Agreement and this Agreement, any recovery in such action (or a related action) against a Released Party shall be deemed completely satisfied based on and in consideration of the Released Party's (and/or such Released Party's Insurance Companies') contribution to the Individual Plaintiffs' Settlement Amount, regardless of the jurisdiction in which the Individual Plaintiff brings the Tort Claim or the applicable law that governs such Tort Claim, and the Parties reserve their rights under relevant state law.

## V.  SETTLEMENT CONSIDERATION

38.     **Economic Terms.** Within 10 Business Days following the Settlement Effective Date, Defendants (or, in the case of the Former Representatives, the applicable Insurance

Companies on their behalf) shall pay, or cause to be paid, $5,400,000.00 as the Individual Plaintiffs' Settlement Fund, with payment to each Individual Plaintiff in the amount set forth in Ex. A (which shall be filed under seal if this Agreement is submitted to the Bankruptcy Court or any other court or tribunal).

39.    **Liquidation Trust Settlement Payment.** Under the Bankruptcy Settlement and Chapter 11 Plan, $7,295,000 has been allocated to the Debtors for the benefit of the estate and for distribution to unsecured creditors ("Liquidation Trust Settlement Payment" or "Liquidation Trust"). In consideration for the Settlement, all Individual Plaintiffs expressly disclaim any interest in the Liquidation Trust Settlement Payment in connection with their Sexual Misconduct Claims, *provided, however,* Individual Plaintiffs who possess Non-SMC Claims may seek recovery for such Claims from the Liquidation Trust.  Distributions from the Liquidation Trust shall be made in accordance with the Chapter 11 Plan and shall be subject to the jurisdiction and approval of the Bankruptcy Court.

## VI.  TERMINATION

40.    **Cross-Termination.**  This Agreement shall automatically terminate and become null and void upon the termination of the Bankruptcy Settlement Agreement or the Class Action Settlement Agreement.  The Parties agree that if this Settlement Agreement is terminated for this reason, the Cases will return to the status quo in effect immediately before the date of this Agreement.

41.    **Partial Refund.** In the event that the Agreement is not approved, fails to become effective or is terminated for any reason, the Individual Plaintiffs' Settlement Fund, including accrued interest and less Taxes or Tax Expenses paid, incurred, or due and owing in connection

with the Settlement as provided for herein, will be refunded to the Defendants or their designees pursuant to written instructions from counsel for the Defendants.

## VII.  GENERAL PROVISIONS

42.     **Mutual Intent.** The Parties: (a) acknowledge that it is their intent to consummate this Agreement; (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise their commercially reasonable efforts on an ongoing basis to accomplish such terms and conditions; and (c) agree to use commercially reasonable efforts to seek entry of a final Confirmation Order from the Bankruptcy Court.

43.     **Good Faith.** The Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

44.     **Chapter 11 Plan Support.**  No Party shall support any Chapter 11 Plan that is inconsistent with the terms of this Agreement, the Bankruptcy Settlement Agreement, and the Class Action Settlement Agreement.  The Settling Parties  agree that: (i) all of the terms and conditions of this Agreement shall be incorporated in the Chapter 11 Plan (the "Conforming Chapter 11 Plan") and/or the Confirmation Order, as applicable; and (ii) the Settling Parties shall not take any action, of any kind and nature, to oppose, or designed to prevent confirmation of, the Conforming Chapter 11 Plan.

45.     **No Waiver**. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach or of any right of any other Party. A Party's failure to exercise any rights under this Agreement shall not constitute a waiver of that (or any other) Party's right to exercise those rights later, except as expressly provided in this Agreement.  No delay by any Party in exercising any power or right under this Agreement will

operate as a waiver of that power or right or of any power or right of any other Party, nor will any single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right.

46.     **Right to Consult Counsel.** All Parties covenant and represent that they have consulted (or have had the full and unfettered opportunity to consult) with competent counsel of their choosing prior to entering into this Agreement.

47.     **Final Resolution Without Adjudication.** The Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between the Individual Plaintiffs, on the one hand, and the Released Parties, on the other hand, with respect to the Cases and Claims. The Settlement resolves claims which are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.  The Settling Parties agree that the Individual Plaintiffs' Settlement Fund and the other terms of the Settlement were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily after consultation (or the full and unfettered opportunity to consult) with competent legal counsel.

