# EXHIBIT 6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, BARBARA SCHNEEWEISS, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive,<br><br>    Defendants. | No. 1:17-cv-09554-AKH<br><br>Hon. Alvin K. Hellerstein |

### DECLARATION OF JED MELNICK IN SUPPORT OF MOTION FOR PRELIMINARY SETTLEMENT APPROVAL OF CLASS SETTLEMENT

I, Jed Melnick, under penalty of perjury, do hereby declare as follows:

1.     I am over the age of eighteen (18) and submit this Declaration in my capacity as the mediator of the proposed Class Action Settlement Agreement in *Geiss v. Weinstein,* Nos. 17-cv-09554 and 18-cv-04857 (S.D.N.Y.) and *Doe v. Weinstein,* No. 19-cv-0340 (S.D.N.Y.), the global resolution of the Chapter 11 Cases of The Weinstein Company Holdings, LLC and its

1

affiliates ("Debtors")[1] presently pending in the Bankruptcy Court for the District of Delaware captioned *In re Weinstein Company Holdings, LLC*, Case No. 18-10601 (the "Chapter 11 Cases"), and the resolution of 14 individual lawsuits or claims filed by plaintiffs in Canada, the United Kingdom, and the United States. These matters are collectively referred to herein as the "Actions."

2. This Declaration, which is based on my personal knowledge of the facts stated herein, is submitted in support of the Motion for Preliminary Approval of Class Action Settlement.

3. I have been asked to provide this Declaration to describe the mediation process that culminated in the proposed settlements of the Actions, including the Class Action Settlement presented to this Court for preliminary approval.

4. All of the parties, entities, and individuals who were represented at the mediation session executed a Confidentiality Agreement stating that the mediation process was to be considered as settlement negotiations for the purpose of all rules protecting mediation disclosures from later discovery and/or use in evidence. The parties further agreed that the Confidentiality Agreement extended to all present and future civil, judicial, quasi-judicial, arbitral, administrative, or other proceedings. Nothing in my Declaration divulges any privileged information, and the filing of this Declaration does not constitute a waiver of any such confidentiality.

5. I have been a full-time mediator and arbitrator for over fifteen years. I am a panelist at JAMS.

6. Prior to my time as a neutral, I was an attorney in Pennsylvania for over five years.

7. Since serving as a neutral, I have extensive experience assisting the settlement of

---

[1] All capitalized terms have the same meaning as set forth in the Class Action Settlement Agreement.

many different types of complex class actions that involved matters such as sexual abuse and bankruptcy.

8. Many cases in which I have served as a neutral have often included numerous plaintiffs and plaintiffs' counsel, as well as many defendants, defense counsel, and insurers. This case was no different.

9. I provide my professional background as context for the statements in my Declaration and to establish that my perspective on the resolution of the Actions, including the Class Action Settlement, is grounded in my significant experience in resolving complex litigation.

10. While this Court will make its own determination as to the proposed Class Action Settlement's fairness under applicable legal standards, from my viewpoint as mediator, I recommend the proposed settlement as reasonably reflective of the risks and potential rewards of the claims being settled. The Actions collectively presented complex and substantial legal, factual, and practical issues. The parties were represented during the mediation process by well-prepared and competent counsel who negotiated zealously and at arm's length for their clients. Thus, I believe that the proposed resolution of the Actions, and the Class Action Settlement in particular, represents a fair and pragmatic result.

11. Over more than a year, from at least May 14, 2018 to April 25, 2019, I attended 11 in-person mediation sessions, and for a two year period, from the first mediation session through the signing of the final settlement documents in May, 2020, there were dozens, if not hundreds, of conference calls in order to reach the terms by which to settle the Actions. During all mediation sessions, whether in person or by phone, counsel were well-prepared and

knowledgeable about the strengths and weaknesses of their respective positions and on the applicable law, and the proposed settlement is the result of their robust arm's length negotiations.

12. A timeline of the key events in the litigation and the various mediation sessions gives context for the proposed terms of the Class Action Settlement.

13. On March 19, 2018 ("Petition Date"), The Weinstein Company Holdings LLC and its affiliates ("Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware, Case No. 18-10601 (the "Chapter 11 Cases") (Walrath, J.).

14. Shortly thereafter, counsel for the Debtors retained me to mediate certain issues within the Chapter 11 Cases. The focus at the outset of this process was on insurance coverage and the relationship as between the Debtors and certain of its officers and directors, namely Harvey Weinstein, Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, and James Dolan, and later also David Glasser, Barbara Schneeweiss, and Frank Gil (collectively, the "Former Representatives").

