# EXHIBIT 1

*EXECUTION VERSION*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, MIRAMAX FILM NY LLC, THE WALT DISNEY COMPANY, DISNEY ENTERPRISES, INC., BUENA VISTA INTERNATIONAL, INC., HARVEY WEINSTEIN, ROBERT WEINSTEIN, DIRK ZIFF, TIM SARNOFF, MARC LASRY, TARAK BEN AMMAR, LANCE MAEROV, RICHARD KOENIGSBERG, PAUL TUDOR JONES, JEFF SACKMAN, JAMES DOLAN, MICHAEL EISNER, IRWIN REITER, DAVID GLASSER, FRANK GIL, RICK SCHWARTZ, FABRIZIO LOMBARDO, MARK GILL, NANCY ASHBROOKE, BARBARA SCHNEEWEISS, MIRAMAX DOES 1-10, TALENT AGENCY DOES 1-100, and JOHN DOES 1-50, inclusive,<br><br>    Defendants. | No. 1:17-cv-09554-AKH<br><br>Hon. Alvin K. Hellerstein |

# SETTLEMENT AGREEMENT AND RELEASE

*EXECUTION VERSION*

# TABLE OF CONTENTS

I.      THE CLASS ACTION SETTLEMENT PARTIES ............................................. 4

II.     RECITALS ............................................................................................................ 5

III.    DEFINITIONS ..................................................................................................... 7

IV.     SCOPE AND EFFECT OF SETTLEMENT ...................................................... 23

V.      SETTLEMENT CONSIDERATION ................................................................. 29

      A.      Economic Terms.......................................................................................... 29

      B.      Non-Economic Terms ................................................................................. 30

      C.      Liquidation Trust Settlement Payment ..................................................... 30

VI.     USE OF THE CLASS SETTLEMENT FUND .................................................. 30

VII.    CLASS NOTICE AND CLASS ADMINISTRATION ..................................... 38

VIII.   THE SPECIAL MASTER ................................................................................... 44

IX.     ATTORNEYS' FEES AND COSTS; SERVICE AWARDS ............................ 45

X.      TERMINATION .................................................................................................. 46

XI.     GENERAL PROVISIONS .................................................................................. 47

*EXECUTION VERSION*

# EXHIBITS

Ex. A              Allocation Guidelines

Ex. B              Claim Form

Ex. C              Publication Notice

Ex. D              Long-Form Notice

Ex. E              Letter Notice

Ex. F              Email Notice

Ex. G              Proposed Preliminary Approval Order

Ex. H              Settlement Deed for Plaintiff Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal)

Ex. I              Released Professionals

## I.     THE CLASS ACTION SETTLEMENT PARTIES

This Settlement Agreement and Release dated June 29, 2020 (the "Agreement"), is made and entered into by and among the following plaintiffs, through their undersigned counsel, in the following actions on the one hand:

(1)     Plaintiffs Louisette Geiss, Sarah Ann Thomas (a/k/a Sarah Ann Masse), Melissa Thompson, Melissa Sagemiller, Nannette May (f/k/a Nannette Klatt),[1] Katherine Kendall, Caitlin Dulany, and Larissa Gomes  in Case No. 18-cv-4857[2] and Case No. 17-cv-09554 (S.D.N.Y.) ("Geiss"), and Plaintiff Jill Doe in Case No. 1:19-cv-03430 (S.D.N.Y.) (collectively, the "Settlement Class Action Representatives");

(2)     The Office of the New York Attorney General ("NYOAG") on behalf of the People of New York in Case No. 0450293/2018 (N.Y. Sup. Ct.);

(3)     Plaintiff Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal) (the "U.K. Case");

(4)     Plaintiff Emma Loman in Case No. 18-cv-7310 (C.D. Cal.); Plaintiff Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal) and Plaintiff Emma Loman in Case No. 18-cv-7310 (C.D. Cal.) are referred to as "Signing Settlement Class Action Members"; together the Settlement Class Action Representatives, NYOAG, and Signing Settlement Class Action Members are referred to collectively as the "Settling Class Action Plaintiffs"; the cases enumerated above are collectively referred to as the "Cases"); and

Certain Defendants who are currently or were formerly named in all or certain of the foregoing actions, namely: The Weinstein Company LLC and The Weinstein Company Holdings, LLC (collectively "TWC"), Harvey Weinstein, Robert Weinstein, Dirk Ziff, Tim Sarnoff, Marc

---

[1]  Nanette May (f/k/a/ Nanette Klatt) was also the previously-named Jane Doe in Case No. 2:17-CV-08323 (C.D. Cal.), which was voluntarily dismissed on December 7, 2017.

[2]  Plaintiffs Zoe Brock and Jane Doe in Case No. 18-cv-4857 are not signatories to this agreement and thus are not "Settlement Class Action Representatives" as defined herein.

Lasry, Tarak Ben Ammar, Lance Maerov, Richard Koenigsberg, Paul Tudor Jones, Jeff Sackman, James Dolan, David Glasser, Barbara Schneeweiss, and Frank Gil (collectively, the "Former Representatives"); (TWC and the Former Representatives together, the "Defendants") (the Settling Class Action Plaintiffs and the Defendants are referred to as the "Parties" or "Class Action Settlement Parties").

The Agreement is intended to fully, finally, and forever resolve, discharge, and settle the Sexual Misconduct Claims (as defined herein) as against the Released Parties (as defined herein), subject to the approval of the District Court and the terms and conditions set forth in this Agreement.

## II.    RECITALS

WHEREAS,  individual lawsuits or claims have been filed in federal and state courts and foreign tribunals alleging, *inter alia,* Harvey Weinstein engaged in sexual harassment and abuse, facilitated or allowed to continue by various companies and their respective officers and directors, in violation of federal, foreign, and state law;

WHEREAS, the Settlement Class Action Representatives filed class actions alleging that Harvey Weinstein engaged in a pattern of sexual harassment and abuse, facilitated or allowed to continue by various companies and their respective officers and directors, in violation of federal and state law;

WHEREAS, the NYOAG filed a lawsuit alleging that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, including demanding sexual contact as a quid pro quo for continued employment or career advancement, subjecting female employees to verbal abuse and demeaning work tasks, and forcing female employees to engage in unwanted sexual contact, and alleging that Robert Weinstein and TWC aided and abetted these violations of law by

failing to investigate and/or stop Harvey's unlawful activities, all in violation of state and city human rights laws;

WHEREAS, on March 19, 2018, the Debtors (as defined below) commenced jointly administered cases by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code, which cases are presently pending in the Bankruptcy Court and captioned *In re Weinstein Company Holdings, LLC*, Case No. 18-10601 (the "Chapter 11 Cases");

WHEREAS, Settlement Class Action Representative Louisette Geiss serves as Co-Chair of the Official Committee of Unsecured Creditors in the Bankruptcy;

WHEREAS, several United States District Courts denied the motions to dismiss Harvey Weinstein in part, and granted certain motions to dismiss of certain other Defendants;

WHEREAS, the Parties engaged in extensive arm's-length settlement negotiations over the course of nearly two years;

WHEREAS, those negotiations were supervised by Jed Melnick of JAMS and informed by the rulings in various federal courts and foreign tribunals, the production of documents and information from the Debtors (as defined herein) and current and former officers and members of the boards of representatives/directors of TWC to the NYOAG, the production of documents in certain lawsuits and in the Bankruptcy, the analyses of the Official Committee of Unsecured Creditors in the Bankruptcy, the Debtors' independent analysis of their claims, and the Parties' multiple exchanges of information;

WHEREAS, after carefully considering the facts and applicable law and the risks and uncertainty of continued litigation, and as a result of having engaged in extensive negotiations, the Parties agree that it is in their mutual best interests to finally resolve the claims in the Cases on fair, reasonable, and adequate terms as set forth in this Agreement;

WHEREAS, the Defendants deny all allegations and claims asserted against them;

WHEREAS, each Party has independently determined that it is desirable and beneficial for the Cases and Claims to be fully and finally resolved in the manner and upon the terms and conditions set forth in this Agreement;

WHEREAS, in November 2019, the Parties reached an agreement in principle on terms and conditions of settlement; and

WHEREAS, the Parties have agreed to this Settlement on the terms and conditions set forth below.

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Class Action Plaintiffs and the Defendants that, subject to any necessary approvals of the District Court and the Bankruptcy Court, the Cases and the Sexual Misconduct Claims will be finally and fully compromised, settled, and released, and the Cases will be dismissed with prejudice as to all Parties, upon and subject to the terms and conditions of the following Agreement.

## III.    DEFINITIONS

The following terms, when used in this Agreement, have the meanings as set forth below. All terms defined in the singular have the same meaning when used in the plural, and all terms defined in the plural have the same meaning when used in the singular.

1.      "Additional Class Action Counsel" shall include: Brown Rudnick LLP, Morris James LLP, Kohn Swift & Graf, P.C., and Girard Sharp LLP.

2.      "Administrative Expenses" means the cost of the Class Action Notice Program relating to this Settlement and the costs of administering the Class Action Claims Process, disbursements of consideration to Class Action Claimants and other necessary and reasonable expenses associated with administering the Class Action Settlement, including the compensation of the Special Master, and those working for the Special Master, and including any costs and expenses related to lien resolution services.

3.      "Affiliate" or "Affiliated With" means (i) any entity that, directly or indirectly through one or more intermediaries or otherwise, controls, is controlled by, or is under common control with, a specified entity, and (ii) any entity that is an "affiliate" within the meaning of Bankruptcy Code § 101(2) of a specified entity.  As used in clause (i) of this definition, "control" shall include the possession, directly or indirectly, of the power to direct or cause the direction of the management or policies of an entity (whether through ownership of equity of that entity, by contract, or otherwise).

4.      "Agreement" means this Settlement Agreement and Release as defined as such in Section I.

5.      "Allocation Appendix" means the guidelines to be used by the Special Master to decide Claims, as negotiated and agreed to by Pre-2005 Subclass Counsel, Post-2005 Subclass Counsel, and NYOAG, which are attached as Ex. A and are subject to the approval of the District Court.

6.      "Attorneys' Fees and Costs" means the attorneys' fees and out-of-pocket costs for which Class Action Counsel, on behalf of themselves, Additional Class Action Counsel and Subclass Counsel, will apply to the District Court for approval for payment from the Class Action Settlement Amount, as well as the attorneys' fees and out-of-pocket costs for which Former Class Action Counsel may apply to the District Court for approval for payment from the Class Action Settlement Amount.

7.      "Bankruptcy Court" means the United States Bankruptcy Court for the District of Delaware.

8.      "Bankruptcy Court Approval Order" means those orders of the Bankruptcy Court necessary to approve the Bankruptcy Settlement Agreement.

9.      "Bankruptcy Settlement" and/or "Bankruptcy Settlement Agreement" means The Weinstein Company Bankruptcy Global Settlement Agreement.

10.      "Business Day" means any day other than Saturday, Sunday, or a "legal holiday," as such term is defined in Bankruptcy Rule 9006(a).

11.      "Cases" means the cases enumerated and defined as such in Section I.

12.      "Chapter 11 Cases" shall have the meaning set forth in Section II.

13.      "Chapter 11 Plan" means the plan under Chapter 11 of the Bankruptcy Code jointly proposed by the Debtors and the UCC, incorporating the terms of this Agreement and the Bankruptcy Settlement Agreement.

14.      "Claim" means, without limitation, any and all past, present or future claims, cross- claims, counterclaims, third-party claims, contribution claims, indemnification claims, rights, causes of action, orders, liabilities, notices of liability or potential liability, arbitrations, actions, suits, damages, demands, disputes, obligations, judgments, duties, defenses, liens, administrative proceedings, costs, expenses, attorneys' (and other) fees, matters, requests or proceedings of any kind or nature whatsoever and any claim within the definition of "claim" in section 101(5) of the Bankruptcy Code, regardless of where arising or where brought, whether at law, equity, contract, statute, or otherwise direct, indirect, or derivative, known or unknown, actual or alleged, asserted or not asserted, suspected or unsuspected, anticipated or unanticipated, fixed or contingent, liquidated or unliquidated, matured or unmatured, disputed or undisputed, domestic or foreign, disclosed or undisclosed, accrued or unaccrued, apparent or unapparent existing under any federal, state, local, foreign, tribal, common law, ordinance, statute or regulation, which has been, could have been, or may be asserted by or on behalf of any person or entity against the Debtors, their predecessors, successors, assigns, or any current or former Affiliate of any of the foregoing, or any other Released Party, whether seeking damages (including compensatory, punitive or exemplary damages and all other potential elements of recovery or relief) or equitable, mandatory, injunctive, or any other type of relief, irrespective of the expiration of any applicable statute of limitations.

15.     "Class" or "Class Action Members" means all Pre-2005 Subclass Members and all Post-2005 Subclass members, collectively.

16.     "Class Action Claim Awards" or "Claim Awards" or "Claim Award" or "Awards" or "Award" means the individual amounts due to Class Action Claimants (defined below) in accordance with the protocols and procedures outlined herein and in the Allocation Appendix at Exhibit A.

17.     "Class Action Claim Form" or "Class Action Claim Forms" or "Claim Form" mean the claim form to be completed by Class Action Members who wish to submit claims for Class Action Claim Awards.  The proposed Claim Form is attached as Ex. B and is subject to approval by the District Court.

18.     "Class Action Claim Form Deadline" means the deadline by which Claim Forms must be post- marked as being sent to the Class Action Claims Administrator, which deadline will be 90 days from the Notice Date.

19.     "Class Action Claimant" means any Settlement Class Action Member who submits a Claim Form pursuant to Section VII below.

20.     "Class Action Claims Administrator," "Claims Administrator," or "Settlement Administrator" means Epiq Class Action & Claims Solutions, Inc., chosen jointly by Class Action Counsel, the NYOAG,  the Defendants' respective counsel, and to be approved by the District Court to conduct various tasks, including as described herein.

21.     "Class Action Claims Process" means the two-tiered claims process, defined and set forth in Section VII, for seeking and awarding monetary payments to Settlement Class Action Members and resolving such claims.

22.     "Class Action Claim Procedures" means the procedures for distribution of the Class Action Settlement Fund to Settlement Class Action Members as set forth herein, or such

other procedures for distribution of the Class Action Settlement Fund to Class Action Members as the District Court shall direct.

23.     "Class Action Counsel" or "Settlement Class Action Counsel" means Elizabeth A. Fegan of Fegan Scott LLC and Steve W. Berman of Hagens Berman Sobol & Shapiro LLP.

24.     "Class Action Litigation" means Louisette Geiss, Sarah Ann Thomas (a/k/a Sarah Ann Masse), Melissa Thompson, Melissa Sagemiller, Nannette May (f/k/a Nannette Klatt), Katherine Kendall, Zoe Brock, Caitlin Dulany, Larissa Gomes, and Jane Doe v. The Weinstein Co. Holdings, et al., Case No. 18-cv-4857 (S.D.N.Y.) and Case No. 17-cv-09554 (S.D.N.Y.); and Jill Doe v. Harvey Weinstein et al., No. 1:19-cv-03430 (S.D.N.Y.)

25.     "Class Action Notice" or "Notice" means the Notice of Pendency and Proposed Settlement of Class Action substantially in the forms of Ex. C (Publication  Notice), Ex. D (Long-Form Notice), Ex. E (Letter Notice) and Ex. F (Email Notice) which are agreed upon by the Parties and will be submitted to the District Court for approval.  The Publication Notice, Letter Notice and Email Notice are also subject to approval by the Bankruptcy Court.

26.     "Class Action Notice Program" or "Notice Program" means the program described in the Declaration of Kyle Bingham.

27.     "Class Action Representatives" or "Settlement Class Action Representatives" means Louisette Geiss, Sarah Ann Thomas, Melissa Thompson, Melissa Sagemiller, Nannette May, Katherine Kendall, Caitlin Dulany, and Larissa Gomes in Case No. 18-cv-4857 (S.D.N.Y.), and Jill Doe in Case No. 1:19-cv-03430 (S.D.N.Y.).

28.     "Class Action Settlement" means the settlement described herein to resolve the claims of the Class.

29.     "Class Action Settlement Amount" or "Class Action Settlement Fund" means $18,875,000.00, together with any interest and accretions thereto, which may be reduced by payments or deductions as provided herein or by District Court order.

30.    "Confirmation Order" means an order by the Bankruptcy Court confirming the Chapter 11 Plan.

31.    "Debtors" means The Weinstein Company Holdings, LLC and its affiliates (collectively, "TWC") that are debtors in the jointly administered Chapter 11 proceedings styled (*In re The Weinstein Company Holdings, LLC*), 18-10601 (Bankr. D. Del.).

32.    "Defendants" means those defendants enumerated and defined as such in Section I.

33.    "District Court" means the United States District Court for the Southern District of New York.

34.    "District Court Final Approval Order" means an order of the District Court under Federal Rule of Civil Procedure 23 granting final approval of this Agreement, substantially in the form of the Proposed Final Order and Judgment that will be agreed upon by the Parties and submitted to the District Court.

35.    "Escrow Account" means the escrow account designated and controlled by the Escrow Agent at one or more national banking institutions into which the Class Action Settlement Amount will be deposited for the benefit of Settlement Class Action Members.

36.    "Escrow Agent" means the Class Action Claims Administrator or another neutral third party agreed to by the Parties.

37.    "Former Class Action Counsel" shall include those attorneys who formerly represented the Settlement Class Action Representatives in the District Court or Bankruptcy Court, namely: The Armenta Law Firm.

38.    "Governmental Payor" means the Medicare Program and the Medicaid Program.

39.    "Individual Plaintiffs" shall mean the group of plaintiffs consisting of Kadian Noble, Sandeep Rehal, Jane Doe in Case No. 17-585449 (Ont. Supr. Ct.); Kelly Sipherd, Jill Doe in Case No. CV-18-608425 (Ont. Sup. Ct.); ABC in CLAIM NUMBER:  HQ17P04249 (U.K.);

EFG in CLAIM NUMBER:  HQ18P00908 (U.K.); CDE whose claim is scheduled under CLAIM NUMBER: HQ18P00908 (U.K.); GHI whose claim is scheduled under CLAIM NUMBER: HQ18P00908 (U.K.); JKL whose claim is scheduled under CLAIM NUMBER: HQ18P00908 (U.K.); LMN whose claim is scheduled under CLAIM NUMBER: HQ18P00908 (U.K.); Paz De La Huerta; Pamela Ryan (Ireland); and Jane Doe in Case No. 18STCV08468 (Sup. Ct. Cal.).

40.      "Individual Plaintiffs' Settlement Agreement" means that certain settlement agreement dated June 29, 2020 executed by the Individual Plaintiffs and the Defendants.

41.      "Insurance Companies" means National Union Fire Insurance Company of Pittsburgh, Pa.; AIG Specialty Insurance Company; Steadfast Insurance Company; The American Insurance Company; Fireman's Fund Insurance Company; Zurich American Insurance Company; AXIS Surplus Insurance Company; The Travelers Companies, Inc.; Travelers Indemnity Company; Travelers Excess and Surplus Lines Company; Travelers Casualty and Surety Company, formerly known as The Aetna Casualty and Surety Company; Travelers Casualty and Surety Company of America; St. Paul Surplus Lines Insurance Company; St. Paul Fire & Marine Insurance Company; Gulf Insurance Company; Federal Insurance Company; Great Northern Insurance Company; Westchester Fire Insurance Company; Pacific Indemnity Company; Chubb Indemnity Insurance Company; Executive Risk Indemnity Inc.; Chubb National Insurance Company; ACE American Insurance Company, on behalf of themselves and their subsidiaries, Affiliates, parents, predecessors, or successors; *provided*, *however*, Insurance Companies shall not include AIG Europe Limited and AIG Europe SA.

42.      "Insurance Policies" means any insurance policy issued by an Insurance Company.

43.      "Late Claims" means claims filed by Class Action Members after the Claim Form Deadline.

44.     "Lien" means any statutory lien of a Governmental Payor or Medicare Part C or Part D Program sponsor; or any mortgage, lien, reimbursement claim, pledge, charge, security interest, or legal encumbrance, of any nature whatsoever, held by any person or entity, related to a Settlement Class Member's Claim Award.

45.     "Lienholder" means any governmental or private entity that holds or otherwise has the right to assert a Lien.

46.     "Liquidation Trust" shall mean the liquidation trust established by the Chapter 11 Plan, as further described in the Chapter 11 Plan.

47.     "Liquidation Trust Settlement Payment" shall mean the amount allocated to the Debtors for the benefit of the estate and for distribution to creditors pursuant to the Chapter 11 Plan.

48.     "Medicaid Program" means the federal program administered by the states under which certain medical items, services and/or prescription drugs are furnished to Medicaid beneficiaries under Title XIX of the Social Security Act, 42 U.S.C. § 1396-1 et seq.

49.     "Medicare Part C or Part D Program" means the program(s) under which Medicare Advantage, Medicare cost, and Medicare health care prepayment plan benefits and Medicare Part D prescription drug plan benefits are administered by private entities that contract with the Centers for Medicare & Medicaid Services.

50.     "Medicare Program" means the Medicare Parts A and B federal program administered by the Centers for Medicare & Medicaid Services under which certain medical items, services, and/or prescription drugs are furnished to Medicare beneficiaries under Title XVIII of the Social Security Act, 42 U.S.C. § 1395 et seq.

51.     "Non-Debtor Additional Affiliates" means Scary Movie 4 LLC; Derailed SPV, LLC; Mrs. Henderson Presents SPV, LLC; The Matador SPV, LLC; Breaking and Entering SPV,

LLC; Come Drink With Me SPV, LLC; SPV Film Distribution LLC; Butler Films LLC; Kristy Films LLC; and TWC Gold SPV, LLC.

52.     "Non-Debtor Affiliates" means The Weinstein Company (UK) Ltd.; Tulip Fever Films Limited; Current Films UK Limited; and MarcoThree, LLC.

53.     "Non-Debtor Entities" means all companies (other than the Debtors) that Harvey Weinstein was employed by, worked for, or held a position as an officer or director of between January 1, 1979 and October 1, 2017, as well as each of their parents, subsidiaries and Affiliates (including, without limitation, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., Miramax, LLC, Miramax Film Corporation and Miramax Film NY, LLC), or any of their respective equity holders or members, any of their Affiliates or any other independent contractor, current or former members of the board of representatives of the Non-Debtor Entities; provided, however, that Non-Debtor Entities shall not include (a) the Four Seasons Hotel Limited and Burton Way Hotels LLC, defendants in Paz De La Huerta v. Harvey Weinstein et. al., Case No. 19-cv-02183 (C.D. Cal.)) or (b) the Four Seasons Hotel Limited, Burton Way Hotels LLC and Burton Way Hotels Ltd., defendants in Paz De La Huerta v. Harvey Weinstein et. al., Case No. 18SCTV04723 (L.A. Sup. Ct.).

54.     "Non-Debtor Persons" means any and all individuals employed by or Affiliated With any of the Non-Debtor Entities against whom claims have or could have been made in any of the Cases in their capacity as such, including but not limited to Barbara Schneeweiss, Michael Eisner, Irwin Reiter, Rick Schwartz, Fabrizio Lombardo, Mark Gill and Nancy Ashbrooke, as well as each of their respective heirs, estates, predecessors, successors, agents, and assigns.

55.     "Non-SMC Claims" means all Claims that are not Sexual Misconduct Claims.

56.     "Notice Date" means the date that Class Action Notice is mailed to the Settlement Class, which date shall be no later than 14 days after Preliminary Approval.

57.     "NYOAG" means The Office of the New York Attorney General.

58.     "Objection Date" means the date, entered by the District Court in the Preliminary

Approval Order, by which a Class Action Member may object to the Settlement. To the extent

feasible, the Objection Date shall be the same as the Tort Victims Bar Date in the Chapter 11

Cases.

59.     "Other Governmental Payor" includes the following federal health programs:

(1) Tricare (managed by the United States Department of Defense through the Tricare

Management Activity  under which certain medical items, services and/or prescription drugs are

furnished to eligible military services, military retirees, and military dependents under

10 U.S.C. § 1071, et seq., as those sections may, from time to time be amended, and all

implementing regulations); and (2) the VA (managed by the United States Department of Veterans

Affairs for the benefit of retired service members and their family members).

60.     "Parties" or "Settling Parties" means the parties enumerated and defined as such

in Section I.

61.     "Post-2005 Settlement Subclass Member" means every member of the Post-2005

Subclass.

62.     "Post-2005 Subclass" means all women, on or after June 30, 2005, who (i) met

with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be

produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division

thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein

Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-

time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein

Company Holdings, LLC or a subsidiary or division thereof.

63.     "Post-2005 Subclass Counsel" means Daniel Girard of Girard Sharp LLP.

64.     "Post-2005 Subclass Representatives" mean Louisette Geiss, Sarah Ann Thomas,

Melissa Thompson, and Jill Doe in Case No. 1:19-cv-03430 (S.D.N.Y.).

65.     "Pre-2005 Settlement Subclass Member" means any Pre-2005 Subclass Member who does not opt out of the Settlement.

66.     "Pre-2005 Subclass" means all women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.; provided, however, the Pre-2005 Subclass expressly excludes (i) Kaja Sokola; and (ii) former employees of Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or any other entity for which Harvey Weinstein worked prior to June 30, 2005.

67.     "Pre-2005 Subclass Counsel" means Jonathan Shub of Kohn Swift & Graf, P.C.

68.     "Pre-2005 Subclass Opt-Out Agreement" shall have the meaning set forth in Paragraph 161.

69.     "Pre-2005 Subclass Opt-Out Deadline" means the date, entered by the District Court in the Preliminary Approval Order, by which a Pre-2005 Subclass Member may elect to exclude herself from the Class.

