**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| LOUISETTE GEISS *et al*, individually and on behalf of all others similarly situated, | No. 1:17-cv-09554-AKH |
| Plaintiffs, | Hon. Alvin K. Hellerstein |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.,* | |
| Defendants. | |
| JILL DOE, individually and on behalf of all others similarly situated, | No. 1:19-cv-3430-AKH |
| Plaintiff, | |
| v. | |
| THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.,* | |
| Defendants. | |

**SETTLEMENT CLASS REPRESENTATIVES' REPLY IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND RESPONSE TO THE REQUEST OF NON-CLASS MEMBERS TO APPEAR AT THE PRELIMINARY APPROVAL HEARING**

# TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     MS. BROCK'S OBJECTION IS PREMATURE AND MISINFORMED. .......................2

        A.      Ms. Brock's objection is procedurally defective. ....................................................2

        B.      Ms. Brock's objections to the amount and source of the settlement proceeds at
                preliminary approval are premature and the bases for her objections are incorrect.
                ..................................................................................................................................5

        C.      Objections to a proposed allocation plan are not appropriate at the preliminary
                approval stage. ........................................................................................................9

        D.      The Claim Form is far less burdensome than proceeding to trial and is designed to
                ensure that Settlement Class Members provide sufficient detail to allow the
                Special Master to assess the full bases for each claim. ...........................................11

        E.      Ms. Brock had full knowledge of, and contributed to, the settlement negotiations,
                which  were extensive, adversarial, arms' length, and overseen by an experienced
                mediator. ................................................................................................................13

        F.      The proposed Notices comply with S.D.N.Y. Local Civil Rule 23.1....................14

III.    NON-SETTLEMENT CLASS MEMBERS DO NOT HAVE STANDING TO OBJECT
        TO PRELIMINARY (OR FINAL) APPROVAL OF A CLASS SETTLEMENT ...........17

IV.     CONCLUSION................................................................................................................19

# TABLE OF AUTHORITIES

## CASES

*Casey v. Citibank, N.A.*,
   No. 1:13-CV-353 (MEMBER), 2014 U.S. Dist. LEXIS 37265 (N.D.N.Y. Mar. 21, 2014) .... 4

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
   504 F.3d 229 (2d Cir. 2007) ................................................. 17

*Chavez v. PVH Corp.*,
   No. C 13-01797 LHK, 2015 WL 12915109 (N.D. Cal. Aug. 6, 2015) .............................. 4-5

*Davis v. J.P. Morgan Chase & Co.*,
   775 F. Supp. 2d 601 (W.D.N.Y. 2011) ................................................. 4

*Davis v. J.P. Morgan Chase & Co.*,
   827 F. Supp. 2d 172 (W.D.N.Y. 2011)................................................. 6-7

*Fed. Ins. Co. v. Weinstein*,
   No. 18 Civ. 2526 (PAC), 2019 U.S. Dist. LEXIS 53165 (S.D.N.Y. Mar. 28, 2019) .......... 7-8

*In re Am. Bank Note Holographics*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) ................................................. 10

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................. 9

*In re Dom. Airline Travel Antitrust Litig.*,
   378 F. Supp. 3d 10 (D.D.C. 2019) ................................................. 10

*In re Drexel Burnham Lambert Grp.*,
   130 B.R. 910 (S.D.N.Y. 1991) ................................................. 17

*In re Equifax Customer Sec. Breach Litig.*,
   2020 U.S. Dist. LEXIS 118209 (N.D. Ga. Mar. 17, 2020) ................................................. 12

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
   No. 11 CV 5450 (NRB), 2016 U.S. Dist. LEXIS 180481 (S.D.N.Y. Dec. 21, 2016) .............. 4

*In re PaineWebber Pshps. Litig.*,
   171 F.R.D. 104 (S.D.N.Y. 1997) ................................................. 10, 11

*In re Penthouse Exec. Club Comp. Litig.*,
   No. 10 Civ. 1145 (KMW), 2013 U.S. Dist. LEXIS 63065 (S.D.N.Y. Apr. 29, 2013)
   ................................................. 1, 4, 5, 6, 10

*Jackson's Rocky Ridge Pharm., Inc. v. Argus Health Sys., Inc.*,
  2007 WL 9711416 (N.D. Ala. June 14, 2007) ................................................................... 12

*Morris v. Affinity Health Plan, Inc.*,
  859 F. Supp. 2d 611 (S.D.N.Y. 2012) ................................................................... 6

*New York ex rel. Abrams v. Nintendo of Am., Inc.*,
  No. 91 Civ. 2498 (RWS), 1991 U.S. Dist. LEXIS 10426 (S.D.N.Y. July 30, 1991) ............... 6

*Phillips Petrol. Co. v. Shutts*,
  472 U.S. 797 (1985) ................................................................... 2

**RULES**

Fed. R. Civ. P. 23 ................................................................... *passim*

S.D.N.Y. Local Civil Rule 23.1 ................................................................... 14, 16

