# Cuti Hecker Wang LLP

305 Broadway, Suite 607
New York, NY 10007

John R. Cuti
212.620.2601 tel
212.620.2611 fax

jcuti@chwllp.com

July 13, 2020

**By ECF**

Hon. Alvin K. Hellerstein
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York  10007

      Re:    *Geiss et al. v. The Weinstein Company Holdings, LLC et al.*, 17-cv-9554 (AKH)

Dear Judge Hellerstein:

      This firm, along with Gloria Allred of Allred Maroko & Goldberg, represents Miriam Haley ("Ms. Haley"), whose testimony against Harvey Weinstein at his criminal trial provides the basis for one of his criminal convictions.  We recently learned that Class Counsel has moved for an order preliminarily approving, *inter alia*, a mandatory, non-opt-out Subclass in this putative class action seeking money damages. Although we have only begun exploring the terms of this complex proposed settlement, it is clear even from our initial research that the terms of the proposed mandatory settlement class would unlawfully deprive Ms. Haley of her right to opt out if she decides to pursue her unusually strong civil claims against Harvey Weinstein and/or his aiders and abettors.  We therefore ask the Court to delay ruling on Class Counsel's application for preliminary approval, so that Ms. Haley can determine whether to move to intervene in order to file a formal, more comprehensive opposition to this motion, which the parties have had many months to prepare.

      Harvey Weinstein forcibly sexually assaulted Ms. Haley on July 10, 2006.   In or around 2018, Ms. Haley began cooperating with the New York County District Attorney's investigation of Weinstein, which revealed that he had sexually abused more than a hundred women.  Of those many survivors, Ms. Haley was one of the very few who testified against Weinstein at his criminal trial.  On the strength of her testimony, the jury convicted Weinstein of violating Penal Law § 130.50(1) and the Court, relying in part on Ms. Haley's victim-impact statement, sentenced him to twenty years in prison.  Ms. Haley therefore has live tort claims against Weinstein.  *See* CPLR §§ 215(8)(b) and 213-C (extending the statute of limitations for civil actions for sexual assault to five years from the date of the defendant's criminal conviction).  Moreover, Weinstein's criminal conviction would collaterally estop him from relitigating in Ms. Haley's potential civil action whether he raped her, and she therefore could move for summary judgment immediately and would be entitled to a judgment as a matter of law regarding Weinstein's liability in any civil action she might file against him.  *See, e.g.*, *S.T. Grand, Inc. v. City of New York,* 32 N.Y.2d 300, 303-05 (1973).

But counsel in this action would require Ms. Haley to forfeit those rights if this proposed settlement is approved. Under the terms of the proposed settlement, Ms. Haley, who was assaulted on July 10, 2006, would be a member of the putative Post-2005 Subclass. No member of that putative Subclass has the right to opt out. Thus, under the terms of the proposed settlement for which Class Counsel seeks preliminary approval, if Ms. Haley, or any other survivor who fits the definition of the Post-2005 Subclass, chooses not to file a claim in this action, she nonetheless supposedly will be bound by a broad release that supposedly will bar her, among other things, from filing suit against the man who raped her (and, in Ms. Haley's case, is legally stripped of any defense to liability).

Class Counsel contends that depriving Ms. Haley and other women in her position of the right to choose whether to participate in this class is justified because this is a "limited fund" settlement that is certifiable as a mandatory, non-opt-out class action under Federal Rule of Civil Procedure 23(b)(1)(B). That position appears to be insupportable. Because the proposed settlement would violate Ms. Haley's Due Process and Jury Trial rights, the Court should reject it.

A mandatory, non-opt-out class settlement is highly unusual and disfavored where, as here, the class is seeking compensatory money damages. As Justice Scalia explained for the Court in *Wal-Mart Stores, Inc. v. Dukes*, "[i]n the context of a class action predominantly for money damages we have held that absence of notice and opt out violates due process." 564 U.S. 338, 363 (2011) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985)). That rule stems from the "due process 'principle of general application in Anglo-American jurisprudence that one is not bound by a judgment *in personam* in a litigation in which [s]he is not designated as a party or to which [s]he has not been made a party by service of process' . . . it being our 'deep-rooted historic tradition that everyone should have h[er] own day in court.'" *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846 (1999) (quoting *Hansberry v. Lee*, 311 U.S. 32, 40 (1940) and *Martin v. Wilks*, 490 U.S. 755, 762 (1989)).

