UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a SARAH ANN MASSE), MELISSA THOMPSON, MELISSA SAGEMILLER, NANNETTE MAY (f/k/a NANNETTE KLATT), KATHERINE KENDALL, ZOE BROCK, CAITLIN DULANY, LARISSA GOMES, and JANE DOE, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    -against-<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,<br><br>        Defendants. | No. 1:17-cv-09554-AKH |
| JILL DOE, individually and on behalf of all others similarly situated<br><br>        Plaintiffs,<br><br>    -against-<br><br>THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,<br><br>        Defendants. | No. 1:19-cv-3430-AKH |

## OBJECTION OF ALEXANDRA CANOSA TO PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION CERTIFICATION AND SETTLEMENT

Thomas P. Giuffra
Jeremy A. Hellman
RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorneys for Objector ALEXANDRA CANOSA
551 Fifth Avenue, 29th Floor
New York, New York 10176
Tel: (212) 684-1880
Fax: (212) 689-8156
tgiuffra@rheingoldlaw.com

*Canosa v. Weinstein*, 18 Civ. 4115 (PAE)

## <u>TABLE OF CONTENTS</u>

Page

Table of Authorities………………………………………………………   3

Plaintiff Canosa Has Standing to Object…………………………………   4

The Parties………………………………………………………………..   6

"Class" Counsel Has *Not* Fairly and Adequately
Represented the Interests of the Class…………………………………….   9

Failure of the Proposed Class Certification……………………………….   11

The Agreement Does Not Treat Class Members Equitably………………….   12

Specific Outrageous Terms in the Proposed Settlement Agreement…………   13

The Global Settlement Agreement Rewards
A Convicted Rapist at The Expense of His Victims…………………………   13

Former Employees of TWC Are Penalized by The Proposed Agreement…………   15

Non-Settling Plaintiffs Are Intentionally Penalized
For Not Agreeing to The Class Settlement…………………………………   17

Neither Harvey or Robert Weinstein
are Contributing To The Settlement Fund…………………………………..   19

Harvey Weinstein And His Enablers Will Have Their
Attorneys Fees Paid at The Expense of The Survivors………………………...   19

The Mysterious Liquidation Trust Settlement Payment of $7,295,000………………...   20

Numerosity…………………………………………………………………   21

Commonality………………………………………………………………   22

Typicality…………………………………………………………………   23

Adequacy…………………………………………………………………   24

Conclusion………………………………………………………………..   26

# TABLE OF AUTHORITIES

Page

Alvarez v. Schnipper Restaurants LLC,
No. 16 CIV. 5779 (ER), 2019 WL 5682633, at *3 (S.D.N.Y. Nov. 1, 2019)…..   17

Bhatia v. Piedrahita,
756 F.3d 211, 218 (2d Cir. 2014)……………………………………………..   5

Drexel Burnham Lambert Grp., Inc.,
960 F.2d 285, 291 (2d Cir. 1992) …………………………………………..   24

Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.,
301 F.R.D. 116, 132 (S.D.N.Y.2014) …………………………………………   23

Gallego v. Northland Grp. Inc.,
814 F.3d 123, 129 (2d Cir. 2016) …………………………………………..   13

Guoliang Ma v. Harmless Harvest, Inc.,
No. 16CV07102JMASIL, 2018 WL 1702740, at *4 (E.D.N.Y. Mar. 31, 2018)…   18

In re Advanced Battery Techs., Inc. Sec. Litig.,
298 F.R.D. 171, 180–81 (S.D.N.Y. 2014) ………………………………………..   11

In re Bluetooth Headset Prod. Liab. Litig.,
654 F.3d 935, 947 (9th Cir. 2011) …………………………………………..   18

In re Scotts EZ Seed Litig.,
304 F.R.D. 397, 405 (S.D.N.Y. 2015) ………………………………………   22, 23

Martens v. Smith Barney, Inc.,
181 F.R.D. 243, 262 (S.D.N.Y. 1998) …………………………………………   18

Ortega v. Uber Techs. Inc.,
No. 15CV7387NGGJO, 2018 WL 4190799 at 6 (E.D.N.Y. May 4, 2018)………   21

Sanders v. CJS Sols. Grp., LLC,
No. 17 CIV. 3809 (ER), 2018 WL 620492, at *3 (S.D.N.Y. Jan. 30, 2018)………   8

Weinberger v. Kendrick,
698 F.2d 61, 73, 74 (2d Cir. 1982) …………………………………….....…   8, 10

Fed. R. Civ. P. 23……………………………………………………   11, 12, 21, 22, 23

Plaintiff-Objector ALEXANDRA CANOSA, by her attorney Thomas P. Giuffra of Rheingold Giuffra Ruffo & Plotkin LLP, submits this objection to the instant Motion For Preliminary Approval of Class Settlement, Certification of Settlement Classes, Appointment of Class Counsel, and Permission to Disseminate Class Notice.

Alexandra Canosa is the plaintiff in the matter Docket No. 18 Civ. 4115, pending before the Honorable Paul E. Engelmayer, U.S.D.J., captioned *Alexandra Canosa v. Harvey Weinstein, The Weinstein Company Holdings, LLC, and The Weinstein Company, LLC*. Our case is in the discovery phase, with depositions due to be completed in November, 2020.

