**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
LOUISETTE GEISS *et al.*, individually and on behalf of all
others similarly situated,

                                     Plaintiffs,                    Civil Action No. 17-cv-09554 (AKH)

         v.

THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,

                                    Defendants.
-------------------------------------------------------------------X
JILL DOE, individually and on behalf of all others similarly
situated,

                                     Plaintiffs,                    Civil Action No. 17-cv-3430 (AKH)

         v.

THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,

                                    Defendants.
-------------------------------------------------------------------X

## OBJECTIONS TO PRELIMINARY APPROVAL
## OF THE PROPOSED CLASS SETTLEMENT

**MERSON LAW, PLLC**

Jordan K. Merson

*Attorneys for Objectors Jane Doe I, Jane
Doe II, Jane Doe III and Jane Doe IV*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………………...ii

PRELIMINARY STATEMENT…………….………………………………….........1

FACTS FOR THIS MOTION/OBJECTORS' STATEMENT OF INTEREST…………..3

THE PROPOSED SETTLEMENT AGREEMENT…………………………………...5

LEGAL ARGUMENT…………………………………………………………………7

    I.      STANDARD FOR COURT APPROVAL OF A PROPOSED SETTLEMENT……………………………………………………...........7

    II.     THE PROPOSED SETTLEMENT SHOULD NOT BE APPROVED BECAUSE IT IS GROSSLY UNFAIR, UNREASONABLE AND INADEQUATE TO THE SEXUAL ABUSE VICTIMS OF HARVEY WEINSTEIN……………………………………………………….....10

    III.    THE PROPOSED SETTLEMENT SHOULD NOT BE APPROVED BECAUSE IT VIOLATES THE LAW OF THE SUPREME COURT AND NEW YORK LAW…………......................................................………...14

    IV.    THE PROPOSED SETTLEMENT ALSO SHOULD NOT BE APPROVED BECAUSE IT IS PREMATURE AND REQUIRES DISCOVERY TO DETERMINE ITS ADEQUACY…………………….................................. 17

CONCLUSION………………………………………………………………..21

## **TABLE OF AUTHORITIES**

### **Cases**

Amchem Products, Inc. v. Windsor,
*521 U.S. 591 (1997)* ………………………………………………………………… 20

*Baffa v. Donaldson*,
222 F.3d 52 (2d Cir. 2000) ………………………………………………………....19

*Bailey v. Patterson*,
369 U.S. 31 (1962) ………………………………………………………………....20

*Bernstein v. 655 Realty Co., Goodman Mgmt. Co.*,
1985 WL 351193 (N.Y. Sup.) …………………………………………………….....12

*Cabrera v. New York Apple Tours, Inc.*,
N.Y. County Index No. 109513/1998 …………………………………………….....12

*Chateau de Ville Prod., Inc. v. Tams–Witmark Music Library, Inc.*,
586 F.2d 962 (2d Cir.1978) ……………………………………………………….....17

*Chi v. Univ. of S. California*,
No. 2:18 Civ. 04258, 2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) ……………………………….......11

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir.1974) ……………………………………………………...........9

*Doe v. City of Harvey*,
No. 12 CV 1094, 2014 WL 4724381 (E.D. Ill. Sept. 22, 2014) ……………………………….....21

*Comcast Corp. v. Behrend*,
133 S.Ct. 1426 (2013) …………………………………………………………….....20

*Cotter v. Lyft, Inc.*,
193 F. Supp. 3d 1030 (N.D. Cal. 2016) ………………………………………….....8, 9

*County of Suffolk v. Long Island Lighting*,
907 F.2d 1295 (2d Cir.1990) ……………………………………………………...7, 8

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) …………………………………………….........7, 8, 17

*Denney v. Deutsche Bank AG*,
443 F.3d 253 (2d Cir. 2006) ……………………………………………….......8, 20

*Garzilli v. Howard Johnson's Motor Lodges, Inc.*,
419 F.Supp. 1210 (E.D.N.Y. 1976) …………………………………………………....12

*Gloria G v. Mount Vernon*,
Westchester Cty. Index No. 70026/2012 …………………………………………………...12

*Hansberry v. Lee*,
311 U.S. 32 (1940) …………………………………………………………………....19

*Hecht v. United Collection Bureau, Inc.*,
691 F.3d 218 (2d Cir. 2012) …………………………………………………………...16

*Industries Shareholder Litigation v. Colt Industries Inc.*,
77 N.Y.2d 185 (N.Y. Ct. App.1991) …………………………………………………….....16

*In re Roundup Prod. Liab. Litig.*,
No. 16 MD 02741 (VC), 2020 WL 3723305 (N.D. Cal. July 6, 2020) ………………...........8, 9, 11

*Irvin v. Harris*,
944 F.3d 63(2d Cir. 2019) ………………………………………………………............19

*Ituah, et al., v. Austin State Hospital, et al.*,
No. A-18-CV-11-RP, 2020 WL 354949 (W.D. Tex. Jan. 3, 2020) ……………………………...20

*Jiannaras v. Alfant*,
27 N.Y.3d 349 (N.Y. Ct. App. 2016) …………………………………………………….....16

*Joel A. v. Giuliani*,
218 F.3d 132 (2d Cir. 2000) …………………………………………………...………..........7

*Malchman v. Davis*,
706 F.2d 426 (2d Cir. 1983) ……………………………………………….……………......7

*Marisol A. v. Giuliani*,
126 F.3d 372 (2d Cir.1997) …………………………………………………………….....19

