**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------- X

LOUISETTE GEISS *et al.*, individually and on behalf of all others similarly situated,

                             Plaintiffs,

             v.

THE WEISTEIN COMPANY HOLDINGS, LLC, *et al.*,

                             Defendants.

:    Civil Action No.: 17-cv-09554 (AKH)

JILL DOE, individually and on behalf of all others similarly situated,

                             Plaintiffs,

             v.

THE WEINSTEIN COMPANY HOLDINGS, LLC, *et al.*,

                             Defendants.

:    Civil Action No.: 19-cv-3430 (AKH)

-------------------------------------------------------------------- X

## OBJECTIONS TO PRELIMINARY APPROVAL
## OF THE PROPOSED CLASS SETTLEMENT

**WIGDOR LLP**

Douglas H. Wigdor
Bryan L. Arbeit

**THE LAW OFFICE OF KEVIN MINTZER, P.C.**

Kevin Mintzer

*Attorneys for Objectors Rowena Chiu, Wedil David, Dominique Huett, Zelda Perkins, Kaja Sokola and Tarale Wulff*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... iii

PRELIMINARY STATEMENT ............................................................................................... 1

OBJECTORS' STATEMENT OF INTEREST .......................................................................... 2

ARGUMENT ........................................................................................................................... 5

I. THE PROPOSED CLASS SETTLEMENT DOES NOT MEET THE STANDARD
FOR PRELIMINARY APPROVAL ................................................................................ 5

II. THE PROPOSED CLASS SETTLEMENT IS NOT FAIR, REASONABLE OR
ADEQUATE ................................................................................................................... 6

  A. The Proposed Settlement is Patently Unfair ........................................................... 6

  B. The Inequitable Treatment of the Non-Settling Plaintiffs, the Settling
Individual Plaintiffs and the Class Members Makes the Proposed
Settlement Unreasonable ...................................................................................... 10

    1. Inequitable Treatment of Non-Settling Plaintiffs ..................................... 10

    2. There is Insufficient Information to Assess Whether the Individual
Plaintiffs are being Treated Equitably Compared to Class Members
and Non-Settling Plaintiffs ...................................................................... 13

    3. Inequitable Treatment Between the Pre-2005 and Post-2005
Subclasses ................................................................................................ 14

    4. The Special Master Process Proposed in the Settlement is Flawed
and Inequitable ......................................................................................... 16

    5. The Settlement Does Not Provide Adequate Guidance for the
Disposition of Untimely Claims ............................................................... 18

    6. The Settlement Precludes Recovery for any Claims that Were
Subject to a Release, Regardless of the Circumstances ............................. 19

  C. The Proposed Settlement is Inadequate ................................................................ 19

  D. The Unfair, Inequitable and Inadequate Settlement is the Product of
Inadequate Representation by Class Counsel and the NYOAG .............................. 20

III.    THE PROPOSED CLASSES ARE NOT CERTIFIABLE ...............................................22

    A.    Rule 23(a) Factors of Typicality and Adequacy of Representation Are Not
        Met .....................................................................................................................23

    B.    The Post-2005 Class Cannot Be Certified Under Rule 23(b)(1) ..........................23

        1.    No Evidence That a Limited Fund Exists ..................................................24

        2.    There is No Common Theory of Liability .................................................26

        3.    There is an Inequitable Distribution .........................................................26

    C.    The Pre-2005 Class Cannot be Certified Under Rule 23(b)(3)............................27

IV.    THE COURT SHOULD CONSIDER THESE OBJECTIONS IN
      DETERMINING PRELIMINARY APPROVAL .............................................................28

CONCLUSION..............................................................................................................................32

## TABLE OF AUTHORITIES

<u>**Cases**</u>

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997) ..................................................................................................... 22, 23, 27

*Canosa v. Ziff*,
  No. 18 Civ. 4115 (PAE), 2019 WL 498865 (S.D.N.Y. Jan. 28, 2019) ..................................... 11

*Chi v. Univ. of S. California*,
  No. 2:18 Civ. 04258, 2019 WL 3064457 (C.D. Cal. Apr. 18, 2019) ......................................... 17

*Cotter v. Lyft, Inc.*,
  193 F. Supp. 3d 1030 (N.D. Cal. 2016) ................................................................................... 29

*David v. Weinstein Co. LLC*,
  No. 18 Civ. 5414, 2019 WL 1864073 (S.D.N.Y. Apr. 24, 2019) .............................................. 11

*Doe v. Karadzic*,
  192 F.R.D. 133 (S.D.N.Y. 2000) ......................................................................................... 24, 25

*In re Am. Intern. Group, Inc. Sec. Litig.*,
  689 F.3d 229 (2d Cir. 2012) .......................................................................................... 5, 22, 27

*In re Granada Partnerships Secs. Litig.*,
  803 F. Supp. 1236 (S.D. Tex. 1992) ........................................................................................ 24

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) ................................................................................... 5, 15

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  No. 05 MD 1720, 2020 WL 29781 (E.D.N.Y. Jan. 2, 2020) ..................................................... 29

*In re Roundup Prod. Liab. Litig.*,
  No. 16 MD 02741 (VC), 2020 WL 3723305 (N.D. Cal. July 6, 2020) ...................................... 29

*Ortiz v. Fibreboard Corp.*,
  527 U.S. 815 (1999) ............................................................................................................ *passim*

*Rehal v. Weinstein*,
    No. 151738/2018, 2019 WL 2088435 (N.Y. Sup. Ct. May 13, 2019) ..................................... 22

*Sokola v. Weinstein*,
    No. 20 Civ. 0925 (LJL), 2020 WL 3605578 (S.D.N.Y. July 2, 2020) ..................................... 3

*Trautz v. Weisman*,
    846 F. Supp. 1160 (S.D.N.Y.1994) ............................................................................................. 25

## **Other Authorities**

28 U.S.C. § 1291 .................................................................................................................................. 12

Rule 23 ........................................................................................................................................... 1, 5

Rule 23(a) ............................................................................................................................................ 5

Rule 23(a) and (b) ............................................................................................................................... 6

Rule 23(b) ............................................................................................................................................ 5

Rule 23(e) ............................................................................................................................................ 5

Rule 23(e)(1) ....................................................................................................................................... 6

Rule 23(e)(2); and (ii) ........................................................................................................................ 5

Rowena Chiu, Wedil David, Dominique Huett, Zelda Perkins, Kaja Sokola, and Tarale Wulff (collectively "Objectors"), through their counsel, respectfully submit the following Memorandum of Law in Support of their Objections to the Motion for Preliminary Approval of Class Action Settlement.

## PRELIMINARY STATEMENT

The class settlement, filed in the name of class representatives who deserve better, will provide little relief for most of Harvey Weinstein's victims.  Although the deal speaks about individual awards up to $750,000 and the New York State Attorney General has bragged about a "win" for victims, that is all a cruel hoax.  The truth is that the average award to class members under this proposal is likely to be in the range of $10,000 to $20,000.  The main winners of this deal, if approved, are Harvey Weinstein, Robert Weinstein, and the ultra-wealthy former directors of The Weinstein Company ("TWC"), who will be absolved from liability, contribute *nothing* to the settlement and collectively take in about $15 million from the proposed settlement agreement. That is likely more than the proposed class of survivors will divide amongst each other and, if approved, would result in one of the most one-sided and unfair class settlements in history. Another victor in this settlement, were it to be approved, is Class Counsel, who had no business filing this case as a class action, litigated it into the ground, shut out "uncooperative" plaintiffs from settlement negotiations, and now look to collect about $5 million in attorneys' fees.  The final winners in this debacle are the insurers that would get complete releases while paying pennies on the dollar from the insurance policies they issued to Harvey Weinstein's companies.

