UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
LOUISETTE GEISS, et al.,                                     :
                                                             :     **MEMORANDUM OPINION**
                                      Plaintiffs,            :     **DENYING PRELIMINARY**
                    v.                                       :     **APPROVAL OF SETTLEMENT**
                                                             :
THE WEINSTEIN COMPANY HOLDINGS LLC,   :     17 Cv. 9554 (AKH)
et al.,                                                      :
                                                             :
                                      Defendants.            :
                                                             :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

       This action was brought by victims of Harvey Weinstein's alleged sexual misconduct, and on behalf of a class they seek to represent. Nine of the Plaintiffs moved for preliminary approval of a settlement that would settle all class claims from a fund created by insurers in a parallel bankruptcy proceeding involving Weinstein's companies. Following my review of papers submitted in favor of and against the proposal and oral argument, I denied preliminary approval of the settlement class and of the settlement itself. This order expands on the rulings I made following oral argument.

## BACKGROUND

### I.    Factual and Procedural History

       I have described the facts of this case in my prior opinion and order denying in part and granting in part Defendants' motion to dismiss, ECF No. 278. Harvey Weinstein ("Weinstein"), a powerful force in the entertainment production industry, with his brother, Robert Weinstein ("R. Weinstein") (together, the "Weinstein Brothers"), founded Miramax Film NY LLC ("Miramax") in the late 1970s, sold Miramax to Disney in 1993 but remained in charge, and departed for their new production company, The Weinstein Company Holdings, LLC ("TWC"), on September 30, 2005. Throughout, Plaintiffs allege, Weinstein used his power

in the industry to sexually harass and assault them.  Weinstein set up meetings with his victims under the guise of hiring them, making business deals, or networking.  Then, he allegedly isolated them, often in hotel rooms, offices, or other private spaces, and engaged in unwanted flashing, groping, fondling, harassment, battering, false imprisonment, sexual assault, attempted rape, and/or rape, and threatened or blacklisted his victims if they opposed his advances or disclosed them to others.  Plaintiffs allege that people associated with Miramax, Disney, and TWC knew about Weinstein's misconduct, facilitated it, enabled it, and covered it up.  The companies' officers, directors, and employees allegedly procured women who aspired to be actresses, producers, or directors in the motion picture industry, lured them to hotel rooms, approved Weinstein's expenses for hotel rooms, and approved large settlement payments and legal fees to procure women's silence and cover up Weinstein's behavior.  After a *New York Times* article in 2017, scores of women began to come forward and allege claims against him, his companies, and their officers and directors.  Weinstein was fired from TWC's Board.  In 2018, TWC and its affiliates filed for Chapter 11 bankruptcy.

Plaintiffs filed this action on December 6, 2017 on behalf of two groups: 1) Plaintiffs Katherine Kendall, Nannette Klatt, Caitlin Dulany, Zoe Brock, Larissa Gomes, and Melissa Sagemille (the "Miramax Plaintiffs") sue on behalf of victims of Weinstein while Weinstein was associated with Miramax and Disney (*i.e.*, before September 30, 2005), and 2) Plaintiffs Louisette Geiss, Sarah Ann Thomas, and Melissa Thompson (the "TWC Plaintiffs") sue on behalf of victims of Weinstein while Weinstein was associated with TWC (*i.e.*, after September 30, 2005).  Plaintiffs sue Harvey and Robert Weinstein; TWC; Miramax; Disney and Disney affiliates; and certain officers and directors of the companies.

