UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
LOUISETTE GEISS, SARAH ANN THOMAS (a/k/a
SARAH ANN MASSE), MELISSA THOMPSON, et
al., individually and on behalf of all others similarly
situated,

                Plaintiffs,

      - against -


THE WEINSTEIN COMPANY HOLDINGS, LLC, et
al.,

                Defendants.

-------------------------------------------------------------------X

1:17-cv-09554-AKH

Hon. Alvin K. Hellerstein



### DEFENDANT HARVEY WEINSTEIN'S OPPOSITION TO PLAINTIFFS' MOTION TO SEAL AND FOR SANCTIONS

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 4

ARGUMENT ................................................................................................................... 7

I.    PLAINTIFFS' MOTION FOR SANCTIONS SHOULD BE DENIED. .......................... 7

    a.   Plaintiffs' Contention That The Thompson Emails Were Marked "Highly
Confidential/Attorneys' Eyes' Only" In This Action Is Erroneous And
Disingenuous. ........................................................................................................ 7

    b.   Plaintiffs Have Failed To Establish Sanctionable Conduct Under The Controlling
Rule 11 Objective Reasonableness Test. ................................................................ 13

    c.   Plaintiffs' Rule 11 Motion is Fatal Because It Is Procedurally Deficient. ............... 16

    d.   The Thompson Emails Are Necessary and Germane to the Arguments and
Application Made by Defendant in his Response Brief and Therefore Plaintiffs'
Assertion That They Were Improperly Filed Is Fatally Flawed. ............................. 18

II.   THE SUBJECT DOCUMENTS SHOULD NOT BE SEALED. ..................................... 19

## EXHIBITS

EXHIBIT A
    Letter from Lynn Ellenberger, dated February 5, 2021
    Letter from Lynn Ellenberger, dated February 6, 2021
    Correspondence from Lynn Ellenberger February 9, 2021

EXHIBIT B
    Email correspondence between Lynn Ellenberger and Imran Ansari, dated February 9,
    2021

## **TABLE OF AUTHORITIES**

**Cases**

*Application of Utica Mut. Ins. Co. v. INA Reinsurance Co*.,
  2012 WL 858531 (2d Cir. 2012)................................................................... 21
*Bowler v U.S. I.N.S*., 901 F Supp 597 (S.D.N.Y. 1995) ................................ 16
*Caisse Nationale de Credit Agricole-CNCA, New York Branch v.
  Valcorp, Inc*., 28 F3d 259 (2d Cir 1994).................................................... 15
*Diamonds.net LLC v Idex Online, Ltd*., 254 FRD 475 (S.D.N.Y. 2008).................................... 17
*E. Gluck Corp. v. Rothenhaus*, 252 FRD 175 (S.D.N.Y. 2008) ............................................ 14, 15
*ED Capital, LLC v Bloomfield Inv. Resources Corp*., 316 FRD 77
  (S.D.N.Y. 2016).......................................................................................... 16
*In re Omnicom Group, Inc. Securities Litigation*, 2006 WL 3016311
  (S.D.N.Y.,2006).......................................................................................... 21
*Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153 (2d Cir. 2010) ........................................ 16
*Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 2006 WL 2807213
  (S.D.N.Y. Sept. 28, 2006)........................................................................... 19
*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006)........................................ 21
*Mareno v. Rowe*, 910 F.2d 1043 (2d Cir.1990) ............................................ 15
*Nixon v. Warner Communications*, 435 U.S. 589 (1978) .................................. 21
*Park v. Seoul Broad. Sys. Co*., No. 05 Civ. 8956, 2008 WL 619034
  (S.D.N.Y. Mar.6, 2008) ......................................................................... 14, 19
*S.E.C. v. TheStreet.Com*, 273 F.3d 222 (2d Cir. 2001)................................... 21
*Storey v. Cello Holdings*, L.L.C., 347 F3d 370 (2d Cir 2003)................................................... 14
*Sussman v. Bank of Israel*, 56 F3d 450 (2d Cir 1995) ................................... 16
*U.S. v. Amodeo*, 44 F.3d 141 (2d Cir. 1995)................................................. 21
*United States v Intl. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-
  CIO*, 948 F2d 1338 (2d Cir 1991)........................................................... 15

**Statutes**

F. R. C. P. Rule 11 ....................................................................................... passim
Judge Hellerstein's Individual Rules, 2E ........................................................ 13
L. Civ. R. 37.2, Court's Rule 2.E................................................................. 11, 13

The Defendant, Harvey Weinstein ("<u>Mr. Weinstein</u>"), and his undersigned counsel, respectfully submit this opposition to Plaintiffs Louisette Geiss, Sarah Ann Thomas (a/k/a/ Sarah Ann Masse), and Melissa Thompson (collectively "<u>Plaintiffs</u>") Motion to Seal and for Sanctions [Doc. No. 401].