48.     **No Admission of Liability.** Neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement, (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claim, the truth of any of the allegations in the Cases of any wrongdoing, fault, or liability of any of the Defendants, or that any Individual Plaintiff has suffered any damages, harm, or loss, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of any Defendant in any civil, criminal, administrative  or other proceeding in any court, arbitration, administrative agency, or other tribunal.

49.     **Use in Other Proceedings.** The Parties will not introduce or use, or cause to be introduced or used, any provision in this Agreement, or any action taken in implementation thereof, or any statements, discussions, or communications, or any materials prepared, exchanged, issued, or used during the course of the Cases or in negotiations leading to the Settlement and this Agreement, in any judicial, arbitral, administrative, investigative, or other proceeding of whatsoever kind or nature, as evidence of any violation of law, breach of duty, or liability, or lack thereof or any submission by any Party to the jurisdiction of any court, arbitration, administrative agency, or other tribunal other than the Bankruptcy Court; provided, however, that any Defendant may file this Agreement in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim; provided, further, however, that this Agreement, and any provision hereof, may be used in connection with any or all of the enforcement of this Agreement and/or the Bankruptcy Settlement Agreement, the implementation thereof, and the implementation and confirmation of the Chapter 11 Plan.

50.     **Responsibility of Individual Plaintiffs for Taxes.** Each Individual Plaintiff who receives a payment in connection with this Settlement will be fully and  ultimately responsible for payment of any and all federal, state, foreign, local and other Taxes and Tax Expenses resulting from or attributable to the payment received by such person.

51.     **Limitation on Amendment.** The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Settling Parties or their respective successors-in-interest.

52.     **Governing Law.** This Agreement and the Exhibits hereto will be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties to the Agreement will be construed and enforced in accordance with, and governed by, the substantive laws of the State of New York without regard to conflict of laws principles.

53.     **Neutral Construction.** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding after negotiation, with consideration by, and participation of, the Settling Parties and their counsel. This Agreement will not be construed against any Settling Party on the basis that the Settling Party was the drafter or participated in the drafting of the Agreement or any provision thereof. Any statute or rule of construction that ambiguities are to be resolved against the drafting party will not be employed in the construction or implementation of this Agreement, and the Settling Parties agree that the drafting of this Agreement has been a mutual undertaking.

54.     **Entire Agreement.** The Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties hereto, and no representations, warranties, or inducements have been made to any Party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in these documents.

55.     **Exhibits Fully Integrated.** All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

56.     **Further Assurances.** The Parties hereto acknowledge and agree that they will each cooperate in the execution and delivery of any other or further documentation that may be reasonably necessary to carry out the intentions of this Agreement.

57.      **Severability.** Except as otherwise provided in this Agreement, if any covenant, condition, term, or other provision in this Agreement is held to be invalid, void, or illegal by a court of competent jurisdiction, the same will be deemed severed from the remainder of this Agreement and will in no way affect, impair or invalidate, any other covenant, condition, term, or other provision in this Agreement. If any covenant, condition, term, or other provision in this Agreement is held to be invalid by a court of competent jurisdiction due to its scope or breadth, such covenant, condition, term, or other provision will be deemed valid to the extent of the scope or breadth permitted by law.

58.      **Authority to Execute.** Each counsel or other person executing the Agreement or any of its Exhibits on behalf of any Party hereto warrants that such Person has the full authority to do so.

59.      **Execution in Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same instrument. A complete set of executed counterparts will be filed with the Bankruptcy Court. Signatures sent by facsimile or sent in PDF form via e-mail will be deemed originals.

60.      **No Prior Assignments**. The Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights that are released or discharged in this Settlement except as set forth in this Agreement.

61.      **Binding Upon Successors and Assigns.** The Agreement will be binding upon, and inure to the benefit of, the Parties and their successors and permitted assigns.

62.     **Continuing Jurisdiction.** The Bankruptcy Court will have sole jurisdiction over implementation and enforcement of the terms of this Agreement, and all Parties submit to the jurisdiction of the Bankruptcy Court solely for purposes of implementing and enforcing the Settlement embodied in this Agreement and matters related to this Settlement, and those other matters for which Bankruptcy Court approval is required in connection with this Agreement and which are otherwise principally related to the Bankruptcy Settlement Agreement.