15. In the ordinary course of business, the Debtors had purchased directors and officers liability insurance policies and general liability policies from the Insurance Companies, which policies provide coverage for, among other things, legal defense costs of and civil judgments entered against former and current directors and officers of the Debtors, including the Former Representatives (the "Insurance Policies").

16. Under the Insurance Policies, the Insurance Companies contested whether actions such as those alleged in the lawsuits against Harvey Weinstein are covered and whether they

4

require the Insurance Companies to reimburse, *inter alia,* the Former Representatives for costs related to such lawsuits.

17. Moreover, the Former Representatives were asserting their rights to indemnification against the Debtors pursuant to Section 10.02(c)(i) of The Weinstein Company Holdings LLC Operating Agreement.

18. The first mediation session, held on May 14, 2018, was attended by counsel for the Debtors, certain Former Representatives, and certain Insurance Companies.

19. A second expanded session was held on May 25, 2018 which included generally the same parties as at the May 14, 2018 session, plus counsel for the Official Committee of the Unsecured Creditors ("UCC").

20. On June 4, 2018, I was invited to attend a conference call with counsel for the UCC and counsel for the Co-Chairs of the UCC. At that time, I learned that Co-Chair Louisette Geiss was a class representative in this matter, and Co-Chair Sandeep Rehal filed an individual lawsuit as a former employee of The Weinstein Company. Both alleged sexual abuse and harassment by Harvey Weinstein.

21. On June 12, 2018, I met in person with Elizabeth Fegan, counsel for Louisette Geiss and the putative class; Genie Harrison, counsel for Sandeep Rehal; and James Stang, counsel for the UCC. The purpose of this session was to learn more about the claims of the putative class and the claims of the individual women who had filed lawsuits or claims against Harvey Weinstein, and the impact of such claims on the negotiation process.

22. The next mediation session on June 22, 2018 included Class Counsel, Ms. Rehal's counsel, and counsel for the UCC, the Debtors, and the Former Representatives. Representatives from the Office of the New York Attorney General ("NYOAG") also attended.

23. On July 2-3, 2018, although in-person mediation sessions were scheduled, instead a series of conference calls were held to further the negotiations.

24. On August 16, 2018, I mediated a defendant-only mediation. The issues as between the defendants are complex given the different factual and legal allegations against and positions of various defendants, the different claims asserted against different defendants, the tenure of each Former Representative, and the different insurance policies that may relate to the time period of each Former Representative's tenure.

25. On October 24, 2018, I mediated an insurer-only mediation. Representatives for the Insurance Companies or groups of Insurance Companies were present. The issues as between the Insurance Companies are complex given, *inter alia,* the length of the class period, the myriad of defendant entities with Insurance Policies, the different types of coverage (and exclusions) within each insurance policy, and the relationships between the Insurance Companies.

26. A mediation session was held on November 6-7, 2018 with Class Counsel, counsel for Ms. Rehal, representatives from the NYOAG, counsel for the UCC, Debtors, multiple Insurance Companies, and the Former Representatives.

27. A similar all-hands mediation session was held on December 11-12, 2018, which was expanded to include counsel for plaintiffs who had filed individual lawsuits or claims in the United States, Canada and the United Kingdom.

28. During the November and December mediations, as well as dozens of conference calls throughout those months, concerted efforts were made to reach a resolution. However, the parties were unable to reach a consensus and settlement negotiations stalled.

29. In January 2019, the parties contacted me to restart settlement negotiations. On February 4, 2019, an in-person mediation session was held which included all-hands: Class

Counsel, the NYOAG, approximately one dozen lawyers for various individual domestic and foreign plaintiffs, the Insurance Companies, the Debtors, the UCC, and the Former Representatives.

30. However, in 2019, several decisions were issued in federal courts that impacted the negotiations. Multiple courts ruled consistently, denying motions to dismiss claims for violations of the Trafficking Victims Protection Act against Harvey Weinstein, but granting motions to dismiss the Debtors, other Former Representatives, and Miramax, together with its affiliates and related representatives. *See, e.g., Canosa v. Ziff*, 2019 U.S. Dist. LEXIS 13263 (S.D.N.Y. Jan. 28, 2019) (Engelmayer, J.) (denying motions to dismiss Harvey Weinstein and certain companies in part, and granting the motions to dismiss all claims against six former directors of The Weinstein Company); *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 2019 U.S. Dist. LEXIS 66364 (April 17, 2019) (Hellerstein, J.); *David v. Weinstein Co. LLC*, 2019 U.S. Dist. LEXIS 69917 (S.D.N.Y. April 24, 2019) (Abrams, J.) (granting motion to dismiss of nine former directors of Weinstein's companies). *Cf. Noble v. Weinstein,* 335 F. Supp. 3d 504 (S.D.N.Y. August 14, 2018) (Sweet, J.) (denying motion to dismiss of Harvey Weinstein and granting motion to dismiss of Robert Weinstein); *David v. Weinstein Co. LLC,* 2019 U.S. Dist. LEXIS 220125 (S.D.N.Y. Dec. 19, 2019) (Abrams, J.) (denying motion to dismiss of Harvey Weinstein and granting motion to dismiss of Robert Weinstein).