70.     "Pre-2005 Subclass Representatives" means Caitlin Dulany, Katherine Kendall, Nanette May, Melissa Sagemiller, and Larissa Gomes in Case No. 18-cv-4857 (S.D.N.Y.)

71.     "Preliminary Approval" means the entry of the District Court's order granting preliminary approval of this Settlement. The Proposed Preliminary Approval Order is attached as Ex. G.

72.     "Private Third Party Payer/Other Provider" means any healthcare provider, employer, workers' compensation carrier (including a state workers' compensation fund), group

health plan, non-group health plan, insurer, Federal Employees Health Benefit plan (such as Blue Cross Federal or Blue 365), or other entity (other than the Medicaid Program, the Medicare Program, Medicare Part C or Part D Program, or an Other Governmental Payor) that administers, contracts for, or provides medical items, services, and/or prescription drugs to a Settlement Class Member.

73.     "Pro Rata Increase" means the percentage enhancement that, in the event the total payments for Class Action Claim Awards, Class Action Administrative Expenses, Attorneys' Fees and Costs, and Class Action Service Awards do not meet or exceed the Class Action Settlement Amount, will be applied to increase Class Action Claim Awards until the Class Action Settlement Amount is reached.

74.     "Pro Rata Reduction" means the percentage reduction that, in the event the total payments for Class Action Claim Awards, Class Action Administrative Expenses, Attorneys' Fees and Costs, and Class Action Service Awards would exceed the Class Action Settlement Amount, will be applied to reduce Class Action Claim Awards so that the total payments for Claim Awards and Class Action Administrative Expenses do not exceed the Class Action Settlement Amount.

75.     "Pro Rata Adjustment" means the Pro Rata Increase or the Pro Rata Reduction.

76.     "Released Parties" means (i) the Debtors, the TWC Estate, the Non-Debtor Entities, the Non-Debtor Persons, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, the Former Representatives and the Insurance Companies; (ii) professionals of firms specified in Exhibit I; and (iii) each such persons' or entities' current and former officers, directors and board representatives, predecessors, successors, assigns, insiders, subsidiaries, Affiliates, principals, equity holders, members, trustees, partners, managers, employees, agents, members of any boards or similar bodies of such persons, advisory board members, financial advisors, attorneys, insurers, reinsurers, accountants, investment bankers, consultants, representatives, and other professionals, and such persons' respective heirs, executors, estates, and nominees, in each case, in their capacity

as such, or any other person who rendered services for, or provided goods to, any of the Debtors or the Non-Debtor Entities, with respect to liability for the actions or inactions of the Former Representatives, the Debtors, the TWC Estate, the Non-Debtor Entities, the Non-Debtor Persons, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies; provided, however, those persons or entities who fall within subparagraph (iii) (other than persons or entities specified in subparagraphs (i) and (ii)) are not released with respect to their own actions related to Sexual Misconduct Claims, regardless of their relationship with the Former Representatives, the Debtors, the TWC Estate, the Non-Debtor Entities, the Non-Debtor Persons, Non-Debtor Affiliates, Non-Debtor Additional Affiliates, or the Insurance Companies, to the extent such action constitutes aiding, abetting or conspiracy to prevent the disclosure of or to cover up any Sexual Misconduct Claim (each a "Non-Released Party").[3]

77.     "Releasing Class Action Plaintiffs" means the Settlement Class Action Representatives, and each Settlement Class Action Member.

78.     "Settlement" means the terms and conditions of settlement embodied in this Agreement.

79.     "Settlement Class" or "Settlement Class Action Members" means all Pre-2005 Settlement Subclass Members and Post-2005 Settlement Subclass Members as a whole. Settlement Class Action Members also includes Plaintiff Emma Loman in Case No. 18-cv-7310 (C.D. Cal.) and Plaintiff Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal). To the extent not expressly excluded from the subclass definitions above, also excluded from the Settlement Class are Ashley Judd, Wedil David, Alexandra Canosa, Dominique Huett, and Rose McGowan, and those plaintiffs who are the subject of a separate settlement agreement, namely Plaintiff Kadian Noble in Case No. 17 CV 9260 (S.D.N.Y.); Plaintiff Sandeep Rehal in Case No.

---

[3]  As specified above, AIG Europe Limited and AIG Europe SA are not Insurance Companies and as such, AIG Europe Limited and AIG Europe SA are not Released Parties.

151738/2018 (N.Y. Sup. Ct.); Plaintiff Jane Doe in Case No. 17-585449 (Ont. Supr. Ct.); Plaintiff

Kelly Sipherd in Case No. CV-18-608438 (Ont. Supr. Ct.); Plaintiff Jill Doe in Case No.

CV-18-608425 (Ont. Sup. Ct.); Plaintiff ABC in CLAIM NUMBER: QB-2017-000118 (U.K.);

Plaintiff EFG in CLAIM NUMBER: HQ18P00908 (U.K.); Plaintiff CDE whose claim is

scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.); Plaintiff GHI whose claim is

scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.); Plaintiff JKL whose claim is

scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.); Plaintiff LMN whose claim is

scheduled under CLAIM NUMBER: QB-2017-000118 (U.K.); Plaintiff Paz De La Huerta in Case

Nos. 18SCTV04723 (L.A. Sup. Ct.), 19STCV30894 (L.A. Sup. Ct.), 19-cv-02183 (C.D. Cal.),

and 19-cv-07682 (C.D. Cal.); Plaintiff Pamela Ryan (Ireland); and Plaintiff Jane Doe in Case No.

18STCV08468 (Sup. Ct. Cal.).

  80.  "Settling Class Action Plaintiffs" means the persons enumerated and defined as

such in Section I.

  81.  "Settlement Class Action Representatives" means the persons enumerated and

defined as such in Section I.

  82.  "Settlement Effective Date" means the later of the dates on which the time for

filing an appeal from entry of the District Court Final Approval Order and the Bankruptcy Court's

Confirmation Order have either expired without an appeal being filed, or if later, after any appeal

has been fully resolved upholding the District Court Final Approval Order of this Agreement and

the Bankruptcy Court's Confirmation Order (including requests for rehearing, rehearing *en banc*,

and petitions for certiorari), at which time the obligations set forth in this Agreement and the terms

of this Agreement become binding on Defendants, the Settlement Class Action Representatives,

the NYOAG, the Settlement Class Action Members, Class Action Counsel, and anyone else who

has undertaken an obligation under this Agreement.

83.     "Sexual Misconduct Claims" means all Tort Claims that arise out of, connect to or relate in any way to any actual or alleged sexual conduct of Harvey Weinstein.

84.     "Signing Settlement Class Action Members" means the persons enumerated and defined as such in Section I.

85.     "Special Master" means the individual selected by Class Action Counsel jointly with the NYOAG, subject to Court approval, to administer and adjudicate the Class Action Claims Process set forth in Section VII and to serve as the Special Master as set forth in Section VIII.

86.     "Special Master's Team" means any personnel retained by the Special Master to assist in conducting interviews and evaluating Claim Forms and evidence under the Special Master's supervision.

87.     "Statement of Post-2005 Subclass Membership" means the statement that Post-2005 Subclass Members must submit by the Tort Victims Bar Date in the Bankruptcy. To the extent feasible, the Statement of Post-2005 Subclass Membership shall be included on the Claim Form, and the submission of the Claim Form and Statement of Post-2005 Subclass Membership shall be to the Claims Administrator.

88.     "Subclass Counsel" shall collectively refer to Pre-2005 Subclass Counsel and Post-2005 Subclass Counsel.

89.     "Tax" or "Taxes" mean any and all taxes, fees, levies, duties, tariffs, imposts, and other charges of any kind (together with any and all interest, penalties, additions to tax and additional amounts imposed with respect thereto) imposed by any governmental authority.

90.     "Tier 1 Class Action Claim Award" means an amount up to $150,000, subject to Pro Rata Adjustments, that may be awarded by the Special Master to a Class Action Claimant, as set forth in Section VII herein.

91.     "Tier 2 Class Action Claim Award" means an amount up to $750,000, subject to Pro Rata Adjustments, that may be awarded by the Special Master to a Class Action Claimant, as set forth in Section VII herein.

92.     "Tort Claim" means any Claim (including any Claim asserted against any Released Party by any Non-Released Party) that arises out of or connects or relates in any way to, any actual or alleged conduct of Harvey Weinstein, which shall include, without limitation: (i) actual or alleged sexual misconduct, nonconsensual interactions, harassment (including sexual harassment), uninvited or unwelcome conduct, predatory conduct, inappropriate conduct, degrading conduct, coercive or intimidating behavior, humiliation, tort, hostile work environment, sexual assault, rape, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, battery, assault, gender violence, false imprisonment, false arrest or detention, sexual abuse, sex trafficking or discrimination based on sex or gender or any similar or related actions, or (ii) defamation, witness tampering, mail fraud, wire fraud, negligent hiring, negligent supervision, negligent retention, negligence, failure to prevent harassment or ratification, in each case that took place in whole or in part prior to preliminary approval of the Class Action Settlement Agreement, whether based on direct or vicarious liability, whether domestic or foreign, whether based on breach of fiduciary (or other) duty or intentional or negligent conduct, including but not limited to allegations of failure to prevent or remedy, failure to disclose, aiding and abetting or efforts or conspiracy to prevent the disclosure, or cover up, of any of the preceding, against the Released Parties.  For the avoidance of doubt, "Tort Claims" (i) shall be as released, discharged and enjoined under the Chapter 11 Plan and (ii) does not include the enforcement of the Settlement.

93.     "Tort Victims Bar Date" means the deadline for holders of Tort Claims to file proofs of claims in the Chapter 11 Cases. To the extent feasible, the Tort Victims Bar Date shall be the same date as the Class Action Claim Form Deadline.  The Statement of Post-2005 Subclass

Membership shall be included on the Claim Form, and the submission of the Claim Form and Statement of Post-2005 Subclass Membership shall be to the Claims Administrator.

94.   "TWC" means the companies enumerated in and defined as such in Section I.

95.   "TWC Estate" means, collectively, the estates of the Debtors.

96.   "UCC" means the Official Committee of Unsecured Creditors appointed in the Bankruptcy.

## IV.   SCOPE AND EFFECT OF SETTLEMENT

97.   **Scope of the Settlement.** This Settlement compromises and resolves the Sexual Misconduct Claims and the Cases on the terms and conditions set forth herein.

98.   Settlement Class Certification.

  a.   The Parties stipulate to, and waive their rights to appeal, class certification, for settlement purposes only, of the following Pre-2005 Settlement Subclass pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3): "All women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.

  b.   The Parties further stipulate to, and waive their rights to appeal, class certification, for settlement purposes only, of the following non-opt-out Post-2005 Settlement Subclass pursuant to Fed. R. Civ. P. 23(a) and 23(b)(1): "All women who, on or after June 30, 2005,  (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein

Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof."

99.      **Reservation of Rights.** The Defendants do not agree to class certification for any purpose other than to effectuate this Settlement. The Defendants expressly reserve their right to contest the District Court's jurisdiction and class certification in the event this Agreement is not approved or fails to become effective for any reason. The Parties agree that if this Agreement is not approved or fails to become effective for any reason, notwithstanding any other term in this Agreement, this Agreement shall become null and void and accordingly, the Cases will return to the status quo immediately preceding the date of this Agreement.

100.      **Preliminary Approval Proceedings.** Within five (5) Business Days after execution of the Agreement, and to the extent feasible at the same time the Chapter 11 Plan is submitted to the Bankruptcy Court, Settlement Class Action Representatives will submit the Agreement together with its Exhibits to the District Court and will apply for entry of an order substantially in the form of the Proposed Preliminary Approval Order, requesting, *inter alia*, preliminary approval of the Settlement set forth in this Agreement; the setting of dates for the mailing of the Notice, Claim Form Deadline, Pre-2005 Subclass Opt-Out Deadline, Objection Deadline, and Final Fairness Hearing; appointment of the Claims Administrator; appointment of the Special Master; and approval of the Class Action Notice.

101.      **Pre-2005 Subclass Opt-Out Right.** Any Pre-2005 Subclass Member who wishes to opt out of the Pre-2005 Settlement Subclass must submit a timely written request for exclusion on or before the Pre-2005 Subclass Opt-Out Deadline, in the manner specified in the Class Action Notice and Preliminary Approval Order, which written request will in any event include sufficient

identifying information so that Defendants may properly evaluate their right to withdraw from the Settlement in accordance with Paragraph 161, *infra*. All requests for exclusion must be signed with a handwritten signature (or similar mark) by the person seeking to exclude herself from the Pre-2005 Settlement Subclass.  There shall be no right to submit a mass or class opt-out.

102.    **Defective Submissions**. If a Pre-2005 Subclass Member's request to opt out is materially defective as to the requirements listed herein, that Pre-2005 Subclass Member will be given an opportunity to cure the defect(s). The Settlement Administrator will mail such Pre-2005 Subclass Member a cure letter within 10 Business Days of receiving the defective submission to advise the Class Action Member that her submission is defective and that the defect must be cured to render the Request for Exclusion valid. The Class Action Member will have until 14 calendar days from the date of the cure letter, to postmark or provide electronically a revised Request for Exclusion. If such a Pre-2005 Subclass Member responds to a cure letter by filing a defective Request for Exclusion, then the Settlement Administrator will have no further obligation to give notice of a need to cure. If the revised Request for Exclusion is not postmarked or received electronically within the 14 calendar day period provided above, it will be deemed untimely.

103.    **May 2020 Jane Does Case.**   On May 28, 2020, an action was filed in the Supreme Court of the State of New York (New York County) captioned *Jane Doe I, Jane Doe II, Jane Doe III and Jane Doe IV v. Harvey Weinstein, Robert Weinstein, Miramax Holding Corp., Miramax Film NY LLC (f/k/a Miramax Film Corp.), The Walt Disney Company, Disney Enterprises, Inc. and DOE Corp. 1-10*.  Based on the allegations in the foregoing lawsuit, certain of the May 2020 Jane Does may be members of the putative Pre-2005 Subclass and others may be members of the putative Post-2005 Subclass.  Upon Preliminary Approval, the May 2020 Jane Does shall have the rights afforded to Pre-2005 Subclass Members or Post-2005 Subclass Members (as applicable) under this Agreement.

104.     **Binding Effect of Settlement Upon Class Action Members.** If this Settlement is approved by the District Court, at the Settlement Effective Date, all persons within the Settlement Class will be bound by the terms of the Settlement, except those Pre-2005 Subclass Members who effectively exercise their right to opt out of the Pre-2005 Settlement Subclass.

105.     **Objections.** Any Class Action Member who wishes to object to the fairness, reasonableness, or adequacy of the Class Action Settlement, or the application of Class Action Counsel for an award of Attorneys' Fees and Costs and/or for service awards for Settlement Class Action Representatives, must timely do so in the manner specified in the Preliminary Approval Order and in any subsequent notice or order concerning the application for Attorneys' Fees and Costs and/or for service awards to Settlement Class Action Representatives.

106.     **Final Approval Proceedings.** Class Action Counsel shall share with Defendants all Settlement approval documents that they intend to file with the District Court, which the Defendants shall have a reasonable opportunity to review and comment on prior to filing, and such Settlement approval documents shall be reasonably satisfactory to the Defendants.  At the District Court Final Approval Order Hearing, the Settlement Class Action Representatives will request entry of an order granting final approval of this Agreement, including:

    a.  finally approving the Settlement as fair, reasonable, and adequate, within the meaning of Rule 23 of the Federal Rules of Civil Procedure, and directing its consummation pursuant to its terms;

    b.  directing that the Class Action Litigation be dismissed with prejudice, and releasing the Sexual Misconduct Claims as set forth below;

    c.  reserving jurisdiction with respect to implementation and enforcement of the terms of the Agreement; and

    d.  containing such other and further provisions consistent with the terms of the Settlement to which the Parties expressly consent in writing.

107. **Stay and Dismissal of Litigations.** Promptly after execution of the Agreement, the Settlement Class Action Representatives, NYOAG and Signing Class Action Settlement Members will seek to stay their respective Cases (but for presentation of the Agreement in *Geiss* to the District Court). Further, by the later of (i) 10 days from the Settlement Effective Date and (ii) the payment of the Class Action Settlement Amount to the Escrow Account, the cases brought by the NYOAG on behalf of the People of New York, Case No. 0450293/2018 (N.Y. Sup. Ct.), by Emma Loman in Case No. 18-cv-7310 (C.D. Cal.) and by Jane Doe in Case No. 2200292/2018 (U.K. Employment Tribunal), and the underlying Claims that were or could have been asserted therein against Defendants (or any other Party, including the Former Representatives) shall be dismissed with prejudice.

108. **Extinguishment of Sexual Misconduct Claims.** Upon the Settlement Effective Date and pursuant to the terms of the District Court Final Approval Order, all Releasing Class Action Plaintiffs and the NYOAG and anyone claiming through or on behalf of any of them, including but not limited to each of their respective heirs, estates, predecessors, successors, agents, and assigns, shall have and will be deemed to have fully, finally, and forever released, relinquished, and discharged all Sexual Misconduct Claims against the Released Parties and each of them. Upon and following the Settlement Effective Date, the Releasing Class Action Plaintiffs and the NYOAG will be forever barred and enjoined from commencing, instituting, prosecuting or continuing to prosecute any action or other proceeding in any court of law or equity, arbitration tribunal, or administrative or other forum, asserting any Sexual Misconduct Claim against any of the Released Parties. As to the Sexual Misconduct Claims only, all Releasing Class Action Plaintiffs and the NYOAG hereby expressly, knowingly, and voluntarily waive the provisions of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER

FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

Releasing Class Action Plaintiffs and the NYOAG expressly waive and relinquish any and all rights and benefits that they may have under, or that may be conferred upon them by, the provisions of Section 1542 of the California Civil Code, or any other law of any state or territory that is similar, comparable, or equivalent to Section 1542, to the fullest extent that they may lawfully waive such rights or benefits pertaining to the Sexual Misconduct Claims. In connection with such waiver and relinquishment, Releasing Class Action Plaintiffs and the NYOAG hereby acknowledge that they are aware that they or their attorneys may hereafter discover claims or facts in addition to or different from those that they now know or believe exist with respect to the Sexual Misconduct Claims, but that it is their intention to hereby fully, finally, and forever settle and release all of the Sexual Misconduct Claims known or unknown, actual or alleged, asserted or not asserted, suspected or unsuspected, anticipated or unanticipated, matured or unmatured, domestic or foreign, disclosed or undisclosed, contingent or absolute, liquidated or unliquidated, accrued or unaccrued, apparent or unapparent, that they have against the Released Parties or any of them. In furtherance of such intention, the release herein given by Releasing Class Action Plaintiffs and the NYOAG to the Released Parties shall be and remain in effect as a full and complete general release as to the Sexual Misconduct Claims, notwithstanding the discovery or existence of any such additional different claims or facts. Each of the Releasing Class Action Plaintiffs and the NYOAG expressly acknowledges that she/it has been advised by her/its attorney of the contents and effect of Section 1542 (and/or other applicable state law equivalents), and with knowledge, each of said Parties hereby expressly waives whatever benefits she/it may have had pursuant to such section. The Releasing Class Action Plaintiffs and the NYOAG acknowledge, and each Class Action Member shall be deemed by operation of the District Court Final Approval

Order to have acknowledged, that the foregoing waiver was separately bargained for and is a material element of the Settlement of which the Release set forth in this Paragraph 108 is a part.

109.    **Sexual Misconduct Claims Against Non-Released Parties.** In the event a Settlement Class Action Member has initiated (or initiates in the future) an action against a Non-Released Party related to a Sexual Misconduct Claim for conduct that occurred on or before the date of Preliminary Approval of this Settlement and the applicable court or governing body finds such action may move forward notwithstanding the provisions of the Chapter 11 Plan, the Bankruptcy Settlement Agreement and this Agreement, any recovery in such action (or a related action) against a Released Party by the Settlement Class Action Member shall be deemed completely satisfied based on the Released Party's (and/or such Released Party's Insurance Companies') contribution to the Class Action Settlement Amount, regardless of the jurisdiction in which the Settlement Class Action Member brings the Sexual Misconduct Claim or the applicable law that governs such Sexual Misconduct Claim, and the Parties reserve their rights under relevant state law.

## V.    SETTLEMENT CONSIDERATION

### A.    Economic Terms

110.    Defendants shall cause the Insurance Companies to pay, $18,875,000.00 as the Class Action Settlement Amount within ten (10) Business Days of the Settlement Effective Date.

111.    The costs of developing and distributing the Class Action Notice (the "Class Action Notice Costs") shall be billed to the Debtors' claims and noticing agent, Epiq Bankruptcy Solutions, LLC.  The initial costs of administration for the Class Action Claims Administrator to manage the Class Action Claims Process shall be advanced by the Debtors in an amount not to exceed $300,000 (the "Class Action Administration Costs") within 20 days of Preliminary Approval.  Within five (5) Business Days of receipt of the Class Action Settlement Amount, the Class Action Claims Administrator shall reimburse the Debtors for the Class Action Notice Costs

and the Class Action Administration Costs and the reimbursed funds shall be directed to the Liquidation Trust.

### B.      Non-Economic Terms

112.      The Defendants expressly release any member of the Settlement Class from any confidentiality, non-disclosure, or non-disparagement agreement arising out of or related to any Sexual Misconduct Claims.

### C.      Liquidation Trust Settlement Payment

113.      Under the Bankruptcy Settlement and Chapter 11 Plan, $7,295,000 has been allocated to the Debtors for the benefit of the estate and for distribution to administrative priority and general unsecured creditors ("Liquidation Trust Settlement Payment").

114.      In consideration for the Settlement, the Settlement Class Action Representatives, individually and on behalf of Settlement Class Action Members, and NYOAG, expressly disclaim any interest in the Liquidation Trust Settlement Payment in connection with their Sexual Misconduct Claims, *provided, however,* Class Action Members who also possess Non-SMC Claims may seek recovery for such Claims from the Liquidation Trust.

115.      Distributions from the Liquidation Trust shall be made in accordance with the Chapter 11 Plan and shall be subject to the jurisdiction and approval of the Bankruptcy Court.

### VI.      USE OF THE CLASS SETTLEMENT FUND

116.      **Disbursements.** The Class Action Settlement Fund will be used to pay: (a) Administrative Expenses of the Class Action Settlement (including all noticing costs); (b) Taxes on the Class Action Settlement Amount; (c) distributions to Class Action Claimants as provided herein and in the Claim Procedures; (d) Attorneys' Fees and Costs of Class Action Counsel as approved by the District Court; and (e) any service awards that the District Court may award to the Settlement Class Action Representatives.

117.    **Tax Implications for Class Action Claimants.** Neither the Class Action Counsel nor the Defendants make any representation or warranty, and provide no advice, regarding the tax consequences, if any, of this Agreement. Class Action Claimants are advised to consult with appropriate legal counsel regarding any tax implications of this Agreement. It is the intention of the Parties that every payment to a Settlement Class Action Member as provided herein is a payment made because of an alleged personal injury suffered by the Settlement Class Action Member.

118.    **Investment of Class Action Settlement Amount.** The Escrow Agent may invest the Class Action Settlement Amount in: (1) United States Agency, United States Government Sponsored Entities or Treasury Securities or obligations (or a mutual fund invested solely in such instruments), or other instruments backed by the Full Faith and Credit of the United States Government or an Agency thereof; (b) cash equivalent securities including SEC registered money market funds and collateralized money market accounts; and/or (c) deposit and similar interest-bearing, or non-interest bearing, accounts subject to Federal Depository Insurance Corporation protections as available. The fundamental investment goal being to preserve the Class Action Settlement Amount, reduce investment costs and fees, and earn a reasonable but safe return on investment of those funds.  The Escrow Agent may also reinvest the proceeds of these instruments as they mature in similar instruments at their then-current market rates. All risks related to the investment of the Class Action Settlement Fund in accordance with the investment guidelines set forth in this paragraph will be borne by the Class Action Settlement Fund. The Defendants will have no responsibility for, interest in, or liability whatsoever with respect to investment decisions or the actions of, including any transactions executed by, the Escrow Agent.

119.    **Execution of Approved Transactions.** Subject to further order(s) and/or directions as may be made by the District Court, the Escrow Agent is authorized to execute such transactions as are consistent with the terms of this Agreement. The Defendants will have no

responsibility for, interest in, or liability whatsoever with respect to the actions of the Escrow Agent, or any transaction executed by the Escrow Agent.

120. **Class Action Settlement Fund Under District Court Jurisdiction.** All funds held by the Escrow Agent for the benefit of the Class Action Settlement Fund will be deemed and considered to be *in custodia legis* of the District Court, will remain subject to the jurisdiction of the District Court, but also remain the property of the Class Action Settlement Fund until such time as such funds will be distributed pursuant to the Agreement and/or further order(s) of the District Court. Class Action Counsel will account to the District Court in regards to expenditures from the Class Action Settlement Fund in such manner and at such times as the District Court shall direct. The Class Action Settlement will not depend on the District Court accepting particular proposed distributions, provided that there is a valid and binding release of class Claims.

121. **No Return of Funds After Settlement Effective Date.** Upon the occurrence of the Settlement Effective Date, neither the Defendants, the Insurance Companies, nor any other person or entity that paid any portion of the Class Action Settlement Amount will have any right to the return of monies contributed or any portion thereof for any reason whatsoever (including, without limitation, the number of Claim Forms submitted, in absolute terms or by category, or the amounts to be paid to Class Action Claimants), except as set forth in Paragraphs 111 and 160.