**TREATISES**

Manual for Complex Litigation (4th ed.)................................................................... 3, 12

4 Newberg on Class Actions (5th ed.) ................................................................... 3, 17

# I.     INTRODUCTION

Nine named plaintiffs support the proposed Settlement. Fed. R. Civ. P. 23 allows all class members, including plaintiff Zoe Brock, to file their objections to the Settlement[1] after preliminary approval once Notice is issued. "The Court should allow the rest of the class a chance to evaluate the settlement and the allocation formula, especially because, like any allocation formula, class members with different circumstances might view it differently." *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145 (KMW), 2013 U.S. Dist. LEXIS 63065, at *10-11 (S.D.N.Y. Apr. 29, 2013). This Court should thus reject Ms. Brock's objection as premature. Should the Court review the substance of her objections, they should nonetheless be overruled as reflected below.

Further, on July 11, 2020, counsel for six women contacted Class Counsel and requested that Class Counsel inform the Court that they intend to appear at the preliminary approval hearing.[2] However, as reflected below, five of the women largely do not have standing to object: two of the six women are not Settlement Class Members, because they expressly requested to be excluded from the Settlement Class during negotiations; a third is expressly excluded from the Pre-2005 Subclass Member by her request;[3] and, two have already released their claims through private settlement. Like Ms. Brock, the remaining objector should file her objection pursuant to

---

[1] All capitalized terms have the same meaning as set forth in the Class Settlement Agreement (ECF 333-23).

[2] Class Counsel will do so in accordance with this Court's Order Regulating Proceedings (July 10, 2020).

[3] Thus, any objection must be limited to the Post-2005 Subclass.

the Rule 23 process after Notice has issued. Accordingly, preliminary approval should be granted.

## II.     MS. BROCK'S OBJECTION IS PREMATURE AND MISINFORMED.

### A.     Ms. Brock's objection is procedurally defective.

Each and every class member—absent or named—has a due process right to receive fulsome information about a proposed settlement through a court-approved notice procedure, and then to have an opportunity to opt out of the settlement or object and be heard. *See Phillips Petrol. Co. v. Shutts*, 472 U.S. 797, 810–13 (1985). But there's a time and a place for objections to a class action settlement, and this is not it. The time for objections is when the Court is considering final approval of the Settlement, not at this early stage before notice has even gone out.

Rule 23 recognizes the right of class members to object to a class settlement, but it limits that right to the context of settlement proposals that require court approval. *See Id.* R. 23(e)(5)(A). Class members have a right to object to a proposed settlement when the Court's approval "would bind class members," and such approval must follow a hearing and a finding that the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2), (5).

Resolution of the pending preliminary approval motion (one way or the other) will not bind anyone. All it will do is allow notice to be issued to the Class. Fed. R. Civ. P. 23(e)(1)(B); see also Fed. R. Civ. P. 23, advisory committee notes to 2018 amend., ("preliminary approval" of a class action means that "the court must direct notice to the class regarding a proposed class-action settlement only after determining that the prospect of class certification and approval of the proposed settlement justifies giving notice"). Nor does preliminary approval and the issuance

of notice affect anyone's rights—it simply triggers a reasonable timeframe for class members to learn about the case, evaluate their options, and ultimately decide whether participation is the right choice for them. Class members are not bound unless and until the Court enters a final approval order.

The typical settlement approval sequence—preliminary approval and issuance of notice, followed by opt-outs and objections, and then final approval—makes sense and serves important purposes. It comports with the procedure set forth in Rule 23, satisfies standing and due process requirements, and ensures an efficient process where class members make fully informed choices about whether to participate in a settlement. Filing objections before the Court has even issued notice turns the ordinary approval process on its head. *See* 4 Newberg on Class Actions § 13:29 (5th ed.) ("Class members may lodge objections to proposed class action settlements in the time period between the preliminary approval of the settlement and the fairness hearing…. the court's order preliminarily approving the settlement will direct that notice be given to the class of the proposed settlement and that the notice explain to the class the process for filing objections."); Manual for Complex Litigation § 21.633 (4th ed.) ("Manual") ("The notice of the fairness hearing should tell objectors to file written statements of their objections with the clerk of court by a specified date in advance of the hearing and to give notice if they intend to appear at the fairness hearing.").

Here, Plaintiffs have proposed a deadline for objections for 90 days after the Class Administrator sends Notice to the Settlement Class. *See* Motion for Preliminary Approval (ECF 333), at 7. This schedule provides ample time for Settlement Class Members to become informed of the details of the Settlement through the notice process, and then make an informed decision

about whether to opt-out if they are a member of the Pre-2005 Subclass (like Ms. Brock who also has this option), participate in the Settlement, or object. The Court will then be able to review and address all objections in the appropriate context, i.e., when determining whether to order final approval.