There is a narrow class of cases in which, despite these serious constitutional concerns, a mandatory, non-opt-out class may be certifiable under Rule 23(b)(1)(B). As the Court explains in *Ortiz*, one such category is a "limited fund" class: "Among the traditional varieties of representative suits encompassed by Rule 23(b)(1)(B) were those involving 'the presence of property which call[ed] for distribution or management.'" *Ortiz*, 527 U.S. at 834 (internal citation omitted; brackets in original). The Court illustrated the concept by discussing an "equitable class suit" where the defendant had sold "steamship tickets to more than 150 people and had posted a $15,000 bond as required by state law." *Id*. at 836. The defendant absconded. A ticket buyer filed suit "on behalf of himself and all others like him." *Id*. On facts like those, it was proper to sustain a class action that would bind absent participants because there was a "limited fund" – the $15,000 held by the surety – and all of it would be used to pay the defrauded ticket-buyers, *pro rata*. *Id*. Given the well-known history of this type of equitable mechanism, the Court observed that it "is simply implausible that the Advisory Committee [that recommended adoption of the revised Rule 23 in 1966], so concerned about the potential difficulties posed by dealing with mass tort cases under Rule 23(b)(3), with its provisions for notice and the right to opt out . . . would have uncritically assumed that mandatory versions of such class actions, lacking such protections, could be certified under Rule 23(b)(1)(B)." *Id.* at 844 (citation omitted).

Although the Court "recognize[d] the tension between the limited fund class action's pro rata distribution in equity and the rights of individual tort victims at law" and noted the "serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited

fund rationale," *id*. at 845, it did not "decide the ultimate question whether Rule 23(b)(1)(B) may ever be used to aggregate individual tort claims," *id*. at 844.  But one cannot read the opinion in *Ortiz* and fairly conclude that what is proposed in this case meets the standards of due process.  Tellingly, virtually all the cases cited in Class Counsel's brief on this issue predate *Ortiz*, and Class Counsel does not cite a single Circuit Court decision approving a 23(b)(1)(B) class after *Ortiz* was decided.  Indeed, several Circuit Courts have since refused to approve mandatory, non-opt-out class settlements for the reasons explained in *Ortiz*.  *See*, *e.g.*, *In re Simon II Litigation*, 407 F.3d 125, 136-138 (2d Cir. 2005) (relying on *Ortiz* and reversing certification of mandatory non-opt-out class); *In re Telectronics Pacing Systems Inc.*, 221 F.3d 870, 876-881 (6th Cir. 2000) (same).

Even assuming that "Rule 23(b)(1)(B) may ever be used to aggregate individual tort claims," *Ortiz*, 527 U.S. at 844, such a class cannot be certified unless it fits the "pedigree of the limited fund class action as understood by the drafters of Rule 23," *id*. at 838.  The "Rule's historical antecedents identify" three fundamental "requirements" that must be met before such a class could be approved:  "The first and most distinctive characteristic is that the totals of the aggregated *liquidated* claims and the fund available for satisfying them, set definitely at their maximums, *demonstrate* the inadequacy of the fund to pay all the claims"; "[s]econd, the *whole* of the inadequate fund [must] be devoted to the overwhelming claims"; and "[t]hird, the claimants identified by *a common theory of recovery* [must be] treated equitably among themselves."  *Id*. at 838-39 (emphases added).  In other words, there must be a "'fund' with a *definitely ascertained limit*, all of which would be distributed to satisfy all those with *liquidated claims*, *based on a common theory of liability*, by an equitable, *pro rata*, distribution."  *Id*. at 841 (emphases added).

The proposed class settlement in this case does not come close to meeting these requirements.  To begin with, none of the members of the putative class has a "*liquidated*" claim; instead, each putative class member has only *unliquidated* claims (either asserted or as-yet unasserted common-law and/or statutory causes of action).  Nor is there truly a limited fund that is demonstrably inadequate to satisfy all claims.  Although Class Counsel and the Defendant contend that there is a limited fund that is inadequate to pay all claims, they have not submitted evidence to support that claim.  The agreement of the parties is never sufficient to demonstrate the existence of a true "limited fund." *Doe v. Karadzic*, 192 F.R.D. 133 (S.D.N.Y. 2000).  Rather, *Ortiz* requires "that the parties present 'evidence on which the district court may ascertain the limit and the insufficiency of the fund, with support in findings of fact following a proceeding in which the evidence is subject to challenge.'" *Id*. at 140-41 (quoting *Ortiz*, 527 U.S. at 849).