We oppose the instant motion as the terms of the settlement proposed would be incredibly harmful to Ms. Canosa's interests and punishes her for exercising her right not to opt for a proposed settlement that she feels is inadequate and unfair.

This objection wishes to bring to the Court's attention the various provisions in the settlement agreement that harm persons opting out such as Ms. Canosa. This objection also seeks to raise various Rule 23 problems with this matter being considered a class action at all.

### PLAINTIFF CANOSA HAS STANDING TO OBJECT

First and foremost, it must immediately be brought to the Court's attention the hypocritical position of "class" counsel, who maintains in her Reply (while referring to Wedil David and Dominuque Huett who, like Canosa, have opted out of the settlement and wish to continue their pending lawsuits): "Non-class members do not have standing to object to a class settlement, because they do not have an affected interest in the class" (ECF 337, p. 17). That would be all well and good if there was no "affected interest". Yet, the settlement agreement at issue will:

1. **<u>Dismiss</u> TWC as a defendant in Canosa's pending case and force Canosa to take just $25,000.00 in return if she does not agree to the Bankruptcy Plan;**

2. **<u>Cancel</u>** all possible insurance coverage for Harvey Weinstein and TWC in Canosa's case;

3. **<u>Give</u>** Harvey Weinstein 1.5 million Dollars to fight Canosa's claims;

4. **<u>Force</u>** Canosa to take a mere $150,000.00 if she later decides to join the class.

The law is clear that a non-settling party who is legally aggrieved by a settlement may of course object. <u>Bhatia v. Piedrahita</u>, 756 F.3d 211, 218 (2d Cir. 2014) ("there is a recognized exception to this general rule which permits a non-settling defendant to object where it can demonstrate that it will sustain some formal legal prejudice as a result of the settlement").

"Class" counsel cannot have it both ways: she seeks to destroy Canosa's pending lawsuit with the proposed settlement, while claiming that Canosa has no right to object to the Court! This hypocritical position is indicative of the one-sided manner that "class" counsel has been operating on behalf of a small group in her proposed class to the detriment of other individual or objecting plaintiffs.

"Class" counsel is willing to leverage effective obliteration of Canosa's and other objecting plaintiff's claims, so that she can get a higher settlement for which benefits primarily "class" counsel's law firm. "Class" counsel would have this settlement proceed in secrecy so that the unfairness and conflict of interest that "class" counsel has will not be exposed to the light of day. This cannot be permitted.

Canosa and other effected plaintiffs *do* have a right to object because the impact of the proposed settlement would have substantial impact on their lawsuits.

## **THE PARTIES**

For many years Harvey Weinstein ("HW") with the full knowledge of employees and directors of TWC, made it a pattern and practice to conduct business meetings in hotel suites throughout the world, and even in New York and Los Angeles despite HW maintaining personal offices in those cities. HW utilized the power that he had as a major motion picture executive to abuse his power and engage in improper conduct toward women and employees. This conduct was widely known and accepted by TWC and its officers.

TWC was a film production company which was founded by HW and his brother Robert Weinstein. Throughout its existence there were repeated and documented issues with the inappropriate and abusive manner that HW treated employees and others. Robert Weinstein settled several claims of sexual harassment and abuse on behalf of TWC and Miramax. It was also known that HW was a serial abuser of women. Officers of the TWC excused and enabled HW's reign of abuse throughout the existence of TWC.

During the periods at issue in her lawsuit, Ms. Canosa was an employee of the Weinstein Company ("TWC").  During her employment she was subjected to discrimination based on her sex and a multitude of sexual harassment and abuse. She is one of the only former employees of TWC who have filed lawsuits against it.

During the period that Ms. Canosa was employed at TWC, it maintained insurance policies providing employment practices coverage which included coverage for sexual harassment and discrimination.

HW's reign of abuse was aided by his wealthy enablers and continued for decades until a few women, including Ms. Canosa, finally had the courage to speak up. Ms. Canosa was one of

the first women who spoke out against the abuse in the groundbreaking Ronan Farrow article published in New Yorker which exposed HW[1].

Ms. Canosa is the *only named party* in the various litigations who had the courage to stand up for justice at a time when there were only a brave few willing to risk reputation and career to expose a monster. For her courage, she was attacked in periodicals friendly to HW and subjected to various indignities and abuse.

Ms. Canosa has steadfastly pursued her claims and her lawsuit has proceeded further than any other lawsuit brought against TWC and HW in the discovery process. She has opposed a motion to dismiss brought by the defendants and currently has sustained claims arising under the New York Human Rights Law, New York City Human Rights Law and TVPA against TWC and HW. In addition, common law claims were also sustained as to HW.

Initially, Ms. Canosa participated in the mediation efforts conducted with Jed Melnick at JAMS. However, it became apparent in short order that counsel for the purported "class" were controlling all aspects of the mediation and would not allow the participation of counsel for individual plaintiffs.

In addition, the mediator, Mr. Melnick, refused to discuss the negotiations with counsel for the individual plaintiffs without the presence of "class" counsel or even deign to converse with them individually as he did with "class" counsel. It became obvious in short order that the settlement negotiations were in effect being hijacked by "class" counsel and the input or views of individual counsel were dismissed and ignored.