*McCormack v. Cambria Home Remodeling Corporation*,
1985 WL 352653 (N.Y. Sup.) …………………………………………………………….....12

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,
660 F.2d 9 (2d Cir. 1981) …………………………………………………………....…...20

*Ortiz v. Fibreboard Corp.*,
527 U.S. 815 (1999) ………………………………………………………………….....2, 14, 15

iii

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) ………………………………………………………………………...15

*Plaintiff Restaurant Bartender and Alleged Sexual Abuse Victim v. Defendant Owner of Restaurant,*
2015 NY Jury Verdicts Review LEXIS 151 …………………………………………….....12

*Plummer v. Chemical Bank,*
668 F.2d 654 (2d Cir.1982) …………………………………………………………….....7

*Robertson v. National Basketball Ass'n,*
556 F.2d 682 (2d Cir.1977) …………………………………………………………...........9

*Ross v. Bernhard,*
396 U.S. 531 (1970) …………………………………………………………………...2, 14

*Splawn v. Lextaj Corp.,*
197 A.D.2d 479 (1st Dept. 1993) ……………………………………………………...…13

*Thompson v. Steuben Realty Corp.,*
820 N.Y.S.2d 285 (2nd Dept. 2006) …………………………………………...............12

*Wal-Mart Stores, Inc. v. Dukes,*
564 U.S. 338 (2011) …………………………………………………………..…....16, 19, 20

*Weinberger v. Kendrick,*
698 F.2d 61 (2d Cir.1982) …………….…………………………………………….......8

**Statutes**

Federal Rule of Civil Procedure 23 …………………………………………………….....2

Federal Rule of Civil Procedure 23(a) ……………………………………..........2, 18, 19

Federal Rule of Civil Procedure 23(b) …………………………………………....2, 18

Federal Rule of Civil Procedure 23(e) ………………………………………….....7, 9

Federal Rule of Civil Procedure 53(f) …………………………………………….......10

**Other Authorities**

Hannah Thomas-Peter, Harvey Weinstein 'could have targeted nearly 1,000 women', lawyer says, Sky News (Nov. 2, 2018, 11:30 PM), https://news.sky.com/story/harvey-weinstein-could-have-targeted-nearly-1-000-women-lawyer-says-11543053 ……………………………….............13

Plaintiffs Jane Doe I, Jane Doe II, Jane Doe III and Jane Doe IV, by and through their undersigned counsel, Merson Law, PLLC, submit this memorandum in opposition to the Motion for Preliminary Approval of a Class Action Settlement.

## PRELIMINARY STATEMENT

These four sexual assault victims of Harvey Weinstein strenuously, vociferously and wholly object to the proposed "settlement" for the proposed "class". The proposed settlement can cause women who were raped, forced to perform oral sex or otherwise sexually abused by Harvey Weinstein to receive zero compensation for what they have endured.

Specifically, it is unknown how many women are in this "class", though according to the proponent of this settlement, there could be "a thousand" victims. This would result in five-figure recoveries on average for these women. Such a *de minimis* recovery for women who have been so severely injured and will have lifelong pain and suffering cannot under any assessment, and certainly not a reasonable one, be deemed to be fair nor provide adequate compensation. But it is even worse than that. The proposed settlement explicitly provides that non-governmental liens are not resolved, and each victim is on her own to resolve the liens. (*See* proposed Agreement at pp. 35, 44). As such, after being awarded a small five figure settlement, the entire amount could then be reduced to nothing by a non-governmental lien. This proposed settlement would likely result in some victims of sexual abuse by Harvey Weinstein receiving zero - not one cent -- for all that they have endured.

Even at this preliminary approval stage, the proposed settlement is so flawed that the parties should not expend any further time and resources on it. The proposed settlement is in direct and complete contravention to the law of the Supreme Court of the United States, it violates the Federal Rules of Civil Procedure, New York State law and it would eradicate the constitutional and other

rights of the women who were sexually abused by Harvey Weinstein.  To the extent that the proposed settlement is not rejected in full, at a minimum, to comply with well-established United States law and New York law, it should provide a reasonable opportunity for these women to opt out so that they can have a chance at justice rather than being victimized again by a grossly inadequate settlement forced upon them.

In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Ross v. Bernhard*, 396 U.S. 531 (1970), the Supreme Court of the United States held that plaintiffs could not be forced to accept a settlement without an option to opt out without violating their Seventh Amendment rights.  Here, the proposed settlement explicitly prohibits anyone who was abused after June 30, 2005 from opting out.

Further, this is a "class" settlement without a class.  The proposed settlement fails to satisfy Rule 23's requirements for a multitude of reasons.  The "class" has not been approved, the injuries are different, the harm is different, and many have different statutes of limitations.  For instance, Jane Doe II was raped by Harvey Weinstein when she was a child.  Her case has different damages, causes of action and statutes of limitations from someone who was yelled at or looked at the wrong way by Harvey Weinstein.  Yet, they are all attempted to be lumped together here by class counsel.  The settlement as proposed here would result in those that were allegedly negligent in allowing the sexual abuse to happen to have their lawyers receive more money than the sexual abuse victims!  This is simply unprecedented but establishes how grossly inadequate and unfair this settlement would be for the victims.