The Court should say no to this. A lengthy hearing and extended review are not needed for the Court to determine that this proposed settlement is not fair, reasonable or adequate or that the proposed classes cannot be certified under Federal Rule of Civil Procedure ("Rule") 23.  Paying

the wrongdoers millions of dollars more than the victims is wrong.  Stripping away the rights of rape victims who want to continue their cases is wrong.  Binding survivors to an inadequate and opaque deal is wrong.  Allowing Class Counsel to capitulate to an unreasonable settlement because of the inadequacies in their case and so they can collect fees from a common fund is wrong.  Certifying a class that manifestly does not meet the required certification standards because it would neatly wrap up a corporate bankruptcy is wrong.

This is not an ordinary case. The Weinstein precedent will be widely noted.  Approval of this proposed settlement will signal that survivors of sexual abuse are merely corporate liabilities and will not receive fair treatment in our civil justice system.  No case can ever compare to the 9/11 settlement that this Court initially rejected but ultimately approved after it provided significantly more relief for the victims.  But as Your Honor said then, in words that are applicable today: "There has to be additional negotiations to come up with a better and fair settlement. I will not preside over a settlement based on fear or ignorance."[1]

For these reasons and those explained below, this Court should deny the motion for preliminary approval.

## OBJECTORS' STATEMENT OF INTEREST

The Objectors are survivors of Harvey Weinstein's decades-long pattern of rape, sexual assault, and sexual harassment.  Three of the Objectors, Ms. David, Ms. Huett, and Ms. Sokola have pending cases against Harvey Weinstein and/or his former companies and associated individuals.  Ms. Huett's case was the first filed civil action against Weinstein and she has been at

---

[1]      Mireya Navarro, *Federal Judge Orders More Talks on 9/11 Deal*, N.Y. Times, March 19, 2010 (available at https://www.nytimes.com/2010/03/20/nyregion/20zero.html) (last accessed July 13, 2020).

the forefront of the #MeToo movement.  Ms. Chiu and Ms. Perkins have likewise been at the forefront of the #MeToo movement and the disclosure of Weinstein's predatory behavior.  Ms. Wulff testified as a *Molineux* witness in the New York criminal trial that resulted in Weinstein's criminal conviction.  Each of the Objectors would have their legal rights significantly affected by the proposed settlement before the Court and each adamantly opposes the proposed settlement.  The following is a brief description of the Objectors' interest in this matter.

**<u>Objectors with Pending Cases</u>**

Wedil David: Ms. David, an actress, is the plaintiff in *David v. Weinstein Co. LLC et al.*, No. 18 Civ. 5414 (RA) (KNF) (S.D.N.Y.).  Ms. David has asserted common law battery and negligence claims, as well as federal sex trafficking claims, arising from Harvey Weinstein's rape of her in 2016.  Ms. David has been designated under the proposed settlement as a Non-Settling Plaintiff, although, as explained below, her ability to pursue her claims will be substantially impacted if the settlement is approved.

Dominique Huett: Ms. Huett, an actress and model, is the plaintiff in *Huett v. Weinstein Co. LLC et al.*, No. 2:18 Civ. 06012 (SVW) (MRW) (C.D. Cal.).  Ms. Huett has asserted federal sex trafficking claims against Harvey Weinstein and his company arising from Harvey Weinstein's sexual assault of her in 2010.  Ms. Huett was the first of Harvey Weinstein's victims to file a complaint and her claims are particularly important because she helped pave the way for other survivors to come forward.

Kaja Sokola: Ms. Sokola, a former model, is the plaintiff in *Sokola v. Weinstein et al.*, Index No. 950250/2019 (Sup. Ct. N.Y. Cty.), which the Honorable Lewis J. Liman recently remanded to state court.  *Sokola v. Weinstein*, No. 20 Civ. 0925 (LJL), 2020 WL 3605578 (S.D.N.Y. July 2, 2020).  Ms. Sokola was sexually assaulted and subjected to sexual abuse by

Harvey Weinstein as early as 2002 when she was 16 years old.  Ms. Sokola was originally a named Plaintiff in the *Geiss* action before the Court, but she decided to hire separate counsel and file an individual action because she disagreed with the proposed settlement.

**Objectors without Pending Cases**

Rowena Chiu: Ms. Chiu was a former assistant of Harvey Weinstein in 1998.  Weinstein sexually harassed Ms. Chiu and attempted to rape her.  Under duress, she signed a settlement agreement and non-disclosure agreement with Harvey Weinstein and his companies in October 1998. Ms. Chiu has written and spoken publicly about her abuse and the dangers of non-disclosure agreements.  *See* Rowena Chiu, *Harvey Weinstein Told Me He Likes Chinese Girls*, N.Y. Times, Oct. 5, 2019 (available at:  https://www.nytimes.com/2019/10/05/opinion/sunday/harvey-weinstein-rowena-chiu.html) (last accessed July 13, 2020).

Zelda Perkins: Ms. Perkins was a former assistant of Harvey Weinstein in the 1990s and was subject to chronic and pervasive sexual harassment by him.  Under duress, along with Ms. Chiu, Ms. Perkins signed a settlement agreement and non-disclosure agreement with Harvey Weinstein and his companies in October 1998.  Notwithstanding that agreement, Ms. Perkins was one of the first Weinstein survivors to speak on the record about her experiences with Mr. Weinstein and his companies.  *See, e.g.*, Matthew Garrahan, *Harvey Weinstein: how lawyers kept a lid on sexual harassment claims*, Financial Times, Oct. 23, 2017 (available at https://www.ft.com/content/1dc8a8ae-b7e0-11e7-8c12-5661783e5589) (last accessed July 12, 2020). Since then, Ms. Perkins has twice testified before committees of British Parliament concerning her experiences with Mr. Weinstein and how she was coerced into signing a non-disclosure agreement.  One of the committees found that the settlement agreement could be seen as "perverting the course of justice" and a separate disciplinary proceeding has been commenced

against the solicitors who counseled Ms. Perkins in connection with the agreement.  Ms. Perkins

has been writing and speaking for the last two and a half years concerning the systemic abuse of

non-disclosure agreements, particularly in the legal sector, to protect perpetrators of crimes.

<u>Tarale Wulff</u>: Ms. Wulff, a model, was raped by Harvey Weinstein in 2005.  Ms. Wulff

was one of six survivors to testify at Weinstein's criminal trial in New York State Supreme Court

that resulted in Weinstein's conviction and 23-year prison sentence.  She has not filed a civil claim,

but she would, if she chooses to participate, be a member of the class whose rights are curtailed by

the proposed settlement.

## **ARGUMENT**

## I.     **THE PROPOSED CLASS SETTLEMENT DOES NOT MEET THE STANDARD FOR PRELIMINARY APPROVAL**

Rule 23(e) requires a district court to determine before notice is given to a prospective class

that issuing such "notice is justified" based on a finding "that the court will likely be able to: (i)

approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on

the proposal." 23(e)(1)(B); *see In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692

(S.D.N.Y. 2019).  As such, a district court must consider at the preliminary approval stage whether

the proposed settlement is likely to meet the standard for final approval of being "fair, reasonable,

and adequate."  Rule 23(e)(2).  The proposed class settlement must also meet the prerequisites of

Rule 23(a) and fall within one of the categories of class actions enumerated in Rule 23(b).  *See*

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 858 (1999) ("Rule 23 requires protections under

subdivisions (a) and (b) against inequity and potential inequity at the precertification stage, quite

independently of the required determination at post-certification fairness review under subdivision

(e) that any settlement is fair in an overriding sense."); *In re Am. Intern. Group, Inc. Sec. Litig.*,

689 F.3d 229, 238 (2d Cir. 2012) ("Before approving a class settlement agreement, a district court

must first determine whether the requirements for class certification in Rule 23(a) and (b) have been satisfied.").