I dismissed Plaintiffs' initial complaint with leave to amend.  ECF No. 126. Plaintiffs then filed the operative complaint, the First Amended Complaint.  ECF No. 140.  The First Amended Complaint includes federal claims pursuant to the Trafficking Victims Protection

Act ("TVPA") and Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state claims for negligent supervision and retention, battery, assault, false imprisonment, intentional infliction of emotional distress, negligent infliction of emotional distress, and ratification. Defendants again moved to dismiss all claims.  By my order and opinion of April 17, 2019, I dismissed all Defendants except Harvey Weinstein, and all claims except Count I, the TVPA claim brought by the TWC Plaintiffs against Weinstein.  I held that the TWC Plaintiffs plausibly alleged that Weinstein violated 18 U.S.C. § 1591(a)(1), which applies to anyone who "in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person[,]" "knowing, or, . . . in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act." 18 U.S.C. § 1591(a)(1); *see also* 18 U.S.C. § 1595(a) (establishing civil remedy).  I held that Weinstein's sexual assaults could be "commercial sex act[s]," and that "the TVPA extends to enticement of victims by means of fraudulent promises of career advancement, for the purpose of engaging them in . . . non-consensual sexual activity."  ECF No. 278 at 14.

I dismissed all other claims of the TWC Plaintiffs, all claims of the Miramax Plaintiffs, and all Defendants other than Harvey Weinstein.  Only the TVPA claim against Harvey Weinstein survives.

## II.   The Proposed Settlement

The proposed settlement is complicated.  The only Defendant remaining in the action before me, Harvey Weinstein, joins those who ask me to approve it, but makes no contribution to the settlement.  Indeed, he benefits from it, financially as well as by obtaining a release of claims.  Louisette Geiss, Sarah Ann Thomas (a/k/a Sarah Ann Masse), and Melissa Thompson, the only Plaintiffs remaining in the case, seek my approval, and are joined by several of the Plaintiffs that I dismissed: Melissa Sagemiller, Nannette May (f/k/a Nannette Klatt),

3

Katherine Kendall, Caitlin Dulany, Larissa Gomes, and Jill Doe.  (I refer to all as the "Settling Plaintiffs.")  All Settling Plaintiffs moved for preliminary approval of the class settlement, preliminary approval of class certification, appointment of class counsel, and permission to disseminate class notice.  Thirteen women, having their own claims and lawsuits, strongly object.  ECF Nos. 336, 344, 347, 351, 356.

The proposed class action settlement, ECF No. 333-23 ("Settlement Agreement"), is paired with a proposed settlement of the bankruptcy proceedings initiated by TWC and its affiliates, ECF No. 333-5 ("Bankruptcy Agreement").  In the bankruptcy proceedings, the insurers of the bankrupt TWC propose to create a fund of $46,786,000.  Bankruptcy Agreement § 1(A).  Of that fund, $5,400,000 are allocated to settlements for individual plaintiffs who have pending sexual abuse lawsuits and who are bound by a separate settlement agreement, $7,295,000 are allocated to payment of claims unrelated to Weinstein's alleged sexual misconduct toward women, $12,216,000 are allocated to defense costs for TWC's officers and directors (including the Weinstein Brothers), an additional $1,500,000 are allocated to defense costs for just the Weinstein Brothers, $1,500,000 are allocated to defense costs for TWC officers and directors in contract and commercial cases, and $18,875,000 are allocated to the proposed class action settlement.  Bankruptcy Agreement § 1(B).  This last amount, $18,875,000, is allocated for the administrative expenses associated with the settlement, taxes, attorneys' fees and costs, any service award approved by the court for representatives of the class, and distributions to claimants.  Settlement Agreement ¶¶ 29, 110, 116.  The Settlement Agreement provides that Plaintiffs' counsel may seek an award up to 25% of the settlement fund, or $4,718,750, plus expenses.  Settlement Agreement ¶ 146.  The Settlement Agreement provides for releases by class members of their claims against the Weinstein Brothers, their companies, and the officers and directors of their companies.  Settlement Agreement ¶ 108.  Individual

4

plaintiffs who have sued Harvey Weinstein in separate suits or have settled with him and other Defendants are excluded from the settlement class.  Settlement Agreement ¶ 79.