## INTRODUCTION

**"Facts are stubborn things; and whatever may be our wishes, our inclinations, or the dictates of our passion, they cannot alter the state of facts and evidence."**

**John Adams**

Advocacy for one's client is *not* sanctionable. Presenting relevant material, neither designated confidential nor filed under seal, before the Court is *not* sanctionable. Relying on discovery openly exchanged and in direct support of relief requested in a response brief before the Court is *not* sanctionable. What *is* arguably sanctionable, however, is the filing of frivolous motions, personally attacking opposing counsel, setting forth misrepresentations, and presenting disingenuous inaccuracies before the Court. Plaintiffs' counsel has done just that.

Plaintiffs' counsel boldly and insultingly accuses the undersigned attorney and his law firm by suggesting that the filing of material, that was *not* designated confidential, and that firmly supported the argument and application made in Defendant's response brief [Doc. No. 396], was done so improperly, to harass Ms. Thompson. This accusation should not be entertained. Defendant's response brief is squarely before the Court, and the Court has already reviewed and rendered decision on the motion. The papers speak for themselves and it is evident that the brief and accompanying documents are wholly appropriate, which is why this request for sanctions is not only misguided but quite shocking.

To be candid, the undersigned values his professional reputation as well as the reputation of his law firm too highly and would never engage in such unsavory lawyering; in fact, there is

no case on this planet worth engaging in such underhanded gamesmanship and this action is no different. Despite these intimidating tactics by Plaintiffs' counsel, the undersigned will not succumb to such threats — and certainly will not avoid his duty to defend his client with the candor and advocacy required — nor should he be expected to, simply because he represents an "unpopular client." Perhaps Plaintiffs' counsel confuse advocacy with harassment because they envisioned a course of action by which their clients' claims would remain unchallenged, where the related facts and evidence would not be closely analyzed, and where payment would be awarded from the bankruptcy proceedings without scrutiny.

Here, as in prior papers filed before this Court, Plaintiffs' counsel presents a revisionist history and mischaracterization of the salient facts in support of their motion. Defendant will clarify, and refute those points herein, as Plaintiffs have neither set forth the grounds for sealing nor the imposition for sanctions but rather have engaged in motion practice designed to harass and silence advocacy for the Defendant.

First, it is perplexing as to what is so "personal" about the subject emails. They do not contain material that lends itself to sealing, particularly where the issue of consent has been placed squarely before the Court by the Plaintiff herself upon the filing of her complaint. Therefore, the emails do not fall within any category of documents that should be placed under seal or be deemed confidential. As such, there is no basis for Plaintiffs' request to seal the response brief nor the accompanying exhibits, and Plaintiffs' request should be denied. This is simply another attempt by the Plaintiffs to silence the defense and control the public narrative.

Second, Defendant's request for relief in the response brief in question, based on the emails among other evidence, was entirely proper. Plaintiffs' counsel had raised the need to take Ms. Thompson's deposition in an exigent manner due to her health since November 2020. In

recognition of this, Defendant, while not opposing the stay, requested that should the Court impose a stay, that the Court enter an order, mandating that Ms. Thompson be produced forthwith upon a lifting of any stay. If Ms. Thompson was of poor health requiring exigency in November 2020, then certainly, as of this date, that exigency may be heightened. Despite the necessity initially represented by Plaintiffs' counsel to proceed with speedy discovery, it was *their* refusal to participate in meaningful document production that necessitated Defendant's recent Motion to Compel. Now, counsel states that they would produce Ms. Thompson in March. Given the prior statements made regarding Ms. Thompson's health, Defendant did not feel comfortable unless there was a court order directing Ms. Thompson to appear immediately after a stay is lifted. This was clearly well-founded, given the prior delay and avoidance of discovery as well as the fact that it took the Motion to Compel to receive a document production to requests that were first served in 2019, and then again in 2020. As such, there was nothing improper in Defendant's request that, should the Court stay the case, the Defendant have the reassurance that an order will compel Ms. Thompson to be produced forthwith if the stay is lifted. Moreover, the subject emails produced by Plaintiffs increase the importance of a deposition of Ms. Thompson and the non-parties cited therein. Again, the receipt of the emails was largely the basis of the request, as the evidence supports the position that the questioning of Ms. Thompson is crucial to Mr. Weinstein's defense.

Finally, contrary to Plaintiff's position, there was nothing improper about citing to the emails in Defendant's response, as they were produced without confidentiality designation. The emails are germane to Defendant's request to (a) take the deposition of Ms. Thompson in an exigent manner, and pursuant to court order to ensure her appearance, and (b) in support of Defendant's request to extend the length of time in order to complete discovery. The production,

but particularly Ms. Thompson's emails, raise the need to not only take party depositions, but also serve non-party discovery requests, and take depositions of non-parties — including the friend with whom she was corresponding, and perhaps others mentioned in the emails. The Plan, as it exists now, does not provide Mr. Weinstein with closure. Plaintiffs may elect to settle in full, they may choose to take 25% of their apportioned lot and still proceed against Mr. Weinstein, or they may proceed against Mr. Weinstein in turn. In sum, because Mr. Weinstein has no avenue for resolution, his legal interests must be protected in anticipation of, and with respect to, any of the three routes that Plaintiffs may choose. Based on the foregoing, Plaintiffs' Motion to Seal and Sanction should be denied in its entirety.