Agreed to this 29 day of June, 2020

APPROVED AND AGREED TO BY:

[*signature pages follow*]

*EXECUTION VERSION --*
*SETTLEMENT AGREEMENT and RELEASE by and between*
*KADIAN NOBLE, et al., and The Weinstein Co., LLC, Harvey Weinstein, et al.*

*For Kadian Noble*

By:_____

Name: Kadian Noble

Title: MS

*EXECUTION VERSION*

*For ABC in CLAIM NUMBER:*
*HQ17P04249*

By:_____

Name:   Jill Greenfield
Title:    Partner, Fieldfisher LLP

*EXECUTION VERSION*

*For CDE in CLAIM NUMBER:*
*HQ18P00908*

By:_____

Name:  Jill Greenfield

Title:   Partner, Fieldfisher LLP

*EXECUTION VERSION*

*For EFG in CLAIM NUMBER:*
*HQ18P00908*

By:_____
Name:  Jill Greenfield
Title:   Partner, Fieldfisher LLP

*EXECUTION VERSION*

*For GHI in CLAIM NUMBER:*
*HQ18P00908*


By:_____
Name:  Jill Greenfield
Title:    Partner, Fieldfisher LLP

*EXECUTION VERSION*

*For JKL in CLAIM NUMBER:*
*HQ18P00908*

By:_____

Name:  Jill Greenfield
Title:   Partner, Fieldfisher LLP

*EXECUTION VERSION*

*For LMN in CLAIM NUMBER:*
*HQ18P00908*


By: _____

Name:  Jill Greenfield

Title:   Partner, Fieldfisher LLP

*EXECUTION VERSION*

*For Jane Doe in Case No.*
*18STCV08468*

By:
Name:
Title:

*For Jane Doe in Case No.*
*17- 585449 (Ont. Supr. Ct.)*

By:_____
Name: Alex Smith
Title: Counsel for Jane Doe

*EXECUTION VERSION*

*For Jill Doe in Case No.*
*CV-18-608425*


By: _____
Name: Alex Smith
Title: Counsel for Jill Doe

*EXECUTION VERSION*

*For Kelly Sipherd*

By:_____

Name: Alex Smith

Title: Counsel for Kelly Sipherd

*EXECUTION VERSION*

*For Paz De La Huerta*

By:_____
Name: Aaron G. Filler, Esq.
Title: Managing Partner, Tensor Law P.C.

*EXECUTION VERSION*

*For Pamela Ryan*

By: _Ronan Hynes_
A2BA08937E5E4BA...

Name: Ronan Hynes

Title: Practising Solicitor

*EXECUTION VERSION*

*For Sandeep Rehal*


By: *Sandeep Rehal*
Name: Sandeep Rehal
Title:

*EXECUTION VERSION*

*For Harvey Weinstein*

By:

Name: Elior D. Shiloh, Esq.

Title:

*For Robert Weinstein*

By:__ _____
Name:
Title:

DocuSign Envelope ID: 5E9E475C-6603-4D67-9E84-B82D974E7F7

*EXECUTION VERSION*

*For James Dolan*

By: _____

Name:

Title:

*EXECUTION VERSION*

For Frank Gil

By:
Name:
Title:

*For David Glasser*


By:  /s/ Douglas E. Grover
Name:  Douglas E, Grover
Title:   Partner
         Schlam Stone & Dolan LLP

*EXECUTION VERSION*

*For Paul Tudor Jones*

By:_____

Name:

Title:

*EXECUTION VERSION*

*For Marc Lasry*

By:

Name:

Title:

*For Jeff Sackman*


By:_____
Name:   jeff sackman
Title:

*For Barbara Schneeweiss*

By:
Name:
Title:

Scanned with
Mobile Scanner

*For Lance Maerov*


By:_____
Name:
Title:

*For Tarak Ben Ammar*

By:_____
Name: Tarak BEN AMMAR
Title:

*EXECUTION VERSION*

*For Richard Koenigsberg*


By:_____

Name: Richard Koenigsberg

Title:

*EXECUTION VERSION*

*For Dirk Ziff*

By: _____

Name:

Title:

*EXECUTION VERSION*

*For Tim Sarnoff*

By: _____
Name:
Title: TIM SARNOFF

*EXECUTION VERSION*

*For the Debtors*

By: _____

Name: Ivona Smith

Title:   Director, The Weinstein Company
            Holdings, LLC