31. Also, throughout this time, Harvey Weinstein was focused on his defense in *People of the State of New York v. Harvey Weinstein* (N.Y. Sup. Ct.), and the crimination investigation in Los Angeles which has since resulted in charges in *The People of the State of California v. Harvey Weinstein*, No. BA483663 (Cal. Sup. Ct.).

32. On April 25, 2019, the day after the decision in *David v. Weinstein Co. LLC*, 2019 U.S. Dist. LEXIS 69917 (S.D.N.Y. April 24, 2019) (Abrams, J.), a mediation session was held, which was the last in-person session.

33. While the NYOAG, Class Counsel and some of the individual plaintiffs' counsel were present, the mediation session was focused on negotiation between the Insurance Companies and the Former Representatives.

34. Notwithstanding the scope of the Insurance Policies and the Insurance Companies' rights to contest coverage, the Insurance Companies agreed to contribute certain of the proceeds available under the Insurance Policies in consideration for the agreed upon terms reflected in this Class Action Settlement Agreement.

35. Moreover, notwithstanding the rights asserted by the Former Representatives to coverage by the Insurance Companies for their attorneys' fees and costs, as well as their assertion of indemnification rights against the Debtors, the Former Representatives agreed to forego certain proceeds from the Insurance Companies and agreed to the contribution of those proceeds to the Class Settlement Fund.

36. After multiple additional negotiations, the parties signed a Term Sheet in November 2019. I participated in multiple telephone calls each and every month in June through November, 2019.

37. From November 2019 through the execution of the various settlement agreements in May 2020, I participated in telephone conversations on an as-needed basis as the parties negotiated the language of the settlement documents.

38.     In the midst of this process, on February 24, 2020, Harvey Weinstein was found guilty on criminal charges in New York. On March 11, 2020, he was sentenced to 23 years imprisonment.

39.     In my opinion, there are three important characteristics of the Class Action Settlement.

40.     First, the settlement provides a substantial sum of aggregate money (the "Class Settlement Fund") from the Insurance Companies on behalf of the Defendants, which are insured entities and individuals some of which have been dismissed by this Court (and other courts) from the litigation. By establishing the Class Settlement Fund pursuant to a negotiated process, the parties avoided long, protracted, and costly insurance coverage litigation. Moreover, even had the Debtors and Former Representatives been successful in insurance coverage litigation, the proceeds of the Insurance Policies would have been paid, in large part, to defend the Former Representatives.

41.     Second, by participating in the negotiation of a global resolution of the Chapter 11 Cases, the class actions, and many of the individual lawsuits on a negotiated basis, Class Counsel and the Settlement Class Representatives were successful in creating a Settlement Fund that Settlement Class Action Members otherwise would not have been entitled to as unsecured creditors of the Debtors.

42.     Third, all Settlement Class Action Members, i.e. victims of Harvey Weinstein's sexual misconduct, including those with out-of-time claims, as well as those who did not want to publicly come forward, will have the right to make claims for recovery from the Settlement Fund on a confidential, non-adversarial basis. Based upon the manner in which the claims process in

the Class Action Settlement will proceed, those victims of Harvey Weinstein's abuse need not disclose their identities to the defendants or the general public in order to recover.

43.     The Settlement Fund will provide meaningful, monetary compensation for Harvey Weinstein's victims that would not otherwise be available to them on a contested basis. Claimants will be able to choose the level at which they are comfortable participating, such as submitting a claim or submitting a claim and making themselves available for an interview by the Special Master. The first group of claimants will be able to recover from $7,500 up to $150,000, and the second group of claimants will be able to recover from $7,500 up to $750,000.

44.     In sum, based on my knowledge of this matter, my review of the relevant materials submitted to me, the litigation risks, the benefits obtained, the arm's-length negotiation, and diligent efforts of accomplished counsel, the Class Action Settlement represents a fair, reasonable, and adequate resolution of this case. I believe that the settlement provides meaningful compensation for the Settlement Class and avoids the litigation proceedings and/or appeals that would inevitably occur if not for this settlement. I also believe the proposed settlement flows from the parties' assessment of the litigation risks. I respectfully recommend that the settlement be approved.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on the 29th day of June, 2020    _____
                                            Jed Melnick