122. **Treatment of Class Action Settlement Fund as Qualified Settlement Fund and Relation Back.** The Settlement Class Action Representatives, Defendants, and the Escrow Agent agree to treat the Class Action Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. Additionally, the Escrow Agent will timely make such elections as necessary or advisable to carry out the provisions of this Paragraph 122, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections will be made in compliance with the procedures and requirements contained in such regulations. It will be the responsibility of the Escrow Agent to timely and

properly prepare and deliver the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

123.    **Tax Administrator.** For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" will be the Escrow Agent. The Escrow Agent will timely and properly file all informational and other tax returns necessary or advisable with respect to the Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)). Such returns (as well as the election described above) will reflect that all Taxes (including any estimated Taxes, interest or penalties) on the income earned by the Settlement Fund will be paid out of the Settlement Fund as provided herein. The Settlement Class Action Representatives and the Defendants agree to cooperate with the Escrow Agent, and its tax attorneys and accountants or other tax professionals, as appropriate, to the extent reasonably necessary to carry out the provisions of this Section VI.  The Escrow Agent, as "administrator" for tax purposes, is authorized to take any actions, including actions that may be inconsistent with the terms expressly set forth in this Section VI, as it deems necessary to ensure that the Class Action Settlement Fund is treated as a qualified settlement fund.  The fundamental goal of the Class Action Settlement Fund is to at all times comply with Internal Revenue Code Section 468B, and Treas. Reg. Sections 1.468B-1 through -3, et seq.

124.    **Taxes Relating to Class Action Settlement Fund.** All (i) Taxes (including any estimated Taxes, interest or penalties) arising with respect to the income earned by the Class Action Settlement Fund, including any Taxes or tax detriments that may be imposed upon the Defendants or their counsel with respect to any income earned by the Class Action Settlement Fund for any period during which the Class Action Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes, and (ii) expenses and costs incurred in connection with the operation and implementation of these Tax provisions (including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs

and expenses relating to filing (or failing to file) returns) ("Tax Expenses"), will be paid  out of

the Class Action Settlement Fund.  In no event will any Defendant or any of its, his, or her counsel

have any liability or responsibility for the Taxes or the Tax Expenses. The Escrow Agent, through

the Class Action Settlement Fund, will indemnify and hold each Defendant and its, his, or her

counsel harmless for Taxes and Tax Expenses (including, without limitation, Taxes payable by

reason of any such indemnification). Further, Taxes and Tax Expenses will be treated as, and

considered to be, a cost of administration of the Class Action Settlement Fund and will be timely

paid by the Escrow Agent out of the Class Action Settlement Fund without prior order from the

District Court, and the Escrow Agent will be authorized (notwithstanding anything herein to the

contrary) to withhold from distribution to authorized Class Action Claimants any funds necessary

to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax

Expenses (as well as any amounts that may be required to be withheld under Treas.

Reg. § 1.468B-2(l)(2)).  Neither the Defendants nor any of their respective counsel are responsible

or will have any liability for any Taxes or Tax Expenses as to the Class Action Settlement Fund.

The Parties agree to cooperate with the Escrow Agent, each other, and their tax attorneys and

accountants to the extent reasonably necessary to ensure performance of these Tax provisions.

125.    **Responsibility for Liens.**

a.  The Parties will request that the District Court appoint the Claims Administrator to

administer the process to identify and resolve Liens of Governmental Payers, and

certain other Liens to the extent the Claims Administrator is retained individually

by a Class Action Claimant (or such Class Action Claimant's counsel, if

applicable), that may be owed based on payments for medical treatment paid on

behalf of a Class Action Claimant pursuant to the following process:

i.   *Liens of the Governmental Payors:* Based on information provided to the

Claims Administrator for each Settlement Class Action Member, the

Claims Administrator will affirmatively verify whether each Class Action Claimant is or was entitled to benefits pursuant to the Medicare Program and/or the Medicaid Program (by each Class Action Claimant's current state of residence unless otherwise requested by Class Action Counsel or Counsel for such Class Action Claimant).  For any Class Action Claimants who are confirmed to be entitled to benefits pursuant to the Medicare Program and/or Medicaid Program, the Claims Administrator will work with the relevant agency to determine whether there is a potential repayment obligation owed to the Medicare Program and/or Medicaid Program for medical treatment related to this Settlement and resolve any such repayment obligation(s) out of the Class Action Claimant's Claim Award.

ii. Each Class Action Claimant shall cooperate with the Claims Administrator's procedures for resolving Liens of Governmental Payors, including but not limited to, providing any requested information and authorizations to the Claims Administrator to the extent applicable.

iii. *Liens of Private Third Party Payers/Other Providers/Medicare Part C or Part D Program sponsors/Other Governmental Payors:* Each Class Action Claimant (and each Class Action Claimant's respective counsel, if applicable) is solely responsible for resolving any and all Liens (other than Liens of Governmental Payors) including but not limited to Liens that may be held by any Private Third Party Payers/Other Providers, Medicare Part C or Part D Program sponsors, and/or Other Governmental Payors (collectively, "Private/Other Governmental Payers") in connection with such Class Action Claimant's Claim Award.

iv.   The Claims Administrator will satisfy, either globally or on an individual basis, any Liens of Governmental Payers out of a Class Action Claimant's Claim Award.  All Liens other than those held by Governmental Payors are the sole responsibility of each Class Action Claimant to resolve unless the Class Action Claimant (or counsel for such Class Action Claimant, if applicable) retains the Claims Administrator to resolve such Liens.

 v.   Prior to the release of any funds to any Class Action Claimant, the Claims Administrator shall determine the following: (1) the final amount needed to satisfy Liens of Governmental Payors and/or any other Liens for which the Claims Administrator is retained to resolve with respect to each Class Action Claimant, if applicable; or (2) the holdback amount under which such Liens shall be resolved to allow for the partial release of funds to the Class Action Claimant.

vi.   Notwithstanding any other provision of this Agreement relating to fund distribution, if the Claims Administrator receives notice of any Liens from any entity with respect to a Class Action Claimant's award, no funds shall be released to the Class Action Claimant until either: (1) the Class Action Claimant (or such Class Action Claimant's respective counsel, if applicable) presents documentation demonstrating that such Lien has been satisfied and discharged; or (2) the Claims Administrator determines the final amount necessary to resolve such Lien or the holdback amount from which such Lien shall be resolved (in the event the Claims Administrator is retained individually by such Class Action Claimant to resolve such lien).

b.   The Claims Administrator will obtain reasonable documentation that any Liens of Governmental Payors and any other Liens that the Claims Administrator is retained

to resolve by a Class Action Claimant have been satisfied whether through payment or otherwise. The Claims Administrator will provide to Class Action Counsel or the Special Master, upon request, information received for the purposes of verifying compliance and repayment satisfaction.

c.  Each Class Action Claimant (and her respective counsel, if applicable) will be solely responsible for the satisfaction and discharge of all Lien obligations. This includes any potential notice obligation required by statute, contract, or otherwise when making a claim for and/or receiving compensation under this Settlement. Notwithstanding that responsibility, the Claims Administrator will perform the duties outlined herein upon authorization by the District Court and each Class Action Claimant shall execute any supplemental documents or correspondence, provide any additional information, and take all additional actions that may be necessary or appropriate to allow the Claims Administrator to identify or resolve a Lien. The Claims Administrator, through Class Action Counsel, will seek an order, such order to be a qualified protective order, from the District Court authorizing the Claims Administrator to receive and send information that is, or may be, protected under the Health Insurance Portability and Accountability Act ("HIPAA") to fulfill the duties described herein on behalf of Settlement Class Action Members.

d.  Nothing herein shall be interpreted to create or expand Lien recovery rights held by third parties pursuant to applicable law.

e.  The Released Parties shall have no liability or responsibility with respect to any Lien, and in furtherance but not in limitation of the foregoing, are hereby made express third party beneficiaries of this Section VI and may enforce directly and in

their own name, and without the consent of any other person, all obligations of the Claims Administrator set forth in Sections (a)-(d).

f.   Any modifications to the language above in this Section VI must be approved by the Released Parties.

## VII.   CLASS NOTICE AND CLASS ADMINISTRATION

126.   **Notice Program.** The Debtors have furnished certain information reasonably available to them to assist in the identification of all potential Settlement Class Action Members. Direct notice of the Settlement will begin within 14 days after entry of the Preliminary Approval Order, unless otherwise ordered by the District Court. The proposed notice program is described in the concurrently filed declaration of Kyle Bingham.

127.   **Website.** The Class Action Claims Administrator will establish a website for the Settlement, which will make all relevant materials available to Class Action Members and have the ability to receive Claim Forms.

128.   **Claims Administration.** The Class Action Claims Administrator will receive all Class Claim Forms and process them as directed by the Special Master or as otherwise set forth in the Settlement Agreement and Class Action Claim Procedures, or as otherwise directed by the District Court. Unless the District Court otherwise orders, claims processing will continue notwithstanding the pendency of an appeal, except that Defendants shall be under no obligation to cause the contribution of the Settlement Amount, except as set forth in Paragraph 111,  prior to the occurrence of the Settlement Effective Date.

129.   **Claims Process Generally.** Unless the District Court orders otherwise, the Class Action Settlement Fund will be distributed to Class Action Claimants pursuant to a two-tiered claim process. The Special Master will be responsible for overseeing the administration of disbursements from the Class Action Settlement Fund. The Defendants will have no direct role in determining individual Claim Awards, cannot challenge the Claim Award to any Class Action

Claimant, and will not have access to any Claim documentation. Class Action Counsel and the NYOAG will work together in good faith with the Defendants in developing the Claim Form. The Claim Process will include the following terms:

130.     **Tier 1.** Each Settlement Class Action Member has the option to submit an electronic Claim Form or a hard-copy Claim Form by mail describing her experience, the impact to her, and/or the damages she suffered. In addition to the Claim Form describing her experience, the impact to her, and/or the damages she suffered, Settlement Class Action Members making a Tier 1 Claim may also submit additional evidence of her experience and its impact on her. That Claim Form, and any additional supporting materials, will be reviewed by the Special Master's Team. The Special Master's Team may submit additional questions to a Class Action Claimant to be answered in writing. If the Special Master determines that the Claim Form is credible, and that the conduct or statements are determined to otherwise be actionable taking into consideration the factors set forth in the Allocation Appendix at Ex. A hereto, the Class Action Claimant shall receive a Claim Award between $7,500 and $150,000, subject to Pro Rata Adjustments.

131.     **Tier 2**. Tier 2 is reserved for Settlement Class Action Members who decide to provide further evidence (beyond the Claim Form and answers to written follow up questions) of conduct by or statement(s) from Harvey Weinstein or persons acting on his behalf and their impact. In addition to the Claim Form describing her experience, the impact to her, and/or the damages she suffered, Settlement Class Action Members making a Tier 2 Claim may also submit additional evidence of impact or damages, and will be interviewed by the Special Master or its designee, regarding her experience and its impact on her. The interviewer will provide an assessment to the Special Master. Based on all information, if the Special Master determines that the Claim Form is credible, that the conduct or statements are determined to otherwise be actionable taking into consideration the factors set forth in the Allocation Appendix at Ex. A, and

based on an assessment of the injury to the Claimant, the Special Master shall recommend a Claim Award between $7,500 and $750,000, subject to Pro Rata Adjustments.

132.    **Claim Procedures.** The procedures for distribution of the Class Action Settlement Fund to Class Action Claimants will be consistent with the following:

133.    **Statement of Post-2005 Subclass Membership.** Post-2005 Subclass Members must submit a Statement of Class Action Membership by the Tort Victims Bar Date in the Bankruptcy to the Claims Administrator. To the extent feasible, the Statement of Class Action Membership will be included in the Claim Form and the Tort Victims Bar Date will be the same date as the Class Action Claims Form Deadline. The identity of the Settlement Class Members will be kept confidential by the Claims Administrator, and will not be publicly shared or filed.

134.    **Class Action Claims Form Deadline.** All Settlement Class Action Members must electronically submit or post-mark their mailed Claim Forms by the Class Action Claims Form Deadline set by the District Court.

135.    **Tier 1**. A Settlement Class Action Member can initiate a request for a Tier 1 Claim Award by submitting a Claim Form. Notices delivered electronically will contain a link to the Claim Form. Publication Notice will contain instructions to find the Claim Form on the settlement website and contact information for the Claims Administrator who will also mail a Claim Form to a Settlement Class Action Member if requested.

The Claim Form will ask Settlement Class Action Members to provide, in narrative and checklist form, information designed to identify the nature and scope of her alleged experience with Harvey Weinstein and/or associated parties, and any resulting harms or injuries. In support of her Claim Form, a Settlement Class Action Member making a Tier 1 Claim may also submit additional evidence of her experience and its impact on her.

A Class Action Claimant making a Tier 1 Claim must also disclose whether she previously entered into a settlement agreement or executed a release of liability with any of the Released

Parties relating to Sexual Misconduct Claims and the date of the settlement or release. Class Action Claimants who previously entered a settlement agreement or executed a release of liability with any of the Released Parties relating to Sexual Misconduct Claims may only recover for conduct that occurred after the date of the settlement or release of liability.

The Special Master's Team will assess the Claim Form (and any supporting materials) in light of any relevant records and, if he or she deems it appropriate, may ask additional questions in writing or request additional information in writing from the Class Action Claimant, to determine the amount, if any, of the Tier 1 Claim Award, subject to any Pro Rata Adjustments.

The Special Master will assess the totality of the information submitted by the Class Action Claimant and make a finding whether the conduct described is actionable as assessed according to the factors in the Allocation Appendix at Ex. A, as well as whether the Claimant has established injuries that the Special Master determines to be credible.  If the Class Action Claimant fails or otherwise declines to timely provide the additional information requested by the Special Master's Team, it may affect the amount awarded.

136.    **Tier 2**. A Settlement Class Action Member can initiate a request for a Tier 2 Claim Award by submitting the Claim Form. Notices delivered electronically will contain a link to the Claim Form. Publication Notice will contain instructions to find the Claim Form on the settlement website and contact information for the Claims Administrator who will also mail a Claim Form to a Settlement Class Action Member if requested.

The Claim Form will ask each Settlement Class Action Member to provide, in narrative and checklist form, information designed to identify the nature and scope of her alleged experience with Harvey Weinstein and/or associated parties, and any resulting harms or injuries.

In support of her Claim Form, the Settlement Class Action Member will also have the opportunity to submit additional evidence of her experience and its impact on her.

A Class Action Claimant making a Tier 2 Claim must also disclose whether she previously entered into a settlement agreement or executed a release of liability with any of the Released Parties relating to Sexual Misconduct Claims and the date of the settlement or release. Class Action Claimants who previously entered a settlement agreement or executed a release of liability with any of the Released Parties relating to Sexual Misconduct Claims may only recover for conduct that occurred after the date of the settlement or release of liability.

A member of the Special Master's Team shall interview all Class Action Claimants who choose to make a Tier 2 Claim. The Class Action Claimant may decline to participate in the interview. A Class Action Claimant who submits a Tier 2 Claim but who declines to participate in an interview may in no event receive an award which exceeds the range applicable to Tier 1 Claim Awards, between $7,500 and $150,000, subject to Pro Rata Adjustments.

The Special Master will assess the totality of the information submitted by the Class Action Claimant and make a finding whether the conduct described is actionable as assessed according to the factors in the Allocation Appendix at Ex. A, as well as whether the Class Action Claimant has established injuries that the Special Master determines to be credible. The Special Master will also consider the assessment of the interviewer as described in Paragraph 131, above. The Special Master will then determine the amount of a Tier 2 Claim Award, if any, subject to Pro Rata Adjustments.

137.    **Appeals.** Each Class Action Claimant will have the right to request that the Special Master reconsider, for any reason, the determination of that Class Action Claimant's Claim Award. The Special Master will establish fair procedures to govern this reconsideration process and ensure that each Class Action Claimant is provided adequate notice of those procedures in connection with the distribution of Claim Awards. The Special Master's ultimate determination of a Class Action Claimant's Claim Award is final and cannot be appealed.

138.     **Late Claims.** The parties recognize that in class action settlements, despite best efforts, late claims will be filed. The Special Master, during the period where timely claims are being evaluated, may, for good cause, allow a late claim.

139.     **No Claims Arising from Settlement Administration.** No person will have any claim against Settlement Class Action Representatives, Class Action Counsel, Additional Class Counsel, Subclass Counsel, the Defendants, the NYOAG, Additional Class Action Counsel, Subclass Counsel, the Special Master, the Special Master's team, or the Claims Administrator arising from or relating to determinations or distributions made substantially in accordance with this Agreement, the Claim Procedures, or further order(s) of the Court and in no event shall any Defendant have any liability arising from or relating to any determinations or distributions made in respect of any aspect of the Administration of the Settlement, including, without limitation, any Claims Award.

140.     **Confidentiality of Claims**.  Defendants will not have access to the identities of Class Action Claimants or any documentation relating to any Claim or Claim Award; will have no role whatsoever in determining individual Claim Awards; and cannot challenge the Claim Award to any individual Settlement Class Action Member. The Parties acknowledge that all Class Action Claimant-identifying information shall be protected from disclosure by the relevant laws and regulations governing the protection of personal information.

141.     **Return or Destruction of Claims Process Materials.** At the conclusion of the Claims Process, the Claims Administrator and Special Master will destroy all materials submitted during the Claims Process (excluding materials needed for lien resolution purposes), or, if requested by the Class Action Claimant, will return such materials to the Claimant. Further, all work product of the Claims Administrator and Special Master containing Class Action Claimant-specific information (excluding such information as may be needed for lien resolution purposes) will be destroyed. The Claims Administrator and Special Master shall then provide

Affidavits of Return or Destruction to the parties and the District Court.  The Claims Administrator will also provide a second Affidavit of Return or Destruction as to any materials maintained for lien resolution purposes when the process is complete.

142.    **Fees and Costs of Class Action Notice and Administration.** The fees and costs of Class Action Notice and Class Action Claims Administration are part of the Administrative Expenses and will be paid out of the Class Action Settlement Fund, subject to the approval of the District Court.  Notwithstanding the foregoing, any fees associated with the resolution of any Liens that may be owed by an individual Settlement Class Action Member to the Medicare Program and/or Medicaid Program (and any other Liens that a Settlement Class Action Member retains the Claims Administrator to resolve) shall be deducted from the respective Settlement Class Action Member's Claim Award (as applicable).

## VIII.   THE SPECIAL MASTER

143.    **Selection of Special Master.** A Special Master will adjudicate Claims under the Claims Process. Subject to District Court approval, Class Action Counsel and the NYOAG shall jointly select the Special Master and its team, and the Defendants shall have approval authority of the selected Special Master and its team, which approval shall not be unreasonably withheld. Among other designated responsibilities, the Special Master will assess and adjudicate the Claims Awards. In consultation with the Special Master and its team, Class Action Counsel and the NYOAG shall jointly develop the protocols for interviews or other oral or written direct contact with Settlement Class Action Members relating to applications for Class Action Claim Awards.

144.    **Class Action Counsel and NYOAG Presentation.** Class Action Counsel and the NYOAG shall make a presentation to the Special Master concerning the alleged facts. Class Action Counsel may retain one or more experts to make a presentation to the Special Master, or to prepare one or more reports to be presented by Class Action Counsel to the Special Master, concerning acceptable conduct and the impact of such conduct on victims. The Special Master

may submit questions to and receive further information from Class Action Counsel, the NYOAG, or the expert(s) retained by Class Action Counsel.

145.    **Fees and Costs of Special Master.** The fees and costs of the Special Master are part of the Administrative Expenses and will be paid out of the Class Action Settlement Fund. Class Action Counsel shall negotiate such fees and monitor expenditures and payments will be reported as directed by the District Court.

## IX.    ATTORNEYS' FEES AND COSTS; SERVICE AWARDS

146.    **Attorneys' Fees and Costs for Class Action Counsel.** All Attorneys' Fees and Costs for Class Action Counsel, Additional Class Action Counsel, Subclass Counsel, or Former Class Action Counsel will be paid solely from the Class Action Settlement Fund and the Defendants shall have no liability for any such Attorneys' Fees and Costs. Any fee and cost award must be approved by the District Court. Class Action Counsel will apply on behalf of themselves, Additional Class Action Counsel, and Subclass Counsel for an award of Attorneys' Fees not to exceed 25 percent of the Class Action Settlement Fund, plus reimbursement for out-of-pocket expenses. Former Class Action Counsel may also apply for an award of Attorneys' Fees and reimbursement of expenses. If the Attorneys' Fees and Costs award approved by the District Court is less than the amount sought by Class Action Counsel, Additional Class Action Counsel, Subclass Counsel, or Former Class Action Counsel, this will not be a basis for setting aside this Settlement.

147.    **Service Awards.** In conjunction with their application for Attorney's Fees and Costs, Class Action Counsel will request that the District Court approve service awards to the Settlement Class Action Representatives. Any approved service award will be paid solely from the Settlement Fund and the Defendants shall have no liability for any service award.

148.    **Attorneys' Fees and Costs in the U.K. Case.** The Defendants and Non-Debtor Affiliates who are named defendants in the U.K. Case shall not seek attorneys' fees or costs from

plaintiff Jane Doe provided that the U.K. Case is dismissed in accordance with the terms of this Settlement.

## X.    TERMINATION

149.    **Cross-Termination.**  This Agreement shall automatically terminate and become null and void upon the termination of the Bankruptcy Settlement Agreement or the Individual Plaintiffs' Settlement Agreement. The Parties agree that if this Agreement is terminated for this reason, the Cases will return to the status quo immediately preceding the date of this Agreement. In such event, nothing in this Agreement shall be admissible as evidence in any case or proceeding for any purpose, it being the intent of the Parties that in such circumstance all discussions and negotiations related to this Agreement will be treated as inadmissible settlement discussions protected under Federal Rule of Evidence 408 and its state law equivalents.

150.    **No Right to Reversion.** Neither the Defendants nor the Insurance Companies have any right to reversion of any portion of the Settlement Fund unless this Agreement is not approved or fails to become effective for any reason. Under no circumstances will any Defendant or Insurance Company have any right to reversion of any funds expended for Administration Expenses.

151.    **Partial Refund.** In the event that the Agreement is not approved, fails to become effective or is terminated for any reason, the Class Action Notice Costs and the Class Action Administration Costs advanced by the Debtors pursuant to Paragraph 111, including accrued interest and less Administrative Expenses and Taxes or Tax Expenses paid, incurred, or due and owing in connection with the Settlement as provided for herein, will be refunded to the Liquidation Trust.

152.    **Election to Withdraw and Terminate.**  The Defendants, the Insurance Companies and Class Action Counsel shall prepare and submit to the District Court *in camera* a written agreement with respect to the opt-outs from the Pre-2005 Subclass that trigger a

Defendant's or Insurance Company's right to withdraw from and thereby terminate this Settlement and/or the Bankruptcy Settlement Agreement (the "Pre-2005 Subclass Opt-Out Agreement"). In the event the Pre-2005 Subclass Opt-Out Agreement is not consummated, or in the event the right to withdraw from this Settlement and the Bankruptcy Settlement Agreement under the terms of the Pre-2005 Subclass Opt-Out Agreement is triggered, any Defendant affected thereby may elect to withdraw from and thereby terminate this Settlement by providing written notice thereof to Class Action Counsel, the NYOAG, each Defendant signatory hereto and the Debtors, within ten (10) Business Days following the Pre-2005 Subclass Opt-Out Deadline.  At least 72 hours before providing such written notice, the applicable Defendant shall confer in good faith with Class Action Counsel and the NYOAG.  In the event that any Defendant exercises its option to withdraw from and thereby terminate this Agreement, this Agreement shall become null and void and shall have no force or effect, the Parties shall not be bound by this Agreement, and the Cases will be returned to the status quo that existed immediately preceding the date such withdrawal and termination becomes effective.

## XI.     GENERAL PROVISIONS

153.    **Mutual Intent.** The Parties: (a) acknowledge that it is their intent to consummate this Agreement; (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Agreement and to exercise commercially reasonable efforts on an ongoing basis to accomplish such terms and conditions; (c) agree to use commercially reasonable efforts to seek entry of the Preliminary and District Court Final Approval Orders and entry of a final Confirmation Order confirming the Chapter 11 Plan from the Bankruptcy Court; and (d) agree to reasonably cooperate, as applicable, in the execution and delivery of any other or further documentation that may be reasonably necessary to carry out the intentions of this Agreement, including, without limitation (and as to the applicable Parties), the execution and delivery of a settlement deed in the form attached hereto as Exhibit H.

154.     **Good Faith.** The Parties and their respective counsel agree that they will act in good faith and will not engage in any conduct that could frustrate the purposes of this Agreement.

155.     **Chapter 11 Plan Support.**  No Settling Party shall support any Chapter 11 Plan that is inconsistent with the terms of this Agreement, the Bankruptcy Settlement Agreement, and the Individual Plaintiffs' Settlement Agreement.  The Parties agree that: (i) all of the terms and conditions of this Agreement shall be incorporated in the Chapter 11 Plan (the "Conforming Chapter 11 Plan") and/or the Confirmation Order, as applicable; and (ii) the Parties shall not take any action, of any kind and nature, to oppose, or designed to prevent confirmation of, the Conforming Chapter 11 Plan.

156.     **No Waiver**. The waiver by one Party of any breach of this Agreement will not be deemed to be a waiver of any prior or subsequent breach or of any right of any other Party. A Party's failure to exercise any rights under this Agreement shall not constitute a waiver of that (or any other) Party's right to exercise those rights later, except as expressly provided in this Agreement. No delay by any Party in exercising any power or right under this Agreement will operate as a waiver of that power or right or of any power or right of any other Party, nor will any single or partial exercise of any power or right under this Agreement preclude other or further exercises of that or any other power or right, except as expressly provided.

157.     **Making Records and Information Available.** The Defendants will reasonably cooperate with Class Action Counsel to make such records and information available to Class Action Counsel, as is reasonably necessary, for purposes of enabling Class Action Counsel to provide Notice to the Settlement Class.