Indeed, courts have recognized that class member objections at the preliminary approval stage are "procedurally improper." *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 CV 5450 (NRB), 2016 U.S. Dist. LEXIS 180481, at *101-102 (S.D.N.Y. Dec. 21, 2016) (denying objection that asserted claims would be extinguished without compensation at preliminary approval stage of class settlement as "premature," and stating "[s]uch an objection can be raised at the next stage in the settlement proceedings if Guaranty has standing."); *Casey v. Citibank, N.A.*, No. 1:13-CV-353 (MEMBER), 2014 U.S. Dist. LEXIS 37265, at *3-4 (N.D.N.Y. Mar. 21, 2014) (holding that objection to preliminary approval of "the proposed settlement agreement is inappropriate and premature. The proper time to present their objections is at the final approval hearing."); *In re Penthouse Exec. Club Comp. Litig.*, 2013 U.S. Dist. LEXIS 63065, at *8 (holding that a plaintiff's "dissatisfaction with certain settlement terms is not a bar to preliminary approval."); *Davis v. J.P. Morgan Chase & Co., 7*75 F. Supp. 2d 601, 608 (W.D.N.Y. 2011) ("[T]o the extent that the proposed intervenors have particular objections to the terms of the proposed settlement, there is no reason why those concerns cannot be fully and adequately aired at the fairness hearing and in the context of the Court's decision whether to finally approve the settlement."). *See also Chavez v. PVH Corp.*, No. C 13-01797 LHK, 2015 WL 12915109, at *3, *4 (N.D. Cal. Aug. 6, 2015) ("Objector cites no Civil Local Rule, Federal

Rule of Civil Procedure, or other authority that permits a putative class member to file objections to a motion for preliminary approval.").

Just because Ms. Brock was a named plaintiff in the *Geiss* litigation does not elevate her objection over the rights of other class members. In fact, nine of the named plaintiffs support the Settlement. *See* Motion for Prelim. Approval (ECF 333), Exs. 8-16 (declarations of Settlement Class Representatives explaining why they support the Settlement). Thus, the court in the *Penthouse Exec. Club Comp. Litig*. explained: "a plaintiffs' dissatisfaction with certain settlement terms is not a bar to preliminary approval. The proper time for the Court to consider objections to a settlement is at the final approval hearing." *In re Penthouse Exec. Club Comp. Litig.*, 2013 U.S. Dist. LEXIS 63065, at *8-9 (citing *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611 (S.D.N.Y. 2012) (granting preliminary approval after two of three named plaintiffs objected and objections considered at final approval hearing)). This Court should thus reject Ms. Brock's objections as premature.

**B.    Ms. Brock's objections to the amount and source of the settlement proceeds at preliminary approval are premature and the bases for her objections are incorrect.**

Ms. Brock's objections to the amount and source of the settlement proceeds should be rejected at this stage. Rejecting similar objections to a class settlement at the preliminary approval stage, the court in *New York ex rel. Abrams v. Nintendo of America, Inc*., explained:

> The California Plaintiffs also object to certain of the terms of the settlement including the amount and structure of the settlement. These objections go to the fairness and adequacy of the settlement, the standards for determining whether a proposed settlement should be approved. See Minolta, 668 F. Supp. at 459 (citations omitted). As the fairness and adequacy of the settlement will be considered at the expiration of the notice period when the parties seek final approval of the Settlement, a determination of issues

- 5 -

> relating to the fairness and adequacy of the settlement is at this
> time premature.

*New York ex rel. Abrams v. Nintendo of Am., Inc.*, No. 91 Civ. 2498 (RWS), 1991 U.S. Dist.

LEXIS 10426, at *11 (S.D.N.Y. July 30, 1991). *See also In re Penthouse Exec. Club Comp.*

*Litig.*, 2013 U.S. Dist. LEXIS 63065, at *10 ("An objection to the amount of a settlement is not

the type of 'obvious defect' that should derail a settlement process before it begins. A complaint

about the settlement amount should be addressed at the final approval hearing after all of the

Class Members have had a chance to weigh in and the all parties have made full presentations.")

While her objections are premature, a brief response demonstrates that Ms. Brock ignores

the law applicable to the Pre-2005 Subclass, is mischaracterizing the contributions of certain

Defendants, arguing as if she has pending claims against multiple contributing parties – when

she does not, and ignoring the reality of Harvey Weinstein's situation.

Ms. Brock's complaint that the Settlement is not enough ignores the hard-fought

negotiations over two years, after multiple courts dismissed claims against all Defendants except

certain Plaintiffs' claims against Harvey Weinstein. Ms. Brock is a member of the Pre-2005

Subclass, for which there is no argument that the *dismissed* defendants are not well-heeled.

However, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest

that the settlement is unfair." *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 620-21

(S.D.N.Y. 2012) (internal quotations omitted). In fact, "[c]ourts assign 'relatively  little weight'

to this factor." *Id.* (quoting *Davis v. J.P. Morgan Chase & Co*., 827 F. Supp. 2d 172 (W.D.N.Y.