Ms. Haley is not in a position at this point to assess whether the various potential defendants and their insurance carriers truly lack access to additional assets with which to compensate the class.  But one thing is clear:  Class Counsel has cited no evidence at all regarding Harvey Weinstein's net worth, instead offering only speculation about his legal expenses.  The fact, however, is that Mr. Weinstein has not declared bankruptcy, nor, as far as we can discern, has any individual affiliated with the entities, such as his brother or board members who may have enabled/aided/abetted him over the years.  Absent evidence that he or they could not satisfy judgments against them in the next twenty years, there is no basis to conclude that the proposed settlement fund is the maximum amount that could be devoted to the class members' claims.  *See id*. at 141 (rejecting proposed limited fund class action because plaintiffs failed to establish "not only that the defendant's current net worth is insufficient to satisfy a potential judgment, but also a 'substantial probability' that the defendant will be unable to pay such claims over the [twenty-year] life of the judgment."). *See also In re Simon II*, 407 F.3d at 238 (rejecting certification of class

under Rule 23(b)(1)(B) because the proposed limit was merely theoretical rather than "either an existing res or the total of defendants' assets available to satisfy claims").

Nor is the "whole" of the purported fund available for settling claims allocated to the class. Far from it. The papers submitted in support of the motion show that there is at least $46,786,000 available in the bankruptcy estate. (Again, only the Weinstein entities have declared bankruptcy, not Mr. Weinstein or any other individuals.) The substantial majority of that fund is not available for members of the class. Instead, of that amount: (i) $5,400,000 is allocated to compensate 14 "Individual Plaintiffs" who are not being required to participate in the class; (ii) $1,500,000 is allocated to Harvey and Robert Weinstein for defense costs of claims asserted by other plaintiffs who also have been defined out of the class; (iii) $7,295,000 is set aside to be distributed to other creditors of the bankruptcy estate; (iv) $12,216,000 is to be paid to lawyers who represented the Weinsteins and other defendants in this action; and (v) $1,500,000 is set aside for the costs of defending contract and commercial litigation against the bankrupt entities. *See* Docket No. 333-5 (Bankruptcy Global Settlement Agreement) at 11-14. What remains is a "Class Action Settlement Fund" of $18,875,000. *Id*. at 11. Even assuming that the Class Action Settlement Fund were the relevant purported "limited fund," the motion papers make clear that the "whole" of this fund will not be paid to the class members either.

Instead, up to 25% of this fund will be paid to Class Counsel and Subclass Counsel as attorneys' fees; then, an additional amount will be paid to them to reimburse for out-of-pocket expenses (which might be substantial given that Class Counsel has engaged law firms to render bankruptcy and other legal advice); then, in addition, "Former Counsel may also apply for an award of Attorneys' Fees and Costs," *see* Docket No. 333-1 (Memorandum of Law) at 19, 32-33; then, the fund is further reduced by payment of any service awards for the Class Action Representatives, *id*. at 14; and, finally, the purported settlement fund will be reduced by payment of all costs of class notice plus all Administrative Expenses, *id*. – costs that no doubt will be substantial given the need for a Special Master and his/her designees to review hundreds of claim forms, render awards, and determine appeals from unsatisfied claimants. *Id*. at 14-18. Based on our experience with class action legal fees and administrative expenses, we expect that the fund from which class members' claims will be paid may amount to approximately $12,000,000.

In proper "limited fund cases . . . the class as a whole was given the best deal; they did not give a defendant a better deal than *seriatim* litigation would have produced." *Ortiz*, 527 U.S. at 839. That is not so here. No class member – no matter how horrific the sexual abuse or how profound the emotional suffering she has endured – can receive more than $750,000 under the proposed settlement. Yet, in connection with this very proposed settlement, Harvey Weinstein and his brother are to be paid $1,5000,000 to defray their future defense costs and are not required to pay a penny out of their own pockets. Plainly, Harvey Weinstein will do better under this proposed class settlement than he would in *seriatim* litigation. That is grossly unfair to Ms. Haley.

Finally, though the proposed settlement does propose protocols that seek to treat claimants fairly, the fact is that many, indeed most, class members likely have only time-barred claims. But there are a number of class members, including Ms. Haley, who have live claims. It is not equitable to treat such differently situated putative class members as if they were in the same situation.

      For all these reasons, Ms. Haley respectfully requests that the Court either deny Class Counsel's motion for preliminary approval or refrain from deciding that motion until Ms. Haley and other class members can move to intervene and formally oppose the motion.

                                Respectfully submitted,

                                /s/ John R. Cuti

                                John R. Cuti
                                Mariann Wang

cc:     All counsel of record, via ECF
         Gloria Allred, Allred Maroko & Goldberg