---

[1] https://www.newyorker.com/news/news-desk/from-aggressive-overtures-to-sexual-assault-harvey-weinsteins-accusers-tell-their-stories. See Ronan Farrow's book: Catch and Kill: Lies, Spies, and a Conspiracy to Protect Predators, which contains multiple references to Ms. Canosa and her role in exposing HW. - https://www.amazon.com/Catch-Kill-Conspiracy-Protect-Predators/dp/0316486639.

Is it possible for a mediator to actually recommend a settlement severely limiting claims of someone who opts out - when he does not know that person's case? Clearly, the negotiation-process has been skewed towards some plaintiffs' and lawyers' interests more than others. Weinberger v. Kendrick, 698 F.2d 61, 74 (2d Cir. 1982) ("In order to supplement the thus necessarily limited examination of the settlement's substantive terms, attention also has been paid to the negotiating process by which the settlement was reached, and courts have demanded that the compromise be the result of arm's-length negotiation."); Sanders v. CJS Sols. Grp., LLC, No. 17 CIV. 3809 (ER), 2018 WL 620492, at *3 (S.D.N.Y. Jan. 30, 2018) ("The fairness of a settlement turns on its terms as well as the negotiating process from which it emerged").

Once it became clear that the negotiations were not the collaborative effort that the parties had hoped for but an attempt to draw individual Plaintiffs into the discussions to shore up the credibility of a faltering class action case at the expense of the survivors of HW and his acolytes at TWC, Ms. Canosa withdrew from any further settlement negotiations and pursued her claims in court.

Thereafter, there were multiple attempts to scare her into settling. Perhaps the most egregious attempt was by a representative of the Attorney General of the State of New York who requested a second interview of Ms. Canosa via Skype as part of its investigation of HW and TWC. Ms. Canosa appeared remotely with her attorney to attempt to aid the Attorney General's Office.

However, in a shocking turn of events, after a handful of questions relevant to the investigation, the representative of the AG's office who requested this interview attempted to induce Ms. Canosa to agree to settle in an extremely heavy-handed manner much to the shock of Ms. Canosa and her attorney. It was obvious that the interview, purported as part of the

"investigation", was a mere ruse to "get Ms. Canosa in a room" and attempt to intimidate her into settling.

Thereafter, Ms. Canosa, has proceeded to litigate her case and has rejected the "class" settlement. The attempt to create a global settlement in this matter is a transparent attempt by the "class" counsel to loot a huge fee at the expense of the individual survivors and others and should be rejected by the Court. Ms. Canosa, and the other survivors, deserve far more than this abomination of an agreement provides for the abuse they endured, the suffering they undergo daily and their courage.

### "CLASS" COUNSEL HAS *NOT* FAIRLY AND ADEQUATELY REPRESENTED THE INTERESTS OF THE CLASS

"Class" counsel has taken the position that they have fairly represented and adequately protected the interests of the "Class". This statement, as will be discussed further herein, is false. The only interests that "class" counsel has represented has been its own interests in obtaining a windfall fee despite a multitude of missteps.

According to "class" counsel, its crowning "accomplishment" during this litigation was successfully arguing that the TVPA claim could proceed against HW. "Class" counsel touts its skills in obtaining this accomplishment but ignores the fact that this finding was *first* argued successfully in a case involving an individual Plaintiff in Noble v. Weinstein (17 Civ. 9260) on August 13, 2018, *long before* the Court's decision in this case.

Counsel also ignores the fact that *before* a decision was rendered in the instant action, Ms. Canosa's attorneys *successfully* argued the applicability of TVPA against HW *and TWC*. Notably "class" counsel *failed* in its attempt to hold TWC liable under the TVPA. The hubris of "class" counsel to try to take credit for the accomplishments of other attorneys to bolster claims relating its own representation is surprising and is indicative of its conduct in this matter.

9

Another example of the inadequate representation occurred prior to the mediation sessions. Before the commencement of the mediation, Ms. Canosa's attorneys and others questioned why a stay was not negotiated before engaging in settlement discussions. This prudent condition precedent was dismissed as unnecessary by "class" counsel.

Accordingly, during the pendency of the motion which effectively eviscerated the claims in the "class" action, the mediation sessions proceeded without a stay agreement.  Unfortunately, during the negotiations, the decision that dismissed many class claims came down and upended the bargaining power of the sides.

Thereafter, a settlement of many multiples of what is presently being offered and far less than the Arbitrator recommended was lost. Thereafter, as counsel's cases were floundering, "class" counsel spent their time scrambling about trying to negotiate a settlement which would insure "class" counsel would manage to make a sizable fee at the expense of the "class" and individual plaintiffs as opposed to litigating a faltering litigation.

The only recognizable "accomplishment" that "Class" counsel has succeeded in has been to negotiate an agreement which is unfair and is punitive towards those individual Plaintiffs who are not willing to accept an inadequate settlement.