Forcing these women to accept such a horrible settlement would re-victimize them all over again.  These four women who were sexually abused by Harvey Weinstein, including one who was raped as a child, respectfully request that the Court not allow the harm that they suffered to be

2

swept under the rug.  These women want, and deserve, an opportunity to chart their own course and seek justice.  The opportunity for these women to get the accountability, responsibility and their day in Court would be taken from them if the proposed settlement is approved.  The Court must not permit these women to be deprived of their constitutional right to trial by jury.  The sexual abuse survivors of Harvey Weinstein helped launch the movement referred to as "me too," but forcing these women to accept an unfair settlement to which many of them do not agree would be a horrible setback and make them, and other sexual abuse survivors in this and other cases, victims all over again.

**FACTS PERTINENT FOR THIS MOTION/OBJECTORS STATEMENT OF INTEREST**

This opposition to the proposed settlement is filed on behalf of four women who were sexually abused by Harvey Weinstein.  The history of Harvey Weinstein using his power, fame and when that failed, physical force, to fulfill his sexual desires is well-known and established.  He was convicted earlier this year of forcing women to perform sex acts with him.  Each of these women were similarly victimized by Harvey Weinstein.

In 1984, plaintiff Jane Doe I was groped, molested and digitally penetrated by Harvey Weinstein after he trapped her in his hotel room and would not let her leave.  (*See* Complaint at ¶¶ 39-41).  After she was able to escape, Weinstein threatened her to never tell anyone about what happened.  (*See* Complaint at ¶¶ 42).  She is still emotionally traumatized from what happened.  (*See* Complaint at ¶¶ 43).

In 1994, plaintiff Jane Doe II was raped by Harvey Weinstein when she was seventeen years old.  (*See* Complaint at ¶¶ 54).  When he was done, Weinstein forced Jane Doe II to give him her driver's license and threatened her and her family with physical force if she told anyone about what he did to her. (*See* Complaint at ¶¶ 58).  Jane Doe II feared for her life and safety and she

was forced to internalize what happened to her. (*See* Complaint at ¶¶ 59). However, she suffers from numerous psychiatric conditions due to the sexual abuse she suffered as a child. (*See* Complaint at ¶¶ 59).

In 2008, plaintiff Jane Doe III was raped by Harvey Weinstein at his Soho apartment.  She was twenty-six years old. (*See* Complaint at ¶¶ 62).  Weinstein similarly threatened Jane Doe III and she has suffered severe emotional distress ever since. (*See* Complaint at ¶¶ 66-67).

In 2013, plaintiff Jane Doe IV was physically forced to perform oral copulation on Harvey Weinstein in his hotel room.  (*See* Complaint at ¶¶ 78-83).  Jane Doe IV is finally no longer in fear of Weinstein and is speaking out, but the sexual abuse that she has suffered has impacted her entire life.  (*See* Complaint at ¶¶ 84).

On May 28, 2020, plaintiffs filed their civil lawsuit against Harvey Weinstein and other defendants in the New York State Supreme Court, New York County case titled, Jane Doe I, et al., v. Harvey Weinstein, et al., Index No. 950110/2020.  The defendants in that case are: Harvey Weinstein, Robert Weinstein, Miramax Holding Corp., Miramax Film NY, LLC f/k/a Miramax Film Corp., The Walt Disney Company, Disney Enterprises, Inc. and Doe Corp. 1-10.

On July 10, 2020, defendants removed the case to federal court.  None of these sexual abuse survivors have had the opportunity to confront their accuser and take discovery from him or anyone else to determine who is responsible for what happened to them.

The civil lawsuit filed by these four women was explicitly addressed in the proposed settlement in paragraph 103, which provided that certain of these women may be members of the Pre-2005 Subclass and others may be members of the Post-2005 Subclass, which upon some unknown "Preliminary Approval" would have "the rights" afforded under the Agreement at issue.  (*See* Proposed Agreement at p. 25).   As such, since the proposed Settlement may impact

the rights of these women, they have standing to object at this preliminary approval stage.  Indeed, the reason that "approval" is required at the preliminary stage is because the Court has an opportunity to consider whether the proposed settlement is fair.  Here, it is clearly not, so in the interests of judicial economy, this flawed settlement should not be pursued any longer.

<u>**THE PROPOSED SETTLEMENT AGREEMENT**</u>

On June 29, 2020, a proposed Settlement Agreement and Release was entered into by purported "settlement class action representatives", the New York Attorney General and certain defendants, including The Weinstein Company, LLC and The Weinstein Company Holdings, LLC, (collectively "TWC"), as well numerous representatives of TWC, including Harvey Weinstein.

The recitals of the proposed agreement include that purported arms-length settlement negotiations occurred over nearly two years and were supervised by Jed Melnick of JAMS.  (*See* Proposed Agreement at p. 5).  The proposed Agreement confirms that it is "subject to any necessary approvals of the District Court and the Bankruptcy Court" and "the Cases and the Sexual Misconduct Claims will be finally and fully compromised, settled and released, and the Cases will be dismissed with prejudice as to all Parties." (*See* Proposed Agreement at p. 6).

The class action settlement amount is $18,875,000.00, "which may be reduced by payments or deductions as provided herein or by District Court order.". (*See* Proposed Agreement at p. 11).

The debtor is defined as The Weinstein Company Holdings, LLC ("TWC").  The Non-debtors include The Walt Disney Company, Miramax, LLC, Miramax Film Corporation and Miramax Film, NY, LLC.  (*See* Proposed Agreement at p. 15).   These entities were included in the definition of "Released Parties."  (*See* Proposed Agreement at p. 18). Certain carve outs were

made for one of class counsel's clients to continue her case against hotels in California.  (*See* Proposed Agreement at p. 15).   Ashley Judd, Wedil David, Alexandra Canosa, Dominique Huett, Rose McGowen and others were excluded from the subclasses.  (*See* Proposed Agreement at p. 19).