As explained below, this Court should deny preliminary approval of the proposed class settlement because it falls far short of meeting the standard of being fair, reasonable and adequate. The proposed classes also cannot be certified under Rule 23(a) and (b) standards.

## II.   THE PROPOSED CLASS SETTLEMENT IS NOT FAIR, REASONABLE OR ADEQUATE

Preliminary approval of the proposed class settlement should be denied since the proposed settlement is not fair, reasonable or adequate and lacks transparency about critical aspects of the settlement. *See* 2018 Advisory Notes to Rule 23(e)(1) ("The decision to give notice of a proposed settlement to the class is an important event.  It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object.").

### A.   The Proposed Settlement is Patently Unfair

The structure of the proposed class settlement and related global settlement of the bankruptcy proceeding is patently unfair because it results in the alleged wrongdoers receiving significantly *more* money than the proposed class of victims.  This is unprecedented and in and of itself should be grounds for swiftly rejecting the proposed class settlement.  Specifically, the agreements provide that the "Former Representatives" – consisting of the TWC Board of Directors, *including* Harvey and Robert Weinstein, along with other executives and director who are alleged to have facilitated Harvey Weinstein's sexual misconduct – are to receive an outrageous $12,216,000 to reimburse them for legal expenses.  Weinstein Global Settlement ("WGS"), Dkt. No. 333-5 at 12.  Harvey and Robert Weinstein also receive another $1,500,000 for a "Segregated Defense Fund" to defend against the claims of the Non-Settling Plaintiffs – namely, Wedil David,

Dominique Huett, and Alexandra Canosa. *Id.* at 10, 12.   Finally, another $1,500,000 is being taken away from the victims and given to Harvey Weinstein, Robert Weinstein, and the other Former Representatives to defend against contract and commercial cases. *Id.* at 13.   The $15,216,000 being paid directly to the alleged wrongdoers (many of whom are billionaires and who are being represented by international law firms with revenues in the billions) is, according to our calculations below,  more than ***$4 million*** than what would be paid to the proposed class of women who have been victimized by Harvey Weinstein.

Under the proposed settlement, the proposed class is designated to receive compensation from a fund of $18,875,000.  Weinstein Class Settlement Agreement ("CSA"), Dkt. No. 333-23 at ¶ 110.  To receive this amount, the proposed class representatives, individually and on behalf of the class, are required to disclaim any interest in the $7,295,000 that is being diverted from the settlement to the TWC estate to cover administrative and general unsecured claims.  CSA ¶¶ 113-14.   According to publicly available records of TWC's bankruptcy, among those unsecured creditors are Harvey and Robert Weinstein, James Dolan other Former Representatives on TWC's board; major corporations including America Media, the BBC, CBS, Dow Jones & Company, Fox, NBC, the NFL Network, the New York Post, the New York Times, the Screen Actors Guild and The Walt Disney Company; celebrities such as Bradley Cooper, John Cusack and Meryl Streep; and some of the largest law firms in the United States, including Debevoise & Plimpton, Seyfarth Shaw and Boies Schiller Flexner.[2]  It is unclear why these persons and entities should be paid a dime while sexual assault survivors are asked to accept modest awards.

---

[2]      David Boies of Boies Schiller Flexner, which seeks further compensation from the bankruptcy estate, allegedly helped Harvey Weinstein conceal his abusive power and signed a contract with a private investigation organization, Black Cube, to track and provide so-called "intelligence" about Weinstein survivors.

Unlike the guaranteed $15 million going to the alleged wrongdoers, the proposed class is paid *after* attorneys' fees, service awards, litigation costs, and settlement administration expenses are deducted from the settlement. *Id.* ¶ 116.

First, up to 25% of the fund – or $4,718,750 – will go to prospective Class Counsel, including Additional Class Counsel and Subclass Counsel. *Id.* ¶ 146. Former Class Counsel is also entitled to apply for a separate fee award in an unspecified amount. *Id.* The Class Representatives may also seek service awards in an unspecified amount. *Id.* ¶ 147.

Second, litigation costs are to be reimbursed from the settlement fund. The agreement does not disclose the litigation costs to date or identify what are considered costs of the litigation, including whether such costs include bankruptcy counsel hired to represent Ms. Geiss in her role as Co-Chair of the Unsecured Creditors Committee in the bankruptcy court, the fees for the 11 in-person mediation sessions with Jed Melnick, or the travel and accommodations for all the different counsel who attended the mediations and court conferences in New York City. These litigation costs are likely to total at least $1 to 2 million. These costs should be the subject of discovery or mandatory disclosures before even preliminary approval is considered.

Finally, the administrative expenses for the settlement process are also deducted from the settlement fund. Administrative expenses are defined broadly to include "the cost of the Class Action Notice Program relating to this Settlement and the costs of administering the Class Action Claims Process, disbursements of consideration to Class Action Claimants and other necessary and reasonable expenses associated with administering the Class Action Settlement, including the compensation of the Special Master, and those working for the Special Master, and including any costs and expenses related to lien resolution services." CSA ¶ 2. The settlement agreement contains no cap on the amount of the administrative expenses and lacks any details about the

estimated expenses. Considering that the agreement admits that the "Special Master's process of adjudicating claims may be somewhat involved," the settlement administration expenses are likely to exceed $2 million. Memorandum of Law in Support of Settlement Class Representatives' Motion for Preliminary Approval ("Class Mem."), Dkt. No. 333-1, at 30.

After attorneys' fees, litigation costs and settlement administrative expenses are deducted from the settlement fund, the proposed class of victims stand to receive payments from the remaining $11,156,250, and very possibly, significantly less.

| PROPOSED CLASS | |
|---|---|
| Settlement Fund | $18,875,000 |
| Attorneys' Fees | $4,718,750 |
| Litigation Costs | $1,000,000 |
| Settlement Costs | $2,000,000 |
| | |
| **TOTAL** | **$11,156,250** |

Thus, the proposed class stands to receive over $4 million less than the guaranteed $15,216,000 being paid to Harvey Weinstein, a convicted rapist, and other alleged billionaire wrongdoers who enabled his sexual misconduct. The class would also receive notably less than the approximately $15 million that TWC has already paid to its bankruptcy counsel, primarily Cravath Swaine & Moore and Richards, Layton & Finger, which have been charging rapacious fees to the TWC estate while dutifully positioning the Weinstein sexual assault survivors to receive as little as possible. Approval of such a settlement would not only be unfair but would be unprecedented. As such, this Court must deny preliminary approval because the proposed class settlement is not fair.