The Settlement Agreement provides for the appointment of a Special Master, selected by class counsel and the New York Attorney General and approved by the Court, to adjudicate the claims of the members of the class and fix the amounts of their compensation. The process has two tiers, determined by the manner of proof offered during the claims process, along with a 30-page claim form asking for the intimate details as to how claimants were wronged and the effects of those wrongs.  Settlement Agreement ¶ 130, Ex. B.  Tier 1 claimants may submit, in addition to the claim form, further documentation about their claims and may be asked additional questions in writing by the Special Master.  Settlement Agreement ¶ 130. Claimants who choose to proceed under Tier 2 will submit the same claim form, but they also must submit to an interview by the Special Master or the Special Master's designee.  Settlement Agreement ¶ 131.

The Special Master assigns points to each claimant, up to 100 points.  *See* Settlement Agreement, Ex. A (allocation guidelines).  Up to 80 points can be assigned based on Weinstein's conduct toward the claimant, depending on the severity of Weinstein's offenses against the particular claimant, for example, to the extent he committed unwanted sexual penetration, indecent exposure, false imprisonment, and retaliation.  Settlement Agreement, Ex. A, at 2-3.  The Agreement authorizes the Special Master to award up to 20 points for the impact of Weinstein's conduct, for example, to the extent he caused physical injury, emotional distress, or economic harm.  Settlement Agreement, Ex. A, at 3-4.  The Special Master is to consider the totality of the circumstances and the likelihood that a claimant would have been able to prove her

claim in court, including whether the statutes of limitations had run.  Settlement Agreement, Ex. A, at 1.

Awards for each claimant would be based on the points allocated through this system.  Each Tier 1 claimant would be eligible for an award between $7,500 and $150,000, and each Tier 2 claimant would be eligible for an award between $7,500 and $750,000, but with all awards subject to pro-rata increase or decrease based on sufficiency or inadequacy of settlement funds.  Settlement Agreement ¶¶ 73-75, 90-91, 130-31.  Disappointed claimants are given the right to ask the Special Master for reconsideration.  There is no recourse to the courts; the award of the Special Master is final and binding.  Settlement Agreement ¶ 137.

## DISCUSSION

At the preliminary approval stage, a district court must consider whether "the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B); *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 692 (S.D.N.Y. 2019) (noting current standard for preliminary approval is more exacting than standard that existed prior to 2018 amendments to Rule 23).  As stated at the hearing, the proposed classes and proposed settlement both suffer from numerous deficiencies that make me unable to approve either.  The most severe infirmities are discussed below.

### I.   Class Certification

Settling Plaintiffs propose two subclasses: one for victims during Weinstein's time with Miramax and Disney, and one for victims during Weinstein's time with TWC.  The "Pre-2005 Subclass" is defined as:

> all women who met with Harvey Weinstein in person, before June 30, 2005, (i) to audition for or to discuss involvement in a project to be produced or distributed by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney

Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or (ii) in a meeting or event facilitated, hosted, or underwritten by Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc.; provided, however, the Pre-2005 Subclass expressly excludes (i) Kaja Sokola; and (ii) former employees of Miramax, LLC, Miramax Film Corp., Miramax Film NY, LLC, The Walt Disney Company, Disney Enterprises, Inc., or Buena Vista International, Inc. or any other entity for which Harvey Weinstein worked prior to June 30, 2005.

Settlement Agreement § 66.

The "Post-2005 Subclass" is defined as:

all women, on or after June 30, 2005, who (i) met with Harvey Weinstein in person (a) to audition for or to discuss involvement in a project to be produced or distributed by The Weinstein Company Holdings, LLC or a subsidiary or division thereof, or (b) in a meeting or event facilitated, hosted, or underwritten by The Weinstein Company Holdings, LLC or a subsidiary or division thereof; or (ii) were employed, whether fulltime, part-time, temporarily, as an independent contractor, or as an intern, by The Weinstein Company Holdings, LLC or a subsidiary or division thereof.