<u>**ARGUMENT**</u>

I.   **PLAINTIFFS' MOTION FOR SANCTIONS SHOULD BE DENIED.**

a.   **Plaintiffs' Contention That The Thompson Emails Were Marked "Highly Confidential/Attorneys' Eyes' Only" In This Action Is Erroneous And Disingenuous.**

Plaintiffs' Motion for Sanctions should be denied as it is rife with misrepresentations. The subject emails filed were *not* designated confidential. Plaintiffs' assertion that they were marked "Highly Confidential/Attorneys' Eyes' Only" is disingenuous in that it fails to inform the Court that the confidentiality designation she references was *not* a designation made in *this* action; that confidentiality designation was made in a separate and unrelated collateral matter, which was a bar complaint against Mr. Weinstein's prior attorney, and in which all documents — for the purposes of *that* matter — were marked confidential. Here is an objective truth: Plaintiffs *also* produced these emails to Defendant as responsive documents in *this* action, which did not occur and was not controlled by or in reference to any prior or collateral matter. Here is another objective truth: Plaintiffs produced the emails at issue to Defendant in *this* matter *without* a confidentiality

designation. In fact, the emails were duplicated multiple times in the production *without any confidentiality designation.* Given the foregoing wholly uncontested objective truths, the subject emails as produced in *this* case were *not* marked confidential, nor should they be. It is a brazen misrepresentation on Plaintiffs' part to file in this Court asserting otherwise.

Plaintiffs' counsel was fully aware as to what material they had marked confidential upon their service of the production in this matter on February 5, 2021. In the letter that accompanied their document production, Plaintiffs' counsel specified which material in their production they were designating confidential. In this letter, it is was clear that they were *not* designating the subject emails, bates stamped "Thompson 000547, 000548, 000550, 000551, and 000552", as confidential (annexed hereto collectively as **EXHIBIT A** are letters and emails from Plaintiffs' counsel regarding their document production.)

**feganscott**

FeganScott LLC
ATTORNEYS AT LAW
500 Grant Street, Ste. 2900
Pittsburgh, PA 15219

PHONE  412.346.4104
FAX    312.264.0100

lynn@feganscott.com

February 5, 2021

**Via Email**
Imran H. Ansari, Esq.
AIDALA BERTUNA & KAMINS PC
546 Fifth Avenue, 6th Floor
New York, NY 10036
Iansari@aidalalaw.com

Re:    *Geiss, et al. v. The Weinstein Company, et al.,*
       Case No. 1:17-cv-09554-AKH

Dear Counsel:

In accordance with the Court's January 21, 2021 Order, we are producing documents labeled Masse 000001-10; Geiss 000001-11; and Thompson 000001-001018. We are also producing audio and video files designated as MTV01-03 as Confidential-Attorneys' Eyes Only pursuant to the parties' Protective Order. The documents may be accessed at:

Site: ████████████████████████████████

Password: █████████████

      The documents will be available at this link for seven (7) days. If you have any questions, please let us know.

Very truly yours,

*/s/ Lynn A. Ellenberger*

Lynn A. Ellenberger
Of Counsel

cc.    Elizabeth A. Fegan
        Whitney K. Siehl

**FeganScott.com**

## EXHIBIT A

In fact, Plaintiffs' counsel was so conscientious as to what they were designating confidential, that the day *after* their production of documents, they wrote to retract a designation of confidentiality as to one piece of discovery. Again, this subsequent letter does *not* designate the subject emails confidential:

**feganscott**

**FeganScott LLC**
ATTORNEYS AT LAW
500 Grant Street, Ste. 2900
Pittsburgh, PA 15219

PHONE 412.346.4104
FAX 312.264.0100

lynn@feganscott.com

February 6, 2021

**Via Email**
Imran H. Ansari, Esq.
AIDALA BERTUNA & KAMINS PC
546 Fifth Avenue, 6th Floor
New York, NY 10036
Iansari@aidalalaw.com

      Re:   *Geiss, et al. v. The Weinstein Company, et al.,*
            Case No. 1:17-cv-09554-AKH

Dear Counsel:

Please be advised that the video we produced yesterday in Dropbox designated as MTV01 should not be designated as Confidential-Attorneys' Eyes Only.  If you have any questions, please let us know.