158.     **Authority of Class Action Counsel and Right to Consult Counsel.** Class Action Counsel, on behalf of the Settlement Class, are expressly authorized to take all appropriate action required or permitted to be taken pursuant to the Agreement to effectuate its terms. All Parties covenant and represent that they have consulted or have had the full and unfettered

opportunity to consult with competent counsel of their own choosing prior to entering into this Agreement.

159.    **Final Resolution Without Adjudication.** The Parties intend this Agreement to effect a final and complete resolution of all disputes and claims between the Releasing Class Action Plaintiffs and the NYOAG, on the one hand, and the Released Parties, on the other hand, with respect to the Cases and Sexual Misconduct Claims. The Settlement resolves Claims which are contested and is not, and will not be deemed to be, an admission by any Settling Party as to the merits of any claim or defense. The Parties agree that the Settlement Amount and the other terms of the Settlement were negotiated in good faith by the Parties, and reflect a settlement that was reached voluntarily after consultation with or the full and unfettered opportunity to consult with competent legal counsel.

160.    **No Admission of Liability.** Neither this Agreement nor the Settlement contained herein, nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement, (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Sexual Misconduct Claim, the truth of any of the allegations in the Cases, any wrongdoing, fault, or liability of any of the Defendants, or that Settlement Class Action Representatives or any Settlement Class Action Members have suffered any damages, harm, or loss, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission on the part of any Defendant in any civil, criminal, administrative or other proceeding in any court, arbitration, administrative agency, or other tribunal.

161.    **Use in Other Proceedings.** The Parties will not introduce or use, or cause to be introduced or used, any provision in the Settlement or this Agreement, or any action taken in implementation thereof, or any statements, discussions, or communications, or any materials prepared, exchanged, issued, or used during the course of the Cases or in negotiations leading to the Settlement and this Agreement, in any judicial, arbitral, administrative, investigative, or other

proceeding of whatsoever kind or nature, as evidence of any violation of law, breach of duty, or liability, or lack thereof; provided, however, that any Defendant may file this Agreement and/or the District Court Final Approval Order in any other proceeding that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any theory of claim or issue preclusion or similar defense or counterclaim; provided, further, however, that this Agreement, and any provision hereof, may be used in connection with any or all of the enforcement of this Agreement and/or the Bankruptcy Settlement Agreement, the implementation thereof, and the implementation and confirmation of the Chapter 11 Plan.

162. **Responsibility of Settlement Class Action Members for Taxes.** Each Settlement Class Action Member, Settlement Class Action Representative and Class Action Counsel who receives a payment in connection with this Settlement will be fully and  ultimately responsible for payment of any and all federal, state, foreign, local or other taxes resulting from or attributable to the payment received by such Settlement Class Action Member, Settlement Class Action Representative, or Class Action Counsel.

163. **Limitation on Amendment.** The Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

164. **Governing Law.** This Agreement and the Exhibits hereto will be considered to have been negotiated, executed and delivered, and to be wholly performed, in the State of New York, and the rights and obligations of the parties under the Agreement will be construed and enforced in accordance with, and governed by, the substantive laws of the State of New York without regard to conflict of laws principles.

165. **Neutral Construction.** The determination of the terms and conditions contained herein and the drafting of the provisions of this Agreement have been by mutual understanding

after negotiation, with consideration by, and participation of, the Parties and their counsel. This Agreement will not be construed against any Settling Party on the basis that the Settling Party was the drafter or participated in the drafting of the Agreement or any provision thereof. Any statute or rule of construction that provides that ambiguities are to be resolved against the drafting party will not be employed in the construction or implementation of this Agreement, and the Parties agree that the drafting of this Agreement has been a mutual undertaking.

166.    **Entire Agreement.** The Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties hereto, and no representations, warranties or inducements have been made to any Party concerning the Agreement or its Exhibits other than the representations, warranties, and covenants contained and memorialized in these documents.

167.    **Exhibits Fully Integrated.** All of the Exhibits to the Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

168.    **Severability.** Except as otherwise provided in this Agreement, if any covenant, condition, term or other provision in this Agreement is held to be invalid, void or illegal by a court of competent jurisdiction, the same will be deemed severed from the remainder of this Agreement and will in no way affect, impair or invalidate any other covenant, condition, term or other provision in this Agreement. If any covenant, condition, term or other provision in this Agreement is held to be invalid by a court of competent jurisdiction due to its scope or breadth, such covenant, condition, term or other provision will be deemed valid to the extent of the scope or breadth permitted by law.

169.    **Authority to Execute.** Each counsel or other person executing the Agreement or any of its Exhibits on behalf of any party hereto warrants that such person has the full authority to do so.

170.    **Execution in Counterparts.** The Agreement may be executed in one or more counterparts. All executed counterparts and each of them will be deemed to be one and the same

instrument. A complete set of executed counterparts will be filed with the District Court. Signatures sent by facsimile or sent in PDF form via e-mail will be deemed originals.

171.    **No Prior Assignments**. The Parties represent, covenant, and warrant that they have not, directly or indirectly, assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights that are released or discharged in this Settlement except as set forth in this Agreement.

172.    **Binding Upon Successors and Assigns.** The Agreement will be binding upon, and inure to the benefit of, the Parties and their successors and permitted assigns.

173.    **Continuing Jurisdiction.** Except as otherwise set forth herein, the District Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Agreement for the benefit of the Class, and upon the Settlement Effective Date, all Parties submit to the jurisdiction of the District Court solely for purposes of implementing and enforcing this Agreement and matters related to this Agreement. Notwithstanding the foregoing, the Bankruptcy Court will have sole jurisdiction over  those matters for which Bankruptcy Court approval is required and which are otherwise principally related to the Bankruptcy Settlement Agreement.

Agreed to this 29 day of June, 2020

APPROVED AND AGREED TO BY:

[*signature pages follow*]

*EXECUTION VERSION*

*For Caitlin Dulany*

By: _____
Name:
Title:

*EXECUTION VERSION*

*For Larissa Gomes*

By: _Larissa Gomes_
Name:
Title:

*EXECUTION VERSION*

*For Emma Loman*

By:

Name: Matthew W. Schmidt

Title: Portner, Balestriere Fariello

*EXECUTION VERSION*

*For Jane Doe in Case No.*
*2200292/2018 (U.K. Employment*
*Tribunal)*

By:_____
Name
Title:

*EXECUTION VERSION*
*For Jill Doe in Case No.*
*1:19- cv- 03430*
*(S.D.N.Y.)*

By: _____
_____
Name: Jill DOE
Title:

*EXECUTION VERSION*

*For Katherine Kendall*

By: _____

Name:

Title:

*EXECUTION VERSION*

*For Louisette Geiss*

By:
Name:
Title:

*EXECUTION VERSION*

*For Melissa Thompson*

By: _____

Name:   Melissa Thompson
Title:   Class Plaintiff

*EXECUTION VERSION*

*For Nannette May (f/k/a Nanette Klatt)*

By:_____
Name:
Title:



*For Sarah Ann Thomas (a/k/a Sarah Ann Masse)*


By:_____
Name:
Title:

*EXECUTION VERSION*

*For Melissa Sagemiller*

By: _____
Name:
Title:

*Melissa Sagemiller*

*June 12 2020*

*EXECUTION VERSION*

*For the Office of the New York*
*Attorney General*


By: /s/ Sandra Pullman
Sandra Pullman
Senior Counsel, Civil Rights Bureau
Office of the NYS Attorney General

*For the Debtors*


By: _____

Name: Ivona Smith
Title:   Director, The Weinstein Company
          Holdings, LLC

*EXECUTION VERSION*

*For Harvey Weinstein*

By:

Name: Elior D. Shiloh, Esq.

Title:

*For Robert Weinstein*


By:__ ⟨signature⟩ _____
Name:
Title:

DocuSign Envelope ID: 5E9E475C-6603-4D67-8E58-B82D974E7757

*EXECUTION VERSION*

*For James Dolan*

By: _____

Name:

Title:

*EXECUTION VERSION*

For Frank Gil

By: _____
Name:
Title:

*EXECUTION VERSION*

*For David Glasser*

By:  /s/ Douglas E. Grover
Name:  Douglas E, Grover
Title:  Partner
        Schlam Stone & Dolan LLP

*EXECUTION VERSION*

*For Paul Tudor Jones*

By:_____

Name:

Title:

*For Marc Lasry*

By:_____

Name:

Title:

*For Jeff Sackman*

By:_____

Name:

Title: jeff sackman

*EXECUTION VERSION*

*For Barbara Schneeweiss*

By:
Name:
Title:

Scanned with
Mobile Scanner

*For Lance Maerov*

By:_____
Name:
Title:

*For Tarak Ben Ammar*

By:_____
Name: Tarak BEN AMMAR
Title:

*EXECUTION VERSION*

*For Richard Koenigsberg*

By:_____
Name: Richard Koenigsberg
Title:

*EXECUTION VERSION*

*For Dirk Ziff*

By: _____

_____

Name:

Title:

*For Tim Sarnoff*

By: _____

Name:

Title: *TIM SARNOFF*

*EXECUTION VERSION*

## **EXHIBIT A**

Allocation Guidelines

## ALLOCATION GUIDELINES FOR SPECIAL MASTER

### Participants in the Class Claim Process

Settlement Class Members as defined in the Settlement Agreement are eligible to participate in the Class Claim Process.

Women who opt out of the Pre-2005 Subclass remain eligible to participate in the Class Claim Process for alleged actionable conduct that occurred post-2005.

Settlement Class Members who previously asserted and released claims against any Defendant, based on actionable conduct that is the subject of the Settlement Agreement, are eligible to participate in the Class Claims Process based on alleged actionable conduct that occurred after such claims were released.

### Guidelines for the Class Claim Process

The following guidelines are intended to guide the Special Master in adjudicating the Class Claims Process. The guidelines are illustrative of the various types and impacts of conduct, but are not meant to be a complete or conclusive description of all possible fact patterns for which the Special Master may assign points.

In evaluating a Claim, the Special Master must consider the totality of the circumstances of the Claim.

The Special Master will also consider the likelihood that the Claimant would have been able to prove her claims in court, including the application of the relevant statutes of limitation and any other relevant considerations. The fact that a claim may be time-barred under the relevant statute of limitations shall not be used as a total bar to recovery in the Class Claims Process.

The total number of points for which a Claimant may qualify is **100 points.**

1. **Alleged Conduct and/or Contact – UP TO 80 POINTS**

First, the Special Master will consider the alleged conduct of Harvey Weinstein ("HW") in relation to the Claimant.

The Special Master will assign **up to a total of 80 points** to each Claimant whose Claim includes one or more of the following categories of conduct:

| Type of Alleged Conduct | Guidelines |
|---|---|
| Unwanted penetration | Unwanted penetration of any kind, including oral, anal, or vaginal. |
| Unwanted sexualized touching | Unwanted sexualized touching may include being touched by HW, being coerced or forced to touch HW, or forced or coerced to masturbate in front of HW. The touching may be over or under clothing. |
| Indecent exposure | Indecent exposure includes being exposed to HW's nudity, partial nudity (i.e., HW appearing in a towel, robe, or underwear), or to him masturbating.<br><br>Indecent exposure also includes being forced or coerced by HW to remove clothing to expose breast(s), buttocks, or genitals. |
| Imprisonment | Imprisonment includes those instances when the Claimant experienced a lack of control in her physical environment, e.g., imprisonment and forced transportation.<br><br>Examples include: being physically restrained by HW; an attempted or actual sexual assault forced the Claimant to lock herself into a room; the Claimant was locked in a room or was in an enclosed space without an easy form of exit (e.g., an airplane) during the attempted or actual sexual assault; and/or the Claimant was transported to a location at HW's direction or invitation and then prevented from leaving. |
| Stalking | Stalking includes instances where the Claimant was subjected to repeated contact by or communication from HW (in-person, via text messages, email or phone, or through intermediaries, including assistants or other employees) after declining, avoiding, or expressing reluctance to communicate or meet with HW, or the Claimant was subjected to unplanned, unannounced, or otherwise unwelcome visits by HW at her residence, lodging, or workplace, or the Claimant was followed, investigated, or otherwise targeted by private investigators retained by or on behalf of HW. |
| Verbal sexual | Verbal sexual harassment may include being asked, explicitly or by |

| | |
|---|---|
| harassment, gendered epithets, and insults based on sex stereotypes | implication, to engage in sexual acts or sexual conduct (including quid pro quo requests), being subjected to comments about her own or other women's physical attractiveness, being called or exposed to gendered epithets (i.e., "cunt," "pussy," or "bitch,"), being subjected to insults based on sex stereotypes (i.e., comments like women are only good for getting married and having children, derogatory comments about menstruation, etc.) |
| Unfavorable or gendered employment terms or denial of professional opportunity based on sex or sex stereotypes | Employment or professional opportunity conditioned on performing gendered personal tasks for HW outside of and in addition to the Claimant's professional role and not required of male counterparts (such as providing child care, packing or unpacking HW's personal items, preparing or delivering food), including those tasks that involved exposure to HW's sexual encounters (such as obtaining penile dysfunction medication for HW or cleaning rooms following HW's sexual encounters). |
| Retaliation based on complaints about HW's sexual misconduct, sexual harassment, and/or sexual discrimination | Unfavorable employment terms or denial of professional opportunity after the Claimant complained, whether in writing or orally, about HW's sexual misconduct, sexual harassment, and/or sexual discrimination to HW or others in the workplace, including human resources personnel. |

## 2. Impact of Alleged Conduct and/or Contact – UP TO 20 POINTS

Second, the Special Master will consider the alleged impact of HW's conduct on the Claimant.

The Special Master will assign **up to a total of 20 additional points** to each Claimant in consideration of the alleged impact on her of HW's alleged conduct. In evaluating the impact of HW's conduct on the Claimant, the Special Master will consider all available information.

Out-of-pocket costs associated with the impact(s) described below may be presented as evidence of the magnitude of impact(s), but there is no guarantee or expectation that out-of-pocket costs will be covered nor an assumption that a Claimant with out-of-pocket costs was more greatly impacted by HW's conduct than a Claimant without out-of-pocket costs.

| Alleged Impact of Conduct | Guidelines |
|---|---|
| Physical injury | Physical injury, whether or not diagnosed or treated. |
| Emotional distress | Mental health problems and other emotional trauma, whether or not diagnosed or treated, including: paranoia, depression, substance abuse, |

3

| Alleged Impact of Conduct | Guidelines |
|---|---|
|  | suicide attempt or suicidal ideation, self-harm, anxiety, flashbacks, post-traumatic stress disorder, damage to personal or familial relationships, and difficulty in obtaining or maintaining employment due to mental or emotional condition resulting from incident(s). |
| Economic harm | Economic harm including monetary loss attributable to retaliation, termination, or denial of professional opportunity by HW for resisting or refusing to acquiesce to HW's sexual conduct or demands or for complaining about such conduct or demands. |

### 

4

*EXECUTION VERSION*

## **EXHIBIT B**

Claim Form

**Must be received online or postmarked by mail no later than Month Day, 2020**

_____ SETTLEMENT
C/O CLAIMS ADMINISTRATOR
ADDRESS
CITY, STATE
WWW.WEINSTEINCLAIMS.COM

# WEINSTEIN

[Barcode]



## You may submit your Claim Form Online at www.weinsteinclaims.com

---

### TIER 1 AND TIER 2 CLAIM FORM

### GENERAL INSTRUCTIONS

Please review the following instructions before proceeding:

Please note that you may make a Tier 1 **or** Tier 2 claim, but not both.

In deciding whether to make a Tier 1 or Tier 2 claim, please note the following:

- To make a Tier 1 or Tier 2 claim, you must describe below your experience, and its impact on you.

- To make a Tier 2 claim, you also need to be interviewed by phone or videoconference by a specialist from the Special Master's team.

- A compensable Tier 1 claim will result in an award between no less than $7,500 and no more than $150,000 (subject to _Pro Rata_ Adjustment);

- A compensable Tier 2 claim will result in an award between no less than $7,500 and no more than $750,000 (subject to _Pro Rata_ Adjustment).  However, if you decline to participate in the interview you may in no event receive an award which exceeds the Tier 1 Claim Award range between $7,500 and $150,000.

If you wish to submit a Tier 1 or Tier 2 claim, please complete Sections A, C, D, E, F, G, and sign your name in Section H.

You must also fill out Section B <u>only</u> if you are represented by an attorney.

Please see the Settlement Website at www.weinsteinclaims.com for additional information.

**This Claim Form may also be completed online at www.weinsteinclaims.com.**

**THE INFORMATION ON THIS PAGE IS HIGHLY CONFIDENTIAL AND WILL NOT BE SHARED WITH ANYONE OTHER THAN THE BANKRUPTCY ADMINISTRATOR AND DISTRICT COURT APPOINTED EVALUATION TEAM**

| SECTION A:  CLAIMANT INFORMATION | | |
|---|---|---|
| **1.  CLAIMANT NAME:** | First | Middle | Last |
| **2.  FORMER OR MAIDEN NAME:** | | |
| **3.  DATE OF BIRTH:** | _____  _____  _____<br>Month                                    Day                                    Year | | |
| **4.  SOCIAL SECURITY NUMBER, TAXPAYER ID OR FOREIGN ID NUMBER (IF NOT A U.S. CITIZEN):** | \|__\|__\|__\| - \|__\|__\| - \|__\|__\|__\|__\|  **or**<br><br>\|__\|__\|__\|__\|__\|__\|__\|__\|__\|__\|__\| | | |
| **5.  CURRENT ADDRESS:** | Street Address (including apartment/unit number, if applicable) | | |
| | City | | |
| | State/Province | | |
| | Postal Code | | Country |
| **6.  TELEPHONE NUMBER:** | (\|__\|__\|__\|) – (\|__\|__\|) – \|__\|__\|__\| – \|__\|__\|__\|__\|<br>Country Code                    Area Code                         Number<br>(if outside the United<br>States) | | |
| **7.  EMAIL ADDRESS:** | | |
| **8.  IS ENGLISH YOUR PREFERRED LANGUAGE?** | Yes: ☐    No: ☐ | | |
| **a.  IF YOU ANSWERED "NO" TO QUESTION 8, WHAT IS YOUR PREFERRED LANGUAGE?** | | |

| | |
|---|---|
| **9. DATES EMPLOYED BY A COMPANY OWNED OR OPERATED BY HARVEY WEINSTEIN:** | **From:** _____   **To:** _____<br>             Month and Year                      Month and Year<br><br>**Company/Department:** _____<br><br>**Job Title:** _____<br><br>**Your Supervisor:** _____<br><br>**How frequently did you have direct contact with Harvey Weinstein?**<br><br>_____<br><br>_____ |
| **10. IF NOT EMPLOYED BY A COMPANY OWNED OR OPERATED BY HARVEY WEINSTEIN, DATE(S) AFFECTED BY HARVEY WEINSTEIN:** | DATE RANGE: from \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>                        (MM/DD/YYYY)<br><br>          to \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>                   (MM/DD/YYYY)<br><br>SINGLE DATE(S) \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>                (MM/DD/YYYY)<br>SINGLE DATE(S) \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>                (MM/DD/YYYY)<br>SINGLE DATE(S) \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>                (MM/DD/YYYY) |
| **11. DID YOU PREVIOUSLY SIGN AN AGREEMENT TO SETTLE ANY CLAIMS RELATING TO HARVEY WEINSTEIN'S ALLEGED CONDUCT?** | **Yes:** ☐   **No:** ☐<br><br>If yes, what was the date of the agreement:<br><br>\|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br><br>**<u>Please attach a copy of your agreement to this Claim Form or upload it with your Claim at www.weinsteinclaims.com</u>** |

## SECTION B:  ATTORNEY INFORMATION

**You do not need to be represented by an attorney to complete or submit this Claim Form.** If you are represented by an attorney, enter the attorney's information in this Section B. (You are only represented by an attorney if you signed a representation agreement or contract hiring that attorney.) If you are not represented by an attorney, skip this section.

| ATTORNEY NAME: | First | M.I. | Last | Suffix |
|---|---|---|---|---|
| **1.  LAW FIRM NAME:** | | | | |

| | |
|---|---|
| **2.  LAW FIRM MAILING ADDRESS:** | Address 1 |
| | Address 2 |
| | City |
| | State/Province |
| | Postal Code / Country |

| **3.  ATTORNEY TELEPHONE:** | (\|___\|___\|___\|) – (\|___\|___\|___\|) – \|___\|___\|___\| – \|___\|___\|___\|___\| |
|---|---|
| | Country Code (if outside the United States)          Area Code          Number |

| **4.  ATTORNEY EMAIL ADDRESS:** | |
|---|---|

## SECTION C:  CLAIM SELECTION

Please select **<u>one</u>** of the following two claim options:

☐  **<u>Tier 1 Claim</u>**  (I choose only to provide information by filling out this claim form,* and understand that may make me eligible for an award of $7,500 to $150,000.)

☐  **<u>Tier 2 Claim</u>** (I choose to provide information by filling out this claim form ***and*** participating in an interview by the Special Master's team,* and I understand that may make me eligible for an award of $7,500 to $750,000.)

*Supporting documentation may be submitted in support of a Tier 1 or Tier 2 claim.

## SECTION D:  WORKPLACE HARASSMENT AND DISCRIMINATION

**If you worked for The Weinstein Company (or one of its subsidiaries or divisions) ("TWC") as a salaried employee (full-time, part-time, or temporary), independent contractor, or intern, please complete this section. *If you did not work for TWC, please leave this section blank.***

**You may use additional sheets of paper to describe your experiences.**

If you need or want any assistance in filling out this Claim Form, the Court has appointed attorneys to represent Settlement Class members, and those attorneys are available at no cost to you to help you. Call 888-XXX-XXXX or email [address]

Attach additional pages to describe your experiences, as necessary.

1. **Were you subjected to any verbal sexual harassment by Harvey Weinstein, including for example requests for sexual contact and/or comments about your body or appearance, during your employment?**

**Yes:** ☐   **No:** ☐

If yes, please provide any details that you recall, including the time, place, and substance of the comments.

_____

_____

_____

a. **If yes, how did you react to his comments at the time they occurred?**

_____

_____

_____

b. **If yes, how did you feel about his comments at the time they occurred?**

_____

_____

_____

c.  **If yes, how do you feel about his comments now?**

_____

_____

_____

_____

2.  **Did Harvey Weinstein subject you to any sexist slurs (i.e., "cunt," "pussy," or "bitch,") or insults based on gender stereotypes (i.e., women are only good for getting married and having children, derogatory comments about menstruation, etc.) during your employment?**

**Yes:** ☐   **No:** ☐

Please provide any details that you recall, including the time, place, and substance of the comments.

_____

_____

_____

a.  **If yes, how did you react to his comments at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about his comments at the time they occurred?**

_____

_____

_____

c.  **If yes, how do you feel about his comments now?**

_____

_____

_____

_____

3. **Did Harvey Weinstein require you to perform tasks that were not required of your male counterparts, including tasks that involved exposure to Harvey Weinstein's sexual encounters, such as obtaining penile dysfunction medication or cleaning rooms following sexual encounters?**

Yes: ☐   No: ☐

If yes, please provide any details that you recall, including the time, place, and substance of the tasks.

_____

_____

_____

_____

a. **If yes, how did you react to those tasks at the time they occurred?**

_____

_____

_____

_____

b. **If yes, how did you feel about those tasks at the time they occurred?**

_____

_____

_____

_____

c. **If yes, how do you feel about those tasks now?**

_____

_____

_____

_____

4. **Did you ever complain (whether in writing or orally) about Harvey Weinstein's treatment of female employees and/or women generally to anyone at the company, including Harvey Weinstein, Human Resources, or anyone else in a supervisory position?**

Yes: ☐   No: ☐

If yes, please provide any details that you recall, including to whom you complained, in what manner, when, and the substance of the complaint.

_____

_____

_____

a. **If yes, following your complaints, did you experience any retaliation in the workplace, including unfavorable treatment, unfavorable employment terms, or denial of professional opportunities?**

Please explain in as much detail as you are able to accurately recall, including approximate date(s) of retaliatory acts or statements.

_____

_____

_____

5. **Describe why you left your position at TWC.**

_____

_____

_____

6. **After you left your position at TWC, did Harvey Weinstein or anyone associated with him repeatedly try to contact or communicate with you (either in-person, via text message, email or phone call, or through intermediaries) when you did not want them to?**

Yes: ☐    No: ☐

If yes, please provide any details that you recall, including approximate date(s), location(s), and description of the unwanted contact.

_____

_____

_____

a. **If yes, how did you react to those actions at the time they occurred?**

_____

_____

_____

b. **If yes, how did you feel about those actions at the time they occurred?**

_____

_____

_____

c.  **If yes, how do you feel about those actions now?**

_____

_____

_____

_____

7.  **After you left your position at TWC, were you threatened, followed, investigated, or otherwise targeted by anyone associated with Harvey Weinstein, including private investigators or journalists?**

**Yes:** ☐   **No:** ☐   **I'm not sure:** ☐

If yes or you aren't sure, please provide any details that you recall, including approximate date(s), location(s), and description of how you may have been targeted.