2011)).  *See also Davis*, 827 F. Supp. 2d at 178 ("Were a defendant's ability to withstand a

greater judgment a critical factor, then only the most massive settlement awards could be deemed

reasonable in cases against large corporations.") (*citing Castagna v. Madison Square Garden,*

*L.P.*, No. 09-cv-10211, 2011 U.S. Dist. LEXIS 64218 (S.D.N.Y. June 7, 2011) ("a defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair") (internal quotations omitted)).

Second, Ms. Brock's objection ignores the fact of the Chapter 11 Cases, and that Class Counsel and the NYOAG were able to secure certain proceeds from the Debtors' insurance policies, which are the only remaining assets of the Debtors with any value.

Third, Ms. Brock's objection that the dismissed Defendants are not contributing to the Settlement is fundamentally misinformed. As explained in the Memorandum in Support of the Motion for Preliminary Approval (and Bankruptcy Plan), the Former Representatives have agreed to forego their rights to significant insurance proceeds in order to create the Class Settlement Fund. Some of the Defendants have also agreed to release claims against the Debtors, allowing certain proceeds to be used instead for the benefit of unsecured creditors, including the Settlement Class Members. It is not unusual in the least for insurance companies to contribute to settlements; the only unique feature here is the transparency of the insurance companies' contributions due to the Chapter 11 Cases.

Fourth, Ms. Brock's complaint that the insurance companies may not have "sufficiently stepped up to the plate"[4] ignores that the insurers have strong arguments that they owe no money at all given the nature of the tort claims. In fact, in pending insurance coverage litigation, several insurance companies claim exclusions for coverage for "intentional acts" and, in some policies, "molestation, misconduct or abuse." *Fed. Ins. Co. v. Weinstein*, No. 18 Civ. 2526 (PAC), 2019 U.S. Dist. LEXIS 53165, at *4 (S.D.N.Y. Mar. 28, 2019) (Crotty, J.) (discussing insurance

---

[4] Obj., at 7.

policies and summary judgment motion filed by insurers in declaratory judgment action claiming

Weinstein's insurers had no duty to defend or indemnify Weinstein in the 18 sexual misconduct

lawsuits and claims filed against him).

Next, it is unlikely Harvey Weinstein will have sufficient assets to cover *seriatim* trials

by class members. Weinstein is clearly focused on his criminal defense after his conviction in

New York and sentencing to 23 years, as well as the pending charges in California. Much of his

asserts were tied into his companies which are now part of the Chapter 11 Cases. Moreover, we

understand that several orders by family law courts were issued in April 2020, freezing $6

million in assets for the benefit of his former wives and children.[5]

Finally, this Court dismissed all of Ms. Brock's claims – against all Defendants *including*

Harvey Weinstein based on the statute of limitations. In the First Amended Complaint, Ms.

Brock alleged that she was imprisoned by Harvey Weinstein at the Cannes Film Festival in May

1996. In his hotel, Weinstein attempted to assault Ms. Brock, although she was able to escape.

Weinstein subsequently threatened Ms. Brock to ensure she stayed quiet. Ms. Brock alleged she

suffered emotional distress that stalled her career. First Amended Compl., ¶¶ 152-164.  Ms.

Brock asserted claims individually and on behalf of the Pre-2005 Subclass.

Dismissing Ms. Brock's claims in the First Amended Complaint, this Court held that her

claims were untimely. Order and Opinion Denying in Part and Granting in Part Defendants'

Motion to Dismiss (ECF 278), at 21 (April 18, 2019). This Court further ruled that her

allegations of intimidation did *not* "come close to meeting" the requirements for alleging "fear of

---

[5] *See* https://6abc.com/harvey-weinsteins-assets-frozen-by-ex-wives/6311546/ (last accessed
July 11, 2020).

retaliation" that would give rise to equitable tolling of the statute of limitations. *Id.* at 26-27.

Thus, as of April 18, 2019, Ms. Brock did not have any live claims pending in the lawsuit.

However, the time for her right to appeal was not triggered because several other plaintiffs'

claims were permitted to proceed and thus no final judgment was entered.

Absent this Settlement, Ms. Brock is likely to receive nothing. *See In re AT&T Mobility*

*Wireless Data Servs. Sales Tax Litig., 78*9 F. Supp. 2d 935, 961 (N.D. Ill. 2011) (granting final

approval of class settlement and asking: "could the Class Members ultimately expect to obtain

more favorable relief? A dollar recovered today is worth more than a dollar recovered in the

future, which is relevant because the Settlement provides for a combination of present and future

benefits. [citations omitted] Were the Class Members required to await the outcome of a trial and

inevitable appeal, however, they would not receive benefits for many years, if indeed they

received any at all."). Given the dismissal of her claims by this Court, as well as the dismissal of

all of the Former Representatives by multiple courts in this District, it is highly unlikely that her

claims would be revived on appeal. Thus, Ms. Brock's objections to the source of funds for the

Settlement should be rejected, and preliminary approval should be granted.