Given this background, the Court should look closely at this settlement and reject same as wholly improper. Guoliang Ma v. Harmless Harvest, Inc., No. 16CV07102JMASIL, 2018 WL 1702740, at *4 (E.D.N.Y. Mar. 31, 2018) ("when a settlement class is certified after a settlement has already been reached, "district judges ... are bound to scrutinize the fairness of the settlement agreement with even more than the usual care." Weinberger v. Kendrick, 698 F.2d 61, 73 (2d Cir. 1982). Courts have long recognized the dangers of early settlements and the settlement class device").

## FAILURE OF THE PROPOSED CLASS CERTIFICATION

The oppressive and unfair terms of the global settlement need not even be considered based on the simple fact that the proposed "class" fails under various provisions of Rule 23. As such, class certification should be denied outright.

"Before granting preliminary approval of a class action settlement, however, the Court should determine that the proposed Settlement Class is a proper class for settlement purposes … To certify a class, the Court must determine whether four threshold requirements of Federal Rule 23(a) are met, namely, (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation … Additionally, the action must be maintainable under Fed.R.Civ.P. 23(b)(1), (2), or (3)." In re Advanced Battery Techs., Inc. Sec. Litig., 298 F.R.D. 171, 180–81 (S.D.N.Y. 2014)

Rule 23(e), Fed. R. Civ. P., was significantly revised so that Courts would conduct an inquiry before certifying a class for settlement purposes. One of the rationales behind this amendment was to ensure that all members of a class are treated fairly relative to each other and to ensure that class counsel is not operating in its *own self-interest* as opposed to members of the putative class. The provisions of the proposed agreement demonstrate the opposite and this class settlement should fail until members and individual plaintiff are treated fairly and not in a punitive manner. Rule 23(e), Fed. R. Civ. P. includes the following considerations:

> ***Approval of the Proposal.*** If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> (**A**) the class representatives and class counsel have adequately represented the class;
>
> (**B**) the proposal was negotiated at arm's length;
>
> (**C**) the relief provided for the class is adequate, taking into account:
>
> > (**i**) the costs, risks, and delay of trial and appeal;
> >
> > (**ii**) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-

11

member claims;

**(iii)** the terms of any proposed award of attorney's fees, including timing of payment; and

**(iv)** any agreement required to be identified under Rule 23(e)(3); and

**(D)** the proposal treats class members equitably relative to each other.

The proposed settlement fails on multiple fronts pursuant to Rule 23(e), Fed. R. Civ. P. and should not be approved. Furthermore, the proposed "class" does not even qualify as a class under "Rule 23(a).

## THE AGREEMENT DOES NOT TREAT CLASS MEMBERS EQUITABLY

The agreement which has been purportedly negotiated in an "equitable" and "fair" manner intentionally treats non-settling plaintiffs in an inequitable manner relative to consenting class members.

"Class" counsel has intentionally negotiated an agreement that penalizes non-settling plaintiffs for not acceding to the wishes of counsel. The appalling manner in which former class representative, Zoe Brock was "thrown to the wolves" after she objected to the proposed settlement is indicative of the heavy-handed manner in which "class" counsel has treated those individuals who have stood in the way of her firm's big payday.

Even more infamous are the terms that were negotiated at the expense of non-settling individual plaintiffs. A cursory review of these terms indicates that survivors are to be treated in a harsh and punitive manner for not bending to the will of "class" counsel. It is truly shocking that these survivors who were the victims of appalling abuse are now being similarly abused in Court by "class" counsel.

## SPECIFIC OUTRAGEOUS TERMS IN THE
## PROPOSED SETTLEMENT AGREEMENT

"In the context of a request for settlement-only class certification, the protection of absentee class members takes on heightened importance". Gallego v. Northland Grp. Inc., 814 F.3d 123, 129 (2d Cir. 2016). As will be demonstrated, in the proposed settlement, those that do not agree to sign-off are not only not protected, they are affirmatively victimized. In the proposed settlement, the interests of Ms. Canosa and other non-settling plaintiffs are ignored, and they are treated in a punitive manner by "class" counsel for not agreeing to the settlement.

## THE GLOBAL SETTLEMENT AGREEMENT REWARDS
## A CONVICTED RAPIST AT THE EXPENSE OF HIS VICTIMS

Elementary decency, fairness and justice would not permit a convicted rapist to receive settlement monies at the expense of his victims. Nor should the enablers and "wingmen" of a serial rapist get a single penny at the expense of the survivors. However, that is exactly what this agreement provides for. The Court is being asked to approve an immoral agreement which contains gross inequities and shocking punitive terms directed at heroic survivors such as Ms. Canosa.

The District Attorney of New York County spent millions of dollars in time and money finally bringing HW to the justice that he eluded for so long. The efforts of the Manhattan D.A. and his staff should be lauded for its work on behalf of the survivors.