"Tier 1 Class Action Claim Award" would be $7,500 to $150,000 subject to unknown Pro Rata Adjustments and "Tier 2 Class Action Claim Award" would be $7,500 up to $750,000 with the same limitations.  (*See* Proposed Agreement at pp. 21-22).

"Tort Claim" is defined as any claim that includes "nonconsensual interactions, harassment, uninvited or unwelcome conduct . . . sexual assault, rape . . . negligence . . . negligent hiring, retention and supervision." (*See* Proposed Agreement at p. 22).

The parties to the proposed Agreement purported to stipulate to class certification "for settlement purposes only" of the Pre-2005 settlement subclass of all women who met with Harvey Weinstein pre-June 30, 2005.  (*See* Proposed Agreement at p. 23).

The parties then purportedly stipulated to "non-opt-out post-2005 Settlement subclass."  (*See* Proposed Agreement at p. 23).   The opt-out deadline for the pre-2005 subclass would be requested from the Court, however, the defendants retain the right "to properly evaluate their right to withdraw from the Settlement in accordance with Paragraph 161." (*See* Proposed Agreement at p. 24).   Pre-2005 Subclass Opt-Outs can cause a defendant's or insurer's right to terminate the proposed settlement presumably thereby causing the whole agreement to be set aside. (*See* Proposed Agreement at p. 47).

The proposed Agreement seeks to have "**Binding** Effect of Settlement Upon Class Action Members . . . except those Pre-2005 Subclass Members who effectively exercise their right to opt out of the Pre-2005 Settlement Subclass." (*See* Proposed Agreement at p. 29; **emphasis**

added).  The proposed Agreement also seeks to preclude the ability to recover from "Non-Released Parties." (*See* Proposed Agreement at p. 29).

From the $18,875,000 paid by the insurers to the settlement fund, the administrative expenses (including claims administration process), taxes, attorneys fees and costs of class action counsel, service awards and amounts to claimants are to be paid.  (*See* Proposed Agreement at p. 30).  In addition, each class action claimant is solely responsible for resolving any and all Liens other than liens of governmental payors. (*See* Proposed Agreement at pp. 35, 44).

From the $18,875,000, the lawyers who engineered this proposed settlement are requesting 25% attorneys' fees, or a total of $4,718,750, plus reimbursement for out-of-pocket expenses. (*See* Proposed Agreement at p. 45).   Class Action Counsel can also request service awards to the Settlement Class Action Representatives. (*See* Proposed Agreement at p. 45).

## **LEGAL ARGUMENT**

### I.    STANDARD FOR COURT APPROVAL OF A PROPOSED SETTLEMENT

Under Federal Rule of Civil Procedure 23, a class action cannot be settled without the approval of the District Court. *See* Fed.R.Civ.P. 23(e); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) The District Court must carefully scrutinize the settlement to ensure its fairness, adequacy and reasonableness. *See County of Suffolk v. Long Island Lighting*, 907 F.2d 1295, 1323 (2d Cir.1990) (citing *Plummer v. Chemical Bank*, 668 F.2d 654, 658 (2d Cir.1982)). The Court must further ensure that the proposed settlement is not a product of collusion. *See Joel A. v. Giuliani*, 218 F.3d 132, 138 (2d Cir.2000). The District Court determines a settlement's fairness by examining the negotiating process leading up to the settlement, i.e. the procedural fairness, as well as the settlement's substantive terms, i.e. the substantive fairness. *See Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983).

A court reviewing a proposed settlement agreement must strictly scrutinize the negotiating process to ensure that the settlement resulted from "arm's-length negotiations and that plaintiffs' counsel have possessed the experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir.1982). The Second Circuit has noted that, "a court-appointed mediator's involvement in pre-certification settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure." *D'Amato v. Deutsche Bank*, 236 F.3d at 85 (2d Cir. 2001) (citing *Long Island Lighting*, 907 F.2d at 1323).

Indeed, the proposed settlement should be scrutinized even at the preliminary approval stage, as recently held *In Re: The Roundup Litigation*, "careful scrutiny must be given to class action settlements at the preliminary approval stage. To the extent the plaintiffs and Monsanto suggest that it would be no big deal to wait until the final approval stage before fully considering objections to this settlement agreement, they are wrong. As explained in *Cotter v. Lyft*:

> [T]he idea that district courts should conduct a more lax inquiry at the preliminary approval stage seems wrong. Certainly nothing in the text of Rule 23 suggests courts should be more forgiving of flaws in a settlement agreement at the preliminary stage than at the final stage, or that courts should merely give settlement agreements a "quick look" at the outset. And lax review makes little practical sense, from anyone's standpoint. If the district court, by taking a quick look rather than a careful one, misses a serious flaw in the settlement, the parties and the court will waste a great deal of money and time notifying class members of the agreement, only to see it rejected in the end, requiring the parties to start over. The same is true if the district court does identify a potentially serious flaw at the preliminary stage but waits until final approval to conclude that it's fatal. What's worse, if a court waits until the final approval stage to thoroughly assess the fairness of the agreement, momentum could have a way of slanting the inquiry, in a manner that deprives the class members of the court protection that Rule 23 demands.
>
> This approach may also inadvertently disadvantage class members. Class members will receive a notice saying that the settlement has received preliminary approval from a federal judge. A layperson may take the court's preliminary approval to imply that she shouldn't really worry about whether the settlement is in her best interest, because surely the court, which is more familiar with the law and the facts

of the case, has already taken care of that. But that is a misimpression if the judge has merely glanced at the settlement or decided to hold off adjudicating a potential problem until final approval.