**B.    The Inequitable Treatment of the Non-Settling Plaintiffs, the Settling Individual Plaintiffs and the Class Members Makes the Proposed Settlement Unreasonable**

The proposed settlement allows for the extremely inequitable treatment of Harvey Weinstein's sexual assault survivors.  As discussed below, these inequities include: (1) the involuntary waiver of claims and appellate rights of certain Non-Settling Plaintiffs; (2) the large sum awarded to a collective group of Individual Plaintiffs without any transparency about how their claims compare to those in the class or the amount each of them is receiving; (3) the disparate treatment of the pre-2005 class, which has the right to opt-out, and the post-2005 class, which does not; (4) the process by which a single special master, with hardly any standards or right to appeal, will make awards; (5) the grant to the special master of complete discretion to issue awards to claimants with untimely claims; and (6) disqualifying survivors who previously signed a release from receiving an award for release claims, regardless of the circumstances under which the release was obtained or the amounts paid in settlement, while permitting claims that are unquestionably barred by the relevant statutes of limitations.

### 1.    Inequitable Treatment of Non-Settling Plaintiffs

The proposed settlement is completely inequitable to the three women referred to as Non-Settling Plaintiffs, including objectors Wedil David and Dominique Huett. WGS at 8.  The Non-Settling Plaintiffs each have cases pending in federal court alleging that they were raped or sexually assaulted by Harvey Weinstein.   While the Non-Settling Plaintiffs are nominally "excluded from the settlement class," Class Mem. at 8 n.10, the proposed settlement, if approved, will have devasting consequences for them.  The TWC Global Settlement provides the Non-Settling Plaintiffs with a "choice" of (a) accepting $150,000 in full release of their claims or (b) receiving $25,000 and having all of their claims extinguished against everyone other than Harvey

Weinstein, including TWC and its insurers, Robert Weinstein and all of the former directors of TWC. WGS at 3(c)(i) & (ii). The Non-Settling Plaintiffs had no say in drafting or negotiating this agreement, and there is no rationale offered for the levels of compensation provided to the Non-Settling Plaintiffs.

As a consequence of the settlement, if Ms. David or Ms. Huett do not release all of their claims, which they do not intend to do, they will each lose the right to proceed against TWC or its insurers. Also, they will receive nominal compensation for their claims. Instead, the proposed settlement allocates funds from the TWC's insurance policies to a group of victims, many of whom do not have claims within the statute of limitations, and it leaves no TWC assets for the Non-Settling Plaintiffs, each of whom has timely claims that they wish to pursue. The proposed settlement makes no effort to explain the rationale for this outrageously disparate treatment.

Ms. David, moreover, will also forfeit the right to appeal the dismissal of her claims against Robert Weinstein and the other former directors of the Weinstein Company. The district court dismissed Ms. David's negligent supervision claim against these defendants on the basis that Ms. David did not plead that Harvey Weinstein used the premises or chattels belonging to these individuals – as opposed to the Weinstein Company – to rape her. *See David v. Weinstein Co. LLC*, No. 18 Civ. 5414, 2019 WL 1864073, at *7 (S.D.N.Y. Apr. 24, 2019). Judge Abrams recognized that at least one New York state court decision had reached a contrary result about the application of the premises and chattel element, but the court sided with what it believed was the weight of authority among federal district courts. *Id.*[3] Ms. David and her counsel believe that she

---

[3]     Judge Abrams primarily relied on the case of another Non-Settling Plaintiff, Alexandra Canosa, regarding the premises and chattel element. *David*, 2019 WL 1864073, at *7 (citing *Canosa v. Ziff*, No. 18 Civ. 4115 (PAE), 2019 WL 498865, at *16 (S.D.N.Y. Jan. 28, 2019)). Under the proposed settlement, Ms. Canosa would also lose the right to appeal this decision.

has a strong basis to appeal and overturn this decision, but she has not yet been able to do so because of the final judgment rule, 28 U.S.C. § 1291, which precludes her from appealing the decision in favor of the former directors while she pursues her claims against Harvey Weinstein and TWC.  The global settlement would nevertheless extinguish Ms. David's appeal rights against these former directors, even though they are not personally contributing any funds to the settlement and, as discussed above, they are receiving millions from the settlement.  Ms. David would receive essentially no compensation for forgoing these claims.  This should not be permitted.

To further punish the Non-Settling Plaintiffs for not agreeing to the proposed settlement, Class Counsel, the NYOAG and Defendants have agreed to provide Harvey and Robert Weinstein with $1.5 million to defend against the claims of the Non-Settling Plaintiffs.  WGS at 10 (definition of Segregated Defense Funds) and ¶ 1(B)(iv)(2).  Remarkably, the Global Settlement Agreement recites that this fund is provided to "induce Harvey Weinstein and Robert Weinstein to provide" full releases of the insurance companies "and assume the risk (if any) attendant to the continued prosecution of those cases without the benefit of insurance coverage."  WGS ¶ 1(B)(iv)(2).  But the proposed settlement provides that Robert Weinstein will be released from all liabilities arising from his enabling or negligently allowing Harvey Weinstein's decades of sexual misconduct, without having to contribute any of his funds and while receiving a substantial reimbursement of his attorneys' fees.[4]  Harvey Weinstein will be similarly released from all civil liabilities for decades of alleged rapes, sexual assaults, and sexual harassment – other than for the Non-Settling Plaintiffs – without paying any of this own money, and while also receiving reimbursement of his

---

[4]    As noted above, Robert and Harvey Weinstein are among those "Former Representatives" of TWC who will receive a share of the over $12.2 million for attorneys' fees reimbursement provided under the TWC Global Settlement.  WGS at 6 and ¶ 1(B)(iv)(1).  The agreement does not specify what percentage of the money will be allocated to each of the Former Representatives.

attorneys' fees.  The notion that either Robert Weinstein or Harvey Weinstein would forgo this settlement without an additional "inducement" of $1.5 million to defend against the claims of the Non-Settling Plaintiffs is preposterous.

Class Counsel and NYOAG may argue that the Court need not consider this unfair treatment of the Non-Settling Plaintiffs, which is not discussed in the Class Representatives Memorandum of Law, because the terms described above are in the Weinstein Global Settlement Agreement, not the Class Agreement.  But Rule 23(e)(2)(iv) requires the Court to consider the fairness of *all* of the agreements that have been submitted in connection with the settlement proposal.  Thus, the Court should not approve the class settlement without satisfying itself that the agreement is fair to *all* survivors of Harvey Weinstein's sexual abuse who are impacted by the proposed settlement.  As demonstrated above, the inequitable manner in which the settlement treats the Non-Settling Plaintiffs is sufficient reason for the Court to reject the deal.

> **2.      There is Insufficient Information to Assess Whether the Individual Plaintiffs are being Treated Equitably Compared to Class Members and Non-Settling Plaintiffs**

The proposed settlement also does not provide sufficient information about the 14 Individual Plaintiffs who have entered into a side deal guaranteeing them each an undisclosed amount from a total payment of $5.4 million ("Individual Case Settlement Fund").  Four of those cases are pending in the United States; three are pending in Canada; six are pending in the United Kingdom; one is pending in Ireland (collectively, the "Individual Plaintiffs").  These 14 plaintiffs will likely be receiving an amount equal to roughly *1/3* of the total amount provided to victims of Harvey Weinstein's sexual misconduct.[5]  Still, the settlement documents do not explain how the

---

[5]      The settlement fund for the class is $18,875,000.  As discussed above, after fees, litigation costs and settlement costs are deducted, the class members are likely to receive no more than about

Individual Case Settlement Fund will be distributed among the Individual Plaintiffs, the basis for the distribution, or any information about the claims of the Individual Plaintiffs. This is particularly problematic because 9 of the 14 cases have been brought on behalf of anonymous plaintiffs and there is little or no public information about these cases, including the strength of the evidence related to liability or damages. For the non-United States cases, there is no assessment about the possible damages that these plaintiffs might receive in the jurisdictions in which these cases are brought.