Settlement Agreement § 62.

As an initial matter, the proposed subclasses are overbroad. *See In re Fosamax Prods. Liab. Litig.*, 248 F.R.D. 389, 397 (S.D.N.Y. 2008) (finding proposed class "uncertifiable for over-breadth alone" where it failed to include limitations narrowing class to those entitled to relief). They include all women who met Weinstein for certain business purposes or who were employed at certain Weinstein companies, without regard to whether Weinstein abused them. The inclusion of women who merely met Weinstein but were not abused by him reduces the money available to class members who were injured.

The proposed subclasses also are too narrow. Why should former Miramax and Disney employees who were sexually abused by Weinstein be excluded from recovery? And suppose a woman applied for a job, suffered abuse by Weinstein, and then became an employee? Why should she be excluded? The Settlement Agreement further excludes from the proposed

class certain individual plaintiffs who have live cases against Weinstein and who have not entered separate settlement agreements.

A settlement class may not be certified if it is not part of a proper class action, satisfying all the requirements of Rule 23(a) and at least one of the requirements of Rule 23(b). *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *Amchem. Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . . But other specifications of [Rule 23]—those designed to protect absentees by blocking unwarranted or overbroad class definitions—demand undiluted, even heightened, attention in the settlement context.").  Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  As to Rule 23(b), Plaintiffs propose certifying the Post-2005 Subclass under Rule 23(b)(1) and certifying the Pre-2005 Subclass under Rule 23(b)(3).  Though the proposed subclasses present Rule 23(a) problems, especially for the criterion of typicality, the Rule 23(b) problems are particularly glaring.

Rule 23(b)(1), which would apply to the Post-2005 Subclass, allows class certification of a mandatory class under a limited fund theory where "prosecuting separate actions by or against individual class members would create a risk of . . . adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests."  Fed. R. Civ. P. 23(b)(1)(B).

Certification under Rule 23(b)(1) is significant, as it does not come with automatic opt-out rights. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 846-47 (1999). "[P]resumptively necessary" factors for a limited fund class are "a 'fund' with a definitely ascertained limit, all of which would be distributed to satisfy all those with liquidated claims based on a common theory of liability, by an equitable, pro rata distribution." *Id.* at 841-42.

The funds being contributed to the settlement are said to be "limited" because TWC is in bankruptcy proceedings, and only insurance companies are paying the settlement. TWC officers and directors are not contributing, notwithstanding that there are claims against them, because they will not be able to collect for their indemnification rights against TWC, but that is hardly an excuse against payment of a just debt. As for Harvey Weinstein, we are told that his resources have been diverted to his criminal proceedings and frozen in family court matters, and therefore are insufficient to pay Plaintiffs, but there is no proof that he is devoid of hidden assets or is judgment proof. Indeed, he, too, is a proposed beneficiary of the proposed settlement.

Parties seeking class certification under Rule 23(b)(1)(B) "must show that the fund is limited by more than the agreement of the parties," and the parties must present "evidence on which the district court may ascertain the limit and the insufficiency of the fund." *Ortiz*, 527 U.S. at 821, 849; *see also Doe v. Karadzic*, 192 F.R.D. 133, 141-44 (S.D.N.Y. 2000) (declining to certify class under limited fund theory absent evidence from which court find that limited fund existed). Put simply, a fund is not limited just because the parties say so. The Court cannot relax these requirements to certify a mandatory class and deprive class members of their opt-out rights. *See Ortiz*, 527 U.S. at 845-47 (noting Seventh Amendment and due process concerns arising from "adventurous application of Rule 23(b)(1)(B)").