Very truly yours,

/s/ Lynn A. Ellenberger

Lynn A. Ellenberger
Of Counsel

cc.   Elizabeth A. Fegan
       Whitney K. Siehl

## EXHIBIT A

Importantly, *after* they moved for sanctions against the undersigned in abrogation of the procedural requirements of Rule 11, Plaintiffs' counsel conceded *they* failed to designate the subject emails as confidential. In an email sent *after* the filing of their Motion to Seal and for Sanctions, Plaintiffs' counsel admits they did not mark the document confidential, and refer to it as "our inadvertent document designation":

| | |
|---|---|
| **Subject:** | Geiss et al v. The Weinstein Company Holdings LLC, 1:17-cv-09554-AKH |
| **Date:** | Tuesday, February 9, 2021 at 5:56:42 PM Eastern Standard Time |
| **From:** | Lynn Ellenberger <lynn@feganscott.com> |
| **To:** | Imran H. Ansari, Esq. <iansari@aidalalaw.com>, Taylor Friedman <tfriedman@aidalalaw.com>, Michael DiBenedetto <mdibenedetto@aidalalaw.com> |
| **CC:** | Elizabeth Fegan <beth@feganscott.com>, Brooke Achua <brooke@feganscott.com>, Whitney K. Siehl <whitneys@hbsslaw.com>, Tara Sylvester <tara@feganscott.com> |
| **Attachments:** | image001.png |

Counsel - In light of our inadvertent document designation and in view of the court's 30-day stay of the case, we are re-reviewing our document production to ensure all documents are correctly designated.
- Lynn

Lynn A. Ellenberger | Of Counsel
**Fegan Scott LLC**
500 Grant St., Suite 2900
Pittsburgh, PA 15219
Direct: 412.346.4104 | Fax: 312.264.0100
www.feganscott.com



## EXHIBIT A

The above email alone should afford the Court grounds to deny Plaintiffs' motion for sanctions. There was no misconduct by Defendant's attorney; Plaintiffs' counsel error, misjudgment, or attempt to remedy a poor decision in hindsight, does not amount to sanctionable conduct by Defendant's counsel.

Curiously, in the email sent by counsel threatening sanctions, Plaintiffs' counsel does *not* cite to any document's confidentiality designation as a basis for their motion, and instead simply — albeit mistakenly — states in a conclusory manner that the undersigned's response was violative of L. Civ. R. 37.2, Court's Rule 2.E and intended to harass (annexed hereto as collectively as **EXHIBIT B** is Plaintiffs' counsel's email threatening sanctions and Defendant's counsel's email response.) In response to Plaintiffs' counsel's email, the undersigned responded as follows:

*Dear Ms. Ellenberger,*

*We respectfully disagree with your characterization of Defendant's response, and our position is that there was nothing inappropriate about Defendant's response to your clients' Motion to Stay. Further, your threat of moving for sanctions, where no basis for such drastic relief is present, is misplaced and seems to be intended to intimidate and/or harass.*

*First, the Plaintiffs have raised the need to take Ms. Thompson's deposition in an exigent manner due to her health. You have done so since November 2020. In recognition of this, Defendant, while not opposing the stay, has requested that should the Court impose a stay (which it may not) enter an order, mandating that Ms. Thompson be produced forthwith upon a lifting of any stay. If she was of poor health requiring exigency in November 2020, then certainly at this point that exigency may be heightened. Although you state that you will produce Ms. Thompson in March, discovery in this matter has been delayed, and given the representations you have made regarding her health, we do not feel comfortable unless we have a court order directing her to appear immediately. We have this concern because of the track record at hand, as it took Judge Hellerstein granting our Motion to Compel and issuing an Order, in order to receive a document production to requests that were served on Plaintiffs in 2019, and then our subsequent request in 2020. There is nothing improper in requesting that should the Court stay the case, we have the reassurance that an order will compel Ms. Thompson to be produced forthwith if the stay is lifted. The emails produced on Friday make a deposition of Ms. Thompson and the non-parties cited therein, all the more important. They are largely the basis of the request.*

*Second, there is nothing improper about citing to the emails that you produced without confidentiality designation in our response. The emails are germane to Defendant's request to (a) take the deposition of Ms. Thompson in an exigent manner, and pursuant to court order to ensure her appearance, and (b) in support of Defendant's request to extend the length of time in order to complete discovery, as the production, but particularly Ms. Thompson's emails, raise the need to take not only party depositions, but also serve non-party discovery requests, and take depositions of non-parties, including the friend she was corresponding with, and perhaps others mentioned in the emails. The Plan as it exists now, does not provide Mr. Weinstein with closure. Plaintiffs may elect to settle in full, or they may elect to take 25% of their apportioned lot, and still proceed against Mr. Weinstein, or as your office has stated in correspondence, the taking of discovery may "jeopardize" their desire to settle, and they may proceed against Mr. Weinstein in turn. In sum, the emails are cited to as it is a catalyst to Mr. Weinstein's request to seek an order to depose Ms. Thompson immediately should the Court grant your motion and a subsequent lift, and likewise, the basis upon which Mr. Weinstein seeks to further party, and importantly, non-party discovery. The time frame of 90 days was selected, as we have envisioned the volume of non-party depositions your office has noticed, and also in consideration of our client's deposition, and expected legal and logistical challenges that may arise in that. Hence, as the emails are germane, if not critical, to Mr. Weinstein's application to the Court, there is absolutely nothing improper in presenting them to the Court for review, in determining the application based thereon.*