_____

_____

_____

a.  **If yes, how did you react to those actions at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about those actions at the time they occurred?**

_____

_____

_____

c.  **If yes, how do you feel about those actions now?**

_____

_____

_____

_____

9

## SECTION E:  EXPERIENCE WITH HARVEY WEINSTEIN

### ALL CLAIMANTS SHOULD COMPLETE THIS SECTION.

**Please complete the information below.   You may use additional sheets of paper to describe your experiences.**

If you need or want any assistance in filling out this Claim Form, the Court has appointed attorneys to represent Settlement Class members, and those attorneys are available at no cost to you to help you. Call 888-XXX-XXXX or email [address]

For each date on which you claim Harvey Weinstein acted inappropriately with you or in your presence, please answer the questions below.  *Please be as specific as possible.  If you can, please indicate the day, month, and year of each experience.  If you cannot recall the month, please try to recall the season of year (fall, winter, spring, summer).  Attach additional pages to describe other experiences, as necessary.*

## 1ST ENCOUNTER

| 1.  Date: | 2.  Location: | 3.  Was this your first time meeting Harvey Weinstein? |
|---|---|---|
| \|   \|   \|/\|   \|   \|/\|   \|   \|   \|   \| <br> (MM/DD/YYYY) | _____ | Yes: ☐   No: ☐ |

**4.  Where did you encounter Harvey Weinstein?**

(Please state the name and address of the location, the type of location – such as hotel, restaurant, office – and the event – such as Cannes Film Festival—if applicable)

_____

_____

_____

**a.  Were you meeting to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., or The Weinstein Company Holdings, LLC or a subsidiary or division thereof?**

**Yes:** ☐   **No:** ☐   **I'm not sure:** ☐

If yes, please identify the company:_____

    **b.** **Were you attending a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., or The Weinstein Company Holdings, LLC or a subsidiary or division thereof?**

**Yes:** ☐   **No:** ☐   **I'm not sure:** ☐

If yes, please identify the company:_____

    **c.** **Were you working for The Weinstein Company Holdings, LLC or a subsidiary or division thereof at the time?**

**Yes:** ☐   **No:** ☐   **I'm not sure:** ☐

If yes, please identify the company:_____

**5.** **Was it a planned encounter?**

  **Yes:** ☐   **No:** ☐

  **If yes, please describe how the encounter was scheduled and the purpose of the encounter:**

_____

_____

_____

**6.** **Did the encounter happen as you expected? Please explain.**

_____

_____

_____

_____

Please describe what happened during your meeting or encounter with Harvey Weinstein by answering the questions below.

If you need or want any assistance in filling out this Claim Form, the Court has appointed attorneys to represent Settlement Class members, and those attorneys are available at no cost to you to help you. Call 888-XXX-XXXX or email [address]

Please include as much detail as possible.

7.  **Was Harvey Weinstein undressed at the outset of the meeting or did he disrobe during this meeting?**

   **Yes:** ☐   **No:** ☐

If yes, please explain whether he was fully or partially unclothed, and what he was wearing:

_____

_____

_____

   a.  **If yes, how did you react to his state of dress or nudity at the time it occurred?**

_____

_____

_____

   b.  **If yes, how did you feel about his state of dress or nudity at the time it occurred?**

_____

_____

_____

   c.  **If yes, how do you feel about it now?**

_____

_____

_____

**8.   Did Harvey Weinstein ask you to undress during this meeting?**

Yes: ☐   No: ☐

If yes, please describe what he asked or demanded of you:

_____

_____

a.  **If yes, how did you react to this request at the time it occurred?**

_____

_____

_____

b.  **If yes, how did you feel about his request at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about it now?**

_____

_____

_____

9.    **During your encounter with Harvey Weinstein, did he make any inappropriate comments with sexual connotations or about your body?**

Yes: ☐   No: ☐

If yes, please describe in as much detail as you are able to accurately recall.

_____

_____

_____

a. **If yes, how did you react to his comments at the time?**

_____

_____

_____

b. **If yes, how did you feel about his comments at the time?**

_____

_____

_____

c. **If yes, how do you feel about his comments now?**

_____

_____

_____

10. **During your meeting, did Harvey Weinstein touch you in an inappropriate way or in a way that you made you feel uncomfortable?**

**Yes:** ☐    **No:** ☐

If yes, please describe:

_____

_____

_____

a. **If yes, how did you react to his actions at the time they occurred?**

_____
_____
_____

b. **If yes, how did you feel about his actions at the time it occurred?**

_____
_____
_____

c. **If yes, how do you feel about it now?**

_____
_____
_____

11. **During your meeting, did Harvey Weinstein force you to touch any parts of his body that made you feel uncomfortable, including, but not limited to, his lips, face, arms, shoulders, legs, chest, penis, or hair?  This request covers any type of touch, including but not limited to kissing, stroking, massage, or grinding.**

**Yes:** ☐    **No:** ☐

If yes, please describe:

_____
_____
_____

a. **If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

b. **If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c. **If yes, how do you feel about it now?**

_____

_____

_____

12. **During your meeting, did Harvey Weinstein touch his own body in ways that made you feel uncomfortable, including, but not limited to his penis.**

**Yes:** ☐    **No:** ☐

If yes, please describe:

_____

_____

_____

a.  **If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about it now?**

_____

_____

_____

13.  **During your meeting, did Harvey Weinstein force you, or attempt to force you, to perform oral sex on him?**

**Yes:** ☐  **No:** ☐

If yes, please describe briefly:

_____

_____

_____

a.  **If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about it now?**

_____

_____

_____

14.  **During your meeting, did Harvey Weinstein perform, or attempt to perform, oral sex on you?**

**Yes:** ☐    **No:** ☐

If yes, please describe briefly:

_____

_____

_____

a.  **If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

b. **If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c. **If yes, how do you feel about it now?**

_____

_____

_____

15. **During your meeting, did Harvey Weinstein penetrate, or attempt to penetrate, your vagina or anus? Penetration means insertion into your vagina or anus using one or more of his fingers, penis, or other objects.**

**Yes:** ☐    **No:** ☐

If yes, please describe briefly:

_____

_____

_____

a. **If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about it now?**

_____

_____

_____

16.  **Before, during or after your meeting with Harvey Weinstein, did he physically restrain you, lock you in a room, block the exit from the room, transport you to a different location and prevent you from leaving, or otherwise cause you to lose control over your physical environment?**

**Yes:** ☐   **No:** ☐

If yes, please describe:

_____

_____

_____

a.  **If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about it now?**

_____

_____

_____

17.  **Was anyone else present with you and Harvey Weinstein during (all or a portion of) the meeting?**

**Yes:** ☐    **No:** ☐

If yes, who was that person, including their name, association with Harvey Weinstein, or title if you recall?

_____

a.  **Please describe in the role of this person in the meeting.**

_____

_____

_____

b.  **Please describe any discussions Harvey Weinstein had with this person in your presence.**

_____

_____

_____

_____

    **c. Please describe any interactions or discussions you had with this person regarding Harvey Weinstein or your meeting.**

_____

_____

_____

_____

_____

**18. Following your meeting with Harvey Weinstein, did he or anyone on his behalf repeatedly try to contact or communicate with you (either in-person, via text message, email, or phones) when you did not want them to?**

**Yes:** ☐   **No:** ☐

If yes, please describe:

_____

_____

_____

    **a. If yes, how did you react to his actions at the time they occurred?**

_____

_____

_____

    **b. If yes, how did you feel about his actions at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about it now?**

_____

_____

_____

19.  **Following your meeting with Harvey Weinstein, were you threatened, followed, investigated, or otherwise targeted by anyone associated with Harvey Weinstein, such as private investigators or journalists?**
**Yes:** ☐   **No:** ☐

If yes, please describe:

_____

_____

_____

a.  **If yes, how did you react to these actions at the time they occurred?**

_____

_____

_____

b.  **If yes, how did you feel about these actions at the time it occurred?**

_____

_____

_____

c.  **If yes, how do you feel about these actions now?**

_____

_____

_____

20.  **To the best of your recollection, please describe any other discussions, remarks, or statements Harvey Weinstein made – before, during or after your meeting with him – that were derogatory, offensive, harassing, improper, or other otherwise made you feel uncomfortable?**

_____

_____

_____

21.  **Did you tell anyone about the conduct you believe was inappropriate (this includes people at Harvey Weinstein's companies, agents, co-workers, parents, relatives, friends, attorneys, law enforcement authorities, etc.)?**

**Yes:** ☐   **No:** ☐

If yes, who did you tell, when did you tell them, and what did you tell them?

_____

_____

_____

_____

**IF YOU HAD ADDITIONAL MEETINGS OR EXPERIENCES WITH HARVEY WEINSTEIN, PLEASE USE SEPARATE SHEETS OF PAPER TO ANSWER EACH OF THE QUESTIONS ABOVE FOR EACH ADDITIONAL EVENT.**

## SECTION F:  IMPACT OF ALLEGED CONDUCT

### ALL CLAIMANTS SHOULD COMPLETE THIS SECTION.

1. **During your meeting(s) with Harvey Weinstein or time working at TWC, did you experience any physical discomfort or pain related to your interactions with Harvey Weinstein?**

   Yes: ☐   No: ☐

   If yes, please describe the circumstances and duration of the pain.

   _____

   _____

   _____

   _____

2. **During your meeting(s) with Harvey Weinstein or time working at TWC, did you experience any emotional distress related to your interactions with Harvey Weinstein?**

   Yes: ☐   No: ☐

   If yes, please describe the circumstances, symptoms of the distress, and duration of the distress?

   _____

   _____

   _____

   _____

3. **Following your meeting(s) with Harvey Weinstein or time working at TWC, did you experience any physical discomfort or pain related to your interactions with Harvey Weinstein?**

   Yes: ☐   No: ☐

   a. **If yes, please describe the circumstances, duration of the pain, and any treatment you have sought.**

   _____

   _____

   _____

   _____

b. **If yes, describe how the physical discomfort or pain has affected you and changed over time, including whether it has affected your romantic relationship(s) and social functioning, work functioning, or other important aspects of daily life, including sleep, bathing, irritability, concentration, eating etc.**

_____

_____

_____

4. **Following your meeting(s) with Harvey Weinstein or time working at TWC, did you experience any emotional distress or symptoms of emotional distress, such as paranoia, depression, anxiety, insomnia, substance abuse, suicidal ideation, or self-harm, related to your interactions with Harvey Weinstein?**

   **Yes:** ☐   **No:** ☐

a. **If yes, please describe the circumstances, symptoms of the distress, duration of the distress, and any treatment you have sought?**

_____

_____

_____

_____

b. **If yes, describe how the emotional distress has affected you and changed over time, including how it has affected your romantic relationship(s) and social functioning, work functioning, or other important aspects of daily life, including for sleep, bathing, irritability, concentration, eating etc.**

_____

_____

_____

5. **In order to help the Special Master more fully understand the impact Harvey Weinstein's alleged conduct had on you, you may choose to share any other experiences you had prior to your meeting(s) with Harvey Weinstein that you felt constituted inappropriate sexual behavior or abuse.**

_____

_____

_____

_____

## SECTION G:  ALLEGED POST-EXPERIENCE THREATS OR DAMAGE TO REPUTATION

**Please complete the information below.  You may use additional sheets of paper to describe your experiences.**

For each date on which you claim Harvey Weinstein or anyone acting on his behalf threatened you, directly or indirectly, to refrain from talking about his conduct, or blacklisted you or otherwise damaged your career, please answer the questions below.  *Please be as specific as possible.  If you can, please indicate the day, month, and year of each threat.  If you cannot recall the month, please try to recall the season of year (fall, winter, spring, summer).  Attach additional pages to describe other threats, as necessary.*

## 1ST EVENT

**1.  Date:**

|___|___|/|___|___|/|___|___|___|___|
          (MM/DD/YYYY)

**2.  Please describe the nature of the threat or actions Harvey Weinstein took to damage your career:**

_____
_____
_____

**Please describe who took the actions and how:**

_____
_____
_____

**Please describe how the actions made you feel:**

_____
_____
_____

**Please describe any short- or long-term impact on you or your career from the threat or actions:**

_____

_____

_____

## SECTION H:  TREATMENT AND OUT-OF-POCKET EXPENSES

1.  **Have you sought treatment or counseling from any healthcare professional for your above referenced physical injuries or emotional distress?**

   **Yes:** ☐   **No:** ☐

   **If yes, please describe below.  *Anyone listed below will not be contacted without your permission.***

| Date(s) (even if approximate): | Name(s) of Professional(s): | Nature of Treatment: |
|---|---|---|
| \|__\|__\|/\|__\|__\|/\|__\|__\|__\|__\| (MM/DD/YYYY) | _____ | _____ |
| \|__\|__\|/\|__\|__\|/\|__\|__\|__\|__\| (MM/DD/YYYY) | _____ | _____ |
| \|__\|__\|/\|__\|__\|/\|__\|__\|__\|__\| (MM/DD/YYYY) | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |

2.  **Have you sought any other treatment for your above referenced physical injuries or emotional distress?**

   **Yes:** ☐   **No:** ☐

   **If yes, please describe below.  *Anyone listed below will not be contacted without your permission.***

| Date(s) (even if approximate): | Name(s) of Professional(s): | Nature of Treatment: |
|---|---|---|
| \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>(MM/DD/YYYY) | _____ | _____ |
| | _____ | _____ |
| \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>(MM/DD/YYYY) | _____ | _____ |
| | _____ | _____ |
| \|___\|___\|/\|___\|___\|/\|___\|___\|___\|___\|<br>(MM/DD/YYYY) | _____ | _____ |
| | _____ | _____ |
| | _____ | _____ |

3. **If you have incurred any expenses you attribute to physical injuries or emotional distress caused by your experience(s) with Harvey Weinstein, please itemize such expenses and, if available provide copies of supporting documentation.**

_____

_____

_____

4. **Please provide any additional information you believe is relevant or useful for the Special Master to know:**

_____

_____

_____

**You may – *but do not have to* – attach or submit supporting documentation as part of your claim.**

Non-exhaustive examples of documentation may include, but are not limited to: calendar entries, event tickets, diary entries, pay stubs, tax records, emails, letters, memos, personnel records, receipts, account statements, bank or credit card statements, bills, invoices, physician reports or records, mental health records, affidavits from people close to you or that have treated you, police reports, claims or lawsuits filed with a government agency or tribunal.

If you have any questions about documents you may have to support your claims, the Court has appointed attorneys to represent Settlement Class members, and those attorneys are available at no cost to you to help you. Call 888-XXX-XXXX or email [address]

## SECTION I:  SIGNATURE

**By signing below, I declare under penalty of perjury, that: (1) all of the information provided in this Claim Form, and any attachments, is true and complete to the best of my knowledge; (2) I authorize the Settlement Administrator to contact certain healthcare insurance providers (i.e., Medicare Parts A and/or Part B and Medicaid) per the Settlement Agreement for purposes of verifying and resolving any liens or reimbursement claims that may be owed to the above referenced healthcare insurers, and I do not object to any resulting disclosures for the purpose of resolving any legally enforceable medical liens of such entities that may be paid out of any Claim Award I receive; and (3) I understand that false or misleading information may result in the rejection of my Claim.**

Signature

Printed Full Name (First, Middle, and Last)

| | | |/| | | |/| | | | | |

Date (Month/Day/Year)

You may submit this Tier 1 or Tier 2 claim by completing this hard copy claim form and mailing it to the Settlement Administrator at [INSERT CLAIMS ADMINISTRATOR HERE] or you may file your claim online through the Settlement Website at www.weinsteinclaims.com.

*EXECUTION VERSION*

## **EXHIBIT C**

Publication Notice

**If you are a woman who met or worked for Harvey Weinstein, or a person (regardless of gender) who has a tort claim against The Weinstein Company or its affiliates, you must file your claim by [DATE] at 5 p.m. Eastern at www.weinsteinclaims.com to protect your rights.**

You may be affected by a class action settlement if Harvey Weinstein sexually harassed or engaged in unwanted sexual contact with you. The settlement will pay women who were sexually harassed or abused by Harvey Weinstein under certain circumstances. If you qualify, you may send in a claim form to ask for payment or object to the settlement. If you were harassed before June 30, 2005, you can also exclude yourself from the settlement. The United States District Court for the Southern District of New York authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

You may also be affected by bankruptcy proceedings if you are a person (regardless of gender) who has a tort claim, including a sexual misconduct claim, against The Weinstein Company Holdings LLC or its affiliates. On March 19, 2019, The Weinstein Company Holdings LLC and 54 affiliated companies (the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief under chapter 11 of the United States Bankruptcy Code. The Debtors' cases have been assigned to the Honorable Judge Mary F. Walrath and assigned lead case number 18-10601 (the "Bankruptcy Cases").

On [_____], 2020, the Bankruptcy Court entered an order [establishing [_____], **2020 at 5:00 p.m. (Eastern Time)** as the deadline to file a proof of claim solely in respect of Tort Claims. Entities or persons who must file a proof of claim prior to this deadline include, but are not limited to, (a) former employees or independent contractors of the Debtors, (b) known parties to litigation with any of the Debtors relating to a Tort Claim (as defined below), and (c) known parties who have threatened the Debtors with litigation premised upon a Tort Claim.

The District Court has established this same [date] deadline for women who are Settlement Class Members to file claims in the class action settlement.

Both types of claims can be filed at **www.weinsteinclaims.com**.

### WHO'S AFFECTED BY THE CLASS ACTION SETTLEMENT?

The Settlement Class includes all women who: (1) on or after June 30, 2005, (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof ("TWC"); or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by TWC; and (2) before June 30, 2005, met with Harvey Weinstein in person, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.

### WHO MUST FILE A CLAIM BY THE DEADLINE FOR TORT CLAIMS?

If you are a member of the Class Action Settlement Class, the filing of a claim in the class action settlement by the deadline at **www.weinsteinclaims.com** will satisfy any obligations you may have to file a claim in the Bankruptcy Cases.

If you are NOT a member of the Class Action Settlement Class, but believe you have a Tort Claim, including a sexual harassment or sexual misconduct claim, against The Weinstein Company, you MUST file a claim at **www.weinsteinclaims.com** by the deadline to protect your rights and receive a distribution in the Bankruptcy Cases. More information about the Bankruptcy Cases and the proof of claim process can be found at **www.weinsteinclaims.com**.

A "Tort Claim" is defined as any claim that arises out of or connects or relates in any way to, any actual or alleged conduct of Harvey Weinstein, which shall include, without limitation: (i) actual or alleged sexual misconduct, nonconsensual interactions, harassment (including sexual harassment), uninvited or unwelcome conduct, predatory conduct, inappropriate conduct, degrading conduct, coercive or intimidating behavior, humiliation, tort, hostile work environment, sexual assault, rape, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, battery, assault, gender violence, false imprisonment, false arrest or detention, sexual abuse, sex trafficking or discrimination based on sex or gender or any similar or related actions, or (ii) defamation, witness tampering, mail fraud, wire fraud, negligent hiring, negligent supervision, negligent retention, negligence, failure to prevent harassment or ratification, in each case that took place in whole or in part prior to [date of the preliminary approval of the Class Action Settlement Agreement], whether based on direct or vicarious liability, whether domestic or foreign, whether based on breach of fiduciary duty or intentional or negligent conduct, including but not limited to allegations of failure to prevent or remedy, failure to disclose, aiding and abetting or efforts or conspiracy to prevent the disclosure, or cover up, of any of the preceding.

### WHAT'S THE CLASS ACTION ABOUT?

A class action lawsuit claims that Harvey Weinstein repeatedly sexually harassed and abused women, including demanding unwanted sexual contact as a quid pro quo for employment or career advancement, and that his companies' officers and directors failed to investigate or stop the unlawful conduct. The New York State Office of the Attorney General ("NYOAG") also filed a lawsuit, alleging that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, and that Robert Weinstein and TWC aided and abetted these violations of law by failing to investigate and/or stop the unlawful activities, in violation of state and city human rights laws.

The Defendants have denied all allegations. While the settlement resolves the claims of both lawsuits, the settlement is not an admission of wrongdoing or an indication that any law was violated.

### WHAT CAN A CLASS MEMBER GET FROM THE SETTLEMENT?

There will be a common fund of $18,875,000 to be used to pay for the costs of notice to the class, claims administration costs, claims of Class Members, the attorneys' fees and costs of Class Counsel appointed by the Court, and service awards for the Class Representatives. Compensation for individual Class Members may vary and will be determined by an independent Special Master who will review each claim.

### HOW DO YOU GET A PAYMENT IF YOU ARE A CLASS MEMBER?

A detailed notice and claim form package contains everything you need. Just call or visit the website below to get one. Claim forms are due by Month 00, 0000.

### WHAT ARE YOUR OPTIONS IF YOU ARE A SETTLEMENT CLASS MEMBER?

If you are a settlement class member who was affected by Harvey Weinstein prior to June 30, 2005, and you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by Month 00, 0000, or you won't be able to sue, or continue to sue, Harvey Weinstein and the Defendants about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by Month 00, 0000. The detailed notice describes how to exclude yourself or object.

If you are a settlement class member who was affected by Harvey Weinstein on or after June 30, 2005, you may not exclude yourself from the settlement. However, you may object to the settlement by Month 00, 0000. The detailed notice describes how to object. To apply for a payment, you need to file a Statement of Class Membership and a Claim Form.

### WILL THE DISTRICT COURT HOLD A HEARING TO CONSIDER THE CLASS ACTION SETTLEMENT?

The United States District Court for the Southern District of New York will hold a hearing in the class action (*Geiss v. The Weinstein Co., et al*, No. 18-cv-4857) on Month 00, 0000, to consider whether to approve the settlement and attorneys' fees and expenses not to exceed 25% of the Settlement Amount plus out-of-pocket expenses. You may appear at the hearing, but you don't have to.

The United States Bankruptcy Court for the District of Delaware will also consider, in the jointly administered cases filed by The Weinstein Company Holdings, LLC and its affiliates seeking relief under Chapter 11 of the Bankruptcy Code (*In re Weinstein Company Holdings, LLC*, Case No. 18-10601 (D. Del.)), whether to approve a Chapter 11 plan. The class action settlement will not become final without approval from the District Court and a final order and judgment from the Bankruptcy Court.

For more details, call toll free 1-800-000-0000, go to **www.weinsteinclaims.com**, or write to ____ Settlement, P.O. Box 000, City, ST 00000.

*EXECUTION VERSION*

## **EXHIBIT D**

Long-Form Notice

NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

*A federal court authorized this Notice. This is not a solicitation from a lawyer.*

## Certain women who met with Harvey Weinstein or were employed by The Weinstein Company may be eligible for benefits from a class action settlement.

- A Settlement has been reached with The Weinstein Company Holdings, LLC and its subsidiaries and divisions (collectively "TWC"), and certain of its current and former officers and directors, including Harvey Weinstein and Robert Weinstein, in both a class action lawsuit and a lawsuit brought by the New York State Office of the Attorney General ("NYOAG"). The Settlement also includes (i) other entities for which Harvey Weinstein worked or was affiliated, including Miramax Film NY LLC, The Walt Disney Company, Disney Enterprises, Inc., Buena Vista International, Inc., and certain of their officers and employees (collectively "Defendants"), and (ii) certain insurance companies that provide insurance coverage to TWC and/or certain of the other foregoing entities. Plaintiffs allege in the class action lawsuit that Harvey Weinstein engaged in a pattern of sexual harassment and abuse, that various companies and their respective officers and directors failed to stop or prevent, in violation of federal and state law, while Harvey Weinstein was an officer of TWC and/or Miramax.  The NYOAG alleges in its lawsuit that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, and that Robert Weinstein and TWC allegedly aided and abetted these violations of law by failing to investigate and/or stop Harvey Weinstein's unlawful activities, in violation of state and city human rights laws.  The Defendants deny all charges of wrongdoing and liability.

- The Settlement provides a fund of $18,875,000 for the benefit of:

  - all women, on or after June 30, 2005, who (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; and

  - all women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax

QUESTIONS? CALL TOLLFREE_____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL ____@_____SETTLEMENT.COM, OR VISIT www.weinsteinclaims.com.

2

Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.

- While no Settlement can ever undo what happened or erase the anger, pain, and anguish you may feel about the harassment and abuse you may have endured, it can provide a measure of resolution, as well as a punitive and deterrent effect.

- **It is critical that you read this entire Notice carefully because it contains information about the Settlement and the lawsuit, and because your legal rights are affected whether or not you choose to act.** That said, given the traumatic nature of the abuse you may have suffered, please take breaks as you read and seek support if you need it. While it may be difficult, please read this entire Notice carefully so that you can arrive at a clear understanding of your legal rights.

- As described in more detail below, the Settlement has a two-tier structure based on your choice of whether – and how much – you feel comfortable sharing with the Settlement program. You are eligible to make a claim for Tier 1 benefits (by filling out the enclosed Claim Form) or Tier 2 benefits (by filling out the Claim Form *and* participating in an interview by phone or videoconference).  You may also submit supporting documents if you choose in support of a Tier 1 or Tier 2 claim.

  • If your experience, in whole or in part, with Harvey Weinstein occurred on or after June 30, 2005, your Claim Form will also be your statement of claim required in the chapter 11 bankruptcy proceedings of TWC (the "TWC Bankruptcy Proceedings"), as addressed in Section [_] herein.

- All the specialists and experts who make up the team administering and evaluating the Settlement claims have been trained in communicating with victims of trauma and harassment. Should you choose to engage with the Settlement program by submitting a Tier 1 or Tier 2 Claim, they will ensure your experience is as safe, compassionate, and confidential as possible and that you will be heard.

- We recognize you may not want to be identified publicly. Accordingly, women who submit a Claim Form will not be publicly identified.  Your identity will be kept confidential by the class settlement administrators and in the TWC Bankruptcy Proceedings.