**C.      Objections to a proposed allocation plan are not appropriate at the preliminary approval stage.**

Ms. Brock's contention that the Allocation Guidelines for the Special Master should be

rejected are also premature. As one court in this District explained:

> Likewise, an objection to a proposed allocation formula should not
> affect the preliminary approval determination. The Court should
> allow the rest of the class a chance to evaluate the settlement and
> the allocation formula, especially because, like any allocation
> formula, class members with different circumstances might view it
> differently. See In re PaineWebber Ltd. Pshps. Litig., 171 F.R.D.
> 104, 133 (S.D.N.Y. 1997), aff'd, 117 F.3d 721 (2d Cir. 1997) ("in

- 9 -

the case of a large class action the apportionment of a settlement can never be tailored to the rights of each plaintiff with mathematical precision...").

*In re Penthouse Exec. Club Comp. Litig.*, 2013 U.S. Dist. LEXIS 63065, at *10-11. *See also In re Dom. Airline Travel Antitrust Litig.*, 378 F. Supp. 3d 10, 24 (D.D.C. 2019) ("There is a procedure in place whereby Class Members will receive notification of a plan of allocation/distribution, including information regarding the range of settlement, and there will be an opportunity to make claims and/or objections at that time regarding settlement amounts.").

"As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable" under the particular circumstances of the case. *In re PaineWebber Pshps. Litig.*, 171 F.R.D. 104, 133 (S.D.N.Y. 1997). "An allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *In re Am. Bank Note Holographics*, 127 F. Supp. 2d 418, 429-30 (S.D.N.Y. 2001) (quotation marks omitted).

Here, the Allocation Guidelines were negotiated by independent Subclass Counsel who were guided by their discussions with the respective Subclass Settlement Class Representatives, as well as counsel from the Civil Rights division for the New York State Office of the Attorney General. Their recommendations should carry substantial weight.

Moreover, Ms. Brock's dissatisfaction that, under the Guidelines, her claim may be afforded less points based on the scope of Harvey Weinstein's conduct toward her (from which she alleges she was able to escape without physical injury), or because her claims are out of time,

is not a basis on which to deny preliminary approval. One court in this District  explained that

these factors are exactly the sort that an allocation plan should incorporate:

> However, it is also true that when real and cognizable differences exist between the 'likelihood of ultimate success' for different plaintiffs, 'it is appropriate to weigh 'distribution of the settlement . . . in favor of plaintiffs whose claims comprise the set' that was more likely to succeed.' Agent Orange, 611 F. Supp. at 1411 (citing Corrugated Container, 643 F.2d at 220). Such merit-based weighting has been approved by courts in this Circuit and elsewhere where substantially different or additional claims have been asserted by certain class members and not others []; where the liability of a defendant has been altered in relation to some class members because of a separate settlement or judicial determination []; where different plaintiffs have 'substantially' different vulnerabilities to statute of limitations defenses []; and where the injuries claimed by different class members have been sustained under significantly different legal or factual circumstances []. As a general rule, the adequacy of an allocation plan turns on whether counsel has properly apprised itself of the merits of all claims, and whether the proposed apportionment is fair and reasonable in light of that information.

*In re PaineWebber Pshps. Litig.*, 171 F.R.D. at 133 (additional and internal citations omitted).

Here, this Court will be able to conclude at final approval that the Allocation Guidelines are

"indeed based on a rational analysis of the relative strengths and weaknesses of the claims

related to each" class member. *Id.* (internal quotations omitted).

**D.     The Claim Form is far less burdensome than proceeding to trial and is designed to ensure that Settlement Class Members provide sufficient detail to allow the Special Master to assess the full bases for each claim.**

Ms. Brock's counsel would throw out the entire claims process – although it is one that is

modeled on prior sex abuse and discrimination settlements that have been highly successful for

survivors like those here.

- 11 -

First, Class Counsel has offered to help any Settlement Class Member complete their Claim Form *at no charge.* Thus, any women who would prefer to share their narrative orally, or need additional support to complete their Claim, can receive such support for free from the outset of the claims process. Thus, Ms. Brock's contention that support is not available is misinformed.

Second, "completion and documentation of the claim form are no more burdensome than necessary and similar claims procedures are routinely required in other settlements." *In re Equifax Customer Data Sec. Breach Litig.*, 2020 U.S. Dist. LEXIS 118209, at *233-234 (N.D. Ga. Mar. 17, 2020) (*citing Jackson's Rocky Ridge Pharm., Inc. v. Argus Health Sys., Inc.,* 2007 WL 9711416, at *2 (N.D. Ala. June 14, 2007) ("[E]ach class member who seeks damages from the settlement fund must file and substantiate its claim. This requirement is no more onerous than that to which each of the class members would have been subjected had they filed a separate lawsuit against the defendant and prevailed on the substantive claim.")); Manual for Complex Litigation § 21.66 (4th ed.) ("Class members must usually file claims forms providing details about their claims and other information needed to administer the settlement. . . . Verification of claims forms by oath or affirmation . . . may be required, and it may be appropriate to require substantiation of the claims. . . .").