Shockingly, the New York State Attorney General is now supporting an agreement which rewards HW and his enablers at the expense of his survivors. It should not be forgotten that the NY A.G. scuttled a deal for the purchase of TWC which included a substantial victim compensation fund, exclusive of insurance proceeds. Now the A.G. is supporting a settlement which pays survivors a fraction of what they would have received and *gives millions of dollars to HW and his enablers.*

13

The punishment that is being meted out to the non-settling plaintiffs is quite simply unconscionable and morally wrong.  The proposed agreement provides (emphasis added):

> Costs for the Non-Settling Plaintiffs' Cases. Pursuant to the terms and conditions of this Global Settlement Agreement and the Chapter 11 Plan, **Harvey Weinstein** and Robert Weinstein have agreed, in consideration for the releases and injunctions contemplated hereunder and thereunder, **to release the Insurance Companies from any other or further claims for coverage in respect of the Non-Settling Plaintiffs' Cases** and as a result, with respect to the Non-Settling Plaintiffs' Cases, shall bear their own defense costs and/or damages in excess of the Segregated Defense Fund. To induce Harvey Weinstein and Robert Weinstein to provide such releases and assume the risk (if any) attendant to the continued prosecution of those cases without the benefit of insurance coverage, in lieu of any such foregone insurance, the Parties have agreed to the establishment of a segregated account comprised of the Segregated Defense Fund from the Settlement Amount. The Global Escrow Agent shall distribute the Segregated Defense Fund to an account controlled by a representative selected by Harvey Weinstein and Robert Weinstein, **and this representative shall distribute the funds to satisfy defense costs and/or damages** (including amounts paid in connection with any settlement of a Non-Settling Plaintiff's Case executed independently or as provided in the Chapter 11 Plan).

Page 10 explains that the "Segregated Defense Fund shall mean $1,500,000 of the Settlement Amount".

To punish the non-settling Plaintiffs for not settling, HW and his brother will be provided with **a $1,500,000.00 defense fund** *taken from the monies that would otherwise have gone to Ms. Canosa, Weidil David and Dominique Huett so that he can fight their claims.*

It is shocking that "class" counsel and the Attorney General of the State of New York are supporting a Victim's settlement agreement that would give a war chest to a convicted rapist to fight against the claims of those victims who are unwilling to settle. The dichotomy of the conduct of the Attorney General's Office in supporting this agreement to the valor of the Manhattan D.A.'s in pursuing charges again HW is quite frankly appalling.

14

By in effect selling out the non-settling Plaintiffs in order to earn a fee, "class" counsel has effectively stripped the non-settling plaintiffs of any applicable insurance coverage and handed money to a convicted rapist so that he can defend against the claims of his victims.

This provision is nothing less than a slap in the face to the non-settling survivors. These women were victimized by Harvey Weinstein, and now he gets money that would otherwise gone to compensate them for their claims and use the survivor's money to defend against their claims. In an agreement containing numerous offensive terms this is by far the most horrible and unjust.

Ms. Canosa is being punished for rejecting an unfair settlement and desiring to exercise her rights, by not only losing insurance coverage, but her abuser pocketing money to fight her all with the willing acquiescence of the Attorney General of the State of New York and "class" counsel. This provision standing alone demonstrates what an unjust and vile agreement the Court is being asked to approve.

In exchange for taking thirteen pieces of silver, "class" counsel and the NYAG has not only provided the Weinstein brothers with a defense war chest at the direct expense of his victims, they have also negotiated an agreement which would strip many millions of dollars in insurance coverage from TWC and the Weinstein Brothers along with the mega-wealthy directors by giving them all releases. Therefore, destroying any opportunity for the non-settling survivors to recover damages and rendering all of the victimizers and enablers effectively judgment proof.

## FORMER EMPLOYEES OF TWC ARE
## PENALIZED BY THE PROPOSED AGREEMENT

Despite not representing a *single* individual who was an employee of TWC or representing a *single* person who has claims arising under the NYHRL and NYCHRL, the "class" counsel seeks to bind victims of employment discrimination to the putative "class" settlement.

TWC had coverage for employment practices coverage for every year that Ms. Canosa was employed by TWC and yet "class counsel" seeks to absolve those entities who have millions of dollars of obligations under the policies issued to TWC for a fraction of their obligations under the policies that TWC paid premiums for.

Ms. Canosa is the *only other* former employee of TWC other than Sandeep Rehal who has filed a lawsuit against TWC. Ms. Canosa's claims include those arising under the New York Human Rights Law and New York City Human Rights Law for sexual discrimination related to her employment with TWC. The claims were sustained by Judge Englemayer as to TWC and HW.

Despite not representing *any* former employee survivors, "class counsel" is seeking to absolve the employment practices insurance carriers for a fraction of their liabilities in order to obtain a settlement for individuals whose claims would not be entitled to coverage under the policies under any circumstances.  Such a result is unjust and unfair and adversely effects Ms. Canosa as one of the only individual plaintiffs in these litigations who have claims that would trigger employment practices coverage.

Ms. Canosa has already defeated motions to dismiss leveled by The Weinstein Company and Harvey Weinstein, and her case is already in the thick of the discovery phase. Yet, if this proposed settlement comes to pass, the Weinstein Company will apparently be automatically dismissed from her case and the employment insurance carrier will be similarly released from its obligations of its policies with TWC. The proposed settlement agreement provides on page 19 (emphasis added):

> Alternatively, if a Non-Settling Plaintiff votes to reject the Chapter 11 Plan, does not vote on the Chapter 11 Plan, or fails to file a proof of claim, pursuant to the provisions of the Chapter 11 Plan, **all Sexual Misconduct Claims held by the applicable Non-Settling Plaintiff shall be conclusively, absolutely, unconditionally, irrevocably, and forever discharged and released against all Released Parties other than Harvey Weinstein**, including

any Sexual Misconduct Claims against all Released Parties other than
Harvey Weinstein that are revived or reinstated on appeal. **In full
satisfaction of their Sexual Misconduct Claims and in consideration for this
release, each Non-Settling Plaintiff shall receive $25,000** from the
Segregated Defense Fund.