This is not to suggest that rigorous inquiry at the initial stage should convert final review to a mere formality. Sometimes objectors may bring a flaw to the court's attention at the final stage—one the court didn't catch at the initial stage. Other times, further factual development between the initial and final stages may cause the court to conclude that the agreement is unfair after all. But by scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified, the court allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process.

193 F. Supp. 3d 1030, 1036-37 (N.D. Cal. 2016)."

In determining the substantive fairness of a proposed settlement, there are nine factors, commonly referred to as the *Grinnell Factors*, that should be considered by the Court:

(1) the complexity, expense and likely duration of the litigation, (2) the reaction of the class to the settlement, (3) the stage of the proceedings and the amount of discovery completed, (4) the risks of establishing liability, (5) the risks of establishing damages, (6) the risks of maintaining the class action through the trial, (7) the ability of the defendants to withstand a greater judgment, (8) the range of reasonableness of the settlement fund in light of the best possible recovery, (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation[.]

*Robertson v. National Basketball Ass'n*, 556 F.2d 682, 684 n. 1 (2d Cir.1977) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir.1974)). Federal Rules of Civil Procedure, Rule 23(e) further requires the Court ensure the following: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Here, the

proposed settlement should be rejected by the Court because it is wholly unfair and would result in grossly inadequate compensation to the class members.

## II.   THE PROPOSED SETTLEMENT SHOULD NOT BE APPROVED BECAUSE IT IS GROSSLY UNFAIR, UNREASONABLE AND INADEQUATE TO THE SEXUAL ABUSE VICTIMS OF HARVEY WEINSTEIN

The proposed settlement should not be approved by this Court because it is completely and wholly unfair to the sexual abuse victims of Harvey Weinstein, including these four women. If the proposed settlement is approved, these sexual abuse survivors would lose their rights to confront their abuser and those responsible through discovery and loss of their constitutional rights to trial by jury. It is very important for the emotional, psychological and spiritual healing of sexual abuse survivors to be able to chart their own course and pursue justice as they deem appropriate. That right would be taken from these women here without any say in the process. This alone is grounds for not approving the proposed settlement.

In addition, the compensation proposed for these sexual abuse victims does not come close to be being adequate and the process for awarding compensation is cloaked in secrecy. The Special Master has complete discretion over the settlement allocation. There is simply not enough information to know if the allocation will be fair, but by looking at the numbers, it is clear that the proposed settlement cannot provide adequate compensation. Worse, the Special Master's decisions are not appealable. Under the proposed settlement agreement, each class action claimant will have the right to request that the Special Master reconsider the determination of that class action claimant's claim award, but the Special Master's ultimate determination of a class action claimant's claim award will be final and cannot be appealed. *See* Proposed Settlement at p. 42. While pursuant to Fed. R. Civ. P. 53(f)(3) the parties may agree that the factual determinations of the Special Master will be final and binding, pursuant to Fed. R. Civ. P. 53(f)(4), claimants are

supposed to have the right for the court to review de novo any objection to the Special Master's conclusions of law.  That is another right taken from these women.

Moreover, it is unknown how the Special Master will assign points, as there are eighty points assigned for the type of abuse and twenty points for the harm caused, but that does not provide any of the required specificity as to how the points will be assigned.  The University of Southern California Proposed Settlement was rejected because how the points were to be assigned was not specified and the Special Master's decision was not appealable. *See Chi v. Univ. of S. California*, No. 2:18 Civ. 04258, 2019 WL 3064457 (C.D. Cal. Apr. 18, 2019).  The same result should follow here.

Likewise, *In Re Roundup Litigation*, the Court held that it was inclined to deny the preliminary settlement because it was "skeptical of the propriety and proposed fairness of the settlement," including that:

> Even if it were lawful to delegate this function to the panel, it's unclear how the delegation proposed here would benefit a class of Roundup users who either have cancer but have not yet sued Monsanto or have not yet developed cancer. Thus far, judges have been allowing these cases to go to juries, and juries have been reaching verdicts in favor of the plaintiffs, awarding significant compensatory and punitive damages. Why would a potential class member want to replace a jury trial and the right to seek punitive damages with the process contemplated by the settlement agreement?

> Given the diffuse, contingent, and indeterminate nature of the proposed class, it seems unlikely that most class members would have an opportunity to consider in a meaningful way (if at all) whether it is in their best interest to join the class. There's nothing wrong with certifying a class of people who are candidates to suffer harm in the future when the class is narrow and readily identifiable—for example, NFL players who have not yet developed CTE. In a case like that, it's relatively easy to ensure that the class members are notified and given meaningful chance to consider their options before deciding whether to opt out of the settlement. A class that includes all Roundup users who will get cancer in the future is very different. For example, the idea that a migrant farmworker or someone who is employed part time by a small gardening business would receive proper notification (much less the opportunity to consider their options in a meaningful way) is dubious.