The Individual Case Settlement Fund is thus a black box for which there is essentially no information for the court to conduct a meaningful fairness review. The Objectors herein do not object in principle to cases being settled on an individual basis. Indeed, counsel for the Objectors, at the time representing only Ms. David, participated in discussions about individual settlements in an early phase of settlement discussions. But neither Ms. David nor her counsel ever contemplated, let alone agreed to, a complete lack of transparency for agreements presented to this Court. In sum, there is an insufficient basis for the Court to determine whether the Individual Settlement Agreement is reasonable and whether these individual cases are being treated equitably compared to the Weinstein survivors who will be compensated with funds from the Settlement Class Fund. At a minimum, discovery is needed on this issue before preliminary approval is considered.

### 3.        Inequitable Treatment Between the Pre-2005 and Post-2005 Subclasses

The Court should also decline to approve the proposed settlement because of the unreasonable and inequitable differences in treatment between the pre-2005 and post-2005

---

$11 million from the Class Fund. Thus, the funds that will be expended on individual plaintiffs' cases are likely roughly 1/3 of the amount that will ultimately be paid to Weinstein survivors.

Subclasses.  *See* 2018 Advisory Notes to Rule 23 (explaining that Rule 23(e)(2)(d) requires the Court to consider whether "the proposal treats class members equitably relative to each other."); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d at 698 (noting that consideration of this factor "could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief.").

As discussed in greater detail below, *infra* at p. 15, the pre-2005 class – which is likely comprised almost entirely of survivors who do not have timely clams – are permitted to opt-out of the settlement without prejudice to their ability to pursue their claims.  However, the post-2005 class does not have an opt-out right, and its members are required to participate in the settlement. Thus, all of the subclass members from this period, which would, by definition, include those with more recent and potentially timely claims, will be required to waive their claims not only against the TWC debtors, but also Harvey Weinstein, Robert Weinstein and the former directors of TWC. This results in the survivors being deprived of their day in court and the ability to confront Harvey Weinstein and hold the directors accountable for their complicity.  The post-2005 members should be permitted to opt-out of the proposed settlement without any repercussion and permitted to pursue claims against not only Harvey Weinstein, but also against TWC and its officers, directors, and insurance companies.  While many of Weinstein's victims may want to settle, there can be no justification to ever force a settlement on a sexual assault survivor.

The settling parties attempt to justify this disparity because of the TWC bankruptcy and the need to have a "limited fund" settlement.  But for the reasons discussed below, a limited fund settlement has not been remotely justified on the facts presented.  *See infra* at p. 23.  Besides, TWC's proposed bankruptcy plan under Chapter 11 is in effect a liquidation and winding up of

the company.  Thus, the forced settlement is not being done for some greater good such as saving jobs at a company that will stay in business.  There is simply no legitimate rationale for the disparate treatment of the post-2005 and pre-2005 class members, and accordingly, the Court should decline to endorse this inequitable treatment of the class members.

**4.    The Special Master Process Proposed in the Settlement is Flawed and Inequitable**

The Class Settlement Agreement lacks meaningful guidelines for the special master to follow to assure equitable treatment among class members.  Compounding this problem, the claims process lacks any meaningful appeal.

The "Allocations Guidelines for the Special Master," part of the proposed Class Settlement Agreement, instructs the proposed special master to award a maximum of 100 points to each claimant based on "Alleged Conduct and/or Contact" and "Impact of Alleged Conduct and/or Contact."  CSA Ex. A at 1.  For "Alleged Conduct" the special master is instructed that it may award up to a maximum of 80 points for any claimant who experienced any of the eight categories of conduct, ranging from "unwanted penetration" or "unwanted sexualized touching" to "verbal sexual harassment, gendered epithets, and insults based on sex stereotypes" or "unfavorable or gendered employment terms or denial of professional opportunity based on sex or sex stereotypes." *Id.* at 2-3.  But other than instructing the special master that he or she should consider "the totality of circumstances" and the "likelihood that the Claimant would have been able to prove her claims in court," there are no guidelines for the special master to follow in awarding points based on the Alleged Conduct. *Id.* at 1.  For example, the special master could choose to award the same number of conduct points to a survivor who was raped by Harvey Weinstein as a victim of purely verbal sexual harassment or an employee of TWC who was denied a job based on her gender.  There are no limitations on the special master's discretion or even meaningful guidance to the special master

16

for how to exercise his or her discretion. *See Chi v. Univ. of S. California*, No. 2:18 Civ. 04258, 2019 WL 3064457, at *4 (C.D. Cal. Apr. 18, 2019) ("[T]he Court believes that the contemplated authority of the Special Master to make all claims determinations in her own discretion invites the possibility of arbitrary decision-making and inequitable treatment of class members for non-meritorious reasons").

The settlement likewise provides the special master with no instructions or guidance in awarding the remaining available 20 points to a claimant based on "Impact of Alleged Conduct and/or Contact," other than that points may be awarded for physical injury, emotional distress or economic harm. The special master may award, in his or her discretion, the same number of "impact" points for a rape victim who has experienced severe emotional trauma as an employee of the TWC who was denied an employment opportunity. As with the assessment of the alleged conduct, the lack of meaningful guidelines for the special master to follow regarding a claimant's harm creates an acceptable risk of unreasonable, biased, and subjective decision-making. *See Chi*, 2019 WL 3064457, at *4.

The flaws with the special master process are made worse by the fact that the settlement does not provide for any meaningful appeal process. Other than mandating that the special master adopt some procedure for reconsidering his or her own decision, there is no right for a claimant to appeal a decision. In essence, the settlement proposes a single, unreviewable decisionmaker exercising complete discretion with almost no guidance about how that discretion should be exercised. This is an invitation for inequitable treatment. *See Chi*, 2019 WL 3064457, at *5 (noting that a single decisionmaker with no appeal to another period "is concerning to the Court and may similarly concern class members who want to ensure a fair and impartial review of all claims determinations and appeals of those determinations").

### 5. The Settlement Does Not Provide Adequate Guidance for the Disposition of Untimely Claims

The Proposed Settlement also fails to provide the special master with appropriate guidance regarding reducing awards for claimants who have time-barred claims. The Allocation Guidelines for the Special Master state the following about how the statute of limitations should be considered in issuing awards:

> The Special Master will also consider the likelihood that the Claimant would have been able to prove her claims in court, including the application of the relevant statutes of limitation and any other relevant considerations. The fact that a claim may be time-barred under the relevant statute of limitations shall not be used as a total bar to recovery in the Class Claims Process.

CSA Ex. A. at 1.

Based on this instruction, the special master is supposed to "consider" whether a claimant's allegations are time-barred, but the Guidelines do not suggest *how* this fact should be considered, other than to say that it should not result in a "total bar" to recovery. Thus, under the Guidelines, the special master may reduce an award for an untimely claimant anywhere between 0% and 99%. Moreover, the special master could reduce one survivor's claim by 90% because of a time-bar but choose to reduce another untimely claim by only 10%. Nothing in the Guidelines precludes this kind of arbitrary decision-making. By failing to require a specific, significant reduction for untimeliness, the Guidelines will likely result in many untimely but otherwise sympathetic claims receiving larger awards. Because of the set settlement amount available to the class, this will necessarily result in less money being available for claimants with timely claims that could succeed in court. Accordingly, the proposed settlement's failure to provide for significant and non-discretionary reductions for untimely claims will likely result in an inequitable distribution of awards to members of the class.