Settling Plaintiffs seek certification of the Pre-2005 Subclass under Rule 23(b)(3), which is appropriate where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Here, the unique facts and legal issues applicable to each claim would predominate over common questions. Potential claimants were allegedly harmed in different manners, in different locations, across Weinstein's decades-long career. The strength of their claims depends on unique legal issues like application of statutes of limitations. Courts have sometimes found the predominance requirement satisfied in cases of widespread sexual abuse. However, those cases typically involved fewer variables, as the alleged abuse involved factually similar acts and a pattern of behavior at a single institution. *See, e.g.*, *In re USC Student Health Ctr. Litig.*, No. 2:18-cv-04258-SVW, 2019 U.S. Dist. LEXIS 122658, at *8-9 (C.D. Cal. June 12, 2019) (granting preliminary approval of class under 23(b)(3) in case involving specific acts of misconduct by doctor at student health center); *St. Louis v. Perlitz*, No. 3:13-cv-01132 (RNC), 2019 U.S. Dist. LEXIS 130324, at *9 (D. Conn. June 6, 2019) (certifying class under Rule 23(b)(3) in case involving officials at a school and orphanage who sexually abused children).

## II.   Settlement Approval

With respect to preliminary approval of the settlement, I must consider whether I am likely to find that  the settlement is "fair, reasonable, and adequate" in light of the factors enumerated in Rule 23(e)(2) and *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974). *See Johnson v. Rausch, Sturm, Israel, Enerson & Hornik, LLP*, 333 F.R.D. 314, 320 (S.D.N.Y. 2019) (courts consider Rule 23(e)(2) factors together with *Grinnell* factors).

Numerous factors weigh against approval. For example, in assessing the adequacy of the relief, I must consider "the effectiveness of any proposed method of distributing

relief to the class, including the method of processing class-member claims."  Fed. R. Civ. P. 23(e)(2)(C)(ii).  Here, critical considerations as to the availability and scope of recovery are delegated to a non-judicial officer, the Special Master, with insufficient guidelines tested by adversarial process and pre-trial discovery.  Even if the Special Master had authority to make these decisions, the underdeveloped guidelines are likely to lead to arbitrary awards for claimants.  *See Chi v. Univ. of S. Cal.*, No. 2:18-cv-04258, 2019 WL 3064457, at *4 (C.D. Cal. Apr. 18, 2019) (holding, in sexual abuse class action, "that the contemplated authority of the Special Master to make all claims determinations in her own discretion invites the possibility of arbitrary decision-making and inequitable treatment of class members for non-meritorious reasons").

   The Bankruptcy Agreement proposes major deductions from the amounts that otherwise would be available to claimants: $13,716,000 to defray the litigation costs of the TWC officers and directors, and $1,500,000 to defray the litigation costs of the Weinstein Brothers.  At the preliminary approval hearing, I observed that favoring these groups at the expense of the people suffering sexual abuse by Harvey Weinstein was "obnoxious."  I continue to hold to that view.  Furthermore, I cannot fully assess the numerous factors related to the size of the potential awards because the proposed class is too indefinite, and the parties' proposed process gives insufficient clarity regarding how funds would be allocated.

   In light of these and other considerations set out in Rule 23(e)(2) and *Grinnell*, I would not be able to find at the final approval stage that the proposed settlement is fair, reasonable, and adequate.

## CONCLUSION

   For the foregoing reasons, and any others stated on the record at the preliminary approval hearing, the Settling Plaintiffs' Motion for Preliminary Approval of Class Settlement, Certification of Settlement Classes, Appointment of Class Counsel, and Permission to

Disseminate Class Notice, ECF No. 333, is denied.  If Plaintiffs still intend to move to certify the

class, they should do so promptly.  In any event, the parties shall swiftly complete discovery and

be ready for trials.  The parties shall appear for a status conference, to be virtually held by

telephone, on August 21, 2020 at 10:00 a.m.

          SO ORDERED.

Dated:        July 24, 2020               _____/s/ Alvin K. Hellerstein_____
             New York, New York           ALVIN K. HELLERSTEIN
                                  United States District Judge