*Third, there was no violation of the Local Rules, nor Judge Hellerstein's rules. The filing was a response to your Motion to Stay. We simply responded, as is our right. Arguably, that motion was made in violation of the Rules, as there was no meet and confer process prior to you making it, nor joint submission. But this is not a "dispute."*

*Please note, that Local Rule 37.2 does not apply here, as Judge Hellerstein's rules do not require pre-motion discovery conferences.*

**Local Civil Rule 37.2.   Mode of Raising Discovery Disputes With the Court (Southern District Only)**

No motion under Rules 26 through 37 inclusive of the Federal Rules of Civil Procedure shall

be heard unless counsel for the moving party has first requested an informal conference with the Court

by letter-motion for a pre-motion discovery conference (subject to the instructions regarding ECF

published on the Court's website and the Judge's Individual Practices) and such request has either been

denied or the discovery dispute has not been resolved as a consequence of such a conference.

*Judge Hellerstein's rules are as follows:*

> **E.    Disputes.** Unless directed otherwise, counsel shall describe their disputes in a single letter, jointly composed.  Separate and successive letters will be returned, unread.  Strict adherence to the meet and confer rule is required and should be described in the joint submission as to time, place and duration, naming the counsel involved in the discussion.  The Court will not resolve disputes not brought to its attention in conformity with this rule.

*This would apply if there was a "dispute." However, you have brought a Motion to Stay. We do not oppose it, yet we seek reassurance to protect our client's rights by way of court order, and regardless, you did not meet and confer, nor request to engage in a joint letter to the Court as per Judge Hellerstein's rules. But again, this is academic. It is your motion, not the Defendant, so we did not run afoul of any rule, and this is not addressing a "dispute" it is simply raising an application to the Court that should a stay be implemented, that due to the representations you have made regarding Ms. Thompson's health, and due to the need to depose her and non-parties based on the emails you have produced without limitation, we request a court order that she be presented for deposition forthwith, and that the discovery deadline be extended for a period of time to allow discovery to be taken from the parties, and non-parties, that have become apparent due to the recent production by Plaintiffs, including, and perhaps most importantly, the emails of Ms. Thompson, now properly before the Court for consideration.*

*That said, as there is nothing improper regarding Mr. Weinstein's response to Plaintiffs' Motion to Stay, we will not withdraw it.*

*However, of course, should the Court require Mr. Weinstein to refile his response under seal, we will certainly do so with deference to the Court.*

## EXHIBIT B

Despite the above points that detail the legal and factual basis upon which Defendants' response and the accompanying exhibits were filed, Plaintiffs' counsel improperly moved for sanctions. Not only does Plaintiffs' motion fail on substantive reasons, but it also fails on procedural reasons, as discussed herein.

### b.    Plaintiffs Have Failed To Establish Sanctionable Conduct Under The Controlling Rule 11 Objective Reasonableness Test.

Rule 11(b) provides, in pertinent part as follows:

> "*By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.*" FRCP Rule 11(b).

Because sanctions under Rule 11 require a showing of clear frivolousness or bad faith on the part of the attorney against whom sanctions are being sought, the courts issue Rule 11 sanctions only in "extraordinary circumstances" pursuant to an inquiry by the Court into the "objective reasonableness" of the attorney conduct alleged to be sanctionable in light of the underlying circumstances, without reference to "the subjective beliefs of the person making the statement." *Park v. Seoul Broad. Sys. Co*., No. 05 Civ. 8956, 2008 WL 619034, at *1 (S.D.N.Y. Mar.6, 2008); *Storey v. Cello Holdings*, L.L.C., 347 F3d 370, 387 (2d Cir 2003). While Plaintiffs make brief reference to this "objective reasonableness" Rule 11 standard in their motion without expounding thereon, their argument (or more properly, their abject lack thereof) overlooks that the standard cuts both ways, and their "filing of a motion for sanctions is itself subject to the requirements of the rule and can lead to sanctions." *E. Gluck Corp. v. Rothenhaus*, 252 FRD 175, 179 (S.D.N.Y. 2008). Because their sanctions motion is premised on a theory that the undersigned ran afoul of Rule 11 by breaching a confidentiality designation that the Plaintiffs simultaneously concede *did not* and *does not* exist, at a minimum Plaintiffs' argument fails the objective reasonableness test.