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL ___@_____.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

QUESTIONS? CALL TOLLFREE_____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL ___@_____ SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

3

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **ACTION** | **EXPLANATION** | **DUE DATE** |
| **DO NOTHING** | If you are a potential member of the Settlement Class, but do nothing, you will not receive any payment and you will give up your right to sue the Defendants, including Harvey Weinstein, about the claims in this case. | |
| **SUBMIT A CLAIM FORM** | Regardless of when your experience with Harvey Weinstein occurred, to apply for compensation, you must submit a Claim Form (available at www.weinsteinclaims.com) and may participate in an interview by phone or videoconference with a court-appointed Special Master.<br><br>For more information about submitting a Tier 1 or Tier 2 Claim, see the answers to questions 14-18 below.<br><br>Depending on the information you provide, whether you are willing to be interviewed, and the number of women who submit valid claims, you could receive as much as $750,000.<br><br>The Court has appointed attorneys to represent Settlement Class Members, and those attorneys are available at no cost to you to help you make your claim. Call 1-888-_____ and select Option __ or email ClassCounsel@_____Settlement.com to schedule an appointment with an attorney.<br><br>If you submit a Tier 1 or Tier 2 Claim and receive a payment, then you give up your right to sue the Defendants about the claims in this case. | _____, 2020 |
| **EXCLUDE YOURSELF (IF YOUR EXPERIENCE WITH HARVEY WEINSTEIN OCCURRED BEFORE JUNE 30, 2005)** | **If your experience with Harvey Weinstein occurred before June 30, 2005,** you have the option to exclude yourself (opt-out) from the Settlement.<br><br>If you choose to opt-out, you will not be included in the Settlement. You will receive no benefits (including payments) and will keep any right you currently have to sue the Defendants about the claims in the case.<br><br>If your experience with Harvey Weinstein occurred on or after June 30, 2005, you do not have the option to opt-out of the Settlement. | _____, 2020 |

QUESTIONS? CALL TOLLFREE_____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL ___@_____SETTLEMENT.COM, OR VISIT www.weinsteinclaims.com.

4

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | | |
|---|---|---|
| **OBJECT** | If you disagree with the Settlement, you can write to the Court to explain your objection.<br><br>If your experience with Harvey Weinstein occurred before June 30, 2005, and you choose to exclude yourself from the Settlement, you may not object to the Settlement. | _____, 2020 |
| **GO TO A HEARING** | Ask to speak in court about the fairness of the Settlement. | _____, 2020 at _____ __.m. |

- These rights and options—**and the deadlines to exercise them**—are explained in this Notice.

- The Court in charge of this case still must decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. Please be patient.

QUESTIONS? CALL TOLLFREE_____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL _____@_____SETTLEMENT.COM, OR VISIT www.weinsteinclaims.com.

5

# WHAT THIS CLASS NOTICE CONTAINS

## TABLE OF CONTENTS

**BASIC INFORMATION** ................................................................................................................. **8**

    1.  Why did I get this Notice? ................................................................................. 8

    2.  What is this class action lawsuit about? ............................................................. 8

    3.  Why is this a class action? .................................................................................. 8

    4.  Why is there a Settlement? ................................................................................. 9

**WHO IS IN THE SETTLEMENT?** ................................................................................ **9**

    6.  How do I know if I am part of the Settlement? .................................................. 9

    7.  What if I previously signed an agreement to settle claims relating to Harvey Weinstein's conduct? ................................................................................................ 10

    8.  What if I previously signed a non-disclosure agreement with TWC or Harvey Weinstein? ...... 10

    9.  What should I do if I am not sure if I am included in the Settlement? ................. 10

**RELATED PROCEEDINGS** ......................................................................................... **11**

    10.  How does the TWC bankruptcy filing affect the Settlement? .......................... 11

    11. How does the lawsuit filed by the New York State Office of the Attorney General affect the Settlement? .................................................................................. 11

    12. Do the criminal proceedings against Harvey Weinstein affect the Settlement? ........ 12

**BENEFITS OF THE SETTLEMENT — WHAT YOU GET** ......................................... **12**

    13. What monetary benefits does the Settlement provide? ................................... 12

    14. How much will my payment from the Settlement be? ..................................... 12

    15. How will the Special Master assess my Claim? ............................................. 13

    16. What are the factors in the Allocation Guidelines ? ...................................... 13

    17. What are *Pro Rata* Adjustments and how will they affect my Claim? ............ 14

    18. Will the amount of money I owe to a health care insurer for treatment I received as a result of Harvey Weinstein's conduct affect my payment from the Settlement? ....... 14

    19. What non-monetary benefits does the Settlement provide? ............................ 15

**HOW YOU GET A PAYMENT** ..................................................................................... **16**

    20. How can I get payment from the Settlement? ............................................... 16

    21. When will I get my payment(s) from the Settlement? .................................... 16

    22. What am I giving up to get payment(s) and stay in the Settlement? ............... 17

**EXCLUDING YOURSELF FROM THE SETTLEMENT** .............................................. **17**

    23. How do I opt out of the Settlement? ............................................................ 17

    24. If I don't exclude myself, can I sue the Defendants for the same thing later? ....... 18

QUESTIONS? CALL TOLLFREE_____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL
_____@_____SETTLEMENT.COM, OR VISIT www.weinsteinclaims.com.

6

25. If I exclude myself, can I get money from the Settlement? ...................................................18

**THE LAWYERS REPRESENTING YOU** .........................................................................................**18**

26.  Do I have a lawyer in this case? ........................................................................................18

**OBJECTING TO THE SETTLEMENT** ............................................................................................**19**

28. How do I tell the Court that I don't like the Settlement? ...................................................19

29. What's the difference between objecting and opting out? ..................................................20

**THE COURT'S FAIRNESS HEARING** ..........................................................................................**20**

30. When and where will the Court decide whether to approve the Settlement? ......................20

31. Do I have to come to the fairness hearing? ........................................................................20

32. May I speak at the fairness hearing? ..................................................................................21

33. What happens if I do nothing at all? ..................................................................................21

**GETTING MORE INFORMATION** ................................................................................................**21**

34. How do I get more information? .........................................................................................21

PLEASE DO NOT – UNDER ANY CIRCUMSTANCES – TELEPHONE THE COURT OR THE
COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE CLAIM
PROCESS. ..............................................................................................................................21

QUESTIONS? CALL TOLL FREE_____ (USA AND CANADA), _____ (INTERNATIONAL), EMAIL
_____@_____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

7

# BASIC INFORMATION

## 1. Why did I get this Notice?

If you are a woman who on or after June 30, 2005, (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; you have the right to know about a proposed Settlement of a class action lawsuit, and your options, before the Court decides whether to approve the Settlement.

If you are a woman who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.  you have the right to know about a proposed Settlement of a class action lawsuit, and your options, before the Court decides whether to approve the Settlement.

This Notice is to inform you about the class action lawsuit, the proposed Settlement, and your legal rights. The women who sued are called "Plaintiffs." The persons Plaintiffs sued, including Harvey Weinstein, his companies and their affiliates, and certain current and former officers and directors, are called "Defendants."

## 2. What is this class action lawsuit about?

Harvey Weinstein founded and worked at Miramax from 1979 to on or about June 30, 2005, and founded and worked at The Weinstein Company from June 30, 2005 to October 17, 2017.  Plaintiffs allege that Harvey Weinstein sexually assaulted, abused, and engaged in harassing and offensive behavior towards women with whom he met in the course of his positions at Miramax and TWC.

Plaintiffs further allege that certain current and former officers, directors, and/or employees at these companies were informed of Harvey Weinstein's misconduct but failed to take the necessary measures to halt his behavior. Defendants deny Plaintiffs' allegations. The Court dismissed certain of the current and former officers, directors, and representatives, and/or employees from the lawsuit but has not otherwise decided who is right as a matter of law.

## 3. Why is this a class action?

In a class action, one or more plaintiffs called "Class Representatives" sue on behalf of themselves and other people with similar claims, collectively called the "Class." The people in the Class are called "Class Members." One court resolves the issues raised in the lawsuit for all Class Members, except for those who choose to exclude themselves from the Class.

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), +_____ (INTERNATIONAL), EMAIL INFO@_____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

8

The class action lawsuit is *Louisette Geiss et al. v. The Weinstein Company Holdings et al.,* No. 17-cv-09554 (S.D.N.Y.). The judge is Alvin K. Hellerstein of the United States District Court for the Southern District of New York.

**DO NOT – UNDER ANY CIRCUMSTANCES – TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THE SETTLEMENT OR THE CLAIMS PROCESS.**

| 4.   Why is there a Settlement? |
|---|

In this lawsuit, the Court has not decided in favor of the Class or Defendants. Instead, both sides have agreed to a Settlement to avoid the costs and risks of trial and appeals.

The Class Representatives and their attorneys think the Settlement is best for the Class, particularly in light of the filing of the TWC Bankruptcy Proceedings as well as the criminal proceedings against Harvey Weinstein.

The NYOAG has also concluded that this settlement is the best available resolution of its lawsuit on behalf of former female employees of TWC who experienced sexual harassment, gender discrimination, and other misconduct by Harvey Weinstein.  More information on the NYOAG's lawsuit and the impact of this settlement on former female employees of TWC can be found in the section below regarding "Related Proceedings."

# WHO IS IN THE SETTLEMENT?

| 6.   How do I know if I am part of the Settlement? |
|---|

The Class for the Settlement has been defined as including:

- All women, on or after June 30, 2005, who (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof.; and

- All women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.

The Settlement Class does not include former employees of Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or any other entity for which Harvey Weinstein worked prior to June 30, 2005. Certain women who are pursuing their individual claims in pending lawsuits are also excluded from the Settlement Class. For more information, please review the Class Settlement Agreement.

If you believe you are a Class Member based on the definition above, and you want to participate in the Settlement, you must complete the Claim Form (available at www.weinsteinclaims.com).

### 7.   What if I previously signed an agreement to settle claims relating to Harvey Weinstein's conduct?

If you previously asserted claims against any Defendant related to Harvey Weinstein's conduct, and signed an agreement to settle those claims, you must disclose the agreement in the Claim Form and submit a copy of the agreement with your Claim Form. Depending on the nature and scope of the agreement you signed, you may not be able to recover for alleged conduct that occurred prior to the date your agreement was signed. However, you may be able to recover for alleged conduct that occurred after the agreement was signed. If you signed an agreement and are not sure whether you should submit a Claim Form, you can ask for free help and more information by calling the Settlement Administrator at 1-_____ (international numbers provided below) or sending an email to info@_____Settlement.com.

### 8.   What if I previously signed a non-disclosure agreement with TWC or Harvey Weinstein?

As part of this Settlement, TWC and Harvey Weinstein have agreed to release you from any confidentiality, non-disclosure or non-disparagement agreement relating to Harvey Weinstein's alleged sexual misconduct.

### 9.   What should I do if I am not sure if I am included in the Settlement?

If you are not sure whether you are in the Class, or what steps you should take, you can ask for free help and more information by calling the Settlement Administrator at 1-_____ (international numbers provided below) or sending an email to info@_____Settlement.com.

More details about the Class, its claims, and the Settlement can be found in the Settlement Agreement and other documents available on the Settlement website, www.weinsteinclaims.com.

QUESTIONS?   CALL   TOLL   FREE   _____   (USA   AND   CANADA),   +_____   (INTERNATIONAL),   EMAIL INFO@_____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

10

# RELATED PROCEEDINGS

**10.  How does the TWC bankruptcy filing affect the Settlement?**

On March 19, 2018, The Weinstein Company Holdings, LLC and its affiliates ("TWC" or "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. The cases are presently pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") and captioned *In re Weinstein Company Holdings, LLC*, Case No. 18-10601 (the "Chapter 11 Cases").

As a result of the Chapter 11 Cases, the Class Members who were affected by Harvey Weinstein's conduct after June 30, 2005 and have related claims against TWC became unsecured creditors of TWC. In addition, all individuals or entities who were owed money by TWC and did not have a security interest in TWC's assets also became unsecured creditors. Examples of unsecured creditors include producers, actors or casting agencies who were not paid for their services. The estimated amount that TWC owes unsecured creditors *other than Class Members* is approximately $250 million. As part of a global settlement that encompasses the terms of this Settlement, and as reflected in the Plan of Liquidation filed in the Chapter 11 Cases, a liquidation trust will receive $7,295,000 for distribution to non-Class Member TWC creditors.

Without the global settlement embodied in the Plan of Liquidation, it is highly likely that TWC would need to convert its Chapter 11 Cases to Chapter 7, and Class Member and non-Class Member general unsecured creditors of TWC would share in any recoveries. In a Chapter 7 liquidation, there is a strong likelihood that recoveries to Class Members would be substantially less than under this Settlement. Under this conversion scenario, it is estimated that Class Members would likely recover less than 1% of their TWC claim amount as a result of all holders of TWC general unsecured claims having to share in the same pot of money, and such recovery could be 0%, as there is no guarantee that TWC would have sufficient assets to make a distribution to general unsecured creditors. As an example only, without this Settlement, if a Class Member who was affected by Harvey Weinstein's conduct after June 30, 2005 went to trial and secured a judgment against TWC of $1,000,000, she could expect to collect at most approximately 1% of her judgment from TWC or $10,000.

However, Class Representative Louisette Geiss was appointed Co-Chair of the Unsecured Creditors Committee in the Chapter 11 Cases. Through her efforts together with the Committee, Class Counsel, and NYOAG over nearly two years, this Settlement was achieved to ensure that the interests of the Class Members were protected and this Settlement was made possible.

**11. How does the lawsuit filed by the New York State Office of the Attorney General affect the Settlement?**

The NYOAG's lawsuit is *The People of the State of New York v. The Weinstein Company LLC et al.*, Case No. 0450293/2018 (N.Y. Sup. Ct.).  This lawsuit alleged that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, including demanding sexual contact in exchange for continued employment or career advancement, subjecting female employees to verbal abuse and demeaning work tasks, and forcing female employees to engage in unwanted sexual contact. The lawsuit also alleged that Robert Weinstein and TWC aided and abetted these violations of law by failing to

investigate and/or stop Harvey's unlawful activities, all in violation of state and city human rights laws. The NYOAG lawsuit is not a class action, but it did seek relief for all former female employees of TWC who experienced sexual harassment, gender discrimination, and other misconduct by Harvey Weinstein.

The NYOAG conducted an extensive investigation, both before and after its lawsuit was filed, and has actively participated in the settlement negotiation process for nearly two years. As a result of its independent judgment, the NYOAG has concluded that this settlement is in the best interests of the female employees covered by its lawsuit.  Therefore, the NYOAG has decided to resolve its lawsuit through this settlement so that former female employees of TWC who allege they experienced sexual harassment, gender discrimination, and other misconduct by Harvey Weinstein can participate in the claims process as part of the Settlement Class and seek to recover from this settlement fund.

If you are a former female employee of TWC who experienced sexual harassment, gender discrimination, and other misconduct by Harvey Weinstein, and you have questions about the NYOAG's lawsuit, please contact the NYOAG at (212) 416-8250 or **Civil.Rights@ag.ny.gov**

| **12. Do the criminal proceedings against Harvey Weinstein affect the Settlement?** |
|---|

The criminal proceedings against Harvey Weinstein do not affect this Settlement directly. However, the criminal charges brought against Harvey Weinstein in New York and Los Angeles, and his criminal conviction in New York, affected the assessment of Class Counsel and the NYOAG regarding the potential funds available to compensate victims of alleged misconduct.

Further, the insurance companies who are contributing proceeds on behalf of certain Defendants to create the settlement fund have asserted exclusions in their insurance policies for coverage for "intentional acts" and, in some policies, "molestation, misconduct or abuse."  Accordingly, in light of the charges against and conviction of Harvey Weinstein, absent a settlement, the insurance companies would continue to contest coverage in separate insurance coverage litigation with the Defendants.

# BENEFITS OF THE SETTLEMENT — WHAT YOU GET

| **13. What monetary benefits does the Settlement provide?** |
|---|

Defendants or their insurers will cause to be paid $18,875,000 to settle the class action lawsuit. This fund will be used to pay Class Member claims (see the answers to questions 14-18 below) and expenses associated with notifying Class Members and administering the Settlement. The fund will also be used to pay any Attorneys' Fees and Costs of Class Counsel and Class Representative service award(s) approved by the Court.

| **14. How much will my payment from the Settlement be?** |
|---|

How much you get from the Settlement will depend on whether you file a claim and, if you do, what type of claim you file. The details of the claim structure are as follows:

**Tier 1 Claim Award:** You can choose to submit an online or written Claim Form describing your experience and the impact to you, including the harm you suffered. You may also choose to submit documentation in support of your Claim Form.  Each Claim Form and supporting documentation will be

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), +_____ (INTERNATIONAL), EMAIL info@_____Settlement.com, OR VISIT www.weinsteinclaims.com.

12

reviewed by an impartial Special Master and their team. If you submit a Claim Form, you may be asked to answer additional questions in writing. Although you do not need an attorney to assist you with the Claim Form, an attorney is available to help you with any questions about the Claim Form, at no cost to you. Settlement Class Members who make Tier 1 claims can call 1-888-____ and select Option __ or email ClassCounsel@WeinsteinSettlement.com to schedule an appointment with an attorney.

If the Special Master determines that you are eligible for compensation based on your Claim Form, you may be awarded a Tier 1 Claim Award of between $7,500 and $150,000 as determined by the Special Master. This Tier 1 Claim Award is subject to *Pro Rata* Adjustment up or down as detailed below.

**Tier 2 Claim Award:** In addition to submitting a Claim Form and any supporting documentation, you can also choose to participate in an interview by phone or videoconference regarding your experience and the impact to you, including the harm you suffered.  The interview will be conducted by a specialist who is trained in communicating with survivors of trauma with sensitivity and compassion.

Based on all information provided, the Special Master will determine whether you are eligible for compensation and may award you a Tier 2 Claim Award between $7,500 and $750,000. The Tier 2 Claim Award is subject to *Pro Rata* Adjustment up or down as detailed below.

## 15. How will the Special Master assess my Claim?

The Special Master will use Allocation Guidelines to assess and assign points to your Claim. The total number of points for which a Claimant may qualify is 100 points.

The Allocation Guidelines are intended to guide the Special Master in adjudicating the Class Claims Process.  The guidelines are illustrative of the various types and impacts of conduct, but are not meant to be a complete or conclusive description of all possible fact patterns for which the Special Master may assign points.

 In evaluating a Claim, the Special Master must consider the totality of the circumstances of your Claim.

The Special Master will also consider the likelihood that you would have been able to prove your claims in court, including the application of the relevant statutes of limitation and any other relevant considerations.  However, the fact that a claim may be time-barred under the relevant statute of limitations will not be used as a total bar to recovery for a Claim.

## 16. What are the factors in the Allocation Guidelines ?

First, the Special Master will consider the alleged conduct of Harvey Weinstein in relation to you.

- The Special Master may assign **up to 80 points** to each Claim that includes one or more of the following categories of **unwanted contact**:  unwanted penetration, unwanted sexualized touching, indecent exposure, imprisonment, stalking, verbal sexual harassment, gendered

QUESTIONS?  CALL  TOLL  FREE  _____  (USA  AND  CANADA),  +_____  (INTERNATIONAL),  EMAIL info@____Settlement.com, OR VISIT www.WEINSTEINCLAIMS.COM.

13

epithets, or insults based on sex stereotypes; or, if an employee of TWC, unfavorable or gendered employment terms or denial of professional opportunity based on sex or sex stereotypes; or retaliation based on complaints about Harvey Weinstein's sexual misconduct, sexual harassment, and/or sexual discrimination.

Second, the Special Master will consider the alleged impact of Harvey Weinstein's conduct on you.

- The Special Master may assign up to **20 additional points** based on the impact of Harvey Weinstein's conduct on you. In evaluating the impact of Harvey Weinstein's conduct on you, the Special Master will consider all available information.

More information about the categories described above can be found in the Allocation Guidelines available at www.weinsteinclaims.com.

The Allocation Guidelines were negotiated by lawyers retained to separately represent the interests of Class Members who were affected by Harvey Weinstein's conduct before June 30, 2005 and those were affected on or after June 30, 2005, together with lawyers from the Civil Rights Bureau of the New York State Office of the Attorney General.

## 17. What are Pro Rata Adjustments and how will they affect my Claim?

Once the Settlement is approved by the Court and becomes effective, under no circumstances will any of the $18,875,000 Settlement Amount be returned to the Defendants. *Pro Rata* Adjustments will be used to ensure all of the Settlement Amount (less Attorneys' Fees and Costs, Service Awards, and Administrative Expenses) goes to Class Members.

After the Special Master has received and reviewed all Tier 1 and Tier 2 Claims and allocated Claim Award amounts, the *Pro Rata* Adjustment amount will be calculated by the Settlement Administrator by comparing the total sum of all Claim Awards with the total amount remaining in the Settlement Fund.

If the sum of the Claim Awards *is less than* the amount remaining in the Settlement Fund, there will be a *Pro Rata* Increase applied to all Tier 1 and Tier 2 Claim Award amounts, which means those Claim Awards will all be increased by the same percentage. The percentage increase will be enough to make the sum of the Claim Awards equal the amount of money in the Settlement Fund.

If the sum of the Claim Awards *is more than* the amount remaining in the Settlement Fund, there will be a *Pro Rata* Reduction applied to all Tier 1 and Tier 2 Claim Award amounts, which means those Claim Awards will all be decreased by the same percentage. The percentage decrease will be enough to make the sum of the Claim Awards equal the amount of money in the Settlement Fund.

## 18. Will the amount of money I owe to a health care insurer for treatment I received as a result of Harvey Weinstein's conduct affect my payment from the Settlement?

If the Special Master grants you a Claim Award, the amount of money you will receive also depends on any liens of Medicare Parts A and B and/or Medicaid that may be held against your Claim Award based on payments made by these government benefit programs to pay for treatment you received related to

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), +_____ (INTERNATIONAL), EMAIL info@_____Settlement.com, OR VISIT www.weinsteinclaims.com.

14

your underlying claim (if applicable).  The Claims Administrator is verifying and resolving any liens that may be owed to Medicare Parts A and B and State Medicaid on behalf of all Settlement Class Members.  If you are or were entitled to benefits pursuant to Medicare Parts A and B and/or Medicaid, the Claims Administrator will determine whether these entities have a lien or reimbursement claim against your Claim Award and the final amount to resolve such lien and/or reimbursement claim (if any) will be deducted from your Claim Award.

**Please note that the Claims Administrator is only verifying and resolving liens of Medicare Parts A and B and Medicaid unless separately retained by a Settlement Class Member (or her counsel, if applicable) to assist with resolving any other potential lien obligations.**  In addition, if the Claims Administrator receives notice of a potential lien from any entity with respect to a Settlement Class Member, the Claim Award for the Settlement Class Member will be held until either: (1) the Settlement Class Member provides documentation confirming satisfaction and discharge of the lien obligation; or (2) the Claims Administrator resolves the Lien obligation or determines the final or holdback amount needed to resolve the lien obligation out of the Settlement Class Member's Claim Award (in the event the Settlement Class Member elects  to retain the Claims Administrator to verify and resolve the lien obligation).

If you are receiving or have received medical items, services, and/or treatment(s) related to any injuries you are claiming in this Settlement that were covered by a health insurer *other than* Medicare Parts A and B or Medicaid (such as a private health plan through your employer, a Medicare Advantage Plan/Medicare Part C Plan, Medicare Part D Plan, workers' compensation plan, other governmental benefit plan, or other insurance), the health insurer or entity that paid for treatment on your behalf may have a lien or right to reimbursement against your Claim Award. In addition, you may have an obligation (based on state or federal law or the terms of your policy documents with your health insurer) to notify your health insurer or health plan of your claim against a third party or anticipated settlement.

Settlement Class Members are solely responsible for complying with any such notice obligations as well as verifying and resolving any liens other than Medicare Parts A and B and Medicaid.  If you would like assistance verifying and resolving any liens or reimbursement obligations that may be owed to entities other than Medicare Parts A and B and Medicaid, please contact the Claims Administrator.  For additional information regarding health care obligations, please refer to the Settlement website, www.weinsteinclaims.com.

## 19. What non-monetary benefits does the Settlement provide?

*Release from NDAs.*  As part of this Settlement, TWC and Harvey Weinstein have agreed to release you from any confidentiality, non-disclosure or non-disparagement agreement relating to Harvey Weinstein's alleged sexual misconduct.

*A Confidential and Non-Adversarial Claims Process.*  Many women do not file criminal charges or civil lawsuits against their abusers because they do not want to be re-victimized by the system and subjected to a public adversarial process. This settlement provides victims of Harvey Weinstein a confidential process that gives you the choice about how much you are comfortable sharing and the extent of the process in which you want to engage.

QUESTIONS?  CALL  TOLL  FREE  _____  (USA  AND  CANADA),  +_____  (INTERNATIONAL),  EMAIL INFO@_____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

15

# HOW YOU GET A PAYMENT

## 20. How can I get payment from the Settlement?

To be eligible to receive a payment from the Settlement you must complete and submit the Claim Form.  You can choose to submit a Tier 1 Claim by submitting a Claim Form or a Tier 2 Claim by submitting a Claim Form *and* participating in an interview by phone or videoconference.

The Claim Form is available on the Settlement website, www.weinsteinclaims.com, and you may also request a Claim Form by email at  info@_____Settlement.com or by phone at 1-888-663-1718 (international numbers provided below). Claim Forms can be completed and submitted to the Settlement Administrator online through the Settlement Website at www.weinsteinclaims.com or mailed to the Settlement Administrator at [INSERT ADDRESS].  You also can schedule your Tier 2 Claim interview on the website or by calling the phone number above.

All claims and submissions in the Settlement will be kept strictly confidential by the Settlement Administrator and Special Master.

For your claim to be valid and timely:

- Your Claim Form **must be received by the Settlement Administrator through the Settlement website (www.weinsteinclaims.com) or postmarked by mail no later than _____, 2020**.

All claims and submissions in the Settlement will be kept strictly confidential by the Settlement Administrator and Special Master. Settlement Class Counsel will seek an order from the Court, called a Qualified Protective Order that will authorize disclosure of information under the Health Insurance Portability and Accountability Act ("HIPAA") for purposes of identifying and resolving certain medical liens that may be asserted against Settlement Class Members' Claim Awards.