Third, this Claim Form is modeled on claim forms used in other sex abuse and discrimination settlements. Most recently, the Court in *In re USC Student Health Center Litig.*, No. 2:18-cv-4258, approved a 25-page Claim Form[6] that was approved by three experts,

---

[6] The Claim Form is available on the settlement website at https://www.usctyndallsettlement.com/admin/services/connectedapps.cms.extensions/1.0.0.0/asset?id=5a8784c6-a910-4e6f-9f69-1cfce04a1c66&languageId=1033&inline=true (last accessed July 11, 2020).

including a forensic psychologist. The *USC* Claim Form formed the foundation for the Claim Form developed here. Of approximately 15,000 potential class members in *USC*, *more than three thousand (3,000) women* have completed and submitted the 25-page claim form. Joint Status Report (May 11, 2020) (ECF 175), at 2-3, *In re USC Student Health Center Litig.*, No. 2:18-cv-4258. Thus, the Claim Form is not an obstacle to claims.

In fact, the process developed here – and approved in *USC* and *Wiginton v. CB Richard Ellis, Inc.*—doesn't force every Settlement Class Member to speak with the Special Master if she chooses not to. Rather, it provides two tiers of compensation in order to ensure that each Settlement Class Member maintains the personal choice as to how involved she wants to be in the claims process.  Given the facts of this case – and the very real fear that has kept Settlement Class Members in the dark for more than 20 years, Class Counsel and the NYOAG have been extremely careful to protect the confidences of women who have chosen to share, as well as respect the boundaries that each woman has set for the level of her individual participation. Ms. Brock's attempt to force every Settlement Class Member to immediately engage and orally tell her very personal trauma to a person whom she has never met does not respect the circumstances of this case. Accordingly, Ms. Brock's objections should be overruled, and preliminary approval of the Settlement granted.

**E.   Ms. Brock had full knowledge of, and contributed to, the settlement negotiations, which  were extensive, adversarial, arms' length, and overseen by an experienced mediator.**

Ms. Brock's new attorney complains that he was not part of the settlement negotiations. However, Ms. Brock was part of the material negotiations, apprised at every step by Class Counsel. As reflected in the Declaration of Jed Melnick, Class Counsel participated in settlement

negotiations from June 4, 2018 to November 2019 when the Term Sheet was signed. Declaration of Jed Melnick In Support of Motion for Preliminary Settlement Approval of Class Settlement (ECF 333-12), ¶¶ 20-36. Class Counsel kept all of the named Plaintiffs, including Ms. Brock, aware of the negotiations throughout this period, as well as the negotiated terms of the Term Sheet. It was not until after the negotiations of the material terms of the Settlement were completed that Ms. Brock retained new counsel in December 2019.

In or about December 2019, in non-privileged communications to third parties, Ms. Brock stated that she did not support the settlement. On December 18, 2019, Elizabeth A. Fegan and Fegan Scott LLC notified Ms. Brock in writing that they would no longer represent her.[7] On January 15, 2020, Ms. Brock notified Hagens Berman that she was terminating the firm as her counsel. John Clune subsequently filed his appearance on Ms. Brock's behalf. The fact that Ms. Brock's new counsel was not invited to the process to document the settlement is hardly surprising given that the material terms had already been negotiated, and Ms. Brock chose to exclude herself.

Nonetheless, as Class Counsel expressed to Ms. Brock's new attorney, they will not oppose Ms. Brock's request for a service award at the appropriate time.

## F.     The proposed Notices comply with S.D.N.Y. Local Civil Rule 23.1.

S.D.N.Y. Local Rule 23.1 provides in pertinent part:

> Fees for attorneys or others shall not be paid upon recovery or compromise in a class action or a derivative action on behalf of a corporation except as allowed by the Court after a hearing upon

---

[7] Ms. Brock has put what she asserts is the reason for Fegan Scott's termination of her at issue, apparently waiving the attorney-client privilege. While her accusations are inaccurate, they are a red herring not relevant to preliminary approval. If the Court would like a declaration regarding the facts and timeline, Ms. Fegan will provide one upon the Court's request.

- 14 -

such notice as the Court may direct. The notice shall include a statement of the names and addresses of the applicants for such fees and the amounts requested respectively and shall disclose any fee sharing agreements with anyone. Where the Court directs notice of a hearing upon a proposed voluntary dismissal or settlement of a class action or a derivative action, the above information as to the applications shall be included in the notice.

As required by the rules, the Long Form Notice provides in pertinent part:

## THE LAWYERS REPRESENTING YOU

| 26.  Do I have a lawyer in this case? |
| --- |

The Court has appointed the following lawyers, known as Class Counsel, to represent the Class Members in connection with the Settlement:

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Phone: 312-741-1019
Email:
Weinsteinsettlement@feganscott.com

Steve Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1201 Second Avenue, Suite 2000
Seattle, WA 98101
Phone:  206-623-7292
Email:
Weinsteinsettlement@hbsslaw.com

You will not be charged for contacting these lawyers, and they will help you with any questions about your claim at no cost to you. Call 1-_____ and select Option ___ or email ClassCounsel@_____Settlement.com to schedule an appointment with an attorney.