In other words, even though Ms. Canosa has not agreed to anything with anyone, she will
be forced, against her will, to take $25,000.00 in full satisfaction of her claims against The
Weinstein Company. She cannot decide to reject this paltry offer, she must take it, and she must
accept that she cannot sue The Weinstein Company anymore despite the fact that she has sustained
claims against TWC for which there is applicable employment practices coverage available that
would fairly compensate her for her damages. She is given no choice, all because this settlement
that she did not agree is to be forced on her.

This provision defies legal logic. The non-settling plaintiffs have claims, they have
appellate rights and they have their own attorneys. Without a shred of legal authority, "class"
counsel has apparently negotiated a release on their behalf for claims that they have if they are
successful in exercising their rights. This must lead to rejection of even *preliminary* approval of a
class settlement, as Ms. Canosa has chosen to opt out of the class. Alvarez v. Schnipper Restaurants
LLC, No. 16 CIV. 5779 (ER), 2019 WL 5682633, at *3 (S.D.N.Y. Nov. 1, 2019) ("Here, the Court
finds that probable cause does not exist to hold a full-scale hearing as to the fairness of the
Settlement Agreement for four reasons. First, Alvarez's release is far too broad and goes well
beyond the claims at issue in this litigation.")

**NON-SETTLING PLAINTIFFS ARE INTENTIONALLY PENALIZED
FOR NOT AGREEING TO THE CLASS SETTLEMENT**

Had Ms. Canosa agreed to this settlement she would have received $750,000.00 in
settlement of her claims. Her refusal to accept this settlement has resulted in "class" counsel
negotiating an agreement without her consent, which penalizes her for her refusal, despite the fact

that she is one of the only Plaintiffs who has sustained employment claims which would trigger employment practices insurance coverage.

If this plan is approved, this proposal punishes Ms. Canosa and all other individual plaintiff's for rejecting the offers of "class" counsel if she ends up agreeing to the Chapter 11 Plan. If she now accepts the agreement, she will be penalized $600,000.00 for rejecting the plan as a non-settling Plaintiff. Page 19 states:

> If a Non-Settling Plaintiff accepts the Chapter 11 Plan, such Non-Settling Plaintiff shall receive $150,000 from the Segregated Defense Fund in full satisfaction, discharge, and release of any and all Sexual Misconduct Claims held by such Non-Settling Plaintiff.

This is nothing but a punitive provision made in retaliation for Ms. Canosa and the other non-settling plaintiffs "making trouble" by not agreeing to a settlement that "class" counsel and the NY Attorney General's office thought she should take. Guoliang Ma v. Harmless Harvest, Inc., No. 16CV07102JMASIL, 2018 WL 1702740, at *5 (E.D.N.Y. Mar. 31, 2018) ("In addition to the disproportionate allocation of the settlement, these provisions may constitute "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 947 (9th Cir. 2011)").

All of these harsh terms for Ms. Canosa and other non-settling plaintiffs serve only as bargaining chips – to make the "class" action attorneys fee bigger. If not, why would Ms. Canosa and others have to suffer these consequences just for wanting to continue their case? The Court should look at these terms, and reject this proposed settlement outright. Martens v. Smith Barney, Inc., 181 F.R.D. 243, 262 (S.D.N.Y. 1998)("The court making this evaluation has a "fiduciary" duty to the non-representative class members who were not party to the settlement agreement, *Grant v. Bethlehem Steel Corp.,* 823 F.2d 20, 23 (2d Cir.1987), because "[i]nherent in

any class action is the potential for conflicting interests among the class representatives, class counsel, and absent class members." *Maywalt v. Parker & Parsley Petroleum Co.,* 67 F.3d 1072, 1077 (2d Cir. 1995)."

### NEITHER HARVEY OR ROBERT WEINSTEIN ARE CONTRIBUTING TO THE SETTLEMENT FUND

Recognizing that it would be offensive to the Court that neither Harvey or Robert Weinstein are contributing a cent to compensate survivors, "class" counsel states in their motion that the $18,875,000 settlement funds are coming from "Defendants or their insurance companies."

This is simply not true and a clear attempt to mislead the Court. "Class" counsel at Dkt. # 333-5 has attached a copy of "The Weinstein Company Bankruptcy Global Settlement Agreement." The Bankruptcy Global Settlement agreement indicates that the "Settlement Amount" on page 11 to mean $46,786,000, *is* by TWC's *insurers*, not by any individual.

"The ability of the defendants to withstand a greater judgment." Weighs in favor of rejecting this "deal". Furthermore, there has been no disclosure as to what insurance company is contributing what amounts to the settlement. The "Star Chamber" like manner in which "class" counsel and the carriers have negotiated this agreement and kept the interested parties in the dark indicates that this is an agreement that must be rejected.