11

The observations by the Court in *Roundup* are more applicable to this case. The indeterminate class members that disfavored settlement approval in *Roundup* is more of an issue here because there is not even a class and it is extraordinarily unlikely that there will be a class in this case. (*See infra* Point IV). In addition, the inquiry posed by the *Roundup* Court: "Why would a potential class member want to replace a jury trial and the right to seek punitive damages with the process contemplated by the settlement agreement?" is even more applicable here. The case law establishes that the appellate and settlement value of women sexually abused and raped is multiple millions of dollars each, or more. *See Gloria G v. Mount Vernon*, Westchester Cty. Index No. 70026/2012 ($28 million verdict for fourteen year-old raped and assaulted one time); *see also Thompson v. Steuben Realty Corp.*, 820 N.Y.S.2d 285 (2nd Dept. 2006) ($4.5 million [$5.7 million in today's dollars] for an adult tenant against property owner resulting from a single sexual assault); *Bernstein v. 655 Realty Co., Goodman Mgmt. Co.*, 1985 WL 351193 (N.Y. Sup.) ($4 million award in 1985 for one-time rape of a woman by an intruder inside of her apartment); *McCormack v. Cambria Home Remodeling Corporation*, 1985 WL 352653 (N.Y. Sup.) ($4 million award for a 30-year-old female who endured emotional distress after she was raped by an intruder in her home); *Garzilli v. Howard Johnson's Motor Lodges, Inc.*, 419 F.Supp. 1210 (E.D.N.Y. 1976) ($2.5 million verdict in 1976 resulting from a one-time sexual assault of a female tenant by an intruder in her hotel room that resulted in her suffering from PTSD and other psychological injuries); *Cabrera v. New York Apple Tours, Inc.* (N.Y. County, Index No. 109513/1998) ($2.5 million verdict in 2003 resulting from a one-time sexual assault of a woman by her supervisor at the office of the company were they worked that resulted in psychological injuries); *Plaintiff Restaurant Bartender and Alleged Sexual Abuse Victim v. Defendant Owner of Restaurant*, 2015 NY Jury Verdicts Review LEXIS 151 ($2.5 million verdict in 2015 resulting from a female employee being

sexually assaulted twice by her supervisor, including once in the back office of the restaurant where they both worked when he cornered her, turned her around and masturbated while he fondled her breasts until he orgasmed); *Splawn v. Lextaj Corp.,* 197 A.D.2d 479 (1st Dept. 1993) ($2 million verdict in 1993 resulting from a one-time sexual assault of a female tenant by an intruder in her hotel room).

Here, it is claimed that plaintiffs will receive between $7,500 and $750,000, which still would be inadequate for some of these women, if true, but the numbers just do not add up to what the agreement indicates.   From the $18,875,000, the lawyers who engineered this proposed settlement are requesting 25% attorneys' fees, or a total of $4,718,750, plus reimbursement for out-of-pocket expenses. (*See* Proposed Agreement at p. 45).   Class Action Counsel can also request service awards to the Settlement Class Action Representatives. (*See* Proposed Agreement at p. 45).   The concern is further exacerbated by costs which could further deplete the fund by another one to two million dollars or more.   That would leave approximately twelve million dollars when class counsel explicitly represented that there may be "a thousand" victims in the class.   *See* Hannah Thomas-Peter, Harvey Weinstein 'could have targeted nearly 1,000 women', lawyer says, Sky News (Nov. 2, 2018, 11:30 PM), https://news.sky.com/story/harvey-weinstein-could-have-targeted-nearly-1-000-women-lawyer-says-11543053. If there are a thousand victims, the average for each sexual abuse survivor would be about $12,000, which is grossly and wholly inadequate for the lifelong harm suffered by these women.   This amount would be further eroded if any of these women had non-governmental liens, which according to the proposed agreement, each woman would be on her own to resolve.   Some of these women may end up with nothing, not one cent, for what they have endured.

13

Even worse, the lawyers of those alleged to be responsible for allowing the abuse to occur would receive $12,216,000 or potentially more than all of the claimants combined.  This is simply unprecedented and clearly establishes that the Proposed Settlement is unfair and should not be approved.  Not only is Harvey Weinstein and others responsible for the abuse receiving a release and not paying any money for it, their legal fees also are being covered and its more than the victims are receiving.

In sum, this settlement cannot be approved.  It would force sexual abuse victims to accept a grossly inadequate settlement while losing their constitutional rights to pursue justice and to trial by jury against the individual that sexually abused them and those responsible for same.

### III. THE PROPOSED SETTLEMENT SHOULD NOT BE APPROVED BECAUSE IT VIOLATES THE LAW OF THE SUPREME COURT AND NEW YORK LAW

The Proposed Settlement Agreement violates United States law and New York law by affirmatively prohibiting post-June 30, 2005 victims from opting out of the settlement agreement. *See* Proposed Agreement at p. 23.  In addition, even for the pre-June 30, 2005 sexual abuse victims of Harvey Weinstein, it appears that the agreement would cause those who opt out to be placed behind $250 million worth of other creditors, instead of having any priority.  In *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) and *Ross v. Bernhard*, 396 U.S. 531 (1970), the Supreme Court of the United States held that plaintiffs could not be forced to accept a settlement without an option to opt out without violating their Seventh Amendment rights. The *Bernhard* Court first noted that, "class action plaintiffs may obtain a jury trial on any legal issues they present." *See Ross v. Bernhard*, 396 U.S. at 541. Twenty-nine years later, the Supreme Court held in *Ortiz* that, "the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members… a

14

mandatory settlement-only class action with legal issues and future claimants compromises their Seventh Amendment rights without their consent." *See Ortiz v. Fibreboard Corp.*, 527 U.S. at 845-46. Because the proposed settlement deprives sexual abuse victims of the rights to trial by jury, it should not be approved.