6.     **The Settlement Precludes Recovery for any Claims that Were Subject to a Release, Regardless of the Circumstances**

Unlike those with time-barred claims, who are eligible for compensation, the proposed Class Settlement Agreement prohibits anyone from receiving compensation for a claim that was previously released *regardless* of the amount or whether the release was obtained as a result of coercive or threatening tactics by Harvey Weinstein or his associates.  CSA at 40, 42.  Thus, for example, objectors Rowena Chiu and Zelda Perkins, who were victimized by Harvey Weinstein while they worked for him in the 1990s' and signed releases and non-disclosure agreements because they were coerced into doing so, would be precluded from recovering anything from the Settlement Fund.  The special master would not be able to consider the circumstances under which they, or any other similarly situated survivor, signed releases or whether they received reasonable compensation for their injuries.  There is no justification for such a blanket exclusion of this group of victims because, as discussed, the settlement permits recovery for claimants with untimely claims who could never prevail in court.  It is inequitable to preference class members with time-barred claims above those who have signed releases.

C.     **The Proposed Settlement is Inadequate**

In contrast to the guaranteed millions of dollars being paid to the alleged wrongdoers, the actual amount of the payments to the proposed class under the point system lacks any detail other than that the payments will range between $7,500 and $150,000 for "tier 1" claims or $7,500 and $750,000 for "tier 2."  Of course, these tiers are nothing more than a sleight of hand designed to convince survivors and the public at large to advocate on behalf of the proposed settlement agreement.  The amount to each claimant is subject to a pro-rata deduction which means that survivors will very likely never see anything close to the tiers that have been proposed.  Class Counsel has publicly represented that there could be 1,000 potential victims that participate in the

19

settlement.  *See* Hannah Thomas-Peter, *Harvey Weinstein Could Have Targeted Nearly 1,000 Women, Lawyer Says*, Sky News, Nov. 2, 2018 (available at https://news.sky.com/story/harvey-weinstein-could-have-targeted-nearly-1000-women-lawyer-says-11543053) (last accessed July 13, 2020).  Using that estimate as well as the litigation and settlement costs approximations discussed above, the average payment to a class member would only be about $11,000.  Moreover, even if the number of claimants is one-half or one-quarter of the public estimate of Class Counsel, the likelihood of class members receiving significant compensation for being raped or subjected to forcible sexual conduct is virtually non-existent.

The Court also has been provided with no information about the insurance policies that will fund the settlements or the assets of the corporate or individual defendants to test the parties' claims that the fund to pay victims is limited.  As discussed below, this lack of information is fatal to the ability to certify the post-2005 class under Rule 23(b)(1)(B).

### D.   The Unfair, Inequitable and Inadequate Settlement is the Product of Inadequate Representation by Class Counsel and the NYOAG

The proponents of the proposed class settlement present it as the product of a hard-fought and arm's length negotiation between the class representatives, the NYOAG, the Defendants and their insurance companies, working under the guidance of a JAMS mediator.  The reality is quite different.  The negotiation was a capitulation by Class Counsel, who never had a plausible chance of having this action certified as a class in litigation and who was thus determined to settle, no matter how inadequate the deal, to recoup "common fund" attorneys' fees that could not be achieved in litigation.  Attorneys for survivors who did not go along with this surrender were shut out of the negotiation.  The NYOAG endorses this result because it is not willing to litigate its case and the Attorney General of New York wishes to claim a political "victory."

Class Counsel tries to blame the inadequacies of the settlement on TWC's bankruptcy. But well after the bankruptcy, Class Counsel still claimed that a fund of two to three times the present settlement was still achievable. Class Counsel also points to adverse court decisions in this case and others, but the vast majority of the claims brought on behalf of the class representatives in this action were plainly time-barred, and the Court's decision to dismiss those claims was entirely foreseeable.

Class Counsel also seeks to claim credit for getting the Defendants and their insurers to create a victim's fund, but the notion that the Defendants or their insurers ever took seriously the possibility of a class action being certified in this matter is fanciful. As the Court noted as early as September 2018, this is a matter in which "individual situations it seems to me predominate over the class issues." Dkt. No. 128 at 49. No matter how implausible, however, Class Counsel could not relinquish the fiction that this action could be litigated on a class-wide basis because it is the only way Class Counsel could receive attorneys' fees from a common fund, rather than settle for a contingent fee on the class representatives' largely time-barred claims.

Unwilling to litigate, and driven to settle at all costs, Class Counsel argues that the present result is better for most of Harvey Weinstein's victims because, in the absence of a common fund, TWC will liquidate in bankruptcy and most members of the class will not receive any recovery. But Class Counsel should have no right to make that decision on behalf of survivors who want to continue to pursue their claims. The number of objectors to this settlement suggests that there are many victims of Harvey Weinstein who are determined to litigate and have their day in court, and who are not willing to accept any amount dictated by Defendants and their insurers.

In the effort to settle by any means, Class Counsel has been abetted by the current Attorney General of New York State, who has failed to pursue the case brought by her predecessor's

administration on behalf of TWC employees.  While NYOAG makes much of its "investigation," the docket of their case reflects that, for nearly one and a half years, they have done *nothing* but stipulate to delays.  *People of The State of New York v. Harvey Weinstein et. al*, Index No. 450293/2018 (Sup. Ct. N.Y. Cty).  This dereliction is even more inexplicable because a judge in the court where the NYOAG case is pending denied a motion to dismiss by Robert Weinstein in a case brought by a TWC employee under the same legal theory asserted by the NYOAG.  *See Rehal v. Weinstein*, No. 151738/2018, 2019 WL 2088435, at *5 (N.Y. Sup. Ct. May 13, 2019).  If NYOAG attempted to use this decision to press its claims against Robert Weinstein and to add the other former directors of TWC, it is quite likely that a vastly superior settlement could be achieved for all victims.  Instead, NYOAG is willing to drop its investigation, allow Defendants to trample on the rights of Non-Settling Plaintiffs, and issue a press release touting its "win."[6]

In sum, the proposed settlement before the Court is the product of negotiation by counsel who lacked any inclination to litigate the claims on behalf of Harvey Weinstein's numerous victims.  The inadequate and unfair results produced from such a settlement should not be approved by this Court.

## III.    THE PROPOSED CLASSES ARE NOT CERTIFIABLE

In *Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997), the Supreme Court "cautioned that the fairness inquiry under Rule 23(e) does not supplant the Rule 23(a) and (b) requirements, but instead 'function[s] as an additional requirement."  *In re Am. Intern. Group, Inc. Sec. Litig.*, 689 F.3d 229, 239 n.8 (2d Cir. 2012) (citing *Amchem*, 532 U.S. at 621).  The Second Circuit has instructed district courts to pay particular "attention to *Amchem*'s guidance that in the settlement

---

[6]    *See* https://ag.ny.gov/press-release/2020/attorney-general-james-helps-secure-19-million-sexual-misconduct-and-workplace (last accessed July 13, 2020).

context Rule 23's requirements 'designed to protect absentees by blocking unwarranted or overbroad class definitions demand undiluted, even heightened, attention.'" *Id.* (quoting *Amchem*, 521 U.S. at 620). As discussed below, the proposed classes do not meet Rule 23(a)'s typicality and adequacy of representation requirement and are not appropriate class actions under Rule 23(b).