Indeed, Rule 11 sanctions represent a drastic remedy reserved for extraordinary circumstances. The "improper purpose" upon which Plaintiffs base their motion requires that they demonstrate that papers were filed for reasons "such as to delay or needlessly increase the cost of

litigation, or does so without a belief, formed after reasonable inquiry, that the position espoused is factually supportable and is warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." *Caisse Nationale de Credit Agricole-CNCA, New York Branch v Valcorp, Inc*., 28 F3d 259, 264 (2d Cir 1994); *See also*, 252 FRD 175, 178. For purposes of Rule 11, an argument constitutes a frivolous legal position if, under an objective reasonableness standard, it is "clear ... that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands," *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir.1990). Plaintiffs do not and cannot make such a showing because the undersigned discharged his duty to make a reasonable inquiry into the legal and factual basis for the filing for which the Plaintiffs herein improperly seek Rule 11 sanctions for.

Plaintiffs do not allege in their Rule 11 motion that the undersigned's filing was devoid of legal merit or not grounded in law; thus, they do not claim the filing was frivolous from a legal standpoint. To the extent that the mischaracterization of the facts underlying their Rule 11 motion can be construed as a challenge to the factual (as opposed to legal) merit to the undersigned filing, they have failed to assert any facts showing that the undersigned acted unreasonably and/or without inquiry into the factual basis for his filing. Indeed, as previously set forth, <u>Plaintiffs did not designate the emails confidential when they produced it in this action.</u> Plaintiffs made no attempt whatsoever to designate it as such until *after* they filed their Rule 11 Motion. As such, no Rule 11 violation occurred by virtue of the public filing of the emails by the undersigned. *United States v Intl. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO*, 948 F2d 1338, 1344 [2d Cir 1991] ("Because a Rule 11 violation occurs when the offending paper is signed, a court must determine whether the certification requirement has been flouted by focusing on the situation existing when the paper was signed. The Court must not allow hindsight to skew its

judgment.") (internal citations omitted). In any event, there is no cognizable reason under the law as to why the email should be deemed confidential or sealed.

     **c.**    **Plaintiffs' Rule 11 Motion is Fatal Because It Is Procedurally Deficient.**

Plaintiffs failed to provide the undersigned the requisite 21-day safe-harbor notice. As neither party contests, Plaintiffs gave the undersigned notice of their intent to file their motion via email on the very *same* day they did so; and did not give adequate notice as to their intention to seek sanctions pursuant to Rule 11. *See*, __EXHIBIT B__. Their failure to provide even 24-hour notice of their motion alone warrants denial of their request for sanctions, because "Rule 11(c)(2) conditions the filing of a sanctions motion on the offending party being given notice and a twenty-one-day opportunity to correct or withdraw the document." *Lawrence v. Richman Grp. of CT LLC*, 620 F.3d 153, 158 (2d Cir. 2010); *Sussman v. Bank of Israel*, 56 F3d 450, 459 (2d Cir 1995) (Rule 11 "forbids the filing of a motion for sanctions unless the movant has given his opponent a warning that such a motion will be filed if the allegedly sanctionable paper is not withdrawn.). That the 21-day safe harbor provision of Rule 11 is applicable to the instant motion is unaffected by Plaintiffs' choice to file and characterize the motion as an "emergency." *See*, *ED Capital, LLC v Bloomfield Inv. Resources Corp.*, 316 FRD 77, 82 (S.D.N.Y. 2016) ("The Court is not persuaded that Rule 11's safe harbor provision is inapplicable here" to a purported emergency motion); *Bowler v U.S. I.N.S.*, 901 F Supp 597, 604 (S.D.N.Y. 1995) (declining to create an 'emergency' exception to the 21-day Rule 11 safe harbor requirement where no such exception is provided for in the Rule).

Furthermore, because their motion purports to place in controversy whether the Thompson email at issue is "Highly Confidential" (which, of course, it is not), and their motion also requests sealing of the undersigned's filing containing the Thompson email, the motion runs afoul of the

requirement under Rule 11, that motions for sanction be filed separately from motions seeking relief available pursuant to Rules other than Rule 11. *See*, Fed R. Civ P. Rule 11(c)(2) ("A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)").  Indeed, it has been held:

> *"The Rule requires that (1) a motion for sanctions be made separately from any other motion, and (2) the motion be served on the opposing party twenty-one days before it is filed with the Court ... These requirements underscore the seriousness of a motion for sanction" and serve to "define precisely the conduct claimed to violate the rule. **Failure to observe them is fatal to a party-initiated motion for sanctions**."*

*Diamonds.net LLC v Idex Online, Ltd*., 254 FRD 475, 476 (S.D.N.Y. 2008) (internal citations omitted) (bold added for emphasis); See also, *Gym Door Repairs, Inc. v Young Equip. Sales, Inc*., 444 F Supp 3d 484, 486-87 (S.D.N.Y. 2020) (Rule 11 motion denied; movant (1) failed to provide the requisite 21-day safe harbor notice; (2) motion was premised upon a matter constituting a discovery dispute; and (3) motion  improperly combined a Rule 11 request for relief with a request for relief available per a separate Rule, rather than making the Rule 11 motion separate from any other motion as required by Rule 11). Furthermore, Rule 11, by its terms, is inapplicable to disclosures and discovery requests, responses, objections, and motions that are subject to Rules 26 through 37. *See*, Rule 11(d). According to the Advisory Committee, "[i]t is appropriate that Rule 26 through 37, which are specially designed for the discovery process, govern such documents and conduct." 1993 Advisory Committee Notes.