## 21. When will I get my payment(s) from the Settlement?

Once the Court grants final approval of the Settlement and certifies the Settlement Class and any appeals are resolved in favor of the Settlement, Tier 1 and 2 Claim Award payments will go out after all Tier 1 and Tier 2 Claims have been received and reviewed by the Special Master and Claim Award amounts allocated by the Special Master, and the *Pro Rata* Adjustment amount calculated and applied by the Settlement Administrator.  The timing of payment will also depend on whether there is a lien or reimbursement obligation owed to Medicare Parts A and/or Part B, Medicaid, or the Claims Administrator receives notice of any other lien obligations in connection with a Settlement Class Member's Claim Award as the Settlement Agreement requires the resolution of such obligations (if applicable) prior to releasing a Settlement Class Member's Claim Award.

Timing updates will be provided on the Settlement website, www.weinsteinclaims.com and can also be obtained by contacting the Settlement Administrator by email at info@_____Settlement.com or by phone toll-free at 1-_____ (international numbers provided below). Please do not contact the Court directly.

QUESTIONS?  CALL  TOLL  FREE  _____  (USA  AND  CANADA),  +_____  (INTERNATIONAL),  EMAIL info@____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

16

## 22. What am I giving up to get payment(s) and stay in the Settlement?

In exchange for receiving payment and benefits from the Settlement, you will give up your right to sue the Defendants on your own for the claims described in the Settlement Agreement. You will also be bound by any decisions by the Court relating to the Settlement.

If your experience with Harvey Weinstein occurred before June 30, 2005, and you do not wish to give up your right to sue the Defendants, you must exclude yourself from (opt out of) the Settlement.

In return for paying the Settlement Amount, the Defendants will be released from claims relating to the conduct alleged in the lawsuit and identified in the Settlement Agreement. The Settlement Agreement describes the released claims in further detail. Please read that agreement carefully since those releases will be binding on you as a Class Member if the Court grants final approval of the Settlement. If you have any questions, you can talk with Class Counsel free of charge or you may talk with your own lawyer (at your own expense). The Amended Settlement Agreement and releases are available on the Settlement website at www._____Settlement.com.

# EXCLUDING YOURSELF FROM THE SETTLEMENT

If your experience with Harvey Weinstein occurred before June 30, 2005, you don't want a payment from the Settlement, and you want to keep the right to sue or continue to sue the Defendants, then you must take action to exclude yourself from the Settlement Class.  This is called "opting out" of the Settlement Class.

You may not opt out of the settlement if your experience with Harvey Weinstein occurred after June 30, 2005.

## 23. How do I opt out of the Settlement?

If your experience with Harvey Weinstein occurred before June 30, 2005 and you want to exclude yourself from the Settlement, you must send a letter to the Settlement Administrator stating that you wish to be excluded from *Geiss v. The Weinstein Company Holdings et al.,* No. 17-cv-09554 (S.D.N.Y.). Your written exclusion request must include the following:

- Your full name, address, and telephone number;
- The following statement:

  I want to be excluded from *Geiss v. The Weinstein Company Holdings et al.,* No. 17-cv-09554 (S.D.N.Y.), and understand that by excluding myself, I will not be able to get any money or benefits from the Settlement.

- Your signature.

You must mail your written exclusion request, **postmarked no later than _____** to:
[INSERT ADDRESS]

### 24. If I don't exclude myself, can I sue the Defendants for the same thing later?

No. Unless you exclude yourself from the Settlement, you give up any right to sue the Defendants for the claims being released in this Litigation.

If you have a pending lawsuit against any of the Defendants, speak to your lawyer as soon as possible; you may need to exclude yourself from this Settlement to continue your own lawsuit.

### 25. If I exclude myself, can I get money from the Settlement?

No. If you exclude yourself from the Settlement, you will not receive payment(s) from the Settlement, but you will keep your legal right to sue the Defendants on your own.

## THE LAWYERS REPRESENTING YOU

### 26.  Do I have a lawyer in this case?

The Court has appointed the following lawyers, known as Class Counsel, to represent the Class Members in connection with the Settlement:

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312-741-1019
Email:
Weinsteinsettlement@feganscott.com

Steve Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1201 Second Avenue, Suite 2000
Seattle, WA 98101
Phone:  206-623-7292
Email:
Weinsteinsettlement@hbsslaw.com

QUESTIONS?  CALL  TOLL  FREE  _____  (USA  AND  CANADA),  +_____  (INTERNATIONAL),  EMAIL INFO@_____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

18

You will not be charged for contacting these lawyers, and they will help you with any questions about your claim at no cost to you. Call 1-_____ and select Option __ or email_ ClassCounsel@_____Settlement.com to schedule an appointment with an attorney.

If you want to be represented by a lawyer other than Class Counsel, you may hire one at your own expense.

## 27.   How will the lawyers be paid?

Class Counsel will ask the Court for payment of Attorneys' Fees up to 25 percent of the Settlement Amount plus actual out-of-pocket expenses to compensate them for their services in this Litigation. Any payment to the attorneys will be subject to Court approval, and the Court may award less than the amount requested. Any attorneys' fees and expenses that the Court approves will come out of the Settlement Amount.

When Class Counsel's motion for attorneys' fees and expenses is filed, it will be posted on the Settlement website at www.weinsteinclaims.com. Class Counsel expect to file their motion on _____. Please check the Settlement website regularly if you wish to review Class Counsel's motion for attorneys' fees and expenses. You will have an opportunity to comment on this fee request. The deadline to object to Class Counsel's request for attorneys' fees and expenses is _____, 2020.

If you are represented by a lawyer other than Class Counsel, you are responsible for paying that lawyer's fees and/or costs.

# OBJECTING TO THE SETTLEMENT

## 28. How do I tell the Court that I don't like the Settlement?

If you are a Settlement Class Member and you have objections to any aspect of the Settlement, you may express your views to the Court. You can object to the Settlement only if you do not exclude yourself from the Settlement Class.

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a larger settlement—the Court can only approve or deny the Settlement the parties have reached. If the Court denies approval of the Settlement, no payments from the Settlement Fund will be made and the Litigation will continue. If that is what you want to happen, you must object.

If you wish to object to the Settlement, you must do so in writing. You may also appear at the final fairness hearing, either personally or through your own attorney. If you appear through your own attorney, you are responsible for paying that attorney. All written objections and supporting papers must: (a) list your name, address, and telephone number; (b) clearly identify the case name and number; (c) state whether the objection applies only to the objector, to a specific subset of the Class, or to the entire Class, and state with specificity the grounds for the objection; (d) state whether the Settlement Class Member intends to personally appear and/or testify at the final fairness hearing; (e) include the name and contact information of any and all attorneys representing, advising, or assisting the Settlement Class Member, including any counsel who may seek compensation for any reason related to the Settlement Class Member's objection or comment; (f) state whether any attorney will

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), +_____ (INTERNATIONAL), EMAIL info@_____Settlement.com, OR VISIT www.weinsteinclaims.com.

19

appear on the Settlement Class Member's behalf at the final fairness hearing, and if so, the identity of that attorney; (g) be submitted to the Court either by mailing to the Clerk, United States District Court for the Southern District of New York, [insert address] or by filing them in person at any location of the United States District Court for the Southern District of New York; and (h) be **filed or postmarked on or before ____, 2020**.

| 29. What's the difference between objecting and opting out? |
| --- |

By excluding yourself from the Settlement, you are telling the Court that you do not want to participate in the Settlement. For that reason, you will not be eligible to receive any benefits from the Settlement and you will not be able to object to it, as it will no longer apply to you or bind you.

By objecting to the Settlement, you are telling the Court you want to participate in the Settlement, but that there is something about it you do not like. If you object, you are still eligible to receive payment(s) from the Settlement (although you will not receive any payment until your objection is resolved).

# THE COURT'S FAIRNESS HEARING

The Court will hold a fairness hearing to decide whether to approve the Settlement. You may attend the hearing, and you may ask to speak, if you wish to, but you are not required to do so.

| 30. When and where will the Court decide whether to approve the Settlement? |
| --- |

The Court will hold its fairness hearing on _____, 2020 at _____ .m. at the United States District Court, Southern District of New York, 500 Pearl St., Courtroom 14D, New York, NY 10007-1312.

The hearing may be conducted by phone or videoconference depending on the status of court operations, or may be moved to a different date or time without additional direct notice to you. You can check the Court's PACER site, https://ecf.sdny.uscourts.gov, or contact the Settlement Administrator at www.weinsteinclaims.com or toll-free at 1-_____ (international numbers provided below) to confirm that the date has not changed.  Any change in dates will also be posted on the settlement website.

At the final fairness hearing, the Court will consider whether the proposed Settlement is fair, reasonable, and adequate under the rules governing such settlements. If there are objections or comments, the Court will consider them at that time and may listen to people who have asked to speak at the hearing. The Court will decide whether to approve the Settlement at or after the hearing.

| 31. Do I have to come to the fairness hearing? |
| --- |

No. Class Counsel will answer any questions the Court may have at the final fairness hearing, but you may attend at your own expense if you wish to, or participate by phone or videoconference depending on the status of court operations. If you send an objection or comment on the Settlement, you do not

QUESTIONS?  CALL  TOLL  FREE  _____  (USA  AND  CANADA),  +_____  (INTERNATIONAL),  EMAIL info@____Settlement.com, OR VISIT WWW.WEINSTEINCLAIMS.COM.

20

have to participate in the hearing to talk about it. As long as you filed or mailed your written objection on time, the Court will consider it. You may also hire your own lawyer at your own expense to attend the hearing on your behalf, but you are not required to do so.

| 32. May I speak at the fairness hearing? |
| --- |

If you send an objection or comment on the Settlement, you may be able to speak at the final fairness hearing, subject to the Court's discretion. You cannot speak at the final fairness hearing if you exclude yourself from the Settlement.

# IF YOU DO NOTHING

| 33. What happens if I do nothing at all? |
| --- |

If you do nothing and the Settlement is finally approved by the Court, you will not receive any payment from the Settlement and, if you are a Class Member, you will give up the right to sue Defendants about the claims in this case as you will be bound by the Court's final judgment and the release of claims detailed in the Settlement Agreement.

# GETTING MORE INFORMATION

| 34. How do I get more information? |
| --- |

This Notice summarizes the Settlement and your rights and options. More details are contained in the Settlement Agreement. You can get copies of the Settlement Agreement and more information about the Settlement on the Settlement website, www.weinsteinclaims.com. You also may also contact the Settlement Administrator by email at info@_____Settlement.com, by phone toll-free at 1-888-_____ (international numbers provided below), or by mail at [INSERT SETTLEMENT ADMIN INFO].

For a more detailed statement of the matters involved in the Litigation or the Settlement, you may review the various documents on the Settlement website, www.weinsteinclaims.com, and/or the other documents filed in this case by visiting (during business hours) the clerk's office at the United States District Court for the Southern District of New York.

You can also access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.nysd.uscourts.gov.

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), +_____ (INTERNATIONAL), EMAIL info@_____SETTLEMENT.COM, OR VISIT WWW.WEINSTEINCLAIMS.COM.

21

Dated: _____

By Order of the Court
United States District Court

Southern District of New
York

QUESTIONS? CALL TOLL FREE _____ (USA AND CANADA), +_____ (INTERNATIONAL), EMAIL info@____Settlement.com, OR VISIT www.weinsteinclaims.com.

22

*EXECUTION VERSION*

**EXHIBIT E**

Letter Notice

# If you are a woman who met or worked for Harvey Weinstein, a class action settlement may affect your rights, or if you are a person (regardless of gender) who has a tort claim, including a sexual misconduct claim, against The Weinstein Company or its affiliates, you must file your claim in the bankruptcy cases by [DATE] at 5 p.m. (Eastern Time) at www.weinsteinclaims.com to protect your rights.

The United States District Court for the Southern District of New York and the United States Bankruptcy Court for the District of Delaware authorized this notice.

**Who's Affected?**  The Class Action Settlement affects all women who: (1) on or after June 30, 2005, (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof ("TWC"); or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by TWC; and (2) before June 30, 2005, met with Harvey Weinstein in person, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.

The Bankruptcy Cases affect all persons who have tort claims, including a sexual misconduct claim, against The Weinstein Company Holdings LLC or its affiliates. The definition of "tort claims" can be found at www.weinsteinclaims.com.

**What's This About?**  A class action lawsuit claims that Harvey Weinstein sexually harassed and abused women, and that his companies' officers and directors failed to investigate or stop the unlawful conduct. The New York State Office of the Attorney General ("NYOAG") also filed a lawsuit, alleging that Harvey Weinstein created a hostile work environment at TWC by sexually harassing female employees, and that Robert Weinstein and TWC aided and abetted these violations of law by failing to investigate and/or stop the unlawful conduct.  The Defendants have denied all allegations. The settlement, which resolves the class action lawsuit and the NYOAG lawsuit, is not an admission of wrongdoing or an indication that any law was violated.

On March 19, 2019, The Weinstein Company Holdings LLC and 54 affiliated companies (the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' cases have been assigned to the Honorable Judge Mary F. Walrath and assigned lead case number 18-10601 (the "Bankruptcy Cases").  On [_____], 2020, the Bankruptcy Court entered an order [establishing [_____], 2020 at 5:00 p.m. (Eastern Time) as the deadline to file a proof of claim solely in respect of tort claims.  Entities or persons who must file a proof of claim prior to this deadline, include, but not limited, to (a) former employees or independent contractors of the Debtors, (b) known parties to litigation with any of the Debtors relating to a tort claim, and (c) known parties who have threatened the Debtors with litigation premised upon a tort claim. The District Court has established this same [date] deadline as the deadline for women who are Settlement Class Members to file claims in the class action settlement. Both types of claims can be filed at

**www.weinsteinclaims.com**.

**How Do You Get a Payment?**   For the class action, a detailed notice and claim form package contains everything you need. Call toll free 1-800-000-0000 or visit www.weinsteinclaims.com to get one. Claim forms are due by **Month 00, 0000**.   If you are not a member of the class action but believe you have a tort claim, including a sexual harassment or sexual misconduct claim, against the Debtors, you may still be entitled to compensation through the Bankruptcy Cases and you should file a proof of claim in the Bankruptcy Cases.  Call toll free 1-800-000-0000 or visit www.weinsteinclaims.com to get the proof of claim form and noticing package for the Bankruptcy Cases.

**What are my Other Options?**  If you are a Settlement Class Member affected by Harvey Weinstein's conduct *prior* to June 30, 2005 and do not want to be legally bound by the Settlement, you must exclude yourself by **Month 00, 0000**, or you won't be able to sue, or continue to sue, Harvey Weinstein and the Defendants about your legal claims. If you are a Settlement Class Member affected by Harvey Weinstein's conduct on or after June 30, 2005, you may not exclude yourself from the settlement. If you are in or stay in the class, you may object to the settlement by **Month 00, 0000**. The detailed notice describes how to object. To apply for a payment, you need to file a Claim Form.

The United States District Court for the Southern District of New York will hold a hearing on Month 00, 0000, to consider whether to approve the settlement and attorneys' fees and expenses not to exceed 25% of the Settlement Amount plus out-of-pocket expenses. You may appear at the hearing, but you are not required to attend. You may also hire your own attorney, at your own expense, to appear or speak for you at the hearing.

The settlement will not become final without approval from the District Court and a final order and judgment from the Bankruptcy Court.

For more details on the Class Action, Bankruptcy Cases and claims processes in each proceeding, call toll free 1-800-000-0000 or go to www.weinsteinclaims.com.

*EXECUTION VERSION*

**<u>EXHIBIT F</u>**

Email Notice

# If you are a woman who met with Harvey Weinstein or worked for The Weinstein Company, a class action settlement may affect your rights; or if you are a person (regardless of gender) who has a tort claim against The Weinstein Company or its affiliates, you must file your claim by [DATE] at 5 p.m. Eastern at www.weinsteinclaims.com to protect your rights.

You may be affected by a class action settlement if Harvey Weinstein sexually harassed or engaged in unwanted sexual contact with you. The settlement will pay women who were sexually harassed or abused by Harvey Weinstein under certain circumstances. If you qualify, you may send in a claim form to ask for payment or object to the settlement. If you were harassed before June 30, 2005, you can also exclude yourself from the settlement. The United States District Court for the Southern District of New York authorized this notice. The Court will have a hearing to consider whether to approve the settlement, so that the benefits may be paid.

You may also be affected by bankruptcy proceedings if you are a person (regardless of gender)  who has a tort claim, including a sexual misconduct claim, against The Weinstein Company Holdings LLC or its affiliates. On March 19, 2019, The Weinstein Company Holdings LLC and 54 affiliated companies (the "Debtors") filed petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") seeking relief under Chapter 11 of the United States Bankruptcy Code. The Debtors' cases have been assigned to the Honorable Judge Mary F. Walrath and assigned lead case number 18-10601.

On [_____], 2020, the Bankruptcy Court entered an order [establishing [_____], 2020 at 5:00 p.m. (Eastern Time) as the deadline for entities or persons, including (a) former employees or independent contractors of the Debtors, (b) known parties to litigation with any of the Debtors relating to a Tort Claim (as defined below), and (c) known parties who have threatened the Debtors with litigation premised upon a Tort Claim to file a proof of claim solely in respect of Tort Claims.

The District Court has established this same [date] deadline as the deadline for women who are Settlement Class Members to file claims in the class action settlement. Filing a claim in the class action settlement will also satisfy any obligation to file a proof of claim.

Both types of claims can be filed at **www.weinsteinclaims.com**.

### WHO'S AFFECTED BY THE CLASS ACTION SETTLEMENT?

The Settlement Class includes all women who: (1) on or after June 30, 2005, (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof ("TWC"); or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by TWC; and (2) before June 30, 2005, met with Harvey Weinstein in person, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.

### WHO MUST FILE A CLAIM BY THE DEADLINE FOR TORT CLAIMS?

If you are a member of the Class Action Settlement Class, the filing of a claim in the class action settlement by the deadline at **www.weinsteinclaims.com** will satisfy any obligations you may have to file a claim in the Bankruptcy Cases.

If you are NOT a member of the Class Action Settlement Class, but believe you have a Tort Claim, including a sexual harassment or sexual misconduct claim, against The Weinstein Company or its affiliates, you MUST file a claim at

www.weinsteinclaims.com by the deadline.  More information about the Bankruptcy Cases and the proof of claim process can be found at www.weinsteinclaims.com.

A "Tort Claim" is defined as any claim that arises out of or connects or relates in any way to, any actual or alleged conduct of Harvey Weinstein, which shall include, without limitation:  (i) actual or alleged sexual misconduct, nonconsensual interactions, harassment (including sexual harassment), uninvited or unwelcome conduct, predatory conduct, inappropriate conduct, degrading conduct, coercive or intimidating behavior, humiliation, tort, hostile work environment, sexual assault, rape, intentional infliction of emotional distress, negligence, negligent infliction of emotional distress, battery, assault, gender violence, false imprisonment, false arrest or detention, sexual abuse, sex trafficking or discrimination based on sex or gender or any similar or related actions, or (ii) defamation, witness tampering, mail fraud, wire fraud, negligent hiring, negligent supervision, negligent retention, negligence, failure to prevent harassment or ratification, in each case that took place in whole or in part prior to [date of the preliminary approval of the Class Action Settlement Agreement], whether based on direct or vicarious liability, whether domestic or foreign, whether based on breach of fiduciary duty or intentional or negligent conduct, including but not limited to allegations of failure to prevent or remedy, failure to disclose, aiding and abetting or efforts or conspiracy to prevent the disclosure, or cover up, of any of the preceding.

### WHAT'S THE CLASS ACTION ABOUT?

A class action lawsuit claims that Harvey Weinstein repeatedly sexually harassed and abused women, including demanding unwanted sexual contact as a quid pro quo for employment or career advancement, and that his companies' officers and directors failed to investigate or stop the unlawful conduct. The New York State Office of the Attorney General ("NYOAG") also filed a lawsuit, alleging that Harvey Weinstein, in his capacity as TWC's co-owner and co-CEO, created a hostile work environment at TWC by repeatedly and persistently sexually harassing female employees, and that Robert Weinstein and TWC aided and abetted these violations of law by failing to investigate and/or stop the unlawful activities, in violation of state and city human rights laws.

The Defendants have denied all allegations. While the settlement resolves the claims of both lawsuits, the settlement is not an admission of wrongdoing or an indication that any law was violated.

### WHAT CAN A CLASS MEMBER GET FROM THE SETTLEMENT?

There will be a common fund of $18,875,000 to be used to pay for the costs of notice to the class, claims administration costs, claims of Class Members, the attorneys' fees and costs of Class Counsel appointed by the Court, and service awards for the Class Representatives.  Compensation for individual Class Members may vary and will be determined by an independent Special Master who will review each claim.

### HOW DO YOU GET A PAYMENT IF YOU ARE A CLASS MEMBER?

A detailed notice and claim form package contain everything you need. Just call or visit the website below to get one. Claim forms are due by Month 00, 0000.

### WHAT ARE YOUR OPTIONS IF YOU ARE A SETTLEMENT CLASS MEMBER?

If you are a settlement class member who was affected by Harvey Weinstein prior to June 30, 2005, and you don't want a payment and you don't want to be legally bound by the settlement, you must exclude yourself by Month 00, 0000, or you won't be able to sue, or continue to sue, Harvey Weinstein and the Defendants about the legal claims in this case. If you exclude yourself, you can't get a payment from this settlement. If you stay in the Class, you may object to the settlement by Month 00, 0000. The detailed notice describes how to exclude yourself or object.

If you are a settlement class member who was affected by Harvey Weinstein on or after June 30, 2005, you may not exclude yourself from the settlement. However, you may object to the settlement by Month 00, 0000. The detailed notice describes how to object. To apply for a payment, you need to file a Statement of Class Membership and a Claim Form.

### WILL THE DISTRICT COURT HOLD A HEARING TO CONSIDER THE CLASS ACTION SETTLEMENT?

The United States District Court for the Southern District of New York will hold a hearing in the class action (*Geiss v. The Weinstein Co., et al*, No. 18-cv-4857) on Month 00, 0000, to consider whether to approve the settlement and attorneys' fees and expenses not to exceed 25% of the Settlement Amount plus out-of-pocket expenses. You may appear at the hearing, but you don't have to.

The United States Bankruptcy Court for the District of Delaware will also consider, in the jointly administered cases filed by The Weinstein Company Holdings, LLC and its affiliates seeking relief under Chapter 11 of the Bankruptcy Code (*In re Weinstein Company Holdings, LLC*, Case No. 18-10601 (D. Del.)), whether to approve a Chapter 11 plan.  The class action settlement will not become final without approval from the District Court and a final order and judgment from the Bankruptcy Court.

For more details, call toll free 1-800-000-0000, go to www.weinsteinclaims.com, or write to _____ Settlement, P.O. Box 000, City, ST 00000.

*EXECUTION VERSION*

## **EXHIBIT G**

Proposed Preliminary Approval Order

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS *et al.*, individually and on behalf of all others similarly situated, | No. 1:17-cv-09554-AKH |
| Plaintiffs, | Hon. Alvin K. Hellerstein |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al*, | |
| Defendants. | |
| JILL DOE, individually and on behalf of all others similarly situated, | No. 1:19-cv-03430-AKH |
| Plaintiff, | Hon. Alvin K. Hellerstein |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al*, | |
| Defendants. | |

## <u>PRELIMINARY APPROVAL ORDER</u>

This matter is before the court on Plaintiffs Louisette Geiss, Katherine Kendall, Sarah Ann Thomas, Melissa Sagemiller, Nannette May (f/k/a Nannette Klatt), Caitlin Dulany, Larissa Gomes, Melissa Thompson, and Jill Doe's motion pursuant to Fed. R. Civ. P. 23 for preliminary approval of a proposed class action settlement, for class certification for purposes of settlement, for appointment of class counsel, and to direct notice to the proposed class.  Plaintiffs, individually and on behalf of the proposed settlement class, and Defendants, entered into a Settlement Agreement that, if approved, would resolve this litigation.

1

Having considered the motion, the Settlement Agreement together with all exhibits and attachments, and the briefs and arguments of counsel, IT IS HEREBY ORDERED as follows:

1.　　Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to them in the Settlement Agreement.

2.　　The Court has jurisdiction over this litigation, Plaintiffs, Defendants, and Settlement Class Members.

<u>PRELIMINARY APPROVAL</u>

3.　　The Court has reviewed the terms of the proposed Settlement Agreement, the exhibits and attachments thereto, Plaintiffs' briefs, and the declarations submitted in support of the motions.  Based on its review of these papers, the Court finds that the Settlement Agreement appears to be the result of serious, informed, non-collusive, and arms-length negotiations conducted with the assistance of JAMS mediator, Jed D. Melnick, Esq.

4.　　The Settlement does not improperly grant preferential treatment to any individual or segment of the Settlement Class; does not exhibit any signs of collusion; and falls within the range of possible approval as fair, reasonable, and adequate and thus is likely to gain final approval under Federal Rule of Civil Procedure 23(e)(2).

5.　　The Court therefore GRANTS preliminary approval of the Settlement.

<u>PRELIMINARY FINDINGS ON SETTLEMENT CLASS CERTIFICATION</u>

6.　　The Court finds that it will likely be able to certify the following Settlement Classes, comprised of two Subclasses, for purposes of judgment on the proposed Settlement:

**Post-2005 Subclass:**  "All women who, on or after June 30, 2005, (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b)

in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether full-time, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof."

**Pre-2005 Subclass:** "All women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc." The Pre-2005 Subclass Class does not include former employees of Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or any other entity for which Harvey Weinstein worked prior to June 30, 2005.