If you want to be represented by a lawyer other than Class Counsel, you may hire one at your own expense.

Long Form Notice (ECF 333-23, at 136-37). The very next question and disclosure in the Long

Form Notice provides:

| 27.   How will the lawyers be paid? |
| --- |

Class Counsel will ask the Court for payment of Attorneys' Fees up to 25 percent of the Settlement Amount plus actual out-of-pocket expenses to compensate them for their services in this Litigation. Any payment to the attorneys will be subject to Court approval, and the Court may award less than the amount requested. Any attorneys' fees and expenses that the Court approves will come out of the Settlement Amount.

When Class Counsel's motion for attorneys' fees and expenses is filed, it will be posted on the Settlement website at www.weinsteinclaims.com. Class Counsel expect to file their motion on _____. Please check the Settlement website regularly if you wish to review Class Counsel's motion for attorneys' fees and expenses. You will have an opportunity to comment on this fee request. The deadline to object to Class Counsel's request for attorneys' fees and expenses is _____, 2020.

If you are represented by a lawyer other than Class Counsel, you are responsible for paying that lawyer's fees and/or costs.

*Id.* (ECF 333-23) at 136. The Publication, Letter, and Email Notices also provide in pertinent

part: "The United States District Court for the Southern District of New York will hold a hearing

in the class action (Geiss v. The Weinstein Co., et al, No. 18-cv-4857) on Month 00, 0000, to

consider whether to approve the settlement and attorneys' fees and expenses not to exceed 25%

of the Settlement Amount plus out-of-pocket expenses." *Id.* (ECF 333-23), at 118, 143, 146.

Each of these notices also refer Settlement Class Members to the settlement website where the

Long-Form Notice and Settlement Agreement will be available to provide further details.

Finally, upon the deadline set by the Court, each law firm seeking (or receiving)

attorneys' fees from the Class Settlement Amount will submit declarations reflecting their actual

lodestar incurred (and rates charged) with a fee petition. Any fee petition and supporting

declarations will be available on the settlement website for review. In sum, the Notices comply

with S.D.N.Y. Local Civil Rule 23.1.

### III.   NON-SETTLEMENT CLASS MEMBERS DO NOT HAVE STANDING TO OBJECT TO PRELIMINARY (OR FINAL) APPROVAL OF A CLASS SETTLEMENT

On July 11, 2020, Kevin Mintzer, counsel for Rowena Chiu, Wedil David, Dominique Huett, Zelda Perkins, Kaja Sokola, and Tarale Wulff, contacted Class Counsel, requesting that we advise the Court of his appearance (as well as the appearances of Doug Wigdor and Bryan Arbeit) at the upcoming telephonic preliminary approval hearing. However, their appearance should largely be denied for the following reasons.

"Only Class members have standing to object to the Settlement of a class action." *In re Drexel Burnham Lambert Grp.*, 130 B.R. 910, 923 (S.D.N.Y. 1991), *aff'd*, 960 F.2d 285 (2d Cir. 1992). Non-class members do not have standing to object to a class settlement, because they do not have an affected interest in the class. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.,* 504 F.3d 229, 244 (2d Cir. 2007) ("Nonparties to a settlement generally do not have standing to object to a settlement of a class action.") (citations omitted). "The objector, as a party seeking to generate a court ruling, has the burden of demonstrating her standing." 4 Newberg on Class Actions § 13:22 (5th ed.).

***Rowena Chiu and Zelda Perkins.*** Ms. Chiu and Ms. Perkins previously signed Settlement Agreements with Miramax Film Corp., Harvey Weinstein, and Robert Weinstein, releasing their claims.  Plaintiffs alleged in their First Amended Complaint that Ms. Perkins and a second woman (who we understand is Ms. Chiu) were paid £250,000 to settle claims against Miramax, Harvey Weinstein, and Robert Weinstein in 1998. FAC, ¶ 358. Ms. Perkins told investigators from the Women and Equalities Committee of the U.K. Parliament that she left her job after Weinstein "sexually assaulted and attempted to rape a  colleague of mine" at the Venice Film Festival in 1998. The settlement agreement dated October 23, 1998, as well as a letter

agreement dated October 23, 1998, expressly provided that the released parties included, among others, Miramax, Harvey Weinstein, and Robert Weinstein.  FAC, ¶¶ 358-366.