### HARVEY WEINSTEIN AND HIS ENABLERS WILL HAVE THEIR ATTORNEYS FEES PAID AT THE EXPENSE OF THE SURVIVORS

Another shocking term that has been negotiated by "class" counsel is one which offends the sensibilities of those who value a just result. Buried in the bankruptcy settlement agreement is a term by which attorney's fees that Harvey and Robert Weinstein and all of the directors have incurred defending against the claims of the survivors will be paid out of insurance proceeds that

would otherwise go to the survivors. This amount totals $12,216,000. and comes directly from the pockets of the survivors.

The amounts Harvey Weinstein and the directors will get individually is not clear. However, what is clear, is that the world's most notorious serial sex abuser and his enablers will receive $12,216,000. for attorney's fees incurred defending against the claims of the survivors.

It is truly appalling that a "class" action attorney and the Attorney General of the State of New York would be bragging about an agreement that puts more money into the pockets of Harvey Weinstein than any one of his victims. This outcome can only be termed as a sad farce of justice.

Any one of the wealthy directors had the ability and power to stop Harvey Weinstein's rampages against women. However, not one of them bothered to do anything until they were finally forced to due to the courage of a few survivors like Ms. Canosa, who spearheaded the charge for justice and finally led others to have the bravery to finally say "me too."

The directors should be ashamed that they would take a penny from the survivors who will have to live with the consequences of their indifference for the remainder of their lives, while the directors will be free to move on with their lives of luxury and privilege.

It is truly sad that in decades long history of abuse predicated on fame and power at the expense of the "little people" that the rich and powerful will once more triumph at their expense and be rewarded for their indifference to the suffering of others.

## THE MYSTERIOUS LIQUIDATION TRUST SETTLEMENT PAYMENT OF $7,295,000

Additionally, there is a curious payment of $7,295,000 in page 11 of the settlement agreement for non-sexual misconduct claims and male sexual misconduct claims, termed a "Liquidation Trust Settlement Payment". It is entirely unclear what qualifies as a "non-sexual

misconduct claim". The only 'guidance' is a statement in page 15 of the settlement agreement that says it "includes, but is not limited to, all Tort Claims that are not Sexual Misconduct Claims".

Of course, that does not rule out that the money will be paid to just about *any person or entity* that claims TWC owes them money. There is similarly no explanation for why such an exorbitant fund is created and apparently paid for by carriers that have workplace claim insurance. From page 17 of the Bankruptcy Plan, "Insurance Companies" are making this payment.

It appears that this $7,295,000 fund may be being used to pay trade creditors of TWC who would not have a single claim to liability insurance proceeds. It would be truly appalling if TWC talent, caterers, production costs and other creditors are being paid using funds that should otherwise be going to survivors.

The survivors are apparently are footing this huge bill from proceeds only they could have sought in litigation. Unfortunately, the amounts paid by each insurer is contained in Schedule 1, which is sealed. "Class" counsel should explain who is actually getting this money. If it is persons or entities that would otherwise not have a claim for sexual misconduct, it is a clear red flag that this agreement is not aboveboard.

## **NUMEROSITY**

"Rule 23(a) first requires that the numerosity of class members must make joinder impracticable. This requirement is presumed to be met where the putative class exceeds 40 members." Ortega v. Uber Techs. Inc., No. 15CV7387NGGJO, 2018 WL 4190799 at 6 (E.D.N.Y. May 4, 2018).

While there are some indications that there are numerous individuals who have been harmed by defendants herein, it is questionable whether any additional women will be coming forward at this point.

Harvey Weinstein has dominated the press for years, in an ongoing fashion. Much of the press has highlighted advancements in the various ongoing civil lawsuits. If there were additional women who intend to come forward, one would imagine that they would have already come forward and retained someone. Even settlement agreements have already been directly reported on in numerous international publications. Will a little additional press in a few publications really cause some people to come forward that have chosen not to for so long, despite being bombarded with so much press already? It therefore remains a real question whether the class members will grow beyond what it already is, and whether it will ultimately exceed 40 members.

In this litigation, the proposed class includes 10 survivors. One of the survivors, Zoe Brock has objected to the settlement. Accordingly, there are 9 survivors who support this settlement. In opposition there are around 12 survivors including Ms. Canosa who object to the proposed settlement.

Effectively, the proposed class consists of a handful of survivors who have limited claims, controlling the destiny of aa almost equal number of non-settling survivors some with much better claims. This does not indicate anything like a collective agreement with a few disgruntled outliers. Nor does this pass the numerosity requirement to even consider certifying this as a class.

## COMMONALITY

""Rule 23(a)(2) requires a showing of "questions of law or fact common to the class." … class certification requires not only "common questions," but "the capacity of a class wide proceeding to generate common *answers* apt to drive the resolution of the litigation."" In re Scotts EZ Seed Litig., 304 F.R.D. 397, 405 (S.D.N.Y. 2015). There can be little in terms of common answers as the facts of each case differ. Some survivors were subjected to discriminatory conduct alone, some survived vicious physical assaults. All the circumstances are different in each case

including different levels of abuse, different circumstances, different locations and different countries. Therefore, application of the law to the facts remains an individualized matter not suited for a class certification.

## TYPICALITY

"Rule 23(a)(3) requires "only that the disputed issues of law or fact occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class." Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co., 301 F.R.D. 116, 132 (S.D.N.Y.2014)." In re Scotts EZ Seed Litig., 304 F.R.D. 397, 406 (S.D.N.Y. 2015).