Worse, if a Post-2005 claimant opts out of the Settlement and wants to pursue a lawsuit individually, the only person not released from liability is Harvey Weinstein himself. The director defendants, Weinstein Company, and insurance companies are *all* released and immune from legal action. This is an incredibly wide-ranging release to all debtors, when the proposed settlement is not saving any jobs or the other considerations that typically favor Chapter 11 relief. There is no greater good here that warrants such an action. The constitutional rights of the victims will be unlawfully taken from them if such a settlement is approved. As stated by the Supreme Court in *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 845–46 (1999):

> First, the certification of a mandatory class followed by settlement of its action for money damages obviously implicates the Seventh Amendment jury trial rights of absent class members. We noted in Ross v. Bernhard, 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970), that since the merger of law and equity in 1938, it has become settled among the lower courts that 'class action plaintiffs may obtain a jury trial on any legal issues they present.' Id., at 541, 90 S.Ct. 733. By its nature, however, a mandatory settlement-only class action with legal issues and future claimants compromises their Seventh Amendment rights without their consent.

The Supreme Court has addressed due process concerns in regard to "no opt out" provisions in class action settlement agreements in other contexts as well. As held by the Court in *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), due process requires opt-out rights in actions "wholly or predominately" for monetary damages. The Court stated unequivocally that, "if the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it **must** provide minimal procedural due process protection." *See Phillips Petroleum Co.,* 472 U.S. at 811. In order to assure that such due process is afforded, "the plaintiff must receive

notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel… *due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court." Id.* at 812. (*emphasis* added); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 363 (2011) ("In the context of a class action predominantly for money damages… that absence of notice and opt out violates due process."); *see Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218, 222 (2d Cir. 2012) (right to opt out under Rule 23 now applies not only when a class action is predominantly for money damages, but also when a claim for money damages is more than 'incidental'").

The New York Court of Appeals similarly held in 2016 that Plaintiffs retain the right to opt out of class actions. In *Jiannaras v. Alfant*, the Court held, "opt-out rights ensure that class members will have the option of pursuing individual actions for redress." *See Jiannaras v. Alfant,* 27 N.Y.3d 349, 352 (N.Y. Ct. App. 2016). *Jiannaras* followed the Court's previous holding in *Colt Industries Shareholder Litigation v. Colt Industries Inc.*, in which the Court of Appeals held that the lower court erred "by seeking to bind [class members] with no ties to New York State to a settlement that purported to extinguish [their] rights to bring an action in damages in another jurisdiction." *See Industries Shareholder Litigation v. Colt Industries Inc.,* 77 N.Y.2d 185, 197 (N.Y. Ct. App.1991). The Court noted that once "the parties presented the court with a settlement that ... required the class members to give up all claims in damages, the nature of the adjudication changed dramatically." *Id.* at 199. The current proposed settlement violates the claimants' due process rights as the class members will not have the option of pursuing individual claims of redress. This mandatory settlement-only class action compromises their Seventh Amendment rights without their consent. Sexual abuse survivors will lose their right to confront their abuser

and those responsible. The agreement is not fair, reasonable nor adequate as is required for the settlement to be approved, and it violates federal law and New York law.

## IV.  THE PROPOSED SETTLEMENT ALSO SHOULD NOT BE APPROVED BECAUSE IT IS PREMATURE AND REQUIRES DISCOVERY TO DETERMINE ITS ADEQUACY

While from the information available at this time, it is clear that the proposed settlement is not fair and should not be approved for various reasons noted above, at minimum, the settlement should not be approved so discovery can proceed. Indeed, discovery is a necessary prerequisite to determining whether class certification is even appropriate. *See Chateau de Ville Prod., Inc. v. Tams–Witmark Music Library, Inc.*, 586 F.2d 962, 966–67 (2d Cir.1978) (remanding after the District Court granted class certification, finding that the court had not permitted adequate discovery on the class certification issues). In reviewing a proposed settlement, a district court must consider the reaction of the class to the settlement, and the stage of the proceedings and the amount of discovery completed. *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 86 (2d Cir. 2001). In the present case, these two factors are intertwined. There are *many* objectors to the proposed settlement, due in part to the fact that discovery has not been conducted for any reasonable person to determine whether this is indeed a fair settlement. Forcing upward of a thousand class members to comply with a settlement they have very little information about is contrary to both fairness and justice. The class does not know the policies, policy limits, how much they are paying on the policy, the settlement master's claims, and the service awards (with no cap). Moreover, there is no information on Harvey Weinstein or the directors' assets and the directors do not appear to be paying into the settlement. If the proposed settlement is approved, plaintiffs will be constrained by a settlement they did not agree to and know little about.

Under the proposed settlement agreement, $5,400,000 will be taken from the settlement amount and distributed by the Global Escrow Agent to accounts specified by each individual plaintiff to satisfy the individual plaintiffs' sexual misconduct claims. *See* Proposed Settlement at p. 19. There is no explanation for how this money will be distributed. Moreover, we cannot identify some of the individuals or what their claims are! For the United Kingdom and Canada cases for example, we know *absolutely nothing*, not even the victims' names!

Discovery also is needed to determine whether this is even a "class" that can settle.  The class has not been approved and is strenuously opposed by defendants.  It would also be opposed by perhaps all plaintiffs other than class counsel. Indeed, this settlement does not appear to have anywhere close to the ninety percent approval from any "class."  The class is wrought with issues as a woman who was raped is grouped in a settlement with someone who thought Harvey Weinstein yelled at or looked at the wrong way.