### A.       Rule 23(a) Factors of Typicality and Adequacy of Representation Are Not Met

To be certified as a class action there must be a finding that numerosity, commonality, typicality, and adequacy of representation exits. Rule 23(a). For the most part, the class representatives have claims under the sex-trafficking act that are not typical of class members, including some of the Objectors, who have timely claims under state law. Although one of the proposed class representatives, Jill Doe, who filed a *separate* class action in 2019 that includes state law claims against Defendants, her claim is inexplicably resolved as part of the *Geiss* class action without any distinction between the types of claims.

As detailed above, the adequacy of representation is not satisfied given Class Counsel's incentive to settle at all costs, and the weakness of the representative plaintiffs' claims that led Class Counsel to condone such a grossly unfair, unreasonable and wholly inadequate settlement to the detriment of potential class members who have valid claims. Thus, the proposed class fails to satisfy the typicality and adequacy of representation criteria necessary for certification.

### B.       The Post-2005 Class Cannot Be Certified Under Rule 23(b)(1)

The settling parties seek to certify the post-2005 class as a limited fund mandatory class action under Rule 23(b)(1). However, the proposed post-2005 class fails to satisfy any of the characteristics that the Supreme Court has held to be presumptively necessary in light of the "serious constitutional concerns that come with any attempt to aggregate individual tort claims on a limited fund rationale." *Ortiz*, 527 U.S. at 846. These presumptively necessary characteristics

are: (1) "a 'fund' with a definitely ascertained limit," (2) "all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability," (3) "by an equitable, pro rata distribution."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999); *Doe v. Karadzic*, 192 F.R.D. 133, 138 (S.D.N.Y. 2000).

### 1.      No Evidence That A Limited Fund Exists

The Court must make an independent factual finding that a limited fund exists before it can certify a mandatory limited funds class.  As the Supreme Court explained in *Ortiz*, "the settling parties must present not only their agreement, but evidence on which the district court may ascertain the limit and the insufficiency of the fund, with support in findings of fact following a proceeding in which the evidence is subject to challenge."  *Ortiz*, 527 U.S. at 849;  *Doe v. Karadzic*, 192 F.R.D. at 143 ("*Ortiz* unequivocally proclaims that 'objecting and unidentified class members alike are entitled to have the issue settled by specific evidentiary findings independent of the agreement of defendants and conflicted class counsel.'") (quoting *Ortiz*, 527 U.S. at 853).  As explained below, the Court lacks an evidentiary record to make this assessment.

The Court does not have copies of the insurance policies to ascertain the limits of these policies that could total in the hundreds of millions.  The Court also does not have any of the policy exclusions or disclaimers of coverage to evaluate whether there exists coverage for the claims. While there is a brief reference to the insurance policies not covering Harvey Weinstein's intentional conduct, the policies likely do cover the defense and indemnification of the alleged *negligent* conduct of TWC and its officers and directors.  The Court must be provided with all the insurance information before it can make a finding that the policies are insufficient to cover potential claims.  *In re Granada Partnerships Secs. Litig.*, 803 F. Supp. 1236, 1244 (S.D. Tex. 1992) ("This Court has further determined that the National Union policy proceeds available to

satisfy plaintiffs' claims constitute a limited fund under the standards and circumstances…."); *Trautz v. Weisman*, 846 F. Supp. 1160, 1169 (S.D.N.Y.1994) ("[N]o evidence has been submitted to establish the amount of funds defendants will have at their disposal should plaintiffs prevail.").[7]

The Court also has no information about the net worth of the officers and directors alleged to have enabled Harvey Weinstein's sexual misconduct – several of whom are *billionaires*.  *See Doe v. Karadzic*, 192 F.R.D. at 141 (holding that where the defendants are individuals rather than corporate entities, "plaintiffs must establish not only that the defendant's current net worth is insufficient to satisfy a potential judgment, but also a substantial probability that the defendant will be unable to pay such claims over the life of the judgment").  Incredibly, none of these people are contributing a dime of their own money to the settlement, including Harvey Weinstein, a convicted rapist.  Even if these individuals were contributing some of their assets, which they are not, that would still be insufficient to establish that a limited fund exists.[8]

Finally, even though TWC has filed bankruptcy, the motion papers do not explain why the bankruptcy is proceeding under a Chapter 11 reorganization rather than a Chapter 7 liquidation when the company has already ceased operations and sold its assets.  What the motion papers do not tell the Court is that if there was a conversion to Chapter 7 then the bankruptcy trustee could bring claims against TWC officers and directors for their breach of fiduciary duty for enabling Harvey Weinstein to engage in sexual misconduct.  The proposed class and bankruptcy settlement

---

[7]     There are also no details on the potential exposure to Defendants if all the class members' claims were liquidated.  Considering that the proposed class consists of claims that are time-barred, the Court should not take the parties' word that there are insufficient assets to cover these claims.

[8]     The settling parties claim that it does not matter that the Director Defendants are not depleting any of their assets because all that matters is whether the amount recovered by the class is fair.  But the decisions cited in support of this proposition were all decided before *Ortiz* and therefore are no longer good law.

under Chapter 11 prevents that and effectively releases the individual officers and directors from any liability while at the same time not requiring them to contribute any money towards the settlement. The proposed settlement is a means to benefit the individual defendants, including Harvey Weinstein, to the detriment of the proposed class. This kind of settlement is directly contrary to the intent of a limited funds class. *Ortiz*, 527 U.S. at 839 ("The limited fund cases thus ensured that the class as a whole was given the best deal; they did not give a defendant a better deal than *seriatim* litigation would have produced.")

### 2.     There is No Common Theory of Liability

The proposed settlement is not being "distributed to satisfy all those with liquidated claims based on a common theory of liability." *Ortiz*, 527 U.S. at 841. Here, the members of the proposed class do not "state a claim on a single or repeated set of facts, invoking a common theory of recovery." Id. at 839. Rather, the conduct that gives rise to their claims ranges from unwanted penetration to stalking, verbal harassment, and retaliation. The theories of recovery also range from that under tort and sex-trafficking laws to employment statutes. A limited fund class cannot simply lump all these differing factual scenarios and legal theories into one mandatory class. Since there is no common theory of liability there can be no limited fund class settlement.

### 3.     There is an Inequitable Distribution

The proposed settlement fund does not distribute all the funds to potential class members based on an equitable, pro rata distribution. *See Ortiz*, 527 U.S. at 841. As explained above, the proposed settlement treats Non-Settling Plaintiffs differently than the proposed class by mandating that they release claims against TWC and its officers and directors without receiving adequate compensation. There is also a separate group of 14 Individual Plaintiffs who would otherwise fall within the class that has negotiated a deal to take $5.4 million out of the purportedly limited fund.

The proposed point system also does not ensure that the proposed class members will be treated equitably and gives complete discretion to the special master to decide what each claimant receives.

Because the post-2005 class does not meet any of the necessary characteristics of a limited funds class, the proposed class cannot be certified under Rule 23(b)(1).

### C.     The Pre-2005 Class Cannot Be Certified Under Rule 23(b)(3)

The pre-2005 class is not certifiable under Rule 23(b)(3) because the proposed class does not satisfy the predominance and superiority requirement.  Here, there has been no factual showing that "'the legal or factual questions that qualify each class member's case as a genuine controversy' are sufficiently similar as to yield a cohesive class."  *In re Am. Intern. Group, Inc. Sec. Litig.*, 689 F.3d at 240 (quoting *Amchem*, 521 U.S. at 623).  As the Second Circuit has explained, the "focus of this analysis is on 'questions that preexist any settlement,' and not on whether all class members have 'a common interest in a fair compromise' of their claims."  *In re Am. Intern. Group, Inc. Sec. Litig.*, 689 F.3d at 240 (quoting *Amchem*, 521 U.S. at 623).  As explained above, the proposed class covers a wide range of conduct and legal theories that are inappropriately being lumped together into one settlement under the most generalized of theories.  Therefore, the vast legal and factual variations of the proposed class do not satisfy the predominance inquiry.