Given the foregoing, in addition to the fact that Plaintiffs' arguments for Rule 11 sanctions are totally devoid of any merit whatsoever, Plaintiffs' failure to follow the strictly enforced procedural requirements of Rule 11, mandates dismissal of their motion.

> **d.** **The Thompson Emails Are Necessary and Germane to the Arguments and Application Made by Defendant in his Response Brief and Therefore Plaintiffs' Assertion That They Were Improperly Filed Is Fatally Flawed.**

Equally flabbergasting is Plaintiffs' position that the subject emails are "highly personal" and that they do not relate to or support the issue contained in Defendant's brief, and that counsel for the Defendant filed them simply to harass the Plaintiff. A simple reading of Defendants' response brief in question will establish that this is an absurd allegation.

As explained above, the emails were used as direct evidentiary support of Defendant's response brief, that requested an order: (a) ensuring Mr. Weinstein has the opportunity to take Ms. Thompson's deposition, by way of an order directing Ms. Thompson to appear for a deposition forthwith should a stay be implemented and then lifted; and (b) to extend the discovery deadline by the length of ninety (90) days in light of crucial facts and information learned, by way of the emails themselves and other documentary production served on February 5, 2021, including the identities of non-parties revealed through review of the subject emails and other documents produced on February 5, 2021. *See*, Doc. No. 396 and **EXHIBIT B**. Indeed, as explicitly stated by the undersigned in the filing on which the Plaintiffs base their instant sanctionable Rule 11 Motion:

> *"As stated by Plaintiffs' counsel themselves, discovery must be preserved due to Ms. Thompson's unfortunate state of health. This includes her deposition, and possibly post- deposition requests for further discovery from the Plaintiff and/or non-party witnesses. Based on Ms. Thompson's email exchange with a friend, whose name we have redacted, there certainly exists the need to take Ms. Thompson's deposition, and importantly, the non-party deposition of her friend. The email exchange in question is as follows:"*

Doc. No. 396 at 9.

Specifically, and unambiguously, the inclusion of the email Plaintiffs are now willfully misrepresenting as having been confidential (or "sensitive") are directly tied to the request made in the response. This is evident throughout Defendant's response brief, which is why the

accusations by Plaintiffs' counsel to the contrary seem baffling. Defendant's counsel including the subject emails in Defendant's response brief was entirely reasonable, under the circumstances, from factual, legal, and ethical standpoints. This remains unchanged by Plaintiffs' hollow and conclusory self-serving statements that the undersigned filed the email "*only* to vex and harass Ms. Thompson" and that the email "does not relate to or support" the relief requested in the undersigned's filing.

The foregoing facts, giving rise to this Rule 11 Motion, make transparent Plaintiffs' lack of any cognizable basis whatsoever for their motion. Disturbingly, Plaintiffs "cross the line" by publicly calling the undersigned "disingenuous," and accusing him of using "decoy issues" in a court of law to "solely to vex and harass" their client. Plaintiffs simultaneously assert to this Court that the email that *they* admit has never been designated confidential in *this* matter was, in fact, "Highly Confidential[1]" material filed by the undersigned to support Mr. Weinstein's request for relief in bad-faith abrogation of Rule 11. *See*, Rule 11 Motion at 4. Unfortunately for the Plaintiffs, such improper conduct cannot make up for their clear inability to meet the high burden required for the Rule 11 sanctions, that they improperly request herein. *Louis Vuitton Malletier v. Dooney & Bourke, Inc*., 2006 WL 2807213, at *6 (S.D.N.Y. Sept. 28, 2006) (Rule 11 sanctions "should always be a (very) last resort.") (citations omitted); *Park v Seoul Broadcasting Sys. Co*., 2008 WL 619034. As such, Plaintiffs' Motion for Sealing and Sanctions should be denied.