7.  The Court preliminarily finds, for settlement purposes only, that the requirements of Rule 23(a) are satisfied.

8.  Rule 23(a)(l) is satisfied, for settlement purposes only, because Harvey Weinstein met with hundreds of women who were put in harm's way through his alleged pattern and practice of sexual harassment and abuse. Rule 23(a)(2) and (a)(3) are also satisfied because there are common issues between the Class, and the claims of the Class Plaintiffs are typical of the class; specifically, all Class Members' claims pertain to their encounters with Harvey Weinstein, and whether he engaged in sexually abusive or inappropriate conduct with each respective Class Member.

9.      The Court further finds that the Class Representatives will fairly and adequately protect the interests of the Settlement Class, for settlement purposes only, because their interests are not antagonistic of the Class, itself, and Rule 23(a)(4) is satisfied.

10.     This Court preliminarily finds that the requirements of Rule 23(b)(1)(B) are satisfied for the Post-2005 Subclass, for settlement purposes only, because the maintenance of individual actions would impair or impede the interests of the other members of the class given the limited funds available to the Subclass as a result of the Chapter 11 Cases filed by The Weinstein Company Holdings, Inc. and its affiliates, as well as the criminal conviction of Harvey Weinstein.

11.     This court also preliminary finds for settlement purposes only that, for the Pre-2005 Subclass, the requirements of Rule 23(b)(3) are met because the questions of law or fact common to the Pre-2005 Subclass predominate over individual questions, and a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

12.     The Court hereby appoints as Class Representatives:  Louisette Geiss, Sarah Ann Thomas (a/k/a Sarah Ann Masse), Melissa Thompson, and Jill Doe for the Post-2005 Subclass, and  Melissa Sagemiller, Nannette May (f/k/a Nannette Klatt), Katherine Kendall, Caitlin Dulany, and Larissa Gomes for the Pre-2005 Subclass.

13.     For purposes of the settlement, this Court appoints Elizabeth A. Fegan of Fegan Scott LLC and Steve W. Berman of Hagens Berman Sobol & Shapiro LLP as Class Counsel.

14.     If for any reason this Court does not finally approve the Settlement, or if the Effective Date does not occur, the preliminary certification findings shall be deemed null and void without further action of the Court or the parties.  In such circumstances each party shall

retain all of its respective, currently existing rights to seek or to object to the certification of this action as a class action under Fed. R. Civ. P. 23.

## NOTICE AND ADMINISTRATION

15.     The Court hereby designates Epiq Class Action & Claims Solutions, Inc. as Settlement Administrator.

16.     The Court finds that giving Class Members notice of the Settlement is justified under Rule 23(e)(l) because, as described above, the Court will likely be able to approve the Settlement under Rule 23(e)(2) and certify the Settlement Class for purposes of judgment.

17.     The Court finds that the proposed Notice satisfies the requirements of due process and Rule 23 and provides the best notice practicable under the circumstances. The Notice and plan for its dissemination are reasonably calculated to apprise Class Members of the nature of this litigation, the scope of the Settlement Class, a summary of the class claims, that a Class Member may enter an appearance through an attorney, that the Court will grant timely exclusion requests for the Pre-2005 Subclass, the time and manner for requesting exclusion for the Pre-2005 Subclass, and the binding effect of final approval.  Therefore, the Court approves the Notices, substantially in the forms attached as Exhibits to the Settlement Agreement.

18.     The Court therefore approves the Notice Plan and directs the parties and the Settlement Administrator to provide notice pursuant to the terms of the Settlement Agreement and this Order.

## EXCLUSIONS FOR THE PRE-2005 SUBCLASS

19.     Pre-2005 Subclass Members who wish to opt-out and exclude themselves from the Settlement may do so by notifying the Settlement Administrator in writing postmarked no later than _____, 2020.  All Pre-2005 Subclass Members who do not opt out and exclude themselves from the Settlement Class shall be bound by the terms of the Settlement upon entry of a final approval order and judgment.

20.     To be valid, each request for exclusion must:

•       Include the Class Member's full name, address, and telephone number;

•       Include the statement: "I want to be excluded from *Geiss, et al., v. The Weinstein Company Holdings, LLC, et al.,* No. No. 1:17-cv-09554-AKH (S.D.N.Y.), and understand that by excluding myself, I will not be able to get any money or benefits from the settlement," or substantially similar clear and unambiguous language;

•       Include the Class Member's signature.

•       Be mailed to the Settlement Administrator at this address:

_____, Settlement Administrator

_____

_____

21.     Pursuant to of the Settlement Agreement, if a Pre-2005 Subclass Member's request for exclusion is materially defective, that Pre-2005 Subclass Member will be given an opportunity to cure the defect(s).  The Settlement Administrator will send the Pre-2005 Subclass Member a cure letter, advising of the defect(s) and giving the Pre-2005 Subclass Member an opportunity to cure.  If a Pre-2005 Subclass Member fails to cure the request for exclusion, the Settlement Administrator will have no further obligation to give notice of a need to cure.

22.     The Post-2005 Subclass Members shall have no right or ability to opt-out and exclude themselves from the Settlement.  The Post-2005 Subclass is automatically bound by the Settlement.

<u>OBJECTIONS TO THE SETTLEMENT</u>

23.     Class Members who wish to object to the Settlement may do so in a written submission to the Court.

24.     A written objection must:

•     Include the Settlement Class Member's name, address, and telephone number;

•     Clearly identify the master case name and number, *Geiss, et al., v. The Weinstein Company Holdings, LLC, et al.,* No. No. 1:17-cv-09554-AKH (S.D.N.Y.);

•     State whether the objections apply only to the objector, to a Subclass, to a specific subset of the Class, or to the entire Class, and state with specificity the grounds for the objection;

•     State whether the Settlement Class Member intends to personally appear and/or testify at the Final Approval Hearing;

•     Include the name and contact information of any and all attorneys representing, advising, or assisting the Settlement Class Member, including any counsel who may seek compensation for any reason related to the Settlement Class Member's objection or comment;

•     State whether any attorney will appear on the Settlement Class Member's behalf at the Final Approval hearing, and if so, the identity of that attorney;

•     Be submitted to the Court either by mailing to Clerk, United States District Court for the Southern District of New York, 500 Pearl St, New York, NY 10007, or by filing in person at any location of the United States District Court for the Southern District of New York; and

•     Be filed or postmarked on or before _____, 2020.

7

25.     Any Settlement Subclass Member who does not timely submit a written objection in accordance with the procedures listed above (and detailed in the Notice), shall be deemed to have waived any objection, shall not be permitted to object to the Settlement, and shall be precluded from seeking any review of the Settlement Agreement and/or the final approval order and judgment by appeal or other means.

FINAL APPROVAL AND HEARING SCHEDULE

26.     This Court will hold a Final Approval hearing on _____, 2020 at __, _.m. in Courtroom 14D of the Courthouse at 500 Pearl St, New York, NY 10007.  The Court may continue the date of the Final Approval hearing without further notice to Settlement Class Members.  Settlement Class Members should check the Settlement website or the Court's online calendar for the date of the Final Approval hearing.

27.     At the Final Approval hearing, the Court will consider:  whether the Settlement is fair, reasonable, and adequate and should be granted final approval; whether the Post-2005 Subclass and Pre-2005 Subclass should be finally certified, for settlement purposes only; whether to award Class Counsel attorneys' fees and costs and Settlement Class Representatives service awards; whether a final judgment should be entered; and any other matters the Court may deem appropriate.

28.     The parties shall adhere to the following schedule unless otherwise ordered by the Court:

| Event | Date |
|---|---|
| Settlement Administrator sends Notice (Notice Date) |  |
| Motion for Final Settlement Approval Due |  |
| Motion for Award of Attorneys' Fees, Costs, and Service Awards to Class Representatives |  |

8

| (Fee Motion) Due | |
|---|---|
| Objection Deadline | |
| Opt-Out Deadline (for Pre-2005 Settlement Subclass Only) | |
| Deadline to Submit Claim Forms | |
| Final Fairness Hearing | |
| Special Master files Report on Claims Process | |

29.    In the event that the Settlement is terminated pursuant to the terms of the Settlement Agreement, this Order shall become void, shall have no further force or effect, and shall not be used in this action or in any other proceedings for any purpose other than as may be necessary to enforce the terms of the Settlement Agreement that survive termination.

For the reason set forth above, the Court GRANTS Plaintiffs' motions.

DATED:                                          ENTERED:


_____
Hon. Alvin K. Hellerstein
United States District Judge

*EXECUTION VERSION*

# **EXHIBIT H**

Settlement Deed for Jane Doe in the U.K. Case

This deed of settlement (the "**Agreement**") is made on _____ between the parties whose details are included below.

# 1    PARTIES

1.1    [INSERT NAME] of [INSERT ADDRESS] (the **"Complainant"**); and

1.2    **[INSERT NAME]**, of [INSERT ADDRESS] (the **"Respondent"**).

# 2    BACKGROUND

2.1    The Complainant has brought a claim in the Central London Employment Tribunal, with case number 2200292/2018 (the **"Claim"**).

2.2    **The Complainant believes that she may have and, to the extent that she has not already done so, hereby asserts against the Respondent, claims of sex discrimination (including but not limited to claims of victimisation and harassment) as well as other statutory, contractual and tortious claims, including (but not limited to) those that are listed in Schedule 1.**

2.3    **In this Agreement, the expression "**Legal Adviser**" means Negar Yazdani of BlackLion Law LLP of Berkeley Square House, Berkeley Square, London W1J 6BD, a relevant independent adviser as defined in the legislation referred to in clause 3.5 below.**

# 3    SETTLEMENT

3.1    The Complainant hereby agrees and undertakes that she will, to the fullest extent permitted by law, accept the terms of this Agreement in full and final settlement of all claims listed in Schedule 1 that the Complainant has, ever had, may now have or hereafter may have against the Respondent, arising out of or in any way connected with the Complainant's employment by the Weinstein Company LLC or its termination.

3.2    The Complainant will forthwith send to the Central London Employment Tribunal a letter confirming that she is withdrawing the Claim and applying for it to be dismissed (with a copy of such letter to be sent to the Respondent).  The Complainant further agrees that she will do all that is necessary to secure an Order from the Central London Employment Tribunal dismissing the Claim.

3.3    The Complainant warrants and acknowledges that the following statements are true:-

(a)    prior to entering into this Agreement, the Complainant has received independent legal advice from the Legal Adviser as to the terms and effect of this Agreement and, in particular, its effect on her ability to pursue her rights before an Employment Tribunal and/or any civil court; and

(b)    there is in force a contract of insurance or an indemnity provided for members of a profession or professional body covering the risk of a claim by the Complainant in respect of loss arising in consequence of the advice referred to in clause 3.3(a) and

2

the Legal Adviser has provided the Complainant with satisfactory evidence of such contract of insurance or indemnity.

3.4   The Complainant shall procure that the Legal Adviser shall sign and date a letter to the Respondent in the form set out in Schedule 2 to this Agreement and the Complainant undertakes that she will deliver the same, together with this Agreement duly signed by the Complainant, to the Respondent.

3.5   The parties hereby acknowledge that this Agreement satisfies the conditions for regulating statutory settlement agreements, qualifying settlement agreements and compromise contracts contained in: section 147 of the Equality Act 2010 (and that, in particular, the conditions set out in paragraphs 147(3)(c) and 147(3)(d) of the Equality Act 2010 are met); section 203(3) of the Employment Rights Act 1996 (the "1996 Act"); section 77(4A) of the Sex Discrimination Act 1975 (including in relation to any claims under the Equal Pay Act 1970); section 72(4A) of the Race Relations Act 1976; section 288(2B) of the Trade Union and Labour Relations (Consolidation) Act 1992; paragraph 2 of Schedule 3A of the Disability Discrimination Act 1995; regulation 35(3) of the Working Time Regulations 1998; section 49(4) of the National Minimum Wage Act 1998; Schedule 4 Paragraph 2(2) of the Employment Equality (Religion or Belief) Regulations 2003; Schedule 4 Paragraph 2(2) of the Employment Equality (Sexual Orientation) Regulations 2003; Schedule 5 Paragraph 2(2) Employment Equality (Age) Regulations 2006; regulation 9 Part-time Workers (Prevention of Less Favourable Treatment) Regulations 2000; regulation 10 Fixed-term Complainants (Prevention of Less Favourable Treatment) Regulations 2002; paragraph 12 of the Schedule to the Occupational and Personal Pension Schemes (Consultation by Employers and Miscellaneous Amendment) Regulations 2006 and section 58 of the Pensions Act 2008.

## 4   GOVERNING LAW AND JURISDICTION

4.1   This Agreement shall be governed by and interpreted in accordance with English law.

4.2   The Respondent and the Complainant hereby irrevocably agree that the courts of England and Wales shall have jurisdiction to hear and to determine any suit, action or proceeding and to settle any dispute, which may arise out of or in connection with this Agreement, and, for such purposes, irrevocably submit to the exclusive jurisdiction of such courts.

## 5   SEPARATE AND SEVERAL CLAUSES

The Respondent and the Complainant agree that each of the clauses and sub-clauses of this Agreement shall be separate and severable and enforceable as such.  If any clause and/or sub-clause is determined as being unenforceable in whole or in part for any reason, that shall not affect the enforceability of the remaining clauses or sub-clauses or, in the case of part of any clause or sub-clause being unenforceable, the remainder of that clause or sub-clause.  If any clause or sub-clause of this Agreement is found by itself (in whole or in part), or taken together with any other clauses or sub-clauses of this Agreement, to be void but would be valid if some part of it were deleted, such clause or sub-clause shall apply with such modification as may be necessary to make it valid and effective.

*EXECUTION VERSION*

**6**   **MULTIPLE COPIES**

This Agreement may be executed by any number of counterparts each in the like form, all of which taken together shall constitute one and the same document and any party may execute this Agreement by signing any one or more of such counterparts.

*EXECUTION VERSION*

This document has been executed as a deed and is delivered and takes effect on the date stated at the beginning of it.

Signed as a deed by
[**INSERT NAME**]                                                   ..............................
                                                                    [**INSERT NAME**]

in the presence of:

............................................... signature of witness

............................................... name of witness

............................................... witness address

............................................... witness address

............................................... witness address

............................................... witness occupation

Signed as a deed by
[**INSERT NAME**]                                                   ..............................

in the presence of:

............................................... signature of witness

............................................... name of witness

............................................... witness address

............................................... witness address

............................................... witness address

............................................... witness occupation

# SCHEDULE 1

## APPLICABLE CLAIMS

**(i)**      the claim;

**(ii)**      any contractual claim;

**(iii)**      any claim arising out of a contravention or an alleged contravention of section 94 (unfair dismissal (including unfair redundancy)) of the Employment Rights Act 1996 (the "1996 Act");

**(iv)**      any claim arising out of a contravention or an alleged contravention of section 103A (unfair dismissal for making a protected disclosure) of the 1996 Act;

**(v)**      any claim arising out of a contravention or an alleged contravention of sections 1, 4, 8 or 9 of the 1996 Act (right to employment particulars);

**(vi)**      any claim arising out of a contravention or an alleged contravention of section 92 of the 1996 Act (right to a written statement of dismissal);

**(vii)**      any claim arising out of a contravention or an alleged contravention of sections 8, 13, 15, 18(1) or 21(1) of the 1996 Act (protection of wages);

**(viii)**      any claim arising out of a contravention or an alleged contravention of sections 28 of the 1996 Act (guarantee payment);

**(ix)**      any claim arising out of a contravention or an alleged contravention of section 47B of the 1996 Act (protected disclosures);

**(x)**      any claim of direct or indirect discrimination, victimisation or harassment because of sex, marriage or civil partnership status, gender assignment, pregnancy or maternity, contrary to sections 39 or 40 of the Equality Act 2010 ("**EA 2010**") or section 6 of the Sex Discrimination Act 1975;

**(xi)**      any claim of direct or indirect discrimination, victimisation or harassment because of colour, race, nationality or ethnic or national original, contrary to sections 39 or 40 of the EA 2010 or section 4 of the Race Relations Act 1976;

**(xii)**      any claim arising out of a contravention or an alleged contravention of section 188 (duty of employer to consult representatives) or section 190 (entitlement under protective award) of the Trade Union and Labour Relations (Consolidation) Act 1992;

**(xiii)**      any claim for failure to allow access to records pursuant to sections 10, 18, 20(1)(a) or 24 of the National Minimum Wage Act 1998

**(xiv)**      any claim of direct or indirect discrimination, victimisation or harassment because of disability or arising from disability (including any claim for failure to make reasonable adjustments), contrary to sections 39 or 40 of the EA 2010 or section 4 and/or 4A of the Disability Discrimination Act 1995;

**(xv)**      any claim of direct or indirect discrimination, victimisation or harassment because of sexual orientation contrary to sections 39 or 40 of the EA 2010 or regulation 6 of the Employment Equality (Sexual Orientation) Regulations 2003;

**(xvi)**      any claim of direct or indirect discrimination, victimisation or harassment because of religion or belief contrary to sections 39 or 40 of the EA 2010 or regulation 6 of the Employment Equality (Religion or Belief) Regulations 2003;

**(xvii)**      any claim of direct or indirect discrimination, victimisation or harassment because of age contrary to sections 39 or 40 of the EA 2010 or regulation 7 or 24 of the Employment Equality (Age) Regulations 2006;

**(xviii)**      any claim for discrimination or harassment on any of the grounds specified above after the employment has ended, any claim for anything alleged to have been done by another person in the course of her employment for which the Employer is allegedly liable and/or any claim for instructing, causing or inducing contraventions under sections 108, 109, and/or 111 of the EA 2010 (or any of corresponding provisions of the statutes or regulations referred to above);

**(xix)**      any claim for equality of terms contrary to sections 66 or 73 (maternity equality rule) of the EA 2010 or section 1 of the Equal Pay Act 1970 or Article 157 of the Treaty on the Functioning of the EU;

**(xx)**      any claim arising out of a contravention or an alleged contravention of regulation 10 (daily rest) of the Working Time Regulations 1998, regulation 11 (weekly rest period), regulation 12 (rest breaks), regulation 13 (entitlement to annual leave), regulation 14(2) (payment in lieu where employment is terminated during the course of a leave year), and/or regulation 16(1) (payment in respect of periods of leave) of those Regulations;

**(xxi)**      any claim to have suffered a detriment in contravention of section 45A (working time cases) of the 1996 Act;

**(xxii)**      any claim arising out of a contravention or an alleged contravention of sections 64 (right to remuneration on suspension on medical grounds), 67 (right to offer of alternative work before being suspended from work on maternity grounds) and/or 68 (right to remuneration when an employee is suspended from work on maternity grounds) of the 1996 Act;

**(xxiii)**      any claim for a redundancy payment due under section 135 of the 1996 Act, or under any contractual entitlement or otherwise;

**(xxiv)**      any claim for failure to comply with obligations under the Occupational and Personal Pension Schemes (Consultation by Employers and Miscellaneous Amendment) Regulations 2006;

**(xxv)**      any claims for damages in relation to any breach of the Data Protection Act 2018;

**(xxvi)**      any claim under any EC Directive, Regulation or other EC legislation applicable in the UK and directly enforceable by the Complainant;

**(xxvii)**      any claim for failure to allow access to records pursuant to sections 10,18, 20(1)(a) or 24 of the National Minimum Wage Act 1998;

**(xxviii)**    any claim in connection with the right to be accompanied arising under sections 10(2A), (2B) or (4) of the Employment Relations Act 1999 brought under section 11 of that Act;

**(xxix)**    any claim in respect of the infringement of the statutory employment rights set out in Trade Union and Labour Relations (Consolidation) Act 1992;

**(xxx)**    any claim to have suffered unlawful detriment arising out of a contravention or an alleged contravention of section 43M (jury service), 44 (health and safety cases), 45 (Sunday working for shop and betting workers), 46 (trustees of occupational pensions schemes), 47 (employee representatives), 47A (employees exercising the right to time of work for study or training), 47C (leave for family and domestic reasons), and/or 47E (flexible working) of the 1996 Act;

**(xxxi)**    any claim arising out of a contravention of alleged contravention of section 52 of the 1996 Act (right to time off to look for work or arrange training) and/or the right to remuneration for time off under section 52 pursuant to section 53 of the 1996 Act;

**(xxxii)**    any claim arising out of a contravention of alleged contravention of section 55 of the 1996 Act (right to time off for antenatal care) and/or the right to remuneration for time off under section 55 pursuant to section 56 of the 1996 Act;

**(xxxiii)**    any claim for breach of the right to time off under section 57A of the 1996 Act (right to time off for dependants);

**(xxxiv)**    any claim arising out of a contravention or an alleged contravention of regulation 5(1) (right not to be treated less favourably) and/or regulation 7(2) (right not to be subjected to a detriment) of the Part-Time Workers (Prevention of Less Favourable Treatment) Regulations 2000 and/or regulation 7(2) (right not to be subjected to a detriment) of those Regulations;

**(xxxv)**    any claim arising out of a contravention or an alleged contravention of regulation 3 (right not to be treated less favourably) and/or regulation 6(2) (right not to be subjected to detriment) of the Fixed-Term Complainants (Prevention of Less Favourable Treatment) Regulations 2002;

**(xxxvi)**    any claim arising under or based upon the Human Rights Act 1998 or the European Convention on Human Rights;

**(xxxvii)**    any claim in respect of harassment contrary to section 1 of the Protection from Harassment Act 1997;

**(xxxviii)**    any claim in relation to maternity, paternity, adoption, parental leave or leave for family and/or domestic reasons;

**(xxxix)**    any claim arising out of a contravention or an alleged contravention of section 80G(1) (request for flexible working) of the 1996 Act or on the basis that a decision to reject an application for a change to terms and conditions under section 80F of the 1996 Act was based on incorrect facts;

**(xl)**   any claim for failure to hold a meeting in accordance with regulation 3(1) or 8(1) of the Flexible Working (Eligibility, Complaints and Remedies) Regulations 2002 or for failure to notify a decision in accordance with regulation 4 or 9 of those regulations;

**(xli)**   any claim arising out of a contravention or an alleged contravention of regulation 14(2) or (4) (right to be accompanied) of the Flexible Working (Procedural Requirements) Regulations 2002;

**(xlii)**   any claim in relation to the obligations to elect appropriate representatives or inform and consult or any entitlement to compensation, under the Transfer of Undertakings (Protection of Employment) Regulations 2006;

**(xliii)**   any claim in relation to accrued pension entitlement;

**(xliv)**   any claim in relation to existing personal injury whether or not the Complainant is aware of such injury;

**(xlv)**   any claims for physical or psychiatric illness and/or claims relating to any acts of discrimination;

**(xlvi)**   any stress-related claims and/or any claims relating to depression; and

**(xlvii)**   any claim to the right to request time off for study or training under section 63 of the Employment Rights Act 1996.

*EXECUTION VERSION*

# SCHEDULE 2

## CERTIFICATE OF ADVISOR

[on headed note paper of Complainant's legal advisor]

Dear Mr _____

RE: [INSERT NAME]

I am writing in connection with the Agreement made between my client and Mr _____ (the "Respondent") as a statutory settlement agreement, qualifying settlement agreement and compromise contract (the "Settlement Agreement").

 I confirm that:-

1.      I am a relevant independent adviser within the meaning of Section 203(3A) of the Employment Rights Act 1996, the legislation referred to in clause 3.5 of the Settlement Agreement and also an independent adviser in relation to compromise agreements/qualifying compromise contracts/qualifying settlement agreements within the meaning of section 147 of the Equality Act 2010;

2.      I have not acted (and am not acting) in connection with this matter for, nor am I employed by, the Respondent or any member of the Group (as defined in the Settlement Agreement) and I am not connected (within the meaning of section 147 of the Equality Act) with the Respondent or any member of the Group (as defined in the Settlement Agreement);

3.      I have advised my client as to the terms and effect of the Settlement Agreement, and, in particular, its effect on her ability to pursue her rights before an Employment Tribunal;

4.      There is now in force, and there was at the time I gave my client the advice referred to above, a contract of insurance or indemnity provided for members of a professional body or profession covering the risk of a claim by my client in respect of loss arising in consequence of the advice referred to in paragraph 3 above.

Yours sincerely

Negar Yazdani
For and on behalf of
BlackLion Law LLP

*EXECUTION VERSION*

## **Exhibit I**

Released Professionals

1.  *For the Debtors*
    Cravath, Swaine & Moore LLP
    Richards Layton & Finger, PA

2.  *For the UCC*
    Pachulski Stang Ziehl & Jones LLP

3.  *For Marc Lasry*
    Anderson Kill P.C.
    Paul Weiss Rifkind Wharton & Garrison LLP

4.  *For Barbara Schneeweiss*
    Barta Tate

5.  *For Jeff Sackman and Lance Maerov*
    Fried, Frank, Harris, Shriver & Jacobson LLP

6.  *For Tim Sarnoff*
    Latham & Watkins LLP

7.  *For Harvey Weinstein*
    Lewis Brisbois Brisgaard & Smith LLP
    Pasich LLP

8.  *For Paul Tudor Jones*
    Patterson Belknap Webb & Tyler LLP

9.  *For Tarak Ben Ammar*
    Pillsbury Winthrop Shaw Pittman LLP

10. *For Richard Koenigsberg*
    Reed Smith LLP

11. *For James Dolan*
    Rosenberg, Giger and Perala P.C.
    Skadden Arps Slate Meagher & Flom LLP

12. *For Dirk Ziff*
    Skadden Arps Slate Meagher & Flom LLP

13. *For David Glasser*
    Schlam Stone & Dolan LLP

14. *For Robert Weinstein*
    Schulte Roth & Zabel LLP
    Sauer & Wagner LLP

15. *For Frank Gil*
    White, Hilferty & Albanese, P.C.
    Ween & Kozek
    Bowles, Liberman & Newman