Given their prior release of their claims, Ms. Chiu and Ms. Perkins cannot now make a claim in this Settlement as purported class members. As explained in the Long-Form Notice:

> **7.   What if I previously signed an agreement to settle claims relating to Harvey Weinstein's conduct?**
>
> If you previously asserted claims against any Defendant related to Harvey Weinstein's conduct, and signed an agreement to settle those claims, you must disclose the agreement in the Claim Form and submit a copy of the agreement with your Claim Form. Depending on the nature and scope of the agreement you signed, you may not be able to recover for alleged conduct that occurred prior to the date your agreement was signed. However, you may be able to recover for alleged conduct that occurred after the agreement was signed. If you signed an agreement and are not sure whether you should submit a Claim Form, you can ask for free help and more information by calling the Settlement Administrator at 1-_____ (international numbers provided below) or sending an email to info@_____Settlement.com.

*See* Long-Form Notice, at 10 (ECF 333-23, at 128). *See also* Claim Form, ¶ A.11 (ECF 333-23, at 87) (requesting disclosure of any prior settlement agreement and requiring that such agreement be submitted); Allocation Guidelines for Special Master, at 1 (ECF 333-23, at 82).

Class Counsel is not aware that Ms. Perkins or Ms. Chiu experienced any other contact with Harvey Weinstein after the date of their individual settlement agreement, and thus they do not have standing to object to the Class Settlement Agreement.

***Wedil David and Dominique Huett***. Counsel for Ms. David and Ms. Huett previously and expressly requested that the two women be excluded from the Settlement.  Thus, the Settlement Agreement excludes them by name from the definition of the Settlement Class. Settlement Agreement, ¶ 79 ("To the extent not expressly excluded from the subclass definitions above, also excluded from the Settlement Class are …Wedil David, Alexandra Canosa,

Dominique Huett,…"). Thus, neither Ms. David nor Ms. Huett have standing to object to the Settlement Agreement.

*Kaja Sokola*.  Ms. Sokola was the prior Jane Doe in the *Geiss* case (who has since publicly revealed herself), who alleged that Harvey Weinstein assaulted in her 2002 when she was 16 years old. FAC, ¶¶ 201-211.  This Court dismissed her claims from the First Amended Complaint without prejudice to her ability to assert her claims which were revived when the New York Child Victims Act claims period opened.  Her new counsel previously requested that she be excluded from the Pre-2005 Subclass so that she could separately pursue her claims.  Thus, the Settlement Agreement expressly excludes her from the definition of the Pre-2005 Subclass. Settlement Agreement, ¶ 66 (…<u>provided</u>, <u>however</u>, the Pre-2005 Subclass expressly excludes (i) Kaja Sokola;…."). Thus, Ms. Sokola does not have standing to object to the Settlement Agreement as a member of the Pre-2005 Subclass, and any objection must be limited to her membership in the Post-2005 Subclass.

In sum, of the six, the only two women who have standing to object to the Settlement after Notice are Tarale Wulff and Kaja Sokola (as to the Post-2005 Subclass only). However, like Ms. Brock, neither should be entitled to disrupt the orderly process before Notice has been given to the Settlement Class.

## IV.    CONCLUSION

WHEREFORE, the Settlement Class Representatives respectfully request that the Court grant their Motion For Preliminary Approval Of Class Settlement, Certification Of Settlement Classes, Appointment Of Class Counsel, and Permission To Disseminate Class Notice*,* and grant such other and further relief as this Court deems appropriate.

Dated:  July 12, 2020

Respectfully submitted,

By: */s/Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, Illinois 60606
Tel:  (312) 741-1019
beth@feganscott.com

Lynn A. Ellenberger
FEGAN SCOTT LLC
500 Grant Street, Suite 2900
Pittsburgh, Pennsylvania  15219
Tel:  (412) 346-4104
lynn@feganscott.com

Steve W. Berman
Shelby Smith
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, Washington 98101
Tel: (206) 623-7292
steve@hbsslaw.com
shelby@hbsslaw.com

Whitney K. Siehl
HAGENS BERMAN SOBOL
SHAPIRO LLP
455 N. Cityfront Plaza Drive
Suite 2410
Chicago, Illinois 60611
Tel:  (708) 628-4949
whitneys@hbsslaw.com

*Attorneys for the Settlement Class*
*Representatives*

## CERTIFICATE OF SERVICE

I, Elizabeth A. Fegan, an attorney, affirm that the foregoing was filed on this day on ECF, which automatically served all counsel of record.  I also affirm that I served the following counsel via email on this day at the following email addresses:

> Douglas H. Wigdor
> Bryan Arbeit
> Wigdor LLP
> 85 Fifth Avenue
> New York, NY 10003
> dwigdor@wigdorlaw.com
> barbeit@wigdorlaw.com
>
> Kevin Mintzer
> The Law Office of Kevin Mintzer, P.C.
> 1350 Broadway, Suite 1400
> New York, New York 10018
> Tel: 646.843.8180
> Fax: 646.478.9768
> km@mintzerfirm.com

Dated: July 12, 2020

Respectfully submitted,

By: */s/ Elizabeth A. Fegan*
Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor,
Chicago, Illinois 60606
Tel: (312) 741-1019
beth@feganscott.com