Here, typicality is lacking, as there are different types of abuses that were sustained by various plaintiffs. Some were coworkers who were subjected to an ongoing pattern of abuse, some had a single but horrific incident, etc. There are different types of abuses here. By contrast, the cases cited by the class' proponent regard instances where everyone sustained the same type of abuse, such as in a school health clinic. Here, by contrast, different women had different types of abuse, different numbers of abuses, different circumstances, in different places. Not all cases are alike.

Were this to go to a Special Master for determination, there would be a major problem: how to compensate someone who sustained many times worse abuses than someone else. Additionally, cases that are in the statute of limitations will have to be compared with cases that would be dismissed if they went to Court. Some instances would have to be interpreted considering foreign laws where the instance took place, or different states. There are so many factors, and that is why there is no typicality.

## **ADEQUACY**

"Class members must not have interests that are "antagonistic" to one another." In re Drexel Burnham Lambert Grp., Inc., 960 F.2d 285, 291 (2d Cir. 1992). Here, Canosa's interests are indeed antagonistic, as she alleges several sexual assaults which were timely filed, as well as workplace causes of action against The Weinstein Company as she worked with Harvey Weinstein. As such, she would have entitlement to much more money than many other individuals. Canosa therefore has no interest in capping her damages, and certainly no interest in allowing The Weinstein Company to be let off the hook.

In contrast, "class" counsel represents plaintiffs with no viable claims against the Company, or who did not work for the company, or have untimely claims, have little interest in making sure the corporate and employment insurance policies remain in effect for those that opt out, and are only interested in *any* settlement. They are proposing to ram this settlement through at all costs.

The Court has already cautioned "class" counsel that the instant matter may not be appropriate for certification. At a hearing on September 12, 2018, the Court noted "But the individual situations it seems to me are going to predominant over the class issues. I am not clear that a class action is suitable" (ECF 128, p. 49).

Indeed, the Court remarked that "class" counsel is in a position antagonistic to the individual plaintiffs: "In the class action I would work toward some kind of global settlement, which will probably involve all of the attorneys. But there is a question of how to divide that among each of the plaintiffs … You would have a serious conflict of interest in that regard … The problem is that you are working on some perception of adequacy in a class settlement without allowing each individual to prove a case" (ECF 128, p. 51-52).

24

The Court noted that when cases have substantial individual value, they are not necessarily appropriate for a class action: "I am not sure you can do this in this case. If these plaintiffs win, they are going to -- you are alleging that they will get a million dollars each. I don't know if they will win a million dollars each or close to it. I don't know if they will win a million dollars each, but those numbers are big enough to have individual attorneys" (ECF 128, p. 53). Here, the proposed settlement will value cases far below a million dollars, even though Canosa believes that her case has significantly greater value.

One has to ask: what is the benefit here? Why must there be a settlement of such a small magnitude when there are significant employment practices insurance policies that would cover Ms. Canosa' workplace human rights claims? The Weinstein Company is gone, and there are no jobs being saved by forcing this through and reaching a conclusion to this bankruptcy. All it does is wrap up a bankruptcy of a company that will have nothing left but a former forever-tarnished name. Who is benefitting from settling claims for pennies on the Dollar? Only the attorneys that have assumed the lead and wish to be paid massive fees because they 'made the settlement happen' and insurance companies. There is no adequacy here since the leaders of this settlement have an antagonistic position towards Ms. Canosa and others with viable claims that stand in their way.

One must wonder: why does this settlement so viciously punish non-settling plaintiffs like Ms. Canosa? It appears clear: because she has been in the way of the attorneys looking for a payday. These attorneys have shown their readiness to dump Ms. Canosa's claims, dismiss her defendants and pay her assailant's continuing attorney's fees – all so that this settlement could be agreed to by the carriers and defendants. Such harsh terms in a proposed settlement directly indicate just how inadequate proposed class counsel is in looking out for non-settling plaintiff's interests. The adequacy prong fails miserably.

## **CONCLUSION**

The Weinstein Case has led to dramatic changes in our society and recognition of the way some women have been so cruelly treated in our society. These changes for the better are long overdue. To permit the conclusion of this groundbreaking case to be a settlement agreement which punishes courageous survivors so a law firm can make money would simply be wrong. The brave survivors deserve far more respect and justice than they have been shown by "class" counsel, particularly those who will not be bullied into an unfair settlement.

A global settlement would be a good resolution, including one that distinguishes between employee survivors and non-employee survivors. However, this agreement is so fatally flawed and punitive that the Court should reject it out of hand as an inequitable and punitive result for this groundbreaking litigation.

Dated: July 13, 2020
       New York, NY

RHEINGOLD GIUFFRA RUFFO & PLOTKIN LLP
Attorneys for Objector Alexandra Canosa

_____
By:     Thomas P. Giuffra
        Jeremy A. Hellman
551 Fifth Avenue, 29th Floor
New York, NY 10176
Tel: (212) 684-1880
Fax: (212) 689-8156
tgiuffra@rheingoldlaw.com

*Canosa v. Weinstein, 18 Civ. 4115 (PAE)*