Indeed, F.R.C.P. R. 23, provides that plaintiffs seeking to certify a class must plead and prove: an adequate class definition, ascertainability, numerosity, commonality, typicality, and adequacy. Fed. R. Civ. Pro. 23(a). The Plaintiffs are required to further plead and prove that at least one of the requirements in Rule 23(b) is satisfied, namely: (1) that separate adjudications will create a risk of inconsistent decisions or decisions that are dispositive of other class members' claims, (2) that injunctive or declaratory relief is appropriate with respect to the class as a whole, or (3) that common questions predominate and a class action is superior to individual actions. Fed. R. Civ. Pro. 23(b). The proposed settlement fails to satisfy either Rule 23(a) or Rule 23(b)'s requirements. *See Denney v. Deutsche Bank AG*, 443 F.3d 253 (2d Cir. 2006). Serious issues are raised here as to whether the requirements of commonality, typicality, and adequacy of representation are met. We maintain that they most certainly and unequivocally are not.

18

Under the <u>Wal-Mart</u> Standard, proof of commonality further requires that the plaintiff demonstrate that the class members have suffered the *same injury*, not merely that they have all suffered a violation of the same provision of law. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). In the present case, commonality is simply not met, as there is too much diversity within the group of Plaintiffs to even allow for a question of law or fact common to the class as a whole. All Plaintiffs did not suffer the same injury. The alleged conduct Weinstein's victims suffered from range from hostile work environment, sexual harassment, and defamation, to the rape of minors. *See* Proposed Settlement p. 25. As such, commonality is not met, and it therefore follows that neither is typicality. Typicality requires that the claims of the class representatives be typical of those of the class, and it is satisfied when *each* class member's claim arises from the *same* course of events and each class member makes similar legal arguments to prove the defendants' liability. *See Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir.1997) (per curiam).

Rule 23(a) further requires that, "representative parties ... fairly and adequately protect the interests of the class." Such a mandate is critical to the fair resolution of a class action, as class actions are an exception to the general rule that "one is not bound by a judgment" in a suit in which he or she is not a named party. *See Irvin v. Harris*, 944 F.3d 63, 70 (2d Cir. 2019) (*quoting Hansberry v. Lee*, 311 U.S. 32, 40 (1940)). "In order to justify a departure from that rule, a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348-49 (2011). Adequacy of representation entails inquiry as to whether (1) plaintiff's interests are antagonistic to the interest of other members of the class; and (2) plaintiff's attorneys are qualified, experienced, and able to conduct the litigation. *See Baffa v. Donaldson*, 222 F.3d 52, 60 (2d Cir. 2000). In the present case, there is no record evidence that the named plaintiffs adequately represent the unnamed plaintiffs

nor is it possible given the broad range of those in this claimed class. *See Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 17 (2d Cir. 1981) (*quoting Bailey v. Patterson*, 369 U.S. 31, 32-33 (1962)).  In fact, from the other submissions before the Court, there appears to be a great deal of dispute concerning this issue.

"Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met. These requirements should not be watered down by virtue of the fact that the settlement is fair or equitable." *See Denney v. Deutsche Bank AG,* 443 F.3d 253 (2d Cir. 2006); *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 592 (1997). The proposed settlement in the present case is neither fair nor equitable, and for the proposed settlement to be approved would entail a watering down of the requirements of Rule 23(a) and 23(b). The proposed settlement would surely not surpass the "rigorous analysis," that a court must apply in evaluating whether Rule 23's requirements are met. *See Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432-33 (2013).  It has already been held repeatedly that sexual harassment victims cannot be part of a class. *See  Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. at 359-60 (agreeing that class certification was improper as the members of the proposed class, "held a multitude of jobs, at different levels of Wal–Mart's hierarchy, for variable lengths of time, in 3,400 stores, sprinkled across 50 states, with a kaleidoscope of supervisors (male and female), subject to a variety of regional policies that all differed ... *They have little in common but their sex and this lawsuit*.""). (emphasis added) (internal citations omitted). Sexual abuse victims have likewise been denied class certification. *See e.g.  Ituah, et al., v. Austin State Hospital, et al.*, No. A-18-CV-11-RP, 2020 WL 354949 (W.D. Tex. Jan. 3, 2020) (federal magistrate judge recommending the denial of class certification of an action brought by patients after a female patient at a state psychiatric hospital was purportedly raped by a male patient, alleging that the hospital failed to make

reasonable accommodations to protect them from sexual assault); *see also Doe v. City of Harvey*, No. 12 CV 1094, 2014 WL 4724381 (E.D. Ill. Sept. 22, 2014) (denying class certification to a group of sexual assault victims who reported their assaults to the City of Harvey and its Police Department). There is not an articulated reason provided to depart from this well-established case law.  There is absolutely no basis whatsoever to believe that a class would be approved here, and it would be improper to hold that there is a class merely for the purposes of this grossly inadequate settlement.

## CONCLUSION

For the foregoing reasons, on behalf of plaintiffs Jane Doe I, Jane Doe II, Jane Doe III and Jane Doe IV, we respectfully request that the Court deny preliminary approval of the proposed settlement and settlement agreement in full.

Dated: July 13, 2020
New York, New York

MERSON LAW, PLLC

By: _____
            *Jordan Merson*

Jordan K. Merson (JM-7939)
950 Third Avenue, 18th Floor
New York, New York 10022
Telephone: (212) 603-9100
jmerson@mersonlaw.com

*Attorneys for the Objectors Jane Doe I,*
*Jane Doe II, Jane Doe III and Jane Doe IV*

21