A class action is also not the superior method to resolve the claims of the proposed class where some of the class members have timely claims alleging egregious conduct and others have untimely claims alleging less serious offenses.  The lack of superiority is evidenced by the fact that there are significantly more plaintiffs with pending litigations that are not participating in the class (either through objecting or by accepting a separate side deal) than there are plaintiffs who want to participate in the settlement.

Because the claims of the class are diverse, and most of the plaintiffs with pending litigations are not participating in the class, the pre-2005 class should not be certified under Rule 23(b)(3).

## IV.   THE COURT SHOULD CONSIDER THESE OBJECTIONS IN DETERMINING PRELIMINARY APPROVAL

As described above, Class Counsel throughout the negotiation process threatened the plaintiffs who did not go along with their plans and shut out those deemed to be uncooperative. Consistent with that approach, even before Objectors have had the opportunity to be heard, Class Counsel has preemptively requested that the Court refuse to even consider their views. *See* Reply Memorandum of Law in Support of Motion for Preliminary Class Certification Approval ("Reply Mem."), Dkt. No. 337 at 17-19.   But their arguments, which seek to silence sexual assault survivors, have no merit.   Class Counsel does not seek to preserve procedural regularity, they are desperate for the Court not to hear from the many objectors to this deal.

To begin, Class Counsel asserts that objections to a proposed settlement may not be heard in opposition to a motion for preliminary approval, and that a court may only consider objections in the context of a hearing on final approval. *Id.* at 2.   But nothing in Rule 23 prevents a district court from considering objections in connection with a preliminary approval motion.   The 2018 Amendments to Rule 23 created a heightened standard of review at the preliminary approval stage that makes it imperative for the Court to consider objections at the earliest possible stage.   Rule 23(e)(1).   There also is no need to defer consideration of the objections because Class Counsel should have already included in their motion for preliminary approval "all available materials they intend to submit to support approval under Rule 23(e)(2) and that they intend to make available to class members." *See* 2018 Advisory Notes to Rule 23(e)(1).

28

Just last week, a federal judge considering preliminary class approval in a products liability case rejected the very same argument advanced by Class Counsel here, explaining "[t]o the extent the plaintiffs and [defendant] suggest that it would be no big deal to wait until the final approval stage before fully considering objections to this settlement agreement, they are wrong." *In re Roundup Prod. Liab. Litig.*, No. 16 MD 02741 (VC), 2020 WL 3723305, at *1 (N.D. Cal. July 6, 2020); *see also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05 MD 1720, 2020 WL 29781, at *2 (E.D.N.Y. Jan. 2, 2020) (noting that district court judge previously overseeing case "invited all parties opposing preliminary approval to submit their written objections . . . and scheduled oral argument on the preliminary approval motion"). The approach of deferring consideration of all objections until the final approval stage is particularly wrongheaded in "complex, expensive-to-administer settlements like the one proposed here." *In re Roundup Prod. Liab. Litig.*, 2020 WL 3723305, at *1.

If preliminary approval is granted as a result of the Court ignoring any objections, as Class Counsel proposes, the result will be the expenditure of significant resources to issue notice to potential class members about a proposed settlement that is doomed to fail. *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d 1030, 1037 (N.D. Cal. 2016) (approving consideration of objections at an early stage because "by scrutinizing the agreement carefully at the initial stage and identifying any flaws that can be identified, the court allows the parties to decide how to respond to those flaws (whether by fixing them or opting not to settle) before they waste a great deal of time and money in the notice and opt-out process"). Moreover, the proposed settlement notice misleads class members into believing that compensation will be as much as $750,000, when in fact such a result – or anything close – is impossible given Class Counsel's own estimation of the size of the class. The proposed settlement and notice also fails to give prospective class members any meaningful

information about how their claims will be evaluated and compensation amounts decided. There is simply no reason to waste resources when it is already clear, on the record before the Court, that the proposed settlement should be rejected.

Not content to silence the Objectors at this stage, Class Counsel also implausibly argues that four of the Objectors have no standing to *ever* be heard before this Court because they objected to the settlement during the negotiations or signed a release. First, Class Counsel cannot intentionally exclude prospective class members from a proposed class settlement because they were vocal about their objections to the settlement during negotiations. Class Counsel's attempt to exclude specific individuals from the agreement to thwart off their objections is improper and an affront to the Rule 23 safeguards designed to protect prospective class members. *See* CSA ¶ 79. Second, while Wedil David and Dominique Huett are expressly excluded from the settlement class, *see id.*, the proposed settlement and related bankruptcy global settlement will have extraordinarily damaging consequences for their ability to pursue their claims. *See supra* at p. 10. Most notably, Ms. David and Ms. Huett would lose the right to seek recovery from the TWC or its insurers for nominal compensation. Ms. David would also lose the right to pursue a meritorious appeal of the dismissal of Robert Weinstein and the former directors named as defendants in her action. The agreements further funnels away from the class to Harvey and Robert Weinstein an additional $1.5 million to defend against Ms. David and Ms. Huett's claims. *See supra* at p. 12. Accordingly, not only do Ms. David and Ms. Huett have the right to object, they have a right to intervene in this matter under Rule 24(a)(2) because the proposed settlement of this action will "as a practical matter impair or impede" their ability to protect their interests.[9]

---

[9]     While a motion to intervene should not be necessary to raise objections at the preliminary approval stage, Objectors will file a formal motion to intervene if the Court finds such motion is necessary to consider these objections.

Ms. Chiu and Ms. Perkins likewise have standing to object. Contrary to Class Counsel's assertion, the fact that they signed releases while working with Harvey Weinstein does not exclude them from the definition of the pre-2005 Class. As discussed above, one of the many inequities in the proposed settlement is that it denies compensation to survivors who are within the definition of the respective classes simply because they signed releases, without consideration of the compensation received or the coercion involved in procuring the release, while at the same time *requiring* compensation for those with clearly time-barred claims. Class Counsel cannot plausibly argue that Ms. Chiu and Ms. Perkins cannot object to the settlement because of one of the very provisions that makes the settlement objectionable in the first instance. They are entitled to be heard.

Finally, the Court has an independent duty under Rule 23 to determine whether a class action settlement is "fair, reasonable and adequate" and meets the standards for certification. Rule 23(e). Thus, regardless of the procedural posture, this Court must independently scrutinize the proposed fairness and propriety of the class settlement and should consider all identified deficiencies in conducting that necessary review.

## **CONCLUSION**

For the foregoing reasons, the Objectors respectfully requests that the Court deny

preliminary approval of the proposed class settlement.

Dated: July 14, 2020
        New York, New York

                                    **WIGDOR LLP**

                                    By: _____
                                        Douglas H. Wigdor
                                        Bryan L. Arbeit

                                    85 Fifth Avenue
                                    New York, New York 10003
                                    Telephone: (212) 257-6800
                                    dwigdor@wigdorlaw.com
                                    barbeit@wigdorlaw.com

                                    **THE LAW OFFICE OF KEVIN MINTZER,
                                    P.C.**

                                    Kevin Mintzer
                                    1350 Broadway, Suite 1400
                                    New York, New York 10018
                                    Telephone: (646) 843-8180
                                    km@mintzerfirm.com

                                    *Attorneys for the Objectors*