## II.     THE SUBJECT DOCUMENTS SHOULD NOT BE SEALED.

Finally, it is perplexing as to why and how Plaintiffs' counsel seek to designate these documents as confidential or appropriate for sealing. The emails are not "highly personal" nor the type of evidence that would fall into the category that should be redacted or sealed. Rather,

---

[1] Or "highly personal" or "sensitive," per the arbitrary terms Plaintiffs oscillate between to make out their argument. *See*, Doc. No.401 at 2-3, 5.

they go to the very heart of the claims that Ms. Thompson has chosen to bring against Mr. Weinstein and are directly relevant to the question of consent, an issue that was placed before the court the moment Ms. Thompson filed her lawsuit. In fact, the content of these emails were reported on as far back as May 9, 2019. Because the email colloquy allows a reasonable juror to infer that the sexual act between Mr. Weinstein and Ms. Thompson was consensual, albeit regrettable or aesthetically displeasing for Ms. Thompson, does not mean that they should be cloaked with confidentiality, and shielded from the public. That act would go against the principles of our justice system and notion of fairness, particularly because Ms. Thompson went on a calculated media campaign regarding her allegations, speaking at length with the media, and sitting for interviews while displaying the video she made of their encounter. This is not a Plaintiff who has been shy of the press; she in fact pursued the press, and she is not a Plaintiff who has chosen to proceed with pseudonymity, nor a Plaintiff who has sought privacy in her accusations. Then why should emails, and other documents for that matter, that tend to refute her claims be subject to sealing or confidentiality? There is no reason for Plaintiffs to hide these emails, except for the fact that the emails raise more questions rather than answers.

To reiterate, these are not emails containing personal information or material that is otherwise subject to confidentiality or sealing as per the FRCP. The emails constitute evidence germane both to the claims and the defenses of the litigants, and as such, falls within no category of information that should be deemed confidential or sealed. Simply because they arguably refute the narrative that Ms. Thompson was raped by Mr. Weinstein, Plaintiffs' counsel seek to sweep them under the rug. However, well established law does not support their position. More than four decades ago, the Supreme Court not only articulated the qualified right of the public "to inspect and copy judicial records and documents" but also recognized that judicial documents

enjoy a presumption "in favor of public access." *Nixon v. Warner Communications*, 435 U.S. 589, 602 (1978), *S.E.C. v. TheStreet.Com*, 273 F.3d 222, 231 (2d Cir. 2001). In fact, "the common law right of public access to judicial documents is said to predate the Constitution." *U.S. v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995).

Thus, "[i]n order to determine whether documents should be placed under seal, a court must balance the public's interest in access to judicial documents against the privacy interests of those resisting disclosure." *Application of Utica Mut. Ins. Co. v. INA Reinsurance Co.*, 2012 WL 858531, at *1 (2d Cir. 2012)(citing *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir.2006)). "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Lugosch*, 435 F.3d at 121. Then, "after determining the weight of the presumption of access, the court must balance competing considerations against it" including but not limited to "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." Id. at 119-20.

Courts compare this balance to a continuum "along which the strength of the presumption will be measured." *Id* at 121. "Where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches," but on the other hand, "[m]oving down the continuum, away from matters that directly affect an adjudication and towards matters that come within a court's purview solely to insure their irrelevance…the weight of the presumption declines." *Id*. See, e.g., *In re Omnicom Group, Inc. Securities Litigation*, 2006 WL 3016311, at *3 (S.D.N.Y.,2006) holding "Motion papers, including briefing and any affidavits, constitute an

application for court action - that is, a request for adjudication. As such, they are presumptively subject to public filing."

Furthermore, the subject emails do not contain any of the material subject to redaction pursuant to FRCP 5.2, such as Social Security numbers; names of minor children; dates of birth; and financial account numbers. Nor do they include other information that should be treated with caution requiring sealing or redaction such as identifying numbers (PIN numbers); medical records, treatment and diagnosis; employment history; individual financial information; proprietary or trade secret information; home addresses; and information regarding an individual's cooperation with the government. Despite this, Defendant, in the abundance of caution, and with the intention to comply with the Court's individual rules, redacted personal identifying information such as Ms. Thompson's email address and the identity of the non-parties, and their email addresses, as the inclusion of the document was necessary and relevant to the case and the bases upon which Defendant was seeking relief. Here, as stated *supra*, there are no cognizable reasons to keep the emails and Defendants' response under seal. As such, Plaintiffs' Motion to Seal and for Sanctions should be denied.

Lastly, Plaintiffs' filing of a frivolous motion for sanctions is arguably sanctionable conduct itself. The defense will not cross-move for sanctions - at this time - in order to extinguish, and not fan, the flames of discontent, and not further burden the Court.

**WHEREFORE**, Defendant Harvey Weinstein, and his Counsel, respectfully requests that the Court deny Plaintiffs' Motion to Seal and for Sanctions in its entirety.

Dated: February 11, 2021
     New York, New York

Respectfully Submitted,

**AIDALA, BERTUNA & KAMINS, PC**

By: _____

**IMRAN H. ANSARI**
*Attorney for Defendant Harvey Weinstein*
546 5th Avenue, 6th Floor
New York, New York 10036
iansari@aidalalaw.com
Tel.